UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SIA HENRY, MICHAEL MAERLANDER, BRANDON PIYEVSKY, KARA SAFFRIN, and BRITTANY TATIANA WEAVER, individually and on behalf of all others similarly situated,<br><br>                   Plaintiffs,<br><br>                v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>                   Defendants. | Case No.: 1:22-cv-00125<br><br>Hon. Matthew F. Kennelly |

**MEMORANDUM IN SUPPORT OF MOTION FOR APPOINTMENT OF
ROCHE FREEDMAN LLP, GILBERT LITIGATORS & COUNSELORS, P.C.,
AND BERGER MONTAGUE PC AS INTERIM CO-LEAD COUNSEL
<u>AND FEGAN SCOTT LLC AS LIAISON COUNSEL</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................2

LEGAL STANDARD...............................................................................................................2

ARGUMENT ...........................................................................................................................3

I.    PROPOSED INTERIM CO-LEAD COUNSEL HAVE UNDERTAKEN ALL THE INVESTIGATION AND RESEARCH UNDERPINNING THE ANTITRUST LITIGATION AGAINST THE 568 CARTEL............................................3

II.   PROPOSED INTERIM CO-LEAD COUNSEL HAVE SUBSTANTIAL EXPERIENCE IN LEADING THE LITIGATION OF ANTITRUST CLASS ACTIONS, AND ARE PROMINENT FIGURES IN THE ANTITRUST BAR ................4

      A.    Roche Freedman ................................................................................................4

      B.    Gilbert Litigators & Counselors........................................................................6

      C.    Berger Montague ................................................................................................8

III.  PROPOSED INTERIM CO-LEAD COUNSEL WILL COMMIT THE TIME, STAFFING, AND FINANCES NECESSARY TO PROSECUTE THIS ACTION.........12

IV.  PROPOSED LIAISON COUNSEL IN THE NORTHERN DISTRICT OF ILLINOIS...............................................................................................................13

CONCLUSION.......................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Hedick v. Kraft Heinz Co.*,
  Case No. 19-cv-1339, 2019 WL 4958238 (N.D. Ill. Oct. 8, 2019) ............................................. 3

*In re Circuit Breaker Litigation*,
  984 F. Supp. 1267 (C.D. Cal. 1997) ........................................................................................ 8

*In re Clearview AI, Inc. v. Consumer Privacy Litig.*,
  Case No. 21 C 0135, 2021 WL 916056 (N.D. Ill. Mar. 10, 2021) ........................................ 2, 3

*In re Fairlife Milk Prods. Mktg. & Sales Practices Litig.*,
  Master Case No. 19-cv-3924, 2020 WL 526051 (N.D. Ill. Jan. 22, 2020) ................................ 4

*In re Interest Rate Swaps Antitrust Litig.*,
  16- MC-2704 (PAE), 2016 WL 4131846 (S.D.N.Y. Aug. 3, 2016) ........................................ 14

*Moehrl v. Nat'l Ass'n of Realtors*,
  No. 19-cv-01610, 2020 WL 5260511 (N.D. Ill. May 30, 2020) ................................................ 4

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................. 2, 3, 4, 12

Plaintiffs, individually and on behalf of all others similarly situated, respectfully submit this memorandum in support of their motion to appoint their undersigned counsel as interim co-lead counsel for the proposed Class ("Proposed Interim Co-Lead Counsel"), and as liaison counsel.

## INTRODUCTION

This case is a proposed antitrust class action against sixteen of the country's most elite, private, national universities arising from their alleged unlawful conspiracy to reduce the amount of financial aid they provide to admitted students. Class members include former and current students, and their parents or guardians, who paid artificially high net prices of attendance as result of the artificially low amount of financial aid these students received from Defendants.

