**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SIA HENRY, MICHAEL MAERLANDER, BRANDON PIYEVSKY, KARA SAFFRIN, and BRITTANY TATIANA WEAVER, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No.: 22-cv-00125 |
| v. | Hon. Matthew F. Kennelly |
| BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, | |
| Defendants. | |

## JOINT STATUS REPORT

The parties submit the following joint status report pursuant to the Court's Order dated January 10, 2022:

**(1)    The status of service of process upon each defendant**

All defendant Universities have been served and appeared in this case.[1]  All of the service packets included a copy of the Court's Order dated January 10, 2022, setting a case management conference for February 22, 2022.

**(2)    A description of each party's claims and defenses**

**Students' and Families' Statement.** This is a proposed class action for Defendants' alleged violations of the federal antitrust laws. Defendants are current and former members of an organization that calls itself the "568 Presidents Group" (also known as the 568 Cartel). This group, according to its website, has met continuously since approximately 1998 to agree on and fix a common formula (the "Consensus Methodology") for determining an undergraduate student's expected family contribution towards tuition and related costs and expenses, which is the primary determinant of the net price of attendance charged to that student. Most Defendants adopted the Consensus Methodology in 2003 or 2004. According to the website of the 568 Cartel, the "purposes" of the Cartel include to "discuss and *agree* upon common principles of analysis for determining a financial need of undergraduate financial aid applicants…." (italics added).

Defendants have engaged in this alleged conspiracy in reliance on a statutory exemption from the antitrust laws for conspiracies among "2 or more institutions of higher education at which all students admitted are admitted on a need-blind basis." 15 U.S.C § 1, Note. The term "need blind basis" is defined to mean "without regard to the financial circumstances of the student involved or the student's family." *Id*. Plaintiffs currently allege that at least seven Defendants have

---

[1] Defendants state that at least some of the service packets failed to include a summons, in violation of Federal Rule of Civil Procedure 4(c), and that defect in service has been brought to Plaintiffs' attention. Plaintiffs state that the affidavits of service that Plaintiffs have received all say that each Defendant was served with the complaint and summons. If those affidavits are inaccurate, Plaintiffs will complete service within the time allotted under the Federal Rules of Civil Procedure.

systematically failed to admit all successful applicants "without regard the financial circumstances of the student involved or the student's family," including because they have considered the financial needs of students in deciding whom to admit from the waitlist and have given preferences to students from families with significant financial capacity as part of enrollment management. These allegations mean that, within the conspiracy among all defendants, not "all students" are admitted on a "need-blind" basis, rendering the exemption inapplicable.

Plaintiffs are current and former students, and parents, legal guardians, and family members of students, who attended the Defendant institutions since approximately 2004 and, because of the conspiracy, have paid artificially high net prices of attendance. Plaintiffs seek an injunction and monetary damages.

**Universities' Statement.**  Defendants are sixteen non-profit universities that make up a subset of current and former members of the 568 Presidents Group.  As Congress intended, this group—whose membership, mission, and methodology have been publicly known for nearly two decades—has worked to develop a transparent, flexible process for assessing families' ability to contribute to the costs of an education.  This voluntary process is intended to be a complementary option to other financial aid methodologies that exist for the same purpose, including the "federal" methodology developed by Congress (i.e., Free Application for Federal Student Aid), and the "institutional" methodology developed by College Board (i.e., the CSS Profile).  Each member individually determines whether and to what extent to use the process, and whether to use it alone or in conjunction with these other methodologies, to help remove financial need as a barrier to attending college.  The group does not require adherence to any particular financial aid methodology, does not set tuition at any school, does not discuss or determine the amount of the

financial aid package that any student is offered, and does not determine whether any student's financial need will be met through grants, loans, or a combination thereof.

Plaintiffs' challenge is meritless and time-barred, as the Universities will show in their forthcoming motion to dismiss.[2]  Among other grounds, the Universities intend to argue that (1) the use of "common principles of analysis for determining the need of students for that aid" is exempted from the antitrust laws under Section 568 of the Improving America's Schools Act of 1994, 15 U.S.C. § 1 note, and Plaintiffs have not plausibly alleged that the exemption does not apply; (2) Plaintiffs have not plausibly alleged a violation of the antitrust laws under a per se theory, *see, e.g.*, *United States v. Brown Univ. in Providence in State of R.I.*, 5 F.3d 658, 670-79 (3d Cir. 1993); *Massachusetts Sch. of Law at Andover, Inc. v. ABA*, 853 F. Supp. 837, *amended*, 857 F. Supp. 455 (E.D. Pa. 1994); (3) Plaintiffs have not plausibly stated a claim under the rule of reason because (among other things) their proposed relevant market for "Elite, Private Universities"—purportedly based on an arbitrary cutoff of schools with an average ranking of 25 or higher by the U.S. News and World Report from 2003 through 2021—is contrived solely for this litigation, contrary to common knowledge, and economically implausible; and (4) Plaintiffs' claim—which is based on public sources dating back many years—is barred by the four-year statute of limitations, *see* 15 U.S.C. § 15b.

Moreover, if the complaint is not dismissed at the pleading stage, the Universities intend to show that the putative class would fail to meet the standards for class certification under Federal

---

[2] Plaintiffs' amended complaint is due today; the Universities' position is based on the allegations in the original complaint, and additional issues may arise based on Plaintiffs' amendments.  The Universities are coordinating their responses to the complaint but reserve their rights to file multiple briefs in support of their motion to dismiss, consistent with the Court's rules and individual practices setting page limits, in light of potentially material differences among the Universities identified in the complaint (e.g., ¶¶ 6-7, 200).  The Universities will of course endeavor to minimize the number of briefs filed and the burden on the Court.

Rule of Civil Procedure 23(a) or (b)(3), given the pervasiveness of individualized issues (among other reasons). Finally, any evidence uncovered during discovery would not support liability in any event.

**(3)    Details regarding any discussions concerning settlement, whether before or after the filing of the lawsuit**

**Students' and Families' Position:** Plaintiffs have proposed to Defendants that, considering the national significance of this case and the enormous potential financial and reputational stakes for Defendants, the early and ongoing involvement of a preeminent mediator, of national stature, would potentially benefit all parties. Any such involvement would proceed in parallel with the litigation of the case. Defendants have declined at this time to consider any such process, or otherwise to discuss settlement. *Cf.* Instructions for Settlement Conference for Cases Assigned to U.S. District Judge Matthew F. Kennelly, at 1 (N.D. Ill. Aug. 19, 1999).

**Universities' Position:** The Universities believe that Plaintiffs' allegations and theories are implausible and meritless, and do not believe that mediation or settlement discussions would be productive at this time.

