**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FRANK CARBONE, ANDREW CORZO, SAVANNAH ROSE EKLUND, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, KARA SAFFRIN, and BRITTANY TATIANA WEAVER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,

Defendants.

Case No. 22-cv-00125

Honorable Matthew F. Kennelly

Magistrate Gabriel A. Fuentes

**UNIVERSITIES' MOTION FOR AND MEMORANDUM IN SUPPORT OF STAY OF DISCOVERY PENDING RULING ON MOTION(S) TO DISMISS**

Defendants (the "Universities")[1] move the Court to enter an Order staying discovery pending resolution of their forthcoming motion(s) to dismiss this putative antitrust class action.

[1] Brown University, California Institute of Technology, University of Chicago, The Trustees of Columbia University in the City of New York, Cornell University, Trustees of Dartmouth College, Duke University, Emory University, Georgetown University, Johns Hopkins University, Massachusetts Institute of Technology, Northwestern University, University of Notre Dame du Lac, The Trustees of the University of Pennsylvania, William Marsh Rice University, Vanderbilt University, and Yale University.

## **BACKGROUND**

In early January, after "[w]orking for over a year on the development of this lawsuit," Dkt. 88 at 10, Plaintiffs' counsel initiated this litigation contending that the Universities, in violation of Section 1 of the Sherman Act, agreed "to reduce or eliminate financial aid as a locus of competition" for prospective students through their participation in the 568 Presidents Group (which is a public and transparent affiliation of universities that collaborate on developing common methodologies for determining financial aid). Dkt. 1 at 1. Five weeks later, Plaintiffs amended their complaint, adding new plaintiffs, a new defendant, and new factual allegations made primarily on "information and belief." Am. Compl. ¶¶ 17-19, 21, 65-68, 138, 144.

Section 568 of the Improving America's Schools Act of 1994 ("Section 568") provides an antitrust exemption that, among other things, allows need-blind colleges and universities to develop and "use common principles of analysis for determining the need of such students for financial aid." 15 U.S.C. § 1 Note (a) (Exhibit A). Plaintiffs' efforts to get around this exemption rest on a legally untenable interpretation of the meaning of "need-blind" admissions. In any event, Plaintiffs cannot dispute that Section 568 exists because the challenged use of common financial aid principles was viewed by Congress as *beneficial* to students and their families.

The Universities intend to move to dismiss Plaintiffs' claims. Among other grounds, dismissal is appropriate because: (1) Section 568 *encourages* the challenged conduct and creates an antitrust exemption covering that conduct; (2) exemption aside, Plaintiffs have not plausibly alleged a *per se* theory of antitrust liability, and Plaintiffs' contrived market definition precludes their ability to state an antitrust claim under the rule of reason; and (3) Plaintiffs' claim—which is based on information from public sources dating back many years—is barred by the antitrust laws' four-year statute of limitations. If granted, the Universities' forthcoming motion(s) to

dismiss would result in the complete dismissal of this case. At the very least, such motion(s) may significantly narrow the substantive and temporal scope of the dispute and discovery.

Despite these deep flaws in their complaint, Plaintiffs insist on proceeding immediately with exceedingly broad and hugely burdensome discovery. Plaintiffs themselves describe the anticipated fact discovery as "substantial," stating that they intend to promptly serve broad document requests spanning nearly two decades. Dkt. 107 at 19-21. They also seek permission to serve "[a]pproximately 100 interrogatories directed at each party," meaning about 1,700 interrogatories in total. *Id.* at 21. And they propose taking "[a]pproximately 185 fact depositions" of the Universities, including for each one: current and former Presidents and Directors of Admissions dating back to 2003, at least one other current member of the admissions department, various witnesses with knowledge of the transaction data evidencing every admissions and financial aid decisions going back almost twenty years, and "a large donor regarding any relationship or understanding of any relationship between donation history and admissions decisions with respect to the donor's children." *Id.* at 20-21. Adding to the complexity of discovery, Plaintiffs also intend to seek admissions and financial aid transactional data, and likely other documents, *id.* at 21, protected by the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("FERPA"), the disclosure of which may first require notifying the affected students, 34 C.F.R. § 99.31(a)(9). Proceeding to such overreaching and potentially thorny discovery will inevitably lead to disputes among the parties that may require this Court's intervention thus undermining judicial efficiency.

