1

```
 1                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3

 4   SIA HENRY, et al.,              )   Docket No. 22 C 125
                                     )
 5                   Plaintiffs,     )
                                     )
 6            vs.                    )
                                     )
 7   BROWN UNIVERSITY, et al.,       )   Chicago, Illinois
                                     )   February 22, 2022
 8                   Defendants.     )   8:30 o'clock a.m.

 9
                     TRANSCRIPT OF PROCEEDINGS
10        BEFORE THE HONORABLE MATTHEW F. KENNELLY

11
     APPEARANCES:
12

13   For the Plaintiffs:   ROCHE FREEDMAN LLP
                           BY:  MR. EDWARD J. NORMAND
14                              MR. KYLE W. ROCHE
                               MR. ERIC S. ROSEN
15                         99 Park Avenue, Suite 1910
                           New York, NY 10016
16                         (646) 970-7513

17
                           GILBERT LITIGATORS & COUNSELORS
18                         BY:  MR. ROBERT DEWITT GILBERT
                               MR. ROBERT RAYMAR
19                             MR. ELPIDIO VILLARREAL
                           11 Broadway, Suite 615
20                         New York, NY 10004
                           (646) 448-5269
21

22

23   Court Reporter:       MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
                           Official Court Reporter
24                         219 S. Dearborn Street, Suite 2102
                           Chicago, Illinois  60604
25                         (312) 435-5639
```

1    APPEARANCES CONTINUED:

2                              BERGER MONTAGUE PC
                              BY:  MR. ERIC L. CRAMER
3                              1818 Market Street, Suite 3600
                              Philadelphia, PA 19103
4                              (215) 875-3009

5
                              BERGER MONTAGUE PC
6                              BY:  MR. ROBERT E. LITAN
                              2001 Pennsylvania Avenue, NW
7                              Suite 300
                              Washington, DC 20006
8                              202-559-9745

9
                              FEGAN SCOTT, LLC
10                             BY:  MS. ELIZABETH A. FEGAN
                              150 S. Wacker Dr., 24th Floor
11                             Chicago, IL 60606
                              312-741-1019

12

13   For the Defendants:
     Brown University:        MORGAN, LEWIS & BOCKIUS LLP
14                            BY:  MR. JON R. ROELLKE
                              1111 Pennsylvania Avenue, NW
15                            Washington, DC 20004
                              (202) 739-5754

16

17   California Institute
     of Technology:           COOLEY LLP
18                            BY:  MS. DEEPTI BANSAL
                              1299 Pennsylvania Avenue, NW
19                            700
                              Washington, DC 20004
20                            (202) 728-7027

21   University of
     Chicago:                 ARNOLD & PORTER
22                            BY:  MR. JAMES L. COOPER
                              555 Twelfth Street, N.W.
23                            Washington, DC 20004-1202
                              (202) 942-5000

24

25

3

APPEARANCES CONTINUED:

Columbia University:    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                        BY:  MS. KAREN HOFFMAN LENT
                        One Manhattan West
                        Room 40-216
                        New York, NY 10001
                        (212) 735-3276

                        SKADDEN ARPS SLATE MEAGHER & FLOM, LLP CH
                        BY:  MS. AMY LYNN VAN GELDER
                        155 North Wacker Drive, Suite 2700
                        Chicago, IL 60606-1720
                        (312) 407-0903

Cornell University:     KING & SPALDING
                        BY:  MR. ZACHARY THOMAS FARDON
                        110 North Wacker Drive, Suite 3800
                        Chicago, IL 60606
                        (312) 995-6333

                        KING & SPALDING
                        BY:  MR. NORMAN ARMSTRONG, JR.
                        1700 Pennsylvania Avenue, NW, Suite 200
                        Washington, DC 20006
                        (202) 626-8979

Dartmouth College:      JENNER & BLOCK LLP
                        BY:  MS. TERRI LYNN MASCHERIN
                        353 N. Clark Street
                        Chicago, IL 60654
                        (312) 222-9350

