**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FRANK CARBONE, ANDREW CORZO, SAVANNAH ROSE EKLUND, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, KARA SAFFRIN, and BRITTANY TATIANA WEAVER, individually and on behalf of all others similarly situated, | **Case No. 1:22-cv-00125** |
| Plaintiffs, | |
| v. | **Hon. Matthew F. Kennelly** |
| BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, | **JOINT MOTION REGARDING CONFIDENTIALITY AND FERPA** |
| Defendants. | |

The parties submit this Joint Motion pursuant to Appendix I to Case Management Order #1 (Sept. 8, 2022), because they have not reached agreement on two essential aspects of the Confidentiality Order ("CO") to be entered in this case, as reflected in the highlighted language in the attached draft Confidentiality Order (Ex. A). Each side will submit its Proposed Confidentiality Order to the Court. One aspect involves the definition and redaction of "Donation Records." The

other aspect involves the coding of "Education Records." Both aspects relate to the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g.[1] The parties present Plaintiffs' arguments as to both aspects, then Defendants' arguments.

## THE PARTIES' ARGUMENTS

### I.    PLAINTIFFS' ARGUMENT

Plaintiffs set forth below their positions on the disputed issues between the parties with respect to the Confidentiality Order and its relation to FERPA.

A.    <u>The Donation Records That Plaintiffs Seek in Discovery Should Not Be Redacted</u>

1.    <u>The Standard for Production of Documents Under FERPA.</u>

The parties have discussed the propriety of language to address Defendants' concern for how the production of certain student-specific documents in this action might run afoul of FERPA. Plaintiffs set forth below their view of the relevant background of that statute.

FERPA and its implementing regulations, with certain exceptions that do not apply here, limit the release of "education records" of a student without prior notice to or the written consent of the student. 20 U.S.C. § 1232g(b)(1); *see also* 34 C.F.R. §§ 99.30, 99.1(c)(2). The definition of

---

[1] In addition to such disputed issues, Plaintiffs have raised two concerns that Defendants' use of the Attorneys' Eyes Only ("AEO") designation will interfere with Plaintiffs' ability to prosecute their case. First, under CO ¶ 2(b), such a designation will preclude Plaintiffs' use of an AEO document at the deposition of anyone other than the author or recipient of such a document. Given the alleged conspiracy at issue, Plaintiffs reasonably intend to use documents with deponents who were not parties to the document. On Defendants' representation that they will not abuse or overuse this designation, Plaintiffs have concluded that it is premature to press this issue with the Court unless and until there is a specific AEO document at issue. Second, as to the 15-day period before "receiving the final transcript and exhibits" for which a deposition transcript is automatically treated as AEO unless Defendants remove that designation, CO ¶ 4, Plaintiffs also reserve the right to raise this issue if this mechanism is abused, overused, or interfering with their prosecution of the case, which may involve as many as 195 depositions, necessitating several depositions per week. The automatic AEO designation prevents the use of the relevant deposition testimony in the several depositions that will occur within that 15-day period.

an "education record" includes any information or materials "maintained" by the institution that "contain information directly related to a student." 20 U.S.C. § 1232g(a)(4)(A).

The regulations provide that education records may also be released without notice or prior consent if all personally identifiable information ("PII") is first removed:

> *De-identified records and information.* An educational agency or institution, or a party that has received education records or information from education records under this part, may release the records or information without the consent required by § 99.30 after the removal of all personally identifiable information provided that the educational agency or institution or other party has made a reasonable determination that a student's identity is not personally identifiable, whether through single or multiple releases, and taking into account other reasonably available information.

34 C.F.R. § 99.31(b) (1); *see also Wanko v. Bd. of Trs. of Ind. Univ.*, 2018 U.S. Dist. LEXIS 127372, at *9 (S.D. Ind. 2018) ("FERPA also provides, at 34 C.F.R. § 99.31(b), that 'De-identified records' may be released without the required consent 'after removal of all personally identifiable information.'"), *aff'd*, 927 F.3d 966 (7th Cir. 2019). Under the regulations, PII includes:

> (a) The student's name; (b) The name of the student's parent or other family members; (c) The address of the student or student's family; (d) A personal identifier, such as the student's social security number, student number, or biometric record; (e) Other indirect identifiers, such as the student's date of birth, place of birth, and mother's maiden name; (f) Other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty; or (g) Information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates.

34 C.F.R. § 99.1. In sum, notwithstanding the requirements relating to de-identification of education records containing PII, FERPA *permits* the production of "education records" *with PII* pursuant to court order upon notice to the student, who may then seek protective action from the

court. The parties have agreed upon, and presented to the Court for entry, a proposed FERPA Order that establishes such a procedure for this case.

### 2. Plaintiffs Seek the Production of Certain Donation Records, Which Are Central to Plaintiffs' Theory of the Case.

In their First Set of Requests for Production ("RFPs"), in at least twelve (12) separate requests (nos. 5.p, 20-23, and 126-32), Plaintiffs seek certain records that include records concerning donations made to the Defendants and any connection between such donations and the admission of students (the "Donation Records" as defined in CO ¶ 8(a)(4)). (Defendants do not appear to dispute that Plaintiffs seek such documents.) These Donation Records are directly relevant to a core aspect of Plaintiffs' theory of the case—namely, that in violation of the antitrust exemption at issue, Defendants have engaged in wealth favoritism in their admissions decisions by consideration of past, present, or possible future donations from some associated individual in connection with a Defendant's admissions decision.

Under Section 568 of the Improving America's Schools Act of 1994, codified at 15 U.S.C § 1 Note, Congress sets forth an exemption from the antitrust laws to two or more institutions of higher education at which "all students admitted are admitted on a need-blind basis." The phrase "on a need-blind basis" is further defined to mean "without regard to the financial circumstances of the student involved or the student's family." To analyze the ways in which Defendants have considered the financial circumstances of students and their families, Plaintiffs must take discovery into Defendants' systems and processes for facilitating the admission of so-called "development admits," or "institutional cases," who are the children, friends, and relatives of actual and potential donors. Plaintiffs seek, for example, to relate Defendants' communications with donors to admissions decisions. In many cases, communications may establish that a student's admission was part of a quid pro quo, or related to his or her family's financial circumstances. Such proof

requires un-anonymized evidence. If Plaintiffs do not have access to this information, they will be effectively precluded (or at least heavily restricted) from analyzing and proving Defendants' violation of Section 568 by favoring the relatives of wealthy donors.

