**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FRANK CARBONE, *et al.*, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | Case No.: 22-cv-00125 |
| BROWN UNIVERSITY, *et al.*, | Hon. Matthew F. Kennelly |
| Defendants. | |

**JOINT STATUS REPORT**

The parties submit the following joint status report pursuant to Case Management Order 1 (ECF 195).

**I.     The Status of Discovery**

On October 19, the parties served their objections and responses to the first set of discovery requests. On November 3, the parties held a meet and confer regarding Plaintiffs' objections to the Defendants' first set of discovery requests.  On November 4, the parties held a meet and confer regarding Defendants' objections to Plaintiffs' requests for production. On November 7,  Plaintiffs served a second set of requests for production.

The Parties have also exchanged lists of proposed custodians and non-custodial sources of documents, pursuant to paragraphs V(A) and (B) of the draft ESI Protocol Order.  Plaintiffs have requested a series of individualized meet and confers with each Defendant university regarding custodians of documents, and have requested that those occur between November 8 and 11.

1

Defendants have also requested a meet and confer with Plaintiffs regarding their list of proposed custodians and non-custodial sources of documents.

On November 2, Defendants sent plaintiffs a list of proposed search terms pursuant to paragraph VI(D) of the proposed ESI Protocol Order.

## II.     The Parties' Respective Positions on Any Discovery Disputes That Have Become Ripe

As noted above, the Parties are in the process of meeting and conferring on a variety of issues, but there are presently no disputes that are ripe for resolution aside from those in Section IV below. Plaintiffs have proposed that parties will report back to the Court by November 30.

## III.    The Parties' Positions on Mediation

### A.      Plaintiffs' Position

Consistent with their longstanding proposal to use a nationally recognized mediator, first made in February 2022, Plaintiffs have discussed confidential mediation with certain counsel and intend to go forward with those defendants that are interested in or before January 2023; certain parties are discussing potential mediators and Plaintiffs expect agreement on a mediator by November 15.

### B.      Defendants' Position

Consistent with the direction given by the Court at the initial status conference, Defendants raised the subject of mediation with Plaintiffs on October 28. Defendants are amenable to discussing potential mediation, including exchanging lists of possible mediators, with Plaintiffs by November 15.

## IV.     ESI Protocol Order

As reported to the Court on October 14 (ECF 222), the parties have reached agreement, through meeting and conferring in good faith over the last several weeks, on most aspects of the

proposed Order Regarding Production of Electronically Stored Information and Paper Documents (the "ESI Protocol Order"). However, there are two discrete issues on which the Parties have not reached agreement: (a) preservation of certain categories of materials, and (b) privilege log requirements. The Parties' positions on those disputed issues are set forth below. A version of the proposed ESI Protocol Order with the provisions in dispute highlighted is attached as Exhibit A, and the parties will separately email to chambers their proposed versions of the ESI Protocol Order.

### A. Preservation

#### 1. Plaintiffs' Position

Defendants should preserve their public-facing websites relating to financial aid and admissions. Defendants are in the best position to have records of all website updates, as they are in sole control of such media. Defendants' proposed alternative for Plaintiffs to obtain historical website data from third-party web archival sources (such as the Wayback Machine) is not reasonable, as the data available is scattershot and random and could be challenged for its authenticity by Defendants (Best Evidence rule).

Defendants should preserve all backup media that could potentially house responsive materials. Recognizing the possible burden of producing documents from backup media, Plaintiffs are requesting only the preservation of these backups at present, and reserving their right to request production at a later date. The importance of preserving this historical backup media is underscored by reporting that at least some Defendants have implemented policies to systematically delete Admissions records as a liability avoidance strategy.[1] This reporting

---

[1] Nora Fellas, I Viewed My Vandy Admissions File And Learned Nothing, THE VANDERBILT HUSTLER (Dec. 9, 2020), *available at* https://vanderbilthustler.com/2020/12/09/fellas-i-viewed-my-vandy-admissions-file-and-learned-nothing/ ("Many of Vanderbilt's peer institutions have taken to deleting files

suggests that backup media may be the only source for much of the evidence relevant to Plaintiffs' allegations. Destruction or deletion of backup media could well be irreparable.

