# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| FRANK CARBONE, ANDREW CORZO, SAVANNAH ROSE EKLUND, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, KARA SAFFRIN, and BRITTANY TATIANA WEAVER, individually and on behalf of all others similarly situated, | **Case No. 1:22-cv-00125** |
| Plaintiffs, | |
| v. | **Hon. Matthew F. Kennelly** |
| BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, | **ORDER REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS** |
| Defendants. | |

This Order Regarding Production Of Electronically Stored Information And Paper Documents ("ESI Protocol Order") shall govern the Parties in the above-captioned case whether they currently are involved or become so in the future, and any related actions that may later be consolidated with this case (collectively, the "Litigation").

Nothing in this ESI Protocol Order shall be construed to affect the admissibility of discoverable information. Pursuant to the terms of this ESI Protocol Order, information regarding search process and electronically stored information ("ESI") practices may be disclosed, but compliance with this ESI Protocol Order does not constitute a waiver, by any Party, of any objection to the production or admissibility of particular ESI, nor does it constitute a waiver of any right to discovery by any Party. For the avoidance of doubt, a Party's compliance with this ESI Protocol Order will not be interpreted to require disclosure of irrelevant information or information protected by the attorney-client privilege, the work product doctrine, the joint defense privilege, or any other applicable privilege.  This Order should be read together with and interpreted in light of the Order Regarding FERPA and the Production of Certain Documents and Information (Dkt. 231).

I.    **GENERAL PROVISIONS**

    A.    **Applicability:** This ESI Protocol Order will govern the production of ESI and paper documents. To the extent that a Party collected and processed documents prior to the entry of this ESI Protocol Order, and the production of such documents cannot be made in accordance with the terms of this ESI Protocol Order, the Parties will meet and confer concerning the potential formats of the production of any such documents.

**B.**     **Deadlines:** References to schedules and deadlines in this ESI Protocol Order shall comply with Fed. R. Civ. P. 6 with respect to computing deadlines.

**C.**     **ESI Liaisons**:

    1.     **Designation:** Plaintiffs, collectively, and each Defendant agrees to designate an ESI Liaison within 7 days after entry of this ESI Protocol Order. Any Party is free to change its designated ESI Liaison by providing written notice to the other Parties.

    2.     **Duties of ESI Liaison**: Each ESI Liaison will be prepared to participate in the resolution of any e-discovery disputes or ESI issues that may arise (or designate another person as primarily responsible) and have access to personnel most knowledgeable about the Party's electronic systems and capabilities in order to, as appropriate, answer pertinent questions.

    3.     **Time Frame for ESI Issue Resolution**: Each ESI Liaison will acknowledge receipt of an ESI-related inquiry from another ESI Liaison within 3 business days after the initial inquiry and respond within a reasonable time in light of the scope of the request.

**D.**     **Definitions:**

    1.     Plaintiffs and Defendants are referred to as the "Parties" solely for the purposes of this ESI Protocol Order.

    2.     "Plaintiffs" as used herein shall mean the individual plaintiffs named in the Amended Complaint, and does not include the absent class members (ECF No. 106).

3.      "Defendants" as used herein shall mean the Defendants named in the
        Amended Complaint (ECF No. 106).

E.      **Confidential Information:** For the avoidance of doubt, nothing herein shall
        contradict the Parties' rights and obligations with respect to any information
        designated as confidential under the Confidentiality Order to be entered by the
        Court (the "Confidentiality Order").

F.      **Preservation:** The Parties are not required to preserve the following forms of
        electronically stored information for purposes of the Litigation, provided that the
        Parties shall take reasonable steps to preserve all information known to them to be
        relevant to this action, and provided further than nothing in this Order shall be
        construed as permitting any Party to destroy responsive information that would
        not otherwise be destroyed in the ordinary course of business:

1.      random access memory ("RAM") and temporary files;

2.      online access data, such as temporary internet files, histories, caches, and
        cookies;

3.      public-facing websites;

4.      data in metadata fields other than those specified in Appendix 1;

5.      data housed on emergency back-up systems;

6.      damaged or slack data;

7.      data stored on photocopiers, scanners, and fax machines;

8.      voicemail data other than emails and transcripts of voicemails;

9.      operating system files and executable files; and

10.     server, system, network, and/or software application logs.

