# EXHIBIT 1

| | |
|---|---|
| **Subject:** | Henry v. Brown - Follow-Up re Plaintiffs' Discovery Responses |
| **Date:** | Monday, November 21, 2022 at 1:08:27 PM Pacific Standard Time |
| **From:** | Suggs, David |
| **To:** | Ted Normand, Robert Gilbert, Peter Bach-y-Rita, Sarah Schuster |
| **CC:** | Gringer, David, Harrell, Leah (External), Holt, Benjamin (External), Thompson, Elizabeth (External), Yook, Christopher (External) |
| **Attachments:** | image001.png |

**[EXTERNAL SENDER]**

Counsel,

We're following up on a few items from the parties' discussions about Defendants' discovery requests to Plaintiffs.

**Plaintiffs' Proposals**. The parties discussed all of Defendants' Rule 34 requests and some aspects of Defendants' interrogatories. On our November 8 call, Plaintiffs said they would follow-up by early the following week (e.g., November 15) with details of what Plaintiffs are willing to produce in response to many of Defendants' requests. Please provide those details as soon as possible.

**Discovery re Third-Party Funding Sources, Etc**. Plaintiffs objected to producing discovery concerning whether and how Plaintiffs paid their tuition, room and board, and the like. For example, Plaintiffs have suggested they will not produce documents concerning third-party scholarships and loans used to pay their college expenses. Plaintiffs also indicated they will not produce documents concerning loan forgiveness. Defendants reiterate their position that Plaintiffs should provide discovery on those topics.

Although not stated explicitly, Plaintiffs appear to be basing their objection on the collateral source rule, *i.e.*, the idea that a Plaintiff's recoverable damages should not be reduced by funds received from a collateral source. However, even if that rule applied here (and Defendants do not agree that it does), it is a rule of admissibility, not discoverability. *See Convergence Aviation, Ltd. v. Dallas Airmotive, Inc.*, No. 10-2021, 2013 U.S. Dist. LEXIS 66424 (N. D. Ill. May 9, 2013) (ordering production of settlement documents and stating "plaintiffs rely on this [collateral source] rule to argue against production of these documents in discovery. But admissibility is not the test; instead we look at relevancy of discovery in a broad context."); *see also, e.g.*, *Shaw v. Shandong Youngsheng Rubber Co. Ltd.*, No. 18-867, 2020 U.S. Dist. LEXIS 72420, at *8-10 (D. Colo. April 24, 2020) (overruling discovery objection based on collateral source rule because rule "is generally one of admissibility, not discoverability"); *Heuskin v. D&E Transp., LLC*, No. 19-957, 2020 U.S. Dist. LEXIS 51644, at *27-29 (D. N.M. March 25, 2020) (same).

Plaintiffs also are wrong to the extent they are arguing that the requested information is irrelevant. For example, notwithstanding the collateral source rule, evidence that Plaintiffs did not pay their college expenses is relevant to whether Plaintiffs suffered injury. *See In re EpiPen Marketing, Sales Practices & Antitrust Litig.*, 2022 WL 226130, at *2 (D. Kan. Jan. 26, 2022) (holding defendants could present evidence at trial concerning plaintiffs' insurance payments to establish that certain class members suffered no injury and thus lacked Article III standing); *In re K-Dur Antitrust Litig.*, 2008 U.S. Dist. LEXIS 71772, at *43-49 (D.N.J. Feb. 21, 2008) (rejecting plaintiff's collateral-source argument and granting summary judgment to defendants because plaintiff who paid only "flat co-pay" failed to prove injury).

Evidence of third-party scholarships and loans also is relevant to the amount of aid that a Plaintiff received. For at least some students, universities must attempt to adjust the student's aid package if the aid to be awarded, combined with other Estimated Financial Assistance, would exceed the student's cost of attendance. The Estimated Financial Assistance includes third-party scholarships and loans. Evidence concerning other sources of aid likewise is relevant to the Plaintiffs' credibility, because, when applying for financial aid from Defendants, they were required to submit accurate and complete information concerning such sources. Defendants need discovery about those third-party sources to determine whether Plaintiffs submitted the appropriate information. Finally, the requested information is relevant to Defendants' failure to mitigate defense.

For all of these reasons, Plaintiffs should produce the information that Defendants have requested concerning the funding for Plaintiffs' undergraduate expenses, including third-party scholarships and loans and loan forgiveness.

**Matters Alleged in the Complaint**. Plaintiffs asked for clarification regarding the meaning of "the matters alleged in the Complaint." *See, e.g.*, Request No. 10. That phrase encompasses the following topics alleged in the complaint:

- Agreements between Defendants or members of the 568 Presidents Group concerning undergraduate financial aid, the methodologies for calculating undergraduate financial need and financial aid awards, or the price of attending undergraduate programs, and monitoring and enforcing such agreements
- The 568 Presidents Group, including membership in the group, Defendants' participation in the group, and data and information sharing among group members
- Methodologies for assessing the financial need of, and awarding financial aid to, undergraduate applicants and their families (the Consensus Methodology, the Federal Methodology, the Institutional Methodology, et al.), including the creation, development, implementation, and use of those methodologies and the impact of using one methodology rather than another
- Whether Defendants are "need blind" for purposes of Section 568 or otherwise eligible for the Section 568 exemption, including Defendants' consideration of the financial circumstances of applicants and their families, the impact of donations or wealth on admissions decisions, Defendants' use of enrollment management, and Defendants' efforts to limit the number of financial-aid-eligible applicants who they admit
- Plaintiffs' applications for admission to undergraduate programs and the institutions' decisions concerning those applications
- Plaintiffs' applications for and receipts of financial aid, and their payment of tuition, room and board, and other costs to attend an undergraduate institution
- Effects of Defendants' conduct, including effects on undergraduate financial aid assessments and awards and the price of attending Defendants' undergraduate institutions (e.g., allegedly offering lower financial aid awards and charging higher price of attendance), and Plaintiffs' alleged injuries and damages
- Plaintiffs' knowledge and discovery of Defendants' alleged Sherman Act violations and the facts underlying those alleged violations, including statements quoted in the complaint about Defendants' admissions and financial aid practices, and factors that prevented Plaintiffs or a reasonable person from discovering them
- Rankings and comparisons of, and competition between, any Defendant and any other undergraduate institution, including public universities and liberal arts colleges
- The class definition, the ascertainability of members of Plaintiffs' alleged class, the questions of law and fact that are common to alleged class members, whether Plaintiffs claims are typical of the claims of alleged class members, whether Plaintiffs will protect the interests of the alleged class

**Search Terms**. On November 2, Defendants sent Plaintiffs a preliminary list of proposed terms for searching Defendants' ESI. Please advise if Plaintiffs intend to use search terms to search their ESI for responsive documents. If so, please let us know if Plaintiffs are going to propose search terms. If Plaintiffs do not plan to use search terms, please advise how Plaintiffs plan to search their files for responsive documents.

Thanks,
David

**David Suggs** | Partner
T +1 212 819 2686   M +1 704 236 7007   E dsuggs@whitecase.com
White & Case LLP | 1221 Avenue of the Americas | New York, NY 10020-1095

**WHITE & CASE**

================================================================================
This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

================================================================================

**WHITE & CASE**