# EXHIBIT A

 Gmail                                      Sarah Schuster <sschuster@gilbertlitigators.com>

---

## The Defendants' Representation to the Court on December 21 that Three Issues are Not Ripe for Decision by the Court

---

**Robert Gilbert** <rgilbert@gilbertlitigators.com>                    Mon, Jan 9, 2023 at 7:50 AM
To: "Miller, Britt M." <BMiller@mayerbrown.com>, "Carbone_Defs_Service@listserv.whitecase.com"
<Carbone_Defs_Service@listserv.whitecase.com>
Cc: 568 Litigation <568_Litigation@fnf.law>


**[EXTERNAL SENDER]**


Britt,


This responds to your email of January 3.


My December 23 letter gave you the benefit of the doubt. I gave you the opportunity to explain any basis for your representation to the Court on December 21, on behalf of all defense counsel, that there were no ripe discovery issues for the Court at that time. In your January 3 email, the only basis you could identify for that representation was this: "Indeed, beginning shortly after the submission of the December 2 Status report and continuing up to right before the December 21 hearing, Plaintiffs sent emails to Defendants outlining Plaintiffs' positions on each of the three issues in question (where relevant to the individual Defendant) and asking to schedule further individual meet/confers to discuss those issues (and others). Many of those requested additional meet-and-confers had not taken place as of the December 21 hearing, and as such we are puzzled by your position that the issues were ripe."


This purported "basis" for your representation to the Court is misleading. As we stated in the December 2 joint status report: "The sequence of events is illuminating. First, Plaintiffs went to Individual meet-and-confers with individual Defendants (starting on November 10), several of whom used identical arguments to refuse to identify a custodian in the Development or President's Office, and then said that the Plaintiffs needed to seek recourse at the global meet-and-confers, and this pattern continued for a couple of weeks. At the subsequent global meet-and-confer on November 28, to which the Plaintiffs had been referred, all Defendants took the position that Plaintiffs' only recourse was to go back to all seventeen universities separately in at least seventeen more Individual meet-and-confers to determine whether any one of them will agree to provide even a single custodian from one of those offices. (In a December 1 Individual meet-and-confer, Johns Hopkins identified custodians from its President's and Development offices, leaving sixteen more Individual meet-and-confers.) From the perspective of the Plaintiffs, this is a classic case of being given the run-around."


The reason we were "asking to schedule further individual meet/confers to discuss those issues," as you know, is that in a global meet-and-confer on November 28, on behalf of *all* defense counsel, Sarah Kirkpatrick demanded that we do so (after refusing to resolve these issues on a global basis). That is, she demanded that Plaintiffs request additional individual meet-and-confers with every Defendant on these issues, even though 17 of 17 (non-structured data before 2003), 16 of 17 (the Development Office), 12 of 17 (the President's Office) , and 5 of 5 (the Defendants who claim to have withdrawn) were taking identical or virtually identical positions, and were doing so for identical or virtually identical reasons. We could not have made it clearer at the time that we viewed this demand as unreasonable, particularly because we had been previously told (over the prior 18 days) at individual meet-and-confers to raise the issue at the global level. Yet we went the extra mile to accede to this demand so that Defendants could not later claim that we had not done what you had demanded.

Defendants now turn these facts on their head and claim that Plaintiffs were "asking to discuss those issues (and *others*)" (emphasis added). The meet-and-confers between December 2 and December 21, as you know, were largely focused on *other* issues. To the extent they addressed the three issues that had been ripe since on or before December 2, Plaintiffs could not have been clearer that our positions were so firmly based on that facts and the controlling law that they absolutely would not change:

1. You and all the defense counsel have been informed at least six times in writing between November 23 and December 21, 2022, of the Plaintiffs' global position: Brown, Chicago, Emory and Penn (BCEP) have provided Plaintiffs with "dispositive proof" in writing that they remained members of the conspiracy, because their so-called letters of withdrawal praised the conspiracy and wished it continued success in the future, the precise opposite of what would be required to withdraw as a matter of law—namely, to disavow or repudiate the conspiracy and its goals. Accordingly, you and all defense counsel knew that their refusal to provide discovery after a so-called "withdrawal" was ripe for judicial resolution because, from the Plaintiffs' repeatedly stated perspective, it was meritless. (The same applies to Vanderbilt, which has provided no proof that it disavowed or repudiated the conspiracy and its goals.)
2. Between November 23 and December 21, 2022, all Defendants had been informed at least 12 times in writing that the position that the President's office was not a custodian of documents (12 Defendants) and the position that the Development office was not a custodian of documents (16 Defendants) were inconsistent with the Court's rulings and guidance on October 26. Accordingly, you and all defense counsel knew, at the time of your representation to the Court on December 21, that issue was also ripe for decision, notwithstanding your representation to the Court to the contrary.
3. On behalf of *all* Defendants, Sarah Kirkpatrick represented at a November 30 global meet-and-confer that the Defendants had drawn a "line in the sand" (her words, not ours) concerning the issue of non-structured data prior to 2003. You and all defense counsel knew, as of December 21, that issue was ripe for resolution by the Court. (It is important to distinguish between the Defendants' "line in the sand" as a matter of principle, regardless of whether documents exist, and meet=-and-confers to learn whether documents do in fact exist.)

Your complaint about a "flurry of emails" is inexplicable. It ignores that it was the Defendants who demanded on November 28 in a global meet-and-confer that, even on issues on which all or virtually all Defendants take identical positions, Plaintiffs should send an email to every Defendant.

Finally, your assertion that the "12/30 and 12/31 emails" were "exactly" about the three ripe issues as of December 2 and 21 is plainly wrong. Those emails, as both their subject lines and their content show, focused on two additional ways in which Defendants are flouting what the Court instructed on October 26, not on the three ripe issues that had already been identified in the December 2 joint status report: Defendants' refusal to provide admissions scoring data; and Defendants' unilateral revision of several definitions in the RFPs that Plaintiffs had served on Defendants.

In short, we reiterate our point that, on December 21, defense counsel was not candid with the Court. Going forward, it would be helpful if Defendants were more accurate in such representations. We will address all of this briefly in the joint status report due to be filed on January 13, 2023.

Very truly yours,

Bob

Robert D. Gilbert
Managing Partner

Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
rgilbert@gilbertlitigators.com
646-448-5269 work
203-645-0055 cell
www.gilbertlitigators.com

---

**From:** Miller, Britt M.
**Sent:** Tuesday, January 3, 2023 3:01 PM
**To:** Robert Gilbert; Carbone_Defs_Service@listserv.whitecase.com
**Cc:** 568 Litigation
**Subject:** RE: The Defendants' Representation to the Court on December 21 that Three Issues are Not Ripe for Decision by the Court

Bob,

We were surprised and disappointed to receive your December 23 email, in which you imply that Defendants affirmatively misrepresented to the Court that certain issues Plaintiffs raised in the December 2 Status report were not ripe for decision and state your intention to advise the Court of those alleged misrepresentations unless Defendants essentially "prove you wrong" by January 4. This theme is reiterated in the flurry of emails Plaintiffs sent at the end of the day this past Friday and over the weekend. We believe that such charged discourse is affirmatively counterproductive (and in this instance, inaccurate) and hope that we can constructively move forward on these and other issues. In the event Plaintiffs persist with their narrative, however, we will continue to accurately represent the record to the Court.

As to the substance of your email and as you are aware, Defendants told Plaintiffs before the filing of the December 2 Status report (and reported to the Court in the report itself) that they did not believe that the three issues you identified—President/Development office custodians, the relevant time period, and non-member-defendant discovery—should be included in the report because the parties had not completed their negotiations of those issues and continued to work to eliminate, or at least narrow, any disputes. Those discussions have been occurring on a defendant-by-defendant basis and thus, even to the extent that those issues may have been ripe as to some defendants (Defendants do not believe that to be the case), they certainly were not ripe as to all defendants such that the Court could have undertaken to rule on the issues. The events since December 2 have only confirmed the accuracy of Defendants' position. Indeed, beginning shortly after the submission of the December 2 Status report and continuing up to right before the December 21 hearing, Plaintiffs sent emails to Defendants outlining Plaintiffs' positions on each of the three issues in question (where relevant to the individual defendant) and asking to schedule further individual meet/confers to discuss those issues (and others). Many of those requested additional meet-and-confers had not taken place as of the December 21 hearing, and as such we are puzzled by your position that the issues were ripe. We assume that in requesting and scheduling those meet/confers, Plaintiffs were acting in a good faith effort to try to narrow the parties' differences, just as Defendants have acted in good faith in conducting or scheduling meet/confers with Plaintiffs and, in many instances, responding to Plaintiffs in writing. Indeed, the parties' correspondence since December 21 has continued address these issues.

As you know (and as we informed the Court), additional meet/confers are scheduled with various Defendants this week and next to discuss exactly the issues you raise in your email. Plaintiffs' 12/30 and 12/31 emails confirm this fact. We cannot speak for all Defendants on the progress the parties have made (as they vary by Defendant) and will not attempt to address the factual assertions made in your email regarding each Defendants' discovery position (again, leaving those to the individual meet/confers), but if the parties are not able to narrow or eliminate their

differences through those discussions, Defendants will be prepared to individually address the areas of impasse in the January 13 status report.


Regards – Britt


_____

**Britt M. Miller**
*Co-Lead Global Antitrust Practice*
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL  60606
T +1 312 701 8663


LinkedIn | Twitter

mayerbrown.com

_____

**From:** Robert Gilbert <rgilbert@gilbertlitigators.com>
**Sent:** Friday, December 23, 2022 4:40 PM
**To:** Miller, Britt M. <BMiller@mayerbrown.com>; Carbone_Defs_Service@listserv.whitecase.com
**Cc:** 568 Litigation <568_Litigation@fnf.law>
**Subject:** The Defendants' Representation to the Court on December 21 that Three Issues are Not Ripe for Decision by the Court


---

**CAUTION: External Email -** Only click on contents you know are safe.

---


Counsel,


We write with respect to your representation to Judge Kennelly on December 21, 2022, that the three issues Plaintiffs outlined in the Joint Status Report (Doc. 255) ("JSR") filed on December 2, 2022 are not ripe for the Court's resolution, but instead are subject to meet-and-confer sessions. We are disappointed and surprised by that representation, because it is obviously inconsistent with the facts. In order to go the extra mile, we seek now to clarify whether there is anything remaining to discuss as to each of the three issues.


**President's and Development Office Custodians**


The first issue that is ripe for decision is the identification of custodians in the President's Office and in the Development Office. As far as we are informed, only 5 Defendants (Dartmouth, Duke, Georgetown, Johns Hopkins, and Northwestern) have agreed to identify the President's Office as a custodian, and only 1 Defendant (Johns Hopkins) has agreed to identify the Development Office as a custodian. (Although Northwestern has disclosed a custodian from its President's Office, it appears they plan to search for and produce documents relating only to matters *unrelated* to Donation records. This position lacks merit in light of Paragraphs 177 and 183 of the Amended Complaint, as explained below, and especially Paragraphs 178-79 of the Amended Complaint, which quote

Northwestern's President Morton Schapiro discussing his influence over admissions decisions on behalf of donors.) **If any other university has agreed to identify a custodian in either office, please identify that university in response to this email not later than January 4.**

As to the identification of such custodians, we have patiently played the game of see-saw Defendants forced upon us: first several individual meet-and-confers starting on November 10 with Defendants stating that these were global issues in the all-Defendants meet and confers; and then the all-Defendants meet-and-confer on November 28 taking the position that these issues were for individual meet-and-confers—all while almost every Defendant has made an almost identical and meritless argument for at least six weeks that all or nearly all the relevant Donation Records would be in the Admissions office. The bottom line from all of these meet-and-confers is that to date, 12 Defendants have refused to identify a custodian in the President's Office, and that 16 Defendants universities have refused to identify a custodian in the Development Office.

In our portion of the December 2 JSR, we explained in detail why both offices are essential custodians, and why the Admissions Office is not a substitute. In addition to their individual meet-and-confers and correspondence with individual Defendants, Plaintiffs explained their justification in Global meet-and-confers with all Defendants on November 11, 16, 18, and 28. Further, I expressly outlined four specific scenarios in my November 23 email to all Defendants that was later quoted at length in the December 2 JSR (the "Illustrative Four Scenarios"). Plaintiffs then reiterated the Illustrative Four Scenarios in 10 additional emails copied to all Defendants between December 13 and December 20.

Northwestern has offered a written response to try to address Plaintiffs' Illustrative Four Scenarios. Northwestern did so on November 28, with the claim that the scenarios were merely "hypothetical" and "well beyond what is alleged in the complaint," and concluding with the oft-repeated theory that any relevant communications would certainly be contained within the productions from the admissions office. In Northwestern's case, in particular, it is a near certainty that there were oral communications between the President's office and Admissions Office about donations and applications, which is underscored by specific allegations about President Schapiro in the Amended Complaint (Paras. 178-89) engaging in exactly those types of oral communications to Admissions. And in at least six emails copied to all Defendants between December 14 and December 16, Plaintiffs repeated the Four Illustrative Scenarios and referred Defendants to Paragraph 177 of the Amended Complaint, which makes clear that the communications between the President's or Development offices are often not in writing, and therefore the communications between the Development Office and the Donor, the President's Office and the Donor, and between the two offices, are essential— if the Defendants intend to comply with the direction from the Court on October 26. These are not merely hypothetical or speculative scenarios, as is even further demonstrated by Chancellor Gee's colorful admission about "truth serum" in Paragraph 183 of the Amended Complaint.

With regard to the two Defendants who claim that their President's or Development offices (or both) have *never* influenced admissions decisions (*i.e.*, Caltech and MIT)—notwithstanding paragraphs 177 and 183 of the Amended Complaint – Plaintiffs have not received an affidavit from either university to that effect. Even if we had such an affidavit, Plaintiffs would have the right to take discovery to test the veracity of these claims. If either university is correct that one or both offices never engaged in recommendations to the Admissions office on behalf of donors, then the discovery Plaintiffs seek would not be burdensome; it would turn up no documents. However, each university made decisions to join the 568 President's Group—and Caltech did so as recently as 2019—so it is highly likely that substantial documentation concerning the reasons for joining, the goals of joining, the terms of joining, communications to trustees or other university officials about joining, etc., would be in the President's office. (In this regard, Caltech and MIT are the only Defendants that have a colorable claim that a meet-and-confer is needed, because the custodian issue in the Development Office is in some respect not entirely ripe. We would be happy to address those two universities' issues in meet and confers at a mutually convenient time before January 4.)

Plaintiffs have repeatedly explained how Defendants' position violates Judge Kennelly's clear instructions at the October 26, 2022, hearing:

**So the whole case -- maybe not the whole case, but a significant part of the case is exactly this, the contention that admissions are tied to donations, or at least that's a significant part of the case.** And so . . .**the kind of thing I just said is not going to happen**, that basically says the plaintiffs can't get that, therefore, the case is over, then **we have to come up with a way of doing that**.

Oct. 26, 2022 Hr'g Tr. 36:24-37:6 (emphasis added). Judge Kennelly also made it clear that Plaintiffs are entitled to discovery "which would allow somebody to say, okay, **this is a donation record that relates to this student over here and so we can determine whether that had any effect on whether that person got admitted or not**." *Id*. 36:7-14 (emphasis added).

**Since you represented to the Court that this first issue is not ripe for decision, kindly explain in a written response to this email by January 4 why you think it is not.**

**Relevant Period**

The second issue that is ripe for decision is the relevant time period for identifying custodians and non-custodial document sources. With respect to structured data, we understand there is no pending issue: we reached agreement on a 1998 start date, as represented on p. 6 of the December 2 JSR. As to non-structured data, Defendants "drew a line in the sand" at our November 30 meet-and-confer, and refuse to identify custodians or documents before 2003. **If any university has agreed to identify custodians or documents before 2003 with respect to non-structured data, kindly identify that university in a written response to this email by January 4.** Again, we have explained our position at pp. 7-8 of the December 2 JSR and elsewhere, so we will not repeat ourselves here. **Since you represented to the Court that this second issue is not ripe for decision, kindly explain in a written response to this email by January 4 why you think it is not.**

**Alleged Withdrawals**

The third issue that is ripe for decision is the identification of custodians at the 5 universities (Brown, Chicago, Emory, Penn and Vanderbilt) who allege withdrawal from the 568 Cartel. All of them refuse to identify custodians or to produce documents for periods after their so-called withdrawal. **If any of these 5 Defendants has agreed to identify custodians or to produce documents for later periods, kindly identify that university in response to this email by January 4.**

We have explained at pp. 9-14 of the JSR and elsewhere why the so-called withdrawals were ineffective as a matter of law to constitute withdrawal from the price-fixing conspiracy. The December 2 JSR analyzes Chicago's and Penn's so-called withdrawal letters. Because they fail to disavow or repudiate the conspiracy and the aims of the conspiracy, and indeed overtly praise its objectives and wish it success in the future each of those letters provided dispositive proof that Chicago and Penn remain in the conspiracy. As for Brown and Emory, the alleged "withdrawal" letters each produced on December 16 echo the same glowing support as Chicago and Penn for the conspiracy and its goals, while failing to repudiate or disavow the Cartel and its goals in any way, and constitute the same dispositive proof. Similarly, Vanderbilt has not brought any facts to our attention to show that Vanderbilt disavowed or repudiated the conspiracy and its goals.

**Since you represented to the Court that this third issue is not ripe for decision, kindly explain in a written response to this email by January 4 why you think it is not.**

Unless Defendants modify their positions on all three of these three critical issues, or provide compelling explanations

that have not been provided for now more than a month, we intend to alert the Court in our January 13, 2023 submission that they remain ripe for decision (as we advised the Court in the December 2 JSR), and that Defendants' representation to the contrary on December 21 was unfounded. In view of the Court's statement about the discovery schedule, we believe Defendants are attempting to thwart and prejudice Plaintiffs' ability and right to prove our case in just the manner the Court understood and stated on the October 26 record.


Thank you.


Very truly yours,



Robert D. Gilbert
Managing Partner
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
rgilbert@gilbertlitigators.com
646-448-5269 work
203-645-0055 cell
www.gilbertlitigators.com


_____
This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities, including Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership) and Tauil & Chequer Advogados (a Brazilian partnership).

Information about how we handle personal information and our use of relationship insight tools in conjunction with email is available in our Privacy Notice.



NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.



NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you

have received this communication in error, please notify us immediately by e-mail, and delete the original message.