# EXHIBIT C



Sarah Schuster <sschuster@gilbertlitigators.com>

## Georgetown: Admissions Scoring and Changes to Definitions

**Robert Gilbert** <rgilbert@gilbertlitigators.com>  Fri, Dec 30, 2022 at 5:15 PM
To: "Fenske, Daniel T." <DFenske@mayerbrown.com>, "Miller, Britt M." <BMiller@mayerbrown.com>, "Stride, Megan E." <MStride@mayerbrown.com>
Cc: "Carbone_Defs_Service@listserv.whitecase.com" <Carbone_Defs_Service@listserv.whitecase.com>, 568 Litigation <568_Litigation@fnf.law>

**[EXTERNAL SENDER]**

Dear Daniel, Britt, and Megan,

Thank you for your December 29 letter outlining issues you wish to discuss on our scheduled January 3 meet-and-confer. We write to address several issues Plaintiffs would like to discuss as well.

In addition to your continued refusal to identify custodians in Georgetown's Development Office, which is a topic already presented to the Court in the December 2, 2022 Joint Status Report (Doc. 255), Georgetown has further refused to provide the Admissions scoring data sought by Plaintiffs, and has taken other steps designed to shield proper and complete discovery by unilaterally redefining terms that Plaintiffs explicitly defined in their Second Set of Requests for Production. These positions are prejudicial to Plaintiffs' ability to prove their case, and directly at odds with Judge Kennelly's clear rulings in rejecting Defendants' Motions to Dismiss and on October 26, 2022.

**Admissions Scoring**

Based on your responses and objections, it is Plaintiffs' understanding that you (and twelve additional Defendants) have not agreed to provide the complete admissions scoring data Plaintiffs seek in Plaintiffs' Second Set of Requests for Production, Request No. 3, which clearly states:

> Request for Production No. 3: For all Admitted Applicants, Documents reflecting for each Academic Year the scores assigned to each factor disclosed in response to Request No. 2 and the weight, if any, applied to that factor.

Plaintiffs seek this information to prove their allegation that donations influenced admissions decisions. This is an important way to prove that, but for the donation, the applicant would not have been admitted to the university. Absent this data, Plaintiffs' plausible claims are far more difficult to prove (to say the least), as you must surely know, and Plaintiffs would be precluded from testing Defendants' protestations of compliance with the requirements of the Section 568 exemption.

**Definitions**

We also note that Georgetown and 15 other Defendants have changed the definitions of "Donor-related Admitted Applicant" and "Legacy Admission" contained in Plaintiffs' second set of Requests for Production, and did so without prior discussion with Plaintiffs that you intended to do so. Plaintiffs' original definitions read clearly and concisely as follows:

> *1. "Donor-related Admitted Applicant" is an Admitted Applicant whose family, or someone known to the Admissions Office as a friend of the Admitted Applicant, made Donation(s) to You cumulatively valued at $50,000 or more during the five year period prior to the admission of the Admitted Applicant.*
>
> *2. "Legacy Admission" means a policy or practice, whether formal or informal, in which You grant preferences to relatives or relations of alumni or undergraduate or graduate programs.*

*"Donor-related Admitted Applicant"*

In response to Plaintiffs' definition of "Donor-related Admitted Applicant," you promulgated a new definition with new and different qualifications:

> In responding to the Requests, Georgetown will construe "Donor-related Admitted Applicant" to mean an applicant who has been admitted to Georgetown's undergraduate program who Georgetown's Office of Undergraduate Admissions has *actual knowledge* is someone whose *immediate family* has made donations to Georgetown cumulatively valued at $50,000 or more during the five-year period immediately preceding the applicant's admission.

(emphasis added). Georgetown is attempting to rewrite Plaintiffs' requests by inserting an *actual knowledge requirement for the Admissions Office*, and an additional burden of proof on the Plaintiffs concerning the scienter of a particular office at Georgetown, apparently in reliance on your meritless contention that all relevant donor-related communications would be found in the Admissions documents. Georgetown's insertion of a knowledge requirement here is prejudicial to plaintiffs. If there were a $50,000+ contribution in aggregate, then the University surely already has actual knowledge about it, and proving additional actual knowledge by a particular office should not be imposed.

Indeed, Defendants are seeking to impose a scienter requirement with multiple components: the Admissions office must know that 1) the fact that Georgetown received a donation; 2) the identity of the donor; 3) the relationship between the donor and an applicant; 4) the amount of the donation exceeds $50,000; and 5) the donation or donations were received during the 5-year period previously preceding the admission. Under such stringent requirements, if the President of the University had engaged in negotiations for months to bring in a multimillion-dollar donation in exchange for an applicant's admission, but sent only a short note to Admissions saying "please admit X," Admissions could simply deny knowledge, as none of these 5 data points Defendants attempt to require were ever communicated from the President.

Further, as Plaintiffs have patiently explained time and again to *all* Defendants (*see*, *e.g.*, December 2, 2022 Joint Status Report (Doc. No. 255); Robert Gilbert November 23 email to all defendants with Four Illustrative Scenarios; and in each of 10 emails from Plaintiffs' counsel copied to all Defendants between December 13 and December 20, 2022), there are many scenarios in which Admissions would likely have been told by the President's or Development office to please admit X applicant because their family has been a donor to the university, or Admissions simply received a message from those offices directing the admission of a list of applicants including applicant X. In this scenario, Georgetown's multi-pronged actual knowledge requirement for the Admissions office would permit Georgetown to conceal documents related to any Donor-related Admitted Applicants if the exact amount, timing, and sources of all donations were not clearly communicated to Admissions along with the request or directive to admit the applicant.

Georgetown also attempts to disregard Plaintiffs' intentionally inclusive language describing an applicant's "*family, or someone known to the Admissions Office as a friend of the Admitted Applicant.*" Instead, Georgetown appears simply to ignore the possibility of donations *from anyone other than immediate family members of admitted applicants* (*i.e.*, exclude grandchildren, nieces, nephews, proteges, etc.).

### *"Legacy Admission"*

Similarly, despite Plaintiffs' clear intent to include both formal *and* informal policies or practices with regard to Legacy Admissions, Georgetown (and 15 other Defendants) unilaterally rewrote this definition as well to omit any reference to informal policies or practices:

> In responding to the requests, Georgetown will construe "Legacy Admission" to mean a *formal* policy or practice by which Georgetown grants preferences in the undergraduate admissions process to the *children* of Georgetown alumni *who have made donations to Georgetown*.

(emphasis added). The exclusion of informal policies or procedures in this definition is plainly prejudicial to Plaintiffs' ability to make their case. As one example of an informal policy that has a devastating admissions impact in violation of the requirements of Section 568, it may well be that in the case of ties among admissions decision-makers, the Legacy of a donor with a solid history of giving even less than $50,000 in the previous five years wins via an informal tie-breaker. To be clear: regardless whether written or unwritten, public or internal, formal or informal, any preferential treatment afforded to relatives or relations of Alumni in any form, even used as an informal tiebreaker, is intentionally encompassed in Plaintiffs' Definition of "Legacy Admission." Without waiting to hear how Defendants propose to circumscribe what qualifies as a "formal" policy or procedure and thus further limit the information and documents available to Plaintiffs, Plaintiffs deem Georgetown's pointed omission of informal policies or procedures flatly unacceptable.

Georgetown has also rewritten this definition to limit "Legacy Admissions" to only the *children* of Georgetown alumni. To say that a grandchild or other relative of an alumnus could not possibly qualify as a "Legacy Admission" strikes us as, quite simply, absurd. This targeted and unilateral limitation of Plaintiffs' definition is, again, flatly unacceptable.

Moreover, Georgetown has gone so far in rewriting Plaintiffs' definition as to add a new requirement that the applicant be a child of alumni *who have donated to the university*. This interpretation misses the point of the RFP relevant to this definition, which seeks documents and information "Concerning Your study, analysis, or discussion regarding any relationship between Your admission of Legacy Admissions and Your receipt of current or future Donations." Whether the alumnus to whom a Legacy Admission is related has donated in the past has no bearing on this inquiry, and instead operates only to exclude potentially relevant and discoverable information.

**Georgetown's Positions are Incompatible with the Court's Rulings and  Guidance**

As you know, the Court made quite clear on October 26, 2022 that it would protect Plaintiffs' right to prove that donations by wealthy families influenced admissions decisions, in violation of Section 568's requirement that *all* applicants be admitted "without regard to the financial circumstances of the student involved or the student's family." Indeed, the Court even emphasized the importance of this specific discovery, and its expectation that Defendants make such evidence available to Plaintiffs:

> So first of all -- and I don't think this is the case, but I just want to have it out there just so I've said it and I'll be done with it -- I mean, this is not going to be a situation where the case comes to a halt and gets adjudicated because the discovery can't get produced. So I just want to make that clear.
>
> …
>
> **So the whole case -- maybe not the whole case, but a significant part of the case is exactly this, the contention that admissions are tied to donations, or at least that's a significant part of the case.** And so unless there's going to be an opinion that basically says, well, **the kind of thing I just said is not going to happen**, that basically says the plaintiffs can't get that, therefore, the case is over, then **we have to come up with a way of doing that.**

Oct. 26, 2022 Tr. 23:12-17; 36:23-37:6 (emphasis added). And when the Court spoke, it emphasized that its words are its rulings. *Id.* 34:16-17 ("**So that's a ruling. That's the judge talking. Those are called rulings.**") (emphasis added).

The Joint Status Report filed on December 2, 2022 (Doc. 255) has already brought to the Court's attention Georgetown's refusal to identify custodians in its Development Office, and the prejudicial impact of that refusal on Plaintiffs' ability to prove their case.[1]

Plaintiffs now further object to Georgetown's refusal to provide admissions scoring data, and its attempts to change the definitions in Plaintiffs' discovery requests. Individually, these positions cripple Plaintiffs' ability to establish certain elements of their allegations. Together, and especially in conjunction with Georgetown's refusal to identify custodians in its Development Office, Georgetown's positions amount to a deliberate attempt to shield from discovery the exact evidence Plaintiffs need to make their case. Or, put in other words, Georgetown is doing *precisely* what the Court expressly proscribed.

Rather than heed the Court's clear rulings and guidance, Georgetown has instead converted the Court's guidance into a roadmap to systematically prevent the very discovery Plaintiffs need most. Unless your client reverses its position on these critical issues, we will be forced to bring to the Court's attention these new efforts flout the Court's rulings and prejudice Plaintiffs in the Joint Status Report due January 13, 2023.

We will expect a response from you to this letter by the close of business on January 4, 2023, so that Plaintiffs and Defendants have sufficient time to outline their respective positions in the January 13 Joint Status Report. In the

meantime, we look forward to discussing these matters on our call next Tuesday, January 3.

------------

[1] To the extent any Defendant or Georgetown has proposed to produce only a list of donor-related applicants to the exclusion of all other communications with or regarding donors, Plaintiffs have already addressed the insufficiency of this proposal. Such underlying communications are relevant and important to Defendants' motives and practices, and may also lead to the discovery of additional admissible evidence. A list of donor-related applicants is necessary and must be produced in any case, but is plainly insufficient because a mere list is opaque as to the motivations and factual context underlying the list.

Best,

Bob

Robert D. Gilbert
Managing Partner
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
rgilbert@gilbertlitigators.com
646-448-5269 work

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.