# EXHIBIT E

| From: | Robert Gilbert <rgilbert@gilbertlitigators.com> |
|---|---|
| Sent: | Friday, January 6, 2023 4:10 PM |
| To: | Kirkpatrick, Sarah; Britt Miller; Carbone_Defs_Service@listserv.whitecase.com |
| Cc: | 568 Litigation |
| Subject: | Post-January 9, 2022 Discovery |
| | |
| Flag Status: | Flagged |

**[EXTERNAL SENDER]**

Counsel:

Our understanding, reflected in the written responses to Plaintiffs' First Set of RFPs, is that almost all of the Defendants seek a discovery cut-off date of January 9, 2022, or earlier (two of the Defendants have said they are willing to meet and confer on the time period for discovery). Plaintiffs disagree with this cut-off date. We propose a global meet-and-confer on January 17, in the following range of times: 11am-5pm ET.

Plaintiffs' position is that we are entitled to *all* discovery *at least* through November 4, 2022, when the 568 Group was dissolved. We explain below several reasons for why Plaintiffs are seeking post-January 9, 2022 discovery of both structured data and other documents.

First, Plaintiffs are entitled to Defendants' non-privileged communications (internally and with third parties, such as lobbyists) in the period leading up to the expiration of the Exemption on September 30, 2022, and the dissolution of the 568 Presidents Group on November 4, 2022. We are entitled to know, for example, if Defendants acknowledged among themselves or to a third party that they would face liability for wrongdoing in the absence of the Exemption, or if Defendants communicated a need to disband the 568 Group if the Congress declined to re-authorize the Exemption.

Second, Plaintiffs are entitled to donor-related applicant information and admissions-related practices in the RFPs through November 4, 2022, because such information is integral to assessing the supposedly need-blind admissions practices while the Cartel was in existence.

Third, even after November 4, 2022, damages have continued to accrue, e.g., for those students whose aid packages had initially been determined while the Cartel existed. We are entitled to discovery through at least December 31, 2023 (i.e., 75 days before the initial expert reports are currently due), with respect to all requests for production relating to damages.

Fourth, we are entitled to communications and financial aid structured data through December 31, 2023, to determine whether (and to what extent, and how) Defendants' financial aid awards changed, after (a) the Complaint was filed and (b) the 568 Group disbanded on November 4, 2022. If Defendants' financial aid awards have increased after (a) or (b), this will constitute further proof that the Consensus Methodology was anticompetitive. If there is no or little change in how Defendants award aid, and the Defendants' net price remains substantially above a control group as it has been for years, this would undercut the Defendants' contention that the group truly or fully disbanded or at least tend to prove that the 17 universities continue to be influenced by common understandings among the Cartel.

Accordingly, expert work will require discovery of financial aid structured data and other documents both leading up to the dissolution date (January 9, 2022-November 4, 2022) and for a period of time after November 4, 2022. We therefore propose an end date for all structured data of December 31, 2023, which captures two years of data following the filing

of the Complaint, while still providing a reasonable end date prior to expert discovery deadlines (which is set to close on September 24, 2024).

Fifth, a related basis for post-filing data production in a case like this is to determine an "after" period for the damages model. Sometimes the complaint is filed around the time the conduct has come to an end (e.g., a governmental investigation or guilty plea or the like). Plaintiffs then need post-conduct data for a clean, or at least partially clean, period with which to compare the conduct period. Given the end of the 568 Cartel, this is a basis for supplemental data productions. The effects of the conduct could be continuing even after the disbanding of 568, but it will undoubtedly be important to get data reflecting 2023 financial aid awards and tuition.

It bears emphasis that paragraph 12 of the Second Amended Complaint (like the Amended Complaint) states that the Class includes students who "first enrolled in one of Defendants' full-time undergraduate programs during the relevant times (defined below) from January 1, 2003 *until the effects of Defendants' continuing conduct ceases."* Experts might differ about when effect of the Defendants conduct ceases, but it is not January 9, 2022. Paragraph 223 of the SAC, in defining the Class, states "through the present." It is common that when Plaintiffs define a class "until the present," the end point of the class period is the date that the plaintiffs file for class certification. *Rodriguez v. It's Just Lunch Int'l*, 2018 WL 3733944, at *7 (S.D.N.Y. Aug. 6, 2018) (modifying an open-ended Class Period to end on the class certification date); *see also Lawrence v. NYC Med. Prac., P.C.*, 2021 WL 2026229, at *12 (S.D.N.Y. May 20, 2021) (interpreting the endpoint of the Class Period ("through the present") as the date plaintiffs filed their motion for class certification). In this case, according to the Case Management Order, that date would be October 18, 2024.

Sixth, we are entitled to know whether and to what extent Defendants have changed their admissions practices since the Complaint was filed. This evidence is relevant whether it shows that a given Defendant has continued the same practices and policies in admissions (which under the controlling law is a further and continuing basis for the liability of *all* members of the 568 Group), or whether it shows that a given Defendant has changed its practices and policies (which we would cite as evidence of culpability and/or as a basis for prospective impeachment).

We look forward to discussing to discussing these issues with you on January 17, immediately after the Martin Luther King holiday, and resolving them in a reasonable way very promptly thereafter. Thank you.

Very truly yours,

Bob

Robert D. Gilbert
Managing Partner
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
rgilbert@gilbertlitigators.com
646-448-5269 work
203-645-0055 cell
www.gilbertlitigators.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.