# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLANDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>               Defendants. | Case No.  1:22-cv-00125<br><br>Judge Matthew F. Kennelly |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL DISCOVERY FROM PLAINTIFFS

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................... 2

I.  **Interrogatories** .................................................................................................................. 3

    A.  Interrogatory No. 1 (Applications for Admission and Financial Aid) ................. 3

    B.  Interrogatory No. 2 (Sources of Financial Aid) ..................................................... 4

    C.  Interrogatory No. 3 (Relevant Market) .................................................................. 6

II.  **Requests for Production** ................................................................................................. 7

    A.  Request No. 1 (Reasons Plaintiff Applied to an Institution); Request No. 7 (College Comparisons and Rankings); and Request No. 23 (Market Definition) ........ 8

    B.  Request No. 2 (Applications for Admission to Defendant Universities) ............ 10

    C.  Request No. 3 (Applications for Financial Aid and Supporting Documents) ..... 10

    D.  Request No. 5 (Third-Party Scholarships and Financial Aid) ............................ 11

    E.  Request No. 6 (Financial Aid Declined) .............................................................. 11

    F.  Request No. 11 (Plaintiffs' Involvement in Litigation) ...................................... 12

    G.  Request No. 12 (Engagement Letters, Fee Arrangements) ................................. 12

    H.  Request No. 18 (Loan Modification); Request No. 26 (Loan Payment History) 13

    I.  Request No. 19 (Satisfaction with Institution and Value of Education) ............. 13

    J.  Request No. 20 (Social Media Usernames) ......................................................... 14

    K.  Request No. 21 (Social Media Posts About a Plaintiff's Institution) .................. 14

    L.  Request No. 24 (Tuition and Other Payments) ................................................... 14

    M.  Request No. 25 (Loan Agreements) .................................................................... 15

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Apple Inc. v. Pepper*,
  139 S. Ct. 1514 (2019) ..............................................................................................4

*Aptargroup, Inc. v. 3M Co.*,
  2018 U.S. Dist. LEXIS 240450 (N.D. Ill. May 25, 2018) ......................................11

*Boscoe Chung v. Lamb*,
  2018 U.S. Dist. LEXIS 227229 (D. Colo. May 30, 2018)..................................12, 13

*Davis v. Westgate Planet Hollywood Las Vegas, LLC*,
  2011 U.S. Dist. LEXIS 1258 (D. Nev. Jan. 3, 2011)...............................................12

*Derrick Virgne v. C.R. Eng.*,
  2020 U.S. Dist. LEXIS 260819 (S.D. Ind. Feb. 20, 2020) .....................................12

*ED&F Cap. Mkts. Ltd. v. JVMC Holdings Corp.*,
  2020 U.S. Dist. LEXIS 112706 (N.D. Ill. June 25, 2020) ....................................3, 4

*Epstein v. Am. Rsrv. Corp.*,
  1985 U.S. Dist. LEXIS 15842 (N.D. Ill. Sept. 18, 1985) ..................................12, 13

*Fishman v. Estate of Wirtz*,
  807 F.2d 520 (7th Cir. 1986) .....................................................................................6

*Full Circle Villagebrook GP, LLC v. Protech 2004-D, LLC*,
  2022 U.S. Dist. LEXIS 114942 (N.D. Ill. June 29, 2022) .......................................2

*Henderson v. Wells Fargo Bank, N.A.*,
  2017 U.S. Dist. LEXIS 24083 (D. Conn. Feb. 21, 2017) .........................................4

*In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*,
  2022 U.S. Dist. LEXIS 14480 (D. Kan. Jan. 26, 2022).............................................5

*Jones v. Cummings Bros. Truck Repair*,
  2008 U.S. Dist. LEXIS 29419 (S.D. Fla. Apr. 10, 2008) .......................................12

*King v. E.F. Hutton & Co.*,
  117 F.R.D. 2 (D.D.C. 1987)........................................................................................7

*McCurry v. Kenco Logistic Servs., LLC*,
  2017 U.S. Dist. LEXIS 227064 (C.D. Ill. Nov. 8, 2017)...........................................4

*Oxenberg v. Cochran*,
    518 F. Supp. 3d 831 (E.D. Pa. 2021) ........................................................................6

*Precision Assocs. V. Panalpina World Trans. Ltd.*,
    2012 U.S. Dist. LEXIS 113829 (E.D.N.Y. Aug. 13, 2012)......................................5

*Precision Assocs. v. Panalpina World Transp. Ltd.*,
    2011 U.S. Dist. LEXIS 51330 (E.D.N.Y. Jan. 4, 2011) ..........................................5

*Renner v. Chase Manhattan Bank*,
    2001 U.S. Dist. LEXIS 17920 (S.D.N.Y. Nov. 1, 2001) ........................................12

*Sage Prods. v. Chemrite Copac*,
    2021 U.S. Dist. LEXIS 219454 (N.D. Ill. Nov. 12, 2021)........................................2

*Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*,
    950 F.3d 911 (7th Cir. 2020) ..............................................................................8, 14

*Sipper v. Cap. One Bank*,
    2002 U.S. Dist. LEXIS 3881 (C.D. Cal. Feb. 28, 2002)........................................12

*Sony Corp. v. Vizio, Inc.*,
    2009 U.S. Dist. LEXIS 136146 (C.D. Cal. Oct. 23, 2009)......................................7

*Susman v. Lincoln Am. Corp.*,
    561 F.2d 86 (7th Cir. 1977) ..................................................................................12

*U.S. v. Brown Univ.*,
    5 F.3d 658 (3d Cir. 1993) .....................................................................................6, 9

*Zamora v. GC Servs., LP*,
    2016 U.S. Dist. LEXIS 205636 (W.D. Tex. Aug. 19, 2016)..................................12

## FEDERAL RULES

Fed. R. Civ. P. 26(b)(1)................................................................................................2

## FEDERAL REGULATIONS

34 CFR § 673.5(a)..................................................................................................5, 11

34 CFR § 673.5(b) .................................................................................................5, 11

34 CFR § 673.5(c)..................................................................................................5, 11

## MISCELLANEOUS

*What is my Expected Family Contribution (EFC)?*, FED. STUDENT AID,
    https://studentaid.gov/help-center/answers/article/what-is-efc.................................5

**INTRODUCTION**

Plaintiffs are demanding extremely broad discovery from Defendants, seeking decades' worth of documents from numerous sources, often refusing to compromise, and even expanding the scope of their initial demands. For their own discovery obligations, however, Plaintiffs have taken the opposite approach, albeit a similarly absolutist one. That is, they have agreed to produce absolutely nothing in response to many of Defendants' requests. They have answered just one of Defendants' four interrogatories, and that one only partially. They likewise have declined to produce documents in response to more than 40% of Defendants' document requests, and they have unreasonably narrowed others.

Plaintiffs have offered no legitimate basis for their refusal to participate meaningfully in discovery. *They* elected to file this lawsuit and serve as representatives of the claimed class. And they have identified no burden they would suffer by providing the requested information, and, in any event, Defendants have offered to limit the burden, including by proposing search terms. Nor do Plaintiffs argue the discovery is irrelevant in most cases – and where they do, they are wrong.

This is a putative class action about undergraduate financial aid. Second Am. Compl., ECF No. 266-1 ("SAC") ¶ 11. Plaintiffs allege that Defendants are part of "a price-fixing cartel that is designed to reduce or eliminate financial aid as a locus of competition." *Id.* ¶ 1. The heart of Plaintiffs' claim is the Consensus Methodology, "a set of common standards for determining the family's ability to pay for college." *Id.* ¶ 5. Plaintiffs contend that, as a result of Defendants' alleged use of the Consensus Methodology, Plaintiffs and their putative class are owed "billions of dollars" in damages. *Id.* ¶ 7.

Given these allegations, Defendants targeted their discovery requests at Plaintiffs' financial aid applications and related materials, as well as materials relevant to class certification, injury,

and damages. Defendants also requested discovery about Plaintiffs' alleged market definition. Yet Plaintiffs refuse to provide basic information about these topics, such as:

- Financial aid offers they received;

- Any alternative methodology that Plaintiffs claim Defendants should have used instead of the Consensus Methodology, as well as methodologies used by other schools;

- Plaintiffs' college applications, including why they selected the colleges to which they applied and how they chose from the schools that accepted them, which are relevant to Plaintiffs' hyper-narrow alleged market; and

- The named Plaintiffs' adequacy to serve as class representatives, including whether they incurred any out-of-pocket expenses to pay for college.

Plaintiffs' resistance to providing the requested information is particularly indefensible given their demand for billions in damages. While Defendants are confident they will prevail on the merits and that they owe no damages at all, Defendants are entitled to the discovery necessary to expose the manifest failures in Plaintiffs' case.

Defendants describe below the many discovery requests that Plaintiffs have rejected. Defendants respectfully ask the Court to order Plaintiffs to produce the requested discovery.

## **ARGUMENT**

Federal Rule of Civil Procedure 26(b)(1) allows parties to obtain discovery "regarding any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case." *Full Circle Villagebrook GP, LLC v. Protech 2004-D, LLC*, 2022 U.S. Dist. LEXIS 114942, at *8-9 (N.D. Ill. June 29, 2022). "The burden in a motion to compel rests with the party seeking discovery to explain why the opposing party's responses are inadequate." *Id.* at *9. To determine if discovery is "proportional to the needs of the case," courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Sage*

*Prods. v. Chemrite Copac*, 2021 U.S. Dist. LEXIS 219454, at *6 (N.D. Ill. Nov. 12, 2021).

## I.     INTERROGATORIES

Defendants served Plaintiffs with four interrogatories on September 19, 2022.  *See* Ex. 1. Plaintiffs have refused to answer three of them, and their answer to the remaining interrogatory is incomplete.  Even getting a partial response to that one interrogatory has been far more difficult than necessary, with Plaintiffs supplementing their responses as recently as a week ago.

### A.     Interrogatory No. 1 (Applications for Admission and Financial Aid)

Interrogatory No. 1 asks Plaintiffs for straightforward (but critical) details about their applications for admission and financial aid, such as the institutions to which they applied, whether they were awarded financial aid, the amount(s) awarded, and whether they appealed any award. *See* Ex. 2 (chart listing all discovery requests that are the subject of Defendants' Motion).

Plaintiffs do not deny that the requested information is relevant.  Indeed, it relates to key issues such as competition among universities (*e.g.*, how the financial aid packages offered by a Defendant compare to those offered by other Defendants and non-Defendants), whether Plaintiffs have adequately alleged a relevant market (*e.g.*, which schools did Plaintiffs consider substitutes), and injury/damages (*e.g.*, would Plaintiffs have received more financial aid in the "but-for" world).

Each Plaintiff nevertheless has refused to answer the interrogatory with respect to Defendant universities, claiming Defendants already possess the information.  It is not clear that Defendants possess all of the information that Plaintiffs suppose.[1]  More importantly, even if Plaintiffs were correct, that is not a legitimate ground to refuse to respond, especially in light of the relatively small burden Plaintiffs would bear in searching for relevant information.  *See, e.g.*, *ED&F Cap. Mkts. Ltd. v. JVMC Holdings Corp.*, 2020 U.S. Dist. LEXIS 112706, at *17-18 (N.D.

---

[1] A Defendant also could be dismissed from the case, leaving other Defendants with no access to its data.

3

Ill. June 25, 2020) ("Even if that is true [that defendants possess the information], plaintiffs cannot decline to respond to these [interrogatories] on the ground that defendants might be able to ferret out what they are asking for by some other means.").[2]

### B.    Interrogatory No. 2 (Sources of Financial Aid)

Defendants' second interrogatory asks each Plaintiff to identify the individuals and entities that funded the Plaintiff's undergraduate education. As with Interrogatory No. 1, Plaintiffs refuse to respond and assert that Defendants have such information in their own files. Again, Plaintiffs must answer the interrogatory regardless of whether Defendants could "ferret out" the answers themselves. *See id.* at *17-18.

Plaintiffs also object to providing discovery about third parties who paid their college costs, such as a parent or a community organization that gave the Plaintiff a scholarship (among many other examples). Plaintiffs argue that such discovery is irrelevant, because they are the sole "direct purchasers" and therefore entitled to the full alleged overcharge.

As an initial matter, Plaintiffs refuse to provide the very discovery needed to establish *if* they are, in fact, direct purchasers. Plaintiffs also ignore their own complaint, which centers on "standards for determining the *family's* ability to pay for college." SAC ¶ 5 (emphasis added). The reality is that parents often pay tuition directly to a university, and, as such, there is no intermediary – the parent is a direct purchaser. *See Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1521 (2019) (holding plaintiffs who paid defendants with no intermediary were direct purchasers).

At minimum, Plaintiffs' assertion that students alone are direct purchasers is conclusory

---

[2] *See also McCurry v. Kenco Logistic Servs., LLC*, 2017 U.S. Dist. LEXIS 227064, at *8-9 (C.D. Ill. Nov. 8, 2017) (requiring plaintiff to answer interrogatory and rejecting argument that defendant had access to plaintiff's records); *Henderson v. Wells Fargo Bank, N.A.*, 2017 U.S. Dist. LEXIS 24083, at *10 (D. Conn. Feb. 21, 2017) ("[T]he Federal Rules do not afford a party the option of refusing to produce discovery on the basis that she believes that the requesting party is already in possession of the requested discovery.").

and premature, particularly when their complaint centers on a financial aid system based on "Expected *Family* Contribution." *See What is my Expected Family Contribution (EFC)?*, FED. STUDENT AID, https://studentaid.gov/help-center/answers/article/what-is-efc (emphasis added); *see* SAC ¶¶ 4-5. Defendants are entitled to discovery to fairly evaluate Plaintiffs' claim that they are the sole direct purchasers.

Interrogatory 2 is also relevant regardless of the answer to the direct purchaser question:

First, Plaintiffs argue that, "but for" Defendants' alleged wrongdoing, Defendants would have used an alternative methodology to calculate financial aid awards that would have yielded more financial aid for Plaintiffs. Proving that allegation requires Plaintiffs to identify their "but-for" methodology and show that it would have resulted in Plaintiffs receiving higher aid. To assess whatever methodology Plaintiffs put forth, Defendants need to know each Plaintiff's third-party sources of aid, because federal law requires universities to consider such sources when determining how much aid to award. *See, e.g.*, 34 CFR § 673.5(a)-(c) (prohibiting universities from awarding certain forms of aid that "exceed the student's financial need" and stating institutions "shall take into account" the student's "estimated financial assistance," which includes third-party sources such as various loans, scholarships, and more).

Second, third-party financial aid is relevant to a Plaintiff's alleged injury, Article III standing, and adequacy as a class representative. Indeed, a third party may have paid the entire cost of a Plaintiff's attendance, in which case the Plaintiff would be uninjured. *See, e.g.*, *Precision Assocs. v. Panalpina World Transp. Ltd.*, 2011 U.S. Dist. LEXIS 51330, at *38-43 (E.D.N.Y. Jan. 4, 2011) (recommending dismissal of antitrust claims for lack of standing because plaintiffs "fail to allege that they paid the surcharges"), *report & recommendation adopted*, 2012 U.S. Dist. LEXIS 113829, at *8 (E.D.N.Y. Aug. 13, 2012); *see also In re EpiPen Mktg., Sales Pracs. &*

*Antitrust Litig.*, 2022 U.S. Dist. LEXIS 14480, at *36 (D. Kan. Jan. 26, 2022) (holding evidence of plaintiffs' insurance payments could establish class members suffered no injury and lacked standing); *Oxenberg v. Cochran*, 518 F. Supp. 3d 831, 836-37 (E.D. Pa. 2021) (holding plaintiffs suffered no economic injury and thus had no standing to challenge denials of Medicare claims, because non-party "was financially responsible for the denied coverage").

Third, Plaintiffs were required to inform institutions about other sources of financial aid. Defendants should be able to test the accuracy of Plaintiffs' disclosures.[3]

Fourth, the discovery is relevant to Defendants' affirmative defense that Plaintiffs failed to mitigate damages. *See, e.g.*, *Fishman v. Estate of Wirtz*, 807 F.2d 520, 556-57 (7th Cir. 1986) ("[T]he tort rules regarding mitigation of damages can have their place in the law of antitrust."). Plaintiffs could have mitigated their alleged damages by obtaining financial aid from other sources. Although Plaintiffs contend that a mitigation defense is not available here, the only authorities they have identified are cases alleging horizontal price-fixing where the conduct is *per se* unlawful. This is not such a case, as the Third Circuit made clear in a decision directly addressing claims of collusion relating to university financial aid. *See U.S. v. Brown Univ.*, 5 F.3d 658, 661 (3d Cir. 1993) (holding *per se* rule does not apply and court must analyze claim under rule of reason). Defendants should not be precluded from discovery relevant to this defense at this stage.

## C.     Interrogatory No. 3 (Relevant Market)

Plaintiffs devote over twenty paragraphs of their complaint to "The Relevant Market." SAC ¶¶ 243-63. They posit a market they call "the Market for Elite, Private Universities," consisting of "private national universities with an average ranking of 25 or higher in the *U.S.*

---

[3] Plaintiffs assert that such testing is a "fishing expedition" because Defendants have no evidence that any Plaintiff provided inaccurate information in her financial aid application. But it would be nearly impossible for Defendants to obtain such evidence without the requested discovery, and a key part of discovery is permitting Defendants to get the information needed to assess Plaintiffs' adequacy as class representatives.

*News & World Report* rankings from 2003 through 2021." *Id.* ¶ 244.

Defendants are entitled to test Plaintiffs' market allegations, so Interrogatory 3 asks Plaintiffs to identify the universities that make up their claimed market. Plaintiffs' complaint shows they already have that information, because it alleges (for several years) "the percentage of undergraduate slots that the participants in the conspiracy have controlled within this market." *See id.* ¶ 255. In addition to being relevant to a central issue in the case, the requested discovery would help Defendants target additional discovery and also tailor their own expert work. Plaintiffs must provide the requested information now with the facts currently in their possession. *See King v. E.F. Hutton & Co.*, 117 F.R.D. 2, 5-6 (D.D.C. 1987) (compelling a responding party to answer an interrogatory with "such information as they then possessed" before consulting an expert); *Sony Corp. v. Vizio, Inc.*, , 2009 U.S. Dist. LEXIS 136146, at *5 (C.D. Cal. Oct. 23, 2009) (overruling objection that requests prematurely seek expert discovery and holding "parties must respond fully and completely to all discovery requests to the best of their knowledge, based on the information they have"). If Plaintiffs' claimed market changes, they can amend their discovery responses.

## II.    REQUESTS FOR PRODUCTION

Defendants served Plaintiffs with twenty-nine requests for production. *See* Ex. 3. Plaintiffs refuse to produce *any documents* for twelve of the requests.[4] They also have unreasonably narrowed what they will produce in response to numerous others. Because Plaintiffs cannot reasonably dispute the relevance of the requested materials and have not articulated any significant burden, they should be ordered to produce the documents described below.

---

[4] The parties have reached agreement concerning some requests, and Defendants have declined to move to compel on others, choosing to focus on the most time-sensitive discovery (while reserving all rights).

A. **Request No. 1 (Reasons Plaintiff Applied to an Institution); Request No. 7 (College Comparisons and Rankings); and Request No. 23 (Market Definition)**

Requests 1, 7, and 23 seek documents relevant to a key element of Plaintiffs' claim: their alleged "relevant market." *See* SAC ¶¶ 243-63. "A 'relevant market' under the Sherman Act is comprised of the 'commodities reasonably interchangeable by consumers for the same purposes.'" *Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*, 950 F.3d 911, 916-17 (7th Cir. 2020).

To rebut Plaintiffs' claimed "market," Defendants have requested documents about the reasons Plaintiffs applied to the institutions they did and how they decided which school to attend. The schools Plaintiffs considered and where they chose to apply (and not apply) are relevant to show how consumers view different schools and whether the schools are reasonably interchangeable. Defendants already know that some Plaintiffs applied to public universities and liberal arts colleges, which Plaintiffs allege are outside the relevant market. *See* SAC ¶¶ 245, 250. For instance, one Plaintiff applied to the University of Nebraska – Lincoln, Wesleyan College, and Vassar College. Another applied to Ohio State University. Some Plaintiffs also applied to private universities that appear to be outside of their claimed market, such as Washington University and the University of Southern California. To assess Plaintiffs' alleged market definition, Defendants must understand the basis for that definition, and they are entitled to understand how the definition compares with Plaintiffs' own decisions.

Request 7 seeks documents discussing how one university compares to another, including documents about rankings published by U.S. News & World Report ("USN&WR") and others. There are numerous ways to rank colleges, many of which differ substantially from the USN&WR rankings on which Plaintiffs base their market definition. If a Plaintiff used a different ranking to decide where to apply to college, for example, that would undermine Plaintiffs' reliance on USN&WR. Though Plaintiffs claim this request seeks expert discovery, their own requests for

production seek documents about college rankings. *See*, *e.g.*, Pls.' First Set of Requests for Production of Documents to All Defs., Request No. 72.

Plaintiffs have agreed to produce some documents responsive to Requests 1 and 7, but only documents "authored by the Plaintiff." And they appear to carve out documents about college rankings unless they also concern a Plaintiff's reasons for applying to college. Their proposal would exclude relevant documents such as (1) an email from a friend advising the Plaintiff to apply to a Defendant institution and a liberal arts college; (2) an email from a college counselor following up on a meeting about a Plaintiff's college application choices; (3) a brochure on the best engineering programs; and (4) a document that questions the value of the USN&WR rankings.

Plaintiffs argue that documents are responsive to Requests 1 and 7 only if the Plaintiff considered them in deciding where to apply to college. But such documents are relevant on their own (showing, for instance, that some students choose to attend a university based on a particular course of study). Moreover, that the Plaintiff did not author a document in no way precludes the possibility that the Plaintiff considered the document. Finally, discoverability should not hinge upon whether a Plaintiff recalls – years later – whether she considered a document.

Plaintiffs also have objected to discovery about market definition on the ground that they have alleged a *per se* violation of the antitrust laws. The law, however, does not support them. *See Brown Univ.*, 5 F.3d at 661. In any event, this Court has not resolved the issue, and Plaintiffs continue to allege a relevant market in their Second Amended Complaint. SAC ¶¶ 244-63.

Request 23 asks for documents concerning the market definition alleged in the complaint. Plaintiffs object that Defendants are seeking premature expert discovery. But Defendants do not seek any expert's opinion, just documents from Plaintiffs' own files bearing on the relevant market – quintessential fact discovery.

9

**B.     Request No. 2 (Applications for Admission to Defendant Universities)**

Plaintiffs have agreed to produce only some of the documents responsive to this request, namely "applications by [Plaintiffs] to non-Defendant institutions."  But they are withholding applications to *Defendant* institutions, and they also have excluded documents *about* Plaintiffs' applications (as opposed to just the applications themselves).  Any document discussing Plaintiffs' application to any undergraduate institution is relevant to market definition, because the fact that a Plaintiff has applied to those schools is evidence that they are substitutes for one another. Responsive documents also may be relevant to Plaintiffs' claims about the competitiveness of Defendants' financial aid packages (*e.g.*, a document discussing the role played by financial aid in a Plaintiff's college application process).  They likewise are relevant to Defendants' statute of limitations defense, *i.e.*, what a Plaintiff knew about Defendants' alleged conduct and when she knew it.  For example, if a Plaintiff has documents showing that, at the time she applied for college, she knew facts about the alleged wrongdoing or claimed overcharges, those would support Defendants' statute of limitations defense.

**C.     Request No. 3 (Applications for Financial Aid and Supporting Documents)**

This case is about financial aid.  Plaintiffs claim that Defendants conspired to "reduce the amount of financial aid paid to Class Members."  SAC ¶ 265.  Yet Plaintiffs have refused to produce the documents they used to complete their financial aid applications, such as tax forms and records of assets.  This is core discovery that Plaintiffs could produce with minimal burden.

The details underlying Plaintiffs' financial aid applications are relevant, at a minimum, to class certification, injury, and damages.  For instance, as described above with respect to Defendants' Interrogatory 2, this information is essential for testing any "but-for" alternative methodology that Plaintiffs contend Defendants should have used to calculate financial aid awards, as well as the resulting amounts.  The documents also could reveal that a Plaintiff was not entitled

to financial aid at all – and thus was not injured – or that she was owed a smaller amount than she claims. Defendants also should be able to confirm the accuracy of the information included in Plaintiffs' financial aid applications.

### D. Request No. 5 (Third-Party Scholarships and Financial Aid)

Plaintiffs refuse to produce any documents in response to this request, which seeks materials about the financial aid they received from Defendants and other sources. This discovery is proper for the same reasons discussed above with respect to Interrogatories 1 and 2. That Defendants may already have some of this information is not a valid basis to resist this discovery. Additionally, federal regulations require universities to consider information about third-party aid when calculating financial need, making the information necessary to determine the amount of financial aid a Plaintiff was due. *See* 34 CFR § 673.5(a)-(c). The discovery is also relevant to other issues, such as Defendants' mitigation defense and the accuracy of Plaintiffs' submissions. Finally, Request 5 is limited to "documents sufficient to show," so Plaintiffs face, at most, a minor burden to provide responsive documents. *See Aptargroup, Inc. v. 3M Co.*, 2018 U.S. Dist. LEXIS 240450, at *9 (N.D. Ill. May 25, 2018) (limiting production to "documents sufficient to show" "minimize[s]" burden).

### E. Request No. 6 (Financial Aid Declined)

Request 6 asks Plaintiffs for "documents sufficient to show" any financial aid they declined. Such documents are relevant to the competitiveness of the financial aid packages that Defendants offered (*e.g.*, showing Defendants offered superior aid packages) and Plaintiffs' reasons for choosing a particular university (*e.g.*, if they turned down more money from another school to attend a Defendant institution). The documents also are relevant to Defendants' mitigation defenses. And it would not be burdensome for Plaintiffs to provide this information.

## F.      Request No. 11 (Plaintiffs' Involvement in Litigation)

How a plaintiff became involved in a putative class action is relevant to her adequacy as a class representative. *See Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 95 (7th Cir. 1977) (affirming denial of class certification due to relationships between plaintiffs and class counsel); *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, 2011 U.S. Dist. LEXIS 1258, at *15-16 (D. Nev. Jan. 3, 2011) (ordering discovery about how opt-in Plaintiffs "became involved in the case"); *Sipper v. Cap. One Bank*, 2002 U.S. Dist. LEXIS 3881, at *10 (C.D. Cal. Feb. 28, 2002) (refusing to certify class because of plaintiff's relationship with counsel).

## G.      Request No. 12 (Engagement Letters, Fee Arrangements)

This request seeks documents about the terms of Plaintiffs' engagement of counsel, the persons responsible for litigation costs, and Plaintiffs' share of any damages.  Plaintiffs have refused to produce any responsive documents.  Such materials are relevant for a number of reasons, including whether Plaintiffs can adequately represent the putative class and damages.  *See Epstein v. Am. Rsrv. Corp.*, 1985 U.S. Dist. LEXIS 15842, at *7 (N.D. Ill. Sept. 18, 1985) ("Fee arrangements are relevant to the ability of named plaintiffs to protect the interest of potential class members and hence are a proper subject for discovery."); *see also Derrick Virgne v. C.R. Eng.*, 2020 U.S. Dist. LEXIS 260819, at *5-6 (S.D. Ind. Feb. 20, 2020) (engagement agreement "is relevant to the issue of adequacy of class representation"); *Boscoe Chung v. Lamb*, , 2018 U.S. Dist. LEXIS 227229, at *8 (D. Colo. May 30, 2018) (compelling production of engagement letter as relevant to damages).[5]  These documents "are not ordinarily subject to the attorney-client

---

[5] *See also Zamora v. GC Servs., LP*, 2016 U.S. Dist. LEXIS 205636, at *5 (W.D. Tex. Aug. 19, 2016) (compelling plaintiff to produce "engagement agreement with your attorneys and any documents regarding any and all payment for their services"); *Jones v. Cummings Bros. Truck Repair*, 2008 U.S. Dist. LEXIS 29419, at *1 (S.D. Fla. Apr. 10, 2008) ("The general rule is that fee arrangements are discoverable within certain prescribed boundaries."); *Renner v. Chase Manhattan Bank*, 2001 U.S. Dist. LEXIS 17920, at *5

privilege." *Epstein*, 1985 U.S. Dist. LEXIS 15842, at *7; *see also Boscoe*, 2018 U.S. Dist. LEXIS 227229, at *7 (privilege does not apply to engagement letter).

### H.     Request No. 18 (Loan Modification); Request No. 26 (Loan Payment History)

Many students cover all or part of their college costs with loans.[6]  Plaintiffs presumably are seeking damages for the amounts of those loans and any interest paid, making documents about those payments a legitimate topic for discovery.  Additionally, if Plaintiffs never made payments on their loans or the loans were modified or forgiven, that should reduce their damages and could eliminate their injuries altogether.  It also could make a Plaintiff an inadequate class representative.

Plaintiffs have not agreed to produce any documents in response to these requests (even though one asks only for documents "sufficient to show").  They should not be able to avoid discovery at this stage by arguing they are the only direct purchasers, which Defendants dispute.

### I.      Request No. 19 (Satisfaction with Institution and Value of Education)

Plaintiffs' complaint treats an undergraduate education like an undifferentiated commodity, as if students select a college based solely on price.  That view of the world, however, is contrary to the experience of untold numbers of college applicants, who spend months and even years trying to decide which institution is the perfect match for them – academically, socially, culturally, spiritually, and economically (including post-graduation education and employment opportunities).  For many students, their college choice is one of the most important decisions they will ever make, and they may be willing to pay more to attend their preferred college.  Once at college, students continue to evaluate whether a school is right for them, and many consider whether to transfer.  Even after graduation, alumni reflect on their time at college and what made

---

(S.D.N.Y. Nov. 1, 2001) ("Federal courts uniformly allow the identity of the client and matters regarding fee arrangements to be discovered . . . .").

[6] Some Defendants award need-based aid in the form of grants, a type of competition between universities.

it special or how it could have been improved.

How Plaintiffs view their undergraduate experience and the value of their education bear on whether one university is a substitute for another, which is relevant to market definition. *See Sharif Pharmacy*, 950 F.3d at 918 (product market includes a product and its substitutes). Indeed, economic utility – the satisfaction someone receives from a product – is a key economic aspect of a product. Defendants thus seek discovery about these topics.

### J.      Request No. 20 (Social Media Usernames)

This request imposes almost no burden; it asks only that Plaintiffs produce documents "sufficient to show" the usernames and email addresses they use for social media (not passwords), which Defendants can use to investigate whether Plaintiffs have made relevant social media statements. Plaintiffs have refused to produce any information about how they use social media, but they notably have not denied that their social media accounts include relevant communications.

### K.      Request No. 21 (Social Media Posts About a Plaintiff's Institution)

Many people, especially college students, use social media to communicate, often in lieu of other forms of communication. For this reason, Defendants asked Plaintiffs for their social media communications and posts about the institutions they attended. Those posts could include information about a host of relevant topics, such as the financial aid packages they received from Defendants and how they compared to other aid offers, the reasons they attended an institution, and Defendants' statute of limitations defense. Plaintiffs, after initially agreeing to produce some subset of responsive documents, changed their position and now refuse to produce anything.

### L.      Request No. 24 (Tuition and Other Payments)

Plaintiffs claim to have overpaid for their undergraduate tuition and other costs of attendance, such as room and board. SAC ¶¶ 5, 238. This request seeks only "documents sufficient to show" such payments, including payments on Plaintiffs' behalf. Plaintiffs refuse to

produce documents sufficient to show payments on their behalf. If Plaintiffs are claiming injury and damages based on those payments, however, those payments are fundamental to the issues in this case. Additionally, as described above, third-party sources of aid are relevant to calculating a Plaintiff's Expected Family Contribution, which bears on Plaintiffs' "but-for" world. Among other things, the requested documents could reveal third-party funding sources that need to be included in those calculations. They also could disprove Plaintiffs claim to be direct purchasers.

### M.     Request No. 25 (Loan Agreements)

Plaintiffs have agreed to produce documents "that embody a student loan agreement, or modifications thereto." They have declined to produce other documents about those loan agreements. Documents about a student's loans, such as how different loan offers compare or how they factored into a student's college decision, are relevant to whether Defendants colluded, competition among universities, Plaintiffs' but-for world, and damages.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendants' motion to compel.

Dated: January 13, 2023                    Respectfully submitted,

By:/s/ Deepti Bansal                       By:/s/ Kenneth Kliebard
Deepti Bansal                              Kenneth Kliebard
Alexander J. Kasner                        MORGAN, LEWIS & BOCKIUS LLP
COOLEY LLP                                 110 North Wacker Drive
1299 Pennsylvania Avenue, NW               Suite 2800
Suite 700                                  Chicago, IL 60606-1511
Washington, DC 20004-2400                  Tel: 312-324-1000
Tel: 202-728-7027                          kenneth.kliebard@morganlewis.com
dbansal@cooley.com
akasner@colley.com                         Jon R. Roellke
                                           MORGAN, LEWIS & BOCKIUS LLP
Matthew Kutcher                            1111 Pennsylvania Avenue, NW
COOLEY LLP                                 Washington, DC 20004-2541
110 N. Wacker Drive                        Tel: 202-739-5754
Chicago, IL 60606                          jon.roellke@morganlewis.com
Tel: 312-881-6500
mkutcher@cooley.com                        Sujal Shah
                                           MORGAN, LEWIS & BOCKIUS LLP
*Counsel for Defendant California Institute*   One Market, Spear Street Tower, 28th Floor
*of Technology*                            San Francisco, CA 94105-1596
                                           Tel: 415-442-1386
By:/s/ Patrick Fitzgerald                  sujal.shah@morganlewis.com
Patrick Fitzgerald
Amy Van Gelder                             *Counsel for Defendant Brown University*
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP                                   By:/s/ James L.Cooper
155 N. Wacker Drive                        James L. Cooper
Chicago, IL 60606-1720                     Michael Rubin
Tel: 312-407-0508                          Tommy LaVoy
patrick.fitzgerald@skadden.com             ARNOLD & PORTER KAYE SCHOLER l
amy.vangelder@skadden.com                  601 Massachusetts Ave, NW
                                           Washington, DC 20001-3743
Karen Hoffman Lent                         Tel: 202-942-5014
SKADDEN, ARPS, SLATE, MEAGHER &            james.cooper@arnoldporter.com
FLOM LLP                                   michael.rubin@arnoldporter.com
One Manhattan West                         tommy.lavoy@arnoldporter.com
Room 40-216
New York, NY 10001-8602                    Leah Harrell
Tel: 212-735-3276                          ARNOLD & PORTER KAYE SCHOLER l
karen.lent@skadden.com                     250 West 55th Street
                                           New York, NY 10019-9710
                                           Tel.: 212-836-7767
                                           Leah.Harrell@arnoldporter.com

*Counsel for Defendant The Trustees of
Columbia University in the City of New
York*

By:*/s/ Terri L. Mascherin*
Terri L. Mascherin
Reid J. Schar
JENNER & BLOCK LLP
353 N. Clark Street,
Chicago, IL 60654-3456
Tel: 312-222-9350
tmascherin@jenner.com
rschar@jenner.com

Ishan K. Bhabha
Douglas E. Litvack
Lauren J. Hartz
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Tel: 202-637-6327
ibhabha@jenner.com
dlitvack@jenner.com
lhartz@jenner.com

*Counsel for Defendant Trustees of
Dartmouth College*

By:*/s/ Tina M. Tabacchi*
Tina M. Tabacchi
JONES DAY
77 West Wacker Drive
Suite 3500
Chicago, IL 60601-1692
Tel.: 312-782-3939
tmtabacchi@jonesday.com

Craig A. Waldman
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
Tel.: 202-879-3877
cwaldman@jonesday.com

*Counsel for Defendant Emory University*

Valarie Hays
ARNOLD & PORTER KAYE SCHOLER LP
70 W Madison Street
Suite 4200
Chicago, IL 60602
Tel.: 312-583-2440
valarie.hays@arnoldporter.com

*Counsel for Defendant University of Chicago*

By:*/s/ Norm Armstrong*
Norm Armstrong
Christopher Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
Tel.: 202-626-8979
narmstrong@kslaw.com
cyook@kslaw.com

Emily Chen
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel: 212-556-2224
echen@kslaw.com
Zachary T. Fardon
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
312 764 6960
zfardon@kslaw.com

*Counsel for Defendant Cornell University*

/s/ James A. Morsch
James A. Morsch
Jim.morsch@saul.com
SAUL EWING ARNSTEIN & LEHR
161 North Clark, Suite 4200
Chicago, IL 60601
Telephone: (312) 876-7100

17

By:/s/ Eric Mahr
Eric Mahr
Jan Rybnicek
Daphne Lin
FRESHFIELDS BRUCKHAUS
DERINGER
700 13th Street, NW
Washington, DC 20005
Tel: 202-777-4500
eric.mahr@freshfields.com
jan.rybnicek@freshfields.com
daphne.lin@freshfields.com

*Counsel for Defendant Massachusetts*
*Institute of Technology*

By:/s/ Scott D. Stein
Scott D. Stein
Benjamin R. Brunner
Kelsey Annu-Essuman
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
Tel.: 414-559-2434
sstein@sidley.com
bbrunner@sidley.com
kannuessuman@sidley.com

*Counsel for Defendant Northwestern*
*University*

By:/s/ Robert A. Van Kirk
Robert A. Van Kirk
Cole T. Wintheiser
Jonathan Pitt
Matthew D. Heins
Sarah F. Kirkpatrick
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: 202-434-5163
rvankirk@wc.com
cwintheiser@wc.com
jpitt@wc.com

Facsimile: (312) 876-0288
IL Attorney ID #6209558

Christopher D. Dusseault (pro hac vice)
cdusseault@gibsondunn.com
Jacqueline L. Sesia
jsesia@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000

*Counsel for Defendant Duke University*

By:/s/ Britt M. Miller
Britt M. Miller
Daniel T. Fenske
Jed W. Glickstein
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312-783-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com
jglickstein@mayerbrown.com

*Counsel for Defendant Georgetown University*

By:/s/ Jeffrey J. Bushofsky
Jeffrey J. Bushofsky
ROPES & GRAY LLP
191 North Wacker Drive 32nd Floor
Chicago, IL 60606-4302
Tel: 312-845-1200
jeffrey.bushofsky@ropesgray.com

Chong S. Park
Samer M. Musallam
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Tel: 202-508-4600
chong.park@ropesgray.com
samer.musallam@ropesgray.com

18

mheins@wc.com
skirkpatrick@wc.com

James Peter Fieweger
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street
Suite 3200
Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for Defendant University of Notre Dame du Lac*

By:/s/ Seth Waxman
Seth Waxman
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: 202-663-6800
seth.waxman@wilmerhale.com

David Gringer
Alan Schoenfeld
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: 212-937-7294
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Daniel Martin Feeney
Edward W. Feldman
MILLER SHAKMAN LEVINE & FELDMAN LLP
180 North LaSalle Street
Suite 3600
Chicago, IL 60601
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for Defendant Johns Hopkins University*

By:/s/ Norm Armstrong
Norm Armstrong
Christopher Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
Tel.: 202-626-8979
narmstrong@kslaw.com
cyook@kslaw.com
Emily Chen
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel: 212-556-2224
echen@kslaw.com

Zachary T. Fardon
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
312 764 6960
zfardon@kslaw.com

*Counsel for Defendant William Marsh Rice University*

*Counsel for Defendant The Trustees of the*
*University of Pennsylvania*

By:*/s/ J. Mark Gidley*
J. Mark Gidley
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
Tel: 202-626-3600
mgidley@whitecase.com

Robert A. Milne
David H. Suggs
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Tel: 212-819-8200
rmilne@whitecase.com
dsuggs@whitecase.com

*Counsel for Defendant Vanderbilt*
*University*

By:*/s/ Charles A. Loughlin*
Charles A. Loughlin
Benjamin F. Holt
Jamie Lee
Molly Pallman
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
Tel: 202-637-5600
chuck.loughlin@hoganlovells.com
benjamin.holt@hoganlovells.com
jamie.lee@hoganlovells.com
molly.pallman@hoganlovells.com

Stephen Novack
Stephen J. Siegel
Serena G. Rabie
NOVACK AND MACEY LLP
100 North Riverside Plaza, 15th Floor
Chicago, IL 60606-1501
Tel.: 312-419-6900
snovack@novackmacey.com
ssiegel@novackmacey.com

srabie@novackmacey.com

*Counsel for Defendant Yale University*