# Exhibit 6

| | |
|---|---|
| **From:** | Ted Normand <tnormand@fnf.law> |
| **Sent:** | Thursday, December 1, 2022 4:48 PM |
| **To:** | Suggs, David; Robert Gilbert; Peter Bach-y-Rita; Sarah Schuster |
| **Cc:** | Gringer, David; Harrell, Leah (External); Holt, Benjamin (External); Thompson, Elizabeth (External); Yook, Christopher (External) |
| **Subject:** | Re: Henry v. Brown - Follow-Up re Plaintiffs' Discovery Responses |

David –

We expect to have complete interrogatory responses, from the plaintiffs who will remain in the Second Amended Complaint, next week. In summary, the Second Amended Complaint, based on our current intentions, will reflect at least the following.

1. Considering our final and full assessment of the controlling law, Mr. Carbone will no longer be a plaintiff.

2. We will add a number of plaintiffs, probably three of them, and probably all current or recent students.

3. Considering our final and full assessment of the controlling law, we will revise the Class definition (and any related allegations) to exclude individuals who pay or help to pay the cost of a student's tuition.

4. We will correct a few semi-substantive nits that we've found (for example, we allege that Barney Frank was a senator, when in fact he was a Representative). There may also be a grammar error or two.

5. We will allege that the 568 Exemption has expired.

Thanks. I'll send you a separate note on the related issue of your proposed JSR insertion regarding some of those issues.

Ted

---

**From:** "Suggs, David" <dsuggs@whitecase.com>
**Date:** Tuesday, November 29, 2022 at 6:31 PM
**To:** Ted Normand <tnormand@fnf.law>, Robert Gilbert <rgilbert@gilbertlitigators.com>, Peter Bach-y-Rita <pbachyrita@fnf.law>, Sarah Schuster <sschuster@gilbertlitigators.com>
**Cc:** "Gringer, David" <David.Gringer@wilmerhale.com>, "Harrell, Leah (External)" <leah.harrell@arnoldporter.com>, "Holt, Benjamin (External)" <benjamin.holt@hoganlovells.com>, "Thompson, Elizabeth (External)" <elizabeth.thompson@saul.com>, "Yook, Christopher (External)" <cyook@kslaw.com>
**Subject:** RE: Henry v. Brown - Follow-Up re Plaintiffs' Discovery Responses

**[EXTERNAL SENDER]**

Ted,

We are still reviewing your email, but we seek clarification on two points. During our call on November 8 Plaintiffs also said they would address Defendants' proposal on Plaintiffs' document custodians (that the document custodians for each named Plaintiff include (1) for students, the parents and legal guardians and any other relatives who paid tuition, room, or board on the Plaintiff's behalf, and (2) for non-students (e.g., Frank Carbone), the student on whose behalf the non-student paid for tuition, room, or board). Please let us know Plaintiffs' position on that proposal. Also, let us know when we can expect Plaintiffs' position concerning the interrogatories, which also was promised weeks ago.

As for the introductory paragraph of your email, the holiday does not explain why Plaintiffs failed to provide the requested information by the date they themselves promised (early the week of November 14), let alone by November 21. Nor can Plaintiffs justify that failure by pointing to an non-existent "symmetry" between Defendants' 29 document requests and Plaintiffs' 173 document requests, especially considering that the parties had fully discussed all of Defendants' RFPs to Plaintiffs as of November 8.

Thanks,
David

**David Suggs**  |  Partner
T  +1 212 819 2686     M  +1 704 236 7007     E  dsuggs@whitecase.com
White & Case LLP  |  1221 Avenue of the Americas  |  New York, NY 10020-1095

**From:** Ted Normand <tnormand@fnf.law>
**Sent:** Tuesday, November 29, 2022 5:43 PM
**To:** Suggs, David <dsuggs@whitecase.com>; Robert Gilbert <rgilbert@gilbertlitigators.com>; Peter Bach-y-Rita <pbachyrita@fnf.law>; Sarah Schuster <sschuster@gilbertlitigators.com>
**Cc:** Gringer, David <David.Gringer@wilmerhale.com>; Harrell, Leah (External) <leah.harrell@arnoldporter.com>; Holt, Benjamin (External) <benjamin.holt@hoganlovells.com>; Thompson, Elizabeth (External) <elizabeth.thompson@saul.com>; Yook, Christopher (External) <cyook@kslaw.com>
**Subject:** Re: Henry v. Brown - Follow-Up re Plaintiffs' Discovery Responses

David,

With respect to the timing of our response to your email last Monday, we disagree with your apparent premise that we have unduly delayed or that you face any prejudice. For one thing, your colleagues conveyed to us yesterday their view that, given the holiday, the period of time last week from Wednesday afternoon through Sunday in effect do not constitute the passage of business days. In addition, as you know, there are parallel discussions between the parties regarding their objections, responses, and clarifications concerning their analysis of the RFPs served on them. The discussions with respect to Defendants' responses to Plaintiffs' RFPs are ongoing and, in several respects, have not yet resulted in the clarification or resolution of Defendants' positions on many of the requests. The fact that the same is true with respect to Plaintiffs' responses is thus merely symmetrical. If you mean to suggest that Defendants are entitled to such resolution and clarification before Plaintiffs, we disagree.

With that said, this is in response to your email of November 21. I use your topic headings.

1. **Plaintiffs' Proposals**.

RFP 1 – Plaintiffs will produce non-privileged documents concerning the advantages or disadvantages of applying for admission to any institution, including the Plaintiff's reasons for applying or not applying to any institution, but only to the extent that such documents are authored by the Plaintiff. Plaintiffs will not produce third party literature comparing the advantages and disadvantages of institutions.

RFP 2- Plaintiffs will produce applications by them to non-Defendant institutions, to the extent those applications are in their actual possession. Plaintiffs will not make FERPA requests of institutions they never attended in order to recover and produce those documents.

RFP 3 – Plaintiffs position is clearly set forth in Plaintiffs' Responses and Objections.

RFP 4 – Plaintiffs will produce all email communications between them and any financial aid offices.

RFP 5 – The requested information is not relevant for the reasons explained below (Discovery re Third-Party Funding Sources, Etc.).

RFP 6 – Same as above.

RFP 7 – Plaintiffs will produce the same documents as in response to RFP 1.

RFP 8 – Plaintiffs will produce non-privileged documents identified by a reasonable keyword search; however, with that said, Plaintiffs cannot imagine what documents would exist.

RFP 9 – Plaintiffs stand on their objections.

RFP 10 – Plaintiffs will produce non-privileged documents identified by a reasonable keyword search.

RFP 11 – Plaintiffs stand on their objections.

RFP 12 – Plaintiffs stand on their objections. The engagement letters are not relevant.

RFP 13 – Plaintiffs will produce non-privileged documents identified by a reasonable keyword search.

RFP 14 – Plaintiffs will produce non-privileged documents identified by a reasonable keyword search.

RFP 15 – Plaintiffs continue to object on grounds of relevance; however, they will produce current versions of their resumes.

RFP 16 – Plaintiffs position is clearly set forth in Plaintiffs' Responses and Objections. Plaintiffs will produce non-privileged documents responsive to this request. However, Plaintiffs anticipate that most or all such documents will be produced during the expert phase.

RFP 17 – Plaintiffs will produce non-privileged documents identified by a reasonable keyword search.

RFP 18 – Plaintiffs stand on their objections

RFP 19 – Plaintiffs stand on their objections

RFP 20 – Plaintiffs agree to disclose the Plaintiffs' public social media usernames.

RFP 21 – Plaintiffs will produce any non-privileged, responsive documents, related to the 568 Group or this litigation, to the extent such documents exist.

RFP 22 – Plaintiffs stand on their objections.

RFP 23 – Plaintiffs stand on their objections.

RFP 24 – Plaintiffs stand on their objections.

RFP 25 – Plaintiffs stand on their objections.

RFP 26 – Plaintiffs stand on their objections.

RFP 27 – Plaintiffs continue to believe the requested documents are not relevant. Plaintiffs also do not believe that any such documents exist in their possession. However, Plaintiffs will produce non-privileged documents identified by a reasonable keyword search of any documents in Plaintiffs' possession. Plaintiffs will not produce communications with or by counsel.

RFP 28 – Plaintiffs continue to believe the requested documents are not relevant. Plaintiffs also do not believe that any such documents exist in their possession. However, Plaintiffs will produce non-privileged documents identified by a reasonable keyword search of any documents in Plaintiffs' possession. Plaintiffs will not produce communications with or by counsel.

RFP 29 – Plaintiffs will not produce documents in response to this Request. The communications are privileged and consistent with the language on the 568cartel website, users of the website reasonably understood the communications to be privileged as well.

Plaintiffs do not yet have an update on the interrogatory responses.

2. **Discovery re Third-Party Funding Sources, Etc**.

Plaintiffs will not produce documents concerning third-party scholarships and loans used to pay their college expenses. The information sought is indeed irrelevant because it has no bearing on injury, based on multiple mutually supporting doctrines.

First, under Illinois Brick and its progeny, it is the student, as direct purchaser who is injured the moment the overcharge is paid. J.B.D.L. Corp. v. Wyeth-Ayerst Lab'ys Inc., 225 F.R.D. 208, 216 (S.D. Ohio 2003) (antitrust injury '"is considered complete when the direct purchaser pays an illegal overcharge" and ability to pass on overcharge is "irrelevant to the inquiry"). Moreover, as a direct purchaser, the student is injured by the full extent of the overcharge (i.e., the net price paid less the but for net price) regardless of the net effect of the overcharge on the student as direct purchaser or whether the student subsequently "passes on" or is otherwise reimbursed in a separate transaction. Id.; see also Hanover Shoe, Inc. v. United Shoe Machinery Corp, 392 U.S. 481, 494 (1968) (Plaintiff "proved injury and the amount of its damages for the purposes of its treble-damage suit when it proved that [defendant] had overcharged it during the damage period and showed the amount of the overcharge"); In re Skelaxin (Metaxalone) Antitrust Litig., 292 F.R.D. 544, 553 (E.D. Tenn. 2013) ("Damages in this type of anti-trust litigation are not measured by lost profits; they are measured purely by overcharges"). The direct purchasers are entitled to the full amount of the overcharge as damages, regardless of net effect or pass on or subsequent reimbursement. In re Hypodermic Prod. Direct Purchaser Antitrust Litig., No. 05-CV-1602, 2006 WL 6907107, at *6 (D.N.J. Sept. 7, 2006) ("For purposes of class certification, direct purchasers that have suffered overcharges have an antitrust injury and would be entitled to recover the full amount of the overcharge they paid; it is irrelevant if they may have also benefitted from the higher prices because their profits were a percentage of their acquisition costs."). Meanwhile, third-party sources of funding are not entitled to anything. Apple Inc. v. Pepper, 203 L. Ed. 2d 802, 139 S. Ct. 1514, 1521 (2019) ("The bright-line rule of Illinois Brick, as articulated in that case and as we reiterated in UtiliCorp, means that indirect purchasers who are two or more steps removed from the antitrust violator in a distribution chain may not sue. By contrast, direct purchasers—that is, those who are "the immediate buyers from the alleged antitrust violators"—may sue.").

To be clear, the information sought is **undiscoverable** under Illinois Brick and its progeny. Investigation into how the cost of tuition was passed on is a "speculative exercise [that] would involve massive discovery, one of the pitfalls which the Court sought to avoid in Hanover Shoe and Illinois Brick." Go-Tane Serv. Stations, Inc. v. Ashland Oil, Inc., 508 F. Supp. 200, 205 (N.D. Ill. 1981).

Second, as a matter of a distinct antitrust standing doctrine, it is the student—not third party contributors—who are injured. Third-party funding sources (credit cards, bank loans, mortgage lines of credit, friends) are used to purchase every consumer product. We are unaware of any case permitting discovery into the consumer's choice of financing or whether he/she paid the overcharge with borrowed or gifted money.

Third, as you point out, the collateral source rule is also relevant here. Contrary to your email, the collateral source rule has indeed been invoked by courts to bar discovery. Rhew v. Norfolk S. Ry. Co., No. 2:12-CV-526, 2013 WL 5308803, at *3 (N.D. Ind. Sept. 18, 2013) ("If the court were to allow Norfolk to conduct discovery for this purpose, it would do nothing but prejudice the jury on the issue of damages-the very concern the collateral source rule attempts to protect against.").

If Defendants' point is that Plaintiffs allegedly "failed to mitigate" by seeking third party scholarship funds to cover the overcharge, there is no such antitrust doctrine. To the extent you disagree, we would ask you to cite a direct purchaser antitrust action in which that kind of defense was credited. To the extent you argue that information about third-party scholarships and loans bears on the amount of aid to which students were entitled, Plaintiffs already produced that information in response to Defendants' RFPs and, indeed, Defendants already had that information prior to this case having been brought. If you contend that the Defendants might have been defrauded because they received inaccurate information, then that is a fishing expedition, and otherwise irrelevant to any claim or defense in this matter.

3. **Matters Alleged in the Complaint**.

Thank you for providing Defendants' interpretation of matters alleged in the complaint. See plaintiffs' list of proposed search terms below.

4. **Search Terms**.

Plaintiffs propose to run the search terms below on email accounts belonging to them:

568
fin* aid
antitrust
"price fixing"
Consensus meth*
CM
"class action"
Sherman Act

---

**From:** "Suggs, David" <dsuggs@whitecase.com>
**Date:** Monday, November 28, 2022 at 1:39 PM
**To:** Ted Normand <tnormand@fnf.law>, Robert Gilbert <rgilbert@gilbertlitigators.com>, Peter Bach-y-Rita <pbachyrita@fnf.law>, Sarah Schuster <sschuster@gilbertlitigators.com>
**Cc:** "Gringer, David" <David.Gringer@wilmerhale.com>, "Harrell, Leah (External)" <leah.harrell@arnoldporter.com>, "Holt, Benjamin (External)" <benjamin.holt@hoganlovells.com>, "Thompson, Elizabeth (External)" <elizabeth.thompson@saul.com>, "Yook, Christopher (External)" <cyook@kslaw.com>
**Subject:** RE: Henry v. Brown - Follow-Up re Plaintiffs' Discovery Responses

**[EXTERNAL SENDER]**

Counsel,

Plaintiffs served their responses and objections to Defendants' discovery requests on October 19, 2022. In response to the majority of those requests, Plaintiffs either refused to produce the requested information or asked to confer with Defendants about the requests. Defendants promptly attempted to schedule a conference with Plaintiffs, first emailing Plaintiffs on October 24, 2022 (three business days after they were served). The parties then conferred twice, most recently on November 8, 2022. During the second call, Plaintiffs said they would provide their positions on the requests by around November 15, 2022.

Yet three weeks after conferring, and ten weeks after serving the requests, Defendants still do not know what positions Plaintiffs are taking for the vast majority of Defendants' requests (despite there being only 29 RFPs and 4 interrogatories). Please let us know Plaintiffs' positions by 12 pm ET tomorrow, taking into account the information in my email below. Please also respond to the query in my below email regarding search terms.

Thanks,
David

**David Suggs** | Partner
T  +1 212 819 2686    M  +1 704 236 7007    E  dsuggs@whitecase.com
White & Case LLP  |  1221 Avenue of the Americas  |  New York, NY 10020-1095

**From:** Suggs, David
**Sent:** Monday, November 21, 2022 4:08 PM
**To:** 'Ted Normand' <tnormand@fnf.law>; Robert Gilbert <rgilbert@gilbertlitigators.com>; Peter Bach-y-Rita <pbachyrita@fnf.law>; 'Sarah Schuster' <sschuster@gilbertlitigators.com>
**Cc:** Gringer, David <David.Gringer@wilmerhale.com>; Harrell, Leah <leah.harrell@arnoldporter.com>; Holt, Benjamin F. <benjamin.holt@hoganlovells.com>; 'Thompson, Elizabeth A.' <Elizabeth.Thompson@saul.com>; 'Christopher Yook'

5

<CYook@KSLAW.com>
**Subject:** Henry v. Brown - Follow-Up re Plaintiffs' Discovery Responses

Counsel,

We're following up on a few items from the parties' discussions about Defendants' discovery requests to Plaintiffs.

**Plaintiffs' Proposals**. The parties discussed all of Defendants' Rule 34 requests and some aspects of Defendants' interrogatories. On our November 8 call, Plaintiffs said they would follow-up by early the following week (e.g., November 15) with details of what Plaintiffs are willing to produce in response to many of Defendants' requests. Please provide those details as soon as possible.

**Discovery re Third-Party Funding Sources, Etc**. Plaintiffs objected to producing discovery concerning whether and how Plaintiffs paid their tuition, room and board, and the like. For example, Plaintiffs have suggested they will not produce documents concerning third-party scholarships and loans used to pay their college expenses. Plaintiffs also indicated they will not produce documents concerning loan forgiveness. Defendants reiterate their position that Plaintiffs should provide discovery on those topics.

Although not stated explicitly, Plaintiffs appear to be basing their objection on the collateral source rule, *i.e.*, the idea that a Plaintiff's recoverable damages should not be reduced by funds received from a collateral source. However, even if that rule applied here (and Defendants do not agree that it does), it is a rule of admissibility, not discoverability. *See Convergence Aviation, Ltd. v. Dallas Airmotive, Inc.*, No. 10-2021, 2013 U.S. Dist. LEXIS 66424 (N. D. Ill. May 9, 2013) (ordering production of settlement documents and stating "plaintiffs rely on this [collateral source] rule to argue against production of these documents in discovery. But admissibility is not the test; instead we look at relevancy of discovery in a broad context."); *see also, e.g.*, *Shaw v. Shandong Youngsheng Rubber Co. Ltd.*, No. 18-867, 2020 U.S. Dist. LEXIS 72420, at *8-10 (D. Colo. April 24, 2020) (overruling discovery objection based on collateral source rule because rule "is generally one of admissibility, not discoverability"); *Heuskin v. D&E Transp., LLC*, No. 19-957, 2020 U.S. Dist. LEXIS 51644, at *27-29 (D. N.M. March 25, 2020) (same).

Plaintiffs also are wrong to the extent they are arguing that the requested information is irrelevant. For example, notwithstanding the collateral source rule, evidence that Plaintiffs did not pay their college expenses is relevant to whether Plaintiffs suffered injury. *See In re EpiPen Marketing, Sales Practices & Antitrust Litig.*, 2022 WL 226130, at *2 (D. Kan. Jan. 26, 2022) (holding defendants could present evidence at trial concerning plaintiffs' insurance payments to establish that certain class members suffered no injury and thus lacked Article III standing); *In re K-Dur Antitrust Litig.*, 2008 U.S. Dist. LEXIS 71772, at *43-49 (D.N.J. Feb. 21, 2008) (rejecting plaintiff's collateral-source argument and granting summary judgment to defendants because plaintiff who paid only "flat co-pay" failed to prove injury).

Evidence of third-party scholarships and loans also is relevant to the amount of aid that a Plaintiff received. For at least some students, universities must attempt to adjust the student's aid package if the aid to be awarded, <u>combined with other Estimated Financial Assistance</u>, would exceed the student's cost of attendance. The Estimated Financial Assistance includes third-party scholarships and loans. Evidence concerning other sources of aid likewise is relevant to the Plaintiffs' credibility, because, when applying for financial aid from Defendants, they were required to submit accurate and complete information concerning such sources. Defendants need discovery about those third-party sources to determine whether Plaintiffs submitted the appropriate information. Finally, the requested information is relevant to Defendants' failure to mitigate defense.

For all of these reasons, Plaintiffs should produce the information that Defendants have requested concerning the funding for Plaintiffs' undergraduate expenses, including third-party scholarships and loans and loan forgiveness.

**Matters Alleged in the Complaint**. Plaintiffs asked for clarification regarding the meaning of "the matters alleged in the Complaint." *See, e.g.*, Request No. 10. That phrase encompasses the following topics alleged in the complaint:

- Agreements between Defendants or members of the 568 Presidents Group concerning undergraduate financial aid, the methodologies for calculating undergraduate financial need and financial aid awards, or the price of attending undergraduate programs, and monitoring and enforcing such agreements
- The 568 Presidents Group, including membership in the group, Defendants' participation in the group, and data and information sharing among group members
- Methodologies for assessing the financial need of, and awarding financial aid to, undergraduate applicants and their families (the Consensus Methodology, the Federal Methodology, the Institutional Methodology, et al.),

- including the creation, development, implementation, and use of those methodologies and the impact of using one methodology rather than another
- Whether Defendants are "need blind" for purposes of Section 568 or otherwise eligible for the Section 568 exemption, including Defendants' consideration of the financial circumstances of applicants and their families, the impact of donations or wealth on admissions decisions, Defendants' use of enrollment management, and Defendants' efforts to limit the number of financial-aid-eligible applicants who they admit
- Plaintiffs' applications for admission to undergraduate programs and the institutions' decisions concerning those applications
- Plaintiffs' applications for and receipts of financial aid, and their payment of tuition, room and board, and other costs to attend an undergraduate institution
- Effects of Defendants' conduct, including effects on undergraduate financial aid assessments and awards and the price of attending Defendants' undergraduate institutions (e.g., allegedly offering lower financial aid awards and charging higher price of attendance), and Plaintiffs' alleged injuries and damages
- Plaintiffs' knowledge and discovery of Defendants' alleged Sherman Act violations and the facts underlying those alleged violations, including statements quoted in the complaint about Defendants' admissions and financial aid practices, and factors that prevented Plaintiffs or a reasonable person from discovering them
- Rankings and comparisons of, and competition between, any Defendant and any other undergraduate institution, including public universities and liberal arts colleges
- The class definition, the ascertainability of members of Plaintiffs' alleged class, the questions of law and fact that are common to alleged class members, whether Plaintiffs claims are typical of the claims of alleged class members, whether Plaintiffs will protect the interests of the alleged class

**Search Terms**. On November 2, Defendants sent Plaintiffs a preliminary list of proposed terms for searching Defendants' ESI. Please advise if Plaintiffs intend to use search terms to search their ESI for responsive documents. If so, please let us know if Plaintiffs are going to propose search terms. If Plaintiffs do not plan to use search terms, please advise how Plaintiffs plan to search their files for responsive documents.

Thanks,
David

**David Suggs** | Partner
T +1 212 819 2686    M +1 704 236 7007    E dsuggs@whitecase.com
White & Case LLP  |  1221 Avenue of the Americas  |  New York, NY 10020-1095
**WHITE & CASE**

======================================================================
This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


======================================================================

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.




======================================================================
This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use

or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

==========================================================================

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.