**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| ANDREW CORZO, *et al.*, individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>     v.<br><br>BROWN UNIVERSITY*, et al.,*<br><br>        Defendants. | **Case No. 1:22-cv-00125**<br><br>**Honorable Matthew F. Kennelly** |

**MOTION FOR PROTECTIVE ORDER BY DEFENDANTS**
**BROWN UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE**
**CITY OF NEW YORK, TRUSTEES OF DARTMOUTH COLLEGE, NORTHWESTERN**
**UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, AND YALE UNIVERSITY**

## TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND ............................................................................1

ARGUMENT ....................................................................................................................4

I.      Relevance and Proportionality Must Be Tied to the Claims and Defenses Asserted. .........4

II.     Discovery into Admissions and Development Activities of the Moving Defendants
        Is Not Relevant to the Merits of Plaintiffs' Claim or the Statute of Limitations
        Defense. ....................................................................................................................5

III.    The Discovery at Issue Is Not Proportional to the Needs of the Case. .............................10

CONCLUSION.................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*17 Outlets, LLC Healthy Food Corp. v. ThurKen III, LLC*,
 No. 15-cv-101-JD, 2016 WL 6781217 (D.N.H. Nov. 16, 2016) ..............................................11

*Always Towing & Recovery, Inc. v. City of Milwaukee*,
 2 F.4th 695 (7th Cir. 2021) ................................................................................................7

*Am. Guard Servs., Inc. v. Terminal Sec. Sols., Inc.*,
 No. 18–cv–0603, 2019 WL 366202 (W.D. Wash. Jan. 30, 2019) ...........................................5

*Baker v. F & F Inv.*,
 420 F.2d 1191 (7th Cir. 1970) ..............................................................................................9

*City of Chi. v. Purdue Pharma, L.P.*,
 No. 14–cv–4361, 2020 WL 3578497 (N.D. Ill. July 1, 2020) ........................................4, 5, 11

*Goldman v. As You Like It Silver Shop, Inc.*,
 No. 18–cv–6802, 2019 WL 718739 (E.D. La. Feb. 20, 2019) ...............................................11

*Klehr v. A.O. Smith Corp.*,
 521 U.S. 179 (1997) ...........................................................................................................9

*Motorola Sols., Inc. v. Hytera Commc'ns Corp.*,
 314 F. Supp. 3d 931 (N.D. Ill. 2018) ...................................................................................14

*Motorola Sols., Inc. v. Hytera Commc'ns Corp.*,
 365 F. Supp. 3d 916 (N.D. Ill. 2019) ...................................................................................10

*N. Am. Soccer League v. United States Soccer Fed'n*,
 883 F.3d 32 (2d Cir. 2018).................................................................................................7, 8

*Nat'l Collegiate Athletic Ass'n v. Alston*,
 141 S. Ct. 2141 (2021).........................................................................................................8

*Ohio v. Am. Express Co.*,
 138 S. Ct. 2274 (2018).........................................................................................................7

*Oppenheimer Fund, Inc. v. Sanders*,
 437 U.S. 340 (1978)..........................................................................................................4, 5

*R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper!*,
 462 F.3d 690 (7th Cir. 2006) ...............................................................................................5

*R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores Inc.*,
    No. 99–cv–01174, 2000 WL 1923332 (N.D. Ill. Nov. 15, 2000) ............................................5

*Sapia v. Bd. of Educ. of the City of Chi.*,
    2017 WL 2060344, at *2 (N.D. Ill. 2017). ..............................................................................15

*Seiden v. Frazer Frost, LLP*,
    796 F. App'x 381 (9th Cir. 2020) .............................................................................................9

*Sidney Hilman Health Ctr. of Rochester v. Abbott Lab Inc.*,
    782 F.3d 922, 928 (7th Cir. 2015) ...........................................................................................9

*Simmons v. CPI Apartment Fund*,
    No. 14–cv–11855, 2014 WL 4681734 (E.D. Mich. Sept. 19, 2014) ...................................5, 11

*Texaco Inc. v. Dagher*,
    547 U.S. 1 (2006) .....................................................................................................................6

*United States v. 416.81 Acres of Land*,
    514 F.2d 627 (7th Cir. 1975) .................................................................................................11

*Virgin Atl. Airways Ltd. v. Brit. Airways PLC*,
    257 F.3d 256 (2d Cir. 2001) .....................................................................................................8

*Willmar Poultry Co. v. Morton-Norwich Prod., Inc.*,
    No. 4-74-CIV. 276, 1974 WL 936 (D. Minn. Oct. 1, 1974), *aff'd*, 520 F.2d 289
    (8th Cir. 1975) ......................................................................................................................10

*In re Zantac (Ranitidine) Prod. Liab. Litig.*,
    No. 20-MD-2924, 2021 WL 5299847 (S.D. Fla. Nov. 15, 2021) ..........................................15

## Statutes

15 U.S.C. § 1 n. ...........................................................................................................................6

Sherman Act § 1 ....................................................................................................................2, 5, 9

## Court Rules

Fed. R. Civ. P. 26(b)(1) ............................................................................................................4, 10

Fed. R. Civ. P. 26(b)(2)(C) .......................................................................................................4, 10

Fed. R. Civ. P. 26(c) ....................................................................................................................1

Fed. R. Civ. P. 26(c)(1) ................................................................................................................4

Fed. R. Civ. P. 26(c)(1)(C) ..........................................................................................................15

Local Rule 37.2 ............................................................................................................1

Rule 26 .............................................................................................................3, 4, 5, 10

Defendants Brown University, The Trustees of Columbia University in the City of New York, Trustees of Dartmouth College, Northwestern University, University of Notre Dame du Lac, and Yale University (the "Moving Defendants") move the Court for entry of a Protective Order pursuant to Fed. R. Civ. P. 26(c) barring Plaintiffs from obtaining discovery related to Admissions and Development activities. This discovery was grossly disproportionate to the issues in this case from the outset, and now even further disproportionate since the Moving Defendants are withdrawing the statutory antitrust exemption from the defenses asserted in their Answers to Plaintiffs' Second Amended and Supplemental Class Action Complaint, Dkt. 266-1 ("SAC").[1]

## INTRODUCTION AND BACKGROUND

Plaintiffs are pursuing an antitrust claim based on financial aid awards to admitted students—specifically the methodology that each Defendant uses to calculate need-based aid and that aid's effect on the net cost of attendance. *See* SAC ¶ 1 (alleging Defendants have participated "in a price fixing cartel that is designed to reduce or eliminate financial aid as a locus of competition …"). Defendants' practices for admitting students are not relevant to this claim and any alleged injury. Indeed, the putative class is limited to students who *were admitted* to the Defendant institutions. *Id.* at ¶ 223. Nonetheless, Plaintiffs seek burdensome and intrusive discovery into Defendants' Admissions and Development activities, which they have repeatedly characterized as the "smoking gun" in their submissions to this Court. Specifically, Plaintiffs have propounded more than **70** requests for production aimed, in whole or in part, at discovering

---

[1] The Moving Defendants have complied with Local Rule 37.2 by meeting and conferring with Plaintiffs' counsel in a good-faith effort to resolve or narrow this dispute. The meet and confers took place via videoconference on January 4, 2023 and January 11, 2023 and included the following participants: for the Moving Defendants, Jon Roelke, Noah Kaufman, Amy Van Gelder, Laura Bernescu, Terri Mascherin, Ishan Bhabha, Douglas Litvack, Lina Powell, Casey Carlson, Scott Stein, Kathleen Carlson, Benjamin Brunner, Sarah Kirkpatrick, Charles Loughlin, Benjamin Holt and Holden Steinhauer, and for the Plaintiffs, Ted Normand, Peter Bach-y-Rita, Richard Cipolla, Bob Gilbert and Bob Litan. *See* Van Gelder Decl., Ex. 1, ¶ 11 n.1, ¶¶ 12-13, ¶ 14 n.2, ¶¶ 15-18 in Supp. of Mot. for Protective Order.

whether Defendants' admissions practices were "need blind," as Plaintiffs interpret that term. These far-reaching requests demand that Defendants produce—for a nearly 25-year period— among other things: (1) detailed data concerning all applicants for admission and admissions decisions; (2) applicant letters of recommendation; (3) admissions policies and communications; (4) documents concerning "enrollment management"; (5) documents and communications concerning the consideration of donor or legacy status in admissions; (6) communications between admissions personnel and personnel in the President's office, development office, or financial aid office; and (7) documents concerning Defendants' development strategies and practices, including potentially sensitive personal information concerning thousands of individual donors. *See* Ex. 1, ¶ 5; Roellke Decl., Ex. 2, ¶ 2; 2nd Van Gelder Decl., Ex. 3, ¶ 2; Mascherin Decl., Ex. 4, ¶ 2; Stein Decl., Ex. 5, ¶ 2; Kirkpatrick Decl., Ex. 6, ¶ 2; Holt Decl., Ex. 7, ¶ 2. Plaintiffs acknowledged during discovery conferences that they seek such information solely to disprove an affirmative defense that each Defendant pleaded in its Answer to the First Amended Complaint: that collaboration via the 568 Presidents Group, including developing the Consensus Methodology for assessing financial need, is exempt from antitrust liability under the Section 568 statutory exemption to the Sherman Act (the "Exemption"). *See* Ex. 2, ¶ 2; Ex. 3, ¶ 2; Ex. 4, ¶ 2; Ex. 5, ¶ 2; Ex. 6, ¶ 2; Ex. 7, ¶ 2.

With their forthcoming Answers to Plaintiffs' SAC, the Moving Defendants are withdrawing the Exemption from their defenses. The Moving Defendants are making this amendment in light of the Court's discussion of the Exemption in its Opinion and Order denying Defendants' Motion to Dismiss, *see* Dkt. 185 at PageID 1001–1011, and in the interest of streamlining the disputed issues for discovery and trial, particularly given Plaintiffs' insistence on extensive (and often redundant) discovery into this single issue and their unwillingness to negotiate

a more reasonable scope. The Moving Defendants informed Plaintiffs on January 4, 2023, that they would withdraw this defense and sought Plaintiffs' agreement that voluminous Exemption-related discovery from the Moving Defendants is no longer relevant or proportional. Ex. 1, ¶ 11.

Withdrawal of this defense should have been welcome news to Plaintiffs: it significantly narrows the disputed issues, reduces the burden and expense for both Plaintiffs and the Moving Defendants, and allows these parties to focus on the antitrust issues that form the gravamen of Plaintiffs' case. For example, significant discovery disputes described in the parties' 50-page Joint Status Report relating to custodians and the scope of discovery from Defendants could be avoided entirely. *See* Dkt. 274. Rather than recognizing these benefits and agreeing to avoid (or even to meaningfully limit) unnecessary discovery, however, Plaintiffs have proposed that Moving Defendants respond to extensive RFPs despite their withdrawal of the Exemption defense, including all of their RFPs concerning Moving Defendants' Development activities and many of their RFPs concerning Admissions, revealing that Plaintiffs' goal in pursuing such discovery is to harass and embarrass, rather than because it is relevant to their actual antitrust claim. *See* Ex. 1, ¶¶ 13–15. The parties have reached impasse on this issue. Accordingly, the Moving Defendants seek a protective order precluding discovery from the Moving Defendants with respect to their Admissions and Development activities, including through the requests for production and search terms identified in Exhibit C to Exhibit 1.

A protective order is warranted. Under Rule 26, discovery is limited to matters that are both relevant to a claim or defense and proportional to the needs of the case. Here, the withdrawal of the Moving Defendants' Exemption defense fundamentally alters both the relevance and proportionality of discovery regarding the Admissions and Development activities of the Moving Defendants. Plaintiffs' antitrust claim concerns the financial aid awards *matriculating* students

received while attending the Defendant institutions. The antecedent question of which students were admitted in the first place, and the grounds for those admissions decisions, is irrelevant to Plaintiffs' claim or any defense asserted by the Moving Defendants. Nor does discovery related solely to admissions decisions have any relevance to a rule-of-reason analysis or to any non-Moving Defendants' Exemption defense. Regardless, even if this disputed discovery had some attenuated relevance, the vast amount of data and documents that Plaintiffs continue to seek from the Moving Defendants is entirely disproportionate to the needs of the case. There are far more targeted and reasonable ways to address these matters than subjecting the Moving Defendants—who have made a good-faith effort to streamline disputed issues by dropping this affirmative defense—to discovery that appears at this stage designed to burden and harass the Moving Defendants rather than address live and salient disputes.

## ARGUMENT

### I. Relevance and Proportionality Must Be Tied to the Claims and Defenses Asserted.

Discovery is limited to matters that are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26 "requires the court to limit discovery that falls outside the scope of Rule 26(b)(1)," "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." *City of Chi. v. Purdue Pharma, L.P.*, No. 14–cv–4361, 2020 WL 3578497, at *2 (N.D. Ill. July 1, 2020) (quoting Fed. R. Civ. P. 26(b)(2)(C)). The Court may issue a protective order to enforce these boundaries and prevent "undue burden or expense," by "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery." Fed. R. Civ. P. 26(c)(1).

Relevance and proportionality change when the claims, defenses, and contentions asserted by the parties evolve over the course of litigation. Indeed, "it is proper to deny discovery of [a] matter that is relevant only to claims or defenses that have been stricken." *Oppenheimer Fund, Inc.*

*v. Sanders*, 437 U.S. 340, 352 (1978). In *R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper!*, 462
F.3d 690 (7th Cir. 2006), for example, Reynolds initially contended that certain products had
different formulations, prompting discovery into each product's additives. *Id*. at 700. Rather than
produce sensitive business documents, Reynolds amended its complaint while discovery was
underway to remove this claim. *Id*.; *see also R.J. Reynolds Tobacco Co. v. Premium Tobacco
Stores Inc.*, No. 99–cv–01174, 2000 WL 1923332, at *1 (N.D. Ill. Nov. 15, 2000). Reynolds then
sought a protective order foreclosing discovery into additives, which the district court granted, and
the Seventh Circuit upheld. 462 F.3d at 700–01. The reason was simple: evidence related to
additives was "not relevant" to any claim or defense after Reynolds amended its pleading. *Id*.

Other decisions from within and beyond the Seventh Circuit confirm that amendments to
pleadings can fundamentally change the proper scope of discovery, warranting entry of protective
orders that enforce Rule 26's boundaries and "enable [p]laintiff's claims to be more efficiently
litigated and resolved." *Simmons v. CPI Apartment Fund*, No. 14-cv-11855, 2014 WL 4681734,
*2 (E.D. Mich. Sept. 19, 2014) (granting protective order from discovery into attorney-client
communications after defendant amended answer to withdraw advice-of-counsel affirmative
defense); *see also, e.g.*, *City of Chi.*, 2020 WL 3578497, at *4 (ruling that discovery into withdrawn
claims was "no longer relevant"); *Am. Guard Servs., Inc. v. Terminal Sec. Sols., Inc.*, No. 18–cv–
0603, 2019 WL 366202, at *2 (W.D. Wash. Jan. 30, 2019) (same as to withdrawn allegations).

## II.  Discovery into Admissions and Development Activities of the Moving Defendants Is Not Relevant to the Merits of Plaintiffs' Claim or the Statute of Limitations Defense.

Plaintiffs allege that Defendants conspired to reduce the amount of financial aid awarded
to admitted students in violation of Section 1 of the Sherman Act. SAC ¶ 265. That claim concerns
the financial aid process, and it alleges injury to a putative class of students who attended, and
received need-based financial aid from, one of the Defendant institutions. *Id*. ¶ 11. Plaintiffs do

not allege *any* anticompetitive conduct or injury related to admissions processes or decisions (indeed, each was admitted and matriculated at one of the Defendant institutions). Admissions processes and decisions have relevance in this case *only* because the Exemption is available to institutions that admit students "on a need-blind basis." 15 U.S.C. §1 note (Application of Antitrust Laws to Award of Need-Based Educational Aid); *see* SAC ¶¶ 135–195. Because the Moving Defendants are not asserting any defense based upon the Exemption, the intrusive and burdensome Admissions and Development discovery Plaintiffs continue to seek is not relevant to the merits of the claim against the Moving Defendants. Specifically, that discovery does not bear on which standard—*per se* or rule of reason—applies to the antitrust claim, the analysis of the claim under either standard, the purported injury or damages, or the statute of limitations defense.

*First*, Admissions and Development activities are not relevant to this Court's determination of whether to apply the *per se* or rule-of-reason analysis. The former applies only to a narrow category of conduct, requiring a naked agreement among competitors to fix prices, reduce output, or allocate markets without a conceivable procompetitive justification. S*ee Texaco Inc. v. Dagher*, 547 U.S. 1, 1–5 (2006). Here, the parties dispute whether the challenged conduct constitutes a naked price-fixing agreement: Plaintiffs contend that the Consensus Methodology is an agreement among competing institutions regarding a substantial determinant of net tuition price, SAC ¶ 115; Defendants assert that the Consensus Methodology was part of a procompetitive collaboration (the 568 Presidents Group) developing voluntary financial aid principles to best assess financial need. Discovery relevant to determining the proper standard will necessarily focus on these contentions. Why some putative class member was admitted to a Defendant institution (or why someone *outside* the putative class was *not* admitted) is simply irrelevant to Plaintiffs' antitrust claim.

*Second*, if Plaintiffs were correct that *per se* analysis applies (they are not), the inquiry would be cabined primarily to whether the Defendants participated in the alleged conspiracy and whether Plaintiffs were injured as a result, further limiting the relevant discovery. *See Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 704 (7th Cir. 2021).[2] Plaintiffs cannot maintain that discovery into Admissions and Development activities are relevant to a *per se* case.

*Third*, the discovery that Plaintiffs seek regarding Admissions and Development activities are likewise irrelevant and unnecessary under the rule of reason. That standard requires a three-step analysis: (1) "the plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market"; (2) "then the burden shifts to the defendant to show a procompetitive rationale for the restraint"; and finally (3) "the burden shifts back to the plaintiff to demonstrate that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018) (internal citations omitted). At the first step, the inquiry will focus on the alleged agreement to adopt and follow the Consensus Methodology to assess admitted students' need for financial aid, and whether that alleged agreement had anticompetitive effects. *See* SAC ¶¶ 96–134 (alleging anticompetitive effects from use of the Consensus Methodology). The SAC lacks *any* allegation about a reduction in competition for admissions, as opposed to financial aid. *See id.* ¶¶ 135–95.

The discovery at issue is likewise immaterial to steps two and three. At step two, Defendants may show procompetitive justifications for collaborating on voluntary financial aid principles—including improved accuracy, predictability, and stability in need assessment and expanding access to higher education. *See* Dkt. 147 at PageID 606–07; *see also, e.g.*, *N. Am.*

---

[2] As Plaintiffs put it, the sole issue would be whether "each Defendant entered into [the alleged] agreement to fix prices." Pls.' Opp'n to Mot. to Dismiss, Dkt. 164 at PageID 701.

*Soccer League v. United States Soccer Fed'n*, 883 F.3d 32, 44 (2d Cir. 2018) (recognizing stability rationale as procompetitive justification). Those justifications for principles underlying financial aid awards to admitted students have nothing to do with Defendants' admissions policies. Step three requires Plaintiffs to propose a less restrictive alternative to the challenged restraint—the alleged agreement to develop and use the Consensus Methodology—that achieves the same benefits. The proposed alternative must (1) be "significantly (not marginally) less restrictive," *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2164 (2021); (2) "achieve the same procompetitive benefits," *id.* at 2162; (3) constitute an "alternative program" to the challenged restraint (such as creating a different approach to assess financial need), *Virgin Atl. Airways Ltd. v. Brit. Airways PLC*, 257 F.3d 256, 265 (2d Cir. 2001); and (4) "be reasonably achiev[able]," *Am. Express Co.*, 138 S. Ct. at 2284. That inquiry focuses solely on alternatives to the Consensus Methodology for assessing financial aid. Plaintiffs cannot rebut the procompetitive justifications for the 568 Presidents Group and its Consensus Methodology by showing that member institutions could have been, but were not, "need blind" in admissions or engaged in "wealth favoritism." Instead, Plaintiffs would need to demonstrate a less restrictive alternative to collaboration on financial aid (not admissions) that could achieve the same benefits as the 568 Presidents Group's Consensus Methodology without the allegedly negative effects on students receiving financial aid.

*Fourth*, information related to Admissions and Development activities are irrelevant to injury and damages. Plaintiffs allege that they and members of the putative class—students who *were* admitted, enrolled in one of the Defendant institutions, and were eligible for financial aid— received less aid and therefore paid more money to attend college than they would have. SAC ¶¶ 123–34. Measuring purported damages will require a comparative analysis between different approaches to assessing financial need to determine what aid Plaintiffs would have received but

for the alleged conspiracy. Plaintiffs do not (and cannot) allege any injury to students who supposedly were not admitted, or did not enroll, due to any purportedly non-need-blind admissions practice. Any such students are, by definition, excluded from the putative class. *Id*. ¶ 11.[3]

*Finally*, contrary to Plaintiffs' contention, Dkt. 255 at PageID 2975–77, Admissions and Development discovery has no probative value to Defendants' statute of limitations defense. The statute of limitations focuses on the cause of action itself (the alleged Sherman Act violation), not an affirmative defense (the Exemption). Knowledge about the applicability of "defenses— hypothetical or otherwise—do not toll otherwise applicable statutes of limitations." *Seiden v. Frazer Frost, LLP*, 796 F. App'x 381, 383 (9th Cir. 2020). To defeat the statute of limitations defense, Plaintiffs must show that they could not have discovered "*the existence of [the] cause of action*" or their injury, neither of which is related to Exemption-related discovery. *Baker v. F & F Inv.*, 420 F.2d 1191, 1198–99 (7th Cir. 1970) (citations omitted) (emphasis added). This Court indicated that the Exemption is an affirmative defense, not an element of Plaintiffs' claim. Dkt. 185 at PageID 1002–03; *see also* SAC ¶¶ 135–37. As the Court held, "a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." Dkt. 185 at PageID 1015. (quoting *Sidney Hilman Health Ctr. of Rochester v. Abbott Lab Inc.,* 782 F.3d 922, 928 (7th Cir. 2015)). Accordingly, Plaintiffs' purported ignorance about the applicability of an affirmative defense could not have stopped them from filing their claim in a timely manner.

Discovery sought from Defendants also cannot shed light on what Plaintiffs knew or should have known about the claim, injury, or even the applicability of the Exemption defense. For example, the fraudulent concealment exception requires that Plaintiffs did not know and could not have known about the offense. *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 194–95 (1997) (finding

---

[3] Moreover, the Moving Defendants have all agreed to provide the discovery needed to prove Plaintiffs' alleged damages—discovery into need determinations and financial aid awards for admitted students.

that tolling of the statute of limitations requires that the plaintiff "neither knew nor, in the exercise of due diligence, could reasonably have known of the offense"). Crucially, the scope of what Plaintiffs could have known must be based on publicly available information, which requires no discovery at all. Similarly, the scope of what Plaintiffs did know cannot be gleaned from discovery into the Defendants' files. *Willmar Poultry Co. v. Morton-Norwich Prod., Inc.*, No. 4-74-CIV. 276, 1974 WL 936, at *2 (D. Minn. Oct. 1, 1974), *aff'd*, 520 F.2d 289 (8th Cir. 1975) ("[D]iscovery of defendants' records cannot establish fraudulent concealment if it can presently be shown that plaintiffs knew of their cause of action prior to [four years before the action].").

In sum, resolving the merits of Plaintiffs' antitrust claim or the statute of limitations defense does not require information from the Moving Defendants about Admissions and Development activities. Whatever information might be relevant for Defendants claiming the Exemption, the Moving Defendants are not putting their Admissions or Development activities at issue.

## III. The Discovery at Issue Is Not Proportional to the Needs of the Case.

Even if discovery regarding the Moving Defendants' Admissions and Development activities were marginally relevant, "relevance alone does not translate into automatic discoverability under Federal Rule of Civil Procedure 26." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). The discovery sought also must be "proportional" to the needs of the case, requiring consideration of, among other factors, "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 26(b)(2)(C) (requiring courts to limit discovery that is disproportionate).

District courts have "long held that it is permissible to refuse to grant discovery of matters of 'marginal relevance.'" *Motorola Sols., Inc.*, 365 F. Supp. 3d at 924 (collecting cases). When the target of discovery withdraws claims or defenses, discovery sought related to those claims or

10

defenses may no longer be proportional, even if that discovery is arguably still relevant. *See City of Chi.*, 2020 WL 3578497, at *4–5 (finding discovery disproportionate where plaintiff dropped claims related to the discovery and defendants could obtain the evidence, to the extent relevant, from other sources); *cf., e.g.*, *United States v. 416.81 Acres of Land*, 514 F.2d 627, 632 (7th Cir. 1975) (finding no error where court rejected interrogatories related to stricken defenses); *Goldman v. As You Like It Silver Shop, Inc.*, No. 18–cv–6802, 2019 WL 718739, at *2 (E.D. La. Feb. 20, 2019) (modifying and limiting subpoenas where plaintiff withdrew claim); *17 Outlets, LLC Healthy Food Corp. v. ThurKen III, LLC*, No. 15-cv-101-JD, 2016 WL 6781217, at *4 (D.N.H. Nov. 16, 2016) (finding discovery into resolved and unasserted claims to be disproportionate); *Simmons*, 2014 WL 4681734, at *2 (granting protective order related to withdrawn defense).[4]

Although the Moving Defendants are no longer relying on the Exemption, Plaintiffs continue to seek the exact same far-reaching and burdensome discovery into their Admissions and Development activities, contending that this discovery remains relevant to the Exemption defense asserted by *other Defendants.* Dkt. 274 at PageID 3219. Seeking Exemption-related from the Moving Defendants on the same scale as from the other Defendants maintaining the Exemption defense is not proportionate to the needs of the case because the burden and expense of such discovery far outweighs any minimal benefit to Plaintiffs.

Plaintiffs propounded more than 70 requests for production aimed at the Exemption defense. Ex. 1, ¶ 5; Ex. 2, ¶ 2; Ex. 3, ¶ 2; Ex. 4, ¶ 2; Ex. 5, ¶ 2; Ex. 6, ¶ 2; Ex. 7, ¶ 2. As set out in the declarations attached hereto as Exhibit(s) 1–7, responding to these requests would require the Moving Defendants to expend significant time, resources, and costs. The Moving Defendants

---

[4] Indeed, Plaintiffs themselves have taken the position that amendment of their complaint to remove parents and guardians as putative class members is germane to the inquiry of whether discovery from Plaintiffs' parents and guardians should proceed. *See* Pls.' Mem. of Law in Supp. of Their Mot. For Protective Order to Prohibit Defs. From Serving Subpoenas on Pls.' Families, Dkt. 271 at 1.

collectively would have to review hundreds of thousands of additional documents of agreed custodians because they hit on Exemption-related search terms and even more when adding other custodians that Plaintiffs claim are necessary to the Exemption-related discovery. *See* Ex. 2, ¶ 4 (increasing the number of documents for review from 354,539 to 661,797 documents, an 86% increase); Ex. 3, ¶ 4 (increasing the number of documents for review from 355,119 to 615,112 documents, a 73% increase); Ex. 4, ¶ 3 (increasing the number of documents for review from 247,666 to 655,134 documents, a 164% increase); Ex. 5, ¶ 3 (increasing the number of documents for review by over 313,000 documents); Ex. 6, ¶ 8 (increasing the number of documents for review from 75,948 to 152,817 documents, a 101% increase); Ex. 7, ¶¶ 10–11 (increasing the number of documents for review from approximately 330,000 to 430,000 documents, a 30% increase); *see also* Dkt. 255 at PageID 2971–74. The Moving Defendants would each also have to query, extract, and de-identify voluminous admissions databases collectively containing millions of individual admissions records as far back as 1998. Ex. 2, ¶ 7; Ex. 3, ¶ 5; Ex. 4, ¶¶ 5–6; Ex. 5, ¶ 5; Ex. 6, ¶¶ 4–6; Ex. 7, ¶¶ 4–7. These databases and documents contain FERPA-protected information, which will require heightened review and detailed redaction to comply with federal law and protect student confidentiality, driving costs even higher. The chart below reflects the unnecessary documents and data Plaintiffs continue to demand that the Moving Defendants search, review, and produce:[5]

| Discovery Category | Brown | Columbia | Dartmouth | Northwestern | Yale |
|---|---|---|---|---|---|
| Additional documents to be reviewed | 300,000+ | 259,000+ | 400,000+ | 313,000+ | 100,000+ |
| Admissions data | 500,000+ applicants; Hundreds of data fields | 600,000+ applicants; Thousands of data fields | 300,000+ applicants; 1,000+ data fields | 479,000+ applicants; Thousands of data fields | 650,000+ applicants; 700+ data fields |

---

[5] Ex. 2, ¶¶ 4–7; Ex. 3, ¶¶ 4–5; Ex. 4, ¶¶ 3, 5; Ex. 5, ¶¶ 3, 5; Ex. 6, ¶¶ 5, 8; Ex. 7, ¶¶ 4–7, 10–11.

Further, several of Plaintiffs' Exemption-related requests call for the Moving Defendants to first identify family members of applicants who have donated, or who are *capable* of donating, $50,000 on a one-time basis or whose donations over time totaled $50,000 or more, and then produce documents or communications related to those donors and/or their family members. *See* Ex. 1 at Ex. A, Nos. 20, 128, 129, Ex. B., No. 4; Ex. 4 ¶ 6. None of the Moving Defendants have a reliable, automated way to discern whether family members of donors were applicants for admission. For those schools that have been able to identify which donors have donated in excess of $50,000, there are thousands of such donors. Ex. 2, ¶ 8; Ex. 3, ¶ 6; Ex. 4, ¶ 6; Ex. 5, ¶ 6; Ex. 6, ¶ 7; Ex. 7, ¶ 9. Nor has any Moving Defendant identified an automatic or non-burdensome way to assess donors who are or were capable of donating in excess of $50,000. As a result, responding to this request would require the Moving Defendants to undertake a manual process of attempting to match development and admissions records, which—given the volume of such data—would require hundreds (if not thousands) of hours of attorney and contractor time, all at considerable expense in the magnitude of millions of dollars. The Moving Defendants estimate that aggregate costs associated with this additional work would be millions of dollars per Defendant. Ex. 2, ¶¶ 3, 10; Ex. 3, ¶ 3; Ex. 4, ¶ 4; Ex. 5, ¶ 3; Ex. 6, ¶¶ 7, 9; Ex. 7, ¶¶ 7, 12.

These burdens and costs far outweigh the only possible benefit of this discovery to Plaintiffs: disproving the Exemption defense asserted by *other* Defendants. This Exemption-related discovery unquestionably is not relevant to Plaintiffs' case against the Moving Defendants who are withdrawing that defense. Under the Court's Opinion and Order denying Defendants' Motion to Dismiss, if Plaintiffs can demonstrate that a *single* member of the alleged conspiracy was not "need blind" (including as to waitlist and transfer admissions) within the meaning of the Exemption, then *no* Defendant is exempt from antitrust liability. *See* Dkt. 185 at PageID 1009–

1010. While the Moving Defendants do not concede that point, it is certainly the case that given that ruling, Plaintiffs cannot demonstrate that taking onerous discovery from *all* Defendants— including the Moving Defendants—is proportional to the needs of the case. Plaintiffs can obtain any necessary discovery from sources that are less burdensome and costly to the Moving Defendants—namely, from the 11 Defendants who continue to assert the Exemption defense. Indeed, Plaintiffs are seeking expansive evidence concerning the non-Moving Defendants' Admissions and Development activities. As a result, any similar evidence obtained from the Moving Defendants would be unnecessarily cumulative and duplicative. Plaintiffs affirmatively assert that they already have evidence that some schools were not need blind and, therefore, "all seventeen Defendants are liable." *See, e.g.*, Dkt. 274 at PageID 3243 (stating that Emory "publicly announced that one of its campuses would be need-aware going forward"); SAC ¶¶ 142, 155 (citing Vanderbilt and Emory websites). Regardless of whether need awareness of a single 568 Presidents Group member either during or after its respective membership is sufficient to establish that "all seventeen Defendants are liable," Plaintiffs fail to explain why the evidence they already proffer is not sufficient for their theory that the Exemption defense is unavailable to the other schools that continue to assert it, let alone explain why unbridled Admissions and Development discovery is proportional for the Moving Defendants.

Additionally, the requested discovery remains grossly disproportionate to the needs of the case even if Exemption-related discovery were relevant to Defendants' statute of limitations defense. Courts recognize that discovery into statute of limitations defenses must be targeted and narrow. *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 314 F. Supp. 3d 931, 939 (N.D. Ill. 2018) ("[T]he burden and expense of the proposed discovery manifestly outweighs its likely benefit to the very limited question of equitable tolling. Although the federal discovery rules are permissive,

they are not, as Judge Moran wisely put it, "a ticket to an unlimited ... exploration of every conceivable matter that captures an attorney's interest." (quoting *Sapia v. Bd. of Educ. of the City of Chi.*, 2017 WL 2060344, at *2 (N.D. Ill. 2017)). There are more targeted and narrower ways to assess whether Plaintiffs should have known about the alleged offense and whether Defendants acted to conceal it. *See, e.g., In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2021 WL 5299847, at *3 (S.D. Fla. Nov. 15, 2021) ("As Defendants note, there are numerous alternative sources of equally or more probative evidence."). Nevertheless, Plaintiffs refuse to propose targeted, narrow discovery and insist on virtually all the Exemption-related discovery they seek. This position is incompatible with the Federal Rules of Civil Procedure.

Document production in this case has just commenced, so it remains unclear what evidence Plaintiffs will uncover—beyond that already publicly available—in support of their theory that the Exemption is inapplicable to those other Defendants. But what is clear is that Plaintiffs have ample opportunity to take discovery on the Exemption from those Defendants actually asserting that defense, as well as other 568 Presidents Group members who are not defendants in this case. The Moving Defendants are streamlining the issues in this litigation and should not bear the significant burden and costs associated with discovery aimed at an affirmative defense they do not assert. Discovery taken from the Moving Defendants on these issues, if any, should be more targeted and less burdensome than the wide-ranging discovery that Plaintiffs currently seek. *See* Fed. R. Civ. P. 26(c)(1)(C).

## CONCLUSION

For the foregoing reasons, the Court should grant this Motion and enter the Proposed Protective Order as to the Moving Defendants.

Dated: January 14, 2023          Respectfully submitted,

By: */s/ Kenneth Kliebard*
Kenneth Kliebard
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Suite 2800
Chicago, IL 60606-1511
Tel: 312-324-1000
kenneth.kliebard@morganlewis.com

Jon R. Roellke
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel: 202-739-5754
jon.roellke@morganlewis.com

Sujal Shah
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower, 28th Floor
San Francisco, CA 94105-1596
Tel: 415-442-1386
sujal.shah@morganlewis.com

*Counsel for Defendant Brown University*

By: */s/ Patrick Fitzgerald*
Patrick Fitzgerald
Amy Van Gelder
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
155 N. Wacker Drive
Chicago, IL 60606-1720
Tel: 312-407-0508
patrick.fitzgerald@skadden.com
amy.vangelder@skadden.com

Karen Hoffman Lent
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
Room 40-216

New York, NY 10001-8602
Tel: 212-735-3276
karen.lent@skadden.com

*Counsel for Defendant The Trustees of*
*Columbia University in the City of New York*

By: */s/ Terri L. Mascherin*
Terri L. Mascherin
Reid J. Schar
JENNER & BLOCK LLP
353 N. Clark Street,
Chicago, IL 60654-3456
Tel: 312-222-9350
tmascherin@jenner.com
rschar@jenner.com

Ishan K. Bhabha
Douglas E. Litvack
Lauren J. Hartz
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Tel: 202-637-6327
ibhabha@jenner.com
dlitvack@jenner.com
lhartz@jenner.com

*Counsel for Defendant Trustees of Dartmouth*
*College*

By: */s/ Scott D. Stein*
Scott D. Stein
Benjamin R. Brunner
Kelsey Annu-Essuman
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
Tel.: 414-559-2434
sstein@sidley.com
bbrunner@sidley.com
kannuessuman@sidley.com

*Counsel for Defendant Northwestern*
*University*

17

By: /s/ Robert A. Van Kirk
Robert A. Van Kirk
Cole T. Wintheiser
Jonathan Pitt
Matthew D. Heins
Sarah F. Kirkpatrick
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: 202-434-5163
rvankirk@wc.com
cwintheiser@wc.com
jpitt@wc.com
mheins@wc.com
skirkpatrick@wc.com

James Peter Fieweger
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street
Suite 3200
Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for Defendant University of Notre
Dame du Lac*

By: /s/ Charles A. Loughlin
Charles A. Loughlin
Benjamin F. Holt
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
Tel: 202-637-5600
chuck.loughlin@hoganlovells.com
benjamin.holt@hoganlovells.com

Stephen Novack
Stephen J. Siegel
Serena G. Rabie
NOVACK AND MACEY LLP
100 North Riverside Plaza, 15th Floor
Chicago, IL 60606-1501
Tel.: 312-419-6900

18

snovack@novackmacey.com
ssiegel@novackmacey.com
srabie@novackmacey.com

*Counsel for Defendant Yale University*