# **EXHIBIT 1**

Declaration of Amy L. Van Gelder

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANDREW CORZO, et al., individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>       v.<br><br>BROWN UNIVERSITY, et al.,<br><br>       Defendants. | **Case No. 1:22-cv-00125**<br><br>**Honorable Matthew F. Kennelly**<br><br>**Magistrate Gabriel A. Fuentes** |

**DECLARATION OF AMY L. VAN GELDER IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER BY DEFENDANTS BROWN UNIVERSITY, THE TRUSTEES
OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, TRUSTEES OF
DARTMOUTH COLLEGE, NORTHWESTERN UNIVERSITY, UNIVERSITY OF
NOTRE DAME DU LAC, AND YALE UNIVERSITY**

I, Amy L. Van Gelder, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a member of the bar of this Court and admitted to practice in this jurisdiction. I am a partner of Skadden, Arps, Slate, Meagher & Flom LLP and counsel for Defendant The Trustees of Columbia University in the City of New York. I make this Declaration in Support of the Motion for Protective Order by Defendants Brown University, The Trustees of Columbia University in the City of New York, Trustees of Dartmouth College, Northwestern University, University of Notre Dame Du Lac, and Yale University (the "Motion for Protective Order"). This declaration is based on my personal knowledge and review of the attached Exhibits.

2.      Attached hereto as Exhibit A is a true and correct copy of Plaintiffs' First Set of Requests for Production of Documents to All Defendants (the "First Requests"), which is comprised of 173 requests, many of which also contain numerous sub-parts.

3.      Attached hereto as Exhibit B is a true and correct copy of Plaintiffs' Second Set of Requests for Production of Documents to All Defendants (the "Second Requests"), which is comprised of six additional requests and one clarification concerning Plaintiffs' First Requests.

4.      The First and Second Requests call for production of documents and data spanning a period of nearly 25 years. Many of the requests are aimed at discovering information related to Plaintiffs' theories concerning the applicability of the Section 568 statutory exemption to the Sherman Act (the "Exemption"). Such requests call for production of expansive and detailed information concerning Defendants' admissions and development data, documents, and communications. Specifically, the First and Second Requests seek:

- Admissions structured data, including all data for all admitted students who applied for financial aid; all data regarding admissions scoring, ranking, and weights assigned to particular admissions factors; scoring assigned to all admitted applicants' applications; the number of waitlist and transfer applicants; and the

identities of all admitted waitlist and transfer applicants. Ex. A, Requests for Production Nos. 4, 5, 11-14; Ex. B, Requests for Production Nos. 2, 3.

- Certain applicants' letters of recommendation. Ex. B, Request for Production No. 4.

- Documents regarding admissions policies and practices, including all handbooks, manuals, training materials, and promotional materials; all documents concerning efforts to shape the admitted class; and all documents produced in any regulatory investigation concerning admissions policies and practices. Ex. A, Requests for Production Nos. 54, 55, 61-63, 84, 144, 145, 162.

- Documents concerning need-blind admissions, including all documents and communications concerning: the definitions and interpretation of the terms "need blind," "need aware," and "need sensitive"; need-blind requirements and practices; and public statements regarding need-blind admissions. Ex. A, Requests for Production Nos. 30, 43, 60, 119-23.

- All documents concerning "enrollment management," including data and analyses; information concerning the roles of any employee charged with enrollment management; and documents concerning an enrollment management handbook or its co-authors or editors. Ex. A, Requests for Production Nos. 77, 78.

- All documents concerning various public statements, published articles, or books relating to need-blind admissions or the purported influence of wealth, donations or legacy status on admissions. Ex. A, Requests for Production Nos. 85-88, 94, 97-102, 107-111, 113, 116, 117.

- Documents related to the consideration of donations or legacy status in admission, including all documents concerning: candidate interests lists; preferential treatment in the admissions process; studies or analyses concerning the relationship of legacy admissions to current or future donations; and all documents within the Admissions Office concerning the "missing middle." Ex. A, Requests for Production Nos. 31, 58, 79, 80; Ex. B, Request for Production No. 1.

- Certain documents concerning employee roles and office organization, including all documents concerning employees with responsibility for coordinating between the Admissions and Development Offices; all documents concerning Admissions Office personnel with responsibility for applicants for admission related to prospective donors; and organizational charts for the Admissions and Development Offices. Ex. A, Requests for Production Nos. 41, 125; Ex. B, Request for Production No. 6.

- All documents and communications between or among the Admissions Development, President, and/or Financial Aid Offices concerning applicants for admission and/or donors. Ex. A, Requests for Production Nos. 23, 126-131.

3

- Documents sufficient to identify members of donor groups. Ex. A, Request for Production No. 21.

- Documents concerning certain donors, including documents sufficient to show all donations cumulatively valued at $50,000 or more made by families of admitted applicants during the five years before their application or after their matriculation; all documents concerning relatives of an applicant for admission establishing an endowed chair or fund; and documents concerning certain named donors. Ex. A, Requests for Production Nos. 20, 22, 118, 132.

- Budgets, strategic plans, data, and analyses sufficient to show Development Office efforts or income. Ex. A, Request for Production No. 49.

- All documents regarding the Exemption, including its interpretation, communications and meetings concerning the Exemption, and lobbying efforts related to the Exemption. Ex. A, Requests for Production Nos. 35, 135, 141, 142.

5. Attached hereto as Exhibit C is a chart detailing the 73 individual requests among the First and Second Requests that relate, in whole or in part, to admissions and development data, documents, and communications, as well as the currently proposed search terms associated with such requests.

6. During numerous conferences and correspondence in November and December 2022, counsel for Plaintiffs consistently acknowledged that discovery regarding admissions and development data, documents, and communications is relevant only to their arguments in opposition to Defendants' asserted affirmative defense based on the Exemption.

7. For example, during a November 4, 2022 global meet and confer, Defendants sought to confirm their understanding of the relevance of requests for production concerning admissions and development practices. Exhibit D (letter memorializing global meet and confer conferences) at 3. Plaintiffs agreed the relevance of such requests was based solely on the applicability of the statutory 568 Exemption (i.e., whether each school was need blind during its membership in the 568 Presidents Group). *Id.*

4

8. On November 23, 2022, Plaintiffs' counsel emailed Defendants' counsel to request that Defendants identify custodians in their President and Development offices. Plaintiffs claimed to require this discovery to "establish a link between donations and admissions" and cited four hypothetical examples of communications that Plaintiffs speculate could exist among these offices demonstrating that donations influenced admissions. Exhibit E (Nov. 23, 2022 email from R. Gilbert to counsel for Defendants). The parties discussed this issue during global meet and confer sessions on November 28, and November 30, 2022. At that time, Plaintiffs' counsel explained that development custodians are relevant to a determination of whether the 568 Exemption applies. Ex. D at 4. Plaintiffs also cited the possibility that Presidents' Offices could be involved in admissions decisions tied to donations. *Id.*

9. During the global meet and confer process, Plaintiffs' counsel also confirmed that numerous individual requests for production are relevant to the applicability of the 568 Exemption, including those seeking to establish a link between donations and admissions. *See id.* at 5-6 (RFPs 20, 21, 61, 62, 63, 80, 124, 128, 131).

10. Likewise, during individual meet and confer sessions and related correspondence, Plaintiffs' counsel made clear that admissions- and development-related discovery concerns Plaintiffs' effort "to prove that donations by wealthy families influenced admissions decisions, in violation of Section 568's requirement that *all* applicants be admitted 'without regard to the financial circumstances of the student involved or the student's family.'" *E.g.*, Exhibit F (Dec. 31, 2022 email from R. Gilbert to counsel for Dartmouth) at 2-3; Exhibit G (Dec. 30, 2022 email from R. Raymar to counsel for Columbia) at 1; *see also* Dkt. 255 at PageID 2974 (discussing Plaintiffs' request for development records as necessary "to establish a link between donations and admissions").

11. On January 4, 2023, at 10:30 a.m. Central time, counsel for Defendants Brown, Columbia, Dartmouth, Northwestern, Notre Dame, and Yale (the "Moving Defendants") held a telephonic meet and confer with Plaintiffs' counsel and advised of the Moving Defendants' intention to drop the Exemption defense in their answers to Plaintiffs' Second Amended and Supplemental Complaint.[1] Counsel for the Moving Defendants explained that in light of this decision, document requests and search terms related to admissions and development are irrelevant and disproportionate. During that call, Plaintiffs' counsel (Mr. Normand) stated that he understood the Moving Defendants' position on burden and proportionality and suggested that it may be possible to gather the evidence Plaintiffs desire regarding other Defendants' entitlement to the Exemption through more limited discovery. Plaintiffs' counsel indicated that they would consider the Moving Defendants' position and revert.

12. On January 5, 2023, counsel for the Moving Defendants provided Plaintiffs' counsel by email a list of 71 document requests and associated search terms that are no longer relevant in light of the Moving Defendants' decision not to assert the Exemption defense. Since providing that list, the Moving Defendants identified two additional document requests that Plaintiffs' counsel previously agreed were relevant to the Exemption (RFPs 61 and 63), *see supra* ¶ 9, as well as several, additional at-issue search terms. With the exception of these recently-identified requests and search terms, the list provided to Plaintiffs' counsel on January 5 was identical in substance to Exhibit C.

---

[1] The following attorneys participated in the January 4, 2023 meet and confer: for Plaintiffs, Edward Normand, Peter Bach-y-Rita, and Richard Cipolla; for Brown, Jon Roellke and Noah Kaufman; for Columbia, Amy Van Gelder and Laura Bernescu; for Dartmouth, Terri Mascherin, Ishan Bhabha, Douglas Litvak, Lina Powell, and Casey Carlson; for Northwestern, Scott Stein, Benjamin Brunner, and Kathleen Carlson; for Notre Dame, Sarah Kirkpatrick and Cole Wintheiser; and for Yale, Chuck Loughlin, Benjamin Holt, and Holden Steinhauer.

13. On January 10, 2023, Plaintiffs' counsel provided defense counsel with a draft of Plaintiffs' portion of the joint status report, which set out Plaintiffs' position that withdrawal of the Exemption defense does nothing to change the breadth of discovery that is relevant and proportional to this case. Specifically, Plaintiffs argued that broad discovery into the Moving Defendants' admissions and development practices remains necessary and declined to curtail their requests in any respect. Plaintiffs' counsel confirmed that this draft set forth their response to the January 4 meet and confer and January 5 email.

14. On January 11, 2023, at 3:00 p.m. Central time, counsel for the Moving Defendants held a second telephonic meet and confer with counsel for Plaintiffs.[2] During that conference, counsel for the Moving Defendants suggested that the parties may be at an impasse if Plaintiffs were unwilling to compromise on the scope of admissions- and development-related discovery sought from the Moving Defendants. In response, counsel for Plaintiffs stated that they were not in agreement amongst themselves on whether to offer any compromise. Plaintiffs' counsel agreed to continue to discuss amongst themselves and confirm their position in writing on the morning of January 12, 2023.

15. On January 12, 2023, Plaintiffs' counsel sent an email to counsel for the Moving Defendants setting out their position, a true and correct copy of which is attached hereto as Exhibit H. In their email, Plaintiffs' counsel proposed that the Moving Defendants fully respond to at least 37 of the disputed requests for production, including producing all documents

---

[2] The following attorneys participated in the January 11, 2023 meet and confer: for Plaintiffs, Robert Gilbert, Robert Litan, Edward Normand, Peter Bach-y-Rita, and Richard Cipolla; for Brown, Jon Roellke and Noah Kaufman; for Columbia, Amy Van Gelder and Laura Bernescu; for Dartmouth, Terri Mascherin, Ishan Bhabha, Douglas Litvak, Lina Powell, and Casey Carlson; for Northwestern, Benjamin Brunner and Kathleen Carlson; for Notre Dame, Sarah Kirkpatrick and Cole Wintheiser; and for Yale, Chuck Loughlin and Benjamin Holt.

7

concerning: the Moving Defendants' formal and informal admissions policies and practices; enrollment management; the consideration of family income or family wealth in any way in admissions decisions; and substantial records from the Moving Defendants' development office or development databases. *See id.* Plaintiffs' counsel also insisted on the designation of University Presidents or development-related document custodians, and the depositions of witnesses Plaintiffs contend are involved in University development, including apex witnesses. *Id.* Troublingly, Plaintiffs' counsel also reserved the right to seek "full discovery" if they were dissatisfied with the information disclosed. *Id.*

16. On January 12, 2023, counsel for the Moving Defendants responded to this email, pointing out that, because Plaintiffs continued to seek extensive discovery (and reserved their right to seek all discovery), Plaintiffs' proposal did not adequately address the Moving Defendants' proportionality concerns. *See* Ex. H. Counsel for the Moving Defendants indicated that the Moving Defendants would seriously consider providing limited testimony and responses to written discovery in lieu of responding to the at-issue document requests; however, because the Moving Defendants understood Plaintiffs' January 12, 2023 email to represent their "bottom line proposal" it appeared the parties would be unable to resolve their dispute.

17. Plaintiffs' counsel did not respond to this email, but continued to assert entitlement to broad admissions- and development-related document discovery from the Moving Defendants in subsequently exchanged drafts of the contemporaneously filed Joint Status Report.

18. The parties are therefore at an impasse regarding the issues raised in the Motion for Protective Order.

8

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of January 2023, at Chicago, Illinois.

By:*/s/ Amy L. Van Gelder*
Amy L. Van Gelder

9