# EXHIBIT D

Defendants' Letter to Plaintiffs, dated December 1, 2022

LAW OFFICES
**WILLIAMS & CONNOLLY** LLP®

SARAH F. KIRKPATRICK
(202) 434-5958
skirkpatrick@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024
(202) 434-5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

December 1, 2022

**Via Electronic Mail**

Ted Normand
Freedman Normand Friedland
99 Park Avenue, Suite 1910
New York, NY 10016

Robert Gilbert
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004

   Re:  *Carbone, et al. vs. Brown University, et al.*, 1:22-cv-00125

Counsel:

We write to memorialize the parties' six global meet and confers regarding Defendants' responses to Plaintiffs' First Set of Requests for Production.[1] Those meetings were held on November 4, November 11, November 16, November 18, November 28, and November 30, 2022.

  **1.**  **Relevant Time Period**

The parties discussed the relevant time period issue at the outset of the first global meet and confer call, on November 4th, again during their November 16th conversation, and then returned to the issue on the sixth call, on November 30th.

**1994-2003 Time Period**. At the outset of the meet and confer process, Defendants inquired about the relevance of documents dated from 1994- 2003, in light of the Amended Complaint allegation that Defendants first implemented the Consensus Methodology in 2003. Defendants also repeated their objection that Plaintiffs' request for documents going back to 1994 is overbroad, burdensome, and disproportionate to the needs of the case. Plaintiffs indicated they are seeking information

---

[1] Defendants' responses and objections to Plaintiffs' Second Set of Requests for Production are not yet due, so the parties have not met and conferred on those.

WILLIAMS & CONNOLLY LLP

December 1, 2022
Page 2

from 1994-2003 because such documents are relevant to: (1) the formation of the 568 Presidents Group; (2) the legislative history and passage of the 568 Exemption; and (3) the "before" period for the purpose of calculating damages. Defendants agreed to consider Plaintiffs' arguments but noted that they have serious concerns regarding both the relevance of documents from this time period and the burden and disproportionality of producing documents for such a lengthy period before the purportedly wrongful conduct is alleged to have begun.

**Post-2003 Time Period**. For the period after the creation of the Consensus Methodology, Defendants identified two general categories of potentially relevant documents: (1) the availability of the 568 Exemption; and (2) the "core antitrust conduct," namely, the development and application of the Consensus Methodology and its effect on financial aid decisions. Plaintiffs generally agreed that those two issues are at the "heart" of the case. Defendants explained that they have serious burden and proportionality concerns with respect to collecting documents spanning a 19-year time period, and noted that most Defendants have agreed to produce documents from 2016-present based on the 4-year statute of limitations plus a 2-year "before" period. Defendants invited Plaintiffs to think about narrowing the requested time period for at least some categories of documents, and to consider the competing considerations of relevance and burden by topic rather than holistically, so that there could be some areas of compromise. Plaintiffs responded that they would give this further thought.

Plaintiffs responded to this conversation by email, on November 21st and November 27th. In those emails, Plaintiffs reiterated their view that a 28-year date range was appropriate and proportionate, based on the Court's decision that a statute of limitations defense could not be adjudicated on the pleadings. Nevertheless, Plaintiffs identified 9 of their 173 RFPs for which they were willing to narrow the date range of the documents or data sought (RFPs 8, 9, 10, 15, 36, 56, 79, 152, and 153). By this letter, Defendants confirm that the narrowed date range for these nine RFPs are helpful progress and that, as described below (and subject to the caveats described below), Defendants are willing to conduct a reasonable search for and produce responsive documents (consistent with their written responses and objections) within these revised date ranges.

Defendants responded to these proposals on the November 28th call. At the outset, Defendants noted that one group of schools have unique date-range concerns (particularly related to the dates of membership in the 568 Group), and reiterated that Plaintiffs would need to speak to counsel for each of those schools individually.[2] A second group of schools offered to produce structured data (i.e., data being extracted from structured databases) within Plaintiffs' revised requested date range insofar as it exists in electronic form and is reasonably accessible in their current Admissions and Financial Aid databases, subject to the parties reaching agreement on the scope of the data to be provided and each school's written responses and objections and ongoing conferral with Plaintiffs about the availability and burden of such productions.[3] For unstructured data (i.e., documents and information collected from custodial and non-custodial repositories, such as email and

---

[2] These are Penn, Brown, Emory, Chicago, Yale, Caltech, Vanderbilt and Johns Hopkins.
[3] All remaining Defendants (not listed in footnote 2) fall within this group.

WILLIAMS & CONNOLLY LLP

December 1, 2022
Page 3

electronically stored documents) between January 1, 2003 and January 9, 2022, the same group of Defendants expressed their willingness to meet and confer individually to discuss what documents or sources of documents exist and are reasonably accessible for the identified custodians and repositories, taking into account each school's particular concerns about burden and proportionality. Insofar as Plaintiffs continue to request production of unstructured data before 2003, each Defendant continues to object based on relevance, but they are willing to meet and confer about specific requests or specific categories of documents for which production of earlier documents might be possible and appropriate.

### 2. Admissions & Donor-Related Requests and Custodians

**Admissions and Development RFPs**. During the first global meet and confer, the parties discussed Defendants' objections related to the many RFPs seeking documents concerning admissions policies and practices, donors and donations, and the (purported) intersection between the two. Defendants first sought to confirm their understanding of the relevance of these documents to the litigation, which Plaintiffs agreed was based solely on the applicability of the statutory 568 Exemption (i.e., whether each school was need blind during its membership in the 568 Group). Plaintiffs agreed that the discovery they seek into admissions practices, donors and development efforts because of its relevance to the 568 Exemption. They also explained that they intend to show, on a student-by-student basis, who was admitted and why, and how these specific admissions decisions were connected to the applicants' financial circumstances.

Defendants proposed an alternative approach whereby Plaintiffs focus first on the general policy or approach to admissions, rather than individual applications. Plaintiffs responded that they took an aggregated approach in their second set of RFPs (served on November 7, 2022), but reiterated that where they lack a "smoking gun," they intend to show the connection between a donation and an individual student's acceptance at a school by comparing that student's qualifications and credentials to those of other admitted students. Defendants stated their view that this approach appears to be both cumulative and disproportionately burdensome, and requested that Plaintiffs consider some options for reducing the burden. Defendants proposed as one possible method to engage in staged discovery, starting with aggregated information and discovery into each school's general approach to admissions, and then considering individualized application discovery if and where necessary. Plaintiffs said they would consider Defendants' proposal.

Plaintiffs ultimately responded by email on November 22nd, by revising their definition of the word "Donation" to include a threshold level of $50,000 (affecting 10 RFPs), but otherwise did not respond to Defendants' concerns about the relevance and proportionality of the more than 45 RFPs relating to these topics.

**Presidents' Office and Development Office Custodians**. On November 23rd, Plaintiffs sent an email to all Defendants reiterating their view that each Defendant should identify custodians and non-custodial document sources from within their President's Office and Development Office. The parties discussed the issue during their fifth meet and confer conversation, and again at their sixth conference, on November 28th and 30th, respectively.

**WILLIAMS & CONNOLLY**LLP®

December 1, 2022
Page 4

Plaintiffs stated that they are seeking documents from custodians within each Defendant's President's Office because: (1) the 568 Group was called the 568 *Presidents* Group, so Plaintiffs assume (without offering any factual support) that each Defendant's President's Office must have been involved in the 568 Group; and (2) the Presidents' Offices could be involved in admissions decisions tied to donations. Defendants reiterated their view that each school is situated differently on this front (for instance, many Defendants' President's Offices were never involved in the 568 Group and employees of the financial aid department participated). Accordingly, Defendants concluded that global negotiation of the appropriate selection of custodians from the President's Office of each Defendant was not possible.

As to the Development Office custodians (and custodians from the President's Office who are involved with development efforts), Plaintiffs explained that these custodians are relevant to a determination of whether the 568 Exemption applies. Plaintiffs provided a number of hypothetical examples of the types of documents they seek in relation to the 568 Exemption, such as the possibility of oral communications between a Development officer and Admissions, reflected in an internal Development Office record, or communications between or within a President's Office and the Development Office about whether a specific donation was sufficiently large to warrant involvement with the admissions process.

Defendants explained on November 28th that selection of custodians is an inherently school-specific issue, for which global-level negotiations are not likely to be productive. Each school is differently situated, in terms of the level of involvement, role, and interaction of the President's Office and/or Development Office in the Admissions process. Defendants reiterated their position that documents held by the Admissions departments will provide the best, most efficient and most proportional avenue for discovery into the applicability of the 568 Exemption, because any consideration of financial circumstances in an admissions decision would likely be reflected in records of the Admissions Office. Defendants also noted that the individual school-specific meet and confer process has been (and remains) ongoing and has been productive. Defendants have explored various possible options for further compromise at a global level, but those efforts have been unavailing.

Despite Plaintiffs' apparent desire to engineer an unnecessary dispute on this issue, Defendants remain willing to consider compromises on their identification of appropriate custodians, as part of the ongoing meet and confer process. Plaintiffs, however, have expressed their unwillingness to discuss the issue separately with each individual Defendant, in favor of bringing the issue to the Court immediately. Defendants urged Plaintiffs to continue engaging in that process in good faith.

### 3. <u>Structured Data</u>

During the second global meet and confer (on November 11), Defendants raised their general concern that the structured data requests would likely encompass thousands of separate data fields and would be extraordinarily burdensome to carry out. Defendants asked that Plaintiffs identify the data fields they actually need and provide a narrowed proposal. Plaintiffs agreed to do this, and initially responded with a proposal by email on November 27th. At the November 28 meet

WILLIAMS & CONNOLLY LLP

December 1, 2022
Page 5

and confer, Defendants explained that Plaintiffs' proposal created confusion because certain RFPs (and their subparts) were narrowed, but other RFPs continued to contain catch-all type requests. Because each Defendant will be extracting and producing data from a Financial Aid database and an Admissions database, streamlining the requests to identify what types of data are needed from each database would be more productive. Plaintiffs agreed to do so, but did not provide that updated proposal until yesterday, November 30th. Defendants are now evaluating that proposal and will respond as soon as practicable.

4. **Clarifications as to Specific RFPs**

During the first five meet and confer conversations, Defendants and Plaintiffs discussed various questions and clarifications relating to 24 separate RFPs.

- **RFP 20**. Plaintiffs stated that this request is meant to identify documents that show a relationship between donations and admissions. Defendants observed that a donation made after an admissions decision would be irrelevant under Plaintiffs' theory of the case. Plaintiffs explained that such documents, even as to post-admission donations, are circumstantial evidence of consideration of financial circumstances during the admissions process.

- **RFP 21**. Plaintiffs stated that documents responsive to this request are relevant insofar as they create a nexus between donations and admissions, which is relevant to the applicability of the 568 Exemption. Defendants noted that RFPs 20 and 21 seek information that is cumulative and disproportionate because both requests seek information regarding whether the schools are need-blind.

- **RFP 22**. Plaintiffs confirmed that, for this request, they intend only for each school to search for documents relating to individuals listed on Appendix A in association with that school, and not for all documents relating to all persons included on Appendix A.

- **RFP 49**. Plaintiffs acknowledged that this request is broad, but stated that the information sought is relevant to the pro-competitive justifications of using the consensus methodology and whether there are less-restrictive means to achieve the same ends.

- **RFP 50**. Plaintiffs confirmed that if each Defendant's interpretation of cost of attendance is synonymous with the publicly available information concerning cost of attendance, then Defendants need not provide school-specific information responsive to this request.

- **RFP 57**. Plaintiffs stated that materials responsive to this request are relevant to market definition, but agreed to consider limiting this request to "documents sufficient to show." By email on November 23, Plaintiffs agreed to that limitation.

- **RFPs 61, 62 and 63**. Plaintiffs stated that documents responsive to these requests are relevant to the 568 Exemption. Plaintiffs confirmed, with respect to Requests 61 and 62,

WILLIAMS & CONNOLLY LLP

December 1, 2022
Page 6

       that they are seeking documents concerning differing admission standards for students eligible to receive Pell grants, students using non-traditional applications, and students applying for early admission. For Request 63, Plaintiffs agreed by email on November 23 to confine the request to documents "sufficient to show" certain policies or procedures.

- **RFP 67**: Plaintiffs explained that this request relates to their price-fixing theory, on the premise that information about financial aid packages might have been shared through the 568 Group.

- **RFP 69**. Plaintiffs stated they would accept an aggregated survey result and/or analysis in response to this request, rather than individual survey responses from individual students.

- **RFPs 73 & 74**. Plaintiffs acknowledged that RFP 73 is too broad, and they followed up by email on November 23 with a narrowed version of the Request. Plaintiffs also agreed by the same email to limit RFP 74 to "documents sufficient to show," rather than requesting each individual document that refers to the US News & World Report rankings.

- **RFP 80**. Plaintiffs stated that this request seeks applications containing information relevant to the 568 Exemption (i.e., information from which it could be inferred that a Defendant took financial circumstances into account with respect to admissions). Plaintiffs acknowledged that they have the burden to propose search terms for this request.

- **RFP 124**. Plaintiffs stated that this request again seeks evidence related to the 568 Exemption (i.e., evidence of assessments conducted by the Defendants that show (1) a prospective donation is relevant in admissions, regardless of the size of the donation, or (2) a student will not require financial aid).

- **RFP 125**. Plaintiffs acknowledged the overbreadth of this request. By email on November 23, they narrowed this request to documents sufficient to identify the persons at Defendant schools who are responsible for ensuring there is a critical mass of students who do not require financial aid.

- **RFP 128**. Plaintiffs stated that documents responsive to this request would include documents for a student admitted in 2003 whose parents made a donation in 2015 and communicated with the Development Office about the donation. Plaintiffs agreed, however, that they are seeking a single consolidated file of communications with a donor that may span many years, and recognized that absent such a consolidated file, searching for communications many years after an admissions decision was made could be burdensome. Plaintiffs also confirmed that their basis for this request is the applicability of the 568 Exemption.

- **RFP 131**. Plaintiffs agreed to try to narrow this request. Plaintiffs explained that this request is relevant to the 568 Exemption, and noted that the request is intended to seek communications with applicants outside the regular admissions process that might suggest

WILLIAMS & CONNOLLY LLP

December 1, 2022
Page 7

>   those applicants received a "thumb on the scale" in admissions because of legacy, donations, or financial circumstances. By email on November 23, Plaintiffs revised this request to seek documents sufficient to show policies, procedures, or practices whereby the President's Office or Development Office communicates with Applicants.

- **RFP 139**. Plaintiffs stated that this request seeks documents regarding whether Defendants shared the information described in the request as part of their membership in the 568 Group. In particular, Plaintiffs are seeking information showing that Defendants were aware that certain early admissions programs limit financial aid, and that Defendants were communicating with each other about the effect of such admissions on financial aid.

- **RFPs 148 & 149**. Plaintiffs confirmed that these requests are "go get" requests seeking the information Defendants relied on in asserting the mitigation of damages defense.

- **RFP 151**. Plaintiffs stated that their request concerning merit aid is relevant to the history of the allocation of aid, the rule of reason analysis, and the extent to which merit aid could affect the available pool of need aid from year-to-year. Plaintiffs further offered that documents concerning merit aid are relevant to the extent that schools use merit aid to compete for top students.

- **RFP 157**. Plaintiffs agreed to send Defendants the announcements referenced in this request.

- **RFP 163 & 164**. Plaintiffs confirmed that RFP 163 and the second half of 164 seek documents concerning Defendants' lobbying efforts to renew the 568 Exemption and the importance of the 568 Exemption to the schools. Plaintiffs further confirmed that the first half of RFP 164 seeks documents produced in government investigations concerning the same claims that Plaintiffs have brought in this action, to the extent any such documents exist.

If you believe we have not accurately reflected the substance of our discussions or that we have omitted something material, please let us know immediately, and specify what you believe is inaccurate or has been omitted. For the avoidance of doubt, to the extent this letter does not discuss any position taken by Plaintiffs, that is not an indication that Defendants agree with such position.

Sincerely,

*Sarah Kirkpa*

Sarah F. Kirkpatrick