# EXHIBIT E

Plaintiffs' Email to Defendants, dated November 23, 2022

**Van Gelder, Amy (CHI)**

| | |
|---|---|
| **From:** | Robert Gilbert <rgilbert@gilbertlitigators.com> |
| **Sent:** | Thursday, November 24, 2022 1:20 AM |
| **To:** | Kirkpatrick, Sarah; Carbone_Defs_Service@listserv.whitecase.com |
| **Cc:** | 568 Litigation |
| **Subject:** | FW: The President's Office and Development Office Are Custodians of Documents |

**External Email - Do Not Click Links or Attachments Unless You Know They Are Safe**



P.S. to All: I have corrected a typographical error in paragraph 3 below, in order to conform the noun and verb to plural: "These Defendants' positions also ignore…"


Robert D. Gilbert
Managing Partner
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
rgilbert@gilbertlitigators.com
646-448-5269 work
203-645-0055 cell
www.gilbertlitigators.com



---------- Forwarded message ---------
From: **Robert Gilbert** <rgilbert@gilbertlitigators.com>
Date: Wed, Nov 23, 2022 at 2:34 PM
Subject: The President's Office and Development Office Are Custodians of Documents
To: Kirkpatrick, Sarah <SKirkpatrick@wc.com>, Carbone_Defs_Service@listserv.whitecase.com <Carbone_Defs_Service@listserv.whitecase.com>
CC: 568 Litigation <568_Litigation@rochefreedman.com>


Dear Sarah et al.,

      We write to address an issue that has arisen across at least most Defendants regarding custodian and non-custodial source disclosures. Plaintiffs have repeatedly requested that Defendants include their President's Office and Development Office (at certain universities, referred to as the Advancement Office) as

1

sources for custodians of documents, and multiple Defendants have declined to do so. Several individual Defendants have suggested that this issue should be resolved at the general meet and confers concerning discovery, at which you have taken the lead for the Defendants.

Judge Kennelly has already recognized the vital importance of donation records to Plaintiffs' case:

> **So the whole case -- maybe not the whole case, but a significant part of the case is exactly this, the contention that admissions are tied to donations, or at least that's a significant part of the case.** And so . . . the kind of thing I just said is not going to happen, that basically says the plaintiffs can't get that, therefore, the case is over, then **we have to come up with a way of doing that**.

Oct. 26, 2022 Hr'g Tr. 36:24-37:6 (emphasis added). Judge Kennelly also made it clear that Plaintiffs are entitled to discovery "which would allow somebody to say, okay, **this is a donation record that relates to this student over here and so we can determine whether that had any effect on whether that person got admitted or not**." *Id*. 36:7-14 (emphasis added).

The essential function of a Development Office is to solicit, communicate about and keep documents concerning the very donations that Judge Kennelly addressed. For Defendants to say they will not identify and produce custodial sources of documents from the Development Office is plainly inconsistent with the Court's guidance. Similarly, Defendants have taken at least a majority position with respect to the President's Office that it is not an appropriate custodial source for donations. This position disregards, for example, paragraph 183 in the Amended Complaint which states: "A past President of Vanderbilt, E. Gordon Gee, stated in 2019 that any president under 'truth serum' would concede that donor connections make a difference in admissions." These Defendants' positions also ignore the many instances in the public record in which Defendant presidents have in effect gushed about their fundraising success with large donations. Defendants' rationale for these positions, as we understand it, is that the relevance of any such documents is nonexistent until it affects an Admissions decision, and thus must necessarily be contained within the productions of the existing pool of Admissions custodians and noncustodial sources identified by each Defendant.

Plaintiffs have repeatedly explained in numerous meet-and-confers with individual Defendants, and in a general meet-and-confer with all Defendants, that Defendants' rationale has no merit. It is also a barrier to the very discovery that Judge Kennelly has made clear is relevant and should be produced. Plaintiffs have repeatedly provided multiple examples of highly relevant documents in the Development Office and the President's Office that would not be available from Admissions, including the following:

1. Defendants' position assumes the existence of some written evidence, such as an email from the Development office to the director of Admissions saying that "Applicant X's uncle just donated $500k, so please admit X." These may exist, and Plaintiffs would naturally want to see them, but this assumption ignores every scenario in which Development had an oral communication with Admissions, and the real proof is in the documented communications between the Development Office and the Donor or between the Development Office and the President's Office.

2. A written communication between the President's Office or Development Office and Admissions could be as simple as, "Please admit X." In such a situation, there would very likely be preceding communications within and from those two offices (to each other and/or the Donor), and received by those offices that would not be communicated to Admissions. Plaintiffs see these communications as the potential smoking guns; a one-sentence email to Admissions is not a substitute. The communications from, to and among the

Donor and the Development/President's office before anything is communicated to Admissions are far more informational, probative and relevant than, "Please admit X."

3. Internal deliberations in the President's Office or Development Office in which a donation was deemed insufficiently large to merit intervention with Admissions, or multiple donations were deemed insufficiently large to warrant such intervention, and thus by definition no record would exist with Admissions, but the determinations of insufficiency would be additional "smoking guns" to support Plaintiffs case.

4. Internal score cards, not shared with Admissions, that note how many candidates the Development Office recommended to the Admissions office in an admissions cycle or other period of time, and how many were admitted.

Contrary to Judge Kennelly's instructions, the attempts by at least a majority of Defendants to exclude these offices as custodial and non-custodial sources of documents deprive Plaintiffs of an opportunity to establish a link between donations and admissions, and thereby make our case. In addition, as referenced above, multiple Defendants have stated in individual meet-and-confers that these two issues must be resolved by Plaintiffs with the entire group of Defendants. In light of the December 2 deadline for the Parties to inform the Court of any issues with the Parties' custodial and non-custodial source disclosures, kindly advise us in the general meet-and-confer on November 28 whether all Defendants will produce both custodians and non-custodial sources of documents from the President's Office and Development Office at every Defendant university, or whether this issue is ripe for intervention by the Court. Thank you.

Best,

Bob

Robert D. Gilbert
Managing Partner
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
rgilbert@gilbertlitigators.com
646-448-5269 work
203-645-0055 cell
www.gilbertlitigators.com