# EXHIBIT 2

Declaration of Jon R. Roellke

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW CORZO, et al., individually and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>BROWN UNIVERSITY, et al.,<br><br>  Defendants. | Case No. 1:22-cv-00125<br><br>Honorable Matthew F. Kennelly<br><br>Magistrate Gabriel A. Fuentes |

**DECLARATION OF JON R. ROELLKE IN SUPPORT OF MOTION FOR PROTECTIVE ORDER BY DEFENDANTS BROWN UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, TRUSTEES OF DARTMOUTH COLLEGE, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, AND YALE UNIVERSITY**

I, Jon R. Roellke, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a member of the bar of the District of Columbia and have been admitted *pro hac vice* to practice before this Court. I am a partner at the law firm of Morgan Lewis & Bockius LLP and I serve as counsel for Defendant Brown University ("Brown"). I make this Declaration in Support of the Motion for Protective Order (the "Motion for Protective Order") submitted by Defendants Brown, The Trustees of Columbia University in the City of New York, Trustees of Dartmouth College, Northwestern University, University of Notre Dame Du Lac, and Yale University (the "Moving Defendants"). This declaration is based on my personal knowledge and information provided to me by Brown and by the third-party e-discovery and data analytics vendors that we have engaged to assist Brown in this matter.

2. In Exhibit C to the Declaration of Amy Van Gelder in Support of the Motion for Protective Order (the "Van Gelder Declaration"), the Moving Defendants identified 73 requests for production (the "Disputed Requests") and numerous associated search terms (the "Disputed Search Terms") aimed, in whole or in part, at the Section 568 statutory exemption to the Sherman Act (the "Exemption"). These Disputed Requests and Disputed Search Terms are irrelevant and disproportionate now that the Moving Defendants have withdrawn the Exemption defense.

3. The burdens and costs of responding to the Disputed Requests are significant. The Disputed Requests implicate both structured admissions data as well as custodial and noncustodial documents from various Brown departments. For Brown, responding to the Disputed Requests, including collecting data and documents, deidentifying data, and reviewing and redacting documents, would require the expenditure of thousands of hours of attorney, client, and/or vendor time, and the estimated costs associated with this work would be well in excess of

*one million dollars*. The following table summarizes the anticipated costs, each of which is described in additional detail below:

| Category of Expense | Cost Estimate |
|---|---|
| Review, redaction, and deidentification of custodial and noncustodial documents for potential responsiveness to Disputed Requests | At least $500,000 for review, plus at least $312,525 for redaction, plus as-yet unknown costs for deidentification |
| Anonymization and production of structured admissions data | At least $24,000 in vendor costs for anonymization, plus as-yet unknown costs to collect and produce |
| Review, analysis, and potential deidentification of donor records | As-yet unknown, but expected to require many hundreds of hours of attorney and contractor time |

4. ***Custodial and Noncustodial Documents.*** The parties are continuing to negotiate and have not finalized custodians, noncustodial data sources, and search terms. To date, Brown has proposed four custodians (two from Financial Aid and two from Admissions) and two departmental shared drives (Financial Aid and Admissions) as sources of information. Brown proposed the Admissions custodians and departmental drives for the sole reason that they may be responsive to the Disputed Requests and relevant to the Exemption. As reflected in the following table, application of the most recent version of all of the search terms to all of Brown's identified custodial sources yields **661,797** documents that must be reviewed, inclusive of families. However, elimination of the Disputed Search Terms would reduce the number of documents that must be reviewed by nearly 30% to **474,035**. Elimination of the Admissions custodians and noncustodial sources that were included solely as a result of the Exemption would result in a further reduction to **354,539** documents.

| Document Sources & Search Terms | Document Hits (Including Families) |
|---|---|
| All current custodians and full set of search terms, including the Disputed Search Terms | 661,797 |
| All current custodians, excluding the Disputed Search Terms | 474,035 |

3

| | |
|---|---|
| Only Financial Aid custodians, excluding the Disputed Search Terms | 354,539 |

Thus, in sum, inclusion of the Disputed Search Terms and the custodians and noncustodial sources that are made necessary by virtue of the Disputed Requests and the Exemption increases the universe of documents that Brown must review for responsiveness, privilege, and other issues by more than **300,000** documents. Primary, first-level review of these documents is anticipated to cost approximately $330,000. For documents that are determined to be responsive or potentially responsive, additional costs for second-level and quality control review will be incurred as well. Conservatively, we estimate that the total costs for reviewing these additional approximately 300,000 documents will exceed **$500,000**. Additional costs will be required to complete complex redaction work and the insertion of Identification Codes into documents mentioning students or applicants for admission. These additional costs for redaction and deidentification are discussed in the following Paragraphs 5 and 6.

5. The costs and burdens associated with redacting and inserting Identification Codes into documents that are responsive to the Disputed Requests will be enormous. By way of just one example, the document attached hereto as <u>Exhibit A</u> is a communication sent to Brown's Office of College Admission by an undergraduate applicant in 2012 providing a basic update on the applicant's recent accomplishments. Brown receives hundreds or potentially thousands of similar communications from applicants every year. This document is captured by the following Disputed Search Term because it refers to the applicant's placement on his high school's "Dean's List:"

**((dean\* OR president\*) w/3 list) OR "interest list" OR "z list" OR "priority list" OR "VIP applic\*"**

4

Furthermore, this document is responsive to a Disputed Request, specifically Request No. 131, which calls for "[a]ll Documents Concerning meetings, phone calls, or other communications other than Applicant Admissions interviews that took place or take place between or among Applicants and any of your faculty, staff, employees, or officers . . . ." Notably, while this document is captured by a Disputed Search Term and is plainly responsive to a Disputed Request, it is clearly of no probative value to any party's claims or defenses. As reflected in Exhibit A, this document would require extensive manual redaction of the applicant's name, email address, and other identifying information to comply with FERPA. Following the manual redaction process, a further manual process would be required to replace the redacted information with an anonymized code that would permit identification of the applicant.

6. It took my colleague approximately five minutes to redact this document, and this does not include time that would be required to manually input the anonymized code. Conservatively, our preliminary estimate is that there are at least 50,000 documents that (1) are captured by a Disputed Search Term; (2) are responsive to a Disputed Request; and (3) would require a similar manual redaction and anonymization process. Using five minutes per document as a baseline estimate, this equates to approximately 4,167 hours of anticipated time merely for the redaction process. If required to do so, Brown would rely on contract attorneys to perform this work. They charge a standard rate of $75 per hour for redaction work. That would amount to costs to Brown of approximately **$312,525**, plus additional as-yet unknown costs for manual insertion of the anonymized code, quality control, and second-level review.

7. ***Structured Admissions Data.*** The Disputed Requests call for production of structured admissions data for the years 1998 to 2022. Brown maintains admissions data for the

period of 2007 to 2022. Within this period, Brown's data reflects approximately 500,000 individual applicant records, each of which is associated with hundreds or potentially thousands of data fields. Prior to production, Brown would need to engage a data analytics firm to deidentify this data and substitute Identification Codes in place of personal identifying information, as required by FERPA and the Confidentiality Order in this matter. *See* ECF No. 254 ¶ 8(d). We expect that the work of the data analytics firm to perform these tasks will cost Brown approximately $24,000. This does not include additional, as-yet unknown costs that would be associated with gathering the data from Brown and producing it in discovery.

8. ***Development Data Analysis.*** The Disputed Requests also call for Brown to analyze and draw conclusions regarding development data for at least the years 1998 to 2022. Brown maintains development data for this period. In particular, several of the Disputed Requests call for Brown to identify family members of applicants who have donated, or who are capable of donating, $50,000 or more on a one-time or cumulative basis, and then produce documents or communications related to those donors and/or their family members. *See* Van Gelder Decl., Ex A, Request Nos. 20, 128, 129, Ex. B, Request No. 4. Brown's admissions and development databases are separate, and do not communicate with one another. Thus, there is not a reliable, automated way to discern whether family members of donors were applicants for admission. Likewise, Brown does not track donors who are merely "capable" of donating at certain levels.

9. Responding to the Disputed Requests would require Brown to undertake a manual process of attempting to match development and admissions records, which we expect—given the significant volume of admissions and development data—would require many hundreds of hours of attorney and contractor time, all at considerable expense. Moreover, production of the

related records, if any, would require detailed redaction work to ensure compliance with FERPA, including insertion of Identification Codes to permit matching to deidentified admissions records.

10. ***Conclusion***. In sum, although our analysis is ongoing, my preliminary, conservative estimate is that review, redaction, and deidentification of the documents and data called for by the Disputed Requests will result in direct costs to Brown well in excess of ***$1,000,000***.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 13, 2023                    By: */s/ Jon R. Roellke*
                                                Washington, D.C.

                                            *Counsel for Defendant Brown University*

**Exhibit A**

Exemplar Document Responsive to Disputed Requests

**Sent:** Mon 5/7/2012 9:20:48 AM (UTC-04:00)
**Subject:** Re: ▮▮▮▮▮ Transfer Application Updates
**From:** Admission <admission@brown.edu>
**To:** ▮▮▮▮▮

Dear ▮▮▮,

Thank for applying to Brown University. Compliments to you on your accomplishments. We will add it to your application file.

Best,
Office of College Admission
Brown University
www.brown.edu/go/admission
www.facebook.com/brownadmission


On Fri, May 4, 2012 at 5:31 PM, ▮▮▮▮▮ wrote:
> To Whom It May Concern,
>
> So sorry to be a bother again, but I just learned of one additional detail
> that may be useful to the admissions committee. Yesterday, I was given the
> information that I was on the Dean's List at ▮▮▮ and today was
> recognized at the "Honors Day" ceremony as one of the top students in my
> class in the natural sciences. I'm not sure if this would be helpful
> information to admissions, but if so I would love for it to be added to my
> file as well.
>
> I can also fax this information into Brown if that would be appropriate.
>
> Thank you!
>
> ▮▮▮
>
> Again, my identification information:
>
> ▮▮▮▮▮
>
> _____
> From: Admission <admission@brown.edu>
> To: ▮▮▮▮▮
> Sent: Thursday, May 3, 2012 7:17 AM
> Subject: Re: ▮▮▮▮▮ Transfer Application Updates
>
> Dear ▮▮▮,
>
> Thank for applying to Brown University. Compliments to you on your
> accomplishments. We will add it to your application file.
>
> Best,
> Office of College Admission
> Brown University
> www.brown.edu/go/admission

```
> www.facebook.com/brownadmission
>
>
>
>
> On Wed, May 2, 2012 at 4:47 PM, ███████████████████████ wrote:
>> Hello!
>>
>> I am a student that has applied for transfer admission to Brown
>> University.
>> Due to several developments this spring, there are a few details I would
>> like to add to my transfer application. These updates mostly concern my
>> activities and awards and will hopefully assist the selection committee to
>> more clearly understand what I've been up to this spring!
>>
>> I have attached these updates in a Microsoft Word document and would love
>> to
>> have them be added to my file. I will also fax this document to Brown
>> University (just in case!).
>>
>> Thank you for your help and I hope you're having a fantastic spring!
>>
>> ████
>
>
```