# EXHIBIT 3

2nd Declaration of Amy L. Van Gelder

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANDREW CORZO, et al., individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>       v.<br><br>BROWN UNIVERSITY, et al.,<br><br>       Defendants. | **Case No. 1:22-cv-00125**<br><br>**Honorable Matthew F. Kennelly**<br><br>**Magistrate Gabriel A. Fuentes** |

**SECOND DECLARATION OF AMY L. VAN GELDER IN SUPPORT OF MOTION FOR PROTECTIVE ORDER BY DEFENDANTS BROWN UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, TRUSTEES OF DARTMOUTH COLLEGE, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, AND YALE UNIVERSITY**

I, Amy L. Van Gelder, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a member of the bar of this Court and admitted to practice in this jurisdiction. I am a partner of Skadden, Arps, Slate, Meagher & Flom LLP and counsel for Defendant The Trustees of Columbia University in the City of New York ("Columbia"). I make this Declaration in Support of the Motion for Protective Order by Defendants Brown University, The Trustees of Columbia University in the City of New York, Trustees of Dartmouth College, Northwestern University, University of Notre Dame Du Lac, and Yale University (the "Motion for Protective Order"). This declaration is based on my personal knowledge, information provided by Columbia, and information provided by the vendor that Columbia engaged to assist with electronic discovery in this case.

2.      As set forth in Exhibit C to Declaration of Amy L. Van Gelder in Support of the Motion for Protective Order by Defendants Brown, Columbia, Dartmouth, Northwestern, Notre Dame, and Yale (the "Moving Defendants"), 73 of the requests for production served by Plaintiffs on all Defendants (the "Disputed Requests") and numerous associated search terms (the "Disputed Search Terms") are aimed, in whole or in part, at the Section 568 statutory exemption to the Sherman Act (the "Exemption"). In the Motion, the Moving Defendants explain that the Disputed Requests and Disputed Search Terms are irrelevant and disproportionate now that the Moving Defendants have determined to withdraw the Exemption defense.

3.      The burden and expense of responding to the Disputed Requests are significant. The Disputed Requests implicate custodial and noncustodial documents from various Columbia departments and members of the institution's leadership who are not central to the claims or defenses in this case, as well as various structured data. For Columbia, responding to the

2

Disputed Requests, including collecting data and documents, deidentifying data, and reviewing and redacting documents, would require the expenditure of thousands of hours of attorney, client, and/or vendor time and the estimated costs to Columbia associated with this work is expected to be well in excess of $1 million.

    4.    ***Custodial and Non-Custodial Documents.*** The parties are continuing to negotiate and have not finalized custodians, non-custodial data sources, and search terms. To date, Columbia has proposed and collected data from six custodians and two departmental shared drives (Admissions and Financial Aid). Columbia collected some of these sources, including at least one custodian, only because they may be responsive to the Disputed Requests and the Disputed Search Terms. As shown in the chart below, if each of these sources is included in the review and the Disputed Search Terms are used, Columbia's review population would be increased by more than 139,000 de-duplicated documents, including families (from 355,119 documents to 494,357 documents). If Columbia were to add its President and a single development office custodian to its sources of information—as Plaintiffs have claimed is necessary to respond to the Disputed Requests—Columbia's review population would further increase by more than 120,000 additional de-duplicated documents, including families.

| Document Sources | Document Hits Including Families |
|---|---|
| All currently proposed document sources *included*, but Disputed Search Terms *excluded* | 355,119[1] |
| All currently proposed document sources and Disputed Search Terms *included* | 494,357 |
| The Disputed Search Terms, all currently proposed document sources, and the President and one development custodian *included* | 615,112 |

---

[1]    This number would be further reduced if one or more of the proposed document sources relevant only to Disputed Requests were excluded.

3

Thus, adding both the Disputed Search Terms and the additional custodians Plaintiffs claim are necessary, would increase Columbia's review population by more than **259,000 additional documents**.[2] Review of just this subset of additional documents is conservatively estimated to cost between $500,000 to $700,000, including first- and second-level discovery vendor document review and standard quality control review by Skadden attorneys. These costs do not include the presently unknown costs associated with anticipated, complex redaction work to redact FERPA-protected information (including, potentially, inserting Identification Codes into documents mentioning students or applicants), or creation of a privilege log. Given the nature of this case and the number of documents likely involving individual students, a high volume of documents requiring redaction is expected. This would substantially increase the estimated costs, including requiring additional quality control review by Skadden attorneys.

5. ***Structured Admissions Data.*** The Disputed Requests call for the production of structured admissions data for the years 1998-2022. Columbia maintains admissions data for this time period. Within this time period, Columbia's data reflects records for more than 600,000 individual applicants to Columbia College and the Fu Foundation School of Engineering and Applied Science's undergraduate programs. (By contrast, during this same 1998-2022 time period, Columbia admitted only about 65,000 of these applicants, and offered financial aid to fewer than 30,000 of those admitted.) Admissions data is housed among three different systems, and each applicant's admissions records are associated with thousands of data fields. In addition to querying and extracting this voluminous data—which itself involves significant work—prior

---

[2] These numbers are based on the documents collected and search terms proposed to date. Columbia's document collection process is ongoing, as is the negotiation of document sources and search terms. Additional collections and the expansion of any proposed search terms would further increase these numbers.

4

to production, Columbia also would have to assess all admissions data fields to properly deidentify this data to comply with FERPA, as required by the Confidentiality Order. *See* Dkt. No. 254 ¶ 8(d). This process would require a contractor to match Columbia's admissions data against other Defendants' admissions data and generate a unique Identification Code for each applicant. *See id.* Then, to prepare the deidentified data for production, a Columbia vendor would substitute the Identification Codes for personally identifiable information in the complete data set.

      6.      ***Development Data Analysis.*** The Disputed Requests also call for Columbia to analyze and draw conclusions regarding development data for at least the years 1998-2022. Columbia maintains development data for this time period. In particular, several of the Disputed Requests call for Columbia to first identify family members of applicants who have donated, or who are capable of donating, $50,000 or more cumulatively, on a one-time or annual basis, and then produce documents or communications related to those donors and/or their family members. *See* Van Gelder Decl., Ex. A, Request Nos. 20, 128, 129, Ex. B., Request No. 4. Columbia's admissions and development databases are separate, and do not communicate with one another. Thus, there is not a reliable, automated way to discern whether family members of donors (or those "capable of donating $50,000 or more cumulatively, on a one-time or annual basis") were applicants for admission. Columbia's University-wide database for development records contains hundreds of thousands of records associated with individual donors. Responding to the Disputed Requests would require Columbia to undertake a manual process of attempting to match development and admissions records, which—given the volume of admissions and development data—could require hundreds of hours of attorney and/or contractor time, all at considerable expense. Moreover, production of the related records, if any, would require detailed FERPA-

5

related redaction work, including insertion of Identification Codes (otherwise, documents could not be matched to deidentified admissions records).

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of January 2023, at Chicago, Illinois.

By:*/s/ Amy L. Van Gelder*
Amy L. Van Gelder