# EXHIBIT 4

Declaration of Terri L. Mascherin

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW CORZO, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BROWN UNIVERSITY, et al.,<br><br>Defendants. | Case No. 1:22-cv-00125<br><br>Honorable Matthew F. Kennelly<br><br>Magistrate Gabriel A. Fuentes |

**DECLARATION OF TERRI L. MASCHERIN IN SUPPORT OF MOTION FOR PROTECTIVE ORDER BY DEFENDANTS BROWN UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, TRUSTEES OF DARTMOUTH COLLEGE, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, AND YALE UNIVERSITY**

I, Terri L. Mascherin, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a member of the bar of this Court and admitted to practice in this District. I am a partner at Jenner & Block LLP and counsel for Defendant the Trustees of Dartmouth College ("Dartmouth") in this case. I make this Declaration in Support of the Motion for Protective Order by Defendants Brown University, The Trustees of Columbia University in the City of New York, Trustees of Dartmouth College, Northwestern University, University of Notre Dame Du Lac, and Yale University (the "Motion for Protective Order"). This declaration is based on my personal knowledge, information provided to me by Dartmouth, and information provided to me by our electronic document discovery vendor.

2. As set forth in Exhibit C to Declaration of Amy Van Gelder in Support of the Motion for Protective Order, Defendants Brown, Dartmouth, Columbia, Northwestern, Notre Dame, and Yale (the "Moving Defendants"), 73 of the requests for production served by Plaintiffs on all Defendants (the "Disputed Requests") and numerous associated search terms (the "Disputed Search Terms") are aimed in whole or in part at the Section 568 statutory exemption to the Sherman Act (the "Exemption"). In the Motion, the Moving Defendants explain that those Disputed Requests and Disputed Search Terms are irrelevant and disproportionate now that the Moving Defendants have determined to withdraw the Exemption defense. The burden and expense of responding to the Disputed Requests are significant. Likewise, as discussed below, the use of document custodians from the Development and Admissions offices would substantially increase the burden and expense to Dartmouth, while documents from those sources are only relevant to the Exemption defense.

3. ***Documents and Custodians.*** There are several categories of documents and certain custodians that are no longer necessary for review because Dartmouth will not continue to assert the Exemption defense.[1] Although the parties have not reached agreement on the set of individuals whose documents will be reviewed and the scope of the review, Dartmouth collected documents from a total of nine individuals. Three of those individuals are from Dartmouth's Admissions and Development offices, and Dartmouth collected those documents before it decided not to assert the Exemption defense because they may be responsive to the Disputed Requests and the Disputed Search Terms. If these three custodians' documents are included in the review, and the Disputed Search Terms are used, the total number of documents to be reviewed more than doubles, from

---

[1] The parties' negotiations concerning search terms is ongoing.

247,666 to 655,134. The following chart reflects this information, as provided to us by our electronic document review vendor:

| Scenario | Document hits | Document hits and family members |
|---|---|---|
| Both the Disputed Search Terms and the three additional Admissions/Development custodians are excluded | 154,191 | 247,666 |
| Both the Disputed Search Terms and the three Admissions/Development custodians are included | 400,433 | 655,134 |

Thus, adding the three Admissions and Development custodians and applying the Disputed Search Terms would require Dartmouth to review **407,468 additional documents**.[2]

4. Further, these additional documents are likely to contain FERPA-protected information, which will result in complex manual redaction work, including inserting Identification Codes into Donation Records in compliance with the FERPA provisions of the Confidentiality Order. In terms of cost, time, and resources, we estimate—based on the assumption that an attorney can review on average 50 documents per hour—that reviewing these additional documents will add more than 8,000 hours of attorney time to first-level review, at a cost estimated by our outside contractor to exceed $1 million. In addition to that cost, there will be substantial costs associated with second-level review, supervision and quality control, and an unknown (but substantial) number of hours to perform FERPA redactions.

5. ***Structured Admissions Data.*** The Disputed Requests call for the production of structured admissions data for the years 1998-2022. According to the Common Data Set ("CDS") data, between 2003 and 2022, 361,874 students applied to attend Dartmouth. Dartmouth maintains

---

[2] Dartmouth's collections process is ongoing, and the data is based on the number of hits as of the date of this motion; as additional data is collected, the number of documents responsive to the Disputed Search Terms will increase.

3

admissions data for this time period in two databases: Slate and Banner. Slate, which contains data from 2014 to the present, has 968 data fields for each applicant. Banner, which contains data from 1998 to present, has 133 data fields prior to 2014 and 200 data fields after 2014 for each applicant. The great majority of the students reflected in the admissions data never matriculated to Dartmouth and, thus, could not be part of the claimed class. By contrast, Dartmouth's financial aid database, from which Dartmouth agrees to produce data, is limited only to applicants that applied for aid at Dartmouth, approximately 600-700 per year, and contains 200 data fields for each applicant. It is burdensome to review and produce the potentially millions of admissions data records because this data requires careful review and scrutiny to comply with FERPA. Prior to production, Dartmouth would have to assess all admissions data fields to properly deidentify this data to comply with FERPA, as required by the Confidentiality Order. *See* Dkt. No. 254 ¶ 8(d). This process would require a contractor to match Dartmouth's admissions data against other Defendants' admissions data and generate a unique Identification Code for each applicant. *See id.* Then, to prepare the deidentified data for production, Dartmouth's electronic discovery vendor would substitute the Identification Codes for personally identifiable information in the complete data set. Further, depending on which data fields are included in the production, such as comment fields, attorneys may have to review the underlying data further to ensure FERPA compliance.

6. ***Development Data Analysis.*** The Disputed Requests also call for Dartmouth to collect and produce extensive development data for at least the years 1998-2022 and to correlate certain of that data to applicants for admission. In particular, several of the Disputed Requests call for Dartmouth to first identify family members of applicants who have donated, or who were capable of donating, $50,000 or more cumulatively, on a one-time or annual basis to the College, and then produce documents or communications related to those donors and/or their family

4

members. *See* Van Gelder Decl., Ex A, Request Nos. 20, 128, 129, Ex B, Request No. 4. There is no reliable, automated way to discern whether family members of donors were applicants for admission. Dartmouth's database for development records contains over 1,500 tables and over 37,000 fields. These tables and fields contain records applicable to over 397,138 individuals and organizations. Responding to the Disputed Requests would require Dartmouth to undertake a manual process of attempting to match development and admissions records, which—given the volume of admissions and development data—would require hundreds if not thousands of hours of attorney and contractor time, all at considerable expense. Moreover, production of the related records, if any, would also require detailed FERPA redaction work, including insertion of Identification Codes (otherwise, documents could not be matched to deidentified admissions records).

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of January 2023, at Chicago, Illinois.

By: */s/ Terri L. Mascherin*
Terri L. Mascherin