# EXHIBIT 5

# Declaration of Scott D. Stein

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW CORZO, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BROWN UNIVERSITY, et al.,<br><br>Defendants. | **Case No. 1:22-cv-00125**<br><br>**Honorable Matthew F. Kennelly** |

**DECLARATION OF SCOTT D. STEIN IN SUPPORT OF MOTION
FOR PROTECTIVE ORDER BY DEFENDANTS BROWN UNIVERSITY,
THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,
TRUSTEES OF DARTMOUTH COLLEGE, NORTHWESTERN UNIVERSITY,
UNIVERSITY OF NOTRE DAME DU LAC, AND YALE UNIVERSITY**

4892-8947-6936v.4

I, Scott D. Stein, pursuant to 28 U.S.C. § 1746, declare as follows:

1.  I am a member of the bar of this Court and admitted to practice in this jurisdiction. I am a partner at the law firm of Sidley Austin LLP and counsel for Defendant Northwestern University ("Northwestern"). I make this Declaration in Support of the Motion for Protective Order filed by Defendants Brown University, The Trustees of Columbia University in the City of New York, Trustees of Dartmouth College, Northwestern, University of Notre Dame Du Lac, and Yale University (the "Moving Defendants"). This declaration is based on my personal knowledge and information provided to me by Northwestern.

2.  In Exhibit C to Declaration of Amy Van Gelder in Support of the Motion for Protective Order, the Moving Defendants identified 73 requests for production (the "Disputed Requests") and numerous associated search terms (the "Disputed Search Terms") aimed, in whole or in part, at the Section 568 statutory exemption to the Sherman Act (the "Exemption"). These Disputed Requests and Disputed Search Terms are irrelevant and disproportionate now that the Moving Defendants have withdrawn the Exemption defense. The burden and expense of responding to the Disputed Requests are significant. The Disputed Requests implicate both structured admissions data, as well as custodial and noncustodial documents from various Northwestern departments.

3.  ***Custodial and Non-Custodial Data.*** The parties are continuing to negotiate and have not finalized search terms. In an effort to scope the additional burden associated with the Disputed Search Terms, Northwestern conducted an analysis of document hits for the custodial and non-custodial sources it disclosed, as well as a custodian from Northwestern's Development office. (Northwestern contends it should not have to include a custodian from its Development office, but has included one for this analysis to estimate burden). To date, Northwestern has

4892-8947-6936v.4

proposed seven custodians and three departmental shared drives (Admissions, Financial Aid, and the Office of the President) as sources of information. Using the most recent round of proposed search terms, the Disputed Search Terms and additional custodian increased Northwestern's review population by over 313,000 unique documents, including families. This number almost certainly understates the additional burden, as Plaintiffs have indicated they may ask for additional custodians. But even using this conservative number would increase the cost of just the first level review of custodial and non-custodial documents by more than **$350,000.** Of course, this significant additional cost does not even take into account quality control (QC) of these documents for responsiveness, confidentiality, and privilege, or the extremely significant cost of engaging in complex redaction work to redact FERPA-protected information and complete the deidentification process. We are unable to estimate costs beyond the first level review until we know the volume of responsive documents and those that will require redaction and deidentification, but given the nature of this case and the number of documents likely involving individual students, we expect that the documents resulting from the Disputed Search Terms and additional custodians will contain a high number of documents requiring FERPA redactions. Thus, even the most minimal second-level review, redaction undertaking, deidentification, and pre-production QC processes conducted by Sidley attorneys will amount to, at a minimum, an additional hundreds of thousands of dollars.

    4.  Indeed, the costs and burdens associated with redacting and inserting Identification Codes into documents that are responsive to the Disputed Requests will be enormous. Each document would require manual redaction of the applicant's name, email address, and other identifying information. Following the manual redaction process, a further manual process would be required to replace the redacted information with an anonymized code

that would permit identification of the applicant. Moreover, Northwestern expects that including the Disputed Search Terms will not only add tens of thousands of responsive documents needing FERPA redactions and deidentification coding applied, but also that many of these documents will be voluminous compilations of student data, potentially requiring up to several hours per document to appropriately redact and deidentify.

5. **_Structured Admissions Data._** The Disputed Requests also call for the production of structured admissions data for the years 1998-2022. Northwestern has admissions data back to 2008. Between 2008 and 2021, Northwestern had over 479,000 individual applicants for undergraduate admissions. There are literally thousands of data fields in Northwestern's admissions database, and the universe of fields may change from year to year and differ depending on which of three different types of applications a particular applicant submitted. Because the universe of fields differs depending on the application, and fields have changed over the years, a team of Northwestern employees will need to manually create queries for each year for which data is required. Indeed, in 2015, Northwestern switched from utilizing the Recruitment Plus platform for admissions data to the Slate platform for admissions data, and this change alone resulted in a significant number of data field changes. Prior to production, Northwestern would also have to utilize a third-party vendor to deidentify this data, as required by the Confidentiality Order in this matter. *See* Dkt. No. 254 ¶ 8(d). This process would require the vendor to match Northwestern's admissions data against other defendants' admissions data and generate a unique Identification Code for each applicant. *See id.* Then, to prepare the deidentified data for production, a contractor would have to substitute the Identification Codes for personally identifiable information in the complete data set.

6. ***Development Data Analysis.*** Finally, the Disputed Requests also call for Northwestern to analyze and draw conclusions regarding development data for at least the years 1998-2022. In particular, several of the Disputed Requests call for Northwestern to first identify family members of applicants who have donated, or who are capable of donating, $50,000 or more cumulatively, on a one-time or annual basis, and then produce documents or communications related to those donors and/or their family members. *See* Van Gelder Decl., Ex A, Request Nos. 20, 128, 129, Ex B., Request No. 4. Northwestern's admissions and development databases are separate, and do not communicate with one another. Thus, there is not a reliable, automated way to discern whether family members of donors (or of families "capable of donating $50,000 or more cumulatively, on a one-time or annual basis") were applicants for admission. Based on a preliminary investigation, over the time period at issue, more than five thousand unique donors donated $50,000 or more to Northwestern on an annual or one time basis. While some development records denote the family members of donors, including whether a family member matriculated at Northwestern, such data is not reliably captured for all entries or for all years. Likewise, Northwestern does not reliably or consistently track prospective donors who are merely "capable" of donating at certain levels, but who have not done so. Responding to such Disputed Requests would require Northwestern to undertake a manual process of attempting to match development and admissions records, which—given the volume of admissions and development data—could require hundreds, if not thousands, of hours of attorney and/or contractor time, all at considerable expense. Moreover, production of the related records, if any, would require detailed redaction work, including insertion of Identification Codes (otherwise, documents could not be matched to deidentified admissions records).

7. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of January 2023, in Evanston, Illinois.

By: */s/ Scott D. Stein*
Scott D. Stein

4892-8947-6936v.4