**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLANDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,

Defendants.

Case No. 1:22-cv-00125

Judge Matthew F. Kennelly

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER TO PROHIBIT DEFENDANTS FROM SERVING SUBPOENAS ON PLAINTIFFS' FAMILIES**

## TABLE OF CONTENTS

Page

**INTRODUCTION** .......... **1**

**ARGUMENT** .......... **3**

I. The Subpoena Seeks Relevant Materials .......... 3

II. Plaintiffs' Parents Are Likely the Best Source for Many of the Requested Documents .... 9

III. The Requested Discovery Is Proportional .......... 10

IV. There Is No Need to Depart from the Standard Rule 45 Subpoena Process .......... 10

**CONCLUSION** .......... **12**

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Apple, Inc. v. Pepper*, 139 S. Ct. 1514 (2019) ....................8

*Breuder v. Bd. of Trs.*, 2021 U.S. Dist. LEXIS 12222 (N.D. Ill. Jan. 22, 2021) .................... 3

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981)....................3

*In re Caustic Soda Antitrust Litig.*, 2021 U.S. Dist. LEXIS 263318 (N.D. Ill. Dec. 7, 2021) ........8

*In re Fresh & Process Potatoes Antitrust Litig.*, 2014 U.S. Dist. LEXIS 195443 (D. Idaho June 24, 2014) ....................8

*Lindner v. Occidental Coll.*, 2020 U.S. Dist. LEXIS 235399 (C.D. Cal. Dec. 11, 2020) ...............8

*Precision Assocs. v. Panalpina World Trans. Ltd.*, 2012 U.S. Dist. LEXIS 113829 (E.D.N.Y. Aug. 13, 2012) ....................5

*Precision Assocs. v. Panalpina World Transp. Ltd.*, 2011 U.S. Dist. LEXIS 51330 (E.D.N.Y. Jan. 4, 2011)....................5

*Sage Prods. v. Chemrite Copac*, 2021 U.S. Dist. LEXIS 219454 (N.D. Ill. Nov. 12, 2021)........10

*Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*, 950 F.3d 911 (7th Cir. 2020) ....................6

*Simon & Simon, PC, et al. v. Align Tech., Inc.*, No. 20-cv-03754 (N.D. Cal. Jan. 17, 2023), ECF No. 255....................7

*United States. v. Brown University*, 5 F.3d 658 (3d Cir. 1993)....................6

*United States v. E.I. Du Pont de Nemours & Co.*, 351 U.S. 377 (1956) ....................6

## STATUTES AND RULES

34 C.F.R. § 673.5 ....................5

Rule 45 ....................2, 10, 11

## MISCELLANEOUS

*What is my Expected Family Contribution (EFC)?*, FED. STUDENT AID, https://studentaid.gov/help-center/answers/article/what-is-efc....................1

# INTRODUCTION

The parents of most prospective college students are intimately involved in their children's undergraduate application process, including applications for financial aid. In fact, financial aid applicants are *required* to disclose information about their parents and their parents' finances except in very limited circumstances (*e.g.*, an emancipated child). That parental information is then used to calculate the "Expected *Family* Contribution" ("EFC"),[1] which is the starting point for determining the amount of need-based financial aid an admitted student is eligible to receive. Need-based financial aid is at the center of this lawsuit; Plaintiffs claim Defendants "artificially reduced" such aid by allegedly agreeing to use the Consensus Methodology. Second Am. Compl. ¶ 133, ECF No. 266-1 ("SAC"). Many parents remain involved well after the application process, most notably by directly paying some or all of their children's tuition and other college costs.

Given the above, parents undoubtedly have relevant information about key issues in this case. Defendants thus seek discovery from the parents of the Plaintiffs (Plaintiffs' class includes only students, not their parents). Yet Plaintiffs ask the Court to deny Defendants such discovery despite admitting that they themselves do not have all the information about financial aid and other issues that Defendants have asked them to produce. For example, at least four Plaintiffs admit receiving financial aid offers from non-Defendant universities, yet they claim they have no information about those offers. Their parents are a possible source of those missing records. Parents also likely have other relevant materials, including documents bearing on class certification, injury, standing, damages, and more.

Despite the parents' deep connections to the issues in this case, Defendants seek only limited discovery from them. The draft subpoena includes just five document requests – each

[1] *What is my Expected Family Contribution (EFC)?*, FED. STUDENT AID, https://studentaid.gov/help-center/answers/article/what-is-efc (emphasis added).

tailored to be proportional to the needs of the case – and Defendants will negotiate in good faith to avoid imposing undue burden on the recipient parents.

Thus, the Court should grant the requested discovery. Yet Plaintiffs propose that, even if the Court correctly determines that discovery from their parents is appropriate, Defendants should still be precluded from issuing the subpoenas – and perhaps barred from negotiating with the parents about what they will produce and how they will identify it. While Plaintiffs are vague about the precise contours of their proposed process, it involves them asking their parents to produce documents voluntarily, with no or limited involvement by Defendants, followed perhaps by additional motion practice, then potentially starting anew with Defendants issuing subpoenas.

Such a process should be rejected because: (1) Plaintiffs have said repeatedly they do not control their parents, and, without a subpoena, the parents would have no legal obligation to conduct a thorough search and could withhold responsive documents; (2) Defendants should be as involved in the process as they would in discussions with any other subpoena recipient; and (3) the process would cause needless delay. Given the discovery schedule and the stakes in the case – Plaintiffs claim "billions of dollars" in damages – Defendants should not have to wade through Plaintiffs' multi-step process before seeking plainly relevant discovery under Rule 45.

Plaintiffs' only defense for their novel proposal is that standard subpoenas "undoubtedly" will have the "natural effect" of "harass[ing] or intimidat[ing] Plaintiffs." Pls.' Mot. for Protective Order at 2, ECF No. 271 ("Pls.' Mot"). It is unclear why Plaintiffs would be intimidated by the proposed discovery given that Plaintiffs themselves included parents in their original class definition and only excluded them from the class definition three weeks ago. In any event, such speculative and amorphous harm does not provide the "good cause" required to obtain a protective order.

The Court should deny Plaintiffs' motion for a protective order and permit Defendants to issue the subpoenas.

## ARGUMENT

A party requesting a protective order bears the burden of demonstrating why the order should be entered. *See Breuder v. Bd. of Trs.*, 2021 U.S. Dist. LEXIS 12222, at *5 (N.D. Ill. Jan. 22, 2021). "[T]he moving party must show good cause and explain why it will be subjected to annoyance, embarrassment, oppression, or undue burden or expense if a protective order is not entered." *Id.* (internal quotes and citations omitted). "To establish good cause for a protective order under [Federal Rule of Civil Procedure] 26(c), [the] courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (internal quotes and citation omitted).

### I. The Subpoena Seeks Relevant Materials

Defendants' draft subpoena to parents includes five document requests.[2] *See* Ex. 1. Those requests seek documents about:

- Financial aid applications and the materials underlying those applications;
- Other forms of financial aid, including scholarships and loans, and communications with institutions about aid;
- Payment of tuition and other costs;
- College applications and the reasons a Plaintiff chose to apply to or attend a university; and
- This litigation.

All of these topics relate to a claim or defense in the case, and therefore they are appropriate subjects for discovery.

[2] Defendants plan to subpoena Plaintiffs' parents or, if applicable, legal guardians. While Defendants refer to Plaintiffs' "parents" for convenience, the same arguments apply to their legal guardians.

**Request 1**. In a lawsuit about financial aid, Plaintiffs have no legitimate basis to contest the relevance of their financial aid applications and related materials. Plaintiffs allege that, "but for" Defendants' claimed wrongdoing, Defendants would have used an alternative methodology to calculate EFC that would have yielded more financial aid for the Plaintiffs. SAC ¶¶ 7, 117. Proving those allegations requires Plaintiffs to identify an alternative EFC methodology and show that it would have resulted in Plaintiffs receiving higher aid. The financial aid applications and supporting materials are thus foundational to liability, class certification, injury, and damages.

Plaintiffs contend that the information they used to complete their financial aid applications is irrelevant because it had no impact on whether and how much they were allegedly overcharged. Pls.' Mot. at 11-12. That is wrong. By definition, the inputs to an EFC calculation, including Plaintiffs' parents' assets, affect the EFC, which in turn informs whether and how much need-based financial aid a student is offered. If parents have substantial assets, their child could be ineligible for need-based aid (and thus could not claim injury in this lawsuit). Furthermore, inputs to an EFC methodology may have different effects depending on the methodology (*e.g.*, one university might consider a non-custodial parent's assets, while another may ignore them entirely).

**Request 2**. This request seeks communications and other documents about financial aid (not just about the applications and supporting materials). Documents about financial aid are relevant to Plaintiffs' allegation that Defendants agreed to calculate EFC the same way. If a Plaintiff received different financial aid packages from two Defendant schools, that is evidence that those Defendants did not agree on a methodology for determining their aid packages. The requested documents are also relevant to Plaintiffs' allegation that they would have received more aid if Defendants had used some other methodology. For example, if a Plaintiff received a better financial aid package from a Defendant institution than a non-Defendant school, that demonstrates

the Defendant's methodology was more generous for that student.

Documents responsive to this request likewise are relevant to Defendants' statute of limitations defense (*e.g.*, did Plaintiffs have information about their alleged injury before filing suit),[3] Defendants' mitigation defense (*e.g.*, did a Plaintiff decline any aid), and damages (*e.g.*, the repayment terms of any student loans).

Request 2 also asks for materials about other forms of financial aid (not just institutional aid). Other sources of financial aid are relevant to whether a Plaintiff has been injured and has standing. If a Plaintiff received third-party aid that covered the full cost of her university attendance, that Plaintiff suffered no injury. *See, e.g.*, *Precision Assocs. v. Panalpina World Transp. Ltd.*, 2011 U.S. Dist. LEXIS 51330, at *38-43 (E.D.N.Y. Jan. 4, 2011) (recommending dismissal of antitrust claims for lack of standing because "plaintiffs fail to allege that they paid the surcharges"), *report & recommendation adopted*, 2012 U.S. Dist. LEXIS 113829, at *8-9 (E.D.N.Y. Aug. 13, 2012); *see also* Defs.' Mot. to Compel Disc. from Pls. at 5-6, ECF No. 275 ("MTC").

In addition, as with Request 1, documents regarding non-institutional financial aid are relevant to assessing Plaintiffs' "but for the alleged conduct" aid awards. Universities are required *by federal regulation* to account for scholarships and other sources of assistance when calculating EFC. *See, e.g.*, 34 C.F.R. § 673.5(a)-(c) (prohibiting universities from awarding certain forms of aid that "exceed the student's financial need" and stating institutions "shall take into account" the student's "estimated financial assistance," which includes third-party sources such as various loans, scholarships, and more); *see also* MTC at 5. Defendants need this information to assess any

[3] Even if a parent's knowledge cannot be imputed automatically to her child, the parent's knowledge could lead to the discovery of the child's knowledge or permit an inference that the child had the same knowledge.

alternative methodology Plaintiffs assert Defendants would have used absent the alleged agreement.

**Request 3**. "Documents sufficient to show" tuition and other payments are relevant to Plaintiffs' alleged injuries and damages (*e.g.*, did they pay anything and how much). University records may not clearly indicate the source of a payment, making parents' records critical. Such documents also are relevant to whether a Plaintiff is an adequate class representative. Finally, these documents could inform the EFC calculation (*e.g.*, identifying sources of aid that must be accounted for as "estimated financial assistance").

**Request 4**. Documents comparing universities or discussing a Plaintiff's reasons for matriculating at a particular school are relevant to liability (*e.g.*, competition among universities) as well as Plaintiffs' alleged relevant market.[4] Because Defendants' alleged conduct is analyzed under the rule of reason, *see United States. v. Brown University*, 5 F.3d 658, 661 (3d Cir. 1993), in such cases, plaintiffs generally must prove a relevant market. In their complaint, Plaintiffs allege the relevant market is limited to "private national universities with an average ranking of 25 or higher in the *U.S. News & World Report* rankings from 2003 through 2021." SAC ¶ 244. Plaintiffs, however, have already provided discovery showing they considered enrolling in institutions outside that alleged market, such as public universities and liberal arts colleges. *See id.* ¶¶ 245, 250. Such evidence raises serious doubts about Plaintiffs' claimed market definition, underscoring why Defendants should be able to explore this topic in discovery. *See* MTC at 6-9.

Plaintiffs object to producing documents concerning the relevant market because any evidence they have is "anecdotal." Pls.' Mot. at 13-15. That is not a valid reason to avoid

---

[4] "A 'relevant market' under the Sherman Act is comprised of the 'commodities reasonably interchangeable by consumers for the same purposes.'" *Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*, 950 F.3d 911, 916-17 (7th Cir. 2020) (quoting *United States v. E.I. Du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956)).

discovery because this information is still relevant, and Plaintiffs fail to cite any authority for the proposition that *their own* documents about *their own* alleged market are irrelevant. If Plaintiffs and their parents have documents inconsistent with their proposed market definition, Defendants are entitled to discover that. Disc. Order at 2, *Simon & Simon, PC, et al. v. Align Tech., Inc.*, No. 20-cv-03754 (N.D. Cal. Jan. 17, 2023), ECF No. 255 ("Economic expert opinions are almost never accepted at face value by the other side, and a common criticism is that an expert made some assumption that is contrary to the facts. If the named plaintiff's own dentists testify that physical impressions are a good substitute for iTero, then an opinion to the contrary by Plaintiffs' expert would look foolish."). A jury also might want to understand why a Plaintiff who applied and was offered admission to public universities and liberal arts colleges denies that those institutions are substitutes for Defendants' universities.

**Request 5**. Documents about the matters alleged in Plaintiffs' complaint are, by definition, relevant to Plaintiffs' Sherman Act claim.[5] Also, documents about the litigation are relevant to class certification and Defendants' statute of limitations defense.

**Parents Are Direct Purchasers**. Plaintiffs wrongly contend that the Court should deny the requested discovery because they are the only "direct purchasers" and Defendants are seeking "downstream" discovery.[6]

First, discovery from Plaintiffs' parents is not "downstream" discovery. Plaintiffs ignore the economic reality of the typical college arrangement, when parents pay all or some college costs directly to the university. In such instances, there is no intermediary between the parent and the

[5] If Plaintiffs' parents have questions about the phrase "matters alleged in the complaint," Defendants can provide clarity, as Defendants have done in negotiations with Plaintiffs.

[6] As discussed above, Plaintiffs expressly alleged in their Complaint and First Amended Complaint that "Parents, legal guardians, and other family members commonly pay or help to pay the cost of a student's tuition, room, and board. The proposed Class therefore includes both students and those who pay or commit to pay on behalf of students." Compl. ⁋ 11; Am. Compl. ⁋ 12.

university – the parent is a direct purchaser. *See Apple, Inc. v. Pepper*, 139 S. Ct. 1514, 1521 (2019) (holding iPhone owners are direct purchasers of apps because "[t]he absence of an intermediary is dispositive"). The cases on which Plaintiffs rely apply only to a specific type of antitrust case in which one entity purchases an allegedly price-fixed product directly and then *resells that product*, passing on all or part of the alleged overcharge to a different customer. *See* Pls.' Mot. at 9-10. That is not the case here. Regardless of whether students, parents, or both purchase the services at issue in this case, there was no *re-sale* of those services, and there was no "pass on" of any alleged overcharge to another customer that would complicate proof in this case.[7]

Second, at minimum, Plaintiffs should not be able to avoid the discovery needed to determine whether they are, in fact, direct purchasers.

Third, even if the concept was applicable here (and it is not), there is no rule barring "downstream" discovery. *See, e.g.*, *In re Caustic Soda Antitrust Litig.*, 2021 U.S. Dist. LEXIS 263318, at *15-17 (N.D. Ill. Dec. 7, 2021) (denying direct purchasers' motion for protective order to prevent downstream discovery); *In re Fresh & Process Potatoes Antitrust Litig.*, 2014 U.S. Dist. LEXIS 195443, at *13-14 (D. Idaho June 24, 2014) (granting defendants' motion to compel discovery of "certain downstream issues").

Fourth, the discovery is relevant regardless of whether Plaintiffs are direct purchasers for the reasons discussed above.

---

[7] Plaintiffs also miss the mark by comparing this case to lawsuits related to colleges' pandemic lockdowns. Pls.' Mot. at 10. As Plaintiffs' own authority shows, the alleged injury in those cases arises from a student's inability to attend college in-person, which affects the student, not the parent. *See, e.g.*, *Lindner v. Occidental Coll.*, 2020 U.S. Dist. LEXIS 235399, at *15 (C.D. Cal. Dec. 11, 2020) ("Chloe [the student], not Steven [the parent], was the intended beneficiary of any promises that Occidental allegedly made" concerning "in-person courses and access to campus benefits"). Here, the alleged injury arises from payment of the claimed overcharge, which affects the payer (often not the student).

## II. Plaintiffs' Parents Are Likely the Best Source for Many of the Requested Documents

Contrary to Plaintiffs' contention, Defendants do not currently have access to the vast majority of the requested materials, such as (1) documents about financial aid offers from non-Defendant universities and third-party sources; (2) a parent's internal communications discussing, for example, the benefits of one financial aid offer over another or a Plaintiff's reasons for choosing a particular university; (3) the documents that the Plaintiff and her family used to complete their financial aid forms; and (4) in some cases, records of a Plaintiff's applications.

Plaintiffs suggest Defendants should obtain the discovery from the Plaintiffs themselves rather than their parents. But multiple Plaintiffs have conceded they are missing important information, including about financial aid offers they received from non-Defendant universities. For instance, one Plaintiff failed to produce anything whatsoever by the Court's deadline for initial document productions – December 16, 2022 (*see* Case Mgmt. Order #1, ECF No. 195) – because he identified *no responsive documents*. Plaintiffs also have been unable to answer simple interrogatories about their financial aid applications. Defendants' Interrogatory 1 asks Plaintiffs to identify the financial aid for which they applied and the resulting awards. In response, multiple Plaintiffs said they had no information, and one even left the answers blank. Following months of pursuit by Defendants, Plaintiffs finally supplemented their responses. Yet four Plaintiffs still say they cannot recall responsive information.

So it is clear that many Plaintiffs' records are lacking. It also is common sense that parents frequently are better record keepers than their teenaged children, especially about financial details relevant to awarding need-based financial aid. *See* SAC ¶ 117. And parents sometimes communicate with universities about financial aid directly (independent of their children). Thus, Plaintiffs' parents are very likely to have relevant materials that their children do not have. It also

is unclear how Plaintiffs would reliably determine whether they have all of the records that their parents have, given their repeated insistence that they do not control their parents.

### III. The Requested Discovery Is Proportional

Defendants' subpoena includes only five document requests, each of which is tailored to important issues in the case (as described above). The scope of the subpoena is particularly narrow in light of Plaintiffs' allegation that they are owed "billions of dollars" in damages. SAC ¶ 7. Although baseless, such an extraordinary claim would justify Defendants pursuing much broader discovery. *See, e.g.*, *Sage Prods. v. Chemrite Copac*, 2021 U.S. Dist. LEXIS 219454, at *16 (N.D. Ill. Nov. 12, 2021) (finding $62 million damages claim "weighs heavily in favor" of permitting defendant's requested discovery). But Defendants have elected to keep the subpoena targeted, and they will work with Plaintiffs' parents to further reduce any burden if needed. Notably, while Plaintiffs raise hypothetical concerns about the burden that might be imposed on their parents, they do not provide the requisite specificity about any such burden. *See id.* at *15 (granting discovery where target "has not offered any evidence to establish" burden claim). The importance of the requested materials outweighs any theoretical burden argument.

### IV. There Is No Need to Depart from the Standard Rule 45 Subpoena Process

Plaintiffs' speculation – about burden, what records their parents possess, and whether their parents will even produce anything voluntarily – underscores why the Court should permit the subpoenas to issue and permit Defendants to negotiate directly with Plaintiffs' parents pursuant to the standard Rule 45 process for non-party discovery. That process, which has been more than sufficient for an untold number of subpoena recipients, would most efficiently allow Defendants to obtain this important discovery and, if necessary, resolve any disputes.

Plaintiffs instead propose that, even if the Court permits the discovery, the parties should follow a new process for which they cite no precedent, one in which they "request their parents to

provide information the Court deems relevant," after which it "may" be appropriate to "consider limited subpoenas *but only if and after the Court rules that the documents sought by the subpoenas are relevant*." Pls.' Mot. at 7 (emphasis in original). Plaintiffs offer no reason Rule 45 is inadequate other than a generalized concern that the "natural effect" of the subpoenas will be to "harass or intimidate" them. *Id.* at 2. They do not explain why intimidation would be the natural effect of the Rule 45 process, nor do they explain why informal discovery from their parents is meaningfully less intimidating than a subpoena. To the extent informal discovery would be less intimidating because it gives Plaintiffs and their parents the ability to unilaterally decide what they produce and when they produce it, that is a reason to proceed by subpoena, not the other way around.

More generally, Plaintiffs' proposal does not give Defendants assurance that Defendants will be able to obtain the documents they need from the parents in a timely manner. Defendants already have had to wait more than three months to obtain basic facts about Plaintiffs' educational history in response to Defendants' interrogatories. Plaintiffs now propose that Defendants (1) wait for Plaintiffs to request documents from their parents; (2) wait for the parents to decide whether to produce the documents; (3) if the parents decline, potentially engage in further motion practice;[8] and (4) if the Court approves, initiate the subpoena process and effectively start from square one. Such a process is needlessly cumbersome and time-consuming – and inconsistent with the Federal Rules. It also fails to address a situation where a parent's production appears to be incomplete, or how Defendants can even determine if a parent's production is complete, *i.e.*, have confidence that the parent's *voluntary* search was adequate.

[8] While the requested discovery is plainly relevant, that may not prevent Plaintiffs or their parents (who are not party to the instant Motion) from disputing what is within the scope of the subpoena or later challenging the discovery on other grounds.

There is simply no need to follow such a tortuous process when existing processes are more than adequate.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a protective order.

Dated: January 20, 2023

By:/s/ Deepti Bansal
Deepti Bansal
Alexander J. Kasner
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
Tel: 202-728-7027
dbansal@cooley.com
akasner@colley.com

Matthew Kutcher
COOLEY LLP
110 N. Wacker Drive
Chicago, IL 60606
Tel: 312-881-6500
mkutcher@cooley.com

*Counsel for Defendant California Institute of Technology*

By:*/s/ Patrick Fitzgerald*
Patrick Fitzgerald
Amy Van Gelder
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 N. Wacker Drive
Chicago, IL 60606-1720
Tel: 312-407-0508
patrick.fitzgerald@skadden.com
amy.vangelder@skadden.com

Karen Hoffman Lent
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
Room 40-216
New York, NY 10001-8602
Tel: 212-735-3276
karen.lent@skadden.com

*Counsel for Defendant The Trustees of Columbia University in the City of New York*

Respectfully submitted,

By:*/s/ Kenneth Kliebard*
Kenneth Kliebard
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Suite 2800
Chicago, IL 60606-1511
Tel: 312-324-1000
kenneth.kliebard@morganlewis.com

Jon R. Roellke
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel: 202-739-5754
jon.roellke@morganlewis.com

Sujal Shah
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower, 28th Floor
San Francisco, CA 94105-1596
Tel: 415-442-1386
sujal.shah@morganlewis.com

*Counsel for Defendant Brown University*

By:*/s/ James L.Cooper*
James L. Cooper
Michael Rubin
Tommy LaVoy
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Tel: 202-942-5014
james.cooper@arnoldporter.com
michael.rubin@arnoldporter.com
tommy.lavoy@arnoldporter.com

Leah Harrell
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Tel.: 212-836-7767
Leah.Harrell@arnoldporter.com

By:*/s/ Terri L. Mascherin*
Terri L. Mascherin
Reid J. Schar
JENNER & BLOCK LLP
353 N. Clark Street,
Chicago, IL 60654-3456
Tel: 312-222-9350
tmascherin@jenner.com
rschar@jenner.com

Ishan K. Bhabha
Douglas E. Litvack
Lauren J. Hartz
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Tel: 202-637-6327
ibhabha@jenner.com
dlitvack@jenner.com
lhartz@jenner.com

*Counsel for Defendant Trustees of Dartmouth College*

By:*/s/ Tina M. Tabacchi*
Tina M. Tabacchi
JONES DAY
77 West Wacker Drive
Suite 3500
Chicago, IL 60601-1692
Tel.: 312-782-3939
tmtabacchi@jonesday.com

Craig A. Waldman
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
Tel.: 202-879-3877
cwaldman@jonesday.com

*Counsel for Defendant Emory University*

By:*/s/ Eric Mahr*
Eric Mahr

Valarie Hays
ARNOLD & PORTER KAYE SCHOLER LLP
70 W Madison Street
Suite 4200
Chicago, IL 60602
Tel.: 312-583-2440
valarie.hays@arnoldporter.com

*Counsel for Defendant University of Chicago*

By:*/s/ Norm Armstrong*
Norm Armstrong
Christopher Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
Tel.: 202-626-8979
narmstrong@kslaw.com
cyook@kslaw.com

Emily Chen
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel: 212-556-2224
echen@kslaw.com
Zachary T. Fardon
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
312 764 6960
zfardon@kslaw.com

*Counsel for Defendant Cornell University*

/s/ James A. Morsch
James A. Morsch
Jim.morsch@saul.com
SAUL EWING ARNSTEIN & LEHR
161 North Clark, Suite 4200
Chicago, IL 60601
Telephone: (312) 876-7100

Jan Rybnicek
Daphne Lin
FRESHFIELDS BRUCKHAUS DERINGER
700 13th Street, NW
Washington, DC 20005
Tel: 202-777-4500
eric.mahr@freshfields.com
jan.rybnicek@freshfields.com
daphne.lin@freshfields.com

*Counsel for Defendant Massachusetts Institute of Technology*

By:/s/ Scott D. Stein
Scott D. Stein
Benjamin R. Brunner
Kelsey Annu-Essuman
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
Tel.: 414-559-2434
sstein@sidley.com
bbrunner@sidley.com
kannuessuman@sidley.com

*Counsel for Defendant Northwestern University*

By:/s/ Robert A. Van Kirk
Robert A. Van Kirk
Cole T. Wintheiser
Jonathan Pitt
Matthew D. Heins
Sarah F. Kirkpatrick
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: 202-434-5163
rvankirk@wc.com
cwintheiser@wc.com
jpitt@wc.com
mheins@wc.com
skirkpatrick@wc.com

James Peter Fieweger
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street
Facsimile: (312) 876-0288
IL Attorney ID #6209558

Christopher D. Dusseault (pro hac vice)
cdusseault@gibsondunn.com
Jacqueline L. Sesia
jsesia@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000

*Counsel for Defendant Duke University*

By:/s/ Britt M. Miller
Britt M. Miller
Daniel T. Fenske
Jed W. Glickstein
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312-783-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com
jglickstein@mayerbrown.com

*Counsel for Defendant Georgetown University*

By:/s/ Jeffrey J. Bushofsky
Jeffrey J. Bushofsky
ROPES & GRAY LLP
191 North Wacker Drive 32nd Floor
Chicago, IL 60606-4302
Tel: 312-845-1200
jeffrey.bushofsky@ropesgray.com

Chong S. Park
Samer M. Musallam
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Tel: 202-508-4600
chong.park@ropesgray.com
samer.musallam@ropesgray.com

*Counsel for Defendant Johns Hopkins University*

Suite 3200
Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for Defendant University of Notre Dame du Lac*

By:*/s/ Seth Waxman*
Seth Waxman
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: 202-663-6800
seth.waxman@wilmerhale.com

David Gringer
Alan Schoenfeld
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: 212-937-7294
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Daniel Martin Feeney
Edward W. Feldman
MILLER SHAKMAN LEVINE & FELDMAN LLP
180 North LaSalle Street
Suite 3600
Chicago, IL 60601
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for Defendant The Trustees of the University of Pennsylvania*

By:*/s/ J. Mark Gidley*
J. Mark Gidley
WHITE & CASE LLP
701 Thirteenth Street, NW

By:*/s/ Norm Armstrong*
Norm Armstrong
Christopher Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
Tel.: 202-626-8979
narmstrong@kslaw.com
cyook@kslaw.com
Emily Chen
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel: 212-556-2224
echen@kslaw.com

Zachary T. Fardon
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
312 764 6960
zfardon@kslaw.com

*Counsel for Defendant William Marsh Rice University*

By:*/s/ Charles A. Loughlin*
Charles A. Loughlin
Benjamin F. Holt
Jamie Lee
Molly Pallman
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
Tel: 202-637-5600
chuck.loughlin@hoganlovells.com
benjamin.holt@hoganlovells.com
jamie.lee@hoganlovells.com
molly.pallman@hoganlovells.com

Stephen Novack
Stephen J. Siegel

Washington, DC 20005-3807
Tel: 202-626-3600
mgidley@whitecase.com

Robert A. Milne
David H. Suggs
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Tel: 212-819-8200
rmilne@whitecase.com
dsuggs@whitecase.com

*Counsel for Defendant Vanderbilt University*

Serena G. Rabie
NOVACK AND MACEY LLP
100 North Riverside Plaza, 15th Floor
Chicago, IL 60606-1501
Tel.: 312-419-6900
snovack@novackmacey.com
ssiegel@novackmacey.com
srabie@novackmacey.com

*Counsel for Defendant Yale University*