UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SIA HENRY, *et al.*, individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>                      v.<br><br>BROWN UNIVERSITY, *et al.*,<br><br>                      Defendants. | Case No.: 22-cv-00125<br><br>Hon. Matthew F. Kennelly |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
MOTION FOR A PROTECTIVE ORDER BY DEFENDANTS
BROWN, COLUMBIA, DARTMOUTH, NORTHWESTERN,
<u>NOTRE DAME, AND YALE</u>**

**Table of Contents**

I. PRELIMINARY STATEMENT ...................................................................................1
II. ARGUMENT .................................................................................................................3
    A. THE CONTESTED DISCOVERY IS RELEVANT AND IMPORTANT TO PLAINTIFFS' CASE IRRESPECTIVE OF MOVANTS' WITHDRAWAL OF THEIR EXEMPTION DEFENSES. ....................................4
        1. The Contested Discovery Is Relevant and Important to Plaintiffs' Case Pursuant to This Court's Rulings in This Case, Which Follow Well-Established Conspiracy Law. ................................................................4
        2. Pursuant to This Court's Rulings and Governing Law, the Contested Discovery Is Relevant and Important to Plaintiffs' Ability to Defeat Defendants' Statute of Limitations Defenses. ..............................................8
        3. The Contested Discovery Is Relevant and Important to Determining Whether the Per Se Standard Should Apply, and to any Application of the Rule of Reason. ....................................................................................11
    B. MOVANTS' PROPORTIONALITY AND BURDEN ARGUMENTS REGARDING THE CONTESTED DISCOVERY ARE MERITLESS. ...............13
III. CONCLUSION ............................................................................................................15

**Table Of Authorities**

**Cases**

*Always Towing & Recovery, Inc. v. City of Milwaukee*,
2 F.4th 695 (7th Cir. 2021) ...............................................................................................12

*Baker v. F & F Inv.*,
420 F.2d 1191 (7th Cir. 1970) .......................................................................................9, 10

*Deitchman v. E.R. Squibb & Sons, Inc.*,
740 F.2d 556 (7th Cir. 1984) ...............................................................................................6

*Hawk v. Perillo*,
642 F. Supp. 380 (N.D. Ill. 1985) ........................................................................................7

*Heat and Control, Inc. v. Hester Indus., Inc.*,
785 F.2d 1017 (Fed. Cir. 1986) ...........................................................................................6

*In re Broiler Chicken Antitrust Litig.*,
290 F. Supp. 3d 772 (N.D. Ill. 2017) ..............................................................................8, 10

*In re: Zantac (Ranitidine) Prods. Liab. Litig.*,
No. 20-MD-2924, 2021 U.S. Dist. LEXIS 219635 (S.D. Fla. Nov. 15, 2021) .................10

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997) ...........................................................................................................10

*Motorola Sols., Inc. v. Hytera Commc'ns Corp.*,
314 F. Supp. 3d 931 (N.D. Ill. 2018) .................................................................................13

*Motorola Sols., Inc. v. Hytera Commc'ns Corp.*,
365 F.Supp.3d 916 (N.D. Ill. 2019) ...................................................................................13

*Ohio v. American Express*,
138 S. Ct. 2274 (2018) .......................................................................................................12

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) .............................................................................................................7

*Paper Sys., Inc. v. Nippon Paper Indus. Co.*,
281 F.3d 629 (7th Cir. 2002) ...............................................................................................7

*Seiden v. Frazer Frost LLP*,
796 F. App'x 381 (9th Cir. 2020) ........................................................................................9

*Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*,
782 F.3d 922 (7th Cir. 2015) ...........................................................................................9, 10

*Texaco Inc. v. Dagher*,
547 U.S. 1 (2006)...................................................................................................................12

*United States v. Ashley*,
555 F.2d 462 (5th Cir. 1977) ...................................................................................................7

*United States v. Brown University*,
5 F.3d 658 (3d Cir. 1993) ...............................................................................................11, 12

*United States v. Socony-Vacuum Oil Co.*,
310 U.S. 150 (1940)..................................................................................................................7

*Wiginton v. CB Richard Ellis, Inc.*,
229 F.R.D. 568 (N.D. Ill. 2004)...............................................................................................6

*Willmar Poultry Co. v. Morton-Norwich Prod., Inc.*,
No. 4-74-CIV.276, 1974 WL 936 (D. Minn., Oct. 1, 1974),
*aff'd*, 520 F.2d 289 (8th Cir. 1975)........................................................................................10

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 26(b)(1)...........................................................................................................14

Plaintiffs respectfully submit this Memorandum in Opposition to the Motion for a Protective Order, Dkt. 276 (the "MPO"), filed by Defendants Brown University, The Trustees of Columbia University in the City of New York, Trustees of Dartmouth College, Northwestern University, University of Notre Dame du Lac, and Yale University ("Movants").

## I.   PRELIMINARY STATEMENT

Movants assert that, in answering Plaintiffs' Second Amended and Supplemental Complaint ("SAC"), they will withdraw their affirmative defense that Section 568 (the "Exemption") exempts them from liability under the Sherman Act. On that ground, they move for a protective order. Movants are among *the* most culpable members of the 568 President's Group Cartel. Gilbert Decl. ¶ 2. Their motion is part of all Defendants' multi-pronged strategy of denying to Plaintiffs records proving Defendants' wealth favoritism, allocation of admissions slots to donor-favored applicants, and admissions decisions prejudicial to scholarship applicants. If Defendants' motion were to succeed, it will not only substantially impede Plaintiffs' ability to prove their case against Movants, but also against all other Defendants.

The primary defect in Movants' position is that *five months ago, this Court unequivocally ruled that the culpability of any conspirator is evidence against all 17 conspirators.* Decision and Order, Dkt. 185, at 7-18 (Aug. 15, 2022). Plaintiffs are plainly entitled to use the evidence of Movants' wealth favoritism against the other 11 Defendants, *even if those Defendants were in complete compliance* with Section 568. Movants have refused to stipulate that they were always need aware. Gilbert Decl. ¶ 19. The other 11 Defendants continue to plead their affirmative defense of Exemption.

Moreover, this Court has not yet ruled on whether (as Plaintiffs assert) the *per se* doctrine applies to Defendants' conduct, or whether the Rule of Reason or *Brown* doctrine applies. Under the *Brown* doctrine (or the Rule of Reason), Plaintiffs are entitled to use evidence from Movants

1

to prove they and the other 11 Defendants engage in revenue-maximizing behavior that is not designed to foster any "pure altruistic" objective, such as increasing socioeconomic diversity. Plaintiffs are entitled to show that *all* Defendants, including these six, were more interested in favoring their donors, growing their colossal endowments, and avoiding competition for scholarship applicants.

In addition, Movants will continue to press their statute-of-limitations defense, and thus have not offered to admit that a diligent person could not have reasonably known of their antitrust injury. Plaintiffs are entitled to discovery designed to establish that Movants were covering up or disguising their need awareness.

Movants have also manufactured a proportionality argument that is meritless. Plaintiffs have sought records that are targeted at donations of over $50,000. Records of donations of that magnitude in the President's office or Development office should stick out like needles that can be tracked into the Admissions office. Indeed, Plaintiffs' Appendix 1 to their First Set of RFPs identified many of the needles *four months ago*, and Plaintiffs even identified some very specific needles in a detailed Complaint *one year ago*. Movants, like many Defendants, have refused to designate custodians in their President's or Development offices, and instead designated custodians only from the Admissions office, where those needles would at best be buried in haystacks of tens of thousands of applications. In fact, when the President or Director of Development communicates with Admissions orally—as MIT's Director of Selection, McGreggor Crowley, acknowledged, SAC ¶ 180—there likely would not be any records in the Admissions office at all, or at most only terse and minimal notes. Defendants have been engaged for months in an effort to hide highly probative evidence regarding their wholesale violation of the Exemption, their pervasive wealth favoritism, and their exchange of admissions slots for donations. Movants'

2

pending motion for a protective order is their latest ploy to flout this Court's multiple express rulings, on August 2, August 15, and October 26, 2022. Accordingly, for all the reasons set forth in more detail below, Movants' Motion for a Protective Order should be denied.

## II. ARGUMENT

Defendants have assiduously sought to thwart this Court's rulings and guidance and prevent Plaintiffs from obtaining discovery the Court has recognized as critical. *E.g.*, Dec. 2, 2022 Joint Status Report ("JSR"), Dkt. 255, at 2-8; Jan. 13, 2023 JSR, Dkt. 274, at 3-14. Movants' application for a protective order is just the latest manifestation of Defendants' pattern of flouting this Court's directives.

Plaintiffs have repeatedly reminded all Defendants of five controlling rulings and directives from the Court in this litigation: (1) Plaintiffs' claims are plausible[1]; (2) the conduct of each Defendant is relevant to the liability of every other Defendant in a conspiracy[2]; (3) evidence concerning Defendants' admissions and fundraising practices is of critical importance to Plaintiffs' case[3]; (4) Defendants must produce discovery sufficient to allow Plaintiffs to tie donations to admissions decisions[4]; and (5) and time is of the essence.[5]

---

[1] Decision and Order, Dkt. 185, at 7-18 (Aug. 15, 2022).

[2] *Id.* at 12 ("[T]he fact that at least one member of the conspiracy is plausibly alleged not to be, or not to have been, need-blind means that the plaintiffs have plausibly alleged that none of the schools are protected under the 568 Exemption.").

[3] *E.g.*, Dkt. 255 at 3 ("[A] significant part of the case is exactly this, the contention that admissions are tied to donations.") (quoting Oct. 26, 2022 Hr'g Tr. 36:24-37:14); Dkt. 274 at 2.

[4] *E.g.*, *id.* ("[W]e have to come up with a way of doing that[, to allow for discovery] which would allow somebody to say, okay, this is a donation record that relates to this student over here and so we can determine whether that had any effect on whether that person got admitted or not.") (quoting Oct. 26, 2022 Hr'g Tr. 36:24-37:14); Dkt. 274 at 2.

[5] *E.g.*, Dec. 21, 2022 Hr'g Tr. 12:13-13:24 ("We've got to get done with all of this stuff. … I [need to] be satisfied that people are actually—have their noses to the grindstone and are getting the work done.").

Movants now seek entry of a Protective Order to bar Plaintiffs from obtaining the discovery at issue (the "Contested Discovery"), which is the precise discovery this Court previously recognized as critically significant to Plaintiffs' case, and directed Defendants to produce. Movants' relevance and proportionality arguments fail to establish otherwise.

**A. THE CONTESTED DISCOVERY IS RELEVANT AND IMPORTANT TO PLAINTIFFS' CASE IRRESPECTIVE OF MOVANTS' WITHDRAWAL OF THEIR EXEMPTION DEFENSES.**

As a key premise underpinning their Motion, Movants claim Plaintiffs have asserted only one relevant purpose for the Contested Discovery. *E.g.*, Dkt. 276 at 2. This is demonstrably inaccurate. Movants had written notice *at least forty-three days prior* to filing the instant motion that this discovery bears on the "liability of co-conspirators." Gilbert Decl. ¶¶ 7-11. Moreover, after Plaintiffs sent their draft JSR section to Defendants on Tuesday, January 10, Movants had continual written notice *throughout the four days prior to filing their motion* that the Contested Discovery is relevant and material to Plaintiffs' case (1) under established conspiracy law and the rulings in this litigation, to establish the culpability of all Defendants; (2) to rebut all Defendants' statute of limitations defenses; (3) for determination of whether the *per se* standard should apply; and (4) to establish Defendants' culpability under the Rule of Reason standard, if that standard were ruled appropriate by this Court. *Id*. ¶¶ 15-17. In addition to being demonstrably inaccurate, the claim that Plaintiffs have asserted only one relevant purpose for the Contested Discovery is absurd on its face, as it amounts to claiming that Plaintiffs have abandoned a central theory of the case that has been in the Complaint since the inception of the litigation. *Id*. ¶ 7.

   1. The Contested Discovery Is Relevant and Important to Plaintiffs' Case Pursuant to
      This Court's Rulings in This Case, Which Follow Well-Established Conspiracy Law.

The essence of Movants' argument is that withdrawal of their Exemption defense precludes discovery of donation records, and donor-related applications and admissions. According to

4

Movants, such discovery bears solely on whether they were, in fact, need-blind, a prerequisite to the applicability of the Exemption. Because they have volunteered to withdraw the Exemption defense, they argue, it is unnecessary for Plaintiffs to demonstrate that the Exemption does not shield *these particular defendants*. The entire premise of Movants' argument is wrong, and this Court has already rejected it.

This Court already has unequivocally ruled in this case five months ago that the culpability of any one of the conspirators is evidence against all 17 conspirators. As this Court stated in denying Defendants' motion to dismiss: "*[t]he fact that at least one member of the conspiracy is plausibly alleged not to be, or not to have been, need-blind means that the plaintiffs have plausibly alleged that none of the schools are protected under the 568 Exemption*." Dkt. 185 at 12 (emphasis added).

But that is not the only ruling Movants are flouting. This Court further ruled during the October 26, 2022, hearing that Plaintiffs would be permitted discovery broad discovery; they must be afforded discovery sufficient to establish a link between donations and admissions decisions; and that the Court would not tolerate any obstructive gamesmanship from Defendants, as Plaintiffs have three times reminded Defendants in bold:

> So first of all – and I don't think this is the case, but I just want to have it out there just so I've said it and I'll be done with it – I mean, this is not going to be a situation where the case comes to a halt and gets adjudicated because the discovery can't get produced. So I just want to make that clear.
> . . . .
> **So the whole case – maybe not the whole case, but a significant part of the case is exactly this, the contention that admissions are tied to donations, or at least that's a significant part of the case.** And so unless there's going to be an opinion that basically says, well, **the kind of thing I just said is not going to happen**, that basically says the plaintiffs can't get that, therefore, the case is over, then **we have to come up with a way of doing that.**

5

10/26/22 H'rg Tr. 23:12-17; 36:24-37:6 (emphasis added here as in 11/23, 12/23, and 12/30/22 emails to Defendants, Gilbert Decl. ¶ 22). And when the Court speaks, its words are rulings. *Id.* 34:16-17 ("That's the judge talking. **Those are called rulings**.") (emphasis added here as in 12/30/2022 email to Defendants, *id.*).

Movants are seeking to deny Plaintiffs the very discovery this Court has already ruled is relevant, deemed "a significant part of the case," and directed must be produced.[6] Movants' asserted "justification" should be rejected because, irrespective of whether they have withdrawn the Exemption defense, the other 11 Defendants have not. Further, Movants have refused to stipulate they were not need-blind, or that any of the other Defendants were not need-blind. As part of this scheme to flout the Court's direction on October 26, Movants are not merely concealing what is in the Development Office and President's office; they are refusing to provide admissions scoring as well.[7] Proving that Movants themselves were not need-blind remains a central issue in the case, and will eviscerate the Exemption defense for all Defendants.[8]

---

[6] This Court's rulings are grounded in well-established conspiracy law. In cases where allegations of conspiracy or monopolization are involved, broad discovery is permitted to uncover evidence of invidious design, pattern or intent, particularly because such evidence typically is found only in the hands of the alleged conspirators, who often seek to cover up and conceal their wrongdoing. Where there is doubt over relevance, courts should allow the discovery. *Heat and Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986) (citing *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 556 (7th Cir. 1984)); *see also Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 577 (N.D. Ill. 2004) ("if relevance is in doubt, courts should err on the side of permissive discovery") (internal citation omitted).

[7] As explained in the January 13, 2023, JSR, Dkt. 274 at 9-10, admissions data (and admissions scoring in particular) is a way Plaintiffs will prove that donor-related applicants were otherwise less qualified than the rest of the applicant pool, and thus that the donation influenced the admission decision.

[8] All Defendants, including Movants, argued to the Court in connection with their motions to dismiss that Section 568 imposes elements that Plaintiffs have the burden of pleading and proving to overcome. This Court in its decision denying Defendants' motion indicated that Defendants' interpretation runs counter to the general rule of statutory construction that the burden of proving an exemption to the antitrust rules rests on the party who claims its benefits, and that Defendants have a heavy burden to convince the Court otherwise. *Ultimately, however, the Court declined to rule on this particular issue. See* Opinion and Order, Dkt. 185, at 5-6. Accordingly, while Plaintiffs continue to believe that Defendants bear the burden of proving that the Exemption shields their conduct as an affirmative defense, if the Court ultimately rules

It is disturbing, particularly as Defendants had Plaintiffs' section of the Joint Status Report since January 10, 2023, that Movants did not address this central argument in their motion filed four days later. It is also disturbing that Movants cite *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978), for the proposition that "it is proper to deny discovery of [a] matter that is relevant only to claims or defenses that have been stricken," but *fail to include the rest of that sentence* from the Supreme Court: "*unless the information sought is otherwise relevant to issues in the case.*" *Id.* at 351 (emphasis added). That qualifier plainly applies here.

The cases Movants cite on pages 4-5 of their brief, addressing discovery in connection with issues they assert are no longer relevant, do not support their position, and certainly do not justify disregarding prior rulings *in this case*. None of those cases was a conspiracy case in which one member of the conspiracy amended its answer *while the other members of the conspiracy did not*. In a conspiracy, of course, each member of the conspiracy is jointly and severally liable for the actions of the other members,[9] and the actions of each member are relevant and material to the claims asserted against all of the members.[10]

Thus, Plaintiffs are entitled to use the evidence of Movants' wealth favoritism, for example, to prove that Movants, and hence all of the members of the conspiracy, are liable. To paraphrase

---

otherwise, then whether Movants are not need-blind is relevant, irrespective of the fact that they will withdraw that defense.

[9] The fact that a conspirator is not present at, or does not participate in, all of the conspiratorial activities does not by itself relieve the conspirator from liability or exonerate it. *See United States v. Ashley*, 555 F.2d 462, 467 (5th Cir. 1977); *see also Hawk v. Perillo*, 642 F. Supp. 380 (N.D. Ill. 1985) (once a defendant joins a conspiracy, it becomes a party to every act previously or subsequently performed by any of the other conspirators).

[10] *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 253-54 (1940); *see also Paper Sys, Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629 (7th Cir. 2002) (each member of the conspiracy is liable for damages caused by the conspiracy).

7

John Donne: "No [conspirator] is an island, entire of itself; every [conspirator] is a piece of the continent, a part of the main."

> 2. Pursuant to This Court's Rulings and Governing Law, the Contested Discovery Is Relevant and Important to Plaintiffs' Ability to Defeat Defendants' Statute of <u>Limitations Defenses.</u>

Having flouted two rulings by this Court (regarding 1) joint and several liability among conspirators, and 2) the importance of donor-related documents and application records), *supra* Part II.A.1, Movants proceed to flout yet a third ruling by this Court. *This Court already found and ruled five months ago* that Plaintiffs adequately pleaded that they could not have discovered their claims without assembling and combining multiple puzzle pieces, that Defendants engaged in fraudulent concealment, and that Defendants engaged in continuing violations. *See* Dkt. 185 at 18-22. That ruling forecloses Movants' asserted justifications for blocking the Contested Discovery.

In addition, Movants want to have it both ways: on the one hand, they claim Plaintiffs should have known of their claims; on the other hand, they ask the Court to deny Plaintiffs discovery concerning Movants' conduct that prevented earlier discovery of the antitrust violation and Plaintiffs' injuries. Plaintiffs explained in their brief opposing the motions to dismiss the many "puzzle pieces" they needed to assemble and combine. Dkt. 164 at 47-49 (discussing *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 807-08 (N.D. Ill. 2017), and collecting cases).[11] The

---

[11] As Plaintiffs showed in opposing Defendants' motion to dismiss, Dkt. 164 at 48, the puzzle pieces include not only the Consensus Methodology, the Cartel's history, the Cartel members' sources for providing financial aid, and overall market conditions, but also how "(1) Defendants were coordinating on a financial-aid formula restricting their individual judgment; (2) the coordination raised net prices for financial-aid students; (3) the collusion did not merely redistribute a fixed pool of aid from one group of students to another, but instead suppressed the total aid dollars available to students; and (4) it was not other economic factors that caused such injury." Plaintiffs also require discovery directed at how Cartel members lulled unsuspecting applicants to apply for admission and financial aid, to extract from the financial aid admittees amounts in excess of the unfixed, competitive net costs of attendance that would have prevailed but for the

8

Contested Discovery bears on when the wrongdoing was discoverable, Defendants' acts of fraudulent concealment, and Defendants' continuation of the violation each academic year. *Id.* at 808 (determination of the date "when Plaintiffs' claim accrued under the discovery rule … must await further factual discovery").

Movants rely on *Seiden v. Frazer Frost, LLP*, 796 F. App'x 381 (9th Cir. 2020). Even aside from Movants' efforts to relitigate matters on which they already lost, *Seiden* states no different rule. In that case, the wrongdoing and the injury had been *fully disclosed for years*. That is the *opposite* of the situation here. Further, in *Baker v. F & F Inv.*, 420 F.2d 1191 (7th Cir. 1970), which Movants also cite, the Court of Appeals agreed that certain class representatives *who were actually aware* of the wrongful discrimination for years could not pursue their claims, but held that other class members *who were not actually aware* "should have an opportunity to display the necessary concealment," *id.* at 1199-1200, which would require discovery. Defendants' concealment of their donor favoritism impacts not only the named Plaintiffs, but the entire proposed class.

The Contested Discovery bears directly on how, how often, and when Defendants attempted to conceal their wrongdoing and the injuries by hiding behind a publicly stated but inapplicable "need blind" exemption for which they each annually certified that they qualified, while actually practicing wealth favoritism. The Contested Discovery will yield "information to decide when a reasonable third-party purchaser should have discovered that it had paid more for [the net price of attendance] than it otherwise would have had to because of an illegal [antitrust conspiracy]." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). Movants' and other Defendants' donation records, admissions decisions and

---

conspiracy; and how the same concealment prevented Plaintiffs catching onto the multi-faceted scheme and ensuing injury so they might sue.

development practices are central to the resolution of those issues. *See supra* Part II.A.1. Six Movants waiving the Exemption in the litigation does not alter the reality that Plaintiffs are entitled to discovery on their, and their co-conspirators', statute of limitations defenses.

Movants fallaciously argue that "what Plaintiffs could have known must be based on publicly available information, which requires no discovery at all," and "cannot be gleaned from discovery into Defendants' files."[12] Once again, *this Court has already ruled on this issue and unequivocally rejected that argument.* Dkt. 185, at 18-22. Therefore, Plaintiffs properly seek discovery into Defendants' files, data and concealment efforts to continue to build their case.[13]

Finally, Defendants' contention that the information is available from other Defendants presupposes that all universities have the same files and data, and acted in the same ways as Movants. If so, Plaintiffs are entitled to find that out, as it would confirm the uniformity of the Cartel members' behavior. What is more likely is that no one Defendant will have complete information as to all Defendants, and that some information will have to be pieced together from various sources like a jigsaw puzzle. *See Broiler Chicken,* 290 F. Supp. 3d at 807-09.

---

[12] Dkt. 276 at 10 (citing *Willmar Poultry Co. v. Morton-Norwich Prod., Inc.*, No. 4-74-CIV.276, 1974 WL 936 (D. Minn., Oct. 1, 1974), *aff'd*, 520 F.2d 289 (8th Cir. 1975)). Movants' reliance on *Willmar* is misplaced. The *Willmar* court said discovery would not be needed "if it can *presently be shown that plaintiffs knew of their cause of action*" prior to the expiration of the statute of limitations (emphasis added). However, what Plaintiffs have pleaded—and all that can "presently be shown"—is that Plaintiffs did *not* know of their cause of action until they had successfully assembled the "puzzle pieces," as the August 15, 2022 decision held. *See also Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194-95 (1997) (no accrual until plaintiffs could "reasonably have known of the offense."); *Baker,* 420 F.2d at 1199 (no accrual until plaintiffs could have known of the "existence of [the] cause of action").

[13] Defendants also rely on *In re: Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-MD-2924, 2021 U.S. Dist. LEXIS 219635, at *161 (S.D. Fla. Nov. 15, 2021). *Zantac* provides no basis to limit the requested discovery. In *Zantac*, the party seeking discovery had better sources for medical information than the adverse party's social media posts. In contrast, Plaintiffs addressing the 568 Cartel have no "readily available" sources of information other than defendants' files and data that would allow Plaintiffs to demonstrate through evidence how Defendants went about granting admission, making financial aid decisions and the other topics to which Defendants object.

Accordingly, Plaintiffs need to have *each* Defendant provide the requested discovery bearing on Defendants' asserted statute of limitations defense.

3. The Contested Discovery Is Relevant and Important to Determining Whether the Per Se Standard Should Apply, and to any Application of the Rule of Reason.

Movants assert that their admission and development activities "are not relevant to this Court's determination whether to apply the *per se* or Rule of Reason analysis," or to the application of the Rule of Reason standard itself. Dkt. 276 at 6-7. They are wrong.

*First*, it is likely Defendants will argue that the Rule of Reason, rather than the *per se* analysis, should apply, citing *United States v. Brown University,* 5 F.3d 658 (3d Cir. 1993), which involved seven of the same Defendants as in this case. But central to the *Brown* court's holding that the *per se* standard did not apply to the "Overlap Agreement" between the eight Ivy League universities and MIT was the importance the court attached to MIT's "alleged pure altruistic motive and alleged absence of a revenue maximizing purpose." *Id.* at 672. While there are many reasons the Rule of Reason should not apply in this case, certainly Defendants' overall motives and actions (whether revenue maximizing, altruistic, or otherwise) are relevant to a determination of which mode of analysis should apply.

Allocating limited admission slots to applicants connected to wealthy donors would demonstrate that Movants do not have a "pure altruistic motive." Likewise, such a practice would demonstrate the *presence*, not the absence, of a "revenue maximizing purpose" on the part of Movants, as a driver of the explosive growth of their colossal endowments that total approximately $233 billion. SAC ¶¶ 74-75. Plaintiffs' RFPs calling for structured admissions data and non-structured documents, including donation records and admissions scoring, relate to admissions practices that reflect Movants' wealth favoritism and revenue maximization. They fall precisely within the ambit of evidence the Court needs to determine whether Movants meet the *Brown* test

11

for *not* having their 568-related activities assessed under the *per se* standard. Movants' case law citations on this issue are beside the point.[14]

*Second*, if the Court were to apply the Rule of Reason—and to be clear, that is not the correct standard here—the admissions and development discovery Plaintiffs seek is directly relevant to the *application* of the Rule of Reason through the three-pronged inquiry validated in *Ohio v. American Express Co.*, 138 S. Ct. 2274, 2282 (2018). Whether Movants and other Defendants gave admissions preferences to applicants connected to wealthy donors relates directly to the application of the second and third prongs: whether Defendants can bear their burden of proving procompetitive justifications for their conduct, and if so, whether Plaintiffs can demonstrate whether there are less restrictive means to attain those procompetitive objectives.

In their brief, Movants suggest that they "*may* show procompetitive justifications for cooperating on voluntary financial aid principles – including improved accuracy, predictability, and stability in need assessment and expanding access to higher education." Dkt. 276 at 7 (emphasis added).[15] Movants assert, on this basis, that this purported justification has "nothing to do with Defendants' admissions policies." *Id*. at 8. Movants fail to mention, however, another procompetitive justification that they asserted in their Answers: to *"improve[s] the socioeconomic diversity of the class of admitted students*." (emphasis added).[16]

---

[14] Plaintiffs seek the admissions and development documents and data not because they have any bearing on whether Defendants fixed prices, as in *Texaco Inc. v. Dagher,* 547 U.S. 1 (2006), or to prove injury, as in *Always Towing & Recovery, Inc. v. City of Milwaukee,* 2 F. 4th 695 (7th Cir. 2021), but instead on the *standard* that the Court should apply in assessing the legality of Defendants' alleged collusive conduct.

[15] Independent of the dispute over the instant motion, Plaintiffs contest whether the "financial aid principles" at issue were truly "voluntary." Resolution of that issue is central to the litigation itself.

[16] *See* Dkt. 211 at 86 (Brown); Dkt. 196 at 92 (Columbia); Dkt. 202 at 69 (Dartmouth); Dkt. 205 at 82 (Northwestern); Dkt. 213 at 77 (Notre Dame); Dkt. 210 at 83 (Yale).

If it is true, however, that Movants allocate scarce admissions slots to applicants from wealthy backgrounds, that truth would undercut any claim that Defendants are fully invested in promoting "socioeconomic diversity," or at the very least, suggest that their claim that the Consensus Methodology ("CM") was necessary to achieve that objective is pretextual. In addition, if use of the CM did promote socioeconomic diversity, the fact that some Defendants, including Movants, granted admissions preferences to applicants from wealthy families suggests that abandoning that admissions practice would have been a less restrictive means of promoting socioeconomic diversity than supposedly using the CM to do so.[17]

In short, contrary to Movants' claims, the Contested Discovery is directly relevant both to whether the *per se* or Rule of Reason standard should be applied in this case, and to any application of the Rule of Reason in this Court's assessment of Defendants' collusive conduct.

**B.  MOVANTS' PROPORTIONALITY AND BURDEN ARGUMENTS REGARDING THE CONTESTED DISCOVERY ARE MERITLESS.**

Movants argue they "are streamlining the issues in this litigation and should not bear the significant burden and costs associated with discovery aimed at an affirmative defense they do not assert." Dkt. 276 at 15. As Plaintiffs have shown in Part II.A, *supra*, Movants' attempts to couch the Contested Discovery as irrelevant are meritless and plainly contrary to this Court's rulings on August 2, August 15, and October 26, 2022. Movants' arguments as to burden and proportionality are equally meritless.

*First*, none of Movants' cited cases are applicable to this litigation. In all but one of Movants' cases, the court denied certain requested discovery where there was no *continued*

---

[17] Movants' multiple case law citations relating to the "less restrictive alternative" prong of the *American Express* test are irrelevant because they refer only to one procompetitive justification claim they "may" assert, not to the justification relating to socioeconomic diversity that they and other Defendants advanced in their Answers.

13

relevance to *any* remaining claims or defenses. That is not true here. *See supra* Part II.A. The only remaining case, *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F.Supp.3d 916 (N.D. Ill. 2019),[18] is cited for the proposition that even relevant discovery must be narrow and targeted, otherwise it should be rejected as disproportionate to the needs of the case. *Id.* at 924. In fact, Plaintiffs' RFPs *are* targeted at donations over $50,000. Movants' brief omits critical distinctions underlying that court's denial of discovery.[19]

*Second*, Movants improperly attempt to leverage Rule 26(b)(1)'s proportionality "considerations." In doing so, they cite only the final two of Rule 26(b)(1)'s six factors and *omit the first four*—all of which favor Plaintiffs' right to obtain the Contested Discovery. In particular, Movants suggest that it would be unfairly burdensome to do what they describe as the "additional work" associated with reviewing "additional documents."[20] Dkt. 276 at 12-13. This Court has stated that this is mandatory discovery that is of central importance to Plaintiffs' case. Any "additional" burden in producing this discovery stems from Defendants' continued refusal to heed this Court's orders.

*Third*, Defendants' flawed reasoning is consistent with their repeated dismissals of Plaintiffs' scenarios explaining the importance of the Contested Discovery from Defendants' President's and Development offices as "mere conjecture" and "speculation" – notwithstanding

---

[18] Movants also cite *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 314 F. Supp. 3d 931 (N.D. Ill. 2018), for the proposition that "discovery into statute of limitations defenses must be targeted and narrow." *Id.* The pertinent facts are the same across these two decisions.

[19] Eight months into a "one-month" for discovery concerning statute of limitations, after receiving "700,000 documents — nearly 3 million pages — over a period of eight months," and one month *after* the "final" deadline, Motorola sought to conduct forensic examinations of defendant's computers in China. Notably, *Motorola offered no explanation of how the discovery it sought was relevant* to the issues at bar.

[20] To be clear, Plaintiffs' requests concerning the Contested Discovery are not "additional" discovery. Plaintiffs served the Contested Discovery requests on Defendants on September 19, 2022, and have consistently repeated and reaffirmed the importance of donor-related discovery from Defendants.

14

specific examples that Plaintiffs have cited that each and every Movant conducts itself in precisely the manner of the scenarios identified by Plaintiffs. Gilbert Decl. ¶ 2.

*Fourth*, Defendants accuse Plaintiffs of demanding intensive, burdensome searches for "needle[s] in a haystack." Dkt. 274 at 18. For Defendants, the haystack is comprised of all applicants, and the needles are donor-related applicants. In this respect, Defendants' analogy is not just wrong; it is entirely backwards. As explained in the January 13 JSR, Plaintiffs *four months ago* served up to Defendants "needles" sticking out of a pincushion. *See id.* at 3-7. Specifically, in Appendix 1 to Plaintiffs' First Set of RFPs, Plaintiffs identified a short list of names of potential "needles" for each Defendant: Brown (35); Columbia (48); Dartmouth (4); Notre Dame (6); and Yale (162). For Northwestern, *a very good starting point for the "needles" is the 550 applications President Schapiro personally reviewed and discussed with admissions in 2018*. SAC ¶ 181. Indeed, several of these "needles," which Defendants claim would be so burdensome to find, were thrust in front of them and identified in the original Complaint itself, filed more than one year ago on January 9, 2022. Choosing to ignore 35 needles (Brown) or as many as 550 needles (Northwestern) that have been handed to them, Defendants conjure cataclysmic scenarios of hundreds of thousands (if not millions) of documents and records needed to find some needles once they become buried in their applicant haystacks.

Defendants have demonstrated a single-minded determination for months to close their eyes and "search" for needles in the most indirect, inefficient, and burdensome way imaginable, either to avoid the efficient way of achieving results, or to lose the needles entirely.

### III. CONCLUSION

Plaintiffs respectfully submit, for all of the foregoing reasons, that the Court should deny the Motion for a Protective Order.

15

Dated: January 25, 2023                                     Respectfully submitted,

By:/s/*Robert D. Gilbert*                                   /s/ *Edward J. Normand*
Robert D. Gilbert                                           Devin "Vel" Freedman
Elpidio Villarreal                                          Edward J. Normand
Robert S. Raymar*                                           Peter Bach-y-Rita
Sarah Schuster                                              **FREEDMAN NORMAND**
Alexis Marquez                                              **FRIEDLAND LLP**
Steven Magnusson                                            99 Park Avenue
**GILBERT LITIGATORS &**                                    Suite 1910
**COUNSELORS, P.C.**                                        New York, NY 10016
11 Broadway, Suite 615                                      Tel: 646-970-7513
New York, NY 10004                                          vel@fnf.law
Phone: (646) 448-5269                                       tnormand@fnf.law
rgilbert@gilbertlitigators.com                              pbachyrita@fnf.law
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
sschuster@gilbertlitigators.com                             Daniel J. Walker
amarquez@gilbertlitigators.com                              Robert E. Litan
smagnusson@gilbertlitigators.com                            Hope Brinn
                                                            **BERGER MONTAGUE PC**
* *Pro hac vice*                                            2001 Pennsylvania Avenue, NW
                                                            Suite 300
Eric L. Cramer                                              Washington, DC 20006
Caitlin G. Coslett                                          Tel: 202-559-9745
**BERGER MONTAGUE PC**                                      rlitan@bm.net
1818 Market Street, Suite 3600                              dwalker@bm.net
Philadelphia, PA 19103                                      hbrinn@bm.net
Tel: 215-875-3000
ecramer@bm.net
ccoslett@bm.net


Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

                                                            *Counsel for Plaintiffs*

16