Case: 1:22-cv-00125 Document #: 297-6 Filed: 01/25/23 Page 1 of 7 PageID #:5020

# Exhibit D

| | |
|---|---|
| **From:** | Robert Gilbert <rgilbert@gilbertlitigators.com> |
| **Sent:** | Tuesday, January 10, 2023 5:03 PM |
| **To:** | Mascherin, Terri L.; Kirkpatrick, Sarah; Britt Miller; Carbone_Defs_Service@listserv.whitecase.com |
| **Cc:** | 568 Litigation |
| **Subject:** | Plaintiffs' Draft JSR Proposed Form of Order |
| **Attachments:** | Draft Joint Status Report (Due 1.13.2023) with Plaintiffs Insert 1.10.2023 446 PM.docx; Proposed Discovery Order for Jan 13 JSR (2023.01.10).docx |

**[EXTERNAL SENDER]**

Counsel:

Pursuant to the agreement that the Plaintiffs would provide their insert by EOD on January 10 and Defendants would provide their insert by EOD on January 11, please see attached.

Terri et al. : The Plaintiffs have included at pages 12-14 a response to the plan of 6 Defendants to waive the antitrust exemption defense. We have a meet and confer with you at 3pm ET tomorrow to discuss that issue.

We suggest that the parties schedule another call for Thursday to see if we can make progress on any of the other issues in the JSR. The most promising one on which we might make progress is the definitions in Plaintiffs' RFPs (which most Defendants unilaterally changed), concerning which Plaintiffs offered a compromise yesterday. We can make ourselves available from 10am to noon ET on Thursday; please let us know if something in that range works.

Thank you.

Best,

Bob

P.S. Naturally, Plaintiffs reserve the right to make edits based on the insert from Defendants that we expect to receive tomorrow.

Robert D. Gilbert
Managing Partner
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
rgilbert@gilbertlitigators.com
646-448-5269 work
203-645-0055 cell
www.gilbertlitigators.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

[Relevant excerpt from Plaintiffs' draft of Joint Status Report as an attachment to the January 10, 2023 email from Robert D. Gilbert sent to all Defendants]

Court's rulings and guidance, and fundamentally interfere with Plaintiffs' right to discover evidence to prove their claims." Doc. No. 255 at 2.

This Court has been crystal-clear: Plaintiffs are entitled to discovery of donation records and other evidence that would tie donations to admissions decisions, and this meet-and-confer process cannot be drawn out interminably. *See supra* Part II.A. Rather than heed the Court's rulings and guidance, Defendants have in effect converted the Court's guidance as to discovery that should be provided into a roadmap to systematically prevent that very discovery. Individually, Defendants' positions cripple Plaintiffs' ability to establish certain elements of their allegations. By thwarting Plaintiffs' attempts to obtain discovery of donation records from the President's and Development offices, and also thwarting Plaintiffs' attempts to obtain discovery of admissions scoring data, Defendants' positions amount to an integrated, multi-prong strategy to shield from discovery the exact evidence that is highly important to Plaintiffs to make their case. Or, put in other words, Defendants are doing *precisely* what the Court expressly proscribed.

As part of this pattern of attempts to shield donation records from production, six Defendants (Brown, Columbia, Dartmouth, Northwestern, Notre Dame, and Yale) are so determined to try to prevent discovery of donation records that on January 4, 2023 they stated to Plaintiffs their intention to abandon the 568 Exemption as a defense in this litigation, and advance the argument that, therefore, they need not produce any discovery concerning the relationship of donations to admissions.[8] One day after that January 4 call, those six Defendants provided to

---

[8] Plaintiffs are seeking further clarity from Defendants to fully evaluate the import of this decision, including on topics such as whether Defendants are conceding that they practiced need-aware admissions or will sign stipulations to the effect that they were never need-blind under the meaning of the statute.

12

Plaintiffs "a list of RFPs and proposed search terms that we identified as relating, in whole or in part, to the 568 Exemption, and therefore would object to as irrelevant and disproportionate." Unsurprisingly, this list is pervaded by requests that would tie admissions to donations.

This prospective abandonment by six Defendants of the Exemption defense is immaterial to Plaintiffs' entitlement to important discovery from each Defendant concerning its need-awareness or need-blindness in its admissions practices for at least three reasons.

First, as long as at least one Defendant continues to claim the Exemption as a defense, Plaintiffs remain entitled to discovery concerning donor-related applicants at *all* Defendant universities. As Plaintiffs have repeatedly explained, and as the Court made clear is plausible in denying Defendants' Motion to Dismiss, Memorandum Decision and Order, Dkt. No. 185, at 12-13 (Aug. 15, 2022), if one Defendant violated the need-blind requirement in its admissions practices, then the Exemption no longer applies to the conduct of *any* of the group members. As stated above in connection with the Defendants who allege to have "withdrawn," there is no silo of immunity from liability for members of a conspiracy. To paraphrase John Donne, "No [conspirator] is an island, entire of itself; every [conspirator] is a piece of the continent, a part of the main."

Second, even if all seventeen Defendants withdrew their Exemption defenses, Plaintiffs would still be required to prove non-need-blind admissions practices to defeat Defendants' Statute of Limitation-based defenses. Defendants wish to simultaneously assert that Plaintiffs must have been aware of Defendants' non-need-blind practices – and thus aware of their antitrust injury for statute of limitations purposes – while also shielding that very discovery from Plaintiffs. Defendants cannot have it both ways.

13

Third, Plaintiffs would still be entitled to discovery into Defendants' admissions practices because such information directly bears on Defendants' arguments under the Rule of Reason. The Court has not yet ruled whether it will apply a *per se* standard or the rule of reason. If the Court entertains purported pro-competitive justifications, Defendants are likely to argue (as they did in the 1991 Overlap case) that the conspiracy enabled them to reduce aid to affluent students so that they could redistribute more aid to needy ones and. If any such benefits have resulted, then Plaintiffs are entitled to show that there were less restrictive alternatives for Defendants to achieve those ends. Plaintiffs must be allowed to take discovery into Defendants' wealth favoritism, to rebut Defendants' contention and to establish that Defendants' need aware admissions practices were geared at constraining student body diversity in favor of revenue.

In sum, unless *each and every Defendant* concedes (i) having practiced non-need-blind admissions *and* concedes (ii) Plaintiffs' inability to have discovered their injury for the purposes of their Statute of Limitations defenses, and concedes (iii) that they did not use the conspiracy to create a more diverse student body, Plaintiffs remain entitled to discovery concerning the non-need-blind admissions practices of each and every Defendant.

## C. Issues That Are Not Yet Ripe But Would Benefit From The Court's Guidance

Mindful of the magnitude of discovery still remaining and the finite window in which to conduct it, there are two additional issues that, while not yet ripe for the Court's decision, Plaintiffs request that the Court facilitate the diligent resolution of these issues.

### 1. *Discovery of Post-January 9, 2022 Communications*

At least fifteen of the seventeen Defendants have taken the position that they will not produce documents created after January 9, 2022 at the latest (and five Defendants are asserting that they will assert an even earlier end date because they claim to have "withdrawn" from the conspiracy at some point.). Plaintiffs are entitled to *all* discovery *at least* through November 4,

14