# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, <br><br> Defendants. | Case No.   1:22-cv-00125 <br><br> Judge Matthew F. Kennelly |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL DISCOVERY FROM PLAINTIFFS

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

    I.     Interrogatories ................................................................................................. 2

          A.     Interrogatory No. 1 (Applications for Admission and Financial
                Aid) ....................................................................................................... 2

          B.     Interrogatory No. 2 (Sources of Financial Aid) ........................................... 4

          C.     Interrogatory No. 3 (Relevant Market) ...................................................... 7

    II.    Requests for Production .................................................................................. 9

          A.     Request No. 1 (Reasons Plaintiff Applied to an Institution);
                Request No. 7 (College Comparisons and Rankings); and Request
                No. 23 (Market Definition) ....................................................................... 9

          B.     Request No. 2 (Applications for Admission to Defendant
                Universities) ........................................................................................ 11

          C.     Request No. 3 (Applications for Financial Aid and Supporting
                Documents) ......................................................................................... 11

          D.     Request No. 5 (Third-Party Scholarships and Financial Aid) ................. 11

          E.     Request No. 6 (Financial Aid Declined) .................................................. 11

           F.     Request No. 11 (Plaintiffs' Involvement in Litigation) ............................ 12

          G.     Request No. 12 (Engagement Letters, Fee Arrangements)...................... 13

          H.     Request No. 18 (Loan Modification); Request No. 26 (Loan
                Payment History) ................................................................................. 13

          I.     Request No. 19 (Satisfaction with Institution and Value of
                Education) ........................................................................................... 14

          J.     Request No. 20 (Social Media Usernames) ............................................. 14

          K.     Request No. 21 (Social Media Posts About a Plaintiff's Institution) ....... 14

          L.     Request No. 24 (Tuition and Other Payments) ........................................ 15

          M.    Request No. 25 (Loan Agreements) ........................................................ 15

    CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Advantage Industial Sys. v. Aleris Rolled Prods.*,
2020 U.S. Dist. LEXIS 136305 (W.D. Ky. July 31, 2020) ....................................................7

*Apple Inc. v. Pepper*,
139 S. Ct. 1514 (2019)...........................................................................................................4, 5

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962).....................................................................................................................3

*California v. Sutter Health Sys.*,
84 F. Supp. 2d 1057 (N.D. Cal. 2000) ......................................................................................3

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.*,
227 F.R.D. 313 (C.D. Cal. 2004) ..............................................................................................8

*City of Moses Lake v. United States*,
2005 WL 8158741 (E.D. Wash. Nov. 29, 2005) .......................................................................8

*Ctr. Video Indus. Co. v. United Media, Inc.*,
1992 U.S. Dist. LEXIS 1502 (N.D. Ill. Feb. 7, 1992) .............................................................3

*Dougherty v. Drew Univ.*,
534 F. Supp. 3d 363 (D.N.J. 2021) ...........................................................................................6

*Fiore v. Univ. of Tampa*,
568 F. Supp. 3d 350 (S.D.N.Y. 2021)........................................................................................5

*Human Rts. Def. Ctr. v. Jeffreys*,
2022 U.S. Dist. LEXIS 171469 (N.D. Ill. Sept. 22, 2022) ....................................................12

*In re Domestic Drywall Antitrust Litig.*,
300 F.R.D. 228 (E.D. Pa. 2014).................................................................................................8

*Israel v. Bucon*,
2018 U.S. Dist. LEXIS 246621 (N.D. Ill. Sept. 25, 2018) ................................................14, 15

*Miller v. Calvin*,
1984 U.S. Dist. LEXIS 21057 (D. Colo. Dec. 20, 1984)...........................................................9

*Phipps v. Wal-Mart Stores Inc.*,
2018 WL 11415280 (M.D. Tenn. Mar. 9, 2018) .......................................................................8

ii

*Pouncil v. Branch L. Firm,*
    277 F.R.D. 642 (D. Kan. 2011)................................................................8

*Pruitt v. Pers. Staffing Grp., LLC,*
    2020 U.S. Dist. LEXIS 99774 (N.D. Ill. June 8, 2020) ..........................9

*Sadowski v. Med1online, LLC,*
    2008 WL 11343444 (N.D. Ill. Oct. 7, 2008)...........................................4

*United States v. Brown University,*
    5 F.3d 658 (3d Cir. 1993) .......................................................................7

*Westman Comm'n Co. v. Hobart Int'l, Inc.,*
    796 F.2d 1216 (10th Cir. 1986) ..............................................................3

**FEDERAL RULES**

Fed. R. Civ. P. 11(b)(2)..................................................................................7

Fed. R. Civ. P. 11(b)(3)..................................................................................7

Fed. R. Civ. P. 23 ...........................................................................................1

**FEDERAL REGULATIONS**

34 CFR § 673.5.............................................................................................11

**TREATISES**

Charles Alan Wright & Arthur R. Miller,
    *8B Fed. Prac. & Proc.* § 2206 (3d ed. 2022).......................................12

**MISCELLANEOUS**

2022-23 Federal Student Aid Handbook, https://fsapartners.ed.gov/knowledge-center/fsa-handbook/2022-2023/vol3/ch7-packaging-aid .........................................6

## **INTRODUCTION**

In their opposition brief, Plaintiffs double down on their refusal to produce a wide range of discovery that goes to core issues in this case. While their refusal by itself is striking, what is most eye-opening is how they justify it. Plaintiffs argue that much of the discovery is irrelevant because, as they see it, they have *already won* on liability and other issues, making the case "largely about damages." They also contend that, because the case is a putative class action and they are but a handful of representatives of a potentially large class, their individual records are meaningless. And they state that, because Plaintiffs themselves do not intend to use the requested information, there is no need for Defendants to obtain it either.

But Plaintiffs cannot avoid discovery by unilaterally declaring issues resolved in their favor, particularly where, as here, the discovery sought is central to disputed questions such as Defendants' alleged agreement, Plaintiffs' alleged injuries, and the contours of the claimed relevant market. Indeed, the facts and law do not back Plaintiffs' bravado. For instance, the evidence will show Defendants did *not* agree to use, nor did they all in fact use, a particular methodology to assess financial need and, in any event, their collaboration on best practices does *not* violate the antitrust laws.

Nor can Plaintiffs insulate themselves from discovery on the ground that they might eventually represent a class. No class has been certified, and, for multiple reasons including the individualized nature of financial aid awards, Plaintiffs' ability to satisfy Rule 23 is dubious at best. In any event, Plaintiffs have *volunteered* to *represent* the putative class – likely in return for some benefit – and doing so comes with the obligation to participate in discovery, including so that Defendants can test Plaintiffs' adequacy as representatives (as many of Defendants' requests are designed to do).

Plaintiffs' other arguments are equally unavailing. For example, their insistence that they

alone are direct purchasers of their undergraduate educations, even if their parents or others directly paid for that education and Plaintiffs paid nothing, ignores Supreme Court precedent (among other flaws). At minimum, Defendants are entitled to *discover facts* to determine whether Plaintiffs or others truly are direct purchasers. And Plaintiffs' argument about burden is especially egregious. Plaintiffs have propounded hundreds of discovery requests concerning myriad topics of marginal relevance to this case, yet refuse to perform reasonable searches to produce documents that are core to many of the key issues in this case on the vague basis that Defendants' requests are "intrusive" and "unnecessary." They plainly are not, and in any event, such boilerplate objections are not sufficient to demonstrate disproportionality under the Federal Rules.

The Court should grant Defendants' Motion.

**ARGUMENT**

## I.    INTERROGATORIES

### A.    Interrogatory No. 1 (Applications for Admission and Financial Aid)

Plaintiffs allege that, due to Defendants' conduct, they received insufficient financial aid to attend college, which increased their costs of college in a certain relevant market. Second Am. & Suppl. Class Action Compl. ¶ 133, ECF No. 266-1 ("SAC"). It is thus absurd to argue, as Plaintiffs do, that their financial aid awards, financial aid applications, and college choices are irrelevant. Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Compel Disc. at 2-3, ECF No. 298 ("Pls. Opp'n"). A claim about financial aid necessarily opens the door to discovery about financial aid. Nothing in Plaintiffs' possession could be more relevant than their financial aid information. Similarly, allegations about the relevant market put Plaintiffs' college choices at issue.

Also baseless is Plaintiffs' contention that variation among Defendants' financial aid awards has no bearing on whether Defendants conspired to suppress financial aid awards for admitted students. *Id.* at 2. Variations in price provide perhaps the most compelling evidence that

2

prices are not fixed.  *See Ctr. Video Indus. Co. v. United Media, Inc.*, 1992 U.S. Dist. LEXIS 1502, at *7-8 (N.D. Ill. Feb. 7, 1992) ("A dealer's varying resale prices demonstrate that no resale price maintenance agreement existed between the manufacturer and dealer.").  The probative value of that relevant evidence is a matter for summary judgment or trial, not a basis to withhold discovery.

Plaintiffs argue that their individual views of the alleged market are irrelevant to market definition, and they suggest that a market can be proved only by statistical analysis.  Pls. Opp'n at 3.  But they ignore well-established antitrust principles.  First*,* market definition is an issue of fact about which products are reasonably interchangeable in the eyes of consumers.  *Westman Comm'n Co. v. Hobart Int'l, Inc.*, 796 F.2d 1216, 1221 (10th Cir. 1986).  Second, product markets "may be determined by examining such practical indicia as industry or public recognition of the submarket as a separate economic entity."  *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962).  Third, while the relevant market is often a subject of expert opinion, such opinion must be founded in fact, which includes the views and decisions of the parties.  *See, e.g.*, Disc. Order at 2, *Simon & Simon, PC, et al. v. Align Tech., Inc.*, No. 20-cv-03754 (N.D. Cal. Jan. 17, 2023), ECF No. 255 ("Economic expert opinions are almost never accepted at face value by the other side, and a common criticism is that an expert made some assumption that is contrary to the facts.  *If the named plaintiff's own dentists testify that physical impressions are a good substitute for iTero, then an opinion to the contrary by Plaintiffs' expert would look foolish.*") (emphasis added).  Indeed, elsewhere in their brief, Plaintiffs cite a decision that recognizes the potential "probative value" of "non-empirical data" for evaluating an alleged market.  *California v. Sutter Health Sys.*, 84 F. Supp. 2d 1057, 1080 (N.D. Cal. 2000); *see* Pls. Opp'n at 13-14.

The bottom line is that this interrogatory seeks information central to Plaintiffs' allegations.  *See* Mem. in Supp. of Defs.' Mot. to Compel Disc. from Pls. at 3-4, ECF No. 275-1 ("MTC").

Plaintiffs do not argue it would be burdensome to answer it, and they cannot avoid responding on the basis that the information *may be* in Defendants' files.[1] *See id.* at 3-4 (collecting authority). Plaintiffs cite a single decision to support their argument that Defendants must mine their own records and answer this interrogatory themselves. Pls. Opp'n at 3 (citing *Sadowski v. Med1online, LLC*, 2008 WL 11343444, at *2 (N.D. Ill. Oct. 7, 2008)). But that case does not support Plaintiffs' position. The dispute in *Sadowski* involved a document request for eight years of phone records, and the court ordered the plaintiff to *produce* the records, only limiting production of phone records not included in the complaint. That decision thus supports *Defendants*.

### B.     Interrogatory No. 2 (Sources of Financial Aid)

This interrogatory is relevant to injury, standing, damages, class certification, and more, *see* MTC at 4-6, and Plaintiffs do not claim answering it would be burdensome.

Instead, Plaintiffs assert that the discovery is irrelevant because they – and they alone – are direct purchasers. But simply repeating something does not make it so, and Plaintiffs do not get to decide contested issues in this case. Moreover, Plaintiffs' claim is at odds with the economic reality that others, most notably parents, frequently pay some or all of a student's college costs directly to a university. That Plaintiffs may be direct purchasers does not exclude the likely fact that their parents were also direct purchasers of Plaintiffs' educations. Defendants are entitled to take the discovery needed to test whether Plaintiffs are direct purchasers (or the only direct purchasers), MTC at 4, especially in light of *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1521 (2019), where the Supreme Court held that direct purchasers are those who pay the defendant without an

---

[1] Plaintiffs suggest that they cannot answer this interrogatory with the information in their files. Pls. Opp'n at 2-3. Even if true – and it would be very surprising if every Plaintiff lacks *any* responsive information – that simply affects how Plaintiffs respond; it does not make the requested discovery objectionable. Plaintiffs' claim that they lack information also bolsters Defendants' arguments for subpoenaing Plaintiffs' parents. Defs.' Mem. of Law in Opp'n to Pls.' Mot. for Protective Order at 9-10, ECF No. 279 ("Defs. Opp'n to PO").

intermediary. Indeed, the Court held that the absence of an intermediary "is dispositive." *Id.* Plaintiffs do not even attempt to distinguish this case from *Apple*. In fact, Plaintiffs' citation to *Apple* proves the point: "direct purchasers . . . are the immediate buyers." Pls. Opp'n at 5. That describes *the parents* in many cases, including possibly Plaintiffs' parents.

Plaintiffs argue at length that parties cannot take discovery about passed-on overcharges. *Id.* at 5-6. But as Defendants have explained in a parallel dispute, pass-on is not at issue here. Defs. Opp'n to PO at 7-8. Plaintiffs' pass-on argument appears to result from their conflation of "consumer" and "purchaser." Pls. Opp'n at 5-6. While it is true that the student "consumes" education, that does not make the student a purchaser any more than a child who goes on a vacation paid for by her parent becomes the purchaser of that vacation. The child does not "pass on" the cost of the vacation to her parent.

Plaintiffs also argue that only students, not parents, have a contractual relationship with the university, which they contend makes students the only direct purchasers because the parents lack standing to "assert claims for the overpayments of tuition." *Id.* at 4. Plaintiffs base that claim, however, on cases in which parents sued colleges for breach of contract and alleged that their children did not receive the benefits of attending college in person during the COVID-19 pandemic. *See, e.g.*, *id.* at 4-5 (citing *Fiore v. Univ. of Tampa*, 568 F. Supp. 3d 350, 365-67 (S.D.N.Y. 2021) (dismissing parents' claim for breach of contract because "the benefits of the promises that Plaintiffs allege were breached are exclusively benefits that would flow to the students")). This is not a breach of contract case, and the alleged injury here has nothing to do with educational benefits promised to the student. But even assuming privity of contract is relevant, the parties need discovery to explore who has relevant contractual relationships (if anyone). In addition, contrary to Plaintiffs' contention, courts have held that parents who pay

tuition do have standing to sue their children's schools.  *See Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 372 (D.N.J. 2021) (declining to dismiss parent on standing grounds because parent paid university, creating contractual relationship).

Independent of the direct purchaser question, Defendants need discovery about third-party sources of aid, or Estimated Financial Assistance ("EFA"), because such aid affects how much need-based aid an institution may permissibly award.  *See* MTC at 5-6.  In the words of the federal government, "total financial aid [which includes need-based aid] and other Estimated Financial Assistance (EFA) *must not exceed* the student's cost of attendance (COA)."  2022-23 Federal Student Aid Handbook, https://fsapartners.ed.gov/knowledge-center/fsa-handbook/2022-2023/vol3/ch7-packaging-aid (emphasis added).  It follows that, if a university awarded a student the maximum amount of aid allowed by law, the student cannot claim she was owed more.  Plaintiffs ignore this, responding only that an overcharge calculation must "hold[] all else constant."  Pls. Opp'n at 6-7.  Whatever that means – the cases they cite merely describe the basic concept of but-for causation – it cannot mean that Defendants are prohibited from taking discovery to determine if it was even possible for a Plaintiff to receive a higher aid award and, if so, how much higher.

Plaintiffs suggest that Defendants do not need to calculate what an individual Plaintiff might have received using an alternative methodology (*i.e.*, in the "but-for" world) because Plaintiffs are not going to perform those calculations themselves.  *Id.* at 6-7.  Rather, they claim they will produce "statistical analyses about students' overpayments."  *Id.* at 6.  While Plaintiffs are welcome to concoct whatever analysis they please to try to prove their case, Defendants are not bound by Plaintiffs' choices and have a right to take discovery to inform their own analyses of Plaintiffs' alleged overpayments, such as determining whether a class representative would have

received more aid at all in the Plaintiffs' hypothesized but-for world.

This discovery is also relevant to Plaintiffs' claimed injury. For example, it could show that a Plaintiff paid nothing to her university. Plaintiffs do not even address the cases holding that a Plaintiff who pays nothing has suffered no injury. MTC at 5-6.

Finally, Defendants assert that Plaintiffs failed to mitigate their damages. *Id.* at 6. Plaintiffs do not actually contest that this interrogatory is relevant to that defense – it plainly is. Instead, Plaintiffs resort to arguing that failure to mitigate is not a viable defense in this case. Pls. Opp'n at 6. But, as Defendants have already explained, Plaintiffs' argument relies entirely on cases where the alleged conduct is *per se* unlawful. MTC at 6. In rule-of-reason cases, failure to mitigate is a viable defense. *Id.* It does not matter that Plaintiffs hope that *per se* analysis will eventually apply. What matters is that there is a colorable argument that, consistent with the approach taken by the Third Circuit in *United States v. Brown University*, 5 F.3d 658, 661 (3d Cir. 1993), Plaintiffs' antitrust claim should be analyzed under the rule of reason – meaning that discovery into their failure to mitigate is proper.

### C. Interrogatory No. 3 (Relevant Market)

Plaintiffs argue that they should not be required to answer an interrogatory about their alleged relevant market because doing so would compel them to "prematurely take a position." Pls. Opp'n at 7. But having devoted twenty paragraphs of their complaint to market definition, SAC ¶¶ 243-63; Plaintiffs have already taken a position on the alleged market, and Defendants should be permitted to understand their position through discovery. "*Even at an early stage of litigation*, requiring a party to answer contention interrogatories is consistent with Fed. R. Civ. P. 11(b)(2) and (3) because the party is expected to have some good faith basis in fact and law for the claim or defense being asserted." *Advantage Industial Sys. v. Aleris Rolled Prods.*, 2020 U.S. Dist. LEXIS 136305, at *8 (W.D. Ky. July 31, 2020) (emphasis added). Thus, "Plaintiffs should

provide the facts currently available, from the information that has already been exchanged and from their own investigation." *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 228, 231 (E.D. Pa. 2014).[2] Moreover, the Federal Rules plainly contemplate that a party may amend its discovery responses as more information becomes available, and Defendants expressly stated that Plaintiffs "can amend their discovery responses" if their market definition changes. MTC at 7. The time for answering Defendants' discovery requests is now; prematurity is no basis not to respond.

Nor can Plaintiffs refuse to respond to Interrogatory No. 3 by claiming the protections of work product. Plaintiffs' only support for this refusal is a single decision in which a court held that plaintiffs did not have to produce a "refined statistical analysis" referenced in their complaint. Pls. Opp'n at 7 (citing *Phipps v. Wal-Mart Stores Inc.*, 2018 WL 11415280, at *3 (M.D. Tenn. Mar. 9, 2018)). But that is not this case: Defendants are not asking for Plaintiffs' analysis – *i.e.*, how they determined which institutions are in the alleged market – just the output alleged in their complaint. Plaintiffs' own authority underscores the difference and why the work product doctrine does not apply here. The plaintiffs in *Phipps* did not "utilize the analysis in dispute . . . by pleading the specific statistical results." *Id.* Here, Plaintiffs have pled the results of their analysis. *See, e.g.*, SAC ¶ 255 (alleging "the percentage of undergraduate slots that the participants in the conspiracy have controlled within this market"); *id.* ¶ 254 (alleging statement by university president is "90% identical with the market as Plaintiffs define it"). Plaintiffs cannot use analytical allegations as both sword and shield; Defendants are entitled to discover this relevant information.

---

[2] *See also Pouncil v. Branch L. Firm*, 277 F.R.D. 642, 650 (D. Kan. 2011) (granting motion to compel responses and finding "no persuasive reason" to defer answers to contention interrogatories until after the close of discovery and noting that responding party will have later opportunities to supplement answers); *City of Moses Lake v. United States*, 2005 WL 8158741, at *4 (E.D. Wash. Nov. 29, 2005) (stating that, although fact discovery was not yet closed, plaintiff "ha[d] received enough discovery and ha[d] performed sufficient investigation to provide at least partial 'meaningful answers' to the [contention] interrogatories 'at this juncture'"); *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 323 (C.D. Cal. 2004) (holding that "objection that the [contention] interrogatories were 'premature' is unavailing").

## II.     REQUESTS FOR PRODUCTION

### A.     Request No. 1 (Reasons Plaintiff Applied to an Institution); Request No. 7 (College Comparisons and Rankings); and Request No. 23 (Market Definition)

Each of these requests seeks documents concerning Plaintiffs' alleged relevant market. MTC at 8-9.  Plaintiffs object to this discovery by arguing that they do not need to define a market, because they say Defendants' alleged conduct is *per se* unlawful.  Pls. Opp'n at 8-10.  Plaintiffs are wrong, but, either way, while the issue is disputed, this discovery remains proper.  The inclusion of lengthy allegations about the alleged market in Plaintiffs' complaint also makes that topic fair game for discovery.  MTC at 8-9.

Plaintiffs also rehash the argument that their own documents relating to market definition do not matter, because Plaintiffs are small fish in a large putative class.[3]  Pls. Opp'n at 9-10.  First, this case is not – and may never be – a certified class action, and the mere prospect that it could be is not a basis to refuse this discovery.  Second, as class representatives, Plaintiffs have an obligation to participate in discovery.  Indeed, "[t]aking an active and honest and attentive and [sic] role in discovery is one of the hallmarks of an otherwise adequate class representative." *Pruitt v. Pers. Staffing Grp., LLC*, 2020 U.S. Dist. LEXIS 99774, at *19 (N.D. Ill. June 8, 2020); *see also Miller v. Calvin*, 1984 U.S. Dist. LEXIS 21057, at *10-11 (D. Colo. Dec. 20, 1984) ("A class representative must also participate in discovery.  'One who will not comply wholeheartedly and fully with the discovery requirements of modern federal practice, is not to be regarded by this Court as one to whom the important fiduciary obligation of acting as a class representative should be entrusted.'").  Third, if Plaintiffs' class representatives behaved differently than the typical class member, that fact bears on whether their claims are typical of the class.

---

[3] Plaintiffs' efforts to downplay the significance of their documents is unsurprising given that discovery has already revealed that they applied to colleges *outside* their alleged market.  MTC at 8.

Plaintiffs' argument also fails for the reasons described above with respect to Interrogatory No. 1. That Plaintiffs plan to ask a purported expert to opine about market definition also does not remove that topic from the ambit of fact discovery from fact witnesses.[4] *See* Pls. Opp'n at 9.

Plaintiffs' objection that "the burden of searching through thousands of personal emails outweighs any marginal relevance," *id.* at 9, of responsive documents is also meritless. As an initial matter, Plaintiffs cannot possibly know the true burden of reviewing their documents at this juncture, because the parties are still negotiating search terms. There is also no way of knowing what burden Plaintiffs are even identifying here, where Plaintiffs have offered no information about whose files they searched to determine there were "thousands" of documents to sift through (one Plaintiff's files or multiple Plaintiffs' files) and how they performed this search. Additionally, Plaintiffs are individuals, and because Defendants have agreed to let them use search terms to reduce the documents they must review, it is unlikely Plaintiffs will have voluminous responsive documents to produce.

More fundamentally, the opaque "burden" about which Plaintiffs complain cannot possibly be disproportionate to the needs of this case. Plaintiffs are pursuing "billions of dollars" in alleged damages, SAC ¶ 7, and these targeted discovery requests go directly to market definition, a core and potentially dispositive issue in this case.[5] These requests are proper, and Plaintiffs must respond to them.

---

[4] Plaintiffs argue that they need only produce documents that they created (not documents created by others) because Defendants can ask Plaintiffs about documents such as a Barron's College Guide without obtaining that guide from Plaintiffs. Pls. Opp'n at 9. Setting aside the many other relevant documents that Plaintiffs' proposal would exclude, MTC at 8-9, Plaintiffs' mere possession of such materials is relevant, and Defendants have a right to know Plaintiffs possess them. That said, Defendants long ago advised Plaintiffs that they would discuss with them ways to limit the burden of producing large publications.

[5] Market definition is also an issue particularly suitable for possible early resolution of the case, because Plaintiffs' alleged market of "private national universities with an average ranking of 25 or higher in the *U.S. News & World Report* rankings from 2003 through 2021," SAC ¶ 244, is farfetched in the extreme.

### B.      Request No. 2 (Applications for Admission to Defendant Universities)

As discussed relating to Interrogatory No. 1, an antitrust plaintiff's recognition that a product can be substituted for another is relevant to market definition. Thus, if a Plaintiff was accepted by, and considered matriculating at, both school A and school B, that is evidence that she viewed the schools as reasonable substitutes. If a Plaintiff wants to argue the inference that school A was a "safety school" and school B was a "reach," Pls. Opp'n at 10, and therefore they are not substitutes, she is welcome to do so. But Plaintiffs should not be able to decide the issue themselves by refusing to provide relevant discovery.

Plaintiffs also do not dispute that responsive documents may be relevant to show competition among Defendants. MTC at 10. Nor do they contend that producing them would be disproportionate to the needs of the case. This Request is proper and a response should be required.

### C.      Request No. 3 (Applications for Financial Aid and Supporting Documents)

In a case about financial aid, Plaintiffs' refusal to produce documents about their financial aid applications is indefensible for the reasons stated above concerning Interrogatory No. 1. The documents are directly relevant to at least class certification, injury, standing, and damages. *Id.* at 10-11. Plaintiffs identify no burden to producing them. This is not a close question.

### D.      Request No. 5 (Third-Party Scholarships and Financial Aid)

This discovery is relevant for the reasons discussed with respect to Interrogatory Nos. 1 and 2, such as assessing whether a Plaintiff has been injured and determining whether a Plaintiff would have received more financial aid in the but-for world. *See* 34 C.F.R. § 673.5(a)-(c). Plaintiffs also do not disagree that a request for "documents sufficient to show" imposes limited burden. MTC at 11.

### E.      Request No. 6 (Financial Aid Declined)

Documents responsive to this request are relevant to whether Defendants offered aid

packages superior to those offered by other schools, which bears on Plaintiffs' allegation that Defendants "artificially reduced financial aid." SAC ¶ 133; *see also* MTC at 11. Plaintiffs respond that differences among individual aid packages are irrelevant because Plaintiffs will attempt to show overcharge through some undefined "expert market-wide analysis." Pls. Opp'n at 11-12. Plaintiffs' proof preferences and fact avoidance, however, are not a basis to deny Defendants discovery that would support their defense. Additionally, these documents are relevant to Defendants' mitigation defense, which, as explained above, is available in rule-of-reason cases such as this. MTC at 11. Plaintiffs' generic objection to this discovery as "disproportionate" ignores that this request narrowly seeks only "documents sufficient to show" (and highlights the hollowness of their claims about burden more broadly).

### F.     Request No. 11 (Plaintiffs' Involvement in Litigation)

Plaintiffs cannot reasonably dispute that how a plaintiff became involved in a litigation is relevant to her adequacy as a class representative. MTC at 12. The discovery is also relevant to Defendants' statute of limitations defense (*i.e.*, showing when Plaintiffs became aware of their alleged injuries).

Plaintiffs resort to calling this request a "fishing expedition." Pls. Opp'n at 12. However, "the use of the term 'fishing expedition' by the party opposing discovery is old, tired, and no longer persuasive." *Human Rts. Def. Ctr. v. Jeffreys*, 2022 U.S. Dist. LEXIS 171469, at *7 (N.D. Ill. Sept. 22, 2022) (citations omitted) ("'[S]ome amount of fishing is generally necessary in the pretrial discovery process.' '[O]f course, pretrial discovery is a fishing expedition and one can't know what one has caught until one fishes.'"); *see also* Charles Alan Wright & Arthur R. Miller, *8B Fed. Prac. & Proc.* § 2206 (3d ed. 2022) ("[A]n objection that a request for inspection is a fishing expedition should be given short shrift. It is true that the party seeking discovery must still designate what it wishes to inspect, *but all this obstacle means is that the would-be angler must*

*have a general idea of what kind of fish he or she is hoping to catch*.") (emphasis added).

Plaintiffs object that the discovery would be burdensome, Pls. Opp'n at 12, a claim that is both unsubstantiated and counterintuitive, given that Plaintiffs are unlikely to possess voluminous documents about how they became involved in this case. They also argue the responsive documents are privileged, but even if a privilege applies, that is no basis for refusing to provide the discovery outright rather than logging the privileged documents in accordance with the ESI Protocol. *See* ESI Protocol, ECF No. 261. In fact, the logged documents, including their dates and other non-privileged information, may be highly relevant to, for example, when Plaintiffs knew or could have known about potential claims. Finally, Plaintiffs' objection on "ambiguity" grounds is itself ambiguous. If Plaintiffs had questions about the meaning of the request, they should have asked them during the parties' negotiations.[6] They did not.

### G. Request No. 12 (Engagement Letters, Fee Arrangements)

In their brief, Plaintiffs for the first time agreed to "produce their engagement letters by January 31, 2023." Pls. Opp'n at 13. As of today, however, Plaintiffs have not produced their engagement letters to Defendants, so Defendants do not yet know what they contain. To the extent Plaintiffs' engagement letters do not include information "about the terms of Plaintiffs' engagement of counsel, the persons responsible for litigation costs, and Plaintiffs' share of any damages," MTC at 13, Plaintiffs must provide this information as well.

### H. Request No. 18 (Loan Modification); Request No. 26 (Loan Payment History)

Plaintiffs' objection to these requests is based solely on their claim to be direct purchasers. Pls. Opp'n at 13. Plaintiffs ignore the requests' relevance to damages, and they notably do not

---

[6] In several instances, Plaintiffs contend that the parties did not discuss a particular request during prior negotiations. This is not accurate. The parties had multiple calls and discussed all of these topics. Defendants explained their reasons for seeking the discovery, and Plaintiffs gave their final positions on most requests many weeks ago. These issues are ripe for resolution.

forswear any claim to damages based on student loans, including interest payments. MTC at 13. Defendants should be able to take this discovery to assess any damages Plaintiffs may claim based on loan payments. In addition, a Plaintiff who paid nothing for college is uninjured and lacks standing, *see id.*, and loan forgiveness bears on that question.

### I.  Request No. 19 (Satisfaction with Institution and Value of Education)

For reasons already stated, Plaintiffs' perspectives on the alleged market are relevant. The documents sought by this request fall into that category. For instance, they bear on the factors by which Plaintiffs evaluate whether one university is a substitute for another, among other things.

### J.  Request No. 20 (Social Media Usernames)

Plaintiffs do not deny that their social media accounts include relevant communications. MTC at 14. They complain that Defendants have not specified what relevant materials are in those accounts, Pls. Opp'n at 14, but of course doing so is impossible before taking discovery, and such specification is unnecessary. *See, e.g.*, *Israel v. Bucon*, 2018 U.S. Dist. LEXIS 246621, at *7 (N.D. Ill. Sept. 25, 2018) (compelling production of social media sites used, usernames, and responsive posts because "it is not outrageous for [defendant] to conclude that [relevant] evidence may be posted on [plaintiff's] social media accounts"). Plaintiffs' argument that the discovery would be "intrusive," Pls. Opp'n at 14, makes no sense given that Plaintiffs themselves control what they make public on social media and this Request is only for their usernames, not log-in credentials.

### K.  Request No. 21 (Social Media Posts About a Plaintiff's Institution)

Despite effectively conceding that they use social media to communicate for relevant purposes, Plaintiffs attempt to unreasonably restrict what they will produce from social media to documents "about the 568 conspiracy or whether the Defendants conducted need-blind admissions." *Id.* at 14-15. Plaintiffs would exclude documents about financial aid, college choices, and other relevant topics. MTC at 14. All of their social media communications and

14

posts about the institutions they attended are relevant to their claims and should be produced. They have not shown, or even attempted to show, that doing so would be burdensome. *See Israel*, 2018 U.S. Dist. LEXIS 246621, at *7. In fact, they declined an invitation from Defendants to propose a method for producing social media materials.

### L.      Request No. 24 (Tuition and Other Payments)

Plaintiffs state that they have agreed to produce documents in response to this request. Pls. Opp'n at 15. But in the parties' negotiations, Plaintiffs refused to produce documents about payments by third parties. Additionally, in the parties' correspondence, Plaintiffs identified no documents they are willing to produce and wrote, "Plaintiffs stand on their objections." *See* MTC Ex. 6, ECF No. 275-9.

If Plaintiffs are now agreeing to produce documents about all payments covered by this request (which seeks only documents "sufficient to show"), then there is no dispute. If they are not, they should be ordered to do so because information about the payments is relevant to injury and damages as well as the amount of need-based financial aid Plaintiffs would have received in the but-for world.

### M.      Request No. 25 (Loan Agreements)

The requested documents are relevant to the assertion that Defendants colluded (*e.g.*, showing differences in aid packages and how Plaintiffs viewed competing loan offers) as well as any damages that Plaintiffs claim for loan payments, including interest. MTC at 15. Plaintiffs' response focuses entirely on their status as purported direct purchasers, ignoring the other reasons the documents are relevant – each of which is sufficient on its own to order this discovery. Plaintiffs also identify no burden to producing these materials.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendants' motion to compel.

Dated: February 1, 2023

By:/s/ Deepti Bansal
Deepti Bansal
Alexander J. Kasner
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
Tel: 202-728-7027
dbansal@cooley.com
akasner@colley.com

Matthew Kutcher
COOLEY LLP
110 N. Wacker Drive
Chicago, IL 60606
Tel: 312-881-6500
mkutcher@cooley.com

*Counsel for Defendant California Institute of Technology*

By:/s/ Patrick Fitzgerald
Patrick Fitzgerald
Amy Van Gelder
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 N. Wacker Drive
Chicago, IL 60606-1720
Tel: 312-407-0508
patrick.fitzgerald@skadden.com
amy.vangelder@skadden.com

Karen Hoffman Lent
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
Room 40-216
New York, NY 10001-8602
Tel: 212-735-3276
karen.lent@skadden.com

*Counsel for Defendant The Trustees of Columbia University in the City of New York*

Respectfully submitted,

By:/s/ Kenneth Kliebard
Kenneth Kliebard
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Suite 2800
Chicago, IL 60606-1511
Tel: 312-324-1000
kenneth.kliebard@morganlewis.com

Jon R. Roellke
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel: 202-739-5754
jon.roellke@morganlewis.com

Sujal Shah
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower, 28th Floor
San Francisco, CA 94105-1596
Tel: 415-442-1386
sujal.shah@morganlewis.com

*Counsel for Defendant Brown University*

By:/s/ James L.Cooper
James L. Cooper
Michael Rubin
Tommy LaVoy
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Tel: 202-942-5014
james.cooper@arnoldporter.com
michael.rubin@arnoldporter.com
tommy.lavoy@arnoldporter.com

Leah Harrell
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Tel.: 212-836-7767
Leah.Harrell@arnoldporter.com

By:/s/ Terri L. Mascherin
Terri L. Mascherin
Reid J. Schar
JENNER & BLOCK LLP
353 N. Clark Street,
Chicago, IL 60654-3456
Tel: 312-222-9350
tmascherin@jenner.com
rschar@jenner.com

Ishan K. Bhabha
Douglas E. Litvack
Lauren J. Hartz
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Tel: 202-637-6327
ibhabha@jenner.com
dlitvack@jenner.com
lhartz@jenner.com

*Counsel for Defendant Trustees of Dartmouth College*

By:/s/ Tina M. Tabacchi
Tina M. Tabacchi
JONES DAY
77 West Wacker Drive
Suite 3500
Chicago, IL 60601-1692
Tel.: 312-782-3939
tmtabacchi@jonesday.com

Craig A. Waldman
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
Tel.: 202-879-3877
cwaldman@jonesday.com

*Counsel for Defendant Emory University*

By:/s/ Eric Mahr
Eric Mahr
Jan Rybnicek

Valarie Hays
ARNOLD & PORTER KAYE SCHOLER LLP
70 W Madison Street
Suite 4200
Chicago, IL 60602
Tel.: 312-583-2440
valarie.hays@arnoldporter.com

*Counsel for Defendant University of Chicago*

By:/s/ Norm Armstrong
Norm Armstrong
Christopher Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
Tel.: 202-626-8979
narmstrong@kslaw.com
cyook@kslaw.com

Emily Chen
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel: 212-556-2224
echen@kslaw.com
Zachary T. Fardon
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
312 764 6960
zfardon@kslaw.com

*Counsel for Defendant Cornell University*

/s/ James A. Morsch
James A. Morsch
Jim.morsch@saul.com
SAUL EWING ARNSTEIN & LEHR
161 North Clark, Suite 4200
Chicago, IL 60601
Telephone: (312) 876-7100
Facsimile: (312) 876-0288

17

Daphne Lin
FRESHFIELDS BRUCKHAUS DERINGER
700 13th Street, NW
Washington, DC 20005
Tel: 202-777-4500
eric.mahr@freshfields.com
jan.rybnicek@freshfields.com
daphne.lin@freshfields.com

*Counsel for Defendant Massachusetts Institute of Technology*

By:/s/ Scott D. Stein
Scott D. Stein
Benjamin R. Brunner
Kelsey Annu-Essuman
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
Tel.: 414-559-2434
sstein@sidley.com
bbrunner@sidley.com
kannuessuman@sidley.com

*Counsel for Defendant Northwestern University*

By:/s/ Robert A. Van Kirk
Robert A. Van Kirk
Cole T. Wintheiser
Jonathan Pitt
Matthew D. Heins
Sarah F. Kirkpatrick
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: 202-434-5163
rvankirk@wc.com
cwintheiser@wc.com
jpitt@wc.com
mheins@wc.com
skirkpatrick@wc.com

James Peter Fieweger
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street
Suite 3200

IL Attorney ID #6209558

Christopher D. Dusseault (pro hac vice)
cdusseault@gibsondunn.com
Jacqueline L. Sesia
jsesia@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000

*Counsel for Defendant Duke University*

By:/s/ Britt M. Miller
Britt M. Miller
Daniel T. Fenske
Jed W. Glickstein
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312-783-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com
jglickstein@mayerbrown.com

*Counsel for Defendant Georgetown University*

By:/s/ Jeffrey J. Bushofsky
Jeffrey J. Bushofsky
ROPES & GRAY LLP
191 North Wacker Drive 32nd Floor
Chicago, IL 60606-4302
Tel: 312-845-1200
jeffrey.bushofsky@ropesgray.com

Chong S. Park
Samer M. Musallam
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Tel: 202-508-4600
chong.park@ropesgray.com
samer.musallam@ropesgray.com

*Counsel for Defendant Johns Hopkins University*

18

Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for Defendant University of Notre Dame du Lac*

By: /s/ David Gringer
David Gringer
Alan Schoenfeld
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: 212-230-8800
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Seth Waxman
WILMER CUTLER PICKERING HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel: 202-663-6800
seth.waxman@wilmerhale.com

Edward W. Feldman
Daniel Martin Feeney
MILLER SHAKMAN LEVINE & FELD-MAN LLP
180 North LaSalle Street
Suite 3600
Chicago, IL 60601
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for The Trustees of the University of Pennsylvania*

By:*/s/ J. Mark Gidley*
J. Mark Gidley
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807

By:*/s/ Norm Armstrong*
Norm Armstrong
Christopher Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
Tel.: 202-626-8979
narmstrong@kslaw.com
cyook@kslaw.com
Emily Chen
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel: 212-556-2224
echen@kslaw.com

Zachary T. Fardon
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
312 764 6960
zfardon@kslaw.com

*Counsel for Defendant William Marsh Rice University*

By:*/s/ Charles A. Loughlin*
Charles A. Loughlin
Benjamin F. Holt
Jamie Lee
Molly Pallman
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
Tel: 202-637-5600
chuck.loughlin@hoganlovells.com
benjamin.holt@hoganlovells.com
jamie.lee@hoganlovells.com
molly.pallman@hoganlovells.com

Stephen Novack
Stephen J. Siegel
Serena G. Rabie

Tel: 202-626-3600
mgidley@whitecase.com

Robert A. Milne
David H. Suggs
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Tel: 212-819-8200
rmilne@whitecase.com
dsuggs@whitecase.com

*Counsel for Defendant Vanderbilt University*

NOVACK AND MACEY LLP
100 North Riverside Plaza, 15th Floor
Chicago, IL 60606-1501
Tel.: 312-419-6900
snovack@novackmacey.com
ssiegel@novackmacey.com
srabie@novackmacey.com

*Counsel for Defendant Yale University*