**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANDREW CORZO, *et al.*, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>BROWN UNIVERSITY*, et al.,*<br><br>　　　　　　　　　　Defendants. | **Case No. 1:22-cv-00125**<br><br>**Honorable Matthew F. Kennelly** |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER BY DEFENDANTS BROWN UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, TRUSTEES OF DARTMOUTH COLLEGE, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, AND YALE UNIVERSITY**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 2

I.    The Disputed Discovery Is Grossly Disproportionate to the Needs of the Case ................. 2

    A.    The Discovery Plaintiffs Seek Is Extraordinarily Burdensome .............................. 2

    B.    Plaintiffs' Arguments About Relevance Lack Merit and Cannot Justify the Extraordinary Burden They Seek to Impose on the Moving Defendants ............................................................................................................... 5

II.    More Targeted and Less Burdensome Forms of Discovery Are Available ....................... 10

CONCLUSION .............................................................................................................................. 13

**TABLE OF AUTHORITIES**

CASES

*Askew v. George Matick Chevrolet, Inc.*,
   No. 4:16-CV-13148, 2019 WL 2714771 (E.D. Mich. Feb. 4, 2019)........................................12

*Bayer Healthcare LLC v. Norbrook Laboratories, Ltd.*,
   No. 08-CV-953, 2011 WL 6046602 (E.D. Wis. Dec. 6, 2011) .................................................3

*In re Broiler Chicken Antitrust Litigation*,
   No. 16-CV-8637, 2018 WL 3398141 (N.D. Ill. July 12, 2018)..................................................6

*Burnett v. Conseco Life Insurance Co.*,
   No. 18-CV-00200, 2019 WL 8444138 (S.D. Ind. Mar. 28, 2019) ...........................................11

*Deppe v. National Collegiate Athletic Ass'n*,
   893 F.3d 498 (7th Cir. 2018) ....................................................................................................7

*Dugan v. Quanstrom*,
   No. 03-CV-0254, 2003 WL 22956124 (N.D. Ill Dec. 11, 2003).............................................12

*Glacier Optical, Inc. v. Optique Du Monde, Ltd.*,
   No. 91-CV-985, 1992 WL 58737 (D. Or. Mar. 20, 1992)........................................................6

*Hyland v. HomeServices of America, Inc.*,
   No. 05-CV-612, 2011 WL 2532908 (W.D. Ky. June 24, 2011)................................................6

*In re Independent Service Organizations Antitrust Litigation*,
   168 F.R.D. 651 (D. Kan. 1996)...............................................................................................12

*Metts v. Rogers Townsend & Thomas PC*,
   No. 10-CV-1744, 2011 WL 13318480 (D.S.C. July 1, 2011) ..................................................5

*Motorola Solutions, Inc. v. Hytera Communications Corp.*,
   365 F. Supp. 3d 916 (N.D. Ill. 2019) ......................................................................................10

*Proa v. NRT Mid-Atlantic, Inc.*,
   No. 05-CV-2157, 2008 WL 11363286 (D. Md. June 20, 2008)..............................................11

*SMH Enterprises, L.L.C. v. Krispy Krunchy Foods, L.L.C.*,
   No. 20-CV-2970, 2021 WL 6336430 (E.D. La. Jan. 15, 2021)...............................................11

*SmithKline Beecham Corp. v. Apotex Corp.*,
   No. 98-CV-3952, 2000 WL 116082 (N.D. Ill. Jan. 24, 2000).................................................11

*Thibault v. BellSouth Telecommunications, Inc.*,
   No. 07-CV-200, 2008 WL 4808893 (E.D. La. Oct. 30, 2008)................................................11

*Tom v. Saul*,
 No. 19-CV-06322, 2021 WL 1933421 (N.D. Cal. April 6, 2021) ............................................. 4

*Wilk v. American Medical Ass'n*,
 895 F.2d 352 (7th Cir. 1990) ..................................................................................................... 7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(1) ................................................................................................................ 4, 10

Fed. R. Civ. P. 26(c)(1) ..................................................................................................................... 10

**INTRODUCTION**

This case involves the single claim that Defendants illegally conspired to establish and use the same financial aid calculation methodology in order to award admitted students less financial aid than they would have otherwise received. This case would have nothing to do with Admissions policies or Development activities, but for the fact that Congress enacted a statutory antitrust exemption for "need-blind" universities that collaborate with respect to financial aid. Certain Defendants in this case rely on that Exemption, which, according to Plaintiffs, subjects those Defendants to burdensome and wide-ranging discovery into whether their admissions policies and practices are "need-blind" as Plaintiffs define that term.

But the Moving Defendants are *not* relying on the Exemption. That is, with their Answers to the Second Amended and Supplemental Complaint (Dkt. 266-1, "SAC"), the Moving Defendants have unequivocally withdrawn this Exemption defense in an effort to streamline the issues and advance resolution of the antitrust claim. *See* Dkts. 285, 287, 288, 293, 294, 299. Under Rule 26 and black letter law, that withdrawal requires reexamination of the scope of relevant and proportional discovery from the Moving Defendants about Admissions and Development. Yet, having previously acknowledged that Admissions and Development evidence is relevant only to the Exemption, Plaintiffs changed course after the Moving Defendants decided to drop the defense. Plaintiffs now argue that the Moving Defendants should face the same discovery burdens as the Defendants continuing to assert this defense—a result that would require the Moving Defendants to expend millions of dollars each collecting, reviewing, and producing discovery about a defense they no longer assert.

To reach that extreme position, Plaintiffs miscomprehend the antitrust issues, mischaracterize the scope and burden of the disputed discovery, and misread this Court's prior rulings. Plaintiffs' most fundamental flaw, however, is that they fail to address the unrebutted

evidence that the disputed discovery is unduly burdensome and grossly disproportionate to the needs of the case, let alone offer any explanation for why a more targeted and efficient means of discovering any information this Court deems genuinely relevant to the remaining issues in this case would not suffice. Plaintiffs are wrong about the purported relevance of the disputed discovery as to the Moving Defendants—and their rejection of a reasonable compromise to address that purported relevance without violating Rule 26's proportionality principle raises serious concerns about their motivations for insisting on this discovery. But the bottom line is that there are better ways to discover any genuinely relevant information than the vast (and growing) document discovery at issue here.

The Court should grant the Moving Defendants' Motion for a Protective Order.

## ARGUMENT

### I. The Disputed Discovery Is Grossly Disproportionate to the Needs of the Case.

#### A. The Discovery Plaintiffs Seek Is Extraordinarily Burdensome.

Plaintiffs have no meaningful response to the burdensomeness and disproportionality of the disputed discovery. In support of this Motion, the Moving Defendants presented substantial evidence detailing the volume of the document discovery at issue and the tremendous burden and expense of producing it. *See* Dkt. 276 ("Mot.") at 10-15 & Exs. 2-7. Plaintiffs do not even try to refute that evidence. Their cursory treatment of the proportionality analysis, *see* Dkt. 297 ("Opp'n") at 13-15, rests on mischaracterizations of the disputed discovery's scope and the Court's rulings to date.

Plaintiffs do not and cannot dispute that denial of this Motion would subject the Moving Defendants to the significant burden and expense outlined in the Motion and accompanying declarations. That burden and expense includes, among other things, collecting and reviewing hundreds of thousands of additional documents just from the *agreed* custodians—to say nothing

2

of documents from other custodians on whom Plaintiffs still insist—and querying, extracting, and de-identifying voluminous admissions databases containing millions of individual admissions records from as far back as 1998. Mot. at 11-13. Nor do Plaintiffs dispute that the added cost *per Moving Defendant* would exceed millions of dollars. *Id.* at 13. Where, as here, the party resisting discovery "has demonstrated with specificity the excessive burden that the discovery will place upon [it]," and the propounding party has "failed to rebut [the movant's] showing that the requested discovery would create an undue burden," the disputed discovery must be denied. *Bayer Healthcare LLC v. Norbrook Labs., Ltd.*, No. 08-CV-953, 2011 WL 6046602, at *5 (E.D. Wis. Dec. 6, 2011).

Plaintiffs nonetheless try to downplay the extent of the disputed discovery, tacitly acknowledging that its full scope would exceed what Rule 26 allows. To be clear, Plaintiffs *never* contest that the disputed discovery would impose the burden and expense outlined in the Motion. Rather, they attempt to make that discovery—and the attendant burden and expense—appear more reasonable by cherry-picking *examples* of the discovery they seek and trying to pass them off as the *entirety* of the disputed discovery. For instance, Plaintiffs misleadingly suggest that they seek only readily accessible information about just a few hundred donors tied to applicants and specifically identified in Appendix 1 to Plaintiffs' First Set of RFPs. *See* Opp'n at 2, 15. In reality, that is only a tiny fraction of the disputed discovery, which spans over 70 RFPs (only *one* of which is limited by Appendix 1), would require multiple additional custodians, and would necessitate extensive review and redaction work to comply with federal law and protect student confidentiality. Plaintiffs likewise obscure that they are insisting on discovery (to take just a few examples) of admissions file scoring and individual applicant letters of recommendation, which would require collection and review of millions of individual admissions files, as well as

communications between each institution's President and Development office concerning admissions and donations, which would require collection and review of copious documents bearing, at most, on a narrow question relevant only to a defense the Moving Defendants are not asserting. Mot. Ex. 1, ¶¶ 4-5. Plaintiffs likewise neglect to mention that they recently propounded yet *another* set of RFPs demanding production of all documents regarding—among other Admissions and Development topics—"[d]onations cumulatively valued at $50,000 …, *including where no Student or Applicant name is identified in connection with such Donations*." Ex. 8 (Pls.' Jan. 26, 2023 Third Requests for Production) (emphasis added). The scope of all this disputed discovery is anything but "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Plaintiffs also attempt to avoid grappling with the undisputed evidence of burdensomeness and disproportionality by claiming that this Court already ruled that they are entitled to the disputed discovery. Opp'n at 1, 3-6, 14. That is incorrect. This Court has not ruled on the discovery dispute presented by this Motion, and it certainly has not opined on how the withdrawal of the Exemption defense affects the scope of relevant and proportional discovery from the Moving Defendants. This Court's comments about the significance of the "contention that admissions are tied to donations" came months before the Moving Defendants withdrew this defense and were made in the context of a dispute over how to comply with FERPA's restrictions on the disclosure of students' personally identifiable information. *See* Ex. 9 (Oct. 26, 2022 Hr'g Tr. Excerpt at 4:14-16; 36:24-37:14). Plaintiffs ignore not only the context of the Court's statements, *see* Opp'n at 5-6, but also the body of law establishing that changes to the parties' claims or defenses necessitate reexamination of the proper scope of discovery, *see* Mot. at 4-5, 10-11 (collecting cases); *cf. Tom v. Saul*, No. 19-CV-06322, 2021 WL 1933421, at *2 (N.D. Cal. April 6, 2021) (reexamining relevance and denying discovery "because [d]efendant has now committed to the abandonment of

4

its defense"); *Metts v. Rogers Townsend & Thomas PC*, No. 10-CV-1744, 2011 WL 13318480, at *3 (D.S.C. July 1, 2011) (explaining that reexamination of relevance would be necessary "[i]f [the defendant] elects to abandon the defense"). Pointing to statements from the Court made in different contexts before the instant dispute arose provides no adequate response to the Moving Defendants' detailed showing of the enormous burden of Plaintiffs' requests.

> **B. Plaintiffs' Arguments About Relevance Lack Merit and Cannot Justify the Extraordinary Burden They Seek to Impose on the Moving Defendants.**

Plaintiffs concede that the disputed discovery does not "have any bearing on whether Defendants fixed prices"—which is their sole claim in this case—or have any role to play in "prov[ing] [the alleged] injury." Opp'n at 12 n.14. Plaintiffs nonetheless now claim that the disputed discovery is relevant to: (1) the proper mode of antitrust analysis; (2) the legitimacy of pro-competitive justifications under the rule-of-reason analysis; (3) the statute-of-limitations defense that the Moving Defendants assert; and (4) the Exemption defense asserted by other Defendants in this case. *Id.* at 4-13. These arguments lack merit and at any rate cannot justify the disproportionate burden that the disputed discovery would impose on the Moving Defendants.

Before addressing each specific argument in turn, it is critically important to address the way in which Plaintiffs now seek to recharacterize the antitrust claim alleged in the Complaint, and simultaneously misstate the basic antitrust law principles that apply. The sole antitrust claim alleged in the Complaint is that Defendants colluded on the methodology used to calculate financial aid awards for admitted students, and thus over-charged students who attended their institutions. SAC ¶ 7. Their claim is *not* that Defendants' alleged use of "wealth favoritism" during the admissions process violated antitrust law. Without the statutory Exemption that other Defendants assert as a defense to liability, Admissions and Development practices would have no relevance to adjudicating the antitrust claim. If there were any doubt, the face of the Complaint

makes this plain: Plaintiffs set forth their allegations about the conspiracy in a section titled "Defendants' Violation of the Federal Antitrust Laws," which says nothing about "wealth favoritism," SAC ¶¶ 108-122, whereas allegations about Admissions and Development functions are reserved for a separate section titled "Allegations Related to Defendants' Anticipated Defenses," *see id.* ¶¶ 135-195.[1]

For related reasons, Plaintiffs misunderstand the "established conspiracy law" they repeatedly invoke. *See* Opp'n at 4-7 & n.6. True, co-conspirators are jointly and severally liable for their collective actions in violation of antitrust law. But Plaintiffs conflate two distinct issues: disproving a statutory exemption from liability versus proving an antitrust violation. "Wealth favoritism" at best eliminates a basis to *exempt* Defendants from antitrust liability; it is not a basis to *establish* that liability. Establishing liability would require evidence of the agreement alleged (*i.e.*, to agree on financial aid methodologies), that alleged agreement's effect on competition, and the injury that supposedly resulted—and discovery should focus on those issues.[2] Plaintiffs thus cannot "use the evidence of Movants' wealth favoritism, for example, to prove that Movants, and hence all of the members of the conspiracy, are liable." *Contra id.* at 7. The doctrine of joint and

---

[1] In a transparent attempt to conflate these issues, Plaintiffs now suggest—directly contrary to the position they advocated on the motion to dismiss—that the Exemption may be an element of their case that they have the burden to prove, as opposed to an affirmative defense for which the Defendants asserting it bear the burden. *See* Opp'n at 6-7 n.8. Even if the Court were to adopt that view, *but see* Dkt. 185 at PageID 1002-1003, it would make no difference: the Moving Defendants have disclaimed reliance on the Exemption, regardless of which party ultimately bears the burden to establish its applicability here.

[2] Courts have therefore repeatedly rejected discovery irrelevant to the conspiracy actually alleged or the associated injury claimed. *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, No. 16-CV-8637, 2018 WL 3398141, at *3 (N.D. Ill. July 12, 2018) (collecting cases); *see also, e.g.*, *Hyland v. HomeServices of Am., Inc.*, No. 05-CV-612, 2011 WL 2532908, at *2 (W.D. Ky. June 24, 2011) (denying plaintiff's motion to compel where requested documents did not relate to price-fixing conspiracy actually alleged); *Glacier Optical, Inc. v. Optique Du Monde, Ltd.*, No. 91-CV-985, 1992 WL 58737, at *2 (D. Or. Mar. 20, 1992) (same where requested documents would provide "no evidence of concerted activities in violation of the antitrust laws").

several liability is wholly inapplicable to the disputed discovery, and it does not support any of the four arguments that Plaintiffs offer as to continued relevance.

These problems pervade each of Plaintiffs' specific arguments as to the continued relevance of the disputed discovery, but those arguments also fail on their own terms.

***First***, Plaintiffs are mistaken that the disputed discovery will inform the proper mode of antitrust analysis. *See id.* at 11-13. Plaintiffs start from a correct premise: the motive for the challenged restraint can inform whether it has a legitimate purpose that demands rule-of-reason analysis rather than *per se* treatment. *See, e.g.*, *Wilk v. Am. Med. Ass'n*, 895 F.2d 352, 358 (7th Cir. 1990). But Plaintiffs then erroneously suggest that the Moving Defendants' motivations with respect to Admissions and Development policies and practices are relevant here. They are not, because the salient motive for purposes of deciding which mode of analysis to apply to Plaintiffs' antitrust claim is the *motive for the alleged unlawful restraint that is the basis for that claim*, *see Deppe v. Nat'l Collegiate Athletic Ass'n*, 893 F.3d 498, 503 (7th Cir. 2018) (confirming that the proper inquiry is what the defendant "meant to" achieve by the specific rule challenged)—not Defendants' "overall motives and actions" (whatever that means), Opp'n at 11. There is no antitrust claim in this case based on an allegedly anticompetitive Admissions or Development policy or practice, and so discovery into altruistic versus profit-maximizing rationales for those policies is beside the point.

***Second***, the disputed discovery does not bear on the legitimacy of pro-competitive justifications for the challenged restraint—*i.e.*, the alleged agreement concerning financial aid methodology. According to Plaintiffs, the disputed discovery would undermine one such pro-competitive justification: that the challenged restraint improves student body socioeconomic diversity. *See id.* at 12-13. This argument misunderstands that justification and the rule-of-reason

7

analysis. The Moving Defendants intend to show that the Consensus Methodology improved the accuracy of need assessments for *admitted* students, which has the beneficial effect of expanding access to education for economically disadvantaged students who otherwise might not have enrolled. This is a justification about improving socioeconomic diversity among the *admitted* students who decide to matriculate and enroll.[3] For similar reasons, Plaintiffs are wrong that the disputed discovery is necessary to show a "less restrictive alternative" to achieve the benefits from the challenged restraint. *See id*. at 13 & n.17. The less restrictive alternative necessarily must relate to the challenged restraint—an alleged limit on financial aid awards for *admitted* students— not the separate question of what criteria a school uses to admit students in the first place. Mot. at 8 (citing, *inter alia*, *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2164 (2021); *Virgin Atl. Airways Ltd. v. Brit. Airways PLC*, 257 F.3d 256, 265 (2d Cir. 2001)). Plaintiffs altogether fail to explain how "need-blindness" in *admissions decisions* is relevant to the question of whether the allegedly unlawful restraint on financial aid does or does not improve the accuracy in *need assessment* for admitted students.

***Third***, the statute-of-limitations defense does not make the disputed discovery relevant. To establish the timeliness of their claim, Plaintiffs will need to address the nature and timing of their knowledge about their cause of action and their asserted injury (*i.e.*, receiving less financial aid than they "should have")—*not* about any defense that might eventually be interposed in litigation. *See* Mot. at 9-10 (collecting cases). Simply put, defenses do not toll statutes of limitations.

---

[3] To be sure, socioeconomic diversity among the pool of students admitted is also important to Defendants, but that is not what this case is about. The Moving Defendants consider numerous characteristics of each applicant as part of their holistic assessment when making admissions decisions. In contrast, once they admit students, the Moving Defendants pursue the most accurate means of assessing a student's need for financial aid so that all admitted students are able to attend the college of their choice regardless of socioeconomic circumstances. The admissions process is therefore fundamentally different from post-admissions financial aid calculations.

8

Plaintiffs emphasize meaningless factual distinctions in the cases cited in the Motion, *see* Opp'n at 8-11, but they have no answer to the well-established legal principles for which those cases stand. They do not (and cannot) explain how supposed concealment of admissions policies would have prevented Plaintiffs from discovering the conspiracy actually alleged here: an agreement to fix a component of financial aid awards for admitted students, not an agreement to engage in non-need-blind admissions practices. *See* SAC ¶¶ 1, 237-238, 265-268.

In addition, Plaintiffs once again over-read this Court's prior rulings. In resolving the Motion to Dismiss, the Court held that it was "conceivable (and plausible) that the claims were not discoverable until two years ago," citing allegations about complex information Plaintiffs needed to piece together to discover the alleged injury. Dkt. 185 at PageID 1017. As Plaintiffs themselves confirm, the pieces of that puzzle relate to financial aid policies and whether Plaintiffs could have discovered their injuries that allegedly resulted from an agreement about financial aid. *See* Opp'n at 8-9 n.11; *see also* Dkt. 185 at PageID 1017 (referring to "the complexity of financial aid"). Plaintiffs have offered no reason to believe that those puzzle pieces would have anything to do with the extensive Admissions and Development files they demand.

***Finally***, Plaintiffs cannot sustain their extreme position that dropping the Exemption defense has no effect whatsoever on the scope of discovery to which the Moving Defendants must respond. According to Plaintiffs, the Moving Defendants are subject to exactly the same discovery burden as the Defendants still claiming the Exemption because this Court ruled in resolving the Motion to Dismiss that plausible allegations of non-need-blind admissions by one Defendant could conceivably vitiate the Exemption for all Defendants. *See* Opp'n at 4-8 (citing Dkt. 185 at PageID 1009). While the Moving Defendants respectfully disagree with that interpretation of the Exemption, the conclusion that Plaintiffs draw from it about the proper scope of discovery is

9

exactly backwards: the notion that non-need-blind admissions at a *single* institution can defeat the Exemption for *all* Defendants means that Plaintiffs need *less* Admissions and Development discovery, not *more*. Their discovery efforts should focus on (or at least start with) the 11 Defendants still asserting the Exemption.

Plaintiffs strain against that logic by claiming that the Moving Defendants were "the most culpable" with respect to need-blind admissions. *See id*. at 1. Tellingly, Plaintiffs made that false and self-serving claim only *after* these specific Defendants withdrew the Exemption defense, and it ignores prominent allegations in their own Complaint. *See* SAC ¶¶ 142, 155 (citing Vanderbilt and Emory websites); *see also* Dkt. 164 at PageID 703-04 (opposing motion to dismiss on basis of allegations about Penn and Vanderbilt). At any rate, this claim only hurts Plaintiffs' argument: Plaintiffs cannot claim to already possess proof from public sources that the Moving Defendants are not need-blind, *see* Mot. at 14 (collecting citations to supposed proof); *see also* Dkt. 297-2, ¶ 2(a)-(f), while simultaneously claiming to need wide-ranging discovery requiring review and production of millions of documents and records at a cost of millions of dollars per Moving Defendant to prove that very point. There is only one explanation for this new claim: the disputed discovery is designed to harass and embarrass the Moving Defendants, *see* Fed. R. Civ. P. 26(c)(1), not to advance the resolution of this antitrust claim.

## II. More Targeted and Less Burdensome Forms of Discovery Are Available.

When discovery seeks evidence that has some relevance to an issue actually in dispute, that discovery still must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Try as Plaintiffs might to downplay its importance, *see* Opp'n at 14, "proportionality is essential," *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Based on proportionality, courts routinely deny burdensome discovery into matters of marginal relevance, reject a shotgun approach when more targeted means may suffice, and require

10

consideration of alternative sources (including other parties, third parties, and public information). Plaintiffs ignore that law—just as they ignore the reasonable compromise that the Moving Defendants offered to explore a more efficient and less burdensome means of providing any genuinely necessary information. But Rule 26 requires consideration of those alternatives before imposing such extraordinarily burdensome and one-sided discovery on the Moving Defendants.

Plaintiffs have no real response to the well-established principle that courts may refuse discovery into matters of "marginal relevance" based on the proportionality principle. *See* Mot. at 10-11 (collecting cases). Nor are their continued demands consistent with case law rejecting the type of wide-ranging document discovery sought here in favor of more targeted means of acquiring information. *See, e.g.*, *Thibault v. BellSouth Telecomms., Inc.*, No. 07-CV-200, 2008 WL 4808893, at *6 (E.D. La. Oct. 30, 2008) ("If no stipulation concerning this fact could be reached, it ought easily to be established by plaintiff through one or two questions at a Rule 30(b)(6) deposition or through a single Request for Admissions [*sic*] pursuant to Fed. R. Civ. P. 36, rather than through these wide-ranging, overly broad and unduly burdensome production requests.").[4] Similarly, Plaintiffs fail to engage with case law protecting parties against onerous document discovery where, as here, the information relevant to the claim or defense is available from other sources such as the non-Moving Defendants and the public sources that Plaintiffs cited in their

---

[4] *Cf. SMH Enters., L.L.C. v. Krispy Krunchy Foods, L.L.C.*, No. 20-CV-2970, 2021 WL 6336430, at *5 (E.D. La. Jan. 15, 2021) (rejecting RFPs where "responding to the proposed [i]nterrogatories would be significantly less burdensome and prejudicial as same would not require the level of effort and expense as would responding to another set of requests for production"); *Burnett v. Conseco Life Ins. Co.*, No. 18-CV-00200, 2019 WL 8444138, at *4 (S.D. Ind. Mar. 28, 2019) (rejecting requested discovery where the information at issue "can be obtained in a more convenient and less burdensome way through the taking of depositions"); *Proa v. NRT Mid-Atl., Inc.*, No. 05-CV-2157, 2008 WL 11363286, at *14 (D. Md. June 20, 2008) (same where it was "less burdensome" to "obtain the factual support for defendants' affirmative defenses" through "answers to written discovery responses"); *SmithKline Beecham Corp. v. Apotex Corp.*, No. 98-CV-3952, 2000 WL 116082, at *9-10 (N.D. Ill. Jan. 24, 2000) (recognizing standard interrogatories as "a more efficient manner" to obtain "the same information … in a more workable form, and from the individuals who have the actual knowledge of the matters at issue").

Complaint and in other court filings as alleged proof that Defendants are not "need-blind" as Plaintiffs define that term. *See Askew v. George Matick Chevrolet, Inc.*, No. 4:16-CV-13148, 2019 WL 2714771, at *4 (E.D. Mich. Feb. 4, 2019).

Consistent with this commonsense approach, Plaintiffs originally acknowledged "that it may be possible to gather the evidence Plaintiffs desire regarding other Defendants' entitlement to the Exemption through more limited discovery." Mot. Ex. 1, ¶ 11. But Plaintiffs then backtracked, proposing a "compromise" that would require the Moving Defendants to respond fully to at least 37 of the disputed RFPs, designate custodians among their President and Development offices, allow depositions of various witnesses (including apex witnesses), and agree that Plaintiffs could obtain "full discovery" if dissatisfied with the information obtained through those channels. *Id.* ¶ 13 & Ex. H. That "compromise" was no compromise at all. The Moving Defendants, by contrast, offered to explore a middle road: limited testimony and responses to written discovery in lieu of the voluminous discovery Plaintiffs still sought. Ex. 1, ¶ 16 & Ex. H.

Plaintiffs never responded to that offer, *see* Ex. 1, ¶ 17, nor does their Opposition even attempt to explain why that approach would not yield the information they claim is relevant while also respecting Rule 26's proportionality principle. *See In re Indep. Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) (denying discovery where propounding party rejected "reasonable compromise" offered by responding party). As the law makes clear, document discovery of this magnitude and expense, to the extent it is *ever* allowed, should be a last resort. *Cf. Dugan v. Quanstrom*, No. 03-CV-0254, 2003 WL 22956124, at *4 (N.D. Ill. Dec. 11, 2003) (allowing more burdensome discovery only "upon a showing that less expensive and less burdensome means have been used without success"). While the Moving Defendants maintain that the Court should deny the disputed discovery in its entirety, at a minimum, Plaintiffs should

12

be limited to more targeted and less burdensome ways to obtain any particular information this Court deems relevant to the remaining issues in this case. Courts have recognized written discovery and limited-scope depositions as appropriate discovery tools in such circumstances. The expansive discovery on which Plaintiffs continue to insist in their Proposed Order is the opposite.[5]

## CONCLUSION

For the foregoing reasons and those set forth in the Motion and supporting materials, the Court should grant this Motion and enter the Moving Defendants' Proposed Protective Order.

---

[5] Plaintiffs' Proposed Order (Dkt. 297-1) is also flawed because it ignores disagreements between the parties that are distinct from the issues raised in this Motion, including with respect to appropriate custodians, time frames, and other parameters for any Exemption-related discovery. *See generally* Dkt. 274 (Jan. 13, 2023 Joint Status Report). Plaintiffs should not be permitted to shortcut resolution of those issues and put the Moving Defendants in a *worse* position than the other Defendants in this case through the Court's ruling on this Motion.

Dated: February 1, 2023                        Respectfully submitted,

By: */s/ Kenneth Kliebard*
Kenneth Kliebard
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Suite 2800
Chicago, IL 60606-1511
Tel: 312-324-1000
kenneth.kliebard@morganlewis.com

Jon R. Roellke
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel: 202-739-5754
jon.roellke@morganlewis.com

Sujal Shah
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower, 28th Floor
San Francisco, CA 94105-1596
Tel: 415-442-1386
sujal.shah@morganlewis.com

*Counsel for Defendant Brown University*

By: */s/ Patrick Fitzgerald*
Patrick Fitzgerald
Amy Van Gelder
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 N. Wacker Drive
Chicago, IL 60606-1720
Tel: 312-407-0508
patrick.fitzgerald@skadden.com
amy.vangelder@skadden.com

Karen Hoffman Lent
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
Room 40-216
New York, NY 10001-8602
Tel: 212-735-3276
karen.lent@skadden.com

14

*Counsel for Defendant The Trustees of Columbia University in the City of New York*

By: */s/ Terri L. Mascherin*
Terri L. Mascherin
Reid J. Schar
JENNER & BLOCK LLP
353 N. Clark Street,
Chicago, IL 60654-3456
Tel: 312-222-9350
tmascherin@jenner.com

Ishan K. Bhabha
Douglas E. Litvack
Lauren J. Hartz
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Tel: 202-637-6327
ibhabha@jenner.com
dlitvack@jenner.com
lhartz@jenner.com

*Counsel for Defendant Trustees of Dartmouth College*

By: */s/ Scott D. Stein*
Scott D. Stein
Benjamin R. Brunner
Kelsey Annu-Essuman
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
Tel.: 414-559-2434
sstein@sidley.com
bbrunner@sidley.com
kannuessuman@sidley.com

*Counsel for Defendant Northwestern University*

By: */s/ Robert A. Van Kirk*
Robert A. Van Kirk
Cole T. Wintheiser

15

Jonathan Pitt
Matthew D. Heins
Sarah F. Kirkpatrick
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: 202-434-5163
rvankirk@wc.com
cwintheiser@wc.com
jpitt@wc.com
mheins@wc.com
skirkpatrick@wc.com

James Peter Fieweger
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street
Suite 3200
Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for Defendant University of Notre Dame du Lac*

By: */s/ Charles A. Loughlin*
Charles A. Loughlin
Benjamin F. Holt
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
Tel: 202-637-5600
chuck.loughlin@hoganlovells.com
benjamin.holt@hoganlovells.com

Stephen Novack
Stephen J. Siegel
Serena G. Rabie
NOVACK AND MACEY LLP
100 North Riverside Plaza, 15th Floor
Chicago, IL 60606-1501
Tel.: 312-419-6900
snovack@novackmacey.com
ssiegel@novackmacey.com
srabie@novackmacey.com

*Counsel for Defendant Yale University*

16