**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,

Defendants.

Case No.: 1:22-cv-00125

**Hon. Matthew F. Kennelly**

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION IN RESPONSE TO PENDING REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 3

A. The Parties' Lengthy Process of Meeting and Conferring. ..... 3

B. Summary of the RFPs at Issue in Plaintiffs' Motion. ..... 5

LEGAL STANDARDS ..... 6

ARGUMENT ..... 7

I. ALL DEFENDANTS SHOULD PRODUCE THEIR RESPONSIVE DONATION- and WEALTH FAVORITISM-RELATED DOCUMENTS that they have EVIDENTLY refused to produce ..... 7

A. The Responsive Documents Are Plainly Relevant. ..... 7

B. The Production of the Responsive Documents Is Proportional, Including Because Defendants Do Not Face Any Undue Burden in Producing Them. ..... 10

II. ALL DEFENDANTS SHOULD PRODUCE THE OTHER CATEGORIES OF RESPONSIVE DOCUMENTS THEY HAVE ALL REFUSED TO PRODUCE ..... 13

A. RFP No. 53: Documents Concerning Details of the Defendants' Endowments Are Relevant, and the Production of the Documents Is Proportional. ..... 13

B. RFP No. 83: Documents Concerning Defendants' Lobbying for Applicants and Their Families to Bear the Primary Cost of Education Are Relevant and the Production of the Documents Is Proportional. ..... 13

III. THE DEFENDANTS THAT HAVE OBJECTED TO PRODUCING DOCUMENTS THAT THE OTHER DEFENDANTS HAVE AGREED TO PRODUCE SHOULD PRODUCE THE RESPONSIVE DOCUMENTS ..... 14

A. As to the Defendants That Proposed to Meet and Confer, the Parties Have Done So, the RFPs at Issue Seek Relevant and Proportional Discovery, and Production Is Appropriate Now. ..... 14

B. As to the Defendants That Have Refused to Produce, as the Other Defendants' Agreement to Produce Indicates, the RFPs at Issue Seek Relevant and Proportional Discovery. ..... 15

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Cases**


*Carbone v. Brown Univ.*,
2022 WL 3357249 (N.D. Ill. Aug. 15, 2022) .......... 8, 9

*Cnty. of Cook v. Bank of Am. Corp.*,
2019 WL 5393997 (N.D. Ill. Oct. 22, 2019) .......... 7

*Deitchman v. E.R. Squibb & Sons, Inc.*,
740 F.2d 556 (7th Cir. 1984) .......... 6

*FireBlok IP Holdings, LLC v. Hilti, Inc.*,
2022 WL 18937942 (N.D. Ill. May 10, 2022) .......... 6

*Heat and Control, Inc. v. Hester Indus., Inc.*,
785 F.2d 1017 (Fed. Cir. 1986) .......... 6

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
633 F.3d 591 (7th Cir. 2011) .......... 7

*Human Rights Defense Ctr. v. Jeffreys*,
2022 WL 4386666 (N.D. Ill. Sept. 22, 2022) .......... 7

*Ill. Tamale Co. v. El-Greg, Inc.*,
2019 WL 4395139 (N.D. Ill. Sept. 13, 2019) .......... 6

*Kleen Prods. LLC v. Packaging Corp. of Am.*,
2013 WL 120240 (N.D. Ill. Jan. 9, 2013) .......... 6

*Outley v. City of Chicago*,
2021 WL 4789026 (N.D. Ill. Jan. 5, 2021) .......... 6

*Poshard v. Madison Cnty., Ill.*,
2020 WL 13016131 (S.D. Ill. Nov. 3, 2022) .......... 7

*Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air Conditioning Eng'rs, Inc.*,
755 F.3d 832 (7th Cir. 2014) .......... 6

*Torgersen v. Siemens Bldg. Tech., Inc.*,
2021 WL 2072151 (N.D. Ill. May 24, 2021) .......... 6

*United States v. Brown Univ.*,
5 F.3d 658 (3d Cir. 1993) .......... 9

*Wiginton v. CB Richard Ellis, Inc.*,
229 F.R.D. 586 (N.D. Ill. 2009) .......... 7

**Other Authorities**

15 U.S.C. § 1 note; Pub. L. No. 103-382, title V, § 568, 108 Stat. 3518, 4060 (1994) ..................8

28 U.S.C. § 1407 ..........................................................................................................12

Fed. R. Civ. P. 26 ...........................................................................................................2

Fed. R. Civ. P. 26(b)(1) ..................................................................................................10

Plaintiffs respectfully submit this Memorandum of Law in Support of their Motion to Compel Production in Response to Pending Requests for the Production of Documents ("RFPs"), with the supporting Declarations of Robert D. Gilbert ("Gilbert Decl."), Steven Magnusson ("Magnusson Decl."), Richard Cipolla ("Cipolla Decl."), Plaintiffs' Local Rule 37.2 Statement ("LR 37.2 St."), and the Proposed Order submitted herewith.

## INTRODUCTION

Considering the impasse the parties have reached on these matters, the schedule for the substantial fact discovery that must be conducted in this matter (including the six depositions the Court recently authorized Plaintiffs to take at the outset of the nearly 200 deposition they will take in total), and the Court's prior statement that the Plaintiffs thus should not negotiate too long "over the shape of the table" before bringing matters to the Court (12/21/23 Tr. at 14:3-4), Plaintiffs move to compel the production of several categories of critical documents, on three main bases:

*First*, all Defendants should be ordered to produce the responsive documents allowing Plaintiffs to show that in their admissions processes, Defendants favor the children of wealthy donors. Through their March 3, 2023, productions, only two Defendants have produced such documents, and to only a limited extent. This Court has repeatedly recognized that these donation- and wealth favoritism-related documents are directly relevant to a core theory of Plaintiffs' theory of liability—namely, that in considering a family's history or prospect of large donations, Defendants have considered the financial circumstances of an applicant or the applicant's family in making admissions decisions. This would mean Defendants have not conducted "need-blind" admissions under the statutory exemption at issue (the "Exemption") and therefore cannot claim the Exemption as a defense for their conduct. The Court has repeatedly made clear that Defendants must produce documents allowing Plaintiffs to pursue this core theory.

*Second*, all Defendants should be ordered to produce two other categories of responsive documents they have all refused to produce. In *one category* are the documents concerning the relevant details of the schools' endowments relating to their ability to support awarding more financial aid, which are relevant to both the schools' operations as "revenue maximizing" commercial enterprises (that would support application of the *per se* rule to their conduct) and any asserted procompetitive justifications for the 568 Cartel (if a Rule of Reason approach were applied). The *second category* consists of documents concerning the schools' lobbying for extension of the now expired Exemption, which they have claimed is necessary to ensure that applicants and their families should bear the primary cost of education. These documents are relevant to Plaintiffs' claim that this core premise of the 568 Cartel and its implementation by Defendants unlawfully and artificially inflated the net price of attendance for putative class members during the Class Period.

*Third*, several Defendants in their Responses and Objections ("R&Os) refused to state whether they would produce certain documents, proposing additional meet-and-confers ("M&Cs") on scope or relevance (or both); and several Defendants have offered a variety of individual objections to certain RFPs. These responses and objections are all dubious on their face because—consistent with the broad standard for discoverability under Fed. R. Civ. P. 26—most of the *other* Defendants *have* agreed to produce responsive documents. In addition, the parties have now engaged in many M&Cs, concerning relevance, search terms, and the temporal scope of production. Given the posture of the case and the nature of Defendants' R&Os, this Court should order these Defendants to produce these documents. They are relevant and their production is proportional.

Plaintiffs thus submit, as explained in more detail below, that the Court should grant their Motion and enter the Proposed Order set forth in Appendix 1. (The proposed order is particularly detailed given the nature of this Motion, and of Defendants' R&Os.)

## FACTUAL BACKGROUND

### A. The Parties' Lengthy Process of Meeting and Conferring.

Plaintiffs served their First Set of RFPs on September 19, 2022. (Gilbert Decl. ¶ 2, Ex. 1.) On October 19, 2022, Defendants served their R&Os, in which some or all Defendants stated their refusal to produce certain categories of documents. Plaintiffs served their Second and Third Set of RFPs on November 7, 2022, and January 26, 2023, respectively. (Gilbert Decl. ¶ 2, Exs. 2 & 3.) Until the end of February 2023, the parties engaged in extensive email correspondence and M&Cs, both 6 globally (involving all Defendants) and 3 for each Defendant, concerning the pending RFPs, the temporal scope of production, and 4 global M&Cs on the search terms for responding to those RFPs that lent themselves to identification via search terms. (Magnusson Decl. ¶¶ 2-4.) Now Defendants are asserting that what was agreed globally did not bind them individually.

In an abundance of caution, on February 1, 2023, following up on their email from several days before, Plaintiffs invited each Defendant to advise Plaintiffs if, due to any "exceptional individualized circumstances" that the Defendant were to cite, any Defendant had a particular issue with the subjects of global resolution. (Gilbert Decl. ¶ 4, Ex. 5.) In response, *no Defendant* asserted any individualized circumstances that would support a Defendant's refusal or failure to produce responsive documents. Instead, Emory (addressing just one search string) and Dartmouth raised individualized concerns regarding the breadth of documents that the otherwise agreed-upon search terms would generate. Plaintiffs resolved these issues with these Defendants. (One other Defendant initially raised an issue, but then withdrew it.) Other than these minor issues, the Defendants did not articulate any Defendant-specific issues with respect to the global subject matter of Plaintiffs' RFPs. (Magnusson Decl. ¶ 4; Cipolla Decl. ¶ 3.)

The parties thus reached global agreement on (a) search terms, (b) the temporal scope of the production, and (c) the narrowing or clarification of many RFPs. (Magnusson Decl. ¶¶ 2-4.)

(In addition, on March 8, 2023 (Dkt. 330), the Court ordered the production of certain documents created *after* the filing of the Complaint.) The Cipolla Decl. ¶ 2 addresses certain limited issues from two Defendants regarding temporal scope.) Given all these M&Cs, given the few responses to the February 1, 2023, email, given the negotiation of search terms for the First and Second Set of RFPs, given the Court's intervening decision to reduce the number of Plaintiffs' total RFPs by almost half (Dkt. 315), given this Court's repeated rulings that Defendants were to produce donation records (discussed further below), Plaintiffs understood Defendants' initial objections had been mooted. In cutting the number of Plaintiffs' RFPs, for example, the Court described itself as taking a "sharpened meat ax approach" in limiting them to a total of 100 (2/8/23 Tr. at 53:12-54:13), but which still required Defendants to produce documents responsive to Plaintiffs' RFPs.

In a further abundance of caution, addressing Defendants' R&Os to Plaintiffs' First and Second Set of RFPs (Defendants had responded to the Third Set only the night before), Plaintiffs confirmed their understanding that Defendants would accomplish the "substantial completion" of production of documents responsive to Plaintiffs' RFPs by the March 3, 2023, deadline, through a detailed email to Defendants on February 28, 2023. It attached appendices itemizing and providing specific information regarding each RFP, summarizing Defendants' responses and Plaintiffs' reasoning supporting the relevance of the requested documents. (Gilbert Decl. ¶ 7; LR 37.2 St. Ex. 1.) Defendants responded dismissively and disingenuously with a one-paragraph email on March 2, 2023, asserting Defendants would rely on their initial R&Os to the First and Second Set of RFPs, and proposing that Plaintiffs engage in further individual M&Cs as to the RFPs with each Defendant. (Gilbert ¶ 8; LR 37.2 St. Ex. 2.) Defendants thus did not agree that the parties' multiple M&Cs and agreements, or the Court's rulings, had mooted their refusals to produce certain categories of documents in their R&Os to Plaintiffs' First and Second Set of RFPs. In effect, Defendants asserted months of M&Cs had been a waste of time.

**B. Summary of the RFPs at Issue in Plaintiffs' Motion.**

In the wake of the Court's order that Plaintiffs limit themselves to a total of 100 RFPs, Plaintiffs pared their 192 pending RFPs down to 93, comprising 86 from Plaintiffs' First and Second Set of RFPs and 7 from the Third Set of RFPs. (Gilbert Decl. ¶ 5, Ex. 6.) All the RFPs addressed below fall within those remaining 93 RFPs.

With respect to donation- and wealth favoritism-related documents, some or all of the Defendants have refused to produce documents in response to RFP Nos. 20 (all), 22, 23 (all), 58, 61, 62, 63, 88, 98, 113, 116, 117, 124, 126, 127, 128 (all), 129 (all), 131 (all), 132, 139, and 150 in the First Set; Nos. 1, 3, and 4 in the Second Set; and Nos. 11 and 13 in the Third Set. (*See* Argument Part I, below.)

With respect to two categories of documents other than donation- and wealth favoritism-related documents, all Defendants have refused to produce documents in response to RFP Nos. 53 and 83. (*See* Argument Part II, below.)

With respect to several categories of documents *other than* donation- and wealth favoritism-related documents, several Defendants indicated in their R&Os they would not state whether they would produce documents until after M&Cs, which have now occurred: Nos. 2, 3, 4, 7, 12, 14, 16, 31, 48, 70, and 77 in the First Set, and No. 2 in the Second Set.[1] In addition, one or more of the Defendants have refused to produce documents in response to RFP Nos. 38, 49, 51, 54, 103, 114, 115, 142, 150, 151, 157, 160, and 163. (*See* Argument Part III, below.)

---

[1] In addition, there are other RFPs, addressed in this motion, where one or more other Defendants initially refused to produce responsive documents or initially would not state whether it would produce responsive documents prior to M&Cs. Those RFPs are Nos. 49, 51, 63 (two Defendants), and 151 in the First Set, and Nos. 2 and 4 in the Second Set. Plaintiffs submit, for the reasons stated elsewhere herein, that the Court should also direct these Defendants to produce the responsive documents.

**LEGAL STANDARDS**

The "relevance standard" under Federal Rule of Civil Procedure 26(b)(1) "is extremely broad." *Torgersen v. Siemens Bldg. Tech., Inc.*, 2021 WL 2072151, at *3 (N.D. Ill. May 24, 2021); *see also Outley v. City of Chicago*, 2021 WL 4789026, at *5 (N.D. Ill. Jan. 5, 2021) (referring to "the broad relevance standard of Rule 26"). Whether a defendant has concluded that the responsive documents "would not have supported" the plaintiffs' claims is irrelevant; the question is whether the documents are "relevant to the claims and defenses" in the case. *Ill. Tamale Co. v. El-Greg, Inc.*, 2019 WL 4395139, at *22 (N.D. Ill. Sept. 13, 2019) (Kennelly, J.).

"If the discovery appears relevant and proportional to the case, the burden rests on the objecting party to show why a particular discovery request is improper." *Outley*, 2021 WL 4789026, at *3. The resolution of discovery disputes is committed to the district court's broad discretion. *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air Conditioning Eng'rs, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014). In sum: "District courts enjoy broad discretion when considering motions to compel and have consistently adopted a liberal interpretation of the discovery rule." *FireBlok IP Holdings, LLC v. Hilti, Inc.*, 2022 WL 18937942, at *1 (N.D. Ill. May 10, 2022) (quotations and citation omitted).

In addition, the "courts generally take an expansive view of discovery in antitrust case." *Kleen Prods. LLC v. Packaging Corp. of Am.*, 2013 WL 120240, at *9 (N.D. Ill. Jan. 9, 2013). In cases where allegations of conspiracy or monopolization are involved, broad discovery is permitted to uncover evidence of invidious design, pattern, or intent, particularly because such evidence typically is found only in the hands of the alleged conspirators, who often seek to cover up and conceal their wrongdoing. Where there is doubt over relevance, courts should allow the discovery. *Heat and Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986) (citing *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 556 (7th Cir. 1984)); *see also Wiginton v. CB*

*Richard Ellis, Inc.*, 229 F.R.D. 586, 577 (N.D. Ill. 2009) ("[I]f relevance is in doubt, courts should err on the side of permissive discovery."). With respect to proportionality, "[t]he party opposing discovery has the burden of showing that the discovery is overly broad, unduly burdensome, or not relevant." *Cnty. of Cook v. Bank of Am. Corp.*, 2019 WL 5393997, at *6 (N.D. Ill. Oct. 22, 2019) (quoting *Young v. City of Chicago*, 2017 WL 25170, at *8 (N.D. Ill. Jan. 3, 2017)). "A specific showing of burden is commonly required by district judges faced with objections to the scope of discovery." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 598 (7th Cir. 2011); *accord Human Rights Defense Ctr. v. Jeffreys*, 2022 WL 4386666, at *3 (N.D. Ill. Sept. 22, 2022). "Typically, a party must support such objections through affirmative proof such as affidavits or testimony." *Poshard v. Madison Cnty., Ill.*, 2020 WL 13016131, at *4 (S.D. Ill. Nov. 3, 2022).

## ARGUMENT

### I. ALL DEFENDANTS SHOULD PRODUCE THEIR RESPONSIVE DONATION- AND WEALTH FAVORITISM-RELATED DOCUMENTS THAT THEY HAVE EVIDENTLY REFUSED TO PRODUCE

Defendants should be ordered to produce all documents responsive to Plaintiffs' RFPs relating to donations and wealth favoritism, which some or all of the Defendants in their R&Os initially refused to produce. The RFPs at issue are Nos. 20 (all), 22, 23 (all), 58, 61, 62, 63, 88, 98, 113, 116, 117, 124, 126, 127, 128 (all), 129 (all), 131 (all), 132, 139, and 150 in the First Set; Nos. 1, 3, and 4 in the Second Set; and Nos. 11 and 13 in the Third Set. The date for the "substantial completion" of document production was March 3, 2023. (Dkt. 195.) *Plaintiffs have located in Defendants' productions few responsive documents, including a single applicant-related donor document from Columbia and a handful from Northwestern.* (Magnusson Decl. ¶ 5.)

#### A. The Responsive Documents Are Plainly Relevant.

The donation- and wealth favoritism documents are plainly relevant, certainly discoverable under Rule 26, and repeatedly ordered to be produced, for at least the following reasons:

*First*, these documents relate to one of Plaintiffs' core theories of liability that has already survived motions to dismiss. Under the Exemption, 15 U.S.C. § 1 note; Pub. L. No. 103-382, title V, § 568, 108 Stat. 3518, 4060 (1994), *all* Defendants must be "need-blind" in *all* of their admissions. *See Carbone v. Brown Univ.*, 2022 WL 3357249, at *5-6 (N.D. Ill. Aug. 15, 2022). This is true even for Defendants that have dropped the Exemption as a defense, since *all* Defendants participated in the conspiracy, and *all* must have *always* been need-blind for the Exemption to apply to any Defendant. *See id*. at *6. This Court reiterated this point during a hearing on February 8, 2023: "It's hornbook law of conspiracy . . . . Everybody within the alleged group has to have been complying with 568 in order for anybody to take advantage of it." (2/8/23 Tr. at 41:17-25.) Donation records and other evidence of wealth favoritism are thus critical to establishing liability on the part of each member of the conspiracy.

*Second*, the Court has already recognized that donation- and wealth favoritism-related documents are central to Plaintiffs' theory of liability, and that the Defendants must produce, in denying Defendants' motion to dismiss. *See, e.g.*, *Carbone*, 2022 WL 3357249, at *5 (concluding that Plaintiffs' allegations of wealth favoritism with respect to past or potential future donors "support the plaintiffs' contention that the defendants are not need-blind"). The Court reiterated this finding of relevance during a hearing on October 26, 2022. The Court emphasized the importance of this specific discovery, and its ruling that Defendants must make such evidence available to Plaintiffs:

> So first of all--and I don't think this is the case, but I just want to have it out there just so I've said it and I'll be done with it--I mean, this is not going to be a situation where the case comes to a halt and gets adjudicated because the discovery can't get produced. So I just want to make that clear.
>
> . . . .
>
> So the whole case--maybe not the whole case, but a significant part of the case is exactly this, the contention that admissions are tied to donations, or at least that's a significant part of the case. *And so unless there's going to be an opinion that basically says, well, the kind*

> *of thing I just said is not going to happen, that basically says the plaintiffs can't get that, therefore, the case is over, then we have to come up with a way of doing that.*

(10/26/22 Tr. at 23:12-17; 36:23-37:6 (emphasis added).) And the Court made clear that when it speaks: "That's the judge talking. Those are called rulings." (*Id*. at 34:16.)

*Third*, any assertion by Defendants that applicant-related donor records should not be produced cannot be reconciled with the entry of the Confidentiality Order in this case in November 2022 (Dkt. 254), which defined and addressed the proper treatment of "donation records", and which set forth a detailed statement in the Order regarding the form in which Defendants were required to produce same. *See id*. ¶¶ 8(c), 8(d)(i). Defendants argued that these donor-related applicant records should be shielded from production, but this Court explicitly rejected their argument on October 26, 2022, and ruled these documents must be produced, which the Court characterized as "close to a no brainer as anything we can get to in here." (10/26/22 Tr. at 34:14-15.)

*Fourth*, these documents are central to other issues, including Defendants' defense of the statute of limitations, and whether and to whether the *per se* rule applies to the horizontal price fixing in this case. Where the Defendants went to lengths to conceal, cover up, or misrepresent the existence of wealth favoritism, a reasonably diligent person could not have known that Defendants were failing to conduct "need-blind" admissions. Similarly, evidence that Defendants were engaging in consistent and significant acts of wealth favoritism in admissions tends to show both that the alleged conspiracy and operations of Defendants are revenue-maximizing and non-altruistic in nature. *See, e.g.*, *United States v. Brown Univ.*, 5 F.3d 658, 672-73 (3d Cir. 1993). These matters are relevant to the question—on which the Court "defers" for "later in the litigation," *Carbone*, 2022 WL 3357249, at *7—of whether the "per se" or "Rule of Reason" mode of analysis should apply in this case. Plaintiffs are entitled to collect the evidence necessary to address that issue for the Court's later resolution.

### B. The Production of the Responsive Documents Is Proportional, Including Because Defendants Do Not Face Any Undue Burden in Producing Them.

The discovery at issue is proportional to the needs of this case, under the factors set forth in Rule 26(b)(1), because (a) the issues at stake in this action are critically important, including because they concern the policies and practices of seventeen (17) of the best private universities in the country and the impact their conduct has had on over 200,000 of their students; (b) the amount in controversy in this matter is extremely high (Plaintiffs' counsel expect the forthcoming damages calculations, even before being trebled, to be nearly two billion dollars); (c) only Defendants have access to the internal, confidential information these RFPs seek, as the parties' negotiation of the Confidentiality Order in this case reflects; (d) Defendants have extremely substantial resources and $233 billion endowments under management, as their retention of the best defense law firms in the country reflects; (e) the evidence at issue is material, as the Court has repeatedly recognized; and (f) the burden of the proposed discovery does not outweigh its benefit.

Indeed, as to the last factors, Defendants have not made any showing in connection with any M&C that producing the donation- and wealth favoritism-related documents would impose any undue burden. The presence of these factors underscores why, when six Defendants sought a protective order barring discovery as to the connection between donations and admissions, and wealth favoritism in general, the Court ruled those Defendants—which had dropped the Exemption defense—had still not shown that such discovery was disproportionate. This Court ordered production to proceed. (2/8/23 Tr. at 42:13-14.)

In addition, Defendants' collective refusal to respond to two of the central RFPs at issue belie any assertion of undue burden Defendants might now try to make. *In RFP No. 22 in the First Set and RFP No. 11 in the Third Set, Plaintiffs identified on a Defendant-by-Defendant basis lists of 623 and 135 specific donors, respectively, identifying the class or classes of the student to which the donors relate.* (Gilbert Decl. Exs. 1 & 3.) Plaintiffs thus sought the documents relating to those

donations and students. Only Caltech initially agreed to produce the responsive documents. These RFPs, to speak colloquially, thus handed the Defendants the relevant information on a silver platter. The parties even negotiated and agreed upon search terms specifically to cover RFP No. 22. (Magnuson Decl. ¶ 6.)[2] Yet Defendants *still* refuse to produce these targeted documents. *Plaintiffs are unaware that Defendants have produced any such documents*.[3] (*Id*. ¶ 6; Gilbert Decl. ¶ 6.)

The notion it would be burdensome for Defendants to identify other students whose applications have related to former or prospective donors, is devoid of merit. The "donations" under these RFPs must exceed $50,000 (LR 37.2 Stat. Ex. 1, Appendices A & B), which massively narrows the number of students the RFPs could implicate. Defendants can certainly determine which students relate to actual or prospective donations of that size. Just as fundamental, providing documents that relate to these donors specifically identified 6 months ago, for which Defendants already agreed to search, is the essence of what the Court directed regarding donor-admittee and donor-related admissions records. Plaintiffs have explored every option to seek these documents from Defendants, but Defendants continue to refuse. The fact is that Defendants' evident failure to produce such records in light of the Court's rulings is a violation of their discovery obligations.[4]

---

[2] The following is the agreed-upon search term string: "[*Search terms to be derived based on university relevant names in appendix 1*] w/10 (donat* OR gift OR pledg* OR promis* OR commit* OR beque* OR assign* OR contrib* OR give OR grant* OR confer* OR bestow* OR writ* OR endow* OR gift* OR donat* OR wealth* OR loaded OR money* OR "well*off" OR "well*to*do" OR well*heeled OR deep*pocket* OR prosper* OR mint* OR flush OR cash OR fat*cat OR "warbucks" OR "sugar daddy" OR affluen* OR heir* OR magnate OR tycoon OR baron* OR inherit* OR pennybags OR mcduck OR "rolling /3 dough" OR estate OR bankroll* OR bank*roll OR check OR wire OR donor* OR billion* OR fatcat*)".

[3] On March 21, 2023, counsel for Brown, after having previously declined to do so, agreed to produce documents responsive too RFP No. 22 and to do so within one week. Northwestern had only one name on these lists (in the list for the Third Set) and Plaintiffs have seen two documents produced that relate to that name, but on one document there is no date or metadata that would indicate whether that individual recommended a child or someone else, and on the other there is no indication whether the student who was recommended was ultimately admitted. Otherwise, through the March 3 date required for substantial completion of production, Plaintiffs have seen no other Northwestern documents relating to names on these lists. (Magnusson Decl. ¶ 6.)

[4] Plaintiffs thus reserve the right to seek their substantial attorneys' fees and costs in pursuing this discovery, including through this Motion.

The Court's resolution of the issues at this time is essential, given not only the schedule for fact discovery in this matter, but also that the Court recently granted Plaintiffs leave to take the deposition of six (6) officers from several Defendants (Brown, Columbia, Dartmouth, Northwestern, Notre Dame, and Yale) that had declined to designate their Presidents or Development Offices as document custodians. (2/8/23 Tr. at 49:12-18 & Dkt. 330 ¶ 5.) The parties have already begun to schedule these depositions. (Gilbert Decl. ¶ 9.) Those depositions are largely designed to obtain testimony bearing on the relationship between donations and admissions. (2/8/23 Tr. 43:10-53:11.) In so ruling, the Court made clear that these schools' production of donation- and wealth favoritism-related documents *must precede those depositions,* because if the deponent could not recall or testify accurately because these responsive documents had not been produced or reviewed, "then I'm going to let them go back and get the documents and then make the person appear again to answer the questions they didn't remember the first time." (2/8/23 Tr. at 49:15-18.)

In addition, Plaintiffs submit that Defendants' position as to the supposedly continuing relevance of their initial R&Os is nonsensical. In particular, the global agreements the parties reached after months of M&Cs with respect to the Defendants' many overlapping and common objections would be rendered meaningless if, as Defendants have now proposed, Plaintiffs had to return to each of the Defendants for further individualized M&Cs—with the prospect of thereafter burdening the Court with seventeen (17) separate motions to compel.[5]

[5] Given this number of Defendants, this litigation is akin to a Multi-District Litigation ("MDL") that has been consolidated, in part, for purposes of the efficient conduct of discovery. *See* 28 U.S.C. § 1407. That is, it would not have made sense for Plaintiffs to bring seventeen (17) actions in each of the Defendant's home districts and then try to work out all discovery-related issues separately and independently from each other. Instead, those courts would have consolidated the actions, including for the global resolution of discovery matters. It is precisely this type global, common resolution of issues that this Court encouraged and that Plaintiffs sought in the global M&Cs—and are now seeking to enforce in this Motion.

## II. ALL DEFENDANTS SHOULD PRODUCE THE OTHER CATEGORIES OF RESPONSIVE DOCUMENTS THEY HAVE ALL REFUSED TO PRODUCE

All Defendants should produce the documents responsive to RFP Nos. 53 and 83, which they had all initially refused to produce.

### A. RFP No. 53: Documents Concerning Details of the Defendants' Endowments Are Relevant, and the Production of the Documents Is Proportional.

The documents concerning the relevant details of the schools' endowments—including their amounts, their annual returns, the extent to which they are used to support awards of financial aid, and the extent to which they could be used to support awarding more financial aid—are relevant both to the universities' revenue-maximizing operations, which pursuant to *Brown* calls for application of the per se rule under the antitrust laws. Even under the Rule of Reason analysis Defendants propose, Plaintiffs seek this discovery to show that all Defendants could have used their endowments to support more financial aid and thereby achieve whatever procompetitive justifications they claim have resulted from the 568 Group, *without* engaging in the alleged collusion.

The production of these documents is proportional for the reasons set forth in Part I.A, above, and because it would not be unduly burdensome for Defendants to identify and produce the responsive documents reflecting the relevant details concerning the schools' endowments. These endowments are too large, and their actual and prospective uses too important, for Defendants to fail to maintain readily available documents that would reflect the information Plaintiffs seek.

### B. RFP No. 83: Documents Concerning Defendants' Lobbying for Applicants and Their Families to Bear the Primary Cost of Education Are Relevant and the Production of the Documents Is Proportional.

The documents concerning the schools' lobbying for the extension of the Exemption are relevant to Plaintiffs' analysis of a core principle of the 568 Cartel—namely, that applicants and their families should pay the maximum amount that they can afford to pay --- for it is that principle the Exemption is designed to protect under Plaintiffs' theory of the case. Defendants have agreed

to follow that principle and its implementation, which is one of the reasons that the net price of attendance at these schools has been unlawfully and artificially inflated during the Class Period. In addition, it is likely Defendants informed their lobbyists that absent an extension of the Exemption, they would be liable under the antitrust laws. The production of these documents is proportional for the reasons set forth in Part I.A, above, and because it would not be unduly burdensome for Defendants to identify and produce the responsive documents.

## III. THE DEFENDANTS THAT HAVE OBJECTED TO PRODUCING DOCUMENTS THAT THE OTHER DEFENDANTS HAVE AGREED TO PRODUCE SHOULD PRODUCE THE RESPONSIVE DOCUMENTS

### A. As to the Defendants That Proposed to Meet and Confer, the Parties Have Done So, the RFPs at Issue Seek Relevant and Proportional Discovery, and Production Is Appropriate Now.

Several Defendants have indicated they would not determine whether they would produce documents until after M&Cs, but where all other Defendants agreed to produce responsive documents, the balking Defendants should be ordered to do so as well. The RFPs at issue are Nos. 2 (Penn), 3 (Penn), 4 (Penn), 7 (Penn), 12 (Penn), 14 (Penn), 16 (Chicago and Penn), 31 (Notre Dame and Penn), 48 (Notre Dame), 70 (Penn), and 77 (Duke and Yale) in the First Set, and No. 2 (Chicago) in the Second Set. That is, these non-responses are dubious on their face because—consistent with the broad standard for discoverability under Rule 26(b)(1)—*most of the other Defendants have agreed to produce* responsive documents. These responsive documents are thus relevant (*see also* Gilbert Decl. ¶ 10 (explaining their relevance from Plaintiffs' perspective)), and their production is proportional for the reasons shown in Part I.A, above. The production of these documents now is necessary given the schedule for fact discovery in this matter.

**B. As to the Defendants That Have Refused to Produce, as the Other Defendants' Agreement to Produce Indicates, the RFPs at Issue Seek Relevant and Proportional Discovery.**

The several Defendants that stated individual refusals to produce the documents responsive to the RFPs discussed below, notwithstanding other Defendants' agreement to produce responsive documents, should be ordered to produce the responsive documents. The RFPs at issue are Nos. 38, 49, 51, 54, 103, 114, 115, 142, 150, 151, 157, 160, and 163. These non-responses, like those addressed in Part III.A, above, are also dubious on their face because most of the *other* Defendants *have* agreed to produce responsive documents. In order not to burden this Court, the relevance of these RFPs from Plaintiff's perspective is explained in summary fashion in Gilbert Decl. ¶ 11. The requested production is proportional for the reasons shown in Part I.A, above.

## CONCLUSION

Plaintiffs respectfully submit, for the foregoing reasons, that the Court should grant Plaintiffs' Motion to Compel as set forth in Plaintiffs' Proposed Order.

Dated: March 21, 2023

Respectfully Submitted,

By:*/s/Robert D. Gilbert*
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
Sarah Schuster
Alexis Marquez
Steven Magnusson
**GILBERT LITIGATORS & COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
sschuster@gilbertlitigators.com
amarquez@gilbertlitigators.com
smagnusson@gilbertlitigators.com

*/s/ Edward J. Normand*
Devin "Vel" Freedman
Edward J. Normand
Peter Bach-y-Rita
**FREEDMAN NORMAND FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law

Daniel J. Walker
Robert E. Litan
Hope Brinn

Eric L. Cramer
Caitlin G. Coslett
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
ccoslett@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs*