# EXHIBIT 6

**From:** Ted Normand <tnormand@fnf.law>
**Sent:** Tuesday, February 21, 2023 11:53 AM
**To:** Blain, Jordan M <Jordan.Blain@skadden.com>; Steven Magnusson <smagnusson@gilbertlitigators.com>; Van Gelder, Amy <Amy.VanGelder@skadden.com>; 'Stein, Scott D.' <sstein@sidley.com>; Carbone_Defs_Service@listserv.whitecase.com
**Cc:** Robert Gilbert <rgilbert@gilbertlitigators.com>; 568 Litigation <568_Litigation@fnf.law>
**Subject:** Re: Judge Kennelly's Ruling Limiting the Parties to 100 Total RFPs

Jordan –

You are correct. The language for RFP 40 was in the sheet labeled as RFP 41. Attached is an updated final sheet with RFP 41 fixed to have its correct language. Tx.

Ted

**From:** "Blain, Jordan M" <Jordan.Blain@skadden.com>
**Date:** Thursday, February 16, 2023 at 1:17 PM
**To:** Steven Magnusson <smagnusson@gilbertlitigators.com>, "Van Gelder, Amy" <Amy.VanGelder@skadden.com>, "'Stein, Scott D.'" <sstein@sidley.com>, "Carbone_Defs_Service@listserv.whitecase.com" <Carbone_Defs_Service@listserv.whitecase.com>
**Cc:** Robert Gilbert <rgilbert@gilbertlitigators.com>, Ted Normand <tnormand@fnf.law>, 568 Litigation <568_Litigation@fnf.law>
**Subject:** RE: Judge Kennelly's Ruling Limiting the Parties to 100 Total RFPs

**[EXTERNAL SENDER]**

Steven and all,

Please find attached the final negotiated search terms based on the parties' meet-and-confer last week. The search terms that are no longer applicable because they relate only to RFPs not included on Plaintiffs' reduced list are highlighted in red.

Defendants have one question regarding the Plaintiffs' reduced list of RFPs. Column A of the chart identifies RFP No. 41, but the text next to it in Column B belongs to RFP No. 40: "All Documents Concerning the 568 Group's antitrust policies, guidelines, trainings, and public relations materials including analyses of the 568 Group's compliance with the 568 Exemption and any analyses of the Overlap Agreement reached as part of the case known as *United States v. Brown*, 5 F.3d 658 (3d Cir. 1993)." Based on this, we assume that it is RFP No. 40 -- not RFP No. 41 -- that Plaintiffs intend to keep. Please confirm this assumption is correct.

As always, the use of the negotiated search terms remains subject to individual Defendants' (1) search term testing and results and (2) objections to Plaintiffs' document requests. As such, each individual Defendant reserves the right to modify or eliminate negotiated search terms based on their individual circumstances or written objections to specific requests.

**Jordan Blain**
Associate
**Skadden, Arps, Slate, Meagher & Flom LLP**
155 N. Wacker Drive | Chicago | Illinois | 60606-1720
T: +1.312.407.0447 | F: +1.312.827.9302
**jordan.blain@skadden.com**

---

**From:** Steven Magnusson <smagnusson@gilbertlitigators.com>
**Sent:** Wednesday, February 15, 2023 12:11 PM
**To:** Blain, Jordan M (CHI) <Jordan.Blain@skadden.com>; Van Gelder, Amy (CHI) <Amy.VanGelder@skadden.com>; 'Stein, Scott D.' <sstein@sidley.com>; Carbone_Defs_Service@listserv.whitecase.com
**Cc:** 'Robert Gilbert' <rgilbert@gilbertlitigators.com>; Bernescu, Laura (CHI) <Laura.Bernescu@skadden.com>; 'Ted Normand' <tnormand@fnf.law>; '568 Litigation' <568_Litigation@fnf.law>
**Subject:** [Ext] RE: Judge Kennelly's Ruling Limiting the Parties to 100 Total RFPs

Jordan and Amy,

Plaintiffs had understood that Defendants would send a final version of the spreadsheet reflecting the parties' discussions through our last meet-and-confer on Thursday, February 9. Jordan, are you the person stepping into Laura's shoes in that regard?

Thank you,

Steven Magnusson
Associate
Gilbert Litigators & Counselors, P.C.
Cell: 617.894.9312

smagnusson@gilbertlitigators.com
www.gilbertlitigators.com

---

**From:** Bernescu, Laura <Laura.Bernescu@skadden.com>
**Sent:** Wednesday, February 8, 2023 6:54 PM
**To:** 'Robert Gilbert' <rgilbert@gilbertlitigators.com>; Stein, Scott D.
<sstein@sidley.com>; Carbone_Defs_Service@listserv.whitecase.com
**Cc:** Ted Normand <tnormand@fnf.law>; smagnusson@gilbertlitigators.com; 568
Litigation <568_Litigation@fnf.law>
**Subject:** RE: Judge Kennelly's Ruling Limiting the Parties to 100 Total RFPs

Hi Bob,

We can be available at 4:30pm CT tomorrow to discuss search terms. If that works, please send
an invite or let us know if you'd like us to send. Thanks.

**Laura Bernescu**
**Skadden, Arps, Slate, Meagher & Flom LLP**
155 N. Wacker Drive | Chicago | Illinois | 60606-1720
T: 312.407.0709 | F: 312.827.9421
laura.bernescu@skadden.com

---

**From:** Robert Gilbert <rgilbert@gilbertlitigators.com>
**Sent:** Wednesday, February 8, 2023 5:37 PM
**To:** Bernescu, Laura (CHI) <Laura.Bernescu@skadden.com>; Stein, Scott D.
<sstein@sidley.com>; Carbone_Defs_Service@listserv.whitecase.com
**Cc:** Ted Normand <tnormand@fnf.law>; smagnusson@gilbertlitigators.com; 568
Litigation <568_Litigation@fnf.law>
**Subject:** [Ext] RE: Judge Kennelly's Ruling Limiting the Parties to 100 Total RFPs

Hi Laura,

Thank you for your note. Item 7 in the Court's minute entry states that the parties are,
"directed to file a status report on 2/10/2023 setting out what remaining issues
identified in the parties' previous status reports and motions have not yet been ruled
upon." Search terms were identified at pages 17-18 and 20, so we should have a short
call tomorrow about what the parties want to say in Friday's status report.

A couple of us can have a call with you between 4:30pm and 6:30 pm tomorrow. No
guarantees, but we may have some sense of the RFPs that we are cutting by that time.
By the same token, please try to be prepared to respond to Steve Magnusson's most
recent substantive email on this subject. I very much doubt that anyone wants to inform
His Honor in a Friday status report that we cannot agree on three search strings 😊

Thank you.

Best regards,

Bob

Robert D. Gilbert

Managing Partner
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
rgilbert@gilbertlitigators.com
646-448-5269 work
203-645-0055 cell
www.gilbertlitigators.com

**From:** Bernescu, Laura
**Sent:** Wednesday, February 8, 2023 2:50 PM
**To:** Stein, Scott D.; Ted Normand; rgilbert@gilbertlitigators.com; 568 Litigation; Steven Magnusson
**Cc:** Carbone_Defs_Service@listserv.whitecase.com
**Subject:** RE: Judge Kennelly's Ruling Limiting the Parties to 100 Total RFPs

Counsel,

Consistent with the below, we think it makes sense to hold off on scheduling a further meet and confer regarding search terms until we have clarity on which RFPs remain at issue. Thanks.

Best,

Laura

**Laura Bernescu**
**Skadden, Arps, Slate, Meagher & Flom LLP**
155 N. Wacker Drive | Chicago | Illinois | 60606-1720
T: 312.407.0709 | F: 312.827.9421
laura.bernescu@skadden.com

**From:** Stein, Scott D. <sstein@sidley.com>
**Sent:** Wednesday, February 8, 2023 1:47 PM
**To:** Ted Normand <tnormand@fnf.law>; rgilbert@gilbertlitigators.com; 568 Litigation <568_Litigation@fnf.law>
**Cc:** Carbone_Defs_Service@listserv.whitecase.com
**Subject:** [Ext] Judge Kennelly's Ruling Limiting the Parties to 100 Total RFPs

Counsel,

In light of Judge Kennelly's ruling today limiting each side to 100 RFPs in total, please let us know by the end of this week which of Plaintiffs' already-served RFPs we should be responding to. It would be sufficient to just identify them by set and number (e.g. First RFPs: #, #, #, etc; Second RFPs: #, #, #).

Needless to say, it is critical that we receive this information promptly given the discovery-related deadlines in the case schedule. In addition, knowing this universe is critical to continue discussions on several outstanding issues, including search terms, TAR, and post-complaint discovery.

- Scott

**SCOTT D. STEIN**

**SIDLEY AUSTIN LLP**
312 853 7520 (work)
773 220 4277 (cell)
sstein@sidley.com

*****************************************************************************
Th s e-ma  s sent by a  aw firm and may conta n  nformat on that  s pr v  eged or confident a .
If you are not the  ntended rec p ent, p ease de ete the e-ma  and any attachments and not fy us
 mmed ate y.

*****************************************************************************

----------------------------------------------------------------------------
Th s ema  (and any attachments thereto)  s  ntended on y for use by the addressee(s) named here n and may conta n  ega  y
pr v  eged and/or confident a   nformat on. If you are not the  ntended rec p ent of th s ema  , you are hereby not fied that any
d ssem nat on, d str but on or copy ng of th s ema  (and any attachments thereto)  s str ct y proh b ted. If you rece ve th s ema   n
error p ease  mmed ate y not fy me at (212) 735-3000 and permanent y de ete the or g na  ema  (and any copy of any ema ) and
any pr ntout thereof.

Further  nformat on about the firm, a  st of the Partners and the r profess ona  qua ficat ons w   be prov ded upon request.

===========================================================================

----------------------------------------------------------------------------
Th s ema  (and any attachments thereto)  s  ntended on y for use by the addressee(s) named here n and may conta n  ega  y
pr v  eged and/or confident a   nformat on. If you are not the  ntended rec p ent of th s ema  , you are hereby not fied that any
d ssem nat on, d str but on or copy ng of th s ema  (and any attachments thereto)  s str ct y proh b ted. If you rece ve th s ema   n
error p ease  mmed ate y not fy me at (212) 735-3000 and permanent y de ete the or g na  ema  (and any copy of any ema ) and
any pr ntout thereof.

Further  nformat on about the firm, a  st of the Partners and the r profess ona  qua ficat ons w   be prov ded upon request.

===========================================================================

----------------------------------------------------------------------------
Th s ema  (and any attachments thereto)  s  ntended on y for use by the addressee(s) named here n and may conta n  ega  y
pr v  eged and/or confident a   nformat on. If you are not the  ntended rec p ent of th s ema  , you are hereby not fied that any
d ssem nat on, d str but on or copy ng of th s ema  (and any attachments thereto)  s str ct y proh b ted. If you rece ve th s ema   n
error p ease  mmed ate y not fy me at (212) 735-3000 and permanent y de ete the or g na  ema  (and any copy of any ema ) and
any pr ntout thereof.

Further  nformat on about the firm, a  st of the Partners and the r profess ona  qua ficat ons w   be prov ded upon request.

===========================================================================

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the
recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is
privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for
delivering it to the intended recipient, you are hereby notified that you have received this document in error and that
any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this
communication in error, please notify us immediately by e-mail, and delete the original message.

This email and its attachments may contain confidential and/or legally privileged information from the law firm of Hellring Lindeman
Goldstein & Siegal LLP.  This information is only for the use of the intended recipient. If you are not the intended recipient, you are
hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this email and
attachments is strictly prohibited and those contents should be returned to this firm immediately.  Although this email and its
attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and
opened, no respons bility is accepted by Hellring Lindeman Goldstein & Siegal LLP for any loss or damage arising in any way from
its use.  This communication, including attachments and enclosures, is not intended to provide any tax advice, is not a substitute
for a formal tax opinion. and is not sufficient to avoid tax-related penalties.

Chart of
Plaintif...al).xlsx

| RFP No. | Request | Proposal/Revision |
|---|---|---|
| 1 | Documents sufficient to show for each Academic Year during the Relevant Time Period:<br>a. the number of Applicants;<br>b. the number of Admitted Applicants;<br>c. the number of Applicants You placed on a Waitlist;<br>d. the number of Admitted Applicants who enrolled as Students;<br>e. the number of Students in each class in each of the four years of Your undergraduate program;<br>f. the number of Students in each class of the four years of Your undergraduate program enrolled in any schools, colleges, or programs with unique Admissions processes, including but not limited to Columbia University School of General Studies, Oxford College at Emory University, the University of Pennsylvania School of Liberal and Professional Studies, the Brown University Resumed Undergraduate Education program, the Georgetown University School of Continuing Studies Bachelor's Completion Program, the Duke University Continuing Studies program for degree-seeking candidates, and the Yale University Eli Whitney Students Program;<br>g. the number of Transfer Applicants;<br>h. the number of Admitted Transfer Applicants;<br>i. the average Financial Aid Package You extended to Admitted Applicants;<br>j. the average Financial Aid Package You extended to Admitted Transfer Applicants;<br>k. the average Net Price of each Admitted Applicant;<br>l. the average Net Price of each Admitted Waitlist Applicant; and<br>m. the average Net Price of each Admitted Transfer Applicant. | For structured data, proposed time period of January 1, 1998. |
| 2 | For each Financial Aid Applicant during the Relevant Time Period, all data and information from each Financial Aid Applicant's SAR, CSS Profile, or any other Financial Aid application, for each Academic Year beginning when the Financial Aid Applicant initially applied to Your full-time undergraduate program through every Academic Year the Financial Aid Applicant continued enrollment beyond the initial Academic Year of matriculation. Such data, provided in Electronic Format include but are not limited to:<br>a. from the SAR, if applicable, any common identifier, including Federal Methodology (FM), EFC, data release number ("DRN"), and last four digits of the Applicant's social security number;<br>b. from the CSS Profile, if applicable, any College Board Financial Aid Number (CBFinAid ID) or other means of uniquely identifying the Applicant;<br>c. the Student's full name;<br>d. all Applicant ID numbers created, created, or otherwise used by Your institution;<br>e. the applicable Academic Year;<br>f. the Admitted Applicant's or Student's applications to, Admission decisions by, and Financial Aid offers from other institutions;<br>g. the Admitted Applicant's or Student's family financial information, including income, assets, and benefits;<br>h. the Admitted Applicant's or Student's family size, including the number of family members who will be attending college during the applicable Academic Year; and<br>i. any other data collected for the purpose of, considered in, or relied upon for making any Financial Aid determination, including but not limited to the packaging of Financial Aid (i.e. mix of Loans, Gift Aid, and work-study). | For structured data, proposed time period of January 1, 1998.<br><br>If Defendants stipulate there are no other line items from the (SAR) that any Defendant uses from the SAR in making student-specific financial aid determinations, and stipulate that all factors disclosed in connection with these RFPs are the complete set of the factors assigned a numerical ranking or score and that each factor has a positive (greater than zero) weight in admissions decisions regarding individual applicants, then Plaintiffs propose, in lieu of RFP No. 2 (g) – (i), responses that include the following elements of Sample Student Aid Report each Admitted Applicant:<br>35 – Student AGI<br>40 – Student cash savings<br>41 – Student net worth<br>46 – Is student married?<br>50 – Does student have a child?<br>58 – Parent's marital status<br>83 – Parents AGI<br>86 – Father's earned income |
| 3 | All Documents Concerning the effect of the following factors on the decisions of Admitted Applicants to attend Your undergraduate institution:<br>a. changes in Your Net Price and/or changes in other undergraduate institutions' Net Prices;<br>b. other institutions' pricing policies; and/or<br>c. Your or other institutions' Financial Aid policies, including but not limited to any reports or memoranda exchanged recommending changes to your prices, Net Prices, Costs of Attendance, and/or Financial Aid policies in light of changes or announcements by other institution | |
| 4 | For each Financial Aid Applicant to Your full-time undergraduate program during the Relevant Time Period, all data and information contained in any (a) Financial Aid management software database or platform or (b) Admissions and Enrollment Management Software, database, or platform, with such data to be provided in the Electronic Format in which such data were received and/or subsequently stored if such data were imported or otherwise integrated into Your databases | For structured data, proposed time period of January 1, 1998. |

| RFP No. | Request | Proposal/Revision |
|---|---|---|
| 5 | To the extent not provided in response to one of the Requests above, for each Financial Aid Applicant to Your full-time undergraduate program during the Relevant Time Period, provided in the Electronic Format in which such data were received and/or subsequently stored if such data were imported or otherwise integrated into Your databases: <br> a. All Applicant ID numbers received, created, or otherwise used by Your institution; <br> b. the Academic Year of the Financial Aid Applicant's Financial Aid Application; <br> c. the date of the Admissions application; <br> d. the date of the Financial Aid Application; <br> e. each Financial Aid Applicant's identification number; <br> f. if a Financial Aid Applicant is a returning Student, the Student identification number or other identification number(s) maintained, created, or used by Your institution. <br> g. the Applicant's full name; <br> h. the Applicant's age; <br> i. the Applicant's race; <br> j. the Applicant's ethnicity; <br> k. the admittance status of the Applicant at Your institution and any other institution; <br> l. any information Concerning the Financial Aid Applicant's actual or potential Financial Aid, including whether the Applicant applied for Financial Aid; <br> m. whether the Applicant applied for any Early Admissions Program, Regular Decision, as a Transfer, or was placed on a Waitlist; <br> n. whether the Applicant had any family member who attended Your institution; <br> o. whether any of the Applicant's parents were or are faculty or otherwise employed at Your institution; <br> p. whether the Applicant was considered eligible for any preferential admission on the basis of the Applicant's lack of need for Financial Aid or because of the Applicant's family's capacity to make a substantial Donation; and <br> q. any other data considered in connection with the Applicant's application. | For structured data, proposed time period of January 1, 1998. <br><br> The use of the word "substantial" is gratuitous, and is not meant to qualify the meaning of "Donation." <br><br> Plaintiffs are amending the definition of "Donation" as follows: <br><br> 28. "Donation" includes but is not limited to restricted or unrestricted cash gifts, non-cash gifts, matching gifts, gifts of stock, bonds, securities, or business interests, bequests, gifts of real property, gifts of personal property, gifts of retirement plans, gifts of life insurance, gifts of copyrights, gifts of royalties, gifts of patents, assignments of contractual income rights, gifts of oil and gas interests, one-time gifts, recurring gifts, planned gifts, life income gifts, or in-kind donations valued on a one-time basis or cumulatively over a period of years at $50,000 or more. Donation also includes any gifts resulting in an "endowed chair" or similar honorific such as the name of a building or a stadium. |
| 6 | Any and all common identifiers that You have received, maintained, or used that permit matching an Applicant or Student across post-secondary institutions to which the Applicant or Student may have applied for Admissions and/or Financial Aid, including but not limited to common identifiers You have obtained from outside sources such as the U.S. Department of Education, the College Board, or the Student or Student's family | For structured data, proposed time period of January 1, 1998. |
| 7 | For all Financial Aid Applicants during the Relevant Time Period, all data, information and/or formulae, including Your Internal Financial Aid Formulae, maintained, created, or used by You to evaluate a Financial Aid Applicant's Financial Aid eligibility and Financial Aid Package for each Academic Year beginning when the Applicant initially applied for Your full-time undergraduate program through every Academic Year the Student continued enrollment or otherwise submitted a Financial Aid Application beyond the initial Academic Year of matriculation. Such data, provided in Electronic Format, include but are not limited to: <br> a. the Applicant's IM EFC; <br> b. the Applicant's FM EFC <br> c. the Applicant's EFC For Your Institutional Aid Formulae; <br> d. all factors used in the determination of the IM EFC, including any and all formula(e) used; <br> e. all factors used in the determination of the FM EFC, including any and all formula(e) used; <br> f. all factors used in the determination of the EFC for Your Institutional Aid Formulae; <br> g. all forms of Financial Aid offered to the Applicant, including but not limited to federal, institutional aid, and work-study programs; and <br> h. any data identifying any individual eligible for an FSEOG but who did not receive such funds because the institution had reached or exceeded its allotment | For structured data, proposed time period of January 1, 1998. |
| 12 | For all Admitted Waitlist Applicants, Documents sufficient to identify the Admitted Waitlisted Applicant, whether the Admitted Waitlisted Applicant sought Financial Aid, and any Financial Aid Package offered to or awarded to the Admitted Applicant. | For structured data, proposed time period of January 1, 1998. |
| 14 | For all Admitted Transfer Applicants, Admissions Documents sufficient to identify the Admitted Applicant and all Documents Concerning whether the Admitted Transfer Applicant sought Financial Aid and any Financial Aid Package offered to or awarded to the Admitted Transfer Applicant. | For structured data, proposed time period of January 1, 1998. |

| RFP No. | Request | Proposal/Revision |
|---|---|---|
| 16 | For each and every Applicant and Student during the Relevant Time Period, all data Concerning Your calculation of each Applicant's Net Price of attendance quoted and charged to them, and all components of the Net Price, for each Academic Year beginning when the Applicant initially applied for Your full-time undergraduate program through every Academic Year the Student continued enrollment beyond the initial Academic Year of matriculation. Such data shall be provided in the Electronic Format in which such data were received and/or subsequently stored if such data were imported or otherwise integrated into Your databases, and shall include the amount, date, transaction ID, whether it is a charge or credit, and charge or credit type for the following:<br>a.  each Cost-of-Attendance-related charge applied to the Student's account, including (but not limited to) Tuition, Room and Board fees, authorized on-campus or off-campus living expenses, and activity fees;<br>b.  each credit applied to the Student's account, including but not limited to any institutional aid, federal aid, parent Loans, and scholarships from sources other than You or the federal government;<br>c.  each disbursement You made to the Student; and<br>d.  for any Student who withdrew from the institution, each return of Title IV funds (R2T4) calculated. | For structured data, proposed time period of January 1, 1998. |
| 18 | To the extent not captured elsewhere in these Requests for Production, all data collected from each Financial Aid Applicant that serve as an Input into such formulae. | For structured data, proposed time period of January 1, 1998. |
| 20 | Documents sufficient to show all Donations cumulatively valued at $50,000 or more made by families of Admitted Applicants during the period five years prior to when the Admitted Applicants were admitted. For Admitted Applicants who matriculated, this Request also seeks all Documents Concerning Donations made by them, on their behalf, or by their families between the Students' matriculation and the five years following their graduation. | Plaintiffs are amending the definition of "Donation" as follows:<br><br>28. "Donation" includes but is not limited to restricted or unrestricted cash gifts, non-cash gifts, matching gifts, gifts of stock, bonds, securities, or business interests, bequests, gifts of real property, gifts of personal property, gifts of retirement plans, gifts of life insurance, gifts of copyrights, gifts of royalties, gifts of patents, assignments of contractual income rights, gifts of oil and gas interests, one-time gifts, recurring gifts, planned gifts, life income gifts, or in-kind donations valued on a one-time basis or cumulatively over a period of years at $50,000 or more. Donation also includes any gifts resulting in an "endowed chair" or similar honorific such as the name of a building or a stadium. |
| 22 | With respect to the list of individuals in Appendix 1, all Documents in your Development Office or Admissions Office Concerning any actual or potential Donation to You by such individuals, as well as all Documents in your Development Office or Admissions Office Concerning any Applicants who are identified in any files, records, databases, or software used by your Development Office as children, relatives, or friends of such individuals | Plaintiffs are amending the definition of "Donation" as follows:<br><br>28. "Donation" includes but is not limited to restricted or unrestricted cash gifts, non-cash gifts, matching gifts, gifts of stock, bonds, securities, or business interests, bequests, gifts of real property, gifts of personal property, gifts of retirement plans, gifts of life insurance, gifts of copyrights, gifts of royalties, gifts of patents, assignments of contractual income rights, gifts of oil and gas interests, one-time gifts, recurring gifts, planned gifts, life income gifts, or in-kind donations valued on a one-time basis or cumulatively over a period of years at $50,000 or more. Donation also includes any gifts resulting in an "endowed chair" or similar honorific such as the name of a building or a stadium. |
| 23 | All Documents or database entries Concerning awareness by the Development Office of any Applicant at any time prior to that Applicant's matriculation at Your institution. | |
| 24 | All Documents Concerning the 568 Group, the 568 Group's leadership, and the 568 Group's policies, practices, and procedures. This Request includes any internal communications, including but not limited to those via email, text message, instant message, and memorandum. | |
| 27 | All Documents, including drafts, that You received from the 568 Group, Technical Committee, Needs Analysis Council, and Steering Committee and All Documents sent or distributed by one or more 568 Group Members to the 568 Group, its Technical Committee, its Needs Analysis Council, and its Steering Committee. | |

| RFP No. | Request | Proposal/Revision |
|---|---|---|
| 29 | All Documents Concerning the Consensus Methodology including: (a) its development; (b) any proposed or implemented changes since its inception, including the effects of such changes on 568 Group Members or any of them; (c) comparisons of the Consensus Methodology to the Institutional Methodology, Federal Methodology, any 568 Group Member's Financial Aid methodology or practice(s), or any other Financial Aid methodology or practice(s); (d) studies or analyses of the impact of the Consensus Methodology on Financial Aid or Tuition; (e) rules or regulations Concerning 568 Group Members' implementation of the Consensus Methodology or Financial Aid methodologies or practices; (f) Documents used to train any person in the use, application, or understanding of the Consensus Methodology; and (g) marketing, advertising, or public relations material Concerning the Consensus Methodology. | |
| 30 | All Documents Concerning: a. how the 568 Group has defined the term "need-blind"; and b. how the 568 Group communicated requirements for 568 Group Members to be "need-blind" under its standards, including all memoranda of understanding and Certifications of Compliance; any auditing or similar efforts to ensure that 568 Group Members complied with the 568 Group's "need-blind" standard; any Enforcement Mechanisms contemplated or action actually taken against members for failing to comply with the 568 Group's "need-blind" standard; and any Documents Concerning the treatment of Waitlisted Applicants and Transfer Applicants with respect to being "need-blind" under the 568 Group's standard. | |
| 31 | All Documents Concerning the 568 Group that also Concern the actual or potential preferential treatment of Applicants from families capable of making substantial Donations; any Documents Concerning actual or potential preferential treatment of Applicants who did not need Financial Aid; and any discussions of Enrollment Management, including any efforts, plans, or proposals to craft the composition of classes at 568 Group Member institutions to achieve revenue or other financial goals. | The use of the word "substantial" is gratuitous, and is not meant to qualify the meaning of "Donation." Plaintiffs are amending the definition of "Donation" as follows: 28. "Donation" includes but is not limited to restricted or unrestricted cash gifts, non-cash gifts, matching gifts, gifts of stock, bonds, securities, or business interests, bequests, gifts of real property, gifts of personal property, gifts of retirement plans, gifts of life insurance, gifts of copyrights, gifts of royalties, gifts of patents, assignments of contractual income rights, gifts of oil and gas interests, one-time gifts, recurring gifts, planned gifts, life income gifts, or in-kind donations valued on a one-time basis or cumulatively over a period of years at $50,000 or more. Donation also includes any gifts resulting in an "endowed chair" or similar honorific such as the name of a building or a stadium. |
| 38 | All Documents Concerning communications among 568 Group Members and governmental entities regarding Financial Aid, including but not limited to Financial Aid policies, Financial Aid practices, and Financial Aid Packages. "Government entities" include but are not limited to the U.S. Department of Justice and the U.S. Department of Education. | |
| 39 | All Documents Concerning data exchanged between or among 568 Group Members and/or between You and the 568 Group or its membership, including but not limited to the sharing of data or other information related to Financial Aid formula(e), Financial Aid policies, Financial Aid packages for Students and Admitted Applicants, and Admissions decisions of Applicants | |
| 41 | Documents sufficient to show Your organizational structure, including Your directors, officers, deans, and employees involved in, and Your departments, divisions, affiliates, or contractors engaged in (a) the Admission of undergraduate Students to Your institution, (b) the solicitation and management of Donations and gifts to Your institution or any of its subdivisions or component entities, (c) the development of budgets, and (d) institutional research and competitive analysis. This Request includes organizational charts and Documents sufficient to identify each employee or contractor with responsibilities for undergraduate Admissions, Enrollment Management, Development and Donor relations, alumni relations, finance and investments, the coordination of the Development office and the Admissions office, and institutional research. | Plaintiffs are amending the definition of "Donation" as follows: 28. "Donation" includes but is not limited to restricted or unrestricted cash gifts, non-cash gifts, matching gifts, gifts of stock, bonds, securities, or business interests, bequests, gifts of real property, gifts of personal property, gifts of retirement plans, gifts of life insurance, gifts of copyrights, gifts of royalties, gifts of patents, assignments of contractual income rights, gifts of oil and gas interests, one-time gifts, recurring gifts, planned gifts, life income gifts, or in-kind donations valued on a one-time basis or cumulatively over a period of years at $50,000 or more. Donation also includes any gifts resulting in an "endowed chair" or similar honorific such as the name of a building or a stadium. |
| 42 | All Documents Concerning Your decision(s) to join, leave, purportedly withdraw from, or continue participating in the 568 Group at any time or times during the Relevant Time Period. This Request includes all communications, internal or with third parties, about such decisions, including communications with counsel other than those solely between You and Your counsel. | |

| RFP No. | Request | Proposal/Revision |
|---|---|---|
| 43 | All Documents Concerning Your communications with any 568 Group Member Concerning (a) Admission of Students, (b) cost of Tuition, (c) Financial Aid programs or packages, and (d) need-blind (however You define that term) Admissions practices and/or (e) the Consensus Methodology or implementation of the Consensus Methodology or similar Financial Aid formulae. | |
| 45 | All Documents Concerning Your use of, implementation of, decision to modify, or decision to use an alternative methodology to, the Consensus Methodology. | |
| 46 | All Documents Concerning (a) the creation and structuring of your Financial Aid Packages, (b) Financial Aid being a functional or apparent Discount, (c) Your institutional and outside funding for Financial Aid, and (d) any analyses or data Concerning Your ability to provide Financial Aid. | |
| 48 | All Documents made available or presented to prospective Applicants, their families, college Admissions Consultants, school counselors, and coaches comparing Your institution and/or its Financial Aid programs, policies, and practices to those of other institutions. | |
| 49 | Documents, including any statements, summaries, forecasts, strategic plans, budgets, data, and analyses, sufficient to demonstrate, for each Academic Year during the Relevant Time Period, Your Tuition revenue, Financial Aid, Development efforts or income, endowment performance, and costs to establish and operate Your institution, including but not limited to fixed-costs, financing, upgrades, improvements, maintenance, utilities, and renovations. | |
| 50 | Documents, including any statements, summaries, forecasts, strategic plans, budgets, data, and analyses, sufficient to demonstrate, for each Academic Year during the Relevant Time Period, the Cost of Attendance at Your institution, including but not limited to how Your Cost of Attendance was determined during the Relevant Time Period. | |
| 51 | All Documents Concerning Your public statements regarding reasons for increases to Tuition or Cost of Attendance. | |
| 53 | For each of Your fiscal or calendar years during the Relevant Time Period, in whichever manner such Documents are normally maintained, all Documents Concerning: (a) the dollar amount of Your restricted endowment assets (i.e., endowments assets resulting from Restricted Donations); (b) the dollar amount of Your restricted endowment assets that are devoted to undergraduate Financial Aid; (c) the dollar amount of Your unrestricted endowment assets (i.e., endowment assets resulting from Unrestricted Donations); (d) the annual percentage return earned by Your endowment (i.e., endowment income divided by endowment assets); (e) the total number of Students; and (f) the total number of full-time students, including those in graduate and professional school. | Plaintiffs are amending the definition of "Donation" as follows:<br><br>28. "Donation" includes but is not limited to restricted or unrestricted cash gifts, non-cash gifts, matching gifts, gifts of stock, bonds, securities, or business interests, bequests, gifts of real property, gifts of personal property, gifts of retirement plans, gifts of life insurance, gifts of copyrights, gifts of royalties, gifts of patents, assignments of contractual income rights, gifts of oil and gas interests, one-time gifts, recurring gifts, planned gifts, life income gifts, or in-kind donations valued on a one-time basis or cumulatively over a period of years at $50,000 or more. Donation also includes any gifts resulting in an "endowed chair" or similar honorific such as the name of a building or a stadium. |
| 54 | All Documents Concerning policies, practices, and procedures relating to applications to your undergraduate programs and for Financial Aid during the Relevant Time Period including but not limited to Common Application submissions, Coalition application submissions, QuestBridge application submissions, Posse application submissions, Your internal Admissions application submissions, FAFSA and SAR submissions, CSS Profile submissions, supplemental Financial Aid Application form submissions, Financial Aid Packages provided to all Admitted Applicants and Students, and any revisions to Financial Aid Packages. | |
| 55 | Documents sufficient to show Your Admissions and Financial Aid policies, practices, and procedures for each Academic Year during the Relevant Time Period, including handbooks, manuals, training materials, and promotional materials. | |
| 58 | All Documents Concerning Dean's Interest Lists, Z Lists, and Tagging protocols and any Documents reflecting that anyone in Your Admissions office or President's Office, or deans' offices viewed images of Applicants' homes, considered Applicants' family income or family wealth in any way, considered whether Applicants' zip codes signified affluence, or considered whether the Applicants revealed in any way that they intended to apply for Financial Aid | |
| 61 | All Documents Concerning differences in Your Financial Aid policies, practices, or procedures for Applicants and Admitted Applicants (a) in any Early Admissions programs; (b) in the Regular Decision program; (c) off the Waitlist; (d) as a Transfer Applicant; or (e) into any schools, colleges, or programs with unique Admissions processes, including but not limited to Columbia University's School of General Studies, Oxford College at Emory University, the University of Pennsylvania School of Liberal and Professional Studies, the Brown University Resumed Undergraduate Education program, the Georgetown University School of Continuing Studies Bachelor's Completion Program, the Duke University Continuing Studies program for degree-seeking candidates, and Yale University Eli Whitney Students Program. | |

| RFP No. | Request | Proposal/Revision |
|---|---|---|
| 62 | All Documents Concerning the Admissions and Financial Aid policies and practices, formal or informal, for programs targeted toward non-traditional, full-time degree-seeking undergraduate Applicants and Students, including those with breaks in their education, adult learners, and those with dependents. Such programs include but are not limited to the Columbia University School of General Studies, the University of Pennsylvania School of Liberal and Professional Studies, the Brown Resumed Undergraduate Education program, the Georgetown School of Continuing Studies Bachelor's Completion Program, the Duke University Continuing Studies program for degree-seeking candidates, and Yale's Eli Whitney program | |
| 63 | All Documents Concerning any relationship between Early Admissions programs and Financial Aid. | Plaintiffs clarify this request to seek: Documents sufficient to show, for each year since 1994, any policy or procedure whereby Your institution establishes, views, or regards as existing any relationship between Early Admission and the likelihood that an applicant for Early Admission will or will not seek Financial Aid. |
| 64 | All Documents Concerning Your Internal Financial Aid Formula(e), including their development, implementation, changes, proposed changes, and comparisons to or implementations of the Consensus Methodology, Institutional Methodology Federal Methodology, any 568 Group Member's Financial Aid formula(e), and any Peer Institutions' Financial Aid formula(e). This Request includes any and all Inputs and Outputs for Your Internal Financial Aid Formula(e) and all methodologies and systems used to determine a Student or Admitted Applicant's ability to the pay Cost of Attendance. | |
| 66 | All Documents Concerning any purported need for independent professional judgment in the awarding of Financial Aid, including, but not limited to, formal or informal Financial Aid appeals or reconsideration processes; successful or unsuccessful attempts by Applicants or Students to avail themselves of any such appeal or reconsideration; deviations from any Financial Aid formula(e) relevant for particular Applicants or Students based on unique Financial Circumstances or presentation of competing Financial Aid offers from other institutions. | |
| 69 | All Documents analyzing the choices made by Admitted Applicants to Your institution to attend institutions of higher education other than Yours. | |
| 70 | All Documents Concerning the application and enrollment decisions of persons who did, and did not, apply to Your full-time undergraduate program, including but not limited to all National Student Clearinghouse reports and data Concerning the institutions that Applicants applied to and where they chose to enroll. | |
| 72 | All Documents analyzing the colleges and universities You consider Peer Institutions, including any such analyses by Your Office of Institutional Research or those produced to the U.S. Department of Education or any college ranking organization. This Request includes all Documents Concerning Your competitive standing among Peer Institutions, including but not limited to analyzes related to brand preferences, supply of available seats, prestige, Cost of Attendance, Net Price, Financial Aid, and the ability for Applicants to substitute one Peer Institution for another. | |
| 77 | All Documents Concerning Your Enrollment Management, including analyses of the use of any Enrollment Management Software, Consultants, employees, analyses, data, or algorithms. This Request includes all Documents within Your Admissions Office Concerning Landscape. This Request also includes all Documents Concerning the roles of any administrator at Your institution whose title or job description includes the term "enrollment management." | |
| 80 | All Documents Concerning actual or potential consideration of any Applicant's Financial Circumstances, including all Documents Concerning whether an Applicant placed on the Dean's Interest List or Z List prior to Your making a decision regarding whether to admit the Applicant and whether the Applicant was in fact actually accepted for Admission by You. | |
| 82 | All Documents Concerning Your membership in, participation in, or affiliation with any professional organizations, alliances, consortia, or partnership programs Concerning Admissions, including but not limited to the Common Application, COFHE, the Coalition for College, QuestBridge, the Posse Foundation, and the American Talent Initiative. This Request includes all data shared between You and these organizations, alliances, or consortia and between You and other partners or members. | |
| 83 | All Documents Concerning lobbying the National Commission on Responsibilities for Financing Postsecondary Education and the principle, policy, or goal that parents, Students, or families should be primarily responsible for bearing the cost of postsecondary education. | |

| RFP No. | Request | Proposal/Revision |
|---|---|---|
| 88 | All Documents Concerning the November 14, 2017 Columbia Spectator article by Eli Lee entitled "Public Health Professor Lisa Rosen-Metsch Appointed Dean of General Studies" including the editor's note issued on February 16, 2022 stating, in substance, that the article's previous statement that General Studies Admissions are "need-aware" was in error. See Eli Lee, Public Health Professor Lisa Rosen-Metsch Appointed Dean of General Studies, COLUMBIA SPECTATOR (Nov. 14, 2017), https://www.columbiaspectator.com/news/2017/11/14/public-health-professor-lisa-rosen-metsch-appointed-dean-of-general-studies/. | |
| 98 | All Documents Concerning work performed by Jeff Sassorossi, including any work he performed as Dartmouth's "liaison between the Advancement (Alumni Relations and Development) and Admissions" relating to Admissions policies and to Admissions of specific Students. | |
| 103 | All Documents Concerning Georgetown's statement that it "compete[s] among the top 25 universities in the nation," including those used to identify the Peer Institutions. See President John J. DeGioia, Student Town Hall Meeting on the Implications of the Financial Crisis (Mar. 2, 2009), https://president.georgetown.edu/speeches/student-town-hall-meeting-on-the-implications-of-the-financial-crisis/. | |
| 113 | All Documents Concerning the Yale Daily News article published on February 16, 2005 entitled "Legacies Still Maintain an Edge in Admissions." Hillary August, Legacies Still Maintain Edge in Admissions, YALE DAILY NEWS (Feb. 16, 2005), https://yaledailynews.com/blog/2005/02/16/legacies-still-maintain-edge-in-admissions/. This Request includes all Documents Concerning the "A-list," "B-list," or "C-list," mentioned in the article, or any similar lists, including copies of such lists, the identities of all Applicants or their family members on such lists, and whether any Applicant connected to any such list was ultimately accepted, rejected, or Waitlisted. | |
| 114 | All Documents Concerning the September 26, 2008 article in the Yale Daily News entitled "University Leaves Financial Aid Group," including but not limited to statements, comments, discussions, remarks, or analyses by the 568 Group or 568 Group Members (including Yale) Concerning Yale's statement that its "new, more generous aid policy in January means the University can no longer follow the consensus methodology" and that "[b]y leaving the 568 Group, Yale is now free to give more aid than they would have gotten under the consensus methodology." See Caitlin Roman, University Leaves Financial Aid Group, YALE DAILY NEWS (Sept. 26, 2008), https://yaledailynews.com/blog/2008/09/26/university-leaves-financial-aid-group/. This Request includes all Documents Concerning Yale's decision to purportedly withdraw from the 568 Group. | |
| 115 | All Documents Concerning Yale's decision to purportedly re-join the 568 Group. | |
| 116 | All Documents Concerning the contents of the November 2, 2018 article in the Yale Daily News entitled "Development Office Courts 'VIP' High Schoolers, Children of Potential Donors" or the article itself. Lorenzo Arvanitis & Skakel McCooey, Development Office Courts "VIP" High Schoolers, Children of Potential Donors, YALE DAILY NEWS (Nov. 2, 2018), https://yaledailynews.com/blog/2018/11/02/development-office-courts-vip-high-schoolers-children-of-potential-donors/. | |
| 117 | All Documents Concerning foreign national Applicants such as those identified in the March 26, 2022 Air Mail article entitled "Yale for Sale." See Clara Molot, Yale for Sale, AIR MAIL (Mar. 26, 2022), https://airmail.news/issues/2022-3-26/yale-for-sale. | |
| 123 | All Documents Concerning Your definition of the terms "need aware" and "need sensitive." | |
| 124 | "All Documents Concerning different or preferential treatment in the Admissions process for Applicants whose families are capable of making substantial Donations and Applicants who do not need Financial Aid at Your institution or that of any 568 Group Member or Peer Institution." | The use of the word "substantial" is gratuitous, and is not meant to qualify the meaning of "Donation." Plaintiffs are amending the definition of "Donation" as follows: 28. "Donation" includes but is not limited to restricted or unrestricted cash gifts, non-cash gifts, matching gifts, gifts of stock, bonds, securities, or business interests, bequests, gifts of real property, gifts of personal property, gifts of retirement plans, gifts of life insurance, gifts of copyrights, gifts of royalties, gifts of patents, assignments of contractual income rights, gifts of oil and gas interests, one-time gifts, recurring gifts, planned gifts, life income gifts, or in-kind donations valued on a one-time basis or cumulatively over a period of years at $50,000 or more. Donation also includes any gifts resulting in an "endowed chair" or similar honorific such as the name of a building or a stadium. |
| 126 | All Documents Concerning any communications between Your Admissions Office staff and Your Development Office staff Concerning any Donor or Applicant, including any email correspondence and any shared electronic data or information sources. | |

| RFP No. | Request | Proposal/Revision |
|---|---|---|
| 127 | All Documents Concerning communications between (a) Your Admissions Office and the Development Office, (b) the President's Office and the Admissions Office, and/or (c) the Financial Aid Office and Admissions Office, including any email correspondence and any shared electronic data or information sources, that identify Applicants by name and discuss the Applicants' candidacy prior to Your issuing a formal decision on their Admissions application. | |
| 128 | All Documents Concerning communications between or among You (including but not limited to any employee in the Development Office, Financial Aid Office, Admissions Office, Alumni Relations Office, or President's office) and any natural person(s) or families, or representatives of such natural person(s) whom You identified as part of a family who has ever cumulatively donated $50,000 or more to You (on either a one-time or annual basis in that amount or higher) Concerning any Applicants, Admitted Applicants, current Students, or former Students of You | |
| 129 | All Documents reflecting communications between or among You (including but not limited to any employee in the Development Office, Financial Aid Office, Admissions Office, Alumni Relations Office, or President's office) and any natural person(s) whom You have identified as part of a family Your institution has identified as capable of cumulatively providing Donations of at least $50,000, either on a one time or annual basis, whose children who have applied or have been admitted to Your institution. | Plaintiffs are amending the definition of "Donation" as follows:<br><br>28. "Donation" includes but is not limited to restricted or unrestricted cash gifts, non-cash gifts, matching gifts, gifts of stock, bonds, securities, or business interests, bequests, gifts of real property, gifts of personal property, gifts of retirement plans, gifts of life insurance, gifts of copyrights, gifts of royalties, gifts of patents, assignments of contractual income rights, gifts of oil and gas interests, one-time gifts, recurring gifts, planned gifts, life income gifts, or in-kind donations valued on a one-time basis or cumulatively over a period of years at $50,000 or more. Donation also includes any gifts resulting in an "endowed chair" or similar honorific such as the name of a building or a stadium.<br><br>Plaintiffs clarify this request to seek:<br><br>All Documents Concerning communications between or among You (including but not limited to any employee in the Development Office, Financial Aid Office, Admissions Office, Alumni Relations Office, or President's office) and any natural person(s) whom You have identified as part of a family Your institution has identified as having made a Donation or as capable of cumulatively providing a Donation of at least $50,000, whose children who have applied or have been admitted to Your institution. |
| 130 | All Documents reflecting communications between or among the Office of the President, Alumni Relations Office, Development Office, or Admissions Office Concerning an Applicant's family income, wealth, zip code, or actual or anticipated Donations to You. | Plaintiffs are amending the definition of "Donation" as follows:<br><br>28. "Donation" includes but is not limited to restricted or unrestricted cash gifts, non-cash gifts, matching gifts, gifts of stock, bonds, securities, or business interests, bequests, gifts of real property, gifts of personal property, gifts of retirement plans, gifts of life insurance, gifts of copyrights, gifts of royalties, gifts of patents, assignments of contractual income rights, gifts of oil and gas interests, one-time gifts, recurring gifts, planned gifts, life income gifts, or in-kind donations valued on a one-time basis or cumulatively over a period of years at $50,000 or more. Donation also includes any gifts resulting in an "endowed chair" or similar honorific such as the name of a building or a stadium. |
| 131 | All Documents Concerning meetings, phone calls, or other communications other than Applicant Admissions interviews that took place or take place between or among Applicants and any of your faculty, staff, employees, or officers, including any communications by Your Development Office or Your President regarding any such meetings, phone calls, or communications other than Applicant Admissions interviews. | Plaintiffs clarify this request to seek:<br><br>Documents sufficient to show, for each year since 1994, any policy, procedure, or practice, and the content of the policy, procedure, or practice, whereby Your president's office or development office communicates with Applicants. |
| 132 | All Documents Concerning parents or other relatives of an Applicant establishing, or potentially establishing, an endowed chair or endowed fund. | |
| 135 | All Documents Concerning the renewal of the 568 Exemption or modification of that exemption, including any advocacy Concerning such renewal. | |

| RFP No. | Request | Proposal/Revision |
|---|---|---|
| 136 | All Documents Concerning Your understandings or agreements, formal or informal, with the 568 Group or 568 Group Members regarding Admissions or Financial Aid policies or practices. | |
| 138 | All Documents Concerning agreements, discussions, communications, or meetings between You and any other college(s) or university(ies) Concerning Financial Aid, Cost of Attendance, and Admissions, including with regard to particular Students or Applicants. | |
| 139 | "All Documents Concerning any agreements between You and any other colleges or universities to share information Concerning Applicants admitted through Early Admissions Programs." | |
| 140 | All Documents Concerning communications with any officer, trustee, or employee of Harvard University, Princeton University, Stanford University, or any institution that You believe did not adopt the Consensus Methodology Concerning the 568 Group, the 568 Exemption, or any actual or potential discussions, agreements, or sharing of information under the Exemption. | |
| 142 | All Documents Concerning any conversations, meetings, or communications between You and any other institution of higher education about efforts, individually or collectively, to persuade Congress to extend and/or modify the 568 Exemption after it is scheduled to expire on September 30, 2022. This Request includes All Documents between You and any person or entity employed as a lobbyist by you on these subjects, or between You and any Member of Congress or Congressional staff person on these subjects. | |
| 143 | All Documents Concerning any affirmative defense You have raised or may raise in this Action. | |
| 144 | All Documents Concerning Your institution's efforts, policies, or goals to admit Students that reflect either (a) the "unique potential of applicants from less fortunate situations;" or (b) an economically diverse class. | |
| 145 | All Documents Concerning Your institution's efforts, policies, or goals to limit the number of Admitted Applicants who need Financial Aid. | |
| 147 | If you contend that You have withdrawn from the 568 Group at any point during the Relevant Time Period, all Documents Concerning:<br>a. Your alleged decision to withdraw;<br>b. how You have implemented that decision;<br>c. any use You have made of the Consensus Methodology or any of its principles since purportedly withdrawing;<br>d. alternative methods of determining financial need or Financial Aid awards that you have used since purportedly withdrawing;<br>e. differences in outcomes between Your former use of the Consensus Methodology and any subsequent Financial Aid practices;<br>f. any communications you have had with anyone (including the 568 Group and 568 Group members) since Your withdrawal regarding any of the matters in items "a"-"e" of this Request; and<br>g. any Documents Concerning Your disavowing or repudiating the 568 Group and the 568 Group's goals. | |
| 150 | All Documents Concerning the possible or actual use of endowment funds to increase Financial Aid or decrease the Cost of Attendance for undergraduate Students. This Request also includes all Documents Concerning the use of endowment principal or income for Financial Aid. | |
| 151 | All Documents Concerning any Merit Aid offered to Applicants and awarded to Students during the Relevant Time Period. | |
| 154 | All Documents Concerning the actual or potential effect of Your being a 568 Group Member, including the actual or potential effect of adopting or considering the Consensus Methodology, or any modifications to Your Financial Aid methodology made as a result of the 568 Group, on Your Financial Aid or Cost of Attendance. | |
| 155 | Documents Concerning whether Your use of the Consensus Methodology or Your membership in the 568 Group had, has, or could have the effect of limiting the discretion of Your Financial Aid officers to grant additional Financial Aid. | |
| 156 | All Documents Concerning Your views, concerns, or considerations regarding whether elimination of the 568 Group would increase Financial Aid awards. | |
| 157 | All Documents Concerning Princeton University's announcements in 1998 and 2001 Concerning the elimination of Loans from Financial Aid Packages. | |
| 158 | All Documents Concerning any principle, policy, goal, or analysis regarding the amount that a Student (or the Student's family) should bear with respect to financing the cost of postsecondary education. | |
| 160 | All Documents referenced or relied upon in responding to interrogatories in this Action. | |
| 163 | All Documents Concerning any communications You had with any governmental authority or representative in connection with the 568 Group, the 568 Exemption, or the Consensus Methodology. | |
| 1 | All Documents Concerning Your study, analysis, or discussion regarding any relationship between Your admission of Legacy Admissions and Your receipt of current or future Donations. | "Legacy Admission" means a policy or practice, whether formal or informal, in which You grant preferences to children, grandchildren, nieces, nephews, or siblings of alumni of undergraduate or graduate programs. |

| RFP No. | Request | Proposal/Revision |
|---|---|---|
| 2 | All Documents Concerning any scoring methodologies You have used in considering whether to admit Applicants, including but not limited to the principal factors that You have considered in Admissions; any numerical ranking or scoring system(s) used in connection with those factor(s); and any weight applied to any particular ranking or scoring of the Applicants or any particular factor. | |
| 3 | For all Admitted Applicants, Documents reflecting for each Academic Year the scores assigned to each factor disclosed in response to Request No. 2 and the weight, if any, applied to that factor. | |
| 4 | For each Donor-related Admitted Applicant, all letters of recommendation submitted to You by a Donor, or person who refers to the Donor or donation in the recommendation, on behalf of the Applicant. | Donor-related Admitted Applicant" is an Admitted Applicant whose parent, grandparent, aunt/uncle, or sibling made Donation(s) to You cumulatively valued at $50,000 or more during the five year period prior to the admission of the Admitted Applicant. |
| 1 | All Documents Concerning the 568 Group, including the purposes or reasons for the formation of the 568 Group in 1998, including Documents Concerning Your communications with third parties, with Your board of trustees, and with counsel other than Your counsel. | |
| 4 | All Documents provided to or considered by You in making any decisions to join, leave, purportedly withdraw from, or continue to participate in the 568 Group, including Documents provided to or considered by Your board of trustees. | |
| 5 | All Documents provided to Your board of trustees or President Concerning the 568 Group, including any updates, status reports, progress reports, annual reports, or recommendations related to the 568 Group. | |
| 8 | All Documents Concerning the expiration of the 568 Exemption on September 30, 2022, including any conversations, meetings, or communications regarding the effect of the expiration of the 568 Exemption on Your participation in the 568 Group, including Documents Concerning Your communications with third parties, such as any person or entity employed as a lobbyist, and with counsel other than Your counsel. | |
| 10 | All Documents Concerning any changes You or any other Defendant have made to any Admissions or Financial Aid policies or practices since the Complaint was filed. | |
| 11 | All Documents in your President's office, Development Office, or Admissions Office Concerning any actual or potential Donation to You by the individuals in Appendix 1, as well as all Documents in your President's office, Development Office, or Admissions Office Concerning any Applicants who are identified in any files, records, databases, or software used by your Development Office as children or relatives of the individuals in Appendix 1. | |
| 13 | Documents sufficient to show whether any foreign national Applicants who are also Donor-related Admitted Applicants were admitted for permanent residence in the United States at the time of their applications to You, including those Applicants identified in Clara Molot, From Russia With Money, Yale for Sale, AIR MAIL (Mar. 26, 2022), https://airmail.news/issues/2022-3-26/yale-for-sale. | Donor-related Admitted Applicant" is an Admitted Applicant whose parent, grandparent, aunt/uncle, or sibling made Donation(s) to You cumulatively valued at $50,000 or more during the five year period prior to the admission of the Admitted Applicant. |

**From:** Ted Normand <tnormand@fnf.law>
**Sent:** Tuesday, February 14, 2023 8:47 PM
**To:** Carbone_Defs_Service@listserv.whitecase.com
**Cc:** 568 Litigation <568_Litigation@fnf.law>
**Subject:** Chart of Plaintiffs' Revised RFPs

I attach, per the Court's recent Order, a chart of Plaintiffs' revised set of RFPs. There are, by our count, 93 RFPs in the chart (such that we may serve a few more down the road). We're sending them this way to capture our various clarifications concerning scope and definitions relating to the RFPs, as reflected in our November 2022 chart doing similar work seeking to capture the parties' subsequent communications concerning such issues. Thanks.

Ted Normand
*Partner*
**Freedman Normand Friedland LLP**
99 Park Ave., Suite 1910
New York, NY 10016
(t) 646.350.0527 x 104
(f) 646.392.8842
(d) 646.970.7513
@ tnormand@fnf.law

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is

privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

This email and its attachments may contain confidential and/or legally privileged information from the law firm of Hellring Lindeman Goldstein & Siegal LLP. This information is only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this email and attachments is strictly prohibited and those contents should be returned to this firm immediately. Although this email and its attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, no responsibility is accepted by Hellring Lindeman Goldstein & Siegal LLP for any loss or damage arising in any way from its use. This communication, including attachments and enclosures, is not intended to provide any tax advice, is not a substitute for a formal tax opinion, and is not sufficient to avoid tax-related penalties.

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

This email and its attachments may contain confidential and/or legally privileged information from the law firm of Hellring Lindeman Goldstein & Siegal LLP. This information is only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this email and attachments is strictly prohibited and those contents should be returned to this firm immediately. Although this email and its attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, no responsibility is accepted by Hellring Lindeman Goldstein & Siegal LLP for any loss or damage arising in any way from its use. This communication, including attachments and enclosures, is not intended to provide any tax advice, is not a substitute for a formal tax opinion, and is not sufficient to avoid tax-related penalties.