# EXHIBIT 1

**From:** Robert Gilbert <rgilbert@gilbertlitigators.com>
**Sent:** Tuesday, February 28, 2023 11:39 PM
**To:** Carbone_Defs_Service@listserv.whitecase.com
**Cc:** 568 Litigation <568_Litigation@fnf.law>; 568_litigation@gilbertlitigators.com
**Subject:** Seeking to Confirm A Full and Responsive Production By Defendants

**[EXTERNAL SENDER]**


Dear Counsel:

This letter is to clarify Defendants' commitment to search for and produce documents and data responsive to Plaintiffs' pending Requests for Production of Documents ("RFPs"). This letter follows on (a) the six global Meet and Confer ("M&C") sessions with all Defendants, on November 4, 11, 16, 18, 28, and 30, 2022, (b) numerous email communications and individual M&C sessions,[1] and (c) the four global M&Cs regarding search terms on November 28, 2022, and January 20,  February 3 and 9, 2023, resulting in global resolution of the search term issue.

This letter seeks to confirm that Defendants' previous concerns have been addressed, or determined by the Court,[2] such that Defendants will proceed with a full, responsive production. Absent confirmation by COB on March 2, 2023, that each Defendant will

search for and produce all of the responsive documents as requested, Plaintiffs will move to compel production.

Active 93 RFPs

With a total of 100 total RFPs available, per Court order, Plaintiffs have pared down their original three sets of RFPs to a total of 93. *See* February 14, 2023 Normand email (and subsequent clarification re same). Of those 93 RFPs, seven are in Plaintiffs' Third Set of RFPs, to which Defendants provided responses yesterday evening, which we have not yet evaluated.

This leaves a total of 86 RFPs from Plaintiffs' First and Second Set of RFPs, served on September 19, 2022, and November 7, 2022, respectively, and seven RFPs served on January 26, 2023. The Court has ordered substantial completion of production by March 3, 2023, for documents responsive to requests served on or before September 19, 2022, which includes 82 of Plaintiffs' active RFPs.

Undisputed 45 RFPs and Agreement on Scope

In their responses to Plaintiffs' RFPs, Defendants agreed to produce responsive documents for many of Plaintiffs' requests, often subject to meeting and conferring on the scope to be produced.[3] As noted above, the parties have engaged in numerous M&Cs to discuss the relevance and scope of Plaintiffs' requests. A key result of these M&Cs was that the parties have reached agreement on scope: Defendants will produce, to the extent documents and data exist and are reasonably accessible, structured data for their Admissions and Financial Aid offices dating back to January 1, 1998 (with a handful of exceptions identified in an attachment to a November 21, 2022 email from Robert Gilbert to Sarah Kirkpatrick), and unstructured data and documents dating back to January 1, 2003. *See* December 2, 2022 Joint Status Report at 20-22. In addition, with the exception of Caltech and JHU, Defendants have agreed to search for and produce unstructured data and documents concerning the formation, development, and purposes of the 568 Presidents' Group and the Consensus Methodology ("CM") dating back to January 1, 1998. *See* January 31, 2023 Miller email on behalf of Defendants.[4] Further production of post-complaint discovery has been resolved by the Court's directive at the hearing on February 23, 2023, resulting in the forms of Order submitted to the Court on February 27, 2023. In light of, and subject to, these agreements on scope, Plaintiffs understand all Defendants to have agreed to search for and produce documents in response to the 45 RFPs listed in Appendix A.

If Defendants believe that our understandings above are wrong in any way, please let us know by COB on March 2, 2023.

Previously Disputed 41 RFPs

This analysis leaves 41 active RFPs as to which one or more Defendants initially refused to produce documents in their responses and objections to Plaintiffs' RFPs. However, since that time, the parties have not only engaged in many M&Cs with respect to the RFPs, but subsequently have engaged in a series of M&Cs and exchanges of emailed

proposals resulting in the parties coming to a global consensus as to search terms in February 2023. The search terms that have been negotiated include terms covering the RFPs for which all or many Defendants initially took the position that they would not produce documents. Thus, Plaintiffs have proceeded with the understanding that Defendants were not standing on the broader objections to the RFPs, but will produce documents turned up by the agreed search terms. Nevertheless, as stated above, Plaintiffs require confirmation of this fact by COB on March 2, 2023.

Plaintiffs have prepared the attached Appendix B, which (a) itemizes those 41 RFPs by set and number; (b) reflects the text of each RFP and any subsequent revisions or clarifications that were made to the requests by Plaintiffs unilaterally or by agreement; and (c)reflects which Defendants originally refused to produce responsive documents.[5] To the extent one or more Defendants still stands on its broader objections, Appendix B summarizes Plaintiffs' additional reasoning in support of the demand that Defendants produce the requested documents. If Defendants disagree with us, please let us know by COB on March 2, 2023.

<u>Donation Records and Related Documents</u>

We note in particular that many of Defendants' original objections concerned Plaintiffs' RFPs seeking production of "donation records" and related materials. The following is a list of such RFPs[6] for which most or all Defendants originally refused to search and produce responsive documents: RFP 20, 22 (except Caltech), 23, 126 (except Dartmouth and Duke), 127 (except Dartmouth and Duke), 128, 129, 131, 132 (except Caltech), 150 (except Duke), 1 (Second Set; except Caltech), 4 (Second Set; except Caltech).

Other RFPs that are related to this topic, such as addressing articles that discuss a related issue or a request regarding a particular individual, were originally rejected by at least several Defendants. *See, e.g.*, RFP 88, 98, 113, 116, 117, and 3 (Second Set).

As has been discussed on numerous prior occasions, documents regarding donations or potential donations to Defendants and how such donations may be tied to admissions are central to Plaintiffs' response to the Defendants' assertion of a defense under § 568. *See* 15 U.S.C. § 1 note; Pub. L. No. 103-382, title V, § 568, 108 Stat. 3518, 4060 (1994).[7] The 568 Exemption requires *all* participants to be "need-blind" in *all* their admissions. *See, e.g.*, 8/15/22 Opinion at 12-13. This is true even for Defendants which have dropped the 568 Exemption as a defense, since *all* Defendants participated in the conspiracy and *all* must have always been need-blind for the Exemption to apply to any Defendant. These documents are also very important, inter alia, to statute of limitations issues and to demonstrating revenue maximizing conduct (which would call for application of the per se rule pursuant to the Third Circuit *Brown* decision).

The Court made clear on October 26, 2022, that donation records are a significant part of Plaintiffs' case, and that Plaintiffs must be afforded discovery sufficient to establish a link, if any, between donations and admissions decisions. Indeed, the Court emphasized the importance of this specific discovery, and its expectation that Defendants must make such evidence available to Plaintiffs:

So first of all--and I don't think this is the case, but I just want to have it out there just so I've said it and I'll be done with it--I mean, this is not going to be a situation where the case comes to a halt and gets adjudicated because the discovery can't get produced. So I just want to make that clear.

\*\*\*

So the whole case--maybe not the whole case, but a significant part of the case is exactly this, the contention that admissions are tied to donations, or at least that's a significant part of the case. And so unless there's going to be an opinion that basically says, well, the kind of thing I just said is not going to happen, that basically says the plaintiffs can't get that, therefore, the case is over, then we have to come up with a way of doing that.

Oct. 26, 2022 Tr. 23:12-17; 36:23-37:6 (emphasis added). And the Court made clear that when it speaks, its words are rulings. *Id.* 34:16-17 ("**That's the judge talking. Those are called rulings.**") (emphasis added). The Court reiterated this point on February 8: "It's hornbook law of conspiracy … Everybody within the alleged group has to have been complying with 568 in order for anybody to take advantage of it." Feb. 8, 2023 Tr. 41:17-25. Plaintiffs thus anticipate that Defendants will comply with the Court's rulings and therefore have abandoned their rejection of production of documents that fall into this important category of the relationship between donations and admissions and related matters.

Of course, the production of relevant documents is independent of the identification of one custodian or another. If we are incorrect in our understanding that Defendants will produce all donation records and other documents identified by the agreed upon search terms, please let us know by COB on March 2, 2023.

<u>Burden and Proportionality Considerations</u>

Any questions Defendants might have earlier raised as to the burden of the RFPs have been very substantially mitigated by limitations placed on the temporal scope to be covered by the RFPs, by agreed upon search terms, by limitations on custodians for the time being, as well as by the Court's restriction of Plaintiffs to 100 RFPs, of which the Plaintiffs have to date utilized 93.[8] cutting their original first three sets of RFPs by half. In addition, in considering proportionality one must consider that: Plaintiffs have plausibly alleged a conspiracy that existed over the course of up to twenty years, resulting in likely damages numbered in the billions of dollars; Defendants, as opposed to Plaintiffs, are in possession of virtually all the relevant documents and other information in this matter; Defendants have vast resources at their disposal; the RFPs address issues central to Plaintiffs' claims; and, the matter is one of significant public import. *See* Fed. R. Civ. P. 26(b)(1).

<u>Conclusion</u>

In light of the above and following the extensive dialogue between the parties over numerous M&Cs and the resolution of search terms, and further rulings and other

guidance from the Court, Plaintiffs understand that all Defendants will now use the agreed upon search terms and produce responsive documents to all of Plaintiffs' remaining active RFPs, unless Plaintiffs are specifically advised to the contrary by COB on March 2, 2023.

Plaintiffs request written confirmation from each Defendant by COB on March 2, 2023, that it intends to search for and produce documents responsive to the remaining active RFPs from Plaintiffs' First and Second Sets of Requests as enumerated in Appendixes A and B. If any Defendant intends to stand on its objection in response to any RFPs, please advise Plaintiffs in writing by COB on March 2, 2023, as to which RFPs it refuses to produce responsive documents, and its grounds for doing so.

Plaintiffs are, of course, willing to engage in a further M&C to resolve any remaining uncertainty that may exist, unless in Plaintiffs' judgment the issue or RFP is ripe for presentation to the Court. In the absence of confirmation that Defendants are producing documents notwithstanding earlier objections, and substantial productions on March 3 and March 6 that are consistent with this confirmation, Plaintiffs will then be forced to move the Court to compel production.

Very truly yours,

Robert D. Gilbert
Managing Partner
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
rgilbert@gilbertlitigators.com
646-448-5269 work
203-645-0055 cell
www.gilbertlitigators.com

---

[1] For virtually every individual Defendant, there have been at least three such M&Cs.

[2] For example, in its February 8, 2023 Minute Entry, the Court rejected certain Defendants' position that "post-'withdrawal' material is not subject to discovery for defendants who claim to have withdrawn from the alleged conspiracy."

[3] For twelve of these RFPs, no Defendant refused to produce responsive documents, but one or two Defendants sought to M&C as to the "scope" or "relevance" of the request prior to agreeing to production. *See* Appendix A.

[4] Caltech has stated that it is "still assessing" the burden of producing pre-1/1/2017 documents related to the formation, development, and purposes of the 568 Presidents' Group and the Consensus Methodology." *See* email from A. Kasner to R. Cipolla et al., dated February 14, 2023. As for JHU, during a February 7, 2023, meet and confer, Samer Musallam took the position that JHU will not search for or produce any unstructured data and documents from more than a few years before JHU joined the 568 Group. Mr. Musallam informed Plaintiffs that they would have to seek relief from the Court for any data or documents going back further in time.

[5] Or in some cases where a Defendant has stated that it will only determine whether it will produce documents after an appropriate M&C—again, for these Defendants, for the same reasons as stated above, Plaintiffs understand that such Defendant will now produce responsive documents, unless Plaintiffs are otherwise advised to the contrary.

[6] In Plaintiffs' First Set, unless otherwise stated.

[7] Certain RFPs that at least some Defendants originally rejected seek documents addressing the broader, related topic of "wealth favoritism" in admissions, which also undermines the "need-blind" requirements of a 568 Exemption. *See, e.g.*, RFPs 58, 61, 62, and 124.

[8] Including seven from the Third Set of RFPs, where responses were served only recently.

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

This email and its attachments may contain confidential and/or legally privileged information from the law firm of Hellring Lindeman Goldstein & Siegal LLP. This information is only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this email and attachments is strictly prohibited and those contents should be returned to this firm immediately. Although this email and its attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, no respons bility is accepted by Hellring Lindeman Goldstein & Siegal LLP for any loss or damage arising in any way from its use. This communication, including attachments and enclosures, is not intended to provide any tax advice, is not a substitute for a formal tax opinion, and is not sufficient to avoid tax-related penalties.

568 – Schedules
A (Orig...(1).xlsx

| RFP Set | RFP No. | Request | Revision/Clarification | Defendant Original RFP Response |
|---|---|---|---|---|
| 1 | 1 | Documents sufficient to show for each Academic Year during the Relevant Time Period:<br>a. the number of Applicants;<br>b. the number of Admitted Applicants;<br>c. the number of Applicants You placed on a Waitlist;<br>d. the number of Admitted Applicants who enrolled as Students;<br>e. the number of Students in each class in each of the four years of Your undergraduate program;<br>f. the number of Students in each class of the four years of Your undergraduate program enrolled in any schools, colleges, or programs with unique Admissions processes, including but not limited to Columbia University School of General Studies, Oxford College at Emory University, the University of Pennsylvania School of Liberal and Professional Studies, the Brown University Resumed Undergraduate Education program, the Georgetown University School of Continuing Studies Bachelor's Completion Program, the Duke University Continuing Studies program for degree-seeking candidates, and the Yale University Eli Whitney Students Program;<br>g. the number of Transfer Applicants;<br>h. the number of Admitted Transfer Applicants;<br>i. the average Financial Aid Package You extended to Admitted Applicants;<br>j. the average Financial Aid Package You extended to Admitted Transfer Applicants;<br>k. the average Net Price of each Admitted Applicant;<br>l. the average Net Price of each Admitted Waitlist Applicant; and<br>m. the average Net Price of each Admitted Transfer Applicant. | | |
| 1 | 2 | For each Financial Aid Applicant during the Relevant Time Period, all data and information from each Financial Aid Applicant's SAR, CSS Profile, or any other Financial Aid application, for each Academic Year beginning when the Financial Aid Applicant initially applied to Your full-time undergraduate program through every Academic Year the Financial Aid Applicant continued enrollment beyond the initial Academic Year of matriculation. Such data, provided in Electronic Format include but are not limited to:<br>a. from the SAR, if applicable, any common identifier, including Federal Methodology (FM), EFC, data release number ("DRN"), and last four digits of the Applicant's social security number;<br>b. from the CSS Profile, if applicable, any College Board Financial Aid Number (CBFinAid ID) or other means of uniquely identifying the Applicant;<br>c. the Student's full name;<br>d. all Applicant ID numbers received, created, or otherwise used by Your institution;<br>e. the applicable Academic Year;<br>f. the Admitted Applicant's or Student's applications to, Admission decisions by, and Financial Aid offers from other institutions;<br>g. the Admitted Applicant's or Student's family financial information, including income, assets, and benefits;<br>h. the Admitted Applicant's or Student's family size, including the number of family members who will be attending college during the applicable Academic Year; and<br>i. any other data collected for the purpose of, considered in, or relied upon for making any Financial Aid determination, including but not limited to the packaging of Financial Aid (i.e. mix of Loans, Gift Aid, and work-study). | Clarified in 11/30/2022 R. Litan email to Ds (For structured data, proposed time period of January 1, 1998) | Penn - MCS |

| RFP Set | RFP No. | Request | Revision/Clarification | Defendant Original RFP Response |
|---|---|---|---|---|
| 1 | 3 | All Documents Concerning the effect of the following factors on the decisions of Admitted Applicants to attend Your undergraduate institution:<br>a. changes in Your Net Price and/or changes in other undergraduate institutions' Net Prices;<br>b. other institutions' pricing policies; and/or<br>c. Your or other institutions' Financial Aid policies, including but not limited to any reports or memoranda exchanged recommending changes to your prices, Net Prices, Costs of Attendance, and/or Financial Aid policies in light of changes or announcements by other institution | | Penn - MCS |
| 1 | 4 | For each Financial Aid Applicant to Your full-time undergraduate program during the Relevant Time Period, all data and information contained in any (a) Financial Aid management software database or platform or (b) Admissions and Enrollment Management Software, database, or platform, with such data to be provided in the Electronic Format in which such data were received and/or subsequently stored if such data were imported or otherwise integrated into Your databases | Clarified in 11/30/2022 R. Litan email to Ds (For structured data, proposed time period of January 1, 1998) | Penn - MCS |
| 1 | 7 | For all Financial Aid Applicants during the Relevant Time Period, all data, information and/or formulae, including Your Internal Financial Aid Formulae, maintained, created, or used by You to evaluate a Financial Aid Applicant's Financial Aid eligibility and Financial Aid Package for each Academic Year beginning when the Applicant initially applied for Your full-time undergraduate program through every Academic Year the Student continued enrollment or otherwise submitted a Financial Aid Application beyond the initial Academic Year of matriculation. Such data, provided in Electronic Format, include but are not limited to:<br>a. the Applicant's IM EFC;<br>b. the Applicant's FM EFC<br>c. the Applicant's EFC For Your Institutional Aid Formulae;<br>d. all factors used in the determination of the IM EFC, including any and all formula(e) used;<br>e. all factors used in the determination of the FM EFC, including any and all formula(e) used;<br>f. all factors used in the determination of the EFC for Your Institutional Aid Formulae;<br>g. all forms of Financial Aid offered to the Applicant, including but not limited to federal, institutional aid, and work-study programs; and<br>h. any data identifying any individual eligible for an FSEOG but who did not receive such funds because the institution had reached or exceeded its allotment | Clarified in 11/30/2022 R. Litan email to Ds (For structured data, proposed time period of January 1, 1998) | Penn - MCS |
| 1 | 12 | For all Admitted Waitlist Applicants, Documents sufficient to identify the Admitted Waitlisted Applicant, whether the Admitted Waitlisted Applicant sought Financial Aid, and any Financial Aid Package offered to or awarded to the Admitted Applicant. | Clarified in 11/30/2022 R. Litan email to Ds (For structured data, proposed time period of January 1, 1998) | Penn - MCS |
| 1 | 14 | For all Admitted Transfer Applicants, Admissions Documents sufficient to identify the Admitted Applicant and all Documents Concerning whether the Admitted Transfer Applicant sought Financial Aid and any Financial Aid Package offered to or awarded to the Admitted Transfer Applicant. | Clarified in 11/30/2022 R. Litan email to Ds (For structured data, proposed time period of January 1, 1998) | Penn - MCS |

| RFP Set | RFP No. | Request | Revision/Clarification | Defendant Original RFP Response |
|---|---|---|---|---|
| 1 | 16 | For each and every Applicant and Student during the Relevant Time Period, all data Concerning Your calculation of each Applicant's Net Price of attendance quoted and charged to them, and all components of the Net Price, for each Academic Year beginning when the Applicant initially applied for Your full-time undergraduate program through every Academic Year the Student continued enrollment beyond the initial Academic Year of matriculation. Such data shall be provided in the Electronic Format in which such data were received and/or subsequently stored if such data were imported or otherwise integrated into Your databases, and shall include the amount, date, transaction ID, whether it is a charge or credit, and charge or credit type for the following:<br>a.   each Cost-of-Attendance-related charge applied to the Student's account, including (but not limited to) Tuition, Room and Board fees, authorized on-campus or off-campus living expenses, and activity fees;<br>b.   each credit applied to the Student's account, including but not limited to any institutional aid, federal aid, parent Loans, and scholarships from sources other than You or the federal government;<br>c.   each disbursement You made to the Student; and<br>d.   for any Student who withdrew from the institution, each return of Title IV funds (R2T4) calculated. | Clarified in 11/30/2022 R. Litan email to Ds (For structured data, proposed time period of January 1, 1998) | Chicago - MCR<br><br>Penn - MCS |
| 1 | 24 | All Documents Concerning the 568 Group, the 568 Group's leadership, and the 568 Group's policies, practices, and procedures. This Request includes any internal communications, including but not limited to those via email, text message, instant message, and memorandum. | | |
| 1 | 27 | All Documents, including drafts, that You received from the 568 Group, Technical Committee, Needs Analysis Council, and Steering Committee and All Documents sent or distributed by one or more 568 Group Members to the 568 Group, its Technical Committee, its Needs Analysis Council, and its Steering Committee. | | |
| 1 | 29 | All Documents Concerning the Consensus Methodology including: (a) its development; (b) any proposed or implemented changes since its inception, including the effects of such changes on 568 Group Members or any of them; (c) comparisons of the Consensus Methodology to the Institutional Methodology, Federal Methodology, any 568 Group Member's Financial Aid methodology or practice(s), or any other Financial Aid methodology or practice(s); (d) studies or analyses of the impact of the Consensus Methodology on Financial Aid or Tuition; (e) rules or regulations Concerning 568 Group Members' implementation of the Consensus Methodology or Financial Aid methodologies or practices; (f) Documents used to train any person in the use, application, or understanding of the Consensus Methodology; and (g) marketing, advertising, or public relations material Concerning the Consensus Methodology. | | |

| RFP Set | RFP No. | Request | Revision/Clarification | Defendant Original RFP Response |
|---|---|---|---|---|
| 1 | 30 | All Documents Concerning: a. how the 568 Group has defined the term "need-blind"; and b. how the 568 Group communicated requirements for 568 Group Members to be "need-blind" under its standards, including all memoranda of understanding and Certifications of Compliance; any auditing or similar efforts to ensure that 568 Group Members complied with the 568 Group's "need-blind" standard; any Enforcement Mechanisms contemplated or action actually taken against members for failing to comply with the 568 Group's "need-blind" standard; and any Documents Concerning the treatment of Waitlisted Applicants and Transfer Applicants with respect to being "need-blind" under the 568 Group's standard. | | |
| 1 | 31 | All Documents Concerning the 568 Group that also Concern the actual or potential preferential treatment of Applicants from families capable of making substantial Donations; any Documents Concerning actual or potential preferential treatment of Applicants who did not need Financial Aid; and any discussions of Enrollment Management, including any efforts, plans, or proposals to craft the composition of classes at 568 Group Member institutions to achieve revenue or other financial goals. | The use of the word "substantial" is gratuitous, and is not meant to qualify the meaning of "Donation." Plaintiffs are amending the definition of "Donation" as follows: 28. "Donation" includes but is not limited to restricted or unrestricted cash gifts, non-cash gifts, matching gifts, gifts of stock, bonds, securities, or business interests, bequests, gifts of real property, gifts of personal property, gifts of retirement plans, gifts of life insurance, gifts of copyrights, gifts of royalties, gifts of patents, assignments of contractual income rights, gifts of oil and gas interests, one-time gifts, recurring gifts, planned gifts, life income gifts, or in-kind donations valued on a one-time basis or cumulatively over a period of years at $50,000 or more. Donation also includes any gifts resulting in an "endowed chair" or similar honorific such as the name of a building or a stadium. See 11/29/2022 T. Normand email to Defendants with spreadsheet attachment. | ND - MCS Penn - MCS |
| 1 | 39 | All Documents Concerning data exchanged between or among 568 Group Members and/or between You and the 568 Group or its membership, including but not limited to the sharing of data or other information related to Financial Aid formula(e), Financial Aid policies, Financial Aid packages for Students and Admitted Applicants, and Admissions decisions of Applicants | | |

| RFP Set | RFP No. | Request | Revision/Clarification | Defendant Original RFP Response |
|---|---|---|---|---|
| 1 | 41 | All Documents Concerning the 568 Group's antitrust policies, guidelines, trainings, and public relations materials including analyses of the 568 Group's compliance with the 568 Exemption and any analyses of the Overlap Agreement reached as part of the case known as United States v. Brown, 5 F.3d 658 (3d Cir. 1993). | Plaintiffs are amending the definition of "Donation" as follows:<br><br>28. "Donation" includes but is not limited to restricted or unrestricted cash gifts, non-cash gifts, matching gifts, gifts of stock, bonds, securities, or business interests, bequests, gifts of real property, gifts of personal property, gifts of retirement plans, gifts of life insurance, gifts of copyrights, gifts of royalties, gifts of patents, assignments of contractual income rights, gifts of oil and gas interests, one-time gifts, recurring gifts, planned gifts, life income gifts, or in-kind donations valued on a one-time basis or cumulatively over a period of years at $50,000 or more. Donation also includes any gifts resulting in an "endowed chair" or similar honorific such as the name of a building or a stadium.<br><br>See 11/29/2022 T. Normand email to Defendants with spreadsheet attachment. | |
| 1 | 42 | All Documents Concerning Your decision(s) to join, leave, purportedly withdraw from, or continue participating in the 568 Group at any time or times during the Relevant Time Period. This Request includes all communications, internal or with third parties, about such decisions, including communications with counsel other than those solely between You and Your counsel. | | |
| 1 | 43 | All Documents Concerning Your communications with any 568 Group Member Concerning (a) Admission of Students, (b) cost of Tuition, (c) Financial Aid programs or packages, and (d) need-blind (however You define that term) Admissions practices and/or (e) the Consensus Methodology or implementation of the Consensus Methodology or similar Financial Aid formulae. | | |
| 1 | 45 | All Documents Concerning Your use of, implementation of, decision to modify, or decision to use an alternative methodology to, the Consensus Methodology. | | |
| 1 | 46 | All Documents Concerning (a) the creation and structuring of your Financial Aid Packages, (b) Financial Aid being a functional or apparent Discount, (c) Your institutional and outside funding for Financial Aid, and (d) any analyses or data Concerning Your ability to provide Financial Aid. | | |
| 1 | 48 | All Documents made available or presented to prospective Applicants, their families, college Admissions Consultants, school counselors, and coaches comparing Your institution and/or its Financial Aid programs, policies, and practices to those of other institutions. | | ND - MCS |
| 1 | 50 | Documents, including any statements, summaries, forecasts, strategic plans, budgets, data, and analyses, sufficient to demonstrate, for each Academic Year during the Relevant Time Period, the Cost of Attendance at Your institution, including but not limited to how Your Cost of Attendance was determined during the Relevant Time Period. | Memorialized in 12/1/2022 letter of Sarah F. Kirkpatrick Esq. on behalf of Defendants: "Plaintiffs confirmed that if each Defendant's interpretation of cost of attendance is synonymous with the publicly available information concerning cost of attendance, then Defendants need not provide school-specific information responsive to this request." Plaintiffs clarify that "publicly available information" is the data supplied by the National Center for Education Statistics (NCES). | |

| RFP Set | RFP No. | Request | Revision/Clarification | Defendant Original RFP Response |
|---|---|---|---|---|
| 1 | 55 | Documents sufficient to show Your Admissions and Financial Aid policies, practices, and procedures for each Academic Year during the Relevant Time Period, including handbooks, manuals, training materials, and promotional materials. | | |
| 1 | 64 | All Documents Concerning Your Internal Financial Aid Formula(e), including their development, implementation, changes, proposed changes, and comparisons to or implementations of the Consensus Methodology, Institutional Methodology Federal Methodology, any 568 Group Member's Financial Aid formula(e), and any Peer Institutions' Financial Aid formula(e). This Request includes any and all Inputs and Outputs for Your Internal Financial Aid Formula(e) and all methodologies and systems used to determine a Student or Admitted Applicant's ability to the pay Cost of Attendance. | | |
| 1 | 66 | All Documents Concerning any purported need for independent professional judgment in the awarding of Financial Aid, including, but not limited to, formal or informal Financial Aid appeals or reconsideration processes; successful or unsuccessful attempts by Applicants or Students to avail themselves of any such appeal or reconsideration; deviations from any Financial Aid formula(e) relevant for particular Applicants or Students based on unique Financial Circumstances or presentation of competing Financial Aid offers from other institutions. | | |
| 1 | 69 | All Documents analyzing the choices made by Admitted Applicants to Your institution to attend institutions of higher education other than Yours. | Memorialized in 12/1/2022 letter of Sarah F. Kirkpatrick Esq. on behalf of Defendants: "Plaintiffs stated they would accept an aggregated survey result and/or analysis in response to this request, rather than individual survey responses from individual students." Plaintiffs' position is the request was made without knowing whether there would be structured data results reflected in the summaries of surveys. Plaintiffs would expect the surveys, responses, underlying data, and any compilations or assessments of survey results. | |
| 1 | 70 | All Documents Concerning the application and enrollment decisions of persons who did, and did not, apply to Your full-time undergraduate program, including but not limited to all National Student Clearinghouse reports and data Concerning the institutions that Applicants applied to and where they chose to enroll. | | Penn - MCS |
| 1 | 72 | All Documents analyzing the colleges and universities You consider Peer Institutions, including any such analyses by Your Office of Institutional Research or those produced to the U.S. Department of Education or any college ranking organization. This Request includes all Documents Concerning Your competitive standing among Peer Institutions, including but not limited to analyzes related to brand preferences, supply of available seats, prestige, Cost of Attendance, Net Price, Financial Aid, and the ability for Applicants to substitute one Peer Institution for another. | | |
| 1 | 77 | All Documents Concerning Your Enrollment Management, including analyses of the use of any Enrollment Management Software, Consultants, employees, analyses, data, or algorithms. This Request includes all Documents within Your Admissions Office Concerning Landscape. This Request also includes all Documents Concerning the roles of any administrator at Your institution whose title or job description includes the term "enrollment management." | | Yale MCS<br><br>Duke DNP |

| RFP Set | RFP No. | Request | Revision/Clarification | Defendant Original RFP Response |
|---|---|---|---|---|
| 1 | 80 | All Documents Concerning actual or potential consideration of any Applicant's Financial Circumstances, including all Documents Concerning whether an Applicant placed on the Dean's Interest List or Z List prior to Your making a decision regarding whether to admit the Applicant and whether the Applicant was in fact actually accepted for Admission by You. | | |
| 1 | 82 | All Documents Concerning Your membership in, participation in, or affiliation with any professional organizations, alliances, consortia, or partnership programs Concerning Admissions, including but not limited to the Common Application, COFHE, the Coalition for College, QuestBridge, the Posse Foundation, and the American Talent Initiative. This Request includes all data shared between You and these organizations, alliances, or consortia and between You and other partners or members. | | |
| 1 | 123 | All Documents Concerning Your definition of the terms "need aware" and "need sensitive." | | |
| 1 | 130 | All Documents reflecting communications between or among the Office of the President, Alumni Relations Office, Development Office, or Admissions Office Concerning an Applicant's family income, wealth, zip code, or actual or anticipated Donations to You. | Plaintiffs are amending the definition of "Donation" as follows:<br><br>28. "Donation" includes but is not limited to restricted or unrestricted cash gifts, non-cash gifts, matching gifts, gifts of stock, bonds, securities, or business interests, bequests, gifts of real property, gifts of personal property, gifts of retirement plans, gifts of life insurance, gifts of copyrights, gifts of royalties, gifts of patents, assignments of contractual income rights, gifts of oil and gas interests, one-time gifts, recurring gifts, planned gifts, life income gifts, or in-kind donations valued on a one-time basis or cumulatively over a period of years at $50,000 or more. Donation also includes any gifts resulting in an "endowed chair" or similar honorific such as the name of a building or a stadium.<br><br>See 11/29/2022 T. Normand email to Defendants with spreadsheet attachment. | |
| 1 | 135 | All Documents Concerning the renewal of the 568 Exemption or modification of that exemption, including any advocacy Concerning such renewal. | | |
| 1 | 136 | All Documents Concerning Your understandings or agreements, formal or informal, with the 568 Group or 568 Group Members regarding Admissions or Financial Aid policies or practices. | | |
| 1 | 138 | All Documents Concerning agreements, discussions, communications, or meetings between You and any other college(s) or university(ies) Concerning Financial Aid, Cost of Attendance, and Admissions, including with regard to particular Students or Applicants. | | |
| 1 | 140 | All Documents Concerning communications with any officer, trustee, or employee of Harvard University, Princeton University, Stanford University, or any institution that You believe did not adopt the Consensus Methodology Concerning the 568 Group, the 568 Exemption, or any actual or potential discussions, agreements, or sharing of information under the Exemption. | | |
| 1 | 143 | All Documents Concerning any affirmative defense You have raised or may raise in this Action. | | |
| 1 | 144 | All Documents Concerning Your institution's efforts, policies, or goals to admit Students that reflect either (a) the "unique potential of applicants from less fortunate situations;" or (b) an economically diverse class. | | |

| RFP Set | RFP No. | Request | Revision/Clarification | Defendant Original RFP Response |
|---|---|---|---|---|
| 1 | 145 | All Documents Concerning Your institution's efforts, policies, or goals to limit the number of Admitted Applicants who need Financial Aid. | | |
| 1 | 147 | If you contend that You have withdrawn from the 568 Group at any point during the Relevant Time Period, all Documents Concerning:<br>a. Your alleged decision to withdraw;<br>b. how You have implemented that decision;<br>c. any use You have made of the Consensus Methodology or any of its principles since purportedly withdrawing;<br>d. alternative methods of determining financial need or Financial Aid awards that you have used since purportedly withdrawing;<br>e. differences in outcomes between Your former use of the Consensus Methodology and any subsequent Financial Aid practices;<br>f. any communications you have had with anyone (including the 568 Group and 568 Group members) since Your withdrawal regarding any of the matters in items "a"-"e" of this Request; and<br>g. any Documents Concerning Your disavowing or repudiating the 568 Group and the 568 Group's goals. | | |
| 1 | 154 | All Documents Concerning the actual or potential effect of Your being a 568 Group Member, including the actual or potential effect of adopting or considering the Consensus Methodology, or any modifications to Your Financial Aid methodology made as a result of the 568 Group, on Your Financial Aid or Cost of Attendance. | | |
| 1 | 155 | Documents Concerning whether Your use of the Consensus Methodology or Your membership in the 568 Group had, has, or could have the effect of limiting the discretion of Your Financial Aid officers to grant additional Financial Aid. | | |
| 1 | 156 | All Documents Concerning Your views, concerns, or considerations regarding whether elimination of the 568 Group would increase Financial Aid awards. | | |
| 1 | 158 | All Documents Concerning any principle, policy, goal, or analysis regarding the amount that a Student (or the Student's family) should bear with respect to financing the cost of postsecondary education. | | |
| 2 | 2 | All Documents Concerning any scoring methodologies You have used in considering whether to admit Applicants, including but not limited to the principal factors that You have considered in Admissions; any numerical ranking or scoring system(s) used in connection with those factor(s); and any weight applied to any particular ranking or scoring of the Applicants or any particular factor. | Clarified in 11/30/2022 R. Litan email to Ds (For structured data, proposed time period of January 1, 1998) | Chicago MCR |
| | | DNP = Do not possess<br>MCS = Meet & confer scope<br>MCR = Meet & confer relevance | | |

| RFP Set | RFP No. | Request | Revision/Clarification | Additional Reasoning | Defendant Original RFP Response |
|---|---|---|---|---|---|
| 1 | 5 | To the extent not provided in response to one of the Requests above, for each Financial Aid Applicant to Your full-time undergraduate program during the Relevant Time Period, provided in the Electronic Format in which such data were received and/or subsequently stored if such data were imported or otherwise integrated into Your databases: a. All Applicant ID numbers received, created, or otherwise used by Your institution; b. the Academic Year of the Financial Aid Applicant's Financial Aid Application; c. the date of the Admissions application; d. the date of the Financial Aid Application; e. each Financial Aid Applicant's identification number; f. if a Financial Aid Applicant is a returning Student, the Student identification number or other identification number(s) maintained, created, or used by Your institution. g. the Applicant's full name; h. the Applicant's age; i. the Applicant's race; j. the Applicant's ethnicity; k. the admittance status of the Applicant at Your institution and any other institution; l. any information Concerning the Financial Aid Applicant's actual or potential Financial Aid, including whether the Applicant applied for Financial Aid; m. whether the Applicant applied for any Early Admissions Program, Regular Decision, as a Transfer, or was placed on a Waitlist; n. whether the Applicant had any family member who attended Your institution; o. whether any of the Applicant's parents were or are faculty or otherwise employed at Your institution; p. whether the Applicant was considered eligible for any preferential admission on the basis of the Applicant's lack of need for Financial Aid or because of the Applicant's family's capacity to make a substantial Donation; and | Clarified in 11/30/2022 R. Litan email to Ds (For structured data, proposed time period of January 1, 1998) The use of the word "substantial" is gratuitous, and is not meant to qualify the meaning of "Donation." Plaintiffs amended the definition of "Donation" as follows: 28. "Donation" includes but is not limited to restricted or unrestricted cash gifts, non-cash gifts, matching gifts, gifts of stock, bonds, securities, or business interests, bequests, gifts of real property, gifts of personal property, gifts of retirement plans, gifts of life insurance, gifts of copyrights, gifts of royalties, gifts of patents, assignments of contractual income rights, gifts of oil and gas interests, one-time gifts, recurring gifts, planned gifts, life income gifts, or in-kind donations valued on a one-time basis or cumulatively over a period of years at $50,000 or more. Donation also includes any gifts resulting in an "endowed chair" or similar honorific such as the name of a building or a stadium. *See* 11/29/2022 T. Normand email to Defendants with spreadsheet attachment. | Only Chicago objected. Plaintiffs require this basic data on an applicant by applicant basis in order to perform their basic statistical and damages analysis. This request is a catchall of the necessary data in case it is not encompassed in responses to RFPs 2, 3, and 4 to which Chicago did not object. | Chicago - will not produce Penn - MCS All others will produce |
| 1 | 6 | Any and all common identifiers that You have received, maintained, or used that permit matching an Applicant or Student across post-secondary institutions to which the Applicant or Student may have applied for Admissions and/or Financial Aid, including but not limited to common identifiers You have obtained from outside sources such as the U.S. Department of Education, the College Board, or the Student or Student's family | | | Chicago - will not produce All others will produce |
| 1 | 18 | To the extent not captured elsewhere in these Requests for Production, all data collected from each Financial Aid Applicant that serve as an Input into such formulae. | Clarified in 11/30/2022 R. Litan email to Ds (For structured data, proposed time period of January 1, 1998) | Only Chicago objected. Plaintiffs require this basic data on an applicant by applicant basis in order to perform their basic statistical and damages analysis. This request is a catchall of the necessary data in case it is not encompassed in prior responses to which Chicago did not object. | Chicago - will not produce Penn - MCS All others will produce |

| RFP Set | RFP No. | Request | Revision/Clarification | Additional Reasoning | Defendant Original RFP Response |
|---|---|---|---|---|---|
| 1 | 20 | Documents sufficient to show all Donations cumulatively valued at $50,000 or more made by families of Admitted Applicants during the period five years prior to when the Admitted Applicants were admitted. For Admitted Applicants who matriculated, this Request also seeks all Documents Concerning Donations made by them, on their behalf, or by their families between the Students' matriculation and the five years following their graduation. | Clarified in 11/30/2022 R. Litan email to Ds (For structured data, proposed time period of January 1, 1998)<br><br>Plaintiffs amended the definition of "Donation" as follows:<br><br>28. "Donation" includes but is not limited to restricted or unrestricted cash gifts, non-cash gifts, matching gifts, gifts of stock, bonds, securities, or business interests, bequests, gifts of real property, gifts of personal property, gifts of retirement plans, gifts of life insurance, gifts of copyrights, gifts of royalties, gifts of patents, assignments of contractual income rights, gifts of oil and gas interests, one-time gifts, recurring gifts, planned gifts, life income gifts, or in-kind donations valued on a one-time basis or cumulatively over a period of years at $50,000 or more. Donation also includes any gifts resulting in an "endowed chair" or similar honorific such as the name of a building or a stadium.<br><br>See 11/29/2022 T. Normand email to Defendants with spreadsheet attachment. | Memorialized in 12/1/2022 Defendants letter to Plaintiffs: "Plaintiffs stated that this request is meant to identify documents that show a relationship between donations and admissions. Defendants observed that a donation made after an admissions decision would be irrelevant under Plaintiffs' theory of the case. Plaintiffs explained that such documents, even as to post-admission donations, are circumstantial evidence of consideration of financial circumstances during the admissions process." Plaintiffs disagree that all relevant information would necessarily be found in productions from the admissions office, as many Defendants have suggested, and such circumstantial evidence may be necessary to prove their case. Plaintiffs position is that a $10k donation might be a part of a $50k pledge – and if you stop right there, it looks like a one time $10k donation. Plaintiffs could miss a more significant donation over time if only focused on the year of admission. | (All Refuse) |
| 1 | 22 | With respect to the list of individuals in Appendix 1, all Documents in your Development Office or Admissions Office Concerning any actual or potential Donation to You by such individuals, as well as all Documents in your Development Office or Admissions Office Concerning any Applicants who are identified in any files, records, databases, or software used by your Development Office as children, relatives, or friends of such individuals | Clarified re: structured data in 11/30/2022 email to Ds<br><br>Plaintiffs amended the definition of "Donation" as follows:<br><br>28. "Donation" includes but is not limited to restricted or unrestricted cash gifts, non-cash gifts, matching gifts, gifts of stock, bonds, securities, or business interests, bequests, gifts of real property, gifts of personal property, gifts of retirement plans, gifts of life insurance, gifts of copyrights, gifts of royalties, gifts of patents, assignments of contractual income rights, gifts of oil and gas interests, one-time gifts, recurring gifts, planned gifts, life income gifts, or in-kind donations valued on a one-time basis or cumulatively over a period of years at $50,000 or more. Donation also includes any gifts resulting in an "endowed chair" or similar honorific such as the name of a building or a stadium.<br><br>See 11/29/2022 T. Normand email to Defendants with spreadsheet attachment. | Memorialized in 12/1/2022 Defendants letter to Plaintiffs: "Plaintiffs confirmed that, for this request, they intend only for each school to search for documents relating to individuals listed on Appendix A in association with that school, and not for all documents relating to all persons included on Appendix A."<br><br>Plaintiffs have identified certain specific instances where they understand donations were made with respect to specific applicants and thus seek to track any connection between the donation and the student's admission. Relevant to claimed 568 exemption defense. | Caltech will produce<br><br>All others will not produce |

| RFP Set | RFP No. | Request | Revision/Clarification | Additional Reasoning | Defendant Original RFP Response |
|---|---|---|---|---|---|
| 1 | 23 | All Documents or database entries Concerning awareness by the Development Office of any Applicant at any time prior to that Applicant's matriculation at Your institution. | Clarified in 11/30/2022 R. Litan email to Ds (For structured data, proposed time period of January 1, 1998) | The purpose of the Development Office is activities and services concerning fundraising, philanthropy, Donor cultivation, and alumni relations. Thus, the Development Office's involvement in the admission process for an applicant may well yield evidence regarding a relationship between donations and admissions. Relevant to claimed 568 exemption defense. | (All Refuse) |
| 1 | 38 | All Documents Concerning communications among 568 Group Members and governmental entities regarding Financial Aid, including but not limited to Financial Aid policies, Financial Aid practices, and Financial Aid Packages. "Government entities" include but are not limited to the U.S. Department of Justice and the U.S. Department of Education. | | Only Duke and Penn objected. This request may yield evidence regarding the basis and nature of a Defendant's financial aid policy and about agreement among 568 Group members. | Duke and Penn will not produce  All others will produce |
| 1 | 49 | Documents, including any statements, summaries, forecasts, strategic plans, budgets, data, and analyses, sufficient to demonstrate, for each Academic Year during the Relevant Time Period, Your Tuition revenue, Financial Aid, Development efforts or income, endowment performance, and costs to establish and operate Your institution, including but not limited to fixed-costs, financing, upgrades, improvements, maintenance, utilities, and renovations. | | Memorialized in 12/1/2022 Defendants letter to Plaintiffs: Plaintiffs "stated that the information sought is relevant to the pro-competitive justifications of using the consensus methodology and whether there are less-restrictive means to achieve the same ends." | ND - MCS  Chicago, Duke, Georgetown, and Yale will not produce  All others will produce |
| 1 | 51 | All Documents Concerning Your public statements regarding reasons for increases to Tuition or Cost of Attendance. | | Only Georgetown and Penn objected. Plaintiffs seek only the Defendant's public statements on tuition/cost of attendance increases, thus limiting any potential burden. | ND - MCS  Georgetown and Penn will not produce  All others will produce |
| 1 | 53 | For each of Your fiscal or calendar years during the Relevant Time Period, in whichever manner such Documents are normally maintained, all Documents Concerning: (a) the dollar amount of Your restricted endowment assets (i.e., endowments assets resulting from Restricted Donations); (b) the dollar amount of Your restricted endowment assets that are devoted to undergraduate Financial Aid; (c) the dollar amount of Your unrestricted endowment assets (i.e., endowment assets resulting from Unrestricted Donations); (d) the annual percentage return earned by Your endowment (i.e., endowment income divided by endowment assets); (e) the total number of Students; and (f) the total number of full-time students, including those in graduate and professional school. | Plaintiffs amended the definition of "Donation" as follows:  28. "Donation" includes but is not limited to restricted or unrestricted cash gifts, non-cash gifts, matching gifts, gifts of stock, bonds, securities, or business interests, bequests, gifts of real property, gifts of personal property, gifts of retirement plans, gifts of life insurance, gifts of copyrights, gifts of royalties, gifts of patents, assignments of contractual income rights, gifts of oil and gas interests, one-time gifts, recurring gifts, planned gifts, life income gifts, or in-kind donations valued on a one-time basis or cumulatively over a period of years at $50,000 or more. Donation also includes any gifts resulting in an "endowed chair" or similar honorific such as the name of a building or a stadium.  *See* 11/29/2022 T. Normand email to Defendants with spreadsheet attachment. | Plaintiffs seek information on the Defendants' endowments and related information to evidence the growth in those endowments far outpacing cost and thus as being a commercially motivated behavior, and to examine the relationship between endowments and the ability to supply financial aid. | (All Refuse) |

| RFP Set | RFP No. | Request | Revision/Clarification | Additional Reasoning | Defendant Original RFP Response |
|---|---|---|---|---|---|
| 1 | 54 | All Documents Concerning policies, practices, and procedures relating to applications to your undergraduate programs and for Financial Aid during the Relevant Time Period including but not limited to Common Application submissions, Coalition application submissions, QuestBridge application submissions, Posse application submissions, Your internal Admissions application submissions, FAFSA and SAR submissions, CSS Profile submissions, supplemental Financial Aid Application form submissions, Financial Aid Packages provided to all Admitted Applicants and Students, and any revisions to Financial Aid Packages | | Only Chicago objected. Plaintiffs are seeking documents to better understand the application and financial aid practices of each Defendant as those practices and their relationship to each other and to the practices of other Defendants are the central issues in this case. | Chicago will not produce<br><br>All others will produce |
| 1 | 58 | All Documents Concerning Dean's Interest Lists, Z Lists, and Tagging protocols and any Documents reflecting that anyone in Your Admissions office or President's Office, or deans' offices viewed images of Applicants' homes, considered Applicants' family income or family wealth in any way, considered whether Applicants' zip codes signified affluence, or considered whether the Applicants revealed in any way that they intended to apply for Financial Aid | | Only Notre Dame Objected. These documents are directly tied to questions of possible wealth favoritism in admissions and the relationship between a donation or a potential donation and the admissions process. Relevant to claimed 568 exemption defense. | ND will not produce<br><br>All others will produce |
| 1 | 61 | All Documents Concerning differences in Your Financial Aid policies, practices, or procedures for Applicants and Admitted Applicants (a) in any Early Admissions programs; (b) in the Regular Decision program; (c) off the Waitlist; (d) as a Transfer Applicant; or (e) into any schools, colleges, or programs with unique Admissions processes, including but not limited to Columbia University's School of General Studies, Oxford College at Emory University, the University of Pennsylvania School of Liberal and Professional Studies, the Brown University Resumed Undergraduate Education program, the Georgetown University School of Continuing Studies Bachelor's Completion Program, the Duke University Continuing Studies program for degree-seeking candidates, and Yale University Eli Whitney Students Program. | | Memorialized in 12/1/2022 Defendants letter to Plaintiffs: "Plaintiffs stated that documents responsive to these requests are relevant to the 568 Exemption. Plaintiffs confirmed, with respect to Requests 61 and 62, that they are seeking documents concerning differing admission standards for students eligible to receive Pell grants, students using non-traditional applications, and students applying for early admission."   Defendants' burden has been limited by Plaintiffs' limitation of this request to policy and practice documents. | Caltech will not produce<br><br>Dartmouth & Penn DNP<br><br>All others will produce |

| RFP Set | RFP No. | Request | Revision/Clarification | Additional Reasoning | Defendant Original RFP Response |
|---|---|---|---|---|---|
| 1 | 62 | All Documents Concerning the Admissions and Financial Aid policies and practices, formal or informal, for programs targeted toward non-traditional, full-time degree-seeking undergraduate Applicants and Students, including those with breaks in their education, adult learners, and those with dependents. Such programs include but are not limited to the Columbia University School of General Studies, the University of Pennsylvania School of Liberal and Professional Studies, the Brown Resumed Undergraduate Education program, the Georgetown School of Continuing Studies Bachelor's Completion Program, the Duke University Continuing Studies program for degree-seeking candidates, and Yale's Eli Whitney program | | Memorialized in 12/1/2022 Defendants letter to Plaintiffs: "Plaintiffs stated that documents responsive to these requests are relevant to the 568 Exemption. Plaintiffs confirmed, with respect to Requests 61 and 62, that they are seeking documents concerning differing admission standards for students eligible to receive Pell grants, students using non-traditional applications, and students applying for early admission." Plaintiffs want to test the theory that some schools were careful to accept only those Pell applicants who were at the top of but not above the cutoff for eligibility, and looked the other way on applicants that had true financial need. Defendants' burden has been limited by Plaintiffs' limitation of this request to policy and practice documents. | Chicago, Columbia, Duke, Penn will not produce<br><br>Brown, Cornell, Emory, Georgetown, MIT, ND, Rice, Vanderbilt, Yale will produce<br><br>Caltech, Dartmouth, JHU, Northwestern DNP |
| 1 | 63 | All Documents Concerning any relationship between Early Admissions programs and Financial Aid. | Plaintiffs clarified this request in 11/23/22 email to seek:<br><br>Documents sufficient to show, for each year since 1994, any policy or procedure whereby Your institution establishes, views, or regards as existing any relationship between Early Admission and the likelihood that an applicant for Early Admission will or will not seek Financial Aid.<br><br>*See*  11/29/2022 T. Normand email to Defendants with spreadsheet attachment.<br><br>Confirmed in 12/1/2022 Kirkpatrick letter. | Only Chicago objected. Plaintiffs seek documents that are relevant to the 568 exemption relating to differing standards for admission for students applying early admission. Plaintiffs want to know the relevance of Financial Aid, if any, in early admissions, whereas RFPs 61-62 is regarding the difference between early admissions and other distinct types of admissions. | Chicago will not produce<br><br>Penn and Yale will MCS<br><br>All others will produce |
| 1 | 83 | All Documents Concerning lobbying the National Commission on Responsibilities for Financing Postsecondary Education and the principle, policy, or goal that parents, Students, or families should be primarily responsible for bearing the cost of postsecondary education. | | Plaintiffs seek documents as evidence of actions by the Defendants in aid of their conspiracy. | (All Refuse) |
| 1 | 88 | All Documents Concerning the November 14, 2017 Columbia Spectator article by Eli Lee entitled "Public Health Professor Lisa Rosen-Metsch Appointed Dean of General Studies" including the editor's note issued on February 16, 2022 stating, in substance, that the article's previous statement that General Studies Admissions are "need-aware" was in error. See Eli Lee, Public Health Professor Lisa Rosen-Metsch Appointed Dean of General Studies, COLUMBIA SPECTATOR (Nov. 14, 2017), https://www.columbiaspectator.com/news/2017/11/14/public-health-professor-lisa-rosen-metsch-appointed-dean-of-general-studies/. | | Plaintiffs seek documents regarding an article concerning non-need-blind admissions, which is relevant to the 568 exemption. Any burden is further limited because the RFP only seeks documents related to a specific article. Numerous Defendants agreed to produce such documents if they had them. | Chicago, Emory, JHU, ND, Penn, and Yale will not produce<br><br>All others will produce |

| RFP Set | RFP No. | Request | Revision/Clarification | Additional Reasoning | Defendant Original RFP Response |
|---|---|---|---|---|---|
| 1 | 98 | All Documents Concerning work performed by Jeff Sassorossi, including any work he performed as Dartmouth's "liaison between the Advancement (Alumni Relations and Development) and Admissions" relating to Admissions policies and to Admissions of specific Students. | | Plaintiffs seek documents relating to the work of a single specified individual who was known to have worked in the intersection between admissions and development, which is relevant to the 568 exemption. Any burden is further limited because the RFP only seeks documents related to a specified individual. Numerous Defendants agreed to produce such documents if they had them. | Chicago, Emory, JHU, ND, Penn, and Yale will not produce<br><br>All others will produce |
| 1 | 103 | All Documents Concerning Georgetown's statement that it "compete[s] among the top 25 universities in the nation," including those used to identify the Peer Institutions. See President John J. DeGioia, Student Town Hall Meeting on the Implications of the Financial Crisis (Mar. 2, 2009), https://president.georgetown.edu/speeches/student-town-hall-meeting-on-the-implications-of-the-financial-crisis/. | | Plaintiffs seek documents regarding an article that is relevant to the definition of the relevant market and is evidential of how Defendants define such a market. Any burden is further limited because it only seeks documents related to a specific article. Numerous Defendants agreed to produce such documents if they had them. | Emory, JHU, ND, Penn, and Yale will not produce<br><br>All others will produce |
| 1 | 113 | All Documents Concerning the Yale Daily News article published on February 16, 2005 entitled "Legacies Still Maintain an Edge in Admissions." Hillary August, Legacies Still Maintain Edge in Admissions, YALE DAILY NEWS (Feb. 16, 2005), https://yaledailynews.com/blog/2005/02/16/legacies-still-maintain-edge-in-admissions/. This Request includes all Documents Concerning the "A-list," "B-list," or "C-list," mentioned in the article, or any similar lists, including copies of such lists, the identities of all Applicants or their family members on such lists, and whether any Applicant connected to any such list was ultimately accepted, rejected, or Waitlisted. | | Plaintiffs seek documents regarding an article, and related documents, evidencing certain apparently non-need-blind admissions processes, which is relevant to the 568 exemption. Numerous Defendants agreed to produce such documents if they had them. | Emory, JHU, ND, and Penn will not produce<br><br>All others will produce |
| 1 | 114 | All Documents Concerning the September 26, 2008 article in the Yale Daily News entitled "University Leaves Financial Aid Group," including but not limited to statements, comments, discussions, remarks, or analyses by the 568 Group or 568 Group Members (including Yale) Concerning Yale's statement that its "new, more generous aid policy in January means the University can no longer follow the consensus methodology" and that "[b]y leaving the 568 Group, Yale is now free to give more aid than they would have gotten under the consensus methodology." See Caitlin Roman, University Leaves Financial Aid Group, YALE DAILY NEWS (Sept. 26, 2008), https://yaledailynews.com/blog/2008/09/26/university-leaves-financial-aid-group/. This Request includes all Documents Concerning Yale's decision to purportedly withdraw from the 568 Group. | | Plaintiffs seek documents regarding an article concerning Yale leaving the 568 Group, because such documents may well be evidence of the Plaintiffs' principal contention that membership in the 568 Group suppresses the amount of financial aid its members provide. Any burden is further limited because the RFP only seeks documents related to a specific article. Numerous Defendants agreed to produce such documents if they had them. | Emory, JHU, ND, and Penn will not produce<br><br>All others will produce |
| 1 | 115 | All Documents Concerning Yale's decision to purportedly re-join the 568 Group. | | Plaintiffs seek documents regarding Yale's actions which will provide evidence concerning Yale's participation in Defendants' conspiracy and the purposes of the conspiracy. Any burden is further limited because the RFP only seeks documents related to a single action by a single Defendant. Numerous Defendants agreed to produce such documents if they had them. | Chicago, Duke, Emory, JHU, ND, and Penn will not produce<br><br>All others will produce |

| RFP Set | RFP No. | Request | Revision/Clarification | Additional Reasoning | Defendant Original RFP Response |
|---|---|---|---|---|---|
| 1 | 116 | All Documents Concerning the contents of the November 2, 2018 article in the Yale Daily News entitled "Development Office Courts 'VIP' High Schoolers, Children of Potential Donors" or the article itself. Lorenzo Arvanitis & Skakel McCooey, Development Office Courts "VIP" High Schoolers, Children of Potential Donors, YALE DAILY NEWS (Nov. 2, 2018), https://yaledailynews.com/blog/2018/11/02/development-office-courts-vip-high-schoolers-children-of-potential-donors/. | | Plaintiffs seek documents regarding an article concerning non-need-blind admissions, which is relevant to 568 exemption. Any burden is further limited because the RFP only seeks documents related to a specific article. Numerous Defendants agreed to produce such documents if they had them. | Chicago, Emory, JHU, ND, and Penn will not produce<br><br>All others will produce |
| 1 | 117 | All Documents Concerning foreign national Applicants such as those identified in the March 26, 2022 Air Mail article entitled "Yale for Sale." See Clara Molot, Yale for Sale, AIR MAIL (Mar. 26, 2022), https://airmail.news/issues/2022-3-26/yale-for-sale. | | Plaintiffs seek documents regarding these foreign national applicants in order to determine whether they are accorded admissions advantages in exchange for donations. Numerous Defendants agreed to produce such documents if they had them. | Brown, Caltech, Columbia, Duke, MIT, Northwestern, and Vanderbilt will produce<br><br>All others will not produce |
| 1 | 124 | "All Documents Concerning different or preferential treatment in the Admissions process for Applicants whose families are capable of making substantial Donations and Applicants who do not need Financial Aid at Your institution or that of any 568 Group Member or Peer Institution." | The use of the word "substantial" is gratuitous, and is not meant to qualify the meaning of "Donation."<br><br>Plaintiffs amended the definition of "Donation" as follows:<br><br>28. "Donation" includes but is not limited to restricted or unrestricted cash gifts, non-cash gifts, matching gifts, gifts of stock, bonds, securities, or business interests, bequests, gifts of real property, gifts of personal property, gifts of retirement plans, gifts of life insurance, gifts of copyrights, gifts of royalties, gifts of patents, assignments of contractual income rights, gifts of oil and gas interests, one-time gifts, recurring gifts, planned gifts, life income gifts, or in-kind donations valued on a one-time basis or cumulatively over a period of years at $50,000 or more. Donation also includes any gifts resulting in an "endowed chair" or similar honorific such as the name of a building or a stadium.<br><br>See 11/29/2022 T. Normand email to Defendants with spreadsheet attachment. | Only Chicago objected.<br><br>Memorialized in 12/1/2022 Defendants letter to Plaintiffs: "Plaintiffs stated that this request again seeks evidence related to the 568 Exemption (i.e., evidence of assessments conducted by the Defendants that show (1) a prospective donation is relevant in admissions, regardless of the size of the donation, or (2) a student will not require financial aid)." | Chicago will not produce<br><br>All others will produce |
| 1 | 126 | All Documents Concerning any communications between Your Admissions Office staff and Your Development Office staff Concerning any Donor or Applicant, including any email correspondence and any shared electronic data or information sources. | | Plaintiffs seek documents regarding such communications between the Development Office (which deals with donations) and Admissions as they will likely reflect the effect of donations or potential donations on admission, which is relevant to the 568 exemption. | Dartmouth and Duke will produce<br><br>All others will not produce |

| RFP Set | RFP No. | Request | Revision/Clarification | Additional Reasoning | Defendant Original RFP Response |
|---|---|---|---|---|---|
| 1 | 127 | All Documents Concerning communications between (a) Your Admissions Office and the Development Office, (b) the President's Office and the Admissions Office, and/or (c) the Financial Aid Office and Admissions Office, including any email correspondence and any shared electronic data or information sources, that identify Applicants by name and discuss the Applicants' candidacy prior to Your issuing a formal decision on their Admissions application. | | Plaintiffs seek documents regarding such communications between the Development Office and the President's Office (which both deal with donations) and Admissions as they will likely reflect the effect of donations or potential donations on admission, and communications between Financial Aid and Admissions may well reflect wealth favoritism in that admission should be need-blind, which is relevant to the 568 exemption. | Dartmouth and Duke will produce<br><br>All others will not produce |
| 1 | 128 | All Documents Concerning communications between or among You (including but not limited to any employee in the Development Office, Financial Aid Office, Admissions Office, Alumni Relations Office, or President's office) and any natural person(s) or families, or representatives of such natural person(s) whom You identified as part of a family who has ever cumulatively donated $50,000 or more to You (on either a one-time or annual basis in that amount or higher) Concerning any Applicants, Admitted Applicants, current Students, or former Students of You | | Memorialized in 12/1/2022 Defendants letter to Plaintiffs: "Plaintiffs stated that documents responsive to this request would include documents for a student admitted in 2003 whose parents made a donation in 2015 and communicated with the Development Office about the donation. Plaintiffs agreed, however, that they are seeking a single consolidated file of communications with a donor that may span many years, and recognized that absent such a consolidated file, searching for communications many years after an admissions decision was made could be burdensome. Plaintiffs also confirmed that their basis for this request is the applicability of the 568 Exemption."<br>Plaintiffs' position is there is a need for "look back" time, even after an applicant may have graduated, to cover instances in which a family member has post-admission communications and makes subsequent donations, or perhaps pledges a donation over time. | (All Refuse) |

| RFP Set | RFP No. | Request | Revision/Clarification | Additional Reasoning | Defendant Original RFP Response |
|---|---|---|---|---|---|
| 1 | 129 | All Documents reflecting communications between or among You (including but not limited to any employee in the Development Office, Financial Aid Office, Admissions Office, Alumni Relations Office, or President's office) and any natural person(s) whom You have identified as part of a family Your institution has identified as capable of cumulatively providing Donations of at least $50,000, either on a one time or annual basis, whose children who have applied or have been admitted to Your institution. | Plaintiffs amended the definition of "Donation" as follows:<br><br>28. "Donation" includes but is not limited to restricted or unrestricted cash gifts, non-cash gifts, matching gifts, gifts of stock, bonds, securities, or business interests, bequests, gifts of real property, gifts of personal property, gifts of retirement plans, gifts of life insurance, gifts of copyrights, gifts of royalties, gifts of patents, assignments of contractual income rights, gifts of oil and gas interests, one-time gifts, recurring gifts, planned gifts, life income gifts, or in-kind donations valued on a one-time basis or cumulatively over a period of years at $50,000 or more. Donation also includes any gifts resulting in an "endowed chair" or similar honorific such as the name of a building or a stadium.<br><br>Plaintiffs clarified this request in 11/23/2022 email to seek:<br><br>All Documents Concerning communications between or among You (including but not limited to any employee in the Development Office, Financial Aid Office, Admissions Office, Alumni Relations Office, or President's office) and any natural person(s) whom You have identified as part of a family Your institution has identified as having made a Donation or as capable of cumulatively providing a Donation of at least $50,000, whose children who have applied or have been admitted to Your institution.<br><br>*See* 11/29/2022 T. Normand email to Defendants with spreadsheet | Plaintiffs seek documents regarding these communications that would provide evidence concerning the effect of donations or potential donations on admissions, which is relevant to the 568 exemption. | (All Refuse) |
| 1 | 131 | All Documents Concerning meetings, phone calls, or other communications other than Applicant Admissions interviews that took place or take place between or among Applicants and any of your faculty, staff, employees, or officers, including any communications by Your Development Office or Your President regarding any such meetings, phone calls, or communications other than Applicant Admissions interviews. | Plaintiffs clarified this request in 11/23/22 email to seek:<br><br>Documents sufficient to show, for each year since 1994, any policy, procedure, or practice, and the content of the policy, procedure, or practice, whereby Your president's office or development office communicates with Applicants.<br><br>*See* 11/29/2022 T. Normand email to Defendants with spreadsheet attachment.<br><br>Confirmed in 12/1/2022 letter. | Plaintiffs seek documents regarding these communications that would provide evidence concerning the effect of donations or potential donations on admissions, which is relevant to the 568 exemption. Defendants' burden has been limited by Plaintiffs' limitation of this request to policy and practice documents. | (All Refuse) |
| 1 | 132 | All Documents Concerning parents or other relatives of an Applicant establishing, or potentially establishing, an endowed chair or endowed fund. | | Plaintiffs seek these documents as another method to inquire into the connection between donations and admissions, which is relevant to the 568 exemption. | Caltech will produce<br><br>All others will not produce |

| RFP Set | RFP No. | Request | Revision/Clarification | Additional Reasoning | Defendant Original RFP Response |
|---|---|---|---|---|---|
| 1 | 139 | "All Documents Concerning any agreements between You and any other colleges or universities to share information Concerning Applicants admitted through Early Admissions Programs." | | Memorialized in 12/1/2022 Defendants letter to Plaintiffs: "Plaintiffs stated that this request seeks documents regarding whether Defendants shared the information described in the request as part of their membership in the 568 Group. In particular, Plaintiffs are seeking information showing that Defendants were aware that certain early admissions programs limit financial aid, and that Defendants were communicating with each other about the effect of such admissions on financial aid." This is relevant to evidence of the conspiracy among the Defendants and to the 568 exemption. | Brown, Dartmouth, and Yale will not produce Chicago, Duke, and Northwestern DNP All others will produce |
| 1 | 142 | All Documents Concerning any conversations, meetings, or communications between You and any other institution of higher education about efforts, individually or collectively, to persuade Congress to extend and/or modify the 568 Exemption after it is scheduled to expire on September 30, 2022. This Request includes All Documents between You and any person or entity employed as a lobbyist by you on these subjects, or between You and any Member of Congress or Congressional staff person on these subjects. | | Only Duke objected. Plaintiffs seek these documents as evidence of actions taken by Defendants in aid of their conspiracy. | Duke will not produce All others will produce |
| 1 | 150 | All Documents Concerning the possible or actual use of endowment funds to increase Financial Aid or decrease the Cost of Attendance for undergraduate Students. This Request also includes all Documents Concerning the use of endowment principal or income for Financial Aid. | | Plaintiffs seek these documents as evidence to undermine Defendants' argument that their actions as members of the 568 Group were altruistically motivated, including being linked to increased financial aid. | Duke will produce All others will not produce |
| 1 | 151 | All Documents Concerning any Merit Aid offered to Applicants and awarded to Students during the Relevant Time Period. | | Only Northwestern objected. Memorialized in 12/1/2022 Defendants letter to Plaintiffs: "Plaintiffs stated that their request concerning merit aid is relevant to the history of the allocation of aid, the rule of reason analysis, and the extent to which merit aid could affect the available pool of need aid from year-to-year. Plaintiffs further offered that documents concerning merit aid are relevant to the extent that schools use merit aid to compete for top students." | Northwestern will not produce ND will MCS Brown, Caltech, Dartmouth, Penn, Yale DNP All others will produce |
| 1 | 157 | All Documents Concerning Princeton University's announcements in 1998 and 2001 Concerning the elimination of Loans from Financial Aid Packages. | Plaintiffs sent links referenced; Confirmed in 12/1/2022 letter. | Any burden from this RFP is limited by the fact that it relates to very specific events regarding one non-Defendant University. | Chicago, Columbia, Emory, and Yale will not produce ND DNP All others will produce |

| RFP Set | RFP No. | Request | Revision/Clarification | Additional Reasoning | Defendant Original RFP Response |
|---|---|---|---|---|---|
| 1 | 160 | All Documents referenced or relied upon in responding to interrogatories in this Action. | | Only Duke and Northwestern objected. This is a standard RFP that only requires attention to what documents are otherwise used in connection with the preparation of Interrogatory responses. | Duke and Northwestern will not produce<br><br>Penn DNP<br><br>All others will produce |
| 1 | 163 | All Documents Concerning any communications You had with any governmental authority or representative in connection with the 568 Exemption, the 568 Group, or the Consensus Methodology. | | Memorialized in 12/1/2022 Defendants letter to Plaintiffs: "Plaintiffs confirmed that RFP 163... seek documents concerning Defendants' lobbying efforts to renew the 568 Exemption and the importance of the 568 Exemption to the schools...."<br><br>Plaintiffs seek these documents as evidence of actions taken by Defendants in aid of their conspiracy. | Chicago, Duke, Penn will not produce<br><br>All others will produce |
| 2 | 1 | All Documents Concerning Your study, analysis, or discussion regarding any relationship between Your admission of Legacy Admissions and Your receipt of current or future Donations. | "Legacy Admission" means a policy or practice, whether formal or informal, in which You grant preferences to children, grandchildren, nieces, nephews, or siblings of alumni of undergraduate or graduate programs.<br><br>Clarified definition in 1/9/2023 email; Ds agreed 1/13/2023 | Plaintiffs seek documents that are relevant to the connection in yet another area between donations and admissions, which is relevant to the 568 exemption. Defendants burden is further limited by the fact that this RFP requests documents regarding analysis conducted by the Defendants and not individual instances of the practice. | Caltech - MCS<br><br>All others will not produce |
| 2 | 3 | For all Admitted Applicants, Documents reflecting for each Academic Year the scores assigned to each factor disclosed in response to Request No. 2 and the weight, if any, applied to that factor. | Clarified re: structured data in 11/30/2022 email to Ds | Plaintiffs seek these documents as another method of assessing the effect of donations and wealth favoritism on admissions, which is relevant to the 568 exemption. Most of Defendants have agreed to produce these documents. The burden of this RFP is further limited by the fact that Plaintiffs believe that this information should exist in structured data regarding an applicant. The 2/8/23 Minute Entry states: "The Court reaffirms its earlier statements that admissions scoring data is relevant and discoverable." | Duke, Emory, MIT, Northwestern, Penn, Vanderbilt, Yale will produce<br><br>All others will not produce |
| 2 | 4 | For each Donor-related Admitted Applicant, all letters of recommendation submitted to You by a Donor, or person who refers to the Donor or donation in the recommendation, on behalf of the Applicant. | "Donor-related Admitted Applicant" is an Admitted Applicant whose parent, grandparent, aunt/uncle, or sibling made Donation(s) to You cumulatively valued at $50,000 or more during the five year period prior to the admission of the Admitted Applicant.<br><br>Clarified in 1/9/2023 email; Ds agreed 1/13/2023 | Plaintiffs seek these documents as direct evidence of the relationship, and potential influence, of donations on admissions, which is relevant to the 568 exemption. | Caltech - MCS<br><br>All others will not produce |

DNP = Do not possess
MCS = Meet & confer scope
MCR = Meet & confer relevance