UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>      Defendants. | Case No.: 1:22-cv-00125<br><br>Hon. Matthew F. Kennelly |

**[CORRECTED] DECLARATION OF ROBERT D. GILBERT**

  I, ROBERT D. GILBERT, am a partner at the law firm of Gilbert Litigators & Counselors P.C., counsel for Plaintiffs in this case. I hereby declare as follows:

  1.  I submit this Declaration in support of Plaintiffs' Motion to Compel Production of Documents responsive to Plaintiffs' First and Second, and a certain portion of the Third, Set of Requests for Production of Documents ("RFPs").

2. Attached as Exhibits 1, 2 and 3 are Plaintiffs' First, Second and Third Sets of RFPs, respectively, served on September 19, 2022, November 7, 2022, and January 26, 2023. Defendants served responses to these three sets of RFPs on October 29 and December 22, 2022, and February 27, 2023, respectively.

3. Attached as Exhibit 4 is the email string concluding with Britt H. Miller, Esq.'s email of January 31, 2023 on behalf of Defendants resolving the final open question regarding agreement on the temporal scope of pre-complaint document production.

4. In a February 1, 2023 email following up on an original January 29, 2023 email, on behalf of Plaintiffs, I invited each individual Defendant to advise Plaintiffs if, due to that Defendant's "exceptional individualized circumstances," that individual Defendant had a particular issue with the global resolutions that had been reached concerning document production. A copy of my emails are attached as Exhibit 5.

5. In response to the Court's directive, Plaintiffs pared down their original three sets of RFPs, totaling 192 RFPs, to a total of 93 RFPs. Attached as Exhibit 6 is a copy of the email of Edward J. Normand, Esq. of February 14, 2021 forwarding the schedule reflecting this, along with the subsequent email correcting one typographical error in that schedule and the corrected schedule itself.

6. In their February 27, 2023 Response to Plaintiffs' Third Set of RFPs Defendants refused to agree to produce documents in response to RFPs 11 and 13 relating to donations records.

7. Attached as Exhibit 1 to Plaintiffs' Local Rule 37.2 Statement is a copy of my 4-page email to Defendants' counsel of February 28, 2023, with attached Appendices A and B. As part of these Appendices, Plaintiffs, among other things, identified which Defendants refused to respond to each RFP in the First and Second Set of RFPs, or, in certain limited

circumstances, stated that the Defendant required the parties to Meet & Confer before the Defendant determined whether it would respond.

8. Attached as Exhibit 2 to Plaintiffs' Local Rule 37.2 Statement is a copy of the one paragraph responding March 2, 2023 Sarah F. Kirkpatrick, Esq email on behalf of Defendants.

9. Plaintiffs have already begun to schedule depositions of the 6 deponents from the 6 Defendants where Defendants have withdrawn the 568 Exemption defense, with the understanding that Plaintiffs would have the documents regarding the donations and admissions in hand in order to prepare for these depositions, and in accordance with the Court's guidance, the deponents would have them too. *See* my March 15, 2023 email to Jon R. Roellke, Esq., on behalf of Brown, his reply letter of March 17, 2023, and my further reply email of March 19, 2023, all attached as Exhibit 7. The deposition of Brown's official is scheduled for April 18, 2023. Today, March 21, 2023, counsel for Brown agreed to produce documents responsive to RFP No. 22 within a week.

10. The following is a brief description of Plaintiffs rationale behind Plaintiffs' RFPs (in the First Set, unless otherwise noted) that are not donation- or wealth favoritism-related and as to which no Defendants initially refused to produce documents, but one or two Defendants would not agree to produce documents without first having a Meet & Confer:

**RFP No. 2: Data Concerning Applicants.** This is baseline information relevant to, for example, the calculation of net price of attendance across different types of applicants. This relates to liability and damages.

**RFP No. 3: Data Concerning Financial Aid Applicants .** This is baseline information relevant to, for example, the calculation of net price of attendance and the amount of financial aid awarded. This relates to damages.

3

**RFP No. 4: Structured Data Concerning Management of Financial Aid and Enrollment Management Software.** This relates to the school's operation as a revenue-maximizing or non-altruistic commercial enterprise, and to the school's efforts to reconcile financial aid-related goals with broader admissions goals. This relates to liability.

**RFP No. 7: Data Concerning the School's Formula for Determining Financial Aid.** This relates to the Defendants' collective application of the same financial aid formulae. This relates to liability and damages.

**RFP No. 12: Data Concerning the School's Waitlisted Applicants**. This relates to whether the school had made need-blind admissions for such applicants, an issues that relates to liability.

**RFP No. 14: Data Concerning the School's Transfer Applicants.** This relates to whether the school had made need-blind admissions for such applicants, an issue that relates to liability and damages.

**RFP No. 16: Data Concerning the Calculation of Net Price of Attendance for the Schools' Applicants and Students.** This relates to damages. This is a key metric for any comparison between such prices at the Defendants in comparison to other schools in the relevant market.

**RFP No. 31: Documents Concerning Preferential Treatment of Applicants Who Did Not Need Financial Aid, and the Schools' Use of Enrollment Management to Achieve Revenue or Other Goals .** This relates to the schools' admissions practices and their operation as revenue-maximizing or non-altruistic commercial enterprises, issues which relate to liability and damages.

**RFP No. 48: Documents Presented to the School's Prospective Applicants Comparing Its Financial Aid Policies and Practices to Those at Other Schools.** This relates to the Defendants' collective application of the same financial aid policies or practices, and to how they compare to those at other schools, issues which relate to liability and damages.

**RFP No. 70: Documents Analyzing or Comparing Which Other Schools the School's Applicants Would Choose to Apply to and Attend.** This is relevant to the analysis of the relevant market as Plaintiffs have defined it, an issue related to liability and damages.

**RFP No. 77: Documents Concerning the Schools' Use of Enrollment Management.** This relates to the schools' operations as revenue-maximizing or non-altruistic commercial enterprises, and to the schools' efforts to reconcile financial aid-related goals with broader admissions goals, issues relating to liability.

**RFP No. 2 (in the Second Set): Documents Concerning Any Scoring Methodologies That the School Has Used in Admissions.** This relates to the school's efforts to achieve certain admissions goals, an issue relating to to liability. On February 8, 2023, the Court stated: "The Court reaffirms its earlier statements that admissions scoring data is relevant and discoverable." (Dkt. 315.).

11. The following is a brief description of Plaintiffs rationale behind Plaintiffs' RFPs that are not donation- or wealth favoritism-related and as to which some, but not all, Defendants initially refused to produce documents, along with an identification of which Defendants refused to produce:

**RFP No. 38: Communications Among 568 Members and Government Entities Regarding Financial (Duke, Penn).** This goes to evidence regarding the basis and nature of the Defendant's financial aid policies, practices, and objectives, and similarly about such policies,

practices, and objectives within the 568 Group.

**RFP No. 49: Revenue, Endowment, Development and Cost Information (Chicago, Duke, Georgetown, Yale).** This relates to the schools' operations as revenue-maximizing or non-altruistic commercial enterprises, and to the schools' efforts to reconcile financial aid-related goals with broader admissions goals, all of which relates to the Defendants' procompetitive justifications for the alleged conspiracy at issue and the less restrictive means to achieve such ends.

**RFP No. 51: Statements of Reasons for Public Explanations of Tuition Increases (Georgetown, Penn).** This request goes to the issue of concealment related to Defendants' statute of limitations affirmative defense. Where Defendants have offered explanations for tuition increases other than as a result of the 568 Group, Plaintiffs must determine whether Defendants had support for those statements, all of which relates to Plaintiffs' arguments that a reasonable person would not have known that Defendants' violations of the antitrust laws were causing them any injury.

**RFP No. 54: Policies and Practices Regarding Admissions and Financial Aid (Chicago).** Plaintiffs are seeking documents to better understand the application and financial aid practices of each Defendant. Those practices and their relationship to each other and to the practices of other Defendants are central issues concerning the alleged conspiracy at issue.

**RFP No. 103: Market Definition—Statement by Georgetown (Emory, JHU, Notre Dame, Penn, Yale).** Plaintiffs seek documents regarding the specific statement and the support for it which are evidence regarding the relevant market, as Plaintiffs have defined it, and how Defendants have internally defined the market in which they believe they compete.

**RFP No. 114: Yale's Announcement of Leaving the 568 Group (Emory, JHU, Notre Dame, Penn).** Such documents relate to the schools' analysis of the operation, goals, and effects of the 568 Group, all of which relate to both liability and damages, and, for example, may provide evidence of the Plaintiffs' principal contention that membership in the 568 Group suppresses the amount of financial aid its members provide.

**RFP No. 115: Yale's Decision to Re-Join the 568 Group (Chicago, Duke, Emory, JHU, Notre Dame, Penn).** Such documents relate to the schools' analysis of the operation, goals, and effects of the 568 Group and, for example, may provide evidence concerning Yale's participation in Defendants' conspiracy, the purposes of the conspiracy, and the reasoning behind withdrawal.

**RFP No. 142: Communications with Other Schools Regarding Extending or Modifying the 568 Exemption (Duke).** This goes to evidence of actions taken by Defendants in aid of their conspiracy and, for example, may provide evidence of the schools' analyses of the operation, goals, and effects of the 568 Group, all of which relate to both liability and damages.

**RFP No. 150: Use of Endowment Funds in Relation to Financial Aid (all Defendants except Duke).** The responsive documents bear on Defendants' argument that their actions as members of the 568 Group were altruistically motivated and increased financial aid, and on Plaintiffs' prospective argument—if the Rule of Reasons were to apply—that there were less restrictive alternatives for Defendants to achieve such goals.

**RFP No. 151: Merit Aid (Northwestern).** The responsive documents are relevant to the history of the allocation of aid, the Rule of Reason analysis, and the extent to which merit aid could affect the available pool of need aid from year-to-year. Documents concerning merit aid

7

are relevant to the extent that schools use merit aid to compete for top students, but refuse to compete for needy students.

**RFP No. 157: Princeton's Announcement of Elimination of Loans (Chicago, Columbia, Emory, Yale).** Such documents relate to the schools' analysis of the appropriate goals in awarding financial aid, including the means for reaching those goals, and, for example, may provide evidence of schools praising or denigrating Princeton for reducing the net price of attendance and creating increased competition for needy applicants.

**RFP No. 160: Document Relied Upon for Responding to Interrogatories (Duke, Northwestern).** This is a standard request that only requires attention to what documents are otherwise used in connection with the preparation of a Defendant's interrogatory answers.

**RFP No. 163: Communications with Government Regarding Renewal and Importance of the 568 Exemption (Chicago, Duke, Penn).** This goes to evidence regarding the basis and nature of the Defendant's financial aid policies, practices, and objectives, and similarly about such policies, practices, and objectives within the 568 Group.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of March, 2023  */s/ Robert D. Gilbert*
ROBERT D. GILBERT
GILBERT LITIGATORS & COUNSELORS, P.C.
11 Broadway, Suite 615
New York, NY 10004
Telephone: 646-448-5269
rgilbert@gilbertlitigators.com