# EXHIBIT 5

**From:** Robert Gilbert <rgilbert@gilbertlitigators.com>
**Date:** Wednesday, February 1, 2023 at 3:43 PM
**To:** RYBNICEK, Jan <Jan.RYBNICEK@freshfields.com>, Carbone_Defs_Service@listserv.whitecase.com <Carbone_Defs_Service@listserv.whitecase.com>
**Cc:** 568 Litigation <568_Litigation@fnf.law>
**Subject:** Exceptional Individualized Circumstances

**[EXTERNAL SENDER]**

Dear Jan,

Thank you for your email this morning. I further explain below the scope of the problem here, which your email seems to overlook.

One example (of many that could be provided) of the problem is reflected in an excerpt from the December 2, 2022 Joint Status Report (at pp. 2-3): "The sequence of events is illuminating. First, the Plaintiffs went to Individual meet-and-confers with individual Defendants (starting on November 10), several of whom used identical arguments to refuse to identify a custodian in the Development or President's Office, and then said that the Plaintiffs needed to seek recourse at the Global meet-and-confers, and this pattern continued for a couple of weeks. At the subsequent Global meet-and-confer on November 28, to which the Plaintiffs had been referred, all Defendants took the position that Plaintiffs' only recourse was to go back to all seventeen universities separately in at least seventeen more Individual meet-and-confers to determine whether any one of them will agree to provide even a single custodian from one of

those offices. From the perspective of the Plaintiffs, this is a classic case of being given the run-around. Accordingly, Plaintiffs now seek their recourse from the Court."

What this example shows is that for the past three months, on a broad range of discovery issues, the Plaintiffs have been forced to deal with an unworkable "process" that Defendants have unilaterally imposed and that Plaintiffs have never accepted. Defendants' position regarding that process can be fairly summarized as follows: Irrespective of how many global meet-and-confers the parties have conducted to try to reach global agreement on discovery issues, each Defendant reserves the right ultimately to reject any part or even all of such proposed global agreement, and to do so any time it chooses; and the Plaintiffs are then obligated to negotiate separately with each such Defendant over the particulars of their rejection of a global agreement; and if the ensuing negotiation with each Defendant is unsatisfactory, then Plaintiffs are obligated to take as many as 17 different disputes to the Court on each such discovery issue.

This process is unreasonable, inefficient, and untenable, and with all respect, your email seems to miss these points. To be clear, there is no part of my email on January 29 that takes issue with your statement that "No one Defendant can speak for the entire group and make agreements on behalf of other Defendants." We are not asking Defendants to assign a binding agent for any global meet-and-confer. What we are asking is for each Defendant, speaking on its own behalf, promptly to say—within one business day is reasonable—whether it agrees or not with a global agreement arising out of a global meet-and-confer. We believe it makes sense for any such Defendant to provide a justification for its decision, but if that Defendant declines to do so, that is simply a fact that would end up before the Court. There is no basis for each Defendant to "hide the ball" about whether it agrees or disagrees until it chooses to let Plaintiffs know later. That is unacceptable.

The process we thus propose would safeguard and preserve every party's rights, but nonetheless would provide some hope of efficient discovery that does not burden the Court ad infinitum. Given the substantial discovery that remains, these process problems can only worsen, and perhaps exponentially so. We are thus disappointed that Defendants have chosen to not make any constructive proposal to solve the process issues, other than for the parties to constantly, "present their positions to the court."

The good news, on the other hand, is that we may be reaching at least some global agreements. For example, the parties seem very close to agreeing on the search terms that will be used on the Defendants' documents. Under the process that we proposed, given the weeks of effort that has been devoted by all parties to the issue of search terms, once that agreement is reached, hopefully this Friday, Plaintiffs believe that it is entirely fair and appropriate for each of the 17 Defendants to state, within one business day, that it accepts the agreement or clarifies its position by stating a justification of exceptional individualized circumstance for not accepting all or part of the agreement.

Please let us know by Friday, February 3, if Defendants would accept this approach. Thank you.

Best,

Bob

Robert D. Gilbert
Managing Partner
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
rgilbert@gilbertlitigators.com
646-448-5269 work
203-645-0055 cell
www.gilbertlitigators.com

**From:** RYBNICEK, Jan (JRYB)
**Sent:** Wednesday, February 1, 2023 4:33 AM
**To:** Robert Gilbert; Bernescu, Laura; (Michaels) Maurer, Jessica A.; Carbone_Defs_Service@listserv.whitecase.com
**Cc:** 568 Litigation
**Subject:** RE: Exceptional Individualized Circumstances

Bob -- Defendants have engaged in the global meet-and-confers to facilitate more efficient discussions on issues where at least some defendants likely are similarly situated. While some Defendants may take similar positions on these issues, each Defendant ultimately has a right to accept the general proposal or object and negotiate based on its own specific circumstances. No one Defendant can speak for the entire group and make agreements on behalf of other Defendants. Your proposal requiring Defendants to commit upfront to accept the global meet-and-confer proposals unless they can demonstrate "exceptional" individualized needs inappropriately flips the burden to Defendants and would undermine the efficiency of the global meet-and-confer process. Defendants believe we should continue to follow the standard approach to resolving discovery issues: if Plaintiffs and Defendants cannot agree, whether in global meet-and-confers or school-specific discussions, then the parties will present their positions to the court.

Regards. -- Jan

**Jan M. Rybnicek**
**Freshfields Bruckhaus Deringer US LLP**
T +1 202 777 4534
M +1 703 785 2243

**From:** Robert Gilbert <rgilbert@gilbertlitigators.com>
**Sent:** Sunday, January 29, 2023 5:04 PM
**To:** RYBNICEK, Jan (JRYB) <Jan.RYBNICEK@freshfields.com>; Bernescu, Laura <Laura.Bernescu@skadden.com>; (Michaels) Maurer, Jessica A. <JMaurer@mayerbrown.com>; Carbone_Defs_Service@listserv.whitecase.com
**Cc:** 568 Litigation <568_Litigation@fnf.law>
**Subject:** Exceptional Individualized Circumstances

Dear Jan, Laura and Jessica,

During the past several weeks, the Parties have engaged in several global meet and confer sessions concerning discovery matters such as TAR, search terms and discovery of data and communications created after the filing of the Complaint. In some of these sessions, Defendants have stated that, notwithstanding having negotiated a global resolution on a certain point, that the resolution is "not binding" on any Defendant. Of course, we understand that an adjustment may occasionally be necessary to account for truly exceptional individualized needs or circumstances. However, if literally interpreted, "not binding" is a bit vague, and could be interpreted to mean that the Parties do not have any genuine agreement at all, and that every discovery issue could devolve into the Parties being mired in 17 free-for-all disputes.

Accordingly, to facilitate discovery matters going forward, we propose a clarifying standard to allow for reasonable adjustments when truly necessary, while still preserving genuine agreements. Our suggestion is the following clause: "A specific Defendant may make an adjustment from a global discovery agreement between the Parties provided that such Defendant states a compelling justification concerning exceptional individualized needs or circumstances, and the Plaintiffs agree to the adjustment. If the Parties cannot agree on such an adjustment, then the Party seeking the adjustment has the burden to obtain approval of the Court."

Please confirm by February 1 that such a clarifying standard is acceptable to all Defendants. Thank you.

Best,

Robert D. Gilbert
Managing Partner
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
rgilbert@gilbertlitigators.com
646-448-5269 work
203-645-0055 cell
www.gilbertlitigators.com

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP

or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this [Privacy notice](). For further information about Freshfields Bruckhaus Deringer, please refer to our website at [www.freshfields.com]().

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

This email and its attachments may contain confidential and/or legally privileged information from the law firm of Hellring Lindeman Goldstein & Siegal LLP.  This information is only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this email and attachments is strictly prohibited and those contents should be returned to this firm immediately.  Although this email and its attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, no respons bility is accepted by Hellring Lindeman Goldstein & Siegal LLP for any loss or damage arising in any way from its use.  This communication, including attachments and enclosures, is not intended to provide any tax advice, is not a substitute for a formal tax opinion, and is not sufficient to avoid tax-related penalties.