# EXHIBIT 7

**From:** Robert Gilbert <rgilbert@gilbertlitigators.com>
**Sent:** Sunday, March 19, 2023 8:09 PM
**To:** jon.roellke@morganlewis.com
**Cc:** 568 Litigation <568_Litigation@fnf.law>; 568_litigation@gilbertlitigators.com; Carbone_Defs_Service@listserv.whitecase.com
**Subject:** FW: Deposition of Jim Tilton

**[EXTERNAL SENDER]**

Dear Jon,

This responds to your letter of March 17, 2023.

Thank you for alerting us to Brown University's forthcoming production of documents requiring compliance with the Confidentiality Order (Doc. 254). Although their production apparently will not be concluded until the end of March, we will not make an issue of Brown's delay in producing these documents, provided that there is a rolling production that is in fact completed by March 31.

With regard to Donation Records, donor-related applicant documents, and donor-related admittee documents referenced in your third paragraph, we look forward to seeing them. Again, if they are produced by the end of March, pursuant to rolling productions, we will not make an issue of the delay in producing these documents. We note that the Court has repeatedly ruled on the importance of these documents, and directed them to be produced. See, e.g., *Carbone v. Brown Univ.*, 2022 WL 3357249, at *5 (N.D. Ill. Aug. 15, 2022) ; 10/26/22 Tr. at 23:12-17; 36:23-37:6.

However, your fourth paragraphs contradicts your third paragraph. The assertion that Brown will produce donor-related applicant records and donor-related admittee records, but not produce documents responsive to RFP 22 and the accompanying Appendix 1 from Plaintiffs, is a non sequitur. As you know, RFP 22 and the accompanying Appendix are the very essence of "donor-related admittee records".

With regard to Plaintiffs' Request for Production No. 22, our contemporaneous records also differ from your letter's assertions. The issue came up during the November 10, 2022 and January 9, 2023 meet and confers, in which Brown's objection was fundamentally grounded in its purported withdrawal from the 568 President's Group. Plaintiffs' response was that withdrawal was both a legal and factual question, and we could not see how Brown could succeed on either basis, so the requested documents had to be produced. Of course, the Court has expressly rejected Brown's argument that supposed "withdrawal" somehow made production of these documents irrelevant and unnecessary. 2/8/23 Minute Order (Doc. 315). See also 2/23/23 Tr. at 32:21-34:1.

Moreover, a subsequent global agreement was reached on search terms, including search terms for RFP 22, and Brown did not opt out of that global agreement.

Furthermore, in an abundance of caution, I wrote on February 1 inviting all Defendants to identify "exceptional individualized circumstances" such that global agreements might not apply. Brown did not identify any.

The other arguments about refusing to produce documents responsive to RFP 22 are equally devoid of merit. You assert that RFP 22, "is relevant only to whether the 568 exemption applies…" This is simply not true, as both the Plaintiffs and the Court have repeatedly made clear. RFP 22 is important to proving what have been euphemistically referred to as the fraudulent concealment issues concerning the statute of limitations, i.e., the millions of false statements made by Defendants each year (via brochures, pamphlets, electronic communications, etc.) that they were "need blind" when they were not, and the numerous false certifications signed by the Defendants each year that made the same untrue claim. RFP 22 is also important to proving

that the Defendants did not have a "pure altruistic motive" nor the "absence of a revenue maximizing purpose", and the per se rule of liability would therefore apply, according to Third Circuit's reasoning in the U.S. v. Brown case.

Your letter also tries to spin an argument that, because Brown has already admitted in writing that it was need aware as to transfer students--and indeed Brown admitted in writing the entire Cartel was need aware as to the wait list as a matter of policy--there is no need for further proof as to wealth favoritism. This argument once again ignores the statute of limitations and "revenue maximizing" points above. Perhaps even more fundamentally, until such time as the Plaintiffs establish liability of all Defendants at summary judgment—which you correctly imply the Plaintiffs will do in this case—we are entitled to develop proofs that violation of the exemption was not limited to "a small number of transfer student applicants" as your letter puts it, but was instead a pervasive and systemic violation of law by all (or virtually all) Defendants.

And with all respect, the argument that RFP 22 is somehow "overbroad" is simply absurd. Plaintiffs handed to Brown on the proverbial silver platter thirty five donor names, plus even provided the class years of the admittees to whom they were related, and Brown simply decided to flout repeatedly all of the Court's rulings for months, which I cited in my March 15 letter. It is clear that Brown has continually made deliberate decisions to defy a federal judge's repeated rulings.

Plaintiffs certainly did not believe that your law firm, and Brown as its client, would try to reassert at this late date arguments about core discovery the Court rejected repeatedly, beginning on October 26, 2022. Rather, we anticipated Brown's compliance with agreed upon search terms, repeated Court rulings on the record, and repeated Court Orders, and we still do.

Indeed, the Court ruled that when Plaintiffs take depositions of Defendants (especially of the six, including Brown, that were the focus of the colloquy on February 8), if the deponent cannot recall or testify because of documents that had not been produced, the Court would order the documents to be produced and the witness to appear for deposition a second time. 2/8/23 Transcript at 49: 15-18. If Brown continues to refuse to produce documents responsive to RFP 22, this ruling would certainly apply to the records concerning the 35 donors and the admittees to whom they were related. I am going to ask questions of Mr. Tilton about each of those 35 donors and their related admittees on April 18 in Providence. If I and other lawyers need to go back to Providence again in light of Mr. Tilton not being able to "remember", because documents were not produced in compliance with Court ordered deadlines and not even produced by March 31, then so be it.

Your final point relates to scheduling a 30(b)(6) deposition. Later in discovery, we will do our best to make it possible, if one witness were to appear for both a 30(b)(1) deposition and a 30(b)(6) depositon, to arrange for those depositions on sequential days, but the implementation of that aspiration at such an early stage in discovery is simply not feasible. Mr. Tilton's deposition as a percipient witness will be the first in the case. Brown has not completed its production of documents, nor have other universities completed their production of documents. Plaintiffs have not yet had an opportunity to "connect the dots" (if you will) concerning the collusive activities of multiple universities that interacted with Brown, nor had a reasonable opportunity to discern what particular issues require a deposition from a 30(b)(6) witness, because we

cannot yet know whether or not issues have been sufficiently established by documentary proof from Brown or elsewhere. Indeed, after we take Mr. Tilton's deposition as a 30(b)(1) witness, we may conclude that we do not even need a 30(b)(6) witness from Brown. If we later do conclude that we need to notice 30(b)(6) witness from Brown, and if so, on what topics, and you conclude that he is the proper designee on one or more of those topics, we will definitely work together with you in good faith to "determine the appropriate number of hours" as set forth in the governing order (ECF 273).

As to next steps, your letter states, "should Plaintiffs now want to specifically discuss Request No. 22, we are amenable to having that discussion to see if we can reach an agreement with respect to it." Pursuant to the Court's statement that parties should not negotiate interminably "over the shape of the table" before bringing matters to the Court for resolution (12/21/23 Transcript at 14:3-4), Plaintiffs actually do not want to "discuss" RFP 22 further, as the March 17 letter once again made it clear that Brown will continue to defy multiple Court rulings and also in effect play "bait and switch" after a global agreement had been reached on search terms as to RFP 22.

As a matter of courtesy, however, I would be happy to chat with you tomorrow morning. Please let me know if you are available for a call at 10, 10:30 or 11am ET tomorrow. Thank you.

Best regards,

Bob

Robert D. Gilbert
Managing Partner
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
rgilbert@gilbertlitigators.com
646-448-5269 work
203-645-0055 cell
www.gilbertlitigators.com

---

**From:** Roellke, Jon R.
**Sent:** Friday, March 17, 2023 5:47 PM
**To:** Robert Gilbert
**Cc:** 568 Litigation; 568_litigation@gilbertlitigators.com; Carbone_Defs_Service@listserv.whitecase.com
**Subject:** RE: Deposition of Jim Tilton

Bob:  Please see the enclosed correspondence in response to your email below.   Thank you.   My best, Jon

**Jon R. Roellke**
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW | Washington, DC 20004-2541
Direct: +1.202.739.5754 | Main: +1.202.739.3000 | Fax: +1.202.739.3001
jon.roellke@morganlewis.com | www.morganlewis.com
Assistant: Tanisha M. Greene | +1.202.739.5181 | tanisha.greene@morganlewis.com

---

**From:** Robert Gilbert <rgilbert@gilbertlitigators.com>
**Sent:** Wednesday, March 15, 2023 3:14 PM
**To:** Roellke, Jon R. <jon.roellke@morganlewis.com>
**Cc:** 568 Litigation <568_Litigation@fnf.law>; 568_litigation@gilbertlitigators.com;

Carbone_Defs_Service@listserv.whitecase.com
**Subject:** FW: Deposition of Jim Tilton

[EXTERNAL EMAIL]
Dear Jon,
This follows up on our prior email exchanges regarding the deposition of James Tilton on April 18. Plaintiffs will not be in a position to serve a 30(b)(6) deposition notice on Brown University before mid-April; the deposition of Mr. Tilton will be as a percipient witness.
I am informed that by March 3, the Court-ordered deadline for "substantial completion" of document production, Brown had produced 16,235 documents. Please confirm that this represents "substantial completion" of Brown's document production, so that we can prepare for Mr. Tilton's deposition properly.
As you know, pursuant to the colloquy with the Court on February 8, a significant focus of the Tilton deposition will be issues concerning wealth favoritism and donor-related applicants. In this regard, I have been informed by associate attorneys who have been reviewing the Brown document production that it appears that Brown has not produced any donor-related applicant or donor-related admittee documents. This is disappointing.
The Court has made clear to Defendants on multiple occasions that Defendants need to provide these to Plaintiffs in a timely manner.  On September 8, 2022, the Court ruled that "Substantial completion of Document Production in Response to RFPs Served on or Before September 19, 2022" was due March 3. 2023." [Case Management Order, Dkt. 195 at 13]
Subsequently, the Defendants tried to argue these donor-related applicant records should be shielded from production, but the Court explicitly rejected this argument on October 26, 2022 and ruled these documents must be produced in accordance with all the other forms of discovery:
"I don't think a donor's name constitutes whatever the lingo is, a student record, under FERPA. I mean, I think I've said that about four times now. Jane Jones gave $10,000 on such-and-such a date to such-and-such university, that's not a student record. I mean, that's about as close to a no-brainer as anything we can get to in here. So that's a ruling. That's the judge talking. Those are called rulings."
10/26/22 Transcript at 34.  Just like all other discovery, production was supposed to have been substantially completed by Defendants on this issue by March 3, 2023.
The Court further expanded on this point on October 26:
"So the whole case -- maybe not the whole case, but a significant part of the case is exactly this, the contention that admissions are tied to donations, or at least that's a significant part of the case. And so unless there's going to be an opinion that basically says, well, the kind of thing I just said is not going to happen, that basically says the plaintiffs can't get that, therefore, the case is over, then we have to come up with a way of doing that.
. . .

[I] thought that's what we talked about for the first 40 minutes of this discussion, was a way of doing that, that you'd put in some sort of a code for the names of each one of those people which would allow somebody to say, okay, this is a donation record that relates to this student over here and so we can determine whether that had any effect on whether that person got admitted or not."

10/26/22 Transcript at 36-37.

Most recently, in a colloquy about wealth favoritism and donor-related applicants, the Court made a clear ruling yet again concerning the need for these documents before the depositions, and that, if the documents were not produced in a timely way, the witness would be ordered to appear again after the documents had been produced:
 "So, I mean, unless you were willing to say, okay, so if -- I tell Gilbert, okay, Gilbert, you got to go take these six depositions, just do it with what you've got right now. Unless you're willing to say, on the defense side, if we get any "I don't knows" out of those depositions, then I'm going to let them go back and get the documents and then make the person appear again to answer the questions they didn't remember the first time."
2/8/23 Transcript at 49.  Here, the Court clearly states production of these documents must occur and any failure will just create the need for more depositions.
These donor-related applicant records are a necessary component of this discovery and this issue is time sensitive given the deposition schedule. Six months ago, on September 19, 2022, the Plaintiffs made it remarkably easy for the Defendants to retrieve some of these documents. Plaintiffs produced a list of 623 names in Appendix 1 (bearing on RFP 22 in the First Set of Requests for Production of Documents to All Defendants) where the Plaintiffs went so far as to provide the Defendants with the names of substantial donors, and the class years of admitted children of each of the listed substantial donors. Thirty five parents' names, together with the related children's year of admission, were provided to Brown on the proverbial silver platter. Yet, I am informed that not one document produced by Brown contains any donor-related records for these individuals.  Out of 16,235 documents produced by Brown, only one contains any of the 35 parent names and it has no donation information whatsoever.  Instead, while it contains some of the names, the document is just a spreadsheet containing the acceptance status of the students in question (mixed in with a large mass of other students on the spreadsheet), with a column for identification of their parents and other parents and absolutely no information of any kind about the amount of the donation or any communications about that donation.  Obviously, this is not a good faith effort to produce donor-related applicant records for these 35 individuals, and it fails to comport in any way with the Court's repeated rulings.
The Defendants' continued flouting of the Court's directions leave the Plaintiffs prejudiced for deposition preparation. We will have no choice but to file the appropriate motion if this is not resolved promptly.  Please rectify this oversight by COB Friday March 17, or we will need to take appropriate action to see that Brown complies with the Court's orders and rulings.  Thank you.
Best,
Bob
Robert D. Gilbert
Managing Partner
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
rgilbert@gilbertlitigators.com
646-448-5269 work
203-645-0055 cell
www.gilbertlitigators.com

# Morgan Lewis

**Jon R. Roellke**
+1.202.739.5754
jon.roellke@morganlewis.com

**By Email**

March 17, 2023

Robert D. Gilbert, Esq.
Managing Partner
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
rgilbert@gilbertlitigators.com

Re:    *Henry et al. v. Brown University et al.*, N.D. Ill. No. 22-cv-00125

Dear Bob,

Thank you for your email of March 15, 2023. I am writing in response on behalf of Brown.

As of March 3, 2023, subject to its responses and objections and consistent with our meet and confers, Brown produced all non-privileged documents responsive to the requests served before September 19, 2022, with the sole exception of those that require special redaction to ensure compliance with the Family Educational Rights and Privacy Act ("FERPA"). Redacting those documents to ensure strict compliance with FERPA has been time-consuming and is ongoing. We will produce those documents on a rolling basis as that process is completed, including the productions that Brown made today. We expect to complete our production of such materials between now and the end of the month.

Your email references the absence of "donor-related applicant or donor-related admittee documents." As noted above, to the extent that any such documents that Brown has agreed to produce reflect information covered by FERPA, the production of those documents is underway as we complete the redaction process, including documents responsive to certain of Plaintiffs' requests for various materials reflecting communications between or among the Office of the President, Alumni Relations Office, Development Office, or Admissions Office concerning an applicant's family income, wealth, zip code, or actual or anticipated donations.

Your email specifically refers to Request for Production No. 22 and the accompanying Appendix 1 from Plaintiffs' First Set of Requests for Production. Brown objected to this request on numerous grounds and clearly stated that it would not produce documents in response to the request (except to the extent that such documents were responsive to other requests to which Brown did not object or agreed to produce, such as Request No. 130, for example). After serving our objections, we met and conferred with Plaintiffs' counsel and those sessions did not

Robert D. Gilbert, Esq.
March 17, 2023 | Page 2

include any discussion of Brown's position with respect to Request No. 22. And we are not aware of any separate discussions with other defendants who we understand asserted similar objections to Request No. 22 in which objecting defendants agreed to produce such materials.

  Now that Brown has nearly completed its collection, review and production of documents in response to the First Set of Document Requests, the Plaintiffs' attempt to now address Brown's objections to a specific request as to which Brown made its position clear is untimely, prejudicial, and inefficient in that it seeks to impose additional costs that could have been avoided had those objections been addressed in the prior meet and confers. Nonetheless, should Plaintiffs now want to specifically discuss Request No. 22, we are amenable to having that discussion to see if we can reach an agreement with respect to it. We hope and expect, however, that any such discussions would bear in mind the following: First, there is no demonstrable need for the extensive and largely cumulative and duplicative donor-related discovery from Brown that is the subject of Request No. 22. That discovery is relevant only to whether the 568 exemption applies and, as you know, Brown does not assert the exemption as a defense. And to the extent that such discovery is relevant to the availability of the exemption defense asserted by other defendants, Brown has already produced Mr. Tilton's May 23, 2012 letter by which Brown stated that it would no longer participate in the 568 Presidents Group specifically because Brown practiced need-aware admissions with respect to a small number of transfer student applicants. *See* Brown_0000000439 ("Brown does not admit all U.S. citizens to our undergraduate programs without regard to family financial circumstances in the cases of transfer students. A very small number of students are subject to a need sensitive analysis . . . .").

  We note also that Brown has produced other materials reflecting that its admission policies and practices as to transfer students have long been publicly known. Given that Plaintiffs assert that such evidence is dispositive of whether the exemption applies—even if Brown were asserting the exemption defense, and even if the discovery was relevant to the availability of the defense to other defendants—the additional discovery sought by Request No. 22 is plainly overbroad, duplicative, cumulative, and wholly unnecessary, especially in light of Brown's agreement to produce other materials that reflect "donor-related" communications. Moreover, Brown has agreed to promptly make Mr. Tilton available for deposition, and any such issues may be explored with him in a far more efficient and much less burdensome way than the collection and review of additional materials that may be responsive to Request No. 22.

  Finally, we do not understand why Plaintiffs are unable to provide a 30(b)(6) notice to Brown in advance of Mr. Tilton's deposition, which we have tentatively scheduled for a date in April, more than a month from now. As I have explained, we think it likely that Mr. Tilton will be Brown's designee on at least some of the topics as to which Plaintiffs will seek 30(b)(6) testimony. The Order Regarding Limitations on Number and Length of Non-Expert Depositions (ECF No. 273) requires that where, as here, a witness will be deposed in both his personal capacity and as a corporate designee, we work together in good faith to "determine the appropriate number of deposition hours for each such witness." Providing Brown with a 30(b)(6) notice in advance of Mr. Tilton's deposition is essential to discharging that obligation in

Robert D. Gilbert, Esq.
March 17, 2023 | Page 3

these circumstances.  Please let us know by March 22 whether Plaintiffs will serve their 30(b)(6) notice on Brown in advance of Mr. Tilton's deposition and, if so, when we can expect service of that notice.

                                                                                         Sincerely,

                                                                                      */s/ Jon R. Roellke*