# EXHIBIT 1

| | |
|---|---|
| **From:** | Andrew Ellington <aellington@gilbertlitigators.com> |
| **Sent:** | Wednesday, April 5, 2023 11:32 AM |
| **To:** | Rubin, Michael A.; La Voy, Tommy |
| **Cc:** | Robert Gilbert; 568_litigation@gilbertlitigators.com; 568 Litigation |
| **Subject:** | University of Chicago: Plaintiffs' Motion to Compel |

<span style="color:red;border:1px solid red;">External E-mail</span>

Michael,

We respond to your email with our in-line responses in ALL CAPS below.

Sincerely,


Andrew S. Ellington

Associate

Gilbert Litigators & Counselors, P.C.

Cell: 917.326.1842

aellington@gilbertlitigators.com

www.gilbertlitigators.com


---------- Forwarded message ---------
From: **Rubin, Michael A.** <Michael.Rubin@arnoldporter.com>
Date: Mon, Apr 3, 2023 at 10:50 PM
Subject: RE: Letter to R. Gilbert: Plaintiffs' Motion to Compel
To: Andrew Ellington <aellington@gilbertlitigators.com>
Cc: La Voy, Tommy <Tommy.LaVoy@arnoldporter.com>, 568_litigation@gilbertlitigators.com <568_litigation@gilbertlitigators.com>, 568 Litigation <568_Litigation@fnf.law>, Robert Gilbert <rgilbert@gilbertlitigators.com>


Dear Andrew


We respond to your email from Sunday with our in-line responses in red, and have indicated in redline to the seventh paragraph of your Sunday email the correction that you note in your email immediately below. Please let us know if that is not what you intended by your correction to your Sunday email.

We look forward to prompt confirmation tomorrow that Plaintiffs are withdrawing their motion to compel as to UChicago.

Best regards,

Mike

_____

Michael Rubin
Counsel | Bio

## Arnold&Porter

601 Massachusetts Ave., NW
Washington, DC 20001-3743
T: +1 202.942.6171
Michael.Rubin@arnoldporter.com
www.arnoldporter.com | LinkedIn | Twitter

**From:** Andrew Ellington <aellington@gilbertlitigators.com>
**Sent:** Monday, April 3, 2023 5:34 PM
**To:** Rubin, Michael A. <Michael.Rubin@arnoldporter.com>; La Voy, Tommy <Tommy.LaVoy@arnoldporter.com>
**Subject:** Re: Letter to R. Gilbert: Plaintiffs' Motion to Compel

External E-mail

Michael and Tommy,

I noticed there is a typo in the earlier email I sent yesterday. RFP 127 is listed twice, and RFP 132 is not listed at all. In the seventh paragraph where the list reads "RFPs 63, 88, 116, 117 and 127", that 127 should have been RFP 132. Please accept my apology for the error.

Sincerely,

Andrew S. Ellington

2

Associate

Gilbert Litigators & Counselors, P.C.

Cell: 917.326.1842

aellington@gilbertlitigators.com

www.gilbertlitigators.com

On Sun, Apr 2, 2023 at 10:52 AM Andrew Ellington <aellington@gilbertlitigators.com> wrote:

Michael and Tommy,

**YOU NO DOUBT RECALL THAT ON DECEMBER 1ST YOU MADE DEMONSTRABLY FALSE STATEMENTS IN WRITING - WHICH WERE CONTRADICTED BY YOUR OWN EMAILS - IN AN EFFORT TO CREATE A MISLEADING RECORD SHORTLY BEFORE A JOINT STATUS REPORT WAS FILED. ROBERT D. GILBERT, ESQ.'S DECEMBER 2ND EMAIL DEMONSTRATED THESE INACCURACIES INVOLVING SUCH TOPICS AS DISCUSSIONS ON THE TEMPORAL SCOPE AND POST-2014 SEARCHES. YOUR RESPONSES BELOW APPEAR TO BE LARGELY A REPETITION OF THAT PATTERN SEEKING TO CREATE A MISLEADING RECORD SHORTLY BEFORE A JOINT STATUS REPORT IS FILED. PLAINTIFFS RESERVE THE RIGHT TO SEEK SANCTIONS AGAINST THE UNIVERSITY OF CHICAGO. WE ALSO HAVE FOUND YOUR IMMEDIATELY ANTAGONISTIC APPROACH AT MEET AND CONFERS, WHICH IS DISTINCTIVE AMONG THE DEFENDANTS, TO BE COUNTER-PRODUCTIVE.**

We are disappointed that our Meet and Confer on March 30, 2023 did not produce agreement permitting Plaintiffs to withdraw their Motion to Compel as to Chicago. We remain hopeful that in response to this email, you will agree to several items that will permit us to withdraw the MTC as to Chicago. At least we clarified in Thursday's M&C what Chicago has produced and will be producing.

We note our Motion to Compel might have been avoided (at least in part) as to Chicago had Chicago, rather than waiting until we filed the MTC and you wrote to us on March 25, 2023, provided a response to Robert Gilbert, Esq.'s February 28, 2023 email concerning the RFPs. Instead, Chicago did not dissociate itself from Sarah F. Kirkpatrick, Esq.'s March 2 email stating Defendants were standing on their original written refusals to produce documents. The Motion also might have been avoided (at least in part) as to Chicago had Chicago met the Court-ordered date for substantial completion of production of March 3, 2023.

We have a fundamental disagreement as to the number of Meet and Confers Local Rule 37.2 requires. By our count, we previously had 6 Global Meet and Confers on Plaintiffs' RFPs, 4 Meet and Confers on Search Terms, and 3 Meet and Confers with Chicago alone. With Thursday's Meet and Confer with Chicago, that totals 14 Meet and Confers. **YOU DO NOT DENY THERE HAVE BEEN 14 MEET AND CONFERS.** Court made it quite clear that the parties should not Meet and Confer endlessly: **THIS IS ANOTHER EXAMPLE WHERE YOU NOT TAKEN THE COURT'S STATEMENTS SERIOUSLY.** We strongly agree that discovery negotiations need to get finished. **THIS IS A GOOD EXAMPLE OF YOUR TURNING VIRTUALLY EVERY STATEMENT UPSIDE DOWN.** In most of the meet & confers you cite, we have engaged about RFPs the plaintiffs were required to withdraw or which are not yet due. In addition, plaintiffs have continually

3

moved the goal posts by raising issues for the first time months into the process or by changing positions in the process.  But putting all of this aside, we remain committed to the discovery process.  If plaintiffs have particular disputes, Local Rule 37.2 requires that you confer with us about those before filing a motion and creating unnecessary chaos in an already complex process.  That requirement is without regard to how many other conferences we may have had.

**12/21/22 Transcript:**  We've got to get done with all of this stuff. Here's why it's in your interest to do that. I set the discovery schedule, and I'm pretty sure I told you at the time that's the discovery schedule. And if it takes you, you know, 24 months to get -- you know, to negotiate over the shape of the table and that leaves you a month and a half to do, you know, 250 depositions, then you're going to have a real busy month and a half, just to put it in stark terms. Tr. at 12-13.

 **2/23/23 Transcript:**  We've got to -- there's a deadline that's in place; it's less than two weeks from now. In fact, it's only barely more than a week from now regarding substantial completion of production, and to some extent, we're still talking about the shape of the table here, and that's not a good thing, and so we are going to talk about these things today. And if that means that -- you know, that you're not going to have, you know, three more four-hour meet and confers with the other side, then, okay, we're just putting the fast-forward button on. Tr. at 7.  **WE NOTE THAT YOU ONCE AGAIN CHOOSE TO IGNORE THE RULINGS BY THE COURT ON DECEMBER 21, 2022 AND FEBRUARY 23, 2023.**

We also have a fundamental disagreement on Defendants' need to produce documents from the President's and Development Office on a "go-get" basis.  While the Defendants are not required to identify and produce documents from custodians in the President's and Development Offices, that does not preclude production of documents from non-custodial sources within those offices and elsewhere.  As you know, under the Federal Rules, Defendants have an independent obligation to produce responsive documents beyond simply applying search terms to custodians.  **Please advise whether Chicago maintains the position that it will not search and produce documents from non-custodial sources within the President's and Development Offices with respect to this category of RFPs.  Plaintiffs need confirmation that the parties reserve their rights as to this issue, with Plaintiffs' position being that Chicago must search for documents in those offices.**

This issue regarding discovery from President's and Development Offices was not raised by Plaintiffs during our meet and confer on Thursday, nor has it been raised with us in any other conference since the Court's order on discovery from President's and Development Offices. **AS YOU KNOW, THIS WAS RAISED.  ROBERT D. GILBERT, ESQ. EXPRESSLY RAISED THIS POINT, POINTED OUT THERE HAS BEEN AN IMPASSE FOR SOME TIME ON THIS ISSUE AND WE AGREED TO DISAGREE.**

In addition, your email does not accurately reflect our discussions on Thursday concerning the RFPs that Plaintiffs characterize as "go gets."  As we stated during our discussion on Thursday, our productions include substantial responsive documents to what you refer to as "go-get" RFPs.  Moreover, as you know we are in the process of completing FERPA and other PII redactions for additional responsive documents that will be produced shortly.  **AS TO "COMPLETING FERPA AND OTHER PII REDACTIONS", UNIVERSITY OF CHICAGO HAS BEEN IN VIOLATION OF A COURT ORDER EVERY DAY FOR THE PAST FOUR WEEKS SINCE MARCH 6.  YOU WILL RECALL THAT THE COURT EXTENDED AN INITIAL ORDER OF FEBRUARY 26 UNTIL MARCH 6 AND THE COURT EXPRESSLY REJECTED THE DEFENDANTS' REQUEST FOR AN EXTENSION FOR ONE ADDITIONAL WEEK TO MARCH 13.**

Finally, we strongly disagree with Chicago's refusal to run the search terms for several RFPs, even though there have been global agreements on these search terms and Chicago was given an opportunity to explain exceptional individual circumstances, which you did not.  We will discuss **RFPs 54 and 83** in the following section, but **RFPs 63, 88, 116, 117 and** ~~127~~ **[132 – as corrected in email by A. Ellington, April 3, 2023 at 5:34 p.m. ET]** were not discussed in your letter, and we were disheartened to hear you would not agree to run the search terms for these RFPs during our Meet and Confer.  This is clearly unacceptable and we are at an impasse on these RFPs until an agreement can be reached regarding increased efforts to discover and produce these documents.  **Please update us if you have reconsidered running the search terms for these RFPs.**

Your email mischaracterizes our meet and confers concerning search terms. The parties engaged collectively to come up with an agreed-to set of search terms before there was any agreement as to which RFPs Defendants would be responding to (and before Plaintiffs' RFPs were limited by the Court). The search term discussions were prefaced on the understanding that agreeing to search terms would not override each Defendant's responses and objections; rather, the parties engaged in parallel processes to expedite their work instead of first resolving the RFP objections and then working on search terms. UChicago engaged in that process in good faith and continues to believe it expedited the discovery process.

At the end of the search term negotiations, the parties agreed that each Defendant would identify any search strings that were bringing back disproportionate document hits for that Defendant so that that the parties could discuss Defendant-specific modifications to the search strings. That related to specific search strings Defendants were running; there was no understanding that Defendants would have to restate objections to specific RFPs. Indeed, Defendants reiterated at the end of the search term negotiations that the agreed RFP-specific search terms did not override Defendant-specific objections.

We address specific RFPs and their search strings below. **YOUR ISSUE SEEMS TO BE WITH THE GLOBALLY AGREED-UPON SEARCH TERMS.**

As to the specific RFPs which were addressed, we respond as follows:

**1. RFPS 22 and 130:** Chicago's response to this RFP in your letter was both inaccurate in its summation, and seemed to be conflating two separate RFPs. RFP 130, which does not warrant inclusion in this discussion, is not more reasonable and proportional than RFP 22. In Appendix 1 listing the targeted names for families of students of the Defendants, there were four entries of parents names for Chicago. That is only four families over which a search for documents related to donations and students would need to occur. That is very limited and targeted in scope. To say, in essence, that you are ignoring this very targeted RFP in the interest of being "reasonable and proportional" was not an intellectually defensible argument. Your response was also inaccurate in your restatement of the content of the Plaintiffs' motion. You claim the motion "erroneously asserts that UChicago did not run the global search terms proposed by Plaintiffs for RFP 22". The motion does not say that. The motion asserts that Defendants refuse to **produce** those targeted documents. Production of the documents is the key component, but our discussion during the Meet and Confer at least gives us optimism that documents responsive to RFP 22 will be forthcoming (approximately 4 weeks after the Court-ordered deadline), with your statements that searches were run, documents are being reviewed for redactions and documents will be produced shortly . **Please confirm when Plaintiffs should expect these additional documents to be produced after the March 3 substantial completion of production deadline.**

Chicago did not refuse to produce documents for which it searched.

As to RFP 22, we confirmed that UChicago ran RFP 22's search terms, produced responsive documents, and will continue to do so as our redaction effort continues. We anticipate making another production of redacted documents the week of April 10th and expect that production will include additional documents responsive to RFP 22 and numerous other RFPs discussed below.

As to RFP 130, we agree that there is no dispute as to RFP 130. It was discussed only because that was the RFP with the clearest articulation of a link between admissions and donations and renders duplicative many of Plaintiffs' other RFPs that are in dispute. UChicago's search for documents as to RFP 130 resulted in documents being produced that are responsive to many of the other RFPs in dispute, as discussed on Thursday and discussed further below.

Finally, your insinuation that UChicago did not meet the substantial completion deadline is incorrect. As you know, and as is inherent in the concept of "substantial completion," productions continue after that date, particularly for documents requiring redactions and other discrete search projects. UChicago is continuing to produce its remaining documents as are the plaintiffs. **WE NOTE YOUR ADMISSION THAT YOU ARE NOW SEVERAL WEEKS LATE AND DON'T**

INTEND TO PRODUCE THINGS UNTIL THE WEEK OF APRIL 10, WHICH IS MORE THAN FIVE WEEKS AFTER THE COURT-ORDERED DATE OF SUBSTANTIAL COMPLETION.

**2. RFP 16:** As you know, Bob Litan is the Plaintiffs' point person on structured data. He has advised us that he is currently satisfied with Chicago's production and cooperation regarding this RFP. **Please confirm you will continue production and the level of cooperation we have received thus far in relation to this RFP.**

We appreciate Mr. Litan's confirmation about UChicago's structured data production. UChicago has cooperated in good faith with Plaintiffs and will continue to do so. We are left to wonder what the basis, under Rule 37.2 or otherwise, was for the Plaintiffs motion with respect to UChicago's structured data. **WHILE WE DO NOTE THAT YOU HAVE BEEN RECENTLY COOPERATIVE, ACCORDING TO ROBERT LITAN, YOU ARE STILL MORE THAN FOUR WEEKS PAST A COURT-ORDERED DEADLINE. IF YOU WILL COMPLETE THIS PRODUCTION THIS WEEK, WE WILL WITHDRAW AS TO THIS RFP.**

**3. RFP 49, RFP 53 and RFP 150:** In your letter, Chicago states they are "continuing to assess the sufficiency" ... "will supplement" and "are continuing to produce". We appreciate this and also that during the Meet and Confer you said you are still working on this and that the current production should not be considered comprehensive. We also acknowledge the stated intent to rectify this by going to the client with targeted searches. We do have to remind you the deadline for substantial completion of production was March 3, approximately 4 weeks ago. The time for "assessing" has passed and if you are still "assessing", this just proves the necessity for the Motion to Compel that was served upon you regarding these RFPs. However, indications that productions will be received in the near future were encouraging. **Please expedite your assessments and let us know when you plan to finish supplementing production of documents responsive to these RFPs.**

We understand your request and we are expediting our assessment of our productions to date on these RFPs. We anticipate making further collections and productions, if necessary, over the next two weeks. **YOU ADMIT THAT YOU ARE MORE THAN FOUR WEEKS PAST THE COURT-ORDERED DEADLINE AND YOU DO NOT IDENTIFY WHEN YOU WILL COMPLETE THIS RESPONSE.**

**4. RFP 54:** Chicago claimed in their letter that Robert Gilbert's declaration "asserts that UChicago refused to conduct a search" for documents responsive to this RFP. That is *not true* and is without support in the text. For this RFP, Chicago was singled out because they "*initially* refused to produce" documents responsive to this RFP. But then in the Meet and Confer, you admitted that you did not run search terms for this RFP, notwithstanding a global agreement that Defendants would do so, and notwithstanding a failure to identify exceptional individualized circumstances. We are unclear why you claimed we said something we didn't, only for you to admit you didn't do the action in question during the Meet and Confer. We also do not accept your claim that RFP 54 is duplicative of other RFPs, which you failed to identify. Nevertheless, you did state you "will continue to produce" documents responsive to this RFP in your letter. This is appreciated but it is approximately 4 weeks past the March 3 deadline for substantial completion of production. The fact that these have not been produced yet also justifies the necessity for the Motion to Compel. **Please confirm when Plaintiffs should expect these additional documents to be produced after the March 3 substantial completion of production deadline.** However, the refusal to run search terms for this RFP is unacceptable and this RFP seems unlikely to be resolved until an agreement is reached on this issue. **Please update us if you have reconsidered running the search terms for this RFP.**

UChicago's initial RFP responses and objections in October 2022 identified RFP 54 as duplicative of other RFPs and stated that UChicago would produce responsive documents to RFP 54 as part of its responses to those other RFPs. The first time Plaintiffs have raised this issue with us was in their Motion to Compel. And our first discussion of it was during Thursday's meet and confer (notwithstanding that Plaintiffs told us at our prior meet and confer that there were no additional disputes with UChicago that needed to be discussed).

On Thursday, we explained that other duplicative search terms brought back over 3,000 documents that would have hit on RFP 54 search terms, *and* that UChicago has produced over 1,100 of those documents. **YOUR ISSUE SEEMS TO BE**

**WITH THE GLOBALLY AGREED-UPON SEARCH TERMS.** That is not surprising because RFP 54 asks about "policies, practices, and procedures relating to applications to your undergraduate programs and for Financial AID during the Relevant Time Period"—which is the general subject matter of most of Plaintiffs' RFPs. Plaintiffs do not explain why they believe that the over 1,100 documents in UChicago's production that hit on the requested search terms is not sufficient.

Now, in your email, for the first time, Plaintiffs have asked UChicago to run search terms for RFP 54. Plaintiffs did *not* make that request on Thursday. Nevertheless, in the interest of trying to reach a compromise, UChicago has now run the search terms against the universe of collected documents that did not hit on other search terms and identified additional 2,078 documents to be reviewed as uniquely hitting on the RFP 54 search terms. If Plaintiffs otherwise withdraw their motion to compel as to UChicago, UChicago agrees to review those documents in response to RFP 54 and produce non-privileged, responsive documents. **YOUR ISSUE AGAIN SEEMS TO BE WITH THE GLOBALLY AGREED-UPON SEARCH TERMS. WE ALSO DO NOT ACCEPT THAT IT IS DUPLICATIVE.**

**5. RFP 83**: At the time of our Meet and Confer, Plaintiffs were still giving consideration to Chicago's stated position on this RFP from their letter. We are able to give you a more complete response now. Our position is despite the date, some pre-1994 docs are relevant and discoverable in that they are relevant to the formation of the conspiracy at the heart of the case. These are the mental building blocks that underlie this entire case. However, there is more to this RFP than simply the lobbying of that Commission. Chicago went too far in ignoring that this RFP also asks for "the principle, policy, or goal that parents, Students, or families should be primarily responsible for bearing the cost of postsecondary education." This is the more significant clause of this RFP, which can be supported by the fact that the search terms for this RFP do not even mention the National Commission. It may well be that the work or documents of the National Commission on Responsibilities for Financing Postsecondary Education are material and responsive. In light of this, to comply with production for this RFP, Chicago must run the search terms that were agreed-upon and produce the results, which we will accept in a prompt future production. **Please update us if you have reconsidered running the search terms and expediting production of documents for this RFP.**

As you acknowledge, even at our meet and confer on Thursday, Plaintiffs were not able to articulate what they are seeking from RFP 83 despite having filed a motion to compel. **UNTRUE** Now, it appears from your email that Plaintiffs seek to rewrite RFP 83. (This is an example, by the way, of the moving goalposts for defendants in this discovery that is contrary to the Court's encouragement to bring the document discovery to conclusion.) By its very terms, RFP 83 falls outside the Plaintiffs' original temporal scope, something that Plaintiffs did not dispute on Thursday. On its face, responsive lobbying documents relate both to (i) the Commission that disbanded in 1993 "and" (ii) the stated principle for who should pay for higher education. Plaintiffs now seek to treat the RFP as if "and" had been "or." Plaintiffs are therefore propounding a new RFP, which Plaintiffs are of course free to serve and count against their seven remaining RFPs. That Plaintiffs' proposed search terms were broader than the RFP itself does not change what the RFP says. Nor does it change that UChicago never agreed to respond to the RFP that Plaintiffs served. And it does not change that Plaintiffs never raised for discussion UChicago's objection. **ONCE AGAIN YOUR ISSUE SEEMS TO BE WITH THE GLOBALLY AGREED-UPON SEARCH TERMS.** We note that the deadline for substantial completion of any new RFP (which Plaintiffs' proposed revision is) remains in the future. It is improper for Plaintiffs to condition withdrawing their motion to compel on UChicago agreeing to a re-write of the RFP. **AGAIN YOUR ISSUE SEEMS TO BE WITH THE GLOBALLY AGREED-UPON SEARCH TERMS.**

That said, in the interest of trying to find a compromise, UChicago ran the proposed, exceptionally broad search terms for RFP 83 against documents that have not been promoted for review, and they result in 108,215 additional documents for review. The search strings proposed for RFP 83 are vastly overbroad as they seek virtually any document that mentions "student" or "family" along with "cost," "tuition," and multiple other common terms. The proposed terms are in no way tailored to capture a narrow set of documents discussing the abstract principle that Plaintiffs now say is of interest to them. UChicago cannot reasonably agree to undertake a review of these materials on such a tangential, if at all relevant, issue. In line with the original RFP 83, we are running "National Commission on Responsibilities for Financing Postsecondary Education" across UChicago's collection and will let you know the results

7

(if any). **THE AGREEMENT ON THE GLOBALLY AGREED-UPON SEARCH TERMS IS ALREADY A COMPROMISE. NOW YOU ARE ATTEMPTING TO WATER DOWN AN ALREADY-AGREED-UPON COMPROMISE.**

**6. RFP 115:** While Plaintiffs acknowledge that Chicago complied with this request in the sense of running the agreed-upon search terms, we do not agree that Chicago "undisputedly" left the 568 Group and do not support this assertion. Indeed, as a matter of law, Chicago indisputably did not withdraw from the group and not only failed to disavow the Cartel, but actually praised the Cartel. Regardless of this assertion, we do appreciate that you ran the search terms for this and during our Meet and Confer agreed to produce these documents if found. **Please confirm that you will promptly produce any documents discovered that are responsive to this RFP, which is already approximately 4 weeks past due on the Court-ordered deadline and identify when you will complete production.**

UChicago will respond at an appropriate time to Plaintiffs' factual and legal misstatements concerning UChicago having ended its membership in the 568 Group and the legal implications of that. **ONCE AGAIN YOU IGNORE RULINGS BY THE COURT ON THIS SPECIFIC ISSUE ABOUT "WITHDRAWAL".**

We agreed to run the search terms and produce responsive documents but, as we have discussed, we have no reason to believe that responsive documents exist within UChicago's files or that any responsive documents have not already been produced.

**7. RFP 157:** Again, while we recognize that you have stated you will produce documents responsive to this RFP in your letter, and confirmed this during the Meet and Confer, it is approximately 4 weeks past the March 3 deadline for substantial completion of production. Again, the fact that these are continuing to be produced yet again justifies the necessity for the Motion to Compel **Please confirm when Plaintiffs should expect these additional documents to be produced after the March 3 substantial completion of production deadline, which is already approximately 4 weeks past due on the Court-ordered deadline and identify when you will complete production.**

As we explained on Thursday and you mischaracterize here, UChicago used the "will produce" language because certain rolling productions were continuing post-substantial completion—something that is always true in these types of cases and is true for Plaintiffs. We in particular identified the FERPA redaction process, as well as productions that will be made in response to discovery with later substantial completion dates, as why rolling productions continue. **YOU WERE ORDERED TO COMPLETE THIS BY MARCH 6 AND YOU HAVE BEEN IN VIOLATION EVERY DAY SINCE THEN.** We did not suggest that Plaintiffs should expect additional documents responsive specifically to RFP 157. To the extent UChicago had non-privileged documents responsive to RFP 157, we anticipate that they likely have been produced already because they have a low probability of requiring FERPA redactions.

**8. RFP 163:** We acknowledge that we were able to work past the ambiguity in your letter regarding government investigations and agree the scope for this RFP includes such things as lobbying the Department of Justice, the Department of Education, Congress and other government organizations. We appreciate that you have run the search terms and have agreed to produce documents responsive to this RFP both in your letter and during the Meet and Confer, even though it is approximately 4 weeks past the March 3 deadline for substantial completion of production. Again, the fact that these still may be unproduced yet again justifies the necessity for the Motion to Compel. **Please confirm when Plaintiffs should expect additional documents to be produced after the March 3 substantial completion of production deadline, which is already approximately 4 weeks past due on the Court-ordered deadline and identify when you will complete production.**

As discussed on Thursday, there was no ambiguity in our letter. **THERE WAS** Our letter merely highlighted the most likely scenario where responsive documents would exist **INACCURATE** and did so to explain that any absence of documents in UChicago's production related to this RFP does not mean that UChicago did not do a reasonable search. Your request for UChicago to confirm when "Plaintiffs should expect additional documents" is therefore counterfactual and misapprehends our discussion on Thursday. The bottom line as to RFP 163 is that UChicago ran the requested search terms and produced responsive documents, if any, and there is no basis for a dispute.

**9. RFP 2 to Second Set:** We do not dispute that the time for Chicago to produce documents has not yet expired.

We also discussed on Thursday that the same is true for all of the RFPs in the Second and Third Sets for which Plaintiffs filed a motion to compel as to UChicago. Plaintiffs did not dispute that their motion as to all RFPs in those two sets as to UChicago was premature and should be withdrawn.

We further note that Plaintiffs ended our meet and confer on Thursday before we could discuss any of the RFPs in the Second and Third Sets. **THE CHARACTERIZATION THAT THE PLAINTIFFS ENDED THE MEET AND CONFER BEFORE CHICAGO HAD AN OPPORTUNITY TO MAKE ALL DESIRED CLARIFICATIONS IS NOT ACCURATE.**

As to your comments on the Second and Third Sets of RFPs, when Penn has already stated its refusal to produce responsive documents to certain of these RFPs regarding these critical matters, the fact that documents responsive to these sets are not yet due to be produced is not a reasonable basis to attack Plaintiffs' Motion or arguments. Again, we note that search terms for RFPs 1 and 4 in the Second Set were globally negotiated and agreed upon on behalf of Defendants, thus evidencing that meet-and-confers did take place regarding the Second Set of RFPs. Again, we cannot understand your position that Penn will still not produce responsive documents on these RFPs, in particular RFPs 126, 127, 1 (Second Set) and 4 (Second Set) for all of which search terms were negotiated.

Chicago's letter did not address many of the RFPs raised by Plaintiffs' motion to compel. Your letter ignored entirely Plaintiffs' following 15 RFPs: 20, 23, 62, 63, 88, 98, 116, 117, 124, 126, 127, 128, 129, 131 and 132. Thank you for discussing these RFPs with us in Thursday's Meet and Confer. The following summarizes what we believe was told to us about the RFPs that have not been discussed earlier in this email:

As we explained, UChicago's letter focused on the RFPs highlighted in Plaintiffs' memorandum in support of their motion and in Mr. Gilbert's declaration. We explained on our call that subsequently, we reviewed the proposed order more closely and realized that Plaintiffs were also improperly seeking an order as to UChicago about additional RFPs. Thus, UChicago raised those additional RFPs on our Thursday meet and confer and explained why Plaintiffs' motion was both premature and without substantive merit as to each of those RFPs. We also attempted to raise additional RFPs from your Second and Third Sets that were found in the proposed order, but Plaintiffs ended the meet and confer before we could do so. **THIS IS A MISLEADING CHARACTERIZATION AGAIN.**

**RFPs 20, 23, 128, 129 and 131 -** These do not have search terms but we were told you were reviewing documents from your custodians and producing the responsive documents, and that other searches have yielded more documents and you are in the process of producing those. **Please confirm that for these RFPs that do not have direct search terms, Chicago undertook a diligent and adequate search to "go get" the responsive documents**. Also, please let us know if all such responsive documents have now been produced and, if not, when this production will be completed.

As we told you on Thursday, search terms for other RFPs have brought back substantial numbers of documents that are also responsive to each of these five RFPs. We explained that UChicago has produced as responsive many of those documents and will produce more in the next two weeks as the FERPA redactions process winds down. That UChicago has produced and is producing responsive documents confirms that its search has been reasonable.

Nevertheless, these five RFPs remain objectionable. Most critically, the Court held that Defendants are required to search only their existing Admissions and Financial Aid custodians and non-custodial sources in the first instance, as discussed above. **THIS WAS A SUBJECT ON WHICH WE AGREED TO DISAGREE.** Plaintiffs' request for confirmation that "all such responsive documents" will be produced overstates any entity's discovery obligations, but that is especially true here because the Court has already held that discovery on these topics should focus on documents in the Admissions Office until it is shown that such documents (combined with depositions of certain other Defendants) are insufficient.

**RFPS 62, 98, 124, 126 and 127 –** We were told you ran the search terms for these documents and appreciate the attempts to locate documents responsive to these RFPs. **Please confirm that you will produce any documents discovered that are responsive to this RFP. Also, please let us know if all such responsive documents have already been produced and, if not, when this production will be completed.**

We confirm that our intention has been to produce non-privileged documents, if any, that are responsive to RFPs 124, 126 and 127, and have confirmed that we have in fact produced responsive documents to those RFPs. And we confirmed that certain additional documents will likely be included in upcoming productions as FERPA redactions are completed over the next two weeks. We assume that Plaintiffs intended to include RFP 132 in this list as well. **WE WERE TOLD ON THURSDAY THAT RFP 132 WAS AMONG THE RFPS THAT CHICAGO DID NOT RUN SEARCH TERMS FOR, WHILE IT WAS INDICATED TO US THAT CHICAGO HAD RUN SEARCH TERMS FOR THE REST OF THIS GROUP. WHEN DO YOU PROPOSE TO COMPLETE THESE PRODUCTIONS?** We make the same confirmation as to RFP 132, as we indicated during our discussion on Thursday.

We cannot offer similar confirmations as to RFPs 62 and 98. RFP 62 seeks documents about UChicago's admissions and financial aid policies for "non-traditional, full-time, degree-seeking undergraduate" programs. UChicago does not have that type of program. And Plaintiffs have not identified any such program at UChicago. RFP 98 is even more disconnected from UChicago as it relates to work performed *for Dartmouth* by a single, specific Dartmouth employee who has no connection to UChicago.

As we have explained, our expectation is that for these two RFPs, UChicago does not have responsive documents because they are substantively not directed at UChicago, a point that was a basis for our original objections in October 2022 and to which Plaintiffs never raised any concerns before filing their motion to compel. Indeed, Plaintiffs ended our last meet and confer prior to Thursday by stating they had nothing further to discuss with UChicago. Even on Thursday, Plaintiffs offered no reason *UChicago* should respond to these RFPs. And you do not do so in your email.

Nevertheless, as to RFP 62, the proposed search strings for RFP 62 resulted in 482 documents being loaded for review with 105 of them produced to date (although we expect that those are all false positives produced for other reasons). As to RFP 98 and work performed by Jeff Sassorossi for Dartmouth, that is even more clearly not related at all to UChicago, as evidenced by the lack of hits when the proposed search terms were run among our reviewed documents. There is no reason for UChicago to devote additional resources to searching for responsive documents to these two RFPs when there is no basis to believe any exist.

Also, we acknowledge that we did receive a new production of documents from Chicago on Friday afternoon. We have not had an opportunity to review these documents at the time of this letter and can not speak to their impact on any of the items we have mentioned earlier in this email, but we look forward to reviewing this production in the near future.

Additionally, there was one outstanding issue from earlier Meet and Confers that we discussed during Thursday's Meet and Confer. James Nixdorf was identified as a custodian but was not included in Chicago's initial disclosures. You suggested that you planned to amend the initial disclosures earlier but have not yet done so. **Please update us on your plans regarding your initial disclosures in respect to James Nandorf being identified as a custodian.**

We noted on Thursday that Mr. Nondorf appears on Plaintiffs' initial disclosures. We further note that UChicago's initial disclosures specifically disclose "any individual identified . . . in Plaintiffs' . . . Initial Disclosures." That said, UChicago supplemented its initial disclosures today to expressly identify Mr. Nondorf.

While Plaintiffs do not excuse Chicago's failure to certify substantial completion of production by the Court's deadline, we require a representation when Chicago will achieve substantial completion for Plaintiffs' First Set of RFPs, including all items above. **Please also apprise us when Plaintiffs can expect production of all responsive documents that Chicago has not yet produced.**

As we told you on Thursday and have stated above, UChicago substantially completed its production by March 3. UChicago anticipates making another rolling production the week of April 10th. We anticipate further rolling productions, including for documents responsive to Plaintiffs' Second and Third Sets of Requests, post-complaint discovery, and other documents that we identify as part of our continuing discovery and QC work. **WE NOTE THAT YOU DID NOT ANSWER THE QUESTION AS TO THE FIRST SET OF RFPS.**

If you will respond affirmatively, promptly and in writing to the bold points above, we will withdraw the Motion to Compel as to Chicago with respect to those RFPs where we have reached agreement. After we have had an opportunity to review your response to this email, we will confirm the remaining scope of Plaintiffs' Motion to Compel as to Chicago.

Plaintiffs should withdraw their motion in its entirety for violation of Local Rule 37.2. If, after the parties have completed a proper meet and confer process, something remains outstanding, Plaintiffs can reserve their rights to file a proper motion to compel. That said, we believe that UChicago has addressed reasonably and adequately each of Plaintiffs' concerns and Plaintiffs should therefore withdraw their motion as to UChicago. **PLAINTIFFS RESERVE THEIR RIGHTS AGAINST THE UNIVERSITY OF CHICAGO TO SEEK SANCTIONS IN LIGHT OF ALL OF THE ABOVE.**

Plaintiffs have one additional issue which we did not have an opportunity to discuss on the Meet and Confer call. **While it is not a condition of our withdrawing any portion of the MTC as to Chicago**, please note that of the Chicago documents Plaintiffs have received and uploaded to date, 6% have AEO designations. Given the strictly defined standard for AEO in this case, and the fact that this is a higher percentage than for many of the other defendants, your designation of AEO is excessive. We do not believe it is Plaintiffs' burden to call out each instance where Chicago appears not to have designated documents correctly. If Chicago does not agree to remedy this clear over-classification by close of business on April 7, 2023, we will need to address this matter with the Court.

Plaintiffs have identified no documents of particular concern with respect to UChicago's narrow use of the AEO designation as the Confidentiality Order requires. That being said, as part of our normal quality check work streams, we produced today an overlay production for certain already-produced documents that change the confidentiality designation for certain documents. We expect that as the case continues, we will continue to review documents for adjustments with respect to our confidentiality and privilege designations as is customary in litigation of this complexity. In the interim, because Plaintiffs have received the AEO documents, they are not prejudiced by any erroneous designations and can notify us informally or use the Confidentiality Order process to seek changes in those designations as they think appropriate. **WE HAVE PREVIOUSLY EXPLAINED WHY WE ARE PREJUDICED ON THIS ISSUE AND UNIVERSITY OF CHICAGO IS ONE OF THE NOTABLE OFFENDERS ON THIS ISSUE.**

Sincerely,


Andrew S Ellington

Associate

Gilbert Litigators & Counselors, P.C.

Cell: 917.326.1842

aellington@gilbertlitigators.com

www.gilbertlitigators.com

On Sat, Mar 25, 2023 at 7:42 AM Rubin, Michael A. <Michael.Rubin@arnoldporter.com> wrote:

> Bob
>
> Attached please find a letter on behalf of UChicago concerning Plaintiffs' motion to compel.
>
> Best regards,
>
> Mike
>
> _____
> Michael Rubin
> Counsel | Bio
>
> Arnold & Porter
> 601 Massachusetts Ave., NW
> Washington, DC 20001-3743
> T: +1 202.942.6171
> Michael.Rubin@arnoldporter.com
> www.arnoldporter.com | LinkedIn | Twitter
>
> _____
> This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distr bution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.
> _____
> For more information about Arnold & Porter, click here:
> http://www.arnoldporter.com

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter, click here:
http://www.arnoldporter.com

# Arnold & Porter

**Michael A. Rubin**
+1 202.942.6171 Direct
Michael.Rubin@arnoldporter.com

March 25, 2023

<u>**VIA E-MAIL**</u>

Robert D. Gilbert, Esq.
Managing Partner
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
rgilbert@gilbertlitigators.com

      Re:    Henry et al. v. Brown University et al., N.D. Ill. No. 22-cv-00125

Dear Bob:

I write on behalf of the University of Chicago ("UChicago") in connection with the motion to compel Plaintiffs filed on March 21, 2023. Plaintiffs did not confer with UChicago about the particular subjects of the motion before filing and accordingly the motion papers materially misrepresent the facts as to UChicago's search, review, and production.

First, UChicago, like all Defendants and all Plaintiffs, is continuing to make rolling productions, particularly of documents requiring redactions. Much of your motion focuses on documents related to so-called wealth preference as to the admission of specific applicants/students. As you know, UChicago must comply with the requirements of FERPA and other requirements set out in the Court's orders in this matter, which necessitate extensive redactions. In addition to documents and data already produced, UChicago will make a substantial further production of FERPA-redacted documents next week. Your assertion that UChicago has not searched for responsive documents, to the extent they exist, is therefore both premature and incorrect. If, after our production of redacted FERPA-related documents, Plaintiffs still have questions, we will confer with you regarding those concerns.

Second, Plaintiffs' motion covers documents responsive to Plaintiffs' Second and Third Sets of RFPs about which there has been no meet and confer with UChicago about UChicago's specific responses. The Court set July 31, 2023 as the date for substantial

# Arnold&Porter

Robert D. Gilbert, Esq.
March 25, 2023
Page 2

completion of production of documents responsive to those sets of RFPs. We are, again, available to confer regarding our responses to those sets of RFPs and we intend to meet the deadlines set by the Court with regard to those requests. In any event, as noted below with respect to your motion particular to UChicago concerning these RFPs, UChicago has already produced, and will continue to produce, responsive documents.

With regard to more particular issues:

- **RFPs 22 and 130:** UChicago's RFP objections and responses made clear that we agreed to conduct a reasonable search for documents regarding the alleged connection between donors and admissions in response to RFP 130, which is the RFP that most clearly focused on a connection with admissions. UChicago is undertaking a reasonable and proportional search, as guided by the Court's orders for responsive documents related to Plaintiffs' alleged connection between donations and admissions. As to RFP 22 specifically, Plaintiffs' motion erroneously asserts that UChicago did not run the global search terms proposed by Plaintiffs for RFP 22. UChicago in fact *did* run those search terms notwithstanding its objections to this RFP. As a result, there should be no dispute with UChicago as to documents related to so-called wealth favoritism admissions processes or RFP 22 in particular.

- **RFP 16:** Information sought in RFP 16 is included in UChicago's structured data productions, notwithstanding UChicago's objection. Plaintiffs have not indicated that these data are insufficient for their purposes and have not engaged in any meet and confer process.

- **RFP 49, RFP 53 and RFP 150**: We previously informed Plaintiffs that UChicago intended to perform targeted, non-custodial collections for endowment-related materials and financial-type documents. In addition, UChicago ran the endowment-related search terms for RFP 150. UChicago's productions to date include information about its endowment and other financial-type documents. We are continuing to assess the sufficiency of those existing materials and will supplement with additional targeted collections to fill gaps that we may identify, as we told Plaintiffs we would do. Moreover, UChicago publishes detailed information about its finances and its endowment annually back to 2007 on its website. We will be available to confer if you believe the material we have produced and are continuing to produce, along with the material that is publicly available, is not sufficient.

2

# Arnold&Porter

Robert D. Gilbert, Esq.
March 25, 2023
Page 3

- **RFP 54**:  Your declaration asserts that UChicago refused to conduct a search for documents responsive to this RFP.  Again, that is not true.  UChicago noted that this RFP was duplicative of other RFPs to which UChicago would be responding and that it would respond to RFP 54 by producing documents responsive to the numerous other RFPs to which RFP 54 is duplicative.  UChicago has produced, and will continue to produce, materials responsive to RFP 54.

- **RFP 83**:  Plaintiffs' motion mischaracterizes RFP 83 as somehow related to lobbying concerning the extension of the 568 Exemption.  That describes RFP 142, in response to which UChicago undertook due diligence and confirmed in its written response that it has no responsive documents because it did not engage in any such lobbying—which makes sense since UChicago has not relied on that exemption since 2014.  In contrast, RFP 83 seeks documents relating to lobbying the "National Commission on Responsibilities for Financing Postsecondary Education" concerning the principle that families should be "primarily responsible for bearing the cost of postsecondary education."  This commission issued its final report in 1993 and was thereafter disbanded.  *See* https://www.archives.gov/files/records-mgmt/rcs/schedules/independent-agencies/rg-0220/n1-220-93-007_sf115.pdf ("The Commission released its Final Report to the President and U.S. Congress on February 3, 1993.").  The original temporal scope for Plaintiffs' RFPs was 1994, which puts this subject outside of even the broadest possible time period relevant to this case, let alone the subsequent modifications to 1998 and 2003.  Plaintiffs' complaints about RFP 83 therefore do not appear well-founded.  In all events, Plaintiffs have not raised UChicago's objections to RFP 83 during any meet and confer.

- **RFP 115**:  This RFP relates to "Yale's decision to purportedly rejoin the 568 Group," which occurred after UChicago undisputedly left the 568 Group.  UChicago therefore responded that the request "does not appear to be directed to Chicago."  Despite many opportunities, Plaintiffs never informed us that they considered this RFP to be directed to UChicago or explained why it would be.  Nevertheless, again, UChicago *did* search for documents using the agreed-upon search terms.  But it should be no surprise if Plaintiffs find no responsive documents in UChicago's productions.

- **RFP 157**:  Again, UChicago *did* run search terms concerning Princeton's elimination of loans from its financial aid packages and has produced, and will

# Arnold&Porter

Robert D. Gilbert, Esq.
March 25, 2023
Page 4

produce, documents discussing Princeton's financial aid packages and strategies.

- **RFP 163**: Plaintiffs never sought to confer with UChicago about its objections to this RFP. Nevertheless, UChicago yet again ran the agreed-upon search terms. Because UChicago has not been involved in government investigations concerning its financial aid policies, Plaintiffs should not anticipate receiving documents uniquely responsive to RFP 163 in UChicago's production. We further note that you state in your declaration that this RFP seeks documents "regarding the basis and nature of Defendants' financial aid policies, practices, and objectives" and "policies, practices, and objectives within the 568 Group." Putting aside that this language is nowhere to be found in the text of RFP 163, UChicago has produced, and will produce, extensive documents on these subjects in response to numerous other RFPs.

- **RFP 2 to Second Set**: Substantial completion of the production of documents responsive to this set of RFPs is July 31, 2023. Plaintiffs have not sought to confer with UChicago on its objection to this RFP. Nevertheless, UChicago has already produced, and will continue to produce, documents responsive to this RFP and intends to do so before July 31, as reflected in UChicago's productions to date.

While there are additional errors in Plaintiffs' motion, the discussion above is intended to convey that Plaintiffs' motion is premature and inaccurate. We request that Plaintiffs withdraw their motion insofar as it concerns the UChicago and that Plaintiffs commit to a meaningful meet and confer process with respect to any issues you think are outstanding with respect to our search and production.

Sincerely,

/s/ Michael A. Rubin

Michael A. Rubin

4