# EXHIBIT 2

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

155 NORTH WACKER DRIVE

CHICAGO, ILLINOIS 60606-1720
_____

TEL: (312) 407-0700

FAX: (312) 407-0411

www.skadden.com

FIRM/AFFILIATE OFFICES
_____
BOSTON
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
_____
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
(312) 407-0903
DIRECT FAX
(312) 827-9373
EMAIL ADDRESS
AMY.VANGELDER@SKADDEN.COM

December 23, 2022

**BY E-MAIL**

Elpidio Villarreal, Esq.
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
pdvillarreal@gilbertlitigators.com

> RE:  *Henry et al. v. Brown University et al.*, No. 22-cv-00125 (N.D. Ill.)

Dear PD:

We write in response to your December 16, 2022, email regarding Columbia Data, Custodians of Records and Non-Custodial Sources. In your email, you raised a number of questions regarding Columbia's identification of custodial and non-custodial data sources, which we have attempted to answer below. Please note that our investigation into Columbia's available data and historical practices is on-going and the information provided herein is based on our investigation to date. To the extent that we later learn information that changes any of the representations in this letter, we will inform you.

**1.      Structured Data**

(a)      Structured Admissions Data

As we explained during our November 18, 2022, meet and confer, the Admissions department for Columbia College and the Fu Foundation School of

Elpidio Villarreal, Esq.
December 23, 2022
Page 2

Engineering and Applied Sciences (SEAS)—Columbia's two undergraduate schools that participated in the 568 Presidents Group—presently uses a database called Slate to process and read admissions applications. Although Slate has been in use since approximately 2012, the Admissions department did not begin reading and evaluating applications in Slate until 2019. From approximately 2007 to 2019, the Admissions department used a separate database, called OnBase, for reading applications. It is our understanding that, prior to OnBase, admissions applications were read in hard-copy format.

It our understanding that structured admissions data, such as applicant biographical information and admissions decisions, historically have been routinely transferred to and stored in Columbia's university-wide database, Student Information Software (SIS). We believe admissions data in SIS may date back to the 1990s, though we are unsure of its historical reliability and completeness during earlier periods.

Columbia's policy is to purge evaluative admissions data, which includes application "reader sheets" and notes, at the end of each admissions cycle. Since this litigation has been pending, Columbia suspended this policy and therefore maintains evaluative admissions data for applicants to Columbia College and SEAS for the 2021-2022 admissions cycle. To our knowledge, evaluative data for prior periods does not exist in either structured or unstructured data repositories or data back-ups.

(b)     Structured Financial Aid Data

As explained during our November 18 meet and confer, since approximately the 2009-2010 admissions cycle, the Financial Aid department for Columbia College and SEAS has used a database called PowerFaids to process and evaluate financial aid applications. Prior to the implementation of PowerFaids, the Financial Aid department for Columbia College and SEAS used SIS for this purpose.

Our understanding is that structured financial aid data—whether from PowerFaids or SIS—has been regularly backed up to a Microsoft SQL server, called the Student Data Store (SDS). Based on our investigation to date, we believe that financial aid data in SDS may date back to the 1990s though, as you correctly recounted in your email, there are concerns about the integrity and accuracy of this data prior to 2010, and those concerns are more pronounced for more aged data.

Elpidio Villarreal, Esq.
December 23, 2022
Page 3


      (c)     Other Departments

      Your email also requested information regarding structured databases, if any, used by the President's Office, Development/Advancement, Alumni Relations, Institutional Research, Enrollment Management, and Endowments. As we discussed during our November 18 meet and confer, Columbia does not have an Enrollment Management department. Furthermore, Columbia's Development and Alumni Relations office encompasses both Development and Alumni Relations.

      Based on our investigation to date, we understand that Development and Alumni Relations maintains an Oracle-based database. Additionally, we understand that the President's Office maintains a correspondence database; however, we are still gathering information about this system, including whether it can be properly categorized as a structured database. Our understanding is that Columbia's Office of Research and Institutional Planning (OPIR) does not maintain its own structured database. Our investigation into structured data sources, if any, maintained by Endowments is ongoing. We will provide additional information as it becomes available.

**2.     Unstructured Data & Emails**

      (a)     Disposition of Custodial Data

      We continue to investigate Columbia's practices regarding the disposition of custodial communications and documents upon an employee's separation from the University. Based on our investigation to date, we understand that the President's email correspondence is generally preserved in perpetuity and at least certain documents are archived. We have not yet learned of an official policy regarding the retention or destruction of other employees' email and documents upon their separation from the University. However, it appears that, in the absence of an applicable legal hold, email may be retained or deleted in the discretion of the user and/or IT personnel. As we mentioned during our November 18 meet and confer, it would be easier to determine the status of communications and documents of departed Columbia employees if we knew the particular custodians in which Plaintiffs are interested. Please let us know if you have any specific inquiries in this regard.

      (b)     Shared Drives

      As explained during our November 18 meet and confer, we intend to search the department-level shared drives used by the Admissions and Financial Aid

Elpidio Villarreal, Esq.
December 23, 2022
Page 4

departments for Columbia College and SEAS. Furthermore, while our investigation into any cloud-based storage used by those departments is ongoing, to date, we have not identified any cloud-based storage used by those departments that we would expect to contain documents or materials responsive to Plaintiffs' document requests.

        (c)      Shared Email Addresses

We also continue to investigate the use of shared email addresses. So far, we have identified two shared email addresses used by the Admissions and Financial Aid departments for Columbia College and SEAS: ugrad-ask@columbia.edu and ugrad-finaid@columbia.edu. Our present understanding is that these accounts are used for general inquiries from prospective applicants or current students, and not for internal communications. Additionally, the ugrad-finaid@columbia.edu email address is used to send final financial aid awards to students.

        (d)      Other Departments

Based on our investigation to date, we understand that the President's Office, Development and Alumni Relations, and OPIR each utilizes a shared drive. The President's Office also maintains paper archives. Our investigation into unstructured data sources for these departments and Endowments is ongoing. We will provide additional information as it becomes available.

**3.      Enrollment Management**

During our November 18 meet and confer, you defined "enrollment management" as referring to a service that helps universities determine the composition of their incoming class. Although we do not believe Landscape qualifies as an enrollment management service, we nonetheless confirmed that the Admissions department for Columbia College and SEAS utilizes Landscape because Plaintiffs had previously expressed interest in this resource.

As we understand it, Landscape is a College Board-provided resource that provides high school and neighborhood information regarding applicants for admission so that application readers can better contextualize applications.[1] Landscape has been utilized since approximately 2019, and its primary users are admissions application readers. As far as we are aware, based on our investigation to

---

[1]    More information regarding Landscape is publicly available here: https://pages.collegeboard.org/landscape.

4

Elpidio Villarreal, Esq.
December 23, 2022
Page 5

date, Columbia's Admissions department for Columbia College and SEAS did not use any similar resource prior to Landscape.

Moreover, as explained during our November 18 meet and confer, we confirm that, based on our investigation to date, Columbia's Admissions department for Columbia College and SEAS has not used any third parties for enrollment management services, as defined above, during any portion of Plaintiffs' proposed relevant time period.

**4.      Initial Disclosures**

During our November 18 meet and confer, we explained that, through our investigation, we have determined that Columbia's School of General Studies never participated in the 568 Presidents Group or utilized the Consensus Methodology. Accordingly, it is our position that General Studies employees, including those identified in Columbia's initial disclosures, do not possess relevant information. For this reason, we did not include General Studies custodians among Columbia's October 28, 2022 disclosure of Proposed Custodians and Non-Custodial Data Sources. To the extent that Plaintiffs would like admissible evidence confirming that General Studies did not participate in the 568 Presidents Group or utilize the Consensus Methodology, we are willing to provide an affidavit or stipulation to that effect.

With respect to Amelia Alverson, as discussed during our November 18 meet and confer and set forth below, we do not believe she is a necessary custodian. We plan to amend our initial disclosures as appropriate in connection with filing Columbia's answer to Plaintiffs' forthcoming amended complaint.

**5.      Organizational Charts**

As promised during our November 18 meet and confer, on Friday, December 16, 2022, we produced, among other documents, current versions of the organizational charts for the Admissions and Financial Aid departments for Columbia College and SEAS.

**6.      President's Office and Development Office**

During our prior meet and confer and in your December 16 email, you inquired about Columbia's decision to exclude as custodians the President and a member of the Development and Alumni Relations office.

Elpidio Villarreal, Esq.
December 23, 2022
Page 6

As we previously explained, our investigation to date has revealed that President Bollinger delegated 568 Presidents Group responsibilities to other employees who we identified as custodians—namely, Jessica Marinaccio, Michael Hall, and Kathryn Tuman—and, based on initial searches, President Bollinger is not likely to have any material communications related to the 568 Group. Thus, it would be disproportionate to search his documents. We continue to investigate whether the President's Office maintains any centrally located 568 President Group files, including on behalf of the immediately prior University President.

Aside from this, you confirmed during our November 18 meet and confer—and Plaintiffs' counsel otherwise confirmed during the global meet and confer process—that Plaintiffs' interest in the President and Development custodians relates solely to the Section 568 antitrust exemption defense. Specifically, as made clear in your email, Plaintiffs are seeking to determine whether donor activity influenced admissions decisions. We believe that any factors that could have influenced admissions decisions may be found, first and foremost, among the files and communications of the Admissions department and it would be disproportionately burdensome to search President and Development emails for the sorts of hypothetical documents Plaintiffs posit may exist. If discovery progresses in a way that indicates further consideration of this issue is warranted, we are willing to revisit it as necessary.

**7.     Insurance Agreements**

In connection with our forthcoming amendment to Columbia's initial disclosures, we will produce any responsive insurance policies or confirm that none exist.

\*       \*       \*

Elpidio Villarreal, Esq.
December 23, 2022
Page 7

      As noted above, our investigation into Columbia's data continues. We will notify you as we learn of additional information about which you have inquired, including any information that alters the representations made here. We are available to meet and confer regarding this letter during the week of January 3. Please let us know when would be convenient for a discussion.

      Happy holidays.

                            Sincerely,

                            */s/ Amy L. Van Gelder*

                            Amy L. Van Gelder

cc: 568_Litigation@fnf.law
      Carbone_Defs_Service@listserv.whitecase.com