UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>*Defendants*. | Case No.: 1:22-cv-00125-MEK<br><br>Judge Matthew F. Kennelly |

**OPPOSITION TO PLAINTIFFS' MOTION TO LIMIT
REDACTION OF DONOR NAMES AS TO NORTHWESTERN AND YALE**

**INTRODUCTION**

Plaintiffs' Motion (Dkt. 355, the "Motion") to compel Defendants Northwestern University and Yale University (the "Universities") to expose the names and personal identifying information of hundreds of non-party students and their families should be denied.[1] The Universities redacted limited information that is prohibited from disclosure by the Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g; 34 C.F.R. § 99), and did so in a manner consistent with the November 22, 2022 Confidentiality Order (Dkt. 254, the "Confidentiality Order" or "Conf. Order"). Thus, Plaintiffs' Motion is not about over-redactions or improper redactions; instead, Plaintiffs ask the Court to overturn the Confidentiality Order and require the Universities to do something different: unredact donor names regardless of whether that information also would disclose student information protected by FERPA. The Confidentiality Order does not allow that; it reflects a careful balance imposed by the Court following extensive briefing on this issue, and should not be modified now, after the parties have relied on it for months.

The documents attached as Exhibits B, C, E, and F to Plaintiffs' Motion are examples of lists the Universities use to identify applicants of interest who may have some connection to the Universities, *e.g.*, because they may be related to faculty or staff members, active alumni, or to individuals who have donated to the Universities. Although those documents contain information about donors (among other people), the Universities have not redacted donor names on a blanket basis. Instead, consistent with FERPA, and as Plaintiffs acknowledge, the Universities have redacted donor names *only* where (a) the donor is related to the applicant, and (b) revealing the

---

[1] Plaintiffs' Memorandum of Law in support of the Motion (Dkt. 355-1, "Mem.") states that Defendants should produce "all donor names in Northwestern and Yale's Donation Records (as Plaintiffs have defined them in their requests for production)." Mem. at 2. However, this definition appears in the Confidentiality Order, not Plaintiffs' RFPs. *See* Dkt. 254, Conf. Order ¶ 8(c); Plaintiffs' First Set of Requests for Production at § 1.

1

name of the relative would allow identification of the applicant.[2] Furthermore, pursuant to the Confidentiality Order, the Universities have provided Plaintiffs with unique numerical identifiers (UIDs) for applicants whose names were redacted pursuant to FERPA. The UIDs allow Plaintiffs to cross-reference those applicants with the structured admissions and financial data the Universities produced as well as to reference those same applicants who may exist in any other Defendant's productions. All of these redactions were done consistent with the Court's Confidentiality Order, which was entered after consideration of FERPA's requirements to strike a careful balance among the privacy interests of students and families encompassed in FERPA, the burden on the Universities, and Plaintiffs' limited need for student-specific information. *See generally* Conf. Order. Now, however—after Defendants have engaged in the burdensome and costly process of complying with FERPA by manually applying line-by-line redactions and replacing applicant names with UIDs in thousands of records in accordance with the Confidentiality Order that Plaintiffs negotiated and agreed to—Plaintiffs ask the Court to change its mind and order the Universities to do something different, undoing all of that work.[3]

Plaintiffs' Motion should be denied for three reasons. First, the redactions are required by FERPA and consistent with the Confidentiality Order, which reflects an appropriate balancing of student privacy rights embodied by FERPA and Plaintiffs' purported discovery needs. Second, the

---

[2] During a meet and confer with Yale, Plaintiffs' counsel acknowledged that where a donor name could identify an applicant (like a family member), the donor name should be redacted pursuant to FERPA. When Yale's counsel pointed out that Yale had done exactly that and did not redact names of individuals with no apparent familial connection, Plaintiffs' counsel agreed that Yale's FERPA redactions were consistent with the FERPA and the Confidentiality Order. Nonetheless, Plaintiffs' counsel indicated that a motion to compel was necessary to ask the Court to change the requirements for FERPA redactions under the Confidentiality Order. *See* Ex. A, Declaration of Jamie Lee. Northwestern has applied the same criteria to its redactions.

[3] Northwestern has produced over 1,300 documents with FERPA redactions, including 272 lists of applicants like the ones Plaintiffs attached as Exhibits B and C to their Motion. Yale has produced over 14,000 documents with FERPA redactions, including approximately 250 admissions lists and hundreds of other donor records with FERPA redactions.

names of individual applicants and family members are completely unnecessary to address whether Defendants considered applicants for admissions "without regard to the financial circumstances of the student involved or the student's family." Dkt. 185, Mem. Op. and Order Denying Mot. to Dismiss, at 6. Third, the relief requested would be unduly burdensome, requiring the Universities to spend numerous hours undoing work they previously performed and then notify each individual applicant that this information will be produced in litigation and give them an opportunity to object before any of the information can be disclosed—an outcome the parties agreed to avoid by entering the Confidentiality Order in the first place.

## ARGUMENT

I. **The Limited Redactions at Issue Are Required by FERPA and Consistent With The Court's Prior Orders Concerning FERPA and Balancing of Interests.**

In general, the Confidentiality Order permits the Universities to redact Personally Identifiable Information (PII), including the names of applicants, their parents, and other family members as follows:

> Application Materials, Financial Aid Materials, and Education Records may be produced redacted to obscure the names, physical addresses (excluding zip codes, which shall not be redacted), email addresses, telephone numbers, social security numbers, and other Personally Identifiable Information concerning any applicant, applicant's family member, or student (collectively "Personal Information"), except in the case of Application Materials, Financial Aid Materials, and Education Records concerning any named class representative.

Conf. Order ¶ 8(c).

In support of their request to unredact this PII, Plaintiffs repeatedly refer to the Court's statements to the effect that donor names themselves are not Education Records. *See* Mem. at 10. But Plaintiffs ignore the Court's other statements, as reflected in the Confidentiality Order, that donor names *plus* other PII, *would* constitute an Education Record that would need to be redacted

3

pursuant to FERPA. *See* Transcript of October 26, 2022 Hearing at 27:8-15 ("THE COURT: . . . I do not believe that a donor name constitutes an education record. . . . *Plus other stuff* might constitute an education record, but a donor name like John Jones donated $10,000 -- or, you know, $200,000 to Brown University, that's not a donor -- or that's not a student record.") (emphasis added); *see also* Conf. Order ¶ 8(c). Consistent with the Court's Order, the Universities have not redacted all "donor names" from their documents. Indeed, in just Exhibits B, C, E, and F to Plaintiffs' Motion alone, over one hundred names of donors appear unredacted.

Thus, this dispute concerns only the redaction of family member names that, if revealed, would allow ready identification of the name of the applicant and potentially other FERPA-protected information.[4] This is what is required under FERPA and is entirely consistent with the Court's prior orders. As counsel for Northwestern explained to Plaintiffs' counsel:

> [A] document that merely identifies John and Jane Smith as donors to the universities would not be redacted. But a document that refers to "Applicant Sally Smith, daughter of donors John and Jane Smith," would be redacted, with the applicant's name replaced with an identifier. Using that example, it would make little sense to read the [Confidentiality] Order to require redaction of the name of the applicant, but leave unredacted the names of her parents, which would allow ready identification of the applicant through something as simple as a Google search. That is why the Confidentiality Order expressly contemplates redaction not only of the names of the applicant, but also the "applicant's family member."

4/27/23 E-mail from S. Stein to R. Litan (Ex. A to Plaintiffs' Motion).

---

[4] For example, as the Court can observe from perusing Exhibits B, C, E, and F, where a donor expressed an interest in a candidate who was *not* a family member—such that revealing the donor's name would not identify the student—neither Northwestern nor Yale redacted the donor's name. The same is true for the names of other individuals, such as Trustees of the Universities, who are identified as having expressed an interest in certain applicants. The Universities further note that where they have structured data for both admissions and financial aid for applicants listed in donation records, the Universities have produced versions of these documents that provide the UIDs for the applicants referenced to the extent those UIDs were reasonably ascertainable from the Universities' structured data. These UIDs allow Plaintiffs to identify admissions and financial aid records produced for those individuals.

4

This approach is consistent with FERPA and the Confidentiality Order entered in this case. Indeed, at the October 26, 2022 hearing, Plaintiffs' counsel "concede[d that] once you have the donor's name" connected to an individual applicant, "it's personally identifiable to the student." Oct. 26, 2022 Hearing Transcript at 33:9-11. That is precisely the narrow type of information that the Universities have redacted in this case—a donor's name that would be personally identifiable to the student.[5] *See* Exs. A and D to Plaintiffs' Motion.

At the October 26 hearing, Plaintiffs argued that donation information directly tied to an applicant should be produced without redaction—the same relief sought (again) in this Motion. Oct. 26, 2022 Hearing Transcript, at 27:2-28:6, 30:1-21. The Court did not adopt Plaintiffs' position. Rather, the Confidentiality Order reflects a balancing of interests. FERPA requires the Universities to maintain the confidentiality of students' PII contained in Education Records, which include "[t]he name of the student's parent or other family members" or "[o]ther information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty." 34 C.F.R. § 99.3.[6] While there

---

[5] Importantly, removing redactions from any documents that also contains student UIDs could connect the identity of those students to other sensitive PII contained in the Universities' admissions and financial aid data, including the student's high school GPA, SAT/ACT scores, and/or detailed information about the student's and family's personal finances.

[6] *See also* U.S. Department of Education, *Data De-identification: An Overview of Basic Terms*, https://studentprivacy.ed.gov/sites/default/files/resource_document/file/data_deidentification_terms.pdf (explaining that PII "may include not only direct identifiers, such as names, student IDs or social security numbers, but also any other sensitive and non-sensitive information that, alone or combined with other information that is linked or linkable to a specific individual, would allow identification. Therefore, simple removal of direct identifiers from the data to be released DOES NOT constitute adequate de-identification."); U.S. Department of Education, *What is an education record?*, https://studentprivacy.ed.gov/faq/what-education-record ("'Education records' are records that are directly related to a student and that are maintained by an educational agency or institution or a party acting for or on behalf of the agency or institution. These records include but are not limited to . . . student financial information (at the postsecondary level) . . . ."

5

are limited provisions authorizing disclosure of PII, the only exception potentially applicable here (a court order) would still require advance notice to each affected individual. *Infra* § III.

Plaintiffs nevertheless argue that without access to names, they would be unable to either locate other records in a Defendant's production relating to the same student, or compare records relating to the same students across universities. Not so. The parties already addressed this issue by agreeing to utilize a third-party vendor to assign a UID to each student whose name was redacted, and then adding those UIDs to produced data and documents. That UID will allow Plaintiffs to track students in Defendants' financial aid and other data, and across different Defendants. Defendants have engaged in this agreed-upon process for months and have provided Plaintiffs with the UIDs.

Plaintiffs have failed to explain why these redacted records and the UIDs are insufficient in light of the Court's Confidentiality Order, FERPA Order, and without having questioned even a single Northwestern or Yale witness.

## II. The Names of Specific Students Associated With Donor Records Are Not Relevant.

### A. Plaintiffs Have Failed To Argue, Much Less Demonstrate, A Need For Student Names To Address Need-Blindness

Courts require a party seeking court-ordered disclosure of students' PII "to demonstrate a genuine need for the information that outweighs the privacy interests of the students." *Daywalker v. Univ. of Tex. Med. Branch at Galveston*, 2021 WL 4099827, at *3 (S.D. Tex. Sept. 9, 2021) (quoting *Ragusa v. Malverne Union Free Sch. Dist.*, 549 F. Supp. 2d 288, 291 (E.D.N.Y. 2008)). Plaintiffs have failed to make such a showing here.

Under the Court's interpretation of the 568 statutory exemption, the sole issue to which evidence pertaining to so-called "donor-related admissions" may be relevant is whether or not the defendants were "need blind." The Court has held that, "[u]nder the statute, 'on a need-blind basis

means without regard to the financial circumstances of the student involved or the student's family.'" Dkt. 185, Mem. Op. and Order, at 6. Plaintiffs' position is that a "school is acting in a 'need-blind' manner with respect to a student if and only if, in deciding whether to admit the student, the school does not *give any attention or consideration* to the 'financial circumstances' of the student or the student's family." Dkt. 164, Opp. to Mtn. to Dismiss, at 15-16 (emphasis added).

Plaintiffs expressly acknowledge they already possess information that shows "attention or consideration" to the financial circumstances of the student or the student's family. In their Memorandum, Plaintiffs describe a Yale document as "█████████████████████████ █████████████████████████████████████████████████████████████████████████ ███████" who was "identified as a ██████████████████████████████████████" Mem. at 9. As to Northwestern, Plaintiffs cite to a document (as redacted) that states, "████████ ███████████████████████████████████████████████████████████████" *Id.* at 3; *see also* Ex. B to Plaintiffs' Motion, a Northwestern document that states for one applicant, "████████ █████████████████████████████████████████████████████████████████████████ ███████████" Ex. B to Plaintiffs' Motion at 1. And Plaintiffs have received hundreds of similar documents from just Northwestern and Yale.

Armed with this information, Plaintiffs now argue that they need to know the actual name of the applicant's relative who is the donor. Yet Plaintiffs offer no plausible explanation of how exposing the names of any of these students (or their families) would advance Plaintiffs' case in any way. This is particularly true given the large number of donor names that are not related to applicants and thus are unredacted in the Universities' productions. In one of the two Northwestern documents Plaintiffs attached to their Motion, the majority of names in the "Interested Party"

7

column were *not* redacted, and many of them are listed as a "Donor."[7] Similarly, YALE_LIT_0000314439, which is Ex. E to Plaintiffs' Motion, includes 10 donor names unredacted, and there are 19 donor names unredacted in the complete, produced version of YALE_LIT_0000311380 (Plaintiffs' Ex. F), which Plaintiffs appended as an excerpt. Moreover, both Northwestern and Yale have dropped the 568 exemption defense, making the need for donor-related information all the more tenuous. In sum, there is no need, let alone *substantial* need, for the additional time and cost that unredacting the names of applicants' relatives would require. *See infra* § III.

Plaintiffs also argue that production of the names they seek will aid the Court in determining whether to order further discovery of the President's Office and Development Office, which is, perhaps, the clearest admission from Plaintiffs that they are using this Motion to relitigate the scope of donor-related discovery that the Court already decided at the February 8, 2023 hearing.[8] The Court told Plaintiffs that if, *after depositions*, Plaintiffs could make a showing that additional development-related discovery was warranted, they could seek to make such a showing at that time. *See* Feb. 8, 2023 Hearing Transcript at 49:11-22. Plaintiffs' Motion is an effort to relitigate that issue. Plaintiffs' argument that they need the names of applicants' relatives who are also donors in order to depose Northwestern's former President Morton Schapiro is particularly

---

[7] NULIT-0000016884 (Ex. B to Plaintiffs' Motion) (containing 42 unique Donor or Trustee names that are unredacted); *see also* NULIT-0000016918 (Ex. C to Plaintiffs' Motion) (containing 19 unique Donor or Trustee names that are unredacted).

[8] Plaintiffs assert that unspecified "Defendants have interpreted [the February 8, 2023] ruling such that they are not required to produce *any discovery from these offices*." (Mem. at 2 n.2) (emphasis in original). That is false as to the Universities. Northwestern has produced almost 1,000 documents from Office of the President custodians and will present its former president, Morton Schapiro, for a deposition. Moreover, Yale has produced hundreds of documents originating from the Development Office and will also present Joan O'Neill, Vice President of Alumni Affairs and Development, for a deposition. Indeed, Mr. Schapiro and Ms. O'Neill were scheduled to be deposed on May 24 and 25, respectively, but Plaintiffs unilaterally chose to take those depositions off-calendar pending the outcome of this Motion.

8

puzzling given that Mr. Schapiro did not become Northwestern's President until 2009—years after the dates of the two Northwestern exhibits attached to Plaintiffs' Motion. In sum, Plaintiffs have provided no reason to revisit the Court's carefully balanced consideration of these issues at this time, in advance of any such depositions.

 **B. Plaintiffs' Argument that the Names of Relatives of Applicants Are Relevant to "Altruistic Motive" Has No Legal Basis.**

Rather than attempting to explain how unmasking the names of the students in documents like Exhibits B, C, E, and F to Plaintiffs' Motion is necessary to address need-blindness, Plaintiffs attempt to shift the goalposts by arguing that student-specific PII is necessary to explore questions of "altruism" and "social justice." Mem. at 7-8. Plaintiffs contend that "donor-related admissions" are pertinent to these issues based on the Third Circuit's decision in *United States v. Brown University*, 5 F.3d 658 (3d Cir. 1993). Mem. at 7. *Brown* concerned the "Overlap Agreement," whereby certain schools would convene to agree on financial aid awards to specific students. 5 F.3d at 662-63. In rejecting *per se* condemnation of that agreement, the Third Circuit noted the "alleged pure altruistic motive and alleged absence of a revenue maximizing purpose" in connection with *the Overlap* Agreement. *Id.* at 672 (". . . MIT vigorously maintains that *Overlap* was the product of a concern for the public interest, here the undisputed public interest in equality of educational access and opportunity, and alleges the absence of any revenue maximizing purpose. This alleged pure altruistic motive and alleged absence of a revenue maximizing purpose contribute to our uncertainty with regard to Overlap's anti-competitiveness.") (emphasis added).

But the relevant issue, as framed by the Third Circuit in *Brown,* was the motive for those defendants' *participation in the Overlap group*. The Third Circuit did not endorse a free-ranging inquiry into whether the defendant schools were, in the abstract, "altruistic." The corollary inquiry in this case, as framed by *Brown*, would be whether the Universities' *participation in the 568*

9

*Group* was informed by an "altruistic motive and . . . the absence of a revenue maximizing purpose." *See id.* at 672. And yet, again, Plaintiffs do not explain how donations—or even whether applicants associated with certain donors were given admission preferences—have any bearing on Defendants' motives for *participating in the 568 Group*, much less why learning the names of specific donors and their applicant family members is necessary to such an inquiry.

### III. Plaintiffs' Motion Is Premature and The Requested Relief Would Be Burdensome and Is Inconsistent With The Balancing Approach Adopted By The Court.

The Confidentiality Order strikes a careful balance between the privacy interests encompassed in FERPA and Plaintiffs' limited need for student-specific information. Plaintiffs assert that "FERPA was never enacted to protect institutions of higher education . . . ." (Mem. at 10). That is correct. The intended beneficiaries of FERPA's protections are *students and parents*, whose PII the federal government has determined should not be disclosed without a clear need. *See, e.g.*, Family Educational Rights and Privacy, 76 Fed. Reg. 75604 (Dec. 2, 2011); Dep't of Educ., *What is FERPA?*, https://studentprivacy.ed.gov/faq/what-ferpa. As explained above (*supra* at 6-8), Plaintiffs have failed to demonstrate why non-party students and their families should have their PII disclosed to Plaintiffs' counsel, who may seek to use this information to malign students and their families.

Plaintiffs note that the Court has *authority* under the FERPA regulations to order disclosure of these non-party students' PII. But they fail to acknowledge that the judicial order provision first requires "notif[ication of] the parent or eligible student of the order or subpoena in advance of compliance, so that the parent or eligible student may seek protective action," with limited exceptions not applicable here. 34 C.F.R. § 99.31(a)(9)(ii); *see Nastasia v. New Fairfield Sch. Dist.*, 2006 WL 1699599, at *1 (D. Conn. June 19, 2006); *DeFeo v. McAboy*, 260 F. Supp. 2d 790, 792 (E.D. Mo. 2003); *see also Rudoy v. Independence 30 Sch. Dist.*, 2020 WL 13588446, at *2

(Mo. Cir. Ct. May 3, 2020) ("In no circumstance shall the disclosure of CONFIDENTIAL INFORMATION (which includes student records) be made prior to the time Defendant and/or the District have made a reasonable effort to notify the parent, guardian, or eligible student of this Court's Order pursuant to 20 U.S.C. § 1232g and 34 C.F.R. § 99.31(a)(9)(ii).").[9] As explained above (*see supra* at 6-8), there is no "genuine need" to require the Universities to track down and notify hundreds or thousands of applicants, some dating back over 20 years, when the information the Universities have provided is more than sufficient to address the limited inquiry to which the Court has held this information may be relevant.[10] Moreover, as a practical matter, it could be very difficult to identify which of these applicants matriculated to Northwestern or Yale. It is therefore not clear whether Northwestern and Yale would even have current contact information to give notice to these applicants and students who applied and attended years, or even decades, earlier.

The Universities also have a legitimate burden concern. Redaction of Exhibits B, C, E, and F to Plaintiffs' Motion (and the hundreds of other documents like them) was an extraordinarily time-consuming and expensive process.[11] Many of these documents are lengthy and needed to be

---

[9] The cases cited by Plaintiffs in which other courts have ordered production of FERPA-protected PII are inapposite. *McDaniel v. Loyola University Medical Center*, 2015 WL 13901029, at *2 (N.D. Ill. Apr. 28, 2015), involved only the plaintiff's own FERPA-protected student records (here, Plaintiffs have consented to providing the records of their named class representatives without FERPA protection (*see* Conf. Order ¶ 8(c)). And in *Ragusa v. Malverne Union Free School District*, 549 F. Supp. 2d 288, 292-93 (E.D.N.Y. 2008), the court required that PII of non-party students be redacted (as the Universities have done here).

[10] Moreover, because all Defendants underwent the expensive and time-consuming burden of applying the same UID to the same individual across all Defendants' records, ordering the Universities to disclose the PII of so-called "donor-related applicants" would necessarily *also* de-identify those students in records produced by the other Defendants who are not the subject of this motion—but who would then *also* have to send notices to the individual identified in Northwestern and Yale's documents that their PII in the other Defendants' records will necessarily be disclosed.

[11] Based on a review of time records, the Universities estimate that initial first-level FERPA redactions to the admissions lists and donor records cost over $100,000 per school. That number represents only a portion of the total spend, as attorneys for both of the Universities then spent hundreds of hours quality checking the FERPA redactions to this highly-sensitive information.

analyzed individually to determine whether they constituted Education Records, then line-by-line redactions had to be applied manually to information that could potentially identify the applicant. Unmasking so-called "donor-related applicants," as Plaintiffs request, is not simply a matter of programmatically deleting all of the redactions in these documents because not all of the parents or family members whose names are redacted in these documents are donors. Some may be included in these lists for reasons completely unrelated to donations. Unmasking the subset of names who are *donors* (as Plaintiffs' Motion requests) would therefore require analysis of each entry to determine the relationship of the applicant's family member to the Universities (followed by personal notification to each affected individual).

Finally, a word about Plaintiffs' suggestion that any concerns about the confidentiality of non-party students' PII are overblown because "any donor-linked applicants whose identities might potentially be deduced by revealing their connected donor's name will still be protected by the Confidentiality Order." Mem. at 10 (emphasis omitted). This claim rings hollow given that Plaintiffs violated the Confidentiality Order when they filed this very Motion and its Attorneys' Eyes Only attachments on the public record—a violation that was corrected only after the Universities brought it to their attention. Understandably, then, the Universities take cold comfort from Plaintiffs' suggestion that their promises to comply with the Confidentiality Order are sufficient to safeguard the privacy interests of non-party students and their families.

## CONCLUSION

For the foregoing reasons, Northwestern and Yale respectfully request that the Court deny Plaintiffs' Motion.

Dated: May 19, 2023

Respectfully submitted,

By: */s/ Scott D. Stein*

Scott D. Stein
Kathleen L. Carlson
Benjamin K. Brunner
SIDLEY AUSTIN LLP
One South Dearborn St.
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
sstein@sidley.com
kathleen.carlson@sidley.com
bbrunner@sidley.com

*Attorneys for Northwestern University*

By:*/s/ Charles A. Loughlin*
Charles A. Loughlin
Benjamin F. Holt
Jamie Lee
Molly Pallman
Christopher Fitzpatrick
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
Tel.: 202-637-5600
chuck.loughlin@hoganlovells.com
benjamin.holt@hoganlovells.com
jamie.lee@hoganlovells.com
molly.pallman@hoganlovells.com
chris.fitzpatrick@hoganlovells.com

Stephen Novack
Stephen J. Siegel
Serena G. Rabie
ARMSTRONG TEASDALE LLP
100 North Riverside Plaza
Chicago, IL 60606-1501
Tel.: 312-419-6900
snovack@atllp.com
ssiegel@atllp.com
srabie@atllp.com

*Counsel for Defendant Yale University*

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2023, the foregoing document was served on all counsel of record by email or using the CM/ECF system, which will send notice of this filing to all parties, as set forth below:

Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
Steven Magnusson
**GILBERT LITIGATORS & COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
sschuster@gilbertlitigators.com
amarquez@gilbertlitigators.com
smagnusson@gilbertlitigators.com

Devin "Vel" Freedman
Edward J. Normand
Peter Bach-y-Rita
**FREEDMAN NORMAND FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law

Eric L. Cramer
Caitlin G. Coslett
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
ccoslett@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division

Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

Daniel J. Walker
Robert E. Litan
Hope Brinn
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*/s/ Scott D. Stein*
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603