UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>      Defendants. | Case No.: 1:22-cv-00125<br><br>**Hon. Matthew F. Kennelly** |

**PLAINTIFFS' REPLY TO DEFENDANTS NORTHWESTERN AND YALE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO LIMIT <u>REDACTION OF DONOR NAMES AS TO NORTHWESTERN AND YALE</u>**

**INTRODUCTION**

In their opposition, Northwestern and Yale proceed on the incorrect premise that FERPA protects a donor's name. In October 2022, the Court stated: "I don't think a donor's name constitutes . . . a student record[] under FERPA. . . . I mean, that's about as close to a no-brainer as anything we can get to in here. So that's a ruling." Oct. 26, 2022 Tr. 34:9-16. The Court recognized that "a significant part of [Plaintiffs'] case [involves] the contention that admissions are tied to donations. . . . And so unless there's going to be an opinion that basically says, well, the kind of thing I just said is not going to happen, that basically says the plaintiffs can't get that, therefore, the case is over, then we have to come up with a way of doing that." *Id.* 36:25-37:6. The Court went on to outline the process by which Plaintiffs could tie admissions to donations, whereby the school would "put in some sort of a code for the names of each of those people which would allow somebody to say, okay, this is a donation record that relates to this student over here and so we can determine whether that had any effect on whether that person got admitted or not." *Id.* 37:9-14. In response to Plaintiffs' concern that Defendants are "going to redact full sections of emails that relate to what I'll call the put your thumb on a scale or quid pro quo components of the document," *id.* 40:6-8, the Court said that "basically what you're talking about is the proposition that you're going to get emails that are going to look like the National Security Agency got at them first and they're going to be all black. . . . I'd rather kind of cross that bridge when we get to it." *Id.* 40:15-23.

In the face of the Court's ruling and reasoning, Northwestern and Yale have redacted donor names, their occupations, and other key details; have not inserted unique identifier code for many applicants; and have produced hundreds of donation records that do "look like the National Security Agency got at them first and they're . . . all black." Defendants cite Plaintiffs' Exhibits B, C, E, and F to demonstrate what they produced. *See* Defs.' Mem. at 1, 2 n.2, 4.

1

Plaintiffs present *just the first entry* on each of those exhibits to show how Northwestern and Yale have undercut the Court's ruling, precluding Plaintiffs from proving "that admissions are tied to donations." These documents are virtually unusable—Plaintiffs can hardly make sense of them, and in a deposition they will elicit little more than "I have no idea" and "I don't know."

*Ex. B to Plaintiffs' Opening Mem. (ECF No. 358-3), NULIT-0000016884*

*Ex. C to Plaintiffs' Opening Mem. (ECF No. 358-4), NULIT-0000016918*

*Ex. E to Plaintiffs' Opening Mem. (ECF No. 358-7), YALE_LIT_0000314439*



*Ex. 1, YALE_LIT_0000311380[1]*

With approximately 450 documents on donor-linked admissions preferences with "NSA-style redactions" in hand, Plaintiffs now ask the Court to order Northwestern and Yale to unredact the names of donors and related information about the donors; to insert the code for each name of an applicant; and to unredact SAT scores and other data about the applicant so Plaintiffs can demonstrate that the donation influenced their admission.[2] Such an Order is consistent with the Court's ruling that donor names are not education records protected by FERPA, with the Confidentiality Order, ECF No. 254 ¶ 8, and with the Court's directive to bring

---

[1] An excerpt of Yale_LIT_0000311380 was appended to Plaintiffs' Opening Memorandum as Exhibit F (ECF No. 355-7). An excerpt containing this entry and the entries discussed *infra* is appended to this Reply as Exhibit 1. A full and complete copy of the native Microsoft Excel document will be submitted to the Court upon request.

[2] Academic credentials such as grade-point averages, standardized test scores, and most academic and athletic awards do not constitute personally identifiable information once the data have been de-identified, as here. Regulations defining personally identifiable information reference that data like a student's name, address, social security number, date of birth, and place of birth constitute personally identifiable information. 34 C.F.R. § 99.3. Nowhere does the regulation give any indication that information like grades and test scores qualify for such protection. *See id.* When coupled with de-identification, moreover, academic data do not permit "a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty." *Id.*

any live dispute regarding over-redaction of donation records pursuant to FERPA back to the Court for resolution, *see* Oct. 26, 2022 Tr. 40:22-25.

## ARGUMENT

**I.     INFORMATION ABOUT DONORS, INCLUDING THEIR NAMES, IS RELEVANT AND PROPORTIONAL TO THE NEEDS OF THE CASE.**

Plaintiffs will use donor names to prove that (1) Defendants were not entitled to antitrust immunity under the 568 Exemption; (2) the Court should analyze Defendants' conduct under the *per se* standard; and (3) Defendants' revenue-maximizing conduct defeats any procompetitive justifications for their anticompetitive conduct, if the Court were to apply the Rule of Reason.[3] Northwestern and Yale (with Brown, Columbia, Dartmouth, and Notre Dame) unsuccessfully sought to avoid discovery on donor-connected admissions and wealth. *See* ECF Nos. 276, 315. Northwestern and Yale's excessive redactions of donation records are yet another attempt to obstruct Plaintiffs' right to prove their case and show Defendants' persistent favoritism towards donors and affiliated applicants in the admissions process, and persistent unfairness towards middle- and working- class applicants seeking financial aid.

**A.  Absent a Stipulation by All Defendants That They Engaged in Pervasive Wealth Favoritism, Donor Names Are Relevant to Proving that Defendants Are Not Entitled to the 568 Antitrust Exemption.**

Northwestern and Yale maintain that because the documents in their current form show that the schools gave admissions preferences to applicants connected to wealthy donors, Plaintiffs are not entitled to any further information on whether these schools were need-blind. *See* Defs.' Mem. at 7. Northwestern and Yale thus contend that whether a school is need-aware is a binary inquiry, and that Plaintiffs are not entitled to full discovery on a school's need-aware

---

[3] Plaintiffs will also show that Defendants' efforts to conceal donor names, including in this litigation, shows a pattern of concealment that undermines their statute of limitations defense.

4

practices once Plaintiffs have found *any* evidence that the school is need-aware. This argument is wrong on its own terms, but fails for the threshold reason that *neither Yale nor Northwestern has stipulated* they are need-aware or spoken to the extent of their need-awareness; instead, Plaintiffs must still prove such facts.

When Plaintiffs seek discovery on issues they must prove, the standard under Rule 26 is relevance. Whether and to what extent Northwestern and Yale engaged in need-aware admissions is relevant to whether the 568 Exemption applies to them, or to any and all other members of the 568 Cartel, as this Court has ruled. *See* Feb. 8, 2023 Tr. 40: 10-14. Plaintiffs are entitled to obtain evidence showing the full extent of wealth favoritism and donor preferences to persuade a judge or jury that the 568 Exemption is not applicable.[4]

### B. Donor Names Are Also Relevant to Proving Whether the 568 Cartel Serves to Assist Defendants in Maximizing Revenue.

Under *Brown*, whether a university participated in the 568 Group for a "*pure* altruistic motive" or the "absence of *any* revenue-maximizing purpose" is relevant to analyzing Defendants' antitrust liability.[5] *United States v. Brown Univ.*, 5 F.3d 658, 672 (3d Cir. 1993). Northwestern and Yale argue, however, that whether a school engages in wealth favoritism in its admissions process to maximize revenue is irrelevant to whether the school's participated in the

---

[4] Northwestern and Yale attempt to relitigate whether their decision to drop the 568 Exemption as a defense means that they need not produce discovery on their wealth favoritism. The Court has rejected that argument, reasoning that so long as any Defendant invokes the 568 Exemption—which eleven Defendants continue to do—then any Defendant's need-aware practices bear on whether the exemption applies. *See* Feb. 8, 2023 Tr. 40: 10-14. Yale and Northwestern's decision to drop the exemption thus has no bearing on whether to order the schools to unredact all donor names.

[5] If the Court were to apply the analysis in *United States v. Brown Univ.*, 5 F.3d 658 (3d Cir. 1993), for example, the altruistic motives of a school's participation in the horizontal conspiracy goes to whether *per se*, rule of reason, or quick look governs the legal analysis, and to whether the challenged conduct violated the Sherman Act. *Id*. at 672, 674-75.

568 Group for revenue-maximizing purposes. *See id.* at 9-10. Not so. If a university favors wealthy applicants in admissions or effectively sells seats to help grow the endowment, and thus reduces the number of seats available to other applicants, those facts compel the inference that the university's participation in a group that sets floor prices for financial aid was consistent with the objective to maximize revenue, not to expand access to higher education for working- and middle-class students.

Northwestern and Yale present no grounds for precluding Plaintiffs, now, from pursuing this theory of their case. And the redaction of donor names from donation records effectively prevents Plaintiffs from developing whether and the extent to which Yale and Northwestern were selling seats, and at what prices. The failure to substitute a code for the applicant's name and redaction of academic information about the applicant prevents Plaintiffs from rebutting any defense that the student would have been admitted in the absence of the donation. In Yale's most recent production, for example, an entry in the ▮▮▮▮ section on a spreadsheet of ▮▮▮▮▮▮▮▮ states:



Ex. E to Pls.' Opening Mem., YALE_LIT_0000314439, first entry. Plaintiffs cannot use this document to develop whether Yale solicited a contribution at or around the time the applicants applied to Yale, nor can Plaintiffs determine the level of giving of this particular donor or whether this donor was able to exert influence over the admissions decisions of any other

6

applicants. Plaintiffs are unable to determine whether any internal discussions about the use of potential donations, the need for these donations, and the impact these donations might have on revenue or the endowment. All of this information is highly probative of whether Yale sought to maximize revenue in its admissions process such that its membership in the 568 Group served to further revenue-maximizing goals.

### C. Donor Names Will Assist the Court in Determining Whether It Is Appropriate to Order Defendants to Identify Custodians in the President's and Development Offices

Northwestern and Yale assert that Plaintiffs bring their motion "to relitigate the scope of donor-related discovery that the Court already decided at the February 8, 2023 hearing." Defs.' Mem. at 8. This is false. Several *bona fide* bases for Plaintiffs' motion are independent of whether discovery in the President's and Development Offices is warranted. In addition, access to unredacted donor names will allow upcoming depositions of individuals in the President's and Development Offices to be as productive as possible so as to allow Plaintiffs and the Court to determine whether designation of custodians in those offices is warranted.[6]

The Court stated that it was "putting a pause" on adding the Development and President's Office as custodians and would "readdress [the issue] in a couple of months once stuff is actually getting produced." Feb. 8, 2023 Tr. 52:2-5. If deponents say at depositions "I don't know," then the Court would let Plaintiffs "[g]o back and . . . get the documents and then make the person appear again to answer the questions they didn't remember the first time." *Id.* at 49:14-18. Considering the heavily redacted documents produced discussing donor-linked admissions, there

---

[6] Northwestern and Yale note that Plaintiffs "unilaterally chose to take [the depositions of Joan O'Neill and Morton Schapiro] off-calendar pending the outcome of this Motion." Defs.' Mem. at 8 n.8. No one could dispute that it would be inefficient to depose these individuals before the Court rules on whether Northwestern and Yale must unredact donor names, as such unredacted information would be a potential source of questions.

7

is a high probability that Plaintiffs' questions to deponents in the President's and Development Offices will yield many of the "I don't knows" that the parties should seek to avoid, as they could necessitate designation of additional custodians for discovery and potentially a second round of depositions for these witnesses.

Contrary to Northwestern's assertion, moreover, the donor names redacted in Northwestern's productions are relevant to President Schapiro's deposition. The fact that Plaintiffs cited two examples of dozens that were from before President Schapiro's tenure does not mean those are the only relevant documents on donor-linked admissions. Indeed, Northwestern concedes it produced "272 lists of applicants" linked to donors and wealthy individuals capable of making substantial donations. A substantial number of those were created during President Schapiro's tenure. And there is no good reason to assume that a new President is ignorant of a university's past major donors—to the contrary. Without donor names, Northwestern is maximizing the likelihood that President Schapiro's answers to Plaintiffs' questions about any donors will be "I don't know" or "I have no idea."

> **D. Unique Identifiers for Donor-Connected Applicants Are Not Sufficient to Allow Plaintiffs Relevant Discovery on the Donors to Whom These Applicants Are Connected.**

Northwestern and Yale appear to argue that because they have provided unique identifiers (UIDs) for donor-connected applicants in their productions, Plaintiffs have no legitimate need for the names of the donors to whom those applicants are connected. In fact, they had not done so in the donation records attached to Plaintiffs' motion as Exhibits B, C, E, and F, and in many other documents they have produced.[7] *See* Defs.' Mem. at 6. Plaintiffs are *not*

---

[7] Neither Northwestern nor Yale has fully complied with its obligation to give each donor-connected applicant a UID.

8

seeking to uncover the *names* of donor-connected applicants. Plaintiffs are seeking only the names of the donors or potential donors whom Northwestern and Yale themselves connected to various applicants, as well as the UIDs for those applicants.

In an era of divorce, of melded families, of at least one parent having a different name from their children, and of wealthy grandparents, revealing the name of a donor will not necessarily reveal the name of a coded applicant. In the few cases where disclosing the name of a donor could potentially allow an attorney to deduce the identity of the donor-connected applicant in an Attorneys' Eyes Only donation record, Plaintiffs ask the Court to order those *donor* names to be unredacted to allow Plaintiffs to prove their case. . Donor identities are relevant to Plaintiffs' claims as to both whether the 568 Exemption applies and which legal standard (*per se*, "quick look," or Rule or Reason) applies. And while donor-connected applicants in donation records are supposed to have UIDs that allow Plaintiffs to track these applicants across documents and across schools, *see* Confidentiality Order ¶ 8(c), there are no such procedures available to track *donors* in a similar manner.

II. **NORTHWESTERN AND YALE WILL INCUR MINIMAL, AND PROPORTIONAL, BURDEN IN UNREDACTING DONOR NAMES, INSERTING UIDS, AND UNREDACTING OTHER DATA, AS THE CONFIDENTIALITY ORDER REQUIRES**

---

Despite meeting and conferring with Northwestern and even providing Northwestern with a list of 172 documents that require UIDs, *see* Ex. A to Pls.' Opening Mem., Northwestern has still failed to comply with the Court's order requiring insertion of UIDs for donor-linked applicants. Nearly a third of the documents in the list of Bates numbers Plaintiffs provided have no UIDs whatsoever.

While Yale has more consistently provided UIDs, as is required, there are still many documents in which some UIDs are missing. *See, e.g.*, Ex. 1, YALE_LIT_0000311380,  tab, rows 14, 50, 52, 86, 88; tab, row 2; tab, rows 20, 30.

9

Northwestern and Yale maintain that they should not be required to unredact donor names, insert UIDs in the proper places, and unredact other data because doing so will be overly burdensome for them. They estimate "that initial first-level FERPA redactions to the admissions lists and donor records cost over $100,000 per school." What is at issue, of course, is the cost to these schools for correcting their failure to comply with the Confidentiality Order, their actions in undercutting the Court's rulings, and their efforts to prevent Plaintiffs from proving their case.

In that regard, and even in absolute terms, the quoted estimate of $100,000 per school is a modest sum for a case with billions of dollars of potential damages under the Sherman Act, even before trebling. Defendants are some of the wealthiest universities in the world, with combined endowments in the hundreds of billions. Modest discovery expenses to correct Defendants' errors and omissions that enable Plaintiffs to vindicate the rights of hundreds of thousands of working- and middle-class students are proportionate to the needs of the case.

Yale and Northwestern also insist that FERPA requires notice to students whose education records will be released pursuant to a court order. They do not acknowledge that the Court has entered an Order Regarding FERPA in this case. ECF No. 231. They also claim, without support, that they will have to "track down and notify hundreds of thousands applicants, some dating back over 20 years."[8] That is incorrect, for several reasons:

First, FERPA requires only that schools "make[] *a reasonable effort* to notify the parent or eligible student of the order . . . in advance of compliance." 34 C.F.R. § 99.31(a)(9)(ii). No

---

[8] Although Northwestern and Yale thus concede that they considered the wealth of hundreds of thousands of donor-linked applicants, Plaintiffs do not understand how these figures follow from the documents. Northwestern and Yale state that they have produced approximately 250 and 272 list of donor-linked applicants, respectively. *See* Defs.' Mem. at 2 n.2. These lists do not include hundreds of thousands of applicants. The burden of reviewing and unredacting donor names from these documents is minimal. Counsel have already reviewed the documents and have the names of the donors. Removing these redactions could be done in several days.

actual notice that would require "track[ing] down" students from 20 years ago is required. Second, the FERPA Order in this case requires only that "[t]he Notice shall be sent by email to the most recent electronic mail address in the Defendant's possession for each of the affected students or, if no such email address is available, by mail to the last known address of the applicant or student." Third, the evident existence of donation records documenting admission preference to "hundreds of thousands of applicants" linked to donors, in violation of the 568 Exemption, is a problem of Northwestern and Yale's own making. They could have abided by Section 568 and foregone wealth favoritism—intended, successfully, to help grown the schools' massive endowments—while participating in a group that required annual certifications that the schools admitted students without regard to students' financial circumstances. It would stand proportionality on its head to permit these Universities now to avoid the disclosure of their illegal conduct to Plaintiffs because it would be too "expensive" for them to do so.

### III. PLAINTIFFS' DECISION TO SEEK A COURT ORDER TO LIMIT REDACTIONS IS CONSISTENT WITH THE COURT'S PRIOR ORDERS

Northwestern and Yale assert that requiring them to unredact donor names from donation records would revise Court orders. They argue that Plaintiffs' request ignores the Court's recognition that a donor's name, *if* coupled with other information, *might* constitute an Education Record under FERPA. These arguments are wrong.

First, Defendants misquote the Court by substituting and even emphasizing their word "*would*" for the Court's word "might." *Cf.* Def. Mem at 3 (bottom line) *with* Oct. 26, 2022 Tr. 27:12. Plaintiffs have acknowledged the Court's actual statement and bring this Motion pursuant to that statement. Second, as discussed *supra*, the Court directed Plaintiffs to come back to the Court should any dispute arise with regard to excessive redaction of documents pertaining to donor-linked admission and wealth favoritism. *See* Oct. 26, 2022 Tr. 40:22-25. Third, as also

11

discussed *supra*, Northwestern and Yale ignore the Court's FERPA Order providing for a notice procedure to students and parents in the event "Defendants are required to produce Education Records and other documents containing Personally Identifiable Information." ECF No. 231 at 2.

### IV. PLAINTIFFS' MOTION IS ALLOWED UNDER FERPA, AND THE CONFIDENTIALITY ORDER PROTECTS STUDENTS' AND APPLICANTS' PRIVACY INTERESTS.

"FERPA permits disclosure of education records without consent in compliance with a lawfully issued subpoena or judicial order." 34 C.F.R. § 99.31(a)(9)(i). To obtain such an order, the moving party must show that its interest in obtaining the records outweighs the student's privacy interest. *McDaniel v. Loyola Univ. Med. Ctr.*, 2015 WL 13901029, at *2 (N.D. Ill. Apr. 28, 2015). Such is the case when the information sought is "clearly relevant" to the party's claims or defense. *Nastasia v. New Fairfield Sch. Dist.*, 2006 WL 1699599, at *1-2 (D. Conn. June 19, 2006). Plaintiffs have met this threshold here.

In addition to the fact that FERPA permits the disclosure of donor names in donation records, even where such names might identify the applicant, the Confidentiality Order in place further protects students' privacy. The Order allows Defendants to designate documents as "Confidential" and "Attorneys' Eyes Only" to prevent the public from seeing sensitive information. Defendants maintain that any such claims of protection "rings hollow" because of a prior brief, inadvertent disclosure that Plaintiffs rectified immediately. When Plaintiffs discovered that documents designated as "Confidential" and "Attorneys' Eyes Only" were filed on the public docket, counsel contacted the Court immediately, had the filing placed under a temporary seal, and successfully retained the seal moving forward. Counsel also assured Defendants and the Court that it has put in place additional redundant policies and procedures to prevent any potential inadvertent disclosures in the future. No Defendant has cited or alleged any

prejudice. Defendants thus unsuccessfully attempt to use Plaintiffs' error to divert this Court from what FERPA itself permits: the issuance of the Order Plaintiffs now seek.

## CONCLUSION

Plaintiffs respectfully request, for the foregoing reasons, that the Court issue an Order requiring Northwestern and Yale to:

- Disclose the names of all donors, including where the donor's name might possibly identify the applicant in question;

- Give notice pursuant to the Order Regarding FERPA entered in this case, for applicants Defendants genuinely believe require such notice under FERPA;

- Abide by the FERPA and Confidentiality Orders issued in this case;

- Insert UIDs for students in all documents pertaining to donor-linked admissions and wealth favoritism, as required by the Confidentiality Order; and

- Remove redactions of donor-linked applicants' academic credentials once UIDs have been inserted for these students.

Dated: May 24, 2023

Respectfully Submitted,

By:/s/*Robert D. Gilbert*
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
Steven Magnusson
**GILBERT LITIGATORS & COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
sschuster@gilbertlitigators.com
amarquez@gilbertlitigators.com
smagnusson@gilbertlitigators.com

/s/ *Edward J. Normand*
Devin "Vel" Freedman
Edward J. Normand
Peter Bach-y-Rita
**FREEDMAN NORMAND FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law

Daniel J. Walker

13

Eric L. Cramer
Caitlin G. Coslett
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
ccoslett@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

Robert E. Litan
Hope Brinn
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs*