UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>      Defendants. | Case No.: 1:22-cv-00125<br><br>Hon. Matthew F. Kennelly |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO LIMIT REDACTION OF DONOR NAMES AS TO NORTHWESTERN AND YALE**

  Plaintiffs respectfully submit this Memorandum of Law in support of their Motion to Limit Redaction of Donor Names as to Defendants Northwestern and Yale with the supporting Local Rule 37.2 Statement.

1

## INTRODUCTION

Plaintiffs move the Court for an Order that all donor names in Northwestern and Yale's Donation Records (as Plaintiffs have defined them in their requests for production) should not be redacted in Defendants' document productions. Northwestern and Yale take the position that donor names must be redacted from Donation Records under the Court's Confidentiality and FERPA Orders where revealing the names of the donors might reveal the identities of the donor-linked applicants, such as where a donor is identified as the relative of the applicant.[1] Plaintiffs maintain that even where a donor's name might allow a reader to guess or identify the donor-linked applicant, Defendants should still produce those names because (i) the Court has the authority to order production of these names in unredacted form; (ii) production of these names is directly relevant to Defendants' affirmative defenses; (iii) production of these names will aid the Court in determining whether Defendants should designate custodians in the President's and Development Offices so Plaintiffs can obtain discovery from these offices[2]; and (iv) the Court has visited this issue several times on multiple occasions.

On October 26, 2022, the Court heard argument on Plaintiffs' Motion Regarding Confidentiality and FERPA. ECF Nos. 223, 230, 231. At the hearing, the Court stated, "I do not believe that a donor name is an education record" and that is "about as close to a no-brainer as anything we can get into here." (Oct. 26 Hearing Tr. 27:9-10; 34:11-15; *see also* Oct. 26 Hearing Tr. Tr. 41:8-9) ("And I've already told you that I don't think a donor name is an education – or is a student record. So there we go.").) Plaintiffs raised concerns that defendants may still over-

---

[1] Other Defendants, including Dartmouth and Georgetown, also redact donor names in these circumstances.

[2] While the Court held that Defendants were not required to designate custodians in the President's and Development Offices, Defendants have interpreted this ruling such that they are not required to produce *any discovery from these offices.*

2

redact documents regarding donor-linked applicants under FERPA. (Oct. 26 Hearing Tr. 40:5-8.[3]) The Court responded by stating that it would prefer to resolve the issue when a dispute becomes ripe such that there is "something real, live, concrete with context" to address. (Oct. 26 Hearing Tr. 40:22-25.) Plaintiffs maintain that their disputes with Northwestern and Yale are now ripe for resolution with depositions imminent.[4]

## FACTUAL BACKGROUND

### I. Communications with Northwestern

On April 24, 2023, Plaintiffs sent a detailed letter to Northwestern's counsel raising, *inter alia*, concerns about improper redactions of Donation Records and explaining how Plaintiffs will be prejudiced in its upcoming deposition of former Northwestern President Morton Schapiro without access to the donor names. Plaintiffs identified the following document excerpts as examples of where the absence of donor names will prejudice Plaintiffs:



NULIT-0000016884.

---

[3] The Court described this concern as "the proposition that you're going to get emails that are going to look like the National Security Agency got at them first and they're going to be all black." (Tr. 40:16-18.) Indeed, the documents produced by Yale and Northwestern and discussed *herein* approach this level of redactions.

[4] Plaintiffs raise the issue specifically as to Northwestern and Yale because upcoming depositions with and Yale's Vice President for Alumni Affairs & Development Joan O'Neill and former Northwestern President Morton Schapiro on May 24 make the issue particularly pressing as to these schools.

███████████████████████████████████████████████████ NULIT-0000016918.

Exhibit A, 4/24/23 Email to S. Stein; Exhibit B, NULIT-0000016884; Exhibit C, NULIT-0000016918. Plaintiffs also appended a list of Bates numbers of 170 documents discussing donor-linked admissions that had donor names and/or other relevant information redacted. *See* Exhibit A.

On April 26, 2023, Northwestern responded on the issue of the redaction of donor names stating that it properly ███████████████████████████████████████████████

███████████████████████████████████████████████████

██████ *Id*. Northwestern also committed to producing an overlay for the two documents discussed in the email to un-redact certain information about donors that was inadvertently redacted—a donor's employer and a donation amount. However, it would not agree to produce the donor names from those documents.

On April 27, 2023, Plaintiffs and Northwestern continued to exchange emails about their respective positions. The Parties met and conferred on May 1, 2023 and agreed that the dispute is ripe for resolution.

II.     **Communications with Yale**

On April 24, 2023, Plaintiffs sent a detailed letter to Yale's counsel raising concerns about improper redactions of Donation Records and explaining how Plaintiffs will be prejudiced in its upcoming deposition of Joan O'Neill without access to the donor names. Plaintiffs identified the following document excerpts as examples of where the absence of donor names will prejudice Plaintiffs:

████████████████████████████████

4



YALE_LIT_0000314439.

YALE_LIT_0000311380.

Exhibit D, 4/26/23 Email to J. Lee; Exhibit E, YALE_LIT_0000314439; Exhibit F, Yale_LIT_0000311380.[5] Plaintiffs also appended a list of Bates numbers of 30 documents concerning donor-linked admissions that had donor names and other relevant information redacted. *See id.*

      Yale responded on May 1 asserting that it redacted donor names at times where required by FERPA in circumstances where donor names could identify applicants, but otherwise did not redact donor names where there was no clear linkage between the donor and an applicant. Plaintiffs met and conferred with Yale on May 2, and Yale maintained that under FERPA and the Confidentiality Order, it could not disclose donor names where such names might reveal the identity of a donor-linked applicant. A Court order would be required to produce a different result.

---

[5] Exhibit F is an excerpt of YALE_LIT_0000311380.

Plaintiffs ask the Court to order Defendants Northwestern and Yale to produce Donation Records that disclose, not redact, all donor names, even where the donor names might reveal the identity of a donor-linked applicant.

## ARGUMENT

**I. The Court May Order Production of Donation Records with Un-Redacted Donor Names Even Where Disclosing Such Names Could Identify a Student or Applicant.**

The Court has the authority to order production of education records protected by FERPA containing personally identifiable information (PII). "FERPA permits disclosure of education records without consent in compliance with a lawfully issued subpoena or judicial order. 34 C.F.R. § 99.31(a)(9)(i) and (ii); *see also McDaniel v. Loyola Univ. Med. Ctr.*, 2015 WL 13901029, at *2 (N.D. Ill. Apr. 28, 2015) ("Disclosure of educational records is permitted under FERPA if it is necessary to comply with a lawfully issued subpoena or judicial order.").

In order to obtain a court order for a party to release education records covered by FERPA, the party seeking disclosure must "show that the interest in obtaining the records outweighs the privacy interest of the student." *Id.* Although "the rights of litigants to discover and present relevant evidence in civil litigations is given great weight in federal courts" and "the liberal discovery rules tend toward admitting as much evidence as possible so that the facts may be accurately determined," the party seeking discovery must meet a greater burden for discovery of other kinds of information, like business records. *Ragusa v. Malverne Union Free Sch. Dist.*, 549 F. Supp. 2d 288, 292-93 (E.D.N.Y. 2008). Courts have found this burden satisfied when the information sought was "directly relevant," *Daywalker v. Univ. of Tex. Med. Branch at Galveston*, 2021 WL 4099827, at *5 (S.D. Tex. Sept. 9, 2021), "relevant at least to some degree," *Ragusa*, 549 F. Supp. 2d at 293, and "clearly relevant" to the plaintiff's claims, *Nastasia v. New Fairfield Sch. Dist.*, 2006 WL 1699599, at *1-*2 (D. Conn. June 19, 2006); *see*

6

*also McDaniel*, 2015 WL 13901029, at *3 (finding the defendants' interest in obtaining education records satisfied "because the records are relevant to defendants' affirmative defenses as well as the damages at issue").

> II. **Donor Names Are Relevant to Plaintiffs' Claims and Defendants' Affirmative Defenses and Outweigh Any Privacy Interests.**

The Court has repeatedly commented on the plausibility of Plaintiffs' theory of the case, and Plaintiffs' right to pursue it. (*See, e.g.*, Feb. 8 Hearing Tr. 41:18-21 (the Court explains that it "already ruled on [the relevance of evidence of wealth favoritism as to all Defendants] in the motion dismiss").) The Court stated that "a significant part of [Plaintiffs'] case is trying to get at . . . the nexus between a student and the family's finances, which may include donations or contributions and admission practices." (Oct. 26 Hearing Tr. 12:5-10.) Plaintiffs are therefore entitled to discovery on donor-linked admissions, including Donation Records with donor names because otherwise, as the Court stated, Plaintiffs would "be[] prevented from finding evidence that would either support or refute [their] claims." (*Id.* at 12:14-18.)

Plaintiffs require access to donor names contained in Donation Records in order to demonstrate that Defendants' participation in the 568 Cartel was not with "pure altruistic motive" and sought to maximize revenue. In *United States v. Brown University*, 5 F.3d 658 (3d Cir. 1991), the Third Circuit explained that it would apply a rule of reason analysis rather than a *per se* analysis in evaluating whether MIT's participation in the Overlap Group, the predecessor to the 568 Group, violated antitrust laws. *Id*. at 672. The Third Circuit reasoned that because MIT alleged that its participation in the Overlap Group derived from "pure altruistic motive and [] absence of a revenue maximizing purpose," per se analysis was inappropriate and the district court needed to evaluate the veracity of MIT's claims of altruism. *Id.* Thus, any evidence regarding donor preferences in admissions and the use of donations and donor preferences to

7

maximize revenue rather than promote social justice cuts to the heart of the case insofar as it contributes to the determination of the standard of review applied at summary judgment and trial and whether Defendants ultimately violated the antitrust laws. Plaintiffs are entitled to show that Defendants' participation in 568 was not justified on pro-social grounds where Defendants were effectively selling seats in order to maximize endowments and inflate the prestige of their universities. Detailed information about donors linked to applicants, communications between Defendants and applicant-linked donors, and any restrictions set forth in donations linked to applicants will allow Plaintiffs to advance this claim.

Plaintiffs have a critical need for Donation Records without redaction of the names of donors because this information is of central importance to attacking Defendants' defense that their actions are exempt from the antitrust laws under Section 568. Section 568 confers antitrust immunity only where all institutions agreeing on common financial aid principles admit all students on a need-blind basis. Plaintiffs allege that Defendants engage in wealth favoritism, thereby giving an admissions preference to applicants connected to past, present, and prospective donors. *See, e.g.*, Am. Compl. ¶¶ 134, 173-74, 177-78. Although Northwestern and Yale have withdrawn Section 568 as a defense asserted in their Answers to Plaintiffs' Second Amended Complaint, the Court recognized that "the proposition that by some but not all defendants withdrawing the defense, you've essentially removed yourselves from the need to provide discovery on these points really is not accurate. It's not right. It's incorrect." (Feb. 8, 2023 Hearing Tr. 42:4-8.) For this reason, the Court held that evidence of donor preference is still relevant because "everybody within the [568 President's Group] has to have been complying with 568 in order for anybody to take advantage of it;" "[i]t's hornbook law of conspiracy." (Feb. 8, 2023 Hearing Tr. 41:18-25.) Accordingly, any evidence demonstrating that Northwestern and

Yale engaged in wealth favoritism allows Plaintiffs to attack the remaining eleven Defendants' affirmative defense that invokes the exemption.

Without access to donor names, it will be impossible to depose relevant witnesses about donors identified in Donation Records. Using Northwestern and Plaintiffs' upcoming deposition of former president Morton Schapiro as an example, it will be impossible to question Dr. Schapiro as to whether he engaged in any conversations with a particular donor identified in the document previously referenced that states, ▌ Plaintiffs will be unable to determine whether Dr. Schapiro or any other Northwestern official explicitly discussed an increased probability of admissions for family members when soliciting or accepting donations from this donor or whether there was any negotiation as to a donation sufficient to confer an admissions preference or guarantee because Dr. Schapiro will have no idea to whom Plaintiffs are referring.

Redaction of donor names also makes it impossible for Plaintiffs to track a particular donor across documents and universities. Although donor-connected applicants and students will have unique identifiers in Donation Records, donors will not. Plaintiffs are thus unable to determine whether a particular donor was able to influence the admissions decisions of many family members and friends and whether the donation was actually made suggesting a quid pro quo. For instance, in one Yale document that appears to track applicants identified by the Development Office, the description of an applicant reads ▌ Exhibit G, YALE_LIT_0000311105. ▌ Plaintiffs are unable to determine whether this donor ever subsequently made a pledge, donation, or bequest to Yale at or around

9

the time of the applicant's admission or whether any Yale officials had any conversations discussing as much with the donor.

The Court has already recognized the importance to Plaintiffs' case of donors linked to applicants and ruled that Plaintiffs are entitled to prove their case. In holding that donor names alone are not education records within the meaning of FERPA, the Court recognized that "the nexus between a student and family's finances" was "a significant part of [Plaintiffs'] case." (Oct. 26 Tr. 12:5-11; *see also* Feb. 8 Tr. 42:14-15) ("[Discovery on donor-linked admission] is relevant. The motion is denied.").) Redaction of donor names from Donation Records will hamstring Plaintiffs in their ability to determine whether donor-linked applicants were given an admissions preference, the level of giving required to obtain an admissions preference, and any donation solicitations by Defendants that were of a *quid pro quo* nature.

Moreover, the privacy interest here is limited at best. FERPA was never enacted to protect institutions of higher education seeking to maximize their financial return from donors by effectively selling seats at their elite universities and giving preference to the wealthy in admissions. *Regardless, any donor-linked applicants whose identities might potentially be deduced by revealing their connected donor's name will still be protected by the Confidentiality Order.* All such documents may still be properly designated as Confidential, thereby protecting the document from disclosure to the public. *See* Confidentiality Order, ECF No. 254, at 5. Further, Defendants may designate any deposition testimony involving any donor names as confidential and/or attorneys' eyes only under the Order. *See id.* at 4-5.

It should therefore be apparent to the Court that Defendants' redactions are meant to avoid embarrassment and liability for violating Section 568 and engaging in secret price-fixing, and to shield their Presidents and their development offices, rather than to avoid revealing

10

confidential information about students which will in all events remain confidential by the Court-entered Confidentiality Order. As the Court previously noted, while revealing donor names "might be embarrassing to the universities, [] it's not a privacy interest." (Oct. 26 Tr. 28:7-8.)

### III. Disclosure of Donor Names Will Assist the Court in Determining Whether to Order Defendants to Designate Custodians in the President's and Development Offices.

On March 8, 2023, the Court ruled that Defendants need not designate custodians from its President or Development Offices, but that such ruling was without prejudice. ECF No. 330. If, for instance, depositions revealed that there were documents relevant to donor-linked admissions and wealth favoritism not yet produced and housed exclusively in one of these offices, the Court would entertain a renewed motion compelling some or all defendants to designate custodians in these offices. (Oct. 26 Tr. 40:22-25.) The redaction of donor names will make the identification and deposition of witnesses likely to know whether relevant documents exist in these offices much more difficult. Plaintiffs will be unable to refer to donors connected to applicants by name and thus witnesses will be unable to determine whether any documents related to those donors exist in the Development and President's Offices.

For example, at the forthcoming deposition of Northwestern's former President Schapiro, Plaintiffs envision a scenario in which Plaintiffs are unable to establish with any specificity which relevant documents may be the President's or Development Offices because Plaintiffs cannot ask, and the deponent cannot answer, questions about any specific donors and documents related to their donations. A Court order requiring Defendants to disclose donor names will allow for far more productive depositions and will also create a full record that will allow the Court to make a ruling that discovery within the Development and/or President's Offices is warranted.

11

**CONCLUSION**

Plaintiffs request, for the foregoing reasons, that the Court enter an Order directing Defendants Northwestern and Yale University to remove redactions of the names of donors from all Donation Records.

Dated: May 8, 2023  Respectfully Submitted,

By:/s/*Robert D. Gilbert*
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
Steven Magnusson
**GILBERT LITIGATORS & COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
sschuster@gilbertlitigators.com
amarquez@gilbertlitigators.com
smagnusson@gilbertlitigators.com

Eric L. Cramer
Caitlin G. Coslett
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
ccoslett@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

/s/ *Edward J. Normand*
Devin "Vel" Freedman
Edward J. Normand
Peter Bach-y-Rita
**FREEDMAN NORMAND FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law

Daniel J. Walker
Robert E. Litan
Hope Brinn
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs*