**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>Defendants. | Case No.: 1:22-cv-00125<br><br>Hon. Matthew F. Kennelly |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S MAY 31, 2023 RULING ON PLAINTIFFS' MOTION TO LIMIT REDACTIONS OR, IN THE ALTERNATIVE, MOTION FOR CLARIFICATION**

In the hearing in this matter on May 31, 2023, the Court denied without prejudice Plaintiffs' Motion to Limit Redactions As to Northwestern and Yale (the "Motion"), stating, "[Y]ou'll come back to me at some point in time when you've done the

1

depositions and you aren't able to get information that you think you need and can show me that you need in order to try to establish these claims." May 31, 2023 Hearing Tr. 18:25-19:3. Plaintiffs move for reconsideration for three reasons.

First, since Plaintiffs filed their Motion on May 9, 2023, Defendants Columbia, Cornell, Duke, Emory, Georgetown, Johns Hopkins, MIT, Notre Dame, Penn, Rice, and Yale have produced hundreds of additional, relevant documents demonstrating that the problem of redacted donor names goes far beyond what Plaintiffs or the Court understood at the time of the May 31 ruling.

Second, the audio interruption during the May 31 hearing may have diverted the Court from asking Plaintiffs' counsel to respond to Defendants' arguments about the applicability of FERPA. In reaching its decision on the Motion, the Court directly relied on Defendants' position that the documents in question are education records under that statute, but that position is erroneous under the law of this case.

Third, the Court appears to have misapprehended the 568 Exemption statute, as Defendants led the Court to believe that deponent answers about general university policies concerning donations and their influence on the consideration of applicants might be sufficient for Plaintiffs at this time. *See* May 31, 2023 Tr. 14:11-15:4 ("Why can't you ask about [wealth favoritism] in . . . terms of policies," and then when witnesses "say it depends[,]" . . . you come back to me . . . [and] I'm going to say okay, here it is, Northwestern, or here it is, Yale, now you're going to have to cough this up because I got people who can't answer questions and I got a plaintiff that can't figure out something that's critical to their case and it's not going to work that way."). The words of Section 568 require "all students [to be] *admitted* . . . without regard to the financial circumstances

2

*of the* student involved or the *student's family.*" 15 U.S.C. § 1 note (emphasis added). Plaintiffs therefore must tie donation influence *by the student's family* to an *admission.* Even the most damning revenue maximizing donation policy, such as is shown on the Yale exhibits to Plaintiffs' Memorandum in Support of Their Motion to Limit Redactions and Reply, does not prove Plaintiffs' case unless it is tied to the admission of a member of the donor's family.

Plaintiffs therefore ask the Court to reconsider its May 31 ruling or clarify that Plaintiffs need only show that the absence of donor names had an adverse effect on at least one witness for a given Defendant before the Court revisits the redaction of donor names coupled with the failure to insert unique identifiers (UIDs) for the applicant.

### I. LEGAL STANDARD

Motions to reconsider are interlocutory orders governed by Federal Rule Civil Procedure 54(b). *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911 (N.D. Ill. 2015). "A court may exercise its inherent authority to reconsider an interlocutory order because such orders are 'subject to revision at any time before the entry of judgment adjudicating all of the claims.'" *Zurich Capital Mkts. Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005) (quoting Rule 54(b)).

> A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error of reasoning but not apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court.

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (quotations omitted).

II.     **ARGUMENT**

    **A. Defendants have produced over 300 new documents that demonstrate that the scope of the problem regarding the redaction of donor names is much broader than was known at the time Plaintiffs filed their Motion to Limit Redactions as to Northwestern and Yale.**

On or after May 9, 2023, the date Plaintiffs filed their Motion to Limit Redactions, Defendants have collectively produced 311,165 additional pages of documents.[1] *See* Ex. A. Over 300 of these documents directly concern donor-linked applicants but contain redacted donor names and many missing UIDs for the applicants in question.[2] The sheer volume of new documents across nearly all Defendants shows that the problem of redacted donor names will more seriously hamper Plaintiffs' ability to prove the case as required by the 568 statute than was previously understood, and thus constitutes a significant change in fact warranting reconsideration. *Bank of Waunakee*, 906 F.2d at 1191.

On May 31, the Court denied Plaintiffs' motion without prejudice, finding that no circumstances convinced the Court it was appropriate to deviate from its February 8, 2023 oral ruling on a separate, albeit related, issue. *See* May 31, 2023 Tr. 18:15-21. That is, on February 8, the Court held that Defendants need not designate custodians in the President's and Development Offices until it is established that there are relevant documents in those offices that have not yet been produced. *See* Feb 8, 2023 Tr. 54:14-20;

---

[1] In addition, Defendants California Institute of Technology, Columbia University, Cornell University, Emory University, Georgetown University, Johns Hopkins University, Massachusetts Institute of Technology, Rice University, and Yale University collectively produced nearly 15,000 pages of documents after the Court's firm deadline for completion of May 15, 2023. *See* Ex. A.

[2] See Exhibit B for a list of documents concerning donor-linked admissions produced on or after May 9, 2023 in which donor names and other relevant information are redacted.

4

ECF No. 315. But the February 8 ruling focused on the President's and Development Offices, whereas the issue of redacting donor names pertains to documents Defendants have already produced from other custodians in other offices. The Court stated that it was "putting the pause" on designating custodians so that depositions could make clear whether there was a basis for believing that document production from the current sources was insufficient. *See* Feb. 8, 2023 Tr. 49:11-18, 54:14-25, 55:1-3.

Here, Plaintiffs are requesting that the Court require Defendants to unredact donor names, not to designate additional custodians or produce additional documents, which is a different issue. The only relationship between the February 8, 2023 ruling and Plaintiffs' Motion to Limit Redactions is that Plaintiffs maintain unredacting donor names is appropriate because Plaintiffs' access to donor names will make targeting documents in the custody of the President's and Development Offices, and the depositions of individuals in those offices, more productive.

Per the Court's May 31, 2023 ruling denying Plaintiffs' motion without prejudice, Plaintiffs must (1) depose all relevant witnesses, (2) wait until the deponents are unable to answer a question about the admission of donor-linked applicants due to the redactions, (3) file a renewed motion to limit redactions of donor names, (4) request to reopen the depositions of all affected deponents, and (5) redepose all such deponents. *See* May 31, 2023 Tr. 18:23-19:3 ("I don't want to get another two, six, eight, or 14 motions like this now. You're going to do it the way I said, and you'll come back at some point in time when you've done the depositions and you aren't able to get information that you need and can show me that you need in order to try to establish the claims."). The scope of the problem is compounded where Defendants have not inserted the UID for the applicant in

5

question because Plaintiffs must also prove that the applicant (a) was admitted and (b) was a family member. Without the UID, it will be difficult for a deponent to answer those questions. Plaintiffs will likely need to reopen the depositions of a majority of witnesses.

The Court acknowledged this likely outcome, stating, "[W]e can predict what's going to happen here. Somebody's going to get in a deposition – I'm still looking at Exhibit B, I guess, which is, you know, we're going to ask about the first entry here, you're going to say, what happened with that person? And the deponent is going to say, how the heck am I supposed to know. I can't even tell who it was. And then we're going to be right back where we are not with . . . plaintiffs not being able to get information that basically I more or less already concluded they need." May 31, 2023 Tr. 16:17-17:1.

The issue of donor preference in admissions directly touches on the roles and responsibilities of all witnesses involved in admissions, development, and enrollment management, and many, if not all, university presidents. Every Defendant is affected. *See* Ex. C, BROWN_0000150276; Ex. D, CALTECH000031816; Ex. E, Columbia_00292570; Ex. F, CORNELL_LIT_0000355733; Ex. G, DARTMOUTH_0000221307; Ex. H, DUKE568_0153213; Ex. I, Emory_568Lit_0092371; Ex. J, GTWNU_0000327521; Ex. K, JHULIT_0000060602; Ex. L, MITLIT-000649110; Ex. M, ND_0291829; Ex. N, NULIT-0000159158; Ex. O, PENN568-LIT-00158494; Ex. P, RICE_LIT0000168041; Ex. Q, UCHICAGO_0000282061; Ex. R, VANDERBILT-00301776; Ex. S, YALE_LIT_0000328851. Plaintiffs have noticed 22 upcoming depositions. Of those, Plaintiffs expect that at least 12 will directly implicate documents with redacted donor names. Extrapolating that figure to the total number of depositions to which Plaintiffs are

entitled, Plaintiffs expect that 98 witnesses may need their depositions reopened. Redeposing nearly 100 witnesses is inefficient and burdensome for all Parties, the Court, and for non-party former employees, many of whom no longer reside in the same city or even the same state as their former university employer. This Court recognized this probability: "So why are we going through this exercise? Why don't we just jump ahead and get to the next step so that people aren't spending the next three months basically in a big wheel-spinning exercise?". May 31, 2023 Tr. 17:2-5.

### B. The audio interruption during the hearing may have prevented the Court from obtaining Plaintiffs' response to the question of the impact of FERPA on uncovering donor names.

During the May 31, 2023 hearing, there was an audio interruption that required all participants to hang up from the telephonic hearing. *See* May 31, 2023 Tr. 5:7-8. At the time of the interruption, the Court was asking Defendant Northwestern to explain why FERPA protected donor names at all. *Id.* Tr. 4:25-5:6. The audio interruption may have diverted the Court from asking Plaintiffs' counsel to respond to Defendants' argument on which the Court directly relied in denying Plaintiffs' motion without prejudice. *Id.* 18:15-21 ("The reason I kicked that can down the road, which is more or less what I did, had to do with the arguably cumbersome nature of the procedures that are required under FERPA for disclosure of, quote/unquote, education records and personally identifiable information. And I thought it made more sense to not do that right now. I'm not persuaded that should change."). In other words, these technical difficulties may have caused the Court to misunderstand Plaintiffs' position, which is grounds for reconsideration. *Bank of Waunakee*, 906 F.2d at 1191.

Plaintiffs were prepared to respond to Defendants' argument by explaining (a) how Defendants misconstrued FERPA and that many or most of the documents containing

7

redacted donor names are not protected by FERPA at all, and (b) that under the FERPA Order entered by this Court (ECF No. 231), notification of the subset of applicants admitted on account of donor influence by their family is not at all burdensome.

Under FERPA, an "education record" is a record "*directly related* to a student" that is "maintained by an educational agency or institution or a party acting for or on behalf of the agency or institution." 34 C.F.R. § 99.3 (emphasis added). Education records "include but are not limited to grades, transcripts, class lists, student course schedules, health records (at the K-12 level), student financial information (at the postsecondary level), and student discipline files." U.S. DEPARTMENT OF EDUCATION, *Protecting Student Privacy: What Is an Education Record?* (last visited June 15, 2023), https://studentprivacy.ed.gov/faq/what-education-record. So under the statute and regulations, not every document containing a student's name is an education record.

Instead of engaging with the Court on whether the donation records, which analyzed the *donor's* lifetime giving, net worth, and capacity for future donations, with only incidental mention of the applicant's qualifications, were "directly related to a student" such that they constituted "education records" under FERPA, Defendants argued that donor names were personally identifiable information (PII) under FERPA. However, whether information is PII is only relevant *once it has already been established that the document is an education record*. If donation records are *not education records*, then it does not matter whether the document contains information that might identify a student. Plaintiffs maintain that most, if not all, the donation records presented to the Court are not education records because they analyze information about the *donors and their donations*, not the applicants, and the donation records are nothing like the documents contained in

8

the illustrative list of education records articulated by the U.S. Department of Education. *See* U.S. DEPARTMENT OF EDUCATION, *Protecting Student Privacy: What Is an Education Record?* (last visited June 13, 2023), https://studentprivacy.ed.gov/faq/what-education-record.

If the Court ordered Defendants to disclose donor names,[3] all Defendants would have to do if they were truly concerned that such disclosure violated FERPA would be to make "*a reasonable effort* . . . to notify the parent or eligible student of the [Court's] order . . . in advance of compliance." 34 C.F.R. § 99.31(a)(9)(i)-(ii) (emphasis added). Pursuant to the FERPA Order entered in this case, notice sent "by email to the most recent electronic mail address in the Defendant's possession for each of the affected or, if no such email address is available, by mail to the last known address of the applicant or student . . . will be deemed a reasonable effort irrespective of whether any electronic mail address or physical address proves to be outdated." FERPA Order, ECF No. 231, at 3. Court-ordered disclosure of donor names thus does not require Defendants to undertake burdensome efforts to comply with FERPA. All that is required is that Defendants send the form notice already prepared and attached to the FERPA Order to the last known email address or mailing address of a subset of affected individuals.

### C. The lack of donor names impacts more than depositions.

The 568 Exemption requires only that all *admitted* students be *admitted* without regard to *their or their family's* financial circumstances. 15 U.S.C. § 1 note. As a result, Plaintiffs must be able to demonstrate that donor-linked applicants were *family members*

---

[3] FERPA permits disclosure of education records without consent in compliance with a lawfully issued subpoena or judicial order. 34 C.F.R. § 99.31(a)(9)(i) and (ii).

who were *admitted* with consideration of their financial circumstances to prove that Defendants were not entitled to the 568 Exemption.

The Court's May 31 ruling requires Plaintiffs to wait until all relevant deponents have been unable to answer questions about donors and whether their family member was admitted before Plaintiffs can renew their motion to limit redactions. Defendants actually argued the statute backwards to the Court. *They argued that they redacted donor names where they might identify the applicant as a family member.* That is precisely what Plaintiffs must prove, and this Court repeatedly ruled that Plaintiffs are entitled to prove their case. *See, e.g.* February 8, 2023 Tr. 42:1-15; ECF No. 315. A donor or donation unrelated to a family member (and thus not redacted by Defendants) is not as relevant.

While six Defendants (including Northwestern and Yale) dropped their 568 Exemption, they have not stipulated that donations (a) resulted in the admission of family members, (b) quantified how many slots they sold to the wealthy and the revenue they maximized as a result each year, or (c) the steps they took to hide their years of voluntary violations of the 568 Exemption and the Sherman Act. Absent such a stipulation by every Defendant, they have not given Plaintiffs or this Court much of a choice how to proceed.

Moreover, the Court's ruling appears to embody the assumption that Plaintiffs' access to donor names is only relevant to depositions. However, Plaintiffs also require donor names in order to conduct statistical analyzes of admissions data to determine whether and to what extent donor-linked applicants were given *preference* in the admissions process.

███████████████████████████████████████████████

███████████████████████████████ ███████████████

██████ ████████████████████████████████████████████

████████████████████████████████████████████

██████ making statistical analysis with only the structured data impossible. And for other Defendants, no such flags exist in the structured data that allow Plaintiffs to determine whether an applicant received special consideration, leaving Plaintiffs with only the redacted donation records. Moreover, redacted donor names prevent Plaintiffs from determining a donor's total contributions to a Defendant, donations closely following an applicant's admission, or whether a donor was able to influence the admission of multiple applicants. These data are critical for determining what level of wealth was required for a donor connection to tip the scales of a related applicant, and to what extent the scales were tipped.

Should Plaintiffs be required to wait until the conclusion of all depositions of admissions officers, development officials, enrollment management administrators, and presidents to obtain the names of donors, Plaintiffs will be prejudiced in their ability to prove their case.

> **D. Defendants' compounded failures to comply with the Confidentiality and FERPA Orders make it impossible for Plaintiffs to prove that donor-linked applicants were admitted because of their family donor affiliations or even admitted at all.**

Defendants shrewdly compounded the redaction of donor names with the omission of UIDs required by the Confidentiality Order and the excessive redaction of the summary descriptions for admissions decisionmakers, thus making it next to impossible for plaintiffs to prove the admissions *decision* element of the 568 Exemption. *See* Confidentiality Order, ECF No. 254, ¶ 8I; 15 U.S.C. § 1 note (requiring that students be "*admitted*" . . . without regard to the financial circumstances of the student or the student's

11

family" (emphasis added)). The Court warned Defendants not to produce National Security Agency-style redactions,[4] but that's precisely what Northwestern and Yale (whose exhibits were previously before the Court), and now Columbia, Cornell, Dartmouth, Emory, and Georgetown among others, have produced. *See, e.g.*, Ex. E, Columbia_00292570; Ex. F, CORNELL_LIT0000355733; Ex. H, DUKE568_0153213; Ex. G, DARTMOUTH_0000221307; Ex. I, Emory_568Lit_0092371; Ex. J, GTWNU_0000327521. Even the Court was surprised: "I guess I wasn't specifically aware that the latter was going to happen. . . ." May 31, 2023 Tr. 18:8-9. "The latter" did not have to happen: these are "donation records," separately defined in the Confidentiality Order from "education records." ECF No. 254 at ¶ 8(a)(3)-(4). *Defendants should not have redacted anything*. Moreover, Defendants could certainly have left unredacted some applicant data such as SAT/ACT/AP scores, high school class rank or GPA, etc. that would not have identified the applicant. Instead, Plaintiffs are left with the nearly impossible task of deciphering documents that fail to provide unique identifiers for students, improperly redact their academic credentials, and redact donor names.

### III.   CONCLUSION

In light of the large number of relevant documents produced after Plaintiffs filed their Motion to Limit Redactions, the audio interruption that occurred during the May 31 hearing, and Defendants' misdirection of what the 568 statute requires Plaintiffs to prove, Plaintiffs respectfully request that the Court reconsider or clarify its ruling denying Plaintiffs' motion without prejudice. Plaintiffs specifically request that:

- the Court order Defendants to unredact all donor names; and where the structured data does not yield a UID that must be inserted in the donation record, either create

---

[4] Oct. 26, 2022 Hearing Tr. 40:16-18.

one or name the applicant, and if defendant believes it necessary, give FERPA notice for the subset of applicants at issue;

- the Court order Defendants to unredact applicant data such as SAT/ACT/AP/GPA information, the captaincy of a sports team, and other data that do not in the summary document identify the applicant;

- should the Court decline to order Defendants to unredact all donor names, that the Court clarify that Plaintiffs need only show that the absence of donor names had an adverse effect on one witness per Defendant before Plaintiffs may come back to the Court to reconsider whether donor names should be unredacted.

Dated: June 15, 2023

By:/s/*Robert D. Gilbert*
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
Steven Magnusson
**GILBERT LITIGATORS & COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
sschuster@gilbertlitigators.com
amarquez@gilbertlitigators.com
smagnusson@gilbertlitigators.com

Eric L. Cramer
Caitlin G. Coslett
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
ccoslett@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

Respectfully Submitted,

/s/ *Edward J. Normand*
Devin "Vel" Freedman
Edward J. Normand
Peter Bach-y-Rita
**FREEDMAN NORMAND FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law

/s/ *Robert E. Litan*
Daniel J. Walker
Robert E. Litan
Hope Brinn
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

13