UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SIA HENRY, *et al.*, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BROWN UNIVERSITY, *et al.*,<br><br>Defendants. | Case No.: 22-cv-00125<br><br>Hon. Matthew F. Kennelly |

**GEORGETOWN UNIVERSITY'S RESPONSE
TO MOTION TO COMPEL AND FOR SANCTIONS AGAINST
<u>GEORGETOWN UNIVERSITY AND ITS COUNSEL AND FOR RELATED RELIEF</u>**

## INTRODUCTION

Plaintiffs' counsel has turned what should be a routine discovery dispute into a deeply personal and vitriolic attack on Georgetown and its counsel the tone and tenor of which are both offensive and unnecessary. There simply is no basis to conclude that (1) Georgetown violated any Court orders in its production of Mr. Deacons' transcript; (2) that its counsel misled the Court about appropriate custodians in the parties' January 2023 Joint Status Report; or (3) that Georgetown should be ordered to do anything more than what Georgetown already has agreed to do as to documents relating to its ███████████████████████ The motion should be denied in its entirety.

*First*, Plaintiffs are flatly wrong that Georgetown violated this Court's orders by producing the transcript of Mr. Deacon's DOJ testimony on June 22. Plaintiffs ignore that Mr. Deacon's transcript was created *after* the filing of the complaint and thus only had to be produced if responsive to the Court's March 8, 2023 order permitting limited post-complaint discovery. As explained below, the transcript is not responsive to the March 8 order. Georgetown nonetheless chose to produce it (contemporaneously with other Defendants), and did so a week in advance of the first deposition of any Georgetown witness. Georgetown should not be penalized for going beyond what the Court's orders require.

*Second*, there is no basis for sanctions in connection with Georgetown's production of information regarding its "███████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

█████████████████ In short, Georgetown conducted a comprehensive and reasonable search and produced more than sufficient information for Plaintiffs to evaluate ████████████

████████████████████████████████████████████████████

Moreover, in response to the concerns Plaintiffs raised at Ms. Costanzi's deposition about the lack of any copies of the *original* documents sent from ████████████████████████

████████████████████████████████████████████████████ Georgetown has agreed to conduct a supplemental search for those materials (its searches have already identified additional relevant documents and these documents will be produced promptly after de-identification under FERPA). Georgetown has also agreed to further meet and confer in good faith with Plaintiffs should they believe that they need any *additional* information from Georgetown's President's or Advancement Offices on this issue. In other words, the remedial measures Georgetown has already agreed to undertake are more than sufficient to redress Plaintiffs' purported grievances.

*Third*, Plaintiffs' accusation that Georgetown and its counsel knowingly misled the Court about appropriate custodians in the January 13, 2023 Joint Status Report is specious and offensive. None of the statements Plaintiffs identify were misleading. To the contrary, Georgetown has followed *exactly* the process outlined in that Report and which the Court ordered: prioritizing discovery from the Admissions Office, and considering, in good faith, requests for additional discovery from either the President's or Advancement Office where Plaintiffs believe additional discovery is warranted.

*Fourth*, Plaintiffs' request that the Court order Georgetown to produce records from the President's and Advancement Offices without redactions required by FERPA has no basis in law. The Court has rejected similar arguments in the past, and should do the same here.

## BACKGROUND ON PRESENT DISPUTE

The present dispute grows out of Georgetown's June 22 production of documents in advance of the scheduled deposition of Melissa Costanzi on June 29. Plaintiffs' counsel began that deposition with a lengthy diatribe about the instant motion. *See supra* p. 1; Ex. 2, Costanzi Tr. 18:7-29:5. A week later, they repeated their claims in writing, stating that they would move for sanctions unless Georgetown agreed to the following, in sum and substance:

> 1. Designate the entire President's Office as a custodian, and produce "all documents responsive to Plaintiffs' Requests for Production ('RFPs') within 30 days, without redaction of donor names."
>
> 2. Do the same as to Georgetown's Advancement Office.
>
> 3. Produce all ███████████████ without redactions, not later than July 25, 2023;
>
> 4. After Georgetown has produced all ███████████ make Ms. Costanzi available for a second deposition that would not count against Plaintiffs' total number of deposition; and
>
> 5. Pay Plaintiffs' attorneys fees in connection with the alleged misconduct.

Pls. Br., Ex. 6 at 8-9.[1]

The parties met-and-conferred on July 10. On July 12, Georgetown responded to Plaintiffs' demand stating that "we strongly disagree that we have made any 'knowingly false' representations to the Court, or otherwise did anything improper with respect to the production of ██████████████████████████████████████████████████ but that to resolve the dispute, Georgetown would agree to do the following:

---

[1] In this Response, "Pls. Br., Ex. __" refers to exhibits to Plaintiffs' Memorandum of Law In Support of Their Motion to Compel and For Sanctions, and "Ex. __" refers to exhibits to the Declaration of Daniel T. Fenske in support of this Response.

3

- Conduct a supplemental search for any original ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from the Admissions Office and produce them. Georgetown also agreed that it would go beyond the requirements of the Court's confidentiality order and insert unique identifying numbers ("UIDs") into those documents without regard to whether the document qualifies as a "donation record" under that order. Georgetown stated that it could not agree to produce the documents without redactions because those redactions may be statutorily required by FERPA.

- Search for and produce from the *President's Office's* files any additional copies of the original ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- After production of the above information, Georgetown agreed to meet-and-confer with Plaintiffs as to any *additional* searches of either the President's or Advancement Offices that may be appropriate follow-up to the above production.

*Id.* at 6-8. Georgetown reiterated that this is "exactly the process that the Defendants identified in the January 13, 2023 Joint Status Report as to additional discovery from the President's or Advancement Offices, and is appropriate here."[2] *Id.* at 7. Plaintiffs rejected Georgetown's offer and this motion followed. *Id.* at 1-3.

### LEGAL STANDARD

"Before imposing sanctions …, a court first 'must make a finding of bad faith, designed to obstruct the judicial process, or a violation of a court order.'" *Benefit Cosms. LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 2022 WL 900194, at *5 (N.D. Ill. Mar. 28, 2022) (quoting *Fuery v. City of Chicago*, 900 F.3d 450, 463–64 (7th Cir. 2018)). But sanctions are not appropriate if a party relies upon a reasonable—even if ultimately mistaken—interpretation of an order. *See LKQ Corp. v. Gen. Motors Co.*, 2022 WL 14634800, at *5 (N.D.

---

[2] Pls. Br., Ex. 6 (quoting ECF 274 at 29-30) ("If, after Defendants' production of admission-related documents and data, Plaintiffs can point to follow-up discovery they need to show that an admissions decision was influenced by the President's or Development Office, Defendants will confer with Plaintiffs in good faith to create targeted searches for documents from those offices that Plaintiffs believe are relevant to a donation allegedly affecting an admissions decision.").

4

Ill. Oct. 25, 2022). As detailed below, Plaintiffs have not established any conduct warranting any form of sanction, much less the extreme sanctions they propose. *See NeuroGrafix v. Brainlab, Inc.*, 2020 WL 6153269, at *2 (N.D. Ill. Oct. 11, 2020) ( "[a]ny sanction . . . must be proportionate to the circumstances.").

## ARGUMENT

### I. Georgetown Timely Disclosed Mr. Deacon's Transcript.

On May 18, 2022, Georgetown's Dean of Admissions, Charles Deacon, was deposed by the U.S. Department of Justice and the New York Attorney General in relation to the 568 President's Group. *See* Ex. 14, Deacon Tr. Georgetown produced the deposition transcript to Plaintiffs on June 22, 2023. Fenske Decl. ¶ 12.

Plaintiffs claim that the transcript should have been produced by either the March 3, 2023 date for substantial completion of responses to Plaintiffs' first RFPs or, at the latest, by the May 15, 2023 deadline the Court imposed for final completion as to those RFPs. Pls. Br. 4, 6-7. Plaintiffs are wrong.

At a hearing on February 23, 2023, the Court ruled that the Plaintiffs were entitled to certain limited post-complaint discovery as to admissions and financial aid policies. 2/23/2023 Hr'g Tr. 33:19-34:16. Its subsequent order (ECF 330) defined the scope of those production obligations and set different production deadlines: Defendants were to produce post-complaint "documents concerning Defendants' admissions and financial aid policies and practices, *for students attending through the academic year that began in or about August 2022*" by March 3, 2023, and the same type of documents "*for the students expected to be attending in the academic year that begins in or about August 2023*" by July 1, 2023. ECF 330 ¶ 3(A), (B) (emphasis added). Mr. Deacon's transcript, however, does not fall within the scope of the Court's order. Indeed, Mr. Deacon made clear in his testimony he was *not* describing any admissions policies or practices specific to the

5

2022 or 2023 class years—the only types of documents responsive to the Court's March 8 order. Rather, he testified that Georgetown's admissions policies had been consistent throughout his decades-long tenure at the university. *See* Ex. 14, Deacon Tr. 233:8-14; *id.* at 29:10-13.[3]

Notwithstanding that Georgetown (and a number of other Defendants) determined that the DOJ transcript was not responsive to the March 8 order, in the lead-up both to Ms. Costanzi's June 29, 2023 deposition and the July 1, 2023 discovery deadline, Georgetown again considered the Deacon transcript and elected to produce it so that Plaintiffs had an opportunity to question appropriate witnesses about the substance of the testimony and to avoid later discovery disputes about whether the transcript should have been produced. Fenske Decl. ¶ 14.[4] Georgetown should not be penalized for acting to ensure full disclosure on this issue. At the very least, Georgetown's determination that the transcript was not responsive to the March 8 order was reasonable, which defeats a claim for sanctions. *See LKQ Corp.*, 2022 WL 14634800, at *5 ("The Court will not impose sanctions on a party due to its reasonable interpretation of a court order.").

## II. There Is No Basis For Sanctions As To The ▬▬▬▬▬▬▬

### A. Background on Georgetown's ▬▬▬▬▬ And Its Productions Regarding ▬▬▬▬▬

The Court previously ruled that Plaintiffs are entitled to discovery on the influence, if any, of donations on admissions.[5] Accordingly, Georgetown identified a number of document

---

[3] And Georgetown notes that, after the Court limited Plaintiffs to 100 document requests in total, Plaintiffs expressly withdrew their prior requests for documents relating to government or regulatory investigations (RFP Nos. 162 and 164). Fenske Decl. ¶ 15.

[4] Each Defendant that had an employee deposed by DOJ made its own responsiveness determination regarding that deposition transcript and any applicable production deadline/whether to nonetheless produce the transcript if not responsive.

[5] Plaintiffs (at 3-4) assert that the Court's decision on Defendants' motion to dismiss "established that the ability of an applicant or a family member to make or pledge a donation, or the making of a donation, are 'financial circumstances' that Section 568 barred universities from considering in admitting applicants." This is not correct. The Court held that it "need not rule on this issue at this time" and assumed for purposes

custodians in the Admissions Office, including Charles Deacon, Georgetown's longstanding Dean of Admissions, and his executive assistant, Valerie Youmans—the two individuals in the Admissions Office with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See infra* p. 9. In March 2023, Georgetown produced data from the Admissions Office's Slate database that identifies ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ since approximately 2017-2018, the time period covered by its current Admissions database. Fenske Decl. ¶ 4; *See* Ex. 2, Costanzi Tr. 154:11-18; 291:3-292:6 (describing how to identify this information in Georgetown's admissions data).

Georgetown has also produced a wealth of information about the scope of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. On February 24, 2023, for example, Georgetown produced a formal report describing that policy in detail: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Fenske Decl. ¶ 3; Ex. 1, GTWNU_0000058201. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

of the motion that "plaintiffs must plausibly allege that the defendants consider some applicants' need for financial aid in their admissions decisions." ECF 185 (MTD Op.) at 6-8. Plaintiffs also assert (at 4) that it is now "the law of the case" that if one member of the 568 Group was not need-blind, then the 568 exemption does not protect anyone. But that is not the law. Rather, "any order or other decision … that … does not end the action … may be revised at any time before the entry of a judgment." Fed. R. Civ. P. 54(b). Indeed, this Court has recognized that Defendants may ultimately convince it otherwise on this precise point. *See* 2/3/2023 Hr'g Tr. at 42:1-2.

*Id.* The balance of Georgetown's production includes a host of internal communications relating to ▮. *See, e.g.*, Exs. 3-6.

Georgetown has also produced an abundance of information from the Admissions Office on ▮. This includes information regarding ▮

*See, e.g.*, Exs. 7-8, 10, 13; *see also* Ex. 9, GTWNU_0000058219; Fenske Decl. ¶¶ 7-8.

    **B.**    **Plaintiffs Repeatedly Mischaracterize Mr. Deacon's Testimony As To The ▮.**

In addition to grossly mischaracterizing Georgetown's (and its counsel's) discovery efforts in this matter, Plaintiffs completely mischaracterize Mr. Deacon's testimony in a vain effort to manufacture some offense.

*First,* Plaintiffs assert that Mr. Deacon testified that ▮ Pls. Br. 1-2. That simply isn't accurate. While it is true that Mr. Deacon testified that ▮, Ex. 14, Deacon Tr. 90:23-91:11, he also testified that ▮

8

██████████████████████████████ *Id.* at 91:6-23; Ex. 2 Costanzi Tr. at 51:1-11; 105:22-109:11 (describing ██████).

*Second*, Plaintiffs are wrong when they claim that Mr. Deacon's testimony establishes that ████████████████████████████████ Pls. Br. 6. Mr. Deacon testified that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Ex. 14, Deacon Tr. 94:16-25, 96:19-25. To be sure, Mr. Deacon also acknowledged t██████████████████████████████████████. *Id.* at 92:13-19 (████████████████████████████████████████████████████████████████████████).

    **C.**    **Plaintiffs' Claim for Sanctions As To ████████ is Not Warranted.**

Sanctions are not warranted for Georgetown's failure to produce in advance of Ms. Costanzi's deposition the original ████████████████████████████████. Most importantly, information as to ████████████████████ is contained in Georgetown's structured data, which Georgetown has produced for the entire timeframe covered by its current database. Fenske Decl. ¶ 4. And Georgetown nonetheless undertook reasonable steps to identify any copies of ██████ in the Admissions' Office's files. It designated both Mr. Deacon and Ms. Youmans as custodians given their role ████████████████████████. Fenske Decl. ¶¶ 2, 9. And as described above, Georgetown produced substantial materials as to ██████. *See supra* p. 7-8. Further, following Plaintiffs' identification of this issue, Georgetown has agreed to conduct a supplemental search for any ████████████████ in either the Admissions *or* President's Office files. It has, in fact, found some responsive documents, and will produce them

9

promptly after de-identification consistent with FERPA and the Court's Confidentiality Order, *and* after inserting UIDs into those documents regardless of whether such insertion is required by that Order. *See supra* p. 4. At no point did Georgetown or its counsel deliberately or knowingly hide or elect not to produce responsive documents. Fenske Decl. ¶¶ 11.

Plaintiffs' proposed sanctions are unwarranted because "[a]ny sanction . . . 'must be proportionate to the circumstances.'" *NeuroGrafix*, 2020 WL 6153269, at *2. Plaintiffs' proposal—directing that Georgetown's entire President's and Advancement Offices be designated as full custodians for every one of Plaintiffs 93 RFPs; that Ms. Costanzi sit for another deposition; and that Georgetown pay certain costs—are unrelated to the discovery issues at the center of this dispute: ███████████████████████████████ Georgetown has *already* offered to search for that information in the President's Office's files (as well as Admissions). *See supra* p. 4. It has further agreed to search the President's Office's files for any documents describing why ███████████████████████████████, and has offered to meet and confer with the Plaintiffs about any additional information they may need to evaluate those reasons from *both* the President's *and* Advancement Offices to the extent Plaintiffs believe that the produced documents are somehow not sufficient. *Id.* The remedy that Georgetown has already offered—and is currently working to implement—is tailored to provide Plaintiffs *exactly* what they claim to need ████████████████. Any additional sanction is overkill and unnecessary.

Plaintiffs' proposed remedies, by contrast, are plainly designed to impose staggering costs on Georgetown unconnected to any issues relating to ████████████████ For example, Plaintiffs request the Court to order that Georgetown designate its President and head of Advancement as "custodians of record" for each office and for all of Plaintiffs' 93 RFPs. *See* Pls. Br. 14-15. That would require Georgetown to search all documents maintained by all employees

10

in each office, regardless of whether those individuals have any responsibilities as to ▬▬▬ ▬▬▬▬▬▬▬ and as to RFPs having nothing to do with that issue. Collecting, processing, and reviewing all of their documents would impose an extreme and unnecessary burden.[6]

Nor is there any reason for an additional deposition of Ms. Costanzi. She already testified that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, Ex. 2, Costanzi Tr. 291:3-19, so asking her about ▬▬▬▬ would be pointless. Plaintiffs have professed the need to ask Ms. Costanzi if ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Pls. Br. 8, 13. But Georgetown will have to produce ▬▬▬ in question in redacted form in compliance with federal law, *see infra* p. 14, so that will not be possible. And Plaintiffs have obvious alternative ways to elicit that information, such as serving an interrogatory or Rule 30(b)(6) notice requesting that information. The Court has previously noted that these kind of alternative avenues for discovery may be more efficient to obtain information like this. *See* 2/8/2023 Hr'g Tr. 43:8-22. In short, an additional deposition would serve only to burden Ms. Costanzi for no probative benefit.[7]

**D.  Georgetown And Its Counsel Did Not Mislead The Court In The January 13, 2023 Joint Status Report**

Plaintiffs' claim that Georgetown knowingly misled the Court about appropriate custodians in the January 2023 Joint Status Report is demonstrably false. In that Report, Defendants collectively argued that ordering across the board discovery from all Defendants from their President's or Advancement Offices was not warranted because either (1) documents in the files of the President's or Advancement Offices would be irrelevant if they were not communicated to

---

[6] All of this would be on top of the tens of thousands of documents, and millions of pages, that Georgetown has already produced.

[7] This argument also addresses Plaintiffs' requests for certain costs. The costs that Plaintiffs seek "at a minimum" (Pls. Br. 15 (¶ 5)) include (1) the time spent preparing for a second deposition of Ms. Costanzi, which Georgetown respectfully submits is not appropriate; and (2) the costs Plaintiffs incurred in bringing this motion, which they would not have incurred if they accepted Georgetown's reasonable offer for additional discovery that Georgetown has described herein.

admissions decisionmakers or (2) any such documents could be cumulative of other documents produced from Admissions' files showing the impact of donations on admissions. *See, e.g.*, ECF 274 at 22 ("Defendants respectfully submit that adding custodians from the Development Office or the President's Office at this stage of the case is inappropriate in that it would lead to the search for, and production of, documents that are irrelevant *or* cumulative and is disproportional to the needs of the case given the custodians those Defendants are already agreeing to search.") (emphasis added). Defendants further argued that Plaintiffs' proposed discovery was disproportionate because they do not need discovery as to "every document about every applicant whose financial circumstances may have been considered as part of the admissions process," but rather need only "sufficient evidence to test the 568 Exemption." *Id.* at 29.

Against this backdrop, Plaintiffs' claim that Georgetown's counsel knowingly misrepresented the facts in the Joint Status Report is specious. Plaintiffs argue that Georgetown's counsel "misrepresented" the facts because that Report stated that ███████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████ ███████████████ ██████████████████████████████████. ECF 274 at 21; Pls. Br. 1-2, 10. But Defendants' submission in the Joint Status Report *presupposed* that for many Defendants there would be involvement in either their President's or Advancement Offices in certain aspects of admissions decisions, and the parties negotiated search terms designed to uncover those very communications. *See* ECF 274 at 28 ("Defendants' planned productions, using search terms already negotiated by the parties, are designed to pick up communications between either a President's Office or Development Office and persons in Admissions asking that an applicant be given favorable treatment by Admissions or other evidence that an admissions office

12

for at least one Defendant considered an applicant's financial circumstances while a member of the 568 Group."). That would make no sense if any Defendant simultaneously made a factual representation that no personnel from either the President's or Advancement Office had any role in the admissions process.

Nor did Defendants ever represent that there would be *no* potentially relevant documents in either the President's or Advancement Offices. In fact, as noted above, Defendants' proposal was premised on the reality that there is no *need* for discovery of each and every document about the influence of donations on admissions. *See* ECF 274 at 29. Moreover, even if relevant documents were only in the files of the President's or Advancement Offices, searching for and producing those materials would be unduly burdensome to the extent they did not add anything material to other information produced from Admissions Office files demonstrating if and when donations may matter in admissions. *See supra* p. 12 (quoting ECF 274 at 22). Finally, Defendants made clear that their proposal for custodians was primarily about *sequencing*: "Instead of requiring discovery that is disproportionate to the needs of the case at this early stage, Defendants propose to conduct targeted searches for Development and President's Office custodians' documents for information that is not captured in the schools' other productions if facts arise that provide a reasonable basis to believe that responsive, non-cumulative documents from the Development and President's Office custodians might exist and should be collected." ECF 274 at 22. That is *exactly* where the parties now find themselves: having reviewed Georgetown's production of Admissions Office documents, Plaintiffs have asked that Georgetown search for and produce additional documents from its Advancement and President's Offices. Only Plaintiffs' "ask" came in the form of the instant motion demanding far more than necessary to assess any relevant issue and clearly seeking to simply impose staggering costs on Georgetown.

13

**III.     FERPA Requires Redactions Of Georgetown Records Referencing Students.**

Although not addressed in the text of their motion, Plaintiffs ask this Court to order Georgetown to produce any records from either the President's or Advancement Offices responsive to all of Plaintiffs' RFPs "without redaction of donor names." Pls. Br. 14-15. Notably, Plaintiffs do not mention the Federal Education Records Privacy Act ("FERPA"), much less try to explain how FERPA would permit production of documents in unredacted form if those documents are "education records" under FERPA. This is not surprising as what the Plaintiffs are essentially asking the Court to do is order Georgetown to violate FERPA.

There is no basis for such a request. This Court has already received extensive briefing on the applicability of FERPA to university records and has ruled on the scope of FERPA's reach. Georgetown will not repeat those arguments—or the Court's rulings[8]—in their entirety here. *See, e.g.*, ECF 223 at 14-21; ECF 254; ECF 361 at 3-6; ECF 375.

## CONCLUSION

Plaintiffs' motion for sanctions against Georgetown and its counsel should be denied and the parties ordered instead to follow the very process the Defendants outlined in the January 2023 Joint Status Report as to discovery from the President's and Advancement Offices and that Georgetown has already agreed to undertake here. *See supra* p. 4.

---

[8] Georgetown recognizes that Plaintiffs' motion to reconsider the Court's ruling as other Defendants' FERPA redactions (ECF 382) remains pending.

Dated: July 21, 2023  Respectfully submitted,

By: */s/ Britt M. Miller*
Britt M. Miller
Daniel T. Fenske
Jed W. Glickstein
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel.: 312-783-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com
jglickstein@mayerbrown.com

*Counsel for Defendant Georgetown University*

**CERTIFICATE OF SERVICE**

      I, Britt M. Miller, an attorney, hereby certify that on July 21, 2023, I caused a true and correct copy of (1) the foregoing Georgetown University's Response to Motion to Compel and for Sanctions Against Georgetown University and Its Counsel and for Related Relief, (2) Declaration of Daniel T. Fenske, and (3) Exhibits to Declaration of Daniel T. Fenske to be served electronically on all counsel of record via email.

                                                                     /s/ *Britt M. Miller*
                                                                      Britt M. Miller
                                                                      MAYER BROWN LLP
                                                                       71 South Wacker Drive
                                                                       Chicago, IL 60606
                                                                       (312) 782-0600
                                                                       bmiller@mayerbrown.com