UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>                      v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>                      Defendants. | Case No.: 1:22-cv-00125<br>**Hon. Matthew F. Kennelly** |

**JOINT STATUS REPORT OF PLAINTIFFS AND GEORGETOWN TO RESOLVE PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS**

The parties respectfully submit this Joint Status Report pursuant to the Court's directive regarding Plaintiffs' Motion to Compel and for Sanctions. ECF 412; *see also* ECF 402 & 410. The parties have met and conferred twice, but ask the Court to resolve remaining disagreements.

### PLAINTIFFS' POSITION ON THE UNRESOLVED ISSUES

███████████████ The parties have discussed that portion of Mr. Fenske's Declaration (ECF 401), paragraph 9, which represents that ███████████████████████ ████████████████████████████████████████ The Complaint in this case was filed on January 9, 2022, and thus a litigation hold has been in place since at least that date. At that time, Georgetown ████████████████████████████████ ███████████████████████████████ In the deposition he gave to the Department of Justice, Dean of Admissions Charles Deacon testified that ███████ ███████████████████████████████████████. Georgetown █ ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████

███████████ **Were Never Kept in a Central File**. The parties have discussed the admission in Mr. Fenske's Declaration, paragraph 9, that ████████████████ ████████████ This is newly discovered evidence, which is very different from the circumstances of the Court's prior consideration of alleged FERPA records. In each prior dispute regarding such records, the Donation Records in question were, to the best of Plaintiffs' current knowledge, kept in central files. The new testimony that the ████████████ *were not*

---

[1] ████████████████████████████████████████████████████████

*kept in a central file* means they are not "education records" under FERPA, because such records must be *"maintained by an educational agency or institution or by a person acting for such agency or institution."* 20 U.S.C. § 1232g(a)(4); *see also* 34 C.F.R. § 99.1 (defining "Education Records"). In *Owasso Independent School District No. I-011 v. Falvo*, 534 U.S. 426 (2002), the Supreme Court *rejected the argument that all records naming a student* are FERPA-education records, even if they "directly relate to" a student. Instead, the Court held, the records must *also* be *"maintained"* by the educational institution "in a filing cabinet in a records room at the school or on a permanent secure database." *Id*. at 433. "Congress contemplated that education records would be kept in one place with a single record of access. By describing a 'school official' and 'his assistants' as the personnel responsible for the custody of the records, FERPA implies that education records are institutional records kept by a single central custodian, such as a registrar." *Id*. at 434-35 (emphasis added). Accordingly, given the newly discovered evidence and this controlling law, the ▇▇▇▇▇▇▇ cannot constitute "education records" under FERPA.[2] FERPA does not require, and the Confidentiality Order (ECF 254) does not permit, redaction.[3]

**Georgetown Misstated the March 8, 2023 Order** (ECF 330). The parties have discussed paragraph 13-14 of the Fenske Declaration, addressing the Court's Order dated March 8, 2023. Although the Court stated that it would have entered a different order had Georgetown been candid with the Court, even as entered, the March 8, 2023 Order required the production of

---

[2] *See also, e.g., S.A. v. Tulare Cnty. Office of Educ.*, 2009 U.S. Dist. LEXIS 88007, at *2 (E.D. Cal. 2009) ("emails that were not maintained in Student's permanent file …were not 'education records'"); *Doe v. State Univ. of N.J.*, 2022 U.S. Dist. LEXIS 91897, at *12-13 (D.N.J. 2022). Georgetown cites inapposite state court cases.
[3] Having previously sworn that these documents were not kept in any centralized file, Georgetown has now ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇ Georgetown should not limit its search to "centralized documentation."

2

the Deacon DOJ transcript as part of the "substantial completion" of records, by March 3, 2023, responsive to Plaintiffs' first set of RFPs (ECF 195). The Deacon transcript is a document "concerning Defendants' admissions and financial aid policies and practices, for students attending *through* the academic year that began in or about August 2022." ECF 330 ¶ 3.A (emphasis added). "Through" in plain English means "up to and including." Mr. Fenske asserts, in paragraph 14, that "the transcript did not describe any admissions policies *specific to* the 2022 or 2023 classes." Georgetown thus takes a position that is the polar opposite of what the Court ordered, in an effort to justify concealment.

**Georgetown's proposed resolutions are inadequate.** As the Court directed, the parties have discussed Georgetown's remedial proposals set forth in its Response at 4 (ECF 410).

**First**, no witness in this case is more pervasively involved than John DeGioia. He has worn three hats simultaneously for decades: He has been Georgetown's President since 2001; he was the Chairman of the 568 President's Group until it dissolved in November 2022; and he ran ███████████████████████████████████████████████ ███████████████████████████████ *He should therefore be designated a custodian for all 93 of Plaintiffs' RFPs, especially given Georgetown's pattern of narrow interpretations of this Court's Orders and Plaintiffs' RFPs.* Plaintiffs are entitled not only to the ████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████

**Second**, the head of Georgetown's Advancement Office should also be designated a

3

Case: 1:22-cv-00125 Document #: 422 Filed: 08/04/23 Page 5 of 13 PageID #:7416

custodian, but in a more limited way.[4] To the extent records and communications regarding ▮▮▮▮ Plaintiffs are entitled to them. Plaintiffs' First Set of RFPs Nos. 23, 58, 80, 124, 126, 127, 128, 129, and 130; and Third Set of RFPs No. 11.

**Third**, there should not be any redactions at all. As set forth above, the ▮▮▮ were never maintained in a way that could make them FERPA records, and so, they should not be redacted. However, while reserving our rights, Plaintiffs made a proposal, which Georgetown is considering, that would protect the anonymity of students and donors, while still relating them to one another, and avoiding witnesses testifying: "How the heck do I know?"

1. *Create a confidential glossary that Georgetown's counsel would share with Georgetown witnesses, but not with Plaintiffs or anyone else, linking the UIDs to true names of donors or potential donors* ▮▮▮▮. In order for this idea to be effective, Georgetown would have to:
2. Search for and produce all ▮▮▮▮.[5] For each such list or communication:
   a. the names of ▮▮▮▮ would be replaced by a unique identifier ("UID") even if there is no UID in structured data that Georgetown produced; and
   b. after the UID, the names of any ▮▮▮▮, correlated to the UID of the applicant (e.g. if UID 1234 was the named applicant, UID 1234-▮▮▮▮);
3. Identify the donation history and any then-current donation, pledge or assessment of gift capacity, for every donor and potential donor ▮▮▮▮;
4. Search the President's and Advancement Offices and produce not only copies of the ▮▮▮▮

---

[4] Plaintiffs do not demand that Georgetown designate the head of its Advancement Office as custodian as to all 93 RFPs, but instead, only as to the 10 enumerated in the text.
[5] ▮▮▮▮.

4

████████████████████, including any notes, memoranda or recordings of conversations that relate to those matters; and

    5.    For each ████████████████████████████████, identify the ultimate admission decision reached—i.e., admit, deny, wait list, or deferred admission (such as will be admitted after satisfactory completion of one year at another institution).

**Fourth**, Georgetown's proposal to limit its search to ██████████ does not make sense. Plaintiffs' RFPs demanded the production of *All Documents Concerning* certain categories, including communications from a President's Office pertinent to applicants or admissions. "All Documents concerning" is not limited to originals; it includes copies and documents referring to those topics. Just as Georgetown improperly arrogated to itself the right to refuse to produce the Deacon transcript by a deliberate and clear misinterpretation of the Court's March 8, 2023 Order, here it improperly arrogates to itself the right to search only for elusive "originals" of the ██████████████ which the Fenske Declaration already asserted █████████████

**Fifth**, Georgetown's proposal to ████████████████████████████████████████ This is an improper limitation to prevent Plaintiffs from getting the supporting documents. Plaintiffs' RFPs require production of *all* communications or records ██████████████

**Sixth**, having flouted Court-ordered deadlines of March 3 and May 15, 2023, Georgetown's proposal to have a two-step meet-and-confer process after its belated truncated, redacted searches and productions is designed to waste more time and is contrary to the Court's admonition not to engage in endless meet-and-confers. Due to Georgetown's shenanigans, document production—which should already have been substantially completed by March 3 and entirely completed by May 15—is now months behind. It is past time for Georgetown to produce all responsive documents. If any issues remain thereafter, Plaintiffs would of course meet and confer with Georgetown.

5

**In conclusion**, this Court took Plaintiffs' Motion to Compel under advisement. ECF 412. In order to create a remedy, Plaintiffs attach two alternative proposed forms of Order.

## GEORGETOWN'S POSITION ON THE UNRESOLVED ISSUES

At the status hearing on July 24, 2023, the Court directed Georgetown and the Plaintiffs to meet-and-confer about additional discovery, using Georgetown's proposal on pages 3-4 of its brief in opposition to Plaintiffs' recent Motion to Compel and for Sanctions as the starting point.[6] ECF 410 at 3-4; *see also* ECF 412. Georgetown's proposal was, in summary: (1) conduct a supplemental search from the Admissions Office ▬▬▬▬▬▬▬▬▬▬▬, and produce them redacted under FERPA and the Confidentiality Order; (2) search the President's Office for s▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬; and (3) meet/confer in a good faith as to any necessary additional discovery from the President's or Advancement Offices. Georgetown has already began implementing this proposal, with its first production of responsive documents today, and rolling productions to follow.

As the Court directed, the parties met-and-conferred on Wednesday, July 26. During that meet-and-confer, Plaintiffs claimed to need information from the Advancement Office regarding ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Accordingly, Georgetown agreed to go beyond its original proposal and search the centralized files of its Advancement Office on a "go get" basis for ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*i.e.*, this would not be a custodial search). Georgetown's counsel explained that such discovery may be sufficient for Plaintiffs to evaluate whether ▬▬▬▬

---

[6] Georgetown has ordered the transcript of the July 24 hearing on a expedited basis, but as of this writing has not received the transcript. Accordingly, the recitation here is based on Georgetown's counsel's recollection.

6

Case: 1:22-cv-00125 Document #: 422 Filed: 08/04/23 Page 8 of 13 PageID #:7419

██████████████████████████████████████████. Georgetown agreed, moreover, to consider any requests for additional, targeted information ███████████████ *after* production of the above information and Plaintiffs' review of the same. Georgetown submits that the Court should order Georgetown's proposal, as it is reasonable and proportional.

**Responses to Plaintiffs' Arguments.** Notwithstanding the Court's direction that the parties start with Georgetown's proposal on pages 3-4 of its opposition brief when meeting-and-conferring over appropriate additional discovery, Plaintiffs in this Report have in fact gone *beyond* even the overbroad discovery they sought in their motion and ask the Court to impose extraordinary costs on Georgetown for no probative reason.

1. ███████████. Plaintiffs claim that Mr. Fenske's July 21 declaration implies that Georgetown ████████████████████. This is wrong. *First*, Mr. Fenske's declaration stated that Georgetown's counsel understood that ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████, *see* ECF No. 410-1 (Fenske Decl. ¶ 10)). Counsel's investigation continued after the hearing and we can report that Georgetown ████████████████████████████████████████████████████████████████. *Second*, the statement Plaintiffs point to in Mr. Fenske's declaration referenced █████████████████████████████████████████████████████████, such that the issue is moot. *Id.* ¶ 9.[7]

---

[7] Moreover, it is worth noting (again) that Georgetown's structured data productions identify the candidates that were subject to its ████████████████ for the academic years 2017-2018 and forward; in other words, even if the ██████████████████████████████████████████████████████████████████████████████.

7

**2. The "Central File" Issue is a Red Herring**. Plaintiffs are wrong that the fact that the ▓▓▓▓▓▓▓▓ may not all be located in a single central file somehow means they are not "Education Records" protected by FERPA. Plaintiffs made substantially the same argument in briefing before the Court entered the Agreed Confidentiality Order, and the Court imposed no "central" file requirement on any FERPA redactions. *See* ECF No. 223 at 5-7. And for good reason.

FERPA restricts the release of students' "Education Records" or "Personally Identifiable Information" unless one of its exceptions applies. 20 U.S.C. § 1232g(b)(2). FERPA defines "Education Records" broadly as "records, files, documents, and other materials" which "contain information directly related to a student" and that are "maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A); *see also* 34 C.F.R. § 99.3(f). Nothing in the statute or its implementing regulations limits FERPA to records in a single "central file."[8] The text from the Supreme Court case Plaintiffs cite, *Owasso Independent School District No. I-011 v. Falvo*, 534 U.S. 426 (2002), has been recognized as *dicta*, and courts have declined to limit education records to a student's "dedicated file" with a central custodian.[9] *See also* ECF 223 at 14-21 (containing fuller argument on this point).

**3. Georgetown did not "Misstate" the Court's March 8, 2023 Order (ECF 330).** At the July 24 hearing, the Court strongly admonished counsel for those Defendants who were deposed

---

[8] *See, e.g.*, *United States v. Miami Univ.*, 294 F.3d 797, 812 (6th Cir. 2002) (rejecting the argument that FERPA only protects records "relating to individual student academic performance, financial aid or scholastic probation" based on the plain text of FERPA, and noting that "Congress made no content-based judgments with regard to its 'education records' definition.").

[9] *See Unincorporated Operating Div. of Indiana Newspapers, Inc. v. Trustees of Indiana Univ.*, 787 N.E.2d 893, 906 (Ind. Ct. App. 2003) ("Although the Reed materials are not maintained by a central custodian, *Falvo* [*Owasso*] should not be read to mean that all records not maintained by a registrar or central custodian cannot be education records."); *Bryner v. Canyons School District*, 351 P.3d 852, 859 n.4 (Utah Ct. App. 2015) ("[W]e do not read *Owasso* to impose a strict requirement that records must be kept in a central location such as a filing cabinet to qualify as an education record as defined in FERPA. And we see no basis in the statutory language of FERPA to impose such a strict limitation.").

by the DOJ before the Court entered the March 8 order for not informing the Court of the existence of the DOJ's investigation. Georgetown accepts that admonishment. Nonetheless, a few words are required in response to Plaintiffs' argument about the meaning of the March 8 order.

Plaintiffs do not dispute that Georgetown accurately quoted the Court's March 8 order. Instead, they twist its language to imply that the Order required production of documents about admissions policies for class years prior to 2022. That argument makes little sense. Georgetown produced voluminous information about its admissions policies from earlier years as part of discovery from its pre-complaint documents. The March 8 order related to documents created *after* the filing of the complaint in January 2022—that is, years after the admissions cycles Plaintiffs latch onto. At the very least, Plaintiffs' argument shows only that Plaintiffs and Defendants interpreted the order differently. Sanctions are not appropriate from such disagreement. *See LKQ Corp. v. Gen. Motors Co.*, 2022 WL 14634800, at *5 (N.D. Ill. Oct. 25, 2022).

**4. Adding the President's Office as a Full Custodian for All 93 RFPs.** Georgetown's opposition brief explained why adding the entire President's office as a single consolidated custodian for each of Plaintiffs' 93 RFPs would be disproportionate to the needs of the case. ECF 410 at 10-11. In arguing to the contrary, Plaintiffs do not even try to explain why all of the additional discovery they seek is necessary or even acknowledge the additional discovery from Mr. DeGioia's files that Georgetown has *already voluntarily undertaken* at Plaintiffs' request, including Georgetown's production of agreed upon documents relating to Mr. DeGioia's participation in the 568 Group. And the additional discovery Georgetown has proposed above is more than adequate as to the issue in dispute—namely, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Indeed, Georgetown submits that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* ECF 410 (Georgetown Opp.) at Ex. 1 ▇▇▇▇▇▇▇▇▇▇

9

5. **Advancement Office**. In their portion of the JSR, Plaintiffs for the first time limit their request to 10 RFPs.¹⁰ But their proposal for essentially every document that might possibly be related to the ▓▓▓▓—and much more—is disproportionate.

6. **UID List.** Georgetown is amenable to providing its witnesses (but not Plaintiffs' counsel) with the names of individuals whose names were replaced with a UID or otherwise redacted ▓▓▓▓. That would permit Plaintiffs to ask witnesses about the names without disclosing them in violation of FERPA. Plaintiffs continue to clarify and alter their proposal on this issue, which Georgetown first received this morning. Georgetown submits that Court intervention is not warranted while the parties discuss further.

7. **Donation History/Admissions Decisions**. Plaintiffs included in their proposed order something they never sought in their motion: that Georgetown provide the complete donation histories ▓▓▓▓. There is no justification for such a request, and requiring all of that information up front is neither necessary nor proportionate. If Plaintiffs ultimately need that information ▓▓▓▓, they can properly seek it and Georgetown will respond.

\* \* \* \* \* \*

---

¹⁰ Plaintiffs originally demanded adding the Advancement Office for all RFPs (*see* ECF 403 at 15) but have since reduced that number, first to 17 and, late this evening, to 10, and have eliminated some of the more obvious RFPs that do not relate to Advancement. *See e.g.*, RFP No. 24 (seeking documents relating to the 568 Group); RFP No. 46, 54 (same, as to Financial Aid); RFP Nos. 54, 55 and 62 (seeking documents concerning Georgetown's admissions and financial aid policies, practices and procedures).

Georgetown respectfully submits that its proposal is reasonable and proportional and is submitting a draft order reflecting the foregoing.

| | |
|---|---|
| Dated: July 31, 2023 | Respectfully Submitted, |
| By:/s/Robert D. Gilbert | /s/ Edward J. Normand |
| Robert D. Gilbert | Devin "Vel" Freedman |
| Elpidio Villarreal | Edward J. Normand |
| Robert S. Raymar | Richard Cipolla |
| Sarah Schuster | Peter Bach-y-Rita |
| Steven Magnusson | FREEDMAN NORMAND |
| GILBERT LITIGATORS & | FRIEDLAND LLP |
| COUNSELORS, P.C. | 99 Park Avenue |
| 11 Broadway, Suite 615 | Suite 1910 |
| New York, NY 10004 | New York, NY 10016 |
| Phone: (646) 448-5269 | Tel: 646-970-7513 |
| rgilbert@gilbertlitigators.com | vel@fnf.law |
| pdvillarreal@gilbertlitigators.com | tnormand@fnf.law |
| rraymar@gilbertlitigators.com | rcipolla@fnf.law |
| sschuster@gilbertlitigators.com | pbachyrita@fnf.law |
| amarquez@gilbertlitigators.com | |
| smagnusson@gilbertlitigators.com | |
| | |
| Eric L. Cramer | Daniel J. Walker |
| Caitlin G. Coslett | Robert E. Litan |
| Ellen Noteware | Hope Brinn |
| BERGER MONTAGUE PC | BERGER MONTAGUE PC |
| 1818 Market Street, Suite 3600 | 2001 Pennsylvania Avenue, NW |
| Philadelphia, PA 19103 | Suite 300 |
| Tel: 215-875-3000 | Washington, DC 20006 |
| ecramer@bm.net | Tel: 202-559-9745 |
| ccoslett@bm.net | rlitan@bm.net |
| Richard Schwartz | dwalker@bm.net |
| BERGER MONTAGUE PC | hbrinn@bm.net |
| 1720 W Division | |
| Chicago, IL 60622 | |
| Tel: 773-257-0255 | |
| rschwartz@bm.net | |

*Counsel for Plaintiffs*

By: */s/ Britt M. Miller*
Britt M. Miller
Daniel T. Fenske

MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel.: 312-783-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com

*Counsel for Defendant Georgetown University*