# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,

Defendants.

Case No.: 1:22-cv-00125

**Hon. Matthew F. Kennelly**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS, PRELIMINARY APPROVAL OF PROPOSED PARTIAL SETTLEMENT, APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS, AND PROPOSED SCHEDULE FOR A FAIRNESS HEARING

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

I.      INTRODUCTION ....................................................................................................... 1

II.     BACKGROUND ........................................................................................................ 3

      A.    Plaintiffs' Claims and Procedural Background ..................................................... 3

      B.    Settlement Negotiations and the Proposed Settlement ........................................... 4

           1.    Monetary Relief. ..................................................................................... 5

           2.    Cooperation. ............................................................................................ 5

           3.    Summary of Proposed Plan of Allocation. .............................................. 6

           4.    Notice and Settlement Administration Costs. ......................................... 7

           5.    Release. .................................................................................................... 8

           6.    Attorneys' Fees and Costs for Settlement Class Counsel and Service Awards for Class Representatives. ......................................................... 9

III.    THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL ............................................................................................................ 10

      A.    The Strength of Plaintiffs' Case Compared to the Terms of the Settlement ........ 11

      B.    The Complexity, Length, and Expense of Continued Litigation .......................... 13

      C.    The Amount of Opposition to the Settlement ....................................................... 13

      D.    The Opinion of Competent Counsel ..................................................................... 13

      E.    The Stage of the Proceedings ............................................................................... 14

      F.    The Plan of Allocation is Fair, Reasonable, and Adequate ................................. 15

      G.    Angeion Is an Appropriate Settlement Claims Administrator .............................. 18

      H.    The Proposed Form and Manner of Notice Are Appropriate ............................... 19

           1.    Form of Notice. ..................................................................................... 19

           2.    Manner of Notice. ................................................................................. 20

      I.    Huntington Bank Is an Appropriate Escrow Agent ............................................. 23

J.    The Proposed Schedule Is Fair and Should Be Approved ....................................23

IV.    THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS HAVE BEEN PROVISIONALLY MET ...........................................................................24

A.    The Requirements of Rule 23(a) Are Provisionally Satisfied ..............................27

1.    Numerosity and Impracticability of Joinder. ................................................27

2.    Commonality. ...............................................................................................28

3.    Typicality. .....................................................................................................28

4.    Adequacy of Representation. .........................................................................29

B.    The Requirements of Rule 23(b)(3) Are Provisionally Satisfied .........................30

1.    Common Issues Predominate. ........................................................................30

2.    A Class Action Is Superior to Other Methods of Adjudication. ....................33

3.    Settlement Class Counsel Meet the Requirements of Rule 23(g). ................33

V.    CONCLUSION ....................................................................................................................34

## TABLE OF AUTHORITIES

Cases

*Air Lines Stewards & Stewardesses Ass'n Local 550 v. Am. Airlines, Inc.*,
  455 F.2d 101 (7th Cir. 1972) ...................................................................................20

*Allegretti v. Walgreen Co.*,
  2022 WL 484216 (N.D. Ill. Jan. 4, 2022) ...............................................................9

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...........................................................................................24, 32

*Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*,
  568 U.S. 455 (2013) ..............................................................................................31

*Arredondo v. Univ. of La Verne*,
  618 F. Supp. 3d 937 (C.D. Cal. 2022) ...................................................................26

*Balmoral Home, Inc. v. CMK Healthcare Training Center, LLC*,
  2014 WL 11348989 (N.D. Ill. Aug. 28, 2014) .......................................................19

*Beneli v. BCA Fin. Servs., Inc.*,
  324 F.R.D. 89 (D.N.J. 2018) ..................................................................................18

*Brown v. Cook Cnty.*,
  332 F.R.D. 229 (N.D. Ill. 2019) .............................................................................29

*Cancel v. City of Chicago*,
  254 F.R.D. 501 (N.D. Ill. 2008) .............................................................................33

*Carbone v. Brown Univ.*,
  621 F. Supp. 3d 878 (N.D. Ill. 2022) .......................................................................4

*Cason-Merenda v. VHS of Mich., Inc.*,
   296 F.R.D.528 (E.D. Mich. 2013) ........................................................................31

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) .................................................................................10

*Gehrich v. Chase Bank USA, N.A.*,
  316 F.R.D. 215 (N.D. Ill. 2016) .............................................................................25

*Guzman v. Nat'l Packaging Servs. Corp.*,
  2022 U.S. Dist. LEXIS 37362 (E.D. Wis. Mar. 3, 2022) .......................................11

*Heekin v. Anthem, Inc.*,
  2012 WL 5472087 (S.D. Ind. Nov. 9, 2012) ..........................................................15

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012) ........................................................................33

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) ..............................................................27, 30

*In re Auto. Parts Antitrust Litig.*,
2019 WL 7877812 (E.D. Mich. Dec. 20, 2019) ........................................17

*In re Brand Name Prescription Drugs Antitrust Litig.*,
1999 WL 639173 (N.D. Ill. Aug.17, 1999) ...............................................18

*In re Broiler Chicken Antitrust Litig.*,
2022 WL 1720468 (N.D. Ill. May 27, 2022) .............................................26

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) ..........................................................14

*In re High-Tech Emp. Antitrust Litig.*,
2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ...........................................17

*In re Linerboard Antitrust Litig.*,
2004 WL 1221350 (E.D. Pa. June 2, 2004) ................................................9

*In re Namenda Direct Purchaser Antitrust Litig.*,
462 F. Supp. 3d 307 (S.D.N.Y. 2020) .......................................................18

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*,
332 F.R.D. 202 (N.D. Ill. 2019) ..................................................................9

*In re NCAA Student-Athlete Concussion Injury Litig.*,
314 F.R.D. 580 (N.D. Ill. 2016) ................................................................11

*In re Opana ER Antitrust Litig.*,
2021 WL 3627733 (N.D. Ill. June 4, 2021) ...............................................26

*In re Packaged Ice Antitrust Litig.*,
2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) .....................................17, 18

*In re Potash Antitrust Litig.*,
159 F.R.D. 682 (D. Minn. 1995) ...............................................................31

*In re Tiktok Inc., Consumer Priv. Litig.*,
2022 WL 19079999 (7th Cir. Oct. 12, 2022) .............................................22

*In re TikTok, Inc., Consumer Priv. Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022) .........................................................22

iv

*In re Tiktok, Inc., Consumer Privacy Litig.*,
 565 F. Supp. 3d 1076 (N.D. Ill. 2021) ...................................................................10, 11, 12, 13

*Isby v. Bayh*,
 75 F.3d 1191 (7th Cir. 1996) ...............................................................................................10

*Jackson v. Nat'l Action Fin. Servs., Inc.*,
 227 F.R.D. 284 (N.D. Ill. 2005) ..........................................................................................33

*Kleen Prod. LLC v. Int'l Paper Co.*,
 831 F.3d 919 (7th Cir. 2016) ..........................................................................................26, 29

*Koerner v. Copenhaver*,
 2014 WL 5544051 (C.D. Ill. Nov. 3, 2014 ..........................................................................19

*Kolinek v. Walgreen Co.*,
 311 F.R.D. 483 (N.D. Ill. 2015) (Kennelly, J.) ...................................................................25

*Lacy v. Cook Cnty., Ill.*,
 897 F.3d 847 (7th Cir. 2018) ...............................................................................................28

*Lechuga v. Elite Eng'g, Inc.*,
 559 F. Supp. 3d 736 (N.D. Ill. 2021) ...................................................................................10

*Lucas v. Vee Pak, Inc.*,
 2017 WL 6733688 (N.D. Ill. Dec. 20, 2017) ........................................................11, 13, 15, 21

*Magpayo v. Advoc. Health & Hosps. Corp.*,
 2018 WL 950093 (N.D. Ill. Feb. 20, 2018) .........................................................................29

*Meijer, Inc. v. 3M*,
 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) .......................................................................17

*Meredith Corp. v. SESAC, LLC*,
 87 F. Supp. 3d 650 (S.D.N.Y. 2015) ...................................................................................17

*Messner v. Northshore Univ. HealthSystem*,
 669 F.3d 802 (7th Cir. 2012) ..........................................................................................26, 30

*Morris v. Risk Mgmt. Alternatives, Inc.*,
 203 F.R.D. 336 (N.D. Ill. 2001) ..........................................................................................27

*Murray v. New Cingular Wireless Servs., Inc.*,
 232 F.R.D. 295 (N.D. Ill. 2005) ..........................................................................................33

*Ninivaggi v. Univ. of Delaware*,
 2023 WL 2734343 (D. Del. Mar. 31, 2023) ....................................................................27, 29

*Noble v. 93 Univ. Place Corp.*,
   224 F.R.D. 330 (S.D.N.Y. 2004) ........................................................................34

*Parker v. Risk Mgmt. Alternatives, Inc.*,
   206 F.R.D. 211 (N.D. Ill. 2002) ........................................................................28

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
   2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ....................................................15

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ..............................................................................32

*Rysewyk v. Sears Holdings Corp.*,
   2019 WL 11553475 (N.D. Ill. Jan. 29, 2019) .....................................................9

*Sanchez v. Roka Akor Chicago LLC*,
   2017 WL 1425837 (N.D. Ill. Apr. 20, 2017) .......................................................9

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................14

*Shah v. Zimmer Biomet Holdings, Inc.*,
   2020 WL 5627171 (N.D. Ind. Sept. 18, 2020) ..................................................17

*Slaughter v. Wells Fargo Advisors, LLC*,
   2017 WL 3128802 (N.D. Ill. May 4, 2017) .........................................................9

*Smith v. City of Chicago*,
   340 F.R.D. 262 (N.D. Ill. 2021) ........................................................................29

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) .............................................................................28

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ........................................................................17, 32

*Summers v. UAL Corp. ESOP Comm.*,
   2005 WL 3159450 (N.D. Ill. Nov.22, 2005) ................................................15, 17

*United Nat. Recs., Inc. v. MCA, Inc., et al.*,
   99 F.R.D. 178 (N.D. Ill. 1983) ..........................................................................29

*White v. Nat'l Football League*,
   822 F. Supp. 1389 (D. Minn. 1993) ..................................................................22

*Wong v. Accretive Health, Inc.*,
   773 F.3d 859 (7th Cir. 2014) .............................................................................12

*Wright v. S. New Hampshire Univ.*,
  565 F. Supp. 3d 193 (D.N.H. 2021) .............................................................26, 27, 29

Other Authorities

28 U.S.C. § 1715 ..............................................................................................................24

Fed. R. Civ. P. 23 ......................................................................................................passim

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 12.35, at 350 (4th ed. 2002) ....17

Emma Whitford, *Financial Aid Blues: Elite Colleges See Federal Antitrust Exemption Expire As Price-Fixing Lawsuit Advances*, FORBES (Oct. 5, 2022),
  https://www.forbes.com/sites/emmawhitford/2022/10/05/financial-aid-blues-elite-colleges-see-federal-antitrust-exemption-expire-as-price-fixing-lawsuit-advances/?sh=5607249f3176 .........................................................................................22

MANUAL FOR COMPLEX LITIGATION, §§ 21.312, 21.633 (4th ed. 2005)................................18, 20

Mike Scarcella, *U. Chicago First to Settle Financial Aid Price-Fixing Claims in U.S. Court*, REUTERS (Apr. 20, 2023), https://www.reuters.com/legal/litigation/u-chicago-first-settle-financial-aid-price-fixing-claims-us-court-2023-04-20/ ...........................................................22

Stephanie Saul and Anemona Hartocollis, *Lawsuit Says 16 Elite College Are Part of Price-Fixing Cartel*, THE NEW YORK TIMES (Jan. 14, 2022),
  https://www.nytimes.com/2022/01/10/us/ financial-aid-lawsuit-colleges.html........................22

Plaintiffs have reached a settlement with Defendant University of Chicago ("UChicago") and thus submit this Memorandum of Law in Support of their Motion for Provisional Certification of Settlement Class, Preliminary Approval of Proposed Partial Settlement, Approval of the Form and Manner of Notice to the Class, and Proposed Schedule for a Fairness Hearing.[1]

## I.    INTRODUCTION

Under the terms of a Settlement Agreement, dated August 7, 2023 (the "Settlement Agreement"), UChicago has agreed to make aggregate cash payments totaling $13.5 million to Plaintiffs and the proposed Settlement Class (defined below and in the Settlement Agreement), and to offer certain additional information, in exchange for Plaintiffs' agreement to dismiss their claims (on their own behalf and on behalf of the Settlement Class) against UChicago with prejudice and to provide certain releases (the "Settlement"). *See* Settlement Agreement, Joint Decl., Ex. A.[2] This Settlement is an excellent result for Plaintiffs and the proposed Settlement Class.

Plaintiffs and UChicago entered into the Settlement Agreement after nineteen months of litigation, including significant discovery, extensive arm's length negotiations, and Plaintiffs' extensive collaboration with consulting economists and other relevant experts. Counsel for both sides are highly experienced in antitrust litigation and well-positioned to assess the risks and merits of the case. Plaintiffs have reasonably concluded that the proposed cash settlement was in

---

[1] A Joint Declaration of Settlement Class Counsel (Joint Decl.) is attached to this Memorandum of Law.

[2] UChicago will make a payment of $13.5 million into a settlement fund (the "Settlement Fund") within 30 days of preliminary approval, to be held in an escrow account that will be invested in interest-bearing instruments. Settlement Agreement ¶¶ 7(a), 8; *see* Escrow Agreement (attached to Joint Declaration as Ex. B).

the best interests of the Settlement Class, among other reasons because, if finally approved, the Settlement would assure the Settlement Class of a significant cash recovery without diminishing the joint and several liability of the remaining sixteen Defendants.[3] Moreover, under the Settlement Agreement, Plaintiffs will have the benefit of certain additional information from UChicago that Plaintiffs expect will help their understanding of the conduct of the 568 Group, which is at the heart of Plaintiffs' allegations. Notably, UChicago is a relatively small undergraduate institution, nearly unique among the Defendants for being located in the city in which the case is pending. And UChicago appears to have stopped participating in the alleged cartel about eight years before the case was filed, and to have done so because the cartel was limiting its ability to compete on price. UChicago claims to have withdrawn in 2014. UChicago thus has some colorable defenses that most other Defendants do not. The Settlement avoids the inherent risks of summary judgment, trial, and potential appeal, while preserving the ability to recover all of the damages allegedly suffered by the Settlement Class from the remaining sixteen Defendants. For these reasons, and as further detailed below, the Settlement satisfies the requirements for preliminary approval.

Accordingly, Plaintiffs respectfully request that the Court enter a proposed order (in the form attached hereto), providing as follows:

1. Provisional certification of the proposed Settlement Class (defined below);
2. Provisional appointment of Plaintiffs as Class Representatives;
3. Appointment of Plaintiffs' counsel as Settlement Class Counsel for the proposed Settlement Class;
4. Preliminary approval of the proposed Settlement Agreement;
5. Approval of the proposed notice plan, including a long-form notice and summary notice, and a settlement website as described below and in the Declaration of the

---

[3] "Defendants" is defined in the Settlement Agreement at pp. 1-2.

2

proposed Settlement Claims Administrator, Steven Weisbrot of Angeion Group (Weisbrot Decl., attached to this Memorandum of Law);

6. Pursuant to 34 C.F.R. § 99.37(a), finding that mailing addresses and email addresses in education records of current students of a Defendant constitute "directory information" and may be disclosed, without consent, to the Settlement Claims Administrator for purposes of providing class notice in this litigation if (a) the Defendant has previously provided public notice that  the mailing addresses and email addresses are considered "directory information" that may be disclosed to third parties including public notice of how students may restrict the disclosure of such information, and (b) the student has not exercised a right to block disclosure of current mailing addresses or email addresses ("FERPA Block"). Defendants shall not disclose from education records mailing addresses or email addresses subject to a FERPA Block.

7. Pursuant to 34 C.F.R. § 99.37(b), finding that mailing addresses and email addresses in education records of former students of a Defendant constitute "directory information" and may be disclosed, without consent, to the Settlement Claims Administrator for purposes of providing class notice in this litigation, provided that each Defendant continues to honor any valid and un-rescinded FERPA Block created while a student was in attendance

8. Preliminary approval of the Plan of Allocation;

9. Appointment of Angeion Group as Settlement Claims Administrator;

10. Appointment of The Huntington National Bank ("Huntington") as Escrow Agent for the Settlement funds (Joint Decl., Ex. B);

11. Approval and establishment of the Settlement Fund under the Settlement Agreement as a qualified settlement fund ("QSF") pursuant to Internal Revenue Code Section 468B and the Treasury Regulations promulgated thereunder;

12. Staying of all litigation activity against UChicago on behalf of the Settlement Class pending final approval or termination of the Settlement; and

13. Approval of a proposed Settlement schedule, including the scheduling of a Fairness Hearing during which the Court will consider: (a) Plaintiffs' request for final approval of the Settlement and entry of a proposed order and final judgment; (b) Plaintiffs' counsel's application for attorneys' fees, reimbursement of expenses, service awards, and payment of administrative costs; and (c) Plaintiffs' request for dismissal of this action against UChicago only with prejudice.

## II.  BACKGROUND

### A.    Plaintiffs' Claims and Procedural Background

On January 9, 2022, Plaintiffs filed their complaint, which was subsequently amended

(collectively, "Complaint"), alleging that sixteen elite universities violated the antitrust laws by

3

agreeing on a common formula and common principles regarding financial aid, and by exchanging competitively sensitive information concerning financial aid principles, formulas, and pricing, and subsequently amended the Complaint to include a seventeenth university defendant. *See Henry, et al. v. Brown University, et al.*, No. 22-cv-00125 (N.D. Ill.). From April through August 2022, the parties engaged in briefing and argument on Defendants' motions to dismiss. Defendants asserted in their motions that (a) Defendants fell within a statutory antitrust exemption, (b) Plaintiffs had failed to state a claim under the antitrust laws and failed to plausibly allege antitrust injury, and (c) several of the claims were time barred. UChicago also filed a separate motion with three other defendants, contending that Plaintiffs did not plausibly allege that these four defendants were members of the alleged cartel during the relevant period. *See* Joint Decl., ¶ 9.

On August 15, 2022, the Court denied Defendants' motions in their entirety. *See* ECF No. 185, *Carbone v. Brown Univ.*, 621 F. Supp. 3d 878 (N.D. Ill. 2022). Since that time, the parties have engaged in extensive fact discovery. Plaintiffs have produced nearly 4,000 of their own documents to Defendants and have secured the production of more than one million documents from the Defendants and third parties, including almost 78,000 documents from UChicago alone. Plaintiffs have also deposed officials at six of the non-settling Defendants. Joint Decl., ¶ 11.

## B.    Settlement Negotiations and the Proposed Settlement

In April 2023, Plaintiffs initiated settlement discussions with UChicago with the goal of having UChicago be the first Defendant to settle. In agreeing to settle, Plaintiffs' counsel assessed the merits of Plaintiffs' claims, UChicago's defenses, and the risks of trial. Plaintiffs also evaluated the benefits of cooperation from UChicago, and the fact that due to joint and several liability, UChicago's settlement would not reduce the exposure of the remaining sixteen

Defendants. Plaintiffs ultimately concluded that settlement was in the best interests of the proposed Settlement Class. *See* Joint Decl., ¶¶ 23-24.

### 1. Monetary Relief.

Under the Settlement Agreement, UChicago will pay $13.5 million in cash for the benefit of all Settlement Class members in exchange for dismissal of the litigation between Plaintiffs and UChicago only, and certain releases. If the Settlement is approved, none of the funds paid in this Settlement would revert to UChicago. The Settlement Fund will be distributed to members of the Settlement Class according to a proposed Plan of Allocation (summary discussed below), net of payments for the expenses of the Settlement Claims Administrator and the costs of notice to the Settlement Class, any service awards the Court awards to the Class Representatives, Court awarded attorneys' fees and expenses, and any other administrative fees or costs that may be approved by the Court ("Net Settlement Fund").

### 2. Cooperation.

As part of the Settlement Agreement, UChicago has agreed to cooperate with Plaintiffs on certain discovery matters. *See* SA § 20. Among other things, UChicago has agreed to: (a) complete certain of the document productions pending in April 2023; (b) assist Plaintiffs in understanding UChicago's data production and remedy certain gaps (if any) identified by Plaintiffs in those data productions; (c) identify certain relevant documents to Plaintiffs from UChicago's production; (d) provide through its attorney a reasonably detailed description of the principal facts known to UChicago's outside counsel regarding UChicago's financial aid practices and UChicago's involvement in the 568 Group and the practices, procedures, and any enforcement mechanisms or enforcement efforts of, the 568 Group from UChicago's knowledge that may be at issue during the time period relevant to the Action; (e) facilitate a witness

interview with a former Director of College Aid for UChicago; (f) facilitate authentication at trial of certain documents or data it produced during discovery. *Id.*

### 3. Summary of Proposed Plan of Allocation.

According to the proposed Plan of Allocation Summary (the "Plan"), attached to the Joint Decl. as Exhibit D, all members of the Settlement Class who timely submit claims ("Claimants") will receive payments from Net Settlement Fund, *pro rata*, in proportion to the damages allegedly suffered. The Net Settlement Fund shall be disbursed in accordance with the Plan to be approved by the Court at the Final Approval Hearing.

In short, under the Plan, the proposed claims administrator, Angeion Group ("Angeion"), will calculate each Claimant's *pro rata* share of the Net Settlement Fund based on the formula discussed below. The Plan was designed in conjunction with Dr. Ted Tatos, an economist with the Econ One consulting group. Plan, Joint Decl., Ex. D at 2. By way of background, Plaintiffs allege that Defendants have conspired, through various activities undertaken as members of the "568 Presidents Group" (the "568 Group"), to deflate, artificially, the calculations of financial need of Settlement Class members, which in turn artificially inflated the net price Class members paid to attend Defendant institutions. *See* Complaint ¶¶ 7, 238, 241; Plan, Joint Decl., Ex. D at 2-4. The "Net Price," as that term is used here, includes the price of tuition, fees, room, and board minus all need-based and other forms of aid (excluding loans). Complaint ¶ 5. The website of the 568 Group acknowledged that one of its main goals was "to reduce much of the variance in need analysis results," to "diminish or eliminate . . . divergent results," and to do so in a "consistent manner." *Id.* ¶ 127.

Plaintiffs allege the challenged conduct artificially inflated the Net Price Claimants paid to attend each Defendant for each term a student attended. Given that Plaintiffs allege that the challenged conduct sought to affect Net Prices in a "consistent manner," it is reasonable to

conclude that Claimants suffered injury in rough proportion to the average Net Price charged by each school during the years Claimants attended. In other words, because the alleged overcharge is, roughly, a fixed percentage amount of the Net Price paid, a reasonable measure of the injury to each Claimant is the average Net Price each Defendant University charged during each year or term that Claimant attended.[4] As a result, to achieve the dual goals of efficiency and fairness, the Plan proposes to allocate the Net Settlement Fund to each Claimant in proportion to the average Net Price charged by the Defendant to each Claimant for each year or term during the Class Period that such Claimant attended that institution. Plan, Joint Decl., Ex. D at 3-4. This method can be carried out mechanically based on the data available to the Claims Administrator without requiring Claimants to provide any additional information or take any additional time other than simply filing out a Claim Form at the appropriate time after final approval.[5]

### 4. Notice and Settlement Administration Costs.

Settlement Class Counsel have retained Angeion, a highly experienced, well-regarded, third-party claims administrator to provide notice to the Settlement Class and to handle the administration of the claims. The proposed Notice Plan is described in the Declaration of Steven Weisbrot, Esq. of Angeion ("Weisbrot Decl.") (attached hereto). The Notice Plan includes, first, direct emailed summary notice (Weisbrot Decl., Ex. B) to the vast bulk of the Settlement Class.

---

[4] Plaintiffs do not presently have sufficient data to determine the Net Price each individual Claimant paid for each year he or she attended a Defendant. Further, it would not be efficient or practical to require each Claimant, many of whom attended a Defendant more than a decade ago, to have records of the Net Prices each paid. Accordingly, the Plan proposes to use publicly available average annual Net Prices charged by each Defendant for each applicable academic year during the Class Period (defined in Settlement Agreement at p. 4), published by the U.S. Department of Education, as an estimate of the net amounts paid by Claimants. Plan, Joint Decl., Ex. D at 4-5.

[5] Plaintiffs intend to submit a proposal for a Claims Administration process, including a proposed form of Claim Form, in conjunction with their memorandum of law in support of final approval.

Second, Angeion will send the long-form notice (*id*., Ex. C) via the U.S. postal service to those Class members who request it. Weisbrot Decl., ¶ 12. Third, Angeion will conduct a multi-tiered, robust media campaign strategically designed to provide notice to the Settlement Class. The latter program includes targeted internet notice, social media notice, a paid search campaign and two press releases. *Id*., ¶ 13.

In addition, there will be a toll-free telephone number where members of the Settlement Class can learn more about their rights and options pursuant to the terms of the settlement. *Id*., ¶¶ 13, 39. The long-form notices, as well as the summary email/media campaign notice, will communicate to members of the Settlement Class their rights and options under the Settlement in plain, easily understood language. Finally, the Notice Plan will also implement a case-specific Settlement Website, where members of the Settlement Class can easily view general information about this Settlement, review relevant Court documents (including the long-form notice), and find important dates and deadlines pertinent to the settlement process. Weisbrot Decl., ¶ 38. The Settlement Website will be user-friendly and make it easy for members of the Settlement Class to find information about this case, request the long-form notice, and later in the process after final approval: sign-up to receive a claim form and submit claims online. *Id*.

## 5. Release.

In exchange for the monetary relief, UChicago and certain related parties identified in the Settlement Agreement will receive a release of all claims Settlement Class members brought or could have brought arising out of or relating to a common nucleus of operative facts with those alleged in the Complaint through the date of preliminary approval. The release is narrowly tailored to the claims and allegations arising out of this Action and takes care not to release certain unrelated claims that might arise between the parties in the "ordinary course." *See* Settlement Agreement, §§ 1(m), 13-14.

8

### 6. Attorneys' Fees and Costs for Settlement Class Counsel and Service Awards for Class Representatives.

Settlement Class Counsel intends to make an application to the Court for a reasonable attorneys' fee award in an amount not to exceed one-third of the gross Settlement Fund (*i.e.*, 1/3 of $13.5 million or $4.5 million), plus one-third of any accrued interest on the Settlement Fund, plus reimbursement all reasonable expenses incurred during the investigation and litigation of this case to date.

Settlement Class Counsel will also seek service awards for Class Representatives to be paid from the Settlement Fund, in an amount up to $5,000 for each of the eight Class Representatives ($40,000 total).[6] Each class representative reviewed the Complaint, produced documents, and devoted substantial time and energy to the matter to date. Joint Decl., ¶ 5. But for the service of the Class Representatives, members of the Settlement Class would be uncompensated. *See In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *18 (E.D. Pa. June 2, 2004) (noting that service awards were "particularly appropriate in this case because there was no preceding governmental action alleging a conspiracy"). Plaintiffs propose below a schedule

---

[6] Recent service awards for class representatives in other antitrust cases in this Circuit have ranged from $5,000 to $175,000. *See, e.g.*, *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*, 332 F.R.D. 202, 228 (N.D. Ill. 2019) (approving $5,000 to each class representative); *Sanchez v. Roka Akor Chicago LLC*, 2017 WL 1425837, at *4 (N.D. Ill. Apr. 20, 2017) (approving $7,500 service award to class representative); *Rysewyk v. Sears Holdings Corp.*, 2019 WL 11553475, at *3 (N.D. Ill. Jan. 29, 2019) (approving $10,000 service award to each class representative); *Allegretti v. Walgreen Co.*, 2022 WL 484216, at *2 (N.D. Ill. Jan. 4, 2022) (approving $15,000 service award to each class representative); *Slaughter v. Wells Fargo Advisors, LLC*, 2017 WL 3128802, at *3 (N.D. Ill. May 4, 2017) (approving $175,000 service award to each class representative).

for the filing of the request for attorneys' fees, reimbursement of reasonable expenses, and service awards for the Class Representatives.

## III. THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL

As the Seventh Circuit has recognized, "[f]ederal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Settlement "minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Lechuga v. Elite Eng'g, Inc.*, 559 F. Supp. 3d 736, 744 (N.D. Ill. 2021) (internal citations omitted). Approval of this proposed class action settlement proceeds in two steps. First, the court grants preliminary approval to the settlement and provisionally certifies a settlement class. Second, after notice of the settlement is provided to the class and the court conducts a fairness hearing, the court may grant final approval of the settlement. *See The Manual for Complex Litigation (Fourth)* § 21.63 ("Manual").

Under Fed. R. Civ. P. 23(e), a class action settlement may be *finally* approved if it is "fair, reasonable and adequate" after analysis of the factors outlined in Rule 23(e)(2). At the *preliminary* approval stage, by contrast, a court need only assess whether the settlement is "within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *see also In re Tiktok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021) (court need only "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing [and] not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards" (internal citations and quotations omitted)). In making this assessment, courts perform "a more summary version of the final fairness inquiry" at the preliminary approval stage. *Id.* at *21; *see also In re NCAA Student-*

*Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 603 (N.D. Ill. 2016) ("Balancing the fairness factors in a summary fashion [] is appropriate on preliminary approval").

At preliminary approval, courts consider the following five factors: "the strength of plaintiff's case compared to the settlement amount, the complexity, length, and expense of the litigation, any opposition to settlement, the opinion of competent counsel, and the stage of the proceedings (including the amount of discovery completed) at the time of the settlement." *Guzman v. Nat'l Packaging Servs. Corp.*, 2022 U.S. Dist. LEXIS 37362, at *4-5 (E.D. Wis. Mar. 3, 2022); *In re TikTok*, 565 F. Supp. 3d 1076, 1084 (listing same factors). "The most important factor . . . is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Id.*; *see also Lucas*, 2017 WL 6733688, at *8. Consideration of the relevant factors, as shown below, supports preliminarily approving the Settlement Agreement and authorizing notice to the Settlement Class.

### A.     The Strength of Plaintiffs' Case Compared to the Terms of the Settlement

The first factor, which balances the strength of the class's claims on the merits against the value conferred by the proposed settlement, is satisfied here. While district courts often "assess the net expected value of continued litigation" by quantifying the range of possible outcomes as part of this analysis, *Lucas*, 2017 WL 6733688, at *8, the Seventh Circuit has held that courts need not engaged in such quantification "where there are other reliable indicators that the settlement reasonably reflects the merits of the case." *TikTok*, 565 F. Supp. 3d at 1087 (quoting *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 285 (7th Cir. 2017)). Such reliable indicators are present where, as here, the settlement was reached through arms' length negotiations, highly experienced counsel negotiated the settlement, and substantial discovery has enabled the parties to analyze the strengths and weaknesses of the case. For example, in *TikTok*, because such factors were present, the court concluded that it "need not undertake [a] mechanical

11

mathematical valuation," and instead recognized that the proposed settlement ensured meaningful value to the class members as compared to the risks of seeking a better outcome at trial. *TikTok*, 565 F. Supp. 3d at 1088.[7]

Here, after significant document discovery, arms' length negotiations were engaged in by highly experienced counsel and no suspicious circumstances are present. Joint Decl., ¶ 7. The settlement achieves significant financial recovery in an "icebreaker" settlement that also provides certain elements of cooperation in discovery. On the other hand, in addition to the general risks of this litigation, some key factors complicated Plaintiffs' case against UChicago in particular, including that evidence supports UChicago's claims that it withdrew from the 568 Group and stopped attending 568 Group meetings in or around 2014. *See* Joint Decl., ¶ 8. Plaintiffs are also evaluating evidence that Chicago revised its financial aid formula and practices to become more generous after departing the Group. *Id*. Moreover, this case is pending in Chicago, and UChicago will likely tout to the jury that it has financial aid programs targeted at Chicago-area students. *Id*.

At the same time, the contemplated settlement does not reduce Plaintiffs' ultimate potential recovery in this case, as the sixteen non-settling Defendants remain jointly and severally liable for all of the alleged damages caused by UChicago's alleged involvement in the challenged conduct, and also have assets sufficient to pay any damages award. Finally, as just stated, this is the first resolution in this Action, and UChicago is providing certain assistance in discovery and authentication as part of the terms of the Settlement. *See* Joint Decl., ¶ 18. Accordingly, this factor weighs in favor of preliminary approval.

---

[7] *See also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (when there are no "suspicious circumstances" surrounding a settlement reached through arms' length negotiations by experienced counsel after the parties have sufficiently explored the merits of the case a court may preliminarily approve a settlement without quantifying the value of continued litigation).

12

### B.  The Complexity, Length, and Expense of Continued Litigation

When settlement enables the parties to avoid the costs and risks of litigating complex issues, this factor weighs in favor of preliminary approval. *Lucas*, 2017 WL 6733688, at *12. This settlement reduces the expense associated with prosecuting the case, narrows the number of adversaries that Plaintiffs face, ensures at least some monetary recovery for Settlement Class members, and increases the likelihood of further settlements. UChicago's agreement to provide cooperation, moreover, is a relevant factor, since it "will serve to minimize the costs and challenges" in Plaintiffs' case against the non-settling Defendants. *Id.* Accordingly, this factor weighs in favor of preliminary approval.

### C.  The Amount of Opposition to the Settlement

While the reaction of the Settlement Class can only be determined after the distribution of notice, the Representative Plaintiffs have all affirmed support for the settlement. Joint Decl., ¶ 5. If, upon the issuance of notice, objections are filed, the Court can consider them in determining whether to grant final approval. *See Lucas*, 2017 WL 6733688, at *12.

### D.  The Opinion of Competent Counsel

Courts often defer to the judgment of experienced counsel who have engaged in arms' length negotiations, understanding that vigorous, skilled negotiation protects against collusion and advances the fairness interests of Fed R. Civ. P. 23(e). *See, e.g.*, *TikTok*, 565 F. Supp. 3d at 1091 (plaintiffs' "well qualified" counsel attested to their belief that the settlement was fair, reasonable and adequate); *Lucas*, 2017 WL 6733688, at *12 (plaintiffs' counsel had "extensive experience" in subject matter of litigation and believed settlement to be in the best interest of the class).

Settlement Class Counsel believe that the settlement is fair and in the best interests of the Settlement Class. Joint Decl., ¶¶ 23-24. Settlement Class Counsel collectively have decades of

experience in antitrust litigation, including helping to spearhead the original Overlap Group case successfully prosecuted by the U.S. Department of Justice against the predecessor to the 568 Presidents Group. Joint Decl., ¶¶ 25-52; ECF No. 88 at 4-12 (Mem. ISO Mot. for Appt. of Interim Lead Counsel);[8] ECF No. 87-2, Gilbert Decl. ¶¶ 4-8. Settlement Class Counsel have applied their well-honed litigation skills, along with their years of experience handling substantial class action and antitrust cases, during settlement negotiations. They believe that the Settlement represents an excellent result. Accordingly, this factor weighs in favor of preliminary approval.

### E. The Stage of the Proceedings

The importance of this factor relates to whether Settlement Class Counsel has "access to sufficient information such that they could effectively represent the Class." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 588 (N.D. Ill. 2011). The relevant inquiry is not how much formal discovery occurred—or indeed if any formal discovery occurred—but rather, "how additional discovery would have been in the interest of the class or would have resulted in a better settlement." *Id.* (cleaned up). This proposed Settlement occurs neither at the beginning nor the completion of discovery, but rather midway. The parties have had sufficient opportunity to assess the strengths and weaknesses and "place value on their respective positions in this case." *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 793 (N.D. Ill. 2015). It also bears repeating that by entering into this Settlement, Plaintiffs do not reduce the overall value of their claim, because the non-settling Defendants remain jointly and severally liable. Accordingly, this factor weighs in favor of preliminary approval.

---

[8] The Court previously denied Plaintiffs' Motion for Appointment of Interim Lead Counsel without prejudice. ECF No. 182.

### F. The Plan of Allocation is Fair, Reasonable, and Adequate

The proposed Plan of Allocation, Joint Decl., Ex. D, would allocate the Net Settlement Fund to members of the Settlement Class in proportion to the injuries each allegedly suffered due to the challenged conduct. The Plan is fair, reasonable, adequate, *and* efficient. "The same standards of fairness, reasonableness and adequacy that apply to the settlement apply to the Plan of Allocation." *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001).[9] "Federal courts have held that an allocation plan that reimburses class members based on the extent of their injuries is generally reasonable." *Lucas*, 2017 WL 6733688, at *13 (collecting cases).

As described above and in the Plan, the "Net Price," as that term is used here, includes the price of tuition, fees, room, and board minus all need-based and other forms of aid (excluding loans). *See* Plan, Joint Decl., Ex. D, at 3. Plaintiffs allege that Class members suffered antitrust injury (and damages) because they paid artificially inflated Net Prices to Defendants due to the challenged conduct. The website of the 568 Group acknowledged that one of its main goals was "to reduce much of the variance in need analysis results," to "diminish or eliminate . . . divergent results," and to do so in a "consistent manner." *Id.* 2-3.

The Plan proposes to use publicly available average annual Net Prices charged by each Defendant for each applicable academic year during the Class Period, as published by the U.S. Department of Education. These published prices will serve as estimates of the net amounts paid by Claimants at each school. *Id.* at 4-5.

---

[9] *See also Heekin v. Anthem, Inc.*, 2012 WL 5472087, at *3 (S.D. Ind. Nov. 9, 2012) ("As with the approval of a settlement, courts must determine whether the plan for allocation of settlement funds is fair, reasonable, and adequate.") (citing *Summers v. UAL Corp. ESOP Comm.*, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005)).

The challenged conduct allegedly artificially inflated the Net Price Class members paid to attend each Defendant for each term a student attended. Given that, and also the evidence that the challenged conduct sought to effect Net Prices in a "consistent manner," it is reasonable to conclude, for purposes of the Plan, that Claimants suffered injury in rough proportion to the average Net Price charged by each school during the years Claimants attended. *Id*. at 3. In other words, because the alleged overcharge is, roughly, a fixed percentage amount of the Net Price paid, a reasonable measure of the injury to each Claimant is the average Net Price each Defendant charged during each year or term that Claimant attended. *Id*. As a result, a fair and efficient way to allocate the Net Settlement Fund would be to ensure that each Claimant receives its *pro rata* share of the Net Settlement Fund in proportion to the average Net Price charged by the Defendant for each year or term a Claimant attended that institution. *Id*. at 3-4.

At a later stage in the process, after final approval, Claimants who provide their addresses to the Claims Administrator will be provided pre-populated Claims Forms listing the Net Price charged by their respective schools during the periods they attended. To compute each Claimant's *pro rata* share, the Claims Administrator will do the following. First, the Claims Administrator would determine, for each Claimant, the number of years (or fractions thereof) that the Claimant paid a Defendant for cost of attendance during the Class Period. The Claims Administrator, on a Claimant-by-Claimant basis, would then assign to each Claimant the average annual Net Price charged by that Defendant for each year the Claimant attended (or fraction thereof) based on publicly available aggregated pricing data. The Net Prices assigned for each Claimant would be adjusted for fractions of years, where a student may not have attended for an entire school year. The Claims Administrator would then sum the average Net Prices over all the years for each Claimant, up to a maximum of four full academic years per Claimant. That sum

16

would be the numerator of each Claimant's *pro rata* allocation computation. Second, the Claims

Administrator would add together all of the numerators for all Claimants, and that sum would

serve as the denominator. Third, the Claims Administrator would divide the numerator from the

first step for each Claimant by the denominator from the second step. That fraction would be the

*pro rata* share for each Claimant. Fourth, and finally, to compute the total allocated sum for each

Claimant, the Claims Administrator would multiply the fraction from the third step for each

Claimant by the Net Settlement Fund, generating the dollar value of each Claimant's total

allocation from the Net Settlement Fund. *Id.* at 6.

Plans of allocation like this one, recommended by experienced Settlement Class Counsel

(in consultation with their consultants),[10] which distribute settlement funds based on a *pro rata*

share of purchases, are routinely approved because they approximate the amount of relative

damage sustained by each Settlement Class member.[11] Settlements in antitrust cases are

---

[10] *See also Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 5627171, at *6 (N.D. Ind. Sept. 18, 2020) ("When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis in order to be fair and reasonable") (citation and internal quotation marks omitted); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.") (collecting cases) (cleaned up); *accord In re Auto. Parts Antitrust Litig.*, 2019 WL 7877812, at *1 (E.D. Mich. Dec. 20, 2019).

[11] *See also In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at *6 (N.D. Cal. Sept. 2, 2015) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.") (quoting *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994)); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *15 (E.D. Mich. Dec. 13, 2011) ("Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.") (quoting *Meijer, Inc. v. 3M*, 2006 WL 2382718, at *17 (E.D. Pa. Aug. 14, 2006)); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) (same) (internal quotation omitted); 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 12.35, at 350 (4th ed. 2002) (noting that *pro-rata* allocation of a settlement fund "is the most common type of apportionment of lump sum settlement proceeds for a class of purchasers" and "has been accepted and used in allocating and distributing settlement proceeds in many antitrust class actions"); *Summers*, 2005 WL 3159450, at *2 ("Given that the settlement funds in the instant action will be disbursed on a pro rata basis to all class members, we find that the

commonly distributed to direct purchaser classes based on estimates of a purchaser's *pro rata* share.[12]

### G. Angeion Is an Appropriate Settlement Claims Administrator

Plaintiffs ask the Court to appoint Angeion to oversee the administration of the Settlement, including disseminating notice to the Settlement Class, calculating each Settlement Class Member's *pro rata* share of the Net Settlement Fund, and distributing the funds. Angeion is an experienced settlement and claims administration firm with sophisticated technological capabilities and is staffed by personnel well-versed in antitrust issues and class action litigation. *See* Weisbrot Decl., ¶¶ 1-10.

Angeion, with oversight from Settlement Class Counsel and Plaintiffs' economic consultants, will handle all aspects of providing notice to potential members of the Settlement Class and administering their claims, including emailing, mailing and otherwise distributing the notice, managing a call center and settlement website to handle all questions regarding

---

allocation plan is reasonable and, thus, we grant Plaintiffs' motion for approval of the allocation plan."); *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 105-06 (D.N.J. 2018) ("In particular, *pro rata* distributions are consistently upheld, and there is no requirement that a plan of allocation differentiat[e] within a class based on the strength or weakness of the theories of recovery.") (citation and internal quotation marks omitted); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *15 ("Typically, a class recovery in antitrust or securities suits will divide the common fund on a pro rata basis among all who timely file eligible claims, thus leaving no unclaimed funds.") (quoting 3 *Newberg on Class Actions* § 8:45 (4th ed. 2011)).

[12] *See, e.g.*, *In re Aftermarket Filters Antitrust Litig.*, No. 08-cv-4883, ECF No. 1082 (N.D. Ill. Mar. 20, 2014) (ordering *pro rata* distribution of settlement funds); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 1:09-cv-07666, ECF No. 703 (N.D. Ill. Apr. 16, 2014) (approving *pro rata* Plan of Allocation, as described in ECF No. 696, Ex. 1 ¶¶ 18-19); *In re Brand Name Prescription Drugs Antitrust Litig.*, 1999 WL 639173, at *4 (N.D. Ill. Aug. 17, 1999) (approving *pro rata* distribution of funds based on claimant's share of qualifying purchases at issue); *acccord In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 316 (S.D.N.Y. 2020); *In re Loestrin 24 FE Antitrust Litig.*, No. 1:13-md-02472, ECF No. 1462 (D.R.I. Sept. 1, 2020); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-2503, ECF No. 1179 (D. Mass. July 18, 2018).

completion and submission of the claim forms, physically processing the claims, informing Claimants about the completeness or possible deficiency of their claims, and ultimately distributing the Net Settlement Fund, subject to Court approval.

### H.     The Proposed Form and Manner of Notice Are Appropriate

Under Rule 23(e), class members are entitled to reasonable notice of a proposed settlement before it is finally approved by the Court, and to notice of the final Fairness Hearing. *See* MANUAL FOR COMPLEX LITIGATION, §§ 21.312, 21.633 (4th ed. 2005) ("MANUAL"). For 23(b)(3) classes, the court must "direct to class members the best notice that is practical under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The two components of notice are: (1) the form of the notice; and (2) the manner in which notice is sent to class members.

#### 1.     Form of Notice.

The proposed forms of notice are based on notices approved by courts in similar cases.[13] The proposed long-form notice, Weisbrot Decl., Ex. C, is designed to alert Settlement Class members to the proposed Settlement by using a bold headline, and the plain language text provides important information regarding the terms of the proposed Settlement, including the nature of the action; the definition of the Settlement Class provisionally certified; the identity of the settling defendant (UChicago); the significant terms of the proposed Settlement, including the total amount UChicago has agreed to pay; that a Settlement Class member may object to all

---

[13] *See, e.g.*, *Balmoral Home, Inc. v. CMK Healthcare Training Center, LLC*, 2014 WL 11348989 (N.D. Ill. Aug. 28, 2014) (approving form and manner of notice); *Balmoral*, ECF No. 94-1 at 24 (N.D. Ill. Aug. 13, 2014); *Koerner v. Copenhaver*, 2014 WL 5544051, at *6 (C.D. Ill. Nov. 3, 2014) (approving form and manner of notice); *Koerner*, ECF No. 65-1 (C.D. Ill. Nov. 3, 2014) (notice); *Coleman v. Sentry Ins. a Mutual Company*, No. 3:15-cv-01411-SMY-SCW, ECF No. 46, ¶ 5 (S.D. Ill. June 29, 2016) (approving form and manner of notice); *Coleman*, ECF No. 40-1 at 23 (S.D. Ill. June 6, 2016) (notice).

or any part of the proposed Settlement or Settlement Class Counsel's petition for attorneys' fees and reimbursement of expenses, or the proposed service awards for the named Plaintiffs; and the process and deadline for doing so, including entering an appearance through an attorney if the Class member desires; that Settlement Class members may exclude themselves from the Settlement Class, the consequences of and process for doing so; the final approval process, including the schedule, for the proposed Settlement and Settlement Class Counsel's petition for attorneys' fees, request for reimbursement of litigation expenses; and the binding effect of a final judgment on members of the Settlement Class. *Id*.

The proposed summary notice, Weisbrot Decl., Ex. B, provides a concise summary of the key aspects of the Settlement, defines the Settlement Class, and provides information about how to obtain more information about any aspect of the Settlement. *Id*. In addition, the proposed notice plan will include a settlement website (containing all of the key settlement related documents, including the Settlement Agreement and all filings relating to the settlement and fee application), as well as toll-free contact information for the Claims Administrator. Weisbrot Decl., ¶¶ 38-39.

### 2. Manner of Notice.

Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." *See also Air Lines Stewards & Stewardesses Ass'n Local 550 v. Am. Airlines, Inc.*, 455 F.2d 101, 108 (7th Cir. 1972) (All notice must do is "fairly apprise the members of the class of the proposed compromise and of the option open to dissenting class members in connection with the proceedings."). The notice may be provided by "United States mail, electronic means, or other

appropriate means." Fed. R. Civ. P. 23(c)(2). In circumstances in which all class members can be identified, the best method of notice is individual notice. *See* MANUAL, § 21.311 at 488 ("Rule 23(c)(2)(B) requires that individual notice in 23(b)(3) actions be given to class members who can be identified through reasonable effort."). *See, e.g.*, *Lucas,* 2017 WL 6733688 at *15 (approving direct notice by mail to individual class members). The Notice plan readily meets these standards.

As explained in the Weisbrot Declaration, Angeion, in consultation with Settlement Class Counsel, has designed a proposed Notice Program that will capitalize on the available contact information for Settlement Class members as well as substantial media coverage of this case by implementing a comprehensive media campaign. Weisbrot Decl., ¶¶ 12-30. Specifically, because Plaintiffs expect Defendants to produce email addresses from alumni and current student databases to Angeion for notice purposes, Angeion will email the publication notice to all Settlement Class members for whom such email information is available. Weisbrot Decl., ¶¶ 12-13. Angeion will also utilize a carefully tailored mix of programmatic display advertising, social media notice, search engine marketing and two press releases to effectively and efficiently diffuse notice of the Settlement through a variety of mediums. Weisbrot Decl., ¶¶ 16–30.

In addition, Angeion will send the long-form notice by U.S. mail to those Settlement Class members who request it either through the website or by contacting Angeion or Settlement Class Counsel directly. Weisbrot Decl., ¶¶ 12, 31-39. The long-form notice will also be posted on the Settlement Website for downloading and reviewing.

Accordingly, the proposed Notice Plan provides for a robust multi-tiered media campaign strategically designed to provide notice to Settlement Class Members via a variety of methods, including directly emailing the summary notice to a large share of the Settlement Class, mailing

the long-form notice to those who request it, as well as a state-of-the-art targeted internet notice, social media notice, a paid search campaign, a settlement website, and two press releases. Weisbrot Decl., ¶ 13.

Major milestones, including the U.S. Department of Justice's letter of interest, the Court's order on the motion to dismiss, and the UChicago settlement itself, have previously been covered by national media.[14] The Settlement Class is comprised of highly educated individuals likely to be reached by these traditional news sources, which further weighs in favor of preliminary approval. *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 921 (N.D. Ill. 2022), *appeal dismissed sub nom. In re Tiktok Inc., Consumer Priv. Litig.*, 2022 WL 19079999 (7th Cir. Oct. 12, 2022) ("In addition to these notice efforts, there was considerable media coverage of the settlement. News outlets such as NBC News, Business Insider, and USA Today published online articles about the settlement that included links to the settlement website."); *White v. Nat'l Football League*, 822 F. Supp. 1389, 1401 (D. Minn. 1993) (noting that "the Settlement Agreement has received extensive media coverage, affording class members with substantial additional notice").

Finally, as just stated, the Notice Plan will also implement the creation of a case-specific Settlement Website, where members of the Settlement Class can easily view general information about this Settlement, review relevant Court documents, and view important dates and deadlines

---

[14] Stephanie Saul and Anemona Hartocollis, *Lawsuit Says 16 Elite College Are Part of Price-Fixing Cartel*, THE NEW YORK TIMES (Jan. 14, 2022), https://www.nytimes.com/2022/01/10/us/financial-aid-lawsuit-colleges.html; Emma Whitford, *Financial Aid Blues: Elite Colleges See Federal Antitrust Exemption Expire As Price-Fixing Lawsuit Advances*, FORBES (Oct. 5, 2022), https://www.forbes.com/sites/emmawhitford/2022/10/05/financial-aid-blues-elite-colleges-see-federal-antitrust-exemption-expire-as-price-fixing-lawsuit-advances/?sh=5607249f3176; Mike Scarcella, *U. Chicago First to Settle Financial Aid Price-Fixing Claims in U.S. Court*, REUTERS (Apr. 20, 2023), https://www.reuters.com/legal/litigation/u-chicago-first-settle-financial-aid-price-fixing-claims-us-court-2023-04-20/.

pertinent to the Settlement. Weisbrot Decl., ¶ 38. The Settlement Website will be user-friendly and make it easy for members of the Settlement Class to find information about this case. *Id.* The Settlement Website will also have a "Contact Us" page whereby members of the Settlement Class can send an email with any additional questions to a dedicated email address. *Id.*

I. **Huntington Bank Is an Appropriate Escrow Agent**

Plaintiffs ask that Huntington be appointed as the Escrow Agent, and that the proposed Escrow Agreement (Joint Decl., Ex. B) be approved for that purpose. Huntington is a highly respected bank providing consumers, corporations, and others with a broad range of financial services. Joint Decl., ¶ 20. Huntington has served as escrow agent in many other antitrust class actions, including in this district, and should also be appointed as Escrow Agent here. *See, e.g.*, *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practice and Antitrust Litig.*, No. 17-md-2785, ECF No. 2594 (D. Kan. Mar. 11, 2022) (order granting preliminary approval motion and appointing Huntington Bank as an escrow agent); *In re Opana ER Antitrust Litig.*, No. 14-cv-10150, ECF No. 1069 (N.D. Ill. Aug. 24, 2022) (same).

J. **The Proposed Schedule Is Fair and Should Be Approved**

Plaintiffs propose the following schedule for completing the Settlement approval process:

- No later than 30 days after the date of the order preliminarily approving the Settlement, Angeion shall begin the process of providing notice to the Settlement Class, in accordance with the Notice Plan;

- No later than 60 days after the date of the order preliminarily approving the settlement, Settlement Class Counsel shall file a motion for attorneys' fees, unreimbursed litigation costs and expenses, and service awards for the Class Representatives, pursuant to the terms of the Settlement Agreement.

- By no later than 75 days after of the date of the order preliminarily approving the settlement, Settlement Class Members may, using the method set out in the long-form notice and Settlement Agreement, request exclusion from the Settlement Class or submit any objection to the proposed settlement or to the proposed allocation plan summarized in the notice, or to Settlement Class Counsel's request

for attorneys' fees and unreimbursed litigation costs and expenses, or to the request for service awards to the Class Representatives.

- No later than 90 days after the date of this Order, Settlement Class Counsel shall file all briefs and materials in support of final approval of the settlement, including, inter alia, (a) a report to the court regarding the effectuation of the notice plan, and notifying the Court of any objections or exclusions, and (b) a process for effectuating the plan of allocation, including for deciding claims and distributing from the Net Settlement Fund.

- The Fairness Hearing shall take place at least 120 days after the Court's entry of this Order.

This schedule is fair to Settlement Class members since it provides ample time for consideration of the Settlement and Settlement Class Counsel's request for fees, costs, and expenses before the deadline for submitting objections or exclusions. Specifically, Settlement Class members will have the notice for 45 days before the deadline to object to the Settlement and will have Settlement Class Counsel's request for costs and expenses for more than two weeks before the deadline to object to Settlement Class Counsel's request for fees, costs, and expenses, and to the request for service awards to the Class Representatives. In addition, the schedule allows the full statutory period for UChicago to serve its CAFA notices pursuant to 28 U.S.C. § 1715, and for regulators to review the proposed Settlement and, if they choose, advise the Court of their view.

## IV. THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS HAVE BEEN PROVISIONALLY MET

The proposed Settlement Class should be provisionally certified for settlement purposes only. To preliminarily approve the Settlement, the Court must also find that it will likely be able to certify the class for purposes of judgment on the Settlement. *See* Fed. R. Civ. P. 23(e)(1)(B)(i–ii). Under Fed. R. Civ. P. 23, class actions may be certified for settlement purposes only. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The requirements of Rule 23 do

not change when certification is requested pursuant to settlement, except that "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 224 (N.D. Ill. 2016) (quoting *Amchem Prods.*, 521 U.S. at 620); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 490 (N.D. Ill. 2015) (Kennelly, J.) ("The first question the Court must address is whether the class meets the requirements for class certification set forth in Federal Rule of Civil Procedure 23.").

The Court must still assess "the four requirements of Rule 23(a): [whether] '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.'" *Gehrich*, 316 F.R.D. at 223. The district court must also determine whether the action can be maintained under Rule 23(b)(1), (2), or (3). *Id*. at 226. The proposed Settlement Class is defined as follows:

All U.S. citizens or permanent residents who have during the Class Period (a) enrolled in one or more of Defendants' full-time undergraduate programs, and (b) received at least some need-based financial aid from one or more Defendants, and (c) directly purchased from one or more Defendants tuition, fees, room, or board that was not fully covered by the combination of any types of financial aid or merit aid (not including loans) in any undergraduate year.[15] The Class Period is defined as follows:

- For UChicago, Columbia, Cornell, Duke, Georgetown, MIT, Northwestern, Notre Dame, Penn, Rice, Vanderbilt, Yale—from 2003 through the date of preliminary approval.

- For Brown, Dartmouth, Emory—from 2004 through the date of preliminary approval.

---

[15] For avoidance of doubt, the Class does not include purchasers for whom the total cost they were charged by the Defendant or Defendants whose institution(s) they attended, including tuition, fees, room, or board for each undergraduate academic year, was covered by any form of financial aid or merit aid (not including loans) from one or more Defendants.

- For Caltech—from 2019 through the date of preliminary approval.
- For Johns Hopkins—from 2021 through the date of preliminary approval.

Excluded from the Class are:

- Any Officers and/or Trustees of Defendants, or any current or former employees holding any of the following positions: Assistant or Associate Vice Presidents or Vice Provosts, Executive Directors, or Directors of Defendants' Financial Aid and Admissions offices, or any Deans or Vice Deans, or any employees in Defendants in-house legal offices; and

- the Judge presiding over this Action, his or her law clerks, spouse, and any person within the third degree of relationship living in the Judge's household and the spouse of such a person.

Settlement Agreement, ¶ 1(c).

Courts regularly certify similar classes where direct purchasers allege that conspiracies in violation of the Sherman Act artificially inflated prices. *See Kleen Prod. LLC v. Int'l Paper Co.*, 831 F.3d 919, 922, 931 (7th Cir. 2016) (affirming certification of class of direct purchasers alleging Section 1 conspiracy artificially raised prices); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 826 (7th Cir. 2012) (reversing denial of motion to certify class of direct purchasers alleging Section 2 claims); *In re Broiler Chicken Antitrust Litig.*, 2022 WL 1720468, at *3 (N.D. Ill. May 27, 2022) (certifying three classes of Broiler purchasers—including one class encompassing nearly every chicken retailer and another including "nearly every individual consumer of chicken in the United States"); *In re Opana ER Antitrust Litig.*, 2021 WL 3627733 (N.D. Ill. June 4, 2021) (certifying direct and indirect purchaser classes alleging Section 1 violations).

In the consumer case context, courts have also frequently certified classes of university students that paid tuition. *Arredondo v. Univ. of La Verne*, 618 F. Supp. 3d 937, 950 (C.D. Cal. 2022) (certifying class of all "undergraduate students…who paid tuition…during the Spring 2020 term/semester"); *Wright v. S. New Hampshire Univ.*, 565 F. Supp. 3d 193 (D.N.H. 2021) (granting provisional class certification in connection with preliminary settlement approval

26

where class was "[a]ll students and former students [of defendant Southern New Hampshire University] who paid, or on whose behalf payment was made to [defendant in connection with its] Spring 2020 Semester for tuition and fees for in-person educational services, and whose tuition and fees have not been refunded"); *Ninivaggi v. Univ. of Delaware*, 2023 WL 2734343, at *1 (D. Del. Mar. 31, 2023) (certifying class composed of "[a]ll undergraduate students enrolled in classes at the University of Delaware during the Spring 2020 semester who paid tuition").

### A. The Requirements of Rule 23(a) Are Provisionally Satisfied

Rule 23(a) requires that (1) the proposed Settlement Class is so numerous that joinder of all individual class members is impracticable (numerosity); (2) there are questions of law or fact common to the proposed settlement class (commonality); (3) plaintiff's claims are typical of those of the class (typicality), and (4) the plaintiff and class counsel will adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)-(4); *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 340-44 (N.D. Ill. 2010). The Settlement Class satisfies each of these requirements.

### 1. Numerosity and Impracticability of Joinder.

Under Fed. R. Civ. P. 23(a)(1), certification is appropriate when the number of class members is sufficiently large so that joinder of all members would make litigation needlessly complicated and inefficient. The "class must be so large that joinder of all members is impracticable. In order to establish numerosity, plaintiffs need not allege the exact number of members of the proposed class. Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met. *Morris v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. 336, 342 (N.D. Ill. 2001). The Settlement Class here includes approximately 200,000 members, Joint Decl., ¶ 17, so numerosity is satisfied.

27

### 2. Commonality.

The commonality requirement of Rule 23(a)(2) is met, as here, where plaintiffs' grievances share (at least) "even a single" common question of law or fact with members of the class. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) (*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Id. at* 756. Common issues here include, among many others, whether all Defendants admitted all students without regard to the financial circumstances of the students or students' families; whether the 568 Presidents Group sought to and did in fact stabilize the net prices charged to students attending those institutions; whether Defendants agreed upon common principles for awarding financial aid and the reciprocal exchange of data and information relating to financial aid formulas and principles; whether the challenged conduct violated the antitrust laws; and the amount by which Defendants were able to suppress financial aid below competitive levels and increase Net Prices above competitive levels a result of the alleged conspiracy to the class as a whole. *See* Complaint, at ¶¶ 3-11, 228. Accordingly, the commonality requirement of Rule 23(a) is satisfied. *See Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement.").

### 3. Typicality.

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *Lacy v. Cook Cnty., Ill.*, 897 F.3d 847, 866 (7th Cir. 2018) (*quoting Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)) (cleaned up). "[T]ypicality does not require perfect identity of claims," but rather requires that they share the "same essential characteristics." *Brown v. Cook*

28

*Cnty.*, 332 F.R.D. 229, 241 (N.D. Ill. 2019). "The typicality analysis invites the question of who the class members are, what their claims are, and how many class members actually have viable claims." *Smith v. City of Chicago*, 340 F.R.D. 262, 289 (N.D. Ill. 2021).

Plaintiffs are all current and former students of the Defendants during the relevant period who received financial aid for amounts less than the full cost of attendance. The Plaintiffs and Settlement Class members allege that they were all injured in the same way—paying artificially inflated Net Prices and receiving artificially reduced financial aid awards—by the same alleged conspiracy amongst the Defendants. That is sufficient for typicality. *See*, *e.g.*, *Kleen Prod. LLC*, 831 F.3d at 923 (defendant conceded typicality of direct purchasers); *United Nat. Recs., Inc. v. MCA, Inc., et al.*, 99 F.R.D. 178, 180-82 (N.D. Ill. 1983) (holding direct purchasers satisfied typicality requirement). Courts have held that current and former student plaintiffs' claims are typical of classes composed of students in cases involving tuition overcharges. *Arredondo v. Univ. of La Verne*, 2022 WL 19692042 (C.D. Cal. Dec. 21, 2022); *Wright v. S. N.H. Univ.*, 565 F. Supp. 3d 193 (D.N.H. 2021); *Ninivaggi*, 2023 WL 2734343 at *4. For similar reasons, the typicality requirement is met here.

### 4. Adequacy of Representation.

The fourth and final Rule 23(a) requirement is "adequacy of representation," Fed. R. Civ. P. 23(a)(4), which has three components: The "Court must determine whether Plaintiff has: (1) antagonistic or conflicting claims with other members of the class; (2) a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) competent, qualified, and experienced counsel who can vigorously conduct the litigation." *Magpayo v. Advoc. Health & Hosps. Corp.*, 2018 WL 950093, at *15 (N.D. Ill. Feb. 20, 2018).

The first two components of Rule 23(a)(4) are satisfied because the proposed Settlement Class representatives and Settlement Class members are all current and former students at

Defendant institutions, each of whom has a similar interest in maximizing and recovering alleged overcharges they collectively suffered as a result of the alleged conspiracy. To pursue that end, the proposed representatives engaged in vigorous advocacy, filing this class action lawsuit, prosecuting the case on behalf of the Settlement Class, responding to discovery, and considering and approving the settlement terms. Joint Decl., ¶ 5.

The third component of the Rule 23(a)(4) analysis is satisfied because Plaintiffs hired qualified and competent counsel who are experienced in class actions. Settlement Class Counsel has successfully investigated, commenced, and prosecuted many complex cases and class actions, including the instant action. Joint Decl., ¶¶ 26-52; *see also* ECF No. 88 (Mem. ISO Mot. for Appt. of Interim Lead Counsel); ECF No. 87-2, Gilbert Decl. ¶¶ 9-11. Accordingly, the adequacy of representation requirement is satisfied.

### B.     The Requirements of Rule 23(b)(3) Are Provisionally Satisfied

Seeking certification for settlement, under Rule 23(b)(3), Plaintiffs must also show (1) that common questions of law or fact predominate over questions affecting only individual class members (predominance); and (2) that a class action is superior to other available methods of resolving the controversy (superiority). Fed. R. Civ. P. 23(b)(3); *AT&T Mobility*, 270 F.R.D. at 344-45. Both requirements are satisfied by the proposed Settlement Class.

### 1.     Common Issues Predominate.

Rule 23(b)(3)'s predominance requirement is satisfied here because "common questions represent a significant aspect of [a] case and ... can be resolved for all members of [a] class in a single adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (*quoting* 7AA Wright & Miller, *Federal Practice & Procedure* § 1778 (3d ed. 2011). "Rule 23, when applied rigorously, will frequently lead to certification" in antitrust cases. *Id.* (*quoting* Robert H. Klonoff, *Antitrust Class Actions: Chaos in the Courts*, 11 STAN. J.L. BUS. &

FIN. 1, 7 (2005)). Common questions need only predominate; they need not be dispositive of the litigation. *Id.* (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)); *cf. Scrap Metal*, 527 F.3d at 535-36 (holding issues regarding the amount of damages do not destroy predominance). "[T]he 'mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.'" *Cason-Merenda v. VHS of Mich., Inc.*, 296 F.R.D.528, 535 (E.D. Mich. 2013) (quoting *Powers v. Hamilton Cnty. Public Defender Comm.*, 501 F.3d 595, 619 (6th Cir. 2007)). Further, the Supreme Court has instructed that "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013).

The central questions in this case are all capable of resolution on a class-wide basis, including, among many others, whether the Defendants are collectively entitled to antitrust immunity; the scope of the 568 Presidents Group agreement; which if any aid formulas or principles were the subject of agreement; whether that agreement violated the antitrust laws; the impact, if any, of the agreement on financial aid formulas and the provision of aid to members of the Settlement Class; whether Settlement Class members were adversely impacted by the challenged conduct; and the total damages suffered by the Settlement Class as a whole.

As with most antitrust class actions, each of these questions will turn on evidence common to the Settlement Class as a whole: either the alleged conspiracy is immune under the relevant exemption or it is not as to all Settlement Class Members; either Defendants engaged in conduct in violation of the antitrust laws or they did not; either Defendants agreed upon common principles and/or features of a financial aid formula or not; whether Defendants' agreement led to

anticompetitive effects or it did not. *See Amchem*, 521 U.S. at 625 ("[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws, because proof of the *conspiracy* is a common question that is thought to predominate over the other issues of the case").

This Court's inquiry in the context of settlement class certification is less searching than for a litigation class. In *Amchem*, the Supreme Court recognized that the fact of a "[s]ettlement is relevant to a class certification[,]" 521 U.S. at 619, and instructed that the portion of the predominance analysis that typically focuses on the management of the trial becomes unnecessary and irrelevant when a class is being certified in light of settlement. *Id*. at 620. *See also Sullivan*, 667 F.3d at 306 (court need not "consider the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove the disputed element at trial") (quotation omitted). Even in a litigation class context, "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws," *Amchem*, 521 U.S. at 625, because they present issues that are capable of proof by generalized evidence that "are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quotation omitted).

Settlement Class member claims all focus on the same operative set of facts and legal theories. They allege that they were all harmed by Defendants' same conduct, and the evidence of conspiracy would be entirely common if presented in a litigation posture—which, again, is not at issue here, because the proposal is there would be no trial as to the claims against UChicago, and in turn, no evidence. In sum, the predominance requirement for a settlement class is met here as "[a]ll claims arise out of the same course of defendants' conduct; [and] all share a common

32

nucleus of operative fact, supplying the necessary cohesion." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (quotation omitted).

### 2. A Class Action Is Superior to Other Methods of Adjudication.

Plaintiffs must demonstrate that a class action is superior to other available methods for fair and efficient adjudication of the controversy under Rule 23(b)(3). "A class action is superior where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually." *Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005). "Class treatment is especially appropriate for consumer claims," because "an individual consumer's claim would likely be too small to vindicate through an individual suit." *Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 303 (N.D. Ill. 2005). Moreover, class adjudication is superior when litigating claims separately "risks inconsistent determinations on common issues" and "require[s] multiple courts to evaluate the same evidence and analyze the same policies and practices in what would amount to a wastefully inefficient enterprise." *Cancel v. City of Chicago*, 254 F.R.D. 501, 512 (N.D. Ill. 2008).

In this class action, the damages suffered by individual Plaintiffs and other Settlement Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants. Even if Settlement Class Members could afford individual litigation, it would create a potential for inconsistent or contradictory rulings and judgments and increase the delay and expense to all parties and the court system. Class resolution is thus superior to alternative methods of resolution.

### 3. Settlement Class Counsel Meet the Requirements of Rule 23(g).

Under Fed. R. Civ. P. 23(g), a court that certifies a class must appoint class counsel. Class counsel is charged with fairly and adequately representing the interests of the class. Fed. R. Civ. P. 23(g)(1)(B). In appointing class counsel, the Court must consider: (1) the work counsel

has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and similar claims; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv); *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339-40 (S.D.N.Y. 2004).

In this case, the three law firms that have served as counsel for plaintiffs and the proposed class from the outset of this case readily satisfy the criteria of Rule 23(g), and should be jointly appointed as Settlement Class Counsel. Joint Decl., ¶¶ 26-52. First, Plaintiffs' counsel have devoted substantial time, effort, and resources to this litigation, beginning with their initial investigation and the filing of the initial complaint on January 9, 2022, continuing through the successful briefing and argument on the motion to dismiss, the extensive document and deposition discovery to date, and through months of arm's length settlement negotiations with UChicago. *See* Joint Decl., ¶¶ 7-15; *see also* ECF No. 88 (Mem. ISO Mot. for Appt. of Interim Lead Counsel); ECF No. 87-2, Gilbert Decl. ¶¶ 9-11. In addition, as previously described to the Court in seeking to be appointed interim Co-Lead Class Counsel, ECF No. 88, Plaintiffs' counsel have extensive experience in complex and class action litigation, in district courts of the Seventh Circuit and elsewhere, and have served as class counsel in other complex class actions and antitrust cases. *See* Joint Decl., ¶¶ 26-52; *see also* ECF No. 88 at 4-12; ECF No. 87-2, Gilbert Decl. ¶¶ 4-8. In addition, Berger Montague maintains a Chicago office, which obviates the need for the Plaintiffs to retain a separate local counsel firm.

## V. CONCLUSION

Plaintiffs respectfully request, for the foregoing reasons, that the Court grant Plaintiffs' Motion and enter the proposed Order.

Dated:        August 14, 2023        Respectfully submitted,

By:/s/*Robert D. Gilbert*
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
Steven Magnusson
**GILBERT LITIGATORS &
COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
smagnusson@gilbertlitigators.com

*/s/ Edward J. Normand*
Edward J. Normand (pro hac vice)
Devin Freedman (pro hac vice)
Peter Bach-y-Rita (pro hac vice)
Richard Cipolla (pro hac vice)
**FREEDMAN NORMAND
FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
tnormand@fnf.law
vel@fnf.law
pbachyrita@fnf.law
rcipolla@fnf.law

Eric L. Cramer
Caitlin G. Coslett
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
ccoslett@bm.net

Daniel J. Walker
Robert E. Litan
Hope Brinn
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

*Counsel for Plaintiffs and the Proposed Class*