**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>Defendants. | Case No.: 1:22-cv-00125<br><br>**Hon. Matthew F. Kennelly** |

**JOINT DECLARATION OF ERIC L. CRAMER,**
**ROBERT D. GILBERT, & EDWARD NORMAND IN SUPPORT**
**OF PRELIMINARY APPROVAL OF SETTLEMENT**

Pursuant to 28 U.S.C. §1746, we, Eric L. Cramer, Robert D. Gilbert, and Edward

Normand jointly declare:

1.    We are, respectively, partners or shareholders of the law firms of Berger

Montague PC ("Berger Montague"), Gilbert Litigators and Counselors ("GLC"), and Freedman

Normand Friedland LLP ("FNF") (together, "Settlement Class Counsel"). We have been actively involved in investigating, initiating, and prosecuting this matter from the outset, and also in resolving this matter with defendant University of Chicago ("UChicago"). We are familiar with all of these proceedings and have personal knowledge of the matters set forth herein. If called upon and sworn as witnesses, we would be competent to testify thereto.

2.      Unless otherwise defined herein, all capitalized terms have the same meanings set forth in the August 7, 2023 Settlement Agreement between Plaintiffs and the proposed Settlement Class ("Settlement Agreement"), attached hereto as Exhibit A.

3.      We respectfully submit this Declaration in Support of the Motion for Provisional Certification of Settlement Class, Preliminary Approval of Proposed Partial Settlement, Approval of the Form and Manner of Notice to the Class, and Proposed Schedule for a Fairness Hearing ("Motion").

4.      The Settlement Agreement provides for UChicago to make cash payments totaling $13.5 million to Plaintiffs and the proposed Settlement Class, and to offer cooperation in discovery. As described below, the Settlement is fair, reasonable, and adequate.

5.      Proposed Class Representatives have been involved in assisting the litigation of the matter, helping to filing this class action lawsuit, responding to discovery, and have all considered and approved the terms of the Settlement Agreement.

6.      We believe that the Settlement is an excellent result for the Settlement Class in light of, *inter alia*, the substantial and immediate cash payment for the benefit of the Settlement Class, the risks associated with delay, the promised cooperation in discovery, UChicago's claim to have left the 568 Group in 2014, and the fact that the remaining sixteen Defendants[1] in the

---

[1] "Defendants" is defined in the Settlement Agreement at 1-2.

matter are jointly and severally liable for, and capable of paying, the full amount of anticipated proved damages. Accordingly, we respectfully submit that pursuant to Federal Rule of Civil Procedure 23(e), the Settlement should be preliminarily approved.

## SETTLEMENT CLASS COUNSEL'S PROSECUTION OF THE ACTION

7.     Proposed Settlement Class Counsel has devoted substantial time, effort, and resources to this litigation, beginning with their initial investigation, through the filing of the Complaint, the successful briefing on the motion to dismiss, and the aggressive pursuit of document and deposition discovery. Further, Settlement Class Counsel pursued resolution with UChicago on a separate track over many months, including arm's length settlement negotiations and lengthy discussions of the details of the Settlement Agreement and associated documents. Settlement Class Counsel did not have the benefit of a governmental investigation or enforcement action in advance of filing the Action, but instead investigated and initiated the matter solely through their and their clients' own initiative, joint investigation, and collective resources.

8.     Several factors complicated Plaintiffs' case against UChicago relative to that of the other Defendants in the Action, including that evidence supports UChicago's claims that it withdrew from the 568 Group and stopped attending 568 Group meetings in or around 2014, followed by claimed revisions to its financial aid formula and practices, allegedly, to become more generous after departing the Group; and that the case is pending in Chicago, and UChicago has significant financial aid programs targeted at Chicago-area students.

9.     Plaintiffs filed the initial complaint on January 9, 2022. ECF No. 1. Defendants filed Motions to Dismiss on April 15, 2022. *See* ECF Nos. 145, 146, 148. On August 15, 2022, the Court issued an Order denying Defendants' Motions to Dismiss in their entirety. *See* ECF

No. 185. The Court analyzed Plaintiffs' claims and found that Plaintiffs had plausibly alleged, *inter alia*, that (1) the challenged conduct did not fall within an antitrust exemption, (2) that Defendants had committed violations of the Sherman Act, (3) that Plaintiffs injuries were sufficient to satisfy antitrust injury and antitrust standing requirements, and (4) that the claims were not time-barred. *Id.*

10.     Over the next year, Settlement Class Counsel have aggressively litigated the case, including with regard to fact discovery and expert work. Both pursuits are critical to: establishing liability and the foundations for class certification; opposing Defendants' anticipated summary judgment and *Daubert* motions; preparing for the jury trial in this matter; and, defending any judgment on appeal.

11.     To date, in discovery, Settlement Class Counsel have secured the production of 1,412,625 documents in total from all of the Defendants and multiple third parties, including nearly 78,000 documents from UChicago alone. Plaintiffs have also begun deposing the non-settling Defendants, including Defendants Dartmouth, MIT, Northwestern, Penn, Yale, and Vanderbilt.

12.     Settlement Class Counsel also identified, collected, reviewed, and produced 3,814 documents from the Class Representatives. This process involved numerous calls and meetings (including in-person meetings) to identify and collect documents and identify electronic data sources subsequently collected by a retained vendor. Once Settlement Class Counsel responded to Defendants' document requests on behalf of the Class Representatives and negotiated search terms with Defendants, Settlement Class Counsel reviewed the universe of collected documents to locate those appropriate for production. Settlement Class Counsel also worked with the Class

Representatives to produce multiple rounds of Interrogatory Responses on behalf of the Class Representatives, as well as Initial Disclosures.

13.     Settlement Class Counsel also felt it necessary to file motions to compel compliance with discovery requests served on Defendants. *See, e.g.*, ECF Nos. 331, 402.

14.     In preparation for the thirteen important fact depositions taken in this case to date and the many more that are scheduled, Settlement Class Counsel (a) identified key documents to be used at each deposition, (b) prepared extensive deposition outlines, and (c) coordinated deposition strategy and questioning amongst the Plaintiffs' legal team, as well as logistics with Defendants.

15.     Given the importance of expert issues, including economic and damages issues in this case, Settlement Class Counsel have spent significant time working with their retained economic experts and consultants to address issues including impact of the challenged conduct on the members of the proposed class, damages suffered by the class, and anticompetitive effects of the challenged conduct.

## THE UCHICAGO SETTLEMENT

16.     On August 7, 2023, Settlement Class Counsel and UChicago executed the Settlement Agreement (Exhibit A).

17.     The Settlement Agreement provides for UChicago to make cash payments totaling $13.5 million to Plaintiffs and the proposed Settlement Class, and to offer cooperation in discovery. *See* Ex. A, ¶¶ 7, 20. The Proposed Settlement Class includes approximately 200,000 members.

18.     By way of cooperation, under the Settlement Agreement, UChicago has promised to work in good faith to ensure the undergraduate financial aid structured data produced by it are

reasonably understandable to Settlement Class Counsel and their consultants. Ex. A, ¶ 20. UChicago has also agreed to complete its pending document production, and to identify by Bates number documents it produced that relate to information shared by participants in the 568 Group, UChicago's undergraduate financial aid practices while it attended 568 Group meetings, and UChicago's "need blind" policy. *Id.* Further, a lawyer for UChicago will meet with Settlement Class Counsel for up to seven hours to respond in good faith to reasonable questions about: UChicago's financial aid practices over time, its participation in the 568 Group, and its knowledge of the practices, procedures, and any enforcement mechanisms or efforts of the 568 Group. *Id.* UChicago has further agreed to ask its former Director of College Aid to meet with Settlement Class Counsel for a witness interview; to negotiate in good faith a declaration or affidavit in the event Settlement Class Counsel want testimony from a UChicago employee; and to provide a declaration supporting the business records exception to the hearsay rule in the event there is an authenticity or hearsay objection to documents kept in the ordinary course of business produced by UChicago. *Id.* This cooperation will assist Settlement Class Counsel in understanding the complex financial aid and other detailed factual questions in the case as well as in the broader prosecution of the case against the sixteen remaining Defendants.

19.    The Settlement Agreement provides that if more than 650 proposed Class Members opt-out of the Settlement, UChicago will have the right to terminate the Settlement Agreement. Ex. A, ¶ 16.

20.    A true and correct copy of the appointment of Huntington National Bank as Escrow Agent for the settlement funds is attached to the Settlement Agreement as Exhibit B. Huntington is a highly respected bank providing consumers, corporations, and others with a broad range of financial services.

21. A proposed preliminary approval order is attached hereto as Exhibit C. We note that the proposed order attached here to is slightly different than the version attached to the Settlement Agreement (which was executed earlier). The version of the proposed order attached hereto was updated, with UChicago's permission and Defendants' understanding and agreement, to include a provision covering to FERPA issues relating to Defendants' agreement to produce email and postal contact information for current and former students in the proposed Settlement Class.

22. We know of no separate agreements or conflicts that would affect the settlement amount, the eligibility of Settlement Class Members to participate in the Settlement, or the treatment of Settlement Class Members' claims.

23. We have collectively prosecuted numerous antitrust class actions as lead counsel or in other leadership positions. We have collectively negotiated many class and non-class litigation settlements. In our opinion, the Settlement Agreement with UChicago in this case is fair, reasonable, and adequate. It provides substantial benefits to members of the Settlement Class as described herein.

24. For the reasons set forth above and in the accompanying Memorandum of Law, we respectfully submit that under Rule 23(e), the Settlement's terms are fair, reasonable, and adequate in all respects and should be approved. Working in conjunction with economist Ted Tatos (at EconOne), Plaintiffs' counsel devised a fair, equitable, and efficient proposed Plan of Allocation, which is summarized in the Plan of Allocation attached hereto as Exhibit D. Mr. Tatos specializes in economic and statistical analysis, including in antitrust and higher education. He was previously an Adjunct Professor of economics at the University of Utah, where he has taught both graduate and undergraduate economics and statistics classes. He is also the Associate

Economics Editor of the *Antitrust Bulletin* journal. He regularly publishes in economic and law journals on antitrust, labor, statistics, higher education, and intellectual property issues. His work has appeared in the Antitrust Bulletin, the Harvard Journal of Sports & Entertainment Law, the Federal Circuit Bar Journal, the Appraisal Journal, and others. Plaintiffs' counsel intend to submit a detailed proposal and schedule for the claims process at the final approval stage.

### PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS SETTLEMENT CLASS COUNSEL

25.     Plaintiffs' counsel filed a motion to be appointed interim co-lead class counsel on February 9, 2022. ECF No. 87. The Court denied that motion as premature on August 7, 2022. ECF No. 182. We incorporate that motion, and the accompanying Declaration of Robert Gilbert, ECF No. 87-3, herein.

26.     The three firms seeking to be appointed Settlement Class Counsel collectively have decades of experience in antitrust litigation, including one member who, while at the U.S. Department of Justice, spearheaded the original successful prosecution of the Overlap Group against several universities who were alleged to have colluded regarding financial aid practices prior to the initiation of the 568 Presidents Group.

27.     Gilbert Litigators & Counselors (GLC) is a national litigation boutique that focuses on very substantial commercial cases. The Firm's founding partners are Robert Gilbert and Elpidio ("PD") Villarreal. Robert Gilbert is a 1982 graduate of the Yale Law School, where he was Senior Editor of the Yale Law Journal. For more than three decades, his practice concentrated on large complex commercial litigation and arbitration, and for approximately two decades he was an equity partner and a lead trial lawyer at AmLaw 100 firms, including at Mayer Brown and Dentons.

28.     Robert Gilbert has very extensive litigation experience concerning disputes in which hundreds of millions of dollars or billions of dollars are in dispute. As lead counsel, he has represented several Fortune 100 and large multinational corporations including Samsung, General Electric, Hyundai Heavy Industries, and GlaxoSmithKline in commercial litigation or commercial arbitration disputes, including the representation of Samsung as lead counsel in a multi-billion dollar arbitration with SanDisk while he was a partner at Mayer Brown. He has repeatedly been selected as a New York Super Lawyer for commercial litigation, and his litigation approach has been described by the Legal 500 as "creative, thorough and aggressive." In the mid-l 990s, while Litigation Counsel at General Electric's Corporate Headquarters, he managed and directed the defense of GE in a major antitrust case that alleged collusion among GE, Westinghouse and Square Din the national circuit breaker market. *In re Circuit Breaker Litigation*, 984 F. Supp. 1267 (C.D. Cal. 1997).

29.     Robert Gilbert has worked with or collaborated professionally with Elpidio "PD" Villarreal on a range of matters over the past 26 years, and he is now a partner in Gilbert Litigators & Counselors. Mr. Villarreal is a 1985 graduate of Yale Law School, who began his distinguished career as a Seventh Circuit clerk. He has over 35 years of litigation experience, as a former partner at major national law firm Sonnenschein, Nath & Rosenthal (now part of Dentons) and as chief of litigation for several large multinational companies for almost two decades, including the global head of litigation for GlaxoSmithKline ("GSK") for approximately a decade. He has lectured about litigation, conflict resolution and diversity at multiple elite universities, including Harvard Law School, Yale Law School, Stanford Law School, NYU Stern School of Business, and Notre Dame Mendoza College of Business. At Stern, he also lectures on leadership. In 2016, the Financial Times awarded global recognition to GSK as the "Litigation

Team of the Year." Harvard Law School and Harvard Business School each published a separate case study concerning Mr. Villarreal's innovative work in early dispute resolution, and their respective faculties each taught those case studies for several years.

30.     Mr. Villarreal has particularly deep experience in complex litigation, including class actions, antitrust, product liability, intellectual property, and commercial litigation. He has managed a wide variety of significant antitrust and other actions involving GSK pharmaceutical products such as Asacol, Avandia, Lamictal, Namenda, and Paxil, where the claimed damages in each litigation were billions of dollars. He managed multiple leading national defense counsel, created litigation strategy, and saw that it was implemented, analyzed voluminous documents, edited memoranda of law prepared by leading law firms, led difficult negotiations to resolve the litigations, attended numerous contested proceedings in federal courts, in depositions, and took the leading role at settlement conferences on these multi-billion dollar matters.

31.     Mr. Villarreal has very extensive experience in resolving multi-billion dollar class actions including multi-billion antitrust class actions. His vast experience includes the following:

  a. *In re Avandia Marketing, Sales Practices & Products liability Litig.*, *see*, *e.g.*, 484 F. Supp. 3d (E.D. Pa. 2020);

  b. *In re Lamictal Direct Purchaser Antitrust Litig., see, e.g.*, 957 F.3d 184 (3d Cir. 2020);

  c. *In re Namenda Direct Purchaser Antitrust Litig., see, e.g.*, 33 I F. Supp. 3d 152 (S.D.N. Y. 2018);

  d. *In re Asacol Antitrust Litigation, see, e.g.*, 907 F. 3d 42 (1st Cir. 2018);

  e. *In re Paxil Litig.* in several federal and state forums.

32.     Robert Gilbert has known Robert Raymar for more than 45 years and was his law partner in the early 1990s. Since that time, they have collaborated on a range of complex litigation matters. Mr. Raymar, now Special Counsel for Gilbert Litigators & Counselors, has had a long and distinguished legal career. After graduating from Yale Law School in 1972, where he was an Editor of the Yale Law Journal, he became a law clerk to Judge Leonard Garth of the United States District Court for the District of New Jersey and United States Court of Appeals for the Third Circuit. He subsequently served as assistant legal counsel to the Governor of New Jersey, as a deputy attorney general for the State of New Jersey in the Division of Criminal Justice and as a member of the New Jersey Executive Commission on Ethical Standards. He has had over forty years' experience in private practice litigating complex commercial cases. He has been repeatedly selected as a top-rated litigation attorney by Super Lawyers.

33.     Mr. Raymar also has extensive experience in matters involving significant national public policy issues. He has served as a visiting lecturer at Princeton University's School of Public and International Affairs, on the Board of Trustees of the New Jersey Institute of Technology, and as a New Jersey delegate to several Democratic National Conventions. He was a member of the National Executive Committee of the Yale Law School Association and was twice president of the Yale Law School Association of New Jersey. He has been a member of the Boards of Directors of the Center for American Progress Action Fund, of One Fair Wage Action, and of the Advisory Council for the Alliance for Justice Building The Bench Initiative.

34.     Sarah Schuster is a Senior Associate at Gilbert Litigators & Counselors, P.C.  Ms. Schuster has extensive experience as a complex commercial litigator and regulatory lawyer, representing individual and corporate clients in a wide variety of litigations and investigations.

Ms. Schuster started her career at Schulte Roth & Zabel LLP and later worked at a New York-based boutique litigation firm before joining Gilbert Litigators in 2022. Ms. Schuster received her J.D. from New York University School of Law and her bachelor's degree from Brown University.

35.     Freedman Normand Friedland LLP is a national law firm comprised of innovative and tech-savvy attorneys with stellar credentials. With experience from some of the most prestigious litigation firms in the country, FNF's legal team has a successful and decades-long track record of consistently achieving success in high-stakes and notable disputes on behalf of sophisticated clients. FNF's legal team has extensive experience litigating complex commercial, securities, antitrust, class action, and derivative matters on behalf of both plaintiffs and defendants in a broad range of industries. FNF couples a unique brand of creative thinking and technical expertise with well-balanced aggressive advocacy to achieve impressive results in complex, high value, and class action matters. As the firm continues to grow, it has focused on building a diverse attorney pool with cross-functional expertise.

36.     Edward Normand is a founding partner of FNF. In addition to working on many of FNF's numerous class actions, Mr. Normand represented clients in class action, securities, and antitrust matters at Boies Schiller Flexner LLP for more than two decades. For example, Mr. Normand represented Vanguard in an opt-out from the securities class action against ARCP, *In re American Realty Capital Props., Inc. Litig.*, 1:15-mc-00040- AKH (S.D.N.Y.); represented HSBC in consolidated securities actions arising out of the sale of residential mortgage-backed securities, *FHFA v. HSBC N. Am. Holdings Inc.*, 11cv6189, 11cv6201 (DLC) (S.D.N.Y.); represented a class of employee health benefit plans in an ERISA action against Merck-Medco arising out of the defendant's management of pharmaceutical benefits, *C. States Southeast v.*

*Merck-Medco*, 7:03-md- 01508 (S.D.N.Y.); represented EchoStar in connection with its efforts to obtain FCC approval under the antitrust laws to acquire DirecTV; represented ValueAct Capital against the DOJ's allegations that the company violated the HSR Act in connection with acquisition of certain voting securities; and has written regarding the implications of the operation of the HSR Act in conjunction with the antitrust laws, the First Amendment, and Equal Protection clause, S. Gant, A. Michaelson & E. Normand, *The Hart-Scott-Rodino Act's First Amendment Problem*, 103 CORNELL L. REV. 1 (2017). Mr. Normand was the Editor-in-Chief of the University of Pennsylvania Law Review and served as a law clerk in both the Second Circuit Court of Appeals and the Eastern District of Pennsylvania.

37.     Devin (Velvel) Freedman is a founding partner of FNF with substantial experience litigating complex commercial matters. He has been lead defense counsel in multiple class actions and class arbitrations. *See, e.g., Joe Rudy Reyes, et al. v. JPay, Inc. et al.*, 2:18-cv-00315-R-MRW (C.D. Cal.); *Rodriguez et. al. v. JPay Inc., et. al.*, 2:19-cv-14137 (S.D. Fla.); *In the Matter of the Arbitration Between Shalanda Houston and Cynthia Kobel, individually and on behalf of all others similarly situated and JPay*, Inc, AAA Case No. 01- 15-0005-3477 (American Arbitration Association); *In the Matter of the Arbitration Between Oumer Salim, individually and on behalf of all others similarly situated and JPay, Inc.*, AAA Case No. 01-15-0005-8277 (American Arbitration Association). Finally, Freedman was a 2019 recipient of the Daily Business Review's professional excellence award as an attorney "On the Rise."

38.     Eric Cramer is Chairman and an Executive Shareholder of the law firm of Berger Montague PC. He is a member in good standing of the State Bars of Pennsylvania and New York.

39. Described by *Chambers & Partners* as a "[b]outique firm with deep expertise in complex antitrust litigation," Berger Montague pioneered the antitrust class action and has been engaged in the practice of complex and class action litigation for more than fifty years. Since its founding by David Berger—one of the "fathers of the class action practice"—Berger Montague has been a leading national advocate for clients and class members in many of the most important complex antitrust cases ever litigated, including, serving as co-lead counsel most recently in the largest private antitrust settlement ever achieved (approximately $5.62 billion) in the *Payment Card Interchange Fee & Merchant Discount Antitrust Litig. (In re Payment Card)*, MDL No. 1720 (E.D.N.Y.), and the largest single-defendant settlement ever for a case alleging delayed generic competition in *In re: Namenda Direct Purchaser Antitrust Litig.*, No. 15-cv-7488 (S.D.N.Y.) ($750 million). The firm is headquartered in Philadelphia with offices in Chicago, Minneapolis, San Diego, San Francisco, Toronto, and Washington, DC.

40. Berger Montague PC is currently lead or co-lead counsel in more than two dozen of the largest and most complex antitrust class actions in courts around the country, including:

  a. *Le v. Zuffa, LLC*, No. 15-cv-1045 (D. Nev.) (co-lead counsel representing a class of mixed martial arts fighters);

  b. *In re Google Digital Advertising Antitrust Litig.*, No. 21-md-3010 (S.D.N.Y.) (co-lead counsel for the class of publishers against Google);

  c. *Fusion Elite All Stars v. Varsity Brands LLC,* No. 20-cv-3390 (E.D. Pa.) (co-lead counsel for classes of gyms and spectators against an alleged monopolist in the All Star Cheer market);

  d. *In re Rotavirus Vaccines Antitrust Litig.*, No. 18-cv-1734 (E.D. Pa.) (co-lead counsel for class of healthcare plans who purchased pediatric rotavirus vaccines);

    e.   *In re Geisinger Health and Evangelical Community Hospital Healthcare Workers Antitrust Litig.*, No. 21-cv-00196 (M.D. Pa.) (co-lead counsel for class of healthcare workers);

    f.   *Simon & Simon, P.C., et al. v. Align Technology, Inc.*, No. 20-cv-03754 (N.D. Cal.) (co- lead counsel for class of dental practice purchasers of clear dental aligners and scanners);

    g.   *In re Broiler Chicken Grower Antitrust Litig. (No. II)*, No. 20-md-02977 (E.D. Okla.) (co-lead counsel for class of chicken farmers);

    h.   *In re Bystolic Antitrust Litig.*, No. 20-cv-5735 (S.D.N.Y.) (co-lead counsel for class of direct purchasers of pharmaceutical products);

    i.   *In re EpiPen Direct Purchaser Litig.*, No. 20-cv-827 (D. Minn.) (co-lead counsel for class of direct purchasers of pharmaceutical products);

    j.   *In re Lipitor Antitrust Litig.*, No. 12-cv-2389 (D.N.J.) (co-lead counsel for class of direct purchasers of pharmaceutical products);

    k.   *In re Niaspan Antitrust Litig.*, No. 13-md-2460 (E.D. Pa.) (co-lead counsel for class of direct purchasers of pharmaceutical products);

    l.   *In re Opana ER Antitrust Litig.*, No. 14-cv-10150 (N.D. Ill.) (co-lead counsel for class of direct purchasers of pharmaceutical products);

    m.   *In re Commodity Exchange, Inc.*, *Gold Futures and Options Trading Litig.*, No. 14-md- 2548 (S.D.N.Y.) (co-lead counsel for a class of sellers of gold investments);

41.    Berger Montague has won verdicts and settlements recovering over $40 billion for clients and class members. Examples of recent successes in antitrust class actions include:

    a.   *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-md- 1720 (S.D.N.Y.) (settlement of approximately $5.6 billion);

    b. *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-cv-7488 (S.D.N.Y.)

        ($750 million class settlement);

    c. *King Drug Co. v. Cephalon, Inc.*, No. 06-cv-01797 (E.D. Pa.) ($512

        million class settlement);

    d. *In re Domestic Drywall Antitrust Litig.*, No. 13-2437 (E.D. Pa.)

        (settlements totaling $190.7 million);

    e. *In re Commodity Exchange, Inc. Gold Futures & Options Trading Litigation*, No.

        14-md- 02548 (S.D.N.Y.) (settlements totaling $152 million);

42. The U.S. edition of *The Legal 500* has recommended Berger Montague PC as a "Top Tier Firm" for representing plaintiffs in antitrust class action litigation and describes the firm as "excellent," "easy to deal with," and "noted for the depth of its team." The Firm has also appeared on *The National Law Journal*'s "Hot List" of the Top Plaintiffs' Law Firms in the United States in twelve of the last fifteen years the list was compiled (from 2003–2017). Beginning in 2018 and each year thereafter, *The National Law Journal* and Law.com have included Berger Montague PC in its list of "Elite Trial Lawyers," recognizing law firms that "have done exemplary and cutting-edge work on behalf of their clients and are established leaders in the area of plaintiff law." *Id.* Similarly, *Chambers & Partners* has repeatedly named the Firm a leading, "Band 1" national antitrust law firm for multiple years running. Berger Montague has served as lead or co-lead counsel in myriad antitrust cases representing plaintiff classes alleging price fixing, vertical trade restraints, monopolization, and other anticompetitive conduct in diverse markets.

43. Managing this case on a day-to-day basis for Berger Montague have been Eric Cramer, Robert Litan, Daniel Walker, Ellen Noteware, and Hope Brinn.

44. Eric Cramer is Chairman of Berger Montague and is also Co-Chair of the Firm's antitrust department. He has a national practice in the field of complex litigation, primarily in

antitrust. He is currently co-lead counsel in multiple significant antitrust class actions across the country in a variety of industries and is responsible for winning numerous significant settlements for his clients totaling well over $3 billion. Most recently, he has focused on representing workers claiming that anticompetitive practices have suppressed their pay, including cases on behalf of mixed-martial-arts fighters, luxury retail and healthcare workers, and chicken growers. Last year he served as one of the main trial counsel in a two-week jury trial in *In re Capacitors Antitrust Litig.* (N.D. Cal.), which resulted in a $160 million class settlement just before closing arguments.

45.     In 2020, *Law360* named Cramer a Titan of the Plaintiffs Bar, and *Who's Who Legal* identified him as a Global Elite Thought Leader, stating that Mr. Cramer "comes recommended by peers as a top name for antitrust class action proceedings." In 2021, *Chambers & Partners* ranked him in the top tier nationally in antitrust, observing that "He excels in economic analysis. He is a real leader;" and that he has "a great presence in court and at trial," and is at the "[t]op of the profession; a phenomenal lawyer who is an expert on economics." In 2019, *The National Law Journal* awarded him the 2019 Keith Givens Visionary Award, which was developed to honor an outstanding trial lawyer who has moved the industry forward through his or her work within the legal industry ecosystem, demonstrating excellence in all aspects of work from client advocacy to peer education and mentoring. In 2018, he was named Philadelphia antitrust "Lawyer of the Year" by *Best Lawyers*, and in 2017, he won the American Antitrust Institute's Antitrust Enforcement Award for Outstanding Antitrust Litigation Achievement in Private Law Practice for his work in *Castro v. Sanofi Pasteur Inc.*, No. 11-cv-07178 (D.N.J.). In that case, he represented a national class of physicians challenging Sanofi Pasteur with

anticompetitive conduct in the market for meningitis vaccines, resulting in a settlement of more than $60 million for the class.

46. Cramer has stewarded multiple cartel cases to successful resolution as co-lead counsel, including *In re Dental Supplies Antitrust Litig.*, No. 1:16-cv-696 (E.D.N.Y.) (Cogan, J.) (one of four co-leads) (Section 1 price-fixing case against dental supplies distributors that resulted in an $80 million settlement in 2019) and *In re Domestic Drywall Antitrust Litig.*, 13-md-2437 (E.D. Pa.) (one of 3 co-leads) (Section 1 price fixing cases against drywall manufacturers that resulted in settlements totaling more than $190 million). He was also co-lead counsel in connection with a ground-breaking settlement in an antitrust case relating to the over-the- road fleet payment card market in *Comdata*, which provided for $130 million in cash plus valuable prospective relief that rolled back much of the conduct plaintiffs had challenged. *Id.* And he litigated as co-lead counsel an antitrust case against Abbott Labs, which settled for $54 million after three days of trial. *Meijer v. Abbott Labs.*, Nos. 04-cv-1511, 07-cv-5985 (N.D. Cal.). He is also currently co-lead in multiple antitrust class actions, including *Le v. Zuffa, LLC*, No. 15-cv-1045 (D. Nev.) (one of 3 co-leads); *In re Google Digital Advertising Antitrust Litig.*, No. 21-md-3010 (S.D.N.Y.) (one of 3 co-leads for the class of publishers); *Fusion Elite All Stars v. Varsity Brands LLC*, No. 2:20-cv-3390 (E.D. Pa.) (one of 3 co- leads); and *In re Rotavirus Vaccines Antitrust Litig.*, No. 2:18-cv-1734 (E.D. Pa.) (one of 2 co-leads).

47. Dr. Robert Litan, shareholder, is both an experienced antitrust attorney and a Ph.D. economist, with an extensive 40-plus year research publication record (as author or co-author of 30 books and over 250 articles in academic and popular publications) and economic expert testifying experience in over 20 legal or administrative matters. He has brought that experience to his class action antitrust litigation practice, working with economic experts and on

economic aspects of antitrust matters, including his work on this matter, his ongoing work in *In Re Google Digital Advertising Litig*, and his prior work with economic experts in *In Re Foreign Exchange Benchmark Rates Antitrust Litig.* (S.D.N.Y., No. 13 Civ. 7789 (LGS), and *In Re Google Play Consumer Antitrust Litig.* (N.D. Cal., No. 3:20-CV-05761-JD).

48.     Dr. Litan is also a former Deputy Assistant Attorney General in the Justice Department's Antitrust Division, where, among other things, he directed the Department's first investigation of monopolization by Microsoft (which resulted in a consent decree in 1994), the initial stages of the Department's price-fixing investigation of NASDAQ (which also resulted in a consent decree in 1997), and personally directed the Department's settlement reached in December 1993 with the remaining Defendant, MIT, that did not sign an earlier consent decree in the Department's investigation of financial aid price-fixing through the "Overlap Agreement" between universities in the Ivy League and MIT. The terms of the DOJ-MIT settlement were partially incorporated into the text of the Section 568 antitrust exemption, at issue in this case.

49.     Ellen Noteware is a Shareholder and member of the firm's antitrust department. Ms. Noteware has successfully represented investors, retirement plan participants, employees, consumers, and direct purchasers of prescription drug products in a variety of class action cases. She currently chairs the firm's Pro Bono Committee. Ms. Noteware served on the trial team for *Cook v. Rockwell Int'l Corp.* No. 90-181 (D. Colo.) and received, along with the entire trial team, the "Trial Lawyer of the Year" award in 2009 from the Public Justice Foundation for their work on the case, which resulted in a jury verdict of $554 million in February 2006, after a four-month trial, on behalf of thousands of property owners near the former Rocky Flats nuclear weapons plant located outside Denver, Colorado. Ms. Noteware also has played a leading role in numerous antitrust cases representing direct purchasers of prescription drugs. Many of these

cases have alleged that pharmaceutical manufacturers have wrongfully kept less expensive generic drugs off the market, in violation of the antitrust laws. Many of these cases have resulted in substantial cash settlements, including *In re: Namenda Direct Purchaser Antitrust Litigation*, (S.D.N.Y.) ($750 million settlement – largest single-defendant settlement ever for a case alleging delayed generic competition); *In re Loestrin 24 Fe Antitrust Litigation*, (D.R.I.) ($120 million settlement 3 weeks before trial was set to begin); *In re Ovcon Antitrust Litigation*, (D.D.C.) ($22 million settlement); *In re Tricor Direct Purchaser Antitrust Litigation*, (D. Del.) ($250 million settlement); *Meijer, Inc. v. Abbott Laboratories*, (N.D. Cal.) (Norvir) ($52 million); and *In re Celebrex*, No. 14-cv-00361 (E.D. Va.) ($95 million).

50.    Ms. Noteware is also extensively involved in litigating breach of fiduciary duty class action cases under the Employee Retirement Income Securities Act ("ERISA"). Her ERISA settlements include: *In re Nortel Networks Corp. ERISA Litigation* (M.D. Tenn.) ($21 million settlement); *In re Lucent Technologies, Inc. ERISA Litigation* (D.N.J.) ($69 million settlement); *In re SPX Corporation ERISA Litigation* (W.D.N.C.) ($3.6 million settlement); *Short v. Brown University*, (D.R.I.) ($3.5M settlement plus requirement that independent adviser for ERISA plans be retained); *Dougherty v. The University of Chicago*, No. 1:17-cv-03736 (N.D. Ill.) ($6.5M settlement); and *Nicolas v. The Trustees of Princeton University*, No. 3:17-cv-03695 (D.N.J.) (settlement announced). Ms. Noteware is a graduate of Cornell University (B.S. 1989) and the University of Wisconsin-Madison Law School (J.D. *cum laude* 1993) where she won the Daniel H. Grady Prize for the highest grade point average in her class, served as Managing Editor of the Law Review, and earned Order of the Coif honors. She is currently a member of the Pennsylvania, New York, and District of Columbia bars.

51.     Daniel J. Walker is a Shareholder and member of the firm's antitrust department and practices in Washington, DC, where he has been named a Super Lawyer for 2020-2021. Mr. Walker rejoined the firm in 2017 from the Federal Trade Commission, where he was an attorney in the Health Care Division. Mr. Walker litigates complex cases on behalf of consumers and workers and has helped recover hundreds of millions of dollars on behalf of plaintiffs. Significant past successes include *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md- 2472 (D.R.I.) (settlements totaling $120 million for purchasers of hormonal birth control pills), *In re High Tech Employee Antitrust Litig.*, No. 11-cv-2509 (N.D. Cal.) (settlements totaling $435 million for workers in the high tech industry), *Adriana Castro, M.D., P.A., et al. v. Sanofi Pasteur Inc.*, No. 11-cv-07178 (D.N.J.) ($61.5 million settlement on behalf of pediatricians who purchased meningococcal vaccine), and *In re Titanium Dioxide Antitrust Litig.*, No. 10-cv-318 (D. Md.) (settlements totaling $163.5 million for purchasers of titanium dioxide).

52.     **Hope Brinn** is an Associate in the Washington DC office and practices in the Firm's Antitrust group, and has taken two of the four depositions taken by Berger Montague to date in this case. Prior to starting at the Firm, Hope clerked for the Honorable Janet Bond Arterton in the United States District Court for the District of Connecticut. Hope is a graduate of Swarthmore College, where she was a Lang Opportunity Scholar and Truman Scholar, and the University of Michigan Law School, where she was a Darrow Scholar.

Dated: August 14, 2023

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

*/s/ Eric L. Cramer*
Eric L. Cramer (*pro hac vice*)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600

Philadelphia, PA 19106
Tel: (215) 875-3000
ecramer@bm.net

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

/s/ Robert D. Gilbert
Robert D. Gilbert
**GILBERT LITIGATORS & COUNSELORS**
11 Broadway, Suite 615
New York, NY 10004
Tel: (646) 448-5269
rgilbert@gilbertlitigators.com

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

s/ Edward Normand
Edward Normand (*pro hac vice*)
**FREEDMAN NORMAND FRIEDLAND LLP**
99 Park Ave., 1910
New York, NY 10016
Tel: (646) 350-0527
ted@fnf.law