# EXHIBIT B

## CUSTODIAN/ESCROW AGREEMENT

This Custodian/Escrow Agreement dated August 4, 2023, is made among Berger Montague PC, Freedman Normand Friedland LLP, and Gilbert Litigators & Counselors, P.C. (collectively, "Class Counsel"), the University of Chicago, an Illinois not for profit corporation (the "University"), and **THE HUNTINGTON NATIONAL BANK**, as Custodian/Escrow agent ("Chicago Custodian/Escrow Agent").

### Recitals

A. This Custodian/Escrow Agreement ("Chicago Custodian/Escrow Agreement") governs the deposit, investment and disbursement of the settlement funds that, pursuant to the Stipulation of Settlement (the "Settlement Agreement") dated August 7, 2023 attached hereto as Exhibit A, entered into by, among others, Class Counsel on behalf of the Plaintiffs,[1] individually and on behalf of the settlement class ("the Class"),[2] will be paid to settle the class action

---

[1] Plaintiffs are Andrew Corzo, Sia Henry, Alexander Leo-Guerra, Michael Maerlender, Brandon Piyevsky, Benjamin Shumate, Brittany Tatiana Weaver, and Cameron Williams.

[2] The Class includes:

    a. All U.S. citizens or permanent residents who have during the Class Period (a) enrolled in one or more of Defendants' full-time undergraduate programs, and (b) received at least some need-based financial aid from one or more Defendants, and (c) directly purchased from one or more Defendants tuition, fees, room, or board that was not fully covered by the combination of any types of financial aid or merit aid (not including loans) from one or more Defendants in any undergraduate year. The Class Period is defined as follows:

        i. For Chicago, Columbia, Cornell, Duke, Georgetown, MIT, Northwestern, Notre Dame, Penn, Rice, Vanderbilt, Yale—from 2003 through the date the Court enters an order preliminarily approving the Settlement.

        ii. For Brown, Dartmouth, Emory—from 2004 through the date the Court enters an order preliminarily approving the Settlement.

        iii. For Caltech—from 2019 through the date the Court enters an order preliminarily approving the Settlement.

        iv. For Johns Hopkins—from 2021 through the date the Court enters an order preliminarily approving the settlement.

    b. Excluded from the Class are:

        i. Any Officers and/or Trustees of Defendants, or any current or former employees holding any of the following positions: Assistant or Associate Vice Presidents or Vice Provosts, Executive Directors, or Directors of Defendants' Financial Aid and Admissions offices, or any Deans or Vice Deans, or any employees in Defendants' in-house legal offices; and

        ii. The Judge presiding over this action, his or her law clerks, spouse, and any person within the third-degree of relationship living in the Judge's household and the spouse of such a person.

captioned *Henry et al. v. Brown Univ. et al.*, No. 1:22-cv-00125 ("the Action"), pending in the Northern District of Illinois (the "Court").

B. Pursuant to the terms of the Settlement Agreement, University has agreed to pay or cause to be paid the total amount of $13,500,000 in cash (the "Settlement Amount") in settlement of the claims brought against the University in the Action.

C. The Settlement Amount is to be deposited into a Custodian/Escrow account and, together with any interest accrued thereon, used to satisfy payments to authorized claimants, payments for attorneys' fees and expenses, payments for tax liabilities, and other costs pursuant to the terms of the Settlement Agreement.

D. Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

## Agreement

1. <u>Appointment of Custodian/Escrow Agent</u>. The Chicago Custodian/Escrow Agent is hereby appointed to receive, deposit and disburse the Settlement Amount upon the terms and conditions provided in this Chicago Custodian/Escrow Agreement, the Settlement Agreement and any other exhibits or schedules later annexed hereto and made a part hereof.

2. <u>The Custodian/Escrow Account</u>. The Chicago Custodian/Escrow Agent shall establish and maintain a Custodian/Escrow account titled as 568 Chicago Settlement Fund, to be held separate and apart from all other funds of any other party to the Settlement Agreement or of the Chicago Custodian/Escrow Agent (the "Chicago Custodian/Escrow Account"). Pursuant to the terms of the Settlement Agreement, the University shall cause the Settlement Amount to be deposited into the Chicago Custodian/Escrow Account. Chicago Custodian/Escrow Agent shall receive the Settlement Amount into the Chicago Custodian/Escrow Account; the Settlement Amount and all interest accrued thereon shall be referred to herein as the "Settlement Fund." The Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein, and shall be released by the Chicago Custodian/Escrow Agent in accordance with the terms and conditions hereinafter set forth and set forth in the Settlement Agreement and in orders of the Court approving the disbursement of the Settlement Fund.

3. <u>Investment of Settlement Fund</u>. At the written direction of Class Counsel, the Chicago Custodian/Escrow Agent shall invest the Settlement Fund exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or

---

For avoidance of doubt, the Class does not include purchasers for whom the total cost they were charged by the Defendant or Defendants whose institution(s) they attended, including tuition, fees, room, or board for each undergraduate academic year, was covered by any form of financial aid or merit aid (not including loans) from one or more Defendants.

(b) secured by instruments backed by the full faith and credit of the United States Government. The University shall not bear any responsibility for or liability related to the investment of the Settlement Fund by the Chicago Custodian/Escrow Agent.

4. <u>Custodian/Escrow Funds Subject to Jurisdiction of the Court</u>. The Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the Fund shall be distributed, pursuant to the Settlement Agreement and this Chicago Custodian/Escrow Agreement, and on further order(s) of the Court.

5. <u>Tax Treatment & Report</u>. Pursuant to the terms of the Settlement Agreement, the Settlement Fund shall be treated at all times as a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1. Class Counsel and, as required by law, the University, shall jointly and timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including the "relation-back election" under Treas. Reg. § 1.468B-1(j)(2) if necessary to the earliest permitted date. For purposes of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" of the Settlement Fund shall be Class Counsel. Class Counsel shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Treas. Reg. §1.468B-1. Class Counsel shall timely and properly prepare and file any informational and other tax returns necessary or advisable with respect to the Settlement Funds and the distributions and payments therefrom including without limitation the returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-2(1).

6. <u>Tax Payments of Settlement Fund</u>. All Taxes with respect to the Settlement Fund, as more fully described in the Settlement Agreement, shall be treated as and considered to be a cost of administration of the Settlement Fund and the Chicago Custodian/Escrow Agent shall timely pay such Taxes out of the Settlement Fund without prior order of the Court, as directed by Class Counsel. Class Counsel shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law. Class Counsel may engage an accounting firm or tax preparer to assist in the preparation of any tax reports or the calculation of any tax payments due as set forth in Sections 5 and 6, and the expense of such assistance shall be paid from the Settlement Fund by the Chicago Custodian/Escrow Agent at Class Counsel's direction. The Settlement Fund shall indemnify and hold the University harmless for any taxes that may be deemed to be payable by the University by reason of the income earned on the Settlement Fund, and the Chicago Custodian/Escrow Agent, as directed by Class Counsel, shall establish such reserves as are necessary to cover the tax liabilities of the Settlement Fund and the indemnification obligations imposed by this paragraph. If the Settlement Fund is returned to the University pursuant to the terms of the Settlement Agreement, the University shall provide the Chicago Custodian/Escrow Agent with a properly completed Form W-9.

7. <u>Disbursement Instructions</u>

3

(a)     Class Counsel may, without further order of the Court or authorization by the University's Counsel, instruct the Chicago Custodian/Escrow Agent to disburse the funds necessary to pay Notice and Administration Expenses as set forth in the Settlement Agreement.

(b)     After the Effective Date as set forth in the Settlement Agreement, disbursements other than those described in paragraph 7(a), including disbursements for distribution of Class Settlement Funds, must be authorized by either (i) an order of the Court, or (ii) the written direction of Eric Cramer or Class Counsel (any such direction to be made consistent with the Settlement Agreement).

(c)     In the event funds transfer instructions are given (other than in writing at the time of execution of this Chicago Custodian/Escrow Agreement), whether in writing, by facsimile, e-mail, telecopier or otherwise, the Chicago Custodian/Escrow Agent will seek confirmation of such instructions by telephone call back when new wire instructions are established to the person or persons designated in subparagraphs (a) and (b) above, and the Chicago Custodian/Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated.  It will not be reasonably necessary to seek confirmation if the Chicago Custodian/Escrow Agent receives written letters authorizing a disbursement from each of the law firms required in subparagraphs (a) and (b), as applicable, on their letterhead and signed by one of the persons designated in subparagraphs (a) and (b).  To assure accuracy of the instructions it receives, the Chicago Custodian/Escrow Agent may record such call backs. If the Chicago Custodian/Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved.  The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by the Chicago Custodian/Escrow Agent.  Class Counsel will notify the Chicago Custodian/Escrow Agent of any errors, delays or other problems within 30 days after receiving notification that a transaction has been executed.  If it is determined that the transaction was delayed or erroneously executed as a result of the Chicago Custodian/Escrow Agent's error, the Chicago Custodian/Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law.  Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

(d)     The Chicago Custodian/Escrow Agent shall not be liable for any losses, costs or expenses arising directly or indirectly from the Chicago Custodian/Escrow Agent's reliance upon and compliance with such instructions notwithstanding such instructions conflict or are inconsistent with a subsequent written instruction. The party providing electronic instructions agrees; (i) to assume all risks arising out of the use of such electronic methods to submit instructions and directions to the Chicago Custodian/Escrow Agent, including, without limitation, the risk of the Chicago Custodian/Escrow Agent acting on unauthorized instructions, and the risk or interception and misuse by third parties; (ii) that it is fully informed of the protections and risks associated with the various methods of transmitting instructions to the the Chicago Custodian/Escrow Agent and that there may be more secure methods of transmitting instructions than the method(s) selected by the Chicago Custodian/Escrow Agent; and (iii) that

4

the security procedures (if any) to be followed in connection with its transmission of instructions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances.

8.     <u>Termination of Settlement</u>.  If the Settlement Agreement terminates in accordance with its terms, Class Counsel and the University shall jointly notify the Chicago Custodian/Escrow Agent of the termination of the Settlement Agreement.   Upon such notification, the balance of the Settlement Fund, less any Notice and Administration Expenses paid and actually incurred in accordance with the terms of the Settlement Agreement but not yet paid, and any unpaid Taxes due, as determined by Class Counsel and the University, shall be returned to the University in accordance with instruction from the University's Counsel.

9.     <u>Fees</u>.  The Chicago Custodian/Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached as Exhibit B. All fees and expenses of the Chicago Custodian/Escrow Agent shall be paid solely from the Settlement Fund.  The Chicago Custodian/Escrow Agent may pay itself such fees from the Settlement Fund only after such fees have been approved for payment by Class Counsel.  If the Chicago Custodian/Escrow Agent is asked to provide additional services, such as the preparation and administration of payments to Authorized Claimants, a separate agreement and fee schedule will be entered into.

10.     <u>Duties, Liabilities and Rights of Custodian/Escrow Agent</u>.   This Chicago Custodian/Escrow Agreement sets forth all of the obligations of the Chicago Custodian/Escrow Agent, and no additional obligations shall be implied from the terms of this Chicago Custodian/Escrow Agreement or any other agreement, instrument or document.

(a)     The Chicago Custodian/Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by Class Counsel, as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order.  The Chicago Custodian/Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine, and may assume that such person has been properly authorized to do so.

(b)     The Chicago Custodian/Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent the Chicago Custodian/Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel.  The Chicago Custodian/Escrow Agent shall have the right to reimburse itself for reasonable legal fees and reasonable and necessary disbursements and expenses actually incurred from the Chicago Custodian/Escrow Account only (i) upon approval by Class Counsel and University Counsel or (ii) pursuant to an order of the Court.

5

(c)     The Chicago Custodian/Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the Settlement Fund may be invested.

(d)     The Chicago Custodian/Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

(e)     The Chicago Custodian/Escrow Agent shall not bear any risks related to the investment of the Settlement Fund in accordance with the provisions of paragraph 3 of this Chicago Custodian/Escrow Agreement.    The Chicago Custodian/Escrow Agent will be indemnified by the Settlement Fund, and held harmless against, any an all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by the Chicago Custodian/Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act  or alleged omission by the Chicago Custodian/Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Chicago Custodian/Escrow Agent of, any of the Chicago Custodian/Escrow Agent's duties under this Agreement, except as a result of the Chicago Custodian/Escrow Agent's bad faith, willful misconduct or gross negligence.

(f)     Upon distribution of all of the funds in the Chicago Custodian/Escrow Account pursuant to the terms of this Chicago Custodian/Escrow Agreement and any orders of the Court, the Chicago Custodian/Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Chicago Custodian/Escrow Agreement, except as otherwise specifically set forth herein.

(g)     In the event any dispute shall arise between the parties with respect to the disposition or disbursement of any of the assets held hereunder, the Chicago Custodian/Escrow Agent shall be permitted to interplead all of the assets held hereunder into a court of competent jurisdiction, and thereafter be fully relieved from any and all liability or obligation with respect to such interpleaded assets. The parties further agree to pursue any redress or recourse in connection with such a dispute, without making the Chicago Custodian/Escrow Agent a party to same.

11.     Non-Assignability by Custodian/Escrow Agent.  The Chicago Custodian/Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed without the written consent of Class Counsel and the University.

12.     Resignation of Custodian/Escrow Agent.  The Chicago Custodian/Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 120 days prior written notice to the parties to the Chicago Custodian/Escrow Agreement herein.  On the effective date of such resignation, the Chicago Custodian/Escrow Agent shall deliver this Chicago Custodian/Escrow Agreement together with any and all related instruments or documents and all funds and investments in the Chicago Custodian/Escrow Account to the successor Chicago Custodian/Escrow Agent, subject to this Chicago Custodian/Escrow

6

Agreement.  If a successor Chicago Custodian/Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then the Chicago Custodian/Escrow Agent may petition the Court for the appointment of a successor Chicago Custodian/Escrow Agent, or other appropriate relief.  Any such resulting appointment shall be binding upon all of the parties to this Chicago Custodian/Escrow Agreement.

13.    Notices.  Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail or overnight courier service, addressed as follows:

If to Class Counsel:        **GILBERT LITIGATORS & COUNSELORS, P.C.**
Robert D. Gilbert
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com

**FREEDMAN NORMAND FRIEDLAND LLP**
Edward J. Normand
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
tnormand@fnf.law

**BERGER MONTAGUE PC**
Eric L. Cramer
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net

US 174345495v2

| If to Chicago Custodian/Escrow Agent: | THE HUNTINGTON NATIONAL BANK |
|---|---|
|  | Liz Lambert, Senior Managing Director |
|  | 2 Great Valley Parkway, Suite 300 |
|  | Malvern, PA  19355 |
|  | Telephone:  (215) 568-2382 |
|  | E-mail:  liz.lambert@huntington.com |
|  |  |
|  | Susan Brizendine, Trust Officer |
|  | Huntington National Bank |
|  | 7 Easton Oval – EA5W63 |
|  | Columbus, Ohio 43219 |
|  | Telephone:  (614) 331-9804 |
|  | E-mail:  susan.brizendine@huntington.com |
|  |  |
| If to University: | **Arnold & Porter** |
|  | James L. Cooper |
|  | Michael Rubin |
|  | 601 Massachusetts Ave., NW |
|  | Washington, D.C. 20001 |
|  | Telephone: 202-942-5014 |
|  | James.cooper@arnoldporter.com |
|  | Michael.rubin@arnoldporter.com |

14.    <u>Patriot Act Warranties</u>.  Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify and record information that identifies each person or legal entity that opens an account (the "Identification Information").  The parties to this Chicago Custodian/Escrow Agreement agree that they will provide the Chicago Custodian/Escrow Agent with such Identification Information as the Chicago Custodian/Escrow Agent may request in order for the Chicago Custodian/Escrow Agent to satisfy the requirements of the Patriot Act.

15.    <u>Entire Agreement</u>.  This Chicago Custodian/Escrow Agreement, including all Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto.  Any modification of this Chicago Custodian/Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto.  To the extent this Chicago Custodian/Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

16.    <u>Governing Law</u>.  This Chicago Custodian/Escrow Agreement shall be governed by the law of the State of Ohio in all respects.  The parties hereto submit to the jurisdiction of the Court, in connection with any proceedings commenced regarding this Chicago Custodian/Escrow Agreement, including, but not limited to, any interpleader proceeding or

US 174345495v2

proceeding the Chicago Custodian/Escrow Agent may commence pursuant to this Chicago Custodian/Escrow Agreement for the appointment of a successor Chicago Custodian/Escrow agent, and all parties hereto submit to the jurisdiction of such Court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

17.     <u>Termination of Custodian/Escrow Account</u>.    The Chicago Custodian/Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement and this Chicago Custodian/Escrow Agreement.

18.     <u>Miscellaneous Provisions</u>.

(a)     <u>Counterparts</u>.    This Chicago Custodian/Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Chicago Custodian/Escrow Agreement.

(b)     <u>Further Cooperation</u>.    The parties hereto agree to do such further acts and things and to execute and deliver such other documents as the Chicago Custodian/Escrow Agent may request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Chicago Custodian/Escrow Agreement in order (a) to give the Chicago Custodian/Escrow Agent confirmation and assurance of the Chicago Custodian/Escrow Agent's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (b) to better enable the Chicago Custodian/Escrow Agent to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Chicago Custodian/Escrow Agreement, each in such form and substance as may be acceptable to the Chicago Custodian/Escrow Agent.

(c)     <u>Electronic Signatures</u>. The parties agree that the electronic signature (provided by the electronic signing service DocuSign initiated by the Custodian/Escrow Agent) of a party to this Escrow Agreement shall be as valid as an original signature of such party and shall be effective to bind such party to this Escrow Agreement. The parties agree that any electronically signed document shall be deemed (i) to be "written" or "in writing," (ii) to have been signed, and (iii) to constitute a record established and maintained in the ordinary course of business and an original written record when printed from electronic files.

(d)     <u>Non-Waiver</u>.    The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

**IN WITNESS WHEREOF**, the parties hereto have executed this Chicago Custodia/Escrow Agreement as of the date first above written.

THE HUNTINGTON NATIONAL BANK, as the Chicago Custodian/Escrow Agent

9

US 174345495v2

By: _____

    Liz Lambert, Senior Managing Director

Settlement Class Counsel

By: _____

    Eric L. Cramer, Chairman
    Berger Montague PC

THE UNIVERSITY OF CHICAGO

By: _____

Its: Vice President and General Counsel

10

**Exhibit A**

**Settlement Agreement**

US 174345495v2

PRIVILEGED AND CONFIDENTIAL

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SIA HENRY, et al., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BROWN UNIVERSITY, et al.,

Defendants.

Case No. 1:22-cv-125

Hon. Matthew F. Kennelly

**SETTLEMENT AGREEMENT BETWEEN THE UNIVERSITY OF CHICAGO AND THE PROPOSED CLASS OF PLAINTIFFS**

THIS SETTLEMENT AGREEMENT ("Settlement Agreement" or the "Settlement") is made and entered into as of August 7, 2023, by and between (a) defendant the University of Chicago ("University"); and (b) Plaintiffs,[1] individually and on behalf of the settlement class (the "Class" as defined in Paragraph 1 below, and together with University, the "Settling Parties"), in this Action (*Henry, et al. v. Brown University, et al.*, Case No. 1:22-cv-125 (N.D. Ill.)).

WHEREAS, Plaintiffs filed a lawsuit alleging that Defendants Brown University, California Institute of Technology, the University of Chicago, the Trustees of Columbia University in the City of New York, Cornell University, the Trustees of Dartmouth College, Duke University, Emory University, Georgetown University, Johns Hopkins University, Massachusetts Institute of Technology, Northwestern University, the University of Notre Dame Du Lac, the Trustees of the University of Pennsylvania, William Marsh Rice University, Vanderbilt University, and Yale

---

[1] Plaintiffs are Andrew Corzo, Sia Henry, Alexander Leo-Guerra, Michael Maerlender, Brandon Piyevsky, Benjamin Shumate, Brittany Tatiana Weaver, and Cameron Williams.

1

PRIVILEGED AND CONFIDENTIAL

University (collectively, "Defendants") have restrained competition for undergraduate financial aid in violation of federal antitrust laws, and that Plaintiffs and Class members incurred damages as a result, as detailed in Plaintiffs' Complaint, filed in this Action on January 9, 2022 (ECF No. 1) and as subsequently amended ("Complaint");

WHEREAS, the University has asserted defenses to Plaintiffs' claims, denies each and every one of Plaintiffs' allegations of unlawful or wrongful conduct by the University, denies that any conduct of the University challenged by Plaintiffs caused any damage whatsoever, and denies all liability of any kind;

WHEREAS, the University has consented to the appointment of the law firms of Freedman Normand Friedland LLP, Gilbert Litigators & Counselors, PC, and Berger Montague PC as Settlement Class Counsel ("Settlement Class Counsel");

WHEREAS, Settlement Class Counsel and counsel for the University have engaged in arm's-length settlement negotiations, and have reached this Settlement Agreement, subject to Court approval, which embodies all of the terms and conditions of the Settlement between Plaintiffs, both individually and on behalf of the Class, and the University;

WHEREAS, Settlement Class Counsel have concluded, after extensive fact discovery and consultation with their consultants and experts, and after carefully considering the circumstances of this Action, including the claims asserted in the Complaint and the University's defenses thereto, that it would be in the best interests of the Class to enter into this Settlement Agreement and assure a benefit to the Class, and further, that Settlement Class Counsel consider the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and in the best interests of the Class;

WHEREAS, the University has concluded, despite its belief that it is not liable for the claims asserted and that it has good defenses thereto, that it would be in its best interests to enter into this Settlement Agreement to avoid the risks and uncertainties inherent in complex litigation and also to avoid additional costs of further litigation;

**PRIVILEGED AND CONFIDENTIAL**

WHEREAS, Plaintiffs and the University agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by the University, or of the truth of any of the claims or allegations alleged in the Complaint;

WHEREAS, Plaintiffs and the University agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence by Plaintiffs of the absence of any violation of any statute or law or of any absence of liability or wrongdoing by the University, or of the validity of any of the University's defenses, or of the lack of truth of any of the claims or allegations alleged in the Complaint; and

WHEREAS, Plaintiffs and the University agree that the University's consent to the Settlement Class shall not be deemed or construed as consent to, or otherwise supportive of, the certification of this or any other class for litigation purposes, and that, in the event the Settlement Agreement is terminated for any reason, the University may oppose the certification of any class.

NOW THEREFORE, it is agreed by the undersigned Settlement Class Counsel, on behalf of Plaintiffs and the Class, on the one hand, and the University on the other, that all claims brought by Plaintiffs and the Class against the University be fully, finally, and forever settled, compromised, discharged, and dismissed with prejudice as to the University, without costs as to Plaintiffs, the Class, or the University, subject to Court approval, on the following terms and conditions:

## 1. Definitions

a)     "Action" means *Henry et al. v. Brown University et al.* No. 1:22-cv-00125 (N.D. Ill.).

b)     "Claims Administrator" means the entity appointed by the Court to provide notice to the Class, process the claims submitted by Class Members, and carry out any other duties or obligations provided for by the Settlement.

c)     The "Class" means the settlement-only class, which permits potential class members to opt out, including the following persons:

**PRIVILEGED AND CONFIDENTIAL**

a.  all U.S. citizens or permanent residents who have during the Class
Period (a) enrolled in one or more of Defendants' full-time
undergraduate programs, and (b) received at least some need-based
financial aid from one or more Defendants, and (c) directly
purchased from one or more Defendants tuition, fees, room, or
board that was not fully covered by the combination of any types
of financial aid or merit aid (not including loans) in any
undergraduate year.[2]  The Class Period is defined as follows:

 i.  For Chicago, Columbia, Cornell, Duke, Georgetown, MIT,
Northwestern, Notre Dame, Penn, Rice, Vanderbilt, Yale—
from 2003 through the date the Court enters an order
preliminarily approving the Settlement.

 ii.  For Brown, Dartmouth, Emory—from 2004 through the
date the Court enters an order preliminarily approving the
Settlement.

 iii.  For CalTech—from 2019 through the date of the Court
enters an order preliminarily approving the Settlement.

 iv.  For Johns Hopkins—from 2021 to the date the Court enters
an order preliminarily approving the Settlement.

b.  Excluded from the Class are:

 i.  Any Officers and/or Trustees of Defendants, or any current
or former employees holding any of the following
positions: Assistant or Associate Vice Presidents or Vice
Provosts, Executive Directors, or Directors of Defendants'

---

[2] For avoidance of doubt, the Class does not include purchasers for whom the total cost they were charged by the Defendant or Defendants whose institution(s) they attended, including tuition, fees, room, or board for each undergraduate academic year, was covered by any form of financial aid or merit aid (not including loans) from one or more Defendants.

**PRIVILEGED AND CONFIDENTIAL**

Financial Aid and Admissions offices, or any Deans or Vice Deans, or any employees in Defendants in-house legal offices; and

ii.  the Judge presiding over this action, his or her law clerks, spouse, and any person within the third degree of relationship living in the Judge's household and the spouse of such a person.

d)      "Class Members" means the members of the Class who do not timely and validly exclude themselves from the Settlement.

e)      "Effective Date" means the date on which all of the following have occurred: (i) the Settlement is not terminated pursuant to Paragraphs 15 or 16 below; (ii) the Settlement is approved by the Court as required by Fed. R. Civ. P. 23(e); (iii) the Court enters a final approval order; and (iv) the period to appeal the final approval order has expired and/or all appeals have been finally resolved.

f)      "Escrow Account" means the qualified settlement escrow account which holds the University Settlement Fund.

g)      "Escrow Agreement" means an agreement in the form annexed hereto as Exhibit B.

h)      "Fee and Expense Award" means award(s) by the Court to Settlement Class Counsel for reasonable attorneys' fees and reimbursement of reasonable costs and expenses incurred in the prosecution of the Action, including any interest accrued thereon.

i)      "Notice Expenses" means expenses relating to providing notice, including, *inter alia*, the cost of (a) publications, (b) printing and mailing the long-form notice, (c) the Claims Administrator's costs of maintaining and administering the notice website and toll-free phone number, and (d) the Claims Administrator's costs associated with designing and administering the notice plan.

5

PRIVILEGED AND CONFIDENTIAL

j) "Plaintiffs' Claims" means Plaintiffs' claims against the University and other Defendants as stated in the Complaint.

k) "Releasees" means the University, the Board of Trustees of the University, individually or collectively, and all of their present, future and former parent, subsidiary and affiliated corporations and entities, the predecessors and successors in interest of any of them, and each of the foregoing's respective present, former and future officers, directors, trustees, affiliates, employees, faculty members, students, agents, representatives, volunteers, attorneys, outside counsel, predecessors, successors, and assigns.

l) "Releasors" means all Plaintiffs and Class Members, and those Plaintiffs' and Class Members' agents, attorneys, representatives (and as applicable each of their past, present, and future agents, attorneys, representatives, and all persons or entities that made payments to the University or other Defendants on behalf of Plaintiffs and Class Members), the predecessors, successors, heirs, executors, administrators, and representatives of each of the foregoing.

m) "Released Claims" means any claims, demands, actions, suits, causes of action, damages, and liabilities, of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that Plaintiffs ever had, now have, or hereafter can, shall or may have, directly, representatively, derivatively, as assignees or in any other capacity, to the extent arising out of or relating to a common nucleus of operative facts with those alleged in the Complaint that Plaintiffs have asserted or could have asserted in the Action. For avoidance of doubt, claims between Class Members and the University arising in the ordinary course and not relating to or arising from the facts alleged in the Complaint or any claims with a common nucleus of operative facts as those alleged in the Complaint, will not be released.

n) "Settlement Class Counsel" means the law firms Freedman Normand Friedland LLP, Gilbert Litigators & Counselors, PC, and Berger Montague PC.

o) "Settling Parties" means the University, Plaintiffs, and the Class.

6

PRIVILEGED AND CONFIDENTIAL

     p)    "University Payment" means Thirteen Million, Five Hundred-Thousand Dollars ($13,500,000.00).

     q)    "University Settlement Fund" means the University Payment, plus interest accrued on the Settlement Fund. It is understood that, at no additional cost to the University or the University Settlement Fund, the University Settlement Fund may be combined with settlement funds from other defendants in the event that Plaintiffs achieve settlements with additional defendants in this Action.

     **2.**    **Reasonable Steps Necessary to Help Effectuate this Settlement.** The Settling Parties agree to undertake in good faith all reasonable steps necessary to help effectuate the Settlement, including undertaking all actions contemplated by and steps necessary to carry out the terms of this Settlement and to secure the prompt, complete, and final dismissal with prejudice of all claims in this Action against the University. The Settling Parties also agree to the following:

     a)    The University agrees not to oppose the Plaintiffs' motions for preliminary or final approval of the Settlement, and agrees not to appeal any Court ruling granting in full either of these motions.

     b)    Settlement Class Counsel represent that Plaintiffs will support the Settlement and will not object to the Settlement or opt out of the Settlement Class.

     c)    The University will serve notice of this Settlement on the appropriate federal and state officials under the Class Action Fairness Act, 28 U.S.C. § 1715.

     d)    This Settlement is reached with Settlement Class Counsel who will seek Court approval to represent all of the Class, and is intended to be binding on all persons who are within the definition of the Class, except any persons who timely and validly opt out.

     **3.**    **Motion for Preliminary Approval of the Settlement.** Plaintiffs shall draft a motion for preliminary approval of the Settlement and all necessary supporting documents, which shall be consistent with this Settlement Agreement and which the University shall have a right to review and approve (which approval shall not be unreasonably withheld). The University may suggest revisions, which Plaintiffs agree to consider in good faith, as long as the University

PRIVILEGED AND CONFIDENTIAL

provides its suggested revisions or comments within five (5) business days of having received any such document or documents from Plaintiffs, or such other time as the Settling Parties may agree. Unless the Settling Parties agree otherwise, Plaintiffs will file the motion for preliminary approval with the Court no later than the earlier of: (i) 45 days after the execution of this Settlement Agreement, or (ii) August 14, 2023. The University understands and accepts that Plaintiffs may file for preliminary approval of this Settlement jointly with other settlements in this Action. Nothing in this Settlement Agreement shall prevent Plaintiffs from consummating settlements with other defendants in this Action or from including such settlements as part of a joint preliminary approval motion. The motion for preliminary approval shall include a proposed form of order substantially similar to Exhibit A, including:

a) requesting preliminary approval of the Settlement as fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and finding that dissemination of notice to the Class is warranted;

b) finding that the proposed plan of notice complies with Rule 23 and due process, and seeking approval of short- and long-form notices;

c) preliminarily approving the Plan of Allocation;

d) providing that if final approval of the Settlement is not obtained, the Settlement shall be null and void, and the Settling Parties will revert to their positions ex ante without prejudice to their claims or defenses; and

e) setting a date for a motion for final approval, a deadline for objections and exclusions, and a date for a fairness hearing.

**4. Stay of Proceedings; Subsequent Litigation Class.** The motion for preliminary approval shall also provide for a stay of Plaintiffs' proceedings against the University pending final approval or termination of the Settlement. The University agrees not to oppose preliminary approval of the Settlement. Plaintiffs represent that the class definition in Paragraph 1 of this Settlement Agreement is at least as broad as that for which the Plaintiffs will seek certification in their Motion for Class Certification against the remaining Defendants in the Action, except as to

8

PRIVILEGED AND CONFIDENTIAL

the end date of the class. In the event that Settlement Class Counsel seek to certify a class or classes in their Motion for Class Certification against the remaining defendants that include any class members not included in the class definition in Paragraph 1 herein (except as to the end date), Settlement Class Counsel agree that this Settlement Agreement shall be amended to include such additional class members and that in the event an Amended Motion for Preliminary Approval of this Settlement Agreement, any amended notices must be provided to the classes, or an Amended Motion for Final Approval of this Settlement Class are necessary, Settlement Class Counsel will file such amendments and provide such notice at no expense to the University.

5.      **Motion for Final Approval and Entry of Final Judgment.**  In the event the Court enters an order preliminarily approving the Settlement, the Plaintiffs shall draft a motion for final approval of the Settlement and all necessary supporting documents, which the University shall have a right to review and approve (which approval shall not be unreasonably withheld). The University may suggest revisions, which Plaintiffs agree to consider in good faith, as long as the University provides its suggested revisions or comments within five (5) business days of having received any such document or documents from Plaintiffs, or other such time as the Settling Parties may agree. Plaintiffs will file the motion for final approval pursuant to the schedule ordered by the Court. The final approval motion shall seek entry of a final approval order, including:

a)      finding that notice given constitutes due, adequate, and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

b)      finding the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and directing consummation of the Settlement pursuant to its terms;

c)      finding that all Class Members shall be bound by the Settlement Agreement and all of its terms;

d)      finding that the Releasors shall be bound by the respective releases set forth in Paragraphs 13 and 14 of this Settlement Agreement, and shall be forever barred from asserting any claims or liabilities against the University covered by the respective Released Claims against any of the Releasees;

9

**PRIVILEGED AND CONFIDENTIAL**

e)       approving expressly the provisions in Paragraph 7(e) of the Settlement Agreement allowing payment of class counsel fees and expenses before the Effective Date pursuant to the terms of that paragraph;

f)       directing that the Action be dismissed with prejudice as to the University and without costs;

g)       determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal with prejudice as to the University be final;

h)       retaining exclusive jurisdiction over the Settlement, including the administration and consummation of the Settlement; and

i)       directing that, for a period of five years, the Clerk of the Court shall maintain the record of the entities that have excluded themselves from the Class and that a certified copy of such records shall be provided to the University.

**6.       Finality of Settlement.**  This Settlement Agreement shall become final upon the Effective Date.

**7.       Monetary Relief; Notice Fees and Costs**

a)       The University shall transfer the University Payment to the Escrow Account within the later of: (i) 30 calendar days after entry by the Court of the preliminary approval order on the docket of the Action, or (ii) 14 calendar days after Settlement Class counsel provide University counsel in writing with wiring instructions for the Escrow Account.

b)       The payment provided for in subparagraph 7(a) above shall be held in the Escrow Account subject to the terms and conditions of the Escrow Agreement, and in accordance with the provisions of Paragraphs 8-11, 16 and 17 below.

c)       Before the granting of final approval, and upon the direction of Settlement Class Counsel, all reasonable costs of providing notice to the Class and any costs of settlement fund administration, including taxes, will be paid out of the Escrow Account on a non-recoupable basis. Settlement Class Counsel shall attempt to defray the costs of notice by combining the administration of multiple settlements, if such settlements occur and if permitted by the Court to

**PRIVILEGED AND CONFIDENTIAL**

do so. If multiple settlements are noticed together, the notice costs shall be divided by the number of settlements and charged to the escrow account of each settlement pari passu. Settlement Class Counsel shall provide copies to the University's counsel of any invoices paid by Settlement Class Counsel for which money is withdrawn from the Escrow Account. Any withdrawals for reasonable costs from the Escrow Account pursuant to this provision shall be non-refundable in the event that the Settlement Agreement is terminated or not approved by the Court. Settlement Class Counsel agree to arrange for provision of notice to the Class in accordance with Fed. R. Civ. P. 23 and any orders of the Court. Settlement Class Counsel agree to provide the University reasonable advance notice of the notice plan and costs.

d) Following the Effective Date, any attorneys' fees, costs and expenses and class plaintiff service awards awarded to Settlement Class Counsel and Plaintiffs by the Court will be paid from the escrow account. The University will take no position on Settlement Class Counsel's application for attorneys' fees, costs and expenses or for service awards to the Plaintiffs unless requested to do so by the Court.

e) Notwithstanding the above, subject to and following both the Court's approval in the Final Approval Order and the posting of a non-revocable letter of credit issued by Northern Trust, Bank of America, Citibank, or Chase Bank agreed to in writing in advance by the Settling Parties in an amount equal to or greater than the amount of any funds paid under this paragraph, Settlement Class Counsel's attorneys' fees and/or reimbursement of out-of-pocket expenses of Settlement Class Counsel awarded by the Court, up to a maximum of $5,000,000, shall be payable from the Settlement Fund upon being awarded by order of the Court, notwithstanding the existence of any timely-filed objections thereto, or potential appeal therefrom, or collateral attack on the Settlement or any part thereof, including on the award of attorneys' fees and costs. Any payment pursuant to this Paragraph 7(e) shall be subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the University Settlement Fund with interest that would have accrued to the University Settlement Fund if the early payment(s) had not been made, within five business days, if and when, as a result of any appeal or further proceedings on remand, action by

PRIVILEGED AND CONFIDENTIAL

or ruling of the Court, or successful collateral attack, the fee or award of costs and expenses is reduced or reversed, or in the event the settlement does not become final or is rescinded or otherwise fails to become effective. If Settlement Class Counsel fail to make the required repayments in accordance with the time period in this paragraph, the University may call the letter of credit. If the provisions of this paragraph are followed, the University shall not object to such disbursements. If the Court does not approve this provision, that disapproval will have no effect otherwise on the Settling Parties Settlement Agreement. Nothing in this paragraph is intended to serve as a cap on, or limit to, the attorneys' fees or expenses that Settlement Class Counsel or Plaintiffs may be awarded by the Court and receive following the Effective Date.

f)      Aside from the payments specified in this Paragraph 7, the University shall not pay any additional amount at any time, whether for attorneys' fees or expenses, incentive awards, settlement administration costs, escrow costs, taxes due from Escrow Account, or any other cost. The University shall not be liable for any monetary payments under the Settlement Agreement other than the University Payment.

8.      **The University Settlement Fund.**  At all times prior to the Effective Date, the University Settlement Fund shall be invested as set forth in Paragraph 3 of the Escrow Agreement, in instruments backed by the full faith and credit of the U.S. Government or fully insured by the U.S. Government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account insured by the FDIC up to the guaranteed FDIC limit subject to the review and approval of the University, such approval not to be unreasonably withheld. After the Effective Date, the University Settlement Fund shall be invested pursuant to Paragraph 7 of the Escrow Agreement as directed in writing by Settlement Class Counsel. All interest earned on the University Settlement Fund shall become part of the University Settlement Fund.

9.      **Disbursements**: After the Effective Date, the University Settlement Fund shall be distributed in accordance with the Plan of Allocation and the Court's approval of subsequent request(s) for distribution.

PRIVILEGED AND CONFIDENTIAL

10.     **Taxes**

a)      Settlement Class Counsel shall be solely responsible for directing the Escrow Agent (as defined in the Escrow Agreement) to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Escrow Account. Further, Settlement Class Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments, including interest and penalties due, on income earned by the Escrow Account. Subject to Paragraph 7 above, Settlement Class Counsel shall be entitled to direct the Escrow Agent to pay customary and reasonable tax expenses, including professional fees and expenses incurred in connection with carrying out the Escrow Agent's or tax preparer's responsibilities as set forth in this paragraph, from the Escrow Account. Settlement Class Counsel shall notify the University through its counsel regarding any payments or expenses paid from the Escrow Account. The University shall have no responsibility to make any tax filings relating to this Settlement Agreement, the Escrow Account, or the Settlement Payments, and shall have no responsibility to pay taxes on any income earned by the Escrow Account.

b)      For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be Settlement Class Counsel, who shall timely and properly file or cause to be filed on a timely basis all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

c)      The Settling Parties and their counsel shall treat, and shall cause the Escrow Agent to treat, the Escrow Account as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The Settling Parties, their counsel, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Account in this manner. In addition, the Escrow Agent and, as required, the Settling Parties, shall timely make such elections under § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder as necessary or advisable to carry out the provisions of this

**PRIVILEGED AND CONFIDENTIAL**

paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

      **11.**    **Full Satisfaction; Limitation of Interest and Liability.**  Plaintiffs and Class Members shall look solely to the University Payment for satisfaction of any and all Released Claims. If the Settlement becomes final pursuant to Paragraph 6 above, the University's payment of the University Payment will fully satisfy any and all Released Claims. Except as provided by order of the Court, no Class Member shall have any interest in the University Payment, Escrow Account, or any portion thereof.

      **12.**    **Attorneys' Fees, Expenses, and Costs.**

      a)    Settlement Class Counsel shall file any motion for attorneys' fees, reimbursement of expenses and costs ("Fees and Expense Award") in accordance with the Court's preliminary approval or final approval order. Settlement Class Counsel shall receive any Fees and Expense Award relating to this Settlement solely from the University Settlement Fund. Other than as provided in Paragraph 7(e) and approved by the Court, no portion of any Fees and Expense Award shall be released from the University Settlement Fund prior to the Effective Date. The University is not obligated to take, does not take, and, unless requested to do so by the Court, will not take any position with respect to the application by Settlement Class Counsel for reimbursement of attorneys' fees, expenses, and costs.

      b)    The procedures for and the allowance or disallowance by the Court of Settlement Class Counsel's application for a Fees and Expense Award to be paid from the University Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or

**PRIVILEGED AND CONFIDENTIAL**

proceeding relating to the Fees and Expense Award, or any appeal from any such order, shall not operate to modify or cancel this Settlement Agreement, or affect or delay the finality of the judgment approving the Settlement. A modification or reversal on appeal of any amount of the Fees and Expense Award shall not be deemed a modification of the terms of this Settlement Agreement or final approval order, and shall not give rise to any right of termination.

      **13.**    **Release.**  Upon the occurrence of the Effective Date, the Releasors hereby release and forever discharge, and covenant not to sue the Releasees only, with respect to, in connection with, or relating to any and all of the Released Claims.

      **14.**    **Additional Release.**  In addition, each Releasor hereby expressly waives and releases, upon the Effective Date, any and all provisions, rights, and/or benefits conferred by Section 1542 of the California Civil Code, which reads:

> Section 1542. <u>Release</u>. A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, notwithstanding that the release in Paragraph 13 is not a general release and is of claims against Releasees only. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims that are the subject matter of Paragraph 13. Nonetheless, upon the Effective Date, each Releasor hereby expressly waives and fully, finally, and forever settles and releases any known or unknown, foreseen, or unforeseen, suspected or unsuspected, contingent or non-contingent claim that is the subject matter of Paragraph 13, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Releasor also hereby expressly waives and fully, finally, and forever settles, releases, and discharges any and all claims it may have against the Releasees under § 17200, *et seq.*, of the California Business and Professions Code or any similar comparable

**PRIVILEGED AND CONFIDENTIAL**

or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are expressly incorporated into the definition of the Released Claims.

15. **Effect of Disapproval.** If the Court (i) declines to approve this Settlement Agreement; (ii) does not enter the preliminary approval order containing the elements set forth in Paragraph 3 above; (iv) does not enter the final approval order containing the elements set forth in Paragraph 5 above; (v) enters the final approval order and appellate review is sought, and on such review, such final approval order is not affirmed, then Settlement Class Counsel or the University may elect to terminate this Settlement Agreement by sending written notice to the other party within 10 business days of the event allowing for termination. For the avoidance of doubt, any order of the Court or the Seventh Circuit Court of Appeals that is based on a determination that the Settlement is not fair, reasonable, or adequate or that: (a) materially changes or does not approve the scope of the releases and covenant not to sue contemplated by this Settlement; (b) purports to impose additional material obligations on the University; or (c) declines to enter a final judgment that meets the requirements set forth in Paragraph 5 above, except as otherwise agreed in writing by Settlement Class Counsel and the University, constitutes a failure to grant final approval of this Agreement and confers on Settlement Class Counsel and/or the University the right to terminate the Agreement. A modification or reversal on appeal of the Plan of Allocation, fees or expenses, or class plaintiffs' service awards shall not be deemed a modification of the terms of this Agreement or Final Approval Order and shall not give rise to any right of termination.

16. **Opt-Out and Termination Rights.**

a)    Should more than 650 proposed Class Members (not including employees of any of the law firms representing Defendants in this case) opt-out of this Settlement, the University has the right to terminate this Settlement, as long as the University notifies Settlement Class Counsel in writing of its decision to terminate within 5 business days of having been informed that more than 650 proposed Class Members have opted out or such other time as the Settling Parties may agree, and provided that the University has been given timely information regarding any opt-outs within a reasonable time after such opt-out requests coming to the attention of Settlement

**PRIVILEGED AND CONFIDENTIAL**

Class Counsel. In such instance of termination, the Settling Parties would return to their respective positions as of April 19, 2023. In the event of a termination, the Settling Parties agree to work in good faith to propose a schedule to the Court to restart the litigation between Plaintiffs and the University. The University agrees that its President, Provost, Vice President and General Counsel, or outside counsel shall take no actions, publicly or privately, directly or indirectly, to encourage any proposed Class Members to opt out of this Settlement, or to encourage opting out from any other settlements that Plaintiffs may enter into with other defendants in this Action, or from any class or classes that the Court may certify in this Action.

b)      Any disputes regarding the application of this Paragraph 16 may be resolved by the Court, with Plaintiffs, the University, and the opt-out(s) all having the opportunity to be heard.

**17.     Reimbursement of the University Settlement Fund upon Termination.** If the Settlement Agreement is terminated pursuant to the provisions of Paragraphs 15 or 16 above, the Escrow Agent shall return to the University the funds left in the University Settlement Fund consistent with Paragraph 7 at the time of termination. Subject to Paragraph 8 of the Escrow Agreement, the Escrow Agent shall disburse the funds left in the University Settlement Fund consistent with Paragraph 7 to the University in accordance with this paragraph within 15 calendar days after receipt of either (i) written notice signed by Settlement Class Counsel and the University's counsel stating that the Settlement has been terminated (such written notice will be signed by the non-terminating party within three days of receiving the written notice from the terminating party), or (ii) any order of the Court so directing. If the Settlement Agreement is terminated pursuant to Paragraphs 15 or 16, (1) any obligations pursuant to this Settlement Agreement other than (i) disbursement of the University Settlement Fund to the University as set forth above and (ii) Paragraph 23, shall cease immediately and (2) the releases set forth in Paragraphs 13 and 14 above shall be null and void.

**18.     Preservation of Rights.** Except as expressly provided for in the Releases in Paragraphs 13 and 14 above, this Settlement Agreement, whether the Settlement becomes final or not, and any and all negotiations, documents, and discussions associated with it, shall be without

PRIVILEGED AND CONFIDENTIAL

prejudice to the rights of any of the Settling Parties, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or lack thereof, of any liability or wrongdoing by the University or lack thereof, or of the truth or lack thereof of any of the claims or allegations contained in the Complaint or any other pleading, and evidence thereof shall not be discoverable or used directly or indirectly, in any way other than to enforce the terms of this Settlement Agreement. The Settling Parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Settlement Agreement. Upon the Settlement becoming final, nothing in this Agreement shall prevent the University from asserting any release or citing this Settlement Agreement to offset any liability to any other parties not party to the Action, including but not limited to, claims filed by federal and state governments or any governmental entity.

19. **No Admission of Liability by the University; No Admission of Absence of Merit by Plaintiffs.** This Settlement Agreement shall not be deemed or construed to be an admission of the University's liability in this Action. The University denies any wrongdoing in relation to the claims brought by Plaintiffs in this Action. The University's consent to the Settlement Class shall not be deemed consent to the certification of this or any other class for litigation purposes, and in the event of Termination, the University may oppose the certification of any class. This Settlement Agreement shall not be deemed or construed to be an admission that Plaintiffs' Claims in this Action lack merit as to the University or otherwise.

20. **Discovery Disclosures to Plaintiffs.** Other than as set forth below, or as may subsequently be agreed to by the Settling Parties, the University and its current or former employees will not be subject to any further discovery or required to provide any further responses to existing discovery relating to the University as of April 19, 2023.

a) **Data**. Through counsel, the Settling Parties will work in good faith to ensure that the undergraduate financial aid structured data produced by the University are reasonably understandable to Settlement Class Counsel and their consultants. Moreover, the University agrees that, if Plaintiffs determine after reasonable review to be completed by July 31, 2023, that there

18

PRIVILEGED AND CONFIDENTIAL

are material missing responsive structured data in the financial aid data produced by the University to date, the University will work with Settlement Class Counsel in good faith to complete its production to cure any such defects in a timely way to the extent it is not unduly burdensome.

b) **Documents**.  The University will complete its pending document productions as of April 19, 2023 from existing custodians and non-custodial sources related to the University's undergraduate financial aid practices and its participation in the 568 Group in response to Plaintiffs' First Requests for Production of Documents, subject to the existing agreements between the Settling Parties. The University agrees to provide a privilege log limited to metadata for documents that have been withheld, provided that Plaintiffs may designate up to 50 documents for which the University will provide the privilege log information specified in the ESI Protocol. In addition, until November 30, 2023, the University will consider reasonable requests from Settlement Class Counsel for additional relevant information, including documents, about Plaintiffs' claims in the Action regarding undergraduate financial aid or the University's knowledge about the practices of, any enforcement mechanisms or enforcement efforts of, and its own participation in, the 568 Group, taking into account the information the University has or will produce in discovery, and whether providing the requested information will be burdensome.

c) **Disclosures to Plaintiffs**.  On or before May 10, 2023, the University's counsel shall undertake a good faith review to the extent it is not unduly burdensome and identify for Plaintiffs, insofar as counsel is aware, documents by Bates number that it produced in discovery relating to or identifying (a) information shared by participants in the 568 Group, and (b) the University's undergraduate financial aid practices while it regularly attended 568 Group meetings and after it had stopped doing so, and (c) the University's "need blind" policy. Following the entry of an Order preliminarily approving the Settlement by the Court, the Settling Parties agree that the University's counsel, upon a good faith review of existing materials and interviews with relevant current or former employees of the University as needed, will meet with Plaintiffs' counsel at mutually agreed times and places or by video-conference. These meetings or conferences shall last, cumulatively, no more than seven hours, and shall be to provide certain information described

PRIVILEGED AND CONFIDENTIAL

below, and also to respond in good faith to reasonable questions from Plaintiffs' counsel with respect to the University's undergraduate financial aid practices over the time period relevant to the Complaint, its participation in the 568 Group as alleged in the Complaint, and its knowledge of the practices, procedures, and any enforcement mechanisms or enforcement efforts of, the 568 Group during the time period relevant to the Complaint to the extent the University has such knowledge. The University's counsel shall provide a reasonably detailed description of the principal facts known to the University's counsel that are relevant to the alleged conduct regarding financial aid or the University's participation in, and knowledge about, the practices, procedures, and any enforcement mechanisms or enforcement efforts of, the 568 Group at issue in, and during the time period relevant to, the Action (the "Proffer"), including by providing the Bates Numbers of relevant documents identified in preparation for the Proffer and/or documents identified and discussed during the Proffer. Further, the University agrees that if it cannot provide material responsive information to certain of Plaintiffs' counsel's reasonable questions during the Proffer for which the University's counsel reasonably believes material information exists in the University's custody and that can be obtained without undue burden to the University, the University agrees that it will work in good faith to provide answers to such questions within a reasonable time frame after the Proffer. The Settling Parties understand and agree that neither the University nor its counsel will provide any joint defense privileged information to the Plaintiffs as part of this process. All of the foregoing obligations in Paragraph 10(c) shall terminate the later of (a) October 31, 2023, or (b) forty-five days after the Court preliminarily approves the Settlement.

d) **Witness interview**. After the Court enters an order granting preliminary approval of the Settlement, and in the event that Plaintiffs ask the University to do so, the University will ask its former Director of College Aid to agree to meet with Plaintiffs' counsel for no more than three-hours by video-conference or in-person at a place convenient to the former Director of College Aid. The Settling Parties also agree that notwithstanding any provision in this Settlement Agreement, Plaintiffs may exercise any rights they have under the Federal Rules of Civil Procedure to obtain a deposition of that former employee. In the event the former employee agrees to an

PRIVILEGED AND CONFIDENTIAL

interview with Plaintiffs, and in fact such interview occurs no later than sixty days before the close of fact discovery in the Action, any deposition of that former employee by the Plaintiffs shall be limited to three and one-half hours of on the record time for any questioning by Plaintiffs. Furthermore, nothing in this Settlement Agreement shall prevent Plaintiffs from seeking to cause the University's former Director of College Aid to testify at any trial in this matter.

e)      **Testimony**.  In the event that Plaintiffs want testimony from a University witness (employed by the University as of the date of the request from Plaintiffs) with respect to the University's undergraduate financial aid processes or participation in, or knowledge, if any, about the policies and practices of, the 568 Group, Plaintiffs and the University agree to negotiate in good faith the scope of a declaration or affidavit of no more than 10 pages cumulatively from up to three witnesses. The foregoing obligations of Paragraph 20(e) shall terminate as of December 1, 2023. Furthermore, notwithstanding this Settlement Agreement, if any other party to the Action takes a deposition of a University-related witness, the University agrees that it will not object to making that witness available for deposition questioning by Plaintiffs' counsel for an equal amount of time, subject to a combined time limit as set in Fed. R. Civ. P. 30(d)(1). In the event that Plaintiffs receive a declaration or affidavit (as provided for in this paragraph) from the University's current Executive Director of Financial Aid that is found to be inadmissible for the truth of the matters asserted at a trial of the Action, the University agrees it will not object to Plaintiffs serving a trial or deposition subpoena through University counsel on the declarant or another University-affiliated witness, as determined by the University, to seek the declarant (or affiant) or other University-affiliated witness's testimony at trial, or at a deposition during the pre-trial period (*i.e.*, after the close of fact discovery if allowed by the Court), about the subjects covered in the declaration. In the event that the University's Executive Director of Financial Aid as of April 19, 2023 is no longer an employee of the University at the time Plaintiffs request a declaration or affidavit, the University agrees it will not object to Plaintiffs' seeking a deposition of that then-former Executive Director of Financial Aid pursuant to Plaintiffs' rights under the Federal Rules of Civil Procedure.

**PRIVILEGED AND CONFIDENTIAL**

f)      **Produced documents kept in the ordinary course of business and trial witness**. The University agrees that in the event the need arises in this Action, and there is an authenticity or hearsay objection made by one or more defendants in the Action to documents or data produced by the University in this litigation, the University will provide a declaration supporting authenticity or application of the Business Records Exception to the Hearsay Rule (Fed. R. Evid. 803(6)) to those documents or data. In the event that a declaration is not sufficient to meet the requirements of Fed. R. Evid. 803(6), the University will provide a records custodian witness to testify by deposition *de bene esse* or, if necessary, at trial, for the sole purpose of providing support for the authenticity of the documents or data or the application of the Business Records Exception to the Hearsay Rule for those documents or data.

g)      **Confidentiality**: All non-public data, documents, information, testimony, and/or communications provided to Plaintiffs' counsel as part of subparts (a) to (f) above, if so designated by the University, shall be treated as "Confidential" or "Attorneys' Eyes Only" under the Confidentiality Order in the Action. The University understands and accepts that Plaintiffs shall have the ability to challenge such designations, after the fact, under the terms of the Confidentiality Order.

h)      **Admissibility and Privilege**: Any statements made by the University's counsel in connection with subparts (a) to (f) above, including in response to questions from Plaintiffs' counsel in connection with subpart (c), and any statements made in any fact witness interviews, shall be deemed to be "conduct or statements made during compromise negotiations about the claims" and shall be inadmissible in evidence as provided, without limitation, under Federal Rule of Evidence 408 and state-law equivalents, and otherwise shall not be used for any other purpose (including at any hearing or trial, in connection with any motion, opposition, or other filing in the Action, or in any other federal, state, or foreign action or proceeding). In the event, for whatever reason, this Settlement is rescinded, canceled, or terminated or the Settlement is not approved by the Court, such inadmissibility and other limits on use shall survive. Further, nothing herein shall require University to provide information protected by the attorney-client privilege, attorney work-

**PRIVILEGED AND CONFIDENTIAL**

product doctrine, joint-defense privilege or similar privileges, and University shall not waive any protections, immunities, or privileges. All provisions of the Confidentiality Order and other orders governing discovery in the Action otherwise will apply, including without limitation, provisions related to inadvertent disclosure.

21. **Temporary Stay of Litigation.** The Settling Parties agree that it appears unlikely a temporary stay of litigation will be necessary before the Court considers the stay requested as part of the motion for preliminary approval of the Settlement Agreement. In the event that either Party to this Settlement Agreement believes in good faith that it has become necessary to seek a stay of the litigation in order for that party to avoid work not contemplated by this Settlement Agreement or some other undue burden, the Settling Parties agree that they will seek a temporary stay of the litigation.

22. **Resumption of Litigation in the Event of Termination.** The Settling Parties agree that in the event that the Settlement Agreement is not approved by the Court, or if the Settlement does not become final pursuant to Paragraph 6 above, or if the Settlement Agreement is terminated pursuant to Paragraphs 15 or 16 above, Plaintiffs may resume litigation of the Action against the University in a reasonable manner to be approved by the Court upon a joint application by the Settling Parties, and upon full reimbursement to the University of the University Settlement Fund as provided for in Paragraph 17 above.

23. **Maintaining Confidentiality of Litigation Materials.** In the event that Plaintiffs or Settlement Class Counsel receive a subpoena or other legal process that would require disclosure of material covered by any protective order entered in the Action (the "Protective Order") or covered by Federal Rule of Evidence 408, such Plaintiff or Settlement Class Counsel shall promptly notify the University and forward a copy of such subpoena or legal process so that the University may seek a protective order or otherwise seek to maintain the confidentiality of material covered by the Protective Order or Rule 408; and such Plaintiff or Settlement Class Counsel shall object to the production of such material unless and until any such motion filed by the University is resolved. In addition, Plaintiffs and Settlement Class Counsel shall abide by the

PRIVILEGED AND CONFIDENTIAL

terms of the Protective Order in this Action, including with respect to the destruction of materials and the limitations on the use of any material covered by the Protective Order to this Action, unless otherwise ordered by a court of competent jurisdiction.

24.    **Binding Effect.**  This Settlement Agreement shall be binding upon, and inure to the benefit of, the Releasors and the Releasees. Without limiting the generality of the foregoing, each and every covenant and agreement herein by Settlement Class Counsel shall be binding upon Plaintiffs and all Class Members.

25.    **Integrated Agreement.**  This Settlement Agreement, together with the exhibits hereto and the documents referenced herein, contains the complete and integrated statement of every term in this Agreement, and supersedes all prior agreements or understandings, including the Memorandum of Understanding between the Parties executed on April 19, 2023, whether written or oral, between the Settling Parties with respect to the subject matter hereof. This Settlement Agreement shall not be modified except by a writing executed by Plaintiffs and the University.

26.    **Independent Settlement.**  This Settlement Agreement is not conditioned on the performance or disposition of any other settlement agreement between the Class and any other Defendant.

27.    **Headings.**  The headings in this Settlement Agreement are intended only for the convenience of the reader and shall not affect the interpretation of this Settlement Agreement.

28.    **No Party is the Drafter.**  None of the Settling Parties shall be considered the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of construction that might cause any provision to be construed against the drafter hereof.

29.    **Consent to Jurisdiction.**  Each Class Member and the University hereby irrevocably submits to the exclusive jurisdiction of the United States District Court for the Northern District of Illinois for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein provided

PRIVILEGED AND CONFIDENTIAL

that this consent to jurisdiction shall not affect the University's right or ability to assert this Settlement Agreement or the releases contained herein as a defense in an action filed in any other jurisdiction asserting Released Claims or concerning this Settlement Agreement or this Action.

30. **Choice of Law.** All terms of this Settlement Agreement shall be governed by and interpreted according to federal common law or, where state law must apply, Illinois law without regard to conflicts of law principles.

31. **Representations and Warranties.** Each party represents and warrants that it has the requisite authority to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated herein.

32. **Notice.** Where this Agreement requires either Settling Party to provide notice or any other communication or document to the other Settling Party, such notice shall be in writing and provided by email and overnight delivery to the counsel set forth in the signature block below for Settlement Class Counsel, respectively, or their designees or successors. For the University, notice shall be provided by email and overnight delivery to:

> Vice President and General Counsel
> Office of Legal Counsel
> University of Chicago
> 5801 S. Ellis Ave.
> Suite 619
> Chicago, IL 60637
> legalcounsel@uchicago.edu

> James L. Cooper
> Michael Rubin
> Arnold & Porter
> 601 Massachusetts Ave., NW
> Washington, D.C. 60001
> James.cooper@arnoldporter.com
> Michael.rubin@arnoldporter.com

**33. Execution in Counterparts.** This Settlement Agreement may be executed in counterparts. A facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

**34. Confidentiality.** While the fact of settlement of the Action has been disclosed in open court, the terms of this Settlement Agreement shall remain confidential until Plaintiffs move for preliminary approval of the Settlement, unless the University and Settlement Class Counsel agree otherwise, provided that the University may disclose the terms of this Settlement Agreement to accountants, lenders, auditors, legal counsel, insurers, tax advisors, or in response to a request by any governmental, judicial, or regulatory authority or otherwise required by applicable law or court order, and Plaintiffs may disclose the terms of the Settlement Agreement to any entity that has applied to serve as Notice and Claims Administrator or Escrow Agent, who shall abide by the terms of this paragraph.

PRIVILEGED AND CONFIDENTIAL

IN WITNESS WHEREOF, the parties hereto through their fully authorized representatives have agreed to this Settlement Agreement as of the date first herein above written.

Dated: August 7, 2023.

THE UNIVERSITY OF CHICAGO

By: _____
     Kim Taylor
Its:    Vice President and General Counsel

**PRIVILEGED AND CONFIDENTIAL**

By: _____

Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
**GILBERT LITIGATORS &**
**COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
sschuster@gilbertlitigators.com
amarquez@gilbertlitigators.com
smagnusson@gilbertlitigators.com

By: _____

Eric L. Cramer
Caitlin G. Coslett
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
ccoslett@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

By: *Edward Normand*

Devin "Vel" Freedman
Edward J. Normand
**FREEDMAN NORMAND**
**FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law
rcipolla@fnf.law

Daniel J. Walker
Robert E. Litan
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs and the Proposed Class*

**Exhibit B**

**Fees of Custodian/Escrow Agent**

**Acceptance Fee:**                                                          **Waived**

The Acceptance Fee includes the review of the Chicago
Custodian/Escrow Agreement, acceptance of the role as the Chicago
Custodian/Escrow Agent, establishment of the Chicago
Custodian/Escrow Account(s), and receipt of funds.

**Annual Administration Fee:**                                              **Waived**

The Annual Administration Fee includes the performance of
administrative duties associated with the Chicago
Custodian/Escrow Account including daily account management,
generation of account statements to appropriate parties, and
disbursement of funds in accordance with the Chicago
Custodian/Escrow Agreement.  Administration Fees are payable
annually in advance without proration for partial years.

**Out of Pocket Expenses:**                                                 **Waived**

Out of pocket expenses include postage, courier, overnight mail,
wire transfer, and travel fees.

12