**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SIA HENRY, *et al.*, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BROWN UNIVERSITY, *et al.*,<br><br>Defendants. | Case No.: 22-cv-00125<br><br>Hon. Matthew F. Kennelly |

**<u>AUGUST 17, 2023, JOINT STATUS REPORT</u>**

## I. PLAINTIFFS' STATEMENT OF RELEVANT ISSUES

Plaintiffs provide an update regarding the following six items for the Court.

**First,** there are now two pending motions for the Court's consideration: (1) Plaintiffs' Motion for Preliminary Approval of the Chicago Settlement (Dkt. 428), and (2) Plaintiffs' Motion against Georgetown, with related JSR and Supplement (Dkts. 402, 422, 423).

**Second,** the parties are nearing a compromise regarding the production of formulae embedded in Defendants'[1] software to help calculate financial aid awards, whose existence Plaintiffs only learned of through depositions taken in June and July. After failing to find such formulae in Defendants' document production, Plaintiffs requested such formulae by email on August 3, and clarified that request by email on August 8 specifically to include formulae embedded in Defendants' software packages. Plaintiffs further elaborated this request in a meet and confer on August 11. Plaintiffs' requests include the variables and coefficients (or multipliers), applied to those variables which Defendants use as applied settings to generate baseline determinations of expected family contributions and financial aid packages, before Defendants make any student-specific adjustments. The parties have had multiple communications on this topic since August 3, and Defendants have committed to "assess what documents exist and what is feasible to produce and report back promptly." Consistent with this commitment, Plaintiffs requested Defendants to produce these materials by September 5 to avoid motion practice.

**Third**, Defendants have agreed to make available to their witnesses, either in the form of a glossary or of unredacted versions of documents that have been redacted based on FERPA, the true names associated with approximately 150 UIDs/entries/applicants in documents that Plaintiffs identify to that Defendant at least five business days prior to the deposition, so the witness knows

[1] "Defendants" for purposes of this JSR does not include the University of Chicago.

(but will not disclose) the identity of the individual(s) referenced in the documents. The specific mechanism by which that will be accomplished will be addressed on a school-by-school basis, based on good faith discussions between plaintiffs' counsel and counsel for the particular school. For documents identified to a Defendant at least five business days prior to a deposition, where UIDs are available to Defendant, but the UIDs have not been inserted for the entries/applicants Plaintiffs identify, Defendant will provide the UIDs to Plaintiffs.[2]

**Fourth**, Northwestern (NW) is refusing to produce donor reports prepared by Mr. McQuinn, Vice President for Alumni Relationships, concerning meetings that President Dr. Schapiro had with applicant-related donors. This refusal is especially inappropriate in light of NW's apparent spoliation of Dr. Schapiro's records and the inconsistent testimony of NW's Dean of Undergraduate Enrollment, Christopher Watson.

Dr. Schapiro testified that, when he transitioned from being President of NW to a member of its faculty,[3] about eight months after this lawsuit commenced, "some things I think were thrown out", but he has "no idea" whether his documents related to donors were thrown out, and "no idea" whether his documents related to financial aid were thrown out, and "no idea" whether his documents related to admissions decisions were thrown out.[4] Plaintiffs' concerns about this possible spoliation issue have been confirmed and heightened by the conduct and inconsistent

[2] During the depositions, the names on the glossary or unredacted versions of documents will not be spoken and will remain confidential. The glossary or unredacted versions of documents will not be shared with Plaintiffs nor with other Defendants. Plaintiffs reserve their rights to seek custodians of documents from the President's Office and Development/Advancement Offices. Defendants reserve their rights to oppose such discovery from those offices. (Plaintiffs also reserve their rights pursuant to the Motion to Compel and for Sanctions against Georgetown.)

[3] In addition to his role as President at NW, he also served Chair and subsequently Vice-Chair of the 568 Presidents' Group.

[4] To date, the parties have been unable to compromise on the steps or representations necessary from NW to confirm adequate document preservation took place, as NW insists that an ambiguous assertion that some unidentified person conducted unspecified "diligence" is sufficient. Plaintiffs reserve their rights to bring a separate motion regarding NW's spoliation if the parties cannot find common ground.

testimony of Dean Watson in the DOJ's investigation. Dean Watson [REDACTED].[5]

In this context, NW is refusing to produce donor reports prepared by Mr. McQuinn concerning meetings that Dr. Schapiro had with applicant-related donors. *See* Ex. A. This is a limited, targeted go-get for highly probative documents, based on specific deposition testimony. It is confined to donor reports concerning donors on the President's lists who are linked to an applicant, capped at 100 reports for each of the 13 years that Dr. Shapiro was president (1,300). These donor reports are the records of one person, Mr. McQuinn, and NW has never disputed that the records are kept in one place. That production is especially necessary in light of Mr. Watson claiming to have zero electronic notes about his meetings with Dr. Schapiro.

**Fifth**, Plaintiffs request this Court to require Vanderbilt to give required FERPA notices necessary to facilitate the production of important documents and information. Plaintiffs' Requests for Production identified, for each Defendant, parent-donors and the year in which each of their children graduated. Plaintiffs have known for months the names of these donors and their children, as well as the amount of the donations – all based on public information. Recently, after a Vanderbilt witness claimed to have no knowledge about 10 of these parent-donors and their children who were admitted, Plaintiffs made a supplemental request for all evaluator ratings and

[5] Dr. Schapiro contradicts Mr. Watson in yet another way. NW's counsel has informed Plaintiffs that Mr. Watson does not have any electronic notes of his meetings with the President of the University about the President's lists, but President Schapiro has testified that Mr. Watson was "always on the keyboard on the computer" at each of these annual meetings.

related information for each of those admitted students. *See* Ex. B.[6] Vanderbilt has refused to comply with Plaintiffs' request and has also refused to provide notice under FERPA to the affected students, as contemplated by this Court's Oct. 26, 2022 Order Regarding FERPA (Dkt. 231).

Vanderbilt insists that providing notice pursuant to FERPA to such a small number of students would be disproportionate, unduly burdensome, and cause embarrassment. The opposite is true: Plaintiffs' request for a maximum of 50 notices is proportional and avoids undue burden. *See* July 24 Hrg. Tr. at 43 ("[I]f [a motion to disclose personal information concerns] 100 people, it's going to be one thing. If it's 10,000 people, it's going to be another thing.").[7] As for embarrassment, this is a major antitrust case being tried in federal court, not a private mediation. All Vanderbilt has to do to avoid giving notice to these students is to acknowledge that they would not have been admitted **but for** a donation or Vanderbilt's expectation of a donation.

Vanderbilt's claim that Plaintiffs "are seeking this data to parade names before the jury" is inaccurate, and unsupported by Exhibit B. Plaintiffs are entitled to prove (e.g., at summary judgment) – through specific, non-anonymous examples – that Vanderbilt was eager to admit the children of its wealthiest donors, even if some were not up to Vanderbilt's exacting standards. Defendants can protect themselves on the point they cite by designating the information as AEO. At trial, the Court can consider whether specific student names should be disclosed to the jury.

---

[6] Plaintiffs reserve the right to request the same information for the children of up to 50 of the Vanderbilt parent-donors listed in the RFP Appendices. Presumably, Vanderbilt has already produced to Plaintiffs in its structured data production all the requested data. However, without knowing the UIDs of the Vanderbilt parent-donor names in the RFP Appendices, Plaintiffs cannot correlate the names to the data. Plaintiffs reserve the right to request the same information from the other Defendants, for the same reasons. *See also* n. 6.

[7] The issue of FERPA notices to the children of parent-donors from other Defendants listed in the RFP appendices based on publicly available information is not ripe. However, if all other Defendants were to object, the maximum number of FERPA notices Plaintiffs may seek from all Defendants combined will be fewer than 500; and will as with Vanderbilt be limited to the children of 50 parent-donors for each Defendant (less for each Defendant with fewer than 50 parent-donors listed in the RFP Appendices).

But that is no reason to block discovery regarding wealthy donors and their children where the names and donations are already public knowledge.

**Sixth**, Defendants raise a purported issue regarding the coordination of Rule 30(b)(1) and 30(b)(6) depositions, which Plaintiffs contend is unnecessary, and at best, premature. The Court's January 12, 2023 Deposition Order ¶ I.B. (Dkt. 273) contemplates that a Rule 30(b)(1) witness could also become Rule 30(b)(6) witness.[8] However, nothing in the Court's order requires specific timing or sequence for Plaintiffs' Rule 30(b)(6) notices; and this Court's individual rules confirm that "there is no 'sequence' in which discovery must occur." (Judge Kennelly Indiv. Rules, "Discovery Motions"); indeed, during the later February 8, 2023 hearing, Defendants asked that "the identification of the 30(b)(6) topics are told to us up front so that we can appropriately prepare a witness or witnesses and ensure that our witnesses are not taken in duplicative order." Feb. 8, 2023 Hrg. Tr. 12:22-25. The Court did not address this request during the hearing, and in the subsequent minute entry (Dkt. 315), referred the parties to the Court's January 12 Order.

Plaintiffs explained to Defendants (e.g., Penn) repeatedly that Plaintiffs are not yet in a position to identify Rule 30(b)(6) topics, since Defendants are still producing documents to Plaintiffs, Plaintiffs have only taken fourteen depositions of Defendants' witnesses, and Plaintiffs have only just completed their second deposition (Ms. Varas) of Penn's witnesses. *See* Ex. C. Penn's demand that Plaintiffs identify Rule 30(b)(6) topics by September 15, 2023 is arbitrary, unnecessary and prejudicial under these circumstances. The fact discovery end date is not until January 31, 2024 (Dkt. 195).[9] It is not obvious or necessary that Penn will designate Ms. Varas as

[8] "If a witness is deposed pursuant to Fed. R. Civ. P. 30(b)(1) and is also designated as a Fed. R. Civ. P. 30(b)(6) witness, the parties shall negotiate in good faith to determine the appropriate number of deposition hours for each such witness."

[9] In fact, requiring Plaintiffs to "take all of their Rule 30(b)(6) testimony in the middle of fact discovery" is the exact scenario Plaintiffs' argued against in the Joint Submission on this topic. (Dkt. 262-1 at 2). Plaintiffs fully intend to meet and confer with Penn and any other Defendant before issuing a Rule 30(b)(6) notice. If there is disagreement at

its Rule 30(b)(6) witness for any or all topics Plaintiffs have not yet identified, although Penn insists she will be its designee regardless of the topics. If a Rule 30(b)(1) witness is later designated a Rule 30(b)(6) witness, the meet and confer will certainly consider any overlap of topics in accordance with the Court's Orders.

## II. DEFENDANTS' STATUS REPORT

### A. *Status of Discovery*

As of the date of this Report, Plaintiffs have deposed 14 current or former employees of various Defendants, and have noticed or requested deposition dates for another 30 deponents, including one third party. Defendants have noticed the depositions of all of the named Plaintiffs. Defendants continue to respond to ongoing questions from Plaintiffs' counsel regarding their structured data productions.

### B. *Defendants' Response to Plaintiffs' "Statement of Relevant Issues"*

Defendants do not believe that any of the Issues raised by Plaintiffs are ripe for presentation in a Motion to Compel, but Defendants provide this summary of the status of discussions regarding each issue.

#### 1. EFC Formulae

On August 11, 2023, Plaintiffs first articulated their request for explanations of the formula used by each Defendant to calculate an applicant's Expected Family Contribution for purposes of developing a financial aid award. Defendants have committed to Plaintiffs that we will consult with our respective clients to determine what is feasible for each Defendant to provide in this regard, given the nature of the computer systems involved and the long time period implicated in this request. Defendants have committed that we will make this assessment promptly, but at this

---

that time the parties cannot resolve, regarding either the topics or the identity of the witness Defendant designates, it can be brought to the court for resolution then.

point Defendants are not able to commit that we will be able to provide the requested information by September 5, as Plaintiffs' counsel requests.

### 2. "Glossary" of UIDs

Plaintiffs and Defendants have reached agreement on this point.

### 3. Plaintiffs' Request to Vanderbilt to Un-redact "All Evaluator Ratings and Related Information" for Certain Students

Plaintiffs characterize their dispute with Vanderbilt as about providing FERPA notice, but the real dispute concerns Plaintiffs' demand that Vanderbilt provide SAT scores, GPAs, and the like for certain students *by student name* and *without redaction.* Ex. B (requesting information in "unredacted form" and "without UIDs"). In other words, Plaintiffs demand that Vanderbilt reveal, for example, how John Doe performed in high school and scored on tests. The fact that some of the individuals may have known relationships to donors does not justify exposing their confidential and sensitive data.

Producing such admissions data by student name would expose highly sensitive personal information of former students who are not parties. Yet Plaintiffs admitted in a meet and confer they are seeking this data to parade names before the jury – not because they need it to prove their claims.[10] They want to expose individuals to potential ridicule by depicting them as unqualified, that they allegedly "would not have been admitted but for their parents' donations." Ex. B. Plaintiffs' demand for such personally identifiable information ("PII") should be denied because the information is unnecessarily duplicative and disproportionate to the needs of the case, and

[10] After receiving Vanderbilt's JSR insert, Plaintiffs walked back their oral statement that they needed the unredacted student data to paint a more "vivid" picture for the jury, stating they simply were expressing a need for information to build their case. However, Vanderbilt remains concerned that it is Plaintiffs' intent to use this unredacted student data publicly to argue before a jury that certain named students would not otherwise have been admitted to Vanderbilt.

producing it invades the privacy of the students involved and opens them up to "annoyance, embarrassment, oppression." *See* Fed. R. Civ. P. 26(b)(2)(c), 26(c)(1).

Whatever Plaintiffs want to argue to a jury about these students, they can argue it from the data they already have—using the students' anonymized but unique identifier ("UID") rather than their names. Indeed, the parties agreed to the UID process to protect student privacy. And Plaintiffs have already elicited the point they wish to make in depositions using the UID information, as evidenced by Plaintiffs' deposition of Vanderbilt's former director of admissions, whom Plaintiffs questioned extensively about particular students using UIDs. *See* Ex. B (citing pages 45–46, 48–49, 56, 64–66, 89–95, 100–102, 126–129, 138–139, 141–153, 154–155, 157–160, 163–165 from the Gaines deposition transcript). There is no need to depart from the agreed UID process just because Plaintiffs think real names might resonate better with a jury. Only embarrassment of individuals is served by "naming names" in this side show.

Plaintiffs' proposal also would impose needless burden on Vanderbilt. Plaintiffs ask Vanderbilt to provide this information for up to fifty students. Identifying these students and their current contact information and ensuring its accuracy would require significant work, particularly considering that many of the students at issue graduated more than a decade ago. Additionally, Vanderbilt would have to deal with the inevitable blowback that follows such notice, risking serious damage to Vanderbilt's reputation and its relationships with alumni, whose privacy as former students the university committed to protect.

While Vanderbilt believes that the Court should reject Plaintiffs' demand on its face, if the Court is inclined to entertain it, Vanderbilt respectfully asks that the Court order Plaintiffs to file a motion so that the parties can properly brief this important dispute.

**4. Northwestern's Donor Records**

Plaintiffs' request that Northwestern produce every report of every meeting between Northwestern's former President and each of up to 1,300 donors whose name appears on any President's List is far from "modest." The assertion that this would require review of "only" 1,300 documents is simply made up out of whole cloth. Moreover, what Plaintiffs ask for is not remotely relevant nor reasonably proportionate to the needs of the case, particularly in light of the numerous donor-related documents already produced and the testimony of former President Schapiro. Plaintiffs' purported justification for this new request is a web of innuendo, inaccuracies, and rank speculation too tangled to unravel in response to what is essentially a motion for new relief in the guise of a "status report,"—and provides no basis for the Court to revisit its prior ruling that Northwestern need not produce information from its development office.

To be clear, Northwestern has complied with its discovery and preservation obligations. If Plaintiffs believed they had a basis to file a motion for spoliation (spurious as such a motion would be), or to reconsider the Court's prior ruling on the scope of donor-related discovery, they were free to do so. They did not, and their attempt to relitigate these issues through a purported "status report" is entirely inappropriate.

**5. Deadline for Service of Deposition Notices**

Defendants request that the Court set September 15, 2023 as a deadline for the service of Rule 30(b)(6) deposition notices to parties. 18 months after filing suit, Plaintiffs have not served any Rule 30(b)(6) deposition notices on any Defendant. That has created an inefficient process where Defendants' employees will have to sit for multiple depositions. To give one recent example, despite being expressly informed that Penn's Senior University Director of Financial Aid was a likely Rule 30(b)(6) deponent on multiple topics, Plaintiffs refused to either identify 30(b)(6)

topics to allow the witness to testify only once or to delay the 30(b)(1) deposition until Plaintiffs were ready to serve 30(b)(6) notices. The 30(b)(1) deposition proceeded on August 2.

Plaintiffs insist that requiring them to identify 30(b)(6) topics now is "premature." They are wrong. Plaintiffs argued that they were entitled to two notices because they intended to serve an early notice and a later one to avoid the very inefficiency they are now creating. See ECF No. 262-1 at 2. Next, the recent amendments to Rule 30 expressly contemplate sharing topics and service of notices at the beginning of discovery and certainly by now. See Advisory Committee Notes on Rules—2020 Amendment to Federal Rule of Civil Procedure 30. Plaintiffs thus unsurprisingly never explain how being asked to serve 30(b)(6) notices by September 15 is "prejudicial," especially where they expressly told the Court that this was what they planned to do. Finally, Plaintiffs' lament that they don't have every last document is nonserious. They surely have enough documents to identify topics for a deposition a month from now.

**C. *Enrollment Management Allegations Against Penn***

Defendant University of Pennsylvania ("Penn") raised concerns with Plaintiffs regarding whether a reasonable basis existed for the Second Amended Complaint's allegations regarding enrollment management relating specifically to Penn. Plaintiffs maintain that a reasonable basis for the allegations existed and communicated that basis to Counsel for Penn. Upon learning of certain facts through discovery taken to date, and given the current factual record, Plaintiffs are withdrawing their allegations in Paragraphs 156 and 165 of the Second Amended Complaint, but only to the extent that they contend that Penn used enrollment management as a means to engage in need-aware admissions. Plaintiffs are not otherwise withdrawing allegations in those paragraphs (or anywhere else). Plaintiffs are reserving their rights to seek leave to amend the Complaint to reassert these specific allegations against Penn if subsequent discovery supports the allegations.

Dated: August 17, 2023

Respectfully submitted,

By:/s/ *Edward J. Normand*
Devin "Vel" Freedman
Edward J. Normand
Peter Bach-y-Rita
FREEDMAN NORMAND FRIEDLAND LLP
99 Park Avenue
Suite 1910
New York, NY 10016
Tel.: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law

/s/ *Robert D. Gilbert*
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar*
Sarah Schuster
Steven Magnusson
GILBERT LITIGATORS & COUNSELORS, P.C.
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
sschuster@gilbertlitigators.com
amarquez@gilbertlitigators.com
smagnusson@gilbertlitigators.com

* *Pro hac vice*

Eric L. Cramer
Caitlin G. Coslett
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: 215-875-3000
ecramer@bm.net
ccoslett@bm.net

By: */s/ Jon Roellke*
Jon R. Roellke
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel.: 202-739-5754
jon.roellke@morganlewis.com

Noah J. Kaufman
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02210
Tel.: 617-341-7590
noah.kaufman@morganlewis.com

*Counsel for Defendant Brown University*

By: */s/ Deepti Bansal*
Deepti Bansal
Alexander J. Kasner
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
Tel.: 202-728-7027
dbansal@cooley.com
akasner@cooley.com

Matthew Kutcher
COOLEY LLP
110 N. Wacker Drive
Chicago, IL 60606
Tel.: 312-881-6500
mkutcher@cooley.com

*Counsel for Defendant California Institute of Technology*

By: */s/ Amy Van Gelder*
Amy Van Gelder
John Kocoras
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

Daniel J. Walker
Robert E. Litan
Ellen Noteware
Hope Brinn
BERGER MONTAGUE PC
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel.: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs*

155 N. Wacker Drive
Chicago, IL 60606-1720
Tel.: 312-407-0508
amy.vangelder@skadden.com
john.kocoras@skadden.com

Karen Hoffman Lent
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
Room 40-216
New York, NY 10001-8602
Tel.: 212-735-3276
karen.lent@skadden.com

*Counsel for Defendant The Trustees of Columbia University in the City of New York*

By: */s/ Norm Armstrong*

Norman Armstrong
Christopher C. Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
Tel.: 202-626-8979
narmstrong@kslaw.com
cyook@kslaw.com

Emily T. Chen
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel.: 212-556-2224
echen@kslaw.com

Zachary T. Fardon
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
Tel.: 312-764-6960
zfardon@kslaw.com

*Counsel for Defendant Cornell University*

By: *<u>/s/ Terri L. Mascherin</u>*
Terri L. Mascherin
Reid J. Schar
JENNER & BLOCK LLP
353 N. Clark Street,
Chicago, IL 60654-3456
Tel.: 312-222-9350
tmascherin@jenner.com
rschar@jenner.com

Ishan K. Bhabha
Douglas E. Litvack
Lauren J. Hartz
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Tel.: 202-637-6327
ibhabha@jenner.com
dlitvack@jenner.com
lhartz@jenner.com

*Counsel for Defendant Trustees of Dartmouth College*

By: <u>*/s/* James A. Morsch</u>
James A. Morsch
Jim.morsch@saul.com
SAUL EWING LLP
161 North Clark, Suite 4200
Chicago, IL 60601
Tel.: (312) 876-7100
Facsimile: (312) 876-0288
IL Attorney ID #6209558

Christopher D. Dusseault (pro hac vice)
cdusseault@gibsondunn.com
Jacqueline L. Sesia
jsesia@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel.: (213) 229-7000

*Counsel for Defendant Duke University*

By: */s/ Tina M. Tabacchi*
Tina M. Tabacchi
JONES DAY
110 North Wacker Drive
Suite 4800
Chicago, IL 60606
Tel.: 312-782-3939
tmtabacchi@jonesday.com

Craig A. Waldman
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
Tel..: 202-879-3877
cwaldman@jonesday.com

*Counsel for Defendant Emory University*

By: */s/ Britt M. Miller*
Britt M. Miller
Daniel T. Fenske
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel.: 312-783-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com

*Counsel for Defendant Georgetown University*

By: */s/ Jeffrey J. Bushofsky*
Jeffrey J. Bushofsky
ROPES & GRAY LLP
191 North Wacker Drive 32nd Floor
Chicago, IL 60606-4302
Tel.: 312-845-1200
jeffrey.bushofsky@ropesgray.com

Chong S. Park
Samer M. Musallam
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Tel.: 202-508-4600
chong.park@ropesgray.com

samer.musallam@ropesgray.com

*Counsel for Defendant Johns Hopkins University*

By: /s/ Eric Mahr
Eric Mahr
Jan Rybnicek
Daphne Lin
FRESHFIELDS BRUCKHAUS DERINGER
700 13th Street, NW
Washington, DC 20005
Tel.: 202-777-4500
eric.mahr@freshfields.com
jan.rybnicek@freshfields.com
daphne.lin@freshfields.com

*Counsel for Defendant Massachusetts Institute of Technology*

By: /s/ Scott D. Stein
Scott D. Stein
Kathleen L. Carlson
Benjamin R. Brunner
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
Tel.: 312-853-7520
sstein@sidley.com
kathleen.carlson@sidley.com
bbrunner@sidley.com

*Counsel for Defendant Northwestern University*

By: /s/ Robert A. Van Kirk
Robert A. Van Kirk
Jonathan B. Pitt
Sarah F. Kirkpatrick
Matthew D. Heins
Cole T. Wintheiser
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, D.C. 20024
Tel.: 202-434-5000
rvankirk@wc.com

skirkpatrick@wc.com
jpitt@wc.com
mheins@wc.com
cwintheiser@wc.com

James Peter Fieweger
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street
Suite 3200
Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for Defendant University of Notre Dame du Lac*

By: */s/ Seth Waxman*
Seth Waxman
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel.: 202-663-6800
seth.waxman@wilmerhale.com

David Gringer
Alan Schoenfeld
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: 212-937-7294
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Daniel Martin Feeney
Edward W. Feldman
MILLER SHAKMAN LEVINE & FELDMAN LLP
180 North LaSalle Street
Suite 3600
Chicago, IL 60601
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for Defendant The Trustees of the University of Pennsylvania*

By: */s/ Norm Armstrong*
Norman Armstrong
Christopher C. Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
Tel.: 202-626-8979
narmstrong@kslaw.com
cyook@kslaw.com

Emily T. Chen
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel.: 212-556-2224
echen@kslaw.com

Zachary T. Fardon
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
Tel. 312-764-6960
zfardon@kslaw.com

*Counsel for Defendant William Marsh Rice University*

By: */s/ J. Mark Gidley*
J. Mark Gidley
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
Tel.: 202-626-3600
mgidley@whitecase.com

Robert A. Milne
David H. Suggs
WHITE & CASE LLP
1221 Avenue of the Americas

New York, NY 10020-1095
Tel.: 212-819-8200
rmilne@whitecase.com
dsuggs@whitecase.com

*Counsel for Defendant Vanderbilt University*

By: *<u>/s/ Charles A. Loughlin</u>*
Charles A. Loughlin
Benjamin F. Holt
Jamie Lee
Molly Pallman
Christopher Fitzpatrick
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
Tel.: 202-637-5600
chuck.loughlin@hoganlovells.com
benjamin.holt@hoganlovells.com
jamie.lee@hoganlovells.com
molly.pallman@hoganlovells.com
chris.fitzpatrick@hoganlovells.com

Stephen Novack
Stephen J. Siegel
Serena G. Rabie
ARMSTRONG TEASDALE LLP
100 North Riverside Plaza, 15th Floor
Chicago, IL 60606-1501
Tel.: 312-419-6900
snovack@atllp.com
ssiegel@atllp.com
srabie@atllp.com

*Counsel for Defendant Yale University*