# EXHIBIT A

**Subject:** RE: A Few of the Issues That Arose At the Morton Schapiro Deposition
**Date:** Thursday, August 17, 2023 at 5:20:02 PM Eastern Daylight Time
**From:** Robert Gilbert
**To:** Stein, Scott D., Carbone_Defs_Service@listserv.whitecase.com, 568_litigation@gilbertlitigators.com, 568 Litigation

**[EXTERNAL SENDER]**

Dear Scott,

This email addresses Northwestern's most recent effort to exaggerate the "burden" of producing Mr. McQinn's Northwestern donor reports by ignoring or, frankly, just making up facts. The Defendants' draft insert to the JSR today states that, "Plaintffs new request that Northwestern produce every report of every meeting over the last 20 years who every donor who appears on any President's list..." is false, as was expressly explained to you in writing yesterday (with copies to all Defense Counsel) . As I expressly repeated in yesterday's email (copies to all Defense Counsel) in debunking an almost identically false claim, "Dr. Schapiro and Mr. McQuinn worked together at Northwestern for only 12 years (2010-2022)." (More precisely, that would be 13 years.)

The Defendants' draft insert goes on to claim that, "There are ▇▇▇▇▇ on the President's Lists between 2005 and 2022 ▇▇▇▇▇ " As you must certainly know as their lawyer, and as I reminded all Defense Counsel in writing, *neither Dr. Schapiro nor Mr. McQuinn was even working at Northwestern in 2005*. We further dispute your claim of, "▇▇▇▇▇" As best we can determine, the President's Lists have no more than 150 names per year.

In order to avoid the possibility of Northwestern creating any more fictional numbers or time periods to fabricate a "burden" on Mr. McQuinn, we now limit the request to the donor reports related to the first 100 names on each of President's lists for 13 years (2010-2022), which is a total of 1,300. To be clear, in order to avoid cherry picking, it is the first 100 names on each such list from 2010 through 2022, not 100 names that Northwestern selects from those lists .

Please remove the inaccurate references to "last 20 years", "2005", etc. from the Defendants' insert. Thank you.

Best,

Bob

Robert D. Gilbert
Managing Partner
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
rgilbert@gilbertlitigators.com
646-448-5269 work
203-645-0055 cell
www.gilbertlitigators.com

**From:** Robert Gilbert
**Sent:** Wednesday, August 16, 2023 12:49 PM
**To:** Stein, Scott D.
**Cc:** Carbone_Defs_Service@listserv.whitecase.com; 568_litigation@gilbertlitigators.com; 568 Litigation
**Subject:** A Few of the Issues That Arose At the Morton Schapiro Deposition

Dear Scott,

This responds to your email below from yesterday morning (August 15).

Your first paragraph tosses around words such as "spurious" and "baseless". However, you do not provide any facts to dispute that Mr. Watson gave demonstrably false testimony (based on both documentary evidence and Dr. Schapiro's sworn testimony) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ You also do not provide any facts to reconcile the apparent contradiction between Mr. Watson's assertion that he does not have any electronic notes of his annual meetings with the President of the University about the President's lists, and President Schapiro testimony under oath that Mr. Watson was "always on the keyboard on the computer" at each of these annual meetings.

Even more fundamentally, absent from your discussion of spoliation involving Dr. Schapiro—who testified that he has "no idea" whether documents related to donors was thrown out, and "no idea" whether documents related to financial aid were thrown out, and "no idea" whether documents related to admissions decisions were thrown out—is any justification for your refusal to provide an affidavit from his chief of staff concerning the document preservation procedures taken at the time of Dr. Schapiro's transition from being university president to a member of the university faculty.

Your second paragraph once again employs rhetoric about "reports of every contact with ▇▇▇▇▇▇ donors going back 20 years." You know that this is not accurate. Indeed, you were previously informed orally that this rhetoric is not accurate, and *twice previously informed in writing that this rhetoric is not accurate*, so this is now the third time that we point this out in writing. As I stated in in my August 12 email, "…and as we have previously explained, the request is for 'a limited, targeted go-get for highly probative documents, based on specific deposition testimony.' It is confined to donor reports concerning, 'donors identified on the president's and admissions interests lists who are linked to an applicant.' *These reports are especially necessary in view of Mr. Watson's claim (described above) to have zero electronic notes of his annual meetings with President Schapiro regarding those President's Lists."* (emphasis added) These donor reports are the records of one person, Mr. McQuinn. The President's lists involve no more than 150 admitted applicants per year. You complain about "going back 20 years". However, Plaintiffs have to prove our case for 20 years and you know that we are nonetheless not asking you to go back 20 years with this request; Dr. Schapiro and Mr. McQuinn worked together at Northwestern for only 12 years (2010-2022). The total amount of relevant donor reports is a maximum of 1800. (And if Northwestern chose to maintain the donor reports on an annual basis rather than individual applicant basis, it would be only 12 reports.) We also made the point previously (back on August 9), which you have never disputed that, "the overwhelming likelihood is that McQuinn would keep his records of such donor-applicant meetings in one place for the sake of efficiency

in performing his duties at Northwestern." Your effort to manufacture a "burden" by ignoring and distorting facts fails.

Your third paragraph also ignores what has been previously discussed when you claim that, "Dr. Schapiro's testimony concerning transfer admissions further undermines any argument that the additional discovery being requested pertaining to donor issues is proportional to the needs of the case." As we discussed last Friday (August 11), plaintiffs are not required to prove their case by "50.1 % to 49.9%" , as Judge Kennelly has expressly pointed out. Transfer admissions could be viewed by a jury as a technical argument, or indeed subject to jury nullification. If you would like an example of a stipulation that would relieve the need for Plaintiffs to take further discovery concerning admissions influenced by donations at Northwestern, a stipulation that states that at least 50 applicants for undergraduate admission during Dr. Schapiro's tenure as President of Northwestern would not have been admitted but for a donation (or pledge of a donation) of $500,000 or more by a family member, that would probably suffice. Please let us know by August 23 whether such a stipulation will be forthcoming.

Thank you.

Best,

Bob

Robert D. Gilbert
Managing Partner
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
rgilbert@gilbertlitigators.com
646-448-5269 work
203-645-0055 cell
www.gilbertlitigators.com

**From:** Stein, Scott D.
**Sent:** Tuesday, August 15, 2023 6:33 AM
**To:** Robert Gilbert
**Cc:** Carbone_Defs_Service@listserv.whitecase.com; 568 Litigation; 568_litigation@gilbertlitigators.com
**Subject:** RE: A Few of the Issues That Arose At the Morton Schapiro Deposition

Bob,

We have reviewed your latest email, including the spurious assertions regarding Chris Watson. Our position on the three issues you originally raised remains as set forth in my July 25 email. If you believe you have a

basis to bring some motion based on allegations of spoliation (baseless as such a motion would be) you are of course free to do so. Otherwise, we believe the judge has been clear that the joint status reports are not intended to serve as a vehicle for a general airing of perceived grievances.

With regard to your reference to being at an "impasse" with regard to donor reports, that is something only you can answer. I explained why plaintiffs' request that reports of every contact with ▓▓▓▓▓▓▓▓ donors going back 20 years does not appear to be remotely relevant or proportional to the needs of the case; it is neither (as you suggest) "limited" nor "targeted." Moreover, the Court has already held that Northwestern need not produce ARD materials, like those that are the subject of your current request. You are of course free to ask the Court to revisit that ruling – but again, a joint status report is not the vehicle to do so.

I also explained when we spoke that Dr. Schapiro's testimony concerning transfer admissions further undermines any argument that the additional discovery being requested pertaining to donor issues is proportional to the needs of the case. And in both my prior email and our call last week I raised with you the prospect of factual stipulations as a potential alternative. That would, of course, require plaintiffs to articulate specifically what it is they believe is sufficient to show lack of need-blindness, which would help frame the proportionality inquiry.

- Scott

**SCOTT D. STEIN**

**SIDLEY AUSTIN LLP**
312 853 7520 (work)
773 220 4277 (cell)
sstein@sidley.com

---

**From:** Robert Gilbert <rgilbert@gilbertlitigators.com>
**Sent:** Saturday, August 12, 2023 1:48 PM
**To:** Stein, Scott D. <sstein@sidley.com>
**Cc:** Carbone_Defs_Service@listserv.whitecase.com; 568 Litigation <568_Litigation@fnf.law>; 568_litigation@gilbertlitigators.com
**Subject:** A Few of the Issues That Arose At the Morton Schapiro Deposition

Dear Scott:

In our meet and confer call on Thursday (8/10/23) regarding Plaintiffs' concerns about issues that arose in the Schapiro deposition, you focused on pages 112-113 of that transcript, but did not mention pages 137-138 of the Schapiro transcript, so we are providing the relevant excerpts in which Dr. Schapiro repeatedly states that he has "no idea" whether or not relevant documents were thrown out when he stepped down as President of Northwestern University about eight months after this

lawsuit was file.

Page112-113

>  21· · · ·Q.· ·So does the president's office of
>  22· ·Northwestern have any copies of these development
>  23· ·reports?
>  24· · · ·MR. STEIN:· Objection; foundation.
>  25· · · ·THE WITNESS:· President's office?
>  1· · · ·I would highly doubt that there's any files. I
>  2· ·left in September.· Some things went to archives.
>  3· ·Some things I think were thrown out.· I took
>  4· ·virtually nothing with me.· I guess a lot of it was
>  5· ·electronic.· It might be there somewhere. I
>  6· ·don't -- I don't -- I really don't know.
>  7· ·BY MR. GILBERT:
>  8· · · ·Q.· ·Are there copies of these development
>  9· ·reports in the alumni relations and development
>  10· ·office?
>  11· · · ·A.· ·I would hope so.
>  12· · · ·Q.· ·Did Mr. McQuinn have an executive
>  13· ·assistant?
>  14· · · ·A.· ·I would imagine so, yes.
>  15· · · ·Q.· ·Do you know what that person's name is?
>  16· · · ·A.· ·No.

…

Page 137-138:

>  17· · · ·Q.· ·You testified earlier, "I left in
>  18· ·September.· Some things went to archives.· Some
>  19· ·things I think were thrown out.· I took virtually
>  20· ·nothing with me.· I guess a lot of it was
>  21· ·electronic.· It might be there somewhere."
>  22· · · ·Do you know if anything related to records
>  23· ·related to donors was thrown out?
>  24· · · ·A.· ·I have no idea.
>  25· · · ·Q.· ·Do you know if anything related to
>  1· ·financial aid was thrown out?
>  2· · · ·A.· ·Not that I know of.
>  3· · · ·Q.· ·Do you know one way or another whether
>  4· ·documents related to financial aid were thrown out?
>  5· · · ·A.· ·No.· I have no idea.

    6· · · ·**Q.· ·Do you know whether or not documents**
    7· ·**related to admissions decisions were thrown out?**
    8· · · ·**A.· ·**No idea.

Schapiro Dep. Tr. 112:21-113:6; 137:17-138:8.

In light of Dr. Schapiro's sworn testimony that he has "no idea" if records related to donors were thrown out, and his sworn testimony that he has "no idea" whether or not documents related to financial aid were thrown out, and his sworn testimony that he has "no idea" whether or not documents related to admissions decisions were thrown out, all despite the fact (as set forth in your August 8 email) that he and his chief of staff had received multiple litigation hold notices,  plaintiffs continue to believe (as we stated on August 9) that, "an affidavit from his chief of staff that details the implementation of the document preservation procedures taken at the time of President Schapiro's retirement as President seems both appropriate and necessary."

Particularly since Dr. Schapiro remains an employee of Northwestern, Northwestern and its counsel are responsible for document preservation, not just Dr. Schapiro. An ambiguous assertion that some unidentified person conducted some unspecified "diligence" is clearly not sufficient.

Our concerns in this regard are, of course, confirmed and heightened by separate but related issues. Dr. Schapiro testified that Mr. Watson (Admissions), "was always on the key board on the computer," during his annual meetings with the President of the University concerning the President's Lists,  but we are now told that Mr. Watson has zero electronic notes of any of those meetings. That's the first apparent contradiction involving Mr. Watson.



Of course, we now know that Mr. Watson's sworn testimony on this point was false. That is, we know from the President's lists that have been produced, and from Dr. Schapiro's testimony,  that every year Mr. Watson received President's lists and virtually every entry on  those lists contained the history of  donation dollar amounts (and/or a dollar amount for "major gift capacity"), and that every year he discussed those lists with Dr. Schapiro.

[REDACTED] Of course, we look forward to taking the deposition of Mr. Watson, which will include all of these issues in light of the actual information in the annual President's lists.

In the meantime, in view of all of the foregoing, please let us know by Tuesday August 15 whether Northwestern will reconsider its position of refusing to provide an affidavit from Dr. Schapiro's chief of staff concerning the implementation of the document preservation procedures taken at the time of President Schapiro's retirement as President of the university and his transition to remaining on the faculty at Northwestern.

Thank you.

Best,

Bob

P.S. Based on our meeting with you on Thursday, we understand that the parties are at an impasse regarding Mr. McQuinn's donor reports. So that there is no lack of clarity, and as we have previously explained, the request is for "a limited, targeted go-get for highly probative documents, based on specific deposition testimony." It is confined to donor reports concerning, "donors identified on the president's and admissions interests lists who are linked to an applicant." These reports are especially necessary in view of Mr. Watson's claim (described above) to have zero electronic notes of his annual meetings with President Schapiro regarding those President's Lists.

Robert D. Gilbert
Managing Partner
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
rgilbert@gilbertlitigators.com
646-448-5269 work
203-645-0055 cell
www.gilbertlitigators.com

---

**From:** Stein, Scott D.
**Sent:** Thursday, August 10, 2023 5:51 AM
**To:** Robert Gilbert; Carbone_Defs_Service@listserv.whitecase.com
**Cc:** 568 Litigation; 568_litigation@gilbertlitigators.com

**Subject:** RE: A Few of the Issues That Arose At the Morton Schapiro Deposition

Bob, I should be available following our call at noon ET.

Your email refers to an "August 14" status report. I am not sure where that date is coming from. August 14 is the deadline the judge set for filing motions to be heard at the next status hearing. But the judge said at the last hearing that the status report is due on August 17.

**SCOTT D. STEIN**

**SIDLEY AUSTIN LLP**
312 853 7520 (work)
773 220 4277 (cell)
sstein@sidley.com

---

**From:** Robert Gilbert <rgilbert@gilbertlitigators.com>
**Sent:** Wednesday, August 09, 2023 8:04 PM
**To:** Stein, Scott D. <sstein@sidley.com>; Carbone_Defs_Service@listserv.whitecase.com
**Cc:** 568 Litigation <568_Litigation@fnf.law>; 568_litigation@gilbertlitigators.com
**Subject:** FW: A Few of the Issues That Arose At the Morton Schapiro Deposition

Dear Scott,

This responds to the email that you sent yesterday concerning three follow up items to the Schapiro deposition.

Suffice to say that it is puzzling that, according to sworn testimony, Mr. Watson, " was always on the key board on the computer," during his annual meetings with the President of the University, but he has zero electronic notes of any of those meetings.

As to Mr. McQuinn, this is not a general request for a custodian. It is a limited, targeted go-get for highly probative documents, based on specific deposition testimony. (Moreover, the overwhelming likelihood is that McQuinn would keep his records of such donor-applicant meetings in one place for the sake of efficiency in performing his duties at Northwestern.) Northwestern's argument that such a highly targeted request is not proportional is unpersuasive. Indeed, with all respect, the "boil the ocean" metaphor is risible in this context (holding a vacuum in one hand to soak up a small spill would perhaps be more apt).

Furthermore, the fact that Mr. Watson (Admissions) claims to have zero electronic notes of his annual meetings with President Schapiro regarding the President's Lists—notwithstanding

the sworn testimony that he was constantly on his computer keyboard during all of those annual meetings—underscores that the production of Mr. McQuinn's donor reports, "for any donors identified on the president's and admissions interests lists who are linked to applicants," is a necessity.

As to the spoliation issue, in light Dr. Schapiro's testimony that (a) documents were thrown out eight months after the filing of the lawsuit, and (b) that he has "no idea" if donor-related documents were thrown out at that time, and (c) that he also does not know if documents related to financial aid and admissions were also thrown out at that time (notwithstanding his having received litigation hold notices, which make his cavalier disregard for document preservation even more troubling), your response that he and his chief of staff received notices to preserve documents is insufficient. Since Dr. Schapiro has testified that he has "no idea" if highly relevant documents were thrown out, then an affidavit from his chief of staff that details the implementation of the document preservation procedures taken at the time of President Schapiro's retirement as President seems both appropriate and necessary.

Please let us know if you are available to have a meet and confer on these issues tomorrow immediately after the meeting concerning the glossary proposal. I would like to see if we can resolve these issues in some reasonable fashion that does not further burden the Court with another issue in the August 14 Joint Status Report.

Thank you.

Best,

Bob

Robert D. Gilbert
Managing Partner
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
rgilbert@gilbertlitigators.com
646-448-5269 work
203-645-0055 cell
www.gilbertlitigators.com

**From:** Stein, Scott D.
**Sent:** Tuesday, August 8, 2023 12:23 PM
**To:** Robert Gilbert
**Cc:** 568 Litigation; 568_litigation@gilbertlitigators.com; Carlson, Kathleen; Stewart, Catherine

D.

**Subject:** RE: A Few of the Issues That Arose At the Morton Schapiro Deposition

Bob, I am responding to your email below. For ease of reference, our responses are interlineated below.
**SCOTT D. STEIN**

**SIDLEY AUSTIN LLP**
312 853 7520 (work)
773 220 4277 (cell)
sstein@sidley.com

**From:** Robert Gilbert <rgilbert@gilbertlitigators.com>
**Sent:** Tuesday, July 25, 2023 8:07 PM
**To:** Stein, Scott D. <sstein@sidley.com>
**Cc:** 568 Litigation <568_Litigation@fnf.law>; 568_litigation@gilbertlitigators.com; Carbone_Defs_Service@listserv.whitecase.com
**Subject:** A Few of the Issues That Arose At the Morton Schapiro Deposition

Dear Scott,

This email addresses a few of the issues that arose at Morton Schapiro's recent deposition:

**Chris Watson's Notes**
President Schapiro testified that he "would walk over to Chris's office, and we'd spend a couple hours going through the [President's] list." 53:2-5. President Schapiro then testified that, during these meetings, Mr. Watson "was always on the keyboard on the computer." 53: 8-9. Given this testimony, it seems highly likely that Mr. Watson was taking extensive notes on the conversations he had with President Schapiro about the President's lists. Since these notes are directly relevant to the litigation and are in the custody of Mr. Watson, a designated custodian, please either confirm by July 28 that you have searched for and produced all such notes or that you will produce such notes not later than August 2.

Northwestern has made reasonable inquiry to determine whether, as you hypothesize, electronic notes of such meetings exist. We are not aware of any such electronic documents. Any notes that Mr. Watson had have already been collected and produced.

**Bob McQuinn's Donor Reports**
President Schapiro testified that Bob McQuinn, Vice President of Alumni Relations

and Development, would write reports following meetings he and President Schapiro had with prospective donors. 58:13-59:3; 103:25-104:8. Plaintiffs request copies of all such reports for any donors identified on the president's and admissions interests lists who are linked to applicants. These documents should be produced no later than August 2.

**This request appears to be a rehash of an issue that has been litigated extensively. See 3/8/23 Order para. 5 ("At this time, Defendants need not designate custodians from its President or Development Offices.") Moreover, the request for copies of all reports of any meeting between the President and any actual or prospective donor (even if "limited" to those on the Presidents' List) over 20+ years does not seem remotely proportional to the needs of the case, even putting aside questions of relevance and responsiveness, and particularly given the documents and data that Northwestern has already produced. We continue to believe, consistent with the Judge's comments, that factual stipulations would be a more efficient way of addressing any lingering issues rather than "boil the ocean" discovery.**

### Destruction of Documents

When asked whether the President's Office retained copies of Mr. McQuinn's donor reports, President Schapiro testified, "I left in September. Some things went to archives. Some things I think were thrown out. I took virtually nothing with me." 112:21-113:3. President Schapiro stepped down as President in September 2022, several months after the commencement of this litigation. Upon further questioning, President Schapiro stated that he had "no idea" whether "records related to donors" were thrown out and that he did not know whether documents on financial aid and admissions were thrown out. 137:17-138:8.

**The fact that former President Schapiro did not personally dispose of his records and does not have personal knowledge as to how specific records were disposed of when he left provides no basis to conclude that relevant documents were not preserved. Northwestern has taken reasonable steps to preserve documents throughout this litigation. Both President Schapiro and his chief of staff received multiple litigation hold notices and associated instructions and reminders, and based on our diligence we have no reason to believe that Northwestern has failed to comply with its discovery obligations.**

Given this testimony, Plaintiffs are reasonably concerned about the possibility of spoliation with respect to President Schapiro. We therefore request a detailed statement regarding the document preservation procedures taken at the time of President Schapiro's retirement as President from Northwestern. We specifically ask that you describe what steps were taken to make sure that any documents "thrown out" were not in any way related to issues in the litigation. Please respond by no later than August 2.

Thank you.

Best,

Bob


Robert D. Gilbert
Managing Partner
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
rgilbert@gilbertlitigators.com
646-448-5269 work
203-645-0055 cell
www.gilbertlitigators.com


NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.


*******************************************************************************************

This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us immediately.

*******************************************************************************************


-**External sender. Please use caution when clicking on any attachments or links** -




NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.