**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>                         v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>                    Defendants. | Case No.: 1:22-cv-00125<br><br>**Hon. Matthew F. Kennelly** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO COMPEL DEFENDANTS TO PROVIDE FERPA NOTICES
PURSUANT TO THIS COURT'S ORDER REGARDING FERPA AND THE
<u>PRODUCTION OF CERTAIN DOCUMENTS AND INFORMATION</u>**

Plaintiffs respectfully submit this Memorandum of Law, with their Statement under Local Rule 37.2, in support of their Motion to Compel Defendant to provide FERPA notices pursuant to this Court's Order Regarding FERPA and the Production of Certain Documents and Information, entered on October 26, 2022 (Dkt. 231) (the "FERPA Order").[1]

## BACKGROUND

In the most recent Joint Status Report (Dkt. 433), Plaintiffs explained that Defendant Vanderbilt University had refused to provide notices to fewer than 20 students—all children of families who, according to publicly available information, have been substantial donors to the university—advising such students that Plaintiffs were seeking a court order requiring Vanderbilt to produce records concerning academic qualifications that would otherwise be protected from disclosure under FERPA.[2] *See* Dkt. 433, at 4; *see also* FERPA Order, Ex. A (sample Court-approved FERPA Notice).

In response, the Court asked Plaintiffs to file a motion to address Plaintiffs' requests for FERPA notices to other Defendants, in addition to Vanderbilt. *See* August 24, 2023 Hearing Tr. at 30-31. This is that motion. Plaintiffs have taken into consideration the Court's concerns about proportionality and burden by seeking approximately 320 FERPA notices from all Defendants (and no more than 50 per Defendant).[3] *See* July 24, 2023 Hearing Tr. (Dkt. 415) at 43:17-19 (THE COURT: "[I]t's reasonable to expect that . . . if it's 100 people, it's going to be one thing. If its's 10,000 people, it's going to be another.").

---

[1] This motion does not seek relief from MIT or Caltech and does not apply to Chicago or Yale.

[2] Family Educational Rights and Privacy Act of 1974, 20 U.S.C. §§ 1232g(a)(4)(A) and 1232g(b)(1).

[3] Plaintiffs have reserved the right to request the issuance of no more than 500 FERPA notices from all Defendants (including up to 50 for each Defendant). *See* Dkt. 433 at 4 & notes 6-7.

1

## SUMMARY OF ARGUMENT

Plaintiffs seek highly relevant information concerning approximately 320 students whose admission to Defendant universities during the class period may have been influenced by their families' historical or expected donations, and whose names are publicly available. Under this Court's MTD opinion, evidence of such "wealth favoritism" disproves Defendants' 568 Exemption defense. *See* Point I, *infra*. In addition, under the Third Circuit's *Brown University* opinion, Defendants' wealth favoritism shows that their participation in the 568 Cartel included a revenue-maximizing purpose, which strongly supports Plaintiffs' argument that the Cartel should be treated as *per se* illegal.

Plaintiffs selected the 320 students at issue based on publicly available information about the amount and timing of their families' donations (as well as publicly available information suggestive of the students' academic qualifications). Under the Court's current rulings, FERPA appears to protect the information Plaintiffs seek. Accordingly, Plaintiffs have asked Defendants to provide notices to the affected students under the procedure the Court endorsed in its October 2022 Order Regarding FERPA (Dkt. 231). Plaintiffs' narrow and targeted request, as shown in Points II and III below, and as required by Fed. R. Civ. P. 26(b)(1), is proportional to the needs of this case and avoids undue burden.

As this Court has recognized, Defendants' extensive use of anonymized data and "UIDs" has made it extraordinarily difficult for Plaintiffs to prove "the *extent* to which financial considerations played an impact in the admission of [a] particular student." July 24, 2023 Tr. (Dkt. 415) at 15 (emphasis added). Under these circumstances, the Court should enter an order requiring Defendants to issue the reasonable number of FERPA notices at issue, and then to

2

consider any objections filed by the affected students pursuant to the procedure endorsed by this Court in its prior Order Regarding FERPA. See Point IV, *infra*.

## ARGUMENT

### I. PLAINTIFFS SEEK DISCOVERY REGARDING DEFENDANTS' WEALTH FAVORITISM THAT IS HIGHLY RELEVANT TO PLAINTIFFS' CLAIM

Plaintiffs' motion falls under Fed. R. Civ. P. 26(b)(1), which provides in relevant part: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering [*inter alia*] . . . whether the burden or expense of the proposed discovery outweighs its likely benefit."

The information Plaintiffs seek here is highly relevant. In its Opinion and Order on Defendants' motion to dismiss, this Court held that Plaintiffs' allegations of "preferential treatment . . . based on the increased likelihood that the school will receive a donation" were relevant to whether a Defendant university's admission policies were "need-blind" within the meaning of the 568 Exemption. Dkt. 185 at 10.[4] Since then, the Court on several occasions has confirmed Plaintiffs' right to discovery on these central allegations.

Accordingly, under the Court's rulings, a key part of Plaintiffs' proof that Defendants' admissions policies were never need-blind under the statute—and that Defendants are therefore not entitled to antitrust immunity under the 568 Exemption—is proving that a given Defendant has engaged in "wealth favoritism" by admitting students while considering their families' large

---

[4] In so ruling, the Court noted that "a family's wealth certainly falls within 'the financial circumstances of the student involved *or the student's family*.'" (*Id*. at 10 n.1, citing 15 U.S.C. § 1 note; emphasis added by the Court).

3

donations and/or ability to make large donations, reflecting their "financial circumstances," rather than solely on their academic qualifications.[5]

In addition, proof that Defendants have engaged in wealth favoritism is relevant to antitrust *liability* because it shows that Defendants have acted with a "revenue-maximizing purpose" and that, accordingly. their agreement (as members of the 568 Cartel) to reduce financial aid to Plaintiffs is *per se* illegal under Section 1 of the Sherman Act. *See United States v. Brown Univ.*, 5 F.3d 658, 672 (3d Cir. 1993) (remanding for further consideration of whether to apply *per se* analysis in consideration of MIT's "alleged pure altruistic motive and alleged absence of a revenue maximizing purpose").

In order to collect the proof relevant to these central issues, Plaintiffs have used publicly available information to identify students whose families have made or were prospects to make substantial donations to the university to which the student was admitted. This publicly available information (from university websites, magazines and newspapers, social media, and the like) has often included the amount and timing of the family's donation, as well as information which is suggestive of the student's academic qualifications or lack thereof.

Plaintiffs then sent an email to each Defendant,[6] including a list of 50 or fewer students (along with the names of their parent-donors), which requested that the Defendant:

---

[5] Although the Court squarely held in its MTD Opinion that "[t]he Exemption applies only when *all* schools in an agreement admit all students on a need-blind basis," Dkt. 185 at 12 (emphasis added), Defendants nevertheless maintain that each Defendant is entitled to 568 immunity so long as *that* Defendant has been need-blind in its admissions policies. Considering Defendants' persistence in making this argument, Plaintiffs as a practical matter must still prove the extent to which each Defendant university has shown favoritism to wealthy students or has otherwise not been need-blind in its admission policies and practices.

[6] Except for MIT and Caltech, although Plaintiffs reserve their rights as to those Defendants.

4

(1) Produce the admissions files for each student or, at a minimum, documents sufficient to show each student's academic data (SAT/ACT scores, AP grades, GPA, Class Rank, etc.) as well as any Ratings used to admit or deny students for admission.

(2) Locate and produce on a "go get" basis all documents located in the Admissions, President's or Development Offices concerning any donations by each such student's parents (or their capacity to make such donations), including any correspondence with those parents.

*See* Plaintiffs' LR 37.2 Statement. Significantly, to the extent that the academic data and other information requested has previously been produced in documents or structured data, the students and their parents have been identified only by anonymized UIDs. For the few hundred students whose actual names Plaintiffs know (*see* discussion below), Plaintiffs need the requested information to be provided without UIDs which conceal the student's or parent's identities. *See* Fed. R. Civ. P. 26(b)(1) (identifying "the parties' relative access to relevant information" as a factor which applies to a request for discovery).

As the Court has recognized, UIDs can be a clear hindrance to effective questioning. *See* Dkt. 415 at 37 (Plaintiffs "need to be able to ask actual witnesses actual questions about actual information that's been produced [instead of] being hamstrung . . . because of all the blackouts . . . because [then] . . . the witness says, 'I have no idea what this is about, so I can't really comment on it.'"). In contrast, having information about the academic qualifications of students whose families are publicly known significant donors allows Plaintiffs to compare the qualifications of that discrete group against the general population of admitted students.

In addition, during any deposition about the influence of donations on admissions, having the already publicly available names of the donors and the admittees (instead of an anonymized

5

list of UID applicants) allows for more thorough questioning and gives the deponent less room to provide misleading answers, because Plaintiffs often have, in connection with publicly available names, publicly available information about the students' academic qualifications.

As the Court has noted, Plaintiffs are right to be concerned that, among the Defendants, "nobody has stipulated" that they engaged in wealth favoritism as alleged by Plaintiffs. July 24, 2023 Hearing Tr. (Dkt. 415) at 36:19. Accordingly, in the emails described above, Plaintiffs informed each Defendant that they are prepared to discuss foregoing the discovery described above if the Defendant is willing to enter into stipulations that would make the discovery less necessary. Defendants have so far declined to do so, leaving Plaintiffs no choice other than to compel production of the wealth favoritism Plaintiffs need in order to prove their case.[7]

## II.   PLAINTIFFS' REQUEST THAT DEFENDANTS PROVIDE FERPA NOTICES TO A FEW HUNDRED STUDENTS IS PROPORTIONAL TO THE NEEDS OF THE CASE AND AVOIDS UNDUE BURDEN

Under this Court's prior rulings, the academic data and related information sought by Plaintiffs in this motion constitute "education records" from which Defendants, in the over one million documents already produced in this case, have redacted all Personal Identifying Information ("PII") related to individual students and their families.[8]

It is undeniable, however, that, the Court's rulings at least temporarily place Plaintiffs in a difficult and perhaps unfair position. As explained in Point I, *supra*, Plaintiffs have a legitimate need for non-anonymized evidence of wealth favoritism. As this Court noted: "If you want to

---

[7]   *See* Plaintiffs Statement of Compliance with Local Rule 37.2. Negotiations with some Defendants are ongoing and may result in Plaintiffs dropping one or more Defendants from this motion, and in a reduction in the total number of FERPA notices which are the subject of this motion. *Id*.

[8]   The Court's prior rulings that the student and donor records in Defendants' possession are FERPA-protected have been made without prejudice and subject to reconsideration. This motion assumes *arguendo* that those rulings remain in effect.

figure out the *extent* to which financial considerations played an impact in the admission of the particular student, how would you do that because you don't know who the student is." July 24, 2023 Hearing Tr. (Dkt. 415) at 15 (emphasis added).

In order to make it possible for Defendants to produce student-related information without PII redactions, Plaintiffs have asked each Defendant to which this motion is addressed, in individual emails, to provide FERPA notices to each of the students listed in the Appendix attached to each email. Defendants have refused to do so. *See* Plaintiffs' Rule 37.2 Statement.[9]

As to any burden, the total number of students to whom Plaintiffs have asked Defendants to provide FERPA notices is about 320 (with no more than 50 per Defendant).[10] Given that this case involves a class of approximately 200,000 students admitted to the Defendant universities, it is beyond serious dispute that Plaintiffs' proposal for such a limited number of FERPA notices is proportional to the needs of this case. *See* July 24, 2023 Hearing Tr. (Dkt. 415) at 43 ("[I]f [a motion to disclose PII concerns] 100 people, it's going to be one thing. If it's 10,000 people, it's going to be another thing.").

In addition, Plaintiffs' request is narrow and targeted, designed to avoid undue burden to Defendants. Indeed, at this juncture, Defendants' sole obligation is to comply with this Court's October 2022 Order by sending FERPA Notices "by email to the most recent electronic mail address for each of the affected students or, if no such email address is available, by mail to the

---

[9] As discussed in Point III, *infra*, issuance of such notices is authorized by the Court's Order Regarding FERPA and the Production of Certain Documents and Information, dated October 26, 2022 (Dkt. 231), which includes (as Ex. A) the form of the Notice to be provided.

[10] Plaintiffs have reserved the right to request up to 500 notices in total. *See* note 3, *supra*.

7

last known address of the applicant or student." FERPA Order ¶ 2.[11]  The number of FERPA notices, and the procedures for sending them, are not at all burdensome.

Some Defendants may object to Plaintiffs' request that they provide FERPA notices to a limited number of students by suggesting that Plaintiffs are seeking to embarrass the affected students or "parade names before the jury."  Aug. 17 Joint Status Report (Dkt. 433) at 7.  That is not accurate, and the issue is not remotely ripe.  Plaintiffs seek the information requested for the purpose of obtaining evidence in depositions.  Under the Confidentiality Order (Dkt. 254), Defendants have the ability to designate any information concerning an individual student's academic qualifications as "Confidential" or "Attorneys' Eyes Only" as appropriate.

As to whether the names of individual students should be introduced in the trial of this case, any such concerns can be addressed by an *in limine* motion before trial, which is years away.  Such speculative concerns do not negate Plaintiffs' right to obtain discovery on matters which the Court has repeatedly ruled are clearly relevant.  Further, the discovery sought on those matters is  proportional to the needs of the case and designed to avoid undue burden to Defendants.  *See* Fed. R. Civ. P. 26(b)(1).

### III. PLAINTIFFS' REQUEST THAT EACH DEFENDANT PROVIDE NOTICE UNDER FERPA TO THE AFFECTED STUDENTS IS CONSISTENT WITH THIS COURT'S OCTOBER 2022 ORDER REGARDING FERPA

The FERPA statute and the related Department of Education ("DOE") regulations clearly state that "education records" which include a student's PII may be released in response to a judicial order without prior consent and without redaction.  *See, e.g., McDaniel v. Loyola Univ.*

---

[11]   In addition, under that provision, Defendants may have recourse to sending the Notice by mail to the affected student's parents, many of whom are large donors and/or members of the university's Board of Trustees or similar organizations.

8

*Med. Ctr.,* 2015 WL 13901029, at *2 (N.D. Ill. 2015) ("Disclosure of educational records is permitted under FERPA if it is necessary to comply with a lawfully issued subpoena or judicial order. 20 U.S.C. § 1232g(b)(2)(B)"); DOE FAQ ("FERPA permits disclosure of education records without consent in compliance with a lawfully issued subpoena or judicial order.") (*citing* 34 C.F.R. § 99.31(a)(9)(i) and (ii)).[12]

To be sure, the disclosure of "education records" pursuant to court order is permitted under FERPA only after the educational institution "makes a reasonable effort to notify the . . . eligible student of the order or subpoena in advance of compliance, so that the . . . eligible student may seek protective action." 99 C.F.R. § 99.31(a)(9)(ii). That is why the Court, in October 2022, entered the FERPA Order (Dkt. 231), with the full title "Order Regarding FERPA and the Production of Certain Documents and Information," together with a form Notice attached as Exhibit A. That Order sets forth a procedure that each Defendant should follow with respect to the students Plaintiffs have identified:

(1) Defendants notify each "affected student" that "Plaintiffs have requested information pertaining to you which may include your Education Records, including your admission and financial records and related information" and that the Defendant "will provide Plaintiffs with the requested information, pursuant to a court order."[13]

---

[12] U.S. Department of Education, *Protecting Student Privacy,* https://studentprivacy.ed.gov/faq/may-schools-comply-subpoena-or-court-order-education-records-without-consent-parent-or-eligible. *Accord, e.g., Banks v. Baraboo Sch. Dist.*, 2020 WL 5751415, at *4 (W.D. Wis. 2020) (FERPA "protects the confidentiality of student records, but allows such records to be disclosed pursuant to a court order"); *Alig-Mielcarek v. Jackson*, 286 F.R.D. 521, 526 (N.D. Ga. 2012) ("FERPA absolves schools that disclose educational records pursuant to a judicial order from sanctions."); *Metcalf v. Yale Univ.*, 2017 WL 627423, at *4 (D. Conn. 2017) ("FERPA does . . . allow the disclosure of students' educational records if 'such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena.'") (citation omitted).

[13] FERPA Order ¶ 2 and Ex. A.

(2) "The Notice shall advise the recipient that . . . they have 14 days from the date the Notice is sent to seek protection from the Court." FERPA Order ¶ 2; *see* Ex. A.

(3) As to each student who seeks protection from the Court, the Defendant who gave notice to that student "will withhold production of documents and information relating to that student pending further order of this Court." FERPA Order ¶ 4. Otherwise, each Defendant "may produce the requested documents and information without prior consent if the affected student has not sought protection from the Court within 30 days of the date on which the Defendant distributes the Notice." *Id.*

Accordingly, Plaintiffs' instant motion is simply a request that Defendants follow the notice procedure that this Court has already put in place. That Order allows Defendants to object under the Federal Rules of Civil Procedure "to a request for production of documents or information covered by FERPA," FERPA Order ¶ 5, but any such objection would be groundless for the reasons stated in Point II, *supra*.

### IV. PLAINTIFFS HAVE ALREADY SHOWN THAT THEIR NEED FOR THE DISCOVERY SOUGHT OUTWEIGHS THE PRIVACY NEEDS OF THE AFFECTED STUDENTS; BUT THAT ISSUE IS NOT RIPE UNTIL AFTER THIS COURT HAS RECEIVED OBJECTIONS TO DISCLOSURE FROM THE STUDENTS TO WHOM FERPA NOTICES HAVE BEEN SENT

Defendants may argue that the production of student admission files and related parent-donor communications requested by Plaintiffs should only be made if Plaintiffs can meet the purportedly "heavier burden" of showing that their "interest in obtaining the records outweighs the privacy interest of the student." *McDaniel*, 2015 WL 13901029, at *2.[14] *But compare Doe v.*

---

[14] *See also Banks,* 2020 WL 5751415, at *4 ("Before disclosure of FERPA-protected documents pursuant to a court order, the party seeking disclosure is required to demonstrate a genuine need for the information that outweighs the privacy interests of the students.") (citations and internal quotations omitted); *Alig-Mielcarek v. Jackson*, 286 F.R.D. at 526 ("Thus, when addressing objections to the disclosure of educational records, courts have permitted discovery only when the party requesting the

10

*Shenandoah Univ.,* 2023 WL 4186017, at *10 (W.D. Va. June 26, 2023) (rejecting heightened burden standard and holding that motion to compel education records protected by FERPA is governed by Rule 26(b)(1), because under FERPA, the only requirement is that the student be given notice before the educational institution produces the student's records in response to a subpoena or court order) (citation omitted).[15]

Plaintiffs are well-prepared to satisfy that burden. As discussed in Points I-II, *supra*, the information Plaintiffs seek—the non-anonymized academic data for less than one-quarter of 1% of the proposed class—is highly relevant to Plaintiffs' claims. As for the request that Defendants undertake specific "go get" searches for documents located in the Admissions, President's, or Development Offices concerning any actual or potential donations by each student's parents (*see* Point I, *supra*), that kind of narrow and targeted search is similar to other "go get" searches the Court has already authorized. *See* Order Regarding Plaintiffs' Motion to Compel and for Sanctions Against Georgetown University and its Counsel and for Related Relief (Aug. 30, 2023) (Dkt. 437) ¶ 3.

As a threshold matter, however, the only issue before the Court is whether to compel Defendants, using the form Notice already approved for that purpose, to issue FERPA notices to the approximately 320 students Plaintiffs have identified. *See Doe,* 2023 WL 4186017, at *10 (ordering Defendant university to send FERPA notices to affected students where, under Rule 26(b)(1), information sought was relevant and university had not shown that it would be

---

records has met a 'significantly heavier burden' to show that its interests in obtaining the records outweighs the significant privacy interest of the students.") (citations omitted).

[15] *See also In re Subpoena Issued to Smith*, 155 Ohio Misc. 2d 46, 49, 921 N.E.2d 731, 732-733 (Ct. Common Pleas 2009) (heavier burden standard cannot be derived from language of FERPA).

burdensome for the university to send the notices). That issue is clear-cut. Defendants should be ordered to send the requested FERPA notices.

Any individualized consideration of Plaintiffs' interest in the data and documents sought versus the student's privacy rights must, under the caselaw and this Court's FERPA Order, await the receipt of objections from those students who do object. For now, the requirement that Plaintiffs must prove wealth favoritism is sufficient as a matter of law to support issuance of the order that Plaintiffs seek.

## CONCLUSION

Plaintiffs respectfully request, for the foregoing reasons, that the Court order each Defendant (with the exception of MIT, Caltech, Chicago, and Yale) to send FERPA Notices pursuant to this Court's Order Regarding FERPA (Dkt. 231), in the same form as Exhibit A to that Order, to each of the students admitted to that Defendant university and identified by Plaintiffs as an intended recipient of such FERPA Notice.

Dated: September 25, 2023

Respectfully Submitted,

By: /s/Robert D. Gilbert
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
David Copeland
Steven Magnusson
Natasha Zaslove
**GILBERT LITIGATORS &
    COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
dcopeland@gilbertlitigators.com
smagnusson@gilbertlitigators.com

/s/ Edward J. Normand
Devin "Vel" Freedman
Edward J. Normand
Peter Bach-y-Rita
Richard Cipolla
**FREEDMAN NORMAND
    FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law
rcipolla@fnf.law

nzaslove@gilbertlitigators.com

| | |
|---|---|
| Eric L. Cramer<br>Caitlin G. Coslett<br>Ellen Noteware<br>**BERGER MONTAGUE PC**<br>1818 Market Street, Suite 3600<br>Philadelphia, PA 19103<br>Tel: 215-875-3000<br>ecramer@bm.net<br>ccoslett@bm.net<br>enoteware@bm.net | Daniel J. Walker<br>Robert E. Litan<br>Hope Brinn<br>**BERGER MONTAGUE PC**<br>2001 Pennsylvania Avenue, NW<br>Suite 300<br>Washington, DC 20006<br>Tel: 202-559-9745<br>rlitan@bm.net<br>dwalker@bm.net<br>hbrinn@bm.net |

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

*Counsel for Plaintiffs*