# Exhibit 3

1

```
 1                 IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3

 4   SIA HENRY, et al.,                )  Docket No. 22 C 125
                                       )
 5                      Plaintiffs,    )
                                       )
 6               vs.                   )
                                       )
 7   BROWN UNIVERSITY, et al.,         )  Chicago, Illinois
                                       )  May 31, 2023
 8                      Defendants.    )  9:15 o'clock a.m.

 9
                          TRANSCRIPT OF PROCEEDINGS
10           BEFORE THE HONORABLE MATTHEW F. KENNELLY

11
     APPEARANCES:
12

13   For the Plaintiffs:    GILBERT LITIGATORS & COUNSELORS
                            BY:  MR. ROBERT SOL RAYMAR
14                          11 Broadway, Suite 615
                            New York, NY  10004
15                          (646) 448-5269

16

17

18

19

20

21

22
     Court Reporter:        MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
23                          Official Court Reporter
                            219 S. Dearborn Street, Suite 2102
24                          Chicago, IL  60604
                            (312) 435-5639
25
```

```
 1   APPEARANCES CONTINUED:

 2
     For the Defendants:
 3

 4   Northwestern
     University:              GASS TUREK
 5                            BY:  MR. SCOTT DAVID STEIN
                              241 N. Broadway, Ste 300
 6                            Milwaukee, WI 53202
                              (312) 853-7000
 7

 8

 9
     Yale University:         HOGAN LOVELLS US LLP
10                            BY:  MR. BENJAMIN F. HOLT
                              555 Thirteenth Street, NW
11                            Washington, DC  20004
                              (202) 637-5661
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    (The following proceedings were had telephonically:)

2              THE CLERK:  Case 22 C 125, Henry v. Brown University.

3              THE COURT:  This is Judge Kennelly.  Can counsel for

4    the plaintiffs please give your names for the record.

5              MR. RAYMAR:  Counsel for the plaintiff is Robert

6    Raymar, special counsel from Gilbert Litigators.  I'll be

7    arguing, your Honor.  Good morning.

8              THE COURT:  Okay.  And on the defense side, I think

9    our normal practice is just for the folks who are going to be

10   speaking to talk, and then you'll give a list to Melissa of

11   who else is present.

12             So can the folks who are going to be speaking please

13   identify yourselves.

14             MR. STEIN:  Good morning, your Honor.  Scott Stein of

15   Sidley Austin for Northwestern.  And we have sent an

16   appearance list to your clerk.  My plan is to handle the

17   argument as to Northwestern and any common issues.

18             And to the extent your Honor has any questions that

19   are Yale-specific, Ben Holt of Hogan Lovells, who is also on,

20   will address those.

21             THE COURT:  Okay.

22             MR. HOLT:  Good morning, your Honor.

23             THE COURT:  I don't think I have any questions that

24   are school-specific.

25             And I really want to start off with something that's

1    I guess just sort of a basic question for me.

2          So in previous hearings or in a previous hearing, I

3    concluded that a donor's name isn't an education record under

4    FERPA -- FERPA, just for the benefit of the court reporter, is

5    F-E-R-P-A, all capital letters -- so I need somebody on the

6    defense side to tell me why can't I just tell you to unredact

7    the donors' names.

8          MR. STEIN:  Sure, your Honor.  And this issue

9    previously came up in the context of a confidentiality order

10   and understanding the intersection of the -- you know, the

11   terms, the education record and donation record.  Your Honor

12   made the point very clearly, and this is reflected in the

13   confidentiality order, that a donor's name standing alone, you

14   know, donor and donor information, is not an education record.

15   And we heard that and have complied with that.

16          They -- but what we're talking about here, the

17   redactions at issue are where a donor's name appears in

18   something that is an education record and where the donor --

19   the donor's name is linked to a specific applicant.  So a

20   specific example would be you have the name of an applicant

21   that's redacted, and next to it says, you know, daughter of

22   so-and-so donors.  And in that circumstance, unredacting the

23   donor's name allows identification of the applicant.  It

24   easily allows identification of the applicant.

25          THE COURT:  So maybe my question wasn't specific

1   enough.

2           So if one concludes as I did that a donor's name

3   isn't an education record, why does the fact that disclosure

4   of a donor's name might incidentally result in being able to

5   figure out the name of a student which would be an education

6   record.

7     (Audio interruption.)

8           Everybody hang up.

9     (Brief pause.)

10          THE COURT:  Okay.  This is Judge Kennelly.  We're

11  back on.

12          I just want to just kind of discuss what just

13  happened there.  I've had this happen before.  That's somebody

14  who joined us late and had a bad connection and didn't have

15  the brains to cut themselves off, and it basically crashed the

16  whole conference.

17          So we're going to try this one more time, and this is

18  last chance.  So if somebody comes in and everything goes

19  staticky, all you people have advanced degrees, you ought to

20  be able to figure out that you just caused a problem and you

21  should hang up.  If this happens again -- I'm doing these

22  things by phone as a convenience to all of you because I

23  have 40 lawyers in the case or more than 40, and a bunch of

24  you are from out of town.

25          This is the last -- this is the last chance.  If it

1    goes down again, then I'm doing this hearing on Friday in the

2    courtroom and we won't do anymore phone calls, everything is

3    going to be in person, just like in the old days, the old days

4    being March the 16th of 2020.

5         So let me try to reconstruct what I was saying.

6         If one concludes as I did that a donor's name isn't

7    an education record, why does the fact that disclosure of a

8    donor's name might incidentally result in being able to figure

9    out the name of the student which could be an education

10   record, why does that run afoul of FERPA?  I don't understand

11   it.  So please explain it to me.

12        MR. STEIN:  Sure, your Honor.  This is Scott Stein.

13   So under FERPA, the definition of what constitutes an

14   education record is extremely broad.  It's essentially

15   anything -- information in a school's files that is directly

16   related to a student and that is maintained by the

17   institution.

18        So if you look at the particular documents that are

19   attached --

20        THE COURT:  Just tell me what you're referring to

21   there.  Give me the citation in that part of the statute.

22   What is it?

23        MR. STEIN:  It's actually in the implementing

24   regulations, your Honor.  It's 34 --

25        THE COURT:  Give me -- 34.

1          MR. STEIN:  -- C.F.R. --

2          THE COURT:  Yep.

3          MR. STEIN:  -- 99.2.

4          THE COURT:  99.2.  Okay.  Keep going.

5          MR. STEIN:  Okay.  And so what you have here, again,

6     these are not just, you know, lists of donors.  These are

7     documents that are evaluating specific applicants.  So they're

8     no different, in a sense, than, you know, the admissions data.

9     The scores, the SATs, all of that stuff, this is all part of

10    the admissions -- the analysis of the admissions.  And all of

11    that constitutes an education record under FERPA.

12          So that's the threshold point; these are records that

13    are protected by FERPA.  And --

14          THE COURT:  I'm looking at 34 C.F.R. 99.2, which

15    reads as follows:  "The purpose of this part is to set out

16    requirements for the protection of privacy of parents and

17    students under Section 444 of the General Education Provisions

18    Act as amended," full stop.

19          That's the wrong citation.  Let's try it again.

20          MR. STEIN:  Sorry, your Honor.  Let me just pull up

21    the full set of regulations.

22          MR. HOLT:  Your Honor, this is Benjamin Holt for

23    Yale.  I may be able to help with this, if that's okay.

24          THE COURT:  Okay.  Just give me a citation.  That's

25    what I'm looking for.  That's all I'm looking for.

8

1    MR. HOLT:  Sure.  34 C.F.R. 99.3 contains definition.

2    THE COURT:  Okay.  Looking at the one for education

3 record?

4    MR. HOLT:  That's right.  They're alphabetical.

5    THE COURT:  It says, "The term means those records

6 that are directly related to a student and maintained by an

7 educational agency or institution or by a party acting for the

8 agency or institution."

9    So what you're telling me is that something that

10 discloses a donor's name in a way that might incidentally

11 disclose the identity of a student falls under that

12 definition?  That's what you're telling me, right?

13    MR. HOLT:  Your Honor, yes.  This is Mr. Holt again.

14 But if you go to the definition of personally identifiable

15 information later in that same section, it contains the

16 details of what is considered personally identifiable

17 information under FERPA and what needs to be either redacted

18 or is subject to protection.  I can run you through it, but

19 I'll let you get there.

20    THE COURT:  So it would be "(f):  Other information

21 that alone or in combination is linked or linkable to a

22 specific student that would allow a reasonable person in a

23 school community," blah, blah, blah, right?

24    MR. HOLT:  That's right, as well as "(b):  The name

25 of the student's parent or other family members."

1    THE COURT:  Okay.  That's my first question.

2    Here's my second question.  Some of what is said in

3    the response is a little bit hard for me to follow, and it has

4    to do with this coding that was done in part as a result of

5    the earlier orders that I entered.

6    I kind of -- I thought I read something in the

7    response as basically trying to tell me that the same coding

8    on the specific records -- that's used on the specific records

9    we're talking -- in connection with the specific -- let me

10   start that sentence over again -- that the same type of coding

11   that's being done in connection with the specific records

12   we're talking about now so that although plaintiffs' counsel

13   wouldn't be able to figure out the name of a specific student,

14   they'd be able to figure out -- they'd be able to do all of

15   the linkage that is -- that they need to do.

16   Did I read that right, or am I reading too much into

17   what you told me?

18   MR. HOLT:  Your Honor -- oh, go ahead.

19   MR. STEIN:  I'm sorry, your Honor.  Scott Stein.

20   You're correct, your Honor, but there's two, I don't know if

21   I'd call them exceptions, to point out.

22   As set forth in the confidentiality order, these

23   unique identifiers were created using the structured data,

24   right?  So we, the schools, have produced --

25   THE COURT:  I get it.  I get that point.

1          MR. STEIN:  Right.  But not all schools have

2    structured data going back to the beginning of the class

3    period, right?  So for Northwestern, for example --

4          THE COURT:  Are Yale and Northwestern schools that do

5    not?

6          MR. STEIN:  For admissions data, Northwestern only

7    has structured data going back to, I believe, 2008.

8          And for Yale, Ben?

9          MR. HOLT:  Yeah, Yale does have information going

10   back to the beginning of the period, the relevant period that

11   we've agreed to produce here.  And so we've --

12         THE COURT:  Okay.  Give me your point, Mr. Stein.

13         MR. STEIN:  Yeah.  So where there's no structured

14   data, right, because we had to retain a vendor who would match

15   the data, the names and information across all of the school's

16   data --

17         THE COURT:  I get all that.  Just finish your

18   sentence --

19         MR. STEIN:  Yep.  And so if there's no structured

20   data for a student, then there's no ability to create a unique

21   identifier.  There's no way to -- you know, to match names

22   other than some impossibly, you know, manual process.

23         And so in that case, there's no unique identifier,

24   but that also means there's no data to match these kinds of

25   documents back to, right?  If there's no identifier by

1  definition --

2        THE COURT:  I get it.  I get it.  Okay.  Now, my next

3  question is for plaintiffs' counsel.

4        So when I was -- when we dealt with all of the issues

5  relating to this, what I said -- and I'm not by what I'm about

6  to say intending to change anything I said before; I'm just

7  kind of giving a rough summary of it -- I basically said that

8  if it turns out after the depositions that people aren't able

9  to answer questions because of all of this coding and

10 redaction or whatever that's done, that we were going to have

11 to revisit all this, I was going to make those people appear

12 again, and there was going to have to be some further

13 disclosures dealt with at that point.

14  (Audio interruption.)

15        THE COURT:  Okay.  So somebody's about to pull the

16 plug for everybody.  This is what your kindergarten teacher

17 said.  Somebody's about to ruin it for everybody.  So you

18 can't have two devices on in one room.  That's why those

19 echoes happen.

20        I'm now going back to plaintiffs' counsel.

21        It seems to me that what you're doing, and I get why

22 you're doing it, but it seems to me what you're doing is

23 basically asking me to advance the time at which I'd make that

24 decision.

25        I'm not understanding why I need to advance it.  Why

1    can't we just do it the way we were talking about before?

2    You've got what you've got.  Yeah, there's some redacted

3    information.  You've got what you've got.  You're going to do

4    the depositions.  And if you're not able to get, you know,

5    answers to questions that allow you to understand the records

6    that you've gotten in some reasonable way during the

7    deposition, then I'll have to revisit it.  I'm going to make

8    all these people, I don't care if they're university

9    presidents or football coaches or what, appear for depositions

10   again, and more disclosures are going to have to be made.

11          Why shouldn't I just stick with what I did before?

12          MR. RAYMAR:  For a couple of reasons, your Honor.

13   First, your Honor also --

14          THE COURT:  Who is talking?

15          MR. RAYMAR:  It's Robert Raymar for the plaintiffs.

16   I'm sorry.

17          THE COURT:  Thanks.  Go ahead.

18          MR. RAYMAR:  Your Honor said that if we get documents

19   that looked like the National Security Agency got to them, we

20   could bring them to your Honor's attention.  Your Honor would

21   then rule.

22          To look at B and C exhibits, the Northwestern

23   documents literally look like NSA documents with most of the

24   important information blacked out.

25          In Exhibit E, Yale -- and I'm talking quietly because

13

1    these are all attorneys' eyes only documents, produced

2    documents where there is so much redacted PII, redacted PII,

3    that we can't make heads or tails of the documents.

4            Yet --

5            THE COURT:  You said F?

6            MR. RAYMAR:  E.  If you look at E.

7            THE COURT:  E.  Yeah, okay.  I'm there.

8            MR. RAYMAR:  Look at the first entry on page 139

9    in E.

10           THE COURT:  That's the one you quoted in the -- in

11   one of the briefs.

12           MR. RAYMAR:  Yes.  Yes.  So we want to ask witnesses

13   a question, for example, what was the conversation with this

14   donor about the limited impact of his donation?  You see the

15   size of his donation, and right next to the entry, you see how

16   it's scored.  I'm not going to put it on the record.

17           And you see at the top left, you see at the top left

18   of that same page how different donations --

19           THE COURT:  Right.

20           MR. RAYMAR:  -- yield --

21           THE COURT:  I get it.

22           MR. RAYMAR:  -- different scores.

23           THE COURT:  Different grades, right?

24           MR. RAYMAR:  Different grades.

25           And we want to know, for example, was this donor told

1    the grade, and we don't know the weight of that grade on

2    admissions.  We don't know whether that donor later made

3    another pledge or a larger donation in order to get a higher

4    grade, and we don't know --

5            THE COURT:  Okay.  So I get -- I get that you -- I

6    get that you're not going to be able to ask what I'll call in

7    detail about specific entries on here, on this and similar

8    records, because of the nature of the redactions that are

9    done, but I guess what I'm wondering is that at least for this

10   initial set of depositions here, why do you need to be able to

11   ask about them in detail?  Why can't you ask about them in --

12   conceptually is the wrong word, but in terms of policies,

13   practices and so on?  In other words, somebody who has -- who

14   has a relative or a good buddy or whatever that gives a

15   donation of X amount, what's done with -- how does that fit

16   into the whole scoring system and how does that affect

17   their -- how does that affect their -- the likelihood of

18   admission of the student that's involved?

19           I mean, you might get an answer that, well, this is

20   what it is.  They get extra points or they get 30 extra

21   points.  Or -- and they may say it depends.  And if they say

22   something along the lines of it depends, then when you come

23   back to me -- that's kind of what I was contemplating when I

24   made the earlier ruling -- when you come back to me, I'm going

25   to say, okay, here it is, Northwestern, or here it is, Yale,

1    now you're going to have to cough this up because I got people

2    who can't answer questions and I got a plaintiff that can't

3    figure out something that's critical to their case and it's

4    not going to work that way.

5            So, again, my question is why -- we talked about

6    this, and I basically said that if we got to the point -- I

7    get that you've got some documents here with a lot of

8    redactions in them.  You got to the point that you couldn't

9    get, you know, the information you need in depositions and

10   we're going to have to revisit it.  I'm trying to figure out

11   why I should change that.

12           MR. RAYMAR:  Well, further, your Honor, we have to

13   prove a case, and this data goes to the --

14           THE COURT:  Yeah, the trial date isn't in a week and

15   a half, okay?  Just to be clear about it.  The trial date is

16   not in a week and a half.

17           MR. RAYMAR:  Well, we have a lot of depositions to

18   take, and these data go to three of the four issues in our

19   case.  They go to wealth favoritism.  They go to the statute

20   of limitations.  They go to revenue maximization, which goes

21   to per se versus rule of reason.  And --

22           THE COURT:  Let me ask you a different -- let me ask

23   you a different question.

24           MR. RAYMAR:  Okay.

25           THE COURT:  Is it just these two -- is it just these

1    two particular schools that did these type of redactions?

2            MR. RAYMAR:  No.

3            THE COURT:  There were a lot of others?

4            MR. RAYMAR:  Yes.

5            THE COURT:  Why am I not getting all these motions at

6    once?

7            MR. RAYMAR:  Because these were the first two.

8    There's rolling admissions, we -- discovery, and we even got

9    new productions this weekend.  And so, for example, many

10   documents --

11           THE COURT:  Okay.  You've answered my question.  I

12   have other questions.  Thank you.  I have a bench trial that's

13   supposed to start five minutes ago, okay?

14           MR. RAYMAR:  I'm sorry.

15           THE COURT:  I need to go back to counsel for

16   Northwestern and Yale here for a second.

17           Okay.  So, look, we can predict what's going to

18   happen here.  Somebody's going to get in a deposition -- I'm

19   still looking at Exhibit B, I guess, which is, you know, we're

20   going to ask about the first entry here, you're going to say,

21   what happened with that person?  And the deponent is going to

22   say, how the heck am I supposed to know?  I can't even tell

23   who it was.  And then we're going to be right back where we

24   are now with a plaintiff not being able to get -- plaintiffs

25   not being able to get information that basically I more or

1   less already concluded that they need.

2            So why are we going through this exercise?  Why don't

3   we just jump ahead and get to the next step so that people

4   aren't spending the next three months basically in a big

5   wheel-spinning exercise?

6            That's my question.  What's the answer?

7            MR. STEIN:  Your Honor, I don't think it is a

8   wheel-spinning exercise, and what your Honor described as, you

9   know, why they didn't just go forward with the depositions is

10  frankly where I thought we ended up in February.

11           Plaintiffs don't need to boil the ocean to get what

12  they want.  As your Honor said, you know, the question on the

13  table is did the -- under your Honor's ruling is did the

14  universities consider the financial circumstances of students

15  or their families.

16           The answer to that you can see in various documents

17  based on your Honor's ruling.  And the witnesses, as we said,

18  will be able to address exactly the kinds of things your Honor

19  asked about:  What were the policies, what were the practices,

20  how did this work, what did these rankings mean, how did that

21  play into admissions.  All of that.

22           And if the plaintiffs can -- yeah.  Okay.

23           THE COURT:  Thanks.  The motion is denied without

24  prejudice.

25           I think the -- I don't see a -- I acknowledge that we

1   may have to revisit all of this stuff down the road a bit.
2   And I don't mean way down the road; I mean, you know, down the
3   road in a distance where you can still see it with your eyes.
4          We may have to visit this down the road a bit, but I
5   think -- the plan at that point was that we have this -- we
6   bypass the dispute, in a sense, with structured data in the
7   way that's been described and with the other data that are
8   being produced and redacted formally -- I guess I wasn't
9   specifically aware that the latter was going to happen, and
10  that if what happened is that in the first round or rounds of
11  depositions the plaintiffs weren't able to get -- are not able
12  to get significant information that they need in order to
13  pursue their claims, then we're going to have to revisit
14  everything.
15         The reason I kicked that can down the road, which is
16  more or less what I did, had to do with the arguably
17  cumbersome nature of the procedures that are required under
18  FERPA for disclosure of, quote/unquote, education records and
19  personally identifiable information.  And I thought it made
20  more sense to not do that right now.  I'm not persuaded that
21  that should change.
22         So the motion is denied without prejudice.
23         I don't want to get another two, six, eight, or 14
24  motions like this now.  You're going to do it the way I said,
25  and you'll come back to me at some point in time when you've

1 | done the depositions and you aren't able to get information
2 | that you think you need and can show me that you need in order
3 | to try to establish the claims.

4 |      Anything else that anybody needs to bring up?

5 |      MR. RAYMAR:  Your Honor, can I make an additional
6 | point?  It's Raymar.

7 |      THE COURT:  Is this the motion to reconsider now?
8 | Just asking.

9 |      MR. RAYMAR:  No.

10 |      THE COURT:  Okay.  Go ahead.

11 |      MR. RAYMAR:  Also involved in what your Honor had to
12 | say is the assumption that for all of the donor records, we
13 | have the unique identification codes for the students, and so
14 | we could look to the structured data.  In fact, for none of
15 | Exhibit B and --

16 |      THE COURT:  I get that.  I get that.  I get that, and
17 | I get that I didn't understand that at the time.  And so maybe
18 | it was explained to me and I didn't understand it, or maybe it
19 | wasn't explained to me, or maybe it wasn't explained to me
20 | well enough.  I get all of that.  That doesn't persuade me
21 | that I should change the framework, so to speak.

22 |      So that's my answer.  All right?

23 |      MR. RAYMAR:  Thank you.

24 |      THE COURT:  Take care.  Everybody have a good day.

25 |   (Which were all the proceedings had in the above-entitled
     cause on the day and date aforesaid.)

1       I certify that the foregoing is a correct transcript from
the record of proceedings in the above-entitled matter.
2
/s/ *Carolyn R. Cox, CSR, RPR, F/CRR*_____ June 2, 2023
3       Official Court Reporter
United States District Court
4       Northern District of Illinois
Eastern Division
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25