**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ANDREW CORZO, et al. individually and on behalf of all others similarly situated, *Plaintiffs*, v. BROWN UNIVERSITY, et al., *Defendants*. | Case No. 1:22-cv-00125 Hon. Matthew F. Kennelly |

<u>**MEMORANDUM OF LAW IN SUPPORT OF CERTAIN DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**</u>

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 3

    A.    Plaintiffs Have Already Obtained Extensive Discovery Relevant To Their So-Called "Wealth Favoritism" Theory ............................................................ 3

    B.    Plaintiffs Baselessly Target Individual Students And Their Families .................... 4

ARGUMENT ...................................................................................................................... 5

I.    ANY MARGINAL PROBATIVE VALUE OF THIS REQUESTED DISCOVERY DOES NOT JUSTIFY INVADING FEDERALLY PROTECTED PRIVACY RIGHTS ............................... 5

    A.    Plaintiffs Must Make A Heightened Showing Of Genuine Need To Obtain Non-Anonymized FERPA-Protected Records ........................................................ 6

    B.    Plaintiffs Do Not Need De-Anonymized Educational Records ............................ 8

        1.    Plaintiffs Have What They Need To Try Their Case Without The Names Of Specific Students ........................................................................ 8

        2.    Plaintiffs Have Provided No Reason To Believe That Any Of These Individual Students Was Not Qualified For Admission ................ 10

        3.    Plaintiffs Have Provided No Reason For Needing FERPA-Protected Information From Any Defendant ............................................ 12

II.    THE REQUESTED INFORMATION REGARDING THESE STUDENTS' PARENTS—INCLUDING ALL COMMUNICATIONS WITH THOSE PARENTS—IS OVERBROAD AND DISPROPORTIONATE ............................................................................................ 14

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Alig-Mielcarek v. Jackson*, 286 F.R.D. 521 (N.D. Ga. 2012)...........................................................7

*Banks v. Baraboo School District*, 2020 WL 5751415 (W.D. Wis. Sept. 25, 2020).................6, 8

*Fox v. Lake Erie College of Osteopathic Medicine, Inc.*, 2020 WL 7054554 (M.D. Fla. Dec. 2, 2020).....................................................................................................................7

*Harris v. Kashi Sales, LLC*, 609 F. Supp. 3d 633 (N.D. Ill. 2022)..................................................8

*Henman v. Indiana Harbor Belt Railroad Co.*, 2015 WL 6449693 (N.D. Ind. Oct. 22, 2015) .............................................................................................................................12

*Little v. JB Pritzker for Governor*, 2020 WL 1939358 (N.D. Ill. Apr. 22, 2020).........................12

*Motorola, Inc. v. Lemko Corp.*, 2010 WL 4781844 (N.D. Ill. Nov. 17, 2010).............................15

*N.D. ex rel. Dorman v. Golden*, 2014 WL 1764714 (M.D. Ala. May 1, 2014).............................7

*Range v. Brubaker*, 2008 WL 5248983 (N.D. Ind. Dec. 16, 2008) ................................................6

*Roe by & through Slagle v. Grossmont Union High School District*, 2020 WL 3268612 (S.D. Cal. June 16, 2020)......................................................................................7

*Slaven v. Great Am. Insurance Co.*, 2014 WL 4470723 (N.D. Ill. Sept. 11, 2014) ...............12, 13

*Tillman v. Gwinnett County School District*, 2005 WL 8154776 (N.D. Ga. Apr. 18, 2005) ..............................................................................................................................7, 8

*United States v. Brown University*, 5 F.3d 658 (3d Cir. 1993)......................................................13

*Wanko v. Board of Trustees of Indiana University,* 2018 WL 3631579 (S.D. Ind. July 30, 2018).........................................................................................................6, 7, 8, 10

*Wanko v. Board of Trustees of Indiana University*, 927 F.3d 966 (7th Cir. 2019)....................6, 7

## STATUTES, RULES, AND REGULATIONS

34 C.F.R.
§ 99.2...........................................................................................................................................6
§ 99.31(b)(1) ...........................................................................................................................3, 9

20 U.S.C. § 1232g...........................................................................................................................6

Fed. R. Civ. P. 26(b)(2)(C) ...........................................................................................................10

Local Rule 37.2 ................................................................................................................12, 13

Cornell, Dartmouth, Georgetown, Northwestern, Notre Dame, Penn, Rice, and Vanderbilt ("Defendants") respectfully submit this Memorandum of Law, together with a Declaration of David Gringer dated October 3, 2023 ("Gringer Decl.") and the exhibits attached thereto, in opposition to Plaintiffs' Motion to Compel, ECF No. 443.

## INTRODUCTION

Plaintiffs' discovery efforts are careening out of control. The reason is clear: discovery is proving that there was no illegal agreement to suppress need-based financial aid awards. Instead, the evidence shows that the so-called "Consensus Methodology" was a set of suggested practices, which many schools in the 568 Group did not follow mostly or at all. The evidence also shows widespread variation in the calculation of Expected Family Contributions and financial aid packaging, and correspondingly no restraints on what, it turns out, was vigorous competition. Plaintiffs have therefore focused myopically on an issue that is completely irrelevant to the merits of their antitrust claim—purported "wealth favoritism" in admissions. That focus is confirmed by the depositions Plaintiffs have taken and their submissions to this Court, all of which relate almost exclusively to this topic. Plaintiffs' goal with respect to this motion in particular, but also more broadly, is as obvious as it is inappropriate: to embarrass students and donors and pressure Defendants into settling.

Plaintiffs' motion to compel is the latest salvo in this effort. They demand production of federally protected Personally Identifiable Information ("PII") of hundreds of students whom they assert are related to donors, as well as sensitive communications with university donors, regardless of subject matter. They base this request solely on a purported search of the Internet to identify students who may (or may not) be children of donors. Their expressed aim is to suggest to the world that these students did not earn their places at the Defendant schools on the merits.

1

Their motion accomplishes nothing other than to harass non-parties, many of whom are still students. The PII that Plaintiffs demand is protected by the Family Educational Rights and Privacy Act ("FERPA"), and Plaintiffs cannot meet the heightened showing that FERPA requires. Nor is the personal information and communications with donors that Plaintiffs seek proportionate to the needs of this case. Plaintiffs' "wealth favoritism" theory is relevant, if at all, only to the application of the "Section 568" statutory exemption defense; it plainly has no bearing on application of the *per se* rule. In any event, Plaintiffs already have ample means available through discovery to pursue either theory, including: admissions data with unique identifiers ("UID") assigned to each student; documents from admissions departments responsive to search terms, including many of the very donor names that Plaintiffs use to support their motion; and records of any "development-related" communications with university admissions officers about individual applicants, into which Defendants have also inserted available UIDs for many students. Plaintiffs can readily match the available UIDs of students mentioned in those documents with the application records to see each applicant's academic qualifications. They can then make whatever arguments they wish about so-called "wealth-favoritism"—if the evidence supports them— *without the need for personally identifiable information*, which even Plaintiffs do not deny will be used only in an effort to embarrass students.

Plaintiffs' request invades the target students' federally recognized privacy interests to lay the groundwork for embarrassing, public litigation of their qualifications for admission. It also disrupts Defendants' relationships with their students and alumni. The redundancy and utter lack of foundation suggests that harassment is precisely the point of this fishing expedition. Defendants respectfully request that the Court deny the motion to compel.

2

## BACKGROUND

### A.  Plaintiffs Have Already Obtained Extensive Discovery Relevant To Their So-Called "Wealth Favoritism" Theory

Plaintiffs have served 99 requests for production and 45 interrogatories and taken 25 depositions, with 10 more scheduled and 22 more noticed but not yet scheduled.  To the extent each Defendant maintained it, Defendants have produced structured data, including spreadsheets with *every applicant's* admissions data from 1998 to the present—25 years' worth of admissions data for hundreds of thousands of applicants.  To protect applicants' privacy, as FERPA and this Court's orders permit, their names have been replaced with anonymized unique identifying codes ("UIDs").  *See* Amended Confidentiality Order § 8(d)(i), ECF No. 416-1 ("Confidentiality Order"); 34 C.F.R. §99.31(b)(1).  Defendants have also produced over a million documents that hit on negotiated search terms (and reviewed millions more), many of which were intended to identify documents related to purported preferences for applicants related to donors.

Those search terms are broad and overinclusive, but Defendants agreed to apply them.  The terms were aimed at finding any documents suggesting an applicant or an applicant's family was flagged by the Dean or the Development or President's offices; that relate in any way to wealth (including almost 50 synonyms for "rich," from "tycoon" to "mcduck"); or that mention individuals with an endowed chair or fund, legacies who made a donation or fundraised in some way, and applicants for whom a donor wrote a letter of recommendation.  *See* Gringer Decl. ¶ 2. Defendants already produced responsive documents that contained any one of dozens of mutually negotiated words related to wealth or donations together with any one of a long list of specific parent names—including, for almost all Defendants, all or a substantial majority of the names on the lists that Plaintiffs now include in their motion.  *Id.* ¶¶ 2-10.

3

Where produced documents reference a donor and applicant, Defendants substituted the same UID that appears in the admissions data that they also produced. *See* Confidentiality Order §§ 8(a)(4), 8(c). The UIDs are consistent across Defendants, so one student whose name appears in more than one Defendant's discovery materials has the same UID when his or her name appears in any school's productions or structured data. Defendants have also provided or agreed to provide UIDs for thousands of additional documents produced in discovery on which students' names were previously redacted, as permitted under the Confidentiality Order. *See* Joint Status Report at 1-2, 8, ECF No. 431. Plaintiffs can freely find the academic profile of any of these thousands of students in the admissions data using the student's UID, and then compare their academic qualifications to others in their class. Finally, just last month, Defendants accepted Plaintiffs' suggestion to provide their deponents with unredacted versions of documents and a "glossary" that matches student names with their UIDs so that the anonymization would not hinder deponents from testifying about particular students or their families, if the deponent knows anything about those individuals. *See* Joint Status Report at 1-2, ECF No. 431.

## B. Plaintiffs Baselessly Target Individual Students And Their Families

On August 8, 2023, Plaintiffs emailed Vanderbilt seeking admissions files for 18 specifically named applicants. Gringer Decl. Ex. A. Plaintiffs also sought all documents "concerning any donations by each student's parents [to Defendants] (or their capacity to make such donations), including any correspondence with those parents." *Id.* Plaintiffs requested that Vanderbilt provide FERPA notices to these students and produce their non-anonymized personal information, and further stated that they reserved their right to seek the same information for additional students. *Id.* When asked why they needed this private information, Plaintiffs explained that they wanted to paint a more "vivid" picture for the jury. *Id.*; *see also* Joint Status Report at 7 n.10 and Ex. B, ECF No. 431.

Plaintiffs then expanded their request, sending form e-mails to almost every Defendant. Gringer Decl. Exs. A-H. Defendant the University of Notre Dame received Plaintiffs' email hours after the close of business on September 20, yet Plaintiffs demanded a response within two business days. Gringer Decl. Ex. H. Counsel timely responded, explaining that they required additional time to evaluate Plaintiffs' proposal and to consult with their client, and requesting a meet and confer during the week of September 25. *Id.* Plaintiffs filed their motion without responding, falsely stating that they complied with Rule 37.2 by meeting and conferring with Notre Dame before filing.

Schools that were given more notice responded to Plaintiffs, including by asking the basis for their request as to each student or offering to meet and confer about the issue. *Id.* Plaintiffs provided little or nothing by way of an answer. For example, in response to Penn, Plaintiffs blankly asserted that they "have reason to believe from public sources that the families made significant contributions and that their children were admitted to Penn," and explained that they wanted to "test whether the academic qualifications of the children were consistent with the rest of the class admitted with them." *Id.* On September 25, 2023, Plaintiffs moved to compel the production of the requested documents. Pls. Memo. In Supp. of Mot. to Compel, ECF No. 443-1 ("Mot.").

**ARGUMENT**

**I.      Any Marginal Probative Value Of This Requested Discovery Does Not Justify Invading Federally Protected Privacy Rights**

Because students have a heightened privacy interest in their educational records and personal information, Plaintiffs must make a heightened showing of need to secure personally identifiable data. They cannot. Defendants have already gone to great lengths to provide Plaintiffs with the information they need to analyze admissions and financial aid decisions, while honoring Defendants' commitment to maintain the privacy of student records, consistent with FERPA.

There is no reason to believe the unmasking of students' education records will enable Plaintiffs to prove their case any more than the UID-coded information Defendants have already produced. If evidence exists linking these students' admissions decisions to actual or potential donations, it is in the documents already produced. Plaintiffs can use those documents to connect students (by UID) to their academic credentials and related communications; knowing the students' names will do nothing to advance Plaintiffs' cause. If the documents and structured data produced to date do not reflect a link between these students' admissions decisions and discussion of actual or potential donations, then there is little reason to believe the requested information will be probative of anything at all. The fact that extensive discovery has yielded no support for Plaintiffs' theories is hardly grounds to open the door to far more intrusive discovery. Indeed, quite the opposite.

A. **Plaintiffs Must Make A Heightened Showing Of Genuine Need To Obtain Non-Anonymized FERPA-Protected Records**

Discovery under the Federal Rules requires courts to "balance the privacy interests in the information asserted by one party with the probative value of that information to the other party." *Range v. Brubaker*, 2008 WL 5248983, at *2 (N.D. Ind. Dec. 16, 2008). That burden is significantly heavier for protected education records. FERPA lays out a detailed regime governing disclosure of such records, *see* 20 U.S.C. § 1232g, supplemented by detailed regulations passed "for the protection of privacy of parents and students," 34 C.F.R. § 99.2. Courts in this circuit agree that the "Congressional policy expressed in [FERPA] places a significantly heavier burden on a party seeking access to student records to justify disclosure than exists with respect to discovery of other kinds of information, such as business records." *Wanko v. Bd. of Trs. of Ind. Univ.*, 2018 WL 3631579, at *4 (S.D. Ind. July 30, 2018), *aff'd* 927 F.3d 966 (7th Cir. 2019); *see also Banks v. Baraboo Sch. Dist.*, 2020 WL 5751415, at *4, *7 (W.D. Wis. Sept. 25, 2020) (citing significantly heavier burden for discovery of FERPA-protected material, vastly narrowing requests

6

to only those with specific indicia of relevance, and requiring that most data be anonymized). Courts across the country have likewise recognized this heightened standard and refused discovery requests seeking education records that the requesting party did not clearly need.[1]

When education records are produced, courts routinely require that they be anonymized. In *Wanko*, for example, the plaintiff sued her dental school for race discrimination and the defendant provided grades and demographic information for the other students in anonymized form. 2018 WL 3631579, at *3. The court denied the plaintiff's motion to compel production of corresponding names, reasoning that "[h]aving student names will not provide Wanko with any additional information that she is not already privy to, but would infringe on student privacy under FERPA." *Id.* at *4. The Seventh Circuit affirmed, expressly upholding the district court's denial of the motion to compel. *See Wanko*, 927 F.3d at 969; *see also, e.g.*, *Tillman v. Gwinnett Cty. Sch. Dist.*, 2005 WL 8154776 at *7 (N.D. Ga. 2005) (finding "no compelling reason" plaintiff needed "the specific identities of the students" at issue and ordering production of relevant information "but not the student's name").

Plaintiffs do not even try to satisfy this higher standard. They seem to think that the Court can disregard the need for a higher showing because they have "only" asked the Court to order defendants to notify hundreds of donors of Plaintiffs' request for their relatives' admissions records, for the purposes of proving that their relatives were not qualified for admission. That is wrong. Students are unlikely to respond favorably to Plaintiffs' attempt to argue publicly that their

---

[1] *See, e.g.*, *Alig-Mielcarek v. Jackson*, 286 F.R.D. 521, 527 (N.D. Ga. 2012); *Roe by & through Slagle v. Grossmont Union High Sch. Dist.*, 2020 WL 3268612, at *2 (S.D. Cal. June 16, 2020); *N.D. ex rel. Dorman v. Golden*, 2014 WL 1764714, at *4 (M.D. Ala. May 1, 2014); *Fox v. Lake Erie Coll. of Osteopathic Med., Inc.*, 2020 WL 7054554, at *2 (M.D. Fla. Dec. 2, 2020).

admission to college was unearned. The Court is therefore likely to be inundated with scores of students (rightly) objecting to the unnecessary release of their confidential information.

Finally, Plaintiffs contend that the "caselaw and this Court's FERPA Order" mandates that the Court require notice and wait for students to object before addressing FERPA's privacy implications. Mot. 12. They cite no case to support this approach, the FERPA Order does not prohibit Defendants from lodging a valid discovery objection at this time. *Cf.* Order on FERPA ¶ 5, ECF No. 231 (reserving Defendants' right to object). Plaintiffs also suggest that whether to unmask students' names is an evidentiary issue for trial and not a discovery issue. Mot. 8. Both of Plaintiffs' ripeness arguments are contradicted by case law holding that a school should not produce de-anonymized student records absent genuine need by the propounding party. *See Wanko*, 2018 WL 3631579, at *3-4; *Banks*, 2020 WL 5751415, at *7-8; *Tillman*, 2005 WL 8154776 at *7.[2]

### B. Plaintiffs Do Not Need De-Anonymized Educational Records

#### 1. Plaintiffs Have What They Need To Try Their Case Without The Names Of Specific Students

Despite their assertion that they are "well-prepared to satisfy" their heavy burden under FERPA, Mot. 11, Plaintiffs filed their motion without doing so.

The parties have carefully negotiated detailed discovery procedures that both protect students' privacy and provide Plaintiffs with more than enough information to test their litigation theories. Defendants have produced years of structured data with the relevant data points for students, anonymized by UID, including the data used to evaluate an application's merits and any tags that might be applied for students of interest to the university's development, advancement,

---

[2] If Plaintiffs intended to contest this standard, they have waived the argument by failing to develop it. *See Harris v. Kashi Sales, LLC*, 609 F. Supp. 3d 633, 642 (N.D. Ill. 2022).

or president's offices (if such tags exist). Defendants also produced responsive documents from admissions custodians that mention many of the donors on Plaintiffs' lists together with any one of 47 search terms related to donations or wealth, and a whole range of other responsive documents hitting on other related search terms. As FERPA directs, and consistent with this Court's orders, Defendants added UIDs in place of student names for any document that referenced an applicant and a donation amount or donor name, as well as in other documents. *See* 34 C.F.R. §99.31(b)(1); *see also* Confidentiality Order §§ 8(a)(4), 8(c); Joint Status Report at 1-2, 8, ECF No. 431.

The practical effect of all of this is that if any student whose records Plaintiffs seek was flagged as a development interest in available structured data or discussed in any correspondence between or among admissions and development staff or donors, Plaintiffs already have that information. It is tied to the student by specific UID, and Plaintiffs can match the UID from a document that mentions an applicant and a donor or donation with the corresponding admissions data of the student to determine if they think the student is "qualified" for admission, all without threatening students' federally protected privacy interests or accusing them of being unqualified for admission. The only students on Plaintiffs' lists whom they cannot match to academic credentials using a UID are those who were never flagged as development interests in available structured data nor were discussed in correspondence or other documents in connection with donors or donations—in which case, the odds that de-anonymized discovery will produce probative evidence that is not duplicative or cumulative are vanishingly small.

Plaintiffs also claim that having student names would "allow[] for more thorough questioning" during depositions and "give[] the deponent less room to provide misleading answers." Mot. 6. But Plaintiffs do not identify a single question they have been unable to ask any defense witness nor a single misleading answer in any of the dozens of depositions that have

9

occurred. What Plaintiffs really mean is that they do not like the answers they have received. But FERPA does not have a "case not going well" exception. Moreover, at Plaintiffs' insistence, just last month the parties reached a global agreement to use UID glossaries to address this concern. *See supra* at 4. Plaintiffs can thus question witnesses just as if they had student names. Plaintiffs make no showing that the glossary agreement, which they themselves demanded, is insufficient.

Replacing student names with UIDs was a burdensome and expensive process. But, as was the case in *Wanko*, that process both allowed Plaintiffs to obtain the information they need to try to make their case and allowed Defendants to remain faithful to their obligation to protect their students' privacy. Plaintiffs have "ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(ii). They do not need to force Defendants to contact hundreds of students and tell them that whether they were qualified for admission to college will be the subject of public litigation, and that their high school grades, SAT scores, admissions essays, and other personal material will be inspected and broadcast by Plaintiffs' lawyers. That invasion of privacy, potential embarrassment, and burden is entirely unwarranted and reveals nothing to support Plaintiffs' price-fixing theory. Because Plaintiffs have what they need to prove their case without student names, they have not carried their "significant[]" and "heav[y] burden … to justify disclosure," and the motion to compel should be denied. *Wanko*, 2018 WL 3631579, at *4.

## 2. Plaintiffs Have Provided No Reason To Believe That Any Of These Individual Students Was Not Qualified For Admission

Plaintiffs seem to contend that they should be able to supplement the copious information they already have with de-anonymized information about students they speculate might potentially be unqualified for admission. This makes no sense, and in any event, rests on the false premise that Plaintiffs actually have reason to believe that these students were unqualified. Plaintiffs have provided no such justification, even when asked for this support both leading up to and during

their meet and confers with Plaintiffs (when Plaintiffs actually responded to Defendants' requests for a meet and confer). *See* Gringer Decl. Ex. E. They instead stated, for example, only that they "have reason to believe from public sources that the families made significant contributions and that their children were admitted." *Id.* Such donations, even if they occurred, do not support Plaintiffs' allegations regarding price-fixing the costs of attendance. In other words, Plaintiffs have nothing.

Plaintiffs' brief is no more forthcoming. Plaintiffs rely on unspecified publicly available information, which they assert "has often included the amount and timing of the family's donation, as well as information which is suggestive of the student's academic qualifications or lack thereof." Mot. 4. But they do not actually provide that purported factual support as to any student.

Plaintiffs' failure to make any particularized showing is particularly telling given what Defendants have already produced. As mentioned above, most Defendants have already produced responsive documents from their Admissions custodians and shared Admissions files responsive to search terms that include the names of a substantial majority of the parents of *these very students* together with any of 47 search terms related to donations or wealth. *See supra* at 3. If those documents also mentioned applicants, they often included the students' UIDs (and if they did not, Defendants agreed to add UIDs last month at Plaintiff's request). *See* Joint Status Report at 1-2, ECF No. 431. Yet Plaintiffs still can point to nothing suggesting that any of the students benefited from a purported relationship to a donor, other than the mere fact of their admission.

Plaintiffs have not explained why they need to unmask these students' education records. As Plaintiffs themselves put it, they want only to tie names to admissions files to paint a more "vivid" picture for the jury by using names rather than UIDs. In other words, they wish to publicly embarrass the people on their lists, many of whom are still undergraduate students. That is not a

11

litigation-related need. These requests reflect a mere "unsubstantiated desire" for information about non-party students that is not "calculated to lead to the discovery of admissible evidence, and is likely to invade [their] right to privacy." *Henman v. Indiana Harbor Belt R. Co.*, 2015 WL 6449693, at *2-*3 (N.D. Ind. Oct. 22, 2015). They should be rejected.

### 3. Plaintiffs Have Provided No Reason For Needing FERPA-Protected Information From Any Defendant

The above is sufficient to deny Plaintiffs' motion to compel as to all Defendants. But even if it were not, the circumstances of each further confirms that the motion should be denied.

First, as to Notre Dame, Cornell, Rice, and Georgetown, the motion should be denied for failure to comply with Local Rule 37.2. *See Little v. JB Pritzker for Governor*, 2020 WL 1939358, at *7 (N.D. Ill. Apr. 22, 2020); L.R. 37.2 (providing the court "shall … refuse to hear" motions that do not comply with the rule). Plaintiffs' certification of compliance with Rule 37.2 admits that certain unnamed Defendants sought conferences and that Plaintiffs filed their motion before they could occur, but nevertheless claims that Plaintiffs satisfied their obligation to meet and confer before filing. *See* Pls.' Statement of Compliance ¶ 5, ECF No. 443-2. They plainly did not. To curtail delay and expense, Rule 37.2 requires a party to consult "in person or by telephone" and make "good faith attempts to resolve differences" *before* filing a discovery motion. L.R. 37.2. Emails "are not enough." *Slaven v. Great Am. Ins. Co.*, 2014 WL 4470723, at *2 (N.D. Ill. Sept. 11, 2014). Plaintiffs first contacted Notre Dame via email less than 48 hours before the arbitrary deadline they set for a response, then ignored Notre Dame's counsel's request for time to consult with their client and for an opportunity to meet and confer, responding via email only after their motion was on file. As to Cornell and Rice, while Plaintiffs agreed to a September 26 meet and confer, they nevertheless proceeded to file their motion on the evening of the day prior. *See* Gringer Decl. Ex. G; *see also* Mot at 12. And Plaintiffs never responded to Georgetown's request

12

to meet and confer. *See* Gringer Decl. Ex. B. These facts alone are grounds to deny the motion as to these Defendants. *See* L.R. 37.2; *Slaven*, 2014 WL 4470723, at *2.

Second, Dartmouth, Northwestern, and Notre Dame are not asserting a defense under the 568 exemption. Each school has produced ample document discovery as discussed above, and each has produced former Presidents and current and former Deans of Admission or Enrollment for depositions. There is no reason why Plaintiffs need to take further and more invasive discovery from these Defendants about their eligibility for a statutory exemption defense that they are not even asserting. Plaintiffs' passing suggestion that this information is also relevant to whether Defendants acted with an altruistic purpose, citing *United States v. Brown University*, 5 F.3d 658 (3d Cir. 1993), is meritless. *See* Mot. 4. *Brown* concerned the "Overlap Agreement," whereby schools agreed on financial aid awards to specific students. 5 F.3d at 662-663. In rejecting *per se* condemnation of that agreement, the Third Circuit noted the school's "alleged pure altruistic motive and alleged absence of a revenue maximizing purpose." *Id.* at 672. But the relevant issue was the narrow motive for those defendants' participation *in the Overlap group*. The Third Circuit did not endorse a free-ranging inquiry into whether the defendant schools were, in the abstract, "altruistic." *Id.* The corollary inquiry here would be whether Defendants' participation in the 568 Group was informed by an "altruistic motive and ... the absence of a revenue maximizing purpose." *See id.* Plaintiffs do not explain how these purported admission preferences would have any bearing on Defendants' motives for participating in the 568 Group, nor do they explain why receiving donations (often earmarked for financial aid) is inconsistent with an altruistic motivation.

Third, discovery has confirmed that Penn, which does assert the 568 exemption as a defense, does not give preferential treatment to applicants related to donors. Former Penn Vice Dean and Interim Dean of Admissions John McLaughlin testified that, of the "[m]ore than 10,000"

applications he reviewed over more than ten years, "[z]ero" unqualified applicants were admitted because of an actual or potential donation from a relative. Gringer Decl. Ex. I (McLaughlin Dep. Tr. 232:22-233:14). In fact, he testified that to his knowledge no one at Penn even *evaluated* an applicant's or applicant's family's financial circumstances for potential donations when making an admissions decision. *Id.* at 153:4-9. Elaine Varas, Senior University Director of Financial Aid, similarly testified that "it does not matter what a donor is giving" for admissions purposes. Gringer Decl. Ex. J (Varas Dep. Tr. 290:3-9). Plaintiffs concede their failure of proof but say such evidence will materialize one day. On that day, Plaintiffs can perhaps revisit their motion.

## II. The Requested Information Regarding These Students' Parents—Including All Communications With Those Parents—Is Overbroad And Disproportionate

Plaintiffs have not identified a valid need for more discovery than they already have. They do not need any documents "located in the Admissions, President's or Advancement Offices concerning any donations by each student's parents (or their capacity to make such donations), including any correspondence with those parents"—much less *all* such documents. Mot. 5.

To reiterate, Plaintiffs have *already obtained* documents from Defendants' admissions offices that are responsive to search strings with many of these parents' names and a long list of terms indicating that the document might relate to donations or wealth. *See supra* at 3. No matter how many times Plaintiffs assert that the request is "narrow and targeted," *see* Mot. 2, 7, 11, the fact remains that Plaintiffs have no basis to expand this already-expansive production even further.

First, any Admissions Office documents that have not already been produced either did not hit on any of the many negotiated search terms or were not responsive to the discovery requests. There is no reason to think those documents are relevant.

Second, Plaintiffs seek documents from the President's and Advancement Offices. But the Court has already recognized that expanding discovery into those offices is not appropriate without

14

some specific basis to suggest it is necessary. *See* Gringer Decl. Ex. K (Feb. 8, 2023, H'g Tr. 54:14-55:3). Plaintiffs have made no such showing. And there is none. At Penn, for example, the Admissions Office alone, not the President's Office and not the Development Office, decides who is admitted and why. *See, e.g.*, Gringer Decl. Ex. I (McLaughlin Dep. 164:12-165:1).[3]

Finally, Plaintiffs' unlimited request for "any correspondence," regardless of timing or subject matter, is particularly overbroad and disproportionate. *See, e.g.*, *Motorola, Inc. v. Lemko Corp.*, 2010 WL 4781844, at *3 (N.D. Ill. Nov. 17, 2010) ("request for all e-mails and other documents exchanged between Motorola engineers" was "overly broad"). Defendants may communicate with their students' parents for many different reasons. Plaintiffs have offered no reason to think *all* communications with these parents will be probative of their case.

Plaintiffs are not entitled to a freewheeling investigation of every aspect of Defendants' relationships with their donors—many of whose generosity ensures that Defendants can afford to provide financial aid in the first place. If there is a reason to think this material will support their case, Plaintiffs should identify it. Absent such reasons, this fishing expedition would serve only to strain Defendants' relationships with their donors and potentially reveal sensitive financial information. Indeed, that seems to be precisely the aim.

---

[3] And in those areas where there is some reason to believe that additional discovery from the Advancement or President's offices may be warranted, the Court can order (and in one instance, has ordered) limited discovery into relevant materials. *See, e.g.*, Order on Pls.' Mot. to Compel, ECF No. 437 (directing additional discovery from Georgetown's President's and Advancement offices). There is no reason for Plaintiffs' additional across-the-board discovery requested here.

Dated: October 4, 2023

By: */s/ Norman Armstrong*
Norman Armstrong
Christopher C. Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
Tel.: 202-626-8979
narmstrong@kslaw.com
cyook@kslaw.com

Emily T. Chen
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel.: 212-556-2224
echen@kslaw.com

Zachary T. Fardon
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
Tel.: 312-764-6960
zfardon@kslaw.com

*Counsel for Defendants Cornell University and William Marsh Rice University*

By: */s/ Britt M. Miller*
Britt M. Miller
Daniel T. Fenske
Megan E. Stride
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel.: 312-783-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com
mstride@mayerbrown.com

*Counsel for Defendant Georgetown University*

By: */s/ Robert A. Van Kirk*
Robert A. Van Kirk
Jonathan B. Pitt
Sarah F. Kirkpatrick
Matthew D. Heins
William J. Donnelly
Cole T. Wintheiser
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, D.C. 20024
Tel.: 202-434-5000
rvankirk@wc.com
skirkpatrick@wc.com
jpitt@wc.com
mheins@wc.com
cwintheiser@wc.com

James Peter Fieweger
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street
Suite 3200
Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for Defendant University of Notre Dame du Lac*

By: */s/ J. Mark Gidley*
J. Mark Gidley
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
Tel.: 202-626-3600
mgidley@whitecase.com

Robert A. Milne
David H. Suggs
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Tel.: 212-819-8200
rmilne@whitecase.com

16

dsuggs@whitecase.com

Kelly Newman
WHITE & CASE LLP
75 State Street
Boston, MA 02109
Tel.: 617-979-9329
kelly.newman@whitecase.com

*Counsel for Defendant Vanderbilt University*

By: */s/ Terri L. Mascherin*
Terri L. Mascherin
Reid J. Schar
JENNER & BLOCK LLP
353 N. Clark Street,
Chicago, IL 60654-3456
Tel.: 312-222-9350
tmascherin@jenner.com
rschar@jenner.com

Ishan K. Bhabha
Douglas E. Litvack
Lauren J. Hartz
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Tel.: 202-637-6327
ibhabha@jenner.com
dlitvack@jenner.com
lhartz@jenner.com

*Counsel for Defendant Trustees of Dartmouth College*

By: */s/ Scott D. Stein*
Scott D. Stein
Kathleen L. Carlson
Benjamin R. Brunner
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
Tel.: 312-853-7520

sstein@sidley.com
kathleen.carlson@sidley.com
bbrunner@sidley.com

*Counsel for Defendant Northwestern University*

By: */s/ David Gringer*
David Gringer
Alan Schoenfeld
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: 212-230-8800
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Seth Waxman
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel.: 202-663-6800
seth.waxman@wilmerhale.com

Daniel Martin Feeney
Edward W. Feldman
MILLER SHAKMAN LEVINE &
FELDMAN LLP
180 North LaSalle Street
Suite 3600
Chicago, IL 60601
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for Defendant The Trustees of the University of Pennsylvania*

17