# EXHIBIT B

| | |
|---|---|
| **From:** | David Copeland <dcopeland@gilbertlitigators.com> |
| **Sent:** | Thursday, September 14, 2023 3:06 PM |
| **To:** | Dan Fenske; B Miller |
| **Cc:** | Jessica Maurer; McElhaney III, William J.; 568_litigation@gilbertlitigators.com; 568 Litigation |
| **Subject:** | Plaintiffs Request to Georgetown for FERPA Notices |
| **Attachments:** | Georgetown Final Appendix A.docx |

CAUTION: **External Email -** Only click on contents you know are safe.

Dear Dan and Britt:

Attached to this email as Appendix A is a list of 23 donors to Georgetown and their 37 children who have attended Georgetown from 2003 to the present. This list is based on publicly available information. Several of the donors listed are current or former members of the University's Board of Directors or Board of Regents.

For each student on Appendix A, Plaintiffs request that Georgetown produce the admissions files for each of those students or, at a minimum, documents sufficient to show each student's academic data (SAT/ACT scores, AP grades, GPA, Class Rank, etc.) as well as any internal Ratings used by Georgetown to admit or deny admission to the student. Plaintiffs also request all documents on a "go get" basis located in the Admissions, President's or Advancement Offices concerning any donations by each student's parents to Georgetown (or their capacity to make such donations), including any correspondence with those parents.

Plaintiffs are entitled to this information because it is directly probative of two of the central issues in this case: (1) Whether Georgetown admitted all domestic students without regard to their or their families' financial circumstances and ability to donate; and (2) the extent to which Georgetown uses its admissions process to maximize revenues, which would trigger the application of the *per se* standard to Plaintiffs' claim under Section 1 of the Sherman Act.

Plaintiffs request that Georgetown provide FERPA notices to the students at issue. The issuance of such notices is authorized by the Court's Order Regarding FERPA and the Production of Certain Documents and Information, dated Oct. 26, 2022 (ECF 231), which includes (as Ex. A) the form of the Notice to be provided. In the August 17 Joint Status Report ("JSR"), Plaintiffs reserved the right to request that each Defendant provide up to 50 notices under FERPA to students who had been admitted to the university and whose parents were known to have made donations to the university. *See* JSR at 4, notes 6-7.

Plaintiffs' request is narrow and targeted, and any burden it imposes on Georgetown is proportional to Plaintiffs' evidentiary burdens. *See* July 24 Hrg. Tr. at 43 ("[I]f [a motion to disclose PII concerns] 100 people, it's going to be one thing. If it's 10,000 people, it's going to be another thing"). The information sought is distinctly probative in comparison to any existing discovery that Plaintiffs have obtained, or expect to obtain, regarding these issues. Here, having information about the academic credentials of students whose parents are significant donors allows Plaintiffs to compare the qualifications of that discrete group against the general population of admitted students. In addition, during any deposition of Georgetown personnel about the influence of donations on admissions, having the already publicly available names of both the donors and the names of the applicants (instead of an anonymized list of UID applicants) allows for more thorough questioning of the deponent and gives the deponent less room to provide misleading answers. For example, where we already have the names of the donors and the admittees, we can ask better follow-up questions

1

because we often have additional publicly available information about the amount and timing of the donations, as well as publicly available information from social media, magazines and newspapers about individual students which is suggestive of the student's academic qualifications or lack thereof.

At the same time, Plaintiffs are prepared to discuss foregoing this discovery if Georgetown is willing to enter into certain stipulations that would make the discovery less probative and important for trial. Those stipulations include the following:

1. With respect to any issue concerning liability or immunity under federal antitrust law, including the issue of whether Georgetown is entitled to immunity from antitrust liability based on the "568 Exemption," Georgetown will not contend that its admissions policies and practices are lawful because it admitted only a "de minimis" or immaterial number of students, either each year or in toto, in consideration of their parents' past or prospective donations to the school (assuming that any "de minimis" exception to the 568 statute is even determined to exist).

2. With respect to any issue concerning liability or immunity under federal antitrust law, including the issue of whether Georgetown is entitled to immunity from antitrust liability based on the "568 Exemption," Georgetown will not contend that Plaintiffs' identification of any specific students or their families on an anonymized basis (such as by UIDs), in presenting evidence or arguing that Georgetown considered past or prospective donations to the school in making admissions decisions regarding those students, in any way constitutes a failure of proof.

3. Georgetown will not contend that the school's consideration of the prior or prospective donations by the families of one or more anonymized students will disqualify Georgetown from the protection of the 568 Exemption only if Plaintiffs prove that "but for" such donations or financial circumstances, the student or students would not have been admitted.

Unless Georgetown is prepared to agree to such stipulations, Plaintiffs will pursue the foregoing discovery, while reserving their rights to supplement this request with additional names (beyond those listed in App. A, up to a maximum of 50 Georgetown students), posing burdens that continue to be proportional to Plaintiffs' existing evidentiary burdens.

Please advise by Wednesday, September 20, whether Georgetown will agree to issue FERPA notices to the students listed on Appendix A; or, in the alternative, is prepared to agree to the proposed stipulations. Plaintiffs are of course available to meet and confer on this subject. If Georgetown refuses to issue FERPA notices as requested (or agree to the proposed stipulations), Plaintiffs will move to compel.

David Copeland
Counsel
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
dcopeland@gilbertlitigators.com
570-517-1759 Direct
www.gilbertlitigators.com

APPENDIX A:  CHILDREN OF GEORGETOWN DONORS WHO SHOULD RECEIVE FERPA NOTICES*



1. Parent-Donor: ██████████████
   Children: ██████ ('13), ██████ ('17), ██████ ('19).
2. ██████████████
   ██████ ('15).
3. ████████
   ██████ ('20).
4. ██████████████.
   ██████ ('12)
5. ██████.
   ██████ ('25), ██████ ('26)
6. ██████████.
   ██████ ('23).
7. ████████████.
   ██████ (B'07), ██████ (B'10).
8. ████████████.
   ██████ ('12), ██████ ('16)
9. ████████████.
   ██████ ('23), ██████ ('25)
10. ████████████
    Name unknown ('05), ██████ ('07)
11. ████████████.
    ██████ ('06)
12. ████████████.
    ██████ ('06), ██████ ('12), ██████ ('16)
13. ████████████.
    ██████ ('14)
14. ████████████████.
    ██████ ('05), ██████ ('14), ██████ ('16).
15. ████████████.
    ██████ ('25)
16. ████████████.
    Name unknown ('15)
17. ████████████.
    ██████ ('22)
18. ████████████.
    ██████ ('20), ██████ ('20), ██████ ('23), ██████ ('25)
19. ████████████.
    ██████ ('22)
20. ████████████.
    ██████ ('13)
21. ████████████.
    Name unknown ('14)
22. ████████████.
    ██████ ('03)
23. ████████████.
    ██████ ('24)    (* designates ████████████████)

| From: | Dan Fenske |
| --- | --- |
| Sent: | Thursday, September 21, 2023 1:17 PM |
| To: | David Copeland; B Miller |
| Cc: | Jessica Maurer; McElhaney III, William J.; 568_litigation@gilbertlitigators.com; 568 Litigation; Dan Fenske |
| Subject: | RE: Plaintiffs Request to Georgetown for FERPA Notices [MB-AME.FID2808642] |

David,

Thanks for your email and your explanation for plaintiffs' request.  We disagree that your explanation justifies the unnecessary intrusion into student privacy that your proposal would entail. Accordingly, Georgetown cannot agree to provide FERPA notice to the 37 students whom, you contend, are related to individuals who apparently made a donation to Georgetown, including "several" "current or former members of the University's Board of Directors or Board of Regents."  We also cannot agree to produce those 37 students' complete "admission files," in unredacted form, or to search on a "go get" basis for documents in three separate offices (Admissions, President, Advancement) for documents concerning "any donations" made by each student's parents.  In addition to inappropriately intruding on student privacy, your proposal is also unnecessary in light of the substantial discovery Georgetown has already provided as to the influence, if any, that a donation may have on admissions, including the *additional* discovery Georgetown has already agreed to produce as to certain individual candidates.  *See* ECF No. 437.  You claim the need for this information because "having information about the academic credentials of students whose parents are significant donors allows Plaintiffs to compare the qualifications of that discrete group against the general population of admitted students."  But Georgetown has already provided data on, for example, the academic credentials of those students admitted under its "Special Interest" policy. *See, e.g.*, GTWNU_0000094415.  And Georgetown's available structured data contains the very academic information you seek as to candidates flagged for tracking by the President's or Advancement office (as well as for other students).  That said, Georgetown is willing to meet and confer with you about your request, and to give you the opportunity to explain why the sort of invasive discovery you are seeking is necessary as to these 37 particular students.

You also offered a stipulation in lieu of the foregoing discovery.  The precise nature of the stipulation is unclear from your email, and we are happy to discuss it further.  Please let us know if you would like to do so.

Regards,

Dan

_____

**Daniel T. Fenske**
*Partner*
Mayer Brown LLP
71 S. Wacker Dr.
Chicago, Illinois 60606
T +1 312 701 8926
LinkedIn | Twitter
mayerbrown.com

**From:** David Copeland <dcopeland@gilbertlitigators.com>
**Sent:** Thursday, September 14, 2023 2:06 PM
**To:** Fenske, Daniel T. <DFenske@mayerbrown.com>; Miller, Britt M. <BMiller@mayerbrown.com>
**Cc:** (Michaels) Maurer, Jessica A. <JMaurer@mayerbrown.com>; McElhaney III, William J.
<WMcElhaney@mayerbrown.com>; 568_litigation@gilbertlitigators.com; 568 Litigation <568_Litigation@fnf.law>
**Subject:** Plaintiffs Request to Georgetown for FERPA Notices

**CAUTION: External Email - Only click on contents you know are safe.**

Dear Dan and Britt:

Attached to this email as Appendix A is a list of 23 donors to Georgetown and their 37 children who have attended Georgetown from 2003 to the present. This list is based on publicly available information. Several of the donors listed are current or former members of the University's Board of Directors or Board of Regents.

For each student on Appendix A, Plaintiffs request that Georgetown produce the admissions files for each of those students or, at a minimum, documents sufficient to show each student's academic data (SAT/ACT scores, AP grades, GPA, Class Rank, etc.) as well as any internal Ratings used by Georgetown to admit or deny admission to the student. Plaintiffs also request all documents on a "go get" basis located in the Admissions, President's or Advancement Offices concerning any donations by each student's parents to Georgetown (or their capacity to make such donations), including any correspondence with those parents.

Plaintiffs are entitled to this information because it is directly probative of two of the central issues in this case: (1) Whether Georgetown admitted all domestic students without regard to their or their families' financial circumstances and ability to donate; and (2) the extent to which Georgetown uses its admissions process to maximize revenues, which would trigger the application of the *per se* standard to Plaintiffs' claim under Section 1 of the Sherman Act.

Plaintiffs request that Georgetown provide FERPA notices to the students at issue. The issuance of such notices is authorized by the Court's Order Regarding FERPA and the Production of Certain Documents and Information, dated Oct. 26, 2022 (ECF 231), which includes (as Ex. A) the form of the Notice to be provided. In the August 17 Joint Status Report ("JSR"), Plaintiffs reserved the right to request that each Defendant provide up to 50 notices under FERPA to students who had been admitted to the university and whose parents were known to have made donations to the university. *See* JSR at 4, notes 6-7.

Plaintiffs' request is narrow and targeted, and any burden it imposes on Georgetown is proportional to Plaintiffs' evidentiary burdens. *See* July 24 Hrg. Tr. at 43 ("[I]f [a motion to disclose PII concerns] 100 people, it's going to be one thing. If it's 10,000 people, it's going to be another thing"). The information sought is distinctly probative in comparison to any existing discovery that Plaintiffs have obtained, or expect to obtain, regarding these issues. Here, having information about the academic credentials of students whose parents are significant donors allows Plaintiffs to compare the qualifications of that discrete group against the general population of admitted students. In addition, during any deposition of Georgetown personnel about the influence of donations on admissions, having the already publicly available names of both the donors and the names of the applicants (instead of an anonymized list of UID applicants) allows for more thorough questioning of the deponent and gives the deponent less room to provide misleading answers. For example, where we already have the names of the donors and the admittees, we can ask better follow-up questions because we often have additional publicly available information about the amount and timing of the donations, as well as publicly available information from social media, magazines and newspapers about individual students which is suggestive of the student's academic qualifications or lack thereof.

At the same time, Plaintiffs are prepared to discuss foregoing this discovery if Georgetown is willing to enter into certain stipulations that would make the discovery less probative and important for trial. Those stipulations include the following:

1.  With respect to any issue concerning liability or immunity under federal antitrust law, including the issue of whether Georgetown is entitled to immunity from antitrust liability based on the "568 Exemption," Georgetown will not contend that its admissions policies and practices are lawful because it admitted only a "de minimis" or immaterial number of students, either each year or in toto, in consideration of their parents' past or prospective donations to the school (assuming that any "de minimis" exception to the 568 statute is even determined to exist).

2.  With respect to any issue concerning liability or immunity under federal antitrust law, including the issue of whether Georgetown is entitled to immunity from antitrust liability based on the "568 Exemption," Georgetown will not contend that Plaintiffs' identification of any specific students or their families on an anonymized basis (such as by UIDs), in presenting evidence or arguing that Georgetown considered past or prospective donations to the school in making admissions decisions regarding those students, in any way constitutes a failure of proof.

3.  Georgetown will not contend that the school's consideration of the prior or prospective donations by the families of one or more anonymized students will disqualify Georgetown from the protection of the 568 Exemption only if Plaintiffs prove that "but for" such donations or financial circumstances, the student or students would not have been admitted.

Unless Georgetown is prepared to agree to such stipulations, Plaintiffs will pursue the foregoing discovery, while reserving their rights to supplement this request with additional names (beyond those listed in App. A, up to a maximum of 50 Georgetown students), posing burdens that continue to be proportional to Plaintiffs' existing evidentiary burdens.

Please advise by Wednesday, September 20, whether Georgetown will agree to issue FERPA notices to the students listed on Appendix A; or, in the alternative, is prepared to agree to the proposed stipulations. Plaintiffs are of course available to meet and confer on this subject. If Georgetown refuses to issue FERPA notices as requested (or agree to the proposed stipulations), Plaintiffs will move to compel.

David Copeland
Counsel
Gilbert Litigators & Counselors
11 Broadway, Suite 615
New York, NY 10004
dcopeland@gilbertlitigators.com
570-517-1759 Direct
www.gilbertlitigators.com