**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ANDREW CORZO, et al. individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> BROWN UNIVERSITY, et al., <br><br> *Defendants*. | Case No. 1:22-cv-00125 <br><br> Hon. Matthew F. Kennelly |

**MEMORANDUM OF LAW IN SUPPORT OF CERTAIN DEFENDANTS' MOTION TO COMPEL RESPONSES TO DEFENDANTS' SECOND SET OF INTERROGATORIES**

## TABLE OF CONTENTS

                                                                                                                                                    Page

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ................................................................................................................................ 1

ARGUMENT ........................................................................................................................................ 3

    I.     DEFENDANTS' INTERROGATORIES ARE NOT "PREMATURE CONTENTION INTERROGATORIES" ................................................................................................ 3

    II.    DEFENDANTS' INTERROGATORIES DO NOT SEEK "PREMATURE EXPERT DISCOVERY" ............................................................................................................. 7

    III.   PLAINTIFFS' INTERROGATORY RESPONSES IMPROPERLY INCORPORATE OTHER RESPONSES BY REFERENCE .......................................................................................... 8

    IV.   PLAINTIFFS' INTERROGATORY RESPONSES IMPROPERLY RELY ON RULE 33(D) ................... 9

CONCLUSION ................................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*American Needle, Inc. v. New Orleans*,
 2012 WL 4327395 (N.D. Ill. Aug. 17, 2012) ...................................................................4

*Auto Meter Products, Inc. v. Maxima Technologies & Systems, LLC*,
 2006 WL 3253636 (N.D. Ill. Nov. 6, 2006) ..................................................................3, 4

*BCBSM, Inc. v. Walgreen Co.*,
 2023 WL 3737724 (N.D. Ill. May 31, 2023) ................................................................4, 6

*Beijing Choice Electronic Technology Co. v. Contec Medical Systems USA Inc.*,
 2020 WL 1701861 (N.D. Ill. Apr. 8, 2020) ..............................................................7, 8, 9

*FONA Int'l, Inc. v. Roddy*,
 2021 WL 5352611 (N.D. Ill. Jan. 19, 2021) ............................................................3, 5, 6

*Kadambi v. Express Scripts, Inc.*,
 2015 WL 10985383 (N.D. Ind. July 14, 2015) ...............................................................10

*Minemyer v. R-Boc Representatives, Inc.*,
 2009 WL 10695968 (N.D. Ill. Apr. 15, 2009) ................................................................10

*Ropak Corp. v. Plastican*, Inc.,
 2006 WL 1005406 (N.D. Ill. Apr. 17, 2006) ....................................................................9

*Rusty Jones, Inc. v. Beatrice Co.*,
 1990 WL 139145 (N.D. Ill. Sept. 14, 1990) .................................................................3, 6

**RULES**

Fed. R. Civ. P.
 26(e) ..................................................................................................................................6
 33(d) .......................................................................................................................3, 9, 10

California Institute of Technology, Cornell University, Georgetown University, The Johns Hopkins University, Massachusetts Institute of Technology, the University of Notre Dame, and the Trustees of the University of Pennsylvania respectfully submit this Memorandum of Law in support of their contemporaneously filed Motion to Compel, together with a Declaration of David Gringer dated November 15, 2023 ("Gringer Decl.") and exhibits attached thereto, Defendants' Statement of Compliance Under Local Rule 37.2, and the Proposed Order submitted herewith.

## INTRODUCTION

Plaintiffs have refused to substantively respond to Defendants' Second Set of Interrogatories. This blanket refusal has no basis, and their objections should be overruled.

This case is and has always been about whether Defendants agreed to use the Consensus Methodology to calculate need-based financial aid, and whether Plaintiffs and the putative class they seek to represent would have received more need-based financial aid but for that purported agreement. On September 30, 2023, Defendants propounded straightforward interrogatories about those basic issues. What do Plaintiffs contend to be the "Consensus Methodology" for each year during the putative class period? What facts show that any Defendant actually used the purported Consensus Methodology? What facts, if any, show that any Defendant agreed with anyone else about how to calculate or package financial aid? What facts define the market in which Plaintiffs allege Defendants have sufficient market power to make the purported agreement feasible? What facts show that this purported agreement caused Plaintiffs and other putative class members to receive less need-based financial aid?

These straightforward questions about Plaintiffs' principal allegations should not have come as a surprise. But for whatever reason, Plaintiffs will not answer them. Instead, they offer

1

a host of facially meritless objections and references to other interrogatory answers and documents that are themselves also non-responsive. *See* Gringer Decl. Exs. 1-8 (Plaintiffs' Responses to Defendants' Second Set of Interrogatories). Defendants notified Plaintiffs of these issues at meet and confers on November 6 and 7, 2023. *See* Gringer Decl. ¶ 12; *id.* Ex. 9 (November 9, 2023, letter summarizing outcome of meet and confers).

Plaintiffs principally object that many of Defendants' interrogatories are "contention interrogatories" that were served prematurely, and Plaintiffs have offered to provide substantive responses just "four weeks before the end of fact discovery." *See* Gringer Decl. Ex. 10 (November 9, 2023, email responding to Defendants' meet and confer letter). Plaintiffs are wrong, and the delay they propose is prejudicial and unjustified. By refusing to answer, Plaintiffs have already given themselves an extension to respond of at least six weeks. They should not get additional months to avoid substantive responses about these fundamental issues. Under the agreed-upon schedule, the final interrogatories were set to be served after enough time had passed for each side to provide informed responses, and with enough time remaining for each side to target their depositions and other discovery to the narrower issues identified in the interrogatory responses. *See* Jul. 11, 2023 Joint Status Report at 2, ECF No. 394. These interrogatories were served on the agreed-upon final day for written discovery, after dozens of depositions and production of over a million documents. Plaintiffs should have been able to answer these fundamental questions about the heart of their case long ago. Instead, they seek to hide the basis of their claims until only four weeks remain for Defendants to conduct their own responsive discovery. The Court should reject that request. It is past time for Plaintiffs to explain their case, if they have one. *Infra* § I.

For another subset of interrogatories, Plaintiffs have flatly refused to respond, objecting that they prematurely ask for expert discovery. *See* Gringer Decl. Ex. 10. But these interrogatories

2

plainly ask for facts (not expert opinion) supporting the allegations made in Plaintiffs' Complaint. If those allegations are grounded in facts—as they must have been even to bring suit in the first place—Plaintiffs must identify those facts now, regardless of whether their experts may later use those facts to form an opinion. If Plaintiffs have no facts, then they must so state. *Infra* § II.

Plaintiffs' few substantive responses are also deficient because, in lieu of providing answers, they vaguely reference documents that plainly do not in fact allow Defendants to "deriv[e] or ascertain[] the answer" themselves, as Rule 33(d) requires, *infra* § III, and improperly incorporate by reference answers to other interrogatories, *infra* § IV, none of which are actually responsive. This sort of evasion is impermissible.

Plaintiffs' objections are without merit, and their refusal to comply with their discovery obligations by substantively answering even one of these basic interrogatories is improper. The Court should enter an order compelling Plaintiffs to either provide answers or affirmatively state that they cannot, and to do so within two weeks of the Court's order.

## ARGUMENT

**I.      Defendants' Interrogatories Are Not "Premature Contention Interrogatories"**

Interrogatories are premature contention interrogatories only if they force the plaintiff "to take ultimate positions on the merits before it has taken adequate discovery." *FONA Int'l, Inc. v. Roddy*, 2021 WL 5352611, at *1 (N.D. Ill. Jan. 19, 2021). Once a plaintiff has taken adequate discovery, contention interrogatories are no longer premature. Indeed, "[w]hen one party poses contention interrogatories after considerable discovery, … courts routinely compel the resisting party to answer the interrogatories." *Auto Meter Prod., Inc. v. Maxima Techs. & Sys., LLC*, 2006 WL 3253636, at *2 (N.D. Ill. Nov. 6, 2006) (citations omitted); *see also Rusty Jones, Inc. v. Beatrice Co.*, 1990 WL 139145, at *2 (N.D. Ill. Sept. 14, 1990) (holding contention interrogatories were not premature when objecting party possessed "thousands of pages" of requesting party's

documents). Once "[t]he end of fact discovery is near," allowing plaintiffs to conceal "the theories under which [they] are proceeding and the factual basis of their contentions" serves only to obscure the contested issues and prejudice the defendant. *American Needle, Inc. v. New Orleans*, 2012 WL 4327395, at *2 (N.D. Ill. Aug. 17, 2012); *see also BCBSM, Inc. v. Walgreen Co.*, 2023 WL 3737724, at *11 (N.D. Ill. May 31, 2023) (holding defendants had "a reasonable need at this advanced stage of the case to know the scope of Plaintiffs' claims" and compelling responses to contention interrogatories). After all, the Federal Rules are "designed to promote liberal discovery in an effort to narrow the issues for trial and [to] prevent unfair surprise." *Auto Meter*, 2006 WL 3253636, at *3 (citation omitted).

The agreed-upon schedule is consistent with these principles. Defendants served these interrogatories on September 30, 2023—the agreed-upon deadline to propound written discovery requests. *See* Jul. 11, 2023 Joint Status Report at 2, ECF No. 394. The agreed-upon deadline to respond was October 30, 2023. *Id.* That deadline was more than 14 months after the motion to dismiss was denied and discovery began in earnest. Over those 14 months, Defendants produced over a million documents and Plaintiffs took some 40-odd depositions. This was more than sufficient discovery to ensure that Plaintiffs could provide informed responses that could meaningfully pare down the issues in dispute. Each side would then have three months before the close of fact discovery on January 31, 2024, to conduct further investigation with the benefit of knowing "the theories under which the [other side is] proceeding and the factual basis of their contentions." *American Needle*, 2012 WL 4327395, at *2.

Plaintiffs now seek to rewrite the parties' agreement for the schedule, arrogating to themselves an additional two months (more if their motion to extend the schedule is granted) to respond to these interrogatories and leaving Defendants with just one month to review the

4

responses, follow up on any ongoing deficiencies, and engage in responsive discovery. And that assumes their eventual responses will not lead to additional motions practice. There is no basis for this prejudicial request. Plaintiffs have obtained massive amounts of discovery. These interrogatories are straightforward and "properly calibrated to discover the facts that [each Plaintiff] believes support its claims …, or to discover information [each Defendant] needs to support its defenses." *FONA*, 2021 WL 5352611, at *1. It is time for Plaintiffs to fully and completely answer Defendants' interrogatories.

In fact, many of the interrogatories do not ask Plaintiffs to commit to any particular position on the merits, and thus are not even properly thought of as contention interrogatories, instead seeking only the facts that Plaintiffs believe support the claims they made in their Complaint.

- Interrogatory 8 asks for facts supporting Plaintiffs' allegation that the Defendants "used" or "implemented" the Consensus Methodology. Gringer Decl. Ex. 1 at 4.[1]

- Interrogatories 18 and 19 ask for facts showing that each Defendant's approach to calculating Expected Family Contributions was the product of an agreement among Defendants. *Id.* at 11-12.

- Interrogatories 21-22, 24-25, 27-28, 30-31, 33-34, 36-37, and 39-40 ask the same with respect to specific variables that may be relevant to calculating need-based financial aid awards. *Id.* at 12-18.

- Interrogatory 42 seeks the facts that Plaintiffs contend show "any Defendant agreed with another Defendant or with any other person or entity to package financial aid awards in a particular manner." *Id.* at 19

- Interrogatory 14 asks for evidence that any of this harmed Plaintiffs. *Id.* at 9.

- Interrogatories 11-13 ask for facts supporting Plaintiffs' market definition allegations. *Id.* at 7-8.

- Interrogatories 9 and 10 ask for relevant facts that Plaintiffs discovered only within the four years before filing the Complaint that could not have been discovered earlier. *Id.* at 6-7.

---

[1] Although each named plaintiff prepared a separate response to Defendants' Second Set of Interrogatories, their responses are nearly identical and share common deficiencies. The only differences are in certain responses to Interrogatories 9 and 10, which are not material here. When referring to Plaintiffs' responses in this motion, Defendants will cite plaintiff Andrew Corzo's responses, Gringer Decl. Ex. 1.

5

Plaintiffs should have had responsive facts on each of these points "before filing their complaint in order to have some factual basis upon which to base its allegations." *Rusty Jones*, 1990 WL 139145, at *2. In any event, if such facts exist, Plaintiffs certainly should have obtained them by now. There is no good excuse for why they have not answered with whatever information they possess. If necessary, Plaintiffs can of course supplement these responses later. *See* Fed. R. Civ. P. 26(e). But the chance that a plaintiff "may uncover additional information to support its claims … does not excuse it from answering [Defendants'] interrogatories now with the information it already has in its possession." *FONA*, 2021 WL 5352611, at *1.

The interrogatories that do ask Plaintiffs to stake out a position are also timely. Plaintiffs' case is about whether Defendants agreed to adopt the "Consensus Methodology" and whether that purported agreement harmed the Plaintiffs and the putative class they seek to represent. Defendants cannot appropriately tailor their remaining discovery without understanding, for example, what Plaintiffs believe "to be the 'consensus methodology' from 2003-2023," Gringer Decl. Ex. 1 at 4 (Interrogatory 7); what unlawful agreements Plaintiffs contend Defendants entered into, *id.* at 9 (Interrogatory 15); what competitively sensitive information Plaintiffs contend Defendants exchanged, *id.* at 11 (Interrogatory 17); and what Plaintiffs believe would have happened but for the purported agreement, *id.* at 12, 18-19 (Interrogatories 20 and 41).[2] Plaintiffs have more than enough discovery to respond to those fundamental requests. And if they do not have facts or views on these seemingly critical issues, then they are required to say so.

Each Defendant simply "seeks to understand Plaintiffs' claims so it can defend the case." *BCBSM*, 2023 WL 3737724, at *11. Plaintiffs should not be permitted to revise the discovery

---

[2] Interrogatories 23, 26, 29, 32, 35, and 38 similarly ask what Plaintiffs believe would have happened but for the purported agreement, but only with respect to specific financial aid variables. Defendants do not move to compel responses to these interrogatories at this time.

6

schedule to prejudice that effort. Defendants therefore request that the Court compel Plaintiffs to provide complete responses to these interrogatories based on the facts currently within their possession and reject Plaintiffs' objections that Defendants' contention interrogatories are premature.

## II. Defendants' Interrogatories Do Not Seek "Premature Expert Discovery"

For a separate set of interrogatories (as relevant here, 11, 13, 14, 16, 20, and 44), Plaintiffs have refused to respond at all before expert reports are due, on the ground that "even the choice of identifying the relevant facts for these interrogatories turns on ongoing expert work." *See* Gringer Decl. Ex. 10.[3] This is a baseless objection. Defendants seek the facts underlying allegations that Plaintiffs made in their Complaint—facts Plaintiffs presumably had when they filed suit in January 2022. "[R]egardless of whether [an] expert will later provide opinions on the subject, [the plaintiff] must respond to this interrogatory to the extent it can based on the information now known to it." *Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA Inc.*, 2020 WL 1701861, at *10 (N.D. Ill. Apr. 8, 2020).

For example, Interrogatory 11 asks Plaintiffs to identify the distinct characteristics and services that they believe distinguish "private national universities with an average ranking of 25 or higher in the *U.S. News & World Report*," Gringer Decl. Ex. 1 at 7 (quoting Second Am. Compl. ¶ 244), and Interrogatory 13 asks for all "distinct services" that Defendants offer that liberal arts colleges do not, *id.* at 8 (quoting Second Am. Compl. ¶ 245). While market definition may ultimately require expert opinions, that does not absolve Plaintiffs from providing these facts if they have them now (which presumably they do, since they were squarely alleged in the

---

[3] Plaintiffs also refused to supplement their responses to Interrogatories 5, 6, and 38 before expert reports are due. Interrogatories 5 and 6 call for specific numbers and calculations in the but-for world and Interrogatory 38 involves the application of a single financial aid variable but for the purported agreement. Defendants do not move to compel responses to these interrogatories at this time.

7

Complaint). *See Beijing Choice*, 2020 WL 1701861, at *3 (ordering response to interrogatories regarding market definition). Similarly, Interrogatory 16 asks for "facts that support Your contention in the Complaint ([Second] Am. Compl., ECF No. 308 ¶¶ 258–262) that, but for the alleged conspiracy, each Defendant would have used its endowment to devote more resources to financial aid." Gringer Decl. Ex. 1 at 10. Future expert work should not be required to provide the factual basis for allegations squarely made in the Complaint almost two years ago.

Plaintiffs also alleged in the Complaint that they "have been injured … by paying more for attendance at Defendants than they would have paid and will pay but for the combination and conspiracy," Second Am. Compl. ¶ 269, because Defendants "fix[ed], lower[ed], and stabiliz[ed]" the amount of "financial aid they offered" and "the net price of attendance," *id.* ¶ 266. Plaintiffs must, therefore, have some factual basis to support their belief as to how financial aid awards would have been calculated and packaged but for the agreement, and that Defendants would have ultimately offered greater need-based financial aid. That is precisely what Interrogatories 14, 16, 20, and 44 seek. *See* Gringer Decl. Ex. 1 at 9-10, 12, 20. Plaintiffs should be able to explain how they concluded that they and the class members they seek to represent would have received more financial aid but for the purported agreement to use the Consensus Methodology. And if they can no longer reach that conclusion given the facts obtained in discovery, they should so state.

Defendants therefore request that the Court overrule Plaintiffs' objections that Defendants' interrogatories seek premature expert discovery and compel Plaintiffs to provide complete responses to these interrogatories based on the facts currently in their possession.

**III. Plaintiffs' Interrogatory Responses Improperly Incorporate Other Responses by Reference**

Many of Plaintiffs' interrogatory responses are further deficient because they simply refer to other responses for the information sought. This tactic has been expressly rejected by courts

8

throughout the Seventh Circuit. *See, e.g.*, *Beijing Choice*, 2020 WL 1701861, at *6 ("[I]t is improper to answer an interrogatory by incorporating by reference … a response to another interrogatory."); *Ropak Corp. v. Plastican*, Inc., 2006 WL 1005406, at *4 (N.D. Ill. Apr. 17, 2006) (similar). Plaintiffs must provide a response to each interrogatory that is "complete in and of itself and stand[s] on its own." *Beijing Choice*, 2020 WL 1701861, at *6.

They have failed to do so. For example, in response to Interrogatories 19, 21, 22, 24, 25, 27, 28, 30, 31, 33, 34, 39, and 40 Plaintiffs respond simply: "Plaintiff refers to the Response to Request No. 18." Gringer Decl. Ex. 1 at 11-18. In turn, Plaintiffs' response to Interrogatory 18 recites a few boilerplate objections and then "refers to the Response to Requests No. 8 and 15 above." *Id.* at 11. Plaintiffs' response to Interrogatory 15 then lists an array of objections and "refers to the Response to Request No. 8." *Id.* at 9-10. Finally, Plaintiffs' response to Interrogatory 8 consists of yet more objections, followed by a generic discussion of Defendants' alleged use of the "568 Group's Consensus Methodology" that is not responsive to any of the previously referenced interrogatories. *Id.* at 4-6. This labyrinth of internal references "make[s] it impracticable to determine whether an adequate answer has been given without [a] cross-checking comparison of answers," and is therefore insufficient. *Beijing Choice*, 2020 WL 1701861, at *6 (second alteration in original). Defendants request that the Court compel Plaintiffs to provide a response to each interrogatory that is complete in and of itself and stands on its own.

**IV.    Plaintiffs' Interrogatory Responses Improperly Rely On Rule 33(d)**

Without expressly citing it, Plaintiffs appear to invoke Rule 33(d) in answering several interrogatories by referring generally to documents produced by Defendants rather than responding directly to the questions. *See, e.g.,* Gringer Decl. Ex. 1 at 4 (response to Interrogatory 7). Rule 33(d) allows parties to answer an interrogatory by "specifying the records that must be reviewed" if (and only if) "the burden of deriving or ascertaining the answer will be substantially the same

9

for either party." Fed. R. Civ. P. 33(d). Accordingly, this type of response is appropriate only "for requests requiring compilation or analysis, accomplished as easily by one party as another." *Kadambi v. Express Scripts, Inc.*, 2015 WL 10985383, at *4 (N.D. Ind. July 14, 2015) (citation omitted). It is categorically inappropriate when an interrogatory calls for "the exercise of particular knowledge and judgment on the part of the responding party." *Id.* (citations omitted).

Plaintiffs implicitly invoke Rule 33(d) in response to interrogatories seeking facts that *Plaintiffs believe* are relevant to their claims. These interrogatories necessarily require Plaintiffs to exercise "particular knowledge and judgment" regarding their own contentions and are therefore inappropriate for Rule 33(d) responses.

For example, Interrogatory 7 asks Plaintiffs to "explain in full what you contend to be the 'consensus methodology' from 2003-2023." Gringer Decl. Ex. 1 at 4. Plaintiffs respond with a vague reference to "hundreds of documents and guidelines created, considered, and interpreted by the 568 Presidents' Group and its members" and a list of six alleged examples of those documents, all of which were produced by Defendants. *Id.* Based on this response, Defendants now have the burden of reviewing an unspecified collection of "hundreds of documents"—including many pages containing no information about the Consensus Methodology at all—and determining what *Plaintiffs contend* to be the Consensus Methodology. This is worse than simply "put[ting Defendants] to the task of trying to find the answer at [their] own often undue expense and effort," which is also impermissible. *Minemyer v. R-Boc Representatives, Inc.*, 2009 WL 10695968, at *2 (N.D. Ill. Apr. 15, 2009). It is literally impossible for Defendants to "deriv[e] or ascertain[] the answer" to their questions about what facts Plaintiffs believe support this critical issue by examining any documents produced in this case. Plaintiffs' response to Interrogatory 15, which

10

asks Plaintiffs to identify the agreements they contend are unlawful, is similarly deficient and is directly or indirectly incorporated by reference in more than a dozen other responses.

Defendants request that this Court compel Plaintiffs to supplement their responses with narrative information sufficient to fully answer all interrogatories.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court overrule Plaintiffs' objections and order Plaintiffs to provide complete responses to Defendants' Second Set of Interrogatories within two weeks of this Court's order.

Dated: November 15, 2023

By: */s/ Deepti Bansal*
Deepti Bansal
Alexander J. Kasner
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
Tel.: 202-728-7027
dbansal@cooley.com
akasner@cooley.com

Matthew Kutcher
COOLEY LLP
110 N. Wacker Drive
Chicago, IL 60606
Tel.: 312-881-6500
mkutcher@cooley.com

*Counsel for Defendant California Institute of Technology*

*/s/ Norman Armstrong*
Norman Armstrong
Christopher C. Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
Tel.: 202-626-8979
narmstrong@kslaw.com
cyook@kslaw.com

Emily T. Chen
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel.: 212-556-2224
echen@kslaw.com

Zachary T. Fardon
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
Tel.: 312-764-6960
zfardon@kslaw.com

*Counsel for Defendant Cornell University*

11

By: */s/ Britt M. Miller*
Britt M. Miller
Daniel T. Fenske
Megan E. Stride
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel.: 312-783-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com
mstride@mayerbrown.com

*Counsel for Defendant Georgetown University*

By: */s/ Jeffrey J. Bushofsky*
Jeffrey J. Bushofsky
ROPES & GRAY LLP
191 North Wacker Drive 32nd Floor
Chicago, IL 60606-4302
Tel.: 312-845-1200
jeffrey.bushofsky@ropesgray.com

Chong S. Park
Samer M. Musallam
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Tel.: 202-508-4600
chong.park@ropesgray.com
samer.musallam@ropesgray.com

*Counsel for Defendant Johns Hopkins University*

By: */s/ Eric Mahr*
Eric Mahr
Jan Rybnicek
Daphne Lin
FRESHFIELDS BRUCKHAUS DERINGER
700 13th Street, NW
Washington, DC 20005
Tel.: 202-777-4500
eric.mahr@freshfields.com
jan.rybnicek@freshfields.com
daphne.lin@freshfields.com

*Counsel for Defendant Massachusetts Institute of Technology*

By: */s/ Robert A. Van Kirk*
Robert A. Van Kirk
Jonathan B. Pitt
Sarah F. Kirkpatrick
Matthew D. Heins
William J. Donnelly
Cole T. Wintheiser
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, D.C. 20024
Tel.: 202-434-5000
rvankirk@wc.com
skirkpatrick@wc.com
jpitt@wc.com
mheins@wc.com
cwintheiser@wc.com

James Peter Fieweger
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street
Suite 3200
Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for Defendant University of Notre Dame du Lac*

12

By: */s/ David Gringer*
David Gringer
Alan Schoenfeld
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: 212-230-8800
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Seth Waxman
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel.: 202-663-6800
seth.waxman@wilmerhale.com

Daniel Martin Feeney
Edward W. Feldman
MILLER SHAKMAN LEVINE & FELDMAN LLP
180 North LaSalle Street
Suite 3600
Chicago, IL 60601
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for Defendant The Trustees of the University of Pennsylvania*