# EXHIBIT B

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated, | **Case No. 1:22-cv-00125** |
| Plaintiffs, | |
| v. | **Hon. Matthew F. Kennelly** |
| BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, | **PLAINTIFFS' SECOND SET OF INTERROGATORIES TO ALL DEFENDANTS** |
| Defendants. | |

PROPOUNDING PARTY:   PLAINTIFFS

RESPONDING PARTY:   ALL DEFENDANTS

SET NUMBER:   TWO (2)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs, individually and on behalf of all others similarly situated, request that Defendants (as these Interrogatories are directed to each such Defendant, "You" or "Your") respond in writing to the following

Interrogatories within thirty (30) days of receipt. These Interrogatories are continuing in nature. Responsive information discovered after service of Defendant's responses hereto shall be disclosed through supplemental responses within thirty (30) days of discovery, pursuant to Fed. R. Civ. P. 26(e).

**DEFINITIONS**

1. The definitions and rules of construction set forth in Rule 33 of the Federal Rules of Civil Procedure are hereby incorporated and apply to the Interrogatories herein.

2. "568 Group" means the 568 Presidents Group.

3. "Academic Year" means an academic school year, such as 2014-15.

4. "Admissions" means the processes by which a Student is admitted or denied admission to a Defendant university's full-time undergraduate program.

5. "Admissions Office" means the office, department, or division that is primarily responsible for overseeing Your Admissions.

6. "Admitted Transfer Applicant" means a Transfer Applicant that You have admitted.

7. "Admitted Waitlist Applicant" is any Applicant You admitted off the Waitlist.

8. "Applicant" means any person who has submitted an application by any means to Your full-time undergraduate program, whether as a first-year Applicant or a Transfer Applicant.

9. "Admitted Applicant" means any Applicant accepted for admission during any application period to your full-time undergraduate program.

10. "And" and "Or" are terms of inclusion and not exclusion and are to be construed to bring within the scope of these requests any Documents or responses that might otherwise be considered outside their scope.

2

11. "Annual Budget" means a School's plan or estimate of the School's expected Annual Expenditures, and expected Annual Revenues, for the next fiscal or academic year.

12. "Annual Expenditures" means a School's expenditures to meet its Operating Expenses within the School's fiscal year.

13. "Annual Revenues" means the total amount of money the School earns from operations in a fiscal or Academic Year before any deductions and expenses.

14. "Any" should be construed to mean "any and all."

15. "Common Methodology" means the guidelines distributed among the 568 Group members, as modified from time to time, for addressing and applying the particular components (such as how to treat home equity, how to treat non-custodial parents, how treat families with multiple children attending college, and the like) involved in calculating a Student's EFC.

16. "Concerning" means relating to, pertaining to, referring to, reflecting, referencing, constituting, supporting, contradicting, summarizing, demonstrating, containing, studying, analyzing, considering, explaining, mentioning, identifying, including, showing, discussing, describing, commenting upon, resulting from, prepared for, or used in connection with.

17. "Core Principles" means the following "Financial Aid Principles" set forth in the "The 568 Presidents' Group Consensus Methodology Policy Guidelines":

    a. "To the extent they are able, parents and students have the primary responsibility to contribute to educational expenses before an institution awards financial aid."

    b. "Families should contribute to educational expenses according to their ability. Those with similar financial profits should contribute similar amounts."

    c. "Institutions should evaluate both income and assets as part of the assessment

3

of the parents' and applicants' ability to pay."

18. "Cost of Attendance" means the total costs to cover the education expenses for a Student to attend a School in an academic year.

19. "Dean" means any employee with the word "dean" in their title, including but not limited to deans, assistant deans, associate deans, and vice deans, as well as any employee whose duties are, in the higher education industry, regularly performed by officers with the title of dean.

20. "Development" means a School's activities and services Concerning fundraising, philanthropy, donor cultivation, and alumni relations.

21. "Development List" means any list of Applicants that a School President, Dean, or other employee creates, and makes available to the School's Admissions Office, that includes any Applicants whose family has donated and/or the Schools expects to donate to the School.

22. "Development Office" means all of Your offices, departments, or divisions that handle Development.

23. "Donation" includes but is not limited to restricted or unrestricted cash gifts, non-cash gifts, matching gifts, gifts of stock, bonds, securities, or business interests, bequests, gifts of real property, gifts of personal property, gifts of retirement plans, gifts of life insurance, gifts of copyrights, gifts of royalties, gifts of patents, assignments of contractual income rights, gifts of oil and gas interests, one-time gifts, recurring gifts, planned gifts, life income gifts, or in-kind donations. Donation also includes any gifts resulting in an "endowed chair" or similar honorific.

24. "EFC" means Effective Family Contribution, or the index number generated by application of the Federal Methodology and/or Institutional Methodology used to determine a Student's eligibility for federal or institutional Financial Aid.

25. "Endowment" means a fund or collective funds established with gifts from donors

4

to the School to be invested in order to generate financial support for the School, whether for purposes the donors have determined, for purposes the School chooses, or for purposes that the donors and School mutually identify.

26. "Endowment Earnings" means the annual financial returns on the investments made with Endowment funds.

27. "Endowment Principal" means the total value of the Endowment funds as of the commencement of the annual period for which the School will calculate the Endowment Earnings.

28. "Federal Methodology" means the formula that the United States Department of Education created and that, as updated from time to time, Schools use to calculate a Student's EFC for purposes of determining the Student's eligibility for Financial Aid.

29. "Financial Aid" means any discounts, grants, work-study programs, or scholarships available to assist Students in paying for higher education and which are offered on the basis of estimates, determinations, or computations of Students' financial need and/or on the basis of the Student's merit. Financial Aid excludes Loans, self-help, work-study, or similar forms of assistance that require work or repayment.

30. "Financial Aid Applicant" means an Applicant who has applied for Financial Aid.

31. "Financial Aid Award" is the amount of Financial Aid the School determines to award to an admitted Financial Aid Applicant.

32. "Financial Aid Endowments" mean any Endowment funds donated or subsequently earmarked for the purpose of funding Financial Aid.

33. "Gift Aid" means all need-based grants, scholarships, or other gift assistance from You or a federal or state government entity that do not need to be earned or repaid by Students or their families.

34. "Identify" means:

    a. with respect to a natural person, provide his or her full name, last known business address and telephone number, and the individual's title(s) and the approximate date range in which the person held such title(s) (for example, if asked to identify all of current and former deans of admissions, then state each individual's title, e.g. Dean of Undergraduate Admissions and Financial Aid), and provide the approximate date range in which each individual held their position);

    b. with respect to a document or written communication, provide its date; the name and job title of the preparer(s), sender(s), and recipient(s) of the document or communication; the name and job title of all persons to whom copies of the document or communication were furnished; the subject matter of the document or communication; and the present or last known location and custodian or custodians of the document or communication; except that with respect to any document produced in response to Plaintiff's Document Requests, you need only provide the stamped production number; and

    c. with respect to oral communications, provide the nature and substance of the communication, the date when and place where such communication occurred, each person present for the communication, and each person who participated in the communication.

35. "Income Threshold" means a level of income a School calculates below which the School will award only Gift Aid and/or will not require the Student or Student's family to pay any tuition and/or other Costs of Attendance.

36. "Institutional Methodology" means the formula or guidelines, distinct from the Federal Methodology, through which a School calculates and awards Financial Aid.

37. "Loans" mean any money lent to Students or their families by You, the federal

6

government, a state government, a bank, or another financial institution, such as direct subsidized loans, direct unsubsidized loans, Perkins loans, and Parent PLUS loans.

38. "Matching Award" means a Financial Aid Award a School offers to a Student in an effort to approximate or exceed the amount of a Financial Aid Award that another School has offered the Student.

39. "Merit Aid" means all scholarships and grants awarded on the basis of anything other than an Applicant or Student's financial need or circumstances, such as awards based on academic, athletic, and artistic talent.

40. "Need-Based Aid" means Financial Aid a School awards on the basis of the School's calculation, through the Federal Methodology and/or Institutional Methodology, of what the Student and/or Student's family can afford to pay towards the Cost of Attendance.

41. "Need-Blind Admissions" means the practice whereby a School's Admissions Office admits Students without regard to the financial circumstances of the Student involved or the Student's family.

42. "Net Price" means, for a given Student for a given Academic Year, the Student's Cost of Attendance minus any Financial Aid awarded to the Student.

43. "Operating Expenses" means the expenses a School incurs through its operations to generate revenue and that the School treats as operating expenses.

44. "President" means the president or other chief executive officer of Your institution.

45. "Professional Judgment" means the authority of a School's Financial Aid administrator or director to adjust, on a case-by-case basis, the EFC calculated under the Federal Methodology and/or the School's Institutional Methodology.

46. "School" means an accredited college or university offering four-year

7

undergraduate education.

47. "Student" means an individual enrolled in your full-time undergraduate program for any semester or portion of any semester during the Relevant Time Period.

48. "Transfer Applicant" means any person applying to Your institution through Your transfer Admissions process, as defined by You.

49. "Transfer Student" means an Admitted Transfer Applicant who choose to matriculate at the School to which the applicant was admitted.

50. "Unrestricted Endowment Funds" means Endowment funds donated or subsequently earmarked for the School to use for any purposes the School chooses.

51. "You" and "Your" means each Defendant to whom these Interrogatories are addressed, including all divisions, departments, wholly owned or controlled subsidiaries or affiliates, other subsidiaries, parents, joint ventures, branches, predecessors in interest, successors in interest, current and former employees, agents, attorneys, representatives, and all other persons acting on behalf of, or at the direction of, any such entity.

52. "Waitlist" means a list of Applicants who have neither been rejected nor accepted during Your institution's regular Admissions cycle (typically ending on or around April 1 of each year) and may be re-considered for Admission, or "Waitlisted."

53. In order to bring within the scope of these Interrogatories all information that might otherwise be construed to be outside of their scope, the following rules of construction apply: (i) the singular includes the plural and *vice versa*; (ii) the masculine, feminine, or neuter pronoun does not exclude other genders; (iii) the connectives "and" and "or" should be read either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories all responses that might otherwise be construed to be outside of its scope; (iv) the terms "any," "all," and "each"

should be read to mean any, all, each, and every; (v) the word "including" should be read to mean including, without limitation; (vi) the present tense should be construed to include the past tense and *vice versa*; (vii) references to employees, officers, directors, or agents include both current and former employees, officers, directors, and agents; and (viii) defined terms should be given their broadest meaning regardless of whether they are capitalized in these requests.

## **INSTRUCTIONS**

In addition to the requirements set forth in the Federal Rules of Civil Procedure, the following instructions apply to each of the requests set forth herein, and are deemed to be incorporated in each of them:

1. In answering the following Interrogatories, You are required to provide all information that is available to You or within Your control, including information in the possession of Your attorneys, investigators, consultants, employees, agents, representatives, and any other person acting on Your behalf, and not merely information from Your own personal knowledge.

2. If You cannot answer any Interrogatory in full after conducting a diligent and thorough investigation into all information within Your possession, custody, or control, You must answer them to the fullest extent possible, specify the portion of the Interrogatory You are unable to answer and reason for Your inability to answer, and provide any information You have regarding the unanswered portion.

3. If You object to any of the Interrogatories, You must state the grounds for any objection(s). If You object to only part of an Interrogatory, You must state the objection and the grounds for any objection(s) and respond to the remainder of the Interrogatory.

4. If You claim any kind of privilege as ground for not responding in whole or in part to any of these Interrogatories, set forth in complete detail the facts on which the privilege is based

9

consistent with the requirements of Fed. R. Civ. P. 26(b)(5)(A).

5. If You claim that an Interrogatory is overbroad and/or unduly burdensome, identify how so, and respond to that Interrogatory as narrowed to the least extent necessary, in Your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which You have narrowed that Interrogatory for purposes of your response. For the removal of doubt, by giving this Instruction, no waiver of any right to compel You to respond to the full scope of any Interrogatory is intended.

6. If You claim that an Interrogatory is vague or ambiguous, identify the particular words, terms, or phrases that You attribute to those words, terms, or phrases for purposes of Your response thereto.

7. Where an Interrogatory calls for an answer in more than one part, each part should be separate such that the answer is clearly understandable.

8. Each Interrogatory shall be construed according to the broadest possible construction of its terms, and in such a way as to bring within its scope any response that could be otherwise construed as outside its scope.

9. If no information exists that is responsive to a particular paragraph of these Interrogatories, state so in writing.

10. If any otherwise responsive document or communication identified in an answer to any Interrogatory has been, but no longer is, in your possession, custody or control, or has ceased to exist, (a) identify and describe in detail the nature of the document and its contents, including the date, type, and number of pages and any attachments or appendices of the document; (b) identify the author of the document, each person to whom the document was sent, and all persons having knowledge of the contents of the communication; (c) describe in detail how and why the

document was lost or destroyed; (d) state when the document was lost or destroyed; (e) identify the person who authorized or carried out the destruction or any other elimination of the document; and (f) identify the name and address of the present custodian of the document.

11. Unless otherwise stated in connection with a specific interrogatory, these interrogatories are for the time period of January 1, 1994, to present (the "Relevant Time Period").

## **INTERROGATORIES**

1. State the number of Students to whom You awarded Need-Based Aid and/or Merit Aid, and the amount of such Need-Based Aid and/or Merit Aid for each such Student, for each Academic Year.

2. State whether and to what extent, for each Academic Year since 2002-03, You applied the Core Principles of the 568 Group.

3. State whether and to what extent, for each Academic Year since 2002-03, You applied any version of the Common Methodology; and to the extent You did not apply all components of any version of the Common Methodology, state why not.

4. State whether You concluded that the other 568 Group members were applying the Core Principles of the 568 Group and, if so, the bases for Your conclusion.

5. State whether You concluded that the other 568 Group members were applying the Common Methodology and, if so, the bases for Your conclusion.

6. State whether You concluded that the 568 Group had reduced competition for undergraduate students among the members of the 568 Group and, if so, to what extent and Your bases for so concluding.

7. State whether You concluded that Your participation in the 568 Group had caused any effect on Your annual average Net Price or the total amount of Financial Aid You were annually awarding and, if so, to what extent and Your bases for so concluding.

8. State whether You concluded that Your use of Income Thresholds had caused any effect on the total amount of Financial Aid You were annually awarding or on Your annual Net Price and, if so, to what extent and Your bases for so concluding.

9. State whether You concluded that any 568 Group Member's use of Income Thresholds had caused any effect on the total amount of Financial Aid that Member was annually awarding and, if so, to what extent and Your bases for so concluding.

10. State whether You concluded that Your use of the Federal Methodology to award all Need-Based Aid would have affected the annual amount of Financial Aid You were awarding or on Your annual Net Price and, if so, to what extent and Your bases for so concluding.

11. State whether You publicly stated or otherwise publicly indicated that Your average Net Price or Financial Aid You were awarding had been increasing or decreasing and, if so, Your bases for making any such statement or giving any such indication.

12. Describe Your approach to or policy for resolving scenarios in which a Student's EFC as calculated under the Federal Methodology was lower than the EFC calculated under Your Institutional Methodology.

13. State the total number of Students, for each Academic Year since 2002-03, whose Financial Aid Award resulted from the exercise of Professional Judgment.

14. State the total number of Students, for each Academic Year since 2002-03, who appealed their Financial Aid Award, and the total number of Students who prevailed (to any extent) on the appeal.

15. Identify, for each Academic Year since 2002-03, the Schools You regarded as Your peers, and to the extent this list differs from the peer reports You submitted to the Department of Education for that year, explain why.

16. Identify, for each Academic Year since the 2002-03, the number of Students for whom you offered a Matching Award and, for each such award, the School(s) matched.

17. State Your Annual Budget for Financial Aid for each Academic Year and, for any year in which You exceeded that Annual Budget, how that excess was funded.

18. State whether You applied a fixed percentage of Your Endowment toward the funding of Your total operating expenses for each Academic Year, and, if not, whether You applied a similar rule and what it was.

19. State Your Annual Expenditures for each of Operating Expenses and Financial Aid, and the extent to which Endowment Earnings or Endowment Principal (or both) fund each of those expenditures.

20. State the sources, for each Academic Year, that You used to fund Your total annual Financial Aid for that year.

21. Describe any legal or contractual restrictions governing Your use of Unrestricted Endowment Funds for Annual Expenditures, including Financial Aid, and any policies regarding circumstances in which such restrictions may be lifted.

22. Describe any legal or contractual restrictions governing how the funds in Your Financial Aid Endowments could be invested.

23. State the total number of Students, for each Academic Year, who both appeared on a Development List and who were admitted.

24. State the total number of Students, for each Academic Year since 2002-03, who both appeared on a Development List and whom You admitted after Admissions learned that the Students' families had made a Donation and/or would likely make a donation to You.

25. State whether and when You publicly disavowed the purposes or Core Principles of the 568 Group, and if so, in what way You did so.

26. State whether You employed Need-Blind Admissions for Transfer Students, Waitlisted Students, or both for each Academic Year.

27. State whether You concluded that any 568 Group Member was not engaged in Need-Blind Admissions, and if so, Your bases for so concluding.

28. Identify all procompetitive benefits that You contend arose or resulted from Your participation in the 568 Group, from the existence of the 568 Group, or both.

29. State Your average Net Price for each Academic Year.

Dated: September 30, 2023

Respectfully Submitted,

By:/s/Robert D. Gilbert
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
David Copeland
Steven Magnusson
Natasha Zaslove
**GILBERT LITIGATORS &
 COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
dcopeland@gilbertlitigators.com
smagnusson@gilbertlitigators.com
nzaslove@gilbertlitigators.com

/s/ Edward J. Normand
Devin "Vel" Freedman
Edward J. Normand
Peter Bach-y-Rita
Richard Cipolla
**FREEDMAN NORMAND
 FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law
rcipolla@fnf.law

14

| | |
|---|---|
| Eric L. Cramer<br>Caitlin G. Coslett<br>Ellen Noteware<br>**BERGER MONTAGUE PC**<br>1818 Market Street, Suite 3600<br>Philadelphia, PA 19103<br>Tel: 215-875-3000<br>ecramer@bm.net<br>ccoslett@bm.net<br>enoteware@bm.net<br><br>Richard Schwartz<br>**BERGER MONTAGUE PC**<br>1720 W Division<br>Chicago, IL 60622<br>Tel: 773-257-0255<br>rschwartz@bm.net | Daniel J. Walker<br>Robert E. Litan<br>Hope Brinn<br>**BERGER MONTAGUE PC**<br>2001 Pennsylvania Avenue, NW<br>Suite 300<br>Washington, DC 20006<br>Tel: 202-559-9745<br>rlitan@bm.net<br>dwalker@bm.net<br>hbrinn@bm.net |

*Counsel for Plaintiffs*