UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANK CARBONE, ANDREW CORZO, SAVANNAH ROSE EKLUND, SIA HENRY, ALEXANDER LEO, MICHAEL MAERLENDER, BRANDON PIYEVSKY, and BRITTANY TATIANA WEAVER, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>*Defendants*. | Case No.: 1:22-cv-00125 |

**CERTAIN DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY
<u>CASE MANAGEMENT ORDER #1</u>**

California Institute of Technology, Cornell University, Georgetown University, The Johns Hopkins University, Massachusetts Institute of Technology, University of Notre Dame du Lac, and the Trustees of the University of Pennsylvania ("Defendants") respectfully submit this Opposition to Plaintiffs' Motion to Modify Case Management Order #1 (ECF No. 500) ("Plaintiffs' Motion to Modify" or "Mot.").

Plaintiffs seek a 75-day extension to the fact discovery period, to April 15, 2024, and a similar shift in all remaining deadlines in the Case Management Order. "A decision of whether

1

to extend discovery or not, or concerning the scheduling of discovery, is committed to the sound discretion of the district court, which must try to fashion a sensible and fair result under the circumstances presented." *Coburn v. Daimlerchrysler Servs. N. Am., L.L.C.*, No. 03-CV-759, 2005 WL 8142617, at *2 (N.D. Ill. Apr. 13, 2005). "Once a court enters a specific scheduling order with its own deadlines, that schedule 'may be modified only for good cause and with the judge's consent.'" *Experience Based Learning, Inc. v. Hanover Ins. Co.*, No. 17-CV-05133, 2019 WL 2576390, at *4 (N.D. Ill. June 24, 2019).

The primary consideration when making a good-cause determination is the diligence of the party seeking to extend the deadline, *Experience Based Learning*, 2019 WL 2576390, at *5 (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011)), and "[t]he movant bears the burden to establish its diligence," *Atain Specialty Ins. Co. v. Sandwich Fair Ass'n, Inc.*, No. 19-CV-5120, 2021 WL 929093, at *2 (N.D. Ill. Mar. 11, 2021) (citing *Trustmark Ins. Co. v. Gen. & Cologne Life*, 424 F.3d 542, 553 (7th Cir. 2005)). "To demonstrate good cause, a party must show that despite its diligence, the timetable could not reasonably have been met." *Carter v. David*, No. 19-CV-63-DWD, 2022 WL 488008, at *1 (S.D. Ill. Feb. 17, 2022) (citing *Smith v. Howe Mil. Sch.*, No. 3:96-CV-790RM, 1997 WL 662506 (N.D. Ind. Oct. 20, 1997)).

Plaintiffs have not and cannot meet the standard of "good cause" to permit such an extension, which is unfair and prejudicial to the Defendants.

        **A.**       **Plaintiffs have not demonstrated "good cause" for an extension.**

Plaintiffs fail to satisfy the "good cause" standard to support granting a 75-day extension of the fact discovery period.

*First*, Plaintiffs have not demonstrated that "the timetable [set by this Court] could not reasonably have been met." *Carter*, 2022 WL 488008, at *1. Plaintiffs knew when they filed their complaint—and certainly when they agreed to the Case Management Order—that discovery from 17 Defendants, spanning two decades, would be voluminous, that there would

2

be a significant number of depositions, and that discovery would require their utmost diligence. Knowing full well the path ahead, Plaintiffs decided to request a January 31, 2024 close of fact discovery (ECF No. 188)—and on September 8, 2022 the Court agreed, ordering precisely the end date Plaintiffs sought and rejecting Defendants' request for a shorter period (ECF No. 195). Then, nearly a year ago, the Court specifically advised Plaintiffs to avoid running against the discovery deadline:

> I set the discovery schedule, and I'm pretty sure I told you at the time that's the discovery schedule. And if it takes you, you know, 24 months to get -- you know, to negotiate over the shape of the table and that leaves you a month and a half to do, you know, 250 depositions, then you're going to have a real busy month and a half, just to put it in stark terms.

Dec. 21, 2022 Status Hr'g Tr. 12:25-13:6. That admonition articulated the simple truth that deadlines must be enforceable to provide the parties a real end-date for discovery. *See Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015) ("[C]ase management depends on enforceable deadlines, and discovery must have an end point.").

And yet, Plaintiffs have been far from diligent. Plaintiffs waited until April 5, 2023 to first serve requests for interrogatory responses. Plaintiffs waited until September 30, 2023 to first serve requests for admission, as well as an additional 28 interrogatories (along with additional requests for production)—including to ask basic questions such as "whether You employed Need-Blind Admissions for Transfer Students [and/or] Waitlisted Students" (Plfs' Sept. 30 Rog. No. 26), or "whether . . . You applied any version of the Common Methodology" (Plfs' Sept. 30 Rog. No. 3).[1] No discovery was needed for Plaintiffs to propound these day-one questions; no reason existed for Plaintiffs to delay as they did, and Plaintiffs could have asked basic questions over the last year to understand the document and structured-data

---

[1] Given their late date of service and sweeping nature, the parties are still in the process of responding to and meeting and conferring regarding these numerous new discovery requests, and, where agreed to, providing supplemental and/or amended information following all Defendants' service of responses and objections to each discovery request.

3

productions they requested and received. Instead, Plaintiffs let the productions, and their questions about them, pile up.[2]

Moreover, Plaintiffs took a mere seven depositions in September and five depositions in October 2023,[3] leaving Plaintiffs (by their own admission) the remainder of the discovery period to take *more than half* of the depositions they claim to require. (Mot. at 3 (As of the date of the Motion, Plaintiffs' counsel has "taken thirty-three (33) fact depositions, have noticed or scheduled to take approximately twenty-five (25) more, and anticipate noticing at least twenty (20) more, including the Rule 30(b)(6) depositions.")).

For many Defendants, Plaintiffs have spent an inordinate amount of time seeking testimony from admissions officers or development personnel, which was largely or exclusively related to the issue of need blindness rather than focused on Plaintiffs' core antitrust allegations of price-fixing and Defendants' varying financial aid methodologies. Indeed, Plaintiffs took sixteen such depositions of current and former employees of Columbia, Penn, Vanderbilt, Notre Dame, Yale, Northwestern, MIT, Georgetown, and Dartmouth touching upon alleged wealth favoritism, but for many of the remaining Defendants, Plaintiffs have barely taken any depositions at all, regardless of topic. For example, Plaintiffs have taken only a single Caltech deposition—Malina Chang, Caltech's Director of Financial Aid—on

---

[2] Prior to issuing that discovery, Plaintiffs focused the bulk of their attention on other issues, for instance, asking this Court repeatedly to order Defendants to designate custodians from the President's and/or Development Office (ECF No. 319 at 2), moving to limit redactions of donor names from certain universities (ECF No. 355), moving for reconsideration after that motion was denied (ECF No. 385), moving for production of "donor-linked applicant[]" identities from a university (ECF No. 440), and moving to compel Defendants to provide FERPA notices to students and alumni and produce de-anonymized education records purporting to show donor favoritism (ECF No. 443). All of those motions related to the impact of donations on admissions. That was Plaintiffs' choice. But having made that choice, they should not now be permitted to extend discovery to address topics that Plaintiffs could and should have addressed much earlier.

[3] In Exhibit A (ECF No. 499-02) Plaintiffs misleadingly imply they took seven depositions in October. In fact, four of the depositions they identify as scheduled in October were postponed and never rescheduled. One of the depositions Plaintiffs took in October was noticed by Defendant Penn and Plaintiffs simply cross-noticed that deposition.

September 13, 2023. That is likely because Plaintiffs knew that Caltech has never considered donor status in admissions, a topic that has been a primary focus of much of Plaintiffs' discovery. And now, facing the deadline that they have always known was looming, Plaintiffs have sought three additional Caltech witnesses, about whom they have known since the exchange of initial disclosures in April 2022. Plaintiffs similarly have chosen to take only one deposition of a witness from Johns Hopkins. For MIT, Plaintiffs noticed three depositions in May but waited until October and November to notice six additional depositions. And in the case of Cornell, Plaintiffs noticed two depositions in May, but no deposition was taken until the end of October. Plaintiffs now seek more time to avoid the consequences of these strategic decisions.

There is no "good cause" for extending a discovery deadline when the identities of deponents were known to a party early in litigation but that party delayed noticing and taking depositions. *See, e.g.*, *Atain Specialty Ins. Co.*, 2021 WL 929093, at *3 (declining to find good cause to extend discovery where "[it was] not a case where new developments in discovery delayed the identification of the deponents at issue" and the defendant "knew early on that he would likely depose . . . individuals"). Plaintiffs' lack of diligence in discovery should not be the basis for an extension of the entire schedule.

Plaintiffs' reference to the gap between noticing and scheduling depositions is based on their own conjecture about witness availability, which is simply untrue. (Mot. at 5.) The delay in scheduling was often Plaintiffs' own decision, over Defendants' objection. For instance, the longest gap between notice and deposition was due to Plaintiffs' own request for a delay. (ECF No. 499-02, Ex. A, "Asbury" (noting that "Plaintiffs requested to pushback [the Asbury] deposition from 9/14/23 to 10/26/23")). Plaintiffs also fail to mention that they have attempted to delay depositions even longer, until Defendants objected and asked Plaintiffs to stick to agreed-upon deposition dates. For example, Caltech responded to the single deposition request

it had received in May, but Plaintiffs twice requested that the deposition be pushed back further—which Caltech resisted, resulting in its first deposition occurring in mid-September. Plaintiffs also similarly postponed or pushed back seven depositions, involving witnesses for Duke, Columbia, Cornell, Rice, and Notre Dame.

Moreover, Plaintiffs do not assert that they have been prejudiced by the length of time between notice and deposition. Indeed, many of the newly noticed deponents were on the parties' initial disclosures; Plaintiffs did not need to wait for depositions to learn of (and notice the depositions of) additional employees with potentially relevant testimony. As just a few examples, Plaintiffs knew of two Cornell witnesses (Becky Maxson and Shawn Felton), one Johns Hopkins witness (David Philips), and two Caltech witnesses (Ashley Pallie and Jarrid Whitney) as early as April 15, 2022, when they were disclosed by Defendants in initial disclosures, and yet Plaintiffs waited until September 19, 2023 to notice those witnesses for depositions. Similarly, Plaintiffs' own initial disclosures identified two MIT officials (Julie Lucas and Glen Shor) and one Caltech official (David Tirrell), but they did not notice them until October 2023. Plaintiffs also waited to request the deposition of Notre Dame's former director of admissions—who was identified as a document custodian more than a year ago, and who Plaintiffs themselves identified in their own initial disclosures—until October 4, 2023 (yet Plaintiffs noticed and took the deposition of Notre Dame's former president, Reverend Edward Malloy, despite being retired for twenty years and having almost no relevant information).

Nor did Plaintiffs need to wait to file 30(b)(6) deposition notices—which they still have not done. Some Defendants expressly asked Plaintiffs to serve 30(b)(6) notices starting in June of 2023 in an effort to consolidate individual depositions with 30(b)(6) depositions on topics for which that witness was most likely to be the university's representative. But Plaintiffs rejected these offers even though such an agreement would have alleviated the stress Plaintiffs apparently now feel. This Court has previously asked Plaintiffs why they have not yet served

6

30(b)(6) notices. *See* Aug. 24, 2023 Status Hr'g Tr. 36:3-39:6 ("I'm just going to throw something out here. And I know you guys don't want to do your 30(b)(6)s yet. I know that. I read all that stuff. Why wouldn't the more efficient way to do that be just say, here's the 30(b)(6) notice."). But Plaintiffs have not heeded the Court's advice. Instead, Plaintiffs have argued that noticing 30(b)(6) depositions upon Defendants' requests was "unnecessary" and "premature" because the "fact discovery end date is not until January 31, 2024." Aug. 17, 2023 Joint Status Report (ECF No. 433). Yet, now that Plaintiffs are coming up on that fact discovery deadline, they still have not served 30(b)(6) notices and instead seek more time.

*Second*, contrary to Plaintiffs' assertion (Mot. at 4-5), the fact that the Court extended the date by which Defendants were to have substantially completed their initial productions does not establish good cause for an extension. Defendants very early on began producing documents on a rolling basis, and Plaintiffs had received over 500,000 documents (totaling over 2 million pages) by March 3, 2023, the initial substantial production deadline. *See* ECF No. 344 at 8. Defendants continued to produce documents on a rolling basis between March 3 and May 15. Plaintiffs had documents to review as Defendants produced them, and the extension of the initial substantial production deadline could not have impacted Plaintiffs' review of the documents they already had in their possession.

*Third*, and again contrary to Plaintiffs' suggestion (Mot. at 7), Defendants have provided structured data—and voluminous information *about* that structured data—on Plaintiffs' timeline and on Plaintiffs' terms. Not only have Plaintiffs issued myriad requests in connection with their "informal[]" "clarification process" for structured data (*id.*), but they have also requested as recently as September 26, 2023 that certain Defendants collect and produce supplemental financial aid structured data. Plaintiffs' "informal[]" "clarification process" has been cooperative but slow: rather than asking deposition witnesses questions about the data (and the many financial aid professionals who have been deposed would easily

7

have been able to streamline Plaintiffs' counsel's understanding of the data) or propounding interrogatories about the data, Plaintiffs have sent a barrage of emails asking Defendants' counsel about the meaning, or omission, or quality, of various fields in that data.

This shuttle diplomacy has also imposed increased burdens on Defendants: in addition to the ordinary requirements of litigation such as preparing and sitting for depositions, providing information to counsel to respond to formal discovery requests, and assisting with the collection and production of documents, financial aid and admissions staff at each of the Defendant universities have been forced to spend countless hours reviewing myriad "informal" discovery questions from Plaintiffs' counsel—all while continuing to run their departments and execute core business operations. This, again, was Plaintiffs' choice. It has extended the process by which Plaintiffs have gained some understanding of the data they solicited, and it evidences a lack of careful thought and diligence in their discovery process. It is most certainly not grounds for an extension.

[redacted]

8

████████████████████████████
████████████████

### C. Plaintiffs' Extension Would Unduly Burden Defendants.

Contrary to Plaintiffs' suggestion, the extension they request would serve only to inflict (not "ease") the burden on Defendants. (Mot. at 7.) While "[t]he pace of litigation, the nature of the discovery, the degree to which schedules are honored are all matters within control of the trial judge . . . the way a judge controls process may have significant economic and personal effects on the litigants." *DeWindt Corp. v. Scottsdale Ins. Co.*, 110 F. Supp. 2d 700, 702 (N.D. Ill. 2000).

Here, extending the discovery deadline will force Defendants to expend additional resources litigating this case and will delay the timeline for opposing class certification and moving for summary judgment. *See Coburn*, 2005 WL 8142617, at *4 ("[E]xtending discovery at this juncture would unduly prejudice Defendant. At this stage of the litigation the case is ready to move forward into any final summary judgment motion . . . and an evaluation of class certification. Extending discovery would delay that entire process after Plaintiffs have had a fair opportunity to proceed and would place upon Defendant the unnecessary burdens associated with belated discovery that was available long ago.").

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

9

█████████████████████████████████████████

████████████████████████████████████████

████████

Plaintiffs have always known the case they were prosecuting and the discovery it would require. They have always known that they were seeking wide-ranging document and data discovery spanning more than two decades—and, indeed, it was Plaintiffs themselves who insisted upon the broad temporal scope. They have always known that they would be deposing numerous witnesses from each of the schools they chose to sue—which, again, Plaintiffs themselves insisted upon in the course of the parties' negotiations regarding the number of non-expert depositions. Plaintiffs should not now be granted an extension to the discovery schedule that they themselves proposed, merely because discovery turned out to be exactly as "complex and expansive" as expected. Extending the schedule would serve only to free Plaintiffs from the natural and predictable consequences of their own poor planning. It also would burden and prejudice the Defendants, all of whom want to move forward with class certification and summary judgment as scheduled.

### D. In the Alternative, Any Modification of the Case Management Order Should Be Limited in Scope.

If the Court grants Plaintiffs' Motion to Modify Case Management Order #1, Defendants respectfully request that it limit that modification to an extension of the deadline for fact discovery by 30 days. This amount of time is more than sufficient to allow Plaintiffs to complete their remaining depositions and prepare for class certification and trial.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to Modify the Case Management Order #1. In the alternative, Defendants respectfully request that any modification granted by the Court be limited to an extension of the deadline for fact discovery by 30 days.

Dated: November 22, 2023            Respectfully submitted,

    By: */s/ Matthew Kutcher*
Deepti Bansal (*pro hac vice*)
Alexander Kasner (*pro hac vice*)
**COOLEY LLP**
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004-2400
Telephone:     +1 202 842 7800
Facsimile:     +1 202 842 7899
dbansal@cooley.com
akasner@cooley.com

Matthew Kutcher, Bar No. 6275320
**COOLEY LLP**
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606-1511
Telephone:     +1 312-881-6500
Facsimile:     +1 312-881 6598
mkutcher@cooley.com

Amanda Liverzani
**COOLEY LLP**
55 Hudson Yards
New York, NY 10001-2157
Telephone:     +1 212-479-6000
Facsimile:     +1 212-479 6275

*Counsel for Defendant California Institute of Technology*

By: */s/ Norman Armstrong*
Norman Armstrong
Christopher C. Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
Tel.: 202-626-8979
narmstrong@kslaw.com
cyook@kslaw.com

Emily T. Chen
KING & SPALDING LLP
1185 Avenue of the Americas

11

34th Floor
New York, NY 10036
Tel.: 212-556-2224
echen@kslaw.com

Zachary T. Fardon
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
Tel.: 312-764-6960
zfardon@kslaw.com

*Counsel for Defendant Cornell University*


By: */s/ Britt M. Miller*
Britt M. Miller
Daniel T. Fenske
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel.: 312-783-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com

*Counsel for Defendant Georgetown University*

By: */s/ Jeffrey J. Bushofsky*
Jeffrey J. Bushofsky
ROPES & GRAY LLP
191 North Wacker Drive 32nd Floor
Chicago, IL 60606-4302
Tel.: 312-845-1200
jeffrey.bushofsky@ropesgray.com

Chong S. Park
Samer M. Musallam
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Tel.: 202-508-4600
chong.park@ropesgray.com
samer.musallam@ropesgray.com

*Counsel for Defendant Johns Hopkins University*

By: */s/ Eric Mahr*
Eric Mahr

Jan Rybnicek
Daphne Lin
FRESHFIELDS BRUCKHAUS DERINGER
700 13th Street, NW
Washington, DC 20005
Tel.: 202-777-4500
eric.mahr@freshfields.com
jan.rybnicek@freshfields.com
daphne.lin@freshfields.com

*Counsel for Defendant Massachusetts Institute of Technology*


By: */s/ Robert A. Van Kirk*
Robert A. Van Kirk
Jonathan B. Pitt
Sarah F. Kirkpatrick
Matthew D. Heins
Cole T. Wintheiser
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, D.C. 20024
Tel.: 202-434-5000
rvankirk@wc.com
skirkpatrick@wc.com
jpitt@wc.com
mheins@wc.com
cwintheiser@wc.com

James Peter Fieweger
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street
Suite 3200
Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for Defendant University of Notre Dame du Lac*

By: */s/ Seth Waxman*
Seth Waxman
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel.: 202-663-6800
seth.waxman@wilmerhale.com

13

David Gringer
Alan Schoenfeld
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: 212-937-7294
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Daniel Martin Feeney
Edward W. Feldman
MILLER SHAKMAN LEVINE &
FELDMAN LLP
180 North LaSalle Street
Suite 3600
Chicago, IL 60601
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for Defendant The Trustees of the University of Pennsylvania*