PUBLIC VERSION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SIA HENRY, *et al.*, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No.: 22-cv-00125 |
| v. | |
| BROWN UNIVERSITY, *et al.*, | Hon. Matthew F. Kennelly |
| Defendants. | |

**GEORGETOWN UNIVERSITY'S RESPONSE TO PLAINTIFFS' MOTION TO DESIGNATE GEORGETOWN'S PRESIDENT AND HIS ASSISTANT AS CUSTODIANS AND TO COMPEL GEORGETOWN TO PRODUCE DOCUMENTS**

PUBLIC VERSION

## INTRODUCTION

Plaintiffs' motion is simply a retread of their July 2023 motion ("Prior Motion to Compel") seeking massive discovery from Georgetown regarding "President's List" candidates, which this Court has already essentially denied.[1] At the August 24 hearing, the Court suggested that a more reasonable way to obtain the requested information was to focus on a sample of such candidates, and ordered the parties to reach a negotiated resolution of the motion. The parties subsequently did just that. Under the parties' agreement, Georgetown was to provide additional discovery as to 150 candidates on the "President's List" *selected by Plaintiffs*. And again, Georgetown did just that. *See* ECF No. 437 ¶ 5 ("August 30 Order"). That search included collecting and producing hundreds of Excel and similar files from the President's and Advancement offices as to candidates considered for admission under the university's Special Interest admission policy, as well as a burdensome search of the files of President DeGioia, Mr. Koenig, and Advancement custodians. (This was in addition to the extensive discovery Georgetown had previously provided from the Admissions Office's files on alleged donor influence under its Special Interest and Legacy policies, among other things.)

Despite having *agreed* to that process, and before questioning the relevant witnesses about the materials it yielded, Plaintiffs now demand that Georgetown search for "[e]very document, email, record or other written communication" from President DeGioia or Mr. Koenig that relate to any President's List applicant (excluding the children of Georgetown faculty) or any related

---

[1] *See, e.g.*, Ex. 2, 8/24/2023 Hr'g Tr. 50:3-8 (addressing Plaintiffs' counsel: "And if you tell me, I want everything that relates to, you're going to lose, so don't say that. This is great. I'm telling you in advance what the losing argument is. You don't usually get that from a judge. I'm telling you what the losing argument is, so don't make that argument."). All exhibits are attached to the Declaration of Daniel Fenske, filed concurrently.

donor for the time period spanning back to 2003, and Plaintiffs demand that Georgetown complete this search, review, and production by December 8.[2]

Plaintiffs' motion should be denied. Georgetown already has produced extensive discovery on alleged wealth favoritism from the President's, Advancement, and Admissions offices. That discovery is more than sufficient for Plaintiffs to adequately understand Georgetown's processes and to question President DeGioia and Mr. Koenig at their upcoming depositions regarding the influence, if any, that donations have on admissions. The new search that Plaintiffs are requesting would likely yield no new material information about Georgetown's processes. But it would impose a staggering burden on Georgetown, and could not possibly be completed by December 8. It is flagrantly disproportionate to the needs of this case under Rule 26.

Finally, although not relevant to the disposition of Plaintiffs' motion, a brief word about Plaintiffs' inflammatory rhetoric is warranted. Plaintiffs' motion repeats their prior accusations that Georgetown engaged in misrepresentations regarding appropriate discovery in this case. The motion adds nothing new to the issues briefed by the parties in July and fully discussed with the Court in the subsequent hearing. The Court has already admonished all of the Defendants for not disclosing the existence of the prior DOJ investigation earlier in this case. Plaintiffs' continued rehashing of those same accusations is unnecessary and counterproductive. Georgetown will not

---

[2] *See* Mot. at 9 (requesting, among other things, an order directing Georgetown to produce ***"[e]very document, email, record or other written communication*** ("Record") concerning: (1) the nomination, recommendation, suggestion, or sponsorship of an individual for admission to Georgetown ("Sponsor-Related Communications"), with respect to any individual who was ultimately included on a President's List ("President's List Applicant"), including any response to or Record concerning any such Communication; (2) ***any President's List Applicant who is the subject of any Sponsor-Related Communication***; (3) ***any donor or prospective donor who is a family member of any President's List Applicant ("Applicant-Interested Donor"), or any Record to or from such Donor***; and (4) any actual or potential pledge agreement or other agreement to donate funds to Georgetown by any Applicant-Interested Donor. As used herein, the term President's List Applicant does not include any children or grandchildren of Georgetown administrators or faculty members") (emphasis added); ECF No. 505-4 ¶ 1.

2

further engage on the merit (or lack thereof) of Plaintiffs' virulence and instead refers the Court to its prior briefing on these issues. *See* ECF No. 413.

Georgetown respectfully requests that the motion be denied.

## BACKGROUND

In connection with Plaintiffs' Prior Motion to Compel, Georgetown agreed to provide additional discovery from both its President's and Advancement offices. ECF No. 437 ¶¶ 2-5. Beginning in July, Georgetown produced available copies of original "President's Lists." *Id.* ¶ 1. In August 2023, Georgetown produced voluminous Excel files from Mr. Koenig (███████ ███████████████████████████████████) relating to the President's Lists spanning from application years 2007-2008 through 2022-2023. Fenske Decl. ¶ 2. These files track ███████████████████████████ *Id.* ███████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████ *Id.*

In August and September 2023, Georgetown began producing additional materials from its Advancement office relating to the Special Interest Policy. *Id.* ¶ 3. These productions comprised over 500 documents, including Excel files describing specific applicants who the Advancement Office either tracked or recommended to the President's Office under the Special Interest policy, ███████████████████████████████████████ ████████ *Id.*

In their Prior Motion to Compel, Plaintiffs contended they needed additional discovery from the President's and Advancement offices because—just as they claim here—█████████ ███████████████████████████████

3

██ ECF No. 403 at 2, 10-12. At the August 24, 2023 hearing, the Court suggested focusing that additional discovery on a sample of individuals on the President's List and ordered the parties to negotiate an agreed resolution to the Prior Motion to Compel. Ex. 2, 8/24/2023 Hr'g Tr. 47:20-48:5; 48:20-24; 49:25-50:9; 53:5-16; *see supra* p. 1.

As the Court directed, the parties came to an agreement that Georgetown would provide discovery as to 150 candidates (25 per year for the six-year period beginning in 2017) that Plaintiffs were permitted to select based on their review of the documents Georgetown had already produced describing candidates on the President's List. ECF No. 437 ¶ 5. Georgetown also agreed to search the files of both President DeGioia and Mr. Koenig (among others) as to those 150 candidates. *Id*. After negotiating search terms and the timeframe for this review, Georgetown completed its production under this agreed-upon process in late October 2023, ultimately producing over 1,000 documents. Fenske Decl. ¶ 4. That review was very burdensome. It required Georgetown to hire 50 contract attorneys who collectively spent approximately 2,000 hours on the review and redaction of these materials (in addition to substantial time from Mayer Brown attorneys) *Id.* ¶ 5.

After taking the depositions of Georgetown's Dean of Admissions, Charles Deacon, and his executive assistant, Valerie Youmans, Plaintiffs demanded on November 10, 2023 that Georgetown add its entire President's Office as a custodian as to 16 of Plaintiffs' Requests for Production, all of which relate to alleged "wealth favoritism." Ex. 1 (email chain between counsel for Plaintiffs and Georgetown between November 10-14, 2023). ████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ *Id.* at 6-7. As Georgetown pointed out, this was not new information. ██████████████████████ ████████████████████████████████████████████████████████████████████████████████

4

▇▇▇ *See* Ex. 1 at 4 (quoting Costanzi Tr. 294:19-23 (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇)). Georgetown further objected to Plaintiffs' request on the ground that Plaintiffs ignored the substantial and burdensome discovery Georgetown had already provided from the President's and Advancement offices as a result of the parties' agreement. *See supra* 1-4; Ex.1 at 5-6.

The parties discussed Plaintiffs' request at a meet-and-confer on November 13. Fenske Decl. ¶ 9. Plaintiffs stated during that discussion that they were actually *not* primarily interested in additional documents about the reasons particular candidates were included on the President's List, but rather were seeking higher-level documents describing the Georgetown President's Office's "policies and practices" for the President's List. *Id.* ¶ 10; Ex. 1 at 1 (email memorializing conversation). Georgetown responded that it was not aware of any such documents from the President's Office but would be willing to conduct a supplemental search for such documents if Plaintiffs were serious about forgoing the burdensome email/custodial search they initially suggested. Fenske Decl. ¶ 10. After conferring internally, however, Plaintiffs responded the next day and reiterated their request for the full email/custodial search to which Georgetown objected. Ex. 1 at 2-3. Georgetown responded to express its "disappoint[ment]" at Plaintiffs' about-face and re-iterated that such a search was disproportionate and unnecessary. *Id.* at 1-2. Plaintiffs' motion followed.

## ARGUMENT

### I. Plaintiffs' Request Is Wildly Disproportionate and Cumulative

Courts "must limit the frequency or extent of discovery when… the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26. In balancing burden and

5

relevance, courts consider whether there is a "reasonable[,] less burdensome alternative . . . to produce the requested discovery." *Young v. Verizon's Bell Atl. Cash Balance Plan*, No. 05 C 7314, 2007 WL 4277438, at *6 (N.D. Ill. Dec. 3, 2007). Courts further assess whether the seeking party has adequately explained why the evidence already provided is not enough, *i.e.*, whether the request is over-kill. *Washington v. Boudreau*, No. 16 C 1893, 2021 WL 12101166, at *3 (N.D. Ill. July 22, 2021). This determination is guided by the principle that "there is no absolute right to unlimited discovery," *Mr. Frank, Inc. v. Waste Mgmt., Inc.*, No. 80 C 3498, 1983 WL 1859, at *1 (N.D. Ill. July 7, 1983), and that "[t]he standard for evaluating discovery is reasonableness, not perfection." *LKQ Corp. v. Kia Motors Am., Inc.*, No. 21 C 3166, 2023 WL 3455315, at n.3 (N.D. Ill. May 15, 2023). *See also Torres v. C.I.A.*, 39 F. Supp. 2d 960, 963 (N.D. Ill. 1999).

Plaintiffs' demand that Georgetown search for "[e]very document, email, record or other written communication" from President DeGioia or Mr. Koenig relating to those on the President's List and their related donors from the period 2003-2022, as well as all such materials regarding Georgetown's policies and practices as to the President's list, (Mot. at 9) flouts those principles.[3] *First,* the requested search is cumulative of prior discovery sought from those *same* individuals about the *same* issue. Georgetown has already produced (1) its written Special-Interest policy documents, (2) available copies of the President's Lists as provided to the Admissions office; (3) documents maintained by Mr. Koenig listing candidates the President's Office considered for inclusion on the President's List ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬; (4) similar documents from the Advancement office; and (5) documents produced from an exhaustive search of President DeGioia's and Mr. Koenig's files as to the 150 President-List candidates that *Plaintiffs*

---

[3] Contrary to Plaintiffs' suggestion (Mot. at 4 n.4) Georgetown objects to subpart (b) of its proposed order because that subpart seeks documents about every "Record" in President DeGioia's and Mr. Koenig's files, and Plaintiffs define "Record" as "[e]very document, email, record or other written communication." Mot. at 9. Subpart (b) would thus entail the same burdensome search as subpart (a).

6

selected. And Plaintiffs will have the opportunity to question President DeGioia and Mr. Koenig about all of those materials at their upcoming depositions.

The sampling process the parties already implemented—at the Court's urging—is more than sufficient. *See* Ex. 2, 8/24/2023 Hr'g Tr. 47:20-48:5; 48:20-24; 49:25-50:9; 53:5-16. Indeed, courts frequently deny motions to compel broad discovery requests where, as here, the more reasonable approach is sampling. *See Russell v. Ill. Bell Tel. Co.*, 2009 U.S. Dist. LEXIS 37300, *8-9 (ordering sampling because a full search would be unduly burdensome and the Defendant had the opportunity to depose "a reasonable and sufficient number of opt-in Plaintiffs"); *Hill v. Eddie Bauer*, 242 F.R.D. 556, 564 (C.D. Cal. 2007) (ordering Defendant to produce responsive sample information, considering that "fully responding to these requests would be burdensome to defendant"). Plaintiffs previously *acknowledged* the appropriateness of the kind of sampling they apparently, now, disclaim. Ex. 2, 8/24/2023 Hr'g Tr. 48:25-49:4 ("I think that if we picked out a segment of, say, 30 on that list each year, we could probably accomplish what your Honor is – ").

*Second,* Plaintiffs' demand would be incredibly burdensome and expensive. Comparing it to the more limited review the parties negotiated under the Court's agreed August 30 Order makes this clear. Georgetown estimates that the review and redaction of those materials (for FERPA-protected information and other agreed redactions) took over two thousand hours of just contract attorney time over several weeks. Fenske Decl. ¶ 5. And that process was able to be completed on an expedited basis as the result of a further agreement of the parties that Georgetown could redact certain information that was unrelated to any of the 150 students Plaintiffs identified. *Id.* Here, Plaintiffs are not limiting their requested review to *any* particular candidates, so there would be no basis to bulk-redact information regarding other candidates. In effect, Plaintiffs are asking for a full ESI review of not just the 150-candidate sample, but as to all approximately 1,600 students

7

that would have been on the President's list over the 20-year period for which Plaintiffs are seeking discovery. The scope of that request is staggering, especially considering the amount of FERPA-related information that is bound to be part of those records and will require redaction.

*Third*, the discovery is unnecessary in light of the fact that Plaintiffs are scheduled to depose President DeGioia and Mr. Koenig in early January 2024. They can ask both individuals about any student on the President's List referenced in the voluminous materials Georgetown has already produced, many of which describe the candidate's relationship with actual or potential donors to the University. That alternative alone shows that the burdensome document search Plaintiffs now demand is inappropriate. *See, e.g.*, *Russell*, 2009 U.S. Dist. LEXIS 37300 at *8-9.

*Fourth*, Plaintiffs misstate the record to justify their request. For example, they claim that "the productions [Georgetown] has recently made have omitted documents which may be highly relevant but are neither spreadsheets nor emails." Mot. at 9. This is baseless. Georgetown produced PDFs, PowerPoints, and Word documents in the Advancement Office productions. Fenske Decl. ¶ 3. Further, no document types were categorically excluded from the ESI review for the 150 President's List candidates, which is evident from the fact that 132 PDFs and Word documents were produced in those productions. *Id.* ¶ 4. Finally, Plaintiffs misrepresent Georgetown's willingness to designate the President's Office as a custodian when relevant. Mot. at 5. Georgetown has produced 1,286 documents from President's Office custodians to date. Fenske Decl. ¶ 7.

## II. Plaintiffs' Request that Georgetown Respond to Plaintiffs' Informal Questions Is Improper

Puzzlingly, and without referencing it in their motion or citing any authority for the request, Plaintiffs ask the Court to enter a proposed order that includes the following:

> With respect to any Excel files, spreadsheets or similar documents included in the "PL Excel Files" or "Advancement Documents" referenced in the Aug. 30 Order,

8

Georgetown will, through its counsel and in good faith, respond to written and oral questions (including reasonable follow-up questions) from Plaintiffs' counsel concerning the understanding and interpretation of those materials. ECF No. 505-4 ¶ 3.

Plaintiffs chose not to propound any formal discovery, such as interrogatories, as to these issues (and the deadline for such written discovery has passed), and they cite no authority warranting an order that Georgetown respond to such informal questions (and Georgetown is unaware of any). To be sure, to date, Georgetown has worked cooperatively with Plaintiffs to answer appropriate questions about the meaning of structured data fields. And Georgetown will consider responding to any similar, reasonable questions about the meaning of the documents in question from its President's or Advancement office. But there is no basis to *order* Georgetown to respond to such informal discovery, especially given that Plaintiffs have other avenues through formal discovery to obtain the information they claim to need.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be denied.

Dated: November 22, 2023

Respectfully submitted,

By: */s/ Britt M. Miller*
Britt M. Miller
Daniel T. Fenske
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel.: 312-783-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com

*Counsel for Defendant Georgetown University*

**PUBLIC VERSION**

**CERTIFICATE OF SERVICE**

I, Britt M. Miller, an attorney, hereby certify that on November 22, 2023, I caused a true and correct copy of (1) the foregoing Georgetown University's Response to Plaintiffs' Motion to Designate Georgetown's President and His Assistant as Custodians and to Compel Georgetown to Produce Documents, (2) Declaration of Daniel T. Fenske, and (3) Exhibits to Declaration of Daniel T. Fenske to be served electronically on all counsel of record via email.

/s/ *Britt M. Miller*
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com