**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ANDREW CORZO, et al. individually and on behalf of all others similarly situated, | ) ) | |
| | ) | Case No. 1:22-cv-00125 |
| *Plaintiffs,* | ) ) | Hon. Matthew F. Kennelly |
| v. | ) ) | |
| BROWN UNIVERSITY, et. al, | ) ) | |
| *Defendants.* | ) | |

**UNIVERSITY OF PENNSYLVANIA DOE STUDENTS 1-8**
**RESPONSE IN SUPPORT OF FERPA NOTICE OBJECTION LETTERS**

University of Pennsylvania Doe Students 1-8 (the "Students"), by and through undersigned counsel, submit this Response in Support of their FERPA Notice Objection Letters. The Students respectfully request that the Court consider the privacy interests they have expressed in those letters and conclude that any purported need for the de-anonymization of certain students' records is outweighed by those privacy interests, particularly given the information already in Plaintiffs' possession and the serious irreversible impact any disclosure of the Students' de-anonymized records will have on them.

I.    **BACKGROUND**

The Students are current and former students of Defendant University of Pennsylvania ("Penn") who Plaintiffs inserted into this lawsuit because Plaintiffs are seeking to claim that the Students "would not have been admitted [to Penn] **but for** a donation or [Penn's] expectation of a donation." (Dkt. No. 433, p. 5) (emphasis in original). Plaintiffs have no basis to believe that any of the Students were unqualified to attend Penn or that any donation impacted a Student's admission and this insinuation has already caused the Students significant harm. Instead, in a fishing expedition seemingly designed to put pressure on Penn, Plaintiffs admittedly targeted the

Students "us[ing] publicly available information to identify students whose families have made or were prospects to make substantial donations to the university to which the student was admitted." (Dkt. No. 443-1, p. 5). Indeed, the Students understand that counsel for Plaintiffs informed counsel for Penn that the inclusion of the Students was just "shooting in the dark" and that one student in particular was included on the list because it looked like it took the student six years to graduate high school, when in reality the student spent six years at a grade 7-12 school. Plaintiffs wanted to "test whether the academic qualifications of the children [of families they believed made significant contributions] were consistent with the rest of the class admitted with them." (Dkt. 461, p. 9). This fishing expedition is baseless.

The Students understand that, to the extent such records exist, Penn has already produced:

- Admissions data (including the Students') from 1998 to the present in an anonymized format. (Dkt. 461, p. 7).

- Data used to evaluate an application's merits and any tags that might be applied for students of interest to the university's development advancement, or president's offices (if such tags exist). (Dkt. 461, p. 12-13).

- "[R]esponsive documents from admissions custodians that mention many of the donors on Plaintiffs' lists together with any one of the 47 search terms related to donations or wealth, and a whole range of other responsive documents hitting on other related search terms." (Dkt. 461, p. 13).

Despite having all this information, the Plaintiffs seek the Students' de-anonymized education records.

Between October 27, 2023 and November 3, 2023, the Students received notices from Penn that their highly sensitive, personal, and confidential information may be disclosed to parties in this case and that they could submit letters to the Court objecting to the disclosure of this information. On November 17, 2023, the Students submitted their objection letters to the Court objecting to the disclosure of their education records for a variety of personal and important

reasons. The Students continue to object to the de-anonymization of their education records. If the Students' de-anonymized records are produced in this case (an antitrust class action about financial aid that has nothing to do with 8 individual students), the harm to their reputations and well-being will be permanent and wide-ranging. The Students ask that the Court conclude that Plaintiffs' purported need for the records do not outweigh the significant privacy interests of the Students.

## II. ARGUMENT

### a. The Public Interest in Maintaining the Privacy of Students' Education Records Requires Plaintiff to Meet a Heightened Standard.

There is a public interest in maintaining the privacy of students' education records. Indeed, the Family Educational Rights and Privacy Act ("FERPA") was enacted to protect the privacy of education records. *See* 34 C.F.R. § 99.2 ("The purpose of this part is to set out requirements for the protection of privacy of parents and students under section 444 of the General Education Provisions Act, as amended."); 120 Cong. Rec. 39,862 (1974) ("[t]he purpose of the Act is two-fold – to assure parents of students, and students themselves if they are over the age of 18 or attending an institution or postsecondary education, access to their education records and *to protect such individuals' rights to privacy by limiting the transferability of their records without their consent*.") (emphasis added).[1] FERPA was intended to clear up confusion so that "parents and students may properly begin to exercise their rights under the law, and the protection of their privacy may be assured." 120 Cong. Rec. 39,863 (1974).

Courts recognize that parties must meet a higher standard for the disclosure of student education records in discovery because of the protections afforded by FERPA. *Wanko v. Bd. of Trs. of Ind. Univ.,* 2018 WL 3631579, at *4 (S.D. Ind. July 30, 2018), *aff'd* 927 F.3d 966 (7th Cir.

---

[1] Senator Buckley, one of FERPA's authors, further stated that FERPA would "provide parents with access to the children's school records, to prevent the abuse and improper disclosure of such records and data, and to restore the rights of privacy to both students and their parents." 120 Cong. Rec. 13,952 (1974).

2019) ("Congressional policy expressed in [FERPA] places *a significantly heavier burden* on a party seeking access to student records to justify disclosure than exists with respect to discovery of other kinds of information, such as business records.") (emphasis added). Specifically, "Before disclosure of FERPA-protected documents pursuant to a court order, the party seeking disclosure 'is required to demonstrate a *genuine need for the information that outweighs the privacy interests of the students*.'" *Banks v. Baraboo Sch. Dist.*, 2020 WL 5751415, at *4, *7 (W.D. Wis. Sept. 25, 2020) (emphasis added).

Plaintiffs cannot meet this higher standard for disclosure because Plaintiffs do not have a need for the information they seek (for the Students to be identified in applicable records already produced in this case). Any arguable need for the information does not outweigh the privacy interest of the Students.

**b. Plaintiffs Do Not Have a Need for De-Anonymized Educational Records of Objecting Students.**

Plaintiffs have not identified a "genuine need" for de-anonymized educational records of any Student. Plaintiffs' purported basis for obtaining de-anonymized educational records is to try to establish that the Students would not have been admitted but for a donation or Penn's expectation of a donation from the Student or Students' family and advance their theory of "wealth favoritism." (Dkt. 433, p. 5; 443-1, p. 5-6) ("All [Penn] has to do to avoid giving notice to these students is to acknowledge that they would not have been admitted **but for** a donation or [Penn's] expectation of a donation.") (emphasis in original). However, Plaintiffs already have information needed to assess whether donations were a but-for cause of admissions of students at Penn, which suggests their requests related to the Students are for other purposes.

Plaintiffs have documents from Penn's admissions office that are responsive to a long list of search terms indicating that the document might relate to donations or wealth, including parents'

names. Plaintiffs further have information necessary to match admissions data to any Student who appears in such communications. Specifically, with the information already in their possession, Plaintiffs can review the admissions data for a student that is discussed in the admissions documents related to wealth to determine whether that student's data supports their argument. The only thing Plaintiffs are missing is the actual name of the students within the documents, which is not necessary for their case.

To the extent Plaintiffs claim they do not have information that they need to be able to make this comparison as to certain Students, there is no need to specifically identify each individual Student rather than provide information in an anonymized format. Moreover, if Plaintiffs seek information about Penn's admissions practices, they can obtain this information by deposing additional witnesses from Penn instead of implicating individual students (including some current students) who are already impacted by the suggestion that they were not qualified for admission to Penn. Plaintiffs do not need any information for any of the Students specifically.

The Seventh Circuit has denied the disclosure of student names in connection with education records when the names were irrelevant and therefore not necessary, as they are here. In *Wanko v. Bd. of Trustees of Ind. Univ.*, 2018 WL 3631579 (S.D. Ind. July 30, 2018), the plaintiff sued her school for race discrimination and sought student records, including names, for students in her graduating class. The court denied the motion to compel finding "student names are not relevant to [plaintiff's] discovery request" and that "[h]aving student names will not provide [plaintiff] with any additional information that she is not already privy to, but would infringe on student privacy under FERPA." *Id.* at *4. The Seventh Circuit affirmed the decision and upheld the denial of the motion to compel. *Wanko v. Bd. of Trustees of Indiana Univ.*, 927 F.3d 966, 969 (7th Cir. 2019).

Other courts similarly have declined to permit the disclosure of education records when the information requested was irrelevant or unnecessary, and therefore not needed. *See, e.g., Roe by & through Slagle v. Grossmont Union High Sch. Dist.*, 2020 WL 3268612, at *2 (S.D. Cal. June 16, 2020) (finding parties "have not shown that their interest in obtaining the records outweighs the student's privacy interest."); *N.D. ex rel. Dorman v. Golden*, 2014 WL 1764714, at *4 (M.D. Ala. May 1, 2014) (granting motion to quash subpoena for educational records when defendants "have failed to establish a 'genuine need for the information that outweighs the privacy interests of [the plaintiff].'"); *Keerikkattil v. Hrabowski,* 2014 WL 12737622, at *1 (D. Md. June 30, 2014) (concluding the student names were irrelevant to the issues in the case and denying request for unredacted student records); *Sanders v. Career Educ. Corp.,* 2007 WL 9782560, at *1-2 (D. Md. Dec. 7, 2007) (granting motion for protective order over student-related documents and redactions finding that "Plaintiffs have not articulated a genuine need for the identities of the non-Plaintiff students and thus have failed to meet the significantly heavier burden imposed because of FERPA.").

Plaintiffs cannot meet their burden of showing they need to tie the Students' names to their already-disclosed education records, particularly given the information already in Plaintiffs' possession.

### c.  The Students' Privacy Interests Significantly Outweigh Any Purported Need for De-Anonymized Records.

Even if the Plaintiffs can demonstrate they have some need to attach the Students' names to their already produced education records, the Students' privacy interests outweigh any such need. As is clear from the Students' objection letters, the argument Plaintiffs are trying to make about certain students – that they would not have been admitted but for donations or potential

6

donations – is simply not true as well as greatly concerning and offensive to the Students.[2] Many of the Students were highly qualified. The Students include students with very high GPAs, students with near-perfect test scores, and those that were highly involved in extracurriculars. This is not a case about individual students and their parents; singling out individual students in this way is unfair and unnecessary.

Setting qualifications aside, the Students are concerned that this unfounded claim by Plaintiffs could cause significant reputational harm and embarrassment for them both personally and professionally. Indeed, disclosure of the Students' education records could have an impact on their professional reputations and families, and it could cause friends and peers to unfairly scrutinize them. Even the mere idea of having their information disclosed has already caused the Students stress and concern about reputational harm that could be caused by any unwarranted connection to this case. The Students are also concerned that the attorneys in this case will have private information about them. The Students have a significant interest in keeping their records (which they submitted to Penn with the expectation of privacy) private in this case. Courts have declined to permit the disclosure of education records when the privacy interests of the students outweighed the purported need. *See Averett v. Hardy,* 2021 WL 11594173, at *3 (W.D. Ky. Oct. 26, 2021) (granting motion to quash the subpoena for student conduct files finding plaintiff "has not met the high burden of relevancy required for discovery of an unknown number of unrelated student disciplinary files" and "[t]he privacy interests of these third-party students outweighs any potentially relevant information that could be uncovered from disclosure of these files."); *see also Yu Lin v. University of Neb.,* 2006 WL 680898, at *1 (D. Neb. March 16, 2006) (noting that "the

---

[2] Former Penn Vice Dean and Interim Dean of Admissions John McLaughlin also testified that it is not true and of the "[m]ore than 10,000" applications he reviewed over more than ten years, "[z]ero" unqualified applicants were admitted because of an actual or potential donation from a relative. (Dkt. 461, p. 17-18). Elaine Varas, Senior University Director of Financial Aid, similarly testified "it does not matter what a donor is giving" for admissions purposes. *Id.*

privacy of student records presents a significant countervailing consideration" and granting motion for protective order over academic records of other students "in the absence of a definite explanation by plaintiff about why she needs the requested records.").

In other instances, courts have ordered the production of relevant education records, but required the information to be provided in an anonymized format – which has already occurred here. *See Loch v. Bd. of Educ. of Edwardsville Comm. Sch. Dist. #7,* 2007 WL 3037288, at *1-2 (S.D. Ill. Oct. 17, 2007) (finding defendant's provision of information plaintiff sought, but withholding the individual identities of students "an appropriate response."); *Tillman v. Gwinnett Cnty. Sch. Dist.,* 2005 WL 8154776 at *7 (N.D. Ga. 2005) ("the courts finds no compelling reason that Plaintiff would need access to the specific identities of students…and the court feels it is its duty to protect the privacy of students not involved in this action" and ordering the production of relevant information "but not the student's name").

### d.  The Confidentiality Order Does Not Provide Adequate Assurances to the Students.

Although the Court has entered a Confidentiality Order (Dkt. 244), which should apply to the Students' education records, the Order is insufficient to protect the Students' privacy interests. Once the Students' names are connected to their education records, the Students lose control over their FERPA-protected records and the damage is done. By the Students' count, there are nearly 100 attorneys in this lawsuit. It is possible that there will be an inadvertent re-disclosure of information, in which case the Students will not be able to enforce the Confidentiality Order. Indeed, it appears that counsel in this case have already improperly disclosed Attorneys' Eyes Only and Confidential Information. For example, on May 8, 2023, Plaintiffs filed a motion "to limit redaction of donor names as to Northwestern and Yale." (Dkt. 355). On May 9, 2023,

Plaintiffs then file a Motion to Retain seal on Plaintiffs' Motion to Limit Redactions as to Northwestern University and Yale University. In the Motion, Plaintiffs state:

> On the May 8, 2023 [sic] at 9:36 pm ET, Plaintiffs filed a Motion to Limit Redactions As to Northwestern and Yale with attached exhibits. (ECF No. 355). These exhibits contained documents designated as Attorneys' Eyes Only pursuant to the Confidentiality Order, and the Motion contained quotations from these exhibits. Plaintiffs inadvertently filed the unredacted Motion on the public docket. Upon discovery of the issue, Plaintiffs immediately left a voicemail with the Clerk of the Court requesting that the filing be placed under a temporary seal. On May 9 at 9:30 am ET, when the Court opened, Plaintiffs contacted Judge Kennelly's Chambers and requested that the filing be placed under a temporary seal, which the Court completed immediately.

(Dkt. 357, p. 1-2). Protected information was further inadvertently made public in an August 21, 2023 Joint Status Report (Dkt. 433, 433-2). It was not until October 27, 2023 that a defendant in the case filed a motion to seal the document. (Dkt. 469). A similar improper filing may have occurred as recently as December 1, 2023. (*See* Dkt. 542).

If the education records are disclosed, the Students will have to monitor the docket to ensure their information has not been inadvertently publicized, and the Students will have no way to know if counsel otherwise inadvertently disclose their records. If the Students' records are made public, there is no way to un-ring that bell – their reputations (and well-being) will suffer. And, if the information is inadvertently publicized or disclosed, Students have no available remedy as they are not parties to the case or the Confidentiality Order. There is also no clear process for challenging any additional disclosure of information. Plaintiffs previously stated they intend to use the records "to paint a more 'vivid' picture for the jury." (Dkt. 461, p. 8). Per the Confidentiality Order, "a party that intends to present Confidential Information at a hearing or trial shall bring that issue to the Court's, the parties, and the producing parties' or non-parties' attention." (Dkt. 244, p. 16). The Students are not producing the information so it is unclear whether they will be notified of the Plaintiffs' intent and, if notified, it is unclear how students will be able to further challenge

the additional disclosure of information. As such, the Confidentiality Order does not provide adequate assurances to the Students.

**III.** **CONCLUSION**

For the foregoing reasons, University of Pennsylvania Doe Students 1-8 respectfully request the Court consider the privacy interests expressed by University of Pennsylvania Doe Students 1-8 in the objection letters submitted to the Court and conclude that any purported need for the de-anonymization of certain students' records is outweighed by those privacy interests, particularly given the information already in Plaintiffs' possession.

Date:   December 18, 2023                    Respectfully Submitted,

                                                                      /s/ Sarah K. Wake

Sarah K. Wake
Melissa M. Weiss
McGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, Illinois 60601-1818
Tel:    312.849.8100
Fax:    312.849.3690
Email:  swake@mcguirewoods.com
            mweiss@mcguirewoods.com

***Attorneys for University of Pennsylvania Students 1-8***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 18, 2023, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all attorneys of record.

<u>  /s/ Sarah K. Wake         </u>