UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>*Defendants*. | Case No. 1:22-cv-00125-MFK<br><br>Hon. Matthew F. Kennelly |

**THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL (ECF No. 540)**

Penn opposes Plaintiffs' motion to compel production (ECF No. 540), which is purportedly based on this Court's October 26, 2022 Order Regarding FERPA and the Production of Certain Documents and Information (ECF 231) ("2022 FERPA Order"). Plaintiffs' entire motion depends on a strawman: that the FERPA Order addresses the scope of discovery and thus

1

compels the production of the materials at issue. As Plaintiffs know, that is wrong. The FERPA Order did not order *any* discovery. And none of the information in dispute is being withheld based on FERPA. The motion to compel premised on the 2022 FERPA Order should therefore be denied on that basis alone. Moreover, Penn has already agreed to provide most of what Plaintiffs seek; the only real issue in dispute is whether Plaintiffs are entitled to discovery from the Development or President's Offices. That has nothing to do with FERPA and this Court has already held that Plaintiffs are not entitled to this discovery and nothing has changed since then.

1. Even if Plaintiffs' pretextual basis for relief were not, by itself, grounds to deny the motion (and it clearly is), Plaintiffs have not shown that they are entitled to the discovery that they seek. As part of an ill-conceived effort to suggest that Penn was not "need blind," as Plaintiffs understand that statutory term, Plaintiffs selected a scattered group of Penn students whom they just hoped were (1) related to potential donors and (2) not qualified for admission, thereby perhaps indicating that Penn was not "need blind."

2. Plaintiffs had no real basis to believe that these students were not qualified for admission to Penn; as lead counsel for Plaintiffs put it, they simply took a "shot[] in the dark." Gringer Decl. ¶ 4. For example, Plaintiffs selected one student because her LinkedIn profile said that she attended a school for six years, which Plaintiffs took to mean that she needed six years to graduate from high school. *Id.* ¶ 3. Notwithstanding that this approach lays bare the cruelty of what Plaintiffs seek to do here, Plaintiffs were simply wrong. The school that the student attended includes grades 7 through 12: six years. *Id.* The student graduated high school in the traditional four years. *Id.*

3. In any event, Penn objects only to the portions of Plaintiffs' request that this Court has already held are inappropriate because they are unlikely to lead to production of relevant

information, or that are effectively brand new requests for documents, issued after the deadline for written discovery and when Plaintiffs have already used their allotment, without any meaningful justification for the request.

4. ***First,*** Plaintiffs seek "the admission files for each student or, at a minimum, documents sufficient to show each student's academic data (SAT/ACT scores, AP grades, GPA, Class Rank, etc.), as well as any ratings used to admit or deny students for admission." ECF 540 ¶ 7. Penn has already produced that data in anonymized form. And, Penn has also already agreed to provide Plaintiffs with the unique identifiers ("UIDs") that correspond with the names of the non-objecting students. Gringer Decl. ¶ 6 Ex. 3. Plaintiffs can use those UIDs to locate each student's "academic data (SAT/ACT scores, AP grades, GPA, Class Rank, etc.), as well as any ratings used to admit or deny students for admission" in the structured data that Plaintiffs already possess. That request is therefore moot and should be denied on that basis.[1]

5. ***Second,*** Plaintiffs seek "all documents located in the Admissions, President's or Development Offices concerning any donations by each student's parents (or their capacity to make such donations), including any correspondence with those parents." ECF 540 ¶ 7.

6. As to the Admissions Office, Penn has already produced responsive documents from the Admissions Office that contained (1) any one of dozens of mutually negotiated words related to wealth or donations and (2) the names of the parents of all but one of ***the very same students at issue here***. *See* Gringer Decl. ¶ 7. Penn also agrees to produce similar documents for the one remaining student. *Id.* Penn has also agreed to reproduce any of those documents that contain the names of these students or their parents, without redacting their names (in other

---

[1] Lead counsel for Plaintiffs confirmed that it had found no "gaps" in Penn's structural data, meaning no "missing data that should have been supplied." Gringer Decl. ¶ 6 Ex. 4 (Nov. 30, 2023 email from R. Litan to D. Gringer).

words, to do what the FERPA order actually requires). *Id.* Thus, if there are any documents from any Admissions Office custodian "concerning any donations by each student's parents (or their capacity to make such donations)," ECF 540 ¶ 7, then Plaintiffs already have them, and Penn has agreed to provide them in unredacted form. This portion of Plaintiffs' second request is likewise moot.

7. As to the President's and Development Offices, this Court has already held (repeatedly) that it will not grant discovery into those offices absent some specific evidence suggesting that it will lead to relevant information. *See* Gringer Decl. Ex. 5 (Feb. 8, 2023, Hearing Tr. 54:14-55:3); Ex. 6 (Feb. 23, 2023, Hearing Tr. 6:15-7:8).[2] There is no such reason here. To the contrary, discovery since this Court's ruling in February has repeatedly and consistently confirmed that the Penn Admissions Office alone decides who is admitted and why, not the President's Office and not the Development Office. *See, e.g.*, Gringer Decl. Ex. 8. ("McLaughlin Dep. Tr.") 100:15-102:13; 108:8-109:20; 145:10-156:16; 152:13-24; 164:12-165:1; *id.* Ex. 9 ("Furda Dep. Tr.") 86:7-88:3; 128:19-131:10). Information solely in possession of the President's or Development Office—that is, information the Admissions Office did not have—cannot have affected the Admissions Office's decision whether to admit or deny any student. It is therefore irrelevant.

8. Separately, Plaintiffs' request for "all" correspondence with the students' parents, without limitation as to subject matter or timing, is facially overbroad. The Admissions, President's, and Development Offices may communicate with students' parents for many different reasons and at many different times, the overwhelming majority of which have nothing

---

[2] The Court declined to revisit this issue in ruling on Plaintiffs' prior motion to compel Defendants to issue FERPA notices. *See* Gringer Decl. Ex. 7 (Oct. 5, 2023 Hearing Tr. 25:13-29:3)

4

to do with this case. Plaintiffs have not and cannot offer any reason to think *all* communications with these parents will be probative.

9. ***Finally,*** Plaintiffs seek "all documents concerning that student's … designation (by Penn) as 'BSI,' 'BSI-A,' 'BSI-B' or 'BSI-C,' and/or included in the following documents: PENN568-LIT-00158475, PENN568-LIT-00162228, PENN568-LIT-00163323, PENN568-LIT-00163325, PENN568-LIT-00163324." ECF 540 ¶ 8. Plaintiffs already have these designations and documents, and Plaintiffs will be able to use the UIDs to see if any non-objecting students appear on these lists. Gringer Decl. ¶ 8. As just discussed, they will also be able to see any communications with or among the Admissions Office mentioning these students' families together with any words suggesting potential donations. *Id.* ¶ 7. And any additional information outside the possession of the Admissions Office would necessarily be irrelevant to the admissions decision.

10. In any event, producing "all documents" concerning any of these students' designations "as 'BSI,' 'BSI-A,' 'BSI-B' or 'BSI-C'" is not covered by any existing request for production and thus cannot be the subject of a motion to compel.

11. Finally, Plaintiffs attempt to suggest something untoward (or even relevant) from these designations falls flat. Penn's Dean of Admissions for nearly the entirety of the relevant period has testified that BSI "tags" were not indicators of secret wealth favoritism, but rather were used to track applicants connected to involved alumni who may need to be alerted if the student was not admitted. Gringer Decl. Ex. 9 (Furda Dep. Tr. 132:19-133:3; 135:12-137:22;

5

340:4-15).[3] There were numerous ways to gain this designation and this was not a proxy for donations. *Id.*

12. Documents concerning any student's inclusion on the spreadsheets Plaintiffs identify likewise will not help Plaintiffs, and likewise are not covered by any existing request for production. Those spreadsheets merely track the correspondence and outreach to the Admissions Office from applicants themselves or from third parties regarding applicants, as well as the eventual admissions decisions for those students. The lists include the identity of the individual who reached out to the Admissions Office—the "sponsor," Gringer Decl. Ex. 9 (Furda Dep. Tr. 210:21-211:8)—and additional notes. Only three students at issue appear in these spreadsheets, and none of the "Sponsor Notes" suggests anything about their family's financial circumstances.

13. For these reasons, Penn requests that the Court deny Plaintiffs' motion to compel (ECF No. 540).

---

[3] In a footnote, Plaintiffs vaguely reference deposition testimony of Sara Harberson, who stopped working at Penn in 2008 and is now a media personality and private admissions counselor who "makes money by sensationalizing admissions." Gringer Decl. Ex. 8 (McLaughlin Dep. Tr. 164:7-8). Plaintiffs offered Ms. Harberson a consulting gig on this case, and her testimony is not credible on numerous dimensions. Moreover, she testified that the Dean of Admissions was responsible for placing these tags on applicant files, and he never told her why he would do so. Gringer Decl. Ex. 10 (Harberson Dep. Tr.) 392:5-393:20. Her guesses about the reasons for those tags were not based on personal knowledge and have no foundation. In fact, testimony from the actual Deans of Admissions made clear that no applicants were admitted because of actual or potential donations to Penn. *See, e.g.*, Gringer Decl. Ex. 9 (Furda Dep. Tr. 344:11-345:3); Ex. 8 (McLaughlin Dep. Tr. 233:5-15).

Dated: December 18, 2023

By: */s/ David Gringer*
David Gringer
Alan Schoenfeld
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: 212-230-8800
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Seth Waxman
WILMER CUTLER PICKERING HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel.: 202-663-6800
seth.waxman@wilmerhale.com

Daniel Martin Feeney
Edward W. Feldman
MILLER SHAKMAN LEVINE & FELDMAN LLP
180 North LaSalle Street
Suite 3600
Chicago, IL 60601
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for Defendant The Trustees of the University of Pennsylvania*