# EXHIBIT 3

```
 1              IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3

 4   SIA HENRY, et al.,                 )  Docket No. 22 C 125
                                        )
 5                  Plaintiffs,         )
                                        )
 6           vs.                        )
                                        )
 7   BROWN UNIVERSITY, et al.,          )  Chicago, Illinois
                                        )  October 5, 2023
 8                  Defendants.         )  1:00 o'clock p.m.

 9
                      TRANSCRIPT OF PROCEEDINGS
10           BEFORE THE HONORABLE MATTHEW F. KENNELLY

11
     APPEARANCES:
12

13   For the Plaintiffs:   GILBERT LITIGATORS & COUNSELORS
                           BY:  MR. ROBERT DEWITT GILBERT
14                              MR. ROBERT SOL RAYMAR
                           11 Broadway, Suite 615
15                         New York, NY  10004
                           (646) 448-5269
16

17
                           FREEDMAN NORMAND FRIEDLAND LLP
18                         BY:  MR. EDWARD J. NORMAND
                           99 Park Avenue, Suite 1910
19                         New York, NY  10016
                           (646) 970-7513

20

21

22
     Court Reporter:       MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
23                         Official Court Reporter
                           219 S. Dearborn Street, Suite 2102
24                         Chicago, IL  60604
                           (312) 435-5639
25
```

```
 1  APPEARANCES CONTINUED:

 2
    For the Defendants:
 3

 4  Northwestern
    University:            SIDLEY AUSTIN
 5                         BY:  MR. SCOTT DAVID STEIN
                           One South Dearborn
 6                         Chicago, Illinois 60603
                           (312) 853-7000
 7

 8
    Georgetown
 9  University:            MAYER BROWN LLP
                           BY:  MS. BRITT MARIE MILLER
10                         71 South Wacker Drive
                           Chicago, IL  60606
11                         (312) 782-0600

12
    Trustees of the
13  University of
    Pennsylvania:          WILMER CUTLER PICKERING HALE AND DORR LLP
14                         BY:  MR. SETH P. WAXMAN
                           2100 Pennsylvania Avenue, N.W.
15                         Washington, DC 20037
                           (202) 663-6800
16

17

18

19

20

21

22

23

24

25
```

1  THE COURT: So stop right there. You're saying that
2  the plaintiffs have never said, hey, tell us who these 180
3  names are?
4  MR. WAXMAN: Right.
5  THE COURT: So I think we may be ships passing in the
6  night here.
7  Let me ask this. I have a question for plaintiffs'
8  counsel. And I want to put aside for the moment this argument
9  that wealth favoritism, whatever you want to call it, impacts
10 whether it's per se or rule of reason. Put that aside. I'm
11 just talking about the rest of the case.
12 Okay. So if every defendant stipulated, yeah, you
13 got us, we consider financial need in determining admissions,
14 and we did during the relevant time period, we wouldn't need
15 to be doing this stuff, right?
16 MR. RAYMAR: That's correct. That's why we withdrew
17 Notre Dame, who stipulated just that this morning.
18 THE COURT: Yeah. Okay. And, basically, what you're
19 talking about here is that -- and I know -- I've seen
20 references to this, I don't think it's in your side's papers
21 but in the other side's papers, that -- on this proposition
22 that you mentioned a minute ago, which is, we might have to
23 prove or we might -- at least we have to be prepared to prove
24 that student A who had wealth as a consideration wouldn't have
25 gotten in but for wealth as a consideration.

1  That -- am I getting that right?  That argument has
2  been advanced at some level?
3  MR. RAYMAR:  With a nuance.
4  THE COURT:  Yeah.
5  MR. RAYMAR:  Most applicants, and the presidents of
6  the universities usually say this after the year is done, fit
7  within a range that they're not geniuses who are automatically
8  admitted, and they're not people who are automatically
9  rejected.  They're people in the middle for whom a thumb on
10 the scale, whether it's a letter from the Lacrosse coach --
11 THE COURT:  Yeah, can make a difference.  Right.
12 MR. RAYMAR:  -- can make a difference, and where a --
13 a -- if it's a legacy, a long period of donations, a
14 significant donation, makes the difference.  It breaks the tie
15 and allows the president to put this person on an admit list
16 or it allows the development office to do the same.  And in
17 the admissions decisionmaking process, it is a factor that has
18 weight.  Does it have to be dispositive weight?  No.  Nor do
19 we have to prove that but for the donation, the applicant
20 would've been rejected.  We're not saying that.
21 We're saying that in each of these cases, we want to
22 show that the donation impacted the admissions process.
23 THE COURT:  Okay.  So I'm just going to ask this
24 because -- is it the position -- I'm asking this to the
25 defendants.  I got like 50 people in the room here.  Okay?

1  MR. WAXMAN:  But I'm the only one at the microphone.
2  THE COURT:  Yeah, but the rest of them are here, and
3  they all gave their names to the court reporter, and I've got
4  them in my claws until they walk out the door.
5  Is it the position of any defendant -- and I think
6  I've seen this argument in papers here -- is it the position
7  of any defendant that as to student A, there's going to be an
8  argument that, nah, we really didn't consider wealth in that
9  because that person would have gotten in anyway even if they
10 didn't have somebody who was making -- who was giving a lot of
11 money?
12 MR. WAXMAN:  Well, I -- I will defer to my colleagues
13 with respect to their respective class.
14 THE COURT:  It's a yes, right?  Somebody's arguing
15 that right now, right?
16 MR. WAXMAN:  Well, of course.  Just speaking for
17 Penn --
18 THE COURT:  Okay.  Fine.  The motion to compel is
19 granted.  It's that simple.
20 The motion to compel is granted.
21 MR. RAYMAR:  Thank you.
22 THE COURT:  Now we're going to move on to the other
23 thing.
24 You know, the whole thing about, you know, trotting
25 people in public is a non-starter here because there's a

1  MR. WAXMAN: -- so let me just pose the question for
2  clarification.
3  The list of 180 names includes many, many names that
4  were previously provided us in Appendix A for their first
5  request for production.
6  We have searched all of our records, and we have
7  produced all responsive documents with UIDs so that if there
8  is correspondence or there's a list of special people along
9  with the structured data, they already have it.
10  Do we now have to provide FERPA notices with respect
11  to the people that we've already searched for telling them
12  that we're going to unmask their identities, or is it just the
13  new people on this list that weren't previously the subject of
14  documents discovery under an RFP?
15  THE COURT: Okay. So I'm going to say this as nicely
16  as I can and with respect.
17  I granted the motion. That means the way you know
18  what was granted is you look at the prayer for relief in the
19  motion and I granted that.
20  Now, these arguments about how we already did this
21  and we already did that and we already did this and we already
22  did that, that might have been an argument that somebody could
23  have made in saying, well, you should only grant this in part.
24  That wasn't the argument.
25  The argument was, they don't need this stuff, they

```
 1   wasted their time, et cetera, et cetera.
 2              I ruled against you.  The motion is granted.
 3              If you confer afterwards and you point out to the
 4   plaintiffs, hey, you don't really need this, here's why, and
 5   the plaintiffs agree to it, that's fine, but I have granted
 6   the motion --
 7              MR. WAXMAN:  Okay.
 8              THE COURT:  -- and the prayer for relief defines the
 9   scope of what I have granted.  I cannot be any clearer than
10   that.
11              MR. WAXMAN:  Okay.  I --
12              THE COURT:  Do you want to keep going?
13              MR. WAXMAN:  I have another question for
14   clarification.
15              THE COURT:  Okay.
16              MR. WAXMAN:  There is another part of their motion
17   which we have opposed which doesn't deal with FERPA or UIDs.
18              They have asked for discovery from the president's
19   office -- from the president's offices and development's
20   offices of all documents, whether it relates to an applicant
21   or not, between those offices and donors.
22              This Court has previously said that there will need
23   to be a special showing of particularized need in order to get
24   discovery from president's offices and development offices.
25              THE COURT:  That's not part of this motion, I don't
```

1 think.
2     MR. WAXMAN: It is.
3     THE COURT: Okay. So I'm going to read to you the
4 last -- the -- I'm going to you what the motion says. It's
5 basically two sentences, all right?
6     No, it's one sentence.
7     "On the grounds set forth in the supporting
8 memorandum submitted on this date, plaintiffs respectfully
9 move the Court to enter an order as follows, colon: Each
10 defendant, with the exceptions of MIT, Cal Tech, Chicago, and
11 Yale, maybe another one or two, is ordered to send FERPA
12 notices pursuant to this Court's prior order regarding FERPA
13 in the same form as Exhibit A to that order to each of the
14 students admitted to that university and identified by
15 plaintiffs as an intended recipient of such FERPA notice."
16 Full stop.
17     That's it. That's what I granted.
18     The thing you're talking about now about president's
19 offices, I'm not seeing that there. And just to be clear, I
20 looked at the last paragraph of the memorandum in support to,
21 and that's docket number 443-1, it says exactly the same thing
22 as what I just read. I mean, there's a word or two different,
23 but it says the same thing.
24     MR. WAXMAN: If that's what your Honor is ordering --
25     THE COURT: That's what I ordered.

|   |   |
|---|---|
| 1 | MR. WAXMAN:  -- that's what we'll do. |
| 2 | THE COURT:  That is what I ordered. |
| 3 | MR. WAXMAN:  Thank you. |
| 4 | THE COURT:  Okay. |
| 5 | All right.  Anything else on the plaintiffs' side |
| 6 | that you need to bring up today? |
| 7 | MR. NORMAND:  No. |
| 8 | THE COURT:  No? |
| 9 | Anything else on the defense side? |
| 10 | Okay.  So, you know, just to make sure that I touch |
| 11 | bases on stuff here, it sounds like you have -- to the extent |
| 12 | that you might need a mediator, there's somebody that's |
| 13 | already been used, and it's -- I think it's -- if I'm |
| 14 | recalling correctly -- is it a judge from some -- from a |
| 15 | district court -- retired judge from somewhere in the Tenth |
| 16 | Circuit or something like that? |
| 17 | MR. NORMAND:  Layn Phillips. |
| 18 | THE COURT:  Oklahoma, maybe? |
| 19 | MR. NORMAND:  That's right. |
| 20 | THE COURT: Yeah.  Okay.  That's fine.  I don't need |
| 21 | to worry about that anymore. |
| 22 | And I think there was one other thing, but it's going |
| 23 | to take me a second to just -- I walked out here without my |
| 24 | hard copy of the status report, so it's going to take me a |
| 25 | second to pull it up.  So bear with me.  Unless somebody has a |