## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated, | **Case No. 1:22-cv-00125** |
| Plaintiffs, | |
| v. | **Hon. Matthew F. Kennelly** |
| BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, | |
| Defendants. | |

### JOINT STATUS REPORT
### JANUARY 11, 2024[1]

---

[1] The parties respectfully request leave to file this overlength Joint Status Report, as Plaintiffs and Defendants agree that a small number of additional pages are necessary to present these matters to the Court.

## I.     PLAINTIFFS' STATEMENT OF RELEVANT ISSUES

### A.     Settlement Update

With the Court granting a one-week extension of the deadline, Plaintiff will file for preliminary approval of the settlement between the plaintiff Class and defendant University of Chicago on January 23, 2024. ECF No. 588. For purposes of efficiency, Plaintiffs respectfully suggest that the Court could potentially handle any issues with regard to that preliminary approval via a tele or video hearing.

### B.     Completed and Pending Depositions

Plaintiffs have taken nearly 60 depositions, and Defendants have taken depositions of each of the named Plaintiffs and certain of their parents. In addition, approximately a dozen depositions are scheduled, and another ten have been formally or informally noticed but not yet scheduled. Plaintiffs have also begun noticing the Fed. R. Civ. P. ("Rule") 30(b)(6) depositions.

### C.     Confirmation About 10-Deposition Cap

The parties have a dispute regarding how Defendants' former employees should be counted for purposes of the 10-depositions-per-Defendant cap, and whether Plaintiffs should be precluded from taking important discovery and depositions. After being unable to resolve the dispute, Plaintiffs informed Defendants of their intent to raise this in the JSR on January 3, 2024.

On December 23, 2022 (ECF No. 262), the parties jointly submitted a proposal on the number of depositions, which was entered by the Court as the Order Regarding Limitations on Number and Length of Non-Expert Depositions (ECF No. 273). The deal as agreed and ordered by the Court provides that: "no individual Defendant will be subject to more than 10 depositions of which no more than one (1) may be a [Rule] 30(b)(6) deposition of up to fourteen (14) hours."

1

On December 28, 2023, Notre Dame refused to schedule four more depositions requested by Plaintiffs on the purported grounds that "Plaintiff have taken 8 depositions of Notre Dame witnesses." On January 3, 2024, Cornell similarly took the position that three noticed depositions would cause Plaintiffs to exceed the 10-deposition limit. Notre Dame and Cornell have arrived at this conclusion by incorrectly counting former employees. In truth, Plaintiffs have only noticed four party depositions of Notre Dame and three of Cornell.

Notre Dame and Cornell's position is inconsistent with the law, upon which Plaintiffs relied to reach the 10-deposition deal with Defendants.[2] When a former employee is deposed, no "individual Defendant" is being deposed and thus, it does not count against the cap. *See generally, Smith v. Kalamazoo Ophthalmology*, 322 F. Supp. 2d 883, 889 (W.D. Mich. 2004) ("Courts adopting this view have generally found that the language of Rule 4.2, which refers to 'a party,' cannot reasonably be interpreted to include former employees where there is no continuing relationship between the organizational employer and its former employee that would furnish a sufficient legal basis for imputing the former employee's statements to the employer."). Defendants' cited cases are not to the contrary.[3]

---

[2] *E.g.*, H.B. Sherman Mfg. Co. v. Rain Bird Nat. Sales Corp., 979 F.Supp. 627, 631 (N.D. Ill. 1997) ("former employees are non-party witnesses"); *LKQ Corp. v. Kia America, Inc.*, No. 21 C 3166, 2023 WL 6623363 at *1 (Oct. 11, 2023) (evaluating motion to quash "non-party former employee"); *Watchfire Signs, LLC v. Cree, Inc.*, No. 20-CV-2040, 2020 WL 12815286 at *4 (C.D. Ill. May 19, 2020) (analyzing convenience of "former employees who are non-party witnesses"); *Freeplay Music, LLC v. Thermaltake USA, Inc.*, 19-cv-1674-GHW, 2019 WL 12375285 at *3 (S.D.N.Y Jul. 9, 2019) ("The other two witnesses are former employees and therefore non-party" witnesses); *Mid-State Aftermarket Body Parts, Inc. v. MQVP, Inc.*, No. 4:03CV00733JLH, 2009 WL 1211440 (E.D. Ark. May 4, 2009) (a former employee is an "independent" witness); *Continental Cas. Co. v. Staffing Concepts, Inc.*, No. 06 C 5473, 2009 WL 3055374 at *6 (N.D. Ill. Sept. 18, 2009) ("former employees of defendants" are "non-party witnesses").

[3] If anything, the fact that in other cases Defendants cite the parties felt the need to agree and specify that former employees counted as party depositions in their stipulations provides further

Notre Dame has argued that in the Order Regarding Deposition Protocol, the provision titled "party depositions" refers to the depositions of any witness who "is a current or former employee of [a Defendant] **and is represented by counsel for that Defendant**." *See* EFC No. 217 (emphasis added). Since the former employees deposed in this case were all represented by Notre Dame's counsel, Notre Dame argues that those witnesses count as "party depositions" for purposes of the 10-deposition limit. This argument has three problems:

First, the provision that Notre Dame relies on relates to how many *lawyers* each side may have present, which is different from how many *depositions* each side may take. Obviously if the same counsel represents both a party and its former employee who is being deposed, then that is relevant to the number of attorneys present at the deposition. But the number of attorneys allowed at a deposition has nothing to do with the number of depositions allowed in the case.

Second, Notre Dame's argument has the absurd result of its attorneys being able to control the number of depositions that Plaintiffs can take. According to Notre Dame, whether a former employee's deposition counts against the cap depends on whether s/he is "represented by counsel for that Defendant." *See* EFC No. 217. Notre Dame's interpretation would give Williams & Connolly LLP ("W&C") partial control over the number of depositions Plaintiffs can take, based on who W&C agrees to engage as a client. This potential for gamesmanship is improper.

Third, Notre Dame's interpretation would create a perverse incentive for Defendants' counsel to engage the party's former employees, which is contrary to public policy. While a defendant's attorney is technically permitted to represent former employees in the same litigation,

---

argument that the Court should not read that language into the stipulation here. *See, e.g.*, *In re Valve Antitrust Litig.*, No. 2:21-cv-563, ECF No. 132 (W.D. Wash. Aug. 2, 2023); *United States v. Google, LLC*, No. 1:23-cv-108, ECF No. 251 (E.D. Va. June 5, 2023).

dual representation is not encouraged.[4] All former Notre Dame employees deposed by Plaintiffs have been represented by Notre Dame's counsel, W&C, and each typically spoke with W&C "five or six" times for "about 25 hours" to prepare for their deposition. Despite the intensive preparation by Notre Dame's own counsel, certain witnesses testified to a remarkable lack of recollection on subjects that were at the heart of their jobs, necessitating further depositions.

Moreover, Notre Dame and Cornell's position is inconsistent with the reality of how many former and current employees have information unique to them that is highly probative of the issues. Cornell, in particular, is highly compartmentalized and underwent numerous personnel changes during the relevant time period.[5] As a result, Plaintiffs have identified at least 30 former and current Cornell employees who were involved with admissions and/or financial aid, and separately, the budgeting and financing of it. Despite that, Plaintiffs are only currently seeking to take one more additional Cornell deposition over the ten-deposition limit[6]

---

[4] *Mid-State Aftermarket*, 2009 WL 1211440 at *4 ("[T]here is risk that a lawyer's representation of one client might materially limit his ability to fulfill his responsibility to the other client. . . . whenever a lawyer for a party solicits a nonparty witness to be his client, the appearance will be given, whether justified or not, that the lawyer is trying to influence the witness's testimony.").

[5] *See, e.g.,* Locke Depo. at 44:25-45:14 ("[T]he president's office and the provost's office, you know, they would have an eye on particular candidates that may have come to their attention. . . . And then VP for student affairs at times would send me a number of students."); 101:21-102:2 ("Kotlikoff is the one I reported to in my last roles at Cornell. At one point Kent Fuchs was provost. Biddy Martin was provost. And then there were some interim folks.")

[6] And Plaintiffs do not intend to depose anywhere near 30 Cornell employees (current or former). But counting former employees towards the deposition limit would prevent Plaintiffs from obtaining unique and relevant testimony. Notre Dame similarly separated the functions of granting financial aid, budgeting for it, and funding it, requiring Plaintiffs to depose current and former representatives in all three groups. Moreover, as discovered through depositions, the budgeting process alone is overseen by a Budget Working Group consisting of at least three people. Plaintiffs cannot be expected to unravel this complex system and get to the primary decision-makers if limited to a half dozen party depositions as Defendants seek to impose.

Plaintiffs have been and will continue to conduct discovery efficiently, and thus will complete the discovery they need without subjecting Notre Dame or Cornell to more than 10 party depositions. However, limiting Plaintiffs to 10 party *and non-party* depositions of each school would be highly prejudicial, particularly as they are poised to take depositions of senior level personnel at both schools. Because the law is clear that former employees are independent third parties for discovery purposes, and Plaintiffs' contemplated depositions of Cornell and Notre Dame are necessary and not unduly burdensome, Plaintiffs now seek confirmation that depositions of former employees do not count against the 10-deposition cap under the Order Regarding Limitations on Number and Length of Non-Expert Depositions.

### D. Response to Penn Regarding Rule 30(b)(6) Deposition Notice

Defendants' complaint regarding the Rule 30(b)(6) depositions for which they must prepare is unfounded as to both procedure and substance. As to procedure, as Defendants themselves have previously contended (and as the Court has appeared to reason), if there is particular relief they mean to seek, they should file a motion to seek it. Citing no precedent or relevant standard, Defendants' generalized grievance seeks merely to short-cut the process of meeting and conferring and avoid their burden of explaining exactly how, in a case of this size, complexity, and time frame, the topics at issue could be too burdensome, unclear, surprising, or disconnected from the central issues in this case for Defendants to identify anyone in their employ to address. That a defendant may insist it does not know the answer to the questions under a given topic, because it cannot determine the answer, does not render the topic improper.

As to substance, Defendants' complaint is baseless. There is no magic in the number of topics noticed for a Rule 30(b)(6) deposition, as the number can be significantly increased or decreased based on their level of generality. Nor does a Defendant's failure to acknowledge the

relevance of a given topic carry the day. As to the one Rule 30(b)(6) notice Plaintiffs served, on the University of Pennsylvania ("Penn"), in reducing the topics down to 45 from 83 after a meet and confer, Plaintiffs have made an effective, good-faith effort to (a) strike a balance as to the level of generality of the noticed topics, (b) substantially reduce the total number of topics balancing Penn's articulated concerns and Plaintiffs' needs, (c) enable a further meet-and-confer if Penn articulates continued concerns regarding the topics, and (d) use the meet-and-confer process with Penn, and their continued work in discovery, to best frame the other Defendants' Rule 30(b)(6) depositions. As it stands, the number of topics Plaintiffs have identified for Penn's Rule 30(b)(6) deposition—contrary to Defendants' suggestion—is well within the range that federal courts have permitted in complex cases like this one.

## II. DEFENDANTS' STATEMENT OF RELEVANT ISSUES

### A. Deposition Limits

Plaintiffs contend that they should be entitled to unlimited depositions of each Defendant so long as the witnesses they seek to depose are no longer formally employed by the time Plaintiffs notice their depositions. Plaintiffs style this request as one for clarification of the Court's order on deposition limits, ECF No. 273, but it is in fact a request to amend the orders that govern deposition discovery and to upset Defendants' settled and reasonable expectations. That is because Defendants may only be "subject to" ten depositions, ECF No. 273, and it is obvious that Defendants are "subject to" a "party deposition"—which the Parties long ago agreed includes the deposition of any "current or former employee" of a Defendant who "is represented by counsel for that Defendant," ECF No. 217 at 3. The Court should deny Plaintiffs' request.[7]

---

[7] This issue is not appropriate for a Joint Status Report, which the Court has admonished the parties not to use as a vehicle for litigating disputes that should be addressed through motion practice. Typically, upon receipt of a notice of deposition that exceeds the limits imposed by the Court, a

Early in discovery, the parties agreed to and the Court entered two orders to govern deposition discovery. The first was a protocol for conducting depositions. That order specified the procedures that would apply to "party depositions," which included the deposition of any "current or former employee" of a Defendant who "is represented by counsel for that Defendant." ECF No. 217 at 3. The next was an order concerning deposition limits. It provided that "no individual Defendant will be subject to more than 10 depositions." ECF No. 273 at 1. The order imposing limits on the number of depositions made clear that it was to be "read together with, and interpreted in light of" the Court's prior order, *id.*, which would include its definition of a "party deposition." It should go without saying that a deposition a Defendant is "subject to" is, self-evidently, a "party deposition."

This interpretation of the Court's orders is the only one that makes sense, and is completely consistent with ordinary practice. Courts impose more stringent limits on the number of party depositions than on the number of nonparty depositions because party depositions are particularly burdensome. The typical nonparty subpoena recipient bears the burden of preparing and producing one witness for deposition, if that; the typical party litigant, meanwhile, must prepare and produce multiple witnesses. The burden that a party is "subject to" is no different when the deponent is a *current* employee than when the deponent is a *former* employee represented by the party's counsel—particularly when, as here, former employees are testifying exclusively about the policies and practices of the Defendants for whom they worked, based on their percipient

---

Defendant would state its position and either Plaintiffs would move to compel or Defendants would move for a protective order. But the Notices of Deposition at issue do not state a time or place for the proposed depositions, and so are not valid notices under Rule 30. *See* Fed. R. Civ. P. 30(b)(1). Thus, at this juncture, there is nothing to move for protection against nor any motion by Plaintiffs to compel. Nevertheless, because Plaintiffs elected to raise this issue here—providing Defendants with their draft position statement less than 36 hours before the deadline to file it— Defendants offer this response.

knowledge of documents and events to which they were privy only as a consequence of their roles as employees.

Plaintiffs invoke seven cases that they contend show that former employees must be treated as "third parties" as a matter of law "for discovery purposes," but that plainly is not what these cases show. Each instead stands for the much more limited proposition that former employees are independent for purposes of determining either (a) who may be compelled to testify if outside the territorial limits of the court's subpoena power,[8] or (b) who a party's attorney may contact or represent.[9] None concerns how former employees should be treated for purposes of party deposition limits, which courts and litigants throughout the country routinely apply in equal measure to depositions of current employees and former employees represented by Defendants' counsel.[10]

---

[8] *See H.B. Sherman Mfg. Co.*, 979 F. Supp. at 631 (assessing "ease of access to sources of proof" in venue transfer motion, noting former employees were "beyond the subpoena power of this Court"); *LKQ Corp.*, 2023 WL 6623363, at *1 (denying former employee's motion to quash based on purported burden on witness); *Watchfire Signs*, 2020 WL 12815286, at *4 (evaluating location of former employees when considering venue transfer motion); *Freeplay Music*, 2019 WL 12375285, at *3 (same); *Continental Cas. Co.*, 2009 WL 3055374, at *6 (same).

[9] *See Smith*, 322 F. Supp. 2d at 889 (denying motion to disqualify counsel for communicating with opposing party's former employee); *Mid-State Aftermarket*, 2009 WL 1211440, at *4 (considering motion to disqualify counsel for alleged witness tampering).

[10] *See, e.g.*, *United States v. Google, LLC*, No. 1:23-cv-108, ECF No. 251 (E.D. Va. June 5, 2023) ("'Google Deposition' means any deposition of a current or former employee of Google or of Google's corporate designee under Federal Rule of Civil Procedure 30(b)(6)."); *In re Valve Antitrust Litig.*, No. 2:21-cv-563, ECF No. 132 (W.D. Wash. Aug. 2, 2023) ("For purposes of this stipulation, the deposition of a former employee of a Party counts as a Party deposition, even if the former employee must be served via subpoena."); *In re Google Play Store Antitrust Litig.*, No. 3:21-cv-5227, ECF No. 205 (N.D. Cal. Dec. 20, 2021) (imposing limits on "depositions of the current and former employees" of the parties, and noting, "[f]or the avoidance of doubt, . . . depositions of former Google or Epic employees are not Third Party Depositions."); *In re Generic Pharm. Pricing Antitrust Litig.*, No. 2:16-md-2724, ECF No. 1688 (E.D. Pa. Feb. 12, 2021) ("For the purpose of calculating the number of depositions available to Plaintiffs, a deposition of any current or former employee of a Defendant (regardless of whether a witness has separate counsel or is a named Defendant) shall count against Plaintiffs' available number of depositions for each

Plaintiffs contend that Defendants' interpretation of the governing orders would produce the "absurd result" that Defendants' counsel can "control the number of depositions" Plaintiffs may take by representing their former employees. But Defendants do not "control" Plaintiffs' choice to depose former employees rather than unrelated nonparties. And although Defendants may offer to provide representation to their former employees, it is ultimately the witness's choice whether to be represented by Defendants' counsel—as Plaintiffs should well know, clients choose their lawyers, not the other way around. More importantly, there is nothing "absurd" about tethering the limit on the number of depositions a Defendant will be "subject to" to the number of witnesses whose interests are so aligned with their former employer's as to lead the witness and the Defendant to conclude that their representation should be coordinated.[11] Many of the witnesses Plaintiffs wish to classify as disinterested nonparties are individuals who managed Defendants' admissions, enrollment, or financial aid programs. The questions posed in their depositions have focused exclusively on the policies and practices of their former employers, based on documents and correspondence they created, sent, or received during their employment. None of these witnesses has received a document subpoena from Plaintiffs, which makes sense—their documents have been produced by Defendants, so no nonparty document subpoena was ever necessary. Defendants have offered to provide counsel to these individuals because for purposes of their

Defendant Family for which the witness is a document custodian."); *In re Remicade Antitrust Litig.*, No. 2:17-cv-4180, ECF No. 69 (E.D. Pa. Sept. 25, 2018) ("Individuals and entities affiliated with the Parties, including current and former employees, shall count toward the party deposition limits.").

[11] Plaintiffs bizarrely claim, relying on *Mid-State Aftermarket*, 2009 WL 1211440, that it is somehow "against public policy" for Defendants' counsel to represent Defendants' former employees in depositions. Neither *Mid-State Aftermarket*—which involved a nonparty witness who was *not* a former employee, *see id.* at *4—nor any other authority stands for such a proposition. It is common and uncontroversial for litigation counsel to represent former employees of corporate clients at deposition, as the above-referenced cases and countless others show.

depositions, they are essentially in no different position than they would be in if they were still employed, and they benefit from meeting with counsel and reviewing the documents their former employer produced in discovery. There is no reasonable basis to conclude that Defendants are not "subject to" these depositions and should be required to defend an unlimited number of them.

Don Bishop, whom Plaintiffs reference, is a prime example of the reasonableness of Defendants' position and the absurdity of Plaintiffs'. Mr. Bishop was the Associate Vice President for Enrollment at Notre Dame at the time this lawsuit was filed, and had been for more than a decade. Between the time the complaint was filed and the date of his deposition, Mr. Bishop retired. But Plaintiffs did not subpoena Mr. Bishop for documents before his deposition, and for good reason: Mr. Bishop was identified in Notre Dame's initial disclosures and is a document custodian from whose files Notre Dame has produced nearly 7,000 documents. The entire focus of his deposition was Notre Dame's approach to enrollment, admissions, and financial aid during his decade-long tenure at the university. Sensibly, Mr. Bishop elected to be represented at his deposition by Notre Dame's counsel and to be prepared by them in advance of his testimony, which allowed him to review his documents and communications before being questioned about them. The notion that his deposition is not one that Notre Dame was "subject to" simply because Plaintiffs did not pursue it until he had retired is patently ridiculous.

Far more absurd results would accrue from Plaintiffs' proposed reimagining of the Court's orders. Plaintiffs have sought discovery spanning three decades; it is no surprise that many witnesses no longer work at a Defendant university.[12] Yet Plaintiffs seek license to take as many

---

[12] For example, at Penn, Plaintiffs have deposed more former employees (four, with two others planned) than current ones (two); the same is true at Notre Dame (four former employees deposed with two more scheduled, two current employees with one more scheduled) and at Cornell (four former employees deposed with one more scheduled, two current employees deposed).

depositions of Defendants' personnel as they see fit—including, it seems, as many as *thirty* Cornell witnesses—so long as those individuals have retired or resigned before their deposition occurs.[13] Under Plaintiffs' proposed interpretation, the limit on party depositions would vary from Defendant to Defendant based on the vagaries of which schools happened to have seen more or less turnover over time.

Plaintiffs last complain that Defendants' operations are often "highly compartmentalized," so deposition limits constrain them. This argument is an end-run around the ordered deposition limits, not a means of interpreting them—Plaintiffs simply want the deposition limits they agreed to a year ago not to apply, because Plaintiffs feel the need to take more depositions. But the constriction that Plaintiffs are feeling is a feature, not a bug, of the deposition limits the Court ordered last January. Deposition limits are meant to force parties to be strategic about who to depose and what discovery may be obtained through less burdensome means. That Plaintiffs may regret their strategic choices at this late hour is no reason they should not be bound to them.

It is telling that Plaintiffs conclude by urging the Court not to limit them to "10 party and non-party depositions *of each school*" (emphasis added)—even Plaintiffs recognize that depositions of Defendant universities' former employees are nevertheless depositions "of" the Defendant universities. Plaintiffs were ordered to take no more than ten such depositions per Defendant. Their request to rewrite the Court's orders should be denied.

## B. Plaintiffs' 30(b)(6) Notice to Penn

For months, Penn repeatedly requested that Plaintiffs serve 30(b)(6) notices so that depositions could be efficiently combined where Penn's 30(b)(1) witnesses would also serve as

---

[13] Plaintiffs say that they do not actually plan to seek all of these depositions—they just want to be allowed to if necessary. This promise provides little comfort.

institutional designees.  Plaintiffs refused to serve notices at a reasonable point in the case, and only served a 30(b)(6) deposition notice to Penn on December 9, 2023 (no other school has even received a notice).  The notice to Penn contained *83 distinct topics*, almost all of which spanned 30 years.  Penn objected.  On January 2, 2024, Plaintiffs served a revised notice, still with *45 topics*, still covering 30 years.  The 45 topics are not described with reasonable particularity.  For example, topic 19 covers Penn's reasons that it did or did not adopt "Income Thresholds or Asset Thresholds," and topic 21 covers the "relevance" of Penn's endowment to financial aid awards over the past thirty years.  Plaintiffs' notice also covers seemingly irrelevant subjects.  Topic 22 for example, covers whether Penn has ever utilized a contingency fund, and Topic 6 includes every report, regardless of subject matter, that Penn received from the Consortium on Financing Higher Education.  Another topic asks about racial diversity in admissions.  Still others are focused on issues like market definition and procompetitive justifications that Plaintiffs just told the Court (and the Court agreed) were inappropriate topics to probe during fact discovery.  In any event, it is simply impossible for Penn (or any other school receiving such a blunderbuss notice) to prepare witnesses to testify to this many topics, especially topics that are this overbroad, by the end of fact discovery on March 20, 2024, and it is likewise impossible for Plaintiffs to cover all of these 45 topics in the fourteen hours they have to complete their 30(b)(6) depositions.[14]

Increasingly, courts around the country have recognized ten Rule 30(b)(6) topics as a presumptive limit.  For example, Judges Kness and Seeger have done so in this district.  *See* Case Procedures, Depositions, for Judge Kness, *available at* https://www.ilnd.uscourts.gov/judge-info.aspx?Iu9/vqz23r5X7AkWx/nLtg==;  Case  Procedures,  Depositions,  for  Judge  Seeger,

---

[14] This suggests Plaintiffs real intent is not to obtain testimony on most Topics but instead to force Penn to engage in burdensome prep over the next two months.

*available at* https://www.ilnd.uscourts.gov/judge-info.aspx?IuUaWzNcEoO69sjSQcc1Tm7DkL

HEkoSJ. Judges Donato and Alsup in the Northern District of California have done the same. *See*

Standing Order For Discovery In Civil Cases Before Judge Donato, *available at*

https://www.cand.uscourts.gov/wp-content/uploads/judges/donato-jd/JD_Standing-Order-

Regarding-Civil-Discovery.pdf; Supp. Order to Order Setting Initial Case Management

Conference in Civil Cases before Judge William Alsup, *available at*

https://www.cand.uscourts.gov/wp-content/uploads/judges/alsup-wha/WHA-Supplemental-

CMC-Order.pdf. If the parties cannot resolve their dispute, Defendants intend to bring a motion

to request a reasonable topic limit and other appropriate relief as to individual topics.

Dated: January 11, 2024                          Respectfully Submitted,

By:*/s/ Edward J. Normand*                       By: */s/ Jon Roellke*
Devin "Vel" Freedman                             Jon R. Roellke
Edward J. Normand                                MORGAN, LEWIS & BOCKIUS LLP
Richard Cipolla                                  1111 Pennsylvania Avenue, NW
Joseph Delich                                    Washington, DC 20004-2541
Peter Bach-y-Rita                                Tel.: 202-739-5754
FREEDMAN NORMAND                                 jon.roellke@morganlewis.com
FRIEDLAND LLP
99 Park Avenue                                   Noah J. Kaufman
Suite 1910                                       MORGAN, LEWIS & BOCKIUS LLP
New York, NY 10016                               One Federal Street
Tel.: 646-350-0527                               Boston, MA 02210
vel@fnf.law                                      Tel.: 617-341-7590
tnormand@fnf.law                                 noah.kaufman@morganlewis.com
rcipolla@fnf.law
jdelich@fnf.law                                  *Counsel for Defendant Brown University*
pbachyrita@fnf.law
                                                 By: */s/ Deepti Bansal*
Ivy Ngo                                          Deepti Bansal
FREEDMAN NORMAND                                 Alexander J. Kasner
FRIEDLAND LLP                                    COOLEY LLP
1 SE 3d Avenue                                   1299 Pennsylvania Avenue, NW
Suite 1240                                       Suite 700
Miami, FL 33131                                  Washington, DC 20004-2400

Tel: 786-924-2900
ingo@fnf.law

/s/ *Robert D. Gilbert*
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
David Copeland
Steven Magnusson
GILBERT LITIGATORS &
COUNSELORS, P.C.
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
dcopeland@ gilbertlitigators.com
smagnusson@gilbertlitigators.com


Eric L. Cramer
Ellen T. Noteware
David Langer
Jeremy Gradwohl
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: 215-875-3000
ecramer@bm.net
enoteware@bm.net
dlanger@bm.net
jgradwohl@bm.net

Richard Schwartz
BERGER MONTAGUE PC
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

Daniel J. Walker
Robert E. Litan
Hope Brinn
BERGER MONTAGUE PC
2001 Pennsylvania Avenue, NW

Tel.: 202-728-7027
dbansal@cooley.com
akasner@cooley.com

Matthew Kutcher
COOLEY LLP
110 N. Wacker Drive
Chicago, IL 60606
Tel.: 312-881-6500
mkutcher@cooley.com

*Counsel for Defendant California Institute of Technology*

By: /s/ *Amy Van Gelder*
Amy Van Gelder
John Kocoras
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
155 N. Wacker Drive
Chicago, IL 60606-1720
Tel.: 312-407-0508
amy.vangelder@skadden.com
john.kocoras@skadden.com

Karen Hoffman Lent
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
Room 40-216
New York, NY 10001-8602
Tel.: 212-735-3276
karen.lent@skadden.com

*Counsel for Defendant The Trustees of Columbia University in the City of New York*

By: /s/ *Norm Armstrong*
Norman Armstrong
Christopher C. Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
Tel.: 202-626-8979
narmstrong@kslaw.com

Suite 300
Washington, DC 20006
Tel.: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs*

cyook@kslaw.com

Emily T. Chen
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel.: 212-556-2224
echen@kslaw.com

Zachary T. Fardon
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
Tel.: 312-764-6960
zfardon@kslaw.com

*Counsel for Defendant Cornell University*

By: */s/ Terri L. Mascherin*
Terri L. Mascherin
Reid J. Schar
JENNER & BLOCK LLP
353 N. Clark Street,
Chicago, IL 60654-3456
Tel.: 312-222-9350
tmascherin@jenner.com
rschar@jenner.com

Ishan K. Bhabha
Douglas E. Litvack
Lauren J. Hartz
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Tel.: 202-637-6327
ibhabha@jenner.com
dlitvack@jenner.com
lhartz@jenner.com

*Counsel for Defendant Trustees of Dartmouth College*

By: */s/ James A. Morsch*

15

James A. Morsch
Jim.morsch@saul.com
SAUL EWING LLP
161 North Clark, Suite 4200
Chicago, IL 60601
Tel.: (312) 876-7100
Facsimile: (312) 876-0288
IL Attorney ID #6209558

Christopher D. Dusseault (pro hac vice)
cdusseault@gibsondunn.com
Jacqueline L. Sesia
jsesia@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel.: (213) 229-7000

*Counsel for Defendant Duke University*

By: */s/ Tina M. Tabacchi*
Tina M. Tabacchi
JONES DAY
110 North Wacker Drive
Suite 4800
Chicago, IL 60606
Tel.: 312-782-3939
tmtabacchi@jonesday.com

Craig A. Waldman
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
Tel..: 202-879-3877
cwaldman@jonesday.com

*Counsel for Defendant Emory University*

By: */s/ Britt M. Miller*
Britt M. Miller
Daniel T. Fenske
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel.: 312-783-0600
bmiller@mayerbrown.com

16

dfenske@mayerbrown.com

*Counsel for Defendant Georgetown University*

By: */s/ Jeffrey J. Bushofsky*
Jeffrey J. Bushofsky
ROPES & GRAY LLP
191 North Wacker Drive 32nd Floor
Chicago, IL 60606-4302
Tel.: 312-845-1200
jeffrey.bushofsky@ropesgray.com

Chong S. Park
Samer M. Musallam
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Tel.: 202-508-4600
chong.park@ropesgray.com
samer.musallam@ropesgray.com

*Counsel for Defendant Johns Hopkins University*

By: */s/ Eric Mahr*
Eric Mahr
Jan Rybnicek
Daphne Lin
FRESHFIELDS BRUCKHAUS DERINGER
700 13th Street, NW
Washington, DC 20005
Tel.: 202-777-4500
eric.mahr@freshfields.com
jan.rybnicek@freshfields.com
daphne.lin@freshfields.com

*Counsel for Defendant Massachusetts Institute of Technology*

By: */s/ Scott D. Stein*
Scott D. Stein
Kathleen L. Carlson
Benjamin R. Brunner
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603

17

Tel.: 312-853-7520
sstein@sidley.com
kathleen.carlson@sidley.com
bbrunner@sidley.com

*Counsel for Defendant Northwestern
University*

By: */s/ Robert A. Van Kirk*
Robert A. Van Kirk
Jonathan B. Pitt
Sarah F. Kirkpatrick
Matthew D. Heins
Cole T. Wintheiser
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, D.C. 20024
Tel.: 202-434-5000
rvankirk@wc.com
skirkpatrick@wc.com
jpitt@wc.com
mheins@wc.com
cwintheiser@wc.com

James Peter Fieweger
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street
Suite 3200
Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for Defendant University of Notre
Dame du Lac*

By: */s/ Seth Waxman*
Seth Waxman
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel.: 202-663-6800
seth.waxman@wilmerhale.com

David Gringer
Alan Schoenfeld

WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: 212-937-7294
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Daniel Martin Feeney
Edward W. Feldman
MILLER SHAKMAN LEVINE & FELDMAN
LLP
180 North LaSalle Street
Suite 3600
Chicago, IL 60601
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for Defendant The Trustees of the
University of Pennsylvania*

By: */s/ Norm Armstrong*
Norman Armstrong
Christopher C. Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
Tel.: 202-626-8979
narmstrong@kslaw.com
cyook@kslaw.com

Emily T. Chen
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel.: 212-556-2224
echen@kslaw.com

Zachary T. Fardon
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800

19

Chicago, IL 60606
Tel. 312-764-6960
zfardon@kslaw.com

*Counsel for Defendant William Marsh Rice
University*

By: */s/ J. Mark Gidley*
J. Mark Gidley
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
Tel.: 202-626-3600
mgidley@whitecase.com

Robert A. Milne
David H. Suggs
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Tel.: 212-819-8200
rmilne@whitecase.com
dsuggs@whitecase.com

*Counsel for Defendant Vanderbilt University*

By: */s/ Charles A. Loughlin*
Charles A. Loughlin
Benjamin F. Holt
Jamie Lee
Molly Pallman
Christopher Fitzpatrick
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
Tel.: 202-637-5600
chuck.loughlin@hoganlovells.com
benjamin.holt@hoganlovells.com
jamie.lee@hoganlovells.com
molly.pallman@hoganlovells.com
chris.fitzpatrick@hoganlovells.com

Stephen Novack
Stephen J. Siegel
Serena G. Rabie
ARMSTRONG TEASDALE LLP

20

100 North Riverside Plaza, 15th Floor
Chicago, IL 60606-1501
Tel.: 312-419-6900
snovack@atllp.com
ssiegel@atllp.com
srabie@atllp.com

*Counsel for Defendant Yale University*