## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

ANDREW CORZO, SIA HENRY, ALEXANDER
LEO-GUERRA, MICHAEL MAERLENDER,
BRANDON PIYEVSKY, BENJAMIN
SHUMATE, BRITTANY TATIANA WEAVER,
and CAMERON WILLIAMS, individually and on
behalf of all others similarly situated,

Plaintiffs,

v.

BROWN UNIVERSITY, CALIFORNIA
INSTITUTE OF TECHNOLOGY, UNIVERSITY
OF CHICAGO, THE TRUSTEES OF
COLUMBIA UNIVERSITY IN THE CITY OF
NEW YORK, CORNELL UNIVERSITY,
TRUSTEES OF DARTMOUTH COLLEGE,
DUKE UNIVERSITY, EMORY UNIVERSITY,
GEORGETOWN UNIVERSITY, THE JOHNS
HOPKINS UNIVERSITY, MASSACHUSETTS
INSTITUTE OF TECHNOLOGY,
NORTHWESTERN UNIVERSITY,
UNIVERSITY OF NOTRE DAME DU LAC,
THE TRUSTEES OF THE UNIVERSITY OF
PENNSYLVANIA, WILLIAM MARSH RICE
UNIVERSITY, VANDERBILT UNIVERSITY,
and YALE UNIVERSITY,

Defendants.

Case No.: 1:22-cv-00125

**Hon. Matthew F. Kennelly**

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS BROWN UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, DUKE UNIVERSITY, EMORY UNIVERSITY, AND YALE UNIVERSITY, PROVISIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS, APPROVAL OF THE REVISED NOTICE PLAN, AND APPROVAL OF THE <u>SCHEDULE FOR COMPLETING THE SETTLEMENT PROCESS</u>

## TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................... 2

II. BACKGROUND ..................................................................................................... 8

    A. Plaintiffs' Claims and Procedural Background ........................................ 8

    B. Settlement Negotiations and the Proposed Settlements ......................... 9

        1. Monetary Relief. ..................................................................... 10

        2. Completion of Discovery........................................................ 10

        3. Summary of Proposed Revised Plan of Allocation.................... 11

        4. Notice and Settlement Administration Costs. .......................... 13

        5. Release. ................................................................................ 14

        6. Attorneys' Fees and Costs for Settlement Class Counsel and Service Awards for Class Representatives. .......................................... 14

III. THE PROPOSED SETTLEMENTS MEET THE STANDARD FOR PRELIMINARY APPROVAL ......................................................................................................... 15

    A. The Strength of Plaintiffs' Case Compared to the Terms of the Settlements ...... 17

    B. The Complexity, Length, and Expense of Continued Litigation........................ 18

    C. The Amount of Opposition to the Settlements .............................................. 18

    D. The Opinion of Competent Counsel ............................................................. 19

    E. The Stage of the Proceedings ..................................................................... 19

    F. The Revised Plan of Allocation Is Fair, Reasonable, and Adequate .................... 20

    G. Angeion Is an Appropriate Settlement Claims Administrator............................ 24

    H. The Proposed Form and Manner of Notice Are Appropriate ............................ 25

        1. Forms of Notice. ..................................................................... 25

        2. Manner of Notice. ................................................................... 27

    I. Huntington Bank Is an Appropriate Escrow Agent ........................................ 27

i

     J.       The Proposed Schedule Is Fair and Should Be Approved.................................. 27

IV.    THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS HAVE BEEN PROVISIONALLY MET ..................................................................... 28

     A.     Settlement Class Counsel Meet the Requirements of Rule 23(g) ...................... 30

     B.     Named Plaintiffs Meet the Requirements of Rule 23(a)(4) ............................... 30

V.     CONCLUSION.......................................................................................................... 31

**TABLE OF AUTHORITIES**

Cases                                                                                               Page(s)

*Allegretti v. Walgreen Co.*,
   2022 WL 484216 (N.D. Ill. Jan. 4, 2022)...............................................................15

*Beneli v. BCA Fin. Servs., Inc.*,
   324 F.R.D. 89 (D.N.J. 2018)...................................................................................23

*Carbone v. Brown Univ.*,
   621 F. Supp. 3d 878 (N.D. Ill. 2022) ........................................................................8

*Daluge v. Cont'l Cas. Co.*,
   2018 WL 6040091 (W.D. Wis. Oct. 25, 2018)..........................................................15

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) ..................................................................................16

*Guzman v. Nat'l Packaging Servs. Corp.*,
   2022 U.S. Dist. LEXIS 37362 (E.D. Wis. Mar. 3, 2022) ..........................................16

*Hale v. State Farm Mut. Auto Ins. Co.*,
   2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ............................................................15

*Heekin v. Anthem, Inc.*,
   2012 WL 5472087 (S.D. Ind. Nov. 9, 2012) ...........................................................21

*In re Aftermarket Filters Antitrust Litig.*,
   No. 08-cv-4883, ECF No. 1082 (N.D. Ill. Mar. 20, 2014) ......................................24

*In re Auto. Parts Antitrust Litig.*,
   2019 WL 7877812 (E.D. Mich. Dec. 20, 2019) .......................................................23

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   1999 WL 639173 (N.D. Ill. Aug. 17, 1999) ............................................................24

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015).........................................................................20

*In re FedEx Ground Package Sys., Inc. Emp. Practices Litig.*,
   251 F. Supp. 3d 1225 (N.D. Ind. 2017) ..................................................................15

*In re High-Tech Emp. Antitrust Litig.*,
   2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ..........................................................23

*In re Linerboard Antitrust Litig.*,
   2004 WL 1221350 (E.D. Pa. June 2, 2004)..............................................................15

*In re Loestrin 24 FE Antitrust Litig.*,
    No. 1:13-md-02472, ECF No. 1462 (D.R.I. Sept. 1, 2020) ...................................................... 24

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307 (S.D.N.Y. 2020) ..................................................................................... 24

*In re NCAA Student-Athlete Concussion Injury Litig.*,
    314 F.R.D. 580 (N.D. Ill. 2016) ............................................................................................. 16

*In re Oracle Sec. Litig.*,
    1994 WL 502054 (N.D. Cal. June 18, 1994) .......................................................................... 23

*In re Packaged Ice Antitrust Litig.*,
    2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ..................................................................... 23

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
    No. 1:09-cv-07666, ECF No. 703 (N.D. Ill. Apr. 16, 2014) ................................................... 24

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
    No. 14-md-2503, ECF No. 1179 (D. Mass. July 18, 2018) ..................................................... 24

*In re Tiktok, Inc., Consumer Privacy Litig.*,
    565 F. Supp. 3d 1076 (N.D. Ill. 2021) ........................................................................ 16, 17, 19

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) .................................................................................................. 15

*Kaufman v. Am. Express Travel Related Servs. Co.*,
    877 F.3d 276 (7th Cir. 2017) .................................................................................................. 17

*Lechuga v. Elite Eng'g, Inc.*,
    559 F. Supp. 3d 736 (N.D. Ill. 2021) ..................................................................................... 15

*Lucas v. Vee Pak, Inc.*,
    2017 WL 6733688 (N.D. Ill. Dec. 20, 2017)............................................................... 17, 18, 21

*Meijer, Inc. v. 3M*,
    2006 WL2382718 (E.D. Pa. Aug. 14, 2006) .......................................................................... 23

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) ...................................................................................... 23

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
    2001 WL 1568856 (N.D. Ill. Dec. 10, 2001)........................................................................... 21

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ..................................................................................... 20

*Shah v. Zimmer Biomet Holdings, Inc.*,
   2020 WL 5627171 (N.D. Ind. Sept. 18, 2020) ....................................................... 23

*Slaughter v. Wells Fargo Advisors, LLC*,
   2017 WL 3128802 (N.D. Ill. May 4, 2017) ........................................................... 15

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ................................................................................. 23

*Summers v. UAL Corp. ESOP Comm.*,
   2005 WL 3159450 (N.D. Ill. Nov. 22, 2005) ................................................. 21, 23

*Wong v. Accretive Health, Inc.*,
   773 F.3d 859 (7th Cir. 2014) ............................................................................... 17

Rules

Fed. R. Civ. P. 23(a) ...................................................................................................... 30

Fed. R. Civ. P. 23(c) ................................................................................................ 16, 25

Fed. R. Civ. P. 23(e) ................................................................................................ 16, 25

Fed. R. Civ. P. 23(g) ...................................................................................................... 30

Miscellaneous

28 U.S.C. § 1715 ........................................................................................................... 28

34 C.F.R. § 99.37 ............................................................................................. 6, 7, 31, 32

3 Newberg on Class Actions § 8:45 (4th ed. 2011) ....................................................... 23

4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 12.35 (4th ed. 2002) ............... 23

Manual for Complex Litigation (Fourth) ................................................................ 16, 25

On September 9, 2023, the Court preliminarily approved the Plaintiffs' proposed class settlement with Defendant University of Chicago. *See* ECF No. 439 ("University of Chicago Preliminary Approval Order"). Subsequently, Plaintiffs executed settlement agreements with five additional Defendants, namely Brown University ("Brown"), The Trustees of Columbia University in the City of New York ("Columbia"), Duke University ("Duke"), Emory University ("Emory"), and Yale University ("Yale") (these settling Defendants collectively, the "Second Tranche Settling Universities" or "Second Tranche Settling Defendants;" and these settlements, the "Second Tranche Settlements").[1] For efficiency purposes and to avoid class member confusion, Plaintiffs are requesting that the Court combine the approval process for the University of Chicago Settlement with all five of the Second Tranche Settlements (collectively, the "Settlements" and "Settling Defendants" or "Settling Universities") and conform the class definitions applicable to the University of Chicago Settlement to the class definitions applicable to the Second Tranche Settlements.

The six Settlements achieved to date collectively provide $118 million in cash payments for the benefit of the Settlement Class. In addition, each Settling Defendant has agreed to complete certain additional, limited discovery. Plaintiffs submit this Memorandum of Law in support of preliminary approval of the Second Tranche Settlements, provisional certification of the proposed settlement class, approval of the revised notice plan, approval of the revised allocation plan, approval of the conformed University of Chicago Settlement class definition, and approval of the revised schedule for completing the settlement process for all six Settlements achieved to date.

---

[1] As the parties previously informed the Court, Plaintiffs have also reached an agreement in principle with Vanderbilt University ("Vanderbilt") (ECF No. 525). The parties are in the process of finalizing that Settlement Agreement.

## I.     INTRODUCTION

Plaintiffs entered a settlement agreement with Defendant University of Chicago on August 7, 2023. The Court provisionally certified the proposed settlement class, provisionally approved the proposed allocation plan, and preliminarily approved the University of Chicago Settlement on September 9, 2023. *See* ECF No. 439. On November 22, 2023, the Plaintiffs notified the Court that they had reached agreements in principle with certain additional Defendants. *See* ECF No. 525. Upon being notified of additional settlements, and at the parties' request, the Court suspended the dates for issuance of notice and for a final approval hearing that had been set forth in the University of Chicago Preliminary Approval Order. *See* ECF No. 530. The Court set January 23, 2024 as the deadline for filing for preliminary approval of any of the Second Tranche Settlements that could be completed by that date. *See* ECF Nos. 587 & 588.

In addition to the University of Chicago Settlement, Plaintiffs have now executed separate settlement agreements with each of the five Second Tranche Settling Defendants: Brown, Columbia, Duke, Emory, and Yale. The terms of these settlements are set forth in separate agreements with each Settling University (collectively referred to as the "Settlement Agreements").[2] The Settlement Agreements are substantively similar in that each Second Tranche Settling University agreed to (a) make a cash payment to Plaintiffs and the proposed Settlement Class (defined below and in the Settlement Agreements), (b) complete additional, limited discovery, in exchange for Plaintiffs' agreement to dismiss their claims (on their own behalf and on behalf of the Settlement Class) against each Settling Defendant with prejudice, and (c) provide certain releases.

---

[2] The Second Tranche Settlement Agreements are attached at Exhibits 1-5 to the Joint Declaration of Settlement Class Counsel, dated January 23, 2024 ("Jan. 23, 2024 Joint Decl."), filed in support of this Motion.

2

Moreover, for efficiency purposes and to avoid class member confusion, the Plaintiffs and the University of Chicago have agreed to modify the Settlement Class definition set forth in their settlement agreement, ECF No. 428-3, Ex. A ("University of Chicago Settlement Agreement"), to conform to the definition in the Second Tranche Settlement Agreements. For instance, because the end date of the Class Period for the Second Tranche Settlements will run through the date of preliminary approval of the Second Tranche Settlements, so too would the end date for the Class Period for the University of Chicago Settlement by deeming the date of entry of an order entered pursuant to this motion as the date of preliminary approval of the University of Chicago Settlement. These accommodations will allow a common class notice, to a commonly defined class, for the University of Chicago Settlement and the Second Tranche Settlements.

The Second Tranche Settling Universities have agreed to make the following payments to Plaintiffs and the Settlement Class:

- Emory: $18.5 million.

- Yale: $18.5 million.

- Brown: $19.5 million.

- Columbia: $24 million.

- Duke: $24 million.

These additional settlements collectively amount to $104.5 million, and with the preliminarily approved University of Chicago Settlement ($13.5 million), the six Settlements achieved to date total $118 million in aggregate cash payments for the benefit of the Settlement Class. These Settlements are an excellent result in absolute terms. *See* Jan. 23, 2024 Joint Decl. ¶ 8. Moreover, the Settlements are a great achievement given that the litigation continues against

3

several additional Defendants, each of which is jointly and severally liable for any and all provable damages suffered by the class. *See id.*

Plaintiffs and the Second Tranche Settling Universities entered into the Second Tranche Settlement Agreements after two years of hard-fought litigation, including significant fact discovery. *Id.* ¶¶ 9-16. Further, each agreement was the result of extensive arm's length negotiations with each of the Settling Defendants. Some of the negotiations occurred between Plaintiffs and a single Defendant, and some took place between Plaintiffs and a pair of Defendants. Moreover, certain of the Second Tranche Settlements were achieved with the able assistance of renowned mediator, former U.S. District Court Judge Layn Phillips and his colleagues Miles Rothenberg and Clay Cogman at Phillips ADR. *Id.* ¶ 19.

After each settlement in principle was reached with a Settling Defendant (or pairs of Settling Defendants, where agreements were reached simultaneously or nearly so), Plaintiffs executed a strategy of increasing the settlement amounts with each successive agreement or set of agreements. *Id.* ¶ 20. This approach was designed to put pressure on the non-settling Defendants to settle imminently or risk having to pay significantly more by waiting.

Counsel for the parties involved in these Second Tranche Settlement Agreements are highly experienced in antitrust litigation and well-positioned to assess the risks and merits of the case. Plaintiffs have reasonably concluded that the proposed cash settlements are in the best interests of the Settlement Class given that, if finally approved, the Settlements would assure the Settlement Class of a significant cash recovery without diminishing the joint and several liability of the remaining non-settling Defendants. *See id.* ¶ 8.[3] Moreover, under the Settlement

---

[3] "Defendants" is defined in each Settlement Agreement at pp. 1-2. *See* Exhibits 1-5 of the Jan. 23, 2024 Joint Decl.

4

Agreements, Plaintiffs will have the benefit of obtaining certain additional discovery from each of the Second Tranche Settling Universities. *See id.* ¶ 21. The Settlements avoid the inherent risks of summary judgment, trial, and potential appeal, while preserving the ability to recover all the damages allegedly suffered by the Settlement Class from the remaining non-settling Defendants. *See id.* ¶ 8. For these reasons, and as further detailed below, the Second Tranche Settlements satisfy the requirements for preliminary approval, just as the University of Chicago Settlement did before them. *See id.* ¶¶ 26 & n.3, 28, 30.

Plaintiffs propose a consolidated notice program for the Settlements, *i.e.*, it is Plaintiffs' intention that the approval process for the University of Chicago Settlement, the Second Tranche Settlements, and (once finalized) the Vanderbilt settlement would proceed together. This plan will be efficient and straightforward for Settlement Class members. Plaintiffs' new long-form and summary class notices are substantially similar to, and build off of, the notices that the Court approved as part of the University of Chicago Settlement, ECF Nos. 439 (approving notices and notice plan), 428-9 (summary notice), 428-10 (long-form notice). The new, revised forms of notice are updated to include information about all Settlements to date.[4] They also provide the revised Settlement Class definition (which shall apply to all Settlements) and forms of release as they appear in the Second Tranche Settlements. Counsel for University of Chicago and the Second Tranche Universities consent to the new proposed revised forms of notice.

Aside from updating the forms of notice, Plaintiffs propose a substantially similar notice plan and plan of allocation of the net settlement funds to members of the Settlement Class to those which the Court approved as part of the University of Chicago Preliminary Approval

---

[4] The new long-form and summary notices are attached to the Jan. 22, 2024 Weisbrot Declaration as Exs. A (Revised Summary Notice) and B (Revised Long-Form Notice).

Order. *Compare* Declaration of Steven Weisbrot, Esq. of Angeion Group LLC re the Proposed Revised Notice Plan, Jan. 22, 2024 (the "Jan. 22, 2024 Weisbrot Decl.") (describing the "Revised Notice Plan") *with* Aug. 14, 2023 Weisbrot Decl., ECF No. 428-7 (describing the "Notice Plan"). Plaintiffs propose the following schedule for the remainder of the settlement approval process for all Settlements, and respectfully request that the Court enter a proposed order, which has been submitted to the Court), providing as follows:

1.     Provisional certification of the proposed Settlement Class (defined below);

2.     Provisional appointment of Plaintiffs as Class Representatives;

3.     Appointment of Plaintiffs' counsel as Settlement Class Counsel for the proposed Settlement Class;

4.     Preliminary approval of the proposed Second Tranche Settlement Agreements, and confirmation of the preliminary approval of the University of Chicago Settlement Agreement;

5.     Conforming the class definition applicable to the University of Chicago Settlement Agreement to the class definitions applicable to the Second Tranche Settlements;

6.     Approval of the proposed revised plan for notice to the Settlement Class (the "Revised Notice Plan"), including a set of revised long-form and summary notices, and a settlement website as described below and in the Declaration of Settlement Claims Administrator, Steven Weisbrot of Angeion Group (*i.e.*, the Jan. 22, 2024 Weisbrot Decl.);

7.     Pursuant to 34 C.F.R. § 99.37(a), finding that mailing addresses and email addresses in education records of current students of a Defendant constitute "directory information" and may be disclosed, without consent, to the Settlement Claims Administrator for purposes of providing class notice in this litigation if (a) the Defendant has previously provided public notice that the mailing addresses and email addresses are considered "directory information" that may be disclosed to third parties including public notice of how students may restrict the disclosure of such information, and (b) the student has not exercised a right to block disclosure of current mailing addresses or email addresses ("FERPA Block"). Defendants shall not disclose from education records mailing addresses or email addresses subject to a FERPA Block;

8.     Pursuant to 34 C.F.R. § 99.37(b), finding that mailing addresses and email addresses in education records of former students of a Defendant constitute

"directory information" and may be disclosed, without consent, to the Settlement Claims Administrator for purposes of providing class notice in this litigation, provided that each Defendant continues to honor any valid and un-rescinded FERPA Block created while a student was in attendance;

9.      Preliminary approval of the Revised Plan of Allocation for Settlements with University of Chicago and the Five Additional Settling Defendants (the "Revised Plan of Allocation" or "Revised Plan") (Exhibit 7 to the Jan. 23, 2024 Joint Decl.);

10.     Appointment of Angeion Group as Settlement Claims Administrator;

11.     Appointment of The Huntington National Bank ("Huntington") as Escrow Agent for the funds from all the Settlements achieved to date and approval of the Custodian/Escrow Agreement for Second Tranche Settlements, dated Jan. 23, 2024 (the "Jan. 23, 2024 Escrow Agreement"), attached at Exhibit 6 to Jan. 23, 2024 Joint Decl.);

12.     Approval and establishment of the Settlement Fund under the Settlement Agreement as a qualified settlement fund ("QSF") pursuant to Internal Revenue Code Section 468B and the Treasury Regulations promulgated thereunder;

13.     Staying of all litigation activity against the Settling Universities on behalf of the Settlement Class pending final approval or termination of the Settlements; and

14.     Approval of a proposed schedule for the Settlements, including the scheduling of a Fairness Hearing during which the Court will consider: (a) Plaintiffs' request for final approval of the Settlements (including the University of Chicago Settlement) and entry of a proposed order and final judgment; (b) Plaintiffs' counsel's application for attorneys' fees, reimbursement of expenses, service awards, and payment of administrative costs; and (c) Plaintiffs' request for dismissal of this action only against the Settling Universities (including University of Chicago) with prejudice.

## II.    BACKGROUND

### A.    Plaintiffs' Claims and Procedural Background

On January 9, 2022, Plaintiffs filed their complaint, which was subsequently amended (collectively, the "Complaint"), alleging that sixteen elite universities violated the antitrust laws by agreeing on a common formula and common principles regarding financial aid, and by exchanging competitively sensitive information concerning financial aid principles, formulas, and pricing. *See* ECF No. 1, *Henry, et al. v. Brown University, et al.*, No. 22-cv-00125 (N.D. Ill.). Plaintiffs subsequently amended the Complaint to include a seventeenth university Defendant (Johns Hopkins University). ECF No. 106.[5] From April through August 2022, the parties engaged in briefing and argument on Defendants' motions to dismiss. Defendants asserted in their motions that (a) Defendants fell within a statutory antitrust exemption, (b) Plaintiffs had failed to state a claim under the antitrust laws and failed to plausibly allege antitrust injury, and (c) several of the claims were time barred. Defendants Brown, Emory, University of Chicago, and Johns Hopkins also filed a separate motion contending that Plaintiffs did not plausibly allege that these four Defendants were members of the alleged cartel during the relevant period. *See generally* Jan. 23, 2024 Joint Decl. ¶ 10.  Yale also filed a separate motion to dismiss. *Id.*

On August 15, 2022, the Court denied Defendants' motions in their entirety. *See* ECF No. 185, *Carbone v. Brown Univ.*, 621 F. Supp. 3d 878 (N.D. Ill. 2022). Since that time, the parties have engaged in extensive fact discovery. Plaintiffs have produced nearly 4,000 of their own

---

[5] Plaintiffs filed a Second Amended Complaint on February 6, 2023, ECF No. 308, which reflected the fact that the Section 568 exemption expired in September 2022 and that the 568 Presidents Group formally dissolved, *see* Mot. for Leave to File Second Amended Compl., ECF No. 266 at 1. The Second Amended Complaint also limited the proposed class to students. *Id.*

documents to Defendants and have secured the production of more than one million documents from the Defendants and third parties, including over 400,000 documents from the Second Tranche Settling Universities and Vanderbilt. *See generally* Jan. 23, 2024 Joint Decl. ¶¶ 12-13. Plaintiffs have also taken over fifty fact depositions of non-settling Defendants and Settling Defendants and defended nine fact depositions to date. *Id.* ¶¶ 12, 15.

**B.  Settlement Negotiations and the Proposed Settlements**

In April 2023, Plaintiffs initiated settlement discussions with the University of Chicago with the goal of having the University of Chicago be the first Defendant to settle. By August 7, 2023, an agreement to settle with the University of Chicago was signed, which settlement the Court preliminarily approved on September 9, 2023. ECF No. 439. Also in 2023, Plaintiffs pursued negotiations with each of the Settling Universities and Vanderbilt, sometimes individually and sometimes in pairs. *See* Jan. 23, 2024 Joint Decl. ¶ 9. Several of the agreements were achieved through experienced mediators from Phillips ADR, and some in direct negotiations. *Id.* ¶ 19. Over a period of roughly 16 weeks of intense negotiations, Plaintiffs reached settlements in principle with all six schools, and then formal settlement agreements with each of the Second Tranche Settling Universities. *See id.* ¶¶ 19-20. In agreeing to each settlement, Plaintiffs' counsel assessed the merits of Plaintiffs' claims, each Settling University's defenses, and the risks of continuing to litigate. Plaintiffs also evaluated the benefits of continued discovery post-settlement from each Settling University (provided for in the Settlement Agreements), and the fact that due to joint and several liability, a settlement with any one Settling University would not reduce the exposure of the remaining Defendants. *See id.* ¶ 8. Plaintiffs ultimately concluded that each settlement was in the best interests of the proposed Settlement Class. *See id*. ¶¶ 25-26.

1.      **Monetary Relief.**

Under the terms of the Settlement Agreements, the Second Tranche Settling Universities

will pay a total of $104.5 million in cash for the benefit of all Settlement Class members in

exchange for dismissal of the litigation between Plaintiffs and the Settling Universities only,

along with certain releases. The total cash value of all the settlements achieved to date, when

combined with the University of Chicago Settlement, is now $118 million. If the Settlements are

approved, none of the funds paid in the Settlements would revert to any of the Settling

Universities. The aggregate Settlement Fund will be distributed to members of the Settlement

Class according to a proposed Revised Plan of Allocation (summary discussed below), net of

payments for the expenses of the Settlement Claims Administrator and the costs of notice to the

Settlement Class, any service awards the Court awards to the Class Representatives, Court

awarded attorneys' fees and expenses, and any other administrative fees or costs that may be

approved by the Court ("Net Settlement Fund").

2.      **Completion of Discovery.**

As part of the Settlement Agreements, each Settling University has agreed to complete

certain additional, limited discovery, tailored to Plaintiffs' discovery needs with respect to each

Settling University separately. *See* Settlement Agreement § 20.[6] Among other things, each

Settling University agreed to: (a) work in good faith to resolve unanswered questions regarding

their respective data productions; (b) consider reasonable requests to produce additional relevant

---

[6] Because each Settlement Agreement is structured with the same format, citations to the Settlement Agreements will use the singular form. Any citations unique to a specific Settlement Agreement will be expressly noted. Plaintiffs note that the additional, limited discovery to which each Settling Defendant has agreed, set forth in § 20 of each of the Settlement Agreements (attached to the Jan. 23, 2024 Joint Decl. as Exhibits 1-5) varies for each Settling Defendant based on its individual circumstances and discovery already taken as to that Settling Defendant.

information, including documents, regarding undergraduate financial aid and the 568 Group; and (c) facilitate authentication of certain documents it produced in discovery. *Id.*

### 3. Summary of Proposed Revised Plan of Allocation.

The Revised Plan of Allocation is substantially similar to, and incorporates as Exhibit A to the Revised Plan, the Plan of Allocation the Court approved for the University of Chicago Settlement. *Compare* Ex. 7 to Jan. 23, 2024 Joint Decl., Revised Plan of Allocation *with* ECF No. 428-6, Proposed Plan of Allocation for University of Chicago Settlement. All members of the Settlement Class who timely submit claims ("Claimants") will receive payments from the Net Settlement Fund, *pro rata*, in proportion to an estimate of the damages allegedly suffered. The Net Settlement Fund shall be disbursed in accordance with the Revised Plan to be approved by the Court at the Final Approval Hearing.

In short, under the Revised Plan, the proposed claims administrator, Angeion Group ("Angeion"), will calculate each Claimant's *pro rata* share of the Net Settlement Fund based on the formula discussed below. The Revised Plan (which is based on the previously approved Plan) was designed in conjunction with Dr. Ted Tatos, an economist with the Econ One consulting group. *See* Ex. A to Revised Plan at 2. By way of background, Plaintiffs allege that Defendants have conspired, through various activities undertaken as members of the "568 Presidents Group" (the "568 Group"), to deflate, artificially, the calculations of financial need of Settlement Class members, which in turn artificially inflated the net price Class members paid to attend Defendant institutions. *See* Complaint ¶¶ 7, 238, 241. The "Net Price," as that term is used here, includes the price of tuition, fees, room, and board minus all need-based and other forms of aid (excluding loans). *See* Complaint ¶ 5. The website of the 568 Group acknowledged that one

of its main goals was "to reduce much of the variance in need analysis results," to "diminish or eliminate . . . divergent results," and to do so in a "consistent manner." *Id.* ¶ 127.

Plaintiffs allege the challenged conduct artificially inflated the Net Price Claimants paid to attend each Defendant for each term a student attended. Given that Plaintiffs allege that the challenged conduct sought to affect Net Prices in a "consistent manner," it is reasonable to conclude that Claimants suffered injury in rough proportion to the average Net Price charged by each school during the years Claimants attended. In other words, because the alleged overcharge is, roughly, a fixed percentage amount of the Net Price paid, a reasonable measure of the injury to each Claimant is the average Net Price each Defendant University charged during each year or term that Claimant attended.[7] As a result, to achieve the dual goals of efficiency and fairness, the Revised Plan proposes to allocate the Net Settlement Fund to each Claimant in proportion to the average Net Price charged by the Defendant to each Claimant for each year or term during the Class Period that such Claimant attended that institution. *See* Ex. A to Revised Plan at 3-4. This method can be carried out mechanically based on the data available to the Claims Administrator without requiring Claimants to provide any additional information or take any additional time other than simply filing out a Claim Form at the appropriate time after final approval.[8]

Finally, by agreement of the parties, if funds are left over after distribution to the Settlement Class, and it is determined that it would be inefficient to conduct an additional

---

[7] Plaintiffs do not presently have sufficient data to determine the Net Price each individual Claimant paid for each year he or she attended a Defendant. Further, it would not be efficient or practical to require each Claimant, many of whom attended a Defendant more than a decade ago, to have records of the Net Prices each paid. Accordingly, the Plan proposes to use publicly available average annual Net Prices charged by each Defendant for each applicable academic year during the Class Period (defined in the Settlement Agreements at pp. 4-5), published by the U.S. Department of Education, as an estimate of the net amounts paid by Claimants. Ex. A to Revised Plan at 4-5.
[8] Plaintiffs intend to submit a proposal for a Claims Administration process, including a proposed form of Claim Form, in conjunction with their memorandum of law in support of final approval.

distribution, the Revised Plan calls for Plaintiffs to seek leave of Court to ask that such left over funds by contributed to a charity focused on increasing access to college for lower income students. Settlement Agreement ¶ 9; *see also* Revised Plan at 2.

### 4. Notice and Settlement Administration Costs.

Settlement Class Counsel have retained Angeion, a highly experienced, well-regarded, third-party claims administrator to provide notice to the Settlement Class and to handle the administration of the claims. The proposed Revised Notice Plan is substantially similar to the Notice Plan approved by the Court in the Chicago Preliminary Approval Order. *Compare* Jan. 22, 2024 Weisbrot Decl. (describing the "Revised Notice Plan") *with* Aug. 14, 2023 Weisbrot Decl., ECF No. 428-7 (describing the "Notice Plan"). The Revised Plan is set out in the Jan. 22, 2024 Weisbrot Decl. (attached hereto). The Revised Notice Plan includes, first, direct emailed summary notice, Ex. A to Jan. 22, 2024 Weisbrot Decl., to the vast bulk of the Settlement Class using the information already provided by the seventeen Defendants to Angeion. Second, Angeion will send the long-form notice (*id.* at Ex. B) via the U.S. postal service to those Settlement Class members who request it. Jan. 22, 2024 Weisbrot Decl. ¶ 12. Third, Angeion will conduct a multi-tiered, robust media campaign strategically designed to provide notice to the Settlement Class. The latter program includes targeted internet notice, social media notice, a paid search campaign, and two press releases. *Id.* ¶ 13.

In addition, there will be a toll-free telephone number where members of the Settlement Class can learn more about their rights and options pursuant to the terms of the Settlements. *Id.* ¶¶ 13, 39. The revised long-form notices, as well as the revised summary email/media campaign notice, will communicate to members of the Settlement Class their rights and options under the Settlements (including the University of Chicago Settlement) in plain, easily understood

13

language. Finally, the Revised Notice Plan will also implement a case-specific Settlement Website, where members of the Settlement Class can easily view general information about the Settlements (including the University of Chicago Settlement), review relevant Court documents (including the long-form notice), and find important dates and deadlines pertinent to the settlement process. *Id.* ¶ 38. The Settlement Website will be user-friendly and make it easy for members of the Settlement Class to find information about this case, request the long-form notice, and later in the process after final approval: sign-up to receive a claim form and submit claims online. *Id.*

### 5. Release.

In exchange for the monetary relief, the Settling Universities and certain related parties identified in the Settlement Agreements will receive a release of all claims Settlement Class members brought or could have brought arising out of or relating to a common nucleus of operative facts with those alleged in the Complaint (and Second Amended Complaint) through the date of preliminary approval. The release takes care not to release certain unrelated claims that might arise between the parties in the "ordinary course." *See* Settlement Agreement ¶¶ 1(m), 13-14.

### 6. Attorneys' Fees and Costs for Settlement Class Counsel and Service Awards for Class Representatives.

Settlement Class Counsel intend to make an application to the Court for a reasonable attorneys' fee award in an amount not to exceed one-third of the gross Settlement Fund (*i.e.*, 1/3 of $118 million, or $39.33 million), plus one-third of any accrued interest on the gross Settlement Fund, plus reimbursement of all reasonably incurred expenses during the investigation and litigation of this case to date.

Settlement Class Counsel will also seek service awards for Class Representatives to be paid from the Settlement Fund, in an amount up to $20,000 for each of the eight Class Representatives ($160,000 total).[9] Each class representative reviewed the Complaint, produced documents, sat for a deposition, and devoted substantial time and energy to the matter to date. Jan. 23, 2024 Joint Decl. ¶¶ 7, 13. But for the service of the Class Representatives, members of the Settlement Class would have gone uncompensated for the alleged damages they suffered due to the conduct challenged in this case. *See In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *18 (E.D. Pa. June 2, 2004) (noting that service awards were "particularly appropriate in this case because there was no preceding governmental action alleging a conspiracy"). Plaintiffs propose below a schedule for the filing of the request for attorneys' fees, reimbursement of reasonable expenses, and service awards for the Class Representatives.

## III. THE PROPOSED SETTLEMENTS MEET THE STANDARD FOR PRELIMINARY APPROVAL

As the Seventh Circuit has recognized, "[f]ederal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Settlement "minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Lechuga v. Elite Eng'g, Inc.*, 559 F. Supp. 3d 736, 744 (N.D. Ill. 2021) (internal citations omitted). Approval of a proposed class action settlement proceeds in

---

[9] Courts in this Circuit have awarded comparable service awards for class representatives in other class action cases. *See, e.g.*, *Allegretti v. Walgreen Co.*, 2022 WL 484216, at *2 (N.D. Ill. Jan. 4, 2022) (approving $15,000 service award to each class representative); *Daluge v. Cont'l Cas. Co.*, 2018 WL 6040091, at *3 (W.D. Wis. Oct. 25, 2018) (approving $17,500 service award to each class representative); *Hale v. State Farm Mut. Auto Ins. Co.*, 2018 WL 6606079, at *15 (S.D. Ill. Dec. 16, 2018) (approving service awards of $25,000 per class representative) (collecting cases); *Slaughter v. Wells Fargo Advisors, LLC*, 2017 WL 3128802, at *3 (N.D. Ill. May 4, 2017) (approving $175,000 service award to each class representative); *In re FedEx Ground Package Sys., Inc. Emp. Practices Litig.*, 251 F. Supp. 3d 1225, 1245 (N.D. Ind. 2017) (approving $15,000 service awards to each class representative).

two steps. First, the court grants preliminary approval to the settlement and provisionally certifies a settlement class. Second, after notice of the settlement is provided to the class and the court conducts a fairness hearing, the court may grant final approval of the settlement. *See* Manual for Complex Litigation (Fourth), § 21.63 ("Manual").

Under Fed. R. Civ. P. 23(e), a class action settlement may be *finally* approved if it is "fair, reasonable and adequate" after analysis of the factors outlined in Rule 23(e)(2). At the *preliminary* approval stage, by contrast, a court need only assess whether the settlement is "within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *see also In re Tiktok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021) (court need only "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing [and] not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards" (internal citations and quotations omitted)). In making this assessment, courts perform "a more summary version of the final fairness inquiry" at the preliminary approval stage. *Id.* at *21; *see also In re NCAA Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 603 (N.D. Ill. 2016) ("Balancing the fairness factors in a summary fashion [] is appropriate on preliminary approval.").

At preliminary approval, courts consider the following five factors: "the strength of plaintiff's case compared to the settlement amount, the complexity, length, and expense of the litigation, any opposition to settlement, the opinion of competent counsel, and the stage of the proceedings (including the amount of discovery completed) at the time of the settlement." *Guzman v. Nat'l Packaging Servs. Corp.*, 2022 U.S. Dist. LEXIS 37362, at *4-*5 (E.D. Wis. Mar. 3, 2022); *TikTok*, 565 F. Supp. 3d at 1084 (listing same factors). "The most important factor . . . is the strength of plaintiff's case on the merits balanced against the amount offered in

the settlement." *Id.*; *see also Lucas v. Vee Pak, Inc.*, 2017 WL 6733688, at *8 (N.D. Ill Dec. 20, 2017). Consideration of the relevant factors, as shown below, supports preliminarily approving the Settlement Agreements and authorizing notice to the Settlement Class.

### A. The Strength of Plaintiffs' Case Compared to the Terms of the Settlements

The first factor, which balances the strength of the class's claims on the merits against the value conferred by the proposed settlement, is satisfied here. While district courts often "assess the net expected value of continued litigation" by quantifying the range of possible outcomes as part of this analysis, *Lucas*, 2017 WL 6733688, at *8, the Seventh Circuit has held that courts need not engage in such quantification "where there are other reliable indicators that the settlement reasonably reflects the merits of the case." *TikTok*, 565 F. Supp. 3d at 1087 (quoting *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 285 (7th Cir. 2017)). Such reliable indicators are present where, as here, the settlement was reached through arms' length negotiations, highly experienced counsel negotiated the settlement, and substantial discovery has enabled the parties to analyze the strengths and weaknesses of the case. For example, in *TikTok*, because such factors were present, the court concluded that it "need not undertake [a] mechanical mathematical valuation," and instead recognized that the proposed settlement ensured meaningful value to the class members as compared to the risks of seeking a better outcome at trial. *TikTok*, 565 F. Supp. 3d at 1088.[10]

Here, after significant document discovery, arms' length negotiations were engaged in by highly experienced counsel, aided by highly respected mediators, and no suspicious

---

[10] *See also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (when there are no "suspicious circumstances" surrounding a settlement reached through arms' length negotiations by experienced counsel after the parties have sufficiently explored the merits of the case a court may preliminarily approve a settlement without quantifying the value of continued litigation).

circumstances are present. Jan. 23, 2024 Joint Decl. ¶¶ 19, 24. The Settlements achieve both a significant financial recovery (individually and collectively) and they require each Settling Defendant to complete certain additional, limited discovery.

At the same time, the contemplated Settlements do not reduce Plaintiffs' ultimate potential recovery in this case, as the non-settling Defendants remain jointly and severally liable for all of the alleged damages caused by all of the Defendants' alleged collusion. Moreover, Plaintiffs believe that the remaining Defendants have assets sufficient to pay any damages award. *See id.* ¶ 8.

Accordingly, this factor weighs in favor of preliminary approval.

### B.    The Complexity, Length, and Expense of Continued Litigation

When settlement enables the parties to avoid the costs and risks of litigating complex issues, this factor weighs in favor of preliminary approval. *Lucas*, 2017 WL 6733688, at *12. The Settlements reduce the expense associated with prosecuting the case, narrow the number of adversaries that Plaintiffs face, ensure at least some monetary recovery for Settlement Class members, and increase the likelihood of further settlements. The Settling Universities' agreements to complete certain discovery, moreover, is also a relevant factor. *Id.* Accordingly, this factor weighs in favor of preliminary approval.

### C.    The Amount of Opposition to the Settlements

While the reaction of the Settlement Class can only be determined after the distribution of notice, the Representative Plaintiffs have all affirmed support for the Settlements. Jan. 23, 2024 Joint Decl. ¶ 7. If, upon the issuance of notice, objections are filed, the Court can consider them in determining whether to grant final approval. *See Lucas*, 2017 WL 6733688, at *12.

18

### D.    The Opinion of Competent Counsel

Courts often defer to the judgment of experienced counsel who have engaged in arms' length negotiations, understanding that vigorous, skilled negotiation protects against collusion and advances the fairness interests of Fed R. Civ. P. 23(e). *See, e.g.*, *TikTok*, 565 F. Supp. 3d at 1091 (plaintiffs' "well qualified" counsel attested to their belief that the settlement was fair, reasonable and adequate); *Lucas*, 2017 WL 6733688, at *12 (plaintiffs' counsel had "extensive experience" in subject matter of litigation and believed settlement to be in the best interest of the class).

Settlement Class Counsel believe that the Settlements are fair and in the best interests of the Settlement Class. Jan. 23, 2024 Joint Decl. ¶¶ 8, 25-26. Settlement Class Counsel collectively have decades of experience in antitrust litigation, including helping to spearhead the original Overlap Group case successfully prosecuted by the U.S. Department of Justice against the predecessor to the 568 Presidents Group. *Id.* ¶¶ 30-31; Mem. ISO Mot. for Appt. of Interim Lead Counsel, ECF No. 88 at 4-12;[11] Gilbert Decl., ECF No. 87-2, ¶¶ 4-8. Settlement Class Counsel have applied their well-honed litigation skills, along with their years of experience handling substantial class action and antitrust cases, during settlement negotiations. They believe that the Settlements represent (individually and collectively) an excellent result. Accordingly, this factor weighs in favor of preliminary approval.

### E.    The Stage of the Proceedings

The importance of this factor relates to whether Settlement Class Counsel has "access to

---

[11] The Court previously denied Plaintiffs' Motion for Appointment of Interim Lead Counsel without prejudice. ECF No. 182. It subsequently appointed proposed Settlement Class Counsel in the University of Chicago Preliminary Approval Order. *See* ECF Nos. 428 ¶ 5 (moving for the appointment of the three proposed firms as interim co-lead counsel); ECF No. 439 (granting motion).

sufficient information such that they could effectively represent the Class." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 588 (N.D. Ill. 2011). The relevant inquiry is not how much formal discovery occurred—or indeed if any formal discovery occurred—but rather, "how additional discovery would have been in the interest of the class or would have resulted in a better settlement." *Id.* (cleaned up). The proposed Settlements occur in the latter third of the lengthy period of fact discovery. The parties thus have had sufficient opportunity to assess the strengths and weaknesses and "place value on their respective positions in this case." *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 793 (N.D. Ill. 2015). Accordingly, this factor weighs in favor of preliminary approval.

**F.    The Revised Plan of Allocation Is Fair, Reasonable, and Adequate**

The proposed Revised Plan of Allocation, Ex. 7 to Jan. 23, 2024 Joint Decl., uses primarily the same procedure to allocate the Net Settlement Fund as the plan the Court preliminarily approved for the University of Chicago Settlement, Ex. A to Revised Plan of Allocation. *See* ECF No. 439 (approving plan of allocation). Indeed, the Revised Plan of Allocation incorporates the Plan of Allocation the Court approved for the University of Chicago Settlement. Revised Plan at 2. The only exception is that, as part of the Second Tranche Settlement Agreements, the parties have agreed that Plaintiffs would seek leave of Court to disburse excess funds to a worthy *cy pres* recipient whose goal is to increase access to higher education for underprivileged families in a situation where it would not be cost effective or administratively efficient to redistribute any excess funds to the authorized claimants. *See id.*

The Revised Plan would allocate the Net Settlement Fund to members of the Settlement Class in proportion to the injuries each allegedly suffered due to the challenged conduct. The Plan is fair, reasonable, adequate, *and* efficient. "The same standards of fairness, reasonableness

and adequacy that apply to the settlement apply to the Plan of Allocation." *Retsky Family Ltd.*
*P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001).[12] "Federal
courts have held that an allocation plan that reimburses class members based on the extent of
their injuries is generally reasonable." *Lucas*, 2017 WL 6733688, at *13 (collecting cases).

As described above and in the Revised Plan, the "Net Price," as that term is used here,
includes the price of tuition, fees, room, and board minus all need-based and other forms of aid
(excluding loans). *See* Ex. A to Revised Plan, at 3. Plaintiffs allege that Class members suffered
antitrust injury (and damages) because they paid artificially inflated Net Prices to Defendants
due to the challenged conduct. The website of the 568 Group acknowledged that one of its main
goals was "to reduce much of the variance in need analysis results," to "diminish or eliminate . . .
divergent results," and to do so in a "consistent manner." *Id.* at 2-3.

The Revised Plan proposes to use publicly available average annual Net Prices charged
by each Defendant for each applicable academic year during the Class Period, as published by
the U.S. Department of Education. These published prices will serve as estimates of the net
amounts paid by Claimants at each school. *Id.* at 4-5.

The challenged conduct allegedly artificially inflated the Net Price Class members paid to
attend each Defendant for each term a student attended. Given that, and also the evidence that the
challenged conduct sought to effect Net Prices in a "consistent manner," it is reasonable to
conclude, for purposes of the Revised Plan, that Claimants suffered injury in rough proportion to
the average Net Price charged by each school during the years Claimants attended. *Id*. at 3. In

---

[12] *See also Heekin v. Anthem, Inc*., 2012 WL 5472087, at *3 (S.D. Ind. Nov. 9, 2012) ("As with the
approval of a settlement, courts must determine whether the plan for allocation of settlement funds is fair,
reasonable, and adequate.") (citing *Summers v. UAL Corp. ESOP Comm*., 2005 WL 3159450, at *2 (N.D.
Ill. Nov. 22, 2005)).

other words, because the alleged overcharge is, roughly, a fixed percentage amount of the Net Price paid, a reasonable measure of the injury to each Claimant is the average Net Price each Defendant charged during each year or term that Claimant attended. *Id*. As a result, a fair and efficient way to allocate the Net Settlement Fund would be to ensure that each Claimant receives its *pro rata* share of the Net Settlement Fund in proportion to the average Net Price charged by the Defendant for each year or term a Claimant attended that institution. *Id*. at 3-4.

At a later stage in the process, after final approval, Claimants who provide their addresses to the Claims Administrator will be provided pre-populated Claims Forms listing the Net Price charged by their respective schools during the periods they attended. To compute each Claimant's *pro rata* share, the Claims Administrator will do the following. First, the Claims Administrator would determine, for each Claimant, the number of years (or fractions thereof) that the Claimant paid a Defendant for cost of attendance during the Class Period. The Claims Administrator, on a Claimant-by-Claimant basis, would then assign to each Claimant the average annual Net Price charged by that Defendant for each year the Claimant attended (or fraction thereof) based on publicly available aggregated pricing data. The Net Prices assigned for each Claimant would be adjusted for fractions of years, where a student may not have attended for an entire school year. The Claims Administrator would then sum the average Net Prices over all the years for each Claimant, up to a maximum of four full academic years per Claimant. That sum would be the numerator of each Claimant's *pro rata* allocation computation. Second, the Claims Administrator would add together all of the numerators for all Claimants, and that sum would serve as the denominator. Third, the Claims Administrator would divide the numerator from the first step for each Claimant by the denominator from the second step. That fraction would be the *pro rata* share for each Claimant. Fourth, and finally, to compute the total allocated sum for each

Claimant, the Claims Administrator would multiply the fraction from the third step for each

Claimant by the Net Settlement Fund, generating the dollar value of each Claimant's total

allocation from the Net Settlement Fund. *Id.* at 6.

Plans of allocation like this one, recommended by experienced Settlement Class Counsel

(in consultation with their consultants),[13] which distribute settlement funds based on a *pro rata*

share of purchases, are routinely approved because they approximate the amount of relative

damage sustained by each Settlement Class member.[14] Settlements in antitrust cases are

---

[13] *See also Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 5627171, at *6 (N.D. Ind. Sept. 18, 2020)
("When formulated by competent and experienced counsel, a plan for allocation of net settlement
proceeds need have only a reasonable, rational basis in order to be fair and reasonable") (citation and
internal quotation marks omitted); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y.
2015) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended
by experienced and competent class counsel.") (collecting cases) (cleaned up); *accord In re Auto. Parts
Antitrust Litig.*, 2019 WL 7877812, at *1 (E.D. Mich. Dec. 20, 2019).

[14] *See also In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at *6 (N.D. Cal. Sept. 2, 2015) ("A
plan of allocation that reimburses class members based on the extent of their injuries is generally
reasonable.") (quoting *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994)); *In re
Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *15 (E.D. Mich. Dec. 13, 2011) ("Courts generally
consider plans of allocation that reimburse class members based on the type and extent of their injuries to
be reasonable.") (quoting *Meijer, Inc. v. 3M*, 2006 WL 2382718, at *17 (E.D. Pa. Aug. 14, 2006));
*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) (same) (internal quotation omitted); 4 Alba
Conte & Herbert Newberg, *Newberg on Class Actions* § 12.35, at 350 (4th ed. 2002) (noting that *pro-rata*
allocation of a settlement fund "is the most common type of apportionment of lump sum settlement
proceeds for a class of purchasers" and "has been accepted and used in allocating and distributing
settlement proceeds in many antitrust class actions"); *Summers*, 2005 WL 3159450, at *2 ("Given that the
settlement funds in the instant action will be disbursed on a pro rata basis to all class members, we find
that the allocation plan is reasonable and, thus, we grant Plaintiffs' motion for approval of the allocation
plan."); *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 105-06 (D.N.J. 2018) ("In particular, *pro rata*
distributions are consistently upheld, and there is no requirement that a plan of allocation differentiat[e]
within a class based on the strength or weakness of the theories of recovery.") (citation and internal
quotation marks omitted); *Packaged Ice*, 2011 WL 6209188, at *15 ("Typically, a class recovery in
antitrust or securities suits will divide the common fund on a pro rata basis among all who timely file
eligible claims, thus leaving no unclaimed funds.") (quoting 3 *Newberg on Class Actions* § 8:45 (4th ed.
2011)).

commonly distributed to direct purchaser classes based on estimates of a purchaser's *pro rata* share.[15]

### G.    Angeion Is an Appropriate Settlement Claims Administrator

The Court previously appointed Angeion as the administrator for the University of Chicago Settlement (ECF No. 439, at ¶ 8), and Plaintiffs respectfully submit that the Court similarly appoint Angeion to oversee the administration of the Second Tranche Settlements, including disseminating notice to the Settlement Class, calculating each Settlement Class Member's *pro rata* share of the Net Settlement Fund, and distributing the funds. Angeion is an experienced settlement and claims administration firm with sophisticated technological capabilities and is staffed by personnel well-versed in antitrust issues and class action litigation. *See* Aug. 14, 2023 Weisbrot Decl. ¶¶ 1-10 (ECF No. 428-7).

Angeion, with oversight from Settlement Class Counsel and Plaintiffs' economic consultants, will handle all aspects of providing notice to potential members of the Settlement Class and administering their claims, including emailing, mailing and otherwise distributing the notice, managing a call center and settlement website to handle all questions regarding completion and submission of the claim forms, physically processing the claims, informing Claimants about the completeness or possible deficiency of their claims, and ultimately distributing the Net Settlement Fund, subject to Court approval.

---

[15] *See, e.g.*, *In re Aftermarket Filters Antitrust Litig.*, No. 08-cv-4883, ECF No. 1082 (N.D. Ill. Mar. 20, 2014) (ordering *pro rata* distribution of settlement funds); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 1:09-cv-07666, ECF No. 703 (N.D. Ill. Apr. 16, 2014) (approving *pro rata* Plan of Allocation, as described in ECF No. 696, Ex. 1 ¶¶ 18-19); *In re Brand Name Prescription Drugs Antitrust Litig.*, 1999 WL 639173, at *4 (N.D. Ill. Aug. 17, 1999) (approving *pro rata* distribution of funds based on claimant's share of qualifying purchases at issue); *accord In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 316 (S.D.N.Y. 2020); *In re Loestrin 24 FE Antitrust Litig.*, No. 1:13-md-02472, ECF No. 1462 (D.R.I. Sept. 1, 2020); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14- md-2503, ECF No. 1179 (D. Mass. July 18, 2018).

**H.      The Proposed Form and Manner of Notice Are Appropriate**

Under Rule 23(e), class members are entitled to reasonable notice of a proposed

settlement before it is finally approved by the Court, and to notice of the final Fairness Hearing.

*See* Manual §§ 21.312, 21.633. For 23(b)(3) classes, the court must "direct to class members the

best notice that is practical under the circumstances, including individual notice to all members

who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The two

components of notice are: (1) the form of the notice; and (2) the manner in which notice is sent to

class members.

The form of notice for the Settlements is substantively the same as the notices the Court

preliminarily approved for the University of Chicago Settlement, except that (a) the revised

forms of notice are updated to include information on all the Settlements to date, (b) the revised

notices include the new proposed Settlement Class Definition and revised forms of releases in

the Second Tranche Settlement Agreements, and (c) the revised notices would update the

deadlines for the rest of the settlement approval process. *Compare* ECF Nos. 428-9, 428-10 *with*

Exs. A & B to Jan. 22, 2024 Weisbrot Decl.

Plaintiffs request the Court approve the Revised Notice Plan described in detail below.

**1.      Forms of Notice.**

The proposed revised forms of notice are updated and revised versions of the notices this

Court approved as part of the University of Chicago Settlement. As with that settlement, the

proposed revised long-form notice here, Jan. 22, 2024 Weisbrot Decl., Ex. B, is designed to alert

Settlement Class members to the proposed Settlements (including the University of Chicago

Settlement) by using a bold headline, and the plain language text provides important information

regarding the terms of all the proposed settlements, including the nature of the action; the

25

definition of the Settlement Class provisionally certified; the identity of the Settling Universities

(and University of Chicago); the significant terms of all the proposed settlements, including the

total amount the Settling Universities (and University of Chicago) have agreed to pay; that a

Settlement Class member may object to all or any part of the proposed Settlements or Settlement

Class Counsel's petition for attorneys' fees and reimbursement of expenses, or the proposed

service awards for the named Plaintiffs; and the process and deadline for doing so, including

entering an appearance through an attorney if the Settlement Class member desires; that

Settlement Class members may exclude themselves from the Settlement Class, the consequences

of and process for doing so; the final approval process, including the schedule, for the proposed

Settlements (and the University of Chicago Settlement) and Settlement Class Counsel's petition

for attorneys' fees, request for reimbursement of litigation expenses; and the binding effect of a

final judgment on members of the Settlement Class.

The proposed revised summary notice, Jan. 22, 2024 Weisbrot Decl., Ex. A, provides a

concise summary of the key aspects of all the Settlements, defines the Settlement Class, and

provides information about how to obtain more information about any aspect of the Settlements

(including the University of Chicago Settlement). *Id.* In addition, the proposed Revised Notice

Plan will include a settlement website (containing all the key settlement related documents,

including all the written settlement agreements and all filings relating to the settlements and fee

application), as well as toll-free contact information for the Claims Administrator. Jan. 22, 2024

Weisbrot Decl. ¶¶ 38-39.

2.      **Manner of Notice.**

Plaintiffs propose to use the same manner of notice approved by the Court as part of the

University of Chicago Settlement. *Compare* Aug. 14, 2023 Weisbrot Decl., ECF No. 428-7, at

12-46 *with* Jan. 22, 2024 Weisbrot Decl. at 12-46. Plaintiffs incorporate by reference the

discussion of the manner of notice from the Memorandum of Law in Support of Plaintiffs'

Motion for Preliminary Approval. ECF No. 428-1 at 20-23.

I.      **Huntington Bank Is an Appropriate Escrow Agent**

The Court previously appointed Huntington as the Escrow Agent when it preliminarily

approved the University of Chicago Settlement. *See* ECF No. 439, ¶ 9. As explained in

Plaintiffs' Memorandum of Law regarding the University of Chicago Settlement, Huntington is a

respected bank that has served as the escrow agent in many other antitrust class action cases. *See*

Mem. of Law in Support of Preliminary Approval, ECF No. 428-1, at 23. Plaintiffs respectfully

request the Court similarly appoint Huntington as the Escrow Agent for the Settlements, and that

the proposed Jan. 23, 2024 Escrow Agreement (Ex. 6 to Jan. 23, 2024 Joint Decl.) be approved

for that purpose.

J.      **The Proposed Schedule Is Fair and Should Be Approved**

Plaintiffs propose the following schedule for completing the approval process for the

Settlements:

- No later than 30 days after the date of the order preliminarily approving the Settlements (the "Order"), Angeion shall begin the process of providing notice to the Settlement Class, in accordance with the Revised Notice Plan;

- No later than 60 days after the date of the Order, Settlement Class Counsel shall file a motion for attorneys' fees, unreimbursed litigation costs and expenses, and service awards for the Class Representatives, pursuant to the terms of the Settlement Agreements (including the University of Chicago Agreement).

27

- By no later than 75 days after of the date of the Order, Settlement Class Members may, using the method set out in the revised long-form notice and the Settlement Agreements (including the University of Chicago Agreement), request exclusion from the Settlement Class or submit any objection to the proposed Settlements or to the proposed Revised Plan of Allocation summarized in the revised notice, or to Settlement Class Counsel's request for attorneys' fees and unreimbursed litigation costs and expenses, or to the request for service awards to the Class Representatives.

- No later than 90 days after the date of the Order, Settlement Class Counsel shall file all briefs and materials in support of final approval of all the Settlements, including, *inter alia*, (a) a report to the Court regarding the effectuation of the Revised Notice Plan, and notifying the Court of any objections or exclusions, and (b) a process for effectuating the Revised Plan of Allocation, including for deciding claims and distributing from the Net Settlement Fund.

- The Fairness Hearing shall take place at least 120 days after the Court's entry of the Order.

This schedule is fair to Settlement Class members since it provides ample time for consideration of the Settlements and Settlement Class Counsel's request for fees, costs, and expenses before the deadline for submitting objections or exclusions. Specifically, Settlement Class members will have the notice for 45 days before the deadline to object to the Settlements and will have Settlement Class Counsel's request for costs and expenses for more than two weeks before the deadline to object to Settlement Class Counsel's request for fees, costs, and expenses, and to the request for service awards to the Class Representatives. In addition, the schedule allows the full statutory period for the Settling Universities to serve their CAFA notices pursuant to 28 U.S.C. § 1715, and for regulators to review the proposed Settlements and, if they choose, advise the Court of their view.

## IV. THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS HAVE BEEN PROVISIONALLY MET

Plaintiffs ask that the Court provisionally certify the Settlement Class as applicable to all Settlements achieved to date, inclusive of the University of Chicago Settlement and the five

Second Tranche Settlements. Plaintiffs rely upon, and incorporate as if set forth herein, the same arguments and facts they presented in support of provisional class certification in Plaintiffs' brief for preliminary approval of the University of Chicago Settlement. *See* Mem. of Law in Support of Preliminary Approval, ECF No. 428-1, at 24-33.

The proposed Settlement Class is defined as follows:

All U.S. citizens or permanent residents who have during the Class Period (a) enrolled in one or more of Defendants' full-time undergraduate programs, (b) received at least some need-based financial aid from one or more Defendants, and (c) whose tuition, fees, room, or board paid to attend one or more of Defendants' full-time undergraduate programs was not fully covered by the combination of any types of financial aid or merit aid (not including loans) in any undergraduate year.[16] The Class Period is defined as follows:

- For Chicago, Columbia, Cornell, Duke, Georgetown, MIT, Northwestern, Notre Dame, Penn, Rice, Vanderbilt, Yale—from Fall Term 2003 through the date the Court enters an order preliminarily approving the Settlement.

- For Brown, Dartmouth, Emory—from Fall Term 2004 through the date the Court enters an order preliminarily approving the Settlement.

- For Caltech—from Fall Term 2019 through the date the Court enters an order preliminarily approving the Settlement.

- For Johns Hopkins—from Fall Term 2021 through the date the Court enters an order preliminarily approving the Settlement.

Excluded from the Class are:

- Any Officers[17] and/or Trustees of Defendants, or any current or former employees holding any of the following positions: Assistant or Associate Vice Presidents or Vice Provosts, Executive Directors, or Directors of Defendants' Financial Aid and Admissions offices, or any Deans or Vice Deans, or any employees in Defendants' in-house legal offices; and

---

[16] For avoidance of doubt, the Class does not include those for whom the total cost of attendance, including tuition, fees, room and board for each undergraduate academic year, was covered by any form of financial or merit aid (not including loans) from one or more Defendants.

[17] For the avoidance of doubt, the Columbia University "Officers" excluded from the Class are members of the Senior Administration of Columbia University, and do not include exempt employees of Columbia University who are referred to as officers.

- the Judge presiding over this Action, his or her law clerks, spouse, and any person within the third degree of relationship living in the Judge's household and the spouse of such a person.

Settlement Agreement ¶ 1(c). As noted above, for the purposes of the University of Chicago Settlement, "the date the Court enters an order preliminarily approving the Settlement" shall be considered the date of entry of an order pursuant to this motion and the class definition applicable to the University of Chicago Settlement shall otherwise conform to the class definitions applicable to the Second Tranche Settlements.

### A.    Settlement Class Counsel Meet the Requirements of Rule 23(g)

Plaintiffs ask the Court to appoint Freedman Normand Friedland LLP, Gilbert Litigators & Counselors PC, and Berger Montague PC as Settlement Class Counsel under Fed. R. Civ. P. 23(g) for the Second Tranche Settlements for the same reasons Plaintiffs set forth in their briefing seeking preliminary approval for the University of Chicago Settlement: (i) these firms have devoted substantial time, effort, and resources to the litigation on behalf of the proposed class during approximately two years of hard-fought litigation; and (ii) counsel have extensive experience in complex and class action litigation, including antitrust class actions. *See* Mem. of Law in Support of Preliminary Approval, ECF No. 428-1, at 33-34; *see also* Jan. 23, 2024 Joint Decl. ¶¶ 30-31; Aug. 14, 2023 Joint Decl., ECF No. 428-2 ¶¶ 31-57.

### B.    Named Plaintiffs Meet the Requirements of Rule 23(a)(4)

Plaintiffs ask the Court to appoint Andrew Corzo, Sia Henry, Alexander Leo-Guerra, Michael Maerlender, Brandon Piyevsky, Benjamin Shumate, Brittany Tatiana Weaver, and Cameron Williams as Settlement Class representatives under Fed. R. Civ. P. 23(a)(4) for the Second Tranche Settlements for the same reasons Plaintiffs set forth in their brief seeking preliminary approval for the University of Chicago Settlement: (i) Plaintiffs and Settlement

30

Class members are current and former students at Defendant institutions, each of whom has a similar interest in maximizing and recovering alleged overcharges they collectively suffered as a result of the alleged conspiracy; and (ii) Plaintiffs have engaged in vigorous advocacy to date on behalf of the Settlement Class, including responding to discovery, preparing for and sitting for depositions, and considering and approving the settlement terms. *See* Mem. of Law in Support of Preliminary Approval, ECF No. 428-1, at 29-30 (describing Plaintiffs' qualifications as class representatives for the Chicago Settlement); Jan. 23, 2024 Joint Decl. ¶¶ 7, 13 (describing Plaintiffs' efforts in prosecuting the lawsuit to date).

## V.    CONCLUSION

Plaintiffs respectfully request, for the foregoing reasons, that the Court grant Plaintiffs' Motion and enter the proposed Order (in the form attached hereto), providing as follows:

1.    Provisional certification of the proposed Settlement Class;

2.    Provisional appointment of Plaintiffs as Class Representatives;

3.    Appointment of Plaintiffs' counsel as Settlement Class Counsel for the proposed Settlement Class;

4.    Preliminary approval of the proposed Second Tranche Settlement Agreements;

5.    Conforming the class definition applicable to the University of Chicago Settlement Agreement to the class definitions applicable to the Second Tranche Settlements;

6.    Approval of the proposed Revised Notice Plan, including a set of revised long-form and summary notices, and a settlement website;

7.    Pursuant to 34 C.F.R. § 99.37(a), finding that mailing addresses and email addresses in education records of current students of a Defendant constitute "directory information" and may be disclosed, without consent, to the Settlement Claims Administrator for purposes of providing class notice in this litigation if (a) the Defendant has previously provided public notice that the mailing addresses and email addresses are considered "directory information" that may be disclosed to third parties including public notice of how students may restrict the disclosure of such information, and (b) the student has not exercised a right to block disclosure of current mailing addresses or email addresses ("FERPA Block").

31

Defendants shall not disclose from education records mailing addresses or email addresses subject to a FERPA Block;

8. Pursuant to 34 C.F.R. § 99.37(b), finding that mailing addresses and email addresses in education records of former students of a Defendant constitute "directory information" and may be disclosed, without consent, to the Settlement Claims Administrator for purposes of providing class notice in this litigation, provided that each Defendant continues to honor any valid and un-rescinded FERPA Block created while a student was in attendance;

9. Preliminary approval of the Revised Plan of Allocation;

10. Appointment of Angeion as Settlement Claims Administrator;

11. Appointment of Huntington as Escrow Agent for the funds from all the Settlements achieved to date and of the proposed Jan. 23, 2024 Escrow Agreement;

12. Approval and establishment of the Settlement Fund under the Settlement Agreement as a qualified settlement fund ("QSF") pursuant to Internal Revenue Code Section 468B and the Treasury Regulations promulgated thereunder;

13. Staying of all litigation activity against the Settling Universities on behalf of the Settlement Class pending final approval or termination of the Settlements; and

14. Approval of a proposed schedule for the Settlements, including the scheduling of a Fairness Hearing during which the Court will consider: (a) Plaintiffs' request for final approval of the Settlements and entry of a proposed order and final judgment; (b) Plaintiffs' counsel's application for attorneys' fees, reimbursement of expenses, service awards, and payment of administrative costs; and (c) Plaintiffs' request for dismissal of this action only against the Settling Universities with prejudice.

Dated: January 23, 2024                    Respectfully Submitted,

By:/s/Robert D. Gilbert                    /s/ Edward J. Normand
Robert D. Gilbert                          Devin "Vel" Freedman
Elpidio Villarreal                         Edward J. Normand
Robert S. Raymar                           Peter Bach-y-Rita
David Copeland                             Richard Cipolla
Steven Magnusson                           **FREEDMAN NORMAND**
Natasha Zaslove                            **FRIEDLAND LLP**
**GILBERT LITIGATORS &**                   99 Park Avenue
**COUNSELORS, P.C.**                       Suite 1910
11 Broadway, Suite 615                     New York, NY 10016

New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
dcopeland@gilbertlitigators.com
smagnusson@gilbertlitigators.com
nzaslove@gilbertlitigators.com

Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law
rcipolla@fnf.law

/s/ Eric L. Cramer
Eric L. Cramer
Ellen Noteware
David A. Langer
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
enoteware@bm.net
dlanger@bm.net

Daniel J. Walker
Robert E. Litan
Hope Brinn
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

*Counsel for Plaintiffs and the Proposed Settlement Class*