# EXHIBIT 7

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, <br><br> Defendants. <br><br> THIS DOCUMENT RELATES TO: <br><br> Plaintiffs' Proposed Plan of Allocation for the Settlement Class | Case No.: 1:22-cv-00125 <br> **Hon. Matthew F. Kennelly** |

**PLAINTIFFS' [PROPOSED] REVISED PLAN OF ALLOCATION FOR SETTLEMENTS WITH UNIVERSITY OF CHICAGO AND THE FIVE ADDITIONAL SETTLING DEFENDANTS**

Plaintiffs Andrew Corzo, Sia Henry, Alexander Leo-Guerra, Michael Maerlender, Brandon Piyevsky, Benjamin Shumate, Brittany Tatiana Weaver, and Cameron Williams ("Plaintiffs"), on behalf of the Settlement Class (as defined in the Settlement Agreements), submitted an allocation plan ("Allocation Plan") to allocate funds received as a result of the proposed settlement with Defendant University of Chicago to members of the proposed Settlement Class. *See* ECF 428-6 (attached hereto as Exhibit A). On September 9, 2023, the Court preliminarily approved the settlement with the University of Chicago and the Allocation Plan. *See* ECF 439 at 5.

Because the proposed Settlement Class is the same across the six settlements to date, Plaintiffs propose to incorporate and use substantially the same Allocation Plan that the Court has already approved. Plaintiffs propose a combined allocation plan that applies to all of the settlements to date. In other words, Plaintiffs would conduct a single allocation process and distribution process across all settlements. The only difference between the previously approved Allocation Plan and the one Plaintiffs propose here is that the Settling Parties have agreed that they would seek leave of Court to distribute any excess funds that exist after making one or more distributions to members of the Settlement Class to a Court-approved *cy pres* recipient if it were determined that further distributions would not be cost effective.

# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>    Defendants.<br><br>THIS DOCUMENT RELATES TO:<br><br>Plaintiffs' Proposed Plan of Allocation for the Settlement Class | Case No.: 1:22-cv-00125<br>**Hon. Matthew F. Kennelly** |

## PLAINTIFFS' [PROPOSED] PLAN OF ALLOCATION

Plaintiffs Andrew Corzo, Sia Henry, Alexander Leo-Guerra, Michael Maerlender, Brandon Piyevsky, Benjamin Shumate, Brittany Tatiana Weaver, and Cameron Williams ("Plaintiffs"), on behalf of the Settlement Class (as defined in the Settlement Agreement), hereby submit this proposed Plan of Allocation to allocate the funds received as a result of the proposed settlement (the "Settlement") with defendant the University of Chicago ("UChicago") in the above-captioned matter, plus any interest earned on the settlement funds, and net of Court-approved attorneys' fees, any Court-approved named plaintiff service awards, and Court-approved expenses, including settlement and notice-related costs and expenses (the "Net Settlement Fund").

The proposed Plan of Allocation ("Allocation Plan") allocates the Net Settlement Fund based on an estimate of each Claimant's[1] *pro rata* share of the value of all valid claims submitted by members of the Settlement Class.

Plaintiffs' claims administrator, Angeion Group ("Angeion"), will calculate each Claimant's *pro rata* share of the Net Settlement Fund based on the formula set forth below, which is supported by Dr. Ted Tatos, an economist with the Econ One consulting group. The Allocation plan is based on (a) allegations in Plaintiffs' Second Amended Complaint, ECF 308 ("Complaint"), as well as (b) a review of documents produced to date in the litigation, and (c) economic analyses conducted by Plaintiffs' economic consultants.

By way of background, Plaintiffs allege that Defendants (as defined in the Settlement Agreement) have conspired, through various activities undertaken as members of the "568

---

[1] A "Claimant" is any entity that is a member of the Settlement Class who timely submits a validly completed claim form as part of the allocation process to be described in detail at the final approval stage.

2

Presidents Group" (the "568 Group"), to artificially deflate the calculations of financial need of Settlement Class members, which in turn are alleged to have artificially inflated the net price Class members paid to attend Defendant institutions. *See* Complaint ¶¶ 7, 238, 241. The "Net Price," as that term is used here, includes the price of tuition, fees, room, and board minus all need-based and other forms of aid (excluding loans). *Id.* ¶ 5. The vast majority of financial aid awarded by Defendants is need-based. The artificial inflation in the Net Price represents the antitrust injury suffered by Settlement Class members due to the alleged anticompetitive conduct challenged in the Complaint. Notably, the website of the 568 Group acknowledged that one of its main goals was "to reduce much of the variance in need analysis results," to "diminish or eliminate . . . divergent results," and to calculate financial need in a "consistent manner." *Id.* ¶ 127.

At this time, Plaintiffs do not have sufficient data to determine the Net Price each individual Claimant paid for each year he or she attended a Defendant. Moreover, attempting to compute such Net Prices in the context of this Plan for each Claimant would be inefficient and unduly expensive relative to size of award likely to go to each Claimant.

Because the challenged conduct artificially inflated the Net Price Claimants paid to attend each Defendant for each term a student attended, and given that Plaintiffs allege that the challenged conduct sought to affect Net Prices in a "consistent manner," it is fair to conclude that Claimants suffered injury in rough proportion to the average Net Price charged by each school. In other words, if the overcharge due to the challenged conduct is, roughly, a fixed percentage amount of the Net Price paid by all Class Members, that would mean that Claimants were injured in rough proportion to the average Net Price each Defendant charged during each year or term a student attended during the Class Period as defined in the Settlement Agreement. As a result, a

fair and efficient way to allocate the Net Settlement Fund would be to ensure that each Claimant receives its *pro rata* share of the Net Settlement Fund in proportion to the average Net Price charged by the Defendant for each year or term a Claimant attended that institution.

In short, as described in more detail below, the Net Settlement Fund will be allocated, *pro rata*, based on estimates of the total amount in dollars that each Claimant paid to a Defendant during the Class Period. For instance, if Claimant "A" attended a school charging an average Net Price of $65,000 per year for four years, and Claimant "B" attended a school charging an average Net Price of $70,000 per year for four years, Claimant A's *pro rata* share would be somewhat more than Claimant B's *pro rata* share.

As discussed above, there are no publicly available data on the Net Price paid by each Settlement Class member, and Plaintiffs do not currently have a comprehensive set of such data available to them. Nor would it be practical to require each Claimant, many of whom attended a Defendant more than a decade ago, to have records of the Net Prices each paid. Furthermore, because of the privacy protections of the Family Educational Rights and Privacy Act ("FERPA"), the Claims Administrator will not have access to this information from Defendants.[2] Accordingly, the Allocation Plan will use publicly available average annual Net Prices charged by each Defendant or each applicable academic year during the Class Period, published by the U.S. Department of Education, as an estimate of the amounts paid by each Claimant.

In order to compute each Claimant's *pro rata* share of the Net Settlement Fund, the Claims Administrator would do calculations in the following steps:

---

[2] Plaintiffs have learned through discovery that only the members of the 568 Group that joined since 2019 (Caltech in 2019 and Johns Hopkins in 2021) have student-specific Net Price data for all members of the Settlement Class that attended those universities. Other Defendants, which joined the 568 Group much earlier, do not have specific records reflecting Net Price data for the full Class Period.

4

First, the Claims Administrator would confirm for each Claimant for each year, or portion thereof, that the Claimant paid a Defendant during the Class Period. The Claims Administrator, on a Claimant-by-Claimant basis, would then assign to each Claimant the average annual Net Price charged by the applicable Defendant for each academic year, or appropriate fractions of a year thereof, where relevant.[3] The Claims Administrator would then sum the average Net Prices per year attended over all the years each Claimant attended and paid a Defendant, up to a maximum of four full academic years, arrive at a Total Net Price paid for that Claimant. To illustrate, for the sake of simplicity, assume that the average Net Price at one Claimant's university was $60,000 for each of four years. Under this assumption, the Total Net Price paid by this Claimant would be $240,000 ($60,000 per year summed over all four years, or equivalently, $60,000 x 4). The Claims Administrator would do this calculation for each Claimant. This result would be the numerator of each Claimant's *pro rata* allocation computation.

Second, the Claims Administrator would sum all the numerators for all Claimants to calculate the denominator. To further illustrate, again for the sake of simplicity, assume that 75,000 members of the Settlement Class file claims, and that average numerator value across the Settlement Class is $240,000 (reflecting an annual average Net Price of $60,000 multiplied by 4 years). Under these assumptions, the denominator would equal $18 billion (75,000 x $240,000).

Third, the Claims Administrator would divide the numerator from the first step, for each Claimant, by the denominator from the second step. That fraction would be the *pro rata* share for

---

[3] For example, a Claimant who attended a Defendant for only one semester would be assigned half the average annual Net Price charged in that year. Using the figures in the above illustration, a Claimant who attended a Defendant for a semester where the average annual Net Price was $60,000 per year would be assigned a Net Price of $30,000 for that year.

each Claimant.

Fourth, and finally, to compute the total allocated sum for each Claimant, the Claims Administrator would multiply the fraction from the third step for each Claimant by the among of the Net Settlement Fund. The product of that calculation would be the dollar value of each Claimant's total allocation from the Settlement.

Throughout this Allocation Plan, an "academic year" or "year" refers to the period beginning in late summer or early fall of one year, when students begin their studies, through the spring of the following year when students complete their studies, for that academic year. For most Defendants, a "full academic year" consists of two semesters of roughly equal length in time. Some Defendants may divide their academic years into other shorter terms, which would be accounted for accordingly.

Claimants will each provide, among other information on their claim forms: the Defendant University attended; the academic year(s), or portions thereof, each attended and paid for educational services provided by one or more Defendants; and an attestation that each Claimant was a member of the Settlement Class and did not fit into any recognized exception set out in the Settlement Class definition.