# EXHIBIT 12

# CUSTODIAN/ESCROW AGREEMENT FOR THIRD TRANCHE OF SETTLEMENTS

This Custodian/Escrow Agreement dated February 21, 2024, is made among Berger Montague PC, Freedman Normand Friedland LLP, and Gilbert Litigators & Counselors, P.C. ("Settlement Class Counsel"), and **THE HUNTINGTON NATIONAL BANK**, as Custodian/Escrow agent ("Third Tranche 568 Custodian/Escrow Agent").

## Recitals

A.     This Custodian/Escrow Agreement ("Third Tranche 568 Custodian/Escrow Agreement") governs the deposit, investment and disbursement of the settlement funds that, pursuant to the Stipulations of Settlement (the "Settlement Agreements") dated February 21, 2024 attached hereto as Exhibits 1-4, entered into by, among others, Settlement Class Counsel on behalf of the Plaintiffs,[1] individually and on behalf of the settlement class ("the Settlement Class"),[2] will be paid to settle, in part, the class action captioned *Henry et al. v. Brown Univ. et*

---

[1] Plaintiffs are Andrew Corzo, Sia Henry, Alexander Leo-Guerra, Michael Maerlender, Brandon Piyevsky, Benjamin Shumate, Brittany Tatiana Weaver, and Cameron Williams.

[2] The Settlement Class includes:
  a.  All U.S. citizens or permanent residents who have during the Class Period
      (a) enrolled in one or more of Defendants' full-time undergraduate programs,
      (b) received at least some need-based financial aid from one or more Defendants, and
      (c) whose tuition, fees, room, or board to attend one or more of Defendants' full-time undergraduate programs was not fully covered by the combination of any types of financial aid or merit aid (not including loans) in any undergraduate year.  The Class Period is defined as follows:
        i.   Chicago, Columbia, Cornell, Duke Georgetown, MIT, Northwestern, Notre Dame, Penn, Rice, Vanderbilt, Yale—from Fall Term, 2003 through the date the Court enters an order preliminarily approving the Settlement.
        ii.  Brown, Dartmouth, Emory—from Fall Term 2004 through the date the Court enters an order preliminarily approving the Settlement.
        iii. Caltech—from Fall Term 2019 through the date the Court enters an order preliminarily approving the Settlement.
        iv.  Johns Hopkins—from Fall Term 2021 through the date the Court enters an order preliminarily approving the Settlement.

The Settlement Class does not include those for whom the total cost of attendance, including tuition, fees, room, and board for each undergraduate academic year, was covered by any form of financial aid or merit aid (not including loans) from one or more Defendants. Excluded from the Settlement Class are (i) any Officers and/or Trustees of Defendants (with the exception of exempt employees of Columbia University with the title of "officer," as described further in footnote 3 of the Settlement Agreements), or any current or former employees holding any of the following positions:  Assistant or Associate Vice Presidents or Vice Provosts, Executive Directors, or Directors of Defendants' Financial Aid and Admission offices, or any Deans or Vice Deans, or any employees in Defendants' in-house legal offices; and (ii) the Judge presiding over this Action, his or her law clerks, spouse, and any person within the third degree of

*al.*, No. 1:22-cv-00125 ("the Action"), pending in the Northern District of Illinois (the "Court"). The Action brings claims against Brown University ("Brown"), California Institute of Technology ("Caltech"), University of Chicago ("Chicago"), The Trustees of Columbia University in the City of New York ("Columbia"), Cornell University ("Cornell"), Trustees of Dartmouth College ("Dartmouth"), Duke University ("Duke"), Emory University ("Emory"), Georgetown University ("Georgetown"), The Johns Hopkins University ("Johns Hopkins"), Massachusetts Institute of Technology ("MIT"), Northwestern University ("Northwestern"), University of Notre Dame du Lac ("Notre Dame"), The Trustees of the University of Pennsylvania ("Penn"), William Marsh Rice University ("Rice"), Vanderbilt University ("Vanderbilt"), and Yale University ("Yale").

B.     Pursuant to the terms of the Settlement Agreements, Defendants Trustees of Dartmouth College ("Dartmouth"), Northwestern University ("Northwestern"), William Marsh Rice University ("Rice"), and Vanderbilt University ("Vanderbilt") (collectively, the "Settling Universities") have agreed to pay or cause to be paid the total amount of $166 million in cash (the "Total Third Tranche Settlement Amount") in settlement of the claims brought against the Settling Universities in the Action. The Settling Universities have each agreed to pay the following amounts in accordance with the terms of their respective Settlement Agreements:

- Dartmouth – $33.75 million
- Rice – $33.75 million
- Northwestern – $43.5 million
- Vanderbilt –$55 million

C.     The Third Tranche Total Settlement Amount is to be deposited into a Custodian/Escrow account and, together with any interest accrued thereon, used to satisfy payments to authorized claimants, payments for attorneys' fees and expenses, payments for tax liabilities, and other costs pursuant to the terms of the Settlement Agreements. Consistent with the terms of the Settlement Agreements with the Settling Universities, if multiple settlements are noticed together, the notice costs shall be divided by the number of settlements and charged to the escrow account of each settlement, or the portion of any joint escrow account contributed to by each settlement, pari passu.

D.     Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreements.

<u>**Agreement**</u>

1.     <u>Appointment of Custodian/Escrow Agent</u>. The Third Tranche 568 Custodian/Escrow Agent is hereby appointed to receive, deposit, and disburse the Total Third Tranche Settlement Amount upon the terms and conditions provided in this Third Tranche 568 Custodian/Escrow Agreement, the Settlement Agreements, and any other exhibits or schedules later annexed hereto and made a part hereof.

---

relationship living in the Judge's household and the spouse of such a person.

2. The Third Tranche 568 Custodian/Escrow Account. The Third Tranche Custodian/Escrow Agent shall establish and maintain a Custodian/Escrow account on behalf of the Third Tranche 568 Settlement Fund, titled as 568 Settlement Fund (the "Third Tranche 568 Custodian/Escrow Account"). The Third Tranche 568 Custodian/Escrow Account shall include the existing Total Third Tranche Settlement Amount. Pursuant to the Settlement Agreements, the Settling Universities shall each cause their respective portions of the Third Tranche Total Settlement Amount identified in their respective Settlement Agreements to be deposited into the Third Tranche 568 Custodian/Escrow Account according to the terms of their respective Settlement Agreements. The Third Tranche 568 Custodian/Escrow Agent shall receive the Total Third Tranche Settlement Amount into the Third Tranche 568 Custodian/Escrow Account; the Total Third Tranche Settlement Amount and all interest accrued thereon shall be referred to herein as the "Settlement Fund." The Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein, and shall be released by the Third Tranche 568 Custodian/Escrow Agent only in accordance with the terms and conditions hereinafter set forth and set forth in the Settlement Agreements and in orders of the Court approving the disbursement of the Settlement Fund.

3. Investment of Settlement Fund. At the written direction of Settlement Class Counsel, the Third Tranche 568 Custodian/Escrow Agent shall invest the Settlement Fund exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. The Settling Universities shall not bear any responsibility for or liability related to the funds set forth in Paragraph 7(a) of the Settlement Agreement, once each of the Settling Universities transfers payment to the Third Tranche Custodian/Escrow Agent (through the method set forth in paragraph 7(a) of each respective Settlement Agreement), including but not limited to any responsibility for or liability related to the investment of the Settlement Fund by the Third Tranche 568 Custodian/Escrow Agent." .

4. Custodian/Escrow Funds Subject to Jurisdiction of the Court. The Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the Settlement Fund shall be distributed, pursuant to the Settlement Agreements and on further order(s) of the Court.

5. Tax Treatment & Report. The Settlement Fund shall be treated at all times as a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1. Class Counsel and the Settling Universities shall jointly and timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including the "relation-back election" under Treas. Reg. § 1.468B-1(j)(2) if necessary to the earliest permitted date. For purposes of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" of the Settlement Fund shall be Settlement Class Counsel. Settlement Class Counsel shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Treas. Reg. §1.468B-1. Settlement Class Counsel shall timely and properly prepare and file any informational and other tax returns necessary or advisable with respect to the Settlement Funds

and the distributions and payments therefrom including without limitation the returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-2(1).

6.     Tax Payments of Settlement Fund. All Taxes with respect to the Settlement Fund, as more fully described in the Settlement Agreement, shall be treated as and considered to be a cost of administration of the Settlement Fund and the Third Tranche 568 Custodian/Escrow Agent shall timely pay such Taxes out of the Settlement Fund without prior order of the Court, as directed by Settlement Class Counsel. Settlement Class Counsel shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law. Settlement Class Counsel may engage an accounting firm or tax preparer to assist in the preparation of any tax reports or the calculation of any tax payments due as set forth in Sections 5 and 6, and the expense of such assistance shall be paid from the Settlement Fund by the Third Tranche 568 Custodian/Escrow Agent at Settlement Class Counsel's direction. The Settlement Fund shall indemnify and hold the Settling Universities harmless for any taxes that may be deemed to be payable by the Settling Universities by reason of the income earned on the Settlement Fund, and the Third Tranche 568 Custodian/Escrow Agent, as directed by Settlement Class Counsel, shall establish such reserves as are necessary to cover the tax liabilities of the Settlement Fund and the indemnification obligations imposed by this paragraph. If the Settlement Fund is returned to the Settling Universities pursuant to the terms of the Settlement Agreements, the Settling Universities shall provide the Third Tranche 568 Custodian/Escrow Agent with a properly completed Form W-9.

7.     Disbursement Instructions

(a)     Settlement Class Counsel may, without further order of the Court or authorization by the Settling Universities' Counsel, instruct the Third Tranche 568 Custodian/Escrow Agent to disburse the funds necessary to pay Notice Expenses and the costs associated with administering the Settlement Fund as specifically set forth in this Agreement.

(b)     Disbursements other than those described in paragraph 7(a), including disbursements for distribution of Settlement Class Settlement Funds, must be authorized by either (i) an order of the Court, or (ii) the written direction of Settlement Class Counsel, namely Eric L. Cramer, Edward Normand, and Robert Gilbert.

(c)     In the event funds transfer instructions are given (other than in writing at the time of execution of this Third Tranche 568 Custodian/Escrow Agreement), whether in writing, by facsimile, e-mail, telecopier or otherwise, the Third Tranche 568 Custodian/Escrow Agent will seek confirmation of such instructions by telephone call back when new wire instructions are established to the person or persons designated in subparagraphs (a) and (b) above only if it is reasonably necessary, and the Third Tranche 568 Custodian/Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated. It will not be reasonably necessary to seek confirmation if the Third Tranche 568 Custodian/Escrow Agent receives written letters authorizing a disbursement from each of the law firms required in subparagraphs (a) and (b), as applicable, on their letterhead and signed by one of the persons designated in subparagraphs (a) and (b). To assure accuracy of the

instructions it receives, the Third Tranche 568 Custodian/Escrow Agent may record such call backs. If the Third Tranche 568 Custodian/Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved. The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by the Third Tranche 568 Custodian/Escrow Agent. Settlement Class Counsel will notify the Third Tranche 568 Custodian/Escrow Agent of any errors, delays or other problems within 30 days after receiving notification that a transaction has been executed. If it is determined that the transaction was delayed or erroneously executed as a result of the Third Tranche 568 Custodian/Escrow Agent's error, the Third Tranche 568 Custodian/Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law. Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

(d)     The Third Tranche 568 Custodian/Escrow Agent shall not be liable for any losses, costs or expenses arising directly or indirectly from the Third Tranche 568 Custodian/Escrow Agent's reliance upon and compliance with such instructions notwithstanding such instructions conflict or are inconsistent with a subsequent written instruction. The party providing electronic instructions agrees: (i) to assume all risks arising out of the use of such electronic methods to submit instructions and directions to the Third Tranche 568 Custodian/Escrow Agent, including, without limitation, the risk of the Third Tranche 568 Custodian/Escrow Agent acting on unauthorized instructions, and the risk or interception and misuse by third parties; (ii) that it is fully informed of the protections and risks associated with the various methods of transmitting instructions to the Third Tranche 568 Custodian/Escrow Agent and that there may be more secure methods of transmitting instructions than the method(s) selected by the Third Tranche 568 Custodian/Escrow Agent; and (iii) that the security procedures (if any) to be followed in connection with its transmission of instructions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances.

8.     Termination of Settlements. If the Settlement Agreements, or any of them, terminate in accordance with their terms, Class Counsel and the Universities shall, pursuant to Paragraph 17 of the Settlement Agreement(s), jointly notify the Third Tranche 568 Custodian/Escrow Agent of the termination of those Settlement Agreement(s). Upon such notification, the balance of the Settlement Fund proportionately attributable to the terminated settlements, together with any interest earned thereon, shall be returned to the Settling Universities (whose settlements terminated) in accordance Paragraph 7(c) or Paragraph 17 of the parties' Settlement Agreement(s), whichever is applicable, and in accordance with instruction from the relevant Settling Universities' Counsel.

9.     Fees. The Third Tranche 568 Custodian/Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached as Exhibit 5. All fees and expenses of the Third Tranche 568 Custodian/Escrow Agent shall be paid solely from the Settlement Fund. The Third Tranche 568 Custodian/Escrow Agent may pay itself such fees from the Settlement Fund only after such fees have been approved for payment by Settlement Class Counsel. If the Third Tranche 568 Custodian/Escrow Agent is asked to provide additional

services, such as the preparation and administration of payments to Authorized Claimants, a separate agreement and fee schedule will be entered into.

10.  Duties, Liabilities and Rights of Third Tranche Custodian/Escrow Agent. This Third Tranche 568 Custodian/Escrow Agreement sets forth all of the obligations of the Third Tranche 568 Custodian/Escrow Agent, and no additional obligations shall be implied from the terms of this Third Tranche 568 Custodian/Escrow Agreement or any other agreement, instrument or document.

(a)  The Third Tranche 568 Custodian/Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by Settlement Class Counsel, as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order. The Third Tranche 568 Custodian/Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine, and may assume that such person has been properly authorized to do so.

(b)  The Third Tranche 568 Custodian/Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent the Third Tranche 568 Custodian/Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel. The Third Tranche 568 Custodian/Escrow Agent shall have the right to reimburse itself for reasonable legal fees and reasonable and necessary disbursements and expenses actually incurred from the Third Tranche 568 Custodian/Escrow Account only (i) upon approval by Settlement Class Counsel or (ii) pursuant to an order of the Court.

(c)  The Third Tranche 568 Custodian/Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the Settlement Fund may be invested.

(d)  The Third Tranche 568 Custodian/Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

(e)  The Third Tranche 568 Custodian/Escrow Agent shall not bear any risks related to the investment of the Settlement Fund in accordance with the provisions of paragraph 3 of this Third Tranche 568 Custodian/Escrow Agreement. The Third Tranche 568 Custodian/Escrow Agent will be indemnified by the Settlement Fund, and held harmless against, any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by the Third Tranche 568 Custodian/Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission by the Third Tranche 568 Custodian/Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Third Tranche 568 Custodian/Escrow Agent of any of the Third Tranche 568 Custodian/Escrow Agent's duties under this Agreement, except as a result

of the Third Tranche 568 Custodian/Escrow Agent's bad faith, willful misconduct or gross negligence.

(f)     Upon distribution of all of the funds in the Third Tranche 568 Custodian/Escrow Account pursuant to the terms of this 568 Custody/Escrow Agreement and any other orders of the Court, the Third Tranche 568 Custodian/Escrow Agent shall be relieved of any and all further obligations and released from any an all liability under this Third Tranche 568 Custodian/Escrow Agreement, except as otherwise specifically set forth herein.

(g)     In the event any dispute shall arise between the parties with respect to the disposition or disbursement of any of the assets held hereunder, the Third Tranche 568 Custodian/Escrow Agent shall be permitted to interplead all of the assets held hereunder into a court of competent jurisdiction, and thereafter be fully relieved from any and all liability or obligation with respect to such interpleaded assets. The parties further agree to pursue any redress or recourse in connection with such a dispute, without making the Third Tranche 568 Custodian/Escrow Agent a party to same.

11.     Non-Assignability by Custodian/Escrow Agent. The Third Tranche 568 Custodian/Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed without the written consent of Settlement Class Counsel and the Settling Universities.

12.     Resignation of Custodian/Escrow Agent. The Third Tranche 568 Custodian/Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 120 days prior written notice to the parties to the Third Tranche 568 Custodian/Escrow Agreement herein. On the effective date of such resignation, the Third Tranche 568 Custodian/Escrow Agent shall deliver this Third Tranche 568 Custodian/Escrow Agreement together with any and all related instruments or documents and all funds in the Third Tranche 568 Custodian/Escrow Account to the successor Third Tranche 568 Custodian/Escrow Agent, subject to this Third Tranche 568 Custodian/Escrow Agreement. If a successor Third Tranche 568 Custodian/Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then the Third Tranche 568 Custodian/Escrow Agent may petition the Court for the appointment of a successor Third Tranche 568 Custodian/Escrow Agent, or other appropriate relief. Any such resulting appointment shall be binding upon all of the parties to this Third Tranche 568 Custodian/Escrow Agreement.

13.     Notices. Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail or overnight courier service, addressed as follows:

If to Class Counsel: **GILBERT LITIGATORS & COUNSELORS, P.C.**
Robert D. Gilbert
11 Broadway, Suite 615
New York, NY 10004
Phone: 203-645-0055
rgilbert@gilbertlitigators.com

**FREEDMAN NORMAND FRIEDLAND LLP**
Edward J. Normand
99 Park Avenue, Suite 1910
New York, NY 10016
Tel: 646-970-7513
tnormand@fnf.law

**BERGER MONTAGUE PC**
Eric L. Cramer
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net

| | |
|---|---|
| If to Settling Universities: | **TRUSTEES OF DARTMOUTH COLLEGE**<br>Sandhya L Iyer<br>Senior Vice President and General Counsel<br>Dartmouth College<br>63 South Main Street<br>Suite 301, Hanover, NH 03755<br>Sandhya.l.Iyer@dartmouth.edu<br><br>Douglas E. Litvack<br>Ishan Bhabha<br>Jenner & Block LLP<br>1099 New York Avenue, NW<br>Suite 900, Washington, DC 20001<br>dlitvack@jenner.com<br>ibhabha@jenner.com<br><br>**NORTHWESTERN UNIVERSITY**<br>Stephanie Graham<br>Priya Harjani<br>Northwestern University<br>Office of General Counsel<br>633 Clark Street<br>Evanston, IL 60208<br>smg@northwestern.edu<br>p-harjani@northwestern.edu<br><br>Scott D. Stein<br>Sidley Austin LLP<br>One South Dearborn Street<br>Chicago, IL 60603<br>sstein@sidley.com |

**WILLIAM MARSH RICE UNIVERSITY**
Omar A. Syed
Vice President, General Counsel & Secretary
William Marsh Rice University
360 Allen Center
6100 Main St.
Houston, TX 77005
legal@rice.edu

Norman Armstrong, Jr.
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
norman.armstrong@kirkland.com

**VANDERBILT UNIVERSITY**
Michelle Tellock
Deputy General Counsel
Vanderbilt University
2100 West End Avenue, Suite 1100
Nashville, TN 37203
michelle.tellock@vanderbilt.edu

J. Mark Gidley
White & Case LLP
701 Thirteenth Street NW
Washington, D.C. 20005-3807
mgidley@whitecase.com

If to Third Tranche 568 Custodian/Escrow Agent:

**THE HUNTINGTON NATIONAL BANK**
Liz Lambert, Senior Managing Director
2 Great Valley Parkway, Suite 300
Malvern, PA 19355
Telephone: (215) 568-2382
E-mail: liz.lambert@huntington.com

Susan Brizendine, Trust Officer
Huntington National Bank
7 Easton Oval – EA5W63
Columbus, Ohio 43219
Telephone: (614) 331-9804
E-mail: susan.brizendine@huntington.com

14.    Patriot Act Warranties.  Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify and record information that identifies each person or legal entity that opens an account (the "Identification Information").  The parties to this Third Tranche 568 Custodian/Escrow Agreement agree that they will provide the Third Tranche 568 Custodian/Escrow Agent with such Identification Information as the Third Tranche 568 Custodian/Escrow Agent may reasonably request in order for the Third Tranche 568 Custodian/Escrow Agent to satisfy the requirements of the Patriot Act.

15.    Entire Agreement.  This Third Tranche 568 Custodian/Escrow Agreement, including all Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto. Any modification of this Third Tranche 568 Custodian/Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto. To the extent this Third Tranche 568 Custodian/Escrow Agreement conflicts in any way with any of the Settlement Agreements, the provisions of such Settlement Agreement(s) shall govern.

16.    Governing Law.  This Third Tranche 568 Custodian/Escrow Agreement shall be governed by the law of the State of Ohio in all respects. The parties hereto submit to the jurisdiction of the Court, in connection with any proceedings commenced regarding this Third Tranche 568 Custodian/Escrow Agreement, including, but not limited to, any interpleader proceeding or proceeding the Third Tranche 568 Custodian/Escrow Agent may commence pursuant to this Third Tranche 568 Custodian/Escrow Agreement for the appointment of a successor Third Tranche 568 Custodian/Escrow agent, and all parties hereto submit to the jurisdiction of such Court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

17.    Termination of Custodian/Escrow Account.  The Third Tranche 568 Custodian/Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreements and this Third Tranche 568 Custodian/Escrow Agreement.

18.    Miscellaneous Provisions.

(a)    Counterparts.  This Third Tranche 568 Custodian/Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Third Tranche 568 Custodian/Escrow Agreement.

(b)    Further Cooperation.  The parties hereto agree to do such further acts and things and to execute and deliver such other documents as the Third Tranche 568 Custodian/Escrow Agent may reasonably request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Third Tranche 568 Custodian/Escrow Agreement in order (a) to give the Third Tranche 568 Custodian/Escrow Agent confirmation and assurance of the Third Tranche 568 Custodian/Escrow Agent's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (b) to better

11

enable the Third Tranche 568 Custodian/Escrow Agent to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Third Tranche 568 Custodian/Escrow Agreement, each in such form and substance as may be acceptable to the Third Tranche 568 Custodian/Escrow Agent.

(c) Non-Waiver. The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

(d) Electronic Signatures. The parties agree that the electronic signature (provided by the electronic signing service DocuSign initiated by the Custodian/Escrow Agent) of a party to this Escrow Agreement shall be as valid as an original signature of such party and shall be effective to bind such party to this Escrow Agreement. The parties agree that any electronically signed document shall be deemed (i) to be "written" or "in writing," (ii) to have been signed, and (iii) to constitute a record established and maintained in the ordinary course of business and an original written record when printed from electronic files.

**IN WITNESS WHEREOF**, the parties hereto have executed this Third Tranche 568 Custodian/Escrow Agreement as of the date first above written.

THE HUNTINGTON NATIONAL BANK, as the Third Tranche 568 Custodian/Escrow Agent

By: _____
     Liz Lambert, Senior Managing Director


Class Counsel


By: _____
     Eric Cramer, Chairman
     Berger Montague PC

By: _____
     Robert D. Gilbert
     Gilbert Litigators & Counselors, P.C.


By: _____
     Edward Normand, Partner
     Freedman Normand Friedland LLP

enable the Third Tranche 568 Custodian/Escrow Agent to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Third Tranche 568 Custodian/Escrow Agreement, each in such form and substance as may be acceptable to the Third Tranche 568 Custodian/Escrow Agent.

(c) <u>Non-Waiver</u>. The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

(d) <u>Electronic Signatures</u>. The parties agree that the electronic signature (provided by the electronic signing service DocuSign initiated by the Custodian/Escrow Agent) of a party to this Escrow Agreement shall be as valid as an original signature of such party and shall be effective to bind such party to this Escrow Agreement. The parties agree that any electronically signed document shall be deemed (i) to be "written" or "in writing," (ii) to have been signed, and (iii) to constitute a record established and maintained in the ordinary course of business and an original written record when printed from electronic files.

**IN WITNESS WHEREOF**, the parties hereto have executed this Third Tranche 568 Custodian/Escrow Agreement as of the date first above written.

THE HUNTINGTON NATIONAL BANK, as the Third Tranche 568 Custodian/Escrow Agent

By: _____
     Liz Lambert, Senior Managing Director


Class Counsel

By: _____
     Eric Cramer, Chairman
     Berger Montague PC


By: _____
     Robert D. Gilbert
     Gilbert Litigators & Counselors, P.C.


By: _____
     Edward Normand, Partner
     Freedman Normand Friedland LLP

TRUSTEES OF DARTMOUTH COLLEGE

By: *Sandhya I. Iyer*

Its: **Senior Vice President, General Counsel and Secretary**

NORTHWESTERN UNIVERSITY

By: _____

Its: _____

WILLIAM MARSH RICE UNIVERSITY

By: _____

Its: Vice President, General Counsel & Secretary

VANDERBILT UNIVERSITY

By: _____

Its: *Vice Chancellor, General Counsel and University Secretary*

13

TRUSTEES OF DARMTOUTH COLLEGE

By: _____

Its: _____

NORTHWESTERN UNIVERSITY

By: _____

Its: Vice President and Chief Financial Officer

WILLIAM MARSH RICE UNIVERSITY

By: _____

Its: _____

VANDERBILT UNIVERSITY

By: _____

Its: _____

**Exhibits 1-4**

**Settlement Agreements**

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| SIA HENRY, et al., individually and on behalf of all others similarly situated,<br><br>                          Plaintiffs,<br><br>     v.<br><br>BROWN UNIVERSITY, et al.,<br><br>                          Defendants. | Case No. 1:22-cv-125<br><br>Hon. Matthew F. Kennelly<br><br><br>**SETTLEMENT AGREEMENT BETWEEN DEFENDANT THE TRUSTEES OF DARTMOUTH COLLEGE AND THE PROPOSED CLASS OF PLAINTIFFS** |

THIS SETTLEMENT AGREEMENT ("Settlement Agreement" or the "Settlement") is made and entered into as of February 22, 2024, by and between (a) Defendant the Trustees of Dartmouth College ("Dartmouth"); and (b) Plaintiffs,[1] individually and on behalf of the settlement class (the "Class" as defined in Paragraph 1 below, and together with Dartmouth, the "Settling Parties"), in this Action (*Henry, et al. v. Brown University, et al.*, Case No. 1:22-cv-125 (N.D. Ill.)).

WHEREAS, Plaintiffs filed a lawsuit alleging that Defendants Brown University, California Institute of Technology, the University of Chicago, the Trustees of Columbia University in the City of New York, Cornell University, the Trustees of Dartmouth College, Duke University, Emory University, Georgetown University, Johns Hopkins University, Massachusetts Institute of Technology, Northwestern University, the University of Notre Dame Du Lac, the Trustees of the University of Pennsylvania, William Marsh Rice University, Vanderbilt University, and Yale University (collectively, "Defendants") have restrained competition for undergraduate financial aid in violation of federal antitrust laws, and that Plaintiffs and Class Members incurred damages

---

[1] Plaintiffs are Andrew Corzo, Sia Henry, Alexander Leo-Guerra, Michael Maerlender, Brandon Piyevsky, Benjamin Shumate, Brittany Tatiana Weaver, and Cameron Williams.

as a result, as detailed in Plaintiffs' Complaint, filed in this Action on January 9, 2022 (ECF No. 1) and as subsequently amended ("Complaint");

WHEREAS, Dartmouth has asserted defenses to Plaintiffs' claims, denies each and every one of Plaintiffs' allegations of unlawful or wrongful conduct by Dartmouth, denies that any conduct of Dartmouth challenged by Plaintiffs caused any damage whatsoever, and denies all liability of any kind;

WHEREAS, Dartmouth has consented to the appointment of the law firms Freedman Normand Friedland LLP, Gilbert Litigators & Counselors, PC, and Berger Montague PC as Settlement Class Counsel ("Settlement Class Counsel");

WHEREAS, Settlement Class Counsel and counsel for Dartmouth have engaged in arm's-length settlement negotiations, and have reached this Settlement Agreement, subject to Court approval, which embodies all of the terms and conditions of the Settlement between Plaintiffs, both individually and on behalf of the Class, and Dartmouth;

WHEREAS, Settlement Class Counsel have concluded, after extensive fact discovery and consultation with their consultants and experts, and after carefully considering the circumstances of this Action, including the claims asserted in the Complaint and Dartmouth's defenses thereto, that it would be in the best interests of the Class to enter into this Settlement Agreement and assure a benefit to the Class, and further, that Settlement Class Counsel consider the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and in the best interests of the Class;

WHEREAS, Dartmouth has concluded, despite its belief that it is not liable for the claims asserted and that it has good and valid defenses thereto, that it would be in its best interests to enter into this Settlement Agreement to avoid the risks and uncertainties inherent in complex litigation and also to avoid additional costs of further litigation;

WHEREAS, Plaintiffs and Dartmouth agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of

any liability or wrongdoing by Dartmouth, or of the validity or truth of any of the claims or allegations alleged in the Complaint;

WHEREAS, Plaintiffs and Dartmouth agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence by Plaintiffs of the absence of any violation of any statute or law or of any absence of liability or wrongdoing by Dartmouth, or of the validity of any of Dartmouth's defenses, or of the lack of truth of any of the claims or allegations alleged in the Complaint; and

WHEREAS, Plaintiffs and Dartmouth agree that Dartmouth's consent to the certification of the Settlement Class shall not be deemed or construed as consent to, or otherwise supportive of, the certification of this or any other class for litigation purposes, and that, in the event the Settlement Agreement is terminated for any reason, Dartmouth may oppose the certification of any class on any and all grounds.

NOW THEREFORE, it is agreed by the undersigned Settlement Class Counsel, on behalf of Plaintiffs and the Class, on the one hand, and Dartmouth on the other, that all claims brought by Plaintiffs and the Class against Dartmouth be fully, finally, and forever settled, compromised, discharged, and dismissed with prejudice as to Dartmouth, without costs as to Plaintiffs, the Class, or Dartmouth, subject to Court approval, on the following terms and conditions:

1. **Definitions**

a) "Action" means *Henry et al. v. Brown University et al.* No. 1:22-cv-00125 (N.D. Ill.).

b) "Claims Administrator" means the entity appointed by the Court, on motion of Settlement Class Counsel, to provide notice to the Class, process the claims submitted by Class Members, and carry out any other duties or obligations provided for by the Settlement.

c) The "Class" means the settlement-only class, which permits potential class members to opt out, including the following persons:

   a. all U.S. citizens or permanent residents who have during the Class Period (a) enrolled in one or more of Defendants' full-time undergraduate

programs, (b) received at least some need-based financial aid from one or more Defendants, and (c) whose tuition, fees, room, or board to attend one or more of Defendants' full-time undergraduate programs was not fully covered by the combination of any types of financial aid or merit aid (not including loans) in any undergraduate year.[2]  The Class Period is defined as follows:

    i.    For Chicago, Columbia, Cornell, Duke, Georgetown, MIT, Northwestern, Notre Dame, Penn, Rice, Vanderbilt, Yale— from Fall Term 2003 through the date the Court enters an order preliminarily approving the Settlement.

    ii.    For Brown, Dartmouth, Emory—from Fall Term 2004 through the date the Court enters an order preliminarily approving the Settlement.

    iii.    For CalTech—from Fall Term 2019 through the date the Court enters an order preliminarily approving the Settlement.

    iv.    For Johns Hopkins—from Fall Term 2021 through the date the Court enters an order preliminarily approving the Settlement.

b.    Excluded from the Class are:

    i.    Any Officers[3] and/or Trustees of Defendants, or any current or former employees holding any of the following positions: Assistant or Associate Vice Presidents or Vice Provosts, Executive Directors, or Directors of Defendants' Financial Aid

---

[2] For avoidance of doubt, the Class does not include those for whom the total cost of attendance, including tuition, fees, room, and board for each undergraduate academic year, was covered by any form of financial aid or merit aid (not including loans) from one or more Defendants.

[3] For the avoidance of doubt, the Columbia University "Officers" excluded from the Class are members of the Senior Administration of Columbia University, and do not include exempt employees of Columbia University who are referred to as officers.

and Admissions offices, or any Deans or Vice Deans, or any employees in Defendants' in-house legal offices; and

ii. the Judge presiding over this action, his or her law clerks, spouse, and any person within the third degree of relationship living in the Judge's household and the spouse of such a person.

d) "Class Members" means the members of the Class who do not timely and validly exclude themselves from the Settlement.

e) "Effective Date" means the date on which all of the following have occurred: (i) the Settlement is not terminated pursuant to Paragraphs 15 or 16 below; (ii) the Settlement is approved by the Court as required by Fed. R. Civ. P. 23(e); (iii) the Court enters a final approval order; and (iv) the period to appeal the final approval order has expired and/or all appeals have been finally resolved.

f) "Escrow Account" means the qualified settlement escrow account which holds the Dartmouth Settlement Fund.

g) "Escrow Agreement" means an agreement in the form annexed hereto as Exhibit B.

h) "Fee and Expense Award" means award(s) by the Court to Settlement Class Counsel for reasonable attorneys' fees and reimbursement of reasonable costs and expenses incurred in the prosecution of the Action, including any interest accrued thereon.

i) "Notice Expenses" means expenses relating to providing notice, including, *inter alia*, the cost of (a) publications, (b) printing and mailing the long-form notice, (c) the Claims Administrator's costs of maintaining and administering the notice website and toll-free phone number, and (d) the Claims Administrator's costs associated with designing and administering the notice plan.

j) "Plaintiffs' Claims" means Plaintiffs' claims against Dartmouth and other Defendants as stated in the Complaint.

k) "Plan of Allocation" means the plan proposed by Settlement Class Counsel for the allocation of the Dartmouth Settlement Fund to Class Members.

l) "Releasees" means Dartmouth and the Trustees of Dartmouth College, individually and collectively, and all of their present, future and former parent, subsidiary and affiliated corporations and entities, the predecessors and successors-in-interest of any of them, and each of the foregoing's respective present, former and future officers, directors, trustees, members, affiliates, employees, administrators, faculty members, students, agents, advisors, representatives, volunteers, attorneys, outside counsel, predecessors, successors, heirs, devisees, executors, conservators, and assigns.

m) "Releasors" means all Plaintiffs and Class Members, and those Plaintiffs' and Class Members' agents, attorneys, representatives (and as applicable each of their past, present, and future agents, attorneys, representatives, and all persons or entities that made payments to Dartmouth or other Defendants on behalf of Plaintiffs and Class Members), the predecessors, successors, heirs, devisees, executors, conservators, administrators, and representatives of each of the foregoing.

n) "Released Claims" means any and all claims, demands, actions, suits, causes of action, damages, and liabilities, of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, accrued or unaccrued, contingent or absolute, suspected or unsuspected, in law, equity, or otherwise, that Plaintiffs ever had, now have, or hereafter can, shall or may have, directly, representatively, derivatively, as assignees or in any other capacity, to the extent alleged in the Complaint or to the extent arising out of or relating to a common nucleus of operative facts with those alleged in the Complaint that Plaintiffs have asserted or could have asserted in the Action. For avoidance of doubt, claims between Class Members and Dartmouth arising in the ordinary course and not relating to, arising from, or sharing a common nucleus of operative facts with the facts alleged in the Complaint will not be released.

o) "Settlement Class Counsel" means the law firms Freedman Normand Friedland LLP, Gilbert Litigators & Counselors, PC, and Berger Montague PC.

p) "Settling Parties" means Dartmouth, Plaintiffs, and the Class.

q) "Dartmouth Payment" means thirty-three million, seven hundred and fifty thousand dollars ($33,750,000.00).

r) "Dartmouth Settlement Fund" means the Dartmouth Payment, plus interest accrued on the Settlement Fund. It is understood that, at no additional cost to Dartmouth or the Dartmouth Settlement Fund, the Dartmouth Settlement Fund may be combined with settlement funds from the settlements with other Defendants in the event that Plaintiffs achieve settlements with additional Defendants in this Action.

2. **Reasonable Steps Necessary to Help Effectuate this Settlement.** The Settling Parties agree to undertake in good faith all reasonable steps necessary to help effectuate the Settlement, including undertaking all actions contemplated by and steps necessary to carry out the terms of this Settlement and to secure the prompt, complete, and final dismissal with prejudice of all claims in this Action against Dartmouth. The Settling Parties also agree to the following:

a) Dartmouth agrees not to oppose a grant of the relief requested in the Plaintiffs' motions for preliminary or final approval of the Settlement, and agrees not to appeal any Court ruling granting in full either of these motions.

b) Settlement Class Counsel represent that Plaintiffs will support the Settlement and will not object to the Settlement or opt out of the Settlement Class.

c) Dartmouth will serve notice of this Settlement on the appropriate federal and state officials under the Class Action Fairness Act, 28 U.S.C. § 1715.

d) This Settlement is reached with Settlement Class Counsel who will seek Court approval to represent all of the Class, and is intended to be binding on all persons who are within the definition of the Class, except any persons who timely and validly opt out.

3. **Motion for Preliminary Approval of the Settlement.** Plaintiffs shall draft a motion for preliminary approval of the Settlement and all necessary supporting documents, which

shall be consistent with this Settlement Agreement and which Dartmouth shall have a right to review and approve (which approval shall not be unreasonably withheld). Dartmouth may suggest revisions, which Plaintiffs agree to consider in good faith, as long as Dartmouth provides its suggested revisions or comments within seven (7) business days of having received any such document or documents from Plaintiffs, or such other time as the Settling Parties may agree. Unless the Settling Parties agree otherwise, Plaintiffs will file the motion for preliminary approval with the Court no later than 45 days after the execution of this Settlement Agreement. Dartmouth understands and accepts that Plaintiffs may file for preliminary approval of this Settlement jointly with other settlements in this Action. Nothing in this Settlement Agreement shall prevent Plaintiffs from consummating settlements with other Defendants in this Action or from including such settlements as part of a joint preliminary approval motion. The motion for preliminary approval shall include a proposed form of order substantially similar to Exhibit A, including:

a)      requesting preliminary approval of the Settlement as fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and finding that dissemination of notice to the Class is warranted;

b)  finding that the proposed plan of notice complies with Rule 23 and due process, and seeking approval of short- and long-form notices;

c)  preliminarily approving the Plan of Allocation;

d)  providing that if final approval of the Settlement is not obtained, the Settlement shall be null and void, and the Settling Parties will revert to their positions ex ante without prejudice to their claims or defenses; and

e)  setting a date for a motion for final approval, a deadline for objections and exclusions, and a date for a fairness hearing.

**4.   Stay of Proceedings; Subsequent Litigation Class.** The motion for preliminary approval shall also provide for a stay of Plaintiffs' proceedings against Dartmouth pending final approval or termination of the Settlement. Dartmouth agrees not to oppose preliminary approval of the Settlement. Plaintiffs represent that the Class definition in Paragraph 1 of this Settlement

Agreement is at least as broad as that for which the Plaintiffs will seek certification in their Motion for Class Certification or any later motion(s) for certification of a settlement class (collectively, "Certification Motions") against one or more of the remaining Defendants in the Action, except that as to any subsequent motion for a settlement class in the Action, Plaintiffs may extend the end date of the class period to the date of preliminary approval of any subsequent settlement without violating the provisions of this Paragraph. In the event that Settlement Class Counsel seek to certify a class or classes in any Certification Motion against one or more of the remaining Defendants that include(s) any class members not included in the Class definition in Paragraph 1 herein (except as to the end date of the class period in the context of a motion seeking certification of a settlement class), and if the Court certifies such a broader class at the request of Settlement Class Counsel, Settlement Class Counsel agree that this Settlement Agreement shall be amended to include such additional class members and that in the event an Amended Motion for Preliminary Approval of this Settlement Agreement, any amended notices to the class(es), or an Amended Motion for Final Approval of this Settlement Class are necessary, Settlement Class Counsel will file such amendments and provide such notice at no expense to Dartmouth.

5.       **Motion for Final Approval and Entry of Final Judgment.**  In the event the Court enters an order preliminarily approving the Settlement, the Plaintiffs shall draft a motion for final approval of the Settlement and all necessary supporting documents, which Dartmouth shall have a right to review and approve (which approval shall not be unreasonably withheld). Dartmouth may suggest revisions, which Plaintiffs agree to consider in good faith, as long as Dartmouth provides its suggested revisions or comments within seven (7) business days of having received any such document or documents from Plaintiffs, or other such time as the Settling Parties may agree. Plaintiffs will file the motion for final approval pursuant to the schedule ordered by the Court. The final approval motion shall seek entry of a final approval order, including:

a)       finding that notice given constitutes due, adequate, and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

b) finding the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and directing consummation of the Settlement pursuant to its terms;

c) finding that all Class Members shall be bound by the Settlement Agreement and all of its terms;

d) finding that the Releasors shall be bound by the respective releases set forth in Paragraphs 13 and 14 of this Settlement Agreement, and shall be forever barred from asserting any claims or liabilities against Dartmouth covered by the respective Released Claims against any of the Releasees;

e) approving expressly the provisions in Paragraph 7(e) of the Settlement Agreement allowing payment of Settlement Class Counsel fees and expenses before the Effective Date pursuant to the terms of that paragraph;

f) directing that the Action be dismissed with prejudice as to Dartmouth and without costs;

g) determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal with prejudice as to Dartmouth be final;

h) retaining exclusive jurisdiction over the Settlement, including the administration and consummation of the Settlement; and

i) directing that, for a period of five years, the Clerk of the Court shall maintain the record of the entities that have excluded themselves from the Class and that a certified copy of such records shall be provided to Dartmouth.

6.      **Finality of Settlement.** This Settlement Agreement shall become final upon the Effective Date.

7.      **Monetary Relief; Notice Fees and Costs**

a)      Dartmouth shall transfer or cause to be transferred ten million dollars of the Dartmouth Payment ($10,000,000.00) to the Escrow Account within the later of: (i) 30 calendar days after entry by the Court of the preliminary approval order on the docket of the Action, or (ii) 14 calendar days after Settlement Class Counsel provide Dartmouth counsel in writing with

wiring instructions for the Escrow Account. Dartmouth shall transfer or cause to transfer the remaining balance of the Dartmouth Payment to the Escrow Account within 30 calendar days after entry by the Court of the final approval order on the docket of the Action.

b) The payments provided for in subparagraph 7(a) above shall be held in the Escrow Account subject to the terms and conditions of the Escrow Agreement, and in accordance with the provisions of Paragraphs 8-11, 16 and 17 below.

c) Before the granting of final approval, and upon the direction of Settlement Class Counsel, all reasonable costs of providing notice to the Class and any costs of settlement fund administration, including taxes, will be paid out of the Escrow Account on a non-recoupable basis other than as set forth below. Settlement Class Counsel shall attempt to defray the costs of notice by combining the administration of multiple settlements, if such settlements occur and if permitted by the Court to do so. If multiple settlements are noticed together, the notice costs shall be divided by the number of settlements and charged to the escrow account of each settlement pari passu. Settlement Class Counsel shall provide copies to Dartmouth's counsel of any invoices paid by Settlement Class Counsel for which money is withdrawn from the Escrow Account. In the event that no noticed settlements become effective, then any withdrawals for reasonable costs from the Escrow Account pursuant to this provision shall be non-refundable. If at least one noticed settlement becomes effective, then all withdrawals for reasonable costs from the Escrow Account (or escrow accounts as applicable) pursuant to this provision shall be withdrawn only from/charged only to the settlement fund(s) of the effective settlement(s). Settlement Class Counsel agree to arrange for provision of notice to the Class in accordance with Fed. R. Civ. P. 23 and any orders of the Court. Settlement Class Counsel agree to provide Dartmouth reasonable advance notice of the notice plan and costs.

d) Following the Effective Date, any attorneys' fees, costs and expenses and Class representative service awards awarded to Settlement Class Counsel and Plaintiffs by

the Court will be paid from the Escrow Account. Dartmouth will take no position on Settlement Class Counsel's application for attorneys' fees, costs, and expenses or for Class representative service awards to the Plaintiffs unless requested to do so by the Court.

e) Notwithstanding the above, subject to and following both the Court's approval in the Final Approval Order and the posting of a non-revocable letter of credit issued by Northern Trust, Bank of America, Citibank, or Chase Bank agreed to in writing in advance by the Settling Parties in an amount equal to or greater than the amount of any funds paid under this Paragraph, Settlement Class Counsel's attorneys' fees and/or reimbursement of out-of-pocket expenses of Settlement Class Counsel awarded by the Court, up to a maximum of 90% of the combined amount of the Fee and Expense Award(s) associated with any and all settlements in this Action with other Defendants approved contemporaneously with this Settlement, shall be payable from the combined Settlement Fund upon being awarded by the Court, notwithstanding the existence of any timely-filed objections thereto, or potential appeal therefrom, or collateral attack on the Settlement or any part thereof, including on the award of attorneys' fees and costs. Any payment pursuant to this Paragraph 7(e) shall be subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Dartmouth Settlement Fund with interest that would have accrued to the Dartmouth Settlement Fund if the early payment(s) had not been made, within five business days, if and when, as a result of any appeal or further proceedings on remand, action by or ruling of the Court, or successful collateral attack, the fee or award of costs and expenses is reduced or reversed, or in the event the Settlement does not become final or is rescinded or otherwise fails to become effective. If Settlement Class Counsel fail to make the required repayments in accordance with the time period in this Paragraph, Dartmouth may call the letter of credit. If the provisions of this Paragraph are followed, Dartmouth shall not object to such disbursements. If the Court does not approve this provision, that disapproval will have no effect otherwise on the Settling Parties' Settlement Agreement. Nothing in this Paragraph is intended to serve as a cap on, or limit to, the

attorneys' fees or expenses that Settlement Class Counsel or Plaintiffs may be awarded by the Court and receive following the Effective Date.

f)        Aside from the payments specified in this Paragraph 7, Dartmouth shall not pay any additional amount at any time, whether for attorneys' fees or expenses, incentive awards, settlement administration costs, escrow costs, taxes due from the Escrow Account, or any other cost. Dartmouth shall not be liable for any monetary payments under the Settlement Agreement other than the Dartmouth Payment.

8.        **The Dartmouth Settlement Fund.** At all times prior to the Effective Date, the Dartmouth Settlement Fund shall be invested at the direction of Settlement Class Counsel as set forth in Paragraph 3 of the Escrow Agreement, in instruments backed by the full faith and credit of the U.S. Government or fully insured by the U.S. Government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account insured by the FDIC up to the guaranteed FDIC limit subject to the review and approval of Dartmouth, such approval not to be unreasonably withheld. Dartmouth shall have no responsibility for, or obligation with respect to, the investment or management of the Dartmouth Settlement Fund. The Dartmouth Settlement Fund may be combined in the same Escrow Account as the settlement funds from other settlements in this Action. After the Effective Date, the Dartmouth Settlement Fund shall be invested pursuant to Paragraph 7 of the Escrow Agreement as directed in writing by Settlement Class Counsel. All interest earned on the Dartmouth Settlement Fund shall become part of the Dartmouth Settlement Fund.

9.        **Disbursements.** After the Effective Date, the Dartmouth Settlement Fund shall be distributed in accordance with the Plan of Allocation and the Court's approval of subsequent request(s) for distribution. If any portion of the Settlement Fund remains following disbursement of Court-approved Notice Expenses, the Fee and Expense Award, and the service awards to the Class representatives, and after distribution (or redistribution) to authorized claimants pursuant to the Court-approved Plan of Allocation, and is of such an amount that it is not cost effective or administratively efficient to redistribute the amount to the authorized claimants, then the Settling

Parties agree to seek leave of Court to disburse such remaining funds, after payment of any further notice and administration costs and taxes and tax expenses, to one or more appropriate charitable non-profit organizations that promote access to higher education for disadvantaged students and families as agreed to by the Settling Parties and upon approval by the Court.

**10. Taxes.**

a) Settlement Class Counsel shall be solely responsible for directing the Escrow Agent (as defined in the Escrow Agreement) to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Escrow Account. Further, Settlement Class Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments, including interest and penalties due, on income earned by the Escrow Account. Subject to Paragraph 7 above, Settlement Class Counsel shall be entitled to direct the Escrow Agent to pay customary and reasonable tax expenses, including professional fees and expenses incurred in connection with carrying out the Escrow Agent's or tax preparer's responsibilities as set forth in this Paragraph, from the Escrow Account. Settlement Class Counsel shall notify Dartmouth through its counsel regarding any payments or expenses paid from the Escrow Account. Dartmouth shall have no responsibility to make any tax filings relating to this Settlement Agreement, the Escrow Account, or the Settlement Payments, and shall have no responsibility to pay taxes on any income earned by the Escrow Account.

b) For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be Settlement Class Counsel, who shall timely and properly file or cause to be filed on a timely basis all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

c) The Settling Parties and their counsel shall treat, and shall cause the Escrow Agent to treat, the Escrow Account as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The Settling Parties, their counsel, and the Escrow

Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Account in this manner. In addition, the Escrow Agent and, as required, the Settling Parties, shall timely make such elections under § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

11.     **Full Satisfaction; Limitation of Interest and Liability.** Plaintiffs and Class Members shall look solely to the Dartmouth Payment for satisfaction of any and all Released Claims. If the Settlement becomes final pursuant to Paragraph 6 above, Dartmouth's payment of the Dartmouth Payment will fully satisfy any and all Released Claims, as compromised. Except as provided by order of the Court, no Class Member shall have any interest in the Dartmouth Payment, Escrow Account, or any portion thereof. Recognizing that Dartmouth cannot defend itself in this action in absentia after settling, the Settling Parties agree that any finding of liability against any other party would not establish that Dartmouth would have been liable, or the amount of any such liability, if Plaintiffs had proceeded to trial against Dartmouth on Plaintiffs' claims. It is not a violation of this Settlement Agreement for Plaintiffs to use any evidence, including evidence that Plaintiffs believe shows Dartmouth's involvement in the challenged conduct, to prove Plaintiffs' claims for liability and damages against any non-settling Defendant in this Action. Notwithstanding anything set forth above, nothing in this Paragraph is intended to or shall be used

to (i) exonerate any party other than Dartmouth, and/or (ii) reduce the exposure of any non-settling defendant to liability, including to liability for the alleged actions of Dartmouth.

**12.** **Attorneys' Fees, Expenses, and Costs.**

a)        Settlement Class Counsel shall file any motion for a Fee and Expense Award in accordance with the Court's preliminary approval or final approval order. Settlement Class Counsel shall receive any Fee and Expense Award relating to this Settlement solely from the Dartmouth Settlement Fund. Other than as provided in Paragraph 7(e) and approved by the Court, no portion of any Fee and Expense Award shall be released from the Dartmouth Settlement Fund prior to the Effective Date. Dartmouth is not obligated to take, does not take, and, unless requested to do so by the Court, will not take any position with respect to the application by Settlement Class Counsel for reimbursement of attorneys' fees, expenses, and costs.

b)        The procedures for and the allowance or disallowance by the Court of Settlement Class Counsel's application for a Fee and Expense Award to be paid from the Dartmouth Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceeding relating to the Fee and Expense Award, or any appeal from any such order, shall not operate to modify or cancel this Settlement Agreement, or affect or delay the finality of the judgment approving the Settlement. A modification or reversal on appeal of any amount of the Fee and Expense Award shall not be deemed a modification of the terms of this Settlement Agreement or final approval order, and shall not give rise to any right of termination.

**13.** **Release.**  Upon the occurrence of the Effective Date, the Releasors hereby release and forever discharge, and covenant not to sue the Releasees only, with respect to, in connection with, or relating to any and all of the Released Claims.

**14.** **Additional Release.**  In addition, each Releasor hereby expressly waives and releases, upon the Effective Date, any and all provisions, rights, and/or benefits conferred by Section 1542 of the California Civil Code, which reads:

> Section 1542. <u>Release</u>. A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, notwithstanding that the release in Paragraph 13 is not a general release and is of claims against Releasees only. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims that are the subject matter of Paragraph 13. Nonetheless, upon the Effective Date, each Releasor hereby expressly waives and fully, finally, and forever settles and releases any known or unknown, foreseen, or unforeseen, suspected or unsuspected, contingent or non-contingent claim that is the subject matter of Paragraph 13, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Releasor also hereby expressly waives and fully, finally, and forever settles, releases, and discharges any and all claims it may have against the Releasees under § 17200, *et seq.*, of the California Business and Professions Code or any similar comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are expressly incorporated into the definition of the Released Claims.

**15.    Effect of Disapproval.** If the Court (i) declines to approve this Settlement Agreement; (ii) does not enter the preliminary approval order containing the elements set forth in Paragraph 3 above; (iii) does not enter the final approval order containing the elements set forth in Paragraph 5 above; or (iv) enters the final approval order and appellate review is sought, and on such review, such final approval order is not affirmed, then Settlement Class Counsel or Dartmouth may elect to terminate this Settlement Agreement by sending written notice to the other party within 10 business days of the event allowing for termination. For the avoidance of doubt and without limiting the foregoing, any order of the Court, the Seventh Circuit Court of Appeals, or the United States Supreme Court that is based on a determination that the Settlement is not fair, reasonable, or adequate or that: (a) materially changes or does not approve the scope of the releases

and covenant not to sue contemplated by this Settlement; (b) purports to impose additional material obligations on Dartmouth; or (c) declines to enter a final judgment that meets the requirements set forth in Paragraph 5 above, except as otherwise agreed in writing by Settlement Class Counsel and Dartmouth, constitutes a failure to grant final approval of this Agreement and confers on Settlement Class Counsel and/or Dartmouth the right to terminate the Agreement. A modification or reversal on appeal of the Plan of Allocation, Fee and Expense Award, or Plaintiffs' service awards shall not be deemed a modification of the terms of this Agreement or Final Approval Order and shall not give rise to any right of termination.

**16.     Opt-Out and Termination Rights.**

a)     Should more than 650 proposed Class Members (not including employees of any of the law firms representing Defendants in this case) opt-out of this Settlement, Dartmouth has the right to terminate this Settlement, as long as Dartmouth notifies Settlement Class Counsel in writing of its decision to terminate within ten (10) business days of having been informed that more than 650 proposed Class Members have opted out or such other time as the Settling Parties may agree, and provided that Dartmouth has been given timely information regarding any opt-outs within a reasonable time after such opt-out requests come to the attention of Settlement Class Counsel. In such instance of termination, the Settling Parties would return to their respective positions as of September 27, 2023. In the event of a termination, the Settling Parties agree to work in good faith to propose a schedule to the Court to restart the litigation between Plaintiffs and Dartmouth. Dartmouth agrees that its President, Provost, General Counsel, or outside counsel shall take no actions, publicly or privately, directly or indirectly, to encourage any proposed Class Members to opt out of this Settlement, or to encourage opting out from any other settlements that Plaintiffs may enter into with other Defendants in this Action, or from any class or classes that the Court may certify in this Action.

b)     Any disputes regarding the application of this Paragraph 16 may be resolved by the Court, with Plaintiffs, Dartmouth, and the opt-out(s) all having the opportunity to be heard.

17. **Reimbursement of the Dartmouth Settlement Fund upon Termination.** If the Settlement Agreement is terminated pursuant to the provisions of Paragraphs 15 or 16 above, the Escrow Agent shall return to Dartmouth the funds in the Dartmouth Settlement Fund consistent with Paragraph 7 at the time of termination. Subject to Paragraph 8 of the Escrow Agreement, the Escrow Agent shall disburse the funds left in the Dartmouth Settlement Fund consistent with Paragraph 7 to Dartmouth in accordance with this Paragraph within 15 calendar days after receipt of either (i) written notice signed by Settlement Class Counsel and Dartmouth's counsel stating that the Settlement has been terminated (such written notice will be signed by the non-terminating party within three days of receiving the written notice from the terminating party), or (ii) any order of the Court so directing. If the Settlement Agreement is terminated pursuant to Paragraphs 15 or 16, (1) any obligations pursuant to this Settlement Agreement other than (i) disbursement of the Dartmouth Settlement Fund to Dartmouth as set forth above and (ii) Paragraph 23, shall cease immediately and (2) the releases set forth in Paragraphs 13 and 14 above shall be null and void.

18. **Preservation of Rights.** Except as expressly provided for in the Releases in Paragraphs 13 and 14 above, this Settlement Agreement, whether the Settlement becomes final or not, and any and all negotiations, documents, and discussions associated with it, shall be without prejudice to the rights of any of the Settling Parties, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or lack thereof, of any liability or wrongdoing by Dartmouth or lack thereof, or of any amount of improperly acquired funds received by Dartmouth or the lack thereof, or of the truth or lack thereof of any of the claims or allegations contained in the Complaint or any other pleading, and evidence thereof shall not be discoverable or used directly or indirectly, in any way other than to enforce the terms of this Settlement Agreement. The Settling Parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Settlement Agreement. Upon the Settlement becoming final, nothing in this Settlement Agreement shall (a) prevent Dartmouth from asserting any release or citing this Settlement Agreement to offset any liability to any other parties not party to the Action, including but not limited to, claims filed by federal and state governments or any

governmental entity, or (b) be construed to impair, negate, diminish, or adversely affect any rights of Dartmouth or its successors or assigns to seek to recover or to recover insurance proceeds or payments from its past or current insurance carriers with respect to amounts paid pursuant to this Settlement Agreement or incurred in connection with the Action, or any other loss or liability, and Dartmouth expressly reserves all rights, claims, positions, arguments, contentions, and defenses with respect to such matters.

19. **No Admission of Liability by Dartmouth; No Admission of Absence of Merit by Plaintiffs.** This Settlement Agreement shall not be deemed or construed to be an admission of Dartmouth's liability in this Action or to be admissions that Plaintiffs' claims in this Action have any merit against Dartmouth or otherwise, or to comprise any determination as to whether there were, or the amount of, any improperly acquired funds allegedly received by Dartmouth. Dartmouth denies any wrongdoing in relation to the claims brought by Plaintiffs in this Action. Dartmouth's consent to the Settlement Class shall not be deemed consent to the certification of this or any other class for litigation purposes, and in the event of termination, Dartmouth may oppose the certification of any class. This Settlement Agreement shall not be deemed or construed to be an admission that Plaintiffs' Claims in this Action have or lack merit as to Dartmouth or otherwise.

20. **Discovery Disclosures to Plaintiffs.** The intent of this Paragraph is to expressly limit and define Dartmouth's obligations with respect to discovery that Plaintiffs may seek from Dartmouth following the Settlement. Other than as set forth below, or as may subsequently be agreed to by the Settling Parties, Dartmouth and its current or former employees shall neither be required to respond or supplement its response to any discovery request (including deposition notices or subpoenas), previously served by Plaintiffs or that Plaintiffs may serve in the future. To the extent Plaintiffs depose any witness in this Action who is a former employee of Dartmouth, Plaintiffs shall refrain from questioning the witness concerning the witness' employment with Dartmouth. In addition, Settlement Class Counsel agree that they will consult with Dartmouth

Counsel before attempting to contact or make any effort to communicate with any former Dartmouth employees.

a) **Data**. Dartmouth will respond in good faith to the data questions it received from Settlement Class Counsel on December 14, 2023 before the close of fact discovery.

b) **Interrogatories**. Dartmouth will provide sworn responses to no more than two interrogatories, including sub-parts, before the close of fact discovery.

c) **Testimony**. Notwithstanding this Settlement Agreement, if any other party to the Action takes a deposition of a Dartmouth-related witness, Dartmouth agrees that it will not object to making that witness available for deposition questioning by Plaintiffs' counsel for an equal amount of time, subject to a combined time limit as set in Fed. R. Civ. P. 30(d)(1).

d) **Produced documents kept in the ordinary course of business and trial witness**. Dartmouth agrees that in the event the need arises in this Action, and there is an authenticity or hearsay objection made by one or more Defendants in the Action to documents or data produced by Dartmouth in this litigation, Dartmouth will provide a declaration (i) pursuant to Federal Rule of Evidence 902(11) concerning the authenticity of those documents; and (ii) providing facts relevant to the application of the Business Records Exception to the Hearsay Rule (Fed. R. Evid. 803(6)) for documents or data that qualify as business records. In the event that a declaration is not sufficient to meet the requirements of Fed. R. Evid. 803(6), Dartmouth will provide a records custodian witness to testify by deposition *de bene esse* or, if necessary, at trial, for the sole purpose of providing support for the authenticity of the documents or data or the application of the Business Records Exception to the Hearsay Rule for those documents or data.

e) **Confidentiality**: All non-public data, documents, information, testimony, and/or communications provided to Plaintiffs' counsel as part of discovery in the Action or as part of subparts (a) to (e) above, if so designated by Dartmouth, shall be treated as "Confidential" or "Attorneys' Eyes Only" under the Confidentiality Order in the Action. Plaintiffs reserve the right to challenge such designations, after the fact, under the terms of the Confidentiality Order, however, Plaintiffs must provide in writing their legal basis for such a challenge and then

telephonically meet and confer in good faith with counsel for Dartmouth before filing any motion to challenge such designations with the Court. Plaintiffs further agree that they shall not seek to challenge the confidentiality of any Dartmouth documents or testimony unless Plaintiffs intend to file such documents or testimony with the Court in support of a motion (other than a motion to challenge confidentiality designations) or introduce such documents or testimony in a hearing or trial in the Action. Notwithstanding anything to the contrary in this Settlement Agreement or the Confidentiality Order, Plaintiffs shall not object to any FERPA designations made by Dartmouth under any circumstances.

f) **Admissibility and Privilege**: Nothing herein shall require Dartmouth to provide information protected by the attorney-client privilege, attorney work-product doctrine, joint-defense privilege or similar privileges, and Dartmouth shall not waive any protections, immunities, or privileges. All provisions of the Confidentiality Order and other orders governing discovery in the Action otherwise will apply, including without limitation, provisions related to inadvertent disclosure.

**21. Temporary Stay of Litigation.** The Settling Parties agree that it appears unlikely a temporary stay of litigation will be necessary before the Court considers the stay requested as part of the motion for preliminary approval of the Settlement Agreement. In the event that either Settling Party to this Settlement Agreement believes in good faith that it has become necessary to seek a stay of the litigation in order for that party to avoid work not contemplated by this Settlement Agreement or some other undue burden, the Settling Parties agree that they will seek a temporary stay of the litigation.

**22. Resumption of Litigation in the Event of Termination.** The Settling Parties agree that in the event that the Settlement Agreement is not approved by the Court, or if the Settlement does not become final pursuant to Paragraph 6 above, or if the Settlement Agreement is terminated pursuant to Paragraphs 15 or 16 above, Plaintiffs may resume litigation of the Action against Dartmouth in a reasonable manner to be approved by the Court upon a joint application by the

Settling Parties, and if and only if Plaintiffs have fully reimbursed to Dartmouth the Dartmouth Settlement Fund as provided for in Paragraph 17 above.

23. **Maintaining Confidentiality of Litigation Materials.** In the event that Plaintiffs or Settlement Class Counsel receive a subpoena or other legal process that would require disclosure of material covered by any protective order entered in the Action (the "Protective Order") or covered by Federal Rule of Evidence 408, such Plaintiff or Settlement Class Counsel shall promptly notify Dartmouth and forward a copy of such subpoena or legal process so that Dartmouth may seek a protective order or otherwise seek to maintain the confidentiality of material covered by the Protective Order or Rule 408; and such Plaintiff or Settlement Class Counsel shall object to the production of such material unless and until any such motion filed by Dartmouth is resolved. In addition, Plaintiffs and Settlement Class Counsel shall abide by the terms of the Protective Order in this Action, including with respect to the destruction of materials and the limitations on the use of any material covered by the Protective Order to this Action, unless otherwise ordered by a court of competent jurisdiction.

24. **Binding Effect.** This Settlement Agreement shall be binding upon, and inure to the benefit of, the Releasors and the Releasees. Without limiting the generality of the foregoing, each and every covenant and agreement herein by Settlement Class Counsel shall be binding upon Plaintiffs and all Class Members.

25. **Integrated Agreement.** This Settlement Agreement, together with the exhibits hereto and the documents referenced herein, contains the complete and integrated statement of every term in this Settlement Agreement, and supersedes all prior agreements or understandings, whether written or oral, between the Settling Parties with respect to the subject matter hereof. This Settlement Agreement shall not be modified except by a writing executed by Plaintiffs and Dartmouth.

26. **Independent Settlement.** This Settlement Agreement is not conditioned on the performance or disposition of any other settlement agreement between the Class and any other Defendant.

**27.** **Headings.** The headings in this Settlement Agreement are intended only for the convenience of the reader and shall not affect the interpretation of this Settlement Agreement.

**28.** **No Party is the Drafter.** None of the Settling Parties shall be considered the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of construction that might cause any provision to be construed against the drafter hereof.

**29.** **Consent to Jurisdiction.** Each Class Member and Dartmouth hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the Northern District of Illinois for any suit, action, proceeding or dispute among or between them arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein, provided that this consent to jurisdiction shall not affect Dartmouth's right or ability to assert this Settlement Agreement or the releases contained herein as a defense in an action filed in any other jurisdiction asserting Released Claims or concerning this Settlement Agreement or this Action.

**30.** **Choice of Law.** All terms of this Settlement Agreement shall be governed by and interpreted according to federal common law or, where state law must apply, Illinois law without regard to conflicts of law principles.

**31.** **Representations and Warranties.** Each party represents and warrants that it has the requisite authority to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated herein.

**32.** **Notice.** Where this Settlement Agreement requires either Settling Party to provide notice or any other communication or document to the other Settling Party, such notice shall be in writing and provided by email and overnight delivery to the counsel set forth in the signature block

below for Settlement Class Counsel, respectively, or their designees or successors.  For Dartmouth, notice shall be provided by email and overnight delivery to:

| | | |
|---|---|---|
| Sandhya L Iyer | Douglas E. Litvack | Ishan Bhabha |
| Senior Vice President and | Jenner & Block LLP | Jenner & Block LLP |
| General Counsel | 1099 New York Avenue, NW | 1099 New York Avenue, NW |
| Dartmouth College | Suite 900, Washington, DC 20001 | Suite 900, Washington DC 20001 |
| 63 South Main Street | dlitvack@jenner.com | Ibhabha@jenner.com |
| Suite 301, Hanover, NH 03755 | | |
| Sandhya.l.Iyer@dartmouth.edu | | |

33.     **Execution in Counterparts.** This Settlement Agreement may be executed in counterparts. A facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

34.     **Confidentiality.** The terms of this Settlement Agreement shall remain confidential until Plaintiffs move for preliminary approval of the Settlement, unless Dartmouth and Settlement Class Counsel agree otherwise, provided that Dartmouth may disclose the terms of this Settlement Agreement to accountants, lenders, auditors, legal counsel, insurers, tax advisors, or in response to a request by any governmental, judicial, or regulatory authority or otherwise required by applicable law or court order, and Plaintiffs may disclose the terms of the Settlement Agreement to any entity that has applied to serve as Notice and Claims Administrator or Escrow Agent, who shall abide by the terms of this Paragraph.

IN WITNESS WHEREOF, the parties hereto through their fully authorized representatives have agreed to this Settlement Agreement as of the date first herein above written.

Dated: February ___22___, 2024.

TRUSTEES OF DARTMOUTH COLLEGE

By: _____
Sandhya L. Iyer
Its:     Senior Vice President, General Counsel and Secretary

By: _Robert D. Gilbert_
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
**GILBERT LITIGATORS &**
**COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
sschuster@gilbertlitigators.com
amarquez@gilbertlitigators.com
smagnusson@gilbertlitigators.com

By: _____
Eric L. Cramer
Caitlin G. Coslett
Ellen Noteware
Hope Brinn
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
ccoslett@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

By: _____
Devin "Vel" Freedman
Edward J. Normand
**FREEDMAN NORMAND**
**FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law
rcipolla@fnf.law

Daniel J. Walker
Robert E. Litan
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs and the Proposed Settlement Class*

By:_____
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
**GILBERT LITIGATORS &**
**COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
sschuster@gilbertlitigators.com
amarquez@gilbertlitigators.com
smagnusson@gilbertlitigators.com

By:_____
Eric L. Cramer
Caitlin G. Coslett
Ellen Noteware
Hope Brinn
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
ccoslett@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

By:_*Edward Normand*_
Devin "Vel" Freedman
Edward J. Normand
**FREEDMAN NORMAND**
**FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law
rcipolla@fnf.law

Daniel J. Walker
Robert E. Litan
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs and the Proposed Settlement Class*

# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SIA HENRY, et al., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BROWN UNIVERSITY, et al.,

Defendants.

Case No. 1:22-cv-125

Hon. Matthew F. Kennelly

**SETTLEMENT AGREEMENT BETWEEN DEFENDANT WILLIAM MARSH RICE UNIVERSITY AND THE PROPOSED CLASS OF PLAINTIFFS**

THIS SETTLEMENT AGREEMENT ("Settlement Agreement" or the "Settlement") is made and entered into as of February 22, 2024, by and between (a) Defendant William Marsh Rice University ("Rice University"); and (b) Plaintiffs,[1] individually and on behalf of the settlement class (the "Class" as defined in Paragraph 1 below, and together with Rice University, the "Settling Parties"), in this Action (*Henry, et al. v. Brown University, et al.*, Case No. 1:22-cv-125 (N.D. Ill.)).

WHEREAS, Plaintiffs filed a lawsuit alleging that Defendants Brown University, California Institute of Technology, the University of Chicago, the Trustees of Columbia University in the City of New York, Cornell University, the Trustees of Dartmouth College, Duke University, Emory University, Georgetown University, Johns Hopkins University, Massachusetts Institute of Technology, Northwestern University, the University of Notre Dame Du Lac, the Trustees of the University of Pennsylvania, William Marsh Rice University, Vanderbilt University, and Yale University (collectively, "Defendants") have restrained competition for undergraduate financial aid in violation of federal antitrust laws, and that Plaintiffs and Class Members incurred damages

---

[1] Plaintiffs are Andrew Corzo, Sia Henry, Alexander Leo-Guerra, Michael Maerlender, Brandon Piyevsky, Benjamin Shumate, Brittany Tiatiana Weaver, and Cameron Williams.

as a result, as detailed in Plaintiffs' Complaint, filed in this Action on January 9, 2022 (ECF No. 1) and as subsequently amended ("Complaint");

WHEREAS, Rice University has asserted defenses to Plaintiffs' claims, denies each and every one of Plaintiffs' allegations of unlawful or wrongful conduct by Rice University, denies that any conduct of Rice University challenged by Plaintiffs caused any damage whatsoever, and denies all liability of any kind;

WHEREAS, Rice University has consented to the appointment of the law firms Freedman Normand Friedland LLP, Gilbert Litigators & Counselors, PC, and Berger Montague PC as Settlement Class Counsel ("Settlement Class Counsel");

WHEREAS, Settlement Class Counsel and counsel for Rice University have engaged in arm's-length settlement negotiations, and have reached this Settlement Agreement, subject to Court approval, which embodies all of the terms and conditions of the Settlement between Plaintiffs, both individually and on behalf of the Class, and Rice University;

WHEREAS, Settlement Class Counsel have concluded, after extensive fact discovery and consultation with their consultants and experts, and after carefully considering the circumstances of this Action, including the claims asserted in the Complaint and Rice University's defenses thereto, that it would be in the best interests of the Class to enter into this Settlement Agreement and assure a benefit to the Class, and further, that Settlement Class Counsel consider the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and in the best interests of the Class;

WHEREAS, Rice University has concluded, despite its belief that it is not liable for the claims asserted and that it has good and valid defenses thereto, that it would be in its best interests to enter into this Settlement Agreement to avoid the risks and uncertainties inherent in complex litigation and also to avoid additional costs of further litigation;

WHEREAS, Plaintiffs and Rice University agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of

any liability or wrongdoing by Rice University, or of the validity or truth of any of the claims or allegations alleged in the Complaint;

WHEREAS, Plaintiffs and Rice University agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence by Plaintiffs of the absence of any violation of any statute or law or of any absence of liability or wrongdoing by Rice University, or of the validity of any of Rice University's defenses, or of the lack of truth of any of the claims or allegations alleged in the Complaint; and

WHEREAS, Plaintiffs and Rice University agree that Rice University's consent to the certification of the Settlement Class shall not be deemed or construed as consent to, or otherwise supportive of, the certification of this or any other class for litigation purposes, and that, in the event the Settlement Agreement is terminated for any reason, Rice University may oppose the certification of any class on any and all grounds.

NOW THEREFORE, it is agreed by the undersigned Settlement Class Counsel, on behalf of Plaintiffs and the Class, on the one hand, and Rice University on the other, that all claims brought by Plaintiffs and the Class against Rice University be fully, finally, and forever settled, compromised, discharged, and dismissed with prejudice as to Rice University, without costs as to Plaintiffs, the Class, or Rice University, subject to Court approval, on the following terms and conditions:

## 1. Definitions

a)    "Action" means *Henry et al. v. Brown University et al.*, No. 1:22-cv-00125 (N.D. Ill.).

b)    "Claims Administrator" means the entity appointed by the Court, on motion of Settlement Class Counsel, to provide notice to the Class, process the claims submitted by Class Members, and carry out any other duties or obligations provided for by the Settlement.

c)    The "Class" means the settlement-only class, which permits potential class members to opt out, including the following persons:

a. all U.S. citizens or permanent residents who have during the Class Period (a) enrolled in one or more of Defendants' full-time undergraduate programs, (b) received at least some need-based financial aid from one or more Defendants, and (c) whose tuition, fees, room, or board to attend one or more of Defendants' full-time undergraduate programs was not fully covered by the combination of any types of financial aid or merit aid (not including loans) in any undergraduate year.[2]  The Class Period is defined as follows:

   i. For Chicago, Columbia, Cornell, Duke, Georgetown, MIT, Northwestern, Notre Dame, Penn, Rice, Vanderbilt, Yale—from Fall Term 2003 through the date the Court enters an order preliminarily approving the Settlement.

   ii. For Brown, Dartmouth, Emory—from Fall Term 2004 through the date the Court enters an order preliminarily approving the Settlement.

   iii. For CalTech—from Fall Term 2019 through the date the Court enters an order preliminarily approving the Settlement.

   iv. For Johns Hopkins—from Fall Term 2021 through the date the Court enters an order preliminarily approving the Settlement.

b. Excluded from the Class are:

---

[2] For avoidance of doubt, the Class does not include those for whom the total cost of attendance, including tuition, fees, room, and board for each undergraduate academic year, was covered by any form of financial aid or merit aid (not including loans) from one or more Defendants.

       i. Any Officers[3] and/or Trustees of Defendants, or any current or former employees holding any of the following positions: Assistant or Associate Vice Presidents or Vice Provosts, Executive Directors, or Directors of Defendants' Financial Aid and Admissions offices, or any Deans or Vice Deans, or any employees in Defendants' in-house legal offices; and

      ii. the Judge presiding over this action, his or her law clerks, spouse, and any person within the third degree of relationship living in the Judge's household and the spouse of such a person.

d)    "Class Members" means the members of the Class who do not timely and validly exclude themselves from the Settlement.

e)    "Effective Date" means the date on which all of the following have occurred: (i) the Settlement is not terminated pursuant to Paragraphs 15 or 16 below; (ii) the Settlement is approved by the Court as required by Fed. R. Civ. P. 23(e); (iii) the Court enters a final approval order; and (iv) the period to appeal the final approval order has expired and/or all appeals have been finally resolved.

f)    "Escrow Account" means the qualified settlement escrow account which holds the Rice University Settlement Fund.

g)    "Escrow Agreement" means an agreement in the form annexed hereto as Exhibit B.

h)    "Fee and Expense Award" means award(s) by the Court to Settlement Class Counsel for reasonable attorneys' fees and reimbursement of reasonable costs and expenses incurred in the prosecution of the Action, including any interest accrued thereon.

---

[3] For the avoidance of doubt, the Columbia University "Officers" excluded from the Class are members of the Senior Administration of Columbia University, and do not include exempt employees of Columbia University who are referred to as officers.

i) "Notice Expenses" means expenses relating to providing notice, including, *inter alia*, the cost of (a) publications, (b) printing and mailing the long-form notice, (c) the Claims Administrator's costs of maintaining and administering the notice website and toll-free phone number, and (d) the Claims Administrator's costs associated with designing and administering the notice plan.

j) "Plaintiffs' Claims" means Plaintiffs' claims against Rice University and other Defendants as stated in the Complaint.

k) "Plan of Allocation" means the plan proposed by Settlement Class Counsel for the allocation of the Rice University Settlement Fund to Class Members.

l) "Releasees" means Rice University and the Board of Trustees of Rice University, individually and collectively, and all of their present, future and former parent, subsidiary and affiliated corporations and entities, the predecessors and successors-in-interest of any of them, and each of the foregoing's respective present, former and future officers, directors, trustees, members, affiliates, employees, administrators, faculty members, students, agents, advisors, representatives, volunteers, attorneys, outside counsel, predecessors, successors, heirs, devisees, executors, conservators, and assigns.

m) "Releasors" means all Plaintiffs and Class Members, and those Plaintiffs' and Class Members' agents, attorneys, representatives (and as applicable each of their past, present, and future agents, attorneys, representatives, and all persons or entities that made payments to Rice University or other Defendants on behalf of Plaintiffs and Class Members), the predecessors, successors, heirs, devisees, executors, conservators, administrators, and representatives of each of the foregoing.

n) "Released Claims" means any and all claims, demands, actions, suits, causes of action, damages, and liabilities, of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, accrued or unaccrued, contingent or absolute, suspected or unsuspected, in law, equity, or otherwise, that Plaintiffs ever had, now have, or hereafter can, shall or may have, directly, representatively, derivatively, as assignees or in any other capacity, to the

extent alleged in the Complaint or to the extent arising out of or relating to a common nucleus of operative facts with those alleged in the Complaint that Plaintiffs have asserted or could have asserted in the Action. For avoidance of doubt, claims between Class Members and Rice University arising in the ordinary course and not relating to, arising from, or sharing a common nucleus of operative facts with the facts alleged in the Complaint will not be released.

o)      "Settlement Class Counsel" means the law firms Freedman Normand Friedland LLP, Gilbert Litigators & Counselors, PC, and Berger Montague PC.

p)      "Settling Parties" means Rice University, Plaintiffs, and the Class.

q)      "Rice University Payment" means Thirty-Three Million and Seven-Hundred and Fifty Thousand Dollars ($33,750,000.00).

r)      "Rice University Settlement Fund" means the Rice University Payment, plus interest accrued on the Settlement Fund. It is understood that, at no additional cost to Rice University or the Rice University Settlement Fund, the Rice University Settlement Fund may be combined with settlement funds from the settlements with other Defendants in the event that Plaintiffs achieve settlements with additional Defendants in this Action.

2.      **Reasonable Steps Necessary to Help Effectuate this Settlement.** The Settling Parties agree to undertake in good faith all reasonable steps necessary to help effectuate the Settlement, including undertaking all actions contemplated by and steps necessary to carry out the terms of this Settlement and to secure the prompt, complete, and final dismissal with prejudice of all claims in this Action against Rice University. The Settling Parties also agree to the following:

a)      Rice University agrees not to oppose a grant of the relief requested in the Plaintiffs' motions for preliminary or final approval of the Settlement, and agrees not to appeal any Court ruling granting in full either of these motions.

b)      Settlement Class Counsel represent that Plaintiffs will support the Settlement and will not object to the Settlement or opt out of the Settlement Class.

c)      Rice University will serve notice of this Settlement on the appropriate federal and state officials under the Class Action Fairness Act, 28 U.S.C. § 1715.

d)      This Settlement is reached with Settlement Class Counsel who will seek Court approval to represent all of the Class, and is intended to be binding on all persons who are within the definition of the Class, except any persons who timely and validly opt out.

**3.      Motion for Preliminary Approval of the Settlement.** Plaintiffs shall draft a motion for preliminary approval of the Settlement and all necessary supporting documents, which shall be consistent with this Settlement Agreement and which Rice University shall have a right to review and approve (which approval shall not be unreasonably withheld). Rice University may suggest revisions, which Plaintiffs agree to consider in good faith, as long as Rice University provides its suggested revisions or comments within seven (7) business days of having received any such document or documents from Plaintiffs, or such other time as the Settling Parties may agree. Unless the Settling Parties agree otherwise, Plaintiffs will file the motion for preliminary approval with the Court no later than 45 days after the execution of this Settlement Agreement. Rice University understands and accepts that Plaintiffs may file for preliminary approval of this Settlement jointly with other settlements in this Action. Nothing in this Settlement Agreement shall prevent Plaintiffs from consummating settlements with other Defendants in this Action or from including such settlements as part of a joint preliminary approval motion. The motion for preliminary approval shall include a proposed form of order substantially similar to Exhibit A, including:

a)      requesting preliminary approval of the Settlement as fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and finding that dissemination of notice to the Class is warranted;

b)      finding that the proposed plan of notice complies with Rule 23 and due process, and seeking approval of short- and long-form notices;

c)      preliminarily approving the Plan of Allocation;

d)      providing that if final approval of the Settlement is not obtained, the Settlement shall be null and void, and the Settling Parties will revert to their positions ex ante without prejudice to their claims or defenses; and

e)       setting a date for a motion for final approval, a deadline for objections and exclusions, and a date for a fairness hearing.

**4. Stay of Proceedings; Subsequent Litigation Class.** The motion for preliminary approval shall also provide for a stay of Plaintiffs' proceedings against Rice University pending final approval or termination of the Settlement. Rice University agrees not to oppose preliminary approval of the Settlement. Plaintiffs represent that the Class definition in Paragraph 1 of this Settlement Agreement is at least as broad as that for which the Plaintiffs will seek certification in their Motion for Class Certification or any later motion(s) for certification of a settlement class (collectively, "Certification Motions") against one or more of the remaining Defendants in the Action, except that as to any subsequent motion for a settlement class in the Action, Plaintiffs may extend the end date of the class period to the date of preliminary approval of any subsequent settlement without violating the provisions of this Paragraph. In the event that Settlement Class Counsel seek to certify a class or classes in any Certification Motion against one or more of the remaining Defendants that include(s) any class members not included in the Class definition in Paragraph 1 herein (except as to the end date of the class period in the context of a motion seeking certification of a settlement class), and if the Court certifies such a broader class at the request of Settlement Class Counsel, Settlement Class Counsel agree that this Settlement Agreement shall be amended to include such additional class members and that in the event an Amended Motion for Preliminary Approval of this Settlement Agreement, any amended notices to the class(es), or an Amended Motion for Final Approval of this Settlement Class are necessary, Settlement Class Counsel will file such amendments and provide such notice at no expense to Rice University.

**5. Motion for Final Approval and Entry of Final Judgment.** In the event the Court enters an order preliminarily approving the Settlement, the Plaintiffs shall draft a motion for final approval of the Settlement and all necessary supporting documents, which Rice University shall have a right to review and approve (which approval shall not be unreasonably withheld). Rice University may suggest revisions, which Plaintiffs agree to consider in good faith, as long as Rice University provides its suggested revisions or comments within seven (7) business days of having

received any such document or documents from Plaintiffs, or other such time as the Settling Parties may agree. Plaintiffs will file the motion for final approval pursuant to the schedule ordered by the Court. The final approval motion shall seek entry of a final approval order, including:

a)      finding that notice given constitutes due, adequate, and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

b)      finding the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and directing consummation of the Settlement pursuant to its terms;

c)      finding that all Class Members shall be bound by the Settlement Agreement and all of its terms;

d)      finding that the Releasors shall be bound by the respective releases set forth in Paragraphs 13 and 14 of this Settlement Agreement, and shall be forever barred from asserting any claims or liabilities against Rice University covered by the respective Released Claims against any of the Releasees;

e)      approving expressly the provisions in Paragraph 7(e) of the Settlement Agreement allowing payment of Settlement Class Counsel fees and expenses before the Effective Date pursuant to the terms of that paragraph;

f)      directing that the Action be dismissed with prejudice as to Rice University and without costs;

g)      determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal with prejudice as to Rice University be final;

h)      retaining exclusive jurisdiction over the Settlement, including the administration and consummation of the Settlement; and

i)      directing that, for a period of five years, the Clerk of the Court shall maintain the record of the entities that have excluded themselves from the Class and that a certified copy of such records shall be provided to Rice University.

**6.**      **Finality of Settlement.** This Settlement Agreement shall become final upon the Effective Date.

**7. Monetary Relief; Notice Fees and Costs**

a)       Rice University shall transfer or cause to be transferred 50% of the Rice University Payment ($16,875,000.00) to the Escrow Account within the later of: (i) 30 calendar days after entry by the Court of the preliminary approval order on the docket of the Action, or (ii) 14 calendar days after Settlement Class Counsel provide Rice University counsel in writing with wiring instructions for the Escrow Account. Rice University shall transfer or cause to transfer the remaining balance of the Rice University Payment to the Escrow Account no later than September 30, 2024.

b)       The payments provided for in subparagraph 7(a) above shall be held in the Escrow Account subject to the terms and conditions of the Escrow Agreement, and in accordance with the provisions of Paragraphs 8-11, 16 and 17 below.

c)       Before the granting of final approval, and upon the direction of Settlement Class Counsel, all reasonable costs of providing notice to the Class and any costs of settlement fund administration, including taxes, will be paid out of the Escrow Account on a non-recoupable basis other than as set forth below. Settlement Class Counsel shall attempt to defray the costs of notice by combining the administration of multiple settlements, if such settlements occur and if permitted by the Court to do so. If multiple settlements are noticed together, the notice costs shall be divided by the number of settlements and charged to the escrow account of each settlement pari passu. Settlement Class Counsel shall provide copies to Rice University's counsel of any invoices paid by Settlement Class Counsel for which money is withdrawn from the Escrow Account. In the event that no noticed settlements become effective, then any withdrawals for reasonable costs from the Escrow Account pursuant to this provision shall be non-refundable. If at least one noticed settlement becomes effective, then all withdrawals for reasonable costs from the Escrow Account (or escrow accounts as applicable) pursuant to this provision shall be withdrawn only from/charged only to the settlement fund(s) of the effective settlement(s). Settlement Class Counsel agree to arrange for provision of notice to the Class in accordance with Fed. R. Civ. P. 23 and any orders

of the Court. Settlement Class Counsel agree to provide Rice University reasonable advance notice of the notice plan and costs.

d)　　　Following the Effective Date, any attorneys' fees, costs and expenses and Class representative service awards awarded to Settlement Class Counsel and Plaintiffs by the Court will be paid from the Escrow Account. In this litigation, Rice University will take no position on Settlement Class Counsel's application for attorneys' fees, costs, and expenses or for Class representative service awards to the Plaintiffs unless requested to do so by the Court.

e)　　　Notwithstanding the above, subject to and following both the Court's approval in the Final Approval Order and the posting of a non-revocable letter of credit issued by Northern Trust, Bank of America, Citibank, or Chase Bank agreed to in writing in advance by the Settling Parties in an amount equal to or greater than the amount of any funds paid under this Paragraph, Settlement Class Counsel's attorneys' fees and/or reimbursement of out-of-pocket expenses of Settlement Class Counsel awarded by the Court, up to a maximum of 90% of the combined amount of the Fee and Expense Award(s) associated with any and all settlements in this Action with other Defendants approved contemporaneously with this Settlement, shall be payable from the combined Settlement Fund upon being awarded by the Court, notwithstanding the existence of any timely-filed objections thereto, or potential appeal therefrom, or collateral attack on the Settlement or any part thereof, including on the award of attorneys' fees and costs. Any payment pursuant to this Paragraph 7(e) shall be subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Rice University Settlement Fund with interest that would have accrued to the Rice University Settlement Fund if the early payment(s) had not been made, within five business days, if and when, as a result of any appeal or further proceedings on remand, action by or ruling of the Court, or successful collateral attack, the fee or award of costs and expenses is reduced or reversed, or in the event the Settlement does not become final or is rescinded or otherwise fails to become effective. If Settlement Class Counsel fail to make the required repayments in accordance with the time period in this Paragraph, Rice University may call the letter of credit. If the provisions of this Paragraph are followed, Rice University shall not object to

such disbursements. If the Court does not approve this provision, that disapproval will have no effect otherwise on the Settling Parties' Settlement Agreement. Nothing in this Paragraph is intended to serve as a cap on, or limit to, the attorneys' fees or expenses that Settlement Class Counsel or Plaintiffs may be awarded by the Court and receive following the Effective Date.

f)      Aside from the payments specified in this Paragraph 7, Rice University shall not pay any additional amount at any time, whether for attorneys' fees or expenses, incentive awards, settlement administration costs, escrow costs, taxes due from the Escrow Account, or any other cost. Rice University shall not be liable for any monetary payments under the Settlement Agreement other than the Rice University Payment.

**8.      The Rice University Settlement Fund.** At all times prior to the Effective Date, the Rice University Settlement Fund shall be invested at the direction of Settlement Class Counsel as set forth in Paragraph 3 of the Escrow Agreement, in instruments backed by the full faith and credit of the U.S. Government or fully insured by the U.S. Government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account insured by the FDIC up to the guaranteed FDIC limit subject to the review and approval of Rice University, such approval not to be unreasonably withheld. Rice University shall have no responsibility for, or obligation with respect to, the investment or management of the Rice University Settlement Fund. The Rice University Settlement Fund may be combined in the same Escrow Account as the settlement funds from other settlements in this Action. After the Effective Date, the Rice University Settlement Fund shall be invested pursuant to Paragraph 7 of the Escrow Agreement as directed in writing by Settlement Class Counsel. All interest earned on the Rice University Settlement Fund shall become part of the Rice University Settlement Fund.

**9.      Disbursements.**   After the Effective Date, the Rice University Settlement Fund shall be distributed in accordance with the Plan of Allocation and the Court's approval of subsequent request(s) for distribution. If any portion of the Settlement Fund remains following disbursement of Court-approved Notice Expenses, the Fee and Expense Award, and the service awards to the Class representatives, and after distribution (or redistribution) to authorized

claimants pursuant to the Court-approved Plan of Allocation, and is of such an amount that it is not cost effective or administratively efficient to redistribute the amount to the authorized claimants, then the Settling Parties agree to seek leave of Court to disburse such remaining funds, after payment of any further notice and administration costs and taxes and tax expenses, to one or more appropriate charitable non-profit organizations that promote access to higher education for disadvantaged students and families as agreed to by the Settling Parties and upon approval by the Court.

**10.    Taxes.**

a)      Settlement Class Counsel shall be solely responsible for directing the Escrow Agent (as defined in the Escrow Agreement) to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Escrow Account. Further, Settlement Class Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments, including interest and penalties due, on income earned by the Escrow Account. Subject to Paragraph 7 above, Settlement Class Counsel shall be entitled to direct the Escrow Agent to pay customary and reasonable tax expenses, including professional fees and expenses incurred in connection with carrying out the Escrow Agent's or tax preparer's responsibilities as set forth in this Paragraph, from the Escrow Account. Settlement Class Counsel shall notify Rice University through its counsel regarding any payments or expenses paid from the Escrow Account. Rice University shall have no responsibility to make any tax filings relating to this Settlement Agreement, the Escrow Account, or the Settlement Payments, and shall have no responsibility to pay taxes on any income earned by the Escrow Account.

b)      For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be Settlement Class Counsel, who shall timely and properly file or cause to be filed on a timely basis all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

c)      The Settling Parties and their counsel shall treat, and shall cause the Escrow Agent to treat, the Escrow Account as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The Settling Parties, their counsel, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Account in this manner. In addition, the Escrow Agent and, as required, the Settling Parties, shall timely make such elections under § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

**11.     Full Satisfaction; Limitation of Interest and Liability.** Plaintiffs and Class Members shall look solely to the Rice University Payment for satisfaction of any and all Released Claims. If the Settlement becomes final pursuant to Paragraph 6 above, Rice University's payment of the Rice University Payment will fully satisfy any and all Released Claims, as compromised. Except as provided by order of the Court, no Class Member shall have any interest in the Rice University Payment, Escrow Account, or any portion thereof. Recognizing that Rice University cannot defend itself in this action in absentia after settling, the Settling Parties agree that any finding of liability against any other party would not establish that Rice University would have been liable, or the amount of any such liability, if Plaintiffs had proceeded to trial against Rice University on Plaintiffs' claims. It is not a violation of this Settlement Agreement for Plaintiffs to use any evidence, including evidence that Plaintiffs believe shows Rice University's involvement in the challenged conduct, to prove Plaintiffs' claims for liability and damages against any non-settling Defendant in this Action. Notwithstanding anything set forth above, nothing in this

Paragraph is intended to or shall be used to (i) exonerate any party other than Rice University, and/or (ii) reduce the exposure of any non-settling defendant to liability, including to liability for the alleged actions of Rice University.

**12.    Attorneys' Fees, Expenses, and Costs.**

a)    Settlement Class Counsel shall file any motion for a Fee and Expense Award in accordance with the Court's preliminary approval or final approval order. Settlement Class Counsel shall receive any Fee and Expense Award relating to this Settlement solely from the Rice University Settlement Fund. Other than as provided in Paragraph 7(e) and approved by the Court, no portion of any Fee and Expense Award shall be released from the Rice University Settlement Fund prior to the Effective Date. In this litigation, Rice University is not obligated to take, does not take, and, unless requested to do so by the Court, will not take any position with respect to the application by Settlement Class Counsel for reimbursement of attorneys' fees, expenses, and costs.

b)    The procedures for and the allowance or disallowance by the Court of Settlement Class Counsel's application for a Fee and Expense Award to be paid from the Rice University Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceeding relating to the Fee and Expense Award, or any appeal from any such order, shall not operate to modify or cancel this Settlement Agreement, or affect or delay the finality of the judgment approving the Settlement. A modification or reversal on appeal of any amount of the Fee and Expense Award shall not be deemed a modification of the terms of this Settlement Agreement or final approval order, and shall not give rise to any right of termination.

**13.    Release.**  Upon the occurrence of the Effective Date, the Releasors hereby release and forever discharge, and covenant not to sue the Releasees only, with respect to, in connection with, or relating to any and all of the Released Claims.

**14.    Additional Release.** In addition, each Releasor hereby expressly waives and releases, upon the Effective Date, any and all provisions, rights, and/or benefits conferred by Section 1542 of the California Civil Code, which reads:

Section 1542. <u>Release</u>. A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, notwithstanding that the release in Paragraph 13 is not a general release and is of claims against Releasees only. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims that are the subject matter of Paragraph 13. Nonetheless, upon the Effective Date, each Releasor hereby expressly waives and fully, finally, and forever settles and releases any known or unknown, foreseen, or unforeseen, suspected or unsuspected, contingent or non-contingent claim that is the subject matter of Paragraph 13, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Releasor also hereby expressly waives and fully, finally, and forever settles, releases, and discharges any and all claims it may have against the Releasees under § 17200, *et seq.*, of the California Business and Professions Code or any similar comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are expressly incorporated into the definition of the Released Claims.

15.     **Effect of Disapproval.** If the Court (i) declines to approve this Settlement Agreement; (ii) does not enter the preliminary approval order containing the elements set forth in Paragraph 3 above; (iii) does not enter the final approval order containing the elements set forth in Paragraph 5 above; or (iv) enters the final approval order and appellate review is sought, and on such review, such final approval order is not affirmed, then Settlement Class Counsel or Rice University may elect to terminate this Settlement Agreement by sending written notice to the other party within 10 business days of the event allowing for termination. For the avoidance of doubt, and without limiting the foregoing, any order of the Court, the Seventh Circuit Court of Appeals, or the United States Supreme Court that is based on a determination that the Settlement is not fair, reasonable, or adequate or that: (a) materially changes or does not approve the scope of the releases

and covenant not to sue contemplated by this Settlement; (b) purports to impose additional material obligations on Rice University; or (c) declines to enter a final judgment that meets the requirements set forth in Paragraph 5 above, except as otherwise agreed in writing by Settlement Class Counsel and Rice University, constitutes a failure to grant final approval of this Agreement and confers on Settlement Class Counsel and/or Rice University the right to terminate the Agreement. A modification or reversal on appeal of the Plan of Allocation, Fee and Expense Award, or Plaintiffs' service awards shall not be deemed a modification of the terms of this Agreement or Final Approval Order and shall not give rise to any right of termination.

**16.     Opt-Out and Termination Rights.**

a)     Should more than 650 proposed Class Members (not including employees of any of the law firms representing Defendants in this case) opt-out of this Settlement, Rice University has the right to terminate this Settlement, as long as Rice University notifies Settlement Class Counsel in writing of its decision to terminate within ten (10) business days of having been informed that more than 650 proposed Class Members have opted out or such other time as the Settling Parties may agree, and provided that Rice University has been given timely information regarding any opt-outs within a reasonable time after such opt-out requests come to the attention of Settlement Class Counsel. In such instance of termination, the Settling Parties would return to their respective positions as of October 15, 2023. In the event of a termination, the Settling Parties agree to work in good faith to propose a schedule to the Court to restart the litigation between Plaintiffs and Rice University. Rice University agrees that its President, Provost, General Counsel, or outside counsel shall take no actions, publicly or privately, directly or indirectly, to encourage any proposed Class Members to opt out of this Settlement, or to encourage opting out from any other settlements that Plaintiffs may enter into with other Defendants in this Action, or from any class or classes that the Court may certify in this Action.

b)     Any disputes regarding the application of this Paragraph 16 may be resolved by the Court, with Plaintiffs, Rice University, and the opt-out(s) all having the opportunity to be heard.

**17.**     **Reimbursement of the Rice University Settlement Fund upon Termination.** If the Settlement Agreement is terminated pursuant to the provisions of Paragraphs 15 or 16 above, the Escrow Agent shall return to Rice University the funds in the Rice University Settlement Fund consistent with Paragraph 7 at the time of termination. Subject to Paragraph 8 of the Escrow Agreement, the Escrow Agent shall disburse the funds left in the Rice University Settlement Fund consistent with Paragraph 7 to Rice University in accordance with this Paragraph within 15 calendar days after receipt of either (i) written notice signed by Settlement Class Counsel and Rice University's counsel stating that the Settlement has been terminated (such written notice will be signed by the non-terminating party within three days of receiving the written notice from the terminating party), or (ii) any order of the Court so directing. If the Settlement Agreement is terminated pursuant to Paragraphs 15 or 16, (1) any obligations pursuant to this Settlement Agreement other than (i) disbursement of the Rice University Settlement Fund to Rice University as set forth above and (ii) Paragraph 23, shall cease immediately and (2) the releases set forth in Paragraphs 13 and 14 above shall be null and void.

**18.**     **Preservation of Rights.** Except as expressly provided for in the Releases in Paragraphs 13 and 14 above, this Settlement Agreement, whether the Settlement becomes final or not, and any and all negotiations, documents, and discussions associated with it, shall be without prejudice to the rights of any of the Settling Parties, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or lack thereof, of any liability or wrongdoing by Rice University or lack thereof, or of any amount of improperly acquired funds received by Rice University or the lack thereof, or of the truth or lack thereof of any of the claims or allegations contained in the Complaint or any other pleading, and evidence thereof shall not be discoverable or used directly or indirectly, in any way other than to enforce the terms of this Settlement Agreement. The Settling Parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Settlement Agreement. Upon the Settlement becoming final, nothing in this Settlement Agreement shall (a) prevent Rice University from asserting any release or citing this Settlement Agreement to offset any liability to any other

parties not party to the Action, including but not limited to, claims filed by federal and state governments or any governmental entity, or (b) be construed to impair, negate, diminish, or adversely affect any rights of Rice University or its successors or assigns to seek to recover or to recover insurance proceeds or payments from its past or current insurance carriers with respect to amounts paid pursuant to this Settlement Agreement or incurred in connection with the Action, or any other loss or liability, and Rice University expressly reserves all rights, claims, positions, arguments, contentions, and defenses with respect to such matters.

19. **No Admission of Liability by Rice University; No Admission of Absence of Merit by Plaintiffs.** This Settlement Agreement shall not be deemed or construed to be an admission of Rice University's liability in this Action or to be admissions that Plaintiffs' claims in this Action have any merit against Rice University or otherwise, or to comprise any determination as to whether there were, or the amount of, any improperly acquired funds allegedly received by Rice University. Rice University denies any wrongdoing in relation to the claims brought by Plaintiffs in this Action. Rice University's consent to the Settlement Class shall not be deemed consent to the certification of this or any other class for litigation purposes, and in the event of termination, Rice University may oppose the certification of any class. This Settlement Agreement shall not be deemed or construed to be an admission that Plaintiffs' Claims in this Action have or lack merit as to Rice University or otherwise.

20. **Discovery Disclosures to Plaintiffs.** Other than as set forth below, or as may subsequently be agreed to by the Settling Parties, Rice University and its current or former employees will not be subject to any further discovery (including deposition notices and subpoenas), previously served by Plaintiffs or that Plaintiffs may serve in the future.

a) **Data**. Rice will respond in good faith to the data questions it received from Settlement Class Counsel on December 5, 2023 before the close of fact discovery.

b) **Interrogatories.** Rice will provide sworn responses to no more than four additional interrogatories before the close of fact discovery.

c)  **Testimony**. Notwithstanding this Settlement Agreement, if any other party to the Action takes a deposition of a Rice University-related witness, Rice University agrees that it will not object to making that witness available for deposition questioning by Plaintiffs' counsel for an equal amount of time, subject to a combined time limit as set in Fed. R. Civ. P. 30(d)(1).

d)  **Produced documents kept in the ordinary course of business and trial witness**. Rice University agrees that in the event the need arises in this Action, and there is an authenticity or hearsay objection made by one or more Defendants in the Action to documents or data produced by Rice University in this litigation, Rice University will provide a declaration (i) pursuant to Federal Rule of Evidence 902(11) concerning the authenticity or admissibility of those documents; and (ii) supporting the application of the Business Records Exception to the Hearsay Rule (Fed. R. Evid. 803(6)) to those documents or data. In the event that a declaration is not sufficient to meet the requirements of Fed. R. Evid. 803(6), Rice University will provide a records custodian witness to testify by deposition *de bene esse* or, if necessary, at trial, for the sole purpose of providing support for the authenticity of the documents or data or the application of the Business Records Exception to the Hearsay Rule for those documents or data.

e)  **Confidentiality**: All non-public data, documents, information, testimony, and/or communications provided to Plaintiffs' counsel as part of subparts (a) to (d) above, if so designated by Rice University, shall be treated as "Confidential" or "Attorneys' Eyes Only" under the Confidentiality Order in the Action. Plaintiffs reserve the right to challenge such designations, after the fact, under the terms of the Confidentiality Order; however, Plaintiffs agree to telephonically meet and confer in good faith with counsel for Rice University before filing any motion to challenge such designations with the Court. Plaintiffs further agree that they shall not seek to challenge the confidentiality of any Rice University documents or testimony unless Plaintiffs intend to file such documents or testimony with the Court in support of a motion (other than a motion challenging confidentiality designations) or introduce such documents or testimony in a hearing or trial in the Action. Notwithstanding anything to the contrary in this Settlement

Agreement or the Confidentiality Order, Plaintiffs shall not object to any FERPA designations made by Rice University under any circumstances.

f) **Admissibility and Privilege**: Nothing herein shall require Rice University to provide information protected by the attorney-client privilege, attorney work-product doctrine, joint-defense privilege or similar privileges, and Rice University shall not waive any protections, immunities, or privileges. All provisions of the Confidentiality Order and other orders governing discovery in the Action otherwise will apply, including without limitation, provisions related to inadvertent disclosure.

21. **Temporary Stay of Litigation.** The Settling Parties agree that it appears unlikely a temporary stay of litigation will be necessary before the Court considers the stay requested as part of the motion for preliminary approval of the Settlement Agreement. In the event that either Settling Party to this Settlement Agreement believes in good faith that it has become necessary to seek a stay of the litigation in order for that party to avoid work not contemplated by this Settlement Agreement or some other undue burden, the Settling Parties agree that they will seek a temporary stay of the litigation.

22. **Resumption of Litigation in the Event of Termination.** The Settling Parties agree that in the event that the Settlement Agreement is not approved by the Court, or if the Settlement does not become final pursuant to Paragraph 6 above, or if the Settlement Agreement is terminated pursuant to Paragraphs 15 or 16 above, Plaintiffs may resume litigation of the Action against Rice University in a reasonable manner to be approved by the Court upon a joint application by the Settling Parties, and if and only if Plaintiffs have fully reimbursed to Rice University the Rice University Settlement Fund as provided for in Paragraph 17 above.

23. **Maintaining Confidentiality of Litigation Materials.** In the event that Plaintiffs or Settlement Class Counsel receive a subpoena or other legal process that would require disclosure of material covered by any protective order entered in the Action (the "Protective Order") or covered by Federal Rule of Evidence 408, such Plaintiff or Settlement Class Counsel shall promptly notify Rice University and forward a copy of such subpoena or legal process so that

Rice University may seek a protective order or otherwise seek to maintain the confidentiality of material covered by the Protective Order or Rule 408; and such Plaintiff or Settlement Class Counsel shall object to the production of such material unless and until any such motion filed by Rice University is resolved. In addition, Plaintiffs and Settlement Class Counsel shall abide by the terms of the Protective Order in this Action, including with respect to the destruction of materials and the limitations on the use of any material covered by the Protective Order to this Action, unless otherwise ordered by a court of competent jurisdiction.

24. **Binding Effect.** This Settlement Agreement shall be binding upon, and inure to the benefit of, the Releasors and the Releasees. Without limiting the generality of the foregoing, each and every covenant and agreement herein by Settlement Class Counsel shall be binding upon Plaintiffs and all Class Members.

25. **Integrated Agreement.** This Settlement Agreement, together with the exhibits hereto and the documents referenced herein, contains the complete and integrated statement of every term in this Settlement Agreement, and supersedes all prior agreements or understandings, whether written or oral, between the Settling Parties with respect to the subject matter hereof. This Settlement Agreement shall not be modified except by a writing executed by Plaintiffs and Rice University.

26. **Independent Settlement.** This Settlement Agreement is not conditioned on the performance or disposition of any other settlement agreement between the Class and any other Defendant.

27. **Headings.** The headings in this Settlement Agreement are intended only for the convenience of the reader and shall not affect the interpretation of this Settlement Agreement.

28. **No Party is the Drafter.** None of the Settling Parties shall be considered the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of construction that might cause any provision to be construed against the drafter hereof.

29. **Consent to Jurisdiction.** Each Class Member and Rice University hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the Northern

District of Illinois for any suit, action, proceeding or dispute among or between them arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein, provided that this consent to jurisdiction shall not affect Rice University's right or ability to assert this Settlement Agreement or the releases contained herein as a defense in an action filed in any other jurisdiction asserting Released Claims or concerning this Settlement Agreement or this Action.

30. **Choice of Law.** All terms of this Settlement Agreement shall be governed by and interpreted according to federal common law or, where state law must apply, Illinois law without regard to conflicts of law principles.

31. **Representations and Warranties.** Each party represents and warrants that it has the requisite authority to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated herein.

32. **Notice.** Where this Settlement Agreement requires either Settling Party to provide notice or any other communication or document to the other Settling Party, such notice shall be in writing and provided by email and overnight delivery to the counsel set forth in the signature block below for Settlement Class Counsel, respectively, or their designees or successors. For Rice University, notice shall be provided by email and overnight delivery to:

Omar A. Syed
Vice President, General Counsel & Secretary
William Marsh Rice University
360 Allen Center
6100 Main St.
Houston, TX 77005
legal@rice.edu


Norman Armstrong, Jr.
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
norman.armstrong@kirkland.com

**33.     Execution in Counterparts.** This Settlement Agreement may be executed in counterparts. A facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

**34.     Confidentiality.** The terms of this Settlement Agreement shall remain confidential until Plaintiffs move for preliminary approval of the Settlement, unless Rice University and Settlement Class Counsel agree otherwise, provided that Rice University may disclose the terms of this Settlement Agreement to accountants, lenders, auditors, legal counsel, insurers, tax advisors, or in response to a request by any governmental, judicial, or regulatory authority or otherwise required by applicable law or court order, and Plaintiffs may disclose the terms of the Settlement Agreement to any entity that has applied to serve as Notice and Claims Administrator or Escrow Agent, who shall abide by the terms of this Paragraph.

IN WITNESS WHEREOF, the parties hereto through their fully authorized representatives have agreed to this Settlement Agreement as of the date first herein above written.

Dated: February __21__, 2024.

WILLIAM MARSH RICE UNIVERSITY

By: _____

Omar A. Syed

Its:      Vice President, General Counsel & Secretary

By: _Robert D. Gilbert_ (signature)
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
**GILBERT LITIGATORS &
COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
sschuster@gilbertlitigators.com
amarquez@gilbertlitigators.com
smagnusson@gilbertlitigators.com

By: _(signature)_
Eric L. Cramer
Caitlin G. Coslett
Ellen Noteware
Hope Brinn
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
ccoslett@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

By: _____
Devin "Vel" Freedman
Edward J. Normand
**FREEDMAN NORMAND
FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law
rcipolla@fnf.law

Daniel J. Walker
Robert E. Litan
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs and the Proposed Settlement Class*

By:_____
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
**GILBERT LITIGATORS &
COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
sschuster@gilbertlitigators.com
amarquez@gilbertlitigators.com
smagnusson@gilbertlitigators.com


By:_____
Eric L. Cramer
Caitlin G. Coslett
Ellen Noteware
Hope Brinn
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
ccoslett@bm.net


Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net


By: *Edward Normand*
Devin "Vel" Freedman
Edward J. Normand
**FREEDMAN NORMAND
FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law
rcipolla@fnf.law


Daniel J. Walker
Robert E. Litan
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net


*Counsel for Plaintiffs and the Proposed Settlement Class*

# EXHIBIT 3

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
| SIA HENRY, et al., individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>    v.<br><br>BROWN UNIVERSITY, et al.,<br><br>                Defendants. | Case No. 1:22-cv-125<br><br>Hon. Matthew F. Kennelly<br><br><br>**SETTLEMENT AGREEMENT BETWEEN NORTHWESTERN UNIVERSITY AND THE PROPOSED CLASS OF PLAINTIFFS** |

THIS SETTLEMENT AGREEMENT ("Settlement Agreement" or the "Settlement") is made and entered into as of February 22, 2024, by and between (a) defendant Northwestern University ("Northwestern"); and (b) Plaintiffs,[1] individually and on behalf of the settlement class (the "Class" as defined in Paragraph 1 below, and together with Northwestern, the "Settling Parties"), in this Action (*Henry, et al. v. Brown University, et al.*, Case No. 1:22-cv-125 (N.D. Ill.)).

WHEREAS, Plaintiffs filed a lawsuit alleging that Defendants Brown University, California Institute of Technology, the University of Chicago, the Trustees of Columbia University in the City of New York, Cornell University, the Trustees of Dartmouth College, Duke University, Emory University, Georgetown University, Johns Hopkins University, Massachusetts Institute of Technology, Northwestern University, the University of Notre Dame Du Lac, the Trustees of the

---

[1] Plaintiffs are Andrew Corzo, Sia Henry, Alexander Leo-Guerra, Michael Maerlender, Brandon Piyevsky, Benjamin Shumate, Brittany Tatiana Weaver, and Cameron Williams.

University of Pennsylvania, William Marsh Rice University, Vanderbilt University, and Yale University (collectively, "Defendants") have restrained competition for undergraduate financial aid in violation of federal antitrust laws, and that Plaintiffs and Class members incurred damages as a result, as detailed in Plaintiffs' Complaint, filed in this Action on January 9, 2022 (ECF No. 1) and as subsequently amended ("Complaint");

WHEREAS, Northwestern has asserted defenses to Plaintiffs' claims, denies each and every one of Plaintiffs' allegations of unlawful or wrongful conduct by Northwestern, denies that any conduct of Northwestern challenged by Plaintiffs caused any damage whatsoever, and denies all liability of any kind;

WHEREAS, Northwestern has consented to the appointment of the law firms of Freedman Normand Friedland LLP, Gilbert Litigators & Counselors, PC, and Berger Montague PC as Settlement Class Counsel ("Settlement Class Counsel");

WHEREAS, Settlement Class Counsel and counsel for Northwestern have engaged in arm's-length settlement negotiations, and have reached this Settlement Agreement, subject to Court approval, which embodies all of the terms and conditions of the Settlement between Plaintiffs, both individually and on behalf of the Class, and Northwestern;

WHEREAS, Settlement Class Counsel have concluded, after extensive fact discovery and consultation with their consultants and experts, and after carefully considering the circumstances of this Action, including the claims asserted in the Complaint and Northwestern's defenses thereto, that it would be in the best interests of the Class to enter into this Settlement Agreement and assure a benefit to the Class, and further, that Settlement Class Counsel consider the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and in the best interests of the Class;

WHEREAS, Northwestern has concluded, despite its belief that it is not liable for the claims asserted and that it has good and valid defenses thereto, that it would be in its best interests to enter into this Settlement Agreement to avoid the risks and uncertainties inherent in complex litigation and also to avoid additional costs of further litigation;

WHEREAS, Plaintiffs and Northwestern agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Northwestern, or of the validity or truth of any of the claims or allegations alleged in the Complaint;

WHEREAS, Plaintiffs and Northwestern agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence by Plaintiffs of the absence of any violation of any statute or law or of any absence of liability or wrongdoing by Northwestern, or of the validity of any of Northwestern's defenses, or of the lack of truth of any of the claims or allegations alleged in the Complaint; and

WHEREAS, Plaintiffs and Northwestern agree that Northwestern's consent to the certification of the Settlement Class shall not be deemed or construed as consent to, or otherwise supportive of, the certification of this or any other class for litigation purposes, and that, in the event the Settlement Agreement is terminated for any reason, Northwestern may oppose the certification of any class on any and all grounds.

NOW THEREFORE, it is agreed by the undersigned Settlement Class Counsel, on behalf of Plaintiffs and the Class, on the one hand, and Northwestern on the other, that all claims brought by Plaintiffs and the Class against Northwestern be fully, finally, and forever settled, compromised, discharged, and dismissed with prejudice as to Northwestern, without costs as to Plaintiffs, the Class, or Northwestern, subject to Court approval, on the following terms and conditions:

## 1. Definitions

a) "Action" means *Henry et al. v. Brown University et al.* No. 1:22-cv-00125 (N.D. Ill.).

b) "Claims Administrator" means the entity appointed by the Court, on motion of Settlement Class Counsel, to provide notice to the Class, process the claims submitted by Class Members, and carry out any other duties or obligations provided for by the Settlement.

c) The "Class" means the settlement-only class, which permits potential class members to opt out, including the following persons:

    a. all U.S. citizens or permanent residents who have during the Class Period (a) enrolled in one or more of Defendants' full-time undergraduate programs, (b) received at least some need-based financial aid from one or more Defendants, and (c) whose tuition, fees, room, or board to attend one or more of Defendants' full-time undergraduate programs was not fully covered by the combination of any types of financial aid or merit aid (not including loans) in any undergraduate year.[2] The Class Period is defined as follows:

        i. For Chicago, Columbia, Cornell, Duke, Georgetown, MIT, Northwestern, Notre Dame, Penn, Rice, Vanderbilt, Yale—from Fall Term 2003 through the date the Court enters an order preliminarily approving the Settlement.

        ii. For Brown, Dartmouth, Emory—from Fall Term 2004 through the date the Court enters an order preliminarily approving the Settlement.

        iii. For CalTech—from Fall Term 2019 through the date the Court enters an order preliminarily approving the Settlement.

        iv. For Johns Hopkins—from Fall Term 2021 through the date the Court enters an order preliminarily approving the Settlement.

    b. Excluded from the Class are:

---

[2] For avoidance of doubt, the Class does not include those for whom the total cost of attendance, including tuition, fees, room, and board for each undergraduate academic year, was covered by any form of financial aid or merit aid (not including loans) from one or more Defendants.

       i.   Any Officers[3] and/or Trustees of Defendants, or any current or former employees holding any of the following positions: Assistant or Associate Vice Presidents or Vice Provosts, Executive Directors, or Directors of Defendants' Financial Aid and Admissions offices, or any Deans or Vice Deans, or any employees in Defendants' in-house legal offices; and

      ii.   the Judge presiding over this action, his or her law clerks, spouse, and any person within the third degree of relationship living in the Judge's household and the spouse of such a person.

d)     "Class Members" means the members of the Class who do not timely and validly exclude themselves from the Settlement.

e)     "Effective Date" means the date on which all of the following have occurred: (i) the Settlement is not terminated pursuant to Paragraphs 15 or 16 below; (ii) the Settlement is approved by the Court as required by Fed. R. Civ. P. 23(e); (iii) the Court enters a final approval order; and (iv) the period to appeal the final approval order has expired and/or all appeals have been finally resolved.

f)     "Escrow Account" means the qualified settlement escrow account which holds the Northwestern Settlement Fund.

g)     "Escrow Agreement" means an agreement in the form annexed hereto as Exhibit B.

---

[3] For the avoidance of doubt, the Columbia University "Officers" excluded from the Class are members of the Senior Administration of Columbia University, and do not include exempt employees of Columbia University who are referred to as officers.

h)    "Fee and Expense Award" means award(s) by the Court to Settlement Class Counsel for reasonable attorneys' fees and reimbursement of reasonable costs and expenses incurred in the prosecution of the Action, including any interest accrued thereon.

i)    "Notice Expenses" means expenses relating to providing notice, including, *inter alia*, the cost of (a) publications, (b) printing and mailing the long-form notice, (c) the Claims Administrator's costs of maintaining and administering the notice website and toll-free phone number, and (d) the Claims Administrator's costs associated with designing and administering the notice plan.

j)    "Plaintiffs' Claims" means Plaintiffs' claims against Northwestern and other Defendants as stated in the Complaint.

k)    "Plan of Allocation" will mean the plan proposed by Settlement Class Counsel for the allocation of the Settlement Funds to Class Members.

l)    "Releasees" means Northwestern and the Board of Trustees of Northwestern, individually and collectively, and all of their present, future and former parent, subsidiary and affiliated corporations and entities, the predecessors and successors in interest of any of them, and each of the foregoing's respective present, former and future officers, directors, trustees, affiliates, employees, administrators, faculty members, students, agents, advisors, representatives, volunteers, attorneys, outside counsel, predecessors, successors, heirs, devisees, executors, conservators, and assigns.

m)    "Releasors" means all Plaintiffs and Class Members, and those Plaintiffs' and Class Members' agents, attorneys, representatives (and as applicable each of their past, present, and future agents, attorneys, representatives, and all persons or entities that made payments to Northwestern or other Defendants on behalf of Plaintiffs and Class Members), the predecessors, successors, heirs, devisees, executors, conservators, administrators, and representatives of each of the foregoing.

n)    "Released Claims" means any and all claims, demands, actions, suits, causes of action, damages, and liabilities, of any nature whatsoever, including costs, expenses, penalties and

attorneys' fees, known or unknown, accrued or unaccrued, contingent or absolute, suspected or unsuspected, in law, equity, or otherwise, that Plaintiffs ever had, now have, or hereafter can, shall or may have, directly, representatively, derivatively, as assignees or in any other capacity, to the extent alleged in the Complaint or to the extent arising out of or relating to a common nucleus of operative facts with those alleged in the Complaint that Plaintiffs have asserted or could have asserted in the Action. For avoidance of doubt, claims between Class Members and Northwestern arising in the ordinary course and not relating to, arising from, or sharing a common nucleus of operative facts with the facts alleged in the Complaint will not be released.

o) "Settlement Class Counsel" means the law firms Freedman Normand Friedland LLP, Gilbert Litigators & Counselors, PC, and Berger Montague PC.

p) "Settling Parties" means Northwestern, Plaintiffs, and the Class.

q) "Northwestern Payment" means $43.5 million dollars ($43,500,000.00).

r) "Northwestern Settlement Fund" means the Northwestern Payment, plus interest accrued on the Settlement Fund. It is understood that, at no additional cost to Northwestern or the Northwestern Settlement Fund, the Northwestern Settlement Fund may be combined with settlement funds from the settlements with other Defendants in the event that Plaintiffs achieve settlements with additional Defendants in this Action.

2. **Reasonable Steps Necessary to Help Effectuate this Settlement.** The Settling Parties agree to undertake in good faith all reasonable steps necessary to help effectuate the Settlement, including undertaking all actions contemplated by and steps necessary to carry out the terms of this Settlement and to secure the prompt, complete, and final dismissal with prejudice of all claims in this Action against Northwestern. The Settling Parties also agree to the following:

a) Northwestern agrees not to oppose a grant of the relief requested in the Plaintiffs' motions for preliminary or final approval of the Settlement, and agrees not to appeal any Court ruling granting in full either of these motions.

b) Settlement Class Counsel represent that Plaintiffs will support the Settlement and will not object to the Settlement or opt out of the Settlement Class.

c)    Northwestern will serve notice of this Settlement on the appropriate federal and state officials under the Class Action Fairness Act, 28 U.S.C. § 1715.

d)    This Settlement is reached with Settlement Class Counsel who will seek Court approval to represent all of the Class, and is intended to be binding on all persons who are within the definition of the Class, except any persons who timely and validly opt out.

3.    **Motion for Preliminary Approval of the Settlement.** Plaintiffs shall draft a motion for preliminary approval of the Settlement and all necessary supporting documents, which shall be consistent with this Settlement Agreement and which Northwestern shall have a right to review and approve (which approval shall not be unreasonably withheld). Northwestern may suggest revisions, which Plaintiffs agree to consider in good faith, as long as Northwestern provides its suggested revisions or comments within seven (7) business days of having received any such document or documents from Plaintiffs, or such other time as the Settling Parties may agree. Unless the Settling Parties agree otherwise, Plaintiffs will file the motion for preliminary approval with the Court no later than 45 days after the execution of this Settlement Agreement. Northwestern understands and accepts that Plaintiffs may file for preliminary approval of this Settlement jointly with other settlements in this Action. Nothing in this Settlement Agreement shall prevent Plaintiffs from consummating settlements with other Defendants in this Action or from including such settlements as part of a joint preliminary approval motion. The motion for preliminary approval shall include a proposed form of order substantially similar to Exhibit A, including:

a)    requesting preliminary approval of the Settlement as fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and finding that dissemination of notice to the Class is warranted;

b)    finding that the proposed plan of notice complies with Rule 23 and due process, and seeking approval of short- and long-form notices;

c)    preliminarily approving the Plan of Allocation;

d) providing that if final approval of the Settlement is not obtained, the Settlement shall be null and void, and the Settling Parties will revert to their positions ex ante without prejudice to their claims or defenses; and

e) setting a date for a motion for final approval, a deadline for objections and exclusions, and a date for a fairness hearing.

**4. Stay of Proceedings; Subsequent Litigation Class.** The motion for preliminary approval shall also provide for a stay of Plaintiffs' proceedings against Northwestern pending final approval or termination of the Settlement. Northwestern agrees not to oppose preliminary approval of the Settlement. Plaintiffs represent that the class definition in Paragraph 1 of this Settlement Agreement is at least as broad as that for which the Plaintiffs will seek certification in their Motion for Class Certification or any later motion(s) for certification of a settlement class (collectively, "Certification Motions") against one or more of the remaining Defendants in the Action, except that as to any subsequent motion for a settlement class in the Action, Plaintiffs may extend the end date of the class period to the date of preliminary approval of any subsequent settlement without violating the provisions of this paragraph. In the event that Settlement Class Counsel seek to certify a class or classes in any Certification Motion against one or more of the remaining Defendants that include(s) any class members not included in the class definition in Paragraph 1 herein (except as to the end date of the class period in the context of a motion seeking certification of a settlement class), and if the Court certifies such a broader class at the request of Settlement Class Counsel, Settlement Class Counsel agree that this Settlement Agreement shall be amended to include such additional class members and that in the event an Amended Motion for Preliminary Approval of this Settlement Agreement, any amended notices must be provided to the classes, or an Amended Motion for Final Approval of this Settlement Class are necessary, Settlement Class Counsel will file such amendments and provide such notice at no expense to Northwestern.

**5. Motion for Final Approval and Entry of Final Judgment.** In the event the Court enters an order preliminarily approving the Settlement, the Plaintiffs shall draft a motion for final approval of the Settlement and all necessary supporting documents, which Northwestern shall have

a right to review and approve (which approval shall not be unreasonably withheld). Northwestern may suggest revisions, which Plaintiffs agree to consider in good faith, as long as Northwestern provides its suggested revisions or comments within seven (7) business days of having received any such document or documents from Plaintiffs, or other such time as the Settling Parties may agree. Plaintiffs will file the motion for final approval pursuant to the schedule ordered by the Court. The final approval motion shall seek entry of a final approval order, including:

a) finding that notice given constitutes due, adequate, and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

b) finding the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and directing consummation of the Settlement pursuant to its terms;

c) finding that all Class Members shall be bound by the Settlement Agreement and all of its terms;

d) finding that the Releasors shall be bound by the respective releases set forth in Paragraphs 13 and 14 of this Settlement Agreement, and shall be forever barred from asserting any claims or liabilities against Northwestern covered by the respective Released Claims against any of the Releasees;

e) approving expressly the provisions in Paragraph 7(e) of the Settlement Agreement allowing payment of Settlement Class Counsel fees and expenses before the Effective Date pursuant to the terms of that paragraph;

f) directing that the Action be dismissed with prejudice as to Northwestern and without costs;

g) determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal with prejudice as to Northwestern be final;

h) retaining exclusive jurisdiction over the Settlement, including the administration and consummation of the Settlement; and

i)   directing that, for a period of five years, the Clerk of the Court shall maintain the record of the entities that have excluded themselves from the Class and that a certified copy of such records shall be provided to Northwestern.

**6.   Finality of Settlement.** This Settlement Agreement shall become final upon the Effective Date.

**7.   Monetary Relief; Notice Fees and Costs**

a)   Northwestern shall transfer or cause to be transferred one half (50%) of the Northwestern Payment to the Escrow Account within the later of: (i) 30 calendar days after entry by the Court of the preliminary approval order on the docket of the Action, or (ii) 14 calendar days after Settlement Class Counsel provide Northwestern counsel in writing with wiring instructions for the Escrow Account. Northwestern shall transfer or cause to transfer the remaining balance of the Northwestern Payment to the Escrow Account within 30 calendar days after entry by the Court of the final approval order on the docket of the Action.  The payments provided for in this subparagraph above shall be held in the Escrow Account subject to the terms and conditions of the Escrow Agreement, and in accordance with the provisions of Paragraphs 8-11, 16 and 17 below.

b)   Before the granting of final approval, and upon the direction of Settlement Class Counsel, all reasonable costs of providing notice to the Class and any costs of settlement fund administration, including taxes, will be paid out of the Escrow Account on a non-recoupable basis other than as set forth below. Settlement Class Counsel shall attempt to defray the costs of notice by combining the administration of multiple settlements, if such settlements occur and if permitted by the Court to do so. If multiple settlements are noticed together, the notice costs shall be divided by the number of settlements and charged to the escrow account of each settlement pari passu. Settlement Class Counsel shall provide copies to Northwestern's counsel of any invoices paid by Settlement Class Counsel for which money is withdrawn from the Escrow Account. In the event that no noticed settlements become effective, then any withdrawals for reasonable costs from the Escrow Account pursuant to this provision shall be non-refundable.  If at least one noticed settlement becomes effective, then all withdrawals for reasonable costs from the Escrow Account

(or escrow accounts as applicable) pursuant to this provision shall be withdrawn only from/charged only to the settlement fund(s) of the effective settlement(s). Settlement Class Counsel agree to arrange for provision of notice to the Class in accordance with Fed. R. Civ. P. 23 and any orders of the Court. Settlement Class Counsel agree to provide Northwestern reasonable advance notice of the notice plan and costs.

c)      Following the Effective Date, any attorneys' fees, costs and expenses and class plaintiff service awards awarded to Settlement Class Counsel and Plaintiffs by the Court will be paid from the Escrow Account. Northwestern will take no position on Settlement Class Counsel's application for attorneys' fees, costs, and expenses or for service awards to the Plaintiffs unless requested to do so by the Court.

d)      Notwithstanding the above, subject to and following both the Court's approval in the Final Approval Order and the posting of a non-revocable letter of credit issued by Northern Trust, Bank of America, Citibank, or Chase Bank agreed to in writing in advance by the Settling Parties in an amount equal to or greater than the amount of any funds paid under this paragraph, Settlement Class Counsel's attorneys' fees and/or reimbursement of out-of-pocket expenses of Settlement Class Counsel awarded by the Court, up to a maximum of 90% of the combined amount of the Fee and Expense Award(s) associated with any and all settlements in this Action with other Defendants approved contemporaneously with this Settlement, shall be payable from the combined Settlement Fund upon being awarded by the Court, notwithstanding the existence of any timely-filed objections thereto, or potential appeal therefrom, or collateral attack on the Settlement or any part thereof, including on the award of attorneys' fees and costs. Any payment pursuant to this Paragraph 7(e) shall be subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Northwestern Settlement Fund with interest that would have accrued to the Northwestern Settlement Fund if the early payment(s) had not been made, within five business days, if and when, as a result of any appeal or further proceedings on remand, action by or ruling of the Court, or successful collateral attack, the fee or award of costs and expenses is reduced or reversed, or in the event the Settlement does not become final or is rescinded or

otherwise fails to become effective. If Settlement Class Counsel fail to make the required repayments in accordance with the time period in this paragraph, Northwestern may call the letter of credit. If the provisions of this paragraph are followed, Northwestern shall not object to such disbursements. If the Court does not approve this provision, that disapproval will have no effect otherwise on the Settling Parties' Settlement Agreement. Nothing in this paragraph is intended to serve as a cap on, or limit to, the attorneys' fees or expenses that Settlement Class Counsel or Plaintiffs may be awarded by the Court and receive following the Effective Date.

e) Aside from the payments specified in this Paragraph 7, Northwestern shall not pay any additional amount at any time, whether for attorneys' fees or expenses, incentive awards, settlement administration costs, escrow costs, taxes due from Escrow Account, or any other cost. Northwestern shall not be liable for any monetary payments under the Settlement Agreement other than the Northwestern Payment.

**8.** **The Northwestern Settlement Fund.** At all times prior to the Effective Date, the Northwestern Settlement Fund shall be invested at the direction of Settlement Class Counsel as set forth in Paragraph 3 of the Escrow Agreement, in instruments backed by the full faith and credit of the U.S. Government or fully insured by the U.S. Government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account insured by the FDIC up to the guaranteed FDIC limit subject to the review and approval of Northwestern, such approval not to be unreasonably withheld. Northwestern shall have no responsibility for, or obligation with respect to, the investment or management of the Northwestern Settlement Fund. The Northwestern Settlement Fund may be combined in the same Escrow Account as the settlement funds from other settlements in this Action. After the Effective Date, the Northwestern Settlement Fund shall be invested pursuant to Paragraph 7 of the Escrow Agreement as directed in writing by Settlement Class Counsel. All interest earned on the Northwestern Settlement Fund shall become part of the Northwestern Settlement Fund.

**9.** **Disbursements**: After the Effective Date, the Northwestern Settlement Fund shall be distributed in accordance with the Plan of Allocation and the Court's approval of

subsequent request(s) for distribution. If any portion of the Settlement Fund remains following disbursement of Court-approved Notice Expenses, the Fee and Expense Award, and the service awards to the class representatives, and after distribution (or redistribution) to authorized claimants pursuant to the Court-approved Plan of Allocation, and is of such an amount that it is not cost effective or administratively efficient to redistribute the amount to the authorized claimants, then the Settling Parties agree to seek leave of Court to disburse such remaining funds, after payment of any further notice and administration costs and taxes and tax expenses, to one or more appropriate charitable non-profit organizations that promote access to higher education for disadvantaged students and families as agreed to by the Settling Parties and upon approval by the Court.

10. **Taxes**

a) Settlement Class Counsel shall be solely responsible for directing the Escrow Agent (as defined in the Escrow Agreement) to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Escrow Account. Further, Settlement Class Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments, including interest and penalties due, on income earned by the Escrow Account. Subject to Paragraph 7 above, Settlement Class Counsel shall be entitled to direct the Escrow Agent to pay customary and reasonable tax expenses, including professional fees and expenses incurred in connection with carrying out the Escrow Agent's or tax preparer's responsibilities as set forth in this paragraph, from the Escrow Account. Settlement Class Counsel shall notify Northwestern through its counsel regarding any payments or expenses paid from the Escrow Account. Northwestern shall have no responsibility to make any tax filings relating to this Settlement Agreement, the Escrow Account, or the Settlement Payments, and shall have no responsibility to pay taxes on any income earned by the Escrow Account.

b) For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be Settlement Class Counsel, who shall timely and properly file or cause to be filed on a timely basis

all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

c) The Settling Parties and their counsel shall treat, and shall cause the Escrow Agent to treat, the Escrow Account as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The Settling Parties, their counsel, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Account in this manner. In addition, the Escrow Agent and, as required, the Settling Parties, shall timely make such elections under § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

**11.** **Full Satisfaction; Limitation of Interest and Liability.** Plaintiffs and Class Members shall look solely to the Northwestern Payment for satisfaction of any and all Released Claims. If the Settlement becomes final pursuant to Paragraph 6 above, Northwestern's payment of the Northwestern Payment will fully satisfy any and all Released Claims, as compromised. Except as provided by order of the Court, no Class Member shall have any interest in the Northwestern Payment, Escrow Account, or any portion thereof. Recognizing that Northwestern cannot defend itself in this action in absentia after settling, the Settling Parties agree that any finding of liability against any other party would not establish that Northwestern would have been liable, or the amount of any such liability, if Plaintiffs had proceeded to trial against Northwestern on Plaintiffs' claims. It is not a violation of this Settlement Agreement for Plaintiffs to use any

evidence, including evidence that Plaintiffs believe shows Northwestern's involvement in the challenged conduct, to prove Plaintiffs' claims for liability and damages against any non-settling Defendant in this Action. Notwithstanding anything set forth above, nothing in this paragraph is intended to or shall be used to (i) exonerate any party other than Northwestern, and/or (ii) reduce the exposure of any non-settling defendant to liability, including to liability for the alleged actions of Northwestern.

**12.** **Attorneys' Fees, Expenses, and Costs.**

a)     Settlement Class Counsel shall file any motion for attorneys' fees, reimbursement of expenses and costs ("Fee and Expense Award") in accordance with the Court's preliminary approval or final approval order. Settlement Class Counsel shall receive any Fee and Expense Award relating to this Settlement solely from the Northwestern Settlement Fund. Other than as provided in Paragraph 7(e) and approved by the Court, no portion of any Fee and Expense Award shall be released from the Northwestern Settlement Fund prior to the Effective Date. Northwestern is not obligated to take, does not take, and, unless requested to do so by the Court, will not take any position with respect to the application by Settlement Class Counsel for reimbursement of attorneys' fees, expenses, and costs.

b)     The procedures for and the allowance or disallowance by the Court of Settlement Class Counsel's application for a Fee and Expense Award to be paid from the Northwestern Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceeding relating to the Fee and Expense Award, or any appeal from any such order, shall not operate to modify or cancel this Settlement Agreement, or affect or delay the finality of the judgment approving the Settlement. A modification or reversal on appeal of any amount of the Fee and Expense Award shall not be deemed a modification of the terms of this Settlement Agreement or final approval order, and shall not give rise to any right of termination.

**13.** **Release.** Upon the occurrence of the Effective Date, the Releasors hereby release and forever discharge, and covenant not to sue the Releasees only, with respect to, in connection with, or relating to any and all of the Released Claims.

**14.** **Additional Release.** In addition, each Releasor hereby expressly waives and releases, upon the Effective Date, any and all provisions, rights, and/or benefits conferred by Section 1542 of the California Civil Code, which reads:

> Section 1542. Release. A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, notwithstanding that the release in Paragraph 13 is not a general release and is of claims against Releasees only. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims that are the subject matter of Paragraph 13. Nonetheless, upon the Effective Date, each Releasor hereby expressly waives and fully, finally, and forever settles and releases any known or unknown, foreseen, or unforeseen, suspected or unsuspected, contingent or non-contingent claim that is the subject matter of Paragraph 13, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Releasor also hereby expressly waives and fully, finally, and forever settles, releases, and discharges any and all claims it may have against the Releasees under § 17200, *et seq.*, of the California Business and Professions Code or any similar comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are expressly incorporated into the definition of the Released Claims.

**15.** **Effect of Disapproval.** If the Court (i) declines to approve this Settlement Agreement; (ii) does not enter the preliminary approval order containing the elements set forth in Paragraph 3 above; (iii) does not enter the final approval order containing the elements set forth in Paragraph 5 above; or (iv) enters the final approval order and appellate review is sought, and on

such review, such final approval order is not affirmed, then Settlement Class Counsel or Northwestern may elect to terminate this Settlement Agreement by sending written notice to the other party within 10 business days of the event allowing for termination. For the avoidance of doubt, any order of the Court, the Seventh Circuit Court of Appeals, or the United States Supreme Court that is based on a determination that the Settlement is not fair, reasonable, or adequate or that: (a) materially changes or does not approve the scope of the releases and covenant not to sue contemplated by this Settlement; (b) purports to impose additional material obligations on Northwestern; or (c) declines to enter a final judgment that meets the requirements set forth in Paragraph 5 above, except as otherwise agreed in writing by Settlement Class Counsel and Northwestern, constitutes a failure to grant final approval of this Agreement and confers on Settlement Class Counsel and/or Northwestern the right to terminate the Agreement. A modification or reversal on appeal of the Plan of Allocation, Fee and Expense Award, or Plaintiffs' service awards shall not be deemed a modification of the terms of this Agreement or Final Approval Order and shall not give rise to any right of termination.

**16.  Opt-Out and Termination Rights.**

a)  Should more than 650 proposed Class Members (not including employees of any of the law firms representing Defendants in this case) opt-out of this Settlement, Northwestern has the right to terminate this Settlement, as long as Northwestern notifies Settlement Class Counsel in writing of its decision to terminate within 5 business days of having been informed that more than 650 proposed Class Members have opted out or such other time as the Settling Parties may agree, and provided that Northwestern has been given timely information regarding any opt-outs within a reasonable time after such opt-out requests coming to the attention of Settlement Class Counsel. In such instance of termination, the Settling Parties would return to their respective positions as of October 26, 2023. In the event of a termination, the Settling Parties agree to work in good faith to propose a schedule to the Court to restart the litigation between Plaintiffs and Northwestern. Northwestern agrees that its President, Provost, General Counsel, or outside counsel shall take no actions, publicly or privately, directly or indirectly, to encourage any proposed Class

Members to opt out of this Settlement, or to encourage opting out from any other settlements that Plaintiffs may enter into with other Defendants in this Action, or from any class or classes that the Court may certify in this Action.

b) Any disputes regarding the application of this Paragraph 16 may be resolved by the Court, with Plaintiffs, Northwestern, and the opt-out(s) all having the opportunity to be heard.

17. **Reimbursement of the Northwestern Settlement Fund upon Termination.** If the Settlement Agreement is terminated pursuant to the provisions of Paragraphs 15 or 16 above, the Escrow Agent shall return to Northwestern the funds in the Northwestern Settlement Fund consistent with Paragraph 7 at the time of termination. Subject to Paragraph 8 of the Escrow Agreement, the Escrow Agent shall disburse the funds left in the Northwestern Settlement Fund consistent with Paragraph 7 to Northwestern in accordance with this paragraph within 15 calendar days after receipt of either (i) written notice signed by Settlement Class Counsel and Northwestern's counsel stating that the Settlement has been terminated (such written notice will be signed by the non-terminating party within three days of receiving the written notice from the terminating party), or (ii) any order of the Court so directing. If the Settlement Agreement is terminated pursuant to Paragraphs 15 or 16, (1) any obligations pursuant to this Settlement Agreement other than (i) disbursement of the Northwestern Settlement Fund to Northwestern as set forth above and (ii) Paragraph 23, shall cease immediately and (2) the releases set forth in Paragraphs 13 and 14 above shall be null and void.

18. **Preservation of Rights.** Except as expressly provided for in the Releases in Paragraphs 13 and 14 above, this Settlement Agreement, whether the Settlement becomes final or not, and any and all negotiations, documents, and discussions associated with it, shall be without prejudice to the rights of any of the Settling Parties, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or lack thereof, of any liability or wrongdoing by Northwestern or lack thereof, or of any amount of improperly acquired funds received by Northwestern or the lack thereof, or of the truth or lack thereof of any of the claims or allegations contained in the Complaint or any other pleading, and evidence thereof shall not be

discoverable or used directly or indirectly, in any way other than to enforce the terms of this Settlement Agreement. The Settling Parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Settlement Agreement. Upon the Settlement becoming final, nothing in this Settlement Agreement shall (a) prevent Northwestern from asserting any release or citing this Settlement Agreement to offset any liability to any other parties not party to the Action, including but not limited to, claims filed by federal and state governments or any governmental entity, or (b) be construed to impair, negate, diminish, or adversely affect any rights of Northwestern or its successors or assigns to seek to recover or to recover insurance proceeds or payments from its past or current insurance carriers with respect to amounts paid pursuant to this Settlement Agreement or incurred in connection with the Action, or any other loss or liability, and Northwestern expressly reserves all rights, claims, positions, arguments, contentions, and defenses with respect to such matters.

**19.     No Admission of Liability by Northwestern; No Admission of Absence of Merit by Plaintiffs.** This Settlement Agreement shall not be deemed or construed to be an admission of Northwestern's liability in this Action or to be admissions that Plaintiffs' claims in this Action have any merit against Northwestern or otherwise, or to comprise any determination as to whether there were, or the amount of, any improperly acquired funds allegedly received by Northwestern. Northwestern denies any wrongdoing in relation to the claims brought by Plaintiffs in this Action. Northwestern's consent to the Settlement Class shall not be deemed consent to the certification of this or any other class for litigation purposes, and in the event of Termination, Northwestern may oppose the certification of any class. This Settlement Agreement shall not be deemed or construed to be an admission that Plaintiffs' Claims in this Action have or lack merit as to Northwestern or otherwise.

**20.     Discovery Disclosures to Plaintiffs.** The intent of this Paragraph is to expressly limit and define Northwestern's obligations with respect to discovery that Plaintiffs may seek from Northwestern following the Settlement.  Other than as set forth below, or as may be subsequently agreed to by the Settling Parties, Northwestern and its current or former employees shall neither

be required to respond or supplement its response to any discovery request, including deposition notices or subpoenas. In addition, Settlement Class Counsel agree that they will not attempt to contact or make any effort to communicate with any present or former Northwestern employees other than as set forth below.

a) **Data**. Through counsel, the Settling Parties will work in good faith to address reasonable questions that Settlement Class Counsel and their consultants may have about the undergraduate financial aid structured data and financial aid settings Northwestern has produced to date in the Action, to the extent such questions have not previously been addressed. Northwestern's obligations under this paragraph shall expire on February 15, 2024.

b) **Witness interviews**. After the Court enters an order granting preliminary approval of the Settlement, and in the event that Plaintiffs ask Northwestern University to do so, Northwestern University will arrange for its current Director of Financial Aid, to be interviewed by Plaintiffs' counsel (with Northwestern's counsel present) for no more than three-hours by video-conference or in-person at a place convenient to the witness. Northwestern also agrees to ask its former Director of Operations for the Office of Undergraduate Financial Aid to be interviewed by Plaintiffs' counsel (with Northwestern's counsel present) for no more than 2 hours, limited to the topic of the College Needs Analysis Roundtable (CNAR). Plaintiffs may take notes during the interviews, but the interviews will not be recorded by other means (including audio, video, or stenographically). The Settling Parties also agree that notwithstanding any provision in this Settlement Agreement, Plaintiffs may exercise any rights they have under the Federal Rules of Civil Procedure, subject to any applicable Orders of the Court in the Action, to obtain a declaration or declarations of the two aforementioned individuals of not more than 10 pages cumulatively. Northwestern also agrees to provide a declaration from a knowledgeable witness setting forth the following information, to the extent reasonably available without undue burden, for the years 2003 through 2021: (a) endowment spent rate; (b) spending rule for spending out of its endowment; (c) the extent to which Northwestern has used its endowment to fund financial aid; and (d) the percentage of restricted and unrestricted funds in the endowment.

c)     **Testimony**. Except as set forth in this paragraph, Plaintiffs will not seek to take a deposition of Northwestern, or any current or former employee of Northwestern.  In addition, Settlement Class Counsel agree that they will not attempt to contact or make any effort to communicate with any present or former Northwestern employee.  To the extent Plaintiffs depose any witness in the Action who is a former employee of Northwestern, Plaintiffs shall refrain from questioning the witness concerning their employment with Northwestern, except (a) if any other party to the Action takes a deposition of a current or former Northwestern employee witness, Northwestern University agrees that it will not object to making that witness available for deposition questioning by Plaintiffs' counsel for an equal amount of time on the same day as the other party's deposition, subject to a combined time limit as set in Fed. R. Civ. P. 30(d)(1); or (b) in the event that Plaintiffs receive a declaration (as provided for in paragraph (b)) from any of the witnesses interviewed that is found to be inadmissible for the truth of the matters asserted at a trial of the Action, the Northwestern agrees that nothing in this Settlement Agreement shall prevent Plaintiffs from seeking to cause the witness to testify at any trial in this matter.

d)     **Produced documents kept in the ordinary course of business and trial witness**. Northwestern agrees that in the event the need arises in this Action, and there is an authenticity or hearsay objection made by one or more Defendants in the Action to documents or data produced by Northwestern in this litigation, Northwestern will provide a declaration (i) pursuant to Federal Rule of Evidence 902(11) concerning the authenticity of those documents; and (ii) providing facts relevant to the application of the Business Records Exception to the Hearsay Rule (Fed. R. Evid. 803(6)) for documents or data that qualify as business records. In the event that a declaration is not sufficient to meet the requirements of Fed. R. Evid. 803(6), Northwestern will provide a records custodian witness to testify by deposition *de bene esse* or, if necessary, at trial, for the sole purpose of providing support for the authenticity of the documents or data or the application of the Business Records Exception to the Hearsay Rule for those documents or data.

e)     **Confidentiality**: All non-public data, documents, information, testimony, and/or communications provided to Plaintiffs' counsel as part of discovery in the Action or as part of

subparts (a) to (d) above, if so designated by Northwestern, shall be treated as "Confidential" or "Attorneys' Eyes Only" under the Confidentiality Order in the Action. Plaintiffs reserve the right to challenge such designations, after the fact, under the terms of the Confidentiality Order, however, Plaintiffs must provide in writing their legal basis for such a challenge and then telephonically meet and confer in good faith with counsel for Northwestern before filing any motion to challenge such designations with the Court. Plaintiffs further agree that they shall not seek to challenge the confidentiality of any Northwestern documents or testimony unless Plaintiffs intend to file such documents or testimony with the Court in support of a motion (other than a motion to challenge confidentiality designations) or introduce such documents or testimony in a hearing or trial in the Action. Notwithstanding anything to the contrary in this Settlement Agreement or the Confidentiality Order, Plaintiffs shall not object to any designations or redactions of any information, material or documents pursuant to FERPA made by Northwestern under any circumstances.

f)      **Admissibility and Privilege**: Any statements made during any fact witness interview conducted under subpart (c) above shall be deemed to be "conduct or statements made during compromise negotiations about the claims" and shall be inadmissible in evidence as provided, without limitation, under Federal Rule of Evidence 408 and state-law equivalents, and otherwise shall not be used for any purpose (including at any hearing or trial, in connection with any motion, opposition, or other filing in the Action, or in any other federal, state, or foreign action or proceeding). In the event, for whatever reason, this Settlement is rescinded, canceled, or terminated or the Settlement is not approved by the Court, such inadmissibility and other limits on use shall survive. Nothing herein shall require Northwestern to provide information protected by the attorney-client privilege, attorney work-product doctrine, joint-defense privilege or similar privileges, and Northwestern shall not waive any protections, immunities, or privileges. All provisions of the Confidentiality Order and other orders governing discovery in the Action otherwise will apply, including without limitation, provisions related to inadvertent disclosure.

21. **Temporary Stay of Litigation.** The Settling Parties agree that it appears unlikely a temporary stay of litigation will be necessary before the Court considers the stay requested as part of the motion for preliminary approval of the Settlement Agreement. In the event that either Party to this Settlement Agreement believes in good faith that it has become necessary to seek a stay of the litigation in order for that party to avoid work not contemplated by this Settlement Agreement or some other undue burden, the Settling Parties agree that they will seek a temporary stay of the litigation.

22. **Resumption of Litigation in the Event of Termination.** The Settling Parties agree that in the event that the Settlement Agreement is not approved by the Court, or if the Settlement does not become final pursuant to Paragraph 6 above, or if the Settlement Agreement is terminated pursuant to Paragraphs 15 or 16 above, Plaintiffs may resume litigation of the Action against Northwestern in a reasonable manner to be approved by the Court upon a joint application by the Settling Parties, and upon full reimbursement to Northwestern of the Northwestern Settlement Fund as provided for in Paragraph 17 above.

23. **Maintaining Confidentiality of Litigation Materials.** In the event that Plaintiffs or Settlement Class Counsel receive a subpoena or other legal process that would require disclosure of material covered by any protective order entered in the Action (the "Protective Order") or covered by Federal Rule of Evidence 408, such Plaintiff or Settlement Class Counsel shall promptly notify Northwestern and forward a copy of such subpoena or legal process so that Northwestern may seek a protective order or otherwise seek to maintain the confidentiality of material covered by the Protective Order or Rule 408; and such Plaintiff or Settlement Class Counsel shall object to the production of such material unless and until any such motion filed by Northwestern is resolved. In addition, Plaintiffs and Settlement Class Counsel shall abide by the terms of the Protective Order in this Action, including with respect to the destruction of materials and the limitations on the use of any material covered by the Protective Order to this Action, unless otherwise ordered by a court of competent jurisdiction.

24. **Insurance Coverage.** Notwithstanding paragraphs 6(a) and 17(b) of the November 22, 2022 Confidentiality Order entered in the Action ("Confidentiality Order"), Northwestern may retain and utilize Confidential Information (as defined in the Confidentiality Order) produced by Plaintiffs solely to pursue recovery of insurance proceeds or payments from its past or current insurance carriers with respect to amounts paid pursuant to this Settlement Agreement or incurred in connection with the Action. Such Confidential Information shall remain subject to the Confidentiality Order (except paragraphs 6(a) and 17(b) thereof) and, to the extent produced by Northwestern to an insurance carrier will be produced only subject to a confidentiality agreement or order providing the same degree of protection as the Confidentiality Order.

25. **Binding Effect.** This Settlement Agreement shall be binding upon, and inure to the benefit of, the Releasors and the Releasees. Without limiting the generality of the foregoing, each and every covenant and agreement herein by Settlement Class Counsel shall be binding upon Plaintiffs and all Class Members.

26. **Integrated Agreement.** This Settlement Agreement, together with the exhibits hereto and the documents referenced herein, contains the complete and integrated statement of every term in this Settlement Agreement, and supersedes all prior agreements or understandings, whether written or oral, between the Settling Parties with respect to the subject matter hereof. This Settlement Agreement shall not be modified except by a writing executed by Plaintiffs and Northwestern.

27. **Independent Settlement.** This Settlement Agreement is not conditioned on the performance or disposition of any other settlement agreement between the Class and any other Defendant.

28. **Headings.** The headings in this Settlement Agreement are intended only for the convenience of the reader and shall not affect the interpretation of this Settlement Agreement.

29. **No Party is the Drafter.** None of the Settling Parties shall be considered the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of construction that might cause any provision to be construed against the drafter hereof.

**30. Consent to Jurisdiction.** Each Class Member and Northwestern hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the Northern District of Illinois for any suit, action, proceeding or dispute among or between them arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein provided that this consent to jurisdiction shall not affect Northwestern's right or ability to assert this Settlement Agreement or the releases contained herein as a defense in an action filed in any other jurisdiction asserting Released Claims or concerning this Settlement Agreement or this Action.

**31. Choice of Law.** All terms of this Settlement Agreement shall be governed by and interpreted according to federal common law or, where state law must apply, Illinois law without regard to conflicts of law principles.

**32. Representations and Warranties.** Each party represents and warrants that it has the requisite authority to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated herein.

**33. Notice.** Where this Settlement Agreement requires either Settling Party to provide notice or any other communication or document to the other Settling Party, such notice shall be in writing and provided by email and overnight delivery to the counsel set forth in the signature block below for Settlement Class Counsel, respectively, or their designees or successors. For Northwestern, notice shall be provided by email and overnight delivery to:

Stephanie Graham
Priya Harjani
NORTHWESTERN UNIVERSITY
Office of General Counsel
633 Clark Street
Evanston, IL 60208
smg@northwestern.edu
p-harjani@northwestern.edu

Scott D. Stein
SIDLEY AUSTIN LLP

One South Dearborn Street
Chicago, IL 60603
sstein@sidley.com

**34.**     **Execution in Counterparts.** This Settlement Agreement may be executed in counterparts. A facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

**35.**     **Confidentiality.** The terms of this Settlement Agreement shall remain confidential until Plaintiffs move for preliminary approval of the Settlement, unless Northwestern and Settlement Class Counsel agree otherwise, provided that Northwestern may disclose the terms of this Settlement Agreement to accountants, lenders, auditors, legal counsel, insurers, tax advisors, or in response to a request by any governmental, judicial, or regulatory authority or otherwise required by applicable law or court order, and Plaintiffs may disclose the terms of the Settlement Agreement to any entity that has applied to serve as Notice and Claims Administrator or Escrow Agent, who shall abide by the terms of this paragraph.

IN WITNESS WHEREOF, the parties hereto through their fully authorized representatives have agreed to this Settlement Agreement as of the date first herein above written.

Dated: February 14, 2024.

NORTHWESTERN UNIVERSITY

By: _____
      Amanda J. Distel
Its:    Vice President and Chief Financial Officer

By: _Robert D. Gilbert_ (signature)
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
**GILBERT LITIGATORS &**
**COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
sschuster@gilbertlitigators.com
amarquez@gilbertlitigators.com
smagnusson@gilbertlitigators.com


By: _____
Eric L. Cramer
Caitlin G. Coslett
Ellen Noteware
Hope Brinn
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
ccoslett@bm.net


Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net


By: _____
Devin "Vel" Freedman
Edward J. Normand
**FREEDMAN NORMAND**
**FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law
rcipolla@fnf.law


Daniel J. Walker
Robert E. Litan
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net


*Counsel for Plaintiffs and the Proposed Settlement Class*

By:_____
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
**GILBERT LITIGATORS &**
**COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
sschuster@gilbertlitigators.com
amarquez@gilbertlitigators.com
smagnusson@gilbertlitigators.com

By:_____
Eric L. Cramer
Caitlin G. Coslett
Ellen Noteware
Hope Brinn
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
ccoslett@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

By: *Edward Normand*
Devin "Vel" Freedman
Edward J. Normand
**FREEDMAN NORMAND**
**FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law
rcipolla@fnf.law

Daniel J. Walker
Robert E. Litan
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs and the Proposed Settlement Class*

# EXHIBIT 4

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

---

SIA HENRY, et al., individually and on behalf of all others similarly situated,

               Plaintiffs,

v.

BROWN UNIVERSITY, et al.,

               Defendants.

Case No. 1:22-cv-125

Hon. Matthew F. Kennelly

**SETTLEMENT AGREEMENT BETWEEN DEFENDANT VANDERBILT UNIVERSITY AND THE PROPOSED CLASS OF PLAINTIFFS**

---

THIS SETTLEMENT AGREEMENT ("Settlement Agreement" or the "Settlement") is made and entered into as of February **22**, 2024, by and between (a) defendant Vanderbilt University ("Vanderbilt"); and (b) Plaintiffs,[1] individually and on behalf of the settlement class (the "Class" as defined in Paragraph 1 below, and together with Vanderbilt, the "Settling Parties"), in this Action (*Henry, et al. v. Brown University, et al.*, Case No. 1:22-cv-125 (N.D. Ill.)).

WHEREAS, Plaintiffs filed a lawsuit alleging that Defendants Brown University, California Institute of Technology, the University of Chicago, the Trustees of Columbia University in the City of New York, Cornell University, the Trustees of Dartmouth College, Duke University, Emory University, Georgetown University, Johns Hopkins University, Massachusetts Institute of Technology, Northwestern University, the University of Notre Dame Du Lac, the Trustees of the University of Pennsylvania, William Marsh Rice University, Vanderbilt University, and Yale

---

[1] Plaintiffs are Andrew Corzo, Sia Henry, Alexander Leo-Guerra, Michael Maerlender, Brandon Piyevsky, Benjamin Shumate, Brittany Tatiana Weaver, and Cameron Williams.

University (collectively, "Defendants") have engaged in various conduct that restrained competition for undergraduate financial and other aid in violation of federal antitrust laws, and that Plaintiffs and Class Members incurred damages in the form of higher net costs of attendance as a result, as detailed in Plaintiffs' Complaint, filed in this Action on January 9, 2022 (ECF No. 1) and as subsequently amended ("Complaint");

WHEREAS, Vanderbilt has asserted defenses to Plaintiffs' Claims, denies each and every one of Plaintiffs' allegations of unlawful or wrongful conduct by Vanderbilt, denies that any conduct of Vanderbilt challenged by Plaintiffs caused any damage whatsoever, and denies all liability of any kind;

WHEREAS, Vanderbilt has consented to the appointment of the law firms of Freedman Normand Friedland LLP, Gilbert Litigators & Counselors, PC, and Berger Montague PC as Settlement Class Counsel ("Settlement Class Counsel");

WHEREAS, Settlement Class Counsel and counsel for Vanderbilt have engaged in arm's-length settlement negotiations, and have reached this Settlement Agreement, subject to Court approval, which embodies all of the terms and conditions of the Settlement between Plaintiffs, both individually and on behalf of the Class, and Vanderbilt;

WHEREAS, Settlement Class Counsel have concluded, after extensive fact discovery and consultation with their consultants and experts, and after carefully considering the circumstances of this Action, including the claims asserted in the Complaint and Vanderbilt's defenses thereto, that it would be in the best interests of the Class to enter into this Settlement Agreement and assure a benefit to the Class, and further, that Settlement Class Counsel consider the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and in the best interests of the Class;

WHEREAS, despite its belief that it is not liable for the claims asserted and that it has good and valid defenses thereto, Vanderbilt has concluded that it would be in its best interests to enter into this Settlement Agreement to avoid the risks, uncertainties, burdens, and expense inherent in complex, protracted, and intrusive litigation, to obtain complete peace from the Released Claims,

2

and to protect the confidential information of current and former Vanderbilt students, applicants, and their families;

WHEREAS, Plaintiffs and Vanderbilt agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Vanderbilt, or of the validity or truth of any of the claims or allegations alleged in the Complaint;

WHEREAS, Plaintiffs and Vanderbilt agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence by Plaintiffs of the absence of any violation of any statute or law or of any absence of liability or wrongdoing by Vanderbilt, or of the validity of any of Vanderbilt's defenses, or of the lack of truth of any of the claims or allegations alleged in the Complaint; and

WHEREAS, Plaintiffs and Vanderbilt agree that Vanderbilt's consent to the certification of the Settlement Class shall not be deemed or construed as consent to, or otherwise supportive of, the certification of this or any other class for litigation purposes, and that, in the event the Settlement Agreement is terminated for any reason, Vanderbilt may oppose the certification of any class on any and all grounds.

NOW THEREFORE, it is agreed by the undersigned Settlement Class Counsel, on behalf of Plaintiffs and the Class, on the one hand, and Vanderbilt on the other, that all claims brought by Plaintiffs and the Class against Vanderbilt, for any and all injuries sustained, be fully, finally, and forever settled, compromised, discharged, and dismissed with prejudice as to Vanderbilt, without costs as to Plaintiffs, the Class, or Vanderbilt, subject to Court approval, on the following terms and conditions:

### 1. Definitions

a) "Action" means *Henry et al. v. Brown University et al.*, No. 1:22-cv-00125 (N.D. Ill.).

b)     "Claims Administrator" means the entity appointed by the Court, on motion of Settlement Class Counsel, to provide notice to the Class, process the claims submitted by Class Members, and carry out any other duties or obligations provided for by the Settlement.

c)     The "Class" means the settlement-only class, which permits potential class members to opt out, including the following persons:

      a. all U.S. citizens or permanent residents who have during the Class Period (a) enrolled in one or more of Defendants' full-time undergraduate programs, (b) received at least some need-based financial aid from one or more Defendants, and (c) whose tuition, fees, room, or board to attend one or more of Defendants' full-time undergraduate programs was not fully covered by the combination of any types of financial aid or merit aid (not including loans) in any undergraduate year.[2] The Class Period is defined as follows:

         i. For Chicago, Columbia, Cornell, Duke, Georgetown, MIT, Northwestern, Notre Dame, Penn, Rice, Vanderbilt, Yale—from Fall Term 2003 through the date the Court enters an order preliminarily approving the Settlement.

        ii. For Brown, Dartmouth, Emory—from Fall Term 2004 through the date the Court enters an order preliminarily approving the Settlement.

---

[2] For avoidance of doubt, the Class does not include those for whom the total cost of attendance, including tuition, fees, room, and board for each undergraduate academic year, was covered by any form of financial aid or merit aid (not including loans) from one or more Defendants.

iii. For CalTech—from Fall Term 2019 through the date the Court enters an order preliminarily approving the Settlement.

iv. For Johns Hopkins—from Fall Term 2021 through the date the Court enters an order preliminarily approving the Settlement.

b. Excluded from the Class are:

i. Any Officers[3] and/or Trustees of Defendants, or any current or former employees holding any of the following positions: Assistant or Associate Vice Presidents or Vice Provosts, Executive Directors, or Directors of Defendants' Financial Aid and Admissions offices, or any Deans or Vice Deans, or any employees in Defendants' in-house legal offices; and

ii. the Judge presiding over this Action, his or her law clerks, spouse, and any person within the third degree of relationship living in the Judge's household and the spouse of such a person.

d) "Class Members" means the members of the Class who do not timely and validly exclude themselves from the Settlement.

e) "Effective Date" means the date on which all of the following have occurred: (i) the Settlement is not terminated pursuant to Paragraphs 15 or 16 below; (ii) the Settlement is approved by the Court as required by Fed. R. Civ. P. 23(e); (iii) the Court enters a final approval order; and

---

[3] For the avoidance of doubt, the Columbia University "Officers" excluded from the Class are members of the Senior Administration of Columbia University, and do not include exempt employees of Columbia University who are referred to as officers.

5

(iv) the period to appeal the final approval order has expired and/or all appeals have been finally resolved.

f)    "Escrow Account" means the qualified settlement escrow account which holds the Vanderbilt Settlement Fund.

g)    "Escrow Agreement" means an agreement in the form annexed hereto as Exhibit B.

h)    "Fee and Expense Award" means award(s) by the Court to Settlement Class Counsel for reasonable attorneys' fees and reimbursement of reasonable costs and expenses incurred in the prosecution of the Action, including any interest accrued thereon.

i)    "Notice Expenses" means expenses relating to providing notice, including, *inter alia*, the cost of (a) publications, (b) printing and mailing the long-form notice, (c) the Claims Administrator's costs of maintaining and administering the notice website and toll-free phone number, and (d) the Claims Administrator's costs associated with designing and administering the notice plan.

j)    "Plaintiffs' Claims" means Plaintiffs' claims against Vanderbilt and other Defendants as stated in the Complaint.

k)    "Plan of Allocation" means the plan proposed by Settlement Class Counsel for the allocation of the Vanderbilt Settlement Funds, and any other funds received via settlement or judgment from other Defendants, to Class Members.

l)    "Releasees" means Vanderbilt and the Board of Trust of Vanderbilt, individually and collectively, and all of their present, future and former parent, subsidiary and affiliated corporations and entities, the predecessors and successors in interest of any of them, and each of the foregoing's respective present, former and future officers, directors, trustees, affiliates, employees, administrators, faculty members, students, agents, advisors, representatives, volunteers, attorneys, outside counsel, predecessors, successors, heirs, devisees, executors, conservators, and assigns.

m)     "Releasors" means all Plaintiffs and Class Members, and those Plaintiffs' and Class Members' agents, attorneys, representatives (and, as applicable, each of their past, present, and future agents, attorneys, representatives, and all persons or entities that made payments, to Vanderbilt or other Defendants on behalf of Plaintiffs and Class Members), the predecessors, successors, heirs, devisees, executors, conservators, administrators, and representatives of each of the foregoing.

n)     "Released Claims" means any and all claims, demands, actions, suits, causes of action, damages, and liabilities, of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, accrued or unaccrued, contingent or absolute, suspected or unsuspected, in law, equity, or otherwise, that Plaintiffs ever had, now have, or hereafter can, shall or may have, directly, representatively, derivatively, as assignees or in any other capacity, to the extent alleged in the Complaint or to the extent arising out of, relating to, or sharing a common nucleus of operative facts with those alleged in the Complaint that Plaintiffs have asserted or could have asserted in the Action. For avoidance of doubt, claims between Class Members and Vanderbilt arising in the ordinary course and not arising out of, relating to, or sharing a common nucleus of operative facts with the facts alleged in the Complaint will not be released.

o)     "Settlement Class Counsel" means the law firms Freedman Normand Friedland LLP, Gilbert Litigators & Counselors, PC, and Berger Montague PC.

p)     "Settling Parties" means Vanderbilt, Plaintiffs, and the Class.

q)     "Vanderbilt Payment" means fifty-five million U.S. dollars ($55 million).

r)     "Vanderbilt Settlement Fund" means the Vanderbilt Payment, plus interest accrued on the Settlement Fund.

**2.     Reasonable Steps Necessary to Help Effectuate this Settlement.** The Settling Parties agree to undertake in good faith all reasonable steps necessary to help effectuate the Settlement, including undertaking all actions contemplated by and steps necessary to carry out the terms of this Settlement and to secure the prompt, complete, and final dismissal with prejudice of all claims in this Action against Vanderbilt. The Settling Parties also agree to the following:

a)      Vanderbilt agrees not to oppose a grant of the relief requested in the Plaintiffs'
motions for preliminary or final approval of the Settlement, and agrees not to appeal any Court
ruling granting in full either of these motions.

b)      Settlement Class Counsel represent that Plaintiffs will support the Settlement and
will not object to the Settlement or opt out of the Settlement Class.

c)      Vanderbilt will serve notice of this Settlement on the appropriate federal and state
officials under the Class Action Fairness Act, 28 U.S.C. § 1715.

d)      This Settlement is reached with Settlement Class Counsel who will seek Court
approval to represent all of the Class, and is intended to be binding on all persons who are within
the definition of the Class, except any persons who timely and validly opt out.

3.      **Motion for Preliminary Approval of the Settlement.** Plaintiffs shall draft a
motion for preliminary approval of the Settlement and all necessary supporting documents, which
shall be consistent with this Settlement Agreement and which Vanderbilt shall have a right to
review and approve (which approval shall not be unreasonably withheld). Vanderbilt may suggest
revisions, which Plaintiffs agree to consider in good faith, as long as Vanderbilt provides its
suggested revisions or comments within seven (7) business days of having received any such
document or documents from Plaintiffs, or such other time as the Settling Parties may agree.
Unless the Settling Parties agree otherwise, Plaintiffs will file the motion for preliminary approval
with the Court no later than 45 days after the execution of this Settlement Agreement. Vanderbilt
understands and accepts that Plaintiffs may file for preliminary approval of this Settlement jointly
with other settlements in this Action. Nothing in this Settlement Agreement shall prevent Plaintiffs
from consummating settlements with other Defendants in this Action or from including such
settlements as part of a joint preliminary approval motion. The motion for preliminary approval
shall include a proposed form of order substantially similar to Exhibit A, including:

a)      requesting preliminary approval of the Settlement as fair, reasonable, and adequate
within the meaning of Fed. R. Civ. P. 23, and finding that dissemination of notice to the Class is
warranted;

b)      finding that the proposed plan of notice complies with Rule 23 and due process, and seeking approval of short- and long-form notices;

c)      preliminarily approving the Plan of Allocation;

d)      providing that if final approval of the Settlement is not obtained, the Settlement shall be null and void, and the Settling Parties will revert to their positions ex ante without prejudice to their claims or defenses; and

e)      setting a date for a motion for final approval, a deadline for objections and exclusions, and a date for a fairness hearing.

**4. Stay of Proceedings; Subsequent Litigation Class.** The motion for preliminary approval shall also provide for a stay of Plaintiffs' proceedings against Vanderbilt pending final approval or termination of the Settlement. Vanderbilt agrees not to oppose preliminary approval of the Settlement. Plaintiffs represent that the class definition in Paragraph 1 of this Settlement Agreement is at least as broad as that for which the Plaintiffs will seek certification in their Motion for Class Certification or any later motion(s) for certification of a settlement class (collectively, "Certification Motions") against one or more of the remaining Defendants in the Action, except that as to any subsequent motion for a settlement class in the Action, Plaintiffs may extend the end date of the Class Period to the date of preliminary approval of any subsequent settlement without violating the provisions of this Paragraph. In the event that Settlement Class Counsel seek to certify a class or classes in any Certification Motion against one or more of the remaining Defendants that include(s) any class members not included in the class definition in Paragraph 1 herein (except as to the end date of the Class Period in the context of a motion seeking certification of a settlement class), and if the Court certifies such a broader class at the request of Settlement Class Counsel, Settlement Class Counsel agree that this Settlement Agreement shall be amended to include such additional class members and that in the event an Amended Motion for Preliminary Approval of this Settlement Agreement, any amended notices to the class(es), or an Amended Motion for Final Approval of this Settlement Class are necessary, Settlement Class Counsel will file such amendments and provide such notice(s) at no expense to Vanderbilt.

**5.        Motion for Final Approval and Entry of Final Judgment.** In the event the Court enters an order preliminarily approving the Settlement, the Plaintiffs shall draft a motion for final approval of the Settlement and all necessary supporting documents, which Vanderbilt shall have a right to review and approve (which approval shall not be unreasonably withheld). Vanderbilt may suggest revisions, which Plaintiffs agree to consider in good faith, as long as Vanderbilt provides its suggested revisions or comments within seven (7) business days of having received any such document or documents from Plaintiffs, or other such time as the Settling Parties may agree. Plaintiffs will file the motion for final approval pursuant to the schedule ordered by the Court. The final approval motion shall seek entry of a final approval order, including:

a)        finding that notice given constitutes due, adequate, and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

b)        finding the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and directing consummation of the Settlement pursuant to its terms;

c)        finding that all Class Members shall be bound by the Settlement Agreement and all of its terms;

d)        finding that the Releasors shall be bound by the respective releases set forth in Paragraphs 13 and 14 of this Settlement Agreement, and shall be forever barred from asserting any claims or liabilities against Vanderbilt covered by the respective Released Claims against any of the Releasees;

e)        approving expressly the provisions in Paragraph 7(e) of the Settlement Agreement allowing payment of Settlement Class Counsel fees and expenses before the Effective Date pursuant to the terms of that Paragraph;

f)        directing that the Action be dismissed with prejudice as to Vanderbilt and without costs;

g)        determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal with prejudice as to Vanderbilt be final;

h) retaining exclusive jurisdiction over the Settlement, including the administration and consummation of the Settlement; and

i) directing that, for a period of five years, the Clerk of the Court shall maintain the record of the entities that have excluded themselves from the Class and that a certified copy of such records shall be provided to Vanderbilt.

**6. Finality of Settlement.** This Settlement Agreement shall become final upon the Effective Date.

**7. Monetary Relief; Notice Fees and Costs**

a) Vanderbilt shall transfer or cause to be transferred 50 percent of the Vanderbilt Payment ($27,500,000) to the Escrow Account within the later of: (i) 30 calendar days after entry by the Court of the preliminary approval order on the docket of the Action, or (ii) 14 calendar days after Settlement Class Counsel provide Vanderbilt counsel in writing with wiring instructions for the Escrow Account. Vanderbilt shall transfer or cause to be transferred the remaining balance of the Vanderbilt Payment to the Escrow Account within 30 calendar days after entry by the Court of the final approval order on the docket of the Action. Settlement Class Counsel are obligated to: (1) provide accurate written wiring instructions, or reasonable alternative means for Vanderbilt to effectuate the transfer of the Vanderbilt Payments (e.g., physical check or other similar payment method), and (2) make the Escrow Agent (as defined in the Escrow Agreement) available to Vanderbilt in order to facilitate the transfer of the Vanderbilt Payments. If Settlement Class counsel choose payment by wire transfer, Vanderbilt's obligation to transfer each portion of the Vanderbilt Payment shall terminate when Vanderbilt follows written wiring instructions provided by Settlement Class Counsel.

b) The payments provided for in subparagraph 7(a) above shall be held in the Escrow Account subject to the terms and conditions of the Escrow Agreement, and in accordance with the provisions of Paragraphs 8-11, 16 and 17 below.

c) Before the granting of final approval, and upon the direction of Settlement Class Counsel, all reasonable costs of providing notice to the Class and any costs of settlement fund

administration, including taxes, will be paid out of the Escrow Account on a non-recoupable basis other than as set forth below. Settlement Class Counsel shall attempt to defray the costs of notice by combining the administration of multiple settlements, if such settlements occur and if permitted by the Court to do so. If multiple settlements are noticed together, the notice costs shall be divided by the number of settlements and charged to the escrow account of each settlement pari passu. Settlement Class Counsel shall provide copies to Vanderbilt's counsel of any invoices paid by Settlement Class Counsel for which money is withdrawn from the Escrow Account. In the event that no noticed settlements become effective, then any withdrawals for reasonable costs from the Escrow Account pursuant to this provision shall be non-refundable. If at least one noticed settlement becomes effective, then all withdrawals for reasonable costs from the Escrow Account pursuant to this provision shall be withdrawn only from/charged only to the settlement fund(s) of the effective settlement(s). Settlement Class Counsel agree to arrange for provision of notice to the Class in accordance with Fed. R. Civ. P. 23 and any orders of the Court. Settlement Class Counsel agree to provide Vanderbilt reasonable advance notice of the notice plan and costs.

d) Following the Effective Date, any attorneys' fees, costs and expenses and Class representative service awards awarded to Settlement Class Counsel and Plaintiffs by the Court will be paid from the Escrow Account. Vanderbilt will take no position on Settlement Class Counsel's application for attorneys' fees, costs, and expenses or for Class representative service awards to the Plaintiffs unless requested to do so by the Court.

e) Notwithstanding the above, subject to and following both the Court's approval in the final approval order and the posting of a non-revocable letter of credit issued by Northern Trust, Bank of America, Citibank, or Chase Bank agreed to in writing in advance by the Settling Parties in an amount equal to or greater than the amount of any funds paid under this Paragraph, Settlement Class Counsel's attorneys' fees and/or reimbursement of out-of-pocket expenses of Settlement Class Counsel awarded by the Court, up to a maximum of 90% of the combined amount of the Fee and Expense Award(s) associated with any and all settlements in this Action with other Defendants approved contemporaneously with this Settlement, shall be payable from the combined

12

Settlement Fund upon being awarded by the Court, notwithstanding the existence of any timely-filed objections thereto, or potential appeal therefrom, or collateral attack on the Settlement or any part thereof, including on the award of attorneys' fees and costs. Any payment pursuant to this Paragraph 7(e) shall be subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Vanderbilt Settlement Fund with interest that would have accrued to the Vanderbilt Settlement Fund if the early payment(s) had not been made, within five business days, if and when, as a result of any appeal or further proceedings on remand, action by or ruling of the Court, or successful collateral attack, the fee or award of costs and expenses is reduced or reversed, or in the event the Settlement does not become final or is rescinded or otherwise fails to become effective. If Settlement Class Counsel fail to make the required repayments in accordance with the time period in this Paragraph, Vanderbilt may call the letter of credit. If the provisions of this Paragraph are followed, Vanderbilt shall not object to such disbursements. If the Court does not approve this provision, that disapproval will have no effect otherwise on the Settling Parties' Settlement Agreement. Nothing in this Paragraph is intended to serve as a cap on, or limit to, the attorneys' fees or expenses that Settlement Class Counsel or Plaintiffs may be awarded by the Court and receive following the Effective Date.

f)        Aside from the payments specified in subparagraph 7(a), above, Vanderbilt shall not pay any additional amount at any time, whether for attorneys' fees or expenses, incentive awards, settlement administration costs, escrow costs, taxes due from the Escrow Account, or any other cost. Vanderbilt shall not be liable for any monetary payments under the Settlement Agreement other than the Vanderbilt Payment.

**8.        The Vanderbilt Settlement Fund.** At all times prior to the Effective Date, the Vanderbilt Settlement Fund shall be invested at the direction of Settlement Class Counsel as set forth in Paragraph 3 of the Escrow Agreement, in instruments backed by the full faith and credit of the U.S. Government or fully insured by the U.S. Government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account insured by the FDIC up to the guaranteed FDIC limit. Vanderbilt shall have no responsibility for, or obligation with respect to, the

investment or management of the Vanderbilt Settlement Fund. The Vanderbilt Settlement Fund may be combined in the same Escrow Account as the settlement funds from other settlements in this Action. After the Effective Date, the Vanderbilt Settlement Fund shall be invested pursuant to Paragraph 7 of the Escrow Agreement as directed in writing by Settlement Class Counsel. All interest earned on the Vanderbilt Settlement Fund shall become part of the Vanderbilt Settlement Fund.

9. **Disbursements**: After the Effective Date, the Vanderbilt Settlement Fund shall be distributed in accordance with the Plan of Allocation and the Court's approval of subsequent request(s) for distribution. If any portion of the Settlement Fund remains following disbursement of Court-approved Notice Expenses, the Fee and Expense Award, and the service awards to the Class representatives, and after distribution (or redistribution) to authorized claimants pursuant to the Court-approved Plan of Allocation, and is of such an amount that it is not cost effective or administratively efficient to redistribute the amount to the authorized claimants, then the Settling Parties agree to seek leave of Court to disburse such remaining funds, after payment of any further notice and administration costs and taxes and tax expenses, to one or more appropriate charitable non-profit organizations that promote access to higher education for disadvantaged students and families as agreed to by the Settling Parties and approved by the Court. No funds shall be distributed to any cy pres recipient absent express prior Court approval.

10. **Taxes**

a) Settlement Class Counsel shall be solely responsible for directing the Escrow Agent to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Escrow Account. Further, Settlement Class Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments, including interest and penalties due, on income earned by the Escrow Account. Subject to Paragraph 7 above, Settlement Class Counsel shall be entitled to direct the Escrow Agent to pay customary and reasonable tax expenses, including professional fees and expenses incurred in connection with carrying out the Escrow Agent's or tax preparer's responsibilities as set forth in this Paragraph, from the Escrow

Account. Settlement Class Counsel shall notify Vanderbilt through its counsel regarding any payments or expenses paid from the Escrow Account. Vanderbilt shall have no responsibility to make any tax filings relating to this Settlement Agreement, the Escrow Account, or the Settlement Payments, and shall have no responsibility to pay taxes on any income earned by the Escrow Account.

b)    For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be Settlement Class Counsel, who shall timely and properly file or cause to be filed on a timely basis all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

c)    The Settling Parties and their counsel shall treat, and shall cause the Escrow Agent to treat, the Escrow Account as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The Settling Parties, their counsel, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Account in this manner. In addition, the Escrow Agent and, as required, the Settling Parties, shall timely make such elections under § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

**11.    Full Satisfaction; Limitation of Interest and Liability.** Plaintiffs and Class Members shall look solely to the Vanderbilt Settlement Fund for satisfaction of any and all

Released Claims. If the Settlement becomes final pursuant to Paragraph 6 above, Vanderbilt's payment of the Vanderbilt Payment will fully satisfy any and all Released Claims, as compromised. Except as provided by order of the Court, no Class Member shall have any interest in the Vanderbilt Payment, Escrow Account, or any portion thereof. Recognizing that Vanderbilt cannot defend itself in this Action in absentia after settling, the Settling Parties agree that any finding of liability against any other party would not establish that Vanderbilt would have been liable, or the amount of any such liability, if Plaintiffs had proceeded to trial against Vanderbilt on Plaintiffs' Claims. It is not a violation of this Settlement Agreement for Plaintiffs to use any evidence, including evidence that Plaintiffs believe shows Vanderbilt's involvement in the challenged conduct, to prove Plaintiffs' Claims for liability and damages against any non-settling Defendant in this Action. Notwithstanding anything set forth above, nothing in this Paragraph is intended to, or shall be used to (i) exonerate any party other than Vanderbilt, and/or (ii) reduce the exposure of any non-settling-defendant to liability, including to liability for the alleged actions of Vanderbilt.

12. **Attorneys' Fees, Expenses, and Costs.**

a) Settlement Class Counsel shall file any motion for a Fee and Expense Award in accordance with the Court's preliminary approval or final approval order. Settlement Class Counsel shall receive any Fee and Expense Award relating to this Settlement solely from the Vanderbilt Settlement Fund. Other than as provided in Paragraph 7(e) and approved by the Court, no portion of any Fee and Expense Award shall be released from the Vanderbilt Settlement Fund prior to the Effective Date. Vanderbilt is not obligated to take, does not take, and, unless requested to do so by the Court, will not take any position with respect to the application by Settlement Class Counsel for reimbursement of attorneys' fees, expenses, and costs.

b) The procedures for and the allowance or disallowance by the Court of Settlement Class Counsel's application for a Fee and Expense Award to be paid from the Vanderbilt Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or

16

proceeding relating to the Fee and Expense Award, or any appeal from any such order, shall not operate to modify or cancel this Settlement Agreement, or affect or delay the finality of the judgment approving the Settlement. A modification or reversal on appeal of any amount of the Fee and Expense Award shall not be deemed a modification of the terms of this Settlement Agreement or final approval order, and shall not give rise to any right of termination.

    **13.**     **Release.** Upon the occurrence of the Effective Date, the Releasors hereby release and forever discharge, and covenant not to sue the Releasees only, with respect to, in connection with, or relating to any and all of the Released Claims.

    **14.**     **Additional Release.** In addition, each Releasor hereby expressly waives and releases, upon the Effective Date, any and all provisions, rights, and/or benefits conferred by Section 1542 of the California Civil Code, which reads:

> Section 1542. Release. A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, notwithstanding that the release in Paragraph 13 is not a general release and is of claims against Releasees only. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims that are the subject matter of Paragraph 13. Nonetheless, upon the Effective Date, each Releasor hereby expressly waives and fully, finally, and forever settles and releases any known or unknown, foreseen, or unforeseen, suspected or unsuspected, contingent or non-contingent claim that is the subject matter of Paragraph 13, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Releasor also hereby expressly waives and fully, finally, and forever settles, releases, and discharges any and all claims it may have against the Releasees under § 17200, *et seq.*, of the California Business and Professions Code or any similar comparable

or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are expressly incorporated into the definition of the Released Claims.

**15.** **Effect of Disapproval.** If the Court (i) declines to approve this Settlement Agreement; (ii) does not enter the preliminary approval order containing the elements set forth in Paragraph 3 above; (iii) does not enter the final approval order containing the elements set forth in Paragraph 5 above; or (iv) enters the final approval order and appellate review is sought, and on such review, such final approval order is not affirmed, then Settlement Class Counsel or Vanderbilt may elect to terminate this Settlement Agreement by sending written notice to the other party within 10 business days of the event allowing for termination. For the avoidance of doubt and without limiting the foregoing, any order of the Court, the Seventh Circuit Court of Appeals, or the United States Supreme Court that is based on a determination that the Settlement is not fair, reasonable, or adequate or that: (a) materially changes or does not approve the scope of the releases and covenant not to sue contemplated by this Settlement; (b) purports to impose additional material obligations on Vanderbilt; or (c) declines to enter a final judgment that meets the requirements set forth in Paragraph 5 above, except as otherwise agreed in writing by Settlement Class Counsel and Vanderbilt, constitutes a failure to grant final approval of this Agreement and confers on Settlement Class Counsel and/or Vanderbilt the right to terminate the Agreement. A modification or reversal on appeal of the Plan of Allocation, Fee and Expense Award, or Plaintiffs' service awards shall not be deemed a modification of the terms of this Agreement or final approval order and shall not give rise to any right of termination, so long as such modification or reversal does not impose additional material obligations on Vanderbilt.

**16.** **Opt-Out and Termination Rights.**

a)     Should more than 650 proposed Class Members (not including employees of any of the law firms representing Defendants in this case) opt-out of this Settlement, Vanderbilt has the right to terminate this Settlement, as long as Vanderbilt notifies Settlement Class Counsel in writing of its decision to terminate within 12 days of having been informed that more than 650 proposed Class Members have opted out or such other time as the Settling Parties may agree, and

provided that Vanderbilt has been given timely information regarding any opt-outs within a reasonable time after such opt-out requests come to the attention of Settlement Class Counsel. In such instance of termination, the Settling Parties would return to their respective positions as of November 3, 2023. In the event of a termination, the Settling Parties agree to work in good faith to propose a schedule to the Court to restart the litigation between Plaintiffs and Vanderbilt. Vanderbilt agrees that its President, Provost, General Counsel, or outside counsel shall take no actions, publicly or privately, directly or indirectly, to encourage any proposed Class Members to opt out of this Settlement, or to encourage opting out from any other settlements that Plaintiffs may enter into with other Defendants in this Action, or from any class or classes that the Court may certify in this Action.

b)      Any disputes regarding the application of this Paragraph 16 may be resolved by the Court, with Plaintiffs, Vanderbilt, and the opt-out(s) all having the opportunity to be heard.

**17.      Reimbursement of the Vanderbilt Settlement Fund upon Termination.** If the Settlement Agreement is terminated pursuant to the provisions of Paragraphs 15 or 16 above, the Escrow Agent shall return to Vanderbilt the full amount of funds remaining in the Vanderbilt Settlement Fund consistent with Paragraph 7 at the time of termination. Subject to Paragraph 8 of the Escrow Agreement, the Escrow Agent shall disburse the funds left in the Vanderbilt Settlement Fund consistent with Paragraph 7 to Vanderbilt in accordance with this Paragraph within 15 calendar days after receipt of either (i) written notice signed by Settlement Class Counsel Vanderbilt's counsel stating that the Settlement has been terminated (such written notice will be signed by the non-terminating party within three days of receiving the written notice from the terminating party), or (ii) any order of the Court so directing. If the Settlement Agreement is terminated pursuant to Paragraphs 15 or 16, (1) any obligations pursuant to this Settlement Agreement other than (i) disbursement of the Vanderbilt Settlement Fund to Vanderbilt as set forth above and (ii) Paragraph 23, shall cease immediately and (2) the releases set forth in Paragraphs 13 and 14 above shall be null and void.

**18.** **Preservation of Rights.** Except as expressly provided for in the Releases in Paragraphs 13 and 14 above, this Settlement Agreement, whether the Settlement becomes final or not, and any and all negotiations, documents, and discussions associated with it, shall be without prejudice to the rights of any of the Settling Parties, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or lack thereof, of any liability or wrongdoing by Vanderbilt or lack thereof, or of any amount of improperly acquired funds received by Vanderbilt or the lack thereof, or of the truth or lack thereof of any of the claims or allegations contained in the Complaint or any other pleading, and evidence thereof shall not be discoverable or used directly or indirectly, in any way other than to enforce the terms of this Settlement Agreement. The Settling Parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Settlement Agreement. Upon the Settlement becoming final, nothing in this Settlement Agreement shall (a) prevent Vanderbilt from asserting any release or citing this Settlement Agreement to offset any liability to any other parties not party to the Action, including but not limited to, claims filed by federal and state governments or any governmental entity, or (b) be construed to impair, negate, diminish, or adversely affect any rights of Vanderbilt or its successors or assigns to seek to recover or to recover insurance proceeds or payments from its past or current insurance carriers with respect to amounts paid pursuant to this Settlement Agreement or incurred in connection with the Action, or any other loss or liability, and Vanderbilt expressly reserves all rights, claims, positions, arguments, contentions, and defenses with respect to such matters.

**19.** **No Admission of Liability by Vanderbilt; No Admission of Absence of Merit by Plaintiffs.** This Settlement Agreement shall not be deemed or construed to be an admission of Vanderbilt's liability in this Action or to be admissions that Plaintiffs' Claims in this Action have any merit against Vanderbilt or otherwise, or to comprise any determination as to whether there were, or the amount of, any improperly acquired funds allegedly received by Vanderbilt. Vanderbilt denies any wrongdoing in relation to, or damage resulting from, the claims brought by Plaintiffs in this Action. Vanderbilt's consent to the Settlement Class shall not be deemed consent

to the certification of this or any other class for litigation purposes, and in the event of termination, Vanderbilt may oppose the certification of any class. This Settlement Agreement shall not be deemed or construed to be an admission that Plaintiffs' Claims in this Action have or lack merit as to Vanderbilt or otherwise.

20. **Discovery Disclosures to Plaintiffs.** The intent of this Paragraph is to expressly limit and define Vanderbilt's obligations with respect to discovery that Plaintiffs may seek from Vanderbilt following the Settlement. Other than as set forth below, or as may subsequently be agreed to by the Settling Parties, Vanderbilt and its current or former employees, its current or former students, applicants, and their family members (other than the three Plaintiffs who attended Vanderbilt – Michael Maerlender, Brittany Tatiana Weaver, and Cameron Williams), its current or former donors, and current or former members of the Vanderbilt Board of Trust shall not be required to respond or supplement any response to any discovery request, including deposition notices, deposition subpoenas, document subpoenas, or trial subpoenas. In addition, Settlement Class Counsel agree that they will not attempt to contact or make any effort to communicate with any current or former Vanderbilt employees, Vanderbilt's current or former students, applicants, and their family members (other than Michael Maerlender, Brittany Tatiana Weaver, and Cameron Williams), Vanderbilt's current or former donors, and current or former members of the Vanderbilt Board of Trust, other than as set forth below. For the avoidance of doubt, none of the discovery, interviews, questions, or cooperation with Plaintiffs will cover excluded topics, such as whether Vanderbilt's admissions decisions were "need blind," including whether Vanderbilt considered financial circumstances in admissions.

a) **Data**. Vanderbilt, through counsel, will work in good faith to answer reasonable questions that Settlement Class Counsel and their consultants have about the undergraduate financial aid structured data Vanderbilt has produced to date in the Action, including without limitation, the software settings and formulae Vanderbilt has used during the Class Period to compute awards of financial aid to students (including, without limitation, for the purpose of

computing student expected family contributions), to the extent such questions have not previously been answered. Vanderbilt's obligations under this Paragraph shall expire on March 4, 2024.

b) **Documents**. Vanderbilt will substantially complete, no later than January 31, 2024, all document productions from existing custodians and non-custodial sources related to Vanderbilt's undergraduate financial aid practices and its participation in the 568 Group in response to all of Plaintiffs' Requests for Production of Documents served to date as well as any supplemental requests for production made by the Plaintiffs during the deposition of any Vanderbilt witness, and subject to any existing agreements between the Settling Parties. Vanderbilt will also respond in good faith to any reasonable inquiries by Plaintiffs, by no later than February 29, 2024, regarding Vanderbilt's January 5, 2024, response to the supplemental requests for production made by Plaintiffs during the depositions of Brent Tener, John Gaines, and Doug Christiansen, provided that such further inquiries are made no later than February 14, 2024.

c) **Witness Interviews**. On November 30, 2023, Vanderbilt arranged for Doug Christiansen to meet with Plaintiffs for up to 3 hours. Vanderbilt will arrange for Brent Tener to meet with Plaintiffs' counsel by video-conference or in-person at a place convenient to the witness for up to 2.5 hours. The interview of Mr. Tener will be limited to discussing Vanderbilt's (i) undergraduate financial aid processes (including but not limited to the funding thereof, as well as the software settings and formulae Vanderbilt has used during the Class Period to compute awards of financial aid to students (including, without limitation, for the purpose of computing student expected family contributions)) and (ii) participation in or knowledge about the policies and practices of the 568 Group, to the extent not already covered in the deposition of Mr. Tener. For the avoidance of doubt, no interview or question will cover matters relating to whether Vanderbilt's admissions decisions were "need blind," including whether Vanderbilt considered financial circumstances in admissions.

d) **Depositions**. On December 1, 2023, Plaintiffs took the deposition of Doug Christiansen for up to 3.5 hours. Plaintiffs will not notice, subpoena, or take the deposition of any current or former Vanderbilt employee, any current or former Vanderbilt student, applicant, or

family member of a Vanderbilt student or applicant (other than the three Plaintiffs who attended Vanderbilt, Michael Maerlender, Brittany Tatiana Weaver, and Cameron Williams), any current or former Vanderbilt donor, or any current or former member of the Vanderbilt Board of Trust, unless otherwise agreed by Vanderbilt. Notwithstanding the above, if any other party to the Action takes a deposition of a Vanderbilt-related witness, Vanderbilt agrees that it will not object to making that witness available for deposition questioning, during the same deposition noticed by another party to the Action, by Plaintiffs' counsel for an equal amount of time, subject to a combined time limit as set forth in Fed. R. Civ. P. 30(d)(1). Plaintiffs represent that, as of the date of this Agreement, they are not aware of any other party that intends to take such depositions.

e) **Written Responses**. Vanderbilt will provide written responses not exceeding ten (10) pages to questions from Plaintiffs that Doug Christiansen and Brent Tener were unable to answer concerning Vanderbilt's (i) undergraduate financial aid processes (including but not limited to the funding thereof) and (ii) participation in or knowledge about the policies and practices of the 568 Group. For the avoidance of doubt, no deposition or question will cover matters relating to whether Vanderbilt's admissions decisions were "need blind," including whether Vanderbilt considered financial circumstances in admissions. The foregoing obligations of this Paragraph shall terminate as of April 30, 2024.

f) **Produced documents kept in the ordinary course of business and trial witness**. Vanderbilt agrees that in the event the need arises in this Action, and there is an authenticity or hearsay objection made by one or more Defendants in the Action to documents or data produced by Vanderbilt in this litigation, Vanderbilt will provide a declaration (i) pursuant to Federal Rule of Evidence 902(11) concerning the authenticity or admissibility of those documents; and (ii) providing facts relevant to the application of the Business Records Exception to the Hearsay Rule (Fed. R. Evid. 803(6)) for documents or data that qualify as business records. In the event that a declaration is not sufficient to meet the requirements of Fed. R. Evid. 803(6), Vanderbilt will provide a records custodian witness to testify by deposition *de bene esse* or, if necessary, at trial,

for the sole purpose of providing support for the authenticity of the documents or data or the application of the Business Records Exception to the Hearsay Rule for those documents or data.

g) **Confidentiality**: All non-public data, documents, information, testimony, and/or communications provided to Plaintiffs' counsel as part of discovery in the Action or as part of subparts (a) to (e) above, if so designated by Vanderbilt, shall be treated as "Confidential" or "Attorneys' Eyes Only" under the Confidentiality Order in the Action (Dkt. No. 608) ("Confidentiality Order"). Plaintiffs reserve the right to challenge such designations, after the fact, under the terms of the Confidentiality Order; however, Plaintiffs must provide in writing their legal basis for such a challenge and then telephonically meet and confer in good faith with counsel for Vanderbilt before filing any motion to challenge such designations with the Court. Plaintiffs further agree that they shall not seek to challenge the confidentiality of any Vanderbilt documents or testimony unless Plaintiffs intend to file such documents or testimony with the Court in support of a motion (other than a motion to challenge confidentiality designations) or introduce such documents or testimony in a hearing or trial in the Action. Notwithstanding anything to the contrary in this Settlement Agreement or the Confidentiality Order, Plaintiffs shall not object to any Vanderbilt designation or redaction of Application Materials, Donation Records, Education Records, and Financial Aid Materials (including designations pursuant to FERPA), as defined in the Confidentiality Order, under any circumstances.

h) **Admissibility and Privilege**: Any statements made during any fact witness interviews conducted under subpart (c) above, shall be deemed to be "conduct or statements made during compromise negotiations about the claims" and shall be inadmissible in evidence as provided, without limitation, under Federal Rule of Evidence 408 and state-law equivalents, and otherwise shall not be used for any other purpose (including at any hearing or trial, in connection with any motion, opposition, or other filing in the Action, or in any other federal, state, or foreign action or proceeding). In the event, for whatever reason, this Settlement is rescinded, canceled, or terminated or the Settlement is not approved by the Court, such inadmissibility and other limits on use shall survive. Further, nothing herein shall require Vanderbilt to provide information protected

by the attorney-client privilege, attorney work-product doctrine, joint-defense privilege or similar privileges, and Vanderbilt shall not waive any protections, immunities, or privileges. All provisions of the Confidentiality Order and other orders governing discovery in the Action otherwise will apply, including without limitation, provisions related to inadvertent disclosure.

21.     **Temporary Stay of Litigation.** The Settling Parties agree that it appears unlikely a temporary stay of litigation will be necessary before the Court considers the stay requested as part of the motion for preliminary approval of the Settlement Agreement. In the event that either Settling Party to this Settlement Agreement believes in good faith that it has become necessary to seek a stay of the litigation in order for that party to avoid work not contemplated by this Settlement Agreement or some other undue burden, the Settling Parties agree that they will seek a temporary stay of the litigation.

22.     **Resumption of Litigation in the Event of Termination.** The Settling Parties agree that in the event that the Settlement Agreement is not approved by the Court, or if the Settlement does not become final pursuant to Paragraph 6 above, or if the Settlement Agreement is terminated pursuant to Paragraphs 15 or 16 above, Plaintiffs may resume litigation of the Action against Vanderbilt in a reasonable manner to be approved by the Court upon a joint application by the Settling Parties, and if and only if Plaintiffs have fully reimbursed to Vanderbilt the Vanderbilt Settlement Fund as provided for in Paragraph 17 above. If Plaintiffs resume the litigation, the Settling Parties will have the same respective rights and defenses as if they had not entered in the Settlement Agreement.

23.     **Maintaining Confidentiality of Litigation Materials.** In the event that Plaintiffs or Settlement Class Counsel receive a subpoena or other legal process that would require disclosure of material covered by any protective order entered in the Action (the "Protective Order") or covered by Federal Rule of Evidence 408, such Plaintiff or Settlement Class Counsel shall, within three (3) business days of receipt of such subpoena or legal process, notify Vanderbilt and forward to Vanderbilt a copy of such subpoena or legal process so that Vanderbilt may seek a protective order or otherwise seek to maintain the confidentiality of material covered by the

Confidentiality Order or Rule 408; and such Plaintiff(s) or Settlement Class Counsel shall object to and refrain from the production of such material unless and until any such motion filed by Vanderbilt is resolved or unless Plaintiffs or Settlement Class Counsel are otherwise ordered to do so by a court of competent jurisdiction. In addition, Plaintiffs and Settlement Class Counsel shall abide by the terms of the Confidentiality Order in this Action, including with respect to the destruction of materials and the limitations on the use of any material covered by the Protective Order to this Action, unless otherwise ordered by a court of competent jurisdiction.

    **24.**    **Insurance Coverage.** Notwithstanding Paragraphs 6(a) and 17(b) of the February 3, 2024, Confidentiality Order entered in the Action, Vanderbilt may retain and utilize Confidential Information (as defined in the Confidentiality Order) produced by Plaintiffs solely to pursue recovery of insurance proceeds or payments from its past or current insurance carriers with respect to amounts paid pursuant to this Settlement Agreement or incurred in connection with the Action. Such Confidential Information shall remain subject to the Confidentiality Order (except Paragraphs 6(a) and 17(b) thereof) and, to the extent produced by Vanderbilt to an insurance carrier will be produced only subject to a confidentiality agreement or order providing the same degree of protection as the Confidentiality Order.

    **25.**    **Binding Effect.** This Settlement Agreement shall be binding upon, and inure to the benefit of, the Releasors and the Releasees. Without limiting the generality of the foregoing, each and every covenant and agreement herein by Settlement Class Counsel shall be binding upon Plaintiffs and all Class Members.

    **26.**    **Integrated Agreement.** This Settlement Agreement, together with the exhibits hereto and the documents referenced herein, contains the complete and integrated statement of every term in this Settlement Agreement, and supersedes all prior agreements or understandings, whether written or oral, between the Settling Parties with respect to the subject matter hereof. This Settlement Agreement shall not be modified except by a writing executed by Plaintiffs and Vanderbilt.

**27.** **Independent Settlement.** This Settlement Agreement is not conditioned on the performance or disposition of any other settlement agreement between the Class and any other Defendant.

**28.** **Headings.** The headings in this Settlement Agreement are intended only for the convenience of the reader and shall not affect the interpretation of this Settlement Agreement.

**29.** **No Party is the Drafter.** None of the Settling Parties shall be considered the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of construction that might cause any provision to be construed against the drafter hereof.

**30.** **Consent to Jurisdiction.** Each Class Member and Vanderbilt hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the Northern District of Illinois for any suit, action, proceeding or dispute among or between them arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein provided that this consent to jurisdiction shall not affect Vanderbilt's right or ability to assert this Settlement Agreement or the releases contained herein as a defense in an action filed in any other jurisdiction asserting Released Claims or concerning this Settlement Agreement or this Action.

**31.** **Choice of Law.** All terms of this Settlement Agreement shall be governed by and interpreted according to federal common law or, where state law must apply, Illinois law without regard to conflicts of law principles.

**32.** **Representations and Warranties.** Each party represents and warrants that it has the requisite authority to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated herein.

**33.** **Notice.** Where this Settlement Agreement requires either Settling Party to provide notice or any other communication or document to the other Settling Party, such notice shall be in writing and provided by email and overnight delivery to the counsel set forth in the signature block below for Settlement Class Counsel, respectively, or their designees or successors. For Vanderbilt, notice shall be provided by email and overnight delivery to:

27

Michelle Tellock
Deputy General Counsel
Vanderbilt University
2100 West End Avenue
Nashville, TN 37203
michelle.tellock@vanderbilt.edu

J. Mark Gidley
White & Case LLP
701 Thirteenth Street NW
Washington, D.C. 20005-3807
mgidley@whitecase.com

**34.** **Execution in Counterparts.** This Settlement Agreement may be executed in counterparts. A facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

**35.** **Confidentiality.** The terms of this Settlement Agreement shall remain confidential until Plaintiffs move for preliminary approval of the Settlement, unless Vanderbilt and Settlement Class Counsel agree otherwise, provided that Vanderbilt may disclose the terms of this Settlement Agreement to accountants, lenders, auditors, legal counsel, insurers, tax advisors, or in response to a request by any governmental, judicial, or regulatory authority or otherwise required by applicable law or court order, and Plaintiffs may disclose the terms of the Settlement Agreement to any entity that has applied to serve as Notice and Claims Administrator or Escrow Agent, who shall abide by the terms of this Paragraph.

IN WITNESS WHEREOF, the parties hereto through their fully authorized representatives have agreed to this Settlement Agreement as of the date first herein above written.

Dated: February **22**, 2024.

VANDERBILT UNIVERSITY

By: _____
Ruby Z. Shellaway

Its:  Vice Chancellor, General Counsel, and University Secretary

By: _(signature)_
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
**GILBERT LITIGATORS &**
**COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
sschuster@gilbertlitigators.com
amarquez@gilbertlitigators.com
smagnusson@gilbertlitigators.com

By: _(signature)_
Eric L. Cramer
Caitlin G. Coslett
Ellen Noteware
Hope Brinn
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
ccoslett@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

By:_____
Devin "Vel" Freedman
Edward J. Normand
**FREEDMAN NORMAND**
**FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law
rcipolla@fnf.law

Daniel J. Walker
Robert E. Litan
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs and the Proposed Settlement Class*

By:_____
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
**GILBERT LITIGATORS &**
**COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
sschuster@gilbertlitigators.com
amarquez@gilbertlitigators.com
smagnusson@gilbertlitigators.com

By:_____
Eric L. Cramer
Caitlin G. Coslett
Ellen Noteware
Hope Brinn
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
ccoslett@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

By: *Edward Normand*
Devin "Vel" Freedman
Edward J. Normand
**FREEDMAN NORMAND**
**FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law
rcipolla@fnf.law

Daniel J. Walker
Robert E. Litan
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs and the Proposed Settlement Class*

## Exhibit 5

### Fees of Custodian/Escrow Agent

**Acceptance Fee:**                                                        **Waived**

The Acceptance Fee includes the review of the Third Tranche 568
Settlement Fund Custodian/Escrow Agreement, acceptance of the
role as the Third Tranche 568 Settlement Fund Custodian/Escrow
Agent, establishment of the Third Tranche 568 Custodian/Escrow
Account(s), and receipt of funds.


**Annual Administration Fee:**                                            **Waived**

The Annual Administration Fee includes the performance of
administrative duties associated with the Third Tranche 568
Settlement Fund Custodian/Escrow Account including daily
account management, generation of account statements to
appropriate parties, and disbursement of funds in accordance with
the Third Tranche 568 Custodian/Escrow Agreement.
Administration Fees are payable annually in advance without
proration for partial years.


**Out of Pocket Expenses:**                                               **Waived**

Out of pocket expenses include postage, courier, overnight mail,
wire transfer, and travel fees.