UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, <br><br> Defendants. | Case No. 1:22-cv-00125 <br><br> Hon. Matthew F. Kennelly |

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO CHALLENGE CERTAIN IMPROPER CONFIDENTIAL AND ATTORNEYS' EYES ONLY DESIGNATIONS BY DEFENDANTS CORNELL AND GEORGETOWN UNDER THE SECOND AMENDED CONFIDENTIALITY ORDER (ECF 608)**

Plaintiffs respectfully submit this Reply Memorandum in Further Support of their Motion to Challenge Defendants' Designation of Certain Documents and Deposition Testimony ("Challenged Material") as Confidential or Attorneys' Eyes Only ("AEO") under the Second Amended Confidentiality Order, ECF 608 ("Confidentiality Order" or "SACO").

## INTRODUCTION

Georgetown's and Cornell's continued refusal to de-designate the documents and deposition testimony at issue is rooted in their entire misguided approach to the issue of wealth favoritism since the Court's Opinion and Order denying Defendants' motions to dismiss.[1] In the face of contemporaneous documents and relevant testimony, these Defendants have unreasonably continued to refuse to concede that they consider the financial circumstances of applicants and their families, with respect to their wealth, donation history, or donation capacity.

Defendants have consistently sought to reject their wealth favoritism as a relevant topic for full discovery. In January 2023, on behalf of all Defendants, Georgetown counsel falsely told the Court that there was no need for discovery of Defendants' President's or Development Offices because all the relevant documents could be found in the Admissions Offices; and any assertion to the contrary was "speculative" or "hypothetical." ECF 274 at 24-26. Georgetown and Cornell then compounded that misrepresentation by waiting until late June 2023 to produce transcripts of the depositions taken by the Department of Justice ("DOJ") of their respective Dean and Executive Director of Undergraduate Admissions—a tactic this Court bluntly called "dirty pool." July 14, 2023, Hearing Tr. 47:19-48:13.

This background is relevant, under the applicable legal standards, as the Court considers Georgetown's and Cornell's proffered rationales for refusing to de-designate the documents and

---

[1] Plaintiffs' motion has been withdrawn as to Defendant Penn, which has agreed to de-designate documents and testimony similar to the material that Georgetown and Cornell have refused to de-designate.

1

deposition testimony that describe their policies and practices in admitting applicants from ▌ (Georgetown's term) or those related to ▌ (Cornell's term)—policies that are simply not "confidential."

## ARGUMENT

I. **PLAINTIFFS ARE ENTITLED TO THE RELIEF THEY SEEK UNDER THE APPLICABLE LEGAL PRINCIPLES**

   A. **Defendants Have Not Met Their Burden to Justify the Need for Enforcement of the Confidentiality Order with Respect to the Challenged Material**

Contrary to Defendants' argument, Plaintiffs principally seek to de-designate the Challenged Material under the Confidentiality Order, arguing that the documents and testimony at issue "do not fall within the specific categories of information that may be designated CONFIDENTIAL or AEO under the Confidentiality Order." Pl. Br. at 10.[2]

Defendants' conclusory statements as to the competitive or "proprietary" nature of the Challenged Material fall far short of the legal standard in this Circuit concerning the entry and enforcement of protective orders such as the Confidentiality Order here. "When a designation of materials as confidential under a protective order is challenged, the designating party bears the burden of justifying the need for enforcement of the order." *Motorola, Inc. v. Lemko Corp.*, 2010 WL 2179170, at *4 (N.D. Ill. June 1, 2010) (Kennelly J.) (citation omitted). Under Rule 26(c), "the party seeking the entry of the order must provide 'specific examples of articulated reasoning', rather than 'stereotyped and conclusory statements' to support its assertion of good cause." *Alexander Housing LLC v. Int'l Broth. of Elec. Workers*, 2004 WL 1718654, at *3 (N.D.

---

[2] Plaintiffs further stated that "none of the materials . . . constitute 'trade secrets,' 'competitive . . . information' or any other type of information that may be designated as CONFIDENTIAL under SACO ¶ 2(a); nor do they constitute 'highly sensitive trade secrets or other highly sensitive competitive or . . . confidential information' that may be designated as AEO under SACO ¶ 2(b)." Pl. Br. at 10.

2

Ill. July 29, 2004) (citing *Andrew Corp. v. Rossi*, 180 F.R.D. 338, 341 (N.D. Ill. 1998)).[3]

Defendants' vague assertions of potential harm from disclosure are similarly inadequate. "With respect to the claim of confidential business information, th[e] standard [a finding of good cause under 26(c)] demands that the company prove that disclosure will result in a 'clearly defined and very serious injury' to its Business." *Andrew Corp.*, 180 F.R.D. at 341 (quoting *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 300 n.1 (N.D. Ill. 1993)). "Conversely, 'broad allegations of harm unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26(c) test.'" *Harrisonville Telephone Co. v. Ill. Commerce Comm.*, 472 F. Supp. 2d 1071, 1078 (S.D. Ill. 2006) (quoting *Culinary Foods,* 151 F.R.D. at 300 n.1).[4]

The insufficiency of Defendants' conclusory assertions of harm from disclosure is especially significant given their stated concern about potential harm to their reputation. *See* Def. Br. at 1 (disclosure of Defendants' admission practices may "embarrass Georgetown and Cornell"); *id.* at 8 (disclosure could cause "reputational harm"). The risk of reputational harm, however, does not justify keeping information confidential via protective order or sealing. *See, e.g., Culinary Foods,* 151 F.R.D. at 301 (N.D. Ill. 1993) ("A claim that public disclosure of information will be harmful to a defendant's reputation is not 'good cause' for a protective order").[5]

---

[3]      *See also In re Bank One Sec. Litig.,* 222 F.R.D. 582, 586 (N.D. Ill. 2004) ("If a party does not show good cause to justify the continued concealment of certain information, the protective order may be dissolved or modified to unseal that information") (citing Seventh Circuit precedent).

[4]      Defendants' cases from outside this Circuit are not to the contrary. *See Eagle View Techs., Inc. v. Xactware Sols., Inc*., 2020 WL 11028382, at *2 (D.N.J. June 9, 2020) ("'[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning' cannot satisfy the required showing of 'clearly defined and serious injury.'") (citation omitted); *Sywula v. Teleport Mobility, Inc*., 652 F. Supp. 3d 1195, 1212 (S.D. Cal. 2023) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.").

[5]      *See also Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983) (showing that information would harm company's reputation is not sufficient to overcome the strong

B. **The Seventh Circuit's Public Interest Doctrine, and the Common Law Right of Access, Are Independent Bases for the Relief Plaintiffs Seek**

The relief Plaintiffs seek is warranted independent of whether Defendants could show that the Challenged Material is Confidential under the Confidentiality Order—which they cannot. That conclusion follows from the substantial public interest in university admissions policies and practices that ███████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Pl. Br. at 7-8, 11.

Defendants argue that any public interest is relevant only under the "common law right of access" (Def. Br. at 10-11), which permits disclosure of documents and testimony "on which a court relies in adjudicating the litigants' substantive rights." *Daniels v. Bursey*, 2006 WL 468015, at *3-4 (N.D. Ill. Feb. 23, 2006) (Kennelly, J.). What Defendants fail to acknowledge, however, is that this Court *has* relied on Georgetown's ███████████████ in deciding a prior motion in this case. *See* Point II.A, *infra*. Accordingly, even under the common law right of access, Defendants are entitled access to, and the right to publish, the ███████████████.[6]

Defendants are *incorrect*, moreover, in asserting that the common law right of access is the exclusive remedy on which Plaintiffs may rely in seeking the right to disclose certain information adduced in discovery as a matter of public interest. That critical point was made clear in *County Matls. Corp. v. Allan Block Corp.*, 502 F.3d 730 (7th Cir. 2007), a case on which Defendants rely (Def. Br. at 10). In that case, the court explained: "County Materials has not asserted that the

---

common law presumption in favor of public access to court proceedings and records); *In re High-Tech Emp. Antitrust Litig.*, 2013 WL 163779, at *1 (N.D. Cal. Jan.15, 2013) (cited in Def. Br. at 6) ("The mere fact that the production of records may lead to a litigant's embarrassment . . . will not, without more, compel the court to seal its records.") (citation and internal quotes omitted).

[6] *See Smith v. U.S. Dist. Court*, 956 F.2d 647 (7th Cir. 1992) (cited in *Daniels v. Bursey*) (applying common law right of access to a document relied on by the district court on a motion for extension of time).

4

district court's decision relied on sealed portions of the record (because it did not), *and so it needs some other basis on which to challenge the court's ruling." Id.* at 739 (emphasis added). The court then described the alternative "public interest" theory available to County Materials: "We have held that 'the public at large pays for the courts and therefore has an interest in what goes on in all stages of a judicial proceeding . . . . The public's interest 'can be overridden only if the [privacy] interests predominate in the particular case.'" *Id.* at 940 (citing *Citizens First Nat'l Bank v. Cincinnati Ins. Co.,* 178 F.3d 943, 945 (7th Cir. 1999) (brackets in original)).

Accordingly, under the public interest doctrine—independent of and broader than the common law right of access—"interest in secrecy is weighed against the competing [public] interests case by case." *Jessup v. Luther,* 277 F.3d 926, 928 (7th Cir. 2002) (as cited by Defendants, Br. at 11). In this case, as Plaintiffs explained in their opening brief (Pl. Br. at 2, 11) and explain further below, the public interest in the Challenged Material is clear and outweighs Defendants' purported interest in secrecy. Georgetown's main response here is to insist that the clear language of two full paragraphs from Georgetown's annual ███████████ have been quoted out of context; and ███████████████████████████████████████████████████████████████ ███████████ *See* Def. Br. at 12-14. As shown below, however, it is Defendants, not Plaintiffs, who have made misleading statements about the documents and testimony at issue.

## II. GEORGETOWN AND CORNELL HAVE IMPROPERLY DESIGNATED DOCUMENTS RELATED TO THEIR CONSIDERATION OF WEALTH IN THE ADMISSIONS PROCESS AS CONFIDENTIAL OR AEO

### A. Georgetown's ███████████

Georgetown does not dispute that, ████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████

5



which Georgetown kept secret from the Plaintiffs and the Court for a full year before throwing it into a document production in late June 2023.

Indeed, ▮▮▮▮▮ was featured in Plaintiffs' December 2023 Memorandum in Response to the Objections of 37 Donor-Related Students (ECF 561, Ex. C), which led the Court to rule that Plaintiffs, with some exceptions, "have shown a genuine need for the information requested . . . that . . . outweighs the privacy interests of the objecting and non-objecting students/applicants." ECF 627 (Feb. 22, 2024). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6

████████████████████████████████████████████████████████████████

██████████████████████████████ Feb. 22, 2024, Hearing Tr. 36:5-11.

Georgetown's arguments for why ████████████████ is Confidential or AEO under the Confidentiality Order do not withstand scrutiny. Georgetown first states that ███████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████ Pl. Br. at 8, 12.

Georgetown further argues that ████████████████████████████████

████████████████████████████████████████████████ Def. Br. at 4. But company departments routinely circulate policy memos within the affected department. Georgetown has failed to meet its burden of showing that ████████████████ constitutes "highly sensitive competitive or . . . confidential information [the] disclosure [of which] to another party or third party would result in specific demonstrable harm to, or cause material harm to the legitimate interests of" the producing party. SACO ¶ 2(b) (standard for AEO Designation). In addition, given that disclosure of Georgetown's ████████████████ would undermine Georgetown's reliance on the 568 Exemption—because ██████ proves that Georgetown's admissions policy is *not* need-blind—that result would not constitute "material harm to . . . *legitimate* interests." *Id.* (emphasis added). Georgetown has no legitimate interest in seeking to prevent the disclosure of facts that negate its false claim of antitrust immunity.

7

■■■

■■■ Paragraph 2(a) of that Order, however, permits discovery material to be designated Confidential only if it contains "competitive . . . information."[7] ■■■

Just as fundamental, ■■■ is not "competitive" within any sensible definition of that term, and Georgetown does not submit any testimony to the contrary. ■■■

Georgetown finally cites other documents and testimony to show that ■■■

---

[7] Neither Georgetown nor Cornell has argued that the challenged material has been designated Confidential because it contains confidential "commercial" information under SACO ¶ 2(a).

8

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████

In sum, there is nothing in ███████████████ that warrants AEO or Confidential designation under the Confidentiality Order, and █████████████████████

████████████████████████████████████████████████

████████████████████

**B.     Cornell's Improper Designation of "Wealth Favoritism" Documents**

Cornell has designated as "Confidential" three documents (Def. Br. at 7-8) concerning its Watch List, VIP List, and ████████████████████████████ ██████████████████████████████████ (Pl. Br. Ex. G).[10] Like Georgetown, Cornell tries to denigrate the documents at issue by citing other evidence—even though the existence of supposedly contrary evidence has nothing to do with whether a particular

---

[8] ████████████████████████████████████████████████████████████████████████████████████████████████████████

[9] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[10]     Although the document quoted in the text was designated as AEO, Cornell is "willing to re-designate the document as Confidential . . . under the Confidentiality Order." Def. Br. at 8 n.11.

9

document has been properly designated as Confidential. In one of the documents referenced above, for example, ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████ (Emphasis added). ███████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████ But there is no requirement in the Confidentiality Order or elsewhere that a non-Confidential document should be de-designated only if the statements in the documents are undisputed.

Cornell also claims that disclosure of ███████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████ Def. Br. at 8. ███████████████████████████████████████████████ this is exactly the sort of conclusory assertion that is legally insufficient to justify the entry or continued enforcement of a protective order. *See* Point I.A, *supra*.[11]

With respect to minutes of a 2009 █████████████████████ that references the ███████████████████████████████████████████████████████ ██████████████ (Pl. Br. Ex. H), Cornell asserts that the minutes contain "proprietary information . . . maintained confidentially by Cornell" without offering any specific reasons why that information is truly competitive or confidential. Def. Br. at 7. Moreover, the disclosure of the fact ███████████████████████████████████████████████

---

[11] In addition, to the extent that Cornell claims that disclosure of the document could cause "reputational harm" (Def. Br. 8), it is well settled that the risk of such harm is legally insufficient to warrant the continued concealment of information via protective order or sealing. *See* cases cited in Point I.A, *supra*.

10

███—is unlikely to cause Cornell any specific competitive (versus reputational) harm.[12]

Cornell next objects to the de-designation of an email thread in which the ███ ███ ███ Pl. Br. Ex. F. Cornell broadly asserts: ███ ███ ███ Def. Br. at 8. ███ ███ Those two things are not the same, and Cornell's non-competitive concern that disclosure of information about the Watch List will ███ is not grounds for maintaining confidentiality under the Confidentiality Order or Seventh Circuit precedent.

More importantly, the Court should reject Defendants' argument—made throughout their brief—that even though the Court has (with their consent) made public the existence of the President's List and Watch List, the Court should still allow Georgetown and Cornell to keep secret ███ *See, e.g.,* Def. Br. at 3. This information is not "competitively sensitive" or even "competitive" within the meaning of the Confidentiality Order.

---

[12] Cornell complains that the 2009 ███ include irrelevant information about ███ ███ Def. Br. at 7. To alleviate that concern, Plaintiffs will consent to Cornell's redaction of information concerning ███ from the de-designated version of the 2009 ███.

11

Moreover, access to and the cost of higher education are matters of substantial public interest, and ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████[13]

### III. DEPOSITION TESTIMONY BY GEORGETOWN REGARDING ITS ██████████████████ AND PRESIDENT'S LISTS HAS BEEN IMPROPERLY DESIGNATED UNDER THE CONFIDENTIALITY ORDER

The non-confidential nature of the term "President's List," as noted above, ██████████████████████████████ With respect to the testimony that Plaintiffs seek to de-designate, the deposition testimony of Georgetown's President John DeGioia (and his assistant Andrew Koenig), as well as Dean of Admissions Charles Deacon underscore the following.

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████ which transcript Georgetown withheld improperly until late June 2023.[14]

---

[13] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[14] *See* Deacon Nov. 9, 2023 Tr. 13:22-39:14 (Pl. Br. Ex. B); Deacon May 18, 2022 (DOJ) Tr. 89:23-95:20, 134:13-135:7, 229:21-232:22 (*Id.*, Ex. C); DeGioia Tr. 50:15-23 (*Id.,* Ex. D); Koenig Tr. 26:19-27:11, 33:5-36:16; 208:6-209:5 (*Id.*, Ex. E).

Plaintiffs should be allowed to refer to the President's List, including how the List is created and used, in open court and unsealed pleadings. Georgetown's claim that the deposition testimony at issue has been properly designated as Confidential/AEO (Def. Br. at 5-6) is based on conclusory statements and "broad allegations of harm unsubstantiated by specific examples of articulated reasoning" that are legally insufficient under the law in this Circuit. *See* Point I.A, *supra*.

There is no dispute, moreover, that Messrs. DeGioia, Deacon, and Koenig are the most knowledgeable witnesses about the President's List and Georgetown's admissions policies and practices, and that their testimony has "amply addressed" those subjects. *See* Letter from Georgetown counsel Daniel Fenske to Plaintiffs' counsel Richard Cipolla, March 29, 2024 (Ex. C hereto) at 3 (declining to produce a Rule 30(b)(6) witness on these subjects "given the likelihood that the witness would be one of the individuals Plaintiffs have already deposed in their individual capacity" and because "these topics . . . have already been amply addressed by the[ir] testimony") ("Georgetown's Rule 30(b)(6) Response"). Nor is there any credible argument that the testimony Plaintiffs seek to de-designate has been "cherry-picked." Indeed, all the Georgetown deposition testimony about Georgetown's admissions process for which Plaintiffs seek to remove Confidential or AEO designations has (with one minor exception) been cited by *Georgetown* in its Rule 30(b)(6) Response as "prior testimony that adequately addresses" the subject matter. *Id.*

Georgetown has raised some technical issues about the deposition testimony cited by Plaintiffs in the instant motion, and Plaintiffs' request that all such testimony that "has been designated as AEO or Confidential by Georgetown . . . should now be de-designated." Pl. Br. at 8.[15] In particular, Georgetown suggests that Plaintiffs acted improperly by not including certain

---

[15] Georgetown complains that some of the testimony by Admissions Dean Deacon cited by Plaintiffs was in fact not designated as Confidential or AEO. Def. Br. at 4 n.4. The short answer is that Plaintiffs

13

deposition testimony by DeGioia and Koenig in Plaintiffs' March 6 email identifying the Confidential/AEO designations of deposition testimony that Plaintiffs intended to challenge under the Confidentiality Order, although Georgetown concedes that Plaintiffs did say that such challenges would likely be made after Plaintiffs received Georgetown's formal Confidential/AEO designations of the affected testimony. *See* Def. Br. at 2-3. Georgetown neglects to inform the Court, however, that Georgetown slow-walked the designation process by (a) declining to order expedited transcripts (as Plaintiffs did), and (b) taking full advantage of the provision that Confidential/AEO designations need only be made "within 15 days of receiving the final transcript and exhibits" under SACO ¶ 4.[16] More importantly, the record is clear that Plaintiffs did challenge Georgetown's Confidential/AEO designations of Koenig's testimony on March 13, six days before the instant motion was filed; and later the same day made a proposal to avoid motion practice that cited *each and every* segment of the DeGioia and Koenig transcripts included in the instant motion as testimony that should be treated as non-Confidential. *See* March 13, 2024, emails from Plaintiffs' counsel to Georgetown's counsel, Copeland Decl. (ECF 652-1), Ex. B.[17]

The Court should also reject Georgetown's argument that this Court's prior orders in which some of the documents or testimony at issue were placed under seal have binding precedential

---

included that non-Confidential testimony to assure continuity and readability as to the testimony that Georgetown did designate as Confidential/AEO.

[16] Indeed, Georgetown counsel were given hard copies of all exhibits shown to DeGioia and Koenig at the time of their depositions and were in given the final transcripts on February 20, when the transcripts were included as attachments to a motion by Plaintiffs (ECF 621) filed under seal. The point is not that Georgetown did anything technically wrong by waiting the maximum time to make their Confidential/AEO deposition designations; the point is that it is absurd to blame Plaintiffs for the resulting delay.

[17] The first meet and confer email inadvertently omitted one page of Koenig's deposition testimony that was then included in the second email. That is the answer to Georgetown's incorrect complaint that Plaintiffs included a portion of the Koenig transcript in our motion which was not included in the pre-motion correspondence. *See* Def. Br. at 3 & n.1.

effect. Def. Br. at 9 & n.12. The Court has authority under the Federal Rules (as well as inherent authority) to "later unseal" filings that the Court initially sealed. *See* Fed. R. Civ. P. 5.2(d).

### IV. PLAINTIFFS ARE ENTITLED TO AN ORDER THAT PERMITS THEM TO DESCRIBE THE CHALLENGED MATERIAL IN OPEN COURT

Plaintiffs have reasonably asked the Court to enter an order permitting Plaintiffs to use, in hearings or proceedings open to the public, the terms President's List or Watch List (the "Lists"), as well as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Defendants' objection to Plaintiffs' reasonable request (Def. Br. at 3) conveniently ignores the flurry of emails and threatened motions that these and other Defendants have directed at Plaintiffs in response to the slightest concern that Plaintiffs might in the future disclose information covered by the Confidentiality Order. *See* Pl. Br. at 3-4. By seeking to preserve ambiguity, Defendants want to maintain a "sanctions trap" intended to have a chilling effect on Plaintiffs' ability to make public comment in open court on Defendants' *non-confidential* admissions policies. The Court should reject Defendants' cynical strategy and grant Plaintiffs' motion in its entirety.

## CONCLUSION

For all the reasons stated herein, and in Plaintiffs' prior memorandum, Plaintiffs' motion should be granted.

15

Dated: April 8, 2024

/s/ Robert D. Gilbert
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
David Copeland
Steven Magnusson
Natasha Zaslove
**GILBERT LITIGATORS &
  COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
dcopeland@gilbertlitigators.com
smagnusson@gilbertlitigators.com
nzaslove@gilbertlitigators.com

/s/ Eric L. Cramer
Eric L. Cramer
Ellen T. Noteware
David Langer
Jeremy Gradwohl
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
dlanger@bm.net
enoteware@bm.net
jgradwohl@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division

Respectfully Submitted,

/s/ Edward J. Normand
Devin "Vel" Freedman
Edward J. Normand
Richard Cipolla
Joseph Delich
**FREEDMAN NORMAND
  FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-350-0527
vel@fnf.law
tnormand@fnf.law
rcipolla@fnf.law
jdelich@fnf.law
pbachyrita@fnf.law

Ivy Ngo
**FREEDMAN NORMAND
  FRIEDLAND LLP**
1 SE 3d Avenue
Suite 1240
Miami, FL 33131
Tel: 786-924-2900
ingo@fnf.law

Daniel J. Walker
Robert E. Litan
Hope Brinn
**BERGER MONTAGUE PC**
1001 G Street, NW
Suite 400 East
Washington, DC 20001
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

16

Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

*Counsel for Plaintiffs*