# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00125 |
| Plaintiffs, | **Hon. Matthew F. Kennelly** |
| v. |  |
| BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, |  |
| Defendants. |  |

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF SETTLEMENT CLASS COUNSEL'S MOTION FOR SERVICE AWARDS FOR THE CLASS REPRESENTATIVES, REIMBURSEMENT OF EXPENSES, AND ATTORNEYS' FEES**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I.     INTRODUCTION ...................................................................................................... 1

II.    SUMMARY OF SETTLEMENT CLASS COUNSEL'S LITIGATION
       EFFORTS ................................................................................................................... 6

       A.     Investigation and Pleadings .......................................................................... 6

       B.     Motions to Dismiss ........................................................................................ 7

       C.     Discovery ....................................................................................................... 7

              1.     Fact Discovery .................................................................................... 7

              2.     Third-Party Discovery ........................................................................ 8

              3.     Expert Discovery ................................................................................ 9

              4.     Joint Status Reports and Discovery Motion Practice......................... 9

       D.     Negotiations and Settlements....................................................................... 10

       E.     Total Time and Expenses............................................................................. 12

III.   SERVICE AWARDS FOR THE CLASS REPRESENTATIVES ARE
       APPROPRIATE AND REASONABLE.................................................................. 12

IV.    SETTLEMENT CLASS COUNSEL'S COSTS AND EXPENSES ARE
       REASONABLE AND NECESSARY ..................................................................... 14

V.     SETTLEMENT Class Counsel REQUESTED ATTORNEYS' FEES ARE
       REASONABLE AND Supported by prior FEE AWARDS............................... 15

       A.     Seventh Circuit Standard for Reasonable Attorneys' Fees................... 15

       B.     Benchmarks Provided by Similar Cases Support Settlement Class
              Counsel's Fee Request as an Appropriate Market Rate........................ 17

              1.     Fee Contracts Between Settlement Class Counsel and Plaintiffs ............. 17

              2.     Data from Similar Common Fund Cases .................................... 18

       C.     One-Third of the Settlement Fund Is Fair and Reasonable Given the
              Remarkable Recovery for the Class in a Case with Extraordinary Risk,
              Complexity, and Difficulty .......................................................................... 20

1.  Risk of Nonpayment ................................................................................. 20

2.  The Quality of Performance ..................................................................... 21

3.  Settlement Class Counsel Devoted Extensive Time and Work to Successfully Prosecute This Action .......................................................... 22

4.  The Stakes in the Case ............................................................................. 25

VI.  CONCLUSION ........................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Boeing v. Van Gemert*,
    444 U.S. 472 (1980)......................................................................................... 15

*Briggs v. PNC Fin. Servs. Grp., Inc.*,
    2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) ......................................................... 13

*Chesemore v. All. Holdings, Inc.*,
    2014 WL 4415919 (W.D. Wis. Sept. 5, 2014) ....................................................... 13

*Chesemore v. Fenkell*,
    829 F.3d 803 (7th Cir. 2016) ............................................................................ 13

*Cimarron Pipeline Constr., Inc. v. Nat'l Council on Comp. Ins.*,
    1993 WL 355466 (W.D. Okla. June 8, 1993)......................................................... 19

*City of Greenville v. Syngenta Crop Prot., Inc.*,
    904 F. Supp. 2d 902 (S.D. Ill. 2012)................................................................... 14

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ............................................................... 12, 13, 23

*Cullen v. Whitman Med. Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000).......................................................................... 17

*Durant v. Traditional Invs., Ltd.*,
    1992 WL 203870 (S.D.N.Y. Aug.12, 1992)........................................................... 19

*Florin v. Nationsbank of Ga., N.A.*,
    34 F.3d 560 (7th Cir. 1994) .............................................................................. 15

*Flournoy v. Honeywell Int'l, Inc.*,
    2007 WL 1087279 (S.D. Ga. Apr. 6, 2007)........................................................... 18

*Gaskill v. Gordon*,
    160 F.3d 361 (7th Cir. 1998) ............................................................................ 16

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991) ......................................................................... 5, 24

*Heekin v. Anthem, Inc.*,
    2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ....................................................... 25

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015)........................................................... 23

*In re Broiler Chicken Antitrust Litig.*,
   2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) ....................................................... passim

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................................. 15, 17, 20

*In re Dairy Farmers of Am., Inc.*,
   80 F. Supp. 3d 838 (N.D. Ill. 2015) ................................................................. passim

*In re Flonase Antitrust Litig.*,
   951 F. Supp. 2d 739 (E.D. Pa. 2013) .................................................................. 19, 23

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ............................................................................... 18

*In re Linerboard Antitrust Litig.*,
   2004 WL 1221350 (E.D. Pa. June 2, 2004),
   *amended*, 2004 WL 1240775 (E.D. Pa. June 4, 2004).......................................... 23

*In re Lithotripsy Antitrust Litig.*,
   2000 WL 765086 (N.D. Ill. June 12, 2000) ............................................................ 18

*In re Motorsports Merch. Antitrust Litig.*,
   112 F. Supp. 2d 1329 (N.D. Ga. 2000) ................................................................... 22

*In re NCAA Student-Athlete Concussion Inj. Litig.*,
   332 F.R.D. 202 (N.D. Ill. 2019) .............................................................................. 24

*In re Orthopedic Bone Screws Prods. Liab. Litig.*,
   2000 WL 1622741 (E.D. Pa. Oct. 23, 2000)........................................................... 18

*In re Potash Antitrust Litig.*,
   2013 WL 12470850 (N.D. Ill. June 12, 2013) ........................................................ 14

*In re Remeron Direct Purchaser Antitrust Litig.*,
   2005 WL 3008808 (D.N.J. Nov. 9, 2005) .............................................................. 18

*In re Se. Milk Antitrust Litig.*,
   2013 WL 2155387 (E.D. Tenn. May 17, 2013)....................................................... 19

*In re Southwest Airlines Voucher Litig.*,
   2014 WL 2809016 (N.D. Ill. June 20, 2014) .......................................................... 24

*In re Synthroid Mktg. Litig.*,
   264 F.3d 712 (7th Cir. 2001) ........................................................................... passim

*In re TikTok, Inc., Consumer Priv. Litig.*,
   617 F. Supp. 3d 904 (N.D. Ill. 2022) ..................................................................... 24

*In re TikTok, Inc., Consumer Priv. Litig.*,
  2022 WL 19079999 (7th Cir. Oct. 12, 2022) .................................................................. 24

*In re Titanium Dioxide Antitrust Litig.*,
  2013 WL 6577029 (D. Md. Dec. 13, 2013) .................................................................. 19

*In re Vitamins Antitrust Litig.*,
  2001 WL 34312839 (D.D.C. July 16, 2001) .................................................................. 19

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ........................................................................................ 18

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015) ..................................................................................... 18

*Macovski v. Groupon, Inc.*,
  2022 WL 17256417 (N.D. Ill. Oct. 28, 2022) .............................................................. 18

*Martin v. Lexington Health Care Ctr. of Chicago Ridge, Inc.*,
  2015 WL 14073005 (N.D. Ill. Mar. 5, 2015) ............................................................... 13

*Mather v. Bd. of Trustees of S. Ill. Univ.*,
  317 F.3d 738 (7th Cir. 2003) ........................................................................................ 24

*Matter of Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ........................................................................................ 21

*Montague v. Dixie Nat. Life Ins. Co.*,
  2011 WL 3626541 (D.S.C. Aug. 17, 2011) .................................................................. 18

*Montgomery v. Aetna Plywood, Inc.*,
  231 F.3d 399 (7th Cir. 2000) ........................................................................................ 16

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
  2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ............................................................... 18

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................ 14, 23, 25

*Silverman v. Motorola Sols., Inc.*,
  739 F.3d 956 (7th Cir. 2013) ........................................................................................ 21

*Smith v. Vill. of Maywood*,
  17 F.3d 219 (7th Cir. 1994) .......................................................................................... 24

*Standard Iron Works v. Arcelormittal*,
  2014 WL 11350176 (N.D. Ill. Oct. 23, 2014) ............................................................. 14

*Standard Iron Works v. ArcelorMittal*,
  2014 WL 7781572 (N.D. Ill. Oct. 22, 2014)..............................................................24

*Sutton v. Bernard*,
  504 F.3d 688 (7th Cir. 2007) ....................................................................................21

*Taubenfield v. AON Corp.*,
  415 F.3d 597 (7th Cir. 2005) ..............................................................................16, 22

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*,
  2012 WL 4061537 (D.S.C. Sept. 14, 2012)..............................................................18

*Walker v. NCAA*,
  2019 WL 8058082 (7th Cir. Oct. 25, 2019)..............................................................24

*Williams v. Rohm & Haas Pension Plan*,
  658 F.3d 629 (7th Cir. 2011) ..........................................................................16, 22, 23

*Young v. Cnty. of Cook*,
  2017 WL 4164238 (N.D. Ill. Sept. 20, 2017) ......................................................18, 23

## Other Authorities

Fed. R. Civ. P. 23(h) ......................................................................................................14, 15

Brian T. Fitzpatrick, *A Fiduciary Judge's Guide to Awarding Fees In Class Actions*,
  89 Fordham L. Rev. 1151, 1170 (2021)....................................................................16

*Newberg on Class Actions* § 14.6 (4th ed. 2009).........................................................24

The law firms of Freedman Normand Friedland LLP, Gilbert Litigators and Counselors, and Berger Montague PC (collectively, "Settlement Class Counsel"), representing Plaintiffs (or "Class Representatives") and the Settlement Class, respectfully submit this Motion for Service Awards for the Settlement Class Representatives, Reimbursement of Costs and Expenses, and Attorneys' Fees with the following Memorandum of Law in Support. The Joint Declaration of Edward Normand, Robert D. Gilbert, and Eric L. Cramer ("Joint Decl.") accompanies the Memorandum.

## I.    <u>INTRODUCTION</u>

Settlement Class Counsel have aggressively researched and prosecuted this complex antitrust class action for over three years against seventeen sophisticated, determined, and well-resourced Defendants.[1] Settlement Class Counsel initiated this complex antitrust class action—which has achieved tangible results of a large class of current and former students of 17 elite universities alleged to have colluded to depress financial aid—without the benefit of a governmental investigation or enforcement action. As of the Court's most recent order preliminarily approving the settlements at issue, ECF 638, Settlement Class Counsel had reached settlements (the "Settlements") with ten of the seventeen Defendants (the "Settling Defendants").[2] The Settling Defendants have collectively agreed to provide $284 million in aggregate cash payments (the "Settlement Fund") and each has agreed to complete certain additional, limited discovery. *See* ECF Nos. 439 (preliminarily approving Chicago settlement);

---

[1] Defendants, referred to hereinafter in common shorthand, are Brown University, California Institute of Technology, University of Chicago, The Trustees of Columbia University in the City of New York, Cornell University, Trustees of Dartmouth College, Duke University, Emory University, Georgetown University, The Johns Hopkins University, Massachusetts Institute of Technology, Northwestern University, University of Notre Dame, The Trustees of the University of Pennsylvania, William Marsh Rice University, Vanderbilt University, and Yale University.

[2] The Settling Defendants are Chicago, Brown, Columbia, Duke, Emory, Yale, Dartmouth, Northwestern, Rice, and Vanderbilt.

614 (preliminarily approving Brown, Columbia, Duke, Emory, and Yale settlements); 638 (preliminarily approving Dartmouth, Northwestern, Rice and Vanderbilt settlements). Settlement Class Counsel did not achieve these Settlements as a group or all at once, but instead separately pursued each over many months. The negotiations involved extensive arm's length discussions with the Settling Defendants—several of which were facilitated by the well-respected mediation firm of Phillips, ADR—over the past year.

These Settlements are an excellent result both in absolute terms, considering the nearly the $284 million in cash, and given that litigation continues against seven non-settling Defendants, each of which is jointly and severally liable for treble damages (minus the cash value of any settlements). *See* Joint Decl. ¶¶ 2-3; ECF No. 603-2. The Settlements resulted from Settlement Class Counsel's determined efforts at every stage of this litigation. If Settlement Class Counsel had not initiated and prosecuted this case, and then secured these Settlements in this complex matter, the Settlement Class may have had to wait years for any money—and may have received nothing at all. *See* Joint Decl. ¶ 62. This case has garnered significant national attention and has been celebrated by parents and students and alumni across the country. As an indication of the importance of these Settlements and this case, more than 40,000 members of the Settlement Class have signed up with the Claims Administrator for updates about the Settlements and the case. *Id*. ¶ 56.

In general, as the Court has observed in this case, antitrust litigation is complex and requires the involvement of economic and industry experts in connection with proving liability and damages and demonstrating that class certification is appropriate. *E.g.*, Feb. 8, 2023 Hrg. Tr., 20:19-21:2; Nov. 28, 2023 Hrg. Tr. 11:15-18, 20:11-17. This lawsuit has been especially complex, given the sheer number of defendants (seventeen), that a cadre of the best law firms in

the country represent them, a proposed Class Period of almost twenty years and a proposed Class of approximately 200,000 individuals, that discovery has involved a voluminous amount of complicated structured data, and that there were multiple third parties with relevant information. In addition, Settlement Class Counsel had to grapple with numerous factual and legal obstacles, including contending with Defendants who claim unique defenses; dealing with FERPA-related issues for objecting students; deconstructing the complex web of higher education and its multiple organizations; and developing a common methodology for proving both classwide injury and damages.

Settlement Class Counsel, as noted, investigated this case independently, without the aid of a preceding government action, investigation, or indictment.[3] Settlement Class Counsel also filed this case on contingency, knowing it could take years to prosecute and millions of dollars and tens of thousands of attorney hours to properly resource—thus assuming the very real risk of nonpayment. On the heels of research that attorneys with Freedman Normand Friedland and Gilbert Litigators and Counselors had previously done, Settlement Class Counsel (with Berger Montague becoming involved) began earnestly investigating this action together in early 2021. Settlement Class Counsel proceeded to file suit in January 2022, defeat Defendants' motions to dismiss in August 2022, and obtain key evidence and admissions throughout a massive discovery effort (that included over a million documents reviewed, numerous discovery motions and over 90 fact depositions). *See* Joint Decl. ¶ 5. In the midst of all that discovery, Settlement Class Counsel achieved the Settlements through protracted negotiations, working with highly-regarded mediators, with skill and adherence to the Settlement Class's best interests at every stage.

---

[3] After Defendants moved to dismiss, the U.S. Department of Justice and the State of New York sided with the Plaintiffs, with the DOJ filing a statement of interest supporting Plaintiffs on key issues and presenting oral argument on them. ECF Nos. 171, 172, 179.

Over the course of approximately three years, from case investigation through March 31, 2024, Settlement Class Counsel has expended 91,313.4 hours of professional time, amounting to a collective lodestar of $70,150,911.00 based on historical market rates,[4] and incurred over $3,508,995.25in unreimbursed out-of-pocket expenses and outstanding invoices. Joint Decl. ¶¶ 63-75. Settlement Class Counsel respectfully seek reimbursement of litigation expenses of $3,508,995.25, service awards of $20,000 for each of the eight Class Representative (totaling $160,000), as compensation for their efforts, and attorneys' fees of one-third of the Settlement Fund ($94,666,666.70) (plus one-third of the interest accrued on the sought fee since the Settlement Fund was escrowed). ECF No. 638.[5] If awarded, the requested attorneys' fees would result in a modest lodestar multiplier of 1.35 (the proposed award of $94,666,666.70 divided by the collective lodestar of $70,150,911), which is well below multipliers awarded in comparable antitrust and other class actions. Settlement Class Counsel respectfully submit that these requests are justified for several reasons.

*First,* the $284 million recovery for the Settlement Class is extraordinary as a stand-alone matter, not only because it provides substantial and immediate cash payments to the Settlement Class, but also because each of the seven non-settling Defendants remains jointly and severally liable for any proven damages, trebled, that the Settlement Class has suffered (minus the value of all settlements to the point of the damage award). The alternative for the Settlement Class would have probably meant waiting years for any recovery, with the possibility of no recovery at all.

---

[4] Settlement Class Counsel are conservatively using historical market rates, instead of current rates, to compute their lodestar. Historical rates reflect that rates on the books and records of each firm during the period the professional hours were billed, instead of billing all time at current market rates.

[5] The notice to the Settlement Class explained that "Settlement Class Counsel will move for an award of attorneys' fees not to exceed 1/3 of the Settlement Fund, plus any accrued interest, reimbursement of litigation costs and expenses not to exceed $12,000,000 and service awards of up to $20,000 for each of the eight Settlement Class Representatives to be paid out of the Settlement Fund." *Id.* ¶ 20.

*Second*, the requested attorneys' fee is a reasonable market rate for Settlement Class Counsel's services had they been negotiated *ex ante*. The benchmarks employed in the Seventh Circuit to gauge reasonable market rates are existing or prior contracts between the parties, data from similar common fund cases, and class counsel auctions—and these benchmarks all support a contingency fee of one-third. This sought fee is within the ordinary range of contingency fee arrangements actually negotiated *ex ante* between parties in complex antitrust actions. Indeed, as this District recently observed: "The fact that fee awards in antitrust cases in this circuit are almost always one-third is a strong indication that this should be considered the 'market rate.'" *In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *4 (N.D. Ill. Dec. 1, 2021) (citations omitted). Moreover, using a lodestar cross-check in this matter confirms the propriety of the sought fee. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) (multipliers between 1 and 4 have been approved); *see also* Part V.C.3, below.

*Third*, the high risks and complexities of this case, coupled with Settlement Class Counsel's caliber of performance and quality of work, warrant the requested fee. This case was particularly complicated and risky, even among traditionally complicated antitrust cases, because of the inability to benefit from a pre-existing investigation or litigation by the government, and the existence of a statute purportedly providing immunity to the Defendants. The case has been hard fought at every stage against very well-resourced Defendants, represented by some of the top defense law firms in the country, who have mounted an aggressive and sophisticated defense.

Accordingly, as explained further below, the requested service awards for the Class Representatives, costs and expenses, and attorneys' fees are appropriate.

## II.  SUMMARY OF SETTLEMENT CLASS COUNSEL'S LITIGATION EFFORTS

### A.  Investigation and Pleadings

Settlement Class Counsel's joint investigation began in earnest in early 2021, on the heels of research that attorneys with Freedman Normand Friedland and Gilbert Litigators and Counselors had done the prior year. Joint Decl. ¶ 8. Settlement Class Counsel (including Berger Montague) analyzed thousands of documents and interviewed Defendants' current and former students. In addition, Settlement Class Counsel collected information regarding Defendants' involvement in the 568 Presidents Group, reviewed and analyzed the market of elite, private, national universities, and analyzed publicly available information concerning Defendants' undergraduate tuition and financial aid policies and practices, and their endowments and assets. Settlement Class Counsel also worked extensively with a consulting economist to examine the effects of the challenged conduct, and met with each Plaintiff to obtain key information in preparation for filing the action. *See id*. ¶¶ 8-9.

On January 9, 2022, Settlement Class Counsel filed the Complaint, alleging Defendants "participated in a price-fixing cartel that is designed to reduce or eliminate financial aid as a locus of competition, and that in fact has artificially inflated the net price of attendance for students receiving financial aid" although Defendants were not entitled to the "protection of Section 568 of the Improving America's Schools Act of 1994 (the '568 Exemption')." ECF No. 1, ¶¶ 1-2. Settlement Class Counsel continued to investigate and developed the pleadings through their and their clients' own initiative and collective resources—without the benefit of a related government investigation. Settlement Class Counsel filed the Amended Complaint on February 15, 2022, adding Johns Hopkins University as a Defendant, and the Second Amended Complaint on February 6, 2023, ECF Nos. 106, 308.

### B.    Motions to Dismiss

Defendants filed motions to dismiss on April 15, 2022. *See* ECF Nos. 145 (by Brown, Chicago, Emory, and Johns Hopkins), 146 (by all Defendants), 148 (by Yale). Defendants argued that (a) they fell within a statutory antitrust exemption, (b) Plaintiffs failed to state a claim, and (c) several of the claims were time barred. Settlement Class Counsel filed a thorough consolidated Opposition to the Motions to Dismiss on June 10, 2022. ECF No. 164.

The Court denied all the Motions to Dismiss in their entirety. ECF No. 185; Joint Decl. ¶ 10. The Court concluded Plaintiffs had properly alleged that the challenged conduct did not fall within the antitrust exemption; that Defendants had committed violations of the Sherman Act; that Plaintiffs' allegations of antitrust injury and standing were sufficient; and that the claims were not time-barred as a matter of law. *Id*.

### C.    Discovery

After the Court denied Defendants' motions to dismiss, Settlement Class Counsel aggressively pursued fact and expert discovery to position Plaintiffs to establish liability and the foundations for class certification; to obtain favorable settlements; to prepare to oppose Defendants' anticipated summary judgment and *Daubert* motions; to prepare for the jury trial in this matter; and to defend any judgment on appeal.

### 1.    Fact Discovery

Settlement Class Counsel served extensive written discovery on each Defendant, including 42 Requests for Admission on Brown, Caltech, and Johns Hopkins, 45 Requests for Admission on the other Defendants, 192 Requests for Production, and 45 Interrogatories. Settlement Class Counsel also served many other RFPs on each Defendant individually. Joint Decl. ¶ 14. Settlement Class Counsel analyzed the voluminous responses and objections to this substantial written discovery. Settlement Class Counsel secured the production of over 1.1

million documents, and have painstakingly reviewed, tagged, and highlighted a substantial portion of these documents. Joint Decl. ¶¶ 18-21. Settlement Class Counsel found it necessary to file multiple motions to compel to obtain key categories of documents. *See*, *e.g.*, ECF Nos. 331, 402, 440, 443, 467, 505, 539.

In addition, Settlement Class Counsel have collected, reviewed, and produced nearly 4,000 documents from Plaintiffs. Joint Decl. ¶¶ 23-27. This involved numerous meetings with Plaintiffs to identify and collect documents, and to identify electronic data sources subsequently collected by a retained vendor. *Id*. Once Settlement Class Counsel responded to document requests and negotiated search terms with Defendants, they reviewed the collected documents to locate those appropriate for production. Settlement Class Counsel also worked with Plaintiffs to produce multiple rounds of Interrogatory Responses as well as initial disclosures. *Id*.

After collecting and analyzing a critical mass of documents in response to their Requests for Production, Settlement Class Counsel engaged in extensive deposition discovery. In preparation for the over ninety (90) fact depositions they have taken and defended in this case, Settlement Class Counsel (a) identified key documents to be used at each deposition, (b) prepared extensive and detailed deposition outlines, and (c) coordinated deposition strategy and questioning amongst the Plaintiffs' legal team, as well as logistics with Defendants. *Id*. ¶¶ 18-21, 32. Settlement Class Counsel also prepared and defended the depositions of each of the eight class representatives and the parents of two class representatives. *Id*. ¶¶ 33-34.

## 2. <u>Third-Party Discovery</u>

Settlement Class Counsel prepared and served approximately 11 third-party subpoenas and, to date have secured tens of thousands documents from numerous third parties including other universities and colleges and higher education organizations. *Id*. ¶ 16. Settlement Class Counsel have prepared for, taken, and defended two third-party depositions. *Id.* ¶ 34.

8

### 3.    Expert Discovery

Considering the importance of expert issues in this case, including the calculation of damages, Settlement Class Counsel retained consulting and testifying experts who have performed extensive work for the expert reports to be exchanged on May 14, 2024. Settlement Class Counsel have spent significant time working with their experts and investigators to address the key issues, including the impact of the challenged conduct on the proposed class, damages, and anticompetitive effects. Joint Decl. ¶¶ 35-36. Settlement Class Counsel have spent thousands of hours collecting and synthesizing relevant datO frequently met with their experts to discuss their opinions and reports; and repeatedly undertaken to ensure the experts had the necessary information to evaluate, among other issues, the impact and damages Defendants have caused.

Settlement Class Counsel expect Defendants to propound multiple expert reports, and thus expect to take multiple expert depositions in addition to defending depositions of Plaintiffs' experts and working with Plaintiffs' experts to prepare rebuttal reports.

### 4.    Joint Status Reports and Discovery Motion Practice

Settlement Class Counsel spent significant time preparing Joint Status Reports regarding discovery issues and frequently met and conferred with Defendants regarding same. Joint Decl. ¶¶ 38-39. Settlement Class Counsel engaged in extensive discovery motion practice, including motions to compel, motions to seal, motions for protective orders and others to resolve outstanding discovery disputes. *See*, *e.g.*, ECF Nos. 271, 331, 402, 440, 443, 467, 503, 505, 539, 547, 631, 645; Joint Decl. ¶ 28.[6]

---

[6] On March 21, 2023, for example, Settlement Class Counsel filed a motion to compel the production of documents. ECF No. 331; Joint Decl. ¶ 28. Similarly, Settlement Class Counsel filed a motion for a protective order against Defendants subpoenas on Plaintiffs' families for what Plaintiffs argued were irrelevant and duplicative documents and information. ECF No. 271.

### D.    <u>Negotiations and Settlements</u>

Settlement Class Counsel engaged in protracted arm's length settlement negotiations with the Settling Defendants over the past year—with several mediated by one of the most respected ADR firms in the country, Phillips ADR. Joint Decl. ¶¶ 40-56. Settlement Class Counsel have settled with ten Defendants, who agreed to provide $284 million in aggregate cash payments for the benefit of the Settlement Class and to complete certain additional, limited discovery as well as to make witnesses available for trial. ECF Nos. 439, 614, 638. Settlement Class Counsel did not achieve these Settlements as a group or all at once, but separately and over time, often with simultaneous negotiations. Joint Decl. ¶¶ 40-56. Settlement Class Counsel pursued a strategy of increasing the settlement amounts with each successive agreement or set of agreements to exert pressure on Defendants to reach agreement imminently or risk having to pay more. *Id*.

Settlement Class Counsel initiated discussions with Chicago in April 2023 and executed a settlement agreement with Chicago on August 7, 2023 (the "Chicago Settlement"). ECF No. 428, Ex. A; Joint Decl. ¶ 41. The settlement provides for cash payments totaling $13.5 million to Plaintiffs and the proposed Settlement Class, and to offer additional discovery and evidence or witnesses for trial. *Id.* ¶¶ 2, 41. The Court preliminary approved the Chicago Settlement on September 9, 2023. ECF No. 439.

Settlement Class Counsel thereafter—over the course of several months—negotiated and executed separate settlement agreements with Brown, Columbia, Duke, Emory, and Yale (collectively, the "Second Tranche Settling Defendants" and the "Second Tranche Settlements"). ECF No. 603, Exs. 1-5; Joint Decl. ¶ 42. The Second Tranche Settling Defendants agreed to pay $104.5 million, with Emory agreeing to pay $18.5 million, Yale $18.5 million, Brown $19.5 million, Columbia $24 million, and Duke $24 million. *Id*. They also agreed to engage in certain

important continued discovery obligations. Joint Decl. ¶ 47. The Court preliminary approved the Second Tranche Settlements on February 14, 2024. ECF No. 614.

Settlement Class Counsel subsequently negotiated and executed settlement agreements with Dartmouth, Northwestern, Rice, and Vanderbilt (collectively, the "Third Tranche Settling Defendants" and the "Third Tranche Settlements"). ECF No. 629, Exs. 8-11; Joint Decl. ¶ 43. The Third Tranche Settlements were executed after two years of hard-fought litigation and four months of negotiations. Joint Decl. ¶¶ 40-43. The Third Tranche Settling Defendants agreed to pay $166 million, with Dartmouth agreeing to pay $33.75 million, Rice $33.75 million, Northwestern $43.5 million, and Vanderbilt $55 million. *Id*. ¶ 43. They also agreed to provide certain additional discovery and assist with Plaintiffs' trial preparations. *Id*. On February 28, 2024, the Court preliminarily approved the Third Tranche Settlements. ECF No. 638.

These Settlements were the result of Settling Class Counsel's significant and protracted work over a three-year period, which work included researching and initiating the action; prosecuting the case; negotiating the terms of the settlements with each individual Defendant; preparing the Settlement Agreements; developing a consolidated notice plan; finding and working with an escrow agent and settlement claims administrator—with whom more than 40,000 class members have already signed up with for updated about the case and settlements; working with their experts on an appropriate plan of allocation of the net Settlement Funds to members of the Settlement Class; and preparing and filing motions for preliminary approval and supporting papers. Joint Decl. ¶¶ 40-56. In connection with several of the Settlements, the parties negotiated with the able assistance of former U.S. District Court Judge Layn Phillips and, in particular, his colleagues Miles Ruthberg and Clay Cogman at Phillips ADR.

E.       **Total Time and Expenses**

Settlement Class Counsel, through March 31, 2024, have collectively devoted a total of

91,313.5 hours and $70,150,911.00 in professional time, at market rates, to prosecute the claims

on behalf of the Settlement Class; counsel advanced all of this time and effort on contingency.

Joint Decl. ¶¶ 63-75. The proposed attorneys' fees of one-third (including one-third of any

accrued interest) would amount to a modest lodestar multiplier of 1.35. Such a multiplier, as

discussed below, would be on the low side of what the courts in this Circuit (and others)

routinely grant in complex class action cases. Settlement Class Counsel also incurred, through

March 31, 2024, $3,508,995.25 for litigation costs and expenses that were reasonable and

necessary to the successful prosecution of this action.

III.     **SERVICE AWARDS FOR THE CLASS REPRESENTATIVES ARE
         APPROPRIATE AND REASONABLE**

Plaintiffs' request for service awards for the eight named Plaintiffs should be granted.

"Because a named plaintiff is an essential ingredient of any class action, an incentive award is

appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*,

142 F.3d 1004, 1016 (7th Cir. 1998) (citation omitted). "In deciding whether such an award is

warranted, relevant factors include the actions the plaintiff has taken to protect the interests of

the class, the degree to which the class has benefitted from those actions, and the amount of time

and effort the plaintiff expended in pursuing the litigation." *Id.*; *accord Broiler Chicken*, 2021

WL 5709250, at *4. Settlement Class Counsel believes that awards of $20,000 each (totaling

$160,000) are appropriate in recognition of the instrumental role they played.

*First*, the Class Representatives were essential as they, not a government agency, helped

initiate this action. In doing so, the Class Representatives risked being ostracized for

12

participating in a lawsuit against their alma maters and have had to confront the media scrutiny that accompanies a class action against some of the most prestigious universities in the country.

*Second*, the Settlement Class benefited substantially from the Class Representatives' actions, as this case would not exist without their help. The Settlement Class Representatives have performed a valuable public service for the Settlement Class by obtaining monetary relief and ensuring that Defendants' allegedly conspiratorial practices do not recur.

*Third*, the Class Representatives have spent significant time and effort in litigating this action, including: (1) providing key information in the pre-suit investigation; (2) reviewing and signing off on key filings; (3) searching for and collecting thousands of relevant documents produced in discovery; (4) preparing and sitting for lengthy depositions; and (5) reviewing and approving the settlement papers. ECF No. 638, Ex. A, ¶ 55; Joint Decl. ¶¶ 61-62. The Class Representatives also spent hours consulting with Settlement Class Counsel to deal with various issues and stay apprised of the litigation, *id.*, and they continue to pursue the litigation and are prepared to testify at any trial in this matter.

The proposed service awards here are consistent with other awards in this Circuit, especially considering that the Class Representatives are individuals with limited resources. *See, e.g.*, *Cook*, 142 F.3d at 1016 (affirming incentive award of $25,000 to class representative); *Broiler Chicken*, 2021 WL 5709250, at *5 (awarding $15,000 to each of the five class representatives and suggesting that the awards could have been higher if the class representatives were individual people subjected to personal burdens, as opposed to businesses or corporations).[7]

---

[7] *See also Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 WL 7018566, at *3 (N.D. Ill. Nov. 29, 2016) ("[C]ourts in the Seventh Circuit routinely approve incentive awards ranging from $5,000 to $25,000.") (*citing Chesemore v. All. Holdings, Inc.*, 2014 WL 4415919, at *12 (W.D. Wis. Sept. 5, 2014), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016)); *Martin v. Lexington Health Care Ctr. of Chicago Ridge, Inc.*, 2015 WL 14073005, at *5 (N.D. Ill. Mar. 5, 2015) (approving an "incentive award

## IV.    SETTLEMENT CLASS COUNSEL'S COSTS AND EXPENSES ARE REASONABLE AND NECESSARY

Counsel who create a common fund are entitled to be reimbursed for expenses reasonably incurred in creating the fund. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 600 (N.D. Ill. 2011) (citing Fed. R. Civ. P. 23(h)). "If counsel submit bills with the level of detail that paying clients find satisfactory, a federal court should not require more." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001) ("*Synthroid I*"); *accord In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 853 (N.D. Ill. 2015).

Settlement Class Counsel's unreimbursed costs and expenses of $2,860,918.85 were reasonably incurred and necessary. These unreimbursed expenses include costs for computerized legal research, the creation and maintenance of an electronic document database, substantial expert and consultant costs, travel and lodging expenses, copying, court reporters, transcripts, filing fees, and mediation expenses. Joint Decl. ¶¶ 69-75. These are typical expenses, routinely deemed reasonable and necessary, and they are consistent with expenses in similar class actions, particularly in light of the pre-filing investigation and over two years of litigation, and the extensive discovery and motion practice that ensued. *See, e.g.*, *Standard Iron Works v. Arcelormittal*, 2014 WL 11350176, at *4 (N.D. Ill. Oct. 23, 2014) (approving $5,064,908.97 in costs and expenses in an antitrust class action that partially settled prior to the filing of summary judgment motions); Order ¶ 15, ECF No. 1085, *In re Opana ER Antitrust Litig.*, No. 1:14-cv-10150 (N.D. Ill. Nov. 3, 2022) (awarding costs and expenses of $4,343,137.06).[8]

---

of $20,000 for the named Plaintiff" because she "actively participated in discovery and settlement" and "regularly communicated with Class Counsel"); *In re Potash Antitrust Litig.*, 2013 WL 12470850, at *2 (N.D. Ill. June 12, 2013) (incentive award of $15,000 to each class representative).

[8] *See also, e.g.*, *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 910-911 (S.D. Ill. 2012) (awarding costs of $8,572,647.67 after two years of litigation for expert and consulting fees, deposition expenses, travel, photocopying costs, and the like); *King Drug Co. of Florence, Inc. v.*

## V.     SETTLEMENT CLASS COUNSEL REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SUPPORTED BY PRIOR FEE AWARDS

The Settlements constitute an excellent result both in absolute terms, given the $284 million cash amount, and given that litigation continues against seven non-settling Defendants, who are each jointly and severally liable for treble damages (minus the value of all settlements to the point of the damage award). The value of these Settlements is a testament to Settlement Class Counsel's pursuit of victory at every stage of this litigation.

### A.     Seventh Circuit Standard for Reasonable Attorneys' Fees

Attorneys for the plaintiffs in a class action may petition the court for compensation from the settlement fund. *See Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980); Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement."). Courts in the Seventh Circuit have used both the "lodestar" method, which considers "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," and the percentage method, which "sets the fee award as a percentage of the recovered settlement fund, plus expenses and interest." *Dairy Farmers*, 80 F. Supp. 3d at 844 (citations omitted).[9]

The percentage method, however, "has emerged as the favored method for calculating fees in common-fund cases in this district." *Dairy Farmers*, 80 F. Supp. 3d at 844 (applying the

---

*Cephalon, Inc*., No. 2:06-cv-01797, ECF No. 870 at 10 (E.D. Pa. Oct. 15, 2015) (approving $3.5 million in costs and expenses); *Tricor*, No. 05-340, ECF No. 543 at 10 (D. Del. Apr. 23, 2009) (approving $3.5 million in costs and expenses in a case that settled after 3.5 years of litigation at the commencement of trial); *In re Wellbutrin XL Antitrust Litig*., No. 2:08-cv-2431, ECF No. 485 at 8 (E.D. Pa. Nov. 7, 2012) (approving $3.1 million in costs and expenses in a case that settled after the close of fact and expert discovery, following summary judgment rulings).

[9] *See also In re Cap. One Tel. Consumer Prot. Act Litig*., 80 F. Supp. 3d 781, 794 (N.D. Ill. 2015) ("It has long been the law in the Seventh Circuit that in common fund cases like this one, district courts have discretion to choose either the lodestar or a percentage approach to calculating fees.") (citing *Florin v. Nationsbank of Ga., N.A*., 34 F.3d 560, 566 (7th Cir. 1994)).

percentage method in a common-fund antitrust action); *see also Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis.") (collecting cases, internal citations omitted); *Broiler Chicken*, 2021 WL 5709250, at *4 ("There is simply little to no precedent recommending anything other than an award of 33 percent. With the only real evidence of the 'market rate' being one-third, that is what the Court will award.").[10]

"[W]hen deciding on appropriate fee levels in common-fund" cases, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Synthroid I*, 264 F.3d at 718 (citing *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 409 (7th Cir. 2000), and *Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998)) (additional citations omitted). This is the "*ex ante* bargain between the class and its attorneys." *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011); *Synthroid I*, 264 F.3d at 719 (directing the district court on remand to "set a fee by approximating the terms that would have been agreed to *ex ante*, had negotiations occurred").

In *Synthroid I*, the Seventh Circuit provided "benchmarks" to approximate the market rate by looking at "similar bargains," such as (1) actual fee contracts between the parties and class counsel in similar cases, (2) data from similar common fund cases, and (3) information from lead counsel auctions in similar cases. *Synthroid I*, 264 F.3d at 719-20; *accord Taubenfield v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). *Synthroid I* also advised that the "market rate" should be adjusted to account for (1) the risk of nonpayment a firm agrees to bear, (2) the quality

---

[10] *See also, e.g.*, Brian T. Fitzpatrick, *A Fiduciary Judge's Guide to Awarding Fees In Class Actions*, 89 Fordham L. Rev. 1151, 1170 (2021) (where a court can monitor against premature settlement, the percentage of recovery, not lodestar, is the best method for determining appropriate attorneys' fees).

of its performance, (3) the amount of work necessary to resolve the litigation, and (4) the stakes of the case. *Synthroid I*, 264 F.3d at 721. These benchmarks and factors have since become the standard metric in Seventh Circuit cases for evaluating the reasonableness of attorneys' fee requests involving common funds. *See, e.g.*, *Cap. One*, 80 F. Supp. 3d at 796-97; *Dairy Farmers*, 80 F. Supp. 3d at 845-49; *Broiler Chicken*, 2021 WL 5709250, at *2-4.

### B.   Benchmarks Provided by Similar Cases Support Settlement Class Counsel's Fee Request as an Appropriate Market Rate

Attorneys' fees in similar cases provide an initial benchmark for determining a reasonable market rate. *See Cap. One*, 80 F. Supp. 3d at 796 ("[T]he Seventh Circuit explained that it is possible to learn about 'similar bargains' and set forth three 'guides' or 'benchmarks' to help district courts estimate the market fee: (1) actual fee contracts between plaintiffs and their attorneys; (2) data from similar common fund cases where fees were privately negotiated; and (3) information from class-counsel auctions.") (citing *Synthroid I*, 264 F.3d at 719); *Dairy Farmers*, 80 F. Supp. 3d at 845 ("As a barometer for assessing the reasonableness of a fee award in common-fund cases, courts look to the going market rate for legal services in similar cases.").

#### 1.   Fee Contracts Between Settlement Class Counsel and Plaintiffs

Settlement Class Counsel and the Settlement Class Representatives agreed upon a one-third contingent fee award in advance, as is common in contingency cases. *See Broiler Chicken*, 2021 WL 5709250, at *4 ("Most persuasive are the large number of antitrust cases in this circuit that have awarded one-third of the common fund as attorney's fees. . . . There is simply little to no precedent recommending anything other than an award of 33 percent. With the only real evidence of the 'market rate' being one-third, that is what the Court will award.").[11]

---

[11] *See also Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (a one-third share of the common fund was an appropriate attorneys' fee in class action brought by students and former students of

### 2.   Data from Similar Common Fund Cases

Awards of one-third are well within the ordinary range of *ex ante* rates in privately

negotiated contingency arrangements.[12] *See, e.g.*, *Kirchoff v. Flynn*, 786 F.2d 320, 328 (7th Cir.

1986) (finding that the "40% [contingency fee] was to be a minimum, not a cap"); Order ¶ 15,

ECF No. 1085, *In re Opana ER Antitrust Litig.*, No. 1:14-cv-10150 (N.D. Ill. Nov. 3, 2022)

(awarding $50,528,470.66 in attorneys' fees for antitrust class action, representing 36% of

settlement fund).[13]

---

vocational school); Order ¶ 15, ECF No. 1085, *In re Opana ER Antitrust Litig.*, No. 1:14-cv-10150 (N.D. Ill. Nov. 3, 2022) (awarding $50,528,470.66 in attorneys' fees for antitrust class action, representing 36% of settlement fund).

[12] This Court has awarded attorneys' fees of one-third or more in class actions less complex than this case. *See, e.g.*, *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (Kennelly, J.) (36 percent fee in a class action involving the Telephone Consumer Protection Act); *Young v. Cnty. of Cook*, 2017 WL 4164238, at *6 (N.D. Ill. Sept. 20, 2017) (Kennelly, J.) (one-third of a $55 million settlement in case involving civil rights violations and finding that a declining marginal percentage scale is not appropriate); *Macovski v. Groupon, Inc.*, 2022 WL 17256417, at *1 (N.D. Ill. Oct. 28, 2022) (Kennelly, J.) (one-third in class action involving violations of federal securities laws).

[13] *Broiler Chicken*, 2021 WL 5709250, at *4 ("The fact that fee awards in antitrust cases in this circuit are almost always one-third is a strong indication that this should be considered the 'market rate.'"); *Dairy Farmers*, 80 F. Supp. 3d at 845 (in class actions, the "usual range for contingent fees is between 33 and 50 percent"); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered."); *In re Lithotripsy Antitrust Litig.*, 2000 WL 765086, at *2 (N.D. Ill. June 12, 2000) ("33.3% of the fund plus expenses is well within the generally accepted range of attorneys['] fees in class-action antitrust lawsuits."). Similarly, courts nationwide have recognized that contingency fees of one-third (and higher) are common. *See, e.g.*, *Temp. Servs., Inc. v. Am. Int'l Grp., Inc*., 2012 WL 4061537, at *9 (D.S.C. Sept. 14, 2012) ("[T]he market rate for private contingency fees is in the range of 33 1/3 percent to 40 percent."); *Montague v. Dixie Nat. Life Ins. Co*., 2011 WL 3626541, at *2-3 (D.S.C. Aug. 17, 2011) ("Very few class actions are ever litigated to judgment as in this case [and] [i]n non-class contingency fee litigation, a 30% to 40% contingency fee is typical."); *Flournoy v. Honeywell Int'l, Inc*., 2007 WL 1087279, at *2 (S.D. Ga. Apr. 6, 2007) ("Forty percent fee contracts are common for complex and difficult litigation such as this."); *In re Remeron Direct Purchaser Antitrust Litig*., 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005) ("Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation."); *In re Ikon Off. Sols., Inc., Sec. Litig*., 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."); *In re Orthopedic Bone Screws Prods. Liab. Litig*., 2000 WL 1622741, at *7 (E.D. Pa. Oct. 23, 2000) ("[T]he court notes that plaintiffs' counsel in private contingency fee cases regularly negotiate agreements providing for thirty to forty percent of any recovery."); *Cimarron Pipeline Constr., Inc. v. Nat'l Council*

The complexity inherent in antitrust cases generally and the amount recovered here further supports Settlement Class Counsel's fee request. In antitrust class actions of similar complexity, where pre-trial recoveries exceed $100 million, courts routinely award fees of one-third. *See*, *e.g.*, *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09-cv-07666, ECF Nos. 693, 697, 697-1 and 701 (N.D. Ill. 2014) (awarding one-third of $128 million settlement after five years of litigation in the midst of discovery.[14]

While some courts have decreased the percentage as the size of the settlement fund increases, the "Seventh Circuit has expressly rejected a megafund rule because it is a perverse incentive." *Broiler Chicken*, 2021 WL 5709250, at *3 (citing *Synthroid I*, 264 F.3d at 718, which reversed the "district court's fee award in part because it imposed a lower fee percentage because the settlement fund was more than $100 million, holding that [m]arkets would not tolerate that

---

on Comp. Ins., 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *Durant v. Traditional Invs., Ltd.*, 1992 WL 203870, at *4 n.7 (S.D.N.Y. Aug.12, 1992) ("[C]ontingent fee agreements up to 40 percent have been held reasonable.").

[14] *See also Broiler Chicken*, 2021 WL 5709250, at *5 (awarding attorneys' fees of $55 million, which was one-third of $169 million settlement fund (less expenses and incentive awards), in antitrust class action that was settled prior to class certification); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-cv-340, ECF No. 543 (D. Del. Apr. 23, 2009) (one-third of $250 million settlement, settled after over three years of litigation at the commencement of trial); *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (one-third of $163.5 million settlement after three years of litigation, settled on the eve of trial); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *8 (E.D. Tenn. May 17, 2013) (one-third of $158.6 million settlement after five years of litigation, at the close of discovery, with class certification and summary judgment briefed); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 756 (E.D. Pa. 2013) (one-third of $150 million settlement after five years of litigation, following the close of discovery and decisions on class certification and summary judgment; *In re Relafen Antitrust Litig.*, No. 01-12239, ECF No. 297 (D. Mass. Apr. 9, 2004) (one-third of $175 million settlement after a year and a half of litigation, two weeks before trial, following rulings on class certification and summary judgment); *In re Buspirone Antitrust Litig.*, No. 01-cv-07951, ECF No. 22 (S.D.N.Y. Apr. 17, 2003) (one-third of $220 million settlement after two years of litigation, in the midst of fact discovery); *In re: Cardizem CD Antitrust Litig.*, 99-md-01278, ECF No. 724 (E.D. Mich. Nov. 26, 2002) (30 percent of $110 million settlement after four years of litigation, following class certification and summary judgment, with an appeal pending); *In re Vitamins Antitrust Litig.*, 2001 WL 34312839, at *14 (D.D.C. July 16, 2001) (34.6 percent of $365 million settlement, following motions to dismiss and on the heels of guilty pleas by the defendants in parallel DOJ investigations).

effect"). This is because "[c]lients generally want to incentivize their counsel to pursue every last settlement dollar, and a declining percentage award operates to the contrary." *Id.*

### C. One-Third of the Settlement Fund Is Fair and Reasonable Given the Remarkable Recovery for the Class in a Case with Extraordinary Risk, Complexity, and Difficulty

Using the market rate as a guide, courts adjust fee rates obtained in similar cases based on factors unique to the case at hand, such as the risk of nonpayment, the quality of lawyering, the work required, and the stakes of the case. *Synthroid I*, 264 F.3d at 721. Settlement Class Counsel's fee request of one-third is reasonable considering the risk of nonpayment, the quality of lawyering required given the complexity of the case and sophistication of the Settling Defendants and their counsel, the amount of work invested, and the high stakes involved.

#### 1. Risk of Nonpayment

The substantial risk that Settlement Class Counsel assumed in prosecuting this case further warrants a one-third fee from the Settlement Fund. *See Cap. One*, 80 F. Supp. 3d at 805 ("The estimated magnitude of the risk necessarily affects the price at which Class Counsel in this case would have been willing to offer their services in an *ex ante* negotiation, had such a negotiation occurred.") (citing *Synthroid I*, 264 F.3d at 721). When Settlement Class Counsel filed this case almost two and a half years ago, as noted, no government agency had taken any action to prosecute a similar case on behalf of this class. Settlement Class Counsel therefore did not have the advantage of "piggy backing" on pre-existing litigation or the reassurance of liability associated with a coinciding government indictment or guilty plea when they initiated the case on contingency. *See Dairy Farmers*, 80 F. Supp. 3d at 848 ("One proxy for assessing risk is whether the litigation followed on the heels of some prior criminal or civil proceeding

involving the same parties or subject matter. This inquiry provides insight into whether class

counsel benefitted from the work of others.").[15]

Accordingly, Settlement Class Counsel's fee request of one-third is consistent with the

considerable risk assumed in litigating this action with no guarantee of recovery. *See Silverman*

*v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citation omitted) (affirming above-

average fee percentage because district court could have found that the "suit was unusually

risky," and stating: "Contingent fees compensate lawyers for the risk of nonpayment. The greater

the risk of walking away empty-handed, the higher the award must be to attract competent and

energetic counsel."); *Synthroid I*, 264 F.3d at 719 ("The greater the risk of loss, the greater the

incentive compensation required."); *Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007)

(holding that class counsel was undercompensated where "the district court failed to provide for

the risk of loss"); *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569 (7th Cir. 1992)

(emphasizing the need to adjust fee awards to account for risk).

## 2.    The Quality of Performance

"Yet another litmus test for assessing reasonableness is quality of Class Counsel's

performance in achieving the settlement—that is, whether this is the type of outcome that willing

clients would have envisioned from the outset." *Dairy Farmers*, 80 F. Supp. 3d at 849.

Settlement Class Counsel have decades of experience in antitrust litigation (as well as other

complex commercial litigation) and have prosecuted numerous antitrust class actions as lead

counsel or in other leadership positions, which lends the team efficiency and sophisticated

---

[15] If Settlement Class Counsel had not secured the Settlements at issue, the Settlement Class (and
Settlement Class Counsel) may have had to wait years to receive any money from Defendants and may
have received nothing at all. That is because "settlement in a complex antitrust case like this is far from a
foregone conclusion," especially because of the many sophisticated and well-funded Defendants. *Broiler
Chicken*, 2021 WL 5709250, at *3.

litigation judgment. Joint Decl. ¶ 8. Indeed, one member of Settlement Class Counsel, while at the U.S. Department of Justice, spearheaded the successful prosecution of several universities alleged to have colluded regarding financial aid practices prior to the initiation of the 568 Presidents Group. *Id.*; *see Taubenfeld*, 415 F.3d at 600 (affirming fee award based, in part, on "the quality of legal services rendered"); *Williams*, 658 F.3d at 636 (affirming award based, in part, on "the quality of representation").

This case has been bitterly fought and aggressively litigated by both sides and continues to be litigated against the seven non-settling Defendants. Settlement Class Counsel navigated this unusually complicated case from initial investigation through motion to dismiss briefing, through oral argument on those motions, and through a herculean fact discovery effort (including over one million documents reviewed, numerous discovery motions, and over 90 fact depositions), and protracted settlement negotiations, with considerable skill and faithful adherence to the Settlement Class's best interests at every stage.

### 3. Settlement Class Counsel Devoted Extensive Time and Work to Successfully Prosecute This Action

Settlement Class Counsel devoted several years and over 91,313 hours to the preparation and prosecution of this case, which involved complex and unique issues of fact and law. *See Synthroid I*, 264 F.3d at 721 ("The market rate for legal fees depends in part on . . . the amount of work necessary to resolve the litigation."). In zealously and effectively litigating from inception through the conclusion of fact and expert discovery and ultimately to the achievement of the excellent settlements with ten Defendants, Settlement Class Counsel committed substantial time and money with no guarantee of recovery.[16]

---

[16] Antitrust cases are some of the most complex, expensive, and time-consuming actions to prosecute. *See, e.g.*, *In re Motorsports Merch. Antitrust Litig.,* 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000) ("An antitrust

This lawsuit is especially complicated for the many reasons discussed above. Settlement Class Counsel had to grapple with numerous factual and legal obstacles, including contending with individual Defendants or groups of Defendants who were allegedly members of the conspiracy at different times and thus assert unique defenses; contending with FERPA-related issues for objecting students; deconstructing the complex web of higher education and its multiple organizations; developing a common methodology for proving both injury and damages; and many others. *See*, *e.g.*, ECF Nos. 145, 146, 148, 223, 443. The time and labor involved in prosecuting this case, and the novelty and difficulty of the questions presented, further support Settlement Class Counsel's fee request. The Seventh Circuit does not require a lodestar cross-check when using the percentage method. *See Williams*, 658 F.3d at 636 ("[C]onsideration of a lodestar check is not an issue of required methodology.") (citing *Cook*, 142 F.3d at 1013 ("[W]e have never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach.")).[17]

In addition, if considered, the lodestar multiplier supports the appropriateness of the fee request. Settlement Class Counsel worked 91,313.4 hours on this case through March 31, 2024,

---

class action is arguably the most complex action to prosecute."); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2015 WL 5918273, at *6 (E.D.N.Y. Oct. 9, 2015) (prosecuting an antitrust conspiracy required "complex expert analysis and review of mountains of documents"); *Flonase*, 951 F. Supp. 2d at 743 ("Antitrust class actions are particularly complex to litigate and therefore quite expensive."); *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *10 (E.D. Pa. June 2, 2004), *amended*, 2004 WL 1240775 (E.D. Pa. June 4, 2004) (explaining that "an antitrust class action is arguably the most complex action to prosecute," because the "legal and factual issues are always numerous and uncertain in outcome") (citations omitted).

[17] *Schulte*, 805 F. Supp. 2d at 598 (noting that "many courts in this circuit have criticized the use of a lodestar cross-check in common fund cases" when approving fee request with lodestar risk multiplier of 2.5); *Young*, 2017 WL 4164238, at *6 ("The Court finds that one-third of the common fund is a reasonable reflection of the hypothetical market price of Loevy's services in this case and thus an appropriate fee award. For this reason, there is no need to cross-check this percentage against the lodestar.").

amounting to $70,150,911 in lodestar based on historical market rates.[18] Joint Decl. ¶¶ 63-68. A one-third fee award equals a lodestar multiplier of 1.35. *Id.* Such a multiplier falls on the low end of the range routinely awarded by courts in this Circuit. *Harman*, 945 F.2d at 976 (multipliers between 1 and 4 have been approved); *In re TikTok, Inc.*, *Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 943 (N.D. Ill. 2022) (stating that "[i]n practice, most multipliers fall between one and four," and approving a multiplier of 2.04 for a $92 million fund), *appeal dismissed*, 2022 WL 19079999 (7th Cir. Oct. 12, 2022); *Broiler Chicken*, 2021 WL 5709250, at *1 (approving a multiplier of 1.11 for a $169 million settlement).[19]

---

[18] Settlement Class Counsel is conservatively using historical market rates even though use of current billing rates is permitted to account for the delay of payment. *See Smith v. Vill. of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994); *Mather v. Bd. of Trustees of S. Ill. Univ.*, 317 F.3d 738, 744-45 (7th Cir. 2003). The Court has discretion to rely on either current rates or historical rates with interest in its lodestar analysis, "because either method provides [a]n adjustment for delay in payment [which] is . . . an appropriate factor in the determination of what constitutes a reasonable attorney's fee." *Id.* (citations omitted). Settlement Class Counsel respectfully submit that the use of current rates would have been appropriate to account for the passage of time without payment, especially considering the high inflation rates since the filing of this action. *See, e.g.*, *In re Southwest Airlines Voucher Litig.*, 2014 WL 2809016, at *5 n.2 (N.D. Ill. June 20, 2014) (using current rates to account for payment delay and awarding multiplier on current rates to compensate for risk); *see also Smith*, 17 F.3d at 221 (reversing fee award for failure to compensate for delay in payment). The requested multiplier is reasonable under either approach.

[19] *In re NCAA Student-Athlete Concussion Inj. Litig.*, 332 F.R.D. 202, 225 (N.D. Ill. 2019), *aff'd sub nom. Walker v. NCAA*, 2019 WL 8058082 (7th Cir. Oct. 25, 2019) (approving a multiplier of 1.5 for a $70 million settlement); *Standard Iron Works v. ArcelorMittal*, 2014 WL 7781572, at *2-3 (N.D. Ill. Oct. 22, 2014) (approving a fee award of one-third of the settlement fund, equaling a total fee of $54,087,000, with a lodestar multiplier of approximately 1.97); *see also Newberg on Class Actions* § 14.6 (4th ed. 2009) ("[M]ultiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied.")

### 4. The Stakes in the Case

The high stakes of this litigation likewise support the fee request. With treble damages, Plaintiffs' preliminary expert work indicates the Settling Defendants' joint exposure was at least several hundred million dollars. Settlement Class Counsel also had a great deal at stake, taking the case on contingency, expending 91,313.4 hours and over $70 million in uncompensated time to litigate the case, and advancing over $3 million in costs. Joint Decl. ¶¶ 63-75.[20]

## VI. CONCLUSION

Settlement Class Counsel respectfully request, for the reasons set forth above and in the Joint Declaration, that the Court enter an Order (1) approving service awards of $20,000 to each Class Representative, (2) awarding reimbursement of expenses in the amount of $3,508,995.25; and (3) awarding attorneys' fees of one-third of the settlement amount of $284 million, or $94,666,666.70 (and one-third of interest accrued since the settlement amount was escrowed).

---

[20] *See*, *e.g.*, *Heekin v. Anthem, Inc*., 2012 WL 5878032, at *5 (S.D. Ind. Nov. 20, 2012) (class counsel "had a great deal at stake, with the risk of non-payment, burden of advancing litigation costs of over $6 million, and the 'opportunity costs' of turning down other lucrative clients"); *Schulte*, 805 F. Supp. 2d at 598 (observing that "the stakes in the case are high given the size of the Class, the scale of the challenged activity, the complexity and costs of the legal proceedings, and the amount of money involved").

Dated: April 29, 2024

Respectfully Submitted,

/s/ Robert D. Gilbert
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
David Copeland
Natasha Zaslove
**GILBERT LITIGATORS &**
   **COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
dcopeland@gilbertlitigators.com
nzaslove@gilberlitigators.com

/s/ Eric L. Cramer
Eric L. Cramer
Ellen T. Noteware
David Langer
Jeremy Gradwohl
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
enoteware@bm.net
dlanger@bm.net
jgradwohl@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

/s/ Edward J. Normand
Devin "Vel" Freedman
Edward Normand
Joseph Delich
Richard Cipolla
Peter Bach-y-Rita
**FREEDMAN NORMAND**
   **FRIEDLAND LLP**
99 Park Avenue, Suite 1910
New York, NY 10016
Tel: 646-350-0527
vel@fnf.law
tnormand@fnf.law
jdelich@fnf.law
rcipolla@fnf.law
pbachyrita@fnf.law

Ivy Ngo
**FREEDMAN NORMAND**
   **FRIEDLAND LLP**
1 SE 3d Avenue, Suite 1240
Miami, FL 33131
Tel: 786-924-2900
ingo@fnf.law

Daniel J. Walker
Robert E. Litan
Hope Brinn
**BERGER MONTAGUE PC**
1001 G Street, NW, Suite 400 East
Washington, DC 20001
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs*

26