UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00125 |
| Plaintiffs, | **Hon. Matthew F. Kennelly** |
| v. | |
| BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, | |
| Defendants. | |

**JOINT DECLARATION OF EDWARD J. NORMAND, ROBERT D. GILBERT, AND ERIC L. CRAMER IN SUPPORT OF PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SERVICE AWARDS FOR THE CLASS <u>REPRESENTATIVES, REIMBURSEMENT OF EXPENSES, AND ATTORNEYS' FEES</u>**

Under the Court's Order dated February 28, 2024 (ECF No. 638), granting preliminary

approval of the settlements with Defendants Trustees of Dartmouth College, Northwestern

University, William Marsh Rice University, and Vanderbilt University and the Orders

1

preliminarily approving settlements with Defendants Brown University, University of Chicago, The Trustees of Columbia University in the City of New York, Duke University, Emory University, and Yale University,[1] and under 28 U.S.C. § 1746, we declare:

1.     We are partners or shareholders of the law firms Freedman Normand Friedland LLP ("FNF"), Gilbert Litigators & Counselors, PC ("GLC"), and Berger Montague PC ("BMPC"). The Court approved our ourselves and our firms as Settlement Class Counsel, ECF No. 638 at 6, ¶ 6, for the provisionally certified Class for purposes of the Settlements ("Settlement Class"). *See id*. at 5, ¶ 3 (defining Settlement Class). We have been involved in developing, prosecuting, overseeing, and resolving this Action, are familiar with its proceedings, and have personal knowledge of the matters set forth herein. If called upon and sworn as witnesses, each of us would be competent to testify thereto. We respectfully submit this Declaration in Support of Plaintiffs' Memorandum of Law in Support of Their Motion for Service Awards for the Class Representatives, Reimbursement of Expenses, and Attorneys' Fees. Unless otherwise defined herein, all capitalized terms have the same meanings set forth in the Settlement Agreements.

2.     The Settlement Agreements collectively provide for cash payments totaling $284,000,000.00 into a Settlement Fund, as well as provide certain continued discovery for Plaintiffs in their ongoing prosecution of the case against the seven non-settling Defendants. The Settlements reflect the following payments:

- Chicago agreed to make a settlement payment of $13,500,000;
- Emory agreed to make a settlement payment of $18,500,000;

---

[1] These Defendants are collectively referred to as "Settling Defendants." The Settlement Agreements that the Court has preliminarily approved in ECF Nos. 439 (preliminarily approving settlement with Chicago), 614 (preliminarily approving settlements with Brown, Columbia, Duke, and Yale), and 638 (preliminarily approving settlements with Dartmouth, Northwestern, Rice, and Vanderbilt) are collectively referred to as the "Settlements" or "Settlement Agreements."

- Yale agreed to make a settlement payment of $18,500,000;

- Brown agreed to make a settlement payment of $19,500,000;

- Columbia agreed to make a settlement payment of $24,000,000;

- Duke agreed to make a settlement payment of $24,000,000;

- Dartmouth agreed to make a settlement payment of $33,750,000;

- Rice agreed to make a settlement payment of $33,750,000;

- Northwestern agreed to make a settlement payment of $43,500,000; and

- Vanderbilt agreed to make a settlement payment of $55,000,000.

3. The Settlements are an excellent result for the Settlement Class in light of, *inter alia*, the substantial and immediate cash payments (individually and collectively) being made for the benefit of the Settlement Class, the risks and harms associated with delay, Settling Defendants' ongoing discovery obligations under the Settlement Agreements, and the fact that each of the remaining seven non-settling Defendants in the matter is jointly and severally liable for, and capable of paying, the full amount of proved damages, trebled (minus the value of settlements paid as of the date of judgement). Accordingly, and as discussed further below in detail, the Settlements are fair, reasonable, and adequate.

4. This case, as the Court has observed, is unusually complex even for a complex antitrust class action. It has required the management and prosecution of a case with 17 sophisticated, institutional Defendants, represented by a cadre of the best law firms in the country; and it involves conduct spanning over 20 years, concerning a proposed class of approximately 200,000 people; and numerous third parties. Settlement Class Counsel have directed and overseen—and continue to direct and oversee—the work of their own attorneys and professional staff.

5. Settlement Class Counsel, and in particular the undersigned, have been involved in every aspect of this Action. Settlement Class Counsel have collaborated to develop, initiate,

3

litigate, and resolve this case with the Settling Defendants, including conducting extensive pre-filing investigation without the benefit of government involvement or the ability to compel pre-complaint discovery. Settlement Class Counsel have overseen and engaged in extensive fact discovery, which included preparing for and taking 91 depositions of Defendants and third parties; propounding numerous discovery requests to the seventeen Defendants; subpoenaing multiple third parties; negotiating production from Defendants of 1,153,610 documents; reviewing, coding, and understanding the 1,153,610 Defendant documents; reviewing, coding, and understanding the 19,140 documents produced by third parties; overseeing the massive document review process efficiently and effectively; filing seven motions to compel (ECF Nos. 331, 358, 402, 440, 443, 501, 529); collecting, reviewing, and culling the 504,402 documents collected from the eight named Plaintiffs; producing 3,828 documents totaling 7,162 pages from the named Plaintiffs; answering 124 discovery requests of named Plaintiffs; preparing for and defending eight depositions of the named Plaintiffs; and analyzing approximately 240 million rows of structured data. Fact discovery began on December 16, 2022, and certain fact discovery matters continue through the present.

6.      Settlement Class Counsel have also prepared briefing on dozens of dispositive and non-dispositive motions; appeared and prepared for numerous status conferences, arguments, and hearings; overseen the retention and work of a number of experts and consultants; attended numerous mediations and settlement discussions both in person and by tele and video conference; negotiated the ten Settlements; and presided over the Settlement process for all ten Settling Defendants, including the class notice and the allocation plan; and if the Settlements are approved, are expected to oversee the claims process for tens of thousands of members of the Settlement Class. Settlement Class Counsel have necessarily dedicated

substantial time and resources leading the prosecution of this Action on a contingent basis, collectively spending a total of 91,313.4 hours with a total lodestar (at historical rates) of $70,150,911.00.[2]

7.      Settlement Class Counsel respectfully submit, for the reasons set forth below and in the accompanying memorandum of law, that the Court should grant the requests for service awards for the Class Representatives, for reimbursement of expenses, and for attorneys' fees, as each request is reasonable and amply supported by the record and law.

## PROSECUTION OF THE ACTION

8.      Settlement Class Counsel have decades of experience in antitrust litigation and have prosecuted numerous antitrust class actions as lead counsel or in other leadership positions, which lends the team efficiency and sophisticated litigation judgment.. Indeed, one member of Settlement Class Counsel, while at the U.S. Department of Justice, spearheaded the successful prosecution of several universities alleged to have colluded regarding financial aid practices prior to the initiation of the 568 Presidents Group. Settlement Class Counsel from FNF and GLC, joined by BMPC later in the process but well before the case was filed, engaged in extensive pre-filing investigation of Defendants' conduct and in connection with the 568 Exemption. Settlement Class Counsel also researched and analyzed the legislative history of the 568 Exemption, and researched, particularly under Seventh Circuit law, joint and several liability issues, damages issues, class certification issues, the law of conspiracy, statute of limitations issues, and potential defenses. This legal research included analysis of the U.S. Justice

---

[2] "Historical rates" are the rates in effect during the period the attorneys and other professionals billed the time. Using historical rates is considered conservative given that all work performed was on contingency. The alternative approach would be to use "current rates," which are the rates counsel currently charge for all time billed in the case from initiation to the present.

Department litigation against the Overlap Group in the 1990s. In addition, in preparing the Complaint, Settlement Class Counsel retained and worked with a consulting economist concerning damages and other quantification issues.

9. Working with the Plaintiffs, Settlement Class Counsel investigated and drafted the original, Amended, and Second Amended Complaints. *See* ECF No. 1 (Complaint); ECF No. 106 (Amended Complaint, Feb. 15, 2022); ECF No. 308 (Second Amended Complaint, Feb. 6, 2023). The Second Amended Complaint added a defendant[3] and, as the operative Complaint, alleges that Defendants violated Section 1 of the Sherman Act, 15 U.S.C. § 1.

10. On April 15, 2022, Defendants filed three motions to dismiss—one by all Defendants; one by Brown, Emory, Johns Hopkins, and Chicago; and one by Yale. Settlement Class Counsel collectively strategized on the response to the motions. Settlement Class Counsel spent many hours researching and drafting the opposition to the motions. GLC took the lead on the initial drafting of significant portions of the opposition brief, with FNF and BMPC playing substantial roles in parallel researching and drafting. FNF took the subsequent lead in drafting. Plaintiffs filed their combined brief in opposition to the motions on June 10, 2022. *See* ECF No. 164. On July 15, 2022, Defendants filed replies to their motions to dismiss. *See* ECF Nos. 176, 177, 178. On August 2, 2022, the Court held oral argument on the motions, which Mr. Normand handled on behalf of Settlement Class Counsel and the Plaintiffs. On August 15, 2022, the Court denied Defendants' motions. *See* ECF No. 185.

11. Settlement Class Counsel have zealously represented Plaintiffs and the Settlement Class throughout this matter, including with respect to fact discovery. To manage fact discovery

---

[3] Shortly after filing the Complaint, Settlement Class Counsel discovered that Johns Hopkins University had formally joined the 568 Presidents Group on or around October 18, 2021. Plaintiffs subsequently amended the Complaint to add Johns Hopkins as a Defendant.

efficiently across the seventeen Defendants, Settlement Class Counsel split up the Defendants, giving each firm primary responsibility for certain universities, though all counsel continued to engage in strategy discussions and involve each other where appropriate. In addition, Settlement Class Counsel divided up responsibilities by issues, with FNF taking the lead on discovery relating to the alleged unlawful conduct and initial discovery of wealth favoritism, and co-leading the work with Plaintiffs' experts on impact and damages; GLC taking the lead on developing discovery related to Defendants' eligibility for the antitrust exemption and ongoing discovery of wealth favoritism; and BMPC taking the lead on discovery relating to class certification, and co-leading the work with Plaintiffs' experts in impact and damages. In many cases, work on these distinct issues was interrelated, requiring coordination among two or all three firms, to ensure consistency in strategy and execution and to benefit from the experience, case knowledge, and talents of professionals at each of the firms.

12.     In the early stages of discovery, Settlement Class Counsel negotiated with Defendants and proposed a protocol for Production of Electronically Stored Information. *See* ECF No. 261. This protocol followed lengthy meet-and-confer sessions with Defendants as detailed in three status reports, *see* ECF Nos. 222, 245, 256, and submission of competing, proposed protocols to the Court for resolution. *See* ECF No. 256. In addition, Settlement Class Counsel negotiated and drafted a Confidentiality Order governing designation of confidential information and disclosure of that information to counsel, witnesses, and third parties. *See* ECF No. 254. The Confidentiality Order was subsequently amended twice on consent given additional needs surrounding the need for and use of information regarding donors to Defendant Universities and donor-linked applicants. *See* ECF Nos. 416, 608. After conferring with co-

counsel, BMPC took the lead in drafting, proposing, and advocating for the overall case schedule, which the Court adopted in significant part. *See* ECF No. 195.

13.     Settlement Class Counsel has held weekly joint video conferences to discuss overall litigation strategy and ensure effective and efficient completion of tasks, including document and deposition discovery from parties and non-parties, coordinating with experts, discussing key documents and testimony, and organizing the factual record for various litigation purposes. FNF and GLC played primary roles managing these meetings, with FNF developing a weekly task list and GLC typically facilitating discussion. Settlement Class Counsel has also had separate regular weekly calls of the senior leadership at each firm to discuss and coordinate on overall litigation and settlement strategy. These meetings have allowed for effective and efficient coordination and management of this sprawling litigation against seventeen Defendants, and involving multiple third parties, and numerous experts.

14.     Settlement Class Counsel engaged in extensive written discovery, both offensively and defensively. Settlement Class Counsel collectively drafted and served 192 Requests for Production ("RFPs") on all Defendants, which Plaintiffs ultimately reduced to 96 common RFPs. Settlement Class Counsel also served certain other Defendant-specific requests. Settlement Class Counsel also served a total 45 interrogatories and 42 Requests for Admission on Brown, Caltech, and Johns Hopkins, and 45 Requests for Admission on the other Defendants.

15.     Settlement Class Counsel engaged in numerous negotiations with Defendants regarding the production of documents in response to Plaintiffs' RFPs. Some of these meet-and-confers involved all Defendants, while others were negotiated between individual Defendants and the firms responsible for those Defendants. Meet-and-confers involved negotiating which RFPs Defendants would respond to, the temporal scope of the productions, the custodians whose

files responsive documents and data would be produced, the ESI sources to be searched, and the search terms that would be used to locate responsive documents. These meet-and-confer sessions resulted in many compromises that helped avoid formal disputes before the Court. Ultimately, Defendants produced 1,153,610 documents totaling 4,928,324 pages and approximately 240 million rows of structured data.

16.     Settlement Class Counsel also identified multiple non-parties with relevant information and knowledge and served document subpoenas on the following entities:

| ENTITY | DATE SERVED |
| --- | --- |
| Carnegie Mellon University | March 6, 2023 |
| Claremont McKenna College | September 28, 2023 |
| College Board | December 4, 2023 |
| Consortium on Financing Higher Education (COFHE) | August 16, 2023 |
| Harvard University | March 6, 2023 |
| Haverford College | September 28, 2023 |
| Middlebury College | June 6, 2023 |
| Princeton University | March 6, 2023 |
| Stanford University | March 6, 2023 |
| Washington University | March 6, 2023 |
| Williams College | September 28, 2023 |

These subpoenas resulted in the production, collectively, of an additional 11,640 documents totaling 56,736 pages, which Settlement Class Counsel reviewed and analyzed. Defendants also obtained documents from an additional 28 third parties, which led to the production of another

7,500 documents totaling 61,353 pages. Collectively, third parties produced 19,140 documents totaling 118,089 pages.

17.    To host and review the 1,165,250 documents produced by Defendants and third parties and the 504,502 documents collected for the Plaintiffs, Settlement Class Counsel retained Ricoh as the vendor for the eDiscovery platform Relativity. In addition to storing the case documents, Relativity has many features that allow for efficient document review and case management. Among many others, Relativity offers the following features that Settlement Class Counsel utilized throughout the case:

- A mechanism for running complex Boolean searches of documents using an optical character recognition scan (OCR) performed on all documents loaded into the platform;

- Customizable coding panels to allow attorneys to review and categorize documents for later use in the litigation;

- De-duplication of documents that have been produced identically or nearly identically to avoid unnecessary re-review of the same document;

- A batching tool that allows attorneys to group large sets of documents into chunks to assign to reviewing attorneys;

- A continuous active learning tool that uses human coding of documents to train an algorithm to prioritize documents for review in order of likely relevance; and

- Document analytics that allow counsel to track progress on document review.

As the Relativity vendor, Ricoh provided ongoing support to Settlement Class Counsel in loading productions, troubleshooting, assisting counsel in constructing effective searches,

implementing the continuous active learning tool on certain of Defendants' productions, creating numerous coding panels, and creating document analytics reports.

18.     Settlement Class Counsel necessarily and reasonably spent enormous time and effort organizing, reviewing, summarizing, and analyzing these documents for use in depositions and in anticipation of discovery disputes, expert reports, class certification, summary judgment, and trial. While each firm retained responsibility for reviewing the documents for the Defendants and any third parties assigned to it, FNF took a leadership role in developing an initial document review guide for all attorneys reviewing documents and holding weekly sessions with reviewing attorneys across the three firms to provide generalized feedback and education to those engaged in document review. In addition, each firm retained its own internal processes for managing document review for the specific universities and non-parties assigned to it.

19.     For the approximately 450,000 Defendant and third-party documents exceeding 1.9 million pages that FNF was responsible for reviewing, FNF designed a review pane and coding options, and senior attorneys "trained" the artificial intelligence relevance algorithm by reviewing a subset of documents. FNF then tasked a team of attorneys to review and code the documents and synthesize the key information to prepare for depositions and build cases against its assigned Defendants. A group of attorneys performed "first reads" of documents, sequentially prioritized using an artificial intelligence program, and provided weekly reports to the FNF lawyer overseeing the process. FNF associates and discovery counsel then performed quality control reviews and provided ongoing feedback to first-level reviewers to improve the accuracy of their coding. In addition, FNF's in-house staff counsel, with the weekly guidance from FNF attorneys, would prioritize schools ahead of key depositions by reviewing documents identified targeted searches and reviewing existing deposition transcripts to create a corpus of potential

exhibits for each deposition. FNF associates or staff counsel then performed a second cull of the documents generated by discovery counsel based on their knowledge and experience with the case, bringing the total number of potential documents to around 200. The deposition taking attorneys then reviewed these documents and ultimately selected the documents to be used as exhibits in the 52 depositions FNF attorneys took and the three depositions that FNF attorneys second-chaired.

20.      For its assigned Defendants, GLC was responsible for reviewing the approximately 472,000 documents exceeding 1.8 million pages. GLC first designed a panel of coding options to facilitate identification and efficient recall of documents relevant and probative to a variety of contested issues in the case. After senior attorneys "trained" the document vendor's artificial intelligence ("AI") relevance algorithm by reviewing a subset of documents, GLC then assembled a team of attorneys to review and code the documents and to compile the key information and documents in preparation for use in depositions and to build cases against its assigned Defendants. The senior attorneys provided initial training on the known facts and theory of the case to the team of attorneys responsible for reviewing the documents. This team then performed a first-level review of all documents, prioritized by likely relevance using the vendor's AI algorithm and based on the schedule of upcoming depositions. The attorneys reviewing the documents first provided daily and eventually weekly reports to the senior GLC lawyers with documents judged to be highly relevant and probative. GLC senior lawyers reviewed these reports and documents, performed quality control reviews, and provided ongoing feedback to the attorneys doing first-level review to improve the accuracy of the first-level coding. In addition to weekly discovery attorney meetings among all counsel reviewing documents among all Plaintiffs' firms in this case, GLC held internal weekly meetings amongst

its own team of attorneys responsible for reviewing documents to address questions and to discuss new developments and themes. GLC discovery attorneys also worked to prepare senior attorneys responsible for writing briefs and taking depositions by running targeted searches and reviewing existing deposition transcripts to create a corpus of potential exhibits for each deposition. GLC associates then further refined the documents generated by discovery counsel based on their knowledge and experience with the case to condense the documents identified as potential exhibits to around 150-200. The lead attorneys taking each deposition then reviewed these potential exhibits and selected the final list of documents to be used in the 24 depositions taken by GLC attorneys and 7 additional depositions supported and second-chaired by GLC attorneys.

21.     For the approximately 250,000 Defendant and third-party documents exceeding 1.2 million pages that BMPC was responsible for reviewing, BMPC put together a team of multiple attorneys to review and code the documents and synthesize the key information in order to prepare for depositions and build cases against their assigned Defendants. After BMPC provided initial training to attorneys involved in the document review on the known facts and theory of the case, a group of attorneys performed "first reads" of documents, sequentially prioritized using an artificial intelligence program, and provided weekly reports to the BMPC lawyer charged with overseeing the process regarding the documents deemed to be highly relevant and probative. BMPC associates and discovery counsel then performed quality control reviews of the first-level document review and provided ongoing feedback to the attorneys doing first-level review to improve the accuracy of the initial coding. In addition to performing quality control work, BMPC's in-house discovery counsel, with the weekly guidance and feedback from associates and other attorneys at the firm, worked to prepare attorneys taking depositions by

13

running targeted searches and reviewing existing deposition transcripts to create a corpus of

potential exhibits for each deposition. BMPC associates then performed a second cull of the

documents generated by discovery counsel based on their knowledge and experience with the

case, with the goal of bringing the total number of potential documents to around 200. The

deposition taking attorneys would then review the 200 documents that were deemed candidates

for potential deposition exhibits and ultimately select the documents to be used as exhibits in the

17 depositions BMPC attorneys took and 3 depositions BMPC attorneys second chaired.

22.     After extensive negotiations between Settlement Class Counsel and multiple

Defendants' Counsel, Defendants produced structured data reflecting the admissions and

financial aid data for over 100,000 applicants and enrolled students at Defendant Universities.

With respect to such structured data, Settlement Class Counsel, primarily BMPC, liaised

between Defendants and Plaintiffs' expert consultants in many meet-and-confers and in multiple

emails between Settlement Class Counsel and Defendants' Counsel. These negotiations extended

over ten months and were necessary to make sense of the approximately 240 million lines of

structured data Defendants produced, all in unique ways and containing thousands of variables

and derived from different financial aid database systems. BMPC attorneys met at least weekly

with Defendants and communicated with experts, often several times a week in lengthy and

highly detailed emails, any new information learned from Defendants and discussed any

additional questions raised by the meet-and-confers.

23.     In terms of defensive discovery, Settlement Class Counsel prepared Plaintiffs'

Initial Disclosures. Plaintiffs received from Defendants 29 Requests for Production. Settlement

Class Counsel, led by FNF, drafted responses to these Requests for Production after extensive

14

discussions with Plaintiffs regarding documents and data in their possession and the location of information responsive to Defendants' Requests for Production.

24.     Settlement Class Counsel also led negotiations with Defendants over Plaintiffs' Responses to the Requests for Production and negotiated custodians, ESI sources, search terms, temporal scope, and limitations on what would be produced based on burden, relevance, and privacy concerns. This process involved extensive discussions with Class Representatives regarding sources and retention, search terms that were likely to return responsive documents, and the role of each potential custodian.

25.     After the production had been negotiated and production vendor, Ricoh, had been retained for the document production, Settlement Class Counsel worked with Plaintiffs to identify all locations of responsive documents and then collect and produce those documents. Once the documents had been collected, Settlement Class Counsel coded, reviewed, and redacted those documents and then determined which documents were appropriate to produce, ultimately producing more than 4,000 documents.

26.     Settlement Class Counsel, through FNF and GLC, worked with Plaintiffs to review their financial aid and college applications, emails, and social media accounts.

27.     With FNF taking the lead, Settlement Class Counsel also drafted responses to Defendants' 45 interrogatories (served on September 19, 2022 and September 30, 2023) and 50 requests for admission (served on September 30, 2023). Settlement Class Counsel worked with Plaintiffs to ensure accurate responses to these interrogatories. This entailed thorough reviews of Plaintiffs' college applications, admissions decisions, and financial aid award letters. Settlement Class Counsel served objections and responses for Defendants' First Set of Interrogatories on October 19, 2022 and supplemented these responses on June 27, 2023, June 28, 2023, June 29,

2023, and August 24, 2023. Settlement Class Counsel responded to Defendants' Second Set of Interrogatories and Requests for Admission on October 30, 2023. Settlement Class Counsel supplemented the responses to Defendants' Second Set of Interrogatories on February 7, 2024.

28.     Settlement Class Counsel, primarily FNF and GLC, drafted and filed numerous motions to compel compliance with the document requests and Confidentiality Order and also defended against various motions to compel and motions for protective orders. *See*, *e.g.*, ECF Nos. 275, 276, 331, 355, 402, 440, 443, 471, 497, 501, 528, 652. GLC took the lead on motions regarding wealth favoritism issues, which were a majority of the discovery disputes, including conducting argument on such motions.

29.     Given that discovery has involved students' educational records, Settlement Counsel analyzed the requirements of the Family Educational Rights and Privacy Act ("FERPA") and drafted and finalized multiple briefs on those issues. GLC primarily handled those issues, which were closely intertwined with wealth favoritism discovery disputes, and coordinated with FNF and BMPC as to particular Defendants on these issues.

30.     Because many witnesses in this matter are not within the Court's power to compel testimony at trial, depositions are particularly important in a case like this with witnesses that are geographically dispersed. The depositions must serve both as part of a necessary campaign of discovery, but also as testimony for trial. Settlement Class Counsel, with FNF handling the majority, took the 83 Defendant depositions. FNF took primary responsibility for taking the eight non-party depositions, as well as defending nearly all the eight Class Representative depositions.

31.     In preparation for the 91 depositions in this case, Settlement Class Counsel identified key documents to be used at each deposition, prepared extensive deposition outlines, and coordinated deposition strategy and questioning across the firms.

16

32.      Settlement Class Counsel collectively examined these 91 fact witnesses in

depositions spanning approximately eleven months—with the first deposition taking place on

May 15, 2023. Most of these depositions lasted for a full business day. Thirty-six of the

depositions were in person, requiring travel. In addition, certain fact witnesses were also

designated as 30(b)(6) designees, requiring preparation to identify and use documents and ask

questions in the witness's individual and corporate capacity. In the time spent participating in

these depositions, Settlement Class Counsel also spent many hundreds of hours preparing to take

those fact depositions—including reviewing over a million documents—and then summarizing

those depositions. Frequently, to take advantage of the talents, experience, and specific case

knowledge across the firms, attorneys from multiple firms were involved with the preparation of

each deposition, even if they were not undertaking the primary examination. The fact

depositions, including witness names and affiliations, deposition dates, the examining attorneys,

and attorneys who attended and assisted in the preparation for the depositions, are as follows:

| WITNESS | AFFILIATION | DATE(S) | PRIMARY FIRM/ EXAMINING ATTORNEY | OTHER FIRM/ ATTORNEYS PRESENT AND/OR ASSISTED |
|---|---|---|---|---|
| James Tilton | Brown University | 5/15/23 | GLC: Robert Gilbert | GLC: Steven Magnusson<br><br>FNF: Peter Bach-y-Rita; Richard Cipolla |
| Jeff Sassorossi | Dartmouth College | 5/17/23 | FNF: Ted Normand | FNF: Richard Cipolla; Vel Freedman; Peter Bach-y-Rita |
| Stuart Schmill | MIT | 6/28/23 | BMPC: Hope Brinn | |

| WITNESS | AFFILIATION | DATE(S) | PRIMARY FIRM/ EXAMINING ATTORNEY | OTHER FIRM/ ATTORNEYS PRESENT AND/OR ASSISTED |
|---|---|---|---|---|
| Melissa Costanzi | Georgetown University | 6/29/23 | GLC: Robert Gilbert | GLC: Steven Magnusson |
| Scott Wallace -Juedes | Yale University | 7/7/23 | BMPC: Ellen Noteware | BMPC: Hope Brinn |
| John McLaughlin | University of Pennsylvania | 7/12/23 | GLC: Robert Raymar | GLC: Sarah Schuster; David Copeland |
| Brent Tener | Vanderbilt University | 7/12/23 | GLC: Robert Gilbert | GLC: Steven Magnusson <br><br> BMPC: Robert Litan |
| Leslie Bridson | MIT | 7/13/23 | BMPC: Hope Brinn | BMPC: Ellen Noteware |
| Karl Furstenberg | Dartmouth College | 7/14/23 | FNF: Ted Normand | FNF: Richard Cipolla; Vel Freedman |
| Morton Schapiro | Northwestern University | 7/18/23 | GLC: Robert Gilbert | BMPC: Hope Brinn |
| Caesar Storlazzi | Yale University | 7/27/23 | BMPC: Daniel Walker | |
| Elaine Varas | University of Pennsylvania | 8/2/23; 3/18/24 | GLC: Robert Raymar | GLC: Steven Magnusson |
| John Gaines | Vanderbilt University | 8/3/23 | GLC: Robert Gilbert | GLC: David Copeland |
| Donald Bishop | University of Notre Dame | 8/16/23 | FNF: Ted Normand | FNF: Peter Bach-y-Rita |
| Joan O'Neill | Yale University | 8/17/23 | BMPC: Ellen Noteware | |
| Tom McDermott | Johns Hopkins University | 8/18/23 | FNF: Ted Normand | FNF: Richard Cipolla |

| WITNESS | AFFILIATION | DATE(S) | PRIMARY FIRM/ EXAMINING ATTORNEY | OTHER FIRM/ ATTORNEYS PRESENT AND/OR ASSISTED |
|---|---|---|---|---|
| Lee Coffin | Dartmouth College | 8/22/23 | FNF: Ted Normand | FNF: Richard Cipolla |
| Miranda McCall | Duke University | 8/29/23 | FNF: Ted Normand | FNF: Peter Bach-y-Rita |
| Edward Malloy | University of Notre Dame | 9/7/23 | FNF: Ted Normand | FNF: Peter Bach-y-Rita |
| Kathryn Tuman | Columbia University | 9/8/23 | GLC: Elpidio Villarreal | GLC: Flor Melgar |
| Anne Walker | Rice University | 9/8/23 | FNF: Ted Normand | FNF: Joe Delich |
| Michael Hall | Columbia University | 9/13/23 | GLC: Elpidio Villarreal | GLC: Natasha Zaslove |
| Malina Chang | Caltech | 9/13/23 | FNF: Ted Normand | FNF: Peter Bach-y-Rita |
| Janice Coleman | Duke University | 9/15/23 | FNF: Ted Normand | FNF: Peter Bach-y-Rita |
| Jessica Marinaccio | Columbia University | 9/18/23 | GLC: Elpidio Villareal | GLC: Natasha Zaslove; Steven Magnusson |
| Christopher Watson | Northwestern University | 10/10/23 | GLC: Robert Gilbert | BMPC: Hope Brinn |
| McGreggor Crowley | MIT | 10/11/23 | BMPC: Robert Litan | |
| Sara Harberson | University of Pennsylvania | 10/25/23 | GCL: Robert Raymar | GLC: Natasha Zaslove |
| Matthew Lewis | Georgetown University | 10/27/23 | BMPC: Daniel Walker | GLC: Steven Magnusson |
| Thomas Keane | Cornell University | 10/27/23 | FNF: Ted Normand | FNF: Vel Freedman; Ivy Ngo |

| WITNESS | AFFILIATION | DATE(S) | PRIMARY FIRM/ EXAMINING ATTORNEY | OTHER FIRM/ ATTORNEYS PRESENT AND/OR ASSISTED |
|---|---|---|---|---|
| Mary Nucciarone | University of Notre Dame | 11/1/23 | FNF: Ted Normand | FNF: Peter Bach-y-Rita |
| Valerie Youmans | Georgetown University | 11/7/23 | GLC: Robert Gilbert | GLC: Steven Magnusson |
| Charles Deacon | Georgetown University | 11/9/23 | GLC: Robert Gilbert | GLC: Steven Magnusson; David Copeland |
| Eric Furda | University of Pennsylvania | 11/16/23 | FNF: Ted Normand | GLC: Natasha Zaslove |
| Kathryn Osmond | Wellesley College | 11/16/23 | FNF: Richard Cipolla | FNF: Peter Bach-y-Rita |
| Becky Maxson | Cornell University | 11/17/23 | FNF: Vel Freedman | FNF: Richard Cipolla |
| Joel Carstens | University of Pennsylvania | 11/21/23 | FNF: Richard Cipolla | GLC: Natasha Zaslove |
| Shawn Felton | Cornell University | 11/30/23 | FNF: Joe Delich | FNF: Mendel Kokinov |
| Joseph Russo | University of Notre Dame | 11/30/23 | FNF: Ted Normand | FNF: Peter Bach-y-Rita |
| Douglas Christiansen (x) | Vanderbilt University | 12/1/23 | GLC: Robert Gilbert | GLC: David Copeland |
| Paul Mueller | University of Notre Dame | 12/6/23 | FNF: Joe Delich | FNF: Peter Bach-y-Rita |
| Thomas Bear | University of Notre Dame | 12/7/23 | FNF: Joe Delich | FNF: Peter Bach-y-Rita |
| Patricia McWade | Georgetown University | 12/8/23 | BMPC: Hope Brinn | GLC: Steven Magnusson |

20

| WITNESS | AFFILIATION | DATE(S) | PRIMARY FIRM/ EXAMINING ATTORNEY | OTHER FIRM/ ATTORNEYS PRESENT AND/OR ASSISTED |
|---|---|---|---|---|
| Jason Locke | Cornell University | 12/11/23 | FNF: Joe Delich | FNF: Ivy Ngo; Vel Freedman |
| Jennifer Lesar | MIT | 12/12/23 | BMPC: Hope Brinn | BMPC: Jeremy Gradwohl |
| Matthew Sessa | University of Pennsylvania | 12/15/23 | FNF: Richard Cipolla | GLC: Natasha Zaslove |
| Doris Davis | Cornell University | 12/15/23 | FNF: Joe Delich | FNF: Mendel Konikov |
| Ian Waitz | MIT | 12/15/23 | BMPC: Ellen Noteware | |
| Ashley Pallie | Caltech | 12/15/23 | FNF: Vel Freedman | FNF: Peter Bach-y-Rita |
| Glen Shor | MIT | 12/21/23 | BMPC: Robert Litan | |
| Diane Corbett | Cornell University | 1/8/24 | FNF: Vel Freedman | FNF: Mendel Konikov |
| David Phillips | Johns Hopkins University | 1/8/24 | FNF: Ted Normand | FNF: Richard Cipolla |
| Phillip Spector | Johns Hopkins University | 1/16/24 | FNF: Richard Cipolla | |
| Shannon Cullinan | University of Notre Dame | 1/18/24 | FNF: Joe Delich | FNF: Mendel Konikov |
| Jarrid Whitney | Caltech | 1/19/24 | FNF: Vel Freedman | FNF: Peter Bach-y-Rita; Albert Sabater |
| Jeffrey Gall | Georgetown University | 1/19/24 | BMPC: Ellen Noteware | GLC: Steven Magnusson |
| Janet Rapelye | Consortium on Financing Higher Education | 1/22/24 | FNF: Ted Normand | FNF: Peter Bach-y-Rita; Richard Cipolla |

| WITNESS | AFFILIATION | DATE(S) | PRIMARY FIRM/ EXAMINING ATTORNEY | OTHER FIRM/ ATTORNEYS PRESENT AND/OR ASSISTED |
|---|---|---|---|---|
| John Affleck-Graves | University of Notre Dame | 1/24/24 | FNF: Ted Normand | FNF: Joseph Delich; Peter Bach-y-Rita |
| Melissa Costanzi | Georgetown University | 1/25/24 | GLC: Robert Gilbert | GLC: Steven Magnusson |
| Paul Streeter | Cornell University | 1/26/24 | FNF: Ivy Ngo | FNF: Mendel Konikov; Thomas Trabue |
| Elizabeth Hicks | MIT | 2/8/24 | BMPC: Ellen Noteware | BMPC: Jeremy Gradwohl |
| Andrew Koenig | Georgetown University | 2/13/24 | GLC: Robert Gilbert | GLC: Steven Magnusson; David Copeland |
| Peter Wyatt | Johns Hopkins University | 2/15/24 | FNF: Ted Normand | FNF: Joe Delich |
| John DeGioia | Georgetown University | 2/16/24, 4/1/24 | GLC: Robert Gilbert | GLC: Steven Magnusson<br><br>BMPC: Hope Brinn |
| Helene Grady | Johns Hopkins University | 2/21/24 | FNF: Richard Cipolla | |
| Barbara Knuth | Cornell University | 2/21/24 | FNF: Joe Delich, | FNF: Vel Freedman, Mendel Konikov |
| Don Betterton | Princeton University | 2/22/24 | FNF: Ted Normand | FNF: Peter Bach-y-Rita; Richard Cipolla |
| Bob Millard | MIT | 2/27/24 | BMPC: Ellen Noteware | BMPC: Hope Brinn |
| Robert Mundy | University of Notre Dame | 2/29/24 | FNF: Joe Delich | FNF: Peter Bach-y-Rita; Mendel Konikov |

| WITNESS | AFFILIATION | DATE(S) | PRIMARY FIRM/ EXAMINING ATTORNEY | OTHER FIRM/ ATTORNEYS PRESENT AND/OR ASSISTED |
|---|---|---|---|---|
| Nikki Chun | Caltech | 3/1/24 | FNF: Vel Freedman | FNF: Albert Sabater; Peter Bach-y-Rita; Richard Cipolla |
| Kim Downs-Burns | Middlebury College | 3/5/24 | FNF: Ted Normand | FNF: Peter Bach-y-Rita; Richard Cipolla; Bianca Nachmani |
| Robert Donaghey | Middlebury College | 3/6/24 | FNF: Richard Cipolla | FNF: Peter Bach-y-Rita |
| Sharon Patterson | Caltech | 3/8/24 | FNF: Richard Cipolla | FNF: Vel Freedman; Albert Sabater |
| Megan Arleth | Consortium on Financing Higher Education | 3/8/24 | BMPC: Hope Brinn | FNF: Peter Bach-y-Rita |
| Brian Hill | Carnegie Mellon University | 3/14/24 | FNF: Joe Delich | FNF: Vel Freedman |
| Penn 30(b)(6) | University of Pennsylvania | 3/18/24; 3/26/24 | GLC: Robert Raymar | GLC: Natasha Zaslove |
| Caltech 30(b)(6) | Caltech | 3/20/24 | FNF: Vel Freedman | FNF: Albert Sabater, Richard Cipolla |
| MaryFrances McCourt | University of Pennsylvania | 3/22/24 | FNF: Joe Delich | FNF: Vel Freedman; Richard Cipolla, Mendel Kokinov |
| Sarah Donahue | Harvard University | 3/26/24 | FNF: Ted Normand | FNF: Peter Bach-y-Rita |
| University of Pennsylvania 30(b)(6) | University of Pennsylvania | 3/26/24 | GLC: Robert Raymar | GLC: Rina Niyogi; Natasha Zaslove<br><br>FNF: Richard Cipolla |

| WITNESS | AFFILIATION | DATE(S) | PRIMARY FIRM/ EXAMINING ATTORNEY | OTHER FIRM/ ATTORNEYS PRESENT AND/OR ASSISTED |
|---|---|---|---|---|
| Stanford 30(b)(6) | Stanford University | 3/27/24 | FNF: Ted Normand | FNF: Peter Bach-y-Rita; Richard Cipolla; Vel Freedman |
| Heather Nichols | Cornell University | 3/28/24 | FNF: Ivy Ngo | FNF: Joseph Delich |
| John Zeller | University of Pennsylvania | 3/28/24 | GLC: Robert Raymar | GLC: Natasha Zaslove |
| Sandra Baum | College Board | 3/29/24 | FNF: Ted Normand | FNF: Richard Cipolla, Peter Bach-y-Rita |
| Bart Moore | Georgetown University | 3/29/24 | GLC: Robert Gilbert | GLC: Steven Magnusson |
| Johns Hopkins 30(b)(6) | Johns Hopkins University | 4/1/24 | FNF: Richard Cipolla | FNF: Joseph Delich; Vel Freedman |
| Marilee Jones | MIT | 4/2/24 | BMPC: Ellen Noteware | BMPC: Hope Brinn |
| Notre Dame 30(b)(6) | Notre Dame | 4/3/24 | FNF: Ted Normand | FNF: Joseph Delich |
| New York University 30(b)(6) | New York University | 4/12/24 | FNF: Joseph Delich | FNF: Ted Normand |
| Amherst College 30(b)(6) | Amherst College | 4/12/24 | FNF: Joseph Delich | |
| MIT 30(b)(6) | MIT | 4/23/24; 5/2/24 | BMPC: Ellen Noteware; Hope Brinn | |

33. FNF and GLC also collectively defended eight depositions of the named Plaintiffs. Each of those depositions took the better part of a full day. In addition to defending the depositions, Settlement Class Counsel also spent dozens of hours preparing the named Plaintiffs for their depositions, including assembling relevant materials and meeting with all deponents. Each of the named Plaintiff depositions, including witness names and affiliations, deposition dates, and the participating attorneys is listed in the chart below as follows:

| WITNESS | AFFILIATION | DATE(S) | PRIMARY FIRM/ DEFENDING ATTORNEY |
|---|---|---|---|
| Alexander Leo-Guerra | Duke University | August 25, 2023 | FNF: Richard Cipolla |
| Brandon Piyevsky | Northwestern University | August 28, 2023 | FNF: Richard Cipolla |
| Cameron Williams | Vanderbilt University | September 7, 2023 | FNF: Richard Cipolla |
| Andrew Corzo | University of Chicago | September 8, 2023 | FNF: Richard Cipolla |
| Benjamin Shumate | Brown University | September 12, 2023 | FNF: Richard Cipolla |
| Sia Henry | Duke University | September 15, 2023 | FNF: Richard Cipolla |
| Michael Maerlender | Vanderbilt University | September 18, 2023 | FNF: Richard Cipolla |
| Brittany Tatiana Weaver | Vanderbilt University | November 14, 2023 | GLC: Natasha Zaslove |

34. With FNF taking the lead, FNF and GLC also facilitated the collection and production of documents from the named Plaintiffs' parents pursuant to a subpoena by the

Defendants. FNF attorneys also prepared and defended half-day depositions of two of the named Plaintiffs' parents.

35.     Given the importance of the economic issues, Settlement Class Counsel retained multiple economists, in testifying and consulting capacities, to perform such roles as: (a) assisting attorneys with the initiation of the case; (b) providing information for the settlement process, including by computing damages and helping to devise an allocation plan; (c) examining and analyzing the structured data produced by Defendants and other relevant publicly available data and documents to facilitate the discovery process; (d) helping counsel secure the data needed to assess the alleged conspiracy and its impact and damages; (e) conducting economic analyses for class certification, summary judgment, and trial; and (f) preparing expert reports. Settlement Class Counsel, with FNF and BMPC handling almost all of the work, have devoted many hundreds of hours to working with experts, and facilitating provision of information to experts, for the various tasks described herein.

36.     Settlement Class Counsel also oversaw the retention of two higher-education experts to assist with discovery, litigation, and settlement. These experts assisted in obtaining documents concerning Defendants from public sources and understanding the financial aid landscape, including the intersection of private and public funding, in elite higher education.

37.     Settlement Class Counsel have worked together on all briefing. At times, the firms divided briefing into sections and then worked together to edit the brief and turn it into a coherent whole. At other times, one firm would take the lead on researching and drafting a brief while the other two firms would provide drafting and research support, as well as editing. With respect to general litigation matters, FNF generally handled oral argument. With respect to

discovery issues involving wealth favoritism, GLC generally handled oral argument. With respect to settlement matters, BMPC generally handled presentations before the Court.

38.     The Court has closely and carefully monitored this case. Approximately every four to six weeks, the parties filed joint status reports and attended status conferences with the Court. In total, the parties have thus far filed 25 joint status reports, *see* ECF Nos. 107 (2/15/22); 132 (3/15/22); 188 (8/26/22); 222 (10/14/22); 245 (11/7/22); 252 (11/21/22); 255 (12/2/22); 256 (12/5/22); 274 (1/13/23); 319 (2/10/23); 329 (3/6/23); 344 (4/6/23); 377 (6/9/23); 394 (7/11/23); 422 (8/4/23); 431 (8/17/23); 450 (10/3/23); 464 (10/16/23); 525 (11/22/23); 589 (1/11/24); 615 (2/15/24); 633 (2/26/24); 644 (3/5/24); 649 (3/15/24); 662 (3/29/24), and attended seven status conferences (in addition to hearings on other matters, some of which included informal status conferences at the conclusion), *see* ECF Nos. 123 (2/22/22); 352 (4/20/23); 388 (6/16/23); 412 (7/24/23); 436 (8/24/23); 627 (2/22/24); 656 (3/22/24).

39.     At the Court's request, joint status reports covered topics including case schedules, confidentiality orders, protocol for electronically stored information, FERPA issues, designation of custodians, deposition limits, use of unique identifiers for redactions of the names of donors and donor-linked applicants, production delays, production of financial aid formulae, and the negotiated special protective order. Each joint status report required ongoing back-and-forth negotiations with Defendants, including meet-and-confers, which often resulted in resolution of numerous discovery and case-management issues. Following the filing of many of these joint status reports, the Court would hold conferences to discuss certain outstanding issues either telephonically, through videoconference, or in person. Settlement Class Counsel worked together to prepare argument on the outstanding issues brought before the Court, designating a partner or shareholder most directly involved in the relevant issue to address the Court.

**THE SETTLEMENTS**

40.     Plaintiffs entered into Settlement Agreements with ten Defendants during a period spanning between seventeen months and two years of hard-fought litigation.

41.     The parties had an early mediation with former U.S. District Judge Layn Phillips and two additional mediators working with him: Miles Ruthberg and Clay Cogman. That mediation failed. Believing that it would be easier and strategically beneficial to resolve the case piecemeal, rather than globally, Settlement Class Counsel began by negotiating an icebreaker settlement with Chicago in the weeks and months before filing for preliminary approval of that settlement on September 9, 2023. As it would be the first settlement, Settlement Class Counsel understood both that it, and the related papers and agreements, would inevitably become a template for further settlements and discussions. Settlement Class Counsel worked hard to ensure that the first settlement was represented as an "icebreaker" so that it was clear that Plaintiffs gave a discount to the first Defendant to settle, which discount would materially diminish with successive resolutions. Settlement Class Counsel also distinguished Chicago as an outlier for a variety of substantive reasons. Because Chicago would be the first settlement, and there was significant time left for discovery, Settlement Class Counsel needed to ensure that Chicago would provide robust continuing discovery obligations, including obligations to produce structured data, and also be assured that it would produce witnesses for trial. Settlement Class Counsel also needed to negotiate each aspect of the long-form settlement agreement, including the class definition, the payment terms, the release, the provisions for termination of the settlement, and more. Settlement Class Counsel also needed to develop, with their experts, an allocation plan for the class members; a notice plan and forms of notice to the Settlement Class; and establish an escrow agreement to hold the settlement funds. These would become templates

28

for additional settlements, though each successive settlement involved certain additional amendments, edits, and changes to the papers to the extent negotiated and appropriate.

42.     Once the Chicago settlement was announced, Settlement Class Counsel began negotiating with additional Defendants. For a variety of strategic and other reasons, Emory, Brown, and Yale were up next. Settlement Class Counsel worked with mediators Ruthberg and Cogman in several of these negotiations. Settlement Class Counsel worked hard to ensure that each successive settlement or group of settlements occurring in or around the same time would include more money than the last. Ultimately, Plaintiffs reached agreements in principle with Emory and Yale for $18.5 million and then with Brown for $19.5 million (plus continuing discovery obligations). Using the Chicago settlement agreement and other papers as a point of departure, Plaintiffs negotiated long-form agreements with these three Defendants. Following this grouping, Settlement Class Counsel next negotiated with Columbia and Duke, ultimately reaching resolution at the same time for $24 million each.

43.     With $118 million now in settlements, Plaintiffs moved for preliminary approval of the "Second Tranche" of settlements. To do so, Settlement Class Counsel needed to create a new notice plan; new and updated forms of notice; a new escrow agreement; and an updated allocation plan. Even as these papers were being drafted and then filed, Settlement Class Counsel were negotiating with the next group of schools: Dartmouth and Rice. Plaintiffs ultimately reached resolution with these schools for $33.75 million each (plus continuing discovery obligations) in or around the same time. Settlement Class Counsel then negotiated a settlement with Northwestern for $43.5 million (plus continuing discovery obligations) with the assistance of the mediators. Finally, to round out this "Third Tranche" of settlements, Settlement Class Counsel negotiated an agreement with Vanderbilt for $55 million (plus continuing discovery

29

obligations). For this Third Tranche of settlements, Settlement Class Counsel needed to prepare updated notice plans and notices; a further revised allocation plan; a new escrow agreement, and a new set of preliminary approval papers. Settlement Class Counsel worked to ensure that the class definition remained consistent throughout, and where changes were necessary, ensured that all Settling Defendants agreed to adopt the revisions. Settlement Class Counsel also endeavored to ensure that other aspects of each settlement were consistent across the settlements, while also being flexible enough to make changes where a particular Defendant had an issue that Settlement Class Counsel felt could fairly be resolved through compromise.

44.     In pressing and pursuing these negotiations, Settlement Class Counsel had multiple meetings by phone, video conference, and in person; prepared talking points on substantive factual and legal matters sometimes in writing and sometimes for oral presentation; worked with our economic and other consultants to explain our damages methodology and the rationales for the various settlement demands and also to respond to the substantive arguments made by Defendants as part of the negotiations. These negotiations were complicated, given the number of parties involved. They also involved Settlement Class Counsel's strategic application of a process of moving up the settlement dollar ladder with each successive settlement or group of settlements. In this way, Defendants would be incentivized to settle, and do so sooner, or possibly be forced to pay more. Moreover, given joint and several liability and no contribution or claims reduction, with each successive settlement, the remaining non-settling Defendants' exposure to treble damages grows significantly. Settlement Class Counsel successfully used these dynamics to benefit the Settlement Class.

45.     Prior to the execution of each long-form settlement agreement, Settlement Class Counsel would first reach an agreement in principle with each Defendant, sometimes committed

to writing in a term sheet and sometimes not. Settlement Class Counsel would then need to negotiate the long-form settlement agreements with each, and also prepare all of the preliminary approval papers, including a motion, memorandum of law, allocation plan, escrow agreement, joint declaration, notice plan, proposed long-form notice, proposed summary notice, and proposed order. Once all of those papers were completed and agreed to, Settlement Class Counsel would then finalize and execute settlement agreements with each Settling Defendant.

46. Settlement Class Counsel ultimately negotiated settlements with the following, class definition:

a. All U.S. citizens or permanent residents who have during the Class Period (a) enrolled in one or more of Defendants' full-time undergraduate programs, (b) who received at least some need-based financial aid from one or more Defendants, and (c) whose tuition, fees, room, or board to attend one or more of Defendants' full-time undergraduate programs was not fully covered by the combination of any types of financial aid or merit aid (not including loans) in any undergraduate year.[1] The Class Period is defined as follows:

   i. For Chicago, Columbia, Cornell, Duke, Georgetown, MIT, Northwestern, Notre, Rice, Vanderbilt, Yale – from Fall Term 2003 through February 28, 2024.

   ii. For Brown, Dartmouth Emory – from Fall Term 2004 through February 28, 2024.

   iii. For Caltech – from Fall Term 2019 through February 28, 2024.

   iv. For Johns Hopkins – from Fall Term 2021 through February 28, 2024.

b. Excluded from the Class are:

   i. Any Officers[2] and/or Trustees of Defendants, or any current or former employees holding any of the following positions: Assistant or Associate Vice Presidents or Vice Provosts, Executive Directors, or Directors of Defendants' Financial Aid and Admissions Offices, or any Deans or Vice Deans, or any employees in Defendants' in-house legal offices; and

   ii. the Judge presiding over this action, his or her law clerks, spouse, and any person within the third degree of relationship living in the Judge's household and the spouse of such a person.

[1] For avoidance of doubt, the Class does not include those for whom the total cost of attendance, including tuition, fees, room, and board for each undergraduate academic year,

was covered by any form of financial or merit aid (not including loans) from one or more Defendants.

[2] For the avoidance of doubt, the Columbia University "Officers" excluded from the Class are members of the Senior Administration of Columbia University, and do not include exempt employees of Columbia University who are referred to as officers.

47. Every Settlement Agreement contains provisions for continued discovery, tailored to each Settling Defendant given the discovery already and the information needed to effectively prosecute the case against the remaining Defendants, and ensure witnesses at trial. Seven of the ten Settlements contain provisions allowing for interviews of certain key witnesses or attorney proffers, designed to lead to sworn declarations from those witnesses on relevant issues. The three Settlements without provisions allowing for witness interviews (Columbia, Dartmouth, and Rice) require Defendants to either provide declarations without witness interviews or submit to other types of discovery such as additional interrogatories.

48. All Settling Defendants agreed that if the need were to arise, and an authenticity or hearsay objection was made by one or more Defendants regarding documents or data produced in the litigation, Settling Defendants would provide a declaration concerning authenticity and facts relevant to the application of the business records exception to the hearsay rule for documents or data qualifying as business records. In the event that such declarations were to be deemed insufficient to meet the requirements for the business records exception, Settling Defendants have each agreed to provide a trial witness for the sole purpose of providing support for the authenticity of the documents or data or the applicability of the business records exception for those documents and data.

49. Most Settling Defendants agreed to pay 50 percent of the settlement amount into the escrow fund within the later of (i) 30 calendar days after entry by the Court of preliminary

32

approval order on the docket of the Action, or (ii) 14 calendar days after Settlement Class Counsel provided Settling Defendants payment instructions.

50.     After substantial negotiations, all Settling Defendants also agreed to a provision permitting termination of the Settlements if more than 650 Settlement Class Members chose to opt out of the Settlements. The Court ordered notice program began on March 29, 2024.

51.     At the request of several Settling Defendants and following considerable negotiations, Settlement Class Counsel agreed to language included in all Settlement Agreements designed to preserve Settling Defendants' rights to recover monies from any relevant insurance policies, while also ensuring that Settlement Class Counsel's ability to prosecute the case was in no way diminished.

52.     After the parties agreed to settle with the Chicago, BMPC solicited proposals from multiple claims administrators and, in consultation with the other Settlement Class Counsel, selected Angeion Group. BMPC also worked with the bank selected to serve as the escrow agent for the Settlement Fund, Huntington Bank, on the necessary documentation.

53.     BMPC took the lead in drafting the preliminary approval papers—a motion, memorandum of law, joint declaration, allocation plan, escrow agreement, notice plan, proposed long-form notice, proposed summary notice, and proposed order—for all ten Settlements, with other Settlement Class Counsel providing ongoing support. Drafting these documents involved extensive correspondence with the proposed settlement claims administrator, the proposed escrow agent, and counsel for each of the Settling Defendants. Plaintiffs filed motions on August 14, 2023, January 23, 2024, and February 23, 2024 (ECF Nos. 428, 603, 629). The Court heard argument on these motions on August 24, 2023, February 12, 2024, and February 28, 2024 (ECF Nos. 436, 613, 637), respectively.

54.     The Court granted preliminary approval for all of the settlements—for Chicago on September 9, 2023; for Brown, Columbia, Duke, Emory, and Yale on February 14, 2024; and for Dartmouth, Northwestern, Rice, and Vanderbilt on February 28, 2024 (ECF Nos. 439, 614, 638). In preliminarily approving the settlements, the Court provisionally certified the Class, appointed FNF, GLC, and BMPC as Settlement Class Counsel, appointed Angeion Group as the claims administrator, appointed Huntington Bank as escrow agent, approved Settlement Class Counsel's notice plan, and set a schedule for final approval.

55.     Under the Court's February 28, 2024 Order granting preliminary approval for the third tranche of settlements and approving a schedule for completing the Settlement process, on March 29, 2024, the summary notice was emailed to hundreds of thousands Settlement Class Members, publication notice through various media sources was commenced, and long-form notice was mailed to 37,169 individuals for whom no email addresses were available, so that all members of the Settlement Class were put on notice that Settlement Class Counsel would seek these fees, costs, and service awards. With the caveat that members of the Settlement Class have until May 13, 2024 to object to or opt out of the Settlements, at present no individuals have objected and only three have sought to exclude themselves from the Settlements (one of whom appears not to be a member of the Settlement Class).[4]

56.     As of this date, more than forty thousand (40,000) Settlement Class Members have signed up with the claims administrator for updates about the Action and Settlements.

## **LITIGATION RISK**

57.     This case presents litigation risks on the merits that could have resulted in no recovery for the Settlement Class. Defendants have asserted multiple challenges to the merits of

---

[4] One of the three individuals who opted out stated in her request for exclusion that she did not receive need-based financial aid from a Defendant.

Plaintiffs' claims, including that: (a) the statute of limitations excludes the vast majority of the Settlement Class and proposed class; (b) the relevant market is much broader than Plaintiffs assert, and Defendants therefore lack sufficient market power to cause anticompetitive effects; (c) the activities of the Defendants did not violate the antitrust laws; (d) the *per se* rule does not apply, and Defendants have procompetitive justifications for engaging in the alleged conduct that would survive a rule of reason analysis; and (e) certain Defendants are not liable or less liable because of their withdrawal from the 568 Presidents' Group.

58.     While Plaintiffs continue to vigorously dispute Defendants' arguments, defenses, and assertions, there is always the risk of adverse outcomes on these and other issues, and the possibility of lengthy delays (including due to appeals) remains. Antitrust class actions are "arguably the most complex action(s) to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) (quoting *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003)); *see also Kleen Prods. LLC v. Int'l Paper Co.*, 2017 WL 5247928, at *5 (N.D. Ill. Oct. 17, 2017) ("Antitrust cases are particularly complex and risky.")

59.     Settlement Class Counsel reasonably expect Defendants to fight class certification aggressively (including with a potential interlocutory appeal to the Seventh Circuit), as well as to file for summary judgment. Defendants have already asserted that they intend to challenge application of the discovery rule to the statute of limitations. Other outstanding legal issues include whether the *per se* or rule of reason mode of analysis applies; whether Defendants can maintain antitrust immunity while considering the socioeconomic status, including wealth, of an applicant's family in making admissions decisions; and whether a late-joining co-conspirator can be liable for prior acts of the conspiracy the co-conspirator supposedly did not know were

35

unlawful. In addition, numerous factually intense issues will likely be raised at summary judgment, including whether and to what extent Defendants applied the consensus methodology; whether and to what extent Defendants agreed to common principles of needs analysis or financial aid; whether any Defendants' purported withdrawals from the alleged conspiracy meet the standard required for withdrawal; whether and to what extent the proposed class was injured; and whether some or all Defendants admitted full-time, domestic undergraduate applicants on a need-aware basis. Moreover, assuming Plaintiffs survive summary judgment in whole or part, Plaintiffs would then need to win before a jury and hold any verdict on appeal before class members would see benefits absent these Settlements.

60.    We have collectively prosecuted numerous antitrust class actions as lead counsel or in other leadership positions. We have each personally negotiated many class and non-class litigation settlements. In our opinion, the settlement agreements with the ten Defendants are fair, reasonable, and adequate. The Settlements avoid the delay and uncertainty of continued protracted litigation against these Defendants. They provide substantial benefits to members of the Settlement Class through compensation and ongoing discovery requirements—Settlement Class Members are expected to recover on average about $2,000 each from these Settlements alone. In addition, the non-settling Defendants remain jointly and severally liable for the entire corpus of damages trebled, less the aggregate settlement value.

## SERVICE OF THE CLASS REPRESENTATIVES

61.    The eight Settlement Class Representatives—Andrew Corzo, Sia Henry, Alexander Leo-Guerra, Michael Maerlender, Brandon Piyevsky, Benjamin Shumate, Brittany Tatiana Weaver, and Cameron Williams— have each made and continues to make significant contributions to prosecuting this case against Defendants for the benefit of all members of the

Settlement Class. The Class Representatives each actively protected the interests of the Settlement Class by filing suit on behalf of the Settlement Class and undertaking all responsibilities involved in being a named Plaintiff in a class action, including: (1) monitoring the progress of the case; (2) retaining documents relevant to the case; (3) searching for and providing tens of thousands of documents each to Settlement Class Counsel for review and production to Defendants; and (4) preparing for and sitting for depositions.

62.     Without Settlement Class Representatives' participation in the litigation, the Settlement Class would have recovered nothing. Accordingly, the proposed service awards of $20,000 for each of the eight Settlement Class Representatives are well-deserved.

## **LODESTAR**

63.     Declarations in support of the lodestar and expenses of each firm involved in litigating the case are attached hereto as Exhibits 1 through 3. These Declarations provide the names of the attorneys and professional support staff who worked on the Action, their hourly rates (at the time the work was conducted) and number of hours billed, the lodestar value (at historical rates), and the expenses incurred by the firms. Settlement Class Counsel reviewed and audited the time and expense of each firm, including their own, to ensure that: (1) any time for work not authorized by Settlement Class Counsel and non-litigation-related time was removed; and (2) unreasonable or unapproved costs and expenses were removed. For example, time entries for unnecessary read and review and ministerial activities unrelated to litigation activities were eliminated and not included in this fee and expense application. Additionally, Settlement Class Counsel are not seeking fees for work done in connection with preparing the fee and expense application. The historical hourly rates charged by Settlement Class Counsel are reasonable,

based on each person's position, experience level, and location, and have been approved by multiple courts in similar antitrust class actions.

64.     Attached hereto as Exhibit 1 is a true and correct copy of the Declaration of Eric L. Cramer in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and for Service Awards for the Class Representatives. Mr. Cramer is the Chairman of Berger Montague PC, one of the Settlement Class Counsel firms in this Action. Attached as Exhibit A to Mr. Cramer's Declaration is a true and correct summary identifying the Berger Montague attorneys, paralegals, and other staff who have worked on this litigation, the number of hours those individuals worked, their hourly billing rates and their respective lodestar values. Exhibit A sets forth Berger Montague's total hours and lodestar, by year at historical rates from inception of the case through and including March 31, 2024. The total number of hours spent by Berger Montague during this period was 22,351.1, with a corresponding total lodestar calculated at historical rates of $17,053,643.00. Exhibit A also sets forth Berger Montague's total hours and lodestar using a blended hourly[5] rate for each attorney and professional staff member for the period from inception of the case through and including March 31, 2024. The Declaration describes the litigation activities performed by Berger Montague attorneys and staff in this Action. Attached as Exhibit B to Mr. Cramer's Declaration is a schedule identifying a total of $856,533.14 in unreimbursed costs and expenses, including contributions to the litigation fund (that Settlement Class Counsel established to pay for the major expenses in the case), in

---

[5] A "blended rate" is the weighted average of each professional's hourly rate over the course of the entire case. For instance, if a lawyer who worked only during 2 years of the case billed 500 hours during year 1 of the case at a rate of $300/hour and 1000 hours during year 2 of the case at $310/hour, the blended hourly rate would be (500 hours x $300/hour) plus (1000 hours x $310/hour) divided by 1500 hours for a blended hourly rate of $306.67/hour.

connection with the prosecution of the Action from inception of the case through and including March 31, 2024.

65.     Attached hereto as Exhibit 2 is a true and correct copy of the Declaration of Robert D. Gilbert in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Litigation Expenses.  Mr. Gilbert is a Managing Partner of Gilbert Litigators & Counselors, P.C., one of the Settlement Class Counsel firms in this Action. Attached as Exhibit A to Mr. Gilbert's Declaration is a true and correct summary identifying the Gilbert Litigators attorneys, paralegals, and other staff who have worked on this litigation, the number of hours those individuals worked, their hourly billing rates and their respective lodestar values. Exhibit A sets forth Gilbert Litigators' total hours and lodestar, by year at historical rates from inception of the case through and including March 31, 2024. The total number of hours spent by Gilbert Litigators during this period was 36,232.3, with a corresponding total lodestar calculated at historical rates of $31,368,140.00. Exhibit A also sets forth Gilbert Litigators' total hours and lodestar using a blended hourly rate for each attorney and professional staff for the period from inception of the case through and including March 31, 2024. The Declaration describes the litigation activities performed by Gilbert Litigators attorneys and staff in this Action. Attached as Exhibit B to Mr. Gilbert's Declaration is a schedule identifying a total of $1,007,668.00 in unreimbursed costs and expenses, including contributions to the litigation fund, in connection with the prosecution of the Action from inception of the case through and including March 31, 2024.

66.     Attached hereto as Exhibit 3 is a true and correct copy of the Declaration of Edward Normand in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, for Reimbursement of Expenses, and for Service Awards for the Class Representatives. Mr. Normand is a partner of the law firm Freedman Normand Friedland LLP, one of the Settlement

Class Counsel firms in this Action. Attached as Exhibit A to Mr. Normand's Declaration is a true and correct summary identifying the Freedman Normand Friedland LLP attorneys, paralegals, and other staff who have worked on this litigation, the number of hours those individuals worked, their hourly billing rates and their respective lodestar values. Exhibit A sets forth Freedman Normand Friedland LLP's total hours and lodestar, by year at historical rates from inception of the case through and including March 31, 2024. The total number of hours spent by Freedman Normand Friedland LLP during this period was 32,730, with a corresponding total lodestar calculated at historical rates of $21,729,128. Exhibit A also sets forth Freedman Normand Friedland LLP 's total hours and lodestar using a blended hourly rate for each attorney and professional staff for the period from inception of the case through and including March 31, 2024. The Declaration describes the litigation activities performed by Freedman Normand Friedland LLP attorneys and staff in this Action. Attached as Exhibit B to Mr. Normand's Declaration is a schedule identifying a total of $996,717.71 in unreimbursed costs and expenses, including contributions to the litigation fund, in connection with the prosecution of the Action from inception of the case through and including March 31, 2024.

67.   The following table shows the total hours and total lodestar using historical rates for each of the Settlement Class Counsel firms for this litigation:

| FIRM | HOURS | LODESTAR |
|---|---|---|
| Freedman Normand Friedland | 32,730 | $21,729,128.00 |
| Gilbert Litigators & Counselors | 36,232.3 | $31,368,140.00 |
| Berger Montague PC | 22,351.1 | $17,053,643.00 |
| *TOTALS* | 91,313.40 | $70,150,911.00 |

68.     Experienced attorneys at Settlement Class Counsel firms undertook tasks appropriate for their levels of expertise, skill, and experience. Throughout the prosecution of this Action, work assignments were allocated among Settlement Class Counsel in a manner that was intended to promote efficiency and avoid unnecessary duplication of effort.

**EXPENSES**

69.     Settlement Class Counsel have advanced all expenses required to litigate this Action, despite knowing that they might not recover any of these expenses. Settlement Class Counsel incurred reasonable out-of-pocket expenses, including expert fees, consulting costs, filing fees, computer research, deposition transcripts and court reporting, travel and accommodations, data storage and organization, and subpoena-related expenses.

70.     The assistance of economic experts has proved and will continue to prove critical in prosecuting this complex antitrust conspiracy case. Because discovery spans seventeen Defendants over two decades, Defendants have produced approximately 240 million lines of structured data. Defendants produced these data disparately, as they are housed in different software systems and track different variables. For instance, one Defendant's need analysis data contains approximately 2,000 unique variables. Settlement Class Counsel's economic experts therefore must undertake the enormous task of standardizing, cleaning, and combining the produced data into usable datasets from which information regarding the pricing effects of the alleged conspiracy can be derived.

71.     The following table shows Settlement Class Counsel's reasonable unreimbursed out-of-pocket expenses (excluding contributions to the litigation fund for joint expenses that are discussed below) in this case:

41

| FIRM | NON-LITIGATION FUND EXPENSES |
|---|---|
| Freedman Normand Friedland LLP | $90,717.71 |
| Gilbert Litigators & Counselors, P.C. | $173,668.00 |
| Berger Montague PC | $196,533.14 |
| TOTAL | $460,918.85 |

72.  The majority of unreimbursed expenses incurred were paid out of a litigation fund escrow account. Settlement Class Counsel collectively contributed $2,400,000.00 to the litigation fund. Unreimbursed expenses that have been paid from the litigation fund are shown below:

| LITIGATION FUND / DISBURSEMENTS | |
|---|---|
| EXPENSE CATEGORY | AMOUNT |
| Expert Consulting Fees | $1,584,504.07 |
| E-Discovery/Hosting Vendor Fees | $148,029.80 |
| Court Reporting, Transcript Services, Subpoena-Related Costs | $144,424.08 |
| Mediation Costs | $156,490.75 |
| Litigation Support Services | $265,127.25 |
| Investigative Services | $100,712.00 |
| TOTAL | $2,399,287.95 |

73.  Unreimbursed expenses that are outstanding and due are shown below:

| LITIGATION FUND / OUTSTANDING INVOICES | |
|---|---|
| EXPENSE CATEGORY | AMOUNT |
| Expert Consulting Fees | $539,325.50 |

| | |
|---|---|
| E-Discovery Vendor Fees | $0.00 |
| Court Reporting, Process Server, and Transcript Services | $108,750.90 |
| *TOTAL* | $648,076.40 |

74.     The total amount of Settlement Class Counsel's request for cost reimbursement is $3,508,995.25, which is the total of unreimbursed out-of-pocket expenses, litigation fund expenditures, and outstanding invoices.

75.     The amounts expended by each firm are shown in the individual Declarations attached hereto as Exhibits 1 to 3.

## CONCLUSION

76.     Settlement Class Counsel respectfully submit, for the reasons set forth above and in the accompanying memorandum of law, that the attorneys' fee application, the expense application, and request for service awards for the eight Class Representatives are reasonable and amply supported by the record and law.

I certify under penalty of perjury that the foregoing is true and correct. Executed on April 29, 2024, in New York, NY.

*/s/ Edward Normand*
Edward Normand
**FREEDMAN NORMAND**
 **FRIEDLAND LLP**
99 Park Avenue, Suite 1910
New York, NY 10016
Tel: (646) 350-0527
tnormand@fnf.law

43

I certify under penalty of perjury that the foregoing is true and correct. Executed on April 29, 2024, in Henderson, NV.

/s/ Robert D. Gilbert
Robert D. Gilbert*
**GILBERT LITIGATORS
 & COUNSELORS**
11 Broadway, Suite 615
New York, NY 10004
Tel: (646) 448-5269
rgilbert@gilbertlitigators.com

I certify under penalty of perjury that the foregoing is true and correct. Executed on April 29, 2024, in Philadelphia, PA.

/s/ Eric L. Cramer
Eric L. Cramer*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19106
Tel: (215) 875-3000
ecramer@bm.net