**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,

Defendants.

Case No.: 1:22-cv-00125

**Hon. Matthew F. Kennelly**

**FILED UNDER SEAL**

**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO REOPEN THE 30(B)(6) DEPOSITION OF DEFENDANT MIT AND TO COMPEL MIT TO PROVIDE A DESIGNEE KNOWLEDGEABLE ABOUT CERTAIN LIMITED TOPICS**

Plaintiffs respectfully submit this Motion and Memorandum of Law in support for (i) leave to reopen the 30(b)(6) deposition of Defendant Massachusetts Institute of Technology ("MIT") for a limited amount of time (2 hours); and (ii) to compel MIT to provide a designee

knowledgeable about certain of the wealth-favoritism topics (Topics 7-13) contained in Plaintiffs' 30(b)(6) Notice to MIT.[1] The designee that MIT produced for deposition on Topics 7-13 on May 2, 2024 was not adequately prepared to address the agreed upon topics, including key aspects of MIT's admissions practices, in particular the relationship between MIT's Admissions Office and Office of Resource Development, which is centrally relevant to the question of whether MIT followed truly "need-blind" undergraduate admissions practices.

MIT consistently resisted searching the files from Resource Development custodians using search terms,[2] citing the burden and lack of relevance of such information. Even without providing Plaintiffs with more than a smattering of Resource Development documents, as shown below, there is evidence that MIT treated applicants affiliated with wealthy donors differently than those who were less economically advantaged. The documents produced and testimony provided prior to May 2 raised questions concerning (among other things) the interactions between MIT Resource Development and Admissions Offices. Plaintiffs had expected to be provided with the opportunity to question an MIT 30(b)(6) designee with sufficient knowledge concerning the wealth-favoritism topics listed in Plaintiffs' 30(b)(6) deposition notice on May 2.

Because MIT's designee for Topics 7-13, Mr. David duKor-Jackson, was neither sufficiently personally knowledgeable about certain of the agreed-upon topics nor adequately prepared on those topics (which are highly relevant to this case) prior to the deposition, Plaintiffs respectfully request that the Court allow Plaintiffs to reopen the deposition and order MIT to produce a knowledgeable witness concerning the issues identified below for two hours of deposition time. Having successfully resisted producing documents from their Resource

---

[1] *See* Ex. 1, Feb. 2, 2024 Notice of 30(b)(6) deposition to MIT.

[2] Plaintiffs received only 11 Resource Development documents from MIT that they gathered on a "go get" basis. *See* Ex. 2, Jan. 5, 2024 Prod. Letter from X. Tu.

Development Office concerning admission of candidates connected to wealthy donors, MIT should not be permitted to avoid answering questions about their development practices relating to admissions by proffering a witness who lacks sufficient knowledge of those practices. Providing an appropriate witness would be minimally burdensome to MIT; it does not require burdensome custodial searches or production of additional documents. Plaintiffs merely seek a few hours of testimony from a witness knowledgeable about the intersection between MIT's Resource Development and MIT Admissions Offices.

**BACKGROUND**

On February 2, 2024, Plaintiffs served a 30(b)(6) Notice on MIT. *See* Ex.1. MIT agreed to provide a knowledgeable witness concerning Topics 7-13, a portion of Topic 23, and Topics 32-33 for deposition on May 2, 2024. *See* Ex. 3, Transcript of May 2, 2024 Deposition of David duKor-Jackson ("Tr.") at 10:20-11:10. Prior to May 2, Plaintiffs had taken nine prior individual depositions of MIT-affiliated witnesses and had also taken slightly more than 4.5 hours of 30(b)(6) deposition testimony on other topics not relating to wealth favoritism in MIT admissions.

[redacted]:

- [redacted]



MIT selected its current Director of Admissions, David duKor-Jackson as its designee on the wealth-favoritism 30(b)(6) topics, including Topics 7-13. As shown below, Mr. duKor-Jackson, while knowledgeable about certain issues, was clearly not sufficiently prepared to discuss or knowledgeable concerning the relationship between MIT's Admissions and Resource Development Offices, as requested in Plaintiffs' 30(b)(6) Notice.

On May 2, 2024, in a related meet-and-confer, Plaintiffs raised with MIT's counsel that they believed Mr. duKor-Jackson was inadequately prepared. Four days later, on May 6, 2024, Plaintiffs' counsel wrote MIT counsel and requested an additional two hours of deposition time with an adequately prepared witness on Topics 7-13. Ex. 15, May 6, 2024 Letter from E. Noteware to MIT counsel. In a letter dated, May 7, 2024, despite the fact that (as shown below) Mr. duKor-Jackson admitted that he lacked knowledge of certain key topics, MIT declined to provide an adequately prepared witness for follow-up questioning. Ex. 16, May 7, 2024 Letter from J. Rybnicek to E. Noteware. MIT faulted Plaintiffs for failing to use a significant portion of the less than two-and-a-half hour deposition to ask Mr. duKor-Jackson about his preparation, which was clear from his testimony. On the substance, the Parties disagree about the adequacy of the testimony. The Parties met and conferred telephonically in an effort to resolve their disagreement on May 9 prior to the filing of the present motion but were unable to reach an agreement.[3]

Prior to the deposition, MIT resisted providing Plaintiffs with documents from MIT's Resource Development Office because MIT has indicated that Resource Development played no role in MIT Admissions process. As shown above, the documentary and testimonial evidence suggest that is not the case. Mindful of the burden that discovery of MIT Resource Development's presumably massive files and data would have, Plaintiffs simply seek answers to a few questions that remain unanswered. MIT would not incur much burden in providing an adequately prepared witness for an additional two hours of deposition time.

## LEGAL STANDARD

[3] MIT offered written responses to questions posed by Plaintiffs' counsel; Plaintiffs insist on a short deposition so that they are able to ask necessary follow-up questions.

Pursuant to Federal Rule of Civil Procedure 30(a)(2)(A)(ii), a party seeking to depose a witness who has already been deposed in the case must obtain leave from the court, which "must grant leave to the extent consistent with Rule 26(b)(1) and (2)." Under Rule 30(d)(1), a court must allow additional time for a deposition "if needed to fairly examine the deponent, or if the deponent, another person, or any other circumstance impedes or delays the examination." The court has broad discretion and "should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function of the particular case before the court." *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 681 (7th Cir. 2002).

## ARGUMENT

### A. MIT's 30(b)(6) Designee Was Not Sufficiently Knowledgeable or Prepared to Discuss the Key Wealth-Favoritism Topics Contained in Plaintiffs' 30(b)(6) Notice About Which MIT Agreed to Testify

Plaintiffs' 30(b)(6) Notice sought, and MIT agreed to provide a witness who was knowledgeable about, *inter alia,* the following topic:



Topic 13 During your membership in the 568 Group, any role that the Development Office had during the admissions process including:

(1) [ ] any policies governing the interactions between the Development Office and the Admissions Office;

(2)

(3) any incidents in which Development personnel were aware that donors or MIT personnel interceded in admissions decisions, and

(4)

1. **MIT's designee could not answer questions concerning the position and the policies governing that position, both of which were covered by Topic 13.**

MIT's 30(b)(6) designee was unable to answer basic questions about the that were the subject of Topic 13. For example, during the deposition, Plaintiffs' counsel introduced MIT's job posting for a position entitled, the individual who was expected to Ex. 17, duKor-Jackson Ex. 2, MITLIT-000659228, at -229; *see also* Ex. 3, Tr. at 13:3-14. MIT's job description for the further stated that was required to *Id.* at 13:18-14:14. At the deposition, MIT's designee testified that *Id.* at 14:20-15:19 (testifying that ).

Whether and how MIT, like other Defendants, tracked admissions cases related to wealthy donors or prospective donors is not only covered by Topic 13, but is highly relevant to the question of whether MIT engaged in wealth favoritism in its admissions process. It would not be burdensome for MIT to provide a witness who was either personally aware of through education about the system. Mr. duKor-Jackson testified that the current would know about . *Id.* at 15:4-19.

MIT's designee was also unfamiliar with , which was also discussed in the



[redacted], which stated that the [redacted] Mr. duKor-Jackson testified: [redacted] *Id.* at 15:23-16:7; *see also id.* at 16:9-15 ([redacted]). References to a [redacted] documents that MIT produced, including a training presentation entitled "RD [Resource Development] Admissions Training" that noted that there were [redacted]. *See* Ex. 18, duKor-Jackson Ex. 5, MITLIT-000033445, at - 475.[4]

In addition to its relevance to Topic 13, information relating to MIT's ranking or rating system of applicants and/or their families is covered by Topic 12 of Plaintiffs' 30(b)(6) Notice, which sought information concerning "any ranking or rating system" MIT "used in Admissions reflecting the undergraduate applicants' relative socio-economic status" including "any policy or practice designed to increase the amount of . . . middle-class students, upper-middle class students, or students from any particular socio-economic status enrolling at MIT."

[redacted] *See* Ex. 17, duKor-Jackson Ex. 2, MITLIT-000659228, at -229. The designee was not aware that [redacted]

---

[4] *See also* Ex. 3, Tr. at 44:7-11; 46:19-47:4 ("[redacted]").



Ex. 3, Tr. at 21:12-21 (" "); *see also id.* at 22:11-17 (" ").

**2. MIT's designee was unaware whether**

Ex. 19, duKor-Jackson Ex. 4, MITLIT-000659215, at -217. further stated:

> .

*Id.* at -217-218. MIT's designee was not aware that Ex. 3, Tr. at 31:4-32:19 (" .").[5]

Whether MIT's Dean of Admissions met with families of donors during the admissions process was information covered by topics listed in Plaintiffs' 30(b)(6) deposition notice to MIT about which MIT agreed to provide testimony, including:

[5] Additionally, MIT's designee was unfamiliar with, and unable to explain the meaning or relevance to admissions of the term *Id.* at 44:7-11.



Topic 7 During your membership in the 568 Group, any policy or practice You have had of considering in Admissions whether undergraduate applicants' families have made or pledged donations to You, or the absence of any such a policy.

Topic 8 During your membership in the 586 Group, any policy or practice You have had in Admissions of considering any list of applicants has created or caused to be created to be given special consideration for admission due to past or prospective donations by the undergraduate applicants' families, or the absence of such a policy. This includes Your policy, practice, or history of designating certain applicants as

Topic 10 During your membership in the 568 Group, any policy or practice You have had in Admissions of treating the donation histories of Applicants' families as factors or special consideration for undergraduate applicants.

**3. MIT's designee was unfamiliar with the policies and procedures applied by the .**

Ex. 20, duKor-Jackson Ex. 3, MITLIT-000659212, at -212-214. In that email, wrote:

*Id.* at -212, *see also* Ex. 3, Tr. at 24:20-27:7.

MIT's designee was unfamiliar with the procedures between that, as indicated in 's email, were



[redacted] *Id.* at 25:10-16 ("[redacted]"). The witness acknowledged that [redacted] *Id.* at 27:14-16.[6] Likewise, the designee was unaware whether, prior to June 2017, [redacted]. *Id.* at 40:8-13.

**4. <u>MIT's designee was unaware of how admissions [redacted] that were highlighted to MIT's President and other senior members of MIT's administration were chosen.</u>**

MIT's designee testified that MIT's Dean of Admissions [redacted] Ex. 3, Tr. at 58:1-5. The witness was aware that [redacted]; he was also aware that the individuals [redacted] Ex. 3, Tr. at 63:6-20, *see also id.* at 60:16-62:18; Ex. 21, duKor-Jackson Ex. 8, MITLIT-000456499 ([redacted]."[7] MIT's designee was not aware and was unable to testify how [redacted]

---

[6] He further stated that MIT Admissions is [redacted] *Id.*at 48:20 - 49:1.

[7] [redacted]

[redacted]

Ex. 3, Tr. at 62:20-63:10.

**5. MIT's designee was unaware of any instance where an applicant's status changed from "not admitted to admitted" after admission information had been presented to senior leadership -- [redacted].**

Topic 11 of Plaintiffs' 30(b)(6) Notice sought testimony from a knowledgeable MIT designee concerning "any instances in which a donor or identified prospective donor to MIT directed the admission of a specified applicant or applicants." *See* Ex. 1. MIT's designee indicated that [redacted]. Ex. 3, Tr. at 60:7-11. [redacted] Ex. 22, Dep. Tr. of I. Waitz, at 110:19-21; 113:16-23; Ex. 23, Dep. Tr. of Robert Millard, at 57:13-58:11.

Additionally, Plaintiffs have identified two spreadsheets tracking applicants that appear to be different iterations of each other—[redacted] Ex. 24, Millard Ex. 9, MITLIT-000449403, [redacted] Ex. 25, Millard Ex. 10, MITLIT-000449405. [redacted]

8 [redacted] Ex. 3, Tr. at 65:20-66:24.



[redacted] *See* Ex. 24 at cells 7773 and 3893. [redacted] *See* Ex. 25 at cells 7763 and 3873.

MIT's designee was not aware of [redacted] but should have been had he been adequately prepared. Ex. 3, Tr. at 68:12-21 ([redacted]). [redacted] Ex. 3, Tr. at 67:2-16.

### B. Plaintiffs Respectfully Request an Additional Two Hours to Question an Adequately Prepared Witness on Wealth-Favoritism Topics 7-13

Given the central significance of the issue of wealth favoritism in this case, Plaintiffs respectfully request that the Court provide them with the chance to question a 30(b)(6) designee who is adequately prepared about the wealth-favoritism topics, Topics 7-13 from their 30(b)(6) deposition Notice.

Requiring MIT to offer a designee following inadequate preparation on the relevant wealth-favoritism topics is an appropriate remedy here. Courts in the Seventh Circuit have offered similar relief. *See, e.g., Avenatti v. Gree USA, Inc.,* 2022 WL 3134425, at *5 (S.D. Ind. Aug. 5, 2022) ("Where a Rule 30(b)(6) designee is unable to respond to the relevant areas of inquiry, the responding party has a duty to designate an additional knowledgeable deponent.");

*see also Bierk v. Tango Mobile, LLC*, 2021 WL 698479, at *6 (N.D. Ill. Feb. 23, 2021) (granting plaintiff two additional hours of 30(b)(6) deposition time on the four topics on which the designee was unprepared."). MIT should not be allowed to evade its legal obligation to produce a knowledgeable witness by asserting that answers such as "I don't know" constitute definitive evidence that practices of wealth favoritism do not exist at MIT. The purpose of a 30(b)(6) deposition is to allow opposing counsel to question institutional witnesses who have knowledge of a noticed topic, an obligation that MIT thus far has failed to meet.

Plaintiffs' request for an additional two hours of deposition time with a properly prepared MIT witness is minimally burdensome to MIT but would likely provide important, centrally relevant information to Plaintiffs that would be of interest to the Court and eventually a jury in an eventual trial in this case.

**CONCLUSION**

For all the reasons stated herein, Plaintiffs' Motion should be granted.

Dated: May 14, 2024

Respectfully Submitted,

By:*/s/Robert D. Gilbert*
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
Steven Magnusson
Natasha Zaslove
**GILBERT LITIGATORS & COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
smagnusson@gilbertlitigators.com
nzaslove@gilbertlitigators.com

*/s/ Edward J. Normand*
Devin "Vel" Freedman
Edward J. Normand
Peter Bach-y-Rita
**FREEDMAN NORMAND FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
pbachyrita@fnf.law

Eric L. Cramer
Ellen T. Noteware
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
enoteware@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

Daniel J. Walker
Robert E. Litan
Hope Brinn
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs*