# Exhibit 1

Filed Under Seal

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, <br><br> Defendants. | Case No. 1:22-cv-00125 <br><br> Hon. Matthew F. Kennelly |

## <u>NOTICE OF 30(b)(6) DEPOSITION</u>

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Plaintiffs, by and through their undersigned counsel, will take the remote deposition upon oral examination, before a notary public or some other officer authorized by law to administer oaths, of one or more designated representative of Massachusetts Institute of Technology ("MIT") at a time and place mutually agreed upon by the parties. Such deposition will be taken for purposes of discovery, for use as

evidence at trial, and for any other permissible purpose under the Federal Rules of Civil Procedure and the Federal Rules of Evidence. The deposition will take place before a court reporter and will be transcribed by stenographic means and may be videotaped.

PLEASE TAKE FURTHER NOTICE that Federal Rule of Civil Procedure 30(b)(6) requires that MIT designate one or more officers, directors, managing agents or other persons to testify on behalf of itself with regard to all matters known or information reasonably available to it on each of the subject matters set forth in Schedule A attached hereto, as well as the specific structured data questions contained in Schedule B.

Dated: February 2, 2024

By: /s/Robert D. Gilbert
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
David Copeland
Steven Magnusson
**GILBERT LITIGATORS &
 COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
dcopeland@gilbertlitigators.com
smagnusson@gilbertlitigators.com

Respectfully Submitted,

/s/ Edward J. Normand
Devin "Vel" Freedman
Edward J. Normand
Richard Cipolla
Joseph Delich
Peter Bach-y-Rita
**FREEDMAN NORMAND
 FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
vel@fnf.law
tnormand@fnf.law
rcipolla@fnf.law
jdelich@fnf.law
pbachyrita@fnf.law

Ivy Ngo
**FREEDMAN NORMAND
 FRIEDLAND LLP**
1 SE 3rd Avenue
Suite 1240
Miami, FL 33131
Tel: 786-924-2900
ingo@fnf.law

2

Eric L. Cramer
Ellen T. Noteware
David Langer
Jeremy Gradwohl
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
dlanger@bm.net
enoteware@bm.net
jgradwohl@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

Daniel J. Walker
Robert E. Litan
Hope Brinn
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs*

# SCHEDULE A

# DEFINITIONS

As used herein, the following terms shall have the meaning ascribed to them below:

1. "Admissions" means the processes or facts of being admitted to or rejected for admission as an undergraduate student by a college or university.

2. "Annual Expenditures" means all operating costs, expenses, and outgoings You incur in a fiscal year.

3. "Annual Revenues" means the total amount of money You earn from operations in a fiscal year before any deductions and expenses.

4. "Applicant" means any person who has submitted an application by any means to Your full-time undergraduate program, whether as a first-year Applicant or a Transfer Applicant.

5. "Asset Threshold" means a calculated amount of family and undergraduate student assets below which the school will not require the parent or student to make any contribution to pay tuition or will require the parent and student to make a contribution to pay tuition which is lower than the contribution would be under the school's IM.

6. "CM," an abbreviation of "Consensus Methodology," means the standardized assessment of a family's financial circumstances, developed, referred to, and utilized by the 568 Group and its member institutions.

7. "COFHE" means the Consortium on Financing Higher Education.

8. "Economic Mobility" refers to the ability of individuals or families to improve their economic status or move up the social and economic ladder over time. It is a measure of the extent to which people can enhance their income, wealth, and overall standard of living, regardless of their starting point or background.

9. "ED," an abbreviation of "Early Decision," means the Admissions process whereby the applicant makes a binding commitment to attend the school if accepted.

10. "Endowment" means an aggregation of assets invested by a college or university to support its mission.

11. "Endowment Funds" means funds in or generated by the Endowment.

12. "FM," an abbreviation of "Federal Methodology," means the assessment used by the U.S. Department of Education to determine a student's eligibility for federal financial aid for higher education.

13. "Financial Aid" means any discounts, grants, Loans, work-study programs, or scholarships available to assist students in paying for higher education and which are offered on the basis of estimates, determinations, or computations of students' financial need.

14. "Financial Aid Packaging" means the process and practice of determining the types of (e.g., discounts, grants, loans, work-study) and total amount of Financial Aid (both federal and nonfederal) an admitted applicant or student is offered by a college or university for a given academic year.

15. "Financial Aid Software" means any software used by You to view and evaluate financial aid applications or to determine Financial Aid or Financial Aid Packaging. Examples include PowerFAIDs, PeopleSoft, Banner, etc.

16. "GA," an abbreviation of "General Admissions," means the Admissions process whereby the applicant does not make a binding commitment to attend the school if accepted.

17. "Income Threshold" means a calculated amount of family and undergraduate student income below which the school will not require the parent or student to make any

contribution to pay tuition or will require the parent and student to make a contribution to pay tuition which is lower than the contribution would be under the school's IM.

18. "IM," an abbreviation of "Institutional Methodology," means the standardized assessment of a family's financial circumstances, developed, referred to, and utilized by a given school, and may include the CM.

19. "Litigation" means the lawsuit captioned above.

20. "Need-Blind" means admitting all students admitted on a need-blind basis, as defined in Section 568 of the Improving America's Schools Act of 1994, 15 U.S.C. 1 note.

21. "Net Price" means the total cost of attending a college or university after subtracting any grants, scholarships, or other forms of financial aid that a student may receive. It represents the amount that a student or their family is responsible for paying out of pocket or through loans to cover the cost of education.

22. "No-Loan Policy" means a school's course or principle of action whereby, under a calculated amount of family and student income, or a calculated amount of family and student assets, the school will not include any loans in the student's Financial Aid Packaging.

23. "Relevant Market" means the market for undergraduate education at private national universities with an average ranking of 25 or higher in the U.S. News & World Report rankings from 2003 through 2021.

24. "Spending Rule" means Your policy, guideline, or formula for determining how much to spend out of Your Endowment from year to year.

25. "568 Exemption" means Section 568 of the Improving America's Schools Act of 1994, Pub. L. 103-382, 108 Stat. 3518.

26. "568 Group" means the 568 Presidents Group.

3

27. "568 Group Principles" means the following:

　　a. To the extent they are able, parents and students have the primary responsibility to contribute to educations expenses before an institution awards financial aid.

　　b. Families should contribute to educations expenses according to their ability. Those with similar financial profits should contribute similar amounts.

　　c. Institutiions should evaluate both income and assets as part of the assessment of the parents' and applicants' ability to pay.

　　d. Each institutions should inform applicants about the policies and practices it applies when measuring a family ability to pay, carry out its policies consistently throughout a student's eligibility, and support the awarding of need-based aid.

28. "You" and "Your" means each Defendant to whom these Interrogatories are addressed, including all divisions, departments, wholly owned or controlled subsidiaries or affiliates, other subsidiaries, parents, joint ventures, branches, predecessors in interest, successors in interest, current and former employees, agents, attorneys, representatives, and all other persons acting on behalf of, or at the direction of, any such entity.

# TOPICS

## Involvement with the 568 Group, COFHE, and other Groups

1. Your rationales for joining and remaining in the 568 Group.

2. Any significant or material changes to your needs analysis principles, IM, or proportion of loans versus grants in your packages that occurred after You joined the 568 Group.

3. Your involvement in the creation or drafting of, and any modifications to, the CM during Your membership in the 568 Group.

4. Whether and how You utilized data and information provided by COFHE or COFHE members at COFHE events to inform any significant or material changes to your needs analysis principles, IM, or proportion of loans versus grants in your packages while You were a member of the 568 Group.

5. While you were a member of the 568 Group, whether and how your involvement and participation in any of the following informed your policies or practices regarding and related to Your determining, assessing, and meeting need for determining financial aid and the packaging of financial aid: (1) College Board's Campus Needs Roundtable, (2) College Board's Financial Aid Standards and Services Committee, (3) College Board's CSS/Financial Assistance Assembly, and/or (4) the "Ivy+" Group.

6. Any operational and logistical support You provided COFHE and/or the 568 Group, including human resources, payroll, and email, and website management.

## Admissions Practices

7. During your membership in the 568 Group, any policy or practice You have had of considering in Admissions whether undergraduate applicants' families have made or pledged donations to You, or the absence of any such a policy.

8. During your membership in the 568 Group, any policy or practice You have had in Admissions of considering any list of applicants Your president or Dean of Admissions has created or caused to be created to be given special consideration for admission due to past or prospective donations by the undergraduate applicants' families, or the absence of such a policy. This includes Your policy, practice, or history of designating certain applicants as a "dean's cases" and/or "senior cases."

9. During your membership in the 568 Group, any policy or practice You have had of admitting students with regard to the financial circumstances of their families in the expectation of potential donations to You.

10. During your membership in the 568 Group, any policy or practice You have had in Admissions of treating the donation histories of Applicants' families as factors or special consideration for undergraduate applicants.

11. During your membership in the 568 Group, any instances in which a donor or identified prospective donor to MIT directed the admission of a specified applicant or applicants.

12. During your membership in the 568 Group, any ranking or rating system You have used in Admissions reflecting the undergraduate applicants' relative socio-economic status or Pell Grant eligibility, including any policy or practice designed to increase the amount of Pell Grant recipients middle-class students, upper-middle class students, or students from any particular socio-economic status enrolling at MIT.

13. During your membership in the 568 Group, any role that the Development Office had during the admissions process, including (1) including any policies governing the interactions between the Development Office and the Admissions Office, (2) the decision to create a liaison position between Admissions and the Development office and any policies regarding that liaison, (3) any incidents in which Development personnel were aware that donors or MIT personnel interceded in admissions decisions, and (4) the role of the Development Office in the designation of "senior cases" and "dean's cases" on applications.

14. Any significant and material consideration of budgetary constraints or goals in determining the number of and which undergraduate applicants to admit.

## Awarding of Financial Aid

15. Your use and application of the CM, in any part or in its entirety, during Your membership in the 568 Group for each year. This topic includes the authentication of MIT's internal financial aid handbooks discussing MIT's adoption in whole or in part of the CM.

16. Whether and to what extent the CM was intended to, or was analyzed and determined to have, operated to diminish or eliminate divergent results among 568 Group members in the awarding of Financial Aid.

17. Your use and application, during Your membership in the 568 Group, of any formula or methodology derived or modified from the CM.

18. Your consideration of home equity in determining financial aid during the Relevant Time Period, including the extent to which home equity was considered but not included in the financial need calculation, as stated on MIT's "What We Consider | MIT Student Financial Services" website on October 17, 2022.

19. During your membership in the 568 Group and the two years immediately before and after, any policies and procedures You have had regarding considering or "matching" Financial Aid offers from other schools when determining Financial Aid offers.

20. During your membership in the 568 Group and the two years immediately before and after, any policies and procedures You have had of meeting all of the demonstrated financial need of Your admitted undergraduate students, including Your reasons for such policies and procedures.

21. Your reasons for adopting or not adopting any Income Thresholds or Asset Thresholds since you first joined the 568 Group.

22. Your reasons for adopting or not adopting No-Loan Policies since you first joined the 568 Group.

23. Since January 1, 2000, any considered or implemented changes in your Financial Aid need analysis or policies made in an effort to increase MIT's yield in cross-admits with Harvard, Yale and/or Stanford.

24. For each year since 1990, the percentage of Your undergraduates who received Pell Grants.

25. For each year since 1990, the percentage of Your undergraduates who received need-based Financial Aid broken down by racial/ethnic identity.

26. For each year since 1990, the percentage of Your undergraduates who received need-based Financial Aid broken down by family income.

27. While you were a member of the 568 Group, whether you used the "Available Income Table" provided by the College Board, and a comparable table for "available" or "eligible" assets, to determine the income assessment rate and asset assessment rate components, respectively, of Your EFC calculation.

28. Your reasons for adopting or not adopting any policy or practice of meeting full demonstrated need.

## Sources for and Availability of Financial Aid

29. Since January 1, 1994, the relevance of Your Endowment, including its growth and size, to the total amount of Financial Aid to be awarded to admitted undergraduate students for an academic year.

30. Since January 1, 1994, whether and to what extent You have utilized a contingency or reserve fund, using Annual Revenues or Endowment funds, for financing Financial Aid.

31. Since you became a member of the 568 Group, the process by which You decide what and how to spend your budget year-to-year among different institutional priorities (professor salaries, financial aid, capital improvement projects, etc).

## Competition with Other Schools

32. Since January 1, 2000, your pre-Litigation analyses of the relevance of any secondary-source school rankings to Your competitive standing in the market for undergraduate students.

33. Since January 1, 2000, Your pre-Litigation analyses of the relevance of financial aid packages to Your competitive standing in the market for undergraduate students.

## Question of Procompetitive Justifications

34. Since January 1, 2000, whether and to what extent Your policies and practices in awarding Financial Aid have increased the racial diversity, socioeconomic diversity, or Economic Mobility of Your undergraduate students.

## Tuition Prices

35. Since January 1, 2010, any pre-Litigation analyses or conclusions You made regarding the reasons for the increases in Your undergraduate tuition prices, including as relative to inflation.

36. Since January 1, 2010, any pre-Litigation analyses or conclusions You made regarding the reasons for the increases in Your undergraduate Net Prices, including as relative to inflation.

37. Since January 1, 2010, any policy or practice You have had of offering public explanations for Your increased tuition prices, including Your reasons and bases for such explanations.

## Financial Aid Software

38. The step-by-step process by which You used Financial Aid Software to evaluate financial aid awards, including the process by which Financial Aid Software was used to calculate and package Financial Aid and its components, such as family contributions and federal aid eligibility both generally and specifically for the following UIDs:

    UID_0000520552401
    UID_0000281498869
    UID_0000385079951
    UID_0000000000458
    UID_0000000152014
    UID_0000001243154

39. The algorithms, formulas, settings, and criteria used within Financial Aid Software, to calculate and package financial aid awards and their components, such as family

8

        contributions and federal aid eligibility, and, to the extent requested in accompanying Schedule B, how they are reflected in the produced structured data.

40. How the CM, the IM, and the FM, are calculated by Financial Aid Software and, if applicable, are implemented in Financial Aid Software in evaluating financial aid applications and packaging financial aid awards.

41. How and whether a family contribution calculation under the CM, IM, or the FM are reflected in Your produced structured data.

42. The process and procedures for adjusting financial aid awards and handling exceptions, matches, appeals, or other special circumstances within Financial Aid Software, and how/whether those exceptions, matches, appeals, or other special circumstances are reflected in Your structured data.

43. How the algorithms, formulas, settings, and criteria used within Financial Aid Software to calculate Financial Aid and relate to the algorithms, formulas, settings, and criteria implemented in any "net price calculator" You implemented as required under the Higher Education Act of 1965 as Amended as of October 29, 2011.

44. To the extent requested in accompanying Schedule B, the calculation, meaning, and use of each data type or variable included as a column in Your produced structured data, and explanations and definitions of terms in any produced software settings.

45. To the extent requested in accompanying Schedule B, a description of what each structured data file You produced contains and reflects (i.e., admissions vs financial aid data, class year, etc).

## SCHEDULE B

**MITDATA000115 and MITDATA000142**

1. 

**MITDATA000119 and MITDATA000146**

1. ▮

**MITDATA000121 and MITDATA000148**

1. ▮
2. ▮
3. ▮
4. ▮
5. ▮

**MITDATA000128 and MITDATA000155**

1. ███████████████████████████████████████

11