UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, <br><br> *Defendants*. | Case No.: 1:22-cv-00125 <br><br> Hon. Matthew F. Kennelly |

## DEFENDANT MASSACHUSETTS INSTITUTE OF TECHNOLOGY'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

### INTRODUCTION

Plaintiffs' Motion (ECF No. 685, "Pls.' Motion") to reopen the 30(b)(6) deposition of Massachusetts Institute of Technology ("MIT") and compel MIT to provide two additional hours of 30(b)(6) deposition testimony on Topics 7-13 should be denied. MIT's designee was well prepared to testify on each topic and sufficiently answered all questions that were within scope. Plaintiffs' Motion is little more than a last-ditch effort, two months after the close of fact

discovery, to attempt to gather evidence on supposed wealth favoritism by re-writing their 30(b)(6) deposition notice.

Although these topics appear nowhere in the 30(b)(6) notice that *they* drafted, Plaintiffs are now insisting that MIT provide a witness knowledgeable about policies and practices internal to MIT's Office of Resource Development that are unrelated to admissions. Plaintiffs' noticed Topics 7-13 do not require that testimony, nor is it relevant to the case. Those Topics are all listed under the heading "Admissions Practices" in the notice, and by Plaintiffs' own words, only relate to the policies and practices of the Office of Resource Development insofar as they involve MIT's admissions process. MIT designated its Director of Admissions, Mr. David duKor-Jackson, who was well prepared to answer questions on Plaintiffs' Topics and answered those questions completely. He testified that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

After failing to ask Mr. duKor-Jackson a single question about how he prepared for his deposition, Plaintiffs now claim that he did not do enough to prepare because he was unable to answer questions regarding the internal practices of MIT's Office of Resource Development, a topic that does not appear in their notice. MIT's obligation was to be prepared to testify to the specific 30(b)(6) Topics drafted by Plaintiffs and it fully met that obligation. Plaintiffs are not entitled to reopen a deposition simply because a deponent's answers do not support their case and they did not obtain the evidence that they hoped to get.

## BACKGROUND

Plaintiffs completed all 10 of their depositions of MIT employees, including all seven hours of a 30(b)(6) deposition that initially had 45 topics. *See* Order regarding Limitations on Number and Length of Non-Expert Depositions, ECF No. 273 (limiting Plaintiffs to 10

2

depositions of individual Defendants); Pls.' Ex. 1, Feb. 2, 2024 Notice of 30(b)(6) deposition to MIT. They deposed the current Dean of Admissions and Student Financial Services (Stuart Schmill), who has overseen the Admissions Office since 2008, the former Dean of Admissions (Marilee Jones), who oversaw the Admissions Office from 1997 to 2007, the current Director of Admissions (David duKor-Jackson), who has been in his role since 2020 and previously served as Associate Director of Admissions and Director of Minority Recruitment from 2009-2012, and former Associate Director of Admissions from 2007-2012 (McGreggor Crowley). All have consistently testified that ████████████████████████████████████████

████████████████████████████ *See* Ex. 1, Schmill Tr. 191:15-18 (████████████

████████████████████████████████████████████████████████████

████████████); Ex. 2, Jones Tr. 100:9-15 (████████████████████

████████████████████████); Pls.' Ex. 3, 30(b)(6) duKor-Jackson Tr. 91:10-14 ("[T]he fact that they were donors played zero part in the [admissions] process."); Ex. 3, Crowley Tr. 69:21-70:22 ("[W]hether a student had donated or a family had donated…was not part of the selection process").

 Plaintiffs complain that MIT "resisted" discovery from the Office of Resource Development, Pls.' Motion at 5, but that is not true. During the hearing in this case on February 8, 2023, the Court ruled that before seeking discovery from a development office, Plaintiffs must first establish that there is a basis for it—i.e., that the development office was influencing admissions decisions. *See* Ex. 4, 2/8/23 Hearing Transcript, 45. Despite the lack of such a basis, and in an effort not to burden the Court with an unnecessary discovery dispute, MIT offered, and Plaintiffs accepted, a negotiated document production from its development office. In fact, Plaintiffs also had the chance to depose the Vice President of the Office of Resource

Development, but they opted instead to notice an additional deposition from within the Admissions Office. *See* Ex. 5, 1/25/24 Email from H. Brinn to MIT.

Plaintiffs are now seeking an end run around the Court's order under the guise of their motion to reopen MIT's 30(b)(6) deposition. In an attempt to justify additional discovery, Plaintiffs mischaracterize the evidence to suggest that "wealth favoritism" occurs at MIT, and therefore, Mr. duKor-Jackson was not prepared on Topics 7-13. Neither is true. Plaintiffs' assertions of "wealth favoritism" are completely flawed.

- Plaintiffs claim that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Pls.' Motion at 3-4. But Mr. Schmill testified that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Ex. 1, Schmill Tr. at 179:15-180:1 (emphasis added).

- Plaintiffs assert that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Pls.' Motion at 4. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Ex. 1, Schmill Tr. 195:5-9, 198:3-8; *see* Pls.' Ex. 3, 30(b)(6) duKor-Jackson Tr. 75:20-76:5.

- Plaintiffs maintain that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Pls.' Motion at 4. Both Mr. Schmill and Mr. duKor-Jackson testified that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬



███████████████████████████████████████████████████

█████████████████████████████ Ex. 1, Schmill Tr. 192:4-18; Pls.' Ex. 3, 30(b)(6) duKor-Jackson Tr. 69:4-6; Ex. 6, MITLIT-000456480 (showing Mr. Schmill sent heads-up an hour and a half before wait list decisions were posted).

- Plaintiffs claim that ███████████████████████████████ ███████████████████████████████████. Pls.' Motion at 4. This claim is entirely unsupported by the facts. ███████████████ ███████████████████████████████████ *See* Pls.' Ex. 13, MILIT-000203022 at -023. ███████████████████████████████ ███████████████████████████████████████████ *See* Pls.' Ex. 3, 30(b)(6) duKor-Jackson Tr. 90:25-91:14 (███████████████████ ███████████████████████████████████████████ ███████████████████).

- Lastly, Plaintiffs assert that ███████████████████████████ ███████████████████████████████████. Pls.' Motion at 4. As Mr. Schmill testified, ███████████████████████████████████████ ███████████████. Ex. 1, Schmill Tr. 203:4-204:8. ███████████████ ███████████████████████████████████████████████ *Id.* at 202:13-24. Plaintiffs have no evidence that any applicant's admission chances were affected by the Office of Resource Development ███████████████████ ███████████████████████.

In sum, Plaintiffs' so-called evidence of "wealth favoritism" within MIT admissions boils down to ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

██████████████████████████████████

None of this has to do with any favoritism of donor-related applicants. Plaintiffs have zero evidence that the status of a donor factored into an applicant's admissions decision at MIT, much less that Mr. duKor-Jackson was not prepared to testify as to the non-existent role it plays in admissions.

Without ever asking what Mr. duKor-Jackson did to prepare, Plaintiffs now claim that Mr. duKor-Jackson was unprepared to answer questions about Topics 7-13. As further shown below, he was more than adequately prepared to discuss issues properly within the scope of the noticed Topics and Plaintiffs' motion should therefore be denied.[1]

## LEGAL STANDARD

A 30(b)(6) witness is adequately prepared when he can answer the questions asked regarding "relevant subject matters." *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 338, 342 (N.D. Ill. 1995) (quoting *Fed. Deposit Ins. Corp. v. Butcher*, 116 F.R.D. 196, 199 (E.D.Tenn.1986)). "The rule of reason applies to deciding if the selected Rule 30(b)(6) witness is capable of testifying about the relevant issues." *Georgia- Pac. Consumer Prods. LP v. Kimberly-Clark Corp.*, 749 F. Supp. 2d 787, 802 (N.D. Ill. 2010), *aff'd*, 647 F.3d 723 (7th Cir. 2011) ("Simply because defendant's witness could not answer every question posed to him does not equate to the fact that defendant did not satisfy its obligations") (internal citations omitted). "In

---

[1] Mr. duKor-Jackson also prepared for Topics 23, 32, and 33, which Plaintiffs failed to ask any questions about.

determining whether a corporate deponent has met its Rule 30(b)(6) obligation, courts examine the degree and type of effort made by the organization to prepare the witness in light of the deposition topics." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2018 WL 7350951, at *2 (S.D. Ind. Aug. 16, 2018). "Broad topics of inquiry do not 'give rise to an obligation to prepare a witness to answer every conceivable detailed question relating to the topic.'" *Id.* (internal citations omitted). Rule 30(b)(6) depositions are "not designed to be a memory contest." *See Seaga Mfg., Inc. v. Intermatic Mfg. Ltd.*, 2013 WL 3672964, at *2 (N.D. Ill. July 12, 2013).

## ARGUMENT

### I. Mr. duKor-Jackson Made Considerable Efforts to Prepare, Was Adequately Prepared, and Testified Fully on Matters within the Scope of the Noticed Topics.

Mr. duKor-Jackson is currently the Director of Admissions, and his career in MIT's Admissions Office has spanned more than seven years over two terms beginning in 2009. Ex. 7, Declaration of David duKor-Jackson ¶ 1. He was well-placed to be designated for Topics 7-13 because he has first-hand knowledge about admissions policies and practices from his day-to-day work. *See id.* at ¶¶ 1, 2, 9. In addition, Mr. duKor-Jackson also went to considerable lengths to prepare for these Topics. *See id.* at ¶¶ 2-7. Mr. duKor-Jackson prepared for his testimony for over a month. *Id.* at ¶ 8. He reviewed three deposition transcripts, including those of the current Dean of Admissions and Student Financial Services and the former Dean of Admissions. *Id.* at ¶ 3. He met with counsel on at least half a dozen occasions to discuss and prepare for the Topics for which he was responsible. *Id.* at ¶ 4. He examined dozens of documents covering MIT's admissions policies and practices that span nearly two decades. *See id.* at ¶ 5. He interviewed MIT employees—in some cases more than once—including the Dean of Admissions and Student Financial Services and the Executive Director of Individual Giving within the Office of Resource Development, to gather additional information. *Id.* at ¶¶ 6-7. In total, Mr. duKor-Jackson

7

invested approximately 30 hours preparing to testify on all Topics for which he was designated. *Id.* at ¶ 8.

Mr. duKor-Jackson demonstrated his substantial preparation throughout his deposition, fully answering questions that were within relevant subject matters. For example, for Topic 7 (any consideration of donations in the admissions process), Topic 9 (admitting students in the expectation of potential donations), and Topic 10 (treating donation histories as factors), Mr. duKor-Jackson explained that ███████████████████████████████████████. Pls.' Ex. 3, 30(b)(6) duKor-Jackson Tr. 91:10-14, 31:11-32:6. For Topic 8 (consideration of lists of donors, including designating applicants as "dean's cases" and/or "senior cases"), he explained that ███████████████████████████████████████████████████████████████████████████████████████████████████████. *Id.* at 19:13-22, 50:11-25, 69:24-70:20, 82:13-23, 87:20-88:6. For Topic 11 (any instance where a donor directed the admission of an applicant), he testified that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *Id.* at 67:9-68:3. For Topic 12 (any ranking or rating system used in Admissions reflecting applicants' relative socio-economic status), he discussed in detail how ██████████████████████████████████████████████, *id.* at 83:10-86:17, 41:4-43:19, and he described ████████████████████████████████, *id.* at 55:23-56:18, 85:9-86:17, 109:3-110:17.

For Topic 13 (interactions between the Resource Development and Admissions Offices), he testified about how ████████████████████████████████████████████████████████████████████████████████████████████████████████████████, which is the subject of Topic 13. *Id.* at 13:24-14:3, 20:15-21:11, 22:2-10,

31:11-32:6. Rather than using their time to ask Mr. duKor-Jackson questions within the scope of noticed Topics, Plaintiffs peppered him with questions about the internal practices of the Office of Resource Development that have nothing to do with admissions or the "role that the Development Office had during the admissions process." In its entirety, Topic 13 reads:

> During your membership in the 568 Group, any role that the Development Office had during the admissions process, including (1) including [sic] any policies governing the interactions between the Development Office and the Admissions Office, (2) the decision to create a liaison position between Admissions and the Development office and any policies regarding that liaison, (3) any incidents in which Development personnel were aware that donors or MIT personnel interceded in admissions decisions, and (4) the role of the Development Office in the designation of "senior cases" and "dean's cases" on applications.

Pls.' Ex. 1, Feb. 2, 2024 Notice of 30(b)(6) deposition to MIT. Topic 13 plainly requires MIT's designee to prepare for questions about Resource Development practices only insofar as they play a role "*during the admissions process*." *See id.* (emphasis added). Mr. duKor-Jackson repeatedly stated that ▌. *See* Pls.' Ex. 3, 30(b)(6) duKor-Jackson Tr. 56:19-25 (▌) (emphasis added); 91:10-14 (▌) (emphasis added). Plaintiffs cannot claim Mr. duKor-Jackson was unprepared merely because MIT's answers do not help their case.

## II. Plaintiffs' Questions are Outside the Scope of the 30(b)(6) Deposition Topics

Plaintiffs argue they are entitled to two more hours of testimony because Mr. duKor-Jackson could not speak to internal policies and practices of the Office of Resource Development. To support their position, Plaintiffs raise a handful of occurrences where they claim Mr. duKor-Jackson's testimony was insufficient, which are all unequivocally unfounded and outside the scope of the Notice. Each of these instances fall into the three categories below.

9

### A. Resource Development's Liaison Position

Plaintiffs state Mr. duKor-Jackson was unfamiliar with certain facts and responsibilities regarding the so-called "Admissions-Development liaison." Pls.' Motion at 7. In reality, the position at issue was not a joint office position but is a Resource Development position that reports to Resource Development staff only. *See* Pls.' Ex. 17, MITLIT-000659228. The position's duties are 50% "Portfolio Management" (fundraising), 40% "Program and Volunteer Management," part of which includes duties as the admissions liaison, and 10% other. *See id*. at -228-229. Topic 13 specifies that the designee understand "the decision to create a liaison position" to the extent it involves "the admissions process." Pls.' Ex. 1, Feb. 2, 2024 Notice of 30(b)(6) deposition to MIT. All examples raised by Plaintiffs relate to questions regarding internal policies and practices of the Office of Resource Development that have no bearing on the admissions process and are not within the scope of any noticed Topic, including Topic 13.

Mr. duKor-Jackson testified fully to questions about the liaison position as it relates to Admissions: He testified that ███████████████████████████████████████ ███████████████████████████████████. *See* Pls.' Ex. 3, 30(b)(6) duKor-Jackson Tr. 13:24-14:3, 20:15-21:3 (███████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████). Mr. duKor-Jackson also testified that ████████████████████████████████ ████████████████████████████████████ *Id*. at 22:2-10. Mr. duKor-Jackson also confirmed that ████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ *Id*. at 21:4-11. As those training

materials clearly state, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Pls.' Ex. 20, MITLIT-000659212 at -213.

Plaintiffs argue that Mr. duKor-Jackson's lack of knowledge about the Office of Resource Development's internal tracking and rating systems render his testimony insufficient. *See* Pls.' Motion at 7-8. To the contrary, Mr. duKor-Jackson sufficiently answered Plaintiffs' questions when he testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Pls.' Ex. 3, 30(b)(6) duKor-Jackson Tr. 20:2-13. Plaintiffs' complaint about Mr. duKor-Jackson's lack of knowledge of the Office of Resource Development's rating system is equally flawed. Mr. duKor-Jackson testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇ *Id.* at 56:19-25. These answers are all that is required because Topic 13 only seeks testimony regarding "any role that the Development Office had during the admissions process." *See* Pls.' Ex. 1, Feb. 2, 2024 Notice of 30(b)(6) deposition to MIT.

Plaintiffs also contend that Mr. duKor-Jackson was unfamiliar with certain procedures between ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Pls.' Motion at 10. But Mr. duKor-Jackson is highly knowledgeable regarding MIT's admissions policies and testified as to many of them. While he was unfamiliar with ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, Mr. duKor-Jackson did testify that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇. Pls.' Ex. 3, 30(b)(6) duKor-Jackson Tr. 48:20-49:2; 27:9-28:16. ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 27:9-28:16 (▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇). Mr. duKor-Jackson's

11

unfamiliarity ▌ does not render him unprepared for Topic 13. *See Georgia-Pac.*, 749 F. Supp. 2d at 802 ("Simply because defendant's witness could not answer every question posed to him does not equate to the fact that defendant did not satisfy its obligations to prepare its 30(b)(6) witness.") (internal citations omitted).

     Plaintiffs further contend that Mr. duKor-Jackson was unprepared because he "was not aware that ▌ was one of the liaison's job duties." Pls. Motion at 8-9. Again, this is not related to "the admissions process." The specific bullet point that Plaintiffs cite to regarding ▌ is for "admitted students" only, which, by definition, is a population that exists only *after* decisions have been made. *See* Pls.' Ex. 17, MITLIT-000659228 at -229. As is clear from the job description, the person in the liaison role also has a separate responsibility for soliciting gifts to MIT. *See id.* at -228. The fact that Mr. duKor-Jackson was ▌ further underscores his testimony that ▌.

     Lastly, Plaintiffs claim that Mr. duKor-Jackson was "unaware whether, prior to June 2017, ▌ Pls.' Motion at 11. Mr. duKor-Jackson was ▌ *See* Pls.' Ex. 3, 30(b)(6) duKor-Jackson Tr. 31:11-32:6. While he ▌, this lapse does not mean his testimony is insufficient. *See QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012) ("The mere fact that a designee could not answer every

12

question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation.") (internal citation omitted).

### B. Whether the Dean of Admissions Meets with "Rated" Donors

Plaintiffs assert that Mr. duKor-Jackson was unfamiliar with ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Pls.' Motion at 9. But Mr. duKor-Jackson answered this question. Mr. duKor-Jackson acknowledged that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Pls.' Ex. 3, 30(b)(6) duKor-Jackson at Tr. 81:6-22, 31:4-32:6 (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇). This is consistent with the testimony from the Dean of Admissions himself that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 1, Schmill Tr. 203:4-8. Mr. duKor-Jackson made ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ because, as noted above, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Pls.' Ex. 3, 30(b)(6) duKor-Jackson Tr. at 56:19-25.

### C. Notifying MIT Senior Leadership of Admissions Decisions

Plaintiffs contend that Mr. duKor-Jackson was "unaware of how admissions ▇▇▇▇▇ ▇▇▇▇ that were highlighted to MIT's President and other senior members …were chosen." Pls.' Motion at 11. That is incorrect. Mr. duKor-Jackson testified extensively on the issue. Mr. duKor-Jackson testified ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Pls.' Ex. 3, 30(b)(6) duKor-Jackson Tr. 18:6-15. He also testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id. at* 59:6-63:10; *see* Ex. 6, MITLIT-

13

000456480 (In his email to senior leadership, Mr. Schmill writes that "many [of these cases] were not admitted [and] will be disappointed."). This is a complete answer to Plaintiffs' question of how applicants are chosen to alert senior leadership.

Plaintiffs also argue Mr. duKor-Jackson was ███████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████ Pls.' Motion at 12. Plaintiffs are incorrect that Mr. duKor-Jackson was ███████████████████. As Mr. duKor-Jackson testified, ████████ ███████████████████████. *See* Pls.' Ex. 3, 30(b)(6) duKor-Jackson Tr. 67:2-16; *see also* Ex. 7, Declaration of David duKor-Jackson, at ¶ 6. Mr. Schmill was an actual party to the conversation at issue, unlike Mr. Waitz who did not have first-hand knowledge. Plaintiffs asked no follow-up question on what Mr. duKor-Jackson knew about the specific conversation. Nor did they ask whether or how often admissions decisions are changed during the process. Plaintiffs cannot now complain Mr. duKor-Jackson was not prepared when they failed to ask any question. *See Medicines Co. v. Mylan, Inc.*, 2013 WL 120245, at *5 (N.D. Ill 2013) (Plaintiff was "'not entitled to a Mulligan' to now ask the questions it failed to ask previously.").

Regarding the general practice of individuals, whether affiliated with MIT or not, reaching out to Mr. Schmill regarding specific students, Mr. duKor-Jackson testified that ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ Pls.' Ex. 3, 30(b)(6) duKor-Jackson Tr. 67:20-68:3. He reiterated that ████████████████████ ██████████████████████████████████. *Id.* at 68:12-21. This testimony is fully consistent with the document to which Plaintiffs point as purported evidence ███████ ████████████.

14

### III. Plaintiffs' Cited Cases Do Not Support Reopening the Deposition

In their motion, Plaintiffs analogize to only two cases, both of which are inapposite. As demonstrated above, Mr. duKor-Jackson was prepared, knowledgeable, and testified fully to questions within the scope of the noticed Topics. By contrast, in *Bierk*, the designee was selected within three days of the deposition and therefore could not adequately respond to relevant questions. *See Bierk v. Tango Mobile, LLC*, 2021 WL 698479, at *2 (N.D. Ill. Feb. 23, 2021). Similarly, in *Avenatti*, the designee was not an employee, had no personal knowledge of the relevant topics, and had not seen the deposition notice until 1-2 weeks before his deposition. *Avenatti v. Gree USA, Inc.*, 2022 WL 3134425, at *4 (S.D. Ind. Aug. 5, 2022).

### IV. Reopening the Deposition Would Be Unduly Burdensome and Prejudicial

Reopening MIT's 30(b)(6) deposition and allowing Plaintiffs another two hours of testimony would be unduly burdensome and not proportional to the needs of this case. MIT presented a witness who was thoroughly prepared to testify on all Topics for which he was designated. *See* Ex. 7, Declaration of David duKor-Jackson. Allowing Plaintiffs to effectively rewrite their Topics to encompass the different questions that they now claim went unanswered would require MIT to spend considerable time and resources preparing a witness again to testify at a time when the case is well past the conclusion of fact discovery. This would also be disproportionate. Plaintiffs' questions, which concern policies and procedures internal to the Office of Resource Development, are not known to Admissions, do not affect admissions decisions, and are not relevant to any claim or issue in the case. MIT should not be burdened to prepare a witness for an additional two hours of irrelevant testimony.

### CONCLUSION

MIT respectfully requests that the Court deny Plaintiffs' Motion.

Dated: May 22, 2024                    Respectfully submitted,

                                              /s/ *Jan Rybnicek*
                                              Jan Rybnicek
Eric Mahr
Daphne Lin
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
Tel: 202-777-4500
jan.rybnicek@freshfields.com
eric.mahr@freshfields.com
daphne.lin@freshfields.com

Rami Fakhouri
Jennifer L. Greenblatt
GOLDMAN ISMAIL TOMASELLI
BRENNAN & BAUM LLP
200 South Wacker Drive, 22nd Floor
Chicago, IL 60606
Tel: 312-681-6000
rfakhouri@goldmanismail.com
jgreenblatt@goldmanismail.com

*Counsel for Defendant Massachusetts Institute of Technology*