**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated, | **Case No. 1:22-cv-00125** |
| Plaintiffs, | |
| v. | **Hon. Matthew F. Kennelly** |
| BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENTS**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... iii

I.     INTRODUCTION ..................................................................................................... 1

II.    BACKGROUND ...................................................................................................... 3

      A.     Investigation and Pleadings ........................................................................ 3

      B.     Motions to Dismiss ..................................................................................... 4

      C.     Fact Discovery ............................................................................................ 4

      D.     Expert Reports ............................................................................................ 6

      E.     Joint Status Reports and Discovery Motion Practice ................................. 6

      F.     Negotiations and Settlements ..................................................................... 6

III.   THE PROPOSED SETTLEMENTS WARRANT FINAL APPROVAL ................. 8

      A.     The Settlement Class Satisfies Rule 23(e)(1)(B) ...................................... 9

      B.     The Settlement Class Was Given Adequate Notice ................................... 9

      C.     The Proposed Settlements Satisfy the Factors Stated in Rule 23(e)(2) ............... 11

           1.    Adequacy of Representation. ........................................................ 12

           2.    Arm's Length Negotiations .......................................................... 12

           3.    Equitable Treatment of Class Members Relative to Each Other. .................. 13

           4.    Adequacy of Relief. ..................................................................... 13

      D.     The Settlements Satisfy the Seventh Circuit's Factors Under Rule 23(e)(2) ....... 14

           1.    The Strength of Plaintiffs' Case Compared to the Terms of the Proposed Settlements. ................................................................ 14

           2.    The Complexity, Length, and Expense of Continued Litigation. .................. 17

           3.    The Amount of Opposition to the Settlement and Reaction of Class Members to the Settlements. ....................................................... 18

           4.    The Opinion of Competent Counsel. ........................................... 20

           5.    The Stage of the Proceedings and the Discovery Completed. ....................... 21

      E.       The Plan of Allocation Is Also Fair, Reasonable, and Adequate..........................22

IV.     DEFENDANTS HAVE PROVIDED THE REQUISITE NOTICE UNDER THE CLASS ACTION FAIRNESS ACT..................................................................................25

V.     CONCLUSION................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   2012 WL 651727 (N.D. Ill. Feb. 28 2012) ....................................................... 11, 18

*Armstrong v. Bd. of Sch. Dirs.*,
   616 F.2d 305 (7th Cir. 1980) ........................................................................... 22

*Charvat v. Valente*,
   2019 WL 5576932 (N.D. Ill. Oct. 208, 2019)................................................... 11, 18

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) ........................................................................... 14, 21

*Glaberson v. Comcast Corp.*,
   2015 WL 5582251 (E.D. Pa. Sept. 22, 2015) .................................................. 17

*Hispanics United of DuPage Cnty. v. Village of Addison, Ill.*,
   988 F. Supp. 1130 (N.D. Ill. 1997) ................................................................. 21

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ................................................ 16, 17

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010)....................................................................... 22

*In re Auto. Refinishing Paint Antitrust Litig.*,
   2004 WL 1068807 (E.D. Pa. May 11, 2004) ................................................... 16

*In re Automative Refinishing Paint Antitrust Litig.*,
   2003 WL 23316645 (E.D. Pa. Sept. 5, 2003) .................................................. 16

*In re Broiler Chicken Antitrust Litig.*,
   2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) .................................................... 17

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ................................................................ 22

*In re Domestic Airline Travel Antitrust Litig.*,
   378 F. Supp. 3d 10 (D.D.C. 2019) ................................................................... 17

*In re Lithium Ion Batteries Antitrust Litig.*,
   2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) ................................................. 17

*In re Remicade Antitrust Litig.*,
   2023 WL 2530418 (E.D. Pa. Mar. 15, 2023).................................................. 17

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
    2024 WL 815503 (E.D. Pa. Feb. 27, 2024) ............................................................................ 16

*In re TikTok, Inc., Consumer Privacy Litig.*,
    617 F. Supp. 3d 904 (N.D. Ill. 2022) ..................................................................................... 8

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) .......................................................................................... 11, 14

*Kleen Prods. LLC v. Int'l Paper Co.*,
    2017 WL 5247928 (N.D. Ill. Oct. 17, 2017) ......................................................................... 17

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015) ............................................................................................ 20

*Lechuga v. Elite Eng'g, Inc.*,
    559 F. Supp. 3d 736 (N.D. Ill. 2021) .................................................................................... 11

*Lucas v. Vee Pak, Inc.*,
    2017 WL 6733688 (N.D. Ill. Dec. 20, 2017) ...................................................... 15, 16, 21, 22

*Meijer, Inc. v. 3M*,
    2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) ........................................................................ 16

*Molinari v. Fin. Asset Mgmt. Sys., Inc.*,
    2021 WL 5832788 (N.D. Ill. Nov. 22, 2021) ........................................................................ 11

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) .................................................................................. 20

*Poertner v. Gillette Co.*,
    618 F. App'x 624 (11th Cir. 2015) ........................................................................................ 20

*Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*,
    2013 WL 452323 (E.D.N.Y. Aug. 27, 2013) ................................................................... 16, 17

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) .................................................................................... 21

*Snyder v. Ocwen Loan Servicing, LLC*,
    2019 WL 2103379 (N.D. Ill. May 14, 2019) ..................................................... 12, 14, 19, 20

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) .................................................................................................. 20

*Summers v. UAL Corp. ESOP Comm.*,
    2005 WL 3159450 (N.D. Ill. Nov. 22, 2005) ........................................................................ 13

*T.K. v. Bytedance Tech. Co.*,
    2022 WL 888943 (N.D. Ill. Mar. 25, 2022)..................................................... passim

*Tawfilis v. Allergan*,
    2018 WL 4849716 (C.D. Cal. Aug. 27, 2018)......................................................... 15

*TikTok, Inc. Consumer Privacy Litig.*,
    565 F. Supp. 3d 1076 (N.D. Ill. 2021) ........................................................... 15, 21

*Uhl v. Thoroughbred Tech. & Telecomm., Inc.*,
    309 F.3d 978 (7th Cir. 2002) ............................................................................... 19

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ..................................................................... 3, 14, 15

## Other Authorities

28 U.S.C. § 1715 ........................................................................................................ 25

Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 12.35 (4th ed. 2002) ................. 13

B. Rothstein & T. Willging, Federal Judicial Center, *Managing Class Action Litigation:*
    *A Pocket Guide or Judges*, at 27 (3d ed. 2010) ........................................................ 10

Fed. R. Civ. P. 23(e)(1).............................................................................................. 10

Fed. R. Civ. P. 23(e)(2).............................................................................................. 11

Fed. R. Civ. P. 23(e)(2)(A)........................................................................................ 21

Fed. R. Civ. P. 23(e)(2)(B) ........................................................................................ 12

Fed. R. Civ. P. 23(e)(2)(C) ........................................................................................ 14

Fed. R. Civ. P. 23(e)(2)(C)(ii).................................................................................... 22

Plaintiffs and the proposed Settlement Class, through their undersigned counsel ("Settlement Class Counsel"), respectfully submit this Memorandum of Law in Support of their Motion for Final Approval of the Proposed Settlements.

## I.  INTRODUCTION

Settlement Class Counsel has reached and finalized settlements (the "Settlements") with ten of the seventeen Defendants[1] (the "Settling Defendants"),[2] under which Settling Defendants have collectively agreed to provide $284 million in aggregate cash payments (the "Settlement Fund") and each has agreed as part of the Settlements to complete certain additional, limited discovery and, in some instances, to provide evidence for trial. *See* ECF 439 (preliminarily approving Chicago settlement), 614 (preliminarily approving Brown, Columbia, Duke, Emory, and Yale settlements, and certain conforming amendments to Chicago settlement), 638 (preliminarily approving Dartmouth, Northwestern, Rice, and Vanderbilt settlements).

These Proposed Settlements are an excellent result both in absolute terms, considering the nearly the $284 million in cash, and given that litigation continues against the seven non-settling Defendants, each of which is potentially jointly and severally liable for treble damages (minus the cash value of any settlements). *See generally* ECF 679. If Settlement Class Counsel had not secured these Settlements in this complex matter, the Settlement Class may have had to wait years for any money—and may have received nothing at all. *See id.*

---

[1] Defendants, referred to hereinafter in common shorthand, are Brown University, California Institute of Technology, University of Chicago, The Trustees of Columbia University in the City of New York, Cornell University, Trustees of Dartmouth College, Duke University, Emory University, Georgetown University, The Johns Hopkins University, Massachusetts Institute of Technology, Northwestern University, University of Notre Dame, The Trustees of the University of Pennsylvania, William Marsh Rice University, Vanderbilt University, and Yale University.

[2] The Settling Defendants, in order of timing of the settlements in principle, are Chicago, Emory, Yale, Brown, Columbia, Duke, Dartmouth, Rice, Northwestern, and Vanderbilt.

In general, as the Court has observed in this case, antitrust litigation is complex and requires economic and industry experts in proving liability and damages and demonstrating that class certification for litigation purposes is appropriate. *See, e.g.*, Feb. 8, 2023, Hrg. Tr. 20:19-21:2; Nov. 28, 2023, Hrg. Tr. 11:15-18, 20:11-17. This lawsuit has been especially complex and hard-fought, given such factors as (a) the sheer number of Defendants, (b) that a cadre of the best law firms in the country represent them, (c) a proposed Class Period of almost twenty years and a proposed Class of approximately 200,000 individuals, (d) that discovery has involved a voluminous amount of complicated structured data, and (e) that multiple third parties possessed relevant information. In addition, as Settlement Class Counsel have previously explained to the Court, *see* ECF 679, they have had to grapple with numerous factual and legal obstacles, including contending with Defendants who claim unique defenses; dealing with FERPA-related issues for objecting students; deconstructing the complex web of higher education and its multiple organizations; and developing a common methodology for proving both classwide injury and damages.

The Proposed Settlements took years to resolve, and all of the numerous legal and factual issues in the case have been vigorously contested. Defendants have presented sophisticated defenses to all of Plaintiffs' claims, and the parties have engaged in exhaustive fact discovery and significant motion practice. (Plaintiffs and the remaining Defendants have begun their extensive work on expert reports and discovery). One key measure of the adequacy of the Settlements is the reaction of the members of the Settlement Class. The approximately 200,000 members of the Settlement Class received notice of the Settlements, in various forms pursuant to the Court-approved notice program, and the case has received significant media attention. The reaction has been almost uniformly positive, with hundreds of thousands of visitors to the

Settlement website and more than twenty thousand signing up for more information. There were only fourteen (14) opt-outs and a single objection. *See* Declaration of Steven Weisbrot, Esq. of Angeion Group LLC ¶¶ 45-46 (May 28, 2024) ("Weisbrot Decl."). In addition to this appropriate notice program, the Settlement Class meets the standards of Rule 23(e)(1) and the Settlements are fair, adequate, and reasonable under both the stated factors of Federal Rule of Civil Procedure 23(e)(2) and the factors the Seventh Circuit has set forth, as in *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).

Accordingly, for themselves and the Settlement Class, Plaintiffs respectfully request that the Court enter the accompanying proposed order: (a) granting final approval to the Proposed Settlements pursuant to Rule 23(e); (b) approving Plaintiffs' Revised Plan of Allocation, ECF 638 ¶ 9, and proposed Allocation Plan Process (discussed below), which provide a fair and reasonable method of determining each claimant's share; and (c) entering a Final Judgment and Order terminating the litigation between Plaintiffs and the Settling Defendants.

## II.    BACKGROUND

Settlement Class Counsel have set out much of the following background, relevant to the instant motion, in their pending Motion for Service Awards, Reimbursement of Expenses, and Attorneys' Fees, and the Joint Declaration from Class Counsel, dated April 29, 2024 ("Joint Decl."), submitted in conjunction with that motion. *See* ECF 679, 679-1.

### A.    Investigation and Pleadings

After a period of significant joint investigation, including discussions with consulting economists and meetings with Plaintiffs, on January 9, 2022, Settlement Class Counsel filed the Complaint, alleging that Defendants "participated in a price-fixing cartel that is designed to reduce or eliminate financial aid as a locus of competition, and that in fact has artificially inflated the net price of attendance for students receiving financial aid," and that Defendants were not

entitled to the "protection of Section 568 of the Improving America's Schools Act of 1994 (the '568 Exemption')." ECF 1 ¶¶ 1-2. Settlement Class Counsel continued to investigate and developed the pleadings through their and their clients' own initiative and collective resources—without the benefit of a related government investigation. Settlement Class Counsel filed the Amended Complaint on February 15, 2022, adding Johns Hopkins University as a Defendant, and the Second Amended Complaint on February 6, 2023. *See* ECF 106, 308.

### B.    Motions to Dismiss

Defendants filed motions to dismiss on April 15, 2022. *See* ECF 145 (by Brown, Chicago, Emory, and Johns Hopkins), 146 (by all Defendants), 148 (by Yale). Defendants argued, among other points, that (a) they fell within a statutory antitrust exemption, (b) Plaintiffs failed to state a claim, and (c) several of the claims were time barred. Settlement Class Counsel filed a thorough consolidated Opposition to the Motions to Dismiss on June 10, 2022. ECF 164. The Court denied all the Motions to Dismiss. ECF 185; Joint Decl. ¶ 10. The Court concluded Plaintiffs had sufficiently alleged that (a) the challenged conduct did not fall within the antitrust exemption; (b) Defendants had committed violations of Section 1 of the Sherman Act; (c) that they suffered antitrust injury and have standing ;. The Court further concluded that, on the facts alleged, the applicable statute of limitations did not bar Plaintiffs' claims. ECF 185.

### C.    Fact Discovery

After the Court denied Defendants' motions to dismiss, Settlement Class Counsel aggressively pursued fact and expert discovery to position Plaintiffs to establish liability and the foundations for class certification; to obtain favorable settlements; to prepare to oppose Defendants' anticipated summary judgment and *Daubert* motions; to prepare for the jury trial in this matter; and to defend any judgment on appeal.

4

Settlement Class Counsel served extensive written discovery, including 42 Requests for Admission on Brown, Caltech, and Johns Hopkins, 45 Requests for Admission on the other Defendants, 192 Requests for Production, and 45 Interrogatories. Settlement Class Counsel also served many other RFPs on each Defendant individually. Joint Decl. ¶ 14. Settlement Class Counsel analyzed the voluminous responses and objections to this substantial written discovery. Settlement Class Counsel secured the production of over 1.1 million documents, and have painstakingly reviewed, tagged, and highlighted a substantial portion of these documents. Joint Decl. ¶¶ 18-21. Settlement Class Counsel found it necessary to file multiple motions to compel to obtain key categories of documents. *See*, *e.g.*, ECF 331, 402, 440, 443, 467, 505, 539.

In addition, Settlement Class Counsel have collected, reviewed, and produced nearly 4,000 documents from Plaintiffs. Joint Decl. ¶¶ 23-27. This involved numerous meetings with Plaintiffs to identify and collect documents, and to identify electronic data sources subsequently collected by a retained vendor. *Id.* Once Settlement Class Counsel responded to document requests and negotiated search terms with Defendants, they reviewed the collected documents to locate those appropriate for production. Settlement Class Counsel also worked with Plaintiffs to produce multiple rounds of Interrogatory Responses as well as initial disclosures. *Id.*

In preparation for the over ninety (90) fact depositions they have taken in this case, Settlement Class Counsel (a) identified key documents for each deposition, (b) prepared extensive and detailed outlines, and (c) coordinated strategy and questioning amongst the Plaintiffs' legal team, as well as logistics with Defendants. *Id.* ¶¶ 18-21, 32. Settlement Class Counsel also prepared and defended the depositions of the eight class representatives and the parents of two class representatives. *Id.* ¶¶ 33-34. Settlement Class Counsel also prepared and served approximately 11 third-party subpoenas and secured tens of thousands documents from

numerous third parties. *Id.* ¶¶ 16. Settlement Class Counsel have prepared for, taken, and defended two third-party depositions. *Id.* ¶¶ 34.

### D. Expert Reports

Considering the complexity and importance of expert issues in this case, including the calculation of damages, Settlement Class Counsel retained consulting and testifying experts who have performed extensive work for the multiple expert reports that Plaintiffs served on May 14, 2024. Settlement Class Counsel of course spent significant time facilitating the work of their experts and investigators to address the key issues, including the impact of the challenged conduct on the proposed class, aggregate class damages, and anticompetitive effects. Joint Decl. ¶¶ 35-36. Settlement Class Counsel have spent thousands of hours collecting and synthesizing relevant data; frequently met with their experts to discuss their opinions and reports; and repeatedly undertaken to ensure the experts had the necessary information to evaluate, among other issues, the alleged impact and damages of the challenged conduct. *See id*. ¶¶ 8, 11, 35, 44.

### E. Joint Status Reports and Discovery Motion Practice

Settlement Class Counsel spent significant time preparing Joint Status Reports regarding discovery issues and frequently met and conferred with Defendants regarding same. Joint Decl. ¶¶ 38-39. Settlement Class Counsel engaged in extensive discovery motion practice, including motions to compel, motions to seal, motions for protective orders and others to resolve outstanding discovery disputes. *See*, *e.g.*, ECF 271, 331, 402, 440, 443, 467, 503, 505, 539, 547, 631, 645; Joint Decl. ¶¶ 28.

### F. Negotiations and Settlements

Settlement Class Counsel engaged in protracted arm's length settlement negotiations with the Settling Defendants over the past year—with several mediated by one of the most respected ADR firms in the country, Phillips ADR. Joint Decl. ¶¶ 40-56. The ten Settling Defendants have

6

agreed to provide $284 million in aggregate cash payments for the benefit of the Settlement Class and to complete certain additional, limited discovery and, in some instances, to make witnesses available for trial. ECF 439, 614, 638. Settlement Class Counsel did not achieve these Settlements as a group or all at once, but separately and over time, often with simultaneous negotiations. Joint Decl. ¶¶ 40-56. Settlement Class Counsel pursued a strategy of increasing the settlement amounts with each successive agreement or set of agreements to exert pressure on Defendants to reach agreement imminently or risk having to pay more. *Id.*

Settlement Class Counsel initiated discussions with Chicago in April 2023 and executed a settlement agreement with Chicago on August 7, 2023 (the "Chicago Settlement"). ECF 428, Ex. A; Joint Decl. ¶¶ 41. That settlement provides for cash payments totaling $13.5 million to Plaintiffs and the proposed Settlement Class, and to offer additional discovery and evidence for trial. *Id.* ¶¶ 2, 41. The Court preliminary approved the Chicago Settlement on September 9, 2023. ECF 439. Settlement Class Counsel thereafter negotiated and executed separate settlement agreements with Brown, Columbia, Duke, Emory, and Yale (collectively, the "Second Tranche Settling Defendants" and the "Second Tranche Settlements"). ECF 603, Exs. 1-5; Joint Decl. ¶ 42. The Second Tranche Settling Defendants agreed to pay $104.5 million, with Emory agreeing to pay $18.5 million, Yale $18.5 million, Brown $19.5 million, Columbia $24 million, and Duke $24 million. *Id.* They also agreed to complete certain important, continued discovery obligations. Joint Decl. ¶ 47. The Court preliminary approved the Second Tranche Settlements on February 14, 2024, and also conformed certain of the Chicago Settlement's terms to the Second Tranche Settlements. ECF 614.

Settlement Class Counsel subsequently negotiated and executed settlement agreements with Dartmouth, Northwestern, Rice, and Vanderbilt (collectively, the "Third Tranche Settling

Defendants" and the "Third Tranche Settlements"). ECF 629, Exs. 8-11; Joint Decl. ¶ 43. The

Third Tranche Settlements were executed after two years of hard-fought litigation and four

months of negotiations. Joint Decl. ¶¶ 40-43. The Third Tranche Settling Defendants agreed to

pay $166 million, with Dartmouth agreeing to pay $33.75 million, Rice $33.75 million,

Northwestern $43.5 million, and Vanderbilt $55 million. *Id*. ¶ 43. They also agreed to complete

certain discovery obligations. *Id.* On February 28, 2024, the Court preliminarily approved the

Third Tranche Settlements. ECF 638.

These Settlements were the result of Settlement Class Counsel's significant and

protracted work over a three-year period, which work included researching and initiating the

action; prosecuting the case; negotiating the terms of the settlements with each Defendant;

preparing the Settlement Agreements; developing a consolidated notice plan; finding and

working with an escrow agent and settlement claims administrator; working with their experts on

a plan of allocation of the net Settlement Funds to the Settlement Class; and preparing and filing

motions for preliminary approval and supporting papers. Joint Decl. ¶¶ 40-56; Weisbrot Decl. ¶¶

2, 4. In connection with several of the Settlements, the parties negotiated with the able assistance

of former U.S. District Court Judge Layn Phillips and, in particular, his colleagues Miles

Ruthberg and Clay Cogman at Phillips ADR.

## III.    THE PROPOSED SETTLEMENTS WARRANT FINAL APPROVAL

The "court may approve a class action settlement if: (1) it is able to certify the settlement

class; (2) the class was provided adequate notice and a public hearing; and (3) it determines that

the settlement is 'fair, reasonable, and adequate.'" *In re TikTok, Inc., Consumer Privacy Litig.*,

617 F. Supp. 3d 904, 921 (N.D. Ill. 2022) (quoting Fed. R. Civ. P. 23(e)).

### A.   The Settlement Class Satisfies Rule 23(e)(1)(B)

The Settlement Class satisfies Rule 23(e)(1)(B) because, as to the requirements of Rule 23(a) for settlement purposes only, consistent with the Court's analysis in granting preliminary approval to the Proposed Settlements, the following is true:

- The Settlement Class exceeds 100,000 individuals, and joinder of all of them would be impracticable. The discovery that Settlement Class Counsel have taken, and their work with their experts, has confirmed this fact.

- Class Representatives' claims are typical of the claims of the Settlement Class they seek to represent for purposes of settlement. The bases for the Class Representatives' claims for damages are no different than those of the absent Settlement Class members.

- Class Representatives are adequate representatives of the Settlement Class, as shown by their diligence in connection with their fact deposition and their patience with respect to Defendants' decision to depose their parents in several instances.

*See* ECF 439, 614, 638. With respect to Rule 23(b)(3), in turn, questions of law and fact common to the Settlement Class predominate over any questions affecting any individual Settlement Class Member; and a class action on behalf of the Settlement Class is superior to other available means of settling and disposing of this dispute. See ECF 439, 614, 638.

### B.   The Settlement Class Was Given Adequate Notice

Settlement Class Counsel, through the proposed claims administrator, Angeion Group LLC ("Angeion"), have followed the "Notice Plan" the Court set out. *See* ECF 638. The Court concluded that these means of notice were the best notice practicable; were reasonably calculated to apprise members of the Settlement Class of the pendency and status of this action and of their right to participate in, object to, or exclude themselves from the Proposed Settlements; were reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive

notice of the Fairness Hearing; and fully satisfies Fed. R. Civ. P. 23(e)(1), constitutes due process, and is a reasonable manner of distributing notice. *See id*.

Under the Court-approved Notice Plan, on April 3, April 24, and May 1, 2024, Angeion sent 388,420 email notices, with the number of undeliverable emails at 6,870, for an excellent deliverability rate of approximately 98.23%. Weisbrot Decl. ¶¶ 18-20. Angeion has sent 43,482 long-form notices by U.S. mail to those without valid or available email addresses, with 3,796 return as undeliverable. *Id*. ¶¶ 21-24. In addition, on March 29, 2024, Angeion caused the first press release to be issued via PR Newswire. The press release was picked up by a total of 266 media outlets, which have a combined potential audience size of approximately 147.2 million. *Id*. ¶ 25. The state-of-the-art comprehensive media campaign consisting of social media advertising via Facebook and Instagram, programmatic display advertising ("internet banner ads"), and a paid search campaign via Google, was designed to deliver an approximate 75.31% reach with an average frequency of 3.22 times each—that is, the campaign was designed so 75.31% of the potential Settlement Class members would have a digital advertisement concerning the settlement displayed to them an average of 3.22 times each. This is separate and apart from the direct email and mail notice, press release, website, and toll-free hotline. *Id*. ¶¶ 26-27. The campaign exceeded expectations, by serving over 40 million impressions, resulting in an approximate 78.24% reach with an average frequency of 4.32 times each. *Id*. ¶¶ 35-36.[3]

In line with the Court's preliminary approval of the Proposed Settlements, of course, these notices, press release, and media campaign all detailed the terms of the Settlements; the procedures and deadline for objecting to or opting out of the Settlements, which alluded to Class

---

[3] The Federal Judicial Center states that a publication notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm." B. Rothstein & T. Willging, Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide or Judges* 27 (3d ed. 2010).

Counsel's prospective fee submission; and the date and time of the Court's final fairness hearing. The deadline for Class members to object to or opt out of the Settlements was May 13, 2024. As of May 13, 2024, only one objection had been filed, and only fourteen (14) individuals had opted out of the Settlements. Weisbrot Decl. ¶¶ 45-46.

### C. The Proposed Settlements Satisfy the Factors Stated in Rule 23(e)(2)

This has long been the backdrop to Federal Rule of Civil Procedure 23(e)(2): "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *accord Molinari v. Fin. Asset Mgmt. Sys., Inc.*, 2021 WL 5832788, at *6 (N.D. Ill. Nov. 22, 2021). Settlement "minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Lechuga v. Elite Eng'g, Inc.*, 559 F. Supp. 3d 736, 744 (N.D. Ill. 2021) (internal citations omitted). Plaintiffs first address below the settlement factors stated in Federal Rule of Civil Procedure 23(e)(2), and then address the distinct factors the Seventh Circuit has applied under Rule 23(e)(2).[4]

A class action settlement may be finally approved under Federal Rule of Civil Procedure 23(e) if it is "fair, reasonable and adequate" after analysis of the factors outlined in Rule 23(e)(2). *See, e.g.*, *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *1 (N.D. Ill. Feb. 28 2012). In applying Rule 23(e)(2), a court must consider whether and to what extent (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); *see, e.g.*, *T.K. v. Bytedance Tech. Co.*, 2022 WL 888943, at *11-16 (N.D. Ill. Mar. 25, 2022); *Snyder v. Ocwen*

---

[4] One court has concluded, in reference to the factors stated in Rule 23(e)(2), that "the factors articulated by the Seventh Circuit subsume most of these factors." *Charvat v. Valente*, 2019 WL 5576932, at *6 (N.D. Ill. Oct. 208, 2019). Considering some of these differences between the two sets of factors, however, and for completeness, Plaintiffs analyze each of the factors separately.

*Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019). The facts here satisfy

all four pre-requisites for fairness under Rule 23(e)(2).

### 1.   <u>Adequacy of Representation.</u>

The principal question is "the actual performance of counsel acting on behalf of the

class," *Bytedance*, 2022 WL 888943, at *11, which relates to whether class counsel "has

extensive experience with class action litigation.," *id*. (This factor also overlaps with certain of

the Seventh Circuit factors, and to that extent Plaintiffs address the relevant facts further below).

Settlement Class Counsel and the Class Representatives have zealously represented the

Class. Settlement Class Counsel have aggressively litigated this case—which the Court well

understands has been hotly contested—for years. In particular, through March 2024, Settlement

Class Counsel had expended 91,313.4 hours of professional time, amounting to a collective

lodestar of $70,150,911.00 based on historical market rates. The Class Representatives made

meaningful contributions to the litigation and assumed significant risk. Settlement Class Counsel

consistently brought to bear decades of experience in complex commercial litigation in general,

and in class action and antitrust litigation in particular. Joint Decl. ¶¶ 63-68.

### 2.   <u>Arm's Length Negotiations.</u>

The Settlements were the end-product of arm's-length negotiations between the parties

over which, in large part, nationally prominent and experienced mediators presided. "The best

evidence of a truly adversarial bargaining process is the presence of a neutral third-party

mediator." *Bytedance*, 2022 WL 888943, at *11; *see also* Fed. R. Civ. P. 23(e)(2)(B) advisory

committee's notes to 2018 amendment (noting that "the involvement of a neutral or court-

affiliated mediator or facilitator" is a relevant factor in protecting "class interests"). With respect

to the discussions in which the parties did not involve the mediators, Settlement Class Counsel

unequivocally represent that the parties were all represented by counsel who independently and

zealously represented their clients' respective interests, and that Settlement Class Counsel participated in those negotiations based on the same factors, and in consideration of the same Class interests, as they did in the negotiations involving the mediators. Joint Decl. ¶¶ 40-50.

### 3.      Equitable Treatment of Class Members Relative to Each Other.

"Generally, a settlement that provides for pro rata shares to each class member will meet this standard." *Bytedance*, 2022 WL 888943, at *15. This has long been true. *See*, *e.g.*, *Summers v. UAL Corp. ESOP Comm.*, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) ("Given that the settlement funds in the instant action will be disbursed on a pro rata basis to all class members, we find that the allocation plan is reasonable."); *see also* Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 12.35, at 350 (4th ed. 2002) (noting that pro-rata allocation of a settlement fund "is the most common type of apportionment of lump sum settlement proceeds for a class of purchasers" and "has been accepted and used in allocating and distributing settlement proceeds in many antitrust class actions").

In this case, the Proposed Settlements treat Class members equitably relative to each other, as under the Plan of Allocation—which Plaintiffs discuss further below—each Claimant receives their proportionate share of the recovery. Service awards to the proposed class representatives, which Settlement Class Counsel have requested, will generally not "raise a red flag" because such members "do more work and take more risks than the average class member." *Bytedance*, 2022 WL 888943, at *15 (quotations omitted).

### 4.      Adequacy of Relief.

This factor substantially overlaps with the Seventh Circuit factor, discussed further below, concerning the strength of plaintiffs' case compared to the terms of the settlement. *Bytedance*, 2022 WL 888943, at *11-12. This factor also concerns the effectiveness of the proposed method of distributing the settlement funds, *id*. at *14, which Plaintiffs address below

in discussing the plan of allocation, and the proposed attorneys' fee award, *id*. at *15, which Settlement Class Counsel have separately briefed. *See* ECF 679. In that regard, what "weighs in favor of finding the relief adequate" is that "the approval of attorneys' fees remains entirely separate from approval of the Settlement." *Bytedance*, 2022 WL 888943, at *15. That is, any order relating to the amount of any award of attorneys' fees or reimbursed expenses will not operate to modify, terminate, or cancel the Proposed Settlements. In addition, on an issue that also overlaps with the Seventh Circuit factors and that Plaintiffs thus address further below, only a single Class member has objected to the Settlements.

### D. The Settlements Satisfy the Seventh Circuit's Factors Under Rule 23(e)(2)

The Seventh Circuit has set forth several factors—some of which overlap with the factors above—for assessing whether a class settlement is fair, reasonable, and adequate: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong*, 773 F.3d at 863; *accord Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982).[5] Settlement Class Counsel shows below that the facts satisfy each of these factors as well.

#### 1. The Strength of Plaintiffs' Case Compared to the Terms of the Proposed Settlements.

This factor is the "most important consideration" bearing on the fairness, reasonableness, and adequacy of a class settlement. *Isby*, 785 F.3d at 1199; *accord Snyder*, 2019 WL 2103379, at *6 (citing *Wong*, 773 F.3d at 864). When there are no "suspicious circumstances" surrounding a

---

[5] As one Court has observed, for example, "the post-2018 four-prong test for the adequacy of relief, Fed. R. Civ. P. 23(e)(2)(C), captures the 'strength of the case' and the 'complexity, length, and expense of further litigation' factors already considered by the Seventh Circuit." *Bytedance*, 2022 WL 888943, at *10 n.9. As noted above, however, for completeness, Plaintiffs separately address these factors further below.

settlement reached through arms' length negotiations by experienced counsel after the parties have sufficiently explored the merits of the case, a court may approve a settlement without quantifying the value of continued litigation. *Wong*, 773 F.3d at 864. That is, while district courts often "assess the net expected value of continued litigation" by quantifying the range of possible outcomes as part of this analysis, *Lucas v. Vee Pak, Inc.*, 2017 WL 6733688, at *8 (N.D. Ill. Dec. 20, 2017), the Seventh Circuit has held that courts need not engage in such quantification "where there are other reliable indicators that the settlement reasonably reflects the merits of the case." *TikTok, Inc. Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1087 (N.D. Ill. 2021) (quoting *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 285 (7th Cir. 2017)).

Such reliable indicators are present where, as here*,* the Proposed Settlements were reached through arms' length negotiations by highly experienced counsel based on substantial discovery for analyzing the strengths and weaknesses of the case. In *TikTok*, for example, because such factors were present, the court concluded that it "need not undertake [a] mechanical mathematical valuation," and instead recognized that the proposed settlement ensured meaningful value to the class members as compared to the risks of seeking a better outcome at trial. 565 F. Supp. 3d at 1088. In addition, given that seven non-settling Defendants remain in the case—and remain jointly and severally liable for the treble damages that the Class seeks to recover—the Proposed Settlements have reduced the value of continued litigation only by the amount of the Settlements.

The amounts of the Proposed Settlements, in turn, are excellent by any reasonable measure. The Settlement Fund amounts to *36%* of the single damages amount, $780.3 million, that Plaintiffs' expert economist, Dr. Hal Singer, computed in his report dated May 14, 2024. This would be an extraordinary result even if this resolved the entire case. *See*, *e.g.*, *Tawfilis v. Allergan*, 2018 WL 4849716, at *4 (C.D. Cal. Aug. 27, 2018) (approving antitrust settlement for

approximately 8.36% of overcharge damages); *Meijer, Inc. v. 3M*, 2006 WL 2382718, at *16 (E.D. Pa. Aug. 14, 2006) (approving antitrust settlement for approximately 2% of single damages); *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (same); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2024 WL 815503, at *9 (E.D. Pa. Feb. 27, 2024) (approving antitrust settlement for 12% to 14% of estimated single damages).

    The fact of Plaintiffs' continued prosecution of their claims further underscores the strength of the Proposed Settlements compared to Plaintiffs' continuing case. *See, e.g.*, *Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*, 2013 WL 452323, at *8-9 (E.D.N.Y. Aug. 27, 2013) (analyzing the fact that "Plaintiffs continue to litigate against non-settling defendants" as a factor favoring approval; *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *8-9 (E.D.N.Y. Sept. 25, 2009) (same); *In re Automotive Refinishing Paint Antitrust Litig.*, 2003 WL 23316645, at *4 (E.D. Pa. Sept. 5, 2003) ("At the outset, we observe that since the lawsuit will continue against the remaining defendants, and (as discussed above) since the remaining defendants are jointly and severally liable for the damages, the partial settlement with one defendant will not negatively impact the class' prospect of further recovery at trial from the nonsettling Defendants.").[6] The same is true of the Settling Defendants' agreement to provide certain additional discovery and, in some instances, to make witnesses available for trial. *Cf. Lucas*, 2017 WL 6733688, at *11 (capacity to pursue "ongoing litigation against the non-settling defendants increase[s] the value of the settlement") (collecting

---

[6] The fact that the litigation continues against non-settling Defendants thus effectively moots the analysis by which courts measure the strength of a plaintiff's case by determining the "net expected value of continued litigation to the class," *Bytedance*, 2022 WL 888943, at *12 (quotations and citation omitted), and thus "the range of possible outcomes" that the Class members would not stand to recover, *id.* (quotations and citation omitted).

authority); *see also In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 29 (D.D.C. 2019) (plaintiffs' continuing "litigation against the Non-Settling Defendants" is a factor that "weighs in favor" of approval).

## 2. The Complexity, Length, and Expense of Continued Litigation.

This factor, in this case, entails the common observations that "[a]ntitrust cases are particularly complex and risky," *Kleen Prods. LLC v. Int'l Paper Co.*, 2017 WL 5247928, at *5 (N.D. Ill. Oct. 17, 2017), such that "settlement in a complex antitrust case like this is far from a foregone conclusion." *In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *3 (N.D. Ill. Dec. 1, 2021).[7] The Proposed Settlements avoid the inherent, and inherently unpredictable, risks arising out of such central, complex issues as Plaintiffs' econometric analysis of damages and the lengthy Class Period that Plaintiffs have proposed. *Compare, e.g.*, *In re Lithium Ion Batteries*, 2020 WL 7264559, at *15 (explaining that "[t]his case in particular was intrinsically difficult to litigate due to the scope and length of the conspiracy alleged" and "the complexity associated with proving the existence of overcharges"). "The sheer scale of this litigation required extensive coordination among Class Counsel . . . in developing pleadings, engaging in motion practice, conducting discovery, and creating economic models to demonstrate damages." *Id*. Settlement Class Counsel have sought to achieve the best of both worlds by securing a substantial Settlement Fund while preserving claims for joint and several liability against the non-settling Defendants. *See*, *e.g.*, *Precision Assocs.*, 2013 WL 452323, at *8-9; *In re Air Cargo*, 2009 WL 3077396, at *8-9. The Proposed Settlements thus provide the Settlement Class with immediate,

---

[7] *See also*, *e.g.*, *In re Remicade Antitrust Litig.*, 2023 WL 2530418, at *25 (E.D. Pa. Mar. 15, 2023) ("[C]ourts acknowledge that antitrust class actions are among the most complex to litigate."); *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020) ("Antitrust cases are particularly risky, challenging, and widely acknowledged to be among the most complex actions to prosecute.") (collecting authority); *Glaberson v. Comcast Corp.*, 2015 WL 5582251, at *3 (E.D. Pa. Sept. 22, 2015) (an antitrust action is "arguably the most complex action to prosecute as the legal and factual issues involved are always numerous and uncertain in outcome") (cleaned up).

substantial, and definite relief while narrowing the number of adversaries at trial and avoid the risk of an adverse jury verdict resulting in recovery at all. Accordingly, this factor weighs in favor of final approval.

### 3. The Amount of Opposition to the Settlement and Reaction of Class Members to the Settlements.

The absence of opposition to a class action settlement "indicates that the class members consider the settlement to be in their best interest." *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *6. "Courts assess whether opposition levels are 'low' by comparing the number of objectors and opt-outs to the number of individuals reached by the notice plan. Opt-out and objection rates below 0.01% suggest that a settlement is reasonable." *Charvat*, 2019 WL 5576932, at *7 (citation omitted). The deadline for Class members to object to or opt out of the Settlements was May 13, 2024. As of May 14, 2024, only one objection had been served, and only fourteen (14) individuals had opted out of the Settlements.[8] Weisbrot Decl. ¶¶ 45-46. On the conservative assumption that the Settlement Class comprises approximately 200,000 individuals, the opt-out and objection rate is approximately 0.007%. *Id.*[9] This is, in short, a "miniscule number" of opt-outs and objections "relative to the size of the class." *Bytedance*, 2022 WL 888943, at *16.

Indeed, as this Court recently observed with respect to a proposed settlement with seven (7) opt-outs and one objection, "the fact that so few members of the Proposed Settlement Class objected to or opted out of the Proposed Settlement suggests strong support." *Bytedance*, 2022 WL 888943, at *16. In fact, courts have properly approved proposed settlements with much

---

[8] There were two late opt-outs. Weisbrot Decl. ¶ 45. Plaintiffs are counting those opt-outs towards the calculation of the opt-outs and objection rate.

[9] This calculation is "conservative" because Angeion identified over 300,000 unique mail addresses for Class members. Given the high likelihood of duplicate email addresses, the 300,000 is likely an overstatement. Settlement Class Counsel's estimate of 200,000 Class members, Joint Decl. ¶ 4, is based on the undergraduate attendance at the Defendants and the percentage of those students who received institutional financial aid.

higher numbers of opt-outs. *See, e.g.*, *Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978, 987-88 (7th Cir. 2002) (the district court did not abuse its discretion approving a class settlement from which 250 of the 58,000 class members had opted out). This is a situation in which the "overwhelming support by class members weighs strongly in favor of the fairness, reasonableness, and adequacy of the Proposed Settlement." *Bytedance*, 2022 WL 888943, at *16.

With respect to the objection that has been filed, the courts "routinely overrule" what amount to "bare objections to settlements." *Bytedance*, 2022 WL 888943, at *24; *see, e.g.*, *Snyder*, 2019 WL 2103379, at *9 (overruling objection to settlement based on "relatively low per-claim award" in part because "objectors' reservations about the amount of the settlement could have been resolved by simply opting out of the class and filing separate suits"). On May 20, 2024, the clerk docketed an objection from a member of the proposed Settlement Class who attended Columbia from 2004 to 2008. ECF 691. The sole objector made two points. First, he claimed that the "proposed settlement amount is inadequate," because, for example, the objector calculates that he is to receive $1,000 from the Net Settlement Fund but he paid over $104,000 in tuition. *Id*. Second, he asserted that the allocation plan "benefits younger members of the class at the expense of older members . . . [b]ecause the cost of attending universities has grown significantly over the years." *Id*.

These objections do not require any changes to the proposed Settlements or Plan of Allocation. As to the first objection, the Settlement Fund amounts to *36%* of the single damages amount of $780.3 million, which is an extraordinary result on its own. In addition, the objector does not discount at all for risk of loss or delay, or taking into account that Plaintiffs continue to prosecute the case against seven Defendants that are each jointly and severally liable for the entire damages amount trebled (less only the amount of the Settlements). As to the second argument, the objector fails to address important facts and risks. It is undisputed that the net prices at issue, discussed further below, have risen faster than inflation. This means that any

artificial price inflation the challenged conduct has caused is likely to have had a marginally greater net effect in more recent years because the prices have inflated from an increasingly higher base price. In addition, older claims like the objector's are more susceptible to a statute of limitations defense, which Defendants have repeatedly signaled they will assert vigorously. Plaintiffs are confident in overcoming this defense, but it is fair and reasonable to discount older claims in light of that risk. The fact that the objector did not opt out, which would otherwise be the way to resolve his concerns, *Snyder*, 2019 WL 2103379, at *9, tends to underscore the risk that older claimants may face.

With respect to the side of the ledger concerning class response, moreover, the facts further and strongly weigh in favor of final approval. As of May 16, 2024, Angeion had received a total of 25,381 online registrations for updates, in addition to the approximately 146 email inquiries to the dedicated email inbox, and approximately 112 email and/or phone call inquiries forwarded from Settlement Class Counsel. Weisbrot Decl. ¶¶ 41-42. These registrations and inquiries are not formal "claims," but do represent an affirmative response rate of approximately 12.8% of the estimated 200,000-member proposed Class.[10]

### 4.  **The Opinion of Competent Counsel.**

Courts often defer to the judgment of experienced counsel, understanding that vigorous, skilled negotiation protects against collusion and advances the fairness interests of Fed R. Civ. P.

---

[10] This rate falls in line with the claim rates of recent consumer class action settlements. *See*, *e.g.*, Declaration of Professor William B. Rubenstein, *In re Facebook Biometric Info. Privacy Litig.*, 15-CV-03747 (N.D. Cal.), ECF 517-2 at 4 (classes above 2.7 million class members average claims rates of 1.4%); *Poertner v. Gillette Co.*, 618 F. App'x 624, 626 (11th Cir. 2015) (approving unfair trade practices settlement with 7.26-million-member settlement class and 1% claims rate); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (claims rates in consumer class settlements "rarely" exceed 7%, "even with the most extensive notice campaigns"); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (1.1% of 10.3-million-member settlement class filed claims); *see also Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approving TCPA settlement with 2% claims rate); *Davenport v. Discover Fin. Servs.*, No. 1:15-CV-06052 (N.D. Ill. Dec. 19, 2017) (approving settlement with 3% claims rate).

23(e). *See, e.g.*, *TikTok*, 565 F. Supp. 3d at 1091 (plaintiffs' "well qualified" counsel attested to their belief that the settlement was fair, reasonable and adequate); *Lucas*, 2017 WL 6733688, at *12 (plaintiffs' counsel had relevant "extensive experience" and believed settlement to be in the best interest of the class). Indeed, it has long been the law that on final approval of a class settlement, the federal courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux*, 690 F.2d at 631; *accord Hispanics United of DuPage Cnty. v. Village of Addison, Ill.*, 988 F. Supp. 1130, 1170 (N.D. Ill. 1997). In short: "What matters here is that experienced counsel—particularly counsel experienced in class action litigation—have reached the settlement and are proposing it." *Bytedance*, 2022 WL 888943, at *16 (quotations omitted).

Settlement Class Counsel firmly believe, as discussed and shown in their briefs in support of their motions for preliminary approval, as well as their motions for service awards, reimbursement of expenses, and attorneys' fees, that the Proposed Settlements are fair and in the best interests of the Class. Settlement Class Counsel have formed this belief on the strength of, as noted above, their decades of experience in complex commercial litigation in general, and in class action and antitrust litigation in particular. Settlement Class Counsel applied that experience during their many rounds of settlement negotiations with the ten Settling Defendants. Accordingly, this factor weighs in favor of final approval.

### 5. The Stage of the Proceedings and the Discovery Completed.

This factor principally concerns the "nature and amount of discovery" taken as of the settlements, which "may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2)(A) advisory committee's notes to 2018 amendment; *accord Bytedance*, 2022 WL 888943, at *11. The relevant question focuses on "how additional discovery would have been in the interest of the class or would have resulted in a better settlement." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 588 (N.D. Ill. 2011). In

addition, the "stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980); *accord In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 350 (N.D. Ill. 2010).

The Proposed Settlements, as shown in Plaintiffs' summary of the relevant Background, above, are based on substantial fact discovery and expert work, establishing an extensive "information base." The Settlements occurred in the latter third of the lengthy period of fact discovery. The parties thus have had sufficient opportunity to assess the strengths and weaknesses and "place value on their respective positions in this case." *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 793 (N.D. Ill. 2015). In addition, Settlement Class Counsel have continued to prosecute the case against the remaining Defendants. This continued work has included, for example, the finalization and service on those Defendants of three expert reports on May 14, 2024. Settlement Class Counsel's continued work, including on those reports, has provided a further information base that continues to bear out the excellent result that the Proposed Settlements represent. Accordingly, this factor weighs in favor of final approval.

### E.    The Plan of Allocation Is Also Fair, Reasonable, and Adequate

"Federal courts have held that an allocation plan that reimburses class members based on the extent of their injuries is generally reasonable." *Lucas*, 2017 WL 6733688, at *13 (collecting cases). The Court must also consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). The methods of processing claims should not be "so complex that they discourage class members from pursuing valid claims." *Bytedance*, 2022 WL 888943, at *14. "A requirement that potential claimants fill out a form in order to collect from the settlement fund seldom raises such concerns." *Id*. (quotations omitted). The same is true with respect to "a

requirement that class members attest to their eligibility for recovery." *Id*. Courts are "especially wary" of settlements "distributing only the amount actually claimed by the class members, or reversionary funds." *Id*. (quotations omitted).

Plaintiffs' proposed Plan of Allocation, which Plaintiffs previously described to the Court in detail as the "Revised Plan of Allocation," *see, e.g.*, ECF 603-1, raises no such issues. Under the Revised Plan of Allocation, all members of the Settlement Class who timely submit claims ("Claimants") will receive payments from the Net Settlement Fund, *pro rata*, in proportion to an estimate of the damages allegedly suffered. The Net Settlement Fund shall be disbursed in accordance with the Revised Plan to be approved by the Court at the Final Approval Hearing. In short, under the Revised Plan, Angeion will calculate each Claimant's *pro rata* share of the Net Settlement Fund based on the formula discussed below. The Revised Plan was designed in conjunction with economists at Econ One consulting group. Where Plaintiffs allege that Defendants' conduct has artificially inflated the "Net Price" that Class members paid, *see* Second Amended Compl. ¶¶ 7, 238, 241; where "Net Price" includes the price of tuition, fees, room, and board minus all need-based and other forms of aid (excluding loans), *id*. ¶ 5; and where Plaintiffs allege that the challenged conduct sought to affect Net Prices in a consistent manner, it is reasonable to conclude that a reasonable measure of the injury to each Claimant is the average Net Price each Defendant University charged during each year or term that Claimant attended.[11] As a result, the Revised Plan proposes to allocate the Net Settlement Fund to each Claimant in proportion to the average Net Price charged by the Defendant to each Claimant for each year or

---

[11] Plaintiffs do not have sufficient data to determine the Net Price each Claimant paid for each year he or she attended, including because the per-student data Plaintiffs have is anonymized. In addition, it would not be efficient or practical to require each Claimant, many of whom attended a Defendant more than a decade ago, to have records of the Net Prices each paid. (The lone objector, for example, states that he was unable to obtain his Net Price information for one of his years.) Under the Plan, Angeion will use data from the U.S. Department of Education, or structured data produced by Defendants, as part of the calculation for determining the *pro rata* shares for Claimants attending Defendants.

term that such Claimant attended that institution. This method can be carried out mechanically based on the data available to the Claims Administrator without requiring Claimants to provide any additional information or take any additional time other than simply filing out a Claim Form.

Under Plaintiffs' proposed Allocation Plan Process, set forth in the accompanying Declaration of Edward Normand ("Normand Decl.") at Ex. 1, Settlement Class Members will submit a Settlement Claim Form ("Claim Form"). The Claim Form will be pre-populated by the Claims Administrator, for each Settlement Class member for whom the Claims Administrator has identity and contact information, with the Settlement Class Member's full name, mailing address for correspondence regarding the distribution of the Net Settlement Fund, and Defendant or Defendants attended (with the option to update any inaccurate information). Settlement Class Members who submit Claim Forms ("Claimants") will provide information for (1) the academic year(s), or portions thereof, each attended and paid for education services while receiving partial need-based grant aid provided by one or more Defendants and (2) attestations that the Claimant meets each of the criteria for membership in the Settlement Class and does not fit into any recognized exception set out in the Settlement Class definition. The Claim Form will indicate that it can be submitted electronically via an online portal available on www.financialaidantitrustsettlement.com (the "Settlement Website") or may be emailed or mailed to Angeion. *See* Allocation Plan Process ¶ 1.

Within 60 days after an order ("Final Approval") finally approving the Proposed Settlements, Revised Plan of Allocation, and Allocation Plan Process, Angeion will mail (via email or else first-class mail) a notice with a link to a pre-populated Claim Form to each Settlement Class Member for whom Angeion has a valid and current address. Allocation Plan Process ¶ 2. If a Settlement Class Member does not receive a Claim Form by mail or email, the Member can complete a Claim Form from the Settlement Website or contact Angeion at (833)

585-3338 or email at info@financialaidantitrustsettlement.com for instructions on how to access the Claim Form. *Id*. ¶ 3. All Claim Forms submitted will be reviewed and processed by Angeion, with assistance from Dr. Hal Singer and his staff at EconOne and Settlement Class Counsel, as required and appropriate. *Id*. ¶¶ 5-8. Angeion will work with EconOne to determine the amount each Claimant is entitled to receive from the Net Settlement Fund following the method set forth in the Revised Plan of Allocation, and to resolve payment to Claimants upon the Court's Final Approval. *Id*. ¶¶ 12-15.

Finally, by agreement among Plaintiffs and the Settling Defendants, if funds are left over from the Net Settlement Fund after distribution to the Settlement Class, and it is determined that it would be inefficient to conduct an additional distribution, the Revised Plan calls for Plaintiffs to seek leave of Court to ask that such left over funds by contributed to a charity focused on increasing access to college for lower income students. *See* ECF 638 ¶ 9.

## IV. DEFENDANTS HAVE PROVIDED THE REQUISITE NOTICE UNDER THE CLASS ACTION FAIRNESS ACT

Under the Settlement Agreements, and the Court's orders granting preliminary approval of the Proposed Settlements, *see* ECF 439, 614, 638, Defendants were to serve notice of the Settlement under the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"). The Settling Defendants have confirmed that as of March 13, 2024, they had each done so. *See* Normand Decl. Exs. 1-3. Accordingly, as of the date of the scheduled final Fairness Hearing, which is July 19, 2024, more than 90 days will have passed since Defendants gave notice under CAFA.

## V. CONCLUSION

Plaintiffs respectfully request, for the foregoing reasons, that the Court grant Plaintiffs' Motion for Final Approval of the Proposed Settlements.

Dated: May 28, 2024

Respectfully Submitted,

By:/s/ Robert D. Gilbert

/s/ Edward J. Normand

Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
David Copeland
Natasha Zaslove
**GILBERT LITIGATORS &
COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
dcopeland@gilbertlitigators.com
nzaslove@gilbertlitigators.com

Devin "Vel" Freedman
Edward J. Normand
Richard Cipolla
Joseph Delich
Peter Bach-y-Rita
**FREEDMAN NORMAND
FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-350-0527
vel@fnf.law
tnormand@fnf.law
rcipolla@fnf.law
jdelich@fnf.law
pbachyrita@fnf.law

/s/ Eric L. Cramer

Eric L. Cramer
Ellen T. Noteware
David Langer
Jeremy Gradwohl
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
enoteware@bm.net
dlanger@bm.net
jgradwohl@bm.net

Ivy Ngo
**FREEDMAN NORMAND
FRIEDLAND LLP**
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
Tel.: (786) 924-2900
ingo@fnf.law

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

Daniel J. Walker
Robert E. Litan
Hope Brinn
**BERGER MONTAGUE PC**
1001 G Street, NW, Suite 400 East
Washington, DC 20001
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs and the Proposed Settlement Class*