UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, <br><br> Defendants. | Case No.: 1:22-cv-00125 <br><br> **Hon. Matthew F. Kennelly** |

**SETTLEMENT CLASS COUNSEL'S NOTICE OF SUPPLEMENTAL AUTHORITY AND SUPPLEMENTAL MEMORANDUM OF LAW SUPPORTING THEIR MOTION FOR SERVICE AWARDS, REIMBURSEMENT OF EXPENSES, AND ATTORNEYS' <u>FEES IN LIGHT OF RECENT AUTHORITY</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I. INTRODUCTION AND SUMMARY ........................................................................ 1

II. RECENT AUTHORITY FROM *BROILER CHICKEN* ........................................ 3

    A. The Seventh Circuit ......................................................................................... 3

        1. Lawyers' Bids for Downward-Adjusted Fees in Prior Class Cases. ................. 4

        2. Out-of-Circuit Awards ...................................................................................... 4

    B. The Broiler Remand Fee Opinion .................................................................... 5

III. THE *BROILER CHICKEN* OPINIONS STRONGLY SUPPORT THE ONE-THIRD FEE SOUGHT HERE ................................................................................ 7

IV. CONCLUSION ............................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Cases**

*Beaver Cty. Emp. Ret. Fund vs. Tile Shop Holdings, Inc.*,
   2017 WL 2588950 (D. Minn. June 14, 2017) .................................................................. 10

*Castro v. Sanofi Pasteur Inc.*,
   2017 WL 4776626 (D.N.J. Oct. 23, 2017) ........................................................................ 2

*In re Blue Cross Blue Shield Antitrust Litig.*,
   2022 WL 4587618 (N.D. Ala. Aug. 9, 2022) ................................................................... 2

*In re Broiler Chicken Antitrust Litig.*,
   2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) ...................................................................... 1

*In re Broiler Chicken Antitrust Litig.*,
   80 F.4th 797 (7th Cir. 2023) ................................................................................... 1, 4, 5

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2015 WL 9266493 (N.D. Cal. Dec. 17, 2015) ................................................................. 2

*In re Checking Account. Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ............................................................................. 2

*In re Lidoderm Antitrust Litig.*,
   2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ................................................................ 5

*In re Optical Disk Drive Prods. Antitrust Litig.*,
   959 F.3d 922 (9th Cir. 2020) ............................................................................................ 5

*In re Remeron Direct Purchaser Antitrust Litig.*,
   2005 WL 3008808 (D.N.J. 2005) ................................................................................... 10

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
   2024 WL 815503 (E.D. Pa. Feb. 27, 2024) ..................................................................... 2

*In re Synthroid Mktg. Litig. (Synthroid I)*,
   264 F.3d 712 (7th Cir. 2001) ............................................................................................ 4

*M&N Suits Farms, Inc. v. Sprint Commc'ns Co. L.P.*,
   2012 WL 13028661 (S.D. Ind. Nov. 16, 2012) .............................................................. 11

*Meijer, Inc. v. 3M*,
   2006 WL 238718 (E.D. Pa. Aug. 14, 2006) .................................................................. 11

*Silverman v. Motorola*,
   739 F.3d 956 (7th Cir. 2013) ............................................................................................ 4

*Standard Iron Works v. ArcelorMittal*,
  2014 WL 7781572 (N.D. Ill. Oct. 22, 2014).............................................................................. 10

*Tawfilis v. Allergan, Inc.*,
  2018 WL 4849716 (C.D. Cal Aug. 27, 2018) ..................................................................... 5, 10

**Other Authorities**

U.S. Dep't of Justice, *One of the Nation's Largest Chicken Producers Pleads Guilty to Price Fixing and Is Sentenced to a $107 Million Criminal Fine* (Feb. 23, 2021), https://www.justice.gov/opa/ pr/one-nation-s-largest-chicken-producers-pleads-guilty-price-fixing-and-sentenced-107-million................................................................................................ 8

U.S. Dep't of Justice, *Six Additional Individuals Indicted on Antitrust Charges in Ongoing Broiler Chicken Investigation* (Oct. 7, 2020), https://www.justice.gov/opa/pr /six-additional-individuals-indicted-antitrust-charges-ongoing-broiler-chicken-investigation .......................... 8

I. **INTRODUCTION AND SUMMARY**

Settlement Class Counsel respectfully submit this notice of supplemental authority and memorandum of law in further support of their Motion for Service Awards, Reimbursement of Expenses, and Attorneys' Fees ("Fee Motion") (ECF 679). This memorandum apprises the Court of recent authority and explains how such precedent supports Settlement Class Counsel's request for one-third attorneys' fees of one-third of the gross amount of the collective settlements.

On July 3, 2024, the district court in *In re Broiler Chicken Antitrust Litig.*, ECF 7309, No. 1:16-cv-08637 (N.D. Ill. July 3, 2024) ("*Broiler Remand Fee Opinion*"), issued a new fee opinion after the Seventh Circuit vacated the district court's opinion awarding a fee to class counsel. *See In re Broiler Chicken Antitrust Litig.*, 80 F.4th 797 (7th Cir. 2023) (vacating and remanding award issued in *In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250 (N.D. Ill. Dec. 1, 2021)).[1] The *Broiler Remand Fee Opinion* and the Seventh Circuit's opinion are attached as Exhibits A and B, respectively.

These opinions do not warrant any downward adjustment from the requested one-third fee award—and in fact their rationales strongly support an award in that amount. Such a fee has become standard for complex antitrust class action cases in the Seventh Circuit and nearly all other Circuits. *See Broiler Remand Fee Opinion*, Slip Op. at 2 (nearly half of all awards in district court's study of antitrust class action fee opinions were for one-third); *see also, e.g.*, *In re Opana ER Antitrust Litig.*, No. 1:14-cv-10150 (N.D. Ill. Nov. 3, 2022) (granting a 36% fee award to Berger Montague, among other firms, in an antitrust class action, with the fee totaling $50,528,470.66).

---

[1] In the Fee Motion, Settlement Class Counsel cited the vacated *Broiler Chicken* fee opinion. We apologize to the Court for the error. (We cite-checked the Fee Motion, but Westlaw did not and does not flag the *Broiler Chicken* fee opinion as having been vacated or overruled.) Settlement Class Counsel became aware of the Seventh Circuit opinion on July 3, 2024, when the district court issued the *Broiler Remand Fee Opinion*.

The main justifications for the one-third fee, as set forth in the Fee Motion, include (1) the extraordinary result achieved—amounting to approximately one-third of the total single damages available to the Class—with seven defendants remaining, each jointly and severally liable for the full amount;[2] (2) the absence of any objection to the fee request despite the well-publicized nature of the case and a class of more than 200,000 highly educated class members; (3) the absence of an enforcement action or pre-existing governmental investigation; (4) the fact that the case was not part of a line of similar cases in a well-trod industry like agriculture, finance, or banking; (5) the fact that no other firm challenged for leadership or filed similar cases seeking to run and fund this case; (6) the relatively low lodestar multiplier of 1.35 on historical rates (computed only through March 31, 2024), which multiplier would be significantly lower if measured as of today, and is significantly lower than the multiplier (of 1.8) in *Broiler Chicken*; (7) the large number of

---

[2] *See* Pls.' Mem. of Law in Supp. of Their Mot. for Final Approval (ECF 703-1) at 15-16 (discussing ratio of settlement amount to single damages); *see also In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2024 WL 815503, at *2, *9 (E.D. Pa. Feb. 27, 2024) (approving antitrust class action settlement of $385 million, representing 12% to 14% of estimated single damages of $2.6 billion and $3.2 billion); *In re Blue Cross Blue Shield Antitrust Litig.*, 2022 WL 4587618, at *2, *20 (N.D. Ala. Aug. 9, 2022) (approving antitrust class action settlement of $2.67 billion reached after nine years of litigation and following several rounds of summary judgment, as well as class certification motions pending at time of settlement, where settlement represented between 7.3% to 14.3% of the estimated single damage ranging from $18.6 billion to $36.1 billion, which the court concluded "easily falls within the range of reasonable recoveries"); *Castro v. Sanofi Pasteur Inc.*, 2017 WL 4776626, at *1-2, *6 (D.N.J. Oct. 23, 2017) (approving antitrust class action settlement $61.5 million, representing approximately 14% of the estimated single damages of $439 million); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 9266493, at *5 (N.D. Cal. Dec. 17, 2015) (approving antitrust class action settlement of $9.75 million where the maximum recovery "could exceed two billion dollars," and where settlement represented 0.49% of maximum possible recovery); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (approving antitrust class action settlement of $410 million, against one defendant, representing as little as 9% percent of potential single damages depending on which measure of damages a jury adopted, and where the court emphasized that "standing alone, nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims").

defendants (seventeen) and high caliber of opposing counsel; and (8) the excellence of the lawyering as proven through the results to date.

The *Broiler Chicken* court, on remand, adjusted its fee award from one-third to 30% for reasons that do not apply here. In *Broiler Chicken*, the court observed that class counsel had submitted bids in certain prior antitrust class actions agreeing to a fee structure involving lower percentages as the settlement amount rose. *See Broiler Remand Fee Opinion*, Slip Op. at 3. In this case, Settlement Class Counsel have not agreed to such fee arrangements in other antitrust class actions. *See* Second Settlement Class Counsel Declaration ¶ 3, attached as Exhibit C. In *Broiler Chicken* and other cases involving *ex ante* agreements to seek below-standard fee arrangements, moreover, there were multiple groups of counsel competing to lead the case. Not so here. Not one other firm sought to challenge Settlement Class Counsel for lead or even sought to file the case (presumably because its originality and risk)—a clear indication that this is not the kind of case that would have produced an *ex ante* agreement for a downward fee adjustment. Finally, and importantly, there was a vigorous objection to the fee request in *Broiler Chicken*. In this case, as noted, not one of the 200,000-plus class members objected to the fee request.

Accordingly, as explained further below, a one-third fee award here is appropriate in light of relevant precedent, including the appellate and district court opinions in *Broiler Chicken*.

## II. RECENT AUTHORITY FROM *BROILER CHICKEN*

### A. The Seventh Circuit

In *Broiler Chicken*, after an objector appealed the district court's one-third fee award to class counsel, the Seventh Circuit held that the district court had abused its discretion (1) by failing to consider bids to pursue antitrust class actions at below-standard rates that some or all of class counsel had made around the same time they began litigating *Broiler Chicken*; and (2) by failing to consider Ninth Circuit cases decided pursuant to a "megafund" rule that the Seventh Circuit has

3

rejected. *Broiler Chicken*, 80 F.4th at 802. The Seventh Circuit vacated the fee award and remanded "for another evaluation of the bargain the parties would have struck *ex ante*" but clarified that it "express[ed] no preference as to the amount or structure of the award." *Id.* at 805.

        1.        <u>**Lawyers' Bids for Downward-Adjusted Fees in Prior Class Cases**</u>.

One of the two firms serving as class counsel in *Broiler Chicken* had made class counsel fee bids in other antitrust class action cases, three of which had contained declining fee structures. *Id.* at 801-02. The district court declined to consider these bids because they were too old (the most recent being seven years old) and had contained declining fee scale awards that the district court reasoned the Seventh Circuit had rejected in *In re Synthroid Marketing. Litig. (Synthroid I)*, 264 F.3d 712 (7th Cir. 2001), and *Silverman v. Motorola*, 739 F.3d 956 (7th Cir. 2013). *See Broiler Chicken*, 80 F.4th at 801. While the Seventh Circuit held that it does not require *ex ante* auctions to set fee schedules, it also held that auction bids from prior cases by firms seeking fees should be considered in deciding what bargain the parties would have struck *ex ante*. *Id.* at 802-03. The fact that some of these bids contain declining fee structures was not a reason to discount them or categorically give them less weight, even though declining fee structures can pose issues at times by creating perverse incentives. *Id.* at 803. The Seventh Circuit instructed the district court to consider the prior bids by one of the class counsel firms, but further observed that the district court could well conclude, when examining the facts in context, that the prior bids were poor indicators of an appropriate award in the *Broiler Chicken* case. *Id.* at 804.

        2.        <u>**Out-of-Circuit Awards**</u>.

The Seventh Circuit held further that it was an abuse of discretion for the district court to assign less weight to Ninth Circuit case awards simply because the awards were made pursuant to a "megafund rule" that the Seventh Circuit has rejected. *Id.* Under the so-called "megafund" rule, percentage fees on the portion of settlement amounts exceeding a certain threshold would decline

4

from the standard benchmark. According to the Seventh Circuit, even though the Seventh Circuit rejects the megafund rule, a firm's decision to participate in litigation in the Ninth Circuit (which allows, but does not require, district courts to apply such a rule[3]) is potentially probative of the value of its legal services. *Id.* That is, the choice to continue participating in litigation in the Ninth Circuit despite the megafund guideline reflects the *ex ante* agreement that counsel might strike. *Id.* In addition, while the Seventh Circuit recognized that *ex ante* agreements of the firms in question should carry more weight in determining an appropriate fee award, *ex post* awards in the Ninth Circuit are still useful in assessing appropriate compensation. *Id.* Accordingly, the Seventh Circuit directed the district court to consider fee awards in the Ninth Circuit and class counsel's participation in litigation in the Ninth Circuit. *Id.*

**B.     The Broiler Remand Fee Opinion**

The district court adjusted the fee award to 30% based on factors that are not applicable here—and that by distinction strongly *support* a one-third award here. The district court considered (1) co-counsel's prior fee bids in certain antitrust class actions;[4] (2) Ninth Circuit awards in

---

[3] The term "megafund rule" is a bit of a misnomer. It is more of a guideline than a rule. *See In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 933 (9th Cir. 2020) (declining to adopt objectors' proposed rule "requiring that percentage based fee awards *must* decline as the size of the recovery increases"). There are numerous examples of courts granting one-third fee awards in antitrust class actions in the Ninth Circuit. *See, e.g.*, Order re DPP Attorneys' Fees and Costs, and Service Awards, *In re Capacitors Antitrust Litig.*, Order re DPP Attorneys' Fees and Costs, and Service Awards, No. 3:14-cv-03264-JD (N.D. Cal. Mar. 6, 2023) (approving a 40% fee award of $66 million, bringing the total fee award for all settlements in the case just above 31% as referenced in the table of fee awards in *Broiler Remand Fee Opinion*, Slip. Op. at 16-18); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *1 (N.D. Cal. Sept. 20, 2018) (approving a one-third fee award of $34,916,000); *Tawfilis v. Allergan, Inc.*, 2018 WL 4849716, at *7 (C.D. Cal Aug. 27, 2018) (approving a one-third fee award of $4,482,885); Order Granting Final Approval of Settlement, *Meijer, Inc. v. Abbott Labs.*, No. 4:07-cv-05985-CW (N.D. Cal. Aug. 11, 2011), ECF 514 (approving a one-third fee award of $17,333,333.33).

[4] In the six years before *Broiler Chicken* was filed, one of the co-counsel firms made bids to become lead counsel in three complex antitrust cases, two of which were declining fee schedules with maximum rates of 13.5% and 17% and one of which was a flat 20%. *Broiler Remand Fee*

5

antitrust class actions;[5] (3) co-counsel's retainer in *In re Interest Rate Swaps Antitrust Litigation*;[6] and (4) data on *ex post* and *ex ante* fee awards. In landing on 30%, the district court relied largely on a factor not relevant here: counsel's prior bids and retainer agreements in similar antitrust cases in which the lawyers had agreed to litigate antitrust class actions for sub-one-third contingency arrangements. *See Broiler Remand Fee Opinion*, Slip Op. at 2-4, 11.

The district court assembled fee award data, relying primarily on awards to co-counsel and particularly co-counsel's *Interest Rate Swaps* fee agreement (assigning that agreement a 10x weight to account for its *ex ante* nature), but also looking at some *ex post* awards in other antitrust cases. *Id.* at 9-10. After disregarding a few outliers, the district court calculated a mean fee award of 29% and a median fee award of 31%. *Id.* at 10. It bears emphasizing that (a) the district court's computation of the median and average awards was heavily influenced by the over-weighting of

---

*Opinion*, Slip Op. at 3. The district court explained that these bids were relevant to determining what co-counsel were willing to be paid for their work, but also explained that those particular bids may not be the best indicia of appropriate compensation in *Broiler Chicken*; indeed, in the bid-on cases, there were extensive criminal investigations that both reduced the amount of work needed and increased the likelihood of recovery, making lower fees more reasonable. *Id.* at 3-4.

[5] Although the district court accepted the Seventh Circuit's directive that the megafund guideline does not render Ninth Circuit fee awards irrelevant, the district court explained that co-counsel's willingness to continue working in the Ninth Circuit was not good evidence of the value of their legal services in the *Broiler* case. *Broiler Remand Fee Opinion*, Slip Op. at 5-6. The court reasoned that the megafund rule means that the market for legal services is not "free" in the Ninth Circuit and that the cap is sometimes imposed because the actual market rate is higher (otherwise there would be no need for such a cap). *Id.* at 6.

[6] The district court ultimately agreed with the objector that *Interest Rate Swaps*—where the retainer agreement between class counsel and the client included a declining percentage fee structure—was a good comparator to *Broiler Chicken* because both cases were complex antitrust cases with sophisticated defendants hiring the most expensive and well-regarded defense counsel in the country. *Broiler Remand Fee Opinion*, Slip Op. at 7. Both cases had the potential to result in billions of dollars in damages too. *Id.* The district court recognized, however, that this *ex ante* retainer agreement was only one data point and that the factual circumstances were somewhat different, given that the likely settlement value in *Interest Rate Swaps* was higher in light of the well-paved path for antitrust litigation regarding financial instruments. *Id.* at 8.

*Interest Rate Swaps* for reasons that do not apply here, and (b) the most common award—accounting for nearly one-half of all cases—was one-third.

### III. THE *BROILER CHICKEN* OPINIONS STRONGLY SUPPORT THE ONE-THIRD FEE SOUGHT HERE

The appellate and district court opinions in *Broiler Chicken* do not support a sub-standard fee award in this case as the reasons for the downward adjustment there do not apply here. In fact, the numerous critical differences between the facts in that case, and the facts in this one, strongly support the requested one-third fee.

*First*, unlike counsel in *Broiler Chicken*, Settlement Class Counsel here have not made any bids in antitrust class actions for modified fee structures. Second Settlement Class Counsel Declaration ¶ 3. The data here thus demonstrate that Settlement Class Counsel valued its services, *ex ante*, at one-third of the recovery in antitrust class actions. Accordingly, the Seventh Circuit's directive to consider class counsel's prior bids in similar antitrust class action weighs strongly in favor of the sought one-third fee.

*Second*, unlike here, various law firms fought for leadership at the outset of *Broiler Chicken*—indicating that there was vigorous competition to lead that potentially lucrative case.[7] To the extent that class firms would have agreed, *ex ante*, to a downward fee adjustment, it would be much more likely in the context of a contested leadership situation than one in which no other firms sought to run, fund, and litigate the case on a contingent basis. Here, there was a single complaint, and a single group of firms that brought it. There was no contest for leadership because no other firms wanted to take on the burden and risk of pursuing this case.

---

[7] Class lawyers seeking leadership filed nine "essentially identical" complaints. Order Appointing Interim Co-Lead Counsel at 2, *Broiler Chicken*, No. 1:16-cv-08637, at *2 (N.D. Ill. Oct. 14, 2016), ECF 144. In addition, teams of law firms filed three separate motions to appoint interim co-lead and liaison counsel. *Id.*

*Third*, because *Broiler Chicken* was one of a multitude of antitrust class actions brought by consumers of protein products over the past decade—each pursuing similar antitrust theories—*ex ante* risk assessment was relatively straightforward. *See, e.g.*, *In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000 (E.D. Tenn.); *In re Processed Egg Prods. Antitrust Litig.*, No. 08-MD-02002 (E.D. Pa.); *In re Cattle & Beef Antitrust Litig.*, No. 22-md-3031-JRT-JFD (D. Minn); *In re Pork Antitrust Litig*, No. 18-cv-01776-JRT-JFD (D. Minn). This case, on the other hand, was not part of a similar line of cases with a well-worn track record—and involves allegedly applicable statutory antitrust immunities that had not previously been challenged by anyone anywhere.

*Fourth*, as the district court in *Broiler Chicken* recognized, the government investigations and enforcement actions there began after co-counsel filed the case. *See Broiler Remand Fee Opinion*, Slip Op. at 3. The fact that counsel filed their actions before government investigations began was a factor that weighed in favor of a larger fee award relative to other cases in which counsel had proposed below-standard fee structures; indeed, those proposals tended to be in cases with preexisting government enforcement actions. *Id*. But even in *Broiler Chicken*, the federal government subsequently undertook an extensive investigation leading to guilty pleas and criminal trials.[8] Here, there has never been a government enforcement action relating to the challenged conduct. Class plaintiffs and this Court have been writing on a blank slate.

---

[8] *See, e.g.*, Mot. by Intervenor United States of America, *Broiler Chicken*, No. 1:16-cv-08637 (N.D. Ill. Sept. 20, 2019), ECF 3093; U.S. Dep't of Justice, *Six Additional Individuals Indicted on Antitrust Charges in Ongoing Broiler Chicken Investigation* (Oct. 7, 2020), https://www.justice.gov/opa/pr /six-additional-individuals-indicted-antitrust-charges-ongoing-broiler-chicken-investigation; U.S. Dep't of Justice, *One of the Nation's Largest Chicken Producers Pleads Guilty to Price Fixing and Is Sentenced to a $107 Million Criminal Fine* (Feb. 23, 2021), https://www.justice.gov/opa/ pr/one-nation-s-largest-chicken-producers-pleads-guilty-price-fixing-and-sentenced-107-million.

*Fifth*, the district relied heavily on class counsel's retainer agreement with a client in *Interest Rate Swaps* in which the lawyers had agreed to a declining fee schedule that, if applied in *Broiler Chicken*, would have resulted in a 26.6% fee award. *See Broiler Remand Fee Opinion*, Slip Op. at 2, 10. But as the district court noted, *Interest Rate Swaps* involved a trillion-dollar financial market, where prior settlements in similar litigation were close to $2 billion, thus vastly increasing the potential value of the case. *Id.* at 8.[9] In contrast, very few antitrust cases (aside from those dealing with sports) have been filed against colleges or universities, none has invoked the Section 568 exemption, and single damages here are under $1 billion. *Interest Rate Swaps* is thus a poor comparator for an appropriate fee award here.

*Sixth*, the district court in *Broiler Chicken* conducted a quantitative assessment of both *ex post* and *ex ante* fee awards in complex antitrust cases. *See Broiler Remand Fee Opinion*, Slip Op. at 9-11, 16-18. Judge Durkin's study found that nearly half of all awards were at the one-third level, including many cases with settlements well exceeding the $284 million at issue here. *Id.* at 2.[10] In addition, many additional antitrust class action cases led or litigated by Settlement Class Counsel with fee awards of at least one-third could have been included in the appendix. *See, e.g.*, Order, *In re Opana ER Antitrust Litig.*, No. 1:14-cv-10150 (N.D. Ill. Nov. 3, 2022) (approving a

---

[9] *See also, e.g.*, Mem. of Law in Support of Mot. for Preliminary Approval of Settlement Agreements, *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 1:13-cv-07789-LGS (S.D.N.Y. Oct. 22, 2015), ECF 480 (seeking preliminary approval of settlements exceeding $2 billion); Mem. in Support of Preliminary Approval of Settlement with All Defendants, *In re Credit Default Swaps Antitrust Litig.*, No. 1:13-md-02476-DLC (S.D.N.Y. Oct. 16, 2015), ECF 444 (seeking preliminary approval of a $1.8 billion settlement); Memo. in Support of Class Plaintiffs' Mot. for Final Approval of Settlement, *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 1:05-md-01720-JG-JO (E.D.N.Y. April 11, 2013), ECF 2111-1 (seeking final approval of a $7.25 billion settlement).

[10] One of the Settlement Class Counsel, Mr. Cramer and his firm, was involved in leading or helping to litigate twenty-five of the antitrust class action cases listed in Judge Durkin's appendix.

9

36% fee award totaling $50,528,470.66); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808 (D.N.J. 2005) (approving a one-third fee award of $25 million); Order Granting Final Approval of Settlement, *Meijer, Inc. v. Abbott Labs.*, No. 4:07-cv-05985-CW (N.D. Cal. Aug. 11, 2011), ECF 514 (approving a one-third fee award of $17,333,333.33); *Tawfilis*, 2018 WL 4849716, at *7 (approving a one-third fee award of $4,482,885).[11]

*Seventh*, the lodestar multiplier here is much lower than in *Broiler Chicken*. While a one-third fee award here yields a modest multiplier of 1.35, the lodestar multiplier for a one-third award in *Broiler Chicken* was 1.8—significantly (in fact one-third) higher. *Compare* Mem. of Law in Support of Settlement Class Counsel's Mot. for Attorneys' Fees at 4, ECF 679, *with* Mem. in Support of End-Under Plaintiffs' Mot. for Attorneys' Fees at 9, *Broiler Chicken*, No. 1:16-cv-08637 (N.D. Ill. Oct. 27, 2021), ECF 5161. In addition, the 1.35 multiplier was computed only through March 31, 2024, and would be significantly lower if measured as of today.

*Eighth*, unlike in *Broiler Chicken*, the fee award here is uncontested. The sole objection concerns the settlement amount and allocation plan, *not the fee award*. This Court and other federal courts have long held that the absence of objections supports a finding that the proposed fee is consistent with the market rate and reasonable. *See, e.g.*, *Standard Iron Works v. ArcelorMittal*, 2014 WL 7781572, at *2 (N.D. Ill. Oct. 22, 2014) ("The absence of objections indicates that the fee is fair and reasonable and consistent with prevailing market rates."); *see also Beaver Cty. Emp. Ret. Fund vs. Tile Shop Holdings, Inc.*, 2017 WL 2588950, at *3 (D. Minn. June 14, 2017) ("The

---

[11] In addition to excluding similar antitrust class actions from the analysis, the district court heavily weighted the proposed fee agreement in *Interest Rate Swaps* because one co-counsel firm negotiated that agreement *ex ante*. *See Broiler Remand Fee Opinion*, Slip Op. at 9-10. The district court's logic was that heavier weighting was appropriate because *ex ante* awards are better indicators of what would have been negotiated *ex ante* when awarding fees *ex post* and because co-counsel itself negotiated the award. But *Interest Rate Swaps*, for the several reasons discussed above, is not applicable here.

lack of objections is strong evidence that the requested amount of fees and expenses is reasonable."); *M&N Suits Farms, Inc. v. Sprint Commc'ns Co.*, 2012 WL 13028661, at *3 (S.D. Ind. Nov. 16, 2012) ("The absence of objections or disapproval by class members to Settlement Class Counsel's fee-and-expense request further supports finding it reasonable."); *Meijer, Inc. v. 3M*, 2006 WL 238718, at *20 (E.D. Pa. Aug. 14, 2006) ("The Court finds that this total absence of objections to the requested fees weighs in favor of approval.").

IV.  CONCLUSION

Settlement Class Counsel respectfully request, for the reasons sets forth in their Fee Motion and this Supplemental Memorandum of Law, and as reflected in the attached, revised proposed Order, that the Court grant their Motion for Service Awards, Reimbursement of Expenses, and Attorneys' Fees.[12]

Dated: July 9, 2024                                                              Respectfully Submitted,

By:/s/*Robert D. Gilbert*                                                        /s/ *Edward J. Normand*
Robert D. Gilbert                                                                Devin "Vel" Freedman
Elpidio Villarreal                                                               Edward J. Normand
Robert S. Raymar                                                                 Richard Cipolla
David Copeland                                                                   Joseph Delich
Natasha Zaslove                                                                  Peter Bach-y-Rita
**GILBERT LITIGATORS &**                                                         **FREEDMAN NORMAND**
**COUNSELORS, P.C.**                                                             **FRIEDLAND LLP**
11 Broadway, Suite 615                                                           155 E. 44th Street, Suite 905
New York, NY 10004                                                               New York, NY 10016
Phone: (646) 448-5269                                                            Tel: (646) 350-0527
rgilbert@gilbertlitigators.com                                                   vel@fnf.law
pdvillarreal@gilbertlitigators.com                                               tnormand@fnf.law
rraymar@gilbertlitigators.com                                                    rcipolla@fnf.law
dcopeland@gilbertlitigators.com                                                  jdelich@fnf.law
nzaslove@gilbertlitigators.com                                                   pbachyrita@fnf.law

---

[12] The revised proposed Order is the same one that Settlement Class Counsel submitted with their Fee Motion, but it now excludes the citations to the vacated *Broiler Chicken* fee opinion.

By:/s/*Eric Cramer*
Eric L. Cramer
Ellen T. Noteware
David Langer
Jeremy Gradwohl
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
ecramer@bm.net
enoteware@bm.net
dlanger@bm.net
jgradwohl@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: (773) 257-0255
rschwartz@bm.net

Ivy Ngo
**FREEDMAN NORMAND FRIEDLAND LLP**
1 SE 3d Avenue, Suite 1240
Miami, FL 33131
Tel: (786) 924-2900
ingo@fnf.law

Daniel J. Walker
Robert E. Litan
Hope Brinn
**BERGER MONTAGUE PC**
1001 G Street, NW, Suite 400 East
Washington, DC 20001
Tel: (202) 559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs*