# EXHIBIT A

80 F.4th 797
United States Court of Appeals, Seventh Circuit.

IN RE: BROILER CHICKEN
ANTITRUST LITIGATION
End User Consumer Plaintiff Class, Plaintiff-Appellee,

v.

Fieldale Farms Corporation, et al., Defendants,

Appeal of: John Andren, Objector-Appellant.

No. 22-2889
|
Argued May 23, 2023
|
Decided August 30, 2023

**Synopsis**
**Background:** Purchasers of broiler chickens, including end-user consumers, brought antitrust class action alleging price fixing in the broiler chicken market. After $181 million settlement of a portion of action against a subset of defendants, the United States District Court for the Northern District of Illinois, Thomas M. Durkin, J., 2022 WL 6124787, awarded $57.4 million as attorney fees to settling plaintiffs and declined to order additional discovery from experts. Objector appealed.

**Holdings:** The Court of Appeals, Brennan, Circuit Judge, held that:

[1] interim fee award was appealable;

[2] district court's failure to consider bids made by class counsel in auctions in other cases was an abuse of discretion;

[3] district court's failure to consider out-of-circuit fee awards was an abuse of discretion; and

[4] remand was needed for consideration of objector's request for additional discovery.

Vacated and remanded with directions.

**Procedural Posture(s):** On Appeal; Motion for Attorney's Fees; Request for Additional Discovery.

West Headnotes (15)

[1] **Federal Courts** — Costs and attorney fees

District court's order awarding attorney fees of 33% of the $181 million settlement by a class of plaintiffs with a subset of defendants was final and thus appealable in antitrust class action alleging price fixing in the broiler chicken industry, where court entered a judgment as to the settling defendants and court laid out a formula for calculating amount of award. 28 U.S.C.A. § 1291; Fed. R. Civ. P. 54(b).

More cases on this issue

[2] **Federal Courts** — Costs and attorney fees

Where an attorney fee order issues after the resolution of the merits in a case involving multiple parties or claims, that order is appealable so long as it is final. 28 U.S.C.A. § 1291; Fed. R. Civ. P. 54(b).

[3] **Federal Courts** — Costs and attorney fees

Interim award of attorney fees can be final for purposes of appeal if the district court lays out formula for calculating the amount of award. 28 U.S.C.A. § 1291.

[4] **Federal Courts** — Costs and attorney fees

When reviewing a class-action fee award, the Court of Appeals reviews de novo whether the district court's legal analysis and method conformed to circuit law.

[5] **Costs, Fees, and Sanctions** — Class actions
**Costs, Fees, and Sanctions** — Customary or Usual Charges for Similar Services

In determining fee award in a class action, a district court must do its best to award class counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.

[6]  **Costs, Fees, and Sanctions**  Class actions
   **Costs, Fees, and Sanctions**  Customary or Usual Charges for Similar Services

In determining fee award in a class action, a district court must estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case, that is, when the risk of loss still existed.

[7]  **Costs, Fees, and Sanctions**  Class actions
   **Costs, Fees, and Sanctions**  Time Spent and Rates Charged

In determining fee award in a class action, a district court should recognize that its task is to assign fees in accord with a hypothetical ex ante bargain, weigh the available market evidence, and assess the amount of work involved, the risks of non-payment, and the quality of representation.

[8]  **Federal Courts**  Costs and attorney fees

Where the district court has followed the appropriate methodology for determining a class action fee award, the Court of Appeals reviews the fee award deferentially, for abuse of discretion, recognizing that the district court is closer to the case than the Court of Appeals is, and that a reasonable fee will often fall within a broad range.

[9]  **Federal Courts**  Costs and attorney fees

A district court abuses its discretion as to a class action fee award if it reaches an erroneous conclusion of law, fails to explain a reduction, or reaches a conclusion that no evidence in the record supports as rational.

[10]  **Costs, Fees, and Sanctions**  Class actions
   **Costs, Fees, and Sanctions**  Particular amounts

District court abused its discretion in failing to consider bids made by class counsel in auctions in other cases as part of the court's task to award attorney fees to class counsel in accord with a hypothetical ex ante bargain, following $181 million settlement of portion of antitrust class action alleging price fixing in the broiler chicken industry, where court ruled that bids with declining fee structures should categorically be given little weight based on the court's erroneous view that the Court of Appeals had cast doubt on the consideration of declining fee scale bids in all cases rather than as dependent on the particulars of the case.

More cases on this issue

[11]  **Costs, Fees, and Sanctions**  Class actions
   **Costs, Fees, and Sanctions**  Particular amounts

Fact that bids made by class counsel in auctions in other cases were not ultimately successful or made by only one of the two law firms appointed in the case in issue was not dispositive of whether bids could be considered by district court as part of the court's task to award attorney fees to class counsel in accord with a hypothetical ex ante bargain, following $181 million settlement of portion of antitrust class action alleging price fixing in the broiler chicken industry.

More cases on this issue

[12]  **Attorneys and Legal Services**  Reasonableness in general

District court abused its discretion in failing to consider out-of-circuit fee awards under a megafund rule, from the Ninth Circuit, as part of the court's task to award attorney fees to class counsel in accord with a hypothetical ex ante bargain, following $181 million settlement of portion of antitrust class action alleging price fixing in the broiler chicken industry, even though Court of Appeals had rejected the application of a megafund rule; although a limited number of representations in other markets like the Ninth Circuit could have suggested that fees below class counsel's market

price were awarded there, counsel's continued participation in the market could have revealed something about the price for counsel's legal services, and therefore counsel's bargaining position.

More cases on this issue

[13] Costs, Fees, and Sanctions 🔑 Class actions

Costs, Fees, and Sanctions 🔑 Customary or Usual Charges for Similar Services

When a district court determines the market rate as part of its task to award attorney fees to class counsel in accord with a hypothetical ex ante bargain, data about ex post fees awarded to class counsel in other cases should receive less weight, as those prices are set at the end of the litigation, and therefore are less probative in assessing the bargain that would have been struck ex ante.

[14] Federal Courts 🔑 Depositions and discovery

Discovery rulings are reviewed for an abuse of discretion.

[15] Federal Courts 🔑 Determination of damages, costs, or interest; remittitur

Remand was needed to permit district court to evaluate objector's request for additional discovery from experts on whose reports the court allegedly relied in resolving a post-settlement attorney fee motion in antitrust class action arising from alleged price fixing in the broiler chicken industry, where court did not provide a rationale for declining to order additional discovery.

More cases on this issue

**\*799** Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 16 C 8637 — Thomas M. Durkin, *Judge.*

**Attorneys and Law Firms**

Steve W. Berman, Attorney, Hagens Berman Sobol Shapiro LLP, Seattle, WA, Rio S. Pierce, Breanna Van Engelen, Attorneys, Hagens Berman Sobol Shapiro LLP, Berkeley, CA,

Benjamin D. Brown, Alison Sarah Deich, Brent W. Johnson, Daniel H. Silverman, Attorneys, Cohen Milstein Sellers & Toll PLLC, Washington, DC, Kevin Kamuf Green, Attorney, Hagens Berman Sobol Shapiro LLP, San Diego, CA, for Plaintiff-Appellee.

Michael Frank Bednarz, Attorney, Hamilton Lincoln Law Institute, Chicago, IL, Theodore H. Frank, Attorney, Hamilton Lincoln Law Institute, Washington, DC, for Objector-Appellant.

Bradley D. Justus, Attorney, Axinn, Washington, DC, for Defendant Tyson Foods, Inc.

Alli G. Katzen, Attorney, Weil, Gotshal & Manges LLP, Miami, FL, for Defendant Pilgrim's Pride Corporation.

Boris Bershteyn, Attorney, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, for Defendant Peco Foods, Inc.

Edward C. Konieczny, Attorney, Edward C. Konieczny LLC, Atlanta, GA, for Defendant Mar-Jac Poultry, Inc.

Emily M. Asp, Attorney, Stinson LLP, Minneapolis, MN, for Defendants George's Inc., George's Farms, Inc.

Aaron K. Block, Attorney, Block Firm LLC, Atlanta, GA, for Defendant Fieldale Farms Corporation.

Before Sykes, Chief Judge, and Brennan and Pryor, Circuit Judges.

**Opinion**

Brennan, Circuit Judge.

**\*800** Several class action lawsuits have been filed alleging price fixing in the broiler chicken market. In this case the district court awarded class counsel fees after a class of plaintiffs settled with a subset of defendants. Class member John Andren challenges the fee award and the district court's consideration of certain expert reports. Under our circuit's law, the district court's task was to award fees in accord with a hypothetical *ex ante* bargain. In doing so, the court did not consider bids made by class counsel in auctions in other cases

as well as out-of-circuit fee awards. So, we vacate and remand for proceedings consistent with this opinion.

**I.**

This case involves three sets of plaintiffs. One class consists of end users, defined as persons and entities who indirectly purchased certain types of broilers from the defendants or alleged co-conspirators for personal consumption in certain jurisdictions during the class period.[1] This class settled their claims with a subset of the defendants for a total of $181 million, and the district court entered judgment under Federal Rule of Civil Procedure 54(b) as to the settling parties.

 [1]   [2]   [3]  Class counsel was subsequently awarded one-third of the settlement—excluding expenses and incentive awards—amounting to $57.4 million.[2] Class member John Andren challenges this fee award.[3] He argues the district court erred in discounting bids made by class counsel in auctions in other cases and in suggesting this court has rejected the use of declining fee scale award structures. He also contends the district court erred in discounting fee awards to class counsel in the Ninth Circuit. Andren further submits the district court erred in crediting expert reports in setting the award.

In setting the fee award, the district court considered three categories of information: (1) actual agreements between the parties and fee agreements reached in the market for legal services, (2) the risk of nonpayment at the outset of the case and class counsel's performance, and (3) fee awards in comparable cases.

 *801  On the first category, the court observed that class counsel's agreement with the named plaintiffs did not specify any percentage of recovery that would be allocated toward fees. The court also acknowledged that class counsel had bid a declining fee scale award structure in at least three cases in the past ten years. It did not give great weight to these bids in setting the fee in part because the most recent was more than seven years old. In the district court's view, this court had cast doubt on whether it is appropriate to award declining fee scale award structures in *In re Synthroid Marketing Litigation (Synthroid I)*, 264 F.3d 712 (7th Cir. 2001), and *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956 (7th Cir. 2013).

Turning to the second category, risk of nonpayment and class counsel's performance, the district court observed that declining fee scale award structures may be appropriate in cases in which settlement is likely and in which the marginal cost of increasing the amount of recovery is low. But according to the district court, settlement in a complex antitrust case like this is not a foregone conclusion, and no government investigation preceded the complaint, which may have aided counsel. Opposing counsel are prominent U.S. law firms, and on the motions to dismiss the district court termed its decision a relatively close call. The district court also viewed class counsel's performance to date as exemplary.

As to the third category, fee awards in comparable cases, the district court agreed with an expert retained by another class of plaintiffs that fee awards from other circuits do not attempt to capture how clients pay lawyers in markets like the Seventh Circuit. To the district court these fee awards "are infected by default rules recommending smaller attorney fee award percentages for 'megafunds.'" It observed that "[t]he Seventh Circuit ... expressly rejected a megafund rule" in *Synthroid I* because it creates a perverse incentive. That is, "[c]lients generally want to incentivize their counsel to pursue every last settlement dollar, and a declining percentage award operates to the contrary." The district court thus concluded that "to the extent that courts in other circuits have awarded percentages smaller than what Appointed Counsel seek here, the Court finds those awards and their reasoning relatively unpersuasive."

What carried more weight for the district court was the "large number of antitrust cases in this circuit that have awarded one-third of the common fund as attorney's fees." The court reasoned, "[t]he fact that fee awards in antitrust cases in this circuit are almost always one-third is a strong indication that this should be considered the 'market rate.'" It also found this percentage in accord with fees that class counsel have been awarded in cases of similar magnitude. The court rested this finding on data submitted by class counsel on fees they have been awarded in other antitrust cases since the inception of this case. The district court reviewed the information and "discounted awards from the Ninth Circuit due to its megafund rule ...." It also observed that "in large cases like this, the only available evidence of the 'market rate' is past awards."

 [4]   [5]   [6]   [7]  We "review de novo whether the district court's legal analysis and method conformed to circuit law" in determining a fee award. *In re Stericycle Sec. Litig.*, 35

F.4th 555, 559 (7th Cir. 2022). As a matter of method, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Synthroid I*, 264 F.3d at 718. That is, a "district court must estimate the terms of the contract that **\*802** private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Id.* It should "recognize[ ] that its task was to assign fees in accord with a hypothetical ex ante bargain," "weigh[ ] the available market evidence," and "assess[ ] the amount of work involved, the risks of non-payment, and the quality of representation." *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011).

[8] [9] Where the district court has followed the appropriate methodology, "[w]e review class action fee awards deferentially, for abuse of discretion, recognizing that the district court is closer to the case than we are, and that a reasonable fee will often fall within a broad range." *Stericycle*, 35 F.4th at 559. But "[a] district court abuses its discretion ... if it 'reaches an erroneous conclusion of law, fails to explain a reduction or reaches a conclusion that no evidence in the record supports as rational.' " *Id.* (quoting *In re Sw. Airlines Voucher Litig.*, 898 F.3d 740, 743 (7th Cir. 2018)). Because the district court followed the appropriate methodology in determining the fee award, we review its decision for an abuse of discretion.

## II.

We decide whether the district court appropriately considered what bargain would have been struck *ex ante* as to attorneys' fees. The district court is close to this complex litigation, which it has done a fine job of shepherding. Still, even under our deferential standard of review, we conclude that its evaluation fell short in two areas: the consideration of bids made by class counsel in auctions, and the weight assigned to out-of-circuit decisions.

### A. Bids in Auctions

[10] Andren contends that the district court should not have discounted bids made by one of the two firms serving as class counsel in other cases. In his view, the bids were not too old because the *ex ante* approach to assessing fees requires courts to examine the bargain that would have been struck at the outset of the litigation. The litigation began in September 2016, nearly seven years ago, so to Andren the bids were highly probative. Class counsel responds that the district court considered the bids but properly assigned them little weight. According to class counsel, that is because this court has viewed auctions with skepticism. The bids Andren refers to were not successful, class counsel also contends, and only successful bids are relevant to determining what bargain would have been struck *ex ante*. Further, the bids here were made by only one of the two law firms serving as class counsel in this case.

Requiring auctions to set fee schedules *ex ante* and considering auction bids in awarding fees *ex post* are two separate concepts. Cf. *Silverman*, 739 F.3d at 957–58; *Synthroid I*, 264 F.3d at 721. We have previously rejected the idea that district courts are required to conduct auctions at the outset of litigation to set fees. *Silverman*, 739 F.3d at 957–58 (explaining that no decision "holds that fee schedules set *ex ante* are the *only* lawful means to compensate class counsel in common-fund cases"). Nevertheless, we have explained that auction bids are properly considered when deciding what bargain the parties would have struck *ex ante*. *See Synthroid I*, 264 F.3d at 721 ("[A] court can examine the bids and the results to see what levels of compensation attorneys are willing to accept in competition."). Bids that class counsel made in auctions around the time this litigation began in September 2016 would ordinarily be good predictors of what *ex ante* bargain would have been negotiated.

**\*803** The district court also discounted these bids, however, because they had declining fee scale award structures. In the district court's view, this court has explained that these awards do not reflect market realities and impose a perverse incentive insofar as they ensure that attorneys' opportunity cost will exceed the benefits of seeking a larger recovery, even when the client would otherwise benefit.

Yet, this court has never categorically rejected consideration of bids with declining fee scale award structures. Rather, the nature of the typical costs in litigation must be assessed in determining whether counsel and plaintiffs would have bargained *ex ante* for such a structure. Although this court previously acknowledged that declining fee scale award structures "create declining marginal returns to legal work," this court also observed that such a fee structure can present certain advantages. *Synthroid I*, 264 F.3d at 721. Fees do not always decline for securing a larger recovery, and in those instances, counsel will have an incentive to seek more. *Id.* Notably, this court awarded a declining fee scale award

structure in *In re Synthroid Marketing Litigation (Synthroid II)*, 325 F.3d 974, 980 (7th Cir. 2003). And in *Silverman*, this court explained that "[m]any costs of litigation do not depend on the outcome; it is almost as expensive to conduct discovery in a $100 million case as in a $200 million case." 739 F.3d at 959. At least in securities litigation, we have explained that "[m]uch of the expense must be devoted to determining liability, which does not depend on the amount of damages." *Id.* Accordingly, the appropriateness of a declining fee scale award structure may depend on the particulars of the case. It was an abuse of discretion to rule that bids with declining fee structures should categorically be given little weight in assessing fees.[4]

 [11]  It is not dispositive that the bids here were not ultimately successful or that they were made by only one of the two firms appointed in this case. In *Synthroid II*, we considered the weight accorded to prior negotiations between class counsel and plaintiffs in setting a fee award. 325 F.3d at 976–77. Those negotiations had occurred in response to a class's representation that they would opt out, which was "a step that would have prevented class counsel from recovering any fees on their account." *Id.* at 977. This court observed that "until a contract is signed—and, in class litigation, approved by the court under Fed. R. Civ. P. 23(e)—no one is bound by any of the proposed terms." *Id.* The negotiations were therefore not probative in determining the fee award. See *id.* But this discussion in *Synthroid II* is distinguishable, as those negotiations occurred while the parties were brokering a settlement. See *id.* at 976–77. This court explained that the negotiations were not significant in determining the ultimate fee award because they were "designed to bring closure." *Id.* at 977. That is, "class counsel may have been willing to accept less than their legal entitlement in order to increase the chance that they would be paid then and there." *Id.* Here, however, the bids were made in pursuit of appointment and reflect the price of co-class counsel's legal services in antitrust litigation.

Other aspects of the cases in which the bids were made may show the bids to be poor indicators of what bargain would have been struck *ex ante*. But it was error to suggest that this court has cast doubt on **\*804** the consideration of declining fee scale bids in all cases. We also reject class counsel's suggestion that bids by one firm cannot be used to determine the *ex ante* bargain that would have been struck by the two firms appointed here. On remand, the district court may accord appropriate weight to these bids, recognizing that they may be probative of the price of only one firm's legal services.

### B. Out-of-Circuit Awards

 [12]  Andren also contends the district court incorrectly excluded fee awards to class counsel in cases within the Ninth Circuit. That was mistaken, he says, because class counsel regularly bids for appointment in the Ninth Circuit, contradicting the idea that those few awards are below market rate. Class counsel responds that the district court properly discounted fee awards from the Ninth Circuit because "circuit law is not homogenous" and that circuit has declined to adopt the market rate approach to calculate fee awards.

 [13]  When determining the market rate, data about *ex post* fees awarded to class counsel in other cases should receive less weight, as those prices are set at the end of the litigation. They are therefore less probative in assessing the bargain that would have been struck *ex ante*. Cf. *Synthroid I*, 264 F.3d at 719 (explaining that "only *ex ante* can the costs and benefits of particular systems and risk multipliers be assessed intelligently").

Even so, the district court should not have categorically assigned less weight to Ninth Circuit cases in which counsel was awarded fees under a megafund rule.[5] It is true that this court has rejected the application of a megafund rule. See *id.* at 717–18. Yet continued participation in litigation in the Ninth Circuit is an economic choice that informs the price of class counsel's legal services and the bargain they may have struck. *Ex post* fees awarded to class counsel by district courts within the Ninth Circuit were set by the court and not chosen by class counsel. But as rational actors, class counsel assess the risk of being awarded fees below the market rate of their legal services when they seek to represent plaintiffs in the Ninth Circuit. Although a limited number of representations in other markets may suggest fees below counsel's market price were awarded there, continued participation in the market may reveal something about the price for class counsel's legal services, and therefore counsel's bargaining position. The district court should have considered where class counsel's economic behavior falls on this spectrum and assigned appropriate weight to fees awarded in out-of-circuit litigation.

\* \* \*

 [14]   [15]  Before concluding, we address Andren's contention that the district court should not have relied on expert reports in resolving the fee motion without permitting

him to obtain discovery from those experts. Discovery rulings are reviewed for an abuse of discretion. *Stericycle*, 35 F.4th at 567. The district court did not provide a rationale for declining to order additional discovery, so we remand that issue to permit the district court to evaluate Andren's request. Cf. *Dolin v. GlaxoSmithKline LLC*, 951 F.3d 882, 889 (7th Cir. 2020) (explaining that a district court may abuse its discretion by failing to exercise discretion).

### III.

We recognize that the district court has lived with this complex litigation for a long *805 time. It reviewed and considered our court's complicated law in this area, and it was correct to invite briefing on close questions. Ordinarily, this would place its decisions within the zone of discretion to which we would defer. But given the record as considered under our admittedly intricate law, the arrived-upon figure of one-third of the net settlement warrants greater explanation and consideration of the information described above.

So, we VACATE the fee award and REMAND for another evaluation of the bargain the parties would have struck *ex ante*; we express no preference as to the amount or structure of the award. We also remand for consideration of the request for expert discovery.

**All Citations**

80 F.4th 797

## Footnotes

1     The second class of plaintiffs consists of direct purchasers of fresh or frozen, raw broilers from the defendants or their respective subsidiaries or affiliates. The third class consists of entities that purchased broilers indirectly from a defendant or an alleged co-conspirator in certain jurisdictions for their own use in commercial food preparation. All three classes are described in general terms.

2     The district court ordered a fee award in the amount of "33 percent of the settlement fund after deducting the expenses and incentive awards." But the award amount of $57.4 million is actually 33.3 percent, or one-third, of the net settlement. Andren concedes $57.4 million was awarded. For our analysis, therefore, we consider one-third of the net settlement to have been awarded.

3     We have jurisdiction over this appeal. The district court entered judgment under Federal Rule of Civil Procedure 54(b) as to the settling defendants. Where a fee order issues after the resolution of the merits, that order is appealable so long as it is final. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (citing *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988)). Even an interim award of fees can be final "if the district court lays out a formula for calculating the award's amount." *Id.* Because that occurred here, "as a practical matter the district court is finished with the litigation about class counsel's fees, so the award is final for purposes of § 1291." *Birchmeier*, 896 F.3d at 796.

4     The district court later acknowledged that in some cases, a declining fee scale structure may be appropriate, but not in this complex antitrust litigation in which settlement was not a foregone conclusion. Yet that evaluation was not linked to the decision to discount the auction bids.

5     A megafund rule caps fees when the recovery exceeds a given value. *See Synthroid I*, 264 F.3d at 718.