# **EXHIBIT C**

JD VANCE
OHIO


WASHINGTON, DC 20510

COMMITTEE ON BANKING, HOUSING,
AND URBAN AFFAIRS

COMMITTEE ON COMMERCE,
SCIENCE, AND TRANSPORTATION

SPECIAL COMMITTEE ON AGING

JOINT ECONOMIC COMMITTEE

August 10, 2023

Hon. Lina M. Khan
Chair
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580

Dear Chair Khan:

On July 6, 2023, in the aftermath of the Supreme Court's landmark decision in *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*,[1] I wrote to ten selective colleges and universities to express my concern that they would defy or circumvent the Supreme Court's ruling. In order to ensure that any such defiance or circumvention could be unearthed in future congressional investigations, I advised each school to retain admissions documents on an ongoing basis.

At the end of the letter, I included a number of specific, targeted queries designed to inform future work to enforce the Supreme Court's decision in *Harvard College*. Specifically, I asked each school:

- What procedures will your institution implement to ensure that records are retained in accordance with this letter?

- What instructions are you giving staff about their obligation to preserve records in anticipation of a potential investigation?

- Have your staff ever been advised *not* to preserve records or to communicate internally in ways that could circumvent future inquiries?

- How will your institutions ensure that new admissions practices do not "simply establish . . . the regime" that the Supreme Court has held unlawful?

- What admissions practices previously employed by your institutions will now be forbidden?

---

[1] 143 S. Ct. 2141 (2023).

- If you have publicly committed to an interest in "diversity," how will you ensure that your commitment to that value does not entail direct or indirect race-based preferences?

To my surprise, *none* of the schools that received my letter on July 6 responded to these queries in good faith.[2] Instead, each school responded with generalized and dismissive statements. Reading through the responsive letters, I was struck by their uncanny similarity, both in substance and structure. For your reference, a few of the most striking similarities are recounted here:

- Each school's responsive letter was roughly the same length. No letter was longer than a page, and most letters were no more than two or three short paragraphs.

- Nearly all responsive letters were sent to me on the same day.

- Each school promised to comply with the Supreme Court's decision in more or less identical phrasing.[3]

- A few schools vaguely referred me to the document retention policies on their websites. Most schools ignored my questions about document retention altogether.

- Nearly all schools argued that, although the ruling would not diminish their commitment to "diversity," diversity can be achieved without running afoul of the Supreme Court's ruling. No school gave a detailed account of *how* they would commit to diversity without reestablishing race-based preferences.[4] Nor did any school address my concern that race-based preferences would be or could be reestablished in secret, under the auspices of "diversity statements" and other subversive devices.

- Although my letter was addressed to university presidents that had personally signed university statements reacting to the *Harvard College* decision, only one of ten schools sent a reply signed by the addressee. All the others spoke through similarly titled government-affairs personnel.

As soon as one school promised to "foster[] the diversity that confers educational benefits for students,"[5] the next school was asserting that "diversity . . . foster[s] meaningful interactions and prepare[s] students to make a difference in the world."[6]

---

[2] To my knowledge, one university, Yale, has not responded to my letter at all.
[3] *Compare*, *e.g.*, Letter from Emma Wolfe, Vice President for Gov't & Community Relations, Dartmouth College, to Ben Moss, Counsel to United States Senator JD Vance (July 21, 2023) ("Dartmouth fully intends to comply with the Supreme Court's ruling.") *with* Letter from Diane E. Lopez, Vice President & General Counsel, Harvard University, to Hon. JD Vance, United States Senator (July 21, 2023) ("Harvard University will fully comply with the Court's decision.").
[4] Harvard mentioned that it would continue to provide financial aid to admitted students, but did not discuss whether it would employ any other strategies to promote diversity.
[5] Letter from Albert A. Dahlberg, Associate Vice President for Gov't & Community Relations, Brown University, to Hon. JD Vance, United States Senator (July 21, 2023).
[6] Letter from Shailagh J. Murray, Executive Vice President for Pub. Affairs, Columbia University, to Hon. JD Vance, United States Senator (July 21, 2023).

It is hard to believe that the schools responding to my letter could achieve such remarkable parallels in the absence of coordination or collusion. It would be difficult enough to believe that, acting independently, *nine* separate colleges and universities would *all* choose not to respond to my questions substantively, one by one. It is nearly impossible to believe that they would do so using the same structure, vocabulary, tone, and brevity.

As you know, coordinated conduct by competing colleges and universities is a subject of increasing concern to federal courts and regulators. Many top universities, including several recipients of my letter, are embroiled in ongoing antitrust litigation connected to allegations that they coordinated their financial aid policies and admissions practices.[7] Echoing the allegations of the plaintiffs, the Department of Justice filed a brief asserting the federal government's interest in preventing unlawful cooperation among competing colleges and universities.[8]

This case and others appear to demonstrate that coordination among these institutions is rampant. Coordinating the response to a Senator's letter is one thing, but coordinating admissions policies in the wake of the *Harvard College* decision is quite another. For example, it would raise alarms for federal authorities if other elite schools were to copy Columbia Law School's recent (and now rescinded) effort to have applicants submit a video statement, thus allowing admissions officers to observe their race.[9] Schools that maintain regular communication and profess shared interests, including an interest in maintaining a "racially diverse" student body, may be tempted to jointly adopt new and experimental policies, such as preferences for low-income students, <u>assured in the knowledge that their competitors will not do otherwise</u>.

The risk of coordination is especially salient after universities developed a taste for cooperation in the years following the Improving America's Schools Act of 1994.[10] For decades, elite universities openly coordinated their financial aid policies by invoking the so-called "568 Exemption," a statutory waiver of ordinary antitrust protections for universities that practiced "need-blind" admissions.[11] The 568 Exemption expired at the end of September 2022, but collusion among colleges shows no signs of slowing down.

As you know, the Federal Trade Commission can enforce the antitrust laws under its authority to police "unfair or deceptive acts or [business] practices."[12] And, under Section 6(b) of the

---

[7] *See Carbone v. Brown University*, No. 1:22-CV-00125 (N.D. Ill.).

[8] Natalie Schwartz, *Justice Department suggests continuing antitrust lawsuit against top-ranked colleges*, HIGHER ED DIVE, July 8, 2022, https://www.highereddive.com/news/justice-department-suggests-continuing-antitrust-lawsuit-against-top-ranked/626905/.

[9] Aaron Sibarium, *Columbia Law School Said It Would Require Applicants To Submit 'Video Statements' In Wake Of Affirmative Action Ban. Then it Backtracked.*, WASH. FREE BEACON, Aug. 1, 2023, https://freebeacon.com/campus/columbia-law-school-said-it-would-require-applicants-to-submit-video-statements-in-the-wake-of-affirmative-action-ban-then-it-backtracked/.

[10] Emma Whitford, *Financial Aid Blues: Elite Colleges See Federal Antitrust Exemption Expire As Price-Fixing Lawsuit Advances*, FORBES, Oct. 5, 2022, https://www.forbes.com/sites/emmawhitford/2022/10/05/financial-aid-blues-elite-colleges-see-federal-antitrust-exemption-expire-as-price-fixing-lawsuit-advances/?sh=43ad31f53176.

[11] *Id.*

[12] *See* 15 U.S.C. § 45(a).

Federal Trade Commission Act, the FTC may "conduct wide-ranging studies [with or without] a specific law enforcement purpose."[13] In conducting these studies, the FTC may require market participants to file "annual or special . . . reports or answers in writing to specific questions" about their "organization, . . . conduct, practices, management, *and relation to other [organizations]*."[14]

I humbly propose that collusive behavior by colleges and universities, particularly as it relates to new admissions policies adopted in the aftermath of the *Harvard College* decision, may be a worthy subject for a 6(b) study. For example, it is possible that a hub-and-spoke conspiracy model will be adopted in the wake of *Harvard College*, with the U.S. News & World Report college rankings serving as the hub.[15] Enclosed with this letter are the nine replies to my letter of July 6, 2023. I invite you to review the letters for yourself, and to determine whether, like me, you glean from them clear indicia of coordination among competitors.

Sincerely,

*[signature]*

JD VANCE
United States Senator

CC:

Hon. Jonathan Kanter
Assistant Attorney General
Antitrust Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

---

[13] *A Brief Overview of the Federal Trade Commission's Investigative, Law Enforcement, and Rulemaking Authority*, Federal Trade Commission, May 2021, https://www.ftc.gov/about-ftc/mission/enforcement-authority (emphasis added); *see* 15 U.S.C. § 46(b).
[14] 15 U.S.C. § 46(b).
[15] *See* Sahaj Sharda, *Is US News a vital hub for collusion among the elite colleges?*, THE SLING, July 26, 2023, https://www.thesling.org/is-us-news-a-vital-hub-for-collusion-among-the-elite-colleges/.