**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br><br>     v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>  Defendants. | Case No.: 1:22-cv-00125<br><br>**Hon. Matthew F. Kennelly** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
<u>**MOTION TO EXCLUDE TESTIMONY OF PETER AMMON**</u>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

GLOSSARY OF ABBREVIATIONS ................................................................................... iii

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 4

CONCLUSION .................................................................................................................... 6

## **TABLE OF AUTHORITIES**

**Cases**

*ATA Airlines, Inc. v. Fed. Express Corp.*,
  665 F.3d 882 (7th Cir. 2011) .................................................................................................. 5

*Beaton v. SpeedyPC Software*,
  338 F.R.D. 232 (N.D. Ill. 2021) .............................................................................................. 2

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ................................................................................................................ 1

*Gayton v. McCoy*,
  593 F.3d 610 (7th Cir. 2010) .................................................................................................. 4

*In re Broiler Chicken Antitrust Litig.*,
  2022 WL 1720468 (N.D. Ill. May 27, 2022) ...................................................................... 4, 5

*In re Dealer Management Systems Antitrust Litigation*,
  581 F. Supp. 3d 1029 (N.D. Ill. 2022) .................................................................................... 4

*In re Packaged Seafood Prods. Antitrust Litig.*,
  2019 WL 3429174 (S.D. Cal. July 30, 2019) ......................................................................... 5

*In re Testosterone Replacement Therapy Products Liability Litig.*,
  430 F. Supp. 3d 516 (N.D. Ill. 2019) ...................................................................................... 4

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  267 F.R.D. 291 (N.D. Cal. 2010) ............................................................................................ 5

*Kleen Prods. LLC v. Int'l Paper*,
  306 F.R.D. 585 (N.D. Ill. 2015) .............................................................................................. 5

*Kohen v. Pac. Inv. Mgmt. Co.*,
  571 F.3d 672 (7th Cir. 2009) .................................................................................................. 5

*Manpower, Inc. v. Ins. Co. of Pa.*,
  732 F.3d 796 (7th Cir. 2011) .................................................................................................. 5

*Olean Wholesale Grocery Corp., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ................................................................................................... 5

**Other Authorities**

Daniel L. Rubinfeld, *Reference Guide on Multiple Regression,* in Reference Manual on
  Statistical Evidence 305-07 (3d ed. 2011) .............................................................................. 5

Federal Rule of Evidence 702 ....................................................................................................... 1

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| **Ammon Rpt.:** | Expert Report of Peter Ammon, dated August 7, 2024 |
| **Bulman Rpt.:** | Expert Report of George Bulman, Ph.D., dated May 14, 2024 |
| **Ex. __:** | Exhibit to the Declaration of Edward Normand dated December 16, 2024 |

## INTRODUCTION

Plaintiffs move to exclude the testimony of Peter Ammon under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702. Mr. Ammon is the Chief Investment Officer of Defendant The Trustees of The University of Pennsylvania ("Penn"). Penn proferred Mr. Ammon's opinions after the close of fact discovery and in rebuttal to the timely disclosed report and analyses of Plaintiffs' economic expert Prof. George Bulman, Ph.D. Mr. Ammon is not qualified to offer opinions on Dr. Bulman's analyses. Accordingly, the Court should exclude Mr. Ammon's opinions on Dr. Bulman's analyses.

## BACKGROUND

On May 14, 2024, Plaintiffs submitted the 54-page Expert Report of Prof. George Bulman, Ph.D. Dr. Bulman is an Associate Professor of Economics at the University of California, Santa Cruz, where he teaches econometrics to undergraduate and masters students, and applied microeconomics at the Ph.D. level. Bulman Rpt. ¶ 13 (Ex. 112). He is also a Research Associate with the National Bureau of Economic Research. *Id*. He received his Ph.D. in Economics from Stanford University. *Id*. He is an applied microeconomist with research in, among other fields, the economics of education. *Id*. ¶ 14. He has been frequently published in leading general interest and field journals in economics and on higher-education topics. *Id*. ¶ 15.

In his report, using multi-variable, fixed-effects regression analyses, Dr. Bulman compared the Defendants' spending on institutional aid out of their "excess" endowment returns—those that exceed the target spending rate from the endowment plus inflation—before and after the Defendants' participation in the Overarching Conspiracy that Plaintiffs allege in this case. *Id*. ¶¶ II.b, 32-35. Dr. Bulman's analyses showed that before the challenged conduct, higher endowment returns resulted in greater financial aid and reduced net prices, whereas during the alleged conspiracy, higher endowment returns were not allocated to increasing aid or reducing net

prices. *Id*. ¶ 32. The differences in the allocation of excess returns before and after the challenged conduct were "highly statistically significant," and the before-after differences are "consistent with Defendants' participating in the Challenged Conduct." *Id*.

Dr. Bulman further concluded that, during the period of the challenged conduct, Defendants increased their endowments in inflation-adjusted dollars between 46% and 281%, with an average of 144%. *Id*. ¶¶ 24-31. He further concluded that, during the period of the challenged conduct, Defendants' collective endowments grew by approximately $165 billion and reached a collective total of over $220 billion in 2022. *Id*. ¶ 26. Dr. Bulman showed that virtually every Defendant in the 568 Group from 2003 to 2022 could have awarded 10% to 20% more institutional financial aid each year while still increasing the purchasing power of its endowment at virtually the same rate as in fact occurred (and even the exception, Georgetown, could have spent 10% more and enjoyed approximately 90% of the same endowment growth). *Id*. ¶¶ 62-69 & Table 10.

On August 7, 2024, Penn served a Disclosure pursuant to Federal Rule of Civil Procedure 26(a)(2)(C) on behalf of its Chief Investment Officer, Peter Ammon, to critique Dr. Bulman's findings. *See* Ammon Discl. ¶ 7 (Ex. 122). Mr. Ammon prepared no report.[1] The Ammon Disclosure lists a number of purported facts relating to the size of Penn's endowment and financial aid spending that Mr. Ammon claims bear on Dr. Bulman's statistical analyses. *Id.* Yet the Disclosure does not indicate how any of these purported facts affects or discredits Dr. Bulman's

---

[1] Penn served the Ammon Disclosure under Rule 26(a)(2)(C), but under the rule, a non-retained expert may not testify about analyses performed only because of litigation,such as analysis inherent in a rebuttal opinion. *See*, *e.g.*, *Beaton v. SpeedyPC Software*, 338 F.R.D. 232, 236 (N.D. Ill. 2021) ("Flood only formed this opinion after reviewing Easttom's report . . . . Where Flood's testimony extends to new opinions formed because of this case, it cannot properly be introduced in his position as a hybrid expert." (cleaned up)). This infirmity, however, does not implicate *Daubert* and is thus premature to litigate. *See id.* ("[O]ther appropriate pretrial relief as may properly be sought through trial motions in limine or otherwise, including other challenges to the admissibility of Flood testimony."). If necessary, Plaintiffs will oppose or move to exclude Mr. Ammon's testimony on this further basis at the appropriate time—including to exclude his proposed testimony regarding his data compilations.

2

statistical findings regarding Penn in particular or Defendants as a group. The Disclosure contains no statistical estimates of its own purporting to show how any of the supposed "facts" it sets forth would change or even apply to Dr. Bulman's statistical conclusions.

Mr. Ammon nevertheless proposes to offer, and in fact has repeatedly offered, opinions on Dr. Bulman's statistical analyses and conclusions with respect to Penn. The Ammon Disclosure states that Mr. Ammon will critique Dr. Bulman's regression analysis based on his understanding of Penn's data. Ammon Discl. ¶ 7(a). Ammon Discl. ¶ 7(a). Mr. Ammon testified at deposition that the data he has presented "is entirely inconsistent with Dr. Bulman's allegations about a conspiracy to suppress financial aid." P. Ammon 117:15-23 (Ex. 59). In his opinion: "There's no regression that needs to be done to show this. The facts are clear and stand on their own feet." *Id*. 118:21-119:3. He offers this opinion even as he acknowledges that "regressions are used to show – to – to test hypotheses around statistical relationships between or among different variables." *Id*. 119:5-10. Asked "why do you disagree with Professor Bulman?" he answered: "Professor Bulman's conclusion that there was a conspiracy to suppress financial aid awards is entirely inconsistent with the facts at Penn." *Id*. 193:25-194:5.

Mr. Ammon does not hold a Ph.D. in economics or any other field. *See* P. Ammon 115:5-7 (Ex. 59). He does not otherwise have the training, experience, or expertise to render competent opinions on Dr. Bulman's analyses. Instead, his claimed expertise consists only of supposed "specialized technical knowledge of the composition and performance of Penn's endowment investment portfolio; the strategic considerations, institutional priorities, and financial factors that guide and constrain Penn's investment decisions; and the market conditions in which Penn operates." Ammon Discl. ¶ 5. Nothing in this description refers to any statistical expertise.

3

Under *Daubert* and the standards of Federal Rule of Evidence 702, as shown further below, Mr. Ammon is not qualified to offer any opinions to rebut Dr. Bulman's opinions. Accordingly, the Court should exclude Mr. Ammon's opinions.

## **ARGUMENT**

"Together, Rule 702 and the *Daubert* principles provide what is essentially a three-step analysis: for an expert's testimony to be admissible, (1) he or she must be qualified; (2) the reasoning or methodology underlying the testimony must be reliable; and (3) the testimony must be relevant, meaning likely to assist the trier of fact to understand the evidence or to determine a fact in issue." *In re Testosterone Replacement Therapy Products Liability Litig.*, 430 F. Supp. 3d 516, 532 (N.D. Ill. 2019) (citations omitted). Whether a proposed witness qualifies as an expert is determined by "comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) "The question . . . is not whether an expert witness is qualified in general, but whether his qualifications provide a foundation for him to answer a specific question." *Id.* at 617.

Mr. Ammon lacks the knowledge, skill, experience, education, and training to critique Dr. Bulman's analyses and opinions regarding whether Defendants' conduct was consistent with a conspiracy. *See, e.g.*, *In re Dealer Management Systems Antitrust Litigation*, 581 F. Supp. 3d 1029, 1052 (N.D. Ill. 2022) (an economic expert may analyze and opine on whether the defendants' conduct is consistent with a conspiracy). Dr. Bulman's analyses were based on his education, training, and experience as an economist, and use of multi-variable, fixed-effects regressions. "Regression analysis is a statistical method by which data is organized as dependent and independent variables . . . and is boiled down to a straight line such that predictions can be made about scenarios outside that data." *In re Broiler Chicken Antitrust Litig.*, 2022 WL 1720468, at *10 (N.D. Ill. May 27, 2022). Such analysis "is common in antitrust cases." *Kleen Prods. LLC v.*

*Int'l Paper*, 306 F.R.D. 585, 602 (N.D. Ill. 2015) (citing *Reference Guide on Multiple Regression,* in REFERENCE MANUAL ON STATISTICAL EVIDENCE 305-07 (3d ed. 2011)[2]).[3]

In contrast, Mr. Ammon admitted he could not even remember the last time he modeled a regression with fixed effects, but he insisted with respect to Dr. Bulman that "my understanding of statistics is sufficient to understand and critique his analysis." P. Ammon 115:8-16 (Ex. 59). Mr. Ammon's supposed "understanding of statistics" is not sufficient to qualify him to offer opinions supposedly rebutting Dr. Bulman's econometric analysis. Indeed, with respect to the opinions he proffers, Dr. Ammon did not even apply statistical analysis to critique Dr. Bulman's analysis. Instead, he simply lists a number of purported facts, relating to size of Penn's endowment and finances, that he claims bear on Dr. Bulman's statistical analyses.

There is nothing in the Ammon Disclosure indicating how any one of these alleged "facts" supports Mr. Ammon's *opinions*—nothing to indicate how those facts discredit, or even relate to, Dr. Bulman's statistical finding that Penn in particular, and Defendants as a group, spent less on institutional aid in relation to their excess endowment returns after challenged conduct began than

---

[2] *See, e.g.*, *ATA Airlines, Inc. v. Fed. Express Corp.*, 665 F.3d 882, 889-90 (7th Cir. 2011) (finding the REFERENCE MANUAL reliable for understanding technical evidence).

[3] *See, e.g.*, *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 808 (7th Cir. 2011) (describing regression as "a proven statistical methodology"); *Broiler Chicken,* 2022 WL 1720468, at *10 ("Regression analysis is a widely accepted method . . . and is commonly used in price-fixing cases."); *accord Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 676 (7th Cir. 2009); *In re Packaged Seafood Prods. Antitrust Litig.*, 2019 WL 3429174, at *9 (S.D. Cal. July 30, 2019); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 313 (N.D. Cal. 2010); *see also Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*, 31 F.4th 651, 681-83 (9th Cir. 2022) (en banc) (upholding class certification where there was a "rational basis" for use of pooled regression model (one that combined the data of multiple defendants into a single model) capable of showing generalized injury to the Class); *accord Dealer Mgmt.*, 2024 WL 3509668, at *6. Defendants' expert Dr. Hill agrees that a regression is appropriate here to determine whether the challenged conduct had an effect on prices. N. Hill 92:23-93:6 (Ex. 72). Dr. Hill admitted that antitrust agencies like the Department of Justice and the Federal Trade Commission regularly use regression analyses to determine the economic impact of alleged price-fixing conspiracies. *Id*. 92:23-93:6.

they did before then. Neither Mr. Ammon's disclosure nor his deposition testimony even addresses whether Penn or any of the Defendants spent less on institutional aid in relation to their excess endowment returns after the alleged conspiracy began than they did before. In short, neither Mr. Ammon's disclosure nor his deposition testimony contains any statistical estimates of his own showing how any of his "facts" change, or even relate to, Dr. Bulman's statistical conclusions.

## CONCLUSION

Plaintiffs respectfully request, for the foregoing reasons, that the Court exclude the proposed opinions of Peter Ammon under *Daubert* and Rule 702.

Dated: December 16, 2024                Respectfully Submitted,

/s/ Robert D. Gilbert
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
David S. Copeland
Natasha Zaslove
**GILBERT LITIGATORS &**
  **COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
dcopeland@gilbertlitigators.com
nzaslove@gilberlitigators.com

/s/ Eric L. Cramer
Eric L. Cramer
Ellen T. Noteware
David Langer
Jeremy Gradwohl
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
enoteware@bm.net
dlanger@bm.net
jgradwohl@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

/s/ Edward J. Normand
Devin "Vel" Freedman
Edward J. Normand
Richard Cipolla
Joseph Delich
Peter Bach-y-Rita
**FREEDMAN NORMAND**
  **FRIEDLAND LLP**
155 E. 44th Street, Suite 905
New York, NY 10017
Tel: 646-350-0527
vel@fnf.law
tnormand@fnf.law
rcipolla@fnf.law
jdelich@fnf.law
pbachyrita@fnf.law

Ivy Ngo
**FREEDMAN NORMAND**
  **FRIEDLAND LLP**
1 SE 3d Avenue, Suite 1240
Miami, FL 33131
Tel: 786-924-2900
ingo@fnf.law

Daniel J. Walker
Robert E. Litan
Hope Brinn
**BERGER MONTAGUE PC**
1001 G Street, NW, Suite 400 East
Washington, DC 20001
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs*

7