# EXHIBIT 18

**Proving Antit Damages: Legal and Economic Issues Preface**

Proving Antitrust Damages: Legal and Economic Issues - ETTOC  >  Front Matter

# Preface

The Section of Antitrust Law of the American Bar Association is pleased to publish the third edition of *Proving Antitrust Damages: Legal and Economic Issues*. Like its predecessor, the third edition is designed to be an accessible introduction to the legal and economic concepts of antitrust damages for use by counsel who may be new to the area as well as to more experienced counsel. This edition has been expanded and updated to incorporate more recent case law, advances in economic thinking, and comparison with foreign jurisdictions.

The edition is organized into three parts. Chapters 1 through 3 guide the reader through the legal requirements that a plaintiff must satisfy in order to establish a right to recover damages in an antitrust private action. Chapters 4 through 6 describe the basic economic concepts that are used in calculating damages, including basic methods, financial concepts, and econometric analyses that are used to differentiate the effects of anticompetitive conduct from other influences. Before turning to specific types of conduct, Chapter 7 describes the scrutiny expert testimony is likely to receive and the standards for establishing scientific validity. Chapters 8 through 10 discuss commonly arising issues associated with estimating damages related to: (1) overcharges, which are commonly asserted by customers in price fixing cases under Section 1 of the Sherman Act, and less frequently in monopolization cases under Section 2 of the Sherman Act; (2) lost profits, which are alleged by competitors generally in the context of exclusion conduct cases; and (3) price discrimination under the Robinson-Patman Act. Chapter 11 provides a brief discussion of notable issues in proving antitrust damages in the European Union and Canada.

This book is the product of the collective efforts of numerous contributors. All chapters in this edition were revised substantially and are the result of enormous effort over two years. The following individuals contributed to the drafting of this third edition:

Daniel Anziska

Katherine Arnold

John Asker

Catherine Beagan Flood

Charles B. Casper

Chris Cavanaugh

Tasneem Chipty

Jeff Cohen

Eric L. Cramer

Matthew DeFrancesco

Paul T. Denis

David Giardina

Stuart Gurrea

Jeremy Gunn

Laila Haider

Mark Israel

Bryan Keating

Jessica Sarkis

Preface

Sheron Korpus

George Kosicki

Russell Lamb

Gregory K. Leonard

Michael A. Lindsay

Divya Mathur

Sean May

Henry McFarland

Joel M. Mitnick

Menesh Patel

Lawrence Reicher

Dov Rothman

Katherine Santon

Kelsey Shannon

Daniel Simons

David Smith

Jaime Stilson

Paul Stuart

Romano Subiotto

Daniel P. Weick

Clarissa Yeap

The publication of this edition also would not have been possible without the substantial efforts of Tasneem Chipty, Michael Chapman, and Sean May who edited and coordinated various chapters of *Proving Antitrust Damages*.

Finally, the book could not have been published without the outstanding editorial and production work of Emily Bala, Aaron Fix, Olga Korolev, Ben Landsberg, Ju Li, Liz Milsark, Zarina Patwa, Books and Treatises Committee former Vice Chair Andrew C. Finch, Books and Treatises Committee Co-Chair Kay Lynn Brumbaugh, Books and Treatises Committee Former Co-Chair Stephen A. Stack, and the Section of Antitrust Law and ABA Publishing staffs.

Donald Stockdale

Joanna Tsai

*Co-Chairs*, Economics Committee

American Bar Association

2016-2017

Proving Antitrust Damages: Legal and Economic Issues Copyright © 2017 American Bar Association. All Rights Reserved.

**End of Document**

## *Proving Antit Damages: Legal and Economic Issues II.6.A*

*Proving Antitrust Damages: Legal and Economic Issues - ETTOC > PART II > Chapter 6 Econometrics and Regression Analysis*

## A. Legal Requirements

The legal requirements for methods used to estimate damages, including all econometric methods, fall under the rules for testimony by experts. Under Federal Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. [n4]

Regression analyses have met these requirements many times in litigation for a wide range of issues, including the estimation of antitrust damages, [n5] as well as showing at the class certification stage that such damages are consistent with the plaintiff's theory of liability. [n6] A competent expert should be able to tell the litigant whether sufficient facts and data are available for econometric analysis, explain the types of econometric analyses that are applicable, and reliably apply these econometric techniques.

Using regression analysis does not, by itself, guarantee that an analysis will be viewed as reliable. [n7] In general, econometric results will be more reliable as the amount and quality of data increase. [n8] If sufficient data are available, econometric analysis has been found necessary to achieve the minimum scientific standard for establishing lost sales and price changes. For example, in *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, [n9] expert opinion and internal forecasts for sales growth were excluded because data to estimate sales growth via regression analysis were available and not used. The regression must be in a form that assists in determining a material fact, such as the amount of lost sales or the size of price changes. [n10] The analysis also must be based on data "reasonably relied upon by experts in the field." [n11] Because experts typically verify data for accuracy in

---

[n4] . Fed. R. Evid. 702.

[n5] . *See, e.g.,* Conwood Co. v. U.S. Tobacco Co., 290 F.3d 768 (6th Cir. 2002); In re Urethane Antitrust Litigation, 768 F.3d 1245 (10th Cir. 2014).

[n6] . Comcast Corp. v. Behrend, 133 S. Ct. 1426 (2013); *See also* In re Rail Freight Surcharge Antitrust Litigation, 725 F.3d 244 (D.C. Cir. 2013) (remanding in light of *Behrend* so that the district court could analyze whether the regression model proffered by plaintiffs' expert passed sufficient muster at the class certification stage).

[n7] . In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305 (3d Cir. 2008); Kottaras v. Whole Food Market, Inc., 281 F.R.D. 16, 25-26 (D.D.C. 2012); In re Live Action Antitrust Litigation, 863 F. Supp. 2d 966 (C.D. Cal. 2012).

[n8] . Roy J. Epstein, *An Econometrics Primer for Lawyers*, ANTITRUST, Summer 2011, at 29.

[n9] . 395 F.3d 416 (7th Cir. 2005); *see also* In re High-Tech Employee Antitrust Litigation, 289 F.R.D. 555, 582 (N.D. Cal. 2013) (rejecting as evidence proposed factors analysis and compensation charts, but accepting that a regression analysis provided plausible support for the class-wide theory espoused by plaintiffs).

[n10] . Daniel Rubinfeld, *Reference Guide on Multiple Regression, in* FEDERAL JUDICIAL CENTER, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 303 (3d ed. 2011), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/sciman03.pdf/$file/sciman03.pdf.

consulting work or academic research, experts presenting regression analyses in court need to conduct similar verifications of the data that they use. [n12]

The principle for reliability encompasses many factors entering the regression analysis, and a competent expert should conduct reliability checks to ensure that the results survive the rigors of litigation. [n13] Part C of this chapter discusses the basic regression method, and Part D describes many of the design issues that arise in reliably implementing econometric techniques and econometric tests that a testifying expert should perform when appropriate. Moreover, econometric results typically should not change materially with minor changes to the data (e.g., deleting a few observations). [n14] Note, though, that while the court decides as a matter of law whether a regression analysis is admissible under the Federal Rules of Evidence, the finder of fact is ultimately responsible for deciding the probative value of such evidence, [n15] considering questions including whether the dataset used in analysis is reliable and complete, [n16] and, in certain instances, whether statistical significance provides sufficient reliability for the factfinder to base its factual conclusions on the study. [n17]

Proving Antitrust Damages: Legal and Economic Issues Copyright © 2017 American Bar Association. All Rights Reserved.

---

**End of Document**

---

[n11] . Fed. R. Evid. 703.

[n12] . *See, e.g.*, Maddox v. Claytor, 764 F.2d 1539, 1552 (11th Cir.1985) ("[Multiple regression analysis] measures the probability that the calculated disparity could occur randomly-but the analysis in no way validates the calculation of the disparity itself. If the tested disparity is based on erroneous assumptions or suffers from flaws in the underlying data, then standard deviation analysis is foredoomed to yield an equally faulty result.").

[n13] . Reed v. Advocate Health Care, 268 F.R.D. 573, 593 (N.D. Ill. 2009) ("The issue is not whether [the expert] has shown just any method for proving impact and damages on a class-wide basis; it is whether the method he proposes is a *reliable* means of common proof.") (emphasis in original).

[n14] . Rubinfeld, *supra* note 10, at 199.

[n15] . Cook v. Rockwell Int'l Corp. 580 F. Supp. 2d 1071, 1113 (D. Colo. 2006).

[n16] . *See, e.g.*, Bazemore v. Friday, 478 U.S. 385, 400 (1986) ("Normally, failure to include variables will affect the analysis' probativeness, not its admissibility."); *but see* In re Graphics Processing Units Antitrust Litigation, 253 F.R.D. 478 (N.D. Cal. 2008) (finding missing variables and experts' decision to average certain factors insufficient to carry plaintiff's burden at class certification stage with respect to most of proposed class).

[n17] . Kadas v. MCI Systemhouse Corp., 255 F.3d 359, 362 (7th Cir. 2001) (finding that there is no bright line test for an acceptable significance level, although such a factor still goes towards weight of the evidence). *See also* In re High-Tech Employee Antitrust Litigation, 289 F.R.D. 555, 581 (N.D. Cal. 2013) ("Assuming *arguendo*, that...the [] Regression's results are not statistically significant at the 95 percent level does not persuade the Court that the regression is inadmissible (although this failure might affect the model's probative value)."); *but see* Allen v. Dairy Farmers of America, Inc., 279 F.R.D. 257, 271 (D. Vt. 2011) (finding plaintiffs' damage model showing a statistical significance with a 99 percent confidence level insufficient to show damage results on classwide basis and denying class certification, because the model lacked a necessary price component).