Proposed Interim Co-Lead Counsel are responsible for researching the nature and extent of the illegal conspiracy; conducting original analyses of, investigating, and documenting the underlying violations of the statutory exemption under which Defendants purport to operate; and, after having been retained by certain named plaintiffs, consulting extensively with an experienced Ph.D. economist with antitrust expertise regarding the conduct at issue. This team of attorneys brings a strong combination of antitrust and class-action expertise. *See* Declarations of Kyle W. Roche ("Roche Decl.") (Ex. A), Robert D. Gilbert ("Gilbert Decl.") (Ex. B), Eric L. Cramer ("Cramer Decl.") (Ex. C), and Elizabeth A. Fegan ("Fegan Decl.") (Ex. D).

Roche Freedman LLP's litigation team has such expertise and includes Eric Rosen, the former lead prosecutor in the "Varsity Blues" college-admissions scandal. Robert D. Gilbert, of Gilbert Litigators & Counselors, P.C., helped develop this case for over a year, assembled the Proposed Interim Co-Lead Counsel team, and is a former litigation partner at prominent international law firms. Berger Montague PC is a well-established antitrust litigation powerhouse whose team here includes Eric L. Cramer, who has led class actions that have recovered well over

$3 billion in settlements; and Robert E. Litan, the former Department of Justice official who in 1994 resolved the "Overlap Group" case involving similar alleged misconduct as at issue here.

## BACKGROUND

Plaintiffs are current and former students who received need-based financial aid grants from Defendants. These universities are members of the 568 Presidents Group (or "568 Cartel"), a combination that conspires to agree on a common formula for determining the net price charged to students applying for financial aid. This alleged price-fixing conspiracy has suppressed financial aid and thereby substantially increased net prices for tuition, room and board to more than 170,000 students who attend or have attended these elite, expensive universities. Compl. ¶¶ 87-119.

This alleged conduct violates the antitrust exemption in Section 568 of the Improving America's Schools Act of 1994. The exemption permits a group of undergraduate institutions to engage in certain price-fixing activity if and only if they admit all students "on a need blind basis," defined to mean "without regard to the financial circumstances of the student involved or the student's family." In several respects, Defendants have not satisfied the exemption, meaning that their price-fixing activities in fact are not exempt from the antitrust laws. *Id*. ¶¶ 120-73.

## LEGAL STANDARD

Under Fed. R. Civ. P. 23(g)(3), the Court has discretion whether to appoint class counsel before class certification. "Designating interim class counsel helps to 'clarify responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.'" *In re Clearview AI, Inc. v. Consumer Privacy Litig.*, Case No. 21 C 0135, 2021 WL 916056, at *1 (N.D. Ill. Mar. 10, 2021) (quoting *Manual for Complex Litigation* § 21.11 (2020)). "The Court should not disturb the lead plaintiff's choice of class counsel unless necessary

to protect the interests of the class." *Hedick v. Kraft Heinz Co.*, Case No. 19-cv-1339, 2019 WL 4958238, at *11 (N.D. Ill. Oct. 8, 2019) (cleaned up).

A court considering whether to appoint interim class counsel, and plaintiffs' choice of counsel in that context, is to consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A); *see, e.g.*, *Clearview*, 2021 WL 916056, at *1.

## ARGUMENT

**I.    PROPOSED INTERIM CO-LEAD COUNSEL HAVE UNDERTAKEN ALL THE INVESTIGATION AND RESEARCH UNDERPINNING THE ANTITRUST LITIGATION AGAINST THE 568 CARTEL**

Under Fed. R. Civ. P. 23 (g)(1)(A)(i), the Court is to consider "the work counsel has done in identifying or investigating" claims in the present action when weighing the appointment of lead counsel, including which counsel "has taken the lead in aggressively moving this litigation forward." *Clearview*, 2021 WL 916056, at *1. This class action would not exist but for Proposed Interim Co-Lead Counsel's diligence, resourcefulness, and investment of time and resources.

After having been retained by certain named plaintiffs, Proposed Interim Co-Lead Counsel consulted extensively with a Ph.D. economist with antitrust expertise; and drafted, filed, and served the Complaint, summons, and related materials on Defendants. Counsel has also diligently prosecuted the litigation to date—including by following the Court's directive in its Order dated January 10, 2022 (ECF No. 8), initiating the process of meeting and conferring with counsel for Defendants to submit a Joint Status Report with the Court by February 15, 2022, and to preparing to participate in a case management conference on February 22, 2022. These scheduling matters underscore the utility of the Court, in its discretion, to appoint interim class counsel. In addressing

3

these preliminary matters, moreover—as in putting together and filing the Complaint—Plaintiffs' team of lawyers has demonstrated the ability to work well with each other and intend to implement protocols to ensure the efficient, non-duplicative, and cost-effective prosecution of this matter. The Court should credit counsel for their innovative and diligent work to date.

## II. PROPOSED INTERIM CO-LEAD COUNSEL HAVE SUBSTANTIAL EXPERIENCE IN LEADING THE LITIGATION OF ANTITRUST CLASS ACTIONS, AND ARE PROMINENT FIGURES IN THE ANTITRUST BAR

Under Fed. R. Civ. P. 23(g)(1)(A)(ii), the Court is to consider counsel's experience "in handling class actions, other complex litigation, and the types of claims asserted in the [present] action." Under Fed. R. Civ. P. 23(g)(1)(A)(iii), the Court is to consider "counsel's knowledge of the applicable law." Given these factors, "it is not unusual for multiple firms to serve as interim co-lead counsel," *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 WL 5260511, at *2 (N.D. Ill. May 30, 2020) (collecting precedent), such as where "a three-firm leadership structure is warranted in light of the magnitude and complexity of this action," *id*., and where the firms have "an appreciation for the complexity of the action," *id*. (quotations omitted). Plaintiffs here stand to benefit from "the cross-fertilization of ideas from multiple law firms." *In re Fairlife Milk Prods. Mktg. & Sales Practices Litig.*, Master Case No. 19-cv-3924, 2020 WL 526051, at *3 (N.D. Ill. Jan. 22, 2020). The attached declarations describe the relevant backgrounds of the law firms and attorneys working on this matter, which are summarized below.

### A. Roche Freedman

Roche Freedman's lawyers have litigated antitrust claims for both plaintiffs and defendants for more than a decade, with substantial antitrust expertise.

Kyle Roche is a founding partner of Roche Freedman. He is an experienced trial attorney who represents both plaintiffs and defendants in antitrust, securities, and market-manipulation actions. Over the past two years, he has led the Roche Freedman team appointed as lead or co-

lead counsel in over fifteen class actions, including numerous multi-billion-dollar actions arising from first-of-its-kind litigation in the cryptocurrency space. *See, e.g.*, *In re Tether & Bitfinex Crypto Asset Litig.*, No. 19-cv-9236-KPF (S.D.N.Y.) (antitrust litigation concerning multibillion-dollar crypto market-manipulation scheme); *Lee v. Binance*, No. 1:20-cv-02803-ALC (S.D.N.Y.) (multibillion-dollar unregistered securities offering); *Valenti v. Dfinity USA Research LLC, et al.*, No. 21-cv-06118-JD (N.D. Cal.) (multibillion-dollar insider trading class action). Most recently, Mr. Roche served as lead trial counsel in a civil dispute in the Southern District of Florida, securing a $100 million verdict on behalf of his client—one of the largest verdicts of 2021. *Kleiman v. Wright*, No. 18-CV-80176 (S.D. Fla. Sept. 21, 2020). *See* Roche Decl. ¶ 2.

Edward Normand is also a founding partner of Roche Freedman. In addition to working on many of Roche Freedman's antitrust and other class actions (described both above and below), Mr. Normand represented both plaintiffs and defendants in class action, securities, and antitrust matters at Boies Schiller Flexner LLP for more than two decades. For example, Mr. Normand represented Vanguard in an opt-out from the recent securities class action against *ARCP, In re American Realty Capital Props., Inc. Litig.*, 1:15-mc-00040- AKH (S.D.N.Y.); represented a class of employee health benefit plans in an ERISA action against Merck-Medco arising out of the management of pharmaceutical benefits, *C. States Southeast v. Merck-Medco*, 7:03-md-01508 (S.D.N.Y.); and represented EchoStar in connection with its efforts to obtain FCC approval under the antitrust laws to acquire DirecTV. *See* Roche Decl. ¶ 3.

Eric Rosen is a nationally recognized former federal prosecutor. From May 2012 through October 2020, Mr. Rosen was an Assistant United States Attorney in Pittsburgh, Pennsylvania and Boston, Massachusetts. While serving as a federal prosecutor, he prosecuted more than 250 defendants for a wide variety of federal crimes, including: wire and mail fraud, securities fraud,

investor fraud, bribery, health care fraud, drug misbranding, money laundering, drug trafficking, racketeering, smuggling, and firearms offenses. Mr. Rosen was the lead prosecutor in "Operation Varsity Blues," the seminal case widely known as the college admissions scandal, one of the largest white-collar crime prosecutions in United States history. *See id*. ¶¶ 4-8.

### B. Gilbert Litigators & Counselors

Gilbert Litigators & Counselors (GLC) is a national litigation boutique. The Firm's founding partners are Robert D. Gilbert and Elpidio ("PD") Villarreal. Mr. Gilbert is a 1982 graduate of the Yale Law School, where he was Senior Editor of the Yale Law Journal. For more than three decades, his practice concentrated on large complex commercial litigation and arbitration, and for approximately two decades he was an equity partner and a lead trial lawyer at AmLaw 100 firms, including at Mayer Brown and Dentons. *See* Gilbert Decl. ¶ 2.

PD Villarreal, a 1985 graduate of Yale Law School, began his career as a Seventh Circuit clerk. He has over 35 years of litigation experience, as a former partner at major national law firm Sonnenschein, Nath & Rosenthal (now part of Dentons) and as chief of litigation for several large multinational companies, including the global head of litigation for GlaxoSmithKline ("GSK") for approximately a decade. He has lectured about litigation, conflict resolution and diversity at multiple elite universities, including Harvard Law School, Yale Law School, Stanford Law School, NYU Stern School of Business, and Notre Dame Mendoza College of Business. At Stern, he also lectures on leadership. In 2016, the Financial Times awarded global recognition to GSK as the "Litigation Team of the Year." Harvard Law School and Harvard Business School each published a separate case study concerning Mr. Villarreal's innovative work in early dispute resolution, and their respective faculties each taught those case studies for several years. *See* Gilbert Decl. ¶ 4.

Mr. Villarreal has particularly deep experience in complex litigation, including class actions, antitrust, product liability, intellectual property, and commercial litigation. He has

6

managed a wide variety of significant antitrust and other actions involving GSK pharmaceutical products such as Asacol, Avandia, Lamictal, Namenda, and Paxil where the claimed damages in each litigation were many billions of dollars. He managed multiple leading national defense counsel, created litigation strategy and saw that it was implemented, analyzed voluminous documents, edited memoranda of law prepared by leading law firms, led difficult negotiations to resolve the litigations, attended numerous contested proceedings in federal courts, in depositions, and took the leading role at settlement conferences on these multi-billion dollar matters. *See* Gilbert Decl. ¶¶ 5-6.

Working for over a year on the development of this lawsuit and the assembly of this Proposed Interim Co-lead Counsel team, Mr. Gilbert spent hundreds of hours investigating the relevant facts, considering the relevant law, assessing the economic impact of Defendants' conduct, and formally analyzing the prospective bases for liability against Defendants and the damage they have caused. *See* Gilbert Decl. ¶ 3. He has extensive litigation experience concerning disputes in which hundreds of millions of dollars or billions of dollars are in dispute. As lead counsel, he has represented several Fortune 100 and large multinational corporations, including Samsung, General Electric, Hyundai Heavy Industries, and GlaxoSmithKline in commercial litigation, including the representation of Samsung as lead counsel in a multi-billion dollar arbitration with SanDisk while he was a partner at Mayer Brown. He has been repeatedly selected as a New York Super Lawyer for commercial litigation, and his litigation approach has been described by the Legal 500 as "creative, thorough and aggressive." In the mid-1990s, while Litigation Counsel at General Electric's Corporate Headquarters, Mr. Gilbert managed and directed the defense of GE in a major antitrust case that alleged collusion among GE,

7

Westinghouse and Square D in the national circuit breaker market. *In re Circuit Breaker Litigation*, 984 F. Supp. 1267 (C.D. Cal. 1997). *See* Gilbert Decl. ¶ 2.

Robert Raymar, Special Counsel for the firm, has had a long and distinguished legal career. After graduating from Yale Law School in 1972, where he was an Editor of the Yale Law Journal, he became a law clerk to Judge Leonard Garth of the United States District Court for the District of New Jersey and United States Court of Appeals for the Third Circuit. He subsequently served as assistant legal counsel to the Governor of New Jersey, as a deputy attorney general for the State of New Jersey in the Division of Criminal Justice and as a member of the New Jersey Executive Commission on Ethical Standards. He has had over forty years' experience in private practice litigating complex commercial cases. He has been repeatedly selected as a top-rated litigation attorney by Super Lawyers. Mr. Raymar also has extensive experience in matters involving significant, national, public-policy issues. *See* Gilbert Decl. ¶¶ 7-8.

### C. Berger Montague

Described by *Chambers & Partners* as a "[b]outique firm with deep expertise in complex antitrust litigation," Berger Montague PC pioneered the antitrust class action and has been engaged in the practice of complex and class action litigation for more than fifty years. Since its founding by David Berger—one of the "fathers of the class action practice"—Berger Montague has been a leading national advocate for clients and class members in many of the most important complex antitrust cases ever litigated, including, more recently, the largest private antitrust settlement ever achieved (approximately $5.62 billion) in the *Payment Card Interchange Fee & Merchant Discount Antitrust Litig. (In re Payment Card)*, MDL No. 1720 (E.D.N.Y.). The firm is headquartered in Philadelphia with offices in San Diego, Minneapolis, San Francisco, and Washington, DC. *See* Cramer Decl. ¶ 2.

Berger Montague PC is currently lead or co-lead counsel in more than two dozen of the largest and most complex antitrust class actions in courts around the country, including *In re Google Digital Advertising Antitrust Litig.*, No. 21-md-3010 (S.D.N.Y.) (co-lead counsel for the class of publishers against Google); *Fusion Elite All Stars v. Varsity Brands LLC*, No. 20-cv-3390 (E.D. Pa.) (co-lead counsel for the class of gyms against an alleged monopolist in the All-Star Cheer market); *In re Geisinger Health and Evangelical Community Hospital Healthcare Workers Antitrust Litig.*, No. 21-cv-00196 (M.D. Pa.) (co-lead counsel for class of healthcare workers); *In re Broiler Chicken Grower Antitrust Litig. (No. II)*, No. 20-md-02977 (E.D. Okla.) (co-lead counsel for class of chicken farmers); *In re Niaspan Antitrust Litig.*, No. 13-md-2460 (E.D. Pa.) (co-lead counsel for the class of direct purchasers) (co-lead counsel for class of direct purchasers of pharmaceutical products); and *In re Opana ER Antitrust Litig.*, No. 14-cv-10150 (N.D. Ill.) (co-lead counsel for the class of direct purchasers) (co-lead counsel for class of direct purchasers of pharmaceutical products). *See* Cramer Decl. ¶ 3.

The firm has won verdicts and settlements recovering over $40 billion for clients and class members. Examples of recent successes in antitrust class actions include *In re Payment Card*, No. 05-md-1720 (S.D.N.Y.) (class settlement of approximately $5.6 billion); *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-cv-7488 (S.D.N.Y.) ($750 million class settlement); *King Drug Co. v. Cephalon, Inc.*, No. 06-cv-01797 (E.D. Pa.) ($512 million class settlement); and *In re Domestic Drywall Antitrust Litig.*, No. 13-2437 (E.D. Pa.) (class settlements totaling $190.7 million). *See* Cramer Decl. ¶¶ 4-5.

The Berger Montague team helping to manage this case on a day-to-day basis will be Eric L. Cramer, Caitlin G. Coslett, Robert E. Litan, and Daniel J. Walker.

Mr. Cramer is Chairman of Berger Montague and is also Co-Chair of the Firm's antitrust department. He has a national practice in the field of complex litigation, primarily in antitrust. He is currently co-lead counsel in multiple significant antitrust class actions in a variety of industries and is responsible for winning numerous significant settlements for his clients totaling well over $3 billion. Most recently, he has focused on representing workers claiming that anticompetitive practices have suppressed their pay, including cases on behalf of mixed-martial-arts fighters, luxury retail and healthcare workers, and chicken growers. He just finished serving as one of the main trial counsel in a two-week jury trial in *In re Capacitors Antitrust Litig.* (N.D. Cal.), which resulted in a $160 million class settlement just before closing arguments. *See* Cramer Decl. ¶ 7.

In 2020, *Law360* named Mr. Cramer a Titan of the Plaintiffs Bar, and *Who's Who Legal* identified him as a Global Elite Thought Leader, stating that he "comes recommended by peers as a top name for antitrust class action proceedings." In 2021, *Chambers & Partners* ranked Mr. Cramer in the top tier nationally in antitrust, observing that "He excels in economic analysis. He is a real leader;" and that he has "a great presence in court and at trial," and is at the "[t]op of the profession; a phenomenal lawyer who is an expert on economics." *See* Cramer Decl. ¶¶ 8-9.

Caitlin G. Coslett, who is a Co-Chair of Berger Montague's Antitrust Department and Shareholder, has a national practice in the field of complex litigation primarily focused on antitrust litigation. Ms. Coslett has been frequently recognized for her efforts. She was named a "Next Generation Lawyer" by the *Legal 500* in the Civil Litigation/Class Actions category in 2019. In 2018, the American Antitrust Institute recognized Ms. Coslett for "Outstanding Antitrust Achievement by a Young Lawyer" for her work on behalf of the direct purchasers in *In re Lidoderm Antitrust Litig.*, No. 14-MD-2521 (N.D. Cal.), in which the direct purchaser class claims settled for $166 million. *See* Cramer Decl. ¶ 10.

Ms. Coslett has a substantial track record of success for the classes she represents. As co-lead counsel in *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 1:14-md-2503 (D. Mass.), Ms. Coslett achieved a settlement of over $70 million in 2017. *See also In re Domestic Drywall*, No. 13-md-2437 (E.D. Pa.) (Ms. Coslett worked on the lead counsel team achieving $190 million in settlements); *In re Payment Card*, MDL No. 1720 (E.D.N.Y.) (on team achieving settlement in excess of $5.6 billion); *In re Skelaxin Antitrust Litig.*, No. 12-md-2343 (E.D. Tenn.) ($73 million settlement in 2014). Ms. Coslett also played a significant role in the post-trial litigation of *Cook v. Rockwell Int'l Corp.*, No. 90-cv-181 (D. Colo.), a mass tort class action brought on behalf of property owners near a nuclear plant, which settled for $375 million after two appeals to the Tenth Circuit Court of Appeals. In addition to her litigation work and leading the firm's antitrust group, Ms. Coslett is a member of the firm's Diversity, Equity, and Inclusion Task Force and a member of the LGBTQ community. *See* Cramer Decl. ¶ 11.

Robert E. Litan is both an experienced antitrust attorney and a Ph.D. economist, with an extensive 40-plus year research publication record (as author or co-author of 30 books and over 250 articles in academic and popular publications) and economic expert testifying experience in over 20 legal or administrative matters. He has brought that experience to his class action antitrust litigation practice, working with economic experts and on economic aspects of antitrust matters, including his work on this matter, his ongoing work in *In Re Google Digital Advertising Litig*, and his prior work with economic experts in *In Re Foreign Exchange Benchmark Rates Antitrust Litig.* (S.D.N.Y., No. 13 Civ. 7789 (LGS), and *In Re Google Play Consumer Antitrust Litig.* (N.D. Cal., No. 3:20-CV-05761-JD). *See* Cramer Decl. ¶ 12.

Mr. Litan is also a former Deputy Assistant Attorney General in the Justice Department's Antitrust Division, where, among other things, he directed the Department's first investigation of

11

monopolization by Microsoft (which resulted in a consent decree in 1994), the initial stages of the Department's price-fixing investigation of NASDAQ (which also resulted in a consent decree in 1997), and personally directed the Department's settlement reached in December 1993 with the remaining Defendant, MIT, that did not sign an earlier consent decree in the Department's investigation of financial aid price-fixing through the "Overlap Agreement" between universities in the Ivy League and MIT. The terms of the DOJ-MIT settlement were partially incorporated into the text of the Section 568 antitrust exemption, at issue in this case. *See* Cramer Decl. ¶ 13.

Daniel J. Walker is a Shareholder and member of the firm's antitrust department and practices in Washington, DC, where he has been named a Super Lawyer for 2020-2021. Mr. Walker rejoined the firm in 2017 from the Federal Trade Commission, where he was an attorney in the Health Care Division. Mr. Walker litigates complex cases on behalf of consumers and workers and has helped recover hundreds of millions of dollars on behalf of plaintiffs. Significant past successes include *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-2472 (D.R.I.) (settlements totaling $120 million for purchasers of hormonal birth control pills), *In re High Tech Employee Antitrust Litig.*, No. 11-cv-2509 (N.D. Cal.) (settlements totaling $435 million for workers in the high tech industry), *Adriana Castro, M.D., P.A., et al. v. Sanofi Pasteur Inc.*, No. 11-cv-07178 (D.N.J.) ($61.5 million settlement on behalf of pediatricians who purchased meningococcal vaccine), and *In re Titanium Dioxide Antitrust Litig.*, No. 10-cv-318 (D. Md.) (settlements totaling $163.5 million for purchasers of titanium dioxide). *See* Cramer Decl. ¶ 14.

### III. PROPOSED INTERIM CO-LEAD COUNSEL WILL COMMIT THE TIME, STAFFING, AND FINANCES NECESSARY TO PROSECUTE THIS ACTION

Counsel responsible for prosecuting Plaintiffs' claims must be able to dedicate significant resources to advance the claims of the two proposed classes. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv). Proposed Interim Co-Lead Counsel have the resources to advance this action, for all of the reasons

shown above, and in this context the "Court gives some weight to plaintiffs' 'self selection' of class counsel." *Moehrl*, 2020 WL 5260511, at *2 (quotations omitted). Plaintiffs face a lengthy and resource-intensive fight. Defendants are deep-pocketed institutions, with multi-billion-dollar endowments and the resources to hire world-class defense counsel. Proposed Interim Co-Lead Counsel have the time and monetary resources, as well as the necessary roster of talented attorneys and capable professional staff, to litigate Plaintiffs' claims efficiently and aggressively, and to pursue all fact and expert discovery that may be necessary to prove their claims.

## IV. PROPOSED LIAISON COUNSEL IN THE NORTHERN DISTRICT OF ILLINOIS

After 15 years as Managing Partner of Hagens Berman's Chicago office, Ms. Fegan founded her class action firm, Fegan Scott LLC, in May 2019 to help victims of antitrust violations, fraud, negligence, and abuse. A Chicago native, Ms. Fegan has successfully led nationwide class actions. This Court has recognized her experience, and Illinois federal and state courts have appointed her to Special Master teams overseeing class actions. *See* Fegan Decl. ¶¶ 1-9.

Ms. Fegan was part of the Co-Lead Counsel team, for example, in *In re NCAA Student-Athlete Concussion Injury Litigation*, No. 1:13-cv-9116 (N.D. Ill.) (Lee, J.). The historic nationwide class settlement on behalf of four million current and former NCAA student-athletes received final approval in 2019, resulting in a $70 million, 50-year medical monitoring program to diagnose the short- and long-term effects of concussions and the accumulation of sub-concussive hits. Judge Lee subsequently appointed Ms. Fegan as Lead Counsel in *In Re: TikTok, Inc. Consumer Privacy Litig.*, MDL No. 2948 (N.D. Ill.), in which the Court recently granted preliminary approval of a $92 million settlement. In *Wiginton et al. v. CB Richard Ellis, Inc.*, No. 02 C 6832 (N.D. Ill.) (Andersen, J. ret.), as lead counsel, Ms. Fegan achieved a settlement that conferred up to $150,000 per class member. In *In re Stericycle, Inc., Sterisafe Contract Litig.*,

13

MDL No. 2455, Ms. Fegan was appointed as Class Counsel and Liaison Counsel and played a critical role in implementing the $295 million class settlement. Ms. Fegan also served on special master teams in the Northern District of Illinois and Circuit Court of Cook County, appointed by the courts to manage discovery and oversee class counsel fee petitions in federal and state court class actions. *See In re Waste Mgmt. Sec. Litig.* (N.D. Ill.); *Wolens et al. v. American Airlines* (Cir. Ct. Cook County). Ms. Fegan will provide the Plaintiffs and the proposed class with front-line resources and efficiencies as this case proceeds in this District.

———————

Plaintiffs and Proposed Interim Co-Lead Counsel have filed a first-of-its-kind class action. They "did so not by piggybacking on an existing government investigation or enforcement action, but by undertaking an independent investigation." *In re Interest Rate Swaps Antitrust Litig.*, 16-MC-2704 (PAE), 2016 WL 4131846, at *3 (S.D.N.Y. Aug. 3, 2016). They acted independently, invested hundreds of attorney hours investigating the bases of Plaintiffs' claims. If not for their novel and considerable work to date, the 568 Cartel may have continued to go unchallenged. Proposed Interim Co-Lead Counsel is the right team to lead this case.

14

## CONCLUSION

Plaintiffs respectfully request, for the foregoing reasons, that the Court appoint Roche Freedman, Gilbert Litigators & Counselors, and Berger Montague as Plaintiffs' Interim Co-Lead Class Counsel, and Fegan Scott as Liaison Counsel.

Dated: February 9, 2022

Respectfully submitted,

/s/ Robert D. Gilbert
Robert D. Gilbert
Elpidio Villarreal
**GILBERT LITIGATORS & COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Telephone: 646-448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com

/s/ Kyle W. Roche
Kyle W. Roche
Edward Normand
Eric Rosen
Peter Bach-y-Rita
**ROCHE FREEDMAN LLP**
99 Park Avenue, 19th Floor
New York, NY 10016
Tel: (646) 350-0527
kyle@rochefreedman.com
tnormand@rochefreedman.com
erosen@rochefreedman.com
pbachyrita@rochefreedman.com

/s/ Eric L. Cramer
Eric L. Cramer
Caitlin Coslett
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 875-3000
ecramer@bm.net
ccoslett@bm.net

/s/ Elizabeth A. Fegan
Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 S. Wacker Dr., 24th floor
Chicago, IL 60606
Tel: (312) 741-1019
beth@feganscott.com

Robert E. Litan*
Daniel J. Walker*
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Phone: (202) 559-9745
rlitan@bm.net
dwalker@bm.net