**(4)    A proposed discovery and pretrial schedule**

Plaintiffs' proposed schedule is attached as Appendix 1. Defendants' proposed schedule is attached as Appendix 2. Each of these schedule proposals is discussed below

**Students' and Families' Position**

**A.    Students' and Families' Statement Regarding Their Proposed Schedule**

Plaintiffs' proposed schedule is based on best practices and modern class certification jurisprudence as implemented successfully in dozens of recent antitrust class actions. It will provide for orderly, fair, and efficient litigation of this important case consistent with Fed. R. Civ.

P. 1. Defendants' proposal would impose two lengthy proposed stays (pending the briefing on the motion dismiss and a separate stay pending a decision on class certification); provide for a short and wholly inadequate fact discovery period for a case of this magnitude; include two rounds of expensive and redundant expert reports; and would absurdly allow Defendants to depose each Plaintiffs' expert *four times*. By contrast, Plaintiffs' schedule provides sufficient time for fact discovery on behalf of hundreds of thousands of students against sixteen sophisticated defendants regarding conduct going back decades, while getting this case to trial in all likelihood *two or more years* before Defendants' proposal.

Based on multiple recent cases litigated by the undersigned: Plaintiffs' proposed schedule proposes a single fact discovery period for all issues relating to class certification and merits; followed by a single expert discovery period for all issues (including class and merits); followed by briefing on class certification and a single round of *Daubert* motions; followed by a hearing on class certification; and then briefing on summary judgment and trial. Plaintiffs' counsel have successfully litigated multiple prior complex antitrust cases with schedules similar to what Plaintiffs propose here, often with the agreement of the defendants. *See* Exhibits 1-7 (several courts adopting analogous processes and schedule for litigating antitrust class actions).[3]

---

[3] *See, e.g.*, Ex. 1, Case Mgmt. Order, *In Re: Geisinger Health and Evangelical Community Hosp. Healthcare Workers Antitrust Litig.*, No. 4:21-cv-00196-MWB (M.D. Pa. Feb. 7, 2022); Ex. 2, Case Management Order No. 1, *In re: Broiler Chicken Grower Antitrust Litig.*, No. 6:17-cv-00033-RJS-SPS (E.D. Okla. Apr. 13, 2020) ("Broilers I"), ECF No. 312; Ex. 3, Stipulated Order Regarding Amended Case Schedule As Modified, *Simon and Simon, PC, et al. v. Align Tech., Inc.*, No. 3:20-cv-03754-VC (N.D. Cal.) ("Align"); Ex. 4, Further Amended Scheduling Order, *In re Lipitor Antitrust Litig.*, No. 3:12-cv-02389-PGS-DEA (D.N.J. Oct. 1, 2019), ECF No. 899; Ex. 5, Corrected Seventh Amended Scheduling Order, *In re: Niaspan Antitrust Litig.*, No. 13-MD-2460 (E.D. Pa. Nov. 16, 2018), ECF No. 570; Ex. 6, Scheduling Order at 1, *In re Dental Supplies Antitrust Litig.*, No. 16-cv-696 (BMC)(GRB) (E.D.N.Y. April 10, 2017), ECF No. 177; Ex. 7, Discovery Plan and Scheduling Order at 1, *Le v. Zuffa, LLC*, No. 2-15-cv-01045-RFB-(PAL) (D. Nev. Oct. 14, 2016), ECF No. 311.

Defendants' proposed schedule, by comparison, is antiquated (given the current standards for class certification), plainly inefficient, wholly inadequate for the parties' fact discovery needs in this complex and important case, and unnecessarily burdensome and expensive. The root cause of this inefficiency is that Defendants' proposed schedule calls for two almost entirely redundant and separate rounds of expert reports and depositions—back-to-back—one for reports pertaining to class certification, and then another pertaining to the merits of the case. As discussed below, under modern class certification law and practice, the parties' class certification expert reports and merits expert reports will cover the same issues with the same specificity. They should be done once not twice.

Even worse, under Defendants' proposed schedule, the parties would engage in seven months of briefing and expert discovery solely devoted to Plaintiffs' motion for class certification. And instead of running class and *Daubert* briefing simultaneously (as Plaintiffs propose), Defendants' schedule allots five months for class certification briefing, to be immediately followed by six weeks of *Daubert* briefing relating to class certification. Further, although Defendants did not provide a schedule post-class certification, Defendants will inevitably propose a similarly drawn-out schedule for merits experts, *Daubert* briefing relating to merits expert reports, and summary judgment. On top of this inefficiency, for each round of redundant expert reports, Defendants would provide for two depositions of Plaintiffs' experts. If Defendants' schedule were fully implemented, then, there would two rounds of entirely redundant expert reports, four depositions for each Plaintiffs' expert, and two rounds of redundant Daubert briefing.

And, of course, as part of Defendants' multi-month redundant and inefficient process, Defendants propose an indefinite but likely year-long stay following until the Court can hold a hearing on and then decide class certification. While it may benefit Defendants to impose an *Alice-*

*in-Wonderland* process on their own students, whereby Plaintiff students are required to put forward multiple briefs and expert reports on the same topics, and have their experts sit for four depositions on the same subjects, and be forced to spend millions of dollars on redundant and unnecessary procedures again and again, never getting to trial, Defendants' proposed schedule would be flatly inconsistent with the Federal Rules, notions of justice, and common sense. Defendants' proposal is even more egregious given that during the many years that Defendants would have Plaintiffs run the gauntlet to get to trial, Defendants can continue their cartel whose purpose is to overcharge and injure their own students.

Defendants attempt to hide the inefficiency of this proposed schedule by sandwiching an unduly short fact discovery period of 12 months between their two stays. There is no doubt that the negotiation of custodians, search methodologies, and issues relating to the scope of discovery will take many months by themselves *before a single document is produced*. Assuming that Defendants will have, collectively, many thousands of documents to produce, as well as reams of data, that will take at least a few months for Defendants to accomplish. And of course, before Plaintiffs can take any depositions in a case involving sixteen defendants and evidence from multiple third parties, Plaintiffs need to review and digest the productions and prepare for the depositions. Defendants, however, barely provide sufficient time for document production, let alone a full course of necessary discovery.

Under Plaintiffs' proposal, after the single period for fact discovery, there would be one period for expert discovery, where the parties would serve all expert reports for which they have the burden of proof (including class and merits issues), followed by opposition reports, and then rebuttal expert reports. Then all of the experts would be subject to a single deposition each (rather than the *four* expert depositions Defendants propose to take of each plaintiff expert). Thus, all

experts would work from the same, closed factual record in submitting their reports for all issues relevant to the case.

After the close of expert discovery, the parties would then brief Plaintiffs' class certification motion and any *Daubert* motions related thereto.[4] In this way, the parties' class and *Daubert* briefing would be fully informed by the same fact and expert record. That briefing would be closed by April 10, 2025. The Court would subsequently have a class certification hearing at its convenience. Plaintiffs propose that summary judgment motions would then be filed by May 5, 2025.

Many courts in complex antitrust cases have found the structure of Plaintiffs' proposed schedule to be superior. *See, e.g.*, Case Management Order No. 1, *In re: Broiler Chicken Grower Antitrust Litig.*, No. 6:17-cv-00033-RJS-SPS (E.D. Okla. Apr. 13, 2020), ECF No. 312; Stipulated Order Regarding Amended Case Schedule As Modified, *Simon and Simon, PC, et al. v. Align Tech., Inc.*, No. 3:20-cv-03754-VC (N.D. Cal); Further Amended Scheduling Order, *In re Lipitor Antitrust Litig.*, No. 3:12-02389-PGS-DEA (D.N.J. Oct. 1, 2019).

Defendants' alternative is wasteful and unnecessary because, under current jurisprudence, "class" reports and "merits" reports are necessarily similar and almost entirely overlapping. At class certification, Plaintiffs have the burden of showing that their case can be proved with predominantly classwide evidence. *See*, *e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036,

---

[4] As suggested in Plaintiffs' schedule, class certification replies should come after the *Daubert* reply given that Plaintiffs' class certification motion and *Daubert* motions are likely to be relevant to class certification. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1049 (2016) ("Once a district court finds evidence to be admissible, its persuasiveness is, in general, a matter for a jury. Reasonable minds may differ as to whether the average time actually time…calculated is probative of as to the time actually worked by each employee. Resolving that question, however, is the near-exclusive province of the jury. The District Court could have denied class certification on this ground only if it concluded that no reasonable juror could have believed [the expert findings].").

1047-49 (2016); *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 459-60, 467-70 (2013); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (internal quotation marks and citations omitted) (class certification analysis in antitrust cases will "frequently entail overlap with the merits of the plaintiff's underlying claim," because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action"). In short, under Fed. R. Civ. P. 23(b)(3), Plaintiffs must show that their case as a whole or one or more of its constituent parts is capable of proof on a predominantly class-wide basis. *Tyson Foods*, 136 S. Ct. at 1045 ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3).") (quotation omitted).

And the best way to show that Plaintiffs' case *is capable of* class-wide proof *is to lay out workable methods of class-wide proof*. That is what Plaintiffs' experts will do in their class certification reports, and that is also what Plaintiffs' experts will do in their merits reports. Thus, bifurcating expert reports into two separate rounds as Defendants propose would be needlessly expensive, entirely redundant, and wholly inefficient.

Defendants' proposal is also unfair and inefficient because Plaintiffs' motion for class certification is due before the deadlines for Defendants' class certification expert reports, Plaintiffs' rebuttal reports, and the deadlines to depose class certification experts, thereby creating an expert record that is a moving target. In addition, under Plaintiffs' proposal, expert discovery would be closed on all issues before class certification or *Daubert* briefing takes place, ensuring that both sides are working from the same expert record for their briefs.

Finally, Defendants complain about the length of Plaintiffs' schedule (which is much shorter than Defendants'), but Defendants' schedule is unrealistic and will certainly end up in a

much, much more drawn-out schedule. Defendants propose only twelve months for fact discovery in this complex antitrust litigation with sixteen sophisticated defendants, many third parties with relevant information, likely hundreds of thousands of documents, and well over 100 depositions to be taken. Compounding this problem is Defendants' failure to offer interim deadlines for substantial completion of document production. Even if all Defendants were able to produce the hundreds of thousands of responsive documents within six months of the opening of fact discovery, that would leave Plaintiffs only six months to review all such documents, address any discovery issues or follow up (such as addressing privilege log issues), and then take dozens of depositions, since it is unlikely that any party would be ready to commence depositions prior to the documents being produced and digested. In Class Counsel's substantial experience in similar complex cases, additional time is needed to complete discovery.[5]

Defendants' schedule also imposes two stays—one following motion to dismiss briefing and one following class certification. As discussed below, there is no cause to grant a stay here pending resolution of the motion to dismiss. But that aside, it means that Defendants' schedule is entirely open-ended and likely to take far longer than the schedule Plaintiffs propose.

---

[5] In a recent price-fixing case, for example, the district court permitted discovery to commence in August of 2016, with a fact discovery deadline of October of 2019. *See In re Resistors Antitrust Litig.*, No. 15-cv-03820-JD (N.D. Cal.), ECF Nos. 190 (lifting DOJ stay on discovery), 510 (establishing case schedule). In another recent, complex antitrust case, the court opened discovery in October 2020 and contemplates a fact-discovery deadline of February 2022. *See Fusion Elite All Stars et al. v. Varsity Brands, LLC, et al.*, No. 20-cv-02600-SHL (W.D. Tenn.), EFC No. 61. In *Broilers I*, the contemplated discovery period was a year. Other courts are in accord. *See, e.g., In re Capacitors Antitrust Litig.*, No. 14-cv-03264-JD (N.D. Cal.), ECF Nos. 514 (permitting discovery to proceed in January of 2015), 1405 (establishing a fact discovery cutoff of November 2017); *In re Domestic Airline Travel Antitrust Litig.*, No. 15-mc-01404-CKK (D. D.C.), ECF Nos. 152 (providing for over a year of discovery), 290 (later amending the scheduling order and extending the fact discovery by over a further year); *Precision Associates, Inc. et al. v. Panalpina World Transport (Holding) Ltd., et al.*, No. 08-cv-00042-JG (E.D. N.Y.), ECF Nos. 977 (initially opening discovery in December 2013 with a contemplated fact discovery deadline of January 16, 2015), 1130 (later extending the fact discovery deadline to June 25, 2015), 1303 (later extending the fact discovery deadline to September 23, 2015).

In particular, Defendants attempt to justify separate, and back-to-back, rounds of class and merits expert reports by claiming that merits reports would include certain additional topics that would not necessarily be included in class reports. This argument fails for three reasons.

*First*, in asserting that merits issues are "broader" than class issues, Defendants implicitly concede, as they must, that there will be overlap—and indeed likely substantial overlap—in the expert work at both stages. As discussed in detail in this report, the best way to show that Plaintiffs' case is capable of classwide proof is to actually put forward classwide proof on the merits of each of the elements of Plaintiffs' claims—and that is what Plaintiffs' experts will do at the class certification stage. Defendants would then be forced to respond. Thus, there will inevitably be very substantial, if not complete, overlap in the expert reports in both the class certification and merits stages. Indeed, even if Defendants do have broader expert opinions to assert on the merits, there is no reason that they could not simply offer those opinions at the same time as the class certification related points are asserted. That Defendants might want to hold back certain opinions until after class certification is decided does not justify imposing enormous costs on the class or dragging out the case schedule by over a year or more.

*Second*, Defendants assert that under Plaintiffs' proposed schedule, Defendants would be forced to issue class certification expert reports "before [Defendants] know the scope of Plaintiffs' proposed class or classes." But this is plainly wrong. Under Plaintiffs' schedule, Defendants will know the proposed class definition because it will be included in Plaintiffs' opening class certification expert report, and then Defendants' experts will respond on the class issues and Plaintiffs' experts will rebut. Under Plaintiffs' proposed schedule, the class issues will be *more* developed by the time of the class certification motion.

*Third*, separating class and merits reports allows Defendants to take inconsistent positions at each stage. Defendants could hire an expert for class certification who will opine that it is impossible to prove anything on a classwide basis. Then, after class certification is granted, Defendants could hire a second expert who could suddenly be able to run all sorts of classwide analyses to try to prove that there was no violation of the law and no harm to the class. If class and merits issues are combined, any inconsistent positions would be obvious. Of course, the desire to use different experts to take inconsistent positions does not justify burdening Plaintiffs, the class, and the Court with substantial added expense and delay.

In short, Plaintiffs' proposed schedule is more efficient, less costly, and quicker, and Plaintiffs' respectfully request that the Court enter the schedule Plaintiffs propose.

> **B.      Defendants Offer No Justification for a Stay of Discovery While the Motion to Dismiss Is Pending**

Defendants repeatedly state that they intend to seek a stay of discovery pending a resolution of their motion to dismiss. Such a stay is both inefficient and inappropriate.

The mere filing of a motion to dismiss does not entitle a defendant to a stay of discovery. *See SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 945, n.11 (7th Cir. 1988). This Court disfavors stays because they risk bringing resolution of the dispute to a standstill. *See, e.g.*, *New England Carpenters Health & Welfare Fund v. Abbott Labs.*, 2013 WL 690613, at *2 (N.D. Ill. Feb. 20, 2013). The Court may impose a stay of discovery and overcome the presumption that discovery begins immediately after consideration of the following factors: "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Witz v. Great Lakes Educational Loan Servs., Inc.*, 2020

WL 8254382, at *1 (N.D. Ill. July 30, 2020) (quoting *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009)).

The burden of proof is on the party seeking the stay. *See, e.g.*, *Harper v. Cent. Wire, Inc.*, 2020 WL 5230746, at *1 (N.D. Ill. Sept. 2, 2020). "[A] stay of discovery is generally appropriate only when a party raises a potentially dispositive threshold issue such as a challenge to a plaintiff's standing or pending resolution of qualified immunity claims." *Abbott Labs.*, 2013 WL 690613, at *2 (internal quotations and citations omitted). "[O]ne argument that is usually deemed insufficient to support a stay of discovery is that a party intends to file, or has already filed, a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Id.* (quoting *Solomon Realty Co. v. Tim Donut U.S. Ltd.*, 2009 WL 2485992, at *2 (S.D. Ohio Aug. 11, 2009)). This Court recognizes "the time and expense associated with responding to discovery requests," but "especially in nationwide class action suits such as this one, a blanket stay of discovery is not an appropriate way to address those concerns." *Witz v. Great Lakes Educ. Loan Servs.*, 2020 WL 8254382, at *2 (N.D. Ill. July 30, 2020).

Defendants assert that they intend to file a motion to dismiss under Fed. R. Civ. P. 12(b)(6), yet they have not mentioned any extraordinary threshold issue such as standing or qualified immunity that would justify a stay of discovery. Instead, Defendants argue that discovery is expensive and time consuming, but they give no specificity as to why such discovery would be so extraordinary that this case should proceed differently than every other case in which discovery costs money and takes time. Contrary to Defendants' assertions, commencing discovery immediately is most efficient *overall* for all parties and the Court. Moreover, the initial steps of discovery, such as negotiation of custodians, search methodologies, and other issues relating to the scope of discovery—tasks that inevitably occupy the parties for several months before a single

document or any data is produced—will not impose significant burdens on Defendants' operations. Additionally, there are typically documents and data in antitrust class actions that are relatively easy to locate produce—including organization charts, transactional data, and any documents produced in related litigation or government investigations that have already been reviewed for privilege and processed.

The requested stay would also prejudice Plaintiffs and the Class. The alleged conduct is ongoing, and Plaintiffs and members of the Class of students and their families have been overcharged and continue to be overcharged as a result of a systematic denial of competitive financial aid offers. Plaintiff students deserve just and speedy relief for these violations. Many of the class members are just starting out in their adult lives balancing incredible debt burdens. The proposal to stay this case for months or years will impose significant burdens on Plaintiff students and the Class. Moreover, time is not on Plaintiffs' side—witnesses become unavailable, for example, and memories fade over time. Such a delay neither serves the Court nor the public interest as the Court does not expend any resources on the initial phases of discovery and the public's primary interest in an efficient, timely, and just resolution of the case.

Finally, Defendants attempt to justify the stay by offering merits arguments that are implausible, and in any event, unlikely to succeed on a motion to dismiss. For example, Defendants offer the dubious contention that discovery would be wasteful since their actions did not constitute an "agreement" and therefore did not violate antitrust laws. Putting aside that the existence of an agreement is a fact-based issue almost certain not to be resolved on a motion to dismiss, it is contradicted by the official statements of the 568 Presidents Group. For example, the 568 Group's Memorandum of Understanding states that the purpose of the group is to "[d]iscuss and *agree*

*upon common principles* of analysis for determining financial need of undergraduate financial aid applications."[6]

Indeed, Defendants' argument that the Court should dismiss this case, or at least stay discovery for many months in the meantime, boils down to the nonsensical proposition that Defendants never agreed to anything and thus never violated Section 1 of the Sherman Act, even though, according to Defendants' own website, they (1) lobbied Congress for an exemption from Section 1 of the Sherman Act, (2) set up a group for the express purpose of coming to an agreement on the methodology for awarding student aid, (3) stated their intention to use this jointly-agreed methodology to reduce variance in aid among the Defendants, and (4) regularly met, communicated, and coordinated as part of this joint effort. Defendants' argument makes no sense on the merits, but it certainly does not justify a long delay in the resolution of this important case. Further, it is highly unlikely that Defendants would be able to show that they satisfy the 568 exemption given Plaintiffs' allegations that each has violated the requirement imposed by Section 568 that requires them to admit students "without regard to the financial circumstances of the student involved or the student's family." Compl. ¶¶ 125-65.

In sum, Plaintiffs' proposal is more sensible and efficient, fairer to both sides, better for the Court, and less time-consuming and costly. Plaintiffs respectfully request that the Court adopt Plaintiffs' proposed schedule, including by allowing discovery to commence immediately following the upcoming case management conference.

---

[6] The 568 Presidents' Group Memorandum of Understanding, available at *http://www.568group.org/home/sites/default/files/568_MOU_2016_Final.pdf* (last visited Feb. 12, 2022).

**Universities' Proposed Discovery and Pretrial Schedule:**

The Universities propose an expeditious and reasonable schedule that avoids burdening the Court and the parties with potentially needless discovery pending the forthcoming motion to dismiss and fairly and logically sequences subsequent proceedings, if any, to promptly address the numerous obstacles to class certification inherent in Plaintiffs' claim and, if necessary, prepare this case for trial. Plaintiffs' proposed schedule, by contrast, seeks premature and boundless discovery before they have established a cognizable and timely claim; an extended deadline for adding new parties and claims (over a year from now); and the illogical simultaneous scheduling of class and merits expert discovery, when among the very purposes of a prompt class determination is to determine the scope of the matters that merits experts must address.

Because the Universities' anticipated motion to dismiss will address potentially dispositive legal issues and could entirely dispose of or, at a minimum, substantially narrow this lawsuit, the Universities will move in advance of the February 22 hearing for a stay of discovery pending a resolution of their motion (while progressing the case in other ways, as discussed below). Defendants respectfully submit that briefing on that motion—and not a joint status report—is the better venue to bring those issues to the Court's attention, and simply note here that, contrary to Plaintiffs' assertions above, courts in this District routinely stay discovery pending motions to dismiss in antitrust cases given the unique burdens of discovery in these frequently multi-defendant, multi-year cases.[7] Those concerns are particularly acute here, where one reason the 568 exemption was enacted was "preventing needless litigation over the development of principles for

---

[7]   *See, e.g., Black Bear Sports Group, Inc. v. Amateur Hockey Assoc. of Ill., Inc.*, No. 18-8364, Dkt. 23 (N.D. Ill. Feb. 27, 2019) (Kennelly, J.); *Moehrl v. The National Assoc. of Realtors*, No. 19-1610, Dkt. 80 (N.D. Ill. May 29, 2019); *Tichy v. Hyatt Hotels Corp.*, No. 18-1959, Dkt. 55 (N.D. Ill. May 7, 2018); *Organ Recovery Sys., Inc. v. Pres. Sols.*, Inc., 2012 WL 2577500, at *11 (N.D. Ill. July 4, 2012); *DSM Desotech Inc. v. 3D Sys. Corp.*, 2008 WL 4812440, at *3 (N.D. Ill. Oct. 28, 2008); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336-37 (N.D. Ill. 2005).

determining financial need."[8]   During the pendency of a stay, Defendants would work with Plaintiffs to negotiate an appropriate protective order, ESI protocols, and expert protocols so that if the case moves forward, the parties are prepared to commence discovery on any claims that remain.

Plaintiffs also resist the Universities' proposal to sequence class and experts merits discovery, asserting that the scope of class expert discovery and merits expert discovery will be "necessarily similar and almost entirely overlapping."  But there is no reason to believe that will be the case.  Whether or not there will be some overlap between class and merits, there are numerous issues (such as market definition) that will be the subject of expert testimony but may not be relevant to class certification.[9]  Plaintiffs' proposed schedule would also require the parties to complete class expert discovery before Plaintiffs even *file* their motion for class certification, and therefore before the Universities know the scope of Plaintiffs' proposed class or classes.  The Universities submit that the more logical approach, as reflected in their proposed schedule, would be to have expert reports submitted simultaneously with class certification briefing, so it is clear to both sides exactly what target they are aiming at.

In the event that the Court is inclined to set a full case schedule now, the Universities' proposed schedule is set forth below.  The key features of the Universities' proposed schedule are:

- Deadline for amending pleadings/adding parties 8 months after the commencement of discovery.
- Fact discovery period of 12 months—six months shorter than Plaintiffs' proposal.

---

[8] *Prepared Statement by Senator Chuck Grassley of Iowa Chairman, Senate Judiciary Committee Executive Business Meeting*, https://www.grassley.senate.gov/news/news-releases/grassley-statement-executive-business-meeting-3, July 9, 2015.

[9] Plaintiffs' suggestion that the Universities' proposal is unreasonable because it provides for four depositions of an expert is a red herring.  If an expert submits a report on class certification, that expert will be deposed once.  If that same expert submits a separate report with new opinions during the merits phase, the other side would appropriately be entitled to depose that expert on those new opinions.

- Class certification briefing begins immediately following close of fact discovery, immediately followed by class expert *Daubert* briefing, which would be completed one month sooner than under Plaintiffs' proposal.
- Deadlines for merits/trial expert discovery and further proceedings to be set following ruling on class certification.

**Students' and Families' Statement Regarding Discovery.** Within their proposed schedule, meant to account for the substantial fact discovery before the parties, Plaintiffs respectfully propose an expansion on the limits for fact discovery set forth in the Federal Rules of Civil Procedure. This is an antitrust class action against sixteen large institutions, alleging a long-running conspiracy, involving hundreds of individuals, over a long period of time. Defendants are each complex organizations in which the admissions office, the development office, the president's office, and the financial-aid office all interact on issues relevant to this litigation. In addition, the personnel at each of those offices change with some regularity. This proposal seeks to account for those realities, and reflects that the litigation will concern at least the following disputed factual issues, regarding proposed Class Periods for as long as nineteen (19) years:

- Whether, to what extent, and over what period of time Defendants, or any of them, have engaged in need-aware admissions with respect to waitlisted students.

- Whether, to what extent, and over what period of time Defendants, or any of them, have engaged in need-aware admissions with respect to transfer students.

- Whether, to what extent, and over what period of time Defendants, or any of them, have engaged in need-aware admissions through any practice of enrollment management.

- Whether, to what extent, and over what period of time Defendants, or any of them, have engaged in need-aware admissions outside of any practice of enrollment management or for applicants other that waitlisted or transfer students.

- Whether, to what extent, over what period of time, and on what bases large donors to Defendants understood that their donation history would bear on admissions decisions with respect to their children.

- Whether, to what extent, and over what period of time members of the alleged conspiracy agreed to a common formula for determining financial need of admitted students and their families (the "Consensus Methodology"), and the nature of that formula.

19

- Whether, to what extent, and over what period of time each Defendant has employed the Consensus Methodology, within the 568 Cartel, during the relevant Class Periods, as a basis for awarding financial aid.

- Should neither the per se rule nor the quick look mode of analysis apply, whether and to what extent there is a relevant market in which defendants collectively had market power.

- Whether, to what extent, and over what period of time Defendants' employment of the Common Methodology has caused anticompetitive effects, including artificially inflated net prices of attendance for members of the proposed Class at Defendants' universities.

- Whether, to what extent, and over what period of time Defendants' employment of the Common Methodology has cased widespread antitrust injury or impact to members of the proposed Class.

- Whether there exists a reliable method for establishing damages to the proposed Class as a whole or to individual members of the Class.

- Should the per se rule not apply, whether, to what extent, and over what period of time the challenged conspiracy has enabled or realized any potentially valid procompetitive purposes or ends.

- Should the per se rule not apply, whether, to what extent, and over what period of time Defendants, through less intrusive means, could have enabled or realized any potentially valid procompetitive ends.

Considering this breadth of disputed factual issues, Plaintiffs further and respectfully propose that the following deposition discovery is warranted:

- A Rule 30(b)(6) deposition of each Defendant, including, *inter alia*, with respect to the Defendant's admissions practices, regarding the financial circumstances of students or their families in admissions decisions, over the entirety of the Class Period pertaining to the Defendant.

- A fact deposition of the current director of admissions of each Defendant.

- A fact deposition of at least one current member of the admissions department of each Defendant, as a further percipient witness beyond the director of admissions.

- A fact deposition of each of the former directors of admissions for each Defendant during the Class Period pertaining to the Defendant.

- A fact deposition of the current president of each Defendant.

- A fact deposition of each of the former presidents of each Defendant during the Class Period pertaining to the Defendant.

- The transactional data concerning the admissions decisions for each Defendant during the entirely of the Class Period pertaining to that Defendant.

- If necessary, a separate Rule 30(b)(6) deposition for each Defendant of someone qualified to explain the relevant transactional data regarding admissions decisions.

- The transaction data evidencing the financial-aid decisions by each Defendant, and the total amount paid by each Class member to each Defendant, for each of their admitted students during the Class Period pertaining to the Defendant.

- If necessary, a separate Rule 30(b)(6) deposition for each Defendant of someone qualified to explain the relevant transactional data regarding financial aid awarded.

- A fact deposition, if practicable for each Defendant, of a large donor regarding any relationship or understanding of any relationship between donation history and admissions decisions with respect to the donor's children.

- Fact depositions of third-party universities, and non-party participants in 568 Group meetings (if any).

- Fact depositions of commercial providers of enrollment management software and/or enrollment management systems.

In sum, Plaintiffs respectfully propose that the following limits are appropriate to enable Plaintiffs to take the foregoing discovery:

- Approximately 185 fact depositions, or approximately 10 per Defendant, including former officers and presidents, and allowing for 25 fact depositions of third parties.

- These limits on fact depositions would not apply to trial depositions of individuals who were not deposed in discovery but who are identified at trial witnesses by one of the parties.

- Approximately 100 interrogatories directed at each party on, at minimum, the factual issue identified above.

**Universities' Statement Regarding Discovery.** The scope of discovery proposed by Plaintiffs is overbroad, disproportionate to the needs of the case, and underscores the need for a ruling on the Universities' forthcoming motion to dismiss before discovery commences in earnest. Plaintiffs request a fact discovery period of eighteen months, so they can pursue wide-ranging and burdensome discovery from each University (and from non-party universities) for a time period

spanning nearly two decades. Such discovery would include some 180 fact depositions and 1,600 interrogatories just of Defendants. Plaintiffs' claim does not justify their extreme request, even if it survives the forthcoming motion to dismiss.

The Court's order on the motion to dismiss will likely clarify important issues that bear directly on the proper scope of discovery in this case, including the relevant period for discovery on Plaintiffs' claim in light of the four-year statute of limitations. Indeed, to the extent Plaintiffs' claim survives the motion at all, the resulting case may be much narrower, including as to defendants, viable legal theories, the relevant time period and other key issues. At that point, the parties will be able to meaningfully meet-and-confer regarding the proper scope and duration of discovery as well as appropriate discovery limits, and the Court will be better positioned to assess the parties' proposal and ensure that any resulting discovery is proportionate to the needs of this case.

As noted above, given that Plaintiffs' proposed schedule contemplates that discovery will commence shortly, the Universities will promptly move to stay discovery pending the motion to dismiss. While the motion to dismiss is pending, the Universities are willing to work with Plaintiffs to negotiate preparatory matters so that if the case moves forward the parties are prepared to commence discovery on any claims that remain.

**(5) Any Other Matters That Any Party Wishes to Bring to the Court's Attention**

**Students' and Families' Statement.** Plaintiffs' initiation of this lawsuit has prompted some Defendants, through spokespeople or otherwise, to make public statements concerning the merits of Plaintiffs' claims. In media outlets such as *CNN*, *The Washington Post*, and *Bloomberg*, for example, Yale spokesperson Karen Peart has stated that "Yale's financial aid policy is 100% compliant with all applicable laws." In an interview with the *Georgetown Voice*, the President of

Georgetown, John DeGioia, was asked: "Just to be clear, you would take issue with the part of the lawsuit that . . . says that Georgetown at least is not actually need-blind? President DeGioia responded: "Absolutely." In *Bloomberg*, Brown spokesperson Brian E. Clark was quoted as saying that "based on a preliminary review, the complaint against Brown has no merit." As they informed Defense counsel regarding this Joint Status Report, Plaintiffs intend to take discovery of all the factual and legal bases for such statements, and for any other public statements any Defendant may make about the issues in this case and the merits of Plaintiffs' claims.

**Universities' Statement.**  As stated above, the Universities have worked to develop a transparent, flexible process to help remove financial need as a barrier to attending college. Relative to Plaintiffs' statement above, the Universities intend to move for a stay of discovery in this matter while the motion to dismiss is pending in light of the clear legal deficiencies in Plaintiffs' complaint and the burdensome discovery Plaintiffs have indicated they intend to propound.  Subject to a ruling on that motion, the Universities will respond to and serve discovery requests tailored to any remaining issues following resolution of the motion to dismiss or as otherwise ordered by the Court.

Dated:  February 15, 2022                Respectfully submitted on behalf of the parties.

By:  */s/ Edward J. Normand*
Kyle W. Roche
Edward J. Normand
Eric S. Rosen
Peter Bach-y-Rita
ROCHE FREEDMAN LLP
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
tnormand@rochefreedman.com
erosen@rochefreedman.com

By:  */s/ Kenneth Kliebard*
Kenneth Kliebard
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Suite 2800
Chicago, IL 60606-1511
Tel: 312-324-1000
kenneth.kliebard@morganlewis.com

Jon R. Roellke
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW

pbachyrita@rochefreedman.com
kyle@rochefreedman.com

Robert D. Gilbert
Elpidio Villarreal
GILBERT LITIGATORS &
COUNSELORS, P.C.
11 Broadway, Suite 615
New York, NY 10004
Tel: 646-448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com

Eric L. Cramer
Caitlin G. Coslett
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
ccoslett@bm.net

Daniel J. Walker
Robert E. Litan
BERGER MONTAGUE PC
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th floor
Chicago, IL 60606
Tel: 312-741-1019
beth@feganscott.com

Brooke Achua
FEGAN SCOTT LLC
140 Broadway
46th Floor
New York, NY 10005
Tel.: 646- 502-7910
brooke@feganscott.com

Washington, DC 20004-2541
Tel: 202-739-5754
jon.roellke@morganlewis.com

Sujal Shah
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower, 28th Floor
San Francisco, CA 94105-1596
Tel: 415-442-1386
sujal.shah@morganlewis.com

*Counsel for Defendant Brown University*

By: */s/ Deepti Bansal*
Deepti Bansal
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
Tel: 202-728-7027
dbansal@cooley.com

Alex Kasner
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Tel.: 650-843-5770
akasner@cooley.com

Matthew Kutcher
COOLEY LLP
444 W Lake Street
Suite 1700
Chicago, IL 60606
Tel: 312-881-6500
mkutcher@cooley.com

*Counsel for Defendant California Institute of Technology*

By: */s/ James L.Cooper*
James L. Cooper
Michael Rubin
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743

*Counsel for Plaintiffs*

Tel: 202-942-5014
james.cooper@arnoldporter.com
michael.rubin@arnoldporter.com

Leah Harrell
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Tel.: 212-836-7767
Leah.Harrell@arnoldporter.com

Valarie Hays
ARNOLD & PORTER KAYE SCHOLER LLP
70 W Madison Street
Suite 4200
Chicago, IL 60602
Tel.: 312-583-2440
valarie.hays@arnoldporter.com

*Counsel for Defendant University of Chicago*

By: */s/ Patrick Fitzgerald*
Patrick Fitzgerald
Amy Van Gelder
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
155 N. Wacker Drive
Chicago, IL 60606-1720
Tel: 312-407-0508
patrick.fitzgerald@skadden.com
amy.vangelder@skadden.com

Karen Hoffman Lent
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
Room 40-216
New York, NY 10001-8602
Tel: 212-735-3276
karen.lent@skadden.com

*Counsel for Defendant The Trustees of
Columbia University in the City of New York*

By: */s/ Norm Armstrong*
Norm Armstrong

Christopher Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C.  20006
Tel.: 202-626-8979
narmstrong@kslaw.com
cyook@kslaw.com

Emily Chen
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel: 212-556-2224
echen@kslaw.com

Zachary T. Fardon
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
312 764 6960
zfardon@kslaw.com

*Counsel for Defendant Cornell University*


By:  */s/ Terri L. Mascherin*
Terri L. Mascherin
Reid J. Schar
JENNER & BLOCK LLP
353 N. Clark Street,
Chicago, IL 60654-3456
Tel: 312-222-9350
tmascherin@jenner.com
rschar@jenner.com

Ishan K. Bhabha
Douglas E. Litvack
Lauren J. Hartz
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412

Tel: 202-637-6327
ibhabha@jenner.com
dlitvack@jenner.com
lhartz@jenner.com

*Counsel for Defendant Trustees of Dartmouth College*

By:  */s/ Derek Ludwin*
Derek Ludwin
Ashley Bass
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Tel: 202-662-5429
dludwin@cov.com
abass@cov.com

By:  */s/ Casey T. Grabenstein*
Casey T. Grabenstein
SAUL EWING ARNSTEIN & LEHR
161 N. Clark St.
Chicago, IL 60601
Tel.: 312-876-7810
casey.grabenstein@saul.com

*Counsel for Defendant Duke University*

By:  */s/ Tina M. Tabacchi*
Tina M. Tabacchi
JONES DAY
77 West Wacker Drive
Suite 3500
Chicago, IL 60601-1692
Tel.: 312-782-3939
tmtabacchi@jonesday.com

Craig A. Waldman
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
Tel.: 202-879-3877
cwaldman@jonesday.com

*Counsel for Defendant Emory University*

27

By: */s/ Britt M. Miller*
Britt M. Miller
Jed W. Glickstein
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312-783-0600
bmiller@mayerbrown.com
jglickstein@mayerbrown.com

Stephen M. Medlock
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006-1101
Tel: 202-263-3221
smedlock@mayerbrown.com

*Counsel for Defendant Georgetown University*

By: */s/ Eric Mahr*
Eric Mahr
Jan Rybnicek
Daphne Lin
FRESHFIELDS BRUCKHAUS DERINGER
700 13th Street, NW
Washington, DC 20005
Tel: 202-777-4500
eric.mahr@freshfields.com
jan.rybnicek@freshfields.com
daphne.lin@freshfields.com

*Counsel for Massachusetts Institute of Technology*

By: */s/ Scott D. Stein*
Scott D. Stein
Benjamin R. Brunner
Kelsey Annu-Essuman
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
Tel.: 414-559-2434
sstein@sidley.com
bbrunner@sidley.com

28

kannuessuman@sidley.com

*Counsel for Northwestern University*

By:  */s/ Robert A. Van Kirk*
Robert A. Van Kirk
Cole T. Wintheiser
Jonathan Pitt
Matthew D. Heins
Sarah F. Kirkpatrick
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: 202-434-5163
rvankirk@wc.com
cwintheiser@wc.com
jpitt@wc.com
mheins@wc.com
skirkpatrick@wc.com

James Peter Fieweger
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street
Suite 3200
Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for University of Notre Dame du Lac*

By:  */s/ Seth Waxman*
Seth Waxman
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: 202-663-6800
seth.waxman@wilmerhale.com

David Gringer
Alan Schoenfeld
WILMER CUTLER PICKERING HALE
    AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

Tel: 212-937-7294
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Daniel Martin Feeney
Edward W. Feldman
MILLER SHAKMAN LEVINE &
FELDMAN LLP
180 North LaSalle Street
Suite 3600
Chicago, IL 60601
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for The Trustees of the University of Pennsylvania*

By: */s/ Norm Armstrong*
Norm Armstrong
Christopher Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
Tel.: 202-626-8979
narmstrong@kslaw.com
cyook@kslaw.com

Emily Chen
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel: 212-556-2224
echen@kslaw.com

Zachary T. Fardon
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
312 764 6960
zfardon@kslaw.com

*Counsel for William Marsh Rice University*

By:  */s/ J. Mark Gidley*
J. Mark Gidley
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005-3807
Tel: 202-626-3600
mgidley@whitecase.com

Robert A. Milne
David H. Suggs
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Tel: 212-819-8200
rmilne@whitecase.com
dsuggs@whitecase.com

*Counsel for Vanderbilt University*

By:  */s/ Charles A. Loughlin*
Charles A. Loughlin
Benjamin F. Holt
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
Tel: 202-637-5600
chuck.loughlin@hoganlovells.com
benjamin.holt@hoganlovells.com

Stephen Novack
Stephen J. Siegel
Serena G. Rabie
NOVACK AND MACEY LLP
100 North Riverside Plaza, 15th Floor
Chicago, IL  60606-1501
Tel.: 312-419-6900
snovack@novackmacey.com
ssiegel@novackmacey.com
srabie@novackmacey.com

*Counsel for Yale University*

**APPENDIX 1**

| EVENT | DEADLINE |
|---|---|
| Amend Complaint as of Right | February 15, 2022 |
| Parties File Joint Status Report[10] | February 15, 2022 |
| Rule 16 Conference[11] | February 22, 2022 |
| Answer / Motion Under FRCP 12 | April 15, 2022 |
| Opposition to Motion Under FRCP 12 | June 2, 2022 |
| Parties to Submit Joint Letter to Court Regarding Any Areas of Dispute Regarding Custodians, Non-Custodial Document Sources, and Search Methodologies[12] | June 15, 2022 |
| Reply in Support of Motion Under FRCP 12 | July 8, 2022 |
| Deadline to Begin Rolling Production of Documents in Response to RFPs Served on or Before March 15, 2022[13] | July 29, 2022 |
| Completion of Transactional Data in Response to RFPs Served on or Before March 15, 2022 | September 30, 2022 |
| Completion of Document Production in Response to RFPs Served on or Before March 15, 2022 | December 30, 2022 |
| | March 31, 2023 |

---

[10] Supplemental Status Reports every 90 days.

[11] Further status conferences every 90 days.

[12] Copies of all Reports/Letters under this Order to be provided both to the District Judge and the assigned Magistrate Judge.

[13] Privilege Logs must be provided within 30 days of each production of documents.

| | |
|---|---|
| Completion of Document Production in Response to RFPs Served on or Before September 30, 2022 | |
| Motion to Amend Pleadings | March 31, 2023 |
| Motion to Add Parties | March 31, 2023 |
| Close of Fact Discovery[14] | August 30, 2023 |
| Opening Expert Reports (Class Certification and Merits) on All Issue on Which a Party Has the Burden of Proof | September 29, 2023 |
| Opposition Expert Reports | November 17, 2023 |
| Rebuttal Expert Reports | January 12, 2024 |
| Close of Expert Discovery | February 29, 2024 |
| *Daubert* Motions | February 29, 2024 |
| Motion for Class Certification | February 29, 2024 |
| *Daubert* Opposition | March 29, 2024 |
| Opposition to Motion for Class Certification | March 29, 2024 |
| *Daubert* Replies | May 3, 2024 |
| Reply in Support of Class Certification | May 17, 2024 |

---

[14] All RFPs must be served at least 75 days before the close of fact discovery. All interrogatories and RFAs must served at least 45 days before the close of fact discovery.

| | |
|---|---|
| *Daubert* and/or Class Certification Hearing | Court's discretion |
| Summary Judgment Motions | July 1, 2024 |
| Summary Judgment Oppositions | August 5, 2024 |
| Summary Judgment Replies | September 2, 2024 |
| Summary Judgment Hearing<br><br>Trial | Court's discretion |

**APPENDIX 2**

| EVENT | DEADLINE |
|-------|----------|
| Amend Complaint as of Right | February 15, 2022 |
| Parties File Joint Status Report | February 15, 2022 |
| Status Conference | February 22, 2022 |
| Answer / Motion Under FRCP 12 | April 15, 2022 |
| Opposition to Motion Under FRCP 12 | June 2, 2022 |
| Reply in Support of Motion Under FRCP 12 | July 8, 2022 |
| Deadline to negotiate protective order, ESI protocols, and expert protocols | August 1, 2022 |
| *Ruling on Motion to Dismiss*[15] | *September 1, 2022* |
| Rule 26(a)(1) Disclosures | *September 21, 2022*<br><br>[21 days after ruling on motion to dismiss] |
| Rule 16 Conference | *September 21, 2022*<br><br>[21 days after ruling on motion to dismiss] |
| Deadline to answer complaint | *September 28, 2022* |

---

[15] The Universities have included this proposed date solely for illustrative purposes, given their proposal that subsequent dates would be set based upon the date the Court rules on the motion to dismiss. The Universities propose that the actual dates for subsequent events in this proposed schedule would be set based on the time increments noted next to each event.

| | |
|---|---|
| | [28 days after ruling on motion to dismiss] |
| Last day to move to amend pleadings/add parties | *February 15, 2023*<br><br>[one year after the deadline to file an amended complaint as of right] |
| Close of Fact Discovery | *September 1, 2023*<br><br>[12 months after start of discovery] |
| Plaintiffs' Motion for Class Certification including class certification expert reports | *October 1, 2023*<br><br>[1 month after close of fact discovery] |
| Defendants' Opposition to Motion for Class Certification and supporting expert reports | *December 1, 2023*<br><br>[~60 days following plaintiffs' brief] |
| Last day to depose Defendants' class certification experts (unless otherwise agreed) | *Early January, 2024*<br><br>[~30 days from submission of reports] |
| Plaintiffs' Reply in Support of Class Certification and rebuttal expert reports.[16] | *Mid January, 2024*<br><br>[~45 days from defendants' brief] |
| Last day to depose Plaintiffs' class certification experts (unless otherwise agreed) | *Late February 2024*<br><br>[~21 days from submission of rebuttal reports] |
| *Daubert* motions challenging the other side's class certification expert(s) | *March 1, 2024*<br><br>[3 weeks from rebuttal deposition deadline] |
| Oppositions to *Daubert* motions challenging the other side's class certification expert(s) | *April 1, 2024*<br><br>[~1 month] |

---

[16] Rebuttal experts shall be strictly limited to responding to new matters raised in the report(s) or the deposition(s) of the Universities' class certification expert(s).

| | |
|---|---|
| Replies in support of *Daubert* motions challenging the other side's class certification expert(s) | *April 15, 2024*<br><br>[~2 weeks] |
| *Daubert* and/or Class Certification Hearing | Court's discretion |
| Further proceedings | No later than 30 days after the Court's ruling on the motion for class certification, the parties will provide to the Court a proposed schedule for the filing of dispositive motions, merits expert discovery, *Daubert* motions for merits experts, motions *in limine*, and other pre-trial matters, if applicable. |