The Universities respectfully move the Court to exercise its discretion to stay this discovery until after the resolution of the forthcoming motion(s) to dismiss. One of the purposes of the Section 568 exemption is to allow colleges and universities to increase access to needy

students without fear of litigation. And numerous courts have found that, in expansive antitrust class actions like this one, defendants should not be subjected to the significant burden and expense of discovery before the resolution of a motion to dismiss that, as here, will raise several case-dispositive (or substantially narrowing) grounds. Moreover, given that the brunt of discovery will be borne almost exclusively by the Universities, it would be fundamentally unfair—and contrary to Congress' intent in enacting Section 568—to proceed before the Court's ruling on the forthcoming motion(s) to dismiss. However, during the limited discovery stay, the Universities are prepared to work cooperatively with Plaintiffs to negotiate an appropriate protective order, ESI protocols, and expert protocols so that the parties are prepared to promptly commence discovery on any claims that remain following the Court's ruling on the forthcoming motion(s) to dismiss. Dkt. 107 at 18, 22.

## LEGAL STANDARD

"District courts enjoy extremely broad discretion in controlling discovery." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005) (citing *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)). Under Federal Rule of Civil Procedure 26(c) & (d), a court may "limit the scope of discovery or control its sequence" whenever "good cause" is shown. *Id*. When deciding whether to stay discovery pending the resolution of a motion to dismiss, courts consider a variety of factors, including: "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009). Additionally, courts consider (iv) "how far the proceedings in the case have advanced." *Riddell, Inc. v. Kranos Corp.*, No. 16-4496, 2017 WL 959019, *1 (N.D. Ill. Mar. 12, 2017) (Kennelly, J.).

The Supreme Court, the Seventh Circuit, and this Court have all stressed the importance of resolving potentially case-dispositive motions to dismiss before proceeding to discovery in expansive antitrust cases like this one, which invariably impose significant and largely one-sided burdens on defendants. Antitrust discovery is "a sprawling, costly, and hugely time-consuming undertaking" and "it is only by taking care to require allegations" that plausibly give rise to a claim "that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the process will reveal relevant evidence to support a § 1 claim." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 & n.6 (2007); *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1006 (7th Cir. 1984) ("The costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint."); *Organ Recovery Sys., Inc. v. Pres. Sols., Inc.*, No. 11-4041, 2012 WL 2577500, *11 (N.D. Ill. July 4, 2012) (Kennelly, J.) (staying discovery on antitrust claims in order to "avoid a great deal of expensive and time-consuming discovery").

As a consequence, when a motion to dismiss "can resolve the case" or even "a threshold issue," stays of discovery are "often deemed appropriate" and motions seeking them "are granted with some frequency." *DSM Desotech Inc. v. 3D Sys. Corp.*, No. 11-4041, 2008 WL 4812440, *2 (N.D. Ill. Oct. 28, 2008) (granting stay of discovery in antitrust case pending resolution of motion to dismiss); *see also Sulfuric Acid*, 231 F.R.D. at 336-37 ("[S]tays are granted with substantial frequency" in antitrust cases when a motion to dismiss is pending).

## **ARGUMENT**

The Court should exercise its broad discretion to stay discovery pending a ruling on the forthcoming motion(s) to dismiss, for several reasons.

*First*, expansive antitrust litigation, like this case, imposes immense and disproportionate discovery burdens on defendants, and thus such cases are especially well-suited for a stay where, as here, defendants advance dispositive (or substantially narrowing) grounds for dismissal. In their forthcoming motion(s) to dismiss, the Universities will argue, among other things, that:

- Section 568 exempts from the antitrust laws the Universities' development and use of "common principles of analysis for determining the need of students for that aid," 15 U.S.C. § 1 Note (a), and Plaintiffs' position that the exemption is inapplicable is legally untenable, because it rests on an erroneous reading of "need-blind" admissions;
- Exemption aside, Plaintiffs have not plausibly alleged a violation of the antitrust laws under a *per se* theory, because their allegations concern only the *process* for determining need, not the amount to be awarded to any particular applicant, and courts are clear that even an agreement on "the price which aid applicants and their families would have to pay to attend" is not a *per se* antitrust violation, *see, e.g.*, *United States v. Brown Univ. in Providence in State of R.I.*, 5 F.3d 658, 670-79 (3d Cir. 1993); *Massachusetts Sch. of Law at Andover, Inc. v. ABA*, 853 F. Supp. 837, *amended*, 857 F. Supp. 455 (E.D. Pa. 1994);
- Plaintiffs also have not plausibly stated a claim under the rule of reason, because they allege no facts suggesting that the Universities' conduct is anti-competitive, let alone not outweighed by its competitive benefits, and their proposed market for "Elite, Private Universities"—which is based on an arbitrary cut-off of private universities with an average ranking of 25 or higher by the U.S. News and World Report from 2003 through 2021—is contrived solely for this litigation, contrary to common knowledge, and economically implausible; and

- Plaintiffs' claims—which are based on public sources dating back many years—are barred in whole or at least in large part by the antitrust laws' four-year statute of limitations, 15 U.S.C. § 15b.

Each of these grounds could result in the complete dismissal of this case or, at the very least, significantly narrow the scope of the dispute and the discovery needed to resolve it.

In *Twombly*, the Supreme Court recognized that antitrust discovery is "a sprawling, costly, and hugely time-consuming undertaking" that is not easily limited once begun. 550 U.S. at 558 & n.6. As a consequence, the Supreme Court cautioned lower courts against proceeding to such burdensome and expensive discovery before determining whether a plausible claim has been alleged. *Id.* at 558-59. As the Seventh Circuit later explained, "*Twombly* … is designed to spare defendants the expense of responding to bulky, burdensome discovery unless the complaint provides enough information to enable an inference that the suit has sufficient merit to warrant putting the defendant to the burden of responding to at least a limited discovery demand." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625-26 (7th Cir. 2010); *see Limestone Dev. Corp. v. Village of Lemon*, 520 F.3d 797, 802-03 (7th Cir. 2008) (similar).

Courts in this District often stay discovery when considering a potentially case-dispositive motion to dismiss an antitrust claim. For example, in *Organ Recovery*, this Court stayed discovery on antitrust counterclaims while considering a motion to dismiss, reasoning that it "may allow all concerned to avoid a great deal of expensive and time-consuming discovery." 2012 WL 2577500, *11; *see also Black Bear Sports Grp., Inc. v. Amateur Hockey Assoc. of Ill., Inc.*, No. 18-8364, Dkt. 23 (N.D. Ill. Feb. 27, 2019) (Kennelly, J.) (staying discovery in antitrust case pending motion to dismiss). Similarly, in *DSM Desotech*, the court stayed discovery while a motion to dismiss various antitrust claims was pending. 2008 WL 4812440, *1-2. The court

recognized that antitrust defendants face "enormously expensive and burdensome" discovery, and that therefore, absent "circumstances presenting a compelling need for prompt discovery," *Twombly*'s principles favor a stay. *Id.* at *3. And, in *Sulfuric Acid*, the court declined to permit discovery while it considered a motion to dismiss for failure to state an antitrust claim, because such motions "by definition exclude considerations of factual matters outside the complaint." 231 F.R.D. at 336.[2] Courts are especially apt to stay discovery where the pending motions to dismiss, as will be the case here, challenge the timeliness of the complaint or its failure to state a claim. *See, e.g.*, *Reveal Chat Holdco, LLC v. Facebook, Inc.*, No. 20-00363, 2020 WL 2843369 (N.D. Cal. Apr. 10, 2020) (staying antitrust discovery pending motion to dismiss raising timeliness defense and failure to state a claim); *Wallace v. Baldwin*, No. 18-1513, 2020 WL 1287907, *1-2 (S.D. Ill. Mar. 18. 2020) (noting discovery stay pending motion to dismiss raising statute of limitations defense). Here, the Court should do the same, staying burdensome, costly, and potentially unnecessary antitrust discovery while it considers the forthcoming case-dispositive (or substantially case-narrowing) motion(s) to dismiss. There is certainly no "compelling need" for "prompt discovery" before the Court's ruling on those motion(s).

*Second*, the concerns that support staying discovery in antitrust cases pending motions to dismiss are amplified here, where Plaintiffs' claim turns on an antitrust exemption that, as Senator Charles Grassley explained, was enacted, in part, to "provide increased access to higher

---

[2] *See also, e.g.*, *Washington Cnty. Health Care Auth., Inc. v. Baxter Int'l Inc.*, No. 16-10324, Dkt. 82 at 6 (N.D. Ill. Mar. 14, 2017) ("particularly in the context of [an antitrust] case where discovery may be quite voluminous, there is a legitimate need to make sure that there is a viable complaint that can go forward"); *Moehrl v. Nat'l Assoc. of Realtors*, No. 19-1610, Dkt. 80 (N.D. Ill. May 29, 2019) ("Discovery in this [antitrust] matter and the parties' MIDP obligations are stayed until further order of the Court"); *Tichy v. Hyatt Hotels Corp.*, No. 18-1959, Dkt. 55 (N.D. Ill. May 7, 2018) (deferring collection and production of documents pending resolution of motions to dismiss in antitrust case); *Lantz v. Am. Honda Motor Co.*, No. 06-5932, 2007 WL 1424614, *3 (N.D. Ill. May 14, 2007) (noting stay of discovery pending ruling on motion to dismiss); *Trans Union LLC v. Equifax Info. Servs. LLC*, No. 17-8546, Dkt. 30 (N.D. Ill. Jan. 23, 2018) (staying discovery pending motion to dismiss).

education to low-income students, *while preventing needless litigation* over the development of principles for determining financial need."[3] The Court should thus satisfy itself that Plaintiffs have adequately stated an antitrust claim before setting aside Congress' clear intent and forcing the Universities to engage in exhaustive discovery related to the precise conduct contemplated by the Section 568 exemption.

*Third*, the disproportionate burdens of the proposed discovery on the Universities support a stay pending a ruling on the motion(s) to dismiss. *See, e.g.*, *Sulfuric Acid*, 231 F.R.D. at 336 n.3 ("An appropriate factor to consider in weighing whether to grant a stay of discovery is the burden of responding to discovery."); *DSM Desotech*, 2008 WL 4812440, *2 ("Stays are often deemed appropriate … where, in cases such as this one, discovery may be especially burdensome and costly"). Plaintiffs are nine students or parents who likely possess limited discoverable information. The Universities, by contrast, are seventeen large institutions from which Plaintiffs demand potentially voluminous ESI and other documents that would need to be collected, searched, reviewed, and produced, including education records protected by FERPA. Production of FERPA-protected material may require notifying many thousands of students, potentially creating third-party concerns, that would be unnecessary if this case is dismissed on the pleading.

Plaintiffs make no attempt to disguise their intent to demand nearly two decades' worth of material from each University regarding its admissions and financial aid practices. Dkt. 107 at 19. Such sweeping discovery could require the Universities to compile ESI and other documents

---

[3] Prepared Statement by Senator Chuck Grassley of Iowa Chairman, Senate Judiciary Committee Executive Business Meeting, https://www.grassley.senate.gov/news/news-releases/grassley-statement-executive-business-meeting-3, July 09, 2015 (emphasis added). *See also* Congress Passes Bill Allowing Universities to Collaborate on Financial Aid Best Practices, https://www.grassley.senate.gov/news/news-releases/congress-passes-bill-allowing-universities-collaborate-financial-aid-best, July 28, 2015 ("Our bill allows colleges and universities to continue working together, *free from the threat of antitrust litigation*, to ensure that students in need of financial aid are treated fairly and consistently." (emphasis added)).

from dozens of decentralized departments and hundreds of custodians who have worked in those departments in the preceding twenty years. The sweeping temporal scope of the discovery sought by Plaintiffs far exceeds the scope presented in other cases where stay have been granted. *See, e.g.*, *DSM Desotech*¸ 2008 WL 4812440, *3 (staying document requests spanning eight years). Here, it would be especially impractical for the parties to engage in discovery where—as will be explained in the forthcoming motion(s) to dismiss—the applicable four-year statute of limitations will significantly narrow the relevant time period, if not dispose of the case in its entirety. For example, a narrowed class period could eliminate years of discovery about the purported injuries of time-barred class members. The Court should make certain that Plaintiffs have stated a plausible claim before allowing this case to proceed to such expansive discovery.

*Finally*, a stay will not prejudice Plaintiffs. This Court has recognized that "[d]elay alone is not enough to tip the balance or to constitute unfair prejudice, as it is present in any case in which a stay is sought." *Riddell*, 2017 WL 959019, *10; *see Black & Decker Inc. v. Positec USA, Inc.*, No. 13-3075, 2013 WL 5718460, *2 (N.D. Ill. Oct. 1, 2013) (similar). When a case is in its infancy and no discovery has been served, as is the case here, courts in this District have rightly been less concerned that any delay will cause prejudice. *See Ignite USA, LLC v. Pac. Mkt. Int'l, LLC*, No. 09-3339, 2014 WL 2505166, *2 (N.D. Ill. May 29, 2014) ("[S]eeking a stay at the earliest stage of the litigation diminishes the potential effect of any tactical disadvantage"). Concerns about delaying discovery also carry less weight when, as here, Plaintiffs themselves delayed in filing their complaint. *Id.* (two-year delay in filing suit "demonstrate[d]" plaintiffs' concerns were "overblown."). The 568 Presidents Group has operated in plain sight for twenty years; it has a website describing its activities and was the subject of a detailed GAO report *more than fifteen years ago*, in 2006. Underscoring the lack of urgency, Plaintiffs' counsel apparently

spent more than a year putting this litigation together, and their own proposed schedule provides for trial no earlier than late 2024. While the Universities will show in their motion(s) to dismiss that Plaintiffs' delay has at least largely time-barred their claim, such delay counsels strongly against finding that Plaintiffs would be unduly prejudiced by a limited stay of discovery.

Nevertheless, to ensure that discovery can begin promptly if the case is allowed to proceed, the Universities are willing to work with Plaintiffs while the motion(s) to dismiss are pending to negotiate an appropriate protective order, ESI protocols, and expert protocols. Dkt. 107 at 18, 22. Notably, Plaintiffs contend that these sorts of "initial steps of discovery" often take "several months," *id.* at 14, and thus the parties will be able to lay important groundwork for any future discovery while the Court considers the forthcoming motion(s) to dismiss.

## CONCLUSION

For these reasons, the Universities respectfully request that this Court exercise its discretion and stay discovery until after the resolution of the forthcoming motion(s) to dismiss.

Dated: February 18, 2022

Respectfully submitted,

By: Kenneth Kliebard

Kenneth Kliebard
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Suite 2800
Chicago, IL 60606-1511
Tel: 312-324-1000
kenneth.kliebard@morganlewis.com

Jon R. Roellke
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel: 202-739-5754
jon.roellke@morganlewis.com

Sujal Shah
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower, 28th Floor

San Francisco, CA 94105-1596
Tel: 415-442-1386
sujal.shah@morganlewis.com

*Counsel for Defendant Brown University*

By: Deepti Bansal
Deepti Bansal
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
Tel: 202-728-7027
dbansal@cooley.com

Alex Kasner
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Tel.: 650-843-5770
akasner@cooley.com

Matthew Kutcher
COOLEY LLP
444 W Lake Street
Suite 1700
Chicago, IL 60606
Tel: 312-881-6500
mkutcher@cooley.com

*Counsel for Defendant California Institute of Technology*

By: James L. Cooper
James L. Cooper
Michael Rubin
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Tel: 202-942-5014
james.cooper@arnoldporter.com
michael.rubin@arnoldporter.com

Leah Harrell
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street

New York, NY 10019-9710
Tel.: 212-836-7767
leah.Harrell@arnoldporter.com

Valarie Hays
ARNOLD & PORTER KAYE SCHOLER LLP
70 W Madison Street
Suite 4200
Chicago, IL 60602
Tel.: 312-583-2440
valarie.hays@arnoldporter.com

*Counsel for Defendant University of Chicago*

By: Patrick Fitzgerald
Patrick Fitzgerald
Amy Van Gelder
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 N. Wacker Drive
Chicago, IL 60606-1720
Tel: 312-407-0508
patrick.fitzgerald@skadden.com
amy.vangelder@skadden.com

Karen Hoffman Lent
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
Room 40-216
New York, NY 10001-8602
Tel: 212-735-3276
karen.lent@skadden.com

*Counsel for Defendant The Trustees of Columbia University in the City of New York*

By: Norm Armstrong
Norm Armstrong
Christopher Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
Tel.: 202-626-8979
narmstrong@kslaw.com

cyook@kslaw.com

Emily Chen
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel: 212-556-2224
echen@kslaw.com

Zachary T. Fardon
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
312 764 6960
zfardon@kslaw.com

*Counsel for Defendant Cornell University and William Marsh Rice University*

By: Terri L. Mascherin
Terri L. Mascherin
Reid J. Schar
JENNER & BLOCK LLP
353 N. Clark Street,
Chicago, IL 60654-3456
Tel: 312-222-9350
tmascherin@jenner.com
rschar@jenner.com

Ishan K. Bhabha
Douglas E. Litvack
Lauren J. Hartz
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Tel: 202-637-6327
ibhabha@jenner.com
dlitvack@jenner.com
lhartz@jenner.com

*Counsel for Defendant Trustees of Dartmouth College*

By: Derek Ludwin
Derek Ludwin
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Tel: 202-662-5429
dludwin@cov.com

Casey T. Grabenstein
SAUL EWING ARNSTEIN & LEHR
161 N. Clark St.
Chicago, IL 60601
Tel.: 312-876-7810
casey.grabenstein@saul.com

*Counsel for Defendant Duke University*

By: Tina M. Tabacchi
Tina M. Tabacchi
JONES DAY
77 West Wacker Drive
Suite 3500
Chicago, IL 60601-1692
Tel.: 312-782-3939
tmtabacchi@jonesday.com

Craig A. Waldman
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
Tel.: 202-879-3877
cwaldman@jonesday.com

*Counsel for Defendant Emory University*

By: Britt M. Miller
Britt M. Miller
Jed W. Glickstein
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312-783-0600
bmiller@mayerbrown.com
jglickstein@mayerbrown.com

Stephen M. Medlock
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006-1101
Tel: 202-263-3221
smedlock@mayerbrown.com

*Counsel for Defendant Georgetown University*

By: Jeffrey J. Bushofsky
Jeffrey J. Bushofsky
ROPES & GRAY LLP
191 North Wacker Drive 32nd Floor
Chicago, IL 60606-4302
Tel: 312-845-1200
jeffrey.bushofsky@ropesgray.com

Chong S. Park
Samer M. Musallam
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Tel: 202-508-4600
chong.park@ropesgray.com
samer.musallam@ropesgray.com

*Counsel for Defendant Johns Hopkins University*

By: Eric Mahr
Eric Mahr
Jan Rybnicek
Daphne Lin
FRESHFIELDS BRUCKHAUS DERINGER
700 13th Street, NW
Washington, DC 20005
Tel: 202-777-4500
eric.mahr@freshfields.com
jan.rybnicek@freshfields.com
daphne.lin@freshfields.com

*Counsel for Massachusetts Institute of Technology*

By: Scott D. Stein
Scott D. Stein

Benjamin R. Brunner
Kelsey Annu-Essuman
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
Tel.: 414-559-2434
sstein@sidley.com
bbrunner@sidley.com
kannuessuman@sidley.com

*Counsel for Northwestern University*

By: Robert A. Van Kirk
Robert A. Van Kirk
Jonathan Pitt
Sarah F. Kirkpatrick
Matthew D. Heins
Cole T. Wintheiser
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: 202-434-5000
rvankirk@wc.com
jpitt@wc.com
skirkpatrick@wc.com
mheins@wc.com
cwintheiser@wc.com

James Peter Fieweger
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street
Suite 3200
Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for University of Notre Dame du Lac*

By: Seth Waxman
Seth Waxman
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: 202-663-6800
seth.waxman@wilmerhale.com

David Gringer
Alan Schoenfeld
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: 212-937-7294
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Daniel Martin Feeney
Edward W. Feldman
MILLER SHAKMAN LEVINE &
FELDMAN LLP
180 North LaSalle Street
Suite 3600
Chicago, IL 60601
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for The Trustees of the University of Pennsylvania*

By: J. Mark Gidley
J. Mark Gidley
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
Tel: 202-626-3600
mgidley@whitecase.com

Robert A. Milne
David H. Suggs
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Tel: 212-819-8200
rmilne@whitecase.com
dsuggs@whitecase.com

*Counsel for Vanderbilt University*

By: Charles A. Loughlin

Charles A. Loughlin
Benjamin F. Holt
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
Tel: 202-637-5600
chuck.loughlin@hoganlovells.com
benjamin.holt@hoganlovells.com

Stephen Novack
Stephen J. Siegel
Serena G. Rabie
NOVACK AND MACEY LLP
100 North Riverside Plaza, 15th Floor
Chicago, IL 60606-1501
Tel.: 312-419-6900
snovack@novackmacey.com
ssiegel@novackmacey.com
srabie@novackmacey.com

*Counsel for Yale University*

**CERTIFICATE OF SERVICE**

I, Scott D. Stein, hereby certify that, on February 18, 2022, a true and correct copy of the foregoing was served via ECF on all registered participants.

/s/ Scott D. Stein
Scott D. Stein