                        JENNER & BLOCK LLP
                        BY:  MR. ISHAN K. BHABHA
                        1099 New York Avenue, NW, Suite 900
                        Washington, DC 20001-4412
                        (202) 637-6346

```
 1  APPEARANCES CONTINUED:

 2  Duke University:          COVINGTON & BURLING LLP
                              BY:  MR. DEREK LUDWIN
 3                            One City Center
                              850 Tenth Street, NW
 4                            Washington, DC 20001-4956
                              (202) 662-6000
 5

 6  Emory University:         JONES DAY
                              BY:  MS. TINA M. TABACCHI
 7                            77 West Wacker Drive, Suite 3500
                              Chicago, IL 60601-1692
 8                            (312)782-3939

 9
    Georgetown University:    MAYER BROWN LLP
10                            BY:  MS. BRITT MARIE MILLER
                              71 South Wacker Drive
11                            Chicago, IL 60606
                              (312) 782-0600
12

13  Massachusetts Institute
    Of Technology:            FRESHFIELDS BRUCKHAUS DERINGER US LLP
14                            BY:  MR. ERIC J. MAHR
                              700 13th St NW, 10th Fl.
15                            Washington, DC 20005
                              (202) 777-4545
16

17  Northwestern
    University:               GASS TUREK
18                            BY:  MR. SCOTT DAVID STEIN
                              241 N. Broadway, Ste 300
19                            Milwaukee, WI 53202
                              (312) 853-7000
20
    University of
21  Notre Dame:               WILLIAMS & CONNOLLY LLP
                              BY:  MR. ROBERT ALOIS VAN KIRK
22                                  MR. JONATHAN PITT
                                    MS. SARAH FORSYTHE KIRKPATRICK
23                            725 Twelfth Street Nw
                              Washington, DC 20005
24                            (202) 434-5163

25
```

5

```
 1   APPEARANCES CONTINUED:

 2
     University of
 3   Pennsylvania:            WILMER CUTLER PICKERING HALE AND DORR LLP
                              BY:  MR. SETH P. WAXMAN
 4                            1875 Pennsylvania Avenue, NW
                              Washington, DC 20006
 5                            (202)663-6000

 6
                              WILMER CUTLER PICKERING HALE AND DORR LLP
 7                            BY:  MR. DAVID GRINGER
                              7 World Trade Center
 8                            New York, NY 10007
                              (212) 230-8864
 9

10                            MILLER SHAKMAN LEVINE & FELDMAN LLP
                              BY:  MR. DANIEL MARTIN FEENEY
11                            180 North LaSalle Street, Suite 3600
                              Chicago, IL 60601
12                            (312) 263-3700

13
     Vanderbilt University:    WHITE & CASE LLP
14                            BY:  MR. JOHN MARK GIDLEY
                              701 13th Street, NW
15                            Washington, DC 20005
                              (202) 626-3600
16

17                            WHITE & CASE
                              BY:  MR. ROBERT A. MILNE
18                                 MR. DAVID H. SUGGS
                              1221 Avenue of the Americas
19                            New York, NY 10020
                              (212)819-8200
20

21   Yale University:         HOGAN LOVELLS US LLP
                              BY:  MR. CHARLES A. LOUGHLIN
22                                 MR. BENJAMIN F. HOLT
                              555 Thirteenth Street, NW
23                            Washington, DC 20004
                              (202) 637-5661
24

25
```

```
 1   APPEARANCES CONTINUED:

 2

 3   Yale University:        NOVACK AND MACEY LLP
                             BY:  MR. STEPHEN J. SIEGEL
 4                           100 North Riverside Plaza
                             Chicago, IL 60606
 5                           (312) 419-6900

 6
     The Johns Hopkins
 7   University:             ROPES & GRAY LLP
                             BY:  MR. JEFFREY J. BUSHOFSKY
 8                           191 North Wacker Drive, 32nd Floor
                             Chicago, IL 60606
 9                           (312) 845-1200

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    (The following proceedings were had by video:)

2         THE CLERK:  Case 22 C 125, Henry v. Brown University.

3         THE COURT:  Okay.  First thing I'm going to do is

4    anybody who has called in by phone immediately mute

5    yourselves.  Mute your phone right now.  I've been trying to

6    kind of go through and mute people as we go, but people keep

7    joining, and we've got -- I think we're up to two dozen or

8    more than two dozen at this point.  So I need anybody who is

9    calling in by phone to mute yourselves.

10        Secondly, if you're not familiar with this particular

11   platform and you're seeing a whole bunch of empty boxes on

12   your screen, the way you get rid of those, if you run your

13   cursor along the top, you'll see something that says, Layout.

14   If you click on that, you'll see something that says, Show

15   participants without video.  If you turn that off, the empty

16   boxes go away.

17        So the way I want to do this is to get people

18   identified for the record.  Anybody who gives your name --

19   anybody who is on video and gives your name, if you want to

20   identify other people from your firm or office or, you know,

21   other attorneys for your client who are on but not depicted,

22   just go ahead and do that.

23        So let's start off with counsel for the plaintiffs.

24        MR. NORMAND:  Good morning, your Honor.  It's Ed

25   Normand from Roche Freedman, and I'm joined on the phone, I

1    believe, with my colleagues Kyle Roche and Eric Rosen.

2         MR. GILBERT:  This is Robert Gilbert.  I represent

3    the plaintiffs, Gilbert Litigators -- as Gilbert Litigators,

4    and I believe on the phone are my partners.  Elpidio

5    Villarreal and Robert Raymar are also on the phone, not by

6    video.

7         MR. CRAMER:  Good morning, your Honor.  Eric Cramer

8    also for the plaintiffs, and I'm joined by my colleague,

9    Robert Litan.

10        MS. FEGAN:  Good morning, your Honor.  Elizabeth

11   Fegan from Fegan Scott for plaintiffs.

12        THE COURT:  Anybody else on the plaintiffs' side who

13   is on camera and hasn't given your name yet?

14        MS. FEGAN:  That's it.

15        THE COURT:  Okay.  So for the defendants, I'm just

16   going to kind of go through you in the order you're named in

17   the complaint.

18        So first of all, counsel for Brown.

19        MR. ROELLKE:  Thank you, your honor.  Jon Roellke

20   from Morgan Lewis on behalf of Brown.

21        THE COURT:  Cal Tech.

22        MS. BANSAL:  Good morning, your Honor.  Deepti Bansal

23   from Cooley LLP for California Institute of Technology.

24        THE COURT:  All right.  Counsel for University of

25   Chicago.

1          MR. COOPER:  Good morning, your Honor.  James Cooper

2   from Arnold & Porter on behalf of University of Chicago.

3          THE COURT:  Next is Columbia.

4          MS. LENT:  Good morning, your Honor.  Karen Lent from

5   Skadden Arps, and my colleague Amy Van Gelder is on as well.

6          THE COURT:  Dartmouth -- or, excuse me -- Cornell.

7          MR. FARDON:  Good morning, your Honor.  Zach Fardon

8   and Norm Armstrong from King & Spalding on behalf of Cornell

9   University.

10          THE COURT:  Dartmouth.

11          MS. MASCHERIN:  Good morning, your Honor.  Terri

12   Mascherin, Jenner & Block, on behalf of Dartmouth.  Joining me

13   today is my partner, Ishan Bhabha.

14          THE COURT:  Duke.

15          MR. LUDWIN:  Good morning, your Honor.  Derek Ludwin,

16   Covington & Burling, on behalf of Duke University.

17          THE COURT:  Emory.

18          MS. TABACCHI:  Good morning, your Honor.  Tina

19   Tabacchi from Jones Day on behalf of Emory University.

20          THE COURT:  Georgetown.

21          MS. MILLER:  Good morning, your Honor.  Britt Miller

22   of Mayer Brown on behalf of Georgetown University.

23          THE COURT:  MIT.

24          MR. MAHR:  Good morning, your Honor.  Eric Mahr from

25   Freshfields Bruckhaus Deringer for MIT.

1      THE COURT:  And Northwestern.

2      MR. STEIN:  Scott Stein, Gass Turek, for

3  Northwestern.

4      THE COURT:  Notre Dame.

5      MR. VAN KIRK:  Bob Van Kirk with Williams & Connolly

6  on behalf of Notre Dame.  I'm joined by Jonathan Pitt and

7  Sarah Kirkpatrick.

8      THE COURT:  When you gave your name, there was a

9  little glitch, so give your name again.  The second two came

10  through okay.

11      MR. VAN KIRK:  Sure.  Bob Van Kirk with Williams &

12  Connolly.

13      THE COURT:  Penn.

14      University of Pennsylvania?  Anybody on?

15      Okay.  That looks like a no.

16      Rice.

17      MR. WAXMAN:  No, sorry, I was muted.  Defeated by the

18  technology.

19      Your Honor, this is Seth Waxman from Wilmer Hale.  My

20  partner, David Gringer, is on.  And our local counsel, Dan

21  Feeney, from the Miller Shakman firm is also on.

22      THE COURT:  I just got to respond to that.  You

23  weren't defeated by the technology.  You were defeated by

24  yourself.

25      MR. WAXMAN:  Thank you for that correction, your

1   Honor.

2            THE COURT:  Rice.

3            MR. FARDON:  Your Honor, Zach Fardon and Norm

4   Armstrong, King & Spalding, also on behalf of Rice University.

5            THE COURT:  Got it.

6            Vanderbilt.

7            MR. GIDLEY:  Your Honor, good morning.  Mark Gidley

8   from White & Case, and I'm joined on the phone but not on

9   screen by Rob Milne and David Suggs.

10           THE COURT:  And last is Yale.

11           MR. LOUGHLIN:  Good morning, your Honor.  Charles

12  Loughlin from Hogan Lovells on behalf of Yale University.

13  With me on the phone is Benjamin Holt and also our local

14  counsel, Stephen Siegal, from Novak and Macey.

15           THE COURT:  Okay.  So here's what I got on the agenda

16  from my end.  A couple of preliminary things that I got to put

17  on the record.

18           I'm going to talk about the schedule, briefing on the

19  motion and anticipated motions to dismiss, the motion to

20  appoint lead counsel, and there's a couple of other odds and

21  ends that I'll cover at the end.

22           So first the preliminary thing.  So you guys probably

23  know this already.  I went to Notre Dame, undergrad.  That's

24  43-plus years ago now.

25           And then one of the lawyers who has an appearance on

1   file from Williams & Connolly, Matthew Heins, H-e-i-n-s, is a

2   former law clerk of mine.  I think he finished up about five

3   and a half or six years ago.  I may be a little off on that,

4   but I think that's right.

5           So those are preliminary things.

6           On the schedule, it seems like the main question has

7   to do with whether discovery ought to be stayed pending

8   consideration of the motions to dismiss, which I think we've

9   got a date for.  I'm blanking on what it is, but it's several

10  weeks out yet.

11          And I don't know if anybody -- I don't need anybody

12  to repeat what's in the status report, but if anybody has

13  anything additional to add to that, feel free.

14          What I'm going to ask is even though we can see you

15  and there's a little name under there, because there's like 15

16  or so people on screen, just say who you are when you're

17  talking so the court reporter doesn't have to hunt for your

18  name to get it down.

19          MR. NORMAND:  Your Honor, this is Ed Normand from

20  Roche Freedman.  Maybe I didn't understand the question.  Is

21  the spirit of the question whether the plaintiffs want to say

22  anything with respect to opposing the motion to stay

23  discovery, or is the Court wanting to allow full briefing on

24  that motion?  We're happy to proceed how the Court --

25          THE COURT:  We're going to talk about it right now.

1      And so there's -- both sides have -- both sides have

2   said a bunch about this in the status report, you know, even

3   before the motion got filed.  And so what I'd like to -- and

4   nobody has to repeat what's in the status report.  This

5   obviously isn't my first rodeo either.

6      So go ahead if you want to respond to something in

7   the motion that isn't in the status report.

8      MR. NORMAND:  So a couple of threshold points, your

9   Honor, and then a larger substantive point -- but, again,

10  we're happy to argue to the extent the Court wants to hear

11  it -- the threshold points being, one, as this circuit and the

12  district have made clear, that a motion to stay discovery

13  really sensibly ought to wait the service of discovery.  We

14  haven't even begun to serve discovery, and it's putting the

15  cart before the horse to assume that we would start discovery

16  while the motion to dismiss we knew would be filed with

17  full-fledged discovery.  We're happy to speak with the

18  defendants about making our initial round of discovery more

19  targeted.

20     A second related threshold point which really follows

21  from the first point is when a defendant, or, here a set of

22  defendants, moves to stay discovery, they're supposed to

23  substantiate the burden, either through affidavit or other

24  quantification.

25     Now, we haven't seen that, and I think that reflects

1    the assumption that we would start discovery, as I say, with

2    full-fledged discovery rather than speaking with them about

3    targeted discovery that we think would not be nearly as

4    burdensome as the motion suggests.

5         The more substantive issue, I think, as your Honor

6    appreciates, in this district is a motion to stay discovery

7    introduces a preliminary injunction-type standard where the

8    Court is asked to assess the likelihood that the defendants

9    will prevail on their motion to dismiss, and that's where I

10   say, your Honor, we can go into that issue in whatever detail

11   with respect to the threshold issues that we would expect to

12   come up on the motion to dismiss.

13        I mean, our feeling there would be the issues that we

14   expect defendants to address are classically fact-intensive

15   issues.  Our perspective is we've alleged facts sufficient to

16   raise factual issues on those issues, and -- and we can go

17   through them.

18        I mean, we've alleged that there's an agreement on a

19   common methodology and that as a result of the agreement and

20   application of the common methodology, there's artificially

21   inflated net prices of attendance.  This is a factually

22   intense issue.

23        We've alleged that the pro se rule applies, and the

24   Supreme Court made clear 40 years ago that that can be a

25   fact-intensive issue that requires considerable inquiry into

1    the market conditions.

2         So our threshold point as to market is we don't even

3    need to define a market because the per se rule applies, and

4    the resolution of whether the per se rule applies is not

5    typically subject to resolution as a matter of law.

6         If we did need to define a market, that is another

7    classically fact-intensive issue.  The plaintiff certainly has

8    to allege a plausible market.  We've alleged facts and more

9    detailed facts in the amended complaint to support that market

10   definition, including that defendants and representatives of

11   defendants effectively agreed that they compete with the

12   schools that we say they compete against.

13        So it's rare enough for the federal courts to resolve

14   market definition as a matter of law, and on those facts, it

15   would be even rarer.

16        And there's a still further issue in the Seventh

17   Circuit, which is --

18        THE COURT:  Time out.  I really don't need you to

19   argue the motion to dismiss here.  I haven't even seen the

20   thing yet.

21        MR. NORMAND:  Understood, your Honor, and that was

22   the spirit of what I meant, that --

23        THE COURT:  Yeah.

24        MR. NORMAND:  -- I took that -- the task for the

25   Court on a motion to stay discovery is this preliminary

1   injunction-type assessment of likelihood of success on the
2   merits.
3           So I think I've said enough there.  And if it makes
4   the Court's life easier, my threshold point, I would repeat,
5   which is that --
6           THE COURT:  It doesn't.  Actually, it doesn't -- it
7   actually does not make life easier for me for you to repeat
8   something that you already said.
9           MR. NORMAND:  Just that we're willing to speak --
10          THE COURT:  I already heard.
11          MR. NORMAND:  -- to the defendants about targeted
12  discovery.
13          THE COURT:  Okay.  Thanks.
14          Is there somebody -- and I don't want to hear from 16
15  people or 15 or anything more than like one, maybe -- is there
16  somebody on the defendants' side who wants to say something
17  that you haven't already said either in the status report or
18  in the motion?
19          MS. MILLER:  Thank you, your Honor.  Britt Miller,
20  Mayer Brown, on behalf of Georgetown, and I'll be speaking on
21  this issue briefly for the Court.
22          As you might imagine, defendants disagree with
23  plaintiffs' assessment of the likelihood of success on the
24  motion to dismiss.  We will not argue that motion here before
25  your Honor today, but we believe that some, or not all -- if

1   not all, of the motion to dismiss will resolve the issues

2   before your Honor.  We don't believe there is a standard that

3   requires some form of TRO or other sort of likelihood of

4   success on the merits.

5        The statute at issue here clearly contemplates that

6   one of its purposes is to not impose great litigation costs on

7   the parties that participate in the group and have advantage

8   of the statute.

9        The plaintiffs have made plain in their schedule that

10   has been proposed and in their status report that they are

11   seeking 1700 interrogatories and some 195 depositions.  That

12   is by no means tailored.

13        We think that the motion to dismiss can be presented

14   before your Honor, argued, and decided before there needs to

15   be any material efforts.  We have offered to do an ESI

16   protocol and other preliminary matters so in the event that

17   this case does survive and go forward, the parties can hit the

18   ground running, but we don't believe that plaintiffs'

19   allegations as pled warrant full-blown discovery or any

20   discovery at this point prior to a decision on the motion to

21   dismiss.

22        THE COURT:  Can you remind me what the due date is

23   for the response to the amended complaint?

24        MS. MILLER:  Yes, your Honor.  It's April 15th.

25        THE COURT:  All right.  Thanks.

1        So somebody cited in a footnote in the status report,
2    I think it was footnote 7 or something like that, a --
3    somebody had drilled down onto a docket of an antitrust case
4    that I had a couple years ago and said, ah-ha, Judge, you
5    stayed discovery pending the motion to dismiss in that case.
6    It was called Black Bear, I think.  It was about hockey rinks.
7        What I did in that case is I did stay discovery once
8    I got the motion to dismiss.  And before that, what had
9    happened was I had ordered 26(a)(1) disclosures, and I had
10   told the parties, because there was a discussion at the very
11   early stages about staying discovery, I said I'm not going to
12   stay discovery until I see a motion, and then I'll make an
13   assessment then, and we'll talk about it, and then I'll decide
14   it at that point, and that's what I did.
15       And the reason I ordered 26(a)(1)s, so it was -- so
16   that if I decided not to stay discovery, we wouldn't have lost
17   whatever time there was in the interim.
18       That's what I'm going to do here.
19       I'm not going to stay discovery sight unseen.  I know
20   that you've sketched out the outlines of what the motion to
21   dismiss says.
22       I'm going to -- what I'm going to do is give you a
23   date for 26(a)(1)s, not allow the service of any other
24   discovery other than that.  Prior to when we revisit this, I'm
25   going to set you for a date right after -- a little bit after

1   the motions to dismiss come in, and I'll make a decision then

2   about whether discovery gets stayed further at that point.

3          So --

4          MR. NORMAND:  Your Honor -- I'm sorry to interrupt,

5   your Honor.  Would you then -- no opposition necessary to the

6   motion to stay discovery?

7          THE COURT:  No, you don't have to brief it now.

8   We'll talk about that at a later point in time.

9          MR. NORMAND:  Thank you, your Honor.

10         THE COURT:  And that was Mr. Normand talking,

11  Carolyn.

12         Okay.  So I'm just going to -- just to have a date,

13  I'm going to give you the same date for 26(a)(1)s as the date

14  for the response to the motion to dismiss.  It's April 15th.

15         And then so that's the first issue.

16         And the motion to stay discovery is entered and

17  continued to the next status hearing.

18         The second issue has to do with the motions to

19  dismiss.

20         So I got 16, I think, if I'm counting right,

21  defendants here.  Have you had any discussions amongst

22  yourselves about combining and things like that?  It looks

23  like, to me, that the principal arguments, or at least

24  sketched out in the status report, are things that would

25  largely and perhaps in some cases entirely be common to

1   everybody.

2           So have you talked about that, or are you planning to

3   each file your own motion?

4           MS. MILLER:  Your Honor, Britt Miller --

5           THE COURT:  I said planning.

6           MS. MILLER:  Pardon me, your Honor.  Britt Miller on

7   behalf of Georgetown University.  The answer is, yes, your

8   Honor.  We have discussed filing a joint motion.  We

9   anticipate doing just that.  Of course, we will be as

10  efficient as possible and targeted.

11          We do anticipate that there are possibly some unique

12  issues for some of the defendants, and so we would expect that

13  there will be one or two additional individual motions to

14  dismiss, maybe joined by a smaller number of defendants that

15  are unique to those defendants.

16          We have already discussed with plaintiffs the page

17  limits for those.  We would propose that for the joint brief,

18  that there be 30 pages for that joint brief, and to the extent

19  there are separate briefs, that they be five pages each.

20          And the parties have already discussed page limits

21  and possible dates for responses and replies if your Honor

22  would like us to go through those.

23          THE COURT:  Okay.  So let me just back up a little

24  bit.

25          So what you propose, at least conceptually, sounds

1   fine to me because I'm sure there will be some individual
2   issues.

3       What I'm not willing to do is to just say anybody who
4   wants to file an individual brief gets five pages, because if
5   I'm doing the math right, that means I get a total of 90,
6   potentially.  Maybe it wouldn't end up that way, but I want to
7   have some kind of an overall page limit on those.

8       I don't expect you to be able to sort of tell me that
9   right now.  What I'd like you to do is talk, principally on
10  the defense side, to try to get a handle on who is actually
11  going to need to file something separate, and then for those
12  folks, the extent to which those separate arguments may be
13  joint with somebody else and can be combined and which aren't
14  and how many pages total you're looking for for the extra
15  brief.

16      So what I'd like you to do on that is maybe in two
17  weeks -- so two weeks would be -- today is the first -- 15th
18  of March, if you can give me a -- we can just call it a status
19  report regarding motion to dismiss briefing, and include in
20  that a proposed overall page limit for that, and then give me
21  in that report whatever dates you come up with and proposed
22  page limits you've got for the response and the reply, because
23  that will have some impact on that.

24      So that's that issue.

25      Does anybody have any questions about that before I

1   go on to the next thing?

2           MS. MILLER:  No, your Honor.

3           MR. NORMAND:  No, your Honor.

4           THE COURT:  All right.  The third is the motion to

5   appoint lead counsel.  I may be botching the title on that.

6   And I guess my basic question is why?  Why do we need to do

7   that?

8           I mean, it looks like on the plaintiffs' side you all

9   cooperated in filing the complaint.  I mean, it's not a case

10  where I've got, you know, competing motions and things like

11  that, or -- I'm not aware, and you guys will tell me if there

12  are, I don't know that -- nobody's told me that there are any

13  other cases out there that, you know, might have to be roped

14  into this one or dealt with in some way.  But I guess I'm just

15  not seeing the need at this point for preliminarily appointing

16  lead counsel.

17          So if somebody wants to give me a good

18  between-the-eyes shot at why I should do that and not table

19  it --

20          MR. CRAMER:  Yes, your Honor.  Yes, your Honor.  I

21  appreciate the opportunity to speak to that --

22          THE COURT:  Who is --

23          MR. CRAMER:  Eric Cramer -- Eric Cramer for the

24  plaintiffs.

25          THE COURT:  Thanks.  Okay.

1          MR. CRAMER:  I guess I would make three points.  The

2    first is that designation of interim lead counsel assigns

3    responsibility from the Court to the lawyers for protecting

4    the interests of the absent class members, and the Court can

5    then assure that specific lawyers and law firms are assigned

6    responsibilities that would be laid out in our -- and as are

7    laid out in our proposed order so the Court can be sure that

8    pending the class certification opinion, there are specific

9    counsel that have been assigned the role of interim co-lead

10   counsel.  So we think that's important.

11         And second, yes, your Honor is correct.  At the

12   moment, there are no pending competing class actions or

13   competing cases in this jurisdiction or any other, to our

14   knowledge, but that doesn't mean there won't be in the future.

15   And often it takes time for some of these cases to percolate

16   up and get filed.  And appointing co-lead counsel now will

17   avoid confusion, disputes, diffusion, and responsibility

18   should additional cases get filed in this court or another

19   court.

20         And I've had this happen in my experience where

21   co-lead counsel wasn't appointed early on, then a few months

22   after, there's a bunch of cases filed, and it creates

23   confusion, especially if there's a motion to dismiss pending,

24   some new counsel comes forward, says, hey, we represent the

25   class, and we think it would clarify things if the Court would

1    appoint interim lead counsel as we've proposed.

2            And the last point I would make is one of the reasons

3    why there is no dispute among counsel in cases is because the

4    parties -- the lawyers have privately worked, we have agreed

5    amongst ourselves, and that's the preferred means under the

6    manual for complex litigation for this to go.

7            And so one of the reasons you don't see a dispute is

8    because we've come to a pre-agreement, and we think that

9    should be encouraged and not discouraged.

10           So for those reasons, your Honor, we would encourage

11   you and ask you with respect to grant our motion for

12   appointment.

13           THE COURT:  So I've got your motion up in front of me

14   on the screen.  Where do I find in the motion the thing

15   that -- the division of responsibility part that you were

16   talking about?

17           MR. CRAMER:  It's in the -- I would point your Honor

18   to the proposed order.

19           THE COURT:  Which exhibit is that?

20           MR. CRAMER:  It was filed along with the motion.

21   There's a proposed order appointing interim lead counsel and

22   liaison counsel.

23           THE COURT:  I just need to know where to look.  I'm

24   looking at the motion.  I'm looking at -- I'm now paging

25   through the attachments.  I'm seeing an affidavit, an

1    affidavit, and affidavit.

2         MS. FEGAN:  This is Elizabeth Fegan.  I believe that

3    we would've submitted it to the proposed order email.

4         THE COURT:  Oh, okay.

5         MR. CRAMER:  And I would point your Honor to the --

6         THE COURT:  Hang on a second.

7         Just give me a ballpark date on when that would've

8    happened so I can go look.  Or who sent it, that would be

9    helpful too.  I mean, there's a bunch of stuff that's come in

10   over the last couple of days in there.

11        I have to tell you, I'm going back, and I usually

12   delete stuff in there only as I enter it, I'm not seeing

13   anything.  So maybe I mistakenly deleted something, that

14   wouldn't be the first time that that happened, but I'm not

15   seeing something.

16        Is there anything on the docket in the case that I

17   can -- that you can point me to?  I've looked at all the -- I

18   looked at all but one.  I'm looking at the last one right now.

19        Oh, no, here's the order.  It's attachment 5 to the

20   motion.  Okay.  That would solve things.  So let me just --

21        MR. CRAMER:  And I would point your Honor to page 2

22   and 3, which set out the duties --

23        THE COURT:  Yeah -- okay.

24        So all that does is basically says the three law

25   firms that I am -- that I would be appointing as interim lead

1    counsel are responsible for everything.  I mean --

2             MR. CRAMER:  There's a liaison counsel, which is --

3             THE COURT:  No, I get -- I get that.  I get that,

4    obviously.

5             But, I mean, in terms of division of responsibility,

6    what's being divided?

7             MR. CRAMER:  I just mean that your Honor would have

8    appointed firms to take on the role of interim lead counsel,

9    and so you have divided responsibility -- you have given

10   responsibility --

11            THE COURT:  Let me get to my point in a different

12   way.

13            So who's not -- which of the law firms that filed the

14   complaint are not on the list?

15            MR. CRAMER:  Ms. Fegan's firm would be liaison

16   counsel and not part of interim --

17            THE COURT:  Right.

18            MR. CRAMER:  -- co-lead counsel.

19            The firms that are on the complaint are all -- all

20   the other firms are all seeking to be interim co-counsel.

21            THE COURT:  Okay.  And that's kind of the way I read

22   this when it came in.

23            And so, I mean, I get that if there are other cases

24   that get filed, at the risk of being unduly colloquial, it's

25   beneficial if somebody has already been appointed lead dog,

1    or, I guess, in this case, lead dogs.

2            But if basically what I'm being asked to do is

3    appoint everybody who filed the case as either lead counsel or

4    liaison counsel, I'm just not seeing the need for it,

5    particularly if there's no other cases.

6            Now, you guys will know if another case gets filed,

7    I'm guessing.  You'll find out about it in some way.  If it

8    looks like I need to do something, you'll let me know.

9            I'm going to table that motion for now.  I'm just not

10   seeing the need for it.  I'm moving on to the next thing.

11           MR. CRAMER:  Thank you, your Honor.

12           THE COURT:  Actually, the next thing you've already

13   answered is whether there is -- are of the defendants aware of

14   any other similar litigation that's been filed in any other

15   federal court or, I guess in theory, state court?

16           MS. MILLER:  Your Honor, Britt Miller.  I don't

17   believe so, your Honor.

18           THE COURT:  Okay.  All right.  So I think I've gone

19   through my whole list.  And so the only other thing I need to

20   do is give you a date for us to reconvene in April.

21           Before I do that, is there anything else that anybody

22   needs to bring up with me?

23           MS. MILLER:  Not from defendants, your Honor.

24           MR. BUSHOFSKY:  Your Honor, if I may, Jeff Bushofsky.

25   I just wanted to mention there is a new defendant which I

1   represent, and so it's Johns Hopkins University.

2           THE COURT:  I'm so sorry.  I was looking at the

3   status report.  I am so sorry for leaving you off.

4           Give the names of yourself and all your folks for the

5   record.

6           MR. BUSHOFSKY:  Sure.  It's Jeff Bushofsky and a

7   couple of colleagues who have pro hac vice motions pending

8   from Ropes & Gray for Johns Hopkins.

9           Thank you, your Honor.

10          THE COURT:  All right.  And sorry again.  I thought I

11  had -- I thought I was caught up on all the pro hac motions,

12  so let me just look and see if there's -- yeah.  I am caught

13  up on all the pro hac motions.  I think I just granted those

14  the other day.

15          MR.  BUSHOFSKY:  Thank you, your Honor.

16          THE COURT:  Yep.  Just over the weekend, I think.

17          Okay.  Anything else anybody needs to bring up?

18          MR. CRAMER:  No, your Honor.

19          THE COURT:  Okay.  So the date we're -- day we're

20  going to talk next is April the 20th, let's say at 8:30 again.

21  Decent chance that one is going to be a phone call because I'm

22  supposed to be finishing up a trial out in Rockford, which is

23  the Western Division, that day, and if so, I'll be out there,

24  and it's just going to be logistically easier for this to be a

25  phone call.  If that changes, I'll let you know before that.

1          So if there's nothing else, thanks for --

2          MR. GILBERT:  Your Honor, this is Robert Gilbert.

3    "Phone call" meaning video phone call or phone --

4          THE COURT:  No, a phone call as opposed to a video.

5          MR. GILBERT:  Got it.

6          THE COURT:  But I'll -- as for now, it's going to be

7    a phone call, but I -- that may change as we get closer, kind

8    of depending on what happens with my trial out there.

9          Okay.  I appreciate everybody cooperating and getting

10   this done today, and we'll talk to you in a couple months.

11   Thanks.

12         MR. NORMAND:  Thank you, your Honor.

13         MS. MILLER:  Thank you, your Honor.

14      (Which were all the proceedings had in the above-entitled

15   cause on the day and date aforesaid.)

16      I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.
17

18   _____          _____
     Carolyn R. Cox                    Date
     Official Court Reporter
19   Northern District of Illinois
     /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR
20

21

22

23

24

25