### 3. The Donation Records That Plaintiffs Seek in Discovery Are Not "Education Records" Under FERPA.

Citing FERPA, Defendants object to producing the Donation Records *without redacting the names of the donors and students*. Plaintiffs disagree, as explained below, and thus propose a paragraph, CO ¶ 8(a)(4), defining the "Donation Records," and a sentence, in CO ¶ 8(c), stating that these records *shall not redact* the names of donors or students. Defendants propose to resolve the issue on a document-by-document basis, after they produce thousands of Donation Records on which they automatically redact the names of donors and students, because they are PII . The Court therefore may properly rule now, and much more efficiently rule, on this issue before seeing thousands of such automatically redacted documents.[2]

Plaintiffs' proposed approach is the reasonable one and is well-grounded in the language of FERPA and the precedent interpreting the statute. Documents are "education records" only if they have been "maintained" by the institution and "contain information directly related to a student." 20 U.S.C. § 1232g(a)(4)(A). Under this definition, documents that exist outside of a dedicated file concerning the student are not "education records." In *Owasso Independent School District No. I-011 v. Falvo*, 534 U.S. 426 (2002), for example, the Supreme Court explained in relevant part that "FERPA requires 'a record' of access for each pupil. This single record must be kept 'with the education records.' This suggests Congress contemplated that education records

---

[2] Plaintiffs have never objected to the redaction of other PII from Donation Records and do not do so now, nor had Defendants ever articulated a concern for PII in Donation Records other than the names in the Donation Records before setting forth that position in the argument below. Clearly, the amounts of donations are not PII.

would be kept in one place with a single record of access. By describing a 'school official' and 'his assistants' as the personnel responsible for the custody of the records, FERPA implies that education records are institutional records kept by a single central custodian, such as a registrar." *Id*. at 434-45. Consistent with this reasoning, the federal courts have repeatedly held that materials existing *outside* of a centralized file concerning the student are not "education records."[3] Under this sensible standard, where they are not maintained in a centralized student file, messages, emails, other communications, and other documents about applicants relating to donors and donations would not constitute "education records"—and Defendants could not reasonably take documents (such as emails) maintained in other locations and make them purported "education records" by later placing them into a centralized student file.

The same result follows from courts' further interpretation that the reference to "information directly related to a student" in the FERPA definition of "education records" covers only those records related to student performance, such as academic performance, financial aid, and scholastic probation. *See, e.g.*, *Dahmer v. W. Ky. Univ.*, 2019 U.S. Dist. LEXIS 68638, at *8-9 (W.D. Ky. 2019) ("The records Plaintiff requests are not 'educational records' of the type FERPA seeks to protect from disclosure. These records contain no information relating to student academic performance, financial aid, or scholastic probation."). The courts have repeatedly applied

---

[3] *See, e.g.*, *Doe v. State Univ. of N.J.*, 2022 U.S. Dist. LEXIS 91897, at *12-13 (D.N.J. 2022); *S.B. v. San Mateo Foster City Sch. Dist.*, 2017 U.S. Dist. LEXIS 217440, at *55-58 (N.D. Cal. 2017), *aff'd sub nom. Burnett v. San Mateo Foster City Sch. Dist.*, 739 F. App'x 870 (9th Cir. 2018); *E.D. v. Colonial Sch. Dist.*, 2017 U.S. Dist. LEXIS 50173, at *28-29 (E.D. Pa. 2017); *Weston v. Kansas City*, 2011 U.S. Dist. LEXIS 130422, at *4-5 (W.D. Mo. 2011); *S.A. v. Tulare County Office of Educ.*, 2009 U.S. Dist. LEXIS 88007, at *2 (E.D. Cal. 2009); *see also* ; *Jewish Press Inc. v Brooklyn Coll.*, 2020 N.Y. Misc. LEXIS 2367, at *4-5 (Sup. Ct. 2020) (FERPA has been interpreted to apply to information "'kept in a student's individual file by a central registrar or custodian'").

this standard as well.[4] The donations records Plaintiffs seek in discovery do not fall under these qualifications for "education records."

*First*, the Donation Records include documents that may not be maintained in a centralized student file, such as documents from donors or identifying donations and documents reflecting communications concerning donors and donations. The Donation Records may also include communications that may indicate a Defendant's concern for such matters, such as communications between the Development Office, the President's Office, or the Financial Aid Office and the Admissions Office regarding an applicant, or communications with applicants pre-admission other than admissions interviews. The Donation Records may also include documents regarding applicants and endowed chairs, documents regarding membership in donor-related groups or societies, and documents that reside not in the student's file, but in other offices at the institution, such as the President's Office, the Alumni Relations Office, and the Development Office.[5]

*Second*, if some of the Donation Records have been placed in a student's centralized file, they still are not "education records," because they only incidentally—not "directly"—relate to the

---

[4] *See, e.g.*, *Bauer v. Kincaid*, 759 F. Supp. 575, 591 (W.D. Mo. 1991) (criminal investigation and incident reports are not educational records because "such records relate in no way whatsoever to the type of records which FERPA expressly protects; i.e., records relating to individual student academic performance, financial aid or scholastic probation which are kept in individual student files"); *Red & Black Publ'g Co. v. Bd. of Regents*, 427 S.E.2d 257, 261 (Ga. 1993) (citations omitted) ("[T]he records are not of the type the Buckley Amendment is intended to protect, i.e., those relating to individual student academic performance, financial aid, or scholastic probation."); *Culbert v. City of New York*, 254 A.D.2d 385, 387 (App. Div. 1998) (FERPA "was intended to protect records relating to an individual student's performance"); *Jewish Press*, 2020 N.Y. Misc. LEXIS 2367, at *4-5 (citations omitted) (citing *Culbert* and explaining that "FERPA has been interpreted as only protecting disclosure of 'records relating to an individual student's performance'") (quotations omitted); *see also Seoane-Vazquez v. Ohio State Univ.*, 2009 U.S. Dist. LEXIS 152913, at *11-12, 32-33 (S.D. Ohio 2009).

[5] Under the definitions in the RFPs, "'Development' means activities and services Concerning fundraising, philanthropy, Donor cultivation, and alumni relations" and "'Development Office' means all of [a Defendant's] offices, departments, or divisions that handle Development."

students and they do not address their academics, performance, financial aid information, or the like. The Donation Records may refer to a student, but they are not really *about* the student; they are about the donor and the donations, communications and information relating to efforts at university fund-raising, and how those efforts may relate to the admission process.

In sum, because the Donation Records are not "education records" that FERPA was established to protect, the statute does not require that Defendants remove donor or student names ("de-identify" the documents, in the language of the statute) before producing them. Contrary to Defendants' assertions, Plaintiffs are not trying to change the language of FERPA by defining a category of documents as "Donation Records." Instead, Plaintiffs are seeking to describe certain documents to which FERPA does not to apply because they are not "Education Records" under existing law. Accordingly, the Court should accept Plaintiffs' proposed language and direct in the Confidentiality Order that Defendants produce the Donation Records without redaction of donor or student names.

> 4. In the Alternative, If the Donation Records at Issue Are "Education Records Under FERPA, Defendants Still Should Not Redact Any <u>Names from the Documents.</u>

Under the well-established interpretation of FERPA, including by the Department of Education ("DOE") itself, "education records" that include "personally identifiable information" of the student may be released in response to a judicial order after notice to the students and their opportunity to seek protective action from this Court, without consent and without redaction.[6] *See* 20 U.S.C. § 1232g(b)(2)(B); DOE FAQ ("FERPA permits disclosure of education records without

---

[6] The disclosure of "education records" pursuant to court order is permitted only after the educational institution "makes a reasonable effort to notify the . . . eligible student of the order or subpoena in advance of compliance, so that the . . . eligible student may seek protective action." 99 C.F.R. § 99.31(a)(9)(ii). The accompanying FERPA Order addresses these notice matters.

consent in compliance with a lawfully issued subpoena or judicial order. 34 C.F.R. § 99.31(a)(9)(i) and (ii).”); *McDaniel v. Loyola Univ. Med. Ctr.*, 2015 U.S. Dist. LEXIS 199643, at *7 (N.D. Ill. 2015) (“Disclosure of educational records is permitted under FERPA if it is necessary to comply with a lawfully issued subpoena or judicial order. 20 U.S.C. § 1232g(b)(2)(B).”).[7]

The commonly applied standard is whether the need for the requested documents outweighs the students’ privacy interests in the documents.[8] In this case, as explained above, Plaintiffs’ critical need for the Donation Records without redaction of names is based on their central importance to attack Defendants’ defense that their actions are exempt from the antitrust laws under Section 568. A linchpin of Plaintiffs’ attack on this defense is that Defendants do not admit all students on a “need-blind” basis. Instead, they engage in wealth favoritism in their

---

[7] *See, e.g.*, *Banks v. Baraboo Sch. Dist.*, 2020 U.S. Dist. LEXIS 176620, at *10 (W.D. Wis. 2020) (FERPA protects the confidentiality of student records, but allows such records to be disclosed pursuant to a court order”); *Lozano v. Baylor Univ.*, 2020 U.S. Dist. LEXIS 258592, at *2 (W.D. Tex. 2020) (FERPA “prohibits the release of educational records containing “personally identifiable information” absent written consent from the student or his parents, a judicial order directing such disclosure, or a lawfully issued subpoena”); *Metcalf v. Yale Univ.*, 2017 U.S. Dist. LEXIS 21032, at *13 (D. Conn. 2017) (“FERPA does, however, allow the disclosure of students’ educational records if ‘such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena….’ Thus, courts have found that FERPA does not prevent the disclosure of students’ educational records in connection with discovery in a case.”); *Alig-Mielcarek v. Jackson*, 286 F.R.D. 521, 526 (N.D. Ga. 2012) (“FERPA absolves schools that disclose educational records pursuant to a judicial order from sanctions.”); *see also Doe v. Yale Univ.*, 564 F. Supp. 3d 11, 20 (D. Conn. 2021); *Nelle v. Huntsville Sch. Dist.*, 2021 U.S. Dist. LEXIS 247566, at *17-18 (W.D. Ark. 2021); *Schaumleffel v. Muskingum Univ.*, 2019 U.S. Dist. LEXIS 117210, at *12-14 (S.D. Ohio 2019); *Stellwag v. Quinnipiac Univ.*, 2010 U.S. Dist. LEXIS 122855, at *2-3 (D. Conn. 2010).

[8] *See, e.g.*, *McDaniel*, 2015 U.S. Dist. LEXIS 199643, at *7 (“There is, however, a “significantly heavier burden” on the party requesting educational records to show that the interest in obtaining the records outweighs the privacy interest of the student.”); *Banks*, 2020 U.S. Dist. LEXIS 176620, at *11 (“Before disclosure of FERPA-protected documents pursuant to a court order, the party seeking disclosure is required to demonstrate a genuine need for the information that outweighs the privacy interests of the students.”) (quotations omitted); *Alig-Mielcarek*, 286 F.R.D. at 526 (“Thus, when addressing objections to the disclosure of educational records, courts have permitted discovery only when the party requesting the records has met a ‘significantly heavier burden’ to show that its interests in obtaining the records outweighs the significant privacy interest of the students.”); *Stellwag*, 2010 U.S. Dist. LEXIS 122855, at *2 (referring to the standard whereby “the party seeking disclosure is required to demonstrate a genuine need for the information that outweighs the privacy interest of the students”) (quotations omitted).

admissions practices, in particular favoring applicants who are associated with past donors, those who will donate at the time of the application, or whom Defendants view to be potential future donors. *See, e.g.,* Amended Complaint ¶¶ 134, 173-74, 177-78.

Defendants have suggested that their redactions to Donation Records should be considered on a case-by-case basis, but that would be enormously time-consuming and wasteful, for both the parties and the Court. *In the case of every Donation Record, Plaintiffs will need the names in order to test whether the donation impacted admission.* If the applicant was admitted, Plaintiffs would then inquire whether their credentials were less than the average for both the non-financial aid and the financial aid admitted pools, and whether they were rejected at other Defendants that did not have the benefit of the donation. Without having the names, Plaintiffs will be hamstrung in their ability to connect the various pieces of the puzzle presented by the Donation Records of how a past, present, or possibility of a future donation may have affected the admissions process, and to seek further discovery that may be necessary. Under these circumstances, Defendants should not go through the time-consuming and laborious process of redacting the Requested Documents, only later to engage in the time-consuming and laborious process of undoing these redactions.

On the other side of the equation, the privacy interest here is limited at best. Neither Section 568 nor FERPA was enacted to protect from the legal process the practices of institutions of higher education seeking to maximize their financial return from donors by effectively selling admissions slots and engaging in wealth favoritism in violation of Section 568. If the Court rules as Plaintiffs suggest, moreover, the Donation Records can still be designated "Confidential."

    B. Plaintiffs' Proposed Coding for De-Identified Structured Data Is Reasonable, <u>Whereas Defendants Have Not Provided Any Proposed Coding.</u>

Plaintiffs propose a paragraph, CO ¶ 8(d)(i), that addresses Defendants' coding of the large amount of de-identified structured data they will produce regarding individual students. This

language makes clear that such coding is "to facilitate obtaining at a later date further information or documents regarding a particular applicant or student, including information that is initially redacted per this ¶ 8 from the Structured Education Data, and to allow for comparison of data regarding the same student across multiple Defendants."

This proposed language reflects the critical importance that the code for a unique student be the same *with respect to such structured data received from each Defendant to which the student applied*. For example, in a price-fixing case it would be useful to know and compare the expected family contribution calculated by every Defendant to which a particular student applied and was accepted. Plaintiffs and their experts cannot do that work without proper coding.

Defendants' proposed version of this paragraph merely states that the "parties will work together in good faith to identify a unique code for each student." Plaintiffs advised Defendants of the need for this coding on September 22, 2022, however, and provided a specific workable code. Defendants, in contrast, to date have not suggested any alternative code, even though they have agreed that such a code must apply to data from the same student received from different Defendants. Considering the need to resolve the issue reasonably promptly, Plaintiffs' proposed language instead states that if Defendants do not provide a code that meets the necessary requirements by October 31, 2022, then the codes proposed by Plaintiffs will be adopted. Defendants have been given much longer than the "21 days" they propose to arrive at such a code. The length of time from September 22 to October 31 is 39 days.[9]

Defendants have asserted that based on 99 C.F.R. § 99.31 and related "guidance" from the DOE, they are precluded from providing codes in the manner Plaintiffs suggest in Paragraph 8(d)(i). However, that regulation pertains only to *education research*:

---

[9] In fact, the discussion of FERPA issues with Defendants dates back to their adding FERPA to the form of CO in August.

(2) An educational agency or institution, or a party that has received education records or information from education records under this part, may release de-identified student level data from education records for the purpose of education research by attaching a code to each record that may allow the recipient to match information received from the same source, provided that -

(i) An educational agency or institution or other party that releases de-identified data under paragraph (b)(2) of this section does not disclose any information about how it generates and assigns a record code, or that would allow a recipient to identify a student based on a record code;

(ii) The record code is used for no purpose other than identifying a de-identified record for purposes of education research and cannot be used to ascertain personally identifiable information about a student; and

(iii) The record code is not based on a student's social security number or other personal information.

99 C.F.R. § 99.31(b)(2). Certain "Guidance" from the DOE states, regarding the particular issue

of coding for *educational research*:

**Record code** refers to the unique descriptor that can be used to match individual-level records across de-identified data files from the same source (e.g., for the purposes of comparing performance of individual students over time). FERPA (34 CFR § 99.31(b)(2)) allows an educational agency or institution, or a party that has received education records or information from education records, such as a State educational authority, to release de-identified student-level data (microdata) from education records for the purpose of educational research by attaching a code to each record that may allow the researcher to match information received from the same source under the specified conditions. These conditions require that the coded de-identified microdata are used only for educational research purposes, that the party receiving the data is not allowed any access to the information about how the descriptor is generated and assigned, and that the code cannot be used to identify the student or to match the information from education records with data from any other source. Furthermore, a record descriptor may not be based on a student's social security number or other personal information.

Accordingly, the regulation that Defendants cite, and the guidance derived from that regulation, relate only to coding for educational research. The regulation and guidance do not cover litigation. The regulation and guidance also contemplate data received from a *single source*, which is not the case here, where Plaintiffs need to correlate data regarding each unique student across seventeen (17) educational institutions. In short, the situation in this matter is much more complex than what the *research*-related regulation and guidance cover.

In *litigation,* Plaintiffs also need to be able to verify through testimony that the correct codes were applied in the correct manner by each of the Defendants. This is not "blinded" research. The only way to achieve this goal without all seventeen (17) Defendants meeting together for weeks to individually code all of their hundreds of thousands of applicants and students over nearly a thirty-year period is for the code to derive from unique information each Defendant can find in each applicant's/student's file. Using only a portion of a social security number[10] or a portion of a birthdate, which, contrary to Defendants' assertions, is what Plaintiffs propose, does not identify the student to Plaintiffs, nor does the preceding information when attached to a zip code. Contrary to Defendants' repeatedly inaccurate assertions, even the education research regulation and guidance upon which Defendants rely do not preclude use of a portion of the social security number (nor a portion of the birthdate, as the Plaintiffs suggest) as the basis for a code, but instead precludes use of the entire social security number. The CBFinAid ID, where it exists, which Plaintiffs understand to be a random number generated by a third party, also does not identify the

---

[10] Using a portion of the social security number is not the same as the use of the social security number as a basis for the code, which is also prohibited by the regulation on education research. *The last four digits of a social security number, as the Court knows, is used as an identifier in many day-to-day situations in lieu of the social security number.* The use of only four of nine digits does not disclose identifying information.

student to Plaintiffs.[11] The use of this information for the coding purposes in this case thus does not implicate FERPA, even though it takes pieces of data from a student's file.

If the Court adopts Plaintiffs' form of Confidentiality Order and thereby orders that this method of coding be used, and a Defendant or Defendants are concerned that FERPA is implicated, they are free to provide notice to the applicants/students under the separate FERPA Order before producing the documents.

## II.    DEFENDANTS' ARGUMENT

The parties have worked diligently to agree on a proposed confidentiality order as well as an order governing the production of student information subject to the Family Educational Rights and Privacy Act ("FERPA"). However, two aspects of Plaintiffs' Proposed Confidentiality Order are inconsistent with the requirements of FERPA:

(1) Plaintiffs seek to prohibit Defendants from de-identifying Personally Identifiable Information ("PII," as defined in 34 C.F.R. § 99.3) from documents that Plaintiffs define as a "donation record" (a phrase that does not appear in FERPA).  In essence, Plaintiffs are asking the Court to declare as a matter of law that no document that meets Plaintiff's definition of "donation records" can contain PII that is subject to FERPA. Defendants, by contrast, propose that "donations records" be reviewed to determine if they contain PII and then de-identified if PII is found, before the documents are produced, and without violating FERPA.

(2) Plaintiffs also propose that, to de-identify FERPA-protected Education Records (as defined in 34 CFR §99.31(b)(1)) the parties construct an anonymized code that uses

---

[11] This ID is associated with the College Scholarship service application. The College Scholarship Service addresses applicants for non-governmental aid.

portions of a student's Social Security Number or other PII. *See* 34 CFR §99.31(b)(2); (Ex. A, Pls' Proposed Con. Order ¶8(d)(1)). If the Court were to adopt Plaintiffs' proposal, the FERPA-protected records would not, in fact, be de-identified under FERPA, and sensitive PII would be released in discovery. The Court should not include this language; as set forth in the remainder of paragraph 8(d)(1) of the Order, Defendants have committed to working in good faith with Plaintiffs to meet and confer further regarding what type of code can be used to track students, without improperly disclosing their PII. Deleting plaintiffs' proposed language does not prevent Plaintiffs from seeking such an order later if those efforts are unsuccessful.

FERPA conditions educational institutions' eligibility for obtaining certain federal funds on their compliance with rules about the protection of student Education Records and the Personally Identifiable Information of students. 20 U.S.C. § 1232g(b)(1). FERPA restricts the release of students' "Education Records" or "Personally Identifiable Information" unless one of its exceptions applies. 20 U.S.C. § 1232g(b)(2). FERPA defines "Education Records" broadly as "records, files, documents, and other materials" which "contain information directly related to a student" that are "maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A). Regulations implementing FERPA provide that "Personally Identifiable Information," ("PII"), includes, but is not limited to:

> (a) The student's name;
> (b) The name of the student's parent or other family members;
> (c) The address of the student or student's family;
> (d) A personal identifier, such as the student's social security number, student number, or biometric record;
> (e) Other indirect identifiers, such as the student's date of birth, place of birth, and mother's maiden name;
> (f) Other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of

the relevant circumstances, to identify the student with reasonable
certainty; or
(g) Information requested by a person who the educational agency
or institution reasonably believes knows the identity of the student
to whom the education record relates.

34 C.F.R. § 99.3 (emphasis added). PII may not be disclosed unless one of the exceptions to

FERPA applies.

One exception applies where disclosure is "in compliance with judicial order, or pursuant

to any lawfully issued subpoena, upon condition that parents and the students are notified of all

such orders or subpoenas in advance of the compliance therewith by the educational institution or

agency." 20 U.S.C. § 1232g (b)(2)(B). The applicable FERPA regulations also provide that an

educational institution may release "Education Records" without obtaining student or parental

consent "after the removal of all personally identifiable information," provided that the institution

"has made a reasonable determination that a student's identify is not personally identifiable,

whether through single or multiple releases, and taking into account other reasonably available

information." 34 C.F.R. § 99.31(b)(1). Although "[d]isclosure of educational records is permitted

under FERPA if it is necessary to comply with a lawfully issued subpoena or judicial order . . .

[t]here is . . . a 'significantly heavier burden' on the party requesting educational records to show

that the interest in obtaining the records outweighs the privacy interest of the student." *McDaniel*

*v. Loyola Univ. Med. Ctr.*, 2015 WL 13901029, at *2 (N.D. Ill. Apr. 28, 2015); *Banks v. Baraboo*

*Sch. Dist.*, at *4 (W.D. Wis. Sept. 25, 2020) ("Before disclosure of FERPA-protected documents

pursuant to a court order, the party seeking disclosure is required to demonstrate a genuine need

for the information that outweighs the privacy interests of the students.") (internal quotations

omitted).

Under the non-disputed portions of the Proposed Confidentiality Order and the agreed FERPA Order negotiated by the Parties, there are two primary ways Defendants may comply with FERPA when producing documents to Plaintiffs in this litigation: (1) redact or otherwise de-identify the documents so that students' PII is not disclosed, or (2) provide notice to each affected student whose information will be disclosed pursuant to a court order and provide a manner by which that student may seek protective action from this Court. The parties have generally agreed to include provisions that permit Defendants to use one or both methods to comply with FERPA.

However, Plaintiffs seek to include in paragraph 8(c) of the Proposed Confidentiality Order language that contradicts these methods and violates FERPA that would prohibit Defendants from redacting or otherwise de-identifying the names of students and their parents if a document falls within Plaintiffs' broad definition of "donation records." (Ex. A, Pls' Proposed Con. Order ¶8(c)) ("Redaction of the names of donors and applicants/students shall not be permitted on any portion of a Donation Record."). FERPA's definition of what constitutes "Education Records" is broad, and includes all "records, files, documents, and other materials" which "contain information directly related to a student" that are "maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A). Effectively seeking to modify the statutory definition of "Education Records," Plaintiffs create a definition of "Donation Records" that includes *any* document that may "constitute, embody, reflect, refer to, or pertain to the monetary amount and/or name of the donor of a donation. . . ", regardless of whether those documents contain PII and declare that PII in those records is not subject to redaction in the way that all other records covered by FERPA are. (Ex. A, Pls' Proposed Con. Order ¶8(a)(4)). There is no support for Plaintiffs' definition of "Donation Records" in FERPA or anywhere else.

Plaintiffs argue that no documents which they define as "Donation Records" are "Education Records" under FERPA. This is wrong for several reasons. First, Education Records are not, as Plaintiffs contend, limited to documents contained within a dedicated student file and that relate to "student performance." While such documents are within the definition of Education Records, Education Records are not limited to such documents. *See, e.g.*, *United States v. Miami Univ.*, 294 F.3d 797, 812 (6th Cir. 2002) (rejecting the argument that FERPA only protects records "relating to individual student academic performance, financial aid or scholastic probation" based on the plain text of FERPA, and noting that "Congress made no content-based judgments with regard to its 'education records' definition."); *W. Chester Univ. of Pennsylvania v. Rodriguez*, 216 A.3d 503, 509 (Pa. Commw. Ct. 2019) (rejecting as "overly narrow" the argument that "the requested emails are not education records" because they were not "kept in the permanent file of any student," noting that "Education records must be maintained in some way that preserves them and tracks requests for access to them, but placement within a single student's permanent file is not the only action that could constitute such maintenance.").[12] Second, even if FERPA's definition of an Education Record was so limited, and it is not, it would be premature to conclude that no Education Record relating to a student contains any mention of any donor or donation or otherwise falls into Plaintiffs' broad definition of "Donation Records" without first reviewing the

---

[12] The text from the Supreme Court case Plaintiffs cite, *Owasso*, has been recognized as dicta, and courts have declined to limit education records to a student's "dedicated file" with a central custodian. *Unincorporated Operating Div. of Indiana Newspapers, Inc. v. Trustees of Indiana Univ.*, 787 N.E.2d 893, 906 (Ind. Ct. App. 2003)("Although the Reed materials are not maintained by a central custodian, *Falvo* [*Owasso*] should not be read to mean that all records not maintained by a registrar or central custodian cannot be education records."); *Bryner v. Canyons School District*, 351 P.3d 852 (Utah Ct. App. 2015) ("[W]e do not read *Owasso* to impose a strict requirement that records must be kept in a central location such as a filing cabinet to qualify as an education record as defined in FERPA. And we see no basis in the statutory language of FERPA to impose such a strict limitation.") In response to the *Owasso* ruling, the DOE amended the regulations to incorporate Owasso's narrow holding regarding peer-graded papers but did not limit the definition of "education records" to those in a dedicated file with a central custodian. *See Family Educational Rights and Privacy Act (FERPA)*, Final Rule, 73 FR 74805, 34 CFR Part 99 (Dec. 2008) *available at* https://www.federalregister.gov/documents/2008/12/09/E8-28864/family-educational-rights-and-privacy.

Education Record to identify its contents. Third, Plaintiffs' interpretation would leave unprotected even the most sensitive student PII that falls outside its narrow definition of Education Records, which is inconsistent with the text and purpose of FERPA. The name of students and their parents and other family members are protected under FERPA, regardless whether those names happen to fall into Plaintiffs' categorization of documents as "Donation Records." 34 C.F.R. § 99.3.

Plaintiffs' complaint that they cannot obtain information vital to their case unless PII in "Donation Records" may not be redacted is unavailing. Paragraph 8(h) of the Proposed Confidentiality Order provides an avenue for Plaintiffs to seek to obtain the identities of students and other PII in compliance with FERPA. In short, if Plaintiffs identify a need to remove redactions from certain documents containing student PII, under paragraph 8(h) of the Proposed Confidentiality Order, they may meet and confer with the appropriate Defendant to come to an agreement to unredact the information in compliance with FERPA, including by sending an appropriate notice to any affected student(s). (Ex. A, Pls' Proposed Con. Order ¶8(h)) In the event the parties do not reach agreement, paragraph 8(h) permits Plaintiffs to seek relief from the Court. *Id.* Thus, unlike Plaintiffs' proposed shortcut, the Proposed Confidentiality Order provides a mechanism for Plaintiffs to request the information without violating federal law.[13]

Plaintiffs also seek to include in paragraph 8(d)(i) of the Proposed Confidentiality Order language providing that if the Parties do not agree within 21 days on a specific type of anonymized code to be used to track Education Records once they are de-identified, Defendants must use a code that would contain students' PII (including date of birth and Social Security Number). This provision is both premature and, in all events, inconsistent with FERPA. The Proposed

---

[13] Further, even if Plaintiffs' proposal were consistent with FERPA, Plaintiffs have not established their "significantly heavier burden" as "the party requesting educational records to show that the interest in obtaining the records outweighs the privacy interest of the student." *McDaniel v. Loyola Univ. Med. Ctr.*, 2015 WL 13901029, at *2 (N.D. Ill. Apr. 28, 2015); *Banks v. Baraboo Sch. Dist.*, at *4 (W.D. Wis. Sept. 25, 2020).

Confidentiality Order already provides that the parties will work in good faith to identify such a code, come to an agreement concerning the code outside the Confidentiality Order per §99.31(b)(2)(i), or seek relief from the Court if and when the parties cannot agree. (Ex. A, Pls' Proposed Con. Order ¶8(d)(i)). Defendants are in the process of collecting documents and information to determine what information is common among Defendants' financial aid and admission processes that might be usable to construct a code without using student PII. Plaintiffs have requested extensive and voluminous data going back 20 years from 17 Defendants. Defendants are diligently working to identify responsive data and a potential common code, but doing so will require additional time given Plaintiffs' demands. Plaintiffs' impatience is not a reason to shortcut this process, especially given the risks to Defendants if they violate FERPA.

More importantly, Plaintiffs' insistence that Defendants use a code that contains students' PII would violate FERPA for several reasons. FERPA regulations allow for production of Education Records if they are de-identified so that student's identities cannot be determined. The regulations allow for use of a code to identify students once records are redacted, and they provide that the code used in place of PII may not be "based on a student's social security number or other personal information." 34 CFR §99.31(b)(2)(iii).[14] Department of Education guidance on the topic similarly prohibits the use of any portion of a student's social security number or other PII as part of the unique code. *Data De-identification: An Overview of Basic Terms*, DEPARTMENT OF EDUCATION PRIVACY TECHNICAL ASSISTANCE CENTER at pp. 3, 5 *available at* https://studentprivacy.ed.gov/sites/default/files/resource_document/file/data_deidentification _terms.pdf. This restriction is consistent with the FERPA regulation prohibiting disclosure of any

---

[14] In addition, the regulations also forbid the educational institution from disclosing "any information about how it generates and assigns a record code, or that would allow a recipient to identify a student based on a record code." 34 CFR §99.31(b)(2)(i). Thus, the elements of any anonymized code should not be contained in a publicly-filed confidentiality order.

"information that, alone or in combination, is linked or linkable to a specific student," especially when the information sought is as highly sensitive as a Social Security Number or birthdate. 34 C.F.R. § 99.3.

The regulations regarding de-identification appear in a section of the Code addressing sharing of information for research purposes, but they are consistent with the FERPA regulations more generally and are the only specific guidance available for what information is appropriate to use in an anonymized code. Because Plaintiffs' proposed code includes a student's Social Security Number and birthdate, it would not sufficiently de-identify the student in compliance with § 99.31(b)(1), which requires the disclosing party to make "a reasonable determination that a student's identity is not personally identifiable, whether through single or multiple releases, and taking into account other reasonably available information." 34 C.F.R. § 99.3(b)(1). Plaintiffs' argument that Defendants could simply provide notice to all affected students by their code is premature and unduly burdensome because that could potentially result in hundreds of thousands of notices even though there may be a FERPA-compliant code that would avoid such a burden on the Defendants and the Court. Plaintiffs' unjustified impatience is not a reason to shortcut this process and risk violating FERPA.

In conclusion, the Court should adopt the Parties' Proposed Confidentiality Order without the additions that Plaintiffs seek to make to paragraphs 8(c) and 8(d)(i).

Dated:  October 21, 2022

By: */s/ Edward J. Normand*
Velvel (Devin) Freedman
Edward J. Normand
Peter Bach-y-Rita
**FREEDMAN NORMAND**
**FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law

Robert D. Gilbert
Elpidio Villarreal
Alexis Marquez
**GILBERT LITIGATORS &**
**COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Tel: 646-448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
amarquez@gilbertlitigators.com

Eric L. Cramer
Caitlin G. Coslett
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
ccoslett@bm.net

Daniel J. Walker
Robert E. Litan
Hope Brinn
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 S. Wacker Dr., 24th floor
Chicago, IL 60606
Tel: 312-741-1019
beth@feganscott.com

Brooke Achua
**FEGAN SCOTT LLC**
140 Broadway
46th Floor
New York, NY 10005
Tel.: 646- 502-7910
brooke@feganscott.com

*Counsel for Plaintiffs*

By: */s/ Kenneth Michael Kliebard*
Kenneth Michael Kliebard
**Morgan Lewis & Bockius LLP**
110 N. Wacker Drive
Suite 2800
Chicago, IL 60606
Tel:     (312) 324-1000
Email: kenneth.kliebard@morganlewis.com

Jon R. Roellke*
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel:     (202) 739-5754
Email: jon.roellke@morganlewis.com

Noah J. Kaufman*
**Morgan, Lewis & Bockius LLP**
One Federal Street
Boston, MA 02110
Tel:     (617) 341-7590
Email: noah.kaufman@morganlewis.com

Sujal J. Shah*
**Morgan, Lewis & Bockius LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Tel:     (415) 442-1000
Email: sujal.shah@morganlewis.com

*Attorneys for Defendant Brown University*

*/s/ Deepti Bansal*
Deepti Bansal
Alexander J. Kasner*
**Cooley LLP**
1299 Pennsylvania Avenue, NW 700
Washington, DC 20001
Tel:     (202) 728-7027
Email: dbansal@cooley.com
Email: akasner@cooley.com

Matthew Lawrence Kutcher
**Cooley LLP**
110 N. Wacker Drive
Suite 4200
Chicago. IL 60606
Tel:     (312) 881-6500
Email: mkutcher@cooley.com

*Attorneys for Defendant California Institute of Technology*

*/s/ James L. Cooper*
James L. Cooper
Michael Rubin*
**Arnold & Porter**
601 Massachusetts Avenue NW
Washington, DC 20001
Tel:     (202) 945-5000
Email: james.cooper@arnoldporter.com
Email: michael.rubin@arnoldporter.com

Leah Harrell*
**Arnold & Porter**
250 West 55th Street
New York, NY 10019
Tel:     (212) 836-7767
Email: leah.harrell@arnoldporter.com

Valarie Hays
**Arnold & Porter**
70 W Madison Street
Suite 4200
Chicago, IL 60602
Tel:     (312) 583-2440
Email: valarie.hays@arnoldporter.com

*Attorneys for Defendant University of Chicago*

*/s/ Patrick Joseph Fitzgerald*
Amy Van Gelder
Patrick Joseph Fitzgerald
Laura Bernescu
**Skadden Arps Slate Meager & Flom LLP**
155 N. Wacker Drive
Suite 2700
Chicago, IL 60606
Tel:     (312) 407-0903
Email: amy.vangelder@skadden.com
Email: patrick.fitzgerald@skadden.com
Email: laura.bernescu@skadden.com

Karen Hoffman Lent*
**Skadden Arps Slate Meager & Flom LLP**
One Manhattan West
Room 40-216
New York, NY 10001
Tel:     (212) 735-3276
Email: karen.lent@skadden.com

*Attorneys for Defendant The Trustees of Columbia University in the City of New York*

*/s/ Norman Armstrong*
Christopher Yook*
Norman Armstrong, Jr.*
**King & Spalding**
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
Tel:     (202) 626-3737
Email: cyook@kslaw.com
Email: narmstrong@kslaw.com

Emily T. Chen*
**King & Spalding**
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel:     (212) 556-2224
Email: echen@kslaw.com

Zachary Thomas Fardon
**King & Spalding**
110 North Wacker Drive
Suite 3800

Chicago, IL 60606
Tel:    (312) 995-6333
Email: zfardon@kslaw.com

*Attorneys for Defendants Cornell University and William Marsh Rice University*

*/s/ Terri Lynn Mascherin*
Terri Lynn Mascherin
Lina Ragep Powell
Reid J. Schar
**Jenner & Block LLP**
353 N. Clark Street
Chicago, IL 60654
Tel:    (312) 222-9350
Email: tmascherin@jenner.com
Email: linapowell@jenner.com
Email: rschar@jenner.com

Douglas E. Litvack*
Ishan K. Bhabha*
Lauren J. Hartz*
**Jenner & Block LLP**
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel:    (202) 637-6357
Email: dlitvack@jenner.com
Email: ibhabha@jenner.com
Email: lhartz@jenner.com

*Attorneys for Defendant Trustees of Dartmouth College*

*/s/ Casey T. Grabenstein*
Casey T. Grabenstein
Elizabeth Anne Thompson
James A. Morsch
**Saul Ewing Arnstein & Lehr**
161 N. Clark Street
Chicago, IL 60601
Tel:    (312) 876-7810
Email: casey.grabenstein@saul.com
Email: elizabeth.thompson@saul.com
Email: jim.morsch@saul.com

Derek Ludwin*
**Covington & Burling LLP**

One City Center
850 Tenth Street, NW
Washington, DC 20001
Tel:     (202) 662-6000
Email: dludwin@cov.com

Christopher Dean Dusseault*
Jacqueline Sesia*
**Gibson, Dunn & Crutcher LLP**
333 South Grand Avenue
Los Angeles, CA 90071
Tel:     (213) 229-7855
Email: cdusseault@gibsondunn.com
Email: jsesia@gibsondunn.com

Rachel Susan Brass*
**Gibson, Dunn & Crutcher LLP**
555 Mission Street, Suite 3000
San Francisco, CA 94105
Tel:     (415) 393-8200
Email: rbrass@gibsondunn.com

*Attorneys for Defendant Duke University*

/s/ Tina M. Tabacchi
Tina M. Tabacchi
Kenneth Michael Kliebard
**Jones Day**
110 North Wacker Drive
Suite 4800
Chicago, IL 60601
Tel:     (312) 782-3939
Email: tmtabacchi@jonesday.com
Email: kenneth.kliebard@morganlewis.com

Christopher N. Thatch*
Craig A. Waldman*
Hashim M. Moopan*
**Jones Day**
51 Louisiana Avenue, NW
Washington, DC 20001
Tel:     (202) 879-3939
Email: cthatch@jonesday.com
Email: cwaldman@jonesday.com
Email: hmmooppan@jonesday.com

Kate Wallace*
**Jones Day**
100 High Street
21st Street
Boston, MA 02110
Tel:     (617) 960-3939
Email: kwallace@jonesday.com

*Attorneys for Defendant Emory University*

/s/ Britt Marie Miller
Britt Marie Miller
Jed Wolf Glickstein
**Mayer Brown LLP**
71 South Wacker Drive
Chicago, IL 60606
Tel:     (312) 782-0600
Email: bmiller@mayerbrown.com
Email: jglickstein@mayerbrown.com


Stephen M. Medlock*
**Mayer Brown LLP**
1999 K Street NW
Washington, DC 20006
Tel:     (202) 263-3321
Email: smedlock@mayerbrown.com

*Attorneys for Defendant Georgetown University*

/s/ Jeffrey J. Bushofsky
Jeffrey J. Bushofsky
**Ropes & Gray LLP**
191 North Wacker Drive
32nd Floor
Chicago, IL 60606
Tel:     (312) 845-1200
Email: jeffrey.bushofsky@ropesgray.com

Chong S. Park
Samer Makram Musallam
**Ropes & Gray LLP**
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel:     (202) 508-4631
Email: chong.park@ropesgray.com

Email:  samer.musallam@ropesgray.com

*Attorneys for Defendant The Johns Hopkins University*

/s/ Eric J. Mahr
Daphne Lin*
Eric J. Mahr*
Jan Rybnicek*
**Freshfields Bruckhaus Deringer**
700 13th Street NW
10th Floor
Washington, DC 20005
Tel:    (202) 777-4500
Email:  daphne.lin@freshfields.com
Email:  eric.mahr@freshfields.com
Email:  jan.rybnicek@freshfields.com

Jennifer L. Greenblatt
Rami N. Fakhouri
**Goldman Ismail Tomaselli Brennan & Baum LLP**
200 South Wacker Drive
22nd Floor
Chicago, IL 60606
Tel:    (312) 661-6000
Email:  jgreenblatt@goldmanismail.com
Email:  rfakhouri@goldmanismail.com

*Attorneys for Defendant Massachusetts Institute of Technology*

/s/ Scott David Stein
Scott David Stein
Benjamin Richard Brunner
Kelsey Annu-essuman
**Sidley Austin LLP**
1 South Dearborn Street
Chicago, IL 60603
Tel:    (312) 853-7000
Email:  sstein@sidley.com
Email:  bbrunner@sidley.com
Email:  kannuessuman@sidley.com

*Attorneys for Defendant Northwestern University*

/s/ Robert Alois Van Kirk
Robert Alois Van Kirk
Cole Thomas Wintheiser

Jonathan Pitt
Matthew David Heins
Sara Forsythe Kirkpatrick
**Williams & Connolly LLP**
680 Maine Avenue SW
Washington, DC 20024
Tel:     (202) 434-5163
Email: rvankirk@wc.com
Email: cwintheiser@wc.com
Email: jpitt@wc.com
Email: mheins@wc.com
Email: skirkpatrick@wc.com

James Peter Fieweger
**Michael Best & Friedrich LLP**
444 West Lake Street
Suite 3200
Chicago, IL 60606
Tel:     (312) 222-0800
Email: jpfieweger@michaelbest.com

*Attorneys for Defendant University of Notre Dame du Lac*

/s/ Seth P. Waxman
Seth P. Waxman
**Wilmer Cutler Pickering Hale and Dorr LLP**
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel:     (202) 663-6000
Email: seth.waxman@wilmerhale.com

Alan Schoenfeld*
David Gringer*
**Wilmer Cutler Pickering Hale and Dorr LLP**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel:     (212) 937-7294
Email: alan.schoenfeld@wilmerhale.com
Email: david.gringer@wilmerhale.com

Daniel Martin Feeney
Edward W. Feldman
**Miller Shakman Levine & Feldman LLP**
30 West Monroe Street, 19th Floor
Chicago, IL 60603
Tel:    (312) 263-3700
Email: dfeeney@millershakman.com
Email: efeldman@millershakman.com

*Attorneys for Defendant The Trustees of the University of Pennsylvania*

/s/ John Mark Gidley
John Mark Gidley*
**White & Case LLP**
701 13th Street, NW
Washington, DC 20005
Tel:    (202) 626-3600
Email: mgidley@whitecase.com

Robert A. Milne
David H. Suggs*
**White & Case LLP**
1221 Avenue of the Americas
New York, NY 10020
Tel:    (212) 819-8200
Email: rmilne@whitecase.com
Email: dsuggs@whitecase.com

Carolyn Pelling Gurland
**White & Case LLP**
111 S. Wacker Drive
Suite 5100
Chicago, IL 60606
Tel:    (312) 881-5405
Email: carolyn.gurland@whitecase.com

*Attorneys for Defendant Vanderbilt University*

*/s/ Charles A. Loughlin*
Charles A. Loughlin
Benjamin F. Holt*
Jamie Lee
Molly Pallman
**Hogan Lovells US LLP**
555 Thirteenth Street, NW
Washington, DC 20004
Tel:     (202) 637-5661
Email: chuck.loughlin@hoganlovells.com
Email: benjamin.holt@hoganlovells.com
Email: jamie.lee@hoganlovells.com
Email: molly.pallman@hoganlovells.com

Stephen Novack
Serena Georgette Rabie
Stephen J. Siegel
**Novack and Macey LLP**
100 North Riverside Plaza
Chicago, IL 60606
Tel:     (312) 419-6900
Email: snovack@novackmacey.com
Email: srabie@novackmacey.com
Email: ssiegel@novackmacey.com

*Attorneys for Defendant Yale University*

*\*Pro hac vice*