Where backup media may reasonably contain relevant, discoverable information, potential litigants have long been on notice of their duty to preserve those backups. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220–21 (S.D.N.Y. 2003). A party that fails to preserve backup media that was available at the onset of litigation (when the party "was unquestionably on notice of its duty to preserve") is grossly negligent at best, if not reckless. *Id.*; *accord Jones v. Bremen High Sch. Dist. 228*, No. 08 C 3548, 2010 WL 2106640, at *7 (N.D. Ill. May 25, 2010) ("[A]lthough defendant may not have had a duty before the lawsuit was filed to cease the overwriting of the backup tapes, it certainly had a duty to preserve [backup tapes] when it was first notified [of the litigation] . . . . [D]efendant's technology department could have easily halted the auto-deletion process and asked all employees who supervised plaintiff . . . to preserve information. In fact, defendant did just that with apparently minimal effort beginning in October 2008."). Defendants fervently protest the burden of preserving, restoring, and searching data from backup sources. This merely underscores Plaintiffs' position: Unless Defendants can represent

---

and records pertaining to accepted students in anticipation of requests in order to avoid sharing their actual comments or any of the "holistic" sausage-making of the admissions process. Following a sudden influx of requests in 2015, for example, Stanford changed its policy and began deleting many materials it would previously have kept. And in response to both the Varsity Blues scandal and the recent lawsuit against Harvard, in which unsuccessful applicants accused the school of racism in its admissions process, many schools have shied away from sharing information in order to avoid the possibility that it be submitted as evidence in a lawsuit."); *see also* Nels Lindquist, Columbia Office Of Undergraduate Admissions Destroys Records Of Assessments Made By Application Readers, COLUMBIA SPECTATOR (July 2, 2016), *available at* https://www.columbiaspectator.com/news/2015/04/10/columbia-office-undergraduate-admissions-destroys-records-assessments-made/; Michael Gioia, First Students Gain Access To Their Admissions Files Through Ferpa Provision, The Stanford Daily (Mar. 9, 2015), *available at* https://stanforddaily.com/2015/03/09/first-students-gain-access-to-their-admissions-files-through-ferpa-provision/.

with certainty that the backup media at issue do NOT contain relevant, discoverable information, any failure to preserve invokes a legitimate question of spoliation.

2.      <strong>Defendants' Position</strong>

Paragraph I(F) of the ESI Protocol identifies certain categories of information that are not routinely preserved and that the parties are not required to take steps to preserve, due to the fact that they are not likely to contain relevant information, or are otherwise not reasonably accessible because of undue burden or cost.  The parties are at odds over Plaintiffs' position that public-facing financial aid and admissions websites, and data housed on emergency back-up systems, should be excluded from those categories.  ESI Protocol ¶ I(F)(3) & (5).

**(a) Data Housed on Emergency Back-Up Systems**

Plaintiffs' position is, in essence, that Defendants should be required to suspend the routine operation of their emergency back-up systems for their entire IT infrastructures, for the duration of this litigation, even where the Party is not aware of those systems containing any unique responsive information.  Plaintiffs' position is untenable and directly at odds with the proportionality and efficiency principles underlying the Federal Rules, and the case law applying those principles.

Rule 26(b)(5) expressly provides that ESI from sources that are "not reasonably accessible because of undue burden or cost" is not discoverable.  Courts in this Circuit (and elsewhere) have therefore expressly categorized emergency back-ups as "not reasonably accessible" within the scope of Rule 26(b)(5).  *See, e.g., Clean Harbors Env't Servs., Inc. v. ESIS, Inc.*, No. 09 C 3789, 2011 WL 1897213, at *2 (N.D. Ill. May 17, 2011) ("Courts have already agreed that when information is stored on backup tapes, it is 'likened to paper records locked inside a sophisticated safe to which no one has the key or combination.' ESIS has given

us no reason believe that the information on the backup tapes in this case would be more easily accessible."); *United States v. Amerigroup Illinois, Inc.*, No. 02 C 6074, 2005 WL 3111972, at *3 (N.D. Ill. Oct. 21, 2005); *Hagemeyer North America, Inc. v. Gateway Data Sciences Corp.*, 222 F.R.D. 594, 600 (E.D.Wis.2004) ("In the hierarchy of accessibility, it is clear that electronic data stored on media such as the backup tapes involved here is near the bottom. One of the reasons for the difficulty involved in searching backup tapes is that they store infinitely more information than most other storage media. For example, a CD-ROM's storage capacity is 650 megabytes, the equivalent of 325,000 typewritten pages. Computer networks, on the other hand, create backup data measured in terabytes-1,000,000 megabytes-which is the equivalent of 500 billion typewritten pages.").

Given this fact, Plaintiffs' insistence that Defendants immediately cease the routine cycling of emergency back-ups is unreasonable. Because of the burden and cost of maintaining that storage media, and that there is generally not a need to maintain multiple copies of backups over an extended period of time, backup media is frequently overwritten – e.g. after 30 days, a party will overwrite the next backup onto the earliest existing backup, so that backup media is constantly being recycled. Under Plaintiffs' proposal, Defendants would be required to cease their ordinary backup operations and begin maintaining, for an undetermined period of years, every single emergency backup. That would be extraordinary costly and not at all proportional to the needs of the case, particularly in the absence of any reason to believe that there is responsive information that exists only on such emergency backup systems.

Finally, Plaintiffs also reference Defendants' routine document retention policies, which were in place prior to this litigation and are a recommended best practice for any sizable organization (not a "litigation avoidance strategy," as Plaintiffs nefariously describe them). But

6

the mere existence of records management policies does not justify Plaintiffs' burdensome preservation proposal.  Indeed, Plaintiffs provide no basis to conclude that Defendants' emergency back-up systems are likely to contain historical information concerning admissions files (let alone be the sole source of such information).

### (b) Websites

Plaintiffs' position that each defendant must preserve all documentation of public-facing financial aid and admissions websites is inconsistent with Defendants' obligations under Rule 26(b). It is disproportionate to the needs of the case to preserve Defendants' financial and admissions websites, which are frequently-changing, public facing websites, given that any probative information on these websites will likely be preserved in other formats. Courts have found it unduly burdensome and disproportionate to the needs of the case to require Defendants to produce documents, particularly navigable copies of websites, that are publicly available. *See, e.g., Cty. of Cook v. Bank of Am.*, 2019 WL 6309925 at *3 (N.D. Ill. Nov. 25, 2019) ("Considering the parties' equal access to [the documents] and the relative burdens of locating and collecting the [documents]," finding "it unduly burdensome and not proportional to the needs of the case to require Defendants to produce [documents] that are publicly available."); *City of Fort Lauderdale v. Scott*, 2012 WL 13075227 at *3 (S.D. Fla. May 17, 2012) (denying document requests and noting that Plaintiffs had online access to the relevant documents and, if they were inclined, could themselves incur the burden of search). And because these websites are updated frequently, it is impractical to preserve each potential iteration of the site. *See* P. Stephen Gidiere III, *The Federal Information Manual*, § 6.7 *The Preservation of Electronic Federal Records* (ABA 2013) ("Web pages are (and should be) updated frequently, and previous versions of pages may not be preserved as a practical matter (much like editing a document in a word

processing program)."). Specifically, it is not practical, necessary, or proportionate to preserve an entire site each time a new photo is added, a graphic is changed, or a staff directory is updated.

Courts have recognized that the relative burden of producing navigable copies of websites may be unduly expensive and burdensome when compared to the ability of the non-producing party to peruse such publicly available websites. *See, e.g., Am. Civil Liberties Union v. Gonzales*, 2005 WL 8178699 at *3 (E.D. Pa. Dec. 22, 2005). Courts have further expressed concern that preservation of *frequent changing websites* may be particularly burdensome. *See Stanford Hospitals & Clinics v. Service Employees Int'l Union, Local 715*, 2008 WL 4532557 at *2 (N.D. Cal. Oct. 8, 2008). Here, the probative information on Defendants' financial aid and admissions websites can be preserved in other formats due to extensive discovery of Defendants' internal financial aid and admissions documents. Therefore, "the burden or expense of [preserving these sources] outweighs its likely benefit." Rule 26(b)(1). Plaintiffs' position fails to acknowledge the relative burdens and costs of preserving frequently-changing public website information that is equally accessible to Plaintiffs.

Plaintiffs acknowledge the existence of the Internet Archive but argue that Defendants might object to use of pages from the Internet Archive. In their motion to dismiss, Defendants affirmatively cited the Internet Archive as something of which the Court can take judicial notice. Plaintiffs also argue that the Internet Archive's preservation efforts are episodic. In reality, there is no reason to believe that ongoing recording of changes to Defendants' webpages will not meet Plaintiffs' preservation needs in a way that is proportional.

### B. Privilege Log and Redactions

#### 1. Plaintiffs' Position

Defendants should identify the represented parties in their privilege logs and should include full privilege log entries for all documents either withheld or redacted on the basis of privilege. Plaintiffs require information about the privilege claimed and the nature of the document sufficient to evaluate the claim of privilege as required by Fed. R. Civ. P. 26(b)(5)(A). The remaining context of redacted documents and communications does not provide adequate information to assess the claim of privilege, where the claimed protection is specifically applicable only to the text that has been redacted. *See St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, No. 15-CV-10324, 2021 WL 4745385, at *5 (N.D. Ill. Oct. 12, 2021), objections overruled, No. 1:15-CV-10324, 2022 WL 1642311 (N.D. Ill. Mar. 30, 2022) (when "privilege log entries provide so little information in their description" that parties and the Court are prevented from understanding "how any claimed privileges may apply. … any [redacted] documents for which [a party has] provided no description in the privilege log … fail to even attempt compliance with Rule 26(b)(5)."). Any attempt to infer context and assess the privilege based on the visible text would be speculation. Moreover, Defendants are clearly in a better position to know who among a list of names is or is not an attorney, and therefore should identify the attorneys. (Because Defendants will be granularly evaluating documents and applying privilege redactions, any additional burden of logging the nature of the privilege claimed is minimal.)

### 2. Defendants' Position

Plaintiffs' position that Defendants should be required to log every redaction – even where the face of the document otherwise provides all the information necessary to assess the privilege claim – is not required by the Federal Rules and would impose on Defendants significant cost for no discernable benefit.

The parties are in agreement that if a document is withheld from production in its entirety, the withholding party will provide a privilege log; otherwise, there is no way for the other party to discern what documents are being withheld and the basis for the privilege. The same is not true, however, with regard to documents that are *produced*, but with discrete privileged information in the document redacted. Under Defendants' proposal (see Ex. A ¶ VI(E)), where privileged information is redacted from a document that is produced, but information sufficient to demonstrate the basis for the assertion of privilege is apparent from the unredacted portions of the document (e.g. e-mail sender, recipients, date, and subject), the parties need not separately log such documents. Additionally, the parties will identify in a metadata field which documents contain privilege redactions so that the entire universe of such documents can be readily identified and analyzed using standard e-discovery software. Moreover, in the event that a party contends that they still cannot discern the basis for the privilege from the unredacted information in the document, the party then may request that the document be logged.

Plaintiffs' position is that every privilege redaction must be logged in the first instance – even where the basis for the assertion of privilege is readily apparent from the face of the document. That is not required by the rules, and is unduly burdensome. "There is no requirement that defendants compile all explanations of privilege or other bases for withholding information in a single log." *Graham v. Mukasey*, 247 F.R.D. 205, 207 (D.D.C. 2008). "There is also no need, and the federal rules do not require a defendant, to create a log that describes the author, the date, the type of document, and so on, when the requesting party can see that information simply by looking at the document." *Id. See also Clark v. Edison*, No. CIV.A. 09-40040-FDS, 2010 WL 3245428, at *3 (D. Mass. Aug. 16, 2010)("Generally, a party does not

need to provide information concerning the type, date, and author of a document where such information is obvious from the document's title.").

Under Rule 26(b)(5), a party withholding otherwise discoverable information need only: 1) "expressly make" the privilege claim and 2) "describe the nature of the documents, communications, or tangible things not produced or disclosed… in a manner that…will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). Defendants' proposed approach does precisely this. If a party redacts a document on the basis of privilege, that will be expressly noted and included in the metadata, allowing every other party to readily identify that universe of documents. Moreover, Defendants' proposal expressly states that logging is not required <u>only</u> where information sufficient to discern the basis for the privilege log is apparent from the unredacted portions of the document. And if the opposing party believes that further information is required, it need only ask.

In virtually all cases, the information necessary to provide the basis for the privilege will be apparent from the unredacted portions of the document, making creation of a separate log unnecessary make-work. Furthermore, logging individual redactions in the first instance is unnecessarily burdensome, because such logs frequently cannot be automatically generated from review platforms -- such as where portions of an e-mail string are redacted. The Sedona Conference, the country's leading forum on electronic discovery, has explained that "[e]ven if there are relatively few privileged documents, preparing and reviewing a privilege log can be extremely time-consuming. Often, the privilege log is of marginal utility. The immense volume

of ESI now subject to discovery exacerbates the problem."[2]  The Sedona Conference endorses

the contours of the proposal made by Defendants here.[3]

Finally, the ESI Protocol identifies numerous specific categories of information that will

be included on a log, including identifying specifically which parties to a communication are

attorneys.  *See* ¶ VI(A).  Plaintiffs insistence that Defendants also specify, for each such entry,

"what Party each such attorney represents" is not required by the Federal Rules and is

unnecessary make-work.  If Plaintiffs believe any privilege log entry does not sufficiently

"describe the nature of the documents, communications, or tangible things not produced or

disclosed . . . in a manner that . . . will enable other parties to assess the claim," whether because

they claim not to understand who the attorney represents or for any other reason, they are free to

raise that issue with the other party.  Fed. R. Civ. P. 26(b)(5)(ii).


Dated:  November 7, 2022                    Respectfully submitted,


By:  */s/ Edward J. Normand*                By:  */s/ Kenneth Kliebard*
Devin "Vel" Freedman                        Kenneth Kliebard
Edward J. Normand                           MORGAN, LEWIS & BOCKIUS LLP
Peter Bach-y-Rita                           110 North Wacker Drive
FREEDMAN NORMAND                            Suite 2800
   FRIEDLAND LLP                            Chicago, IL 60606-1511
99 Park Avenue                              Tel: 312-324-1000
Suite 1910                                  kenneth.kliebard@morganlewis.com
New York, NY 10016

---

[2] The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production (2018), at 81

[3] The Sedona Conference Commentary on Protection of Privileged ESI (2016), at 163-164 ("If the author, recipient, and subject information within the email chain is also left unredacted (so that this information is available for lower emails in the thread), it seems that a privilege log would be largely redundant of information already available within the document and supplied in the metadata. . . . [O]pposing parties' Rule 26(b)(5)(A) concerns may be able to be addressed by including some type of privilege claim field with the produced metadata or, depending on the technology available, inserting a short description of the privilege claim within the redaction box.")

Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law

Robert D. Gilbert
Elpidio Villarreal
Alexis Marquez
GILBERT LITIGATORS &
COUNSELORS, P.C.
11 Broadway, Suite 615
New York, NY 10004
Tel: 646-448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
amarquez@gilbertlitigators.com

Eric L. Cramer
Caitlin G. Coslett
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
ccoslett@bm.net

Daniel J. Walker
Robert E. Litan
Hope Brinn
BERGER MONTAGUE PC
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs*

Jon R. Roellke
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel: 202-739-5754
jon.roellke@morganlewis.com

Sujal Shah
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower, 28th Floor
San Francisco, CA 94105-1596
Tel: 415-442-1386
sujal.shah@morganlewis.com

*Counsel for Defendant Brown University*

By:  /s/ Deepti Bansal
Deepti Bansal
Alexander J. Kasner
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC  20004-2400
Tel: 202-728-7027
dbansal@cooley.com
akasner@colley.com

Matthew Kutcher
COOLEY LLP
110 N. Wacker Drive
Chicago, IL  60606
Tel: 312-881-6500
mkutcher@cooley.com

*Counsel for Defendant California Institute of
Technology*

By: */s/ James L. Cooper*
James L. Cooper
Michael Rubin
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC  20001-3743
Tel: 202-942-5014
james.cooper@arnoldporter.com
michael.rubin@arnoldporter.com

Leah Harrell
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Tel.: 212-836-7767
Leah.Harrell@arnoldporter.com

Valarie Hays
ARNOLD & PORTER KAYE SCHOLER LLP
70 W Madison Street
Suite 4200
Chicago, IL 60602
Tel.: 312-583-2440
valarie.hays@arnoldporter.com

*Counsel for Defendant University of Chicago*

By:  */s/ Patrick Fitzgerald*
Patrick Fitzgerald
Amy Van Gelder
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
155 N. Wacker Drive
Chicago, IL 60606-1720
Tel: 312-407-0508
patrick.fitzgerald@skadden.com
amy.vangelder@skadden.com

Karen Hoffman Lent
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
Room 40-216
New York, NY 10001-8602
Tel: 212-735-3276
karen.lent@skadden.com

*Counsel for Defendant The Trustees of
Columbia University in the City of New York*

By:  */s/ Norm Armstrong*
Norm Armstrong
Christopher Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW

14

Suite 200
Washington, D.C.  20006
Tel.: 202-626-8979
narmstrong@kslaw.com
cyook@kslaw.com

Emily Chen
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel: 212-556-2224
echen@kslaw.com

Zachary T. Fardon
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
312 764 6960
zfardon@kslaw.com

*Counsel for Defendant Cornell University*

By: */s/ Terri L. Mascherin*
Terri L. Mascherin
Reid J. Schar
JENNER & BLOCK LLP
353 N. Clark Street,
Chicago, IL 60654-3456
Tel: 312-222-9350
tmascherin@jenner.com
rschar@jenner.com

Ishan K. Bhabha
Douglas E. Litvack
Lauren J. Hartz
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Tel: 202-637-6327
ibhabha@jenner.com
dlitvack@jenner.com
lhartz@jenner.com

15

*Counsel for Defendant Trustees of Dartmouth College*

*/s/ Christopher D. Dusseault*
Christopher Dean Dusseault*
Jacqueline Sesia*
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel:    (213) 229-7855
Email:  cdusseault@gibsondunn.com
Email:  jsesia@gibsondunn.com

Rachel Susan Brass*
Gibson, Dunn & Crutcher LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
Tel:    (415) 393-8200
Email:  rbrass@gibsondunn.com

James A. Morsch
Elizabeth Anne Thompson
Nicholas W. Collins
Saul Ewing Arnstein & Lehr
161 N. Clark Street
Chicago, IL 60601
Tel:    (312) 876-7810
Email:  jim.morsch@saul.com
Email:  elizabeth.thompson@saul.com
Email: nicholas.collins@saul.com

*Attorneys for Defendant Duke University*

Tina M. Tabacchi
JONES DAY
110 North Wacker Dr.
Suite 4800
Chicago, IL 60606
312.782.3939
tmtabacchi@jonesday.com

Craig A. Waldman
Hashim M. Mooppan
Christopher N. Thatch
JONES DAY

16

51 Louisiana Ave., N.W.
Washington, DC 20001
202.879.3939
cwaldman@jonesday.com
hmmooppan@jonesday.com
cthatch@jonesday.com

*Attorneys for Defendant Emory University*


By: */s/ Britt M. Miller*
Britt M. Miller
Daniel T. Fenske
Jed W. Glickstein
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312-783-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com
jglickstein@mayerbrown.com

*Counsel for Defendant Georgetown University*

By: */s/ Jeffrey J. Bushofsky*

Jeffrey J. Bushofsky
ROPES & GRAY LLP
191 North Wacker Drive 32nd Floor
Chicago, IL 60606-4302
Tel: 312-845-1200
jeffrey.bushofsky@ropesgray.com

Chong S. Park
Samer M. Musallam
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Tel: 202-508-4600
chong.park@ropesgray.com
samer.musallam@ropesgray.com

*Counsel for Defendant Johns Hopkins University*


By: /s/ Eric Mahr

17

Eric Mahr
Jan Rybnicek
Daphne Lin
FRESHFIELDS BRUCKHAUS DERINGER
US LLP
700 13th Street, NW
Washington, DC 20005
Tel: 202-777-4500
eric.mahr@freshfields.com
jan.rybnicek@freshfields.com
daphne.lin@freshfields.com

*Counsel for Defendant Massachusetts Institute
of Technology*

By: */s/ Scott D. Stein*
Scott D. Stein
Benjamin R. Brunner
Kelsey Annu-Essuman
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
Tel.: 414-559-2434
sstein@sidley.com
bbrunner@sidley.com
kannuessuman@sidley.com

*Counsel for Defendant Northwestern
University*

By: */s/ Robert A. Van Kirk*
Robert A. Van Kirk
Cole T. Wintheiser
Jonathan Pitt
Matthew D. Heins
Sarah F. Kirkpatrick
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: 202-434-5163
rvankirk@wc.com
cwintheiser@wc.com
jpitt@wc.com
mheins@wc.com
skirkpatrick@wc.com

James Peter Fieweger
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street
Suite 3200
Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for Defendant University of Notre Dame du Lac*

By: */s/ Seth Waxman*
Seth Waxman
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: 202-663-6800
seth.waxman@wilmerhale.com

David Gringer
Alan Schoenfeld
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: 212-937-7294
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Daniel Martin Feeney
Edward W. Feldman
MILLER SHAKMAN LEVINE & FELDMAN LLP
180 North LaSalle Street
Suite 3600
Chicago, IL 60601
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for Defendant The Trustees of the University of Pennsylvania*

By: */s/ Norm Armstrong*

Norm Armstrong
Christopher Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C.  20006
Tel.: 202-626-8979
narmstrong@kslaw.com
cyook@kslaw.com

Emily Chen
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel: 212-556-2224
echen@kslaw.com

Zachary T. Fardon
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
312 764 6960
zfardon@kslaw.com

*Counsel for Defendant William Marsh Rice University*

By:  */s/ J. Mark Gidley*
J. Mark Gidley
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005-3807
Tel: 202-626-3600
mgidley@whitecase.com

Robert A. Milne
David H. Suggs
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Tel: 212-819-8200
rmilne@whitecase.com
dsuggs@whitecase.com

*Counsel for Defendant Vanderbilt University*

By: */s/ Charles A. Loughlin*
Charles A. Loughlin
Benjamin F. Holt
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
Tel: 202-637-5600
chuck.loughlin@hoganlovells.com
benjamin.holt@hoganlovells.com

Stephen Novack
Stephen J. Siegel
Serena G. Rabie
NOVACK AND MACEY LLP
100 North Riverside Plaza, 15th Floor
Chicago, IL  60606-1501
Tel.: 312-419-6900
snovack@novackmacey.com
ssiegel@novackmacey.com
srabie@novackmacey.com

*Counsel for Defendant Yale University*