II.   **GENERAL PRODUCTION FORMAT PROTOCOLS**

 A. **TIFFs:** Except for structured data, all production images will be provided as black-and-white, single-page Group IV TIFFs of at least 300 DPI resolution with corresponding multi-page text and necessary load files. Each image will have a file name that is the unique Bates number of that image, pursuant to ¶ III. Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a producing Party's vendor (i.e., portrait to portrait and landscape to landscape). Hidden content, tracked changes, edits, comments, notes, and other similar information viewable within the native file shall, (1) to the extent reasonably practicable, also be imaged so that this information is captured on the produced image file, and (2) if such imaging is not reasonably practicable, be produced in native format. Documents that are difficult to render in TIFF may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively." A producing Party retains the option to produce ESI in alternative formats if so agreed by the requesting Party, which may include native format or a combination of native and TIFF formats.

 B. **Text Files:** Each ESI item produced under this ESI Protocol Order shall be accompanied by a text file as set out below. All text files shall be provided as a single document level text file for each item, not one text file per page. Each text file shall be named with the Bates number of the first page of the corresponding production item. Text files shall contain any hidden content, tracked changes, edits, comments, notes, and other similar information of the ESI item.

1.  **OCR:** A producing Party may make paper documents available for inspection and copying/scanning in accordance with Fed. R. Civ. P. 34 or, additionally or alternatively, scan and OCR paper documents if it chooses. Where OCR is used, the Parties will take reasonable steps to generate accurate OCR. The Parties acknowledge that, due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR. In such instances, or in the event that a producing Party does not choose to use OCR at all, the producing Party will either (a) make the paper documents available for inspection and copying in accordance with Fed. R. Civ. P. 34, or (b) identify in the load file that the file is not OCR.

2.  **ESI:** Emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available.

C.  **Production of Native Items:** The Parties agree that ESI shall be produced as single-page TIFFs with an accompanying load file, which will contain, among other data points, the ESI data points listed in Appendix 1 hereto. The exception to this rule shall be spreadsheet-application files (e.g., Microsoft Excel, csv, and other structured data files), databases (e.g., Microsoft Access), and multimedia audio/visual files, such as voice and video recordings (e.g., .wav, .mpeg, and .avi) which shall be produced in native format. In the case of personal database (e.g., Microsoft Access, SQL, .dat, .db, .dbf, .log, or similar database file extensions) files containing confidential or privileged information, the Parties shall meet and confer to determine the appropriate form of production. In addition to producing the above file types in native format, the producing Party shall produce a single-

5

page TIFF slip sheet indicating that a native item was produced. The corresponding load file shall include NativeFileLink information for each native file that is produced. The Parties agree to meet and confer to the extent that there is data in database application files, such as SQL and SAP, to determine the best reasonable form of production of usable data. Through the pendency of the Litigation, the producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata.

**D.**     **Requests for Other Native Files:** Other than as specifically set forth above, a producing Party need not produce documents in native format. If a Party would like a particular document produced in native format and this ESI Protocol Order does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format, which the producing Party will consider in good faith. The requesting Party will provide a specific Bates range for documents it wishes to be produced in native format. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix 1.

**E.**     **Bates Numbering:**

1.     All images must be assigned a Bates number that must always: (1) be unique across the entire document production, (2) maintain a constant prefix and length (e.g., ten-digits and 0-padded) across the entire production, (3) contain no special characters or embedded spaces, except

hyphens or underscores, (4) be sequential within a given document, and (5) identify the producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

2.      If a Bates number or set of Bates numbers is skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

3.      To the greatest extent practicable, the producing Party will brand all TIFF images at a location that does not obliterate or obscure any part of the underlying images.

**F.      Parent-Child Relationships:** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. For example, if a Party is producing a hard copy printout of an e-mail with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable. The family of documents should also be identified using a family ID number or other unique identifying number.

**G.      Non-Responsive Attachments:** Non-responsive parent documents must be produced if they contain a responsive attachment and are not withheld as privileged. Non-responsive attachments to responsive parent documents need not be produced. A Bates-numbered placeholder will be provided for any document withheld pursuant to this ¶ II(G) and shall state that a non-responsive attachment has been withheld from production. The requesting Party has the right to request

the production of any attachment withheld solely on the basis of non-responsiveness that the requesting Party believes in good faith is responsive. For such attachments, the requesting Party shall provide an explanation of why it believes the attachment is responsive.

H. **Load Files:** All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (e.g., an Opticon file), as well as a metadata (.dat) file with the metadata fields identified in Appendix 1 on the document level to the extent available. The image cross-reference file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production. All load files should be produced using standard Concordance delimiters.

I. **Color:** Documents or ESI containing color need not be produced initially in color. However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the requesting Party may, in good faith, request that the document or ESI item be produced in its original colors. For such documents, the requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in color. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). All requirements for productions stated in this ESI Protocol Order regarding productions in TIFF format apply to any productions of documents and/or ESI in

color made in such an alternative format. Requests that a document be produced in color for the reasons set forth in this ¶ II(I) will not be unreasonably denied by the producing Party. If a producing Party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

**J.**     **Confidentiality Designations:** If a particular paper document or ESI item qualifies for confidential treatment pursuant to the Confidentiality Order entered by the Court in the Litigation, the designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images. To the extent reasonably possible, this designation also should be included in the appropriate data field in the load file. Failure to comply with the procedures set forth in this ESI Protocol Order shall not waive any protection or confidential treatment.

**K.**     **Production Media & Protocol:** A producing Party may produce documents via email or via secure online transfer. Any requesting Party that is reasonably unable to resolve any technical issues with the electronic production method used for a particular production may request that a producing Party provide a copy of that production using Production Media, as described below in this ¶ II(K).

A producing Party may also produce documents on readily accessible computer or electronic media, including a USB drive, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"). All Production Media will be encrypted, and the producing Party will provide a decryption key to the requesting Party in a communication separate from the production itself. Each

piece of Production Media will be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media, as well as the sequence of the material in that production. For example, if the production comprises document images on three external hard drives, the producing Party may label each hard drive in the following manner: "[PARTY] Production November 1, 2022-001," "[PARTY] Production November 1, 2022-002," and "[PARTY] Production November 1, 2022-003." Where the Production Media used is an external hard drive (with standard PC compatible interface) or USB drive, such production media must be sent no slower than overnight delivery via FedEx, UPS, or USPS. Each item of Production Media (or, in the case of productions made via secure online transfer, each production transmittal letter) shall include (1) text referencing that it was produced in 568 Group Antitrust Litigation, (2) the production date, and (3) the Bates number range of the materials contained on such production media item. Any replacement Production Media will cross-reference the original Production Media and clearly identify that it is a replacement and cross-reference the Bates number range that is being replaced. The Parties shall designate the appropriate physical address for productions that are produced on Production Media. However produced, a producing Party shall provide clear instructions for accessing the production, including any necessary passwords or encryption keys.

## III.   PAPER DOCUMENT PRODUCTION PROTOCOL

A.   **Coding Fields:** The following information shall be produced in the load file accompanying production of paper documents: (a) BegBates, (b) EndBates, (c)

BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, and (g) Text Path. Additionally, all paper documents will be produced with a coding field named "Paper Document" marked with a "Y."

**B.** **Unitization of Paper Documents:** The Parties shall use reasonable best efforts to ensure that paper documents, including those in files and binders, are logically unitized for production. When scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records to the greatest extent possible. The Parties will utilize best efforts to ensure that paper records for a particular Document Custodian are produced in consecutive Bates stamp order.

## IV. ESI METADATA FORMAT AND PROCESSING ISSUES

**A.** **Excluded Files:** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing. In addition, to conduct collections in a focused and efficient manner, the Parties also agree to exclude the following file types from collection: BIN, CAB, CHK, CLASS, COD, COM, DLL DRV, INF, INI, JAVA, LIB, and SYS. Other file types may be added to the list of excluded files by agreement of the Parties.

**B.** **Metadata Fields and Processing:**

1. **Date and Time:** No Party shall modify the date or time as contained in any original ESI.

2. To the extent reasonably practicable, for any given Party, ESI items produced by that Party shall be processed using a consistent time zone

(e.g., GMT), and the time zone used shall be disclosed to the requesting Party.

3. **Auto Date/Time Stamps:** To the extent reasonably practicable, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

4. Except as otherwise set forth in this ESI Protocol Order, ESI files shall be produced with at least each of the data fields set forth in Appendix 1 that can reasonably be extracted from a document.

5. The Parties are not obligated to manually populate any of the fields in Appendix 1 if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) all Custodians of the document, (f) Confidentiality, (g) Redacted (Y/N), and (h) NativeLink fields, which should be populated, when applicable, regardless of whether the fields can be populated pursuant to an automated process.

**C.    Redaction:**

1. The Parties agree that, where ESI items need to be redacted, they shall be produced in TIFF format or may be redacted using a native redaction tool, such as "Blackout" or "BlackBar," with each redaction clearly indicated, except in the case of personal database files (e.g., MS Access), which shall be governed by ¶ II(C), *supra*. Any metadata fields reasonably available

and unnecessary to protect the privilege protected by the redaction shall be
provided.

2.     If the items redacted and partially withheld from production are Excel-
type spreadsheets as addressed in ¶ II(C), *supra*, and the native items are
also withheld, to the extent reasonably practicable, each entire ESI item
must be produced in TIFF format, including all unprivileged pages, hidden
fields, and other information that does not print when opened as last saved
by the custodian or end user. For PowerPoint-type presentation decks, this
shall include, but is not limited to, any speaker notes. For Excel-type
spreadsheets, this shall include, but is not limited to, hidden rows and
columns, all cell values, annotations, and notes. The producing Party shall
also make reasonable efforts to ensure that any spreadsheets produced
only as TIFF images are formatted so as to be legible where such
reformatting can be applied programmatically. For example, column
widths should be formatted so that the numbers in the column will display
rather than "#########."

**D.     Email Collection and Processing:**

1.     **Email Threading:** Email threads are email communications that contain
prior or lesser-included email communications that also may exist
separately in the party's electronic files.  The Parties may use email
threading to avoid review and production of duplicative information
contained within an existing email thread in another document being
reviewed and produced, but under no circumstances will email thread

suppression (a) eliminate the ability of a requesting Party to identify every custodian who had a copy of a produced document or sent or received an email, or (b) remove from a production any unique branches and/or attachments contained within an email thread.

2. **Email Domains:** Uniquely identifiable categories of documents, such as emails from domains typically associated with automated and spam email, including but not limited to, fantasy sports-related emails, advertising, subscriptions, and newsletters or alerts that do not concern higher education may be excluded from any ESI search process.

F. **Rolling Productions:** The Parties agree to produce documents in phases on a rolling basis consistent with the Court's Scheduling Order.

G. **De-duplication:** A producing Party may de-duplicate files globally (e.g., across document custodians) or horizontally at the "family" level. All BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field specified in Appendix 1 to the extent such metadata exists. In the event of rolling productions of documents or ESI items, the producing Party will, as needed, supplement the load files with updated CustodianOther information, as well as BCC information to the extent such metadata exists. Duplicate custodian information may be provided by a metadata "overlay" and will be provided by a producing Party after the Party has substantially completed its production of ESI.

1.      Duplicate electronic documents shall be identified by a commercially accepted industry standard (e.g., MD5 or SHA-1 hash values) for binary file content. All electronic documents bearing an identical value are a duplicate group. The producing Party may produce only one document or native file for duplicate ESI documents within the duplicate group to the extent practicable. The producing Party is not obligated to extract or produce entirely duplicate ESI documents.

2.      Duplicate messaging files shall be identified by a commercially accepted industry standard (e.g., MD5 hash values) for the email family, which includes the parent and email attachments. Duplicate messaging materials will be identified at a family level, including message and attachments(s). Email families bearing an identical value are considered a duplicate group. The producing Party may produce only one document or native file for duplicate emails within the duplicate group to the extent practicable.

**H.**   **Zero-byte Files:** The Parties may filter out stand-alone files identified as zero bytes in size.

**I.**   **Microsoft "Auto" Feature:** To the extent reasonably practicable and technologically possible for a producing Party's vendor, Microsoft Excel (.xls) and Microsoft PowerPoint (.ppt) documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document, file names, file paths, or similar information that when processed would be inaccurate for how the document was used in the ordinary course of business. If "auto date," "auto file name," "auto file path," or similar features are

identified, the produced document shall be branded with the words "Auto Date," "Auto File Name," or "Auto File Path" formula used or similar words that describe the "auto" feature.

**J.** **Hidden Text:** ESI items processed after the execution date of this ESI Protocol Order shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments. At the time of production, all non-privileged hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments should be visible on the face of the TIFF image(s).

**K.** **Embedded Objects:** Microsoft Excel spreadsheets embedded in Microsoft Word documents or Microsoft PowerPoint presentations will be extracted as separate documents and treated like attachments to the document. The Parties agree that other embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a producing Party (i.e., such embedded objects will be produced as displayed within the document itself, rather than as separate attachments).

**L.** **Compressed Files:** Compression file types (i.e., .CAB, .GZ, .TAR, .z, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

**M.** **Password-Protected, Encrypted, or Proprietary-Software Files:** With respect to any ESI items that are password-protected or encrypted, the producing Party

16

will take reasonable steps to break the protection so that the documents can be reviewed and produced if appropriate. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the producing Party shall advise the requesting Party. ESI that cannot be reviewed because proprietary software is necessary to view the ESI will be disclosed to a requesting Party, and the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

V.    **PARAMETERS FOR COLLECTING DOCUMENTS**

A.    **Document Custodians:** Based on the discovery requests served in this case on September 19, 2022, each Party has disclosed in writing an initial list of their own proposed document custodians ("Document Custodians").  If a Requesting Party contends that an additional Document Custodian should be added, then the Parties shall meet and confer in good faith and, in the event the parties are unable to reach agreement, the Requesting Party may seek relief from the Court.

B.    **Non-Custodial Documents and Shared Documents**: Based on the discovery requests served in this case on September 19, 2022, each Party has disclosed in writing "Non-Custodial" document sources it believes, based on its investigation to date, may reasonably be likely to contain responsive information, including departmental files, shared drives, multi-user messaging platforms (or "chat" platforms), such as Slack or Microsoft Teams; cloud storage accounts; online repositories, social media accounts; intranets, and databases.

C.     **Cellphones**. For Document Custodians agreed on by the Parties or ordered by the Court, a producing Party will take reasonable steps to identify whether any unique responsive communications are located on any cellphones in the possession, custody, or control of the producing Party.  To the extent reasonably possible, materials collected pursuant to this subparagraph shall be produced as image files with related searchable text, metadata and bibliographic information. If necessary to determine the identities of email or IM senders or recipients, the producing Party will provide a table of names or contact lists from custodians. Nothing in this subparagraph shall be construed as a determination on the appropriateness of cellphone discovery or any objections to cellphone discovery.

D.     **Search Terms.**  Defendants have proposed to Plaintiffs a preliminary list of general proposed ESI search terms.  The Parties understand that these general search terms may be subject to further modification by the Parties, and that further Defendant-specific modifications (which will be disclosed) may be warranted.  If Plaintiffs contend that the search terms should be modified, then the Parties shall meet and confer in good faith and, in the event the parties are unable to reach agreement, the either Party may seek relief from the Court.

## VI.    <u>CLAIMS OF PRIVILEGE AND REDACTIONS</u>

A.     **Production of Privilege Logs:** If a Party withholds a document otherwise discoverable by claiming that it is privileged, that Party shall produce a privilege log consistent with Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure, and any applicable local rule or procedure. The privilege log must be detailed enough to enable other Parties to assess the applicability of the privilege asserted and

should include for each withheld document (1) the sender, recipient, and each individual copied or blind copied on the document, including names and email addresses, (2) the date the document was created and last modified, (3) the file name or email subject, as applicable, (4) the document extension (e.g., .msg, .pptx, etc.), (5) the Bates number or Control Number of the document, and (6) the reason that the privilege or protection is being asserted for the particular document. Unless the person's email address is logged, the privilege log should identify all persons that are authors, senders, and/or recipients of any documents being withheld under any claim of privilege or protection, and denote (through a marking such as an asterisk or on a separate list) which individuals identified on the log are attorneys. The privilege log shall be produced in XLS or XLSX format. To the extent possible, available file metadata may be used to complete the fields in the privilege log.

B. **Logging of Threads.** Parties shall log all emails in a thread and unique branches that are under a claim of privilege; provided, however, that a party is not required to log lesser-contained emails in a thread so long as (1) the topmost email is logged, (2) the description of the subject matter of the topmost email includes information sufficient to demonstrate the privilege, (3) the lesser-contained email is also independently privileged, and (4) the lesser-contained email does not reflect senders or recipients that are not also reflected on the topmost email in the thread. If all lesser-contained emails are not independently privileged, the topmost email thread must be redacted rather than withheld.

C.     **Exclusions from Logging Potentially Privileged Documents:** The following categories of Documents need not be reflected in a Producing Party's privilege log, unless good cause exists to require that a Party do so or the Parties otherwise agree:

    1.     Any communications exclusively between a producing Party and its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with this Litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with this Litigation.

    2.     Communications after the filing of the initial complaint in this Litigation, exclusively between a producing Party and its corporate in-house and/or outside counsel regarding this Litigation.

D.     **Email Chains:** If there is more than one unique branch of an email thread, each branch will be individually logged if independently responsive and claimed to be privileged or otherwise protected from discovery.

E.     **Documents Redacted for Privilege:**

The producing Party will undertake reasonable efforts to make limited, line-by-line redactions of privileged or work product information. Redacted documents need not be logged in the first instance, so long as (a) for emails, the names of the sender and all recipients of the email are not redacted, (b) for non-email documents, the redaction is noted on the face of the document and in a redaction metadata field, (c) the producing Party includes a metadata field (PrivRedacted) indicating that the document was redacted on the basis of privilege, so that the

receiving Party can readily identify the universe of documents containing privilege redactions.  If Party contends that an insufficient information appears on the face of a Redacted Document to determine the basis for the privilege, it may request that sufficient information be provided on a privilege log.  In the event the parties are unable to reach agreement, the Requesting Party may seek relief from the Court.

## VII.  NON-PARTY DOCUMENT REQUESTS

A.  **Non-Party Document Subpoenas:** All non-Party document subpoenas shall be served on all counsel of record in compliance with Fed. R. Civ. P. 45. Service via email on a designated service list shall constitute compliance with Fed. R. Civ. P. 45.

B.  **Non-Party Document Productions:** The recipient of a non-Party document production shall serve a copy of that document production on all counsel of record within seven (7) days of receiving the document production. Service of documents or a file transfer link via email on a designated service list shall constitute compliance with this paragraph.

C.  **Informing Non-Parties of This Order:** The Parties agree to provide a copy of this Order with any document subpoena served in this Litigation.

## VIII.  CLAWBACK ORDER

A.  **Non-Waiver:** Pursuant to Federal Rule of Evidence 502(d), the production of any material or information shall not be deemed to waive any privilege or work product protection in the Litigation or in any other federal or state proceeding. Nothing in this Paragraph VIII(A) is intended to or shall serve to limit a Party's

right to conduct a review of any material or information for relevance, responsiveness, and/or segregation of privileged and/or protected information before production, subject to ¶ VIII(B)(l) below. The provisions of Federal Rule of Evidence 502(b) do not apply.

B.     **Assertion of a Clawback:** Any Party or non-Party may request the return of any produced material or information on the grounds of privilege or work product protection by identifying it and stating the basis for withholding such material or information from production.

1.     **Clawback Before Depositions:** If a Party attempts to clawback a document authored or received by an individual who is scheduled for a deposition within thirty (30) calendar days of the date of the deposition, and the propriety of the clawback is not resolved pursuant to ¶ VIII(C)(2) prior to the date of the deposition, then the Parties will meet and confer on the appropriate course of action, which may, but need not necessarily, include:

a.     conferring prior to the deposition to determine if the document may be used in the deposition subject to agreed-upon limitations;

b.     calling the Court if the clawback is made during the deposition to determine if immediate resolution is possible; and/or

c.     allowing the Party resisting the clawback to recall the deponent for questioning the deponent related to the document at issue if the Court subsequently determines the clawback was improper (if exercised, recalling the deponent for this purpose will not count

against the total number of depositions or deposition hours to which the Party resisting the clawback is entitled).

**C.**     **Clawback Process:** Federal Rule of Civil Procedure 26(b)(5)(B) shall govern the clawback of produced documents or information on the grounds of privilege, work product protection, or the production of information in violation of the Confidentiality Order or FERPA Order. If a Party or non-Party requests the return of such produced material or information then in the custody of one or more Parties, the possessing Parties shall immediately sequester the material and within fifteen (15) calendar days:

1.     Destroy or return to the requesting Party or non-Party the produced material or information and all copies thereof, and expunge from any other document or material, any information derived solely from the produced material or information; or

2.     Notify the producing Party or non-Party that it wishes to challenge the claim of privilege or work product protection and has sequestered the material until the issue can be resolved. A Party wishing to challenge a claim of privilege shall inform the producing Party or non-Party of the reasons for the challenge in writing. The Parties agree to meet and confer regarding the claim of privilege. If, at the conclusion of the meet and confer process, the Parties are still not in agreement, they may bring the issue to the Court. A Party challenging a clawback request under this ¶ VIII(C)(2) may use the content of the clawed-back document for the

purpose of filing a motion with the Court under seal that challenges whether or not the document is privileged or work product only.

D.   **Suspected Privileged Information:** Nothing in this Order overrides any receiving Party attorney's responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the producing Party that such materials have been produced. Any Party receiving materials that reasonably appear to be covered by a privilege shall not copy, distribute, or otherwise use such materials in any manner, except in connection with a challenge to the claim of privilege, and shall provide prompt notice in writing to the producing Party to afford an opportunity to request return of the materials.

## IX.   <u>MISCELLANEOUS PROVISIONS</u>

A.   **Inaccessible ESI:** If a producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are inaccessible or otherwise unnecessary under the circumstances, or if the requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall meet and confer with their respective technology experts to discuss resolving such assertions. If the Parties cannot resolve any such disputes after such a meet and confer has taken place, the issue may be presented to the Court for resolution.

B.   **Variations or Modifications:** Variations from this ESI Protocol Order may be required. Any practice or procedure set forth herein may be varied by agreement of all affected Plaintiffs and all affected Defendants, which will be confirmed in writing. In the event a producing Party determines that a variation or modification

is appropriate or necessary to facilitate the timely and economical production of documents or ESI, the producing Party will notify the requesting Party of the variation or modification. Upon request by the requesting Party, those Parties will meet and confer to address any issues in a reasonable and timely manner prior to seeking Court intervention.

C.    **Technology Assisted Review**. If any Party intends to use Technology Assisted Review ("TAR"), such as predictive coding, to limit the number of documents that it reviews or produces, it shall notify the requesting Party in writing and identify the name and version number and a description of the TAR technology being used.  If, following efforts to meet and confer, the Requesting Party objects to a Party's use of TAR, the Requesting Party may seek relief from the Court.

D.    **Limitations.** Nothing in this ESI Protocol Order establishes any agreement as to either the temporal or subject matter scope of discovery or as to the relevance or admissibility of any Document or ESI. Nothing in this ESI Protocol Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of Documents and ESI.

SO ORDERED:

Dated: Dec. 22, 2022

_____
Hon. Matthew F. Kennelly

**Appendix 1: ESI Metadata and Coding Fields**

| Field Name[1] | Populated For *(Email, Edoc, Calendar, Contact, Cellphone, or All)* | Field Description |
|---|---|---|
| BegBates | All | Control Numbers. |
| EndBates | All | Control Numbers. |
| BegAttach | All | Control Numbers (First production Bates number of the first document of the family). |
| EndAttach | All | Control Numbers (Last production Bates number of the last document of the family). |
| Custodian | All | Custodian name (ex. John Doe). |
| CustodianOther or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| LogicalPath | All ESI Items | The directory structure of the original file(s). Any container name is included in the path. |
| Hash Value | All | The MDS or SHA-1 hash value. |
| NativeFile | All | Native File Link. |
| Email Thread ID | Email | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |
| Thread Index | Email | Message header identifier, distinct from "PR_ Conversation_ Index", that permits threading of Email chains in review software. |
| Email Subject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. |
| DateMod | Email, Edoc | Date the document was modified. |
| TimeSent | Email | Time email was sent. |
| TimeZoneUsed | All | Time zone used to process data during document collection and processing. |
| ReceiveTime | Email | Time email was received. |

---

[1] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol Order.

| To | Email | All recipients that were included on the "To" line of the email. |
|---|---|---|
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| DateCreated | Edoc | Date the document was created. |
| FileName | Email, Edoc | File name of the edoc or email. |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| NativeLink | Native Files | Link to edoc produced as native file. |
| DocExt | All | File extension of the document. |
| TextPath | All | Relative path to the document level text file. |
| Redacted | All | "X," "Y," "Yes," and "True" are all acceptable indicators that the document is redacted. Otherwise, blank. |
| PrivRedacted | All | "X," "Y," "Yes," and "True" are all acceptable indicators that the document is redacted on the basis of privilege. Otherwise, blank. |
| Paper | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Confidentiality | All | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |