# EXHIBIT 103

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>*Defendants*. | Case No. 1:22-cv-00125<br><br>Hon. Matthew F. Kennelly |

**PENN'S RESPONSES AND OBJECTIONS
TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION TO ALL
DEFENDANTS**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure (the "Federal

Rules") and the Local Rules of the United States District Court for the Northern District of

Illinois (the "Local Rules"), the Trustees of the University of Pennsylvania ("Penn"), by its

1

undersigned counsel, hereby responds to Plaintiffs' First Set of Requests for Admission (the "Requests"), dated September 30, 2023, as follows.

## **PRELIMINARY STATEMENT**

Penn responds to each of the Requests set forth below based only upon information and materials presently available and specifically known to Penn after a reasonable, good-faith investigation at this time. In responding to the Requests, Penn does not concede the truth or accuracy of any of Plaintiffs' characterizations of fact or law, factual expressions, or assumptions contained in these Requests, the propriety of any Request, or the relevance, authenticity, or admissibility thereof, and expressly reserves the right to object to the relevance, authenticity, or admissibility of such information at any point in the future.

All responses are made subject to these objections and those set forth below. No response shall be considered, or is, a waiver of any objections. Information produced in response to these Requests is provided solely for use in this litigation and for no other purpose, and any documents or information produced by Penn in response to these Requests shall be subject to the Confidentiality Order and FERPA Order entered in this case and other discovery agreements or orders effective in this action. Penn reserves the right to supplement, amend, or otherwise revise these responses and objections, and to move for a protective order, if and when it deems necessary.

Penn objects to each Request or Instruction to the extent it imposes any obligation greater than those imposed or authorized by the Federal Rules, the Local Rules, or any other applicable rule or order. Penn objects to each Request to the extent it seeks information covered by the attorney-client privilege, and/or any other applicable privilege or protection. Likewise, Penn objects to the extent the Requests seek information prohibited from disclosure by the Family

Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g and associated regulations, 34 C.F.R. Part 99, by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 18, 26, 29, and 42 U.S.C.), and by any other applicable statute or regulation. Penn also objects to each Request to the extent that it seeks a legal conclusion. No answer is required for such Requests.

## INSTRUCTIONS

1. If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit it or deny it.

**RESPONSE:** Penn objects to this Instruction to the extent that it purports to impose on Penn burdens and obligations in excess of, or in conflict with, those set forth in the Federal Rules and any other applicable rule or order of the Court.

2. Denial of any statement as to which an admission is required must fairly meet the substance of the requested admission.

**RESPONSE:** Penn objects to this Instruction to the extent it purports to impose on Penn any obligation or requirement to admit to any Request.

3. When good faith requires that an answer be qualified or denied in part as to a specific admission that is requested, you must specify the part that you admit and qualify or deny the remainder.

**RESPONSE:** Penn objects to this Instruction to the extent that it purports to impose on Penn burdens and obligations in excess of, or in conflict with, those set forth in the Federal Rules and any other applicable rule or order of the Court.

4. You may not give lack of information or knowledge as a reason for failure to admit or deny the truth of the statement as to which an admission is requested unless you state that you have made reasonable inquiry and that the information known or reasonably obtainable by you is insufficient to enable you to admit or deny the truth of matter as to which an admission has been requested.

**RESPONSE:** Penn objects to this Instruction to the extent that it purports to impose on Penn burdens and obligations in excess of, or in conflict with, those set forth in the Federal Rules and any other applicable rule or order of the Court. Penn objects to this Instruction as overbroad to the extent the phrase "reasonably obtainable" purports to impose on Penn the obligation to attain information that is not within its possession, custody, or control.

5. If you consider that a matter as to which an admission has been requested presents a genuine issue for trial, you may not, on that ground alone, object to the request.

**RESPONSE:** Penn objects to this Instruction to the extent that it purports to impose on Penn burdens and obligations in excess of, or in conflict with, those set forth in the Federal Rules and any other applicable rule or order of the Court.

6. Statements as to which admissions are requested shall be deemed admitted if you fail to admit, deny, or object to the statements within thirty (30) days after service of this document.

**RESPONSE:** Penn objects to this Instruction to the extent that it purports to impose on Penn burdens and obligations in excess of, or in conflict with, those set forth in the Federal Rules and any other applicable rule or order of the Court.

7. If any request for admission is objected to on the ground of overbreadth, specifically state the manner in which it is overly broad and respond to the request for admission as narrowed to conform to such objection.

**RESPONSE:** Penn objects to this Instruction to the extent that it purports to impose on Penn burdens and obligations in excess of, or in conflict with, those set forth in the Federal Rules and any other applicable rule or order of the Court.

8. In conformity with Federal Rule of Civil Procedure 37, as to any matter denied, the Plaintiffs may apply to the Court for an order requiring you to pay the reasonable expenses incurred in proving the truth of any such matter, including the costs of depositions and attorneys' fees.

**RESPONSE:** Penn objects to this Instruction to the extent that it purports to impose on Penn burdens and obligations in excess of, or in conflict with, those set forth in the Federal Rule of Civil Procedure 37 and any other applicable rule or order of the Court.

## DEFINITIONS

Penn restates and incorporates by reference its responses and objections to the Definitions and Instructions in its October 19, 2022 Responses and Objections to Plaintiffs' First Set of Requests for Production of Documents to All Defendants (the "October 19, 2022 Responses and Objections"), which Penn restated and incorporated by reference in its December 7, 2022 Responses and Objections to Plaintiffs' Second Set of Requests for Production of Documents (the "December 7, 2022 Responses and Objections") and its February 27, 2023 Responses and Objections to Plaintiffs' Third Set of Requests for Production of Documents (the "February 27, 2023 Responses and Objections") (collectively, "October 19, 2022, December 7, 2022, and February 27, 2023 Responses and Objections"). Penn also incorporates by reference its responses and objections to the Definitions and Instructions in its October 30, 2023 Responses and Objections to Plaintiffs' Second Set of Interrogatories (the "October 30, 2023 Responses and Objections") and in its May 5, 2023 Responses and Objections to Plaintiffs' First Set of Interrogatories on All Defendants (the "May 5, 2023 Responses and Objections"). Penn responds to the additional Definitions in the Requests as follows.

1. "Annual Revenues" means the total amount of money You earn from operations in a fiscal year before any deductions and expenses.

**RESPONSE:** Penn objects to this Definition as vague and ambiguous because the phrase "earn from operations" is not defined. In responding to the Requests, Penn will construe the term "Annual Revenues" as it is used by Penn in the ordinary course of business.

2. "Annual Expenditures" means all operating costs, expenses and outgoings You incur in a fiscal year.

**RESPONSE:** Penn objects to this Definition because the phrase "outgoings" is vague, ambiguous, and purports to impose on Penn unclear obligations. In responding to the Requests, Penn will construe the term "Annual Expenditures" as it is used by Penn in the ordinary course of business.

3. "Annual Tuition Revenue" means Annual Revenues from undergraduate tuition.

**RESPONSE:** Penn has no objection to this Definition.

4. "Budget" means an estimate of income and expenditure for a set period of time.

**RESPONSE:** Penn has no objection to this Definition.

5. "Cross Admit Rate" means the rate at which two schools admit identical students that applied to both schools. For example, if 3% of the students that are admitted to school A are also admitted to school B, then school A's cross admit rate with respect to school B is 3%.

**RESPONSE:** Penn objects to this Definition as vague and ambiguous because the example in the second sentence does not appear to reflect the denominator from the definition in the first sentence. In responding to the Requests, Penn will construe the term "Cross Admit Rate" as it is ordinarily used by Penn employees.

6. "Defendants" refers to all defendants in this action, case number 22-00125, pending in the United States District Court for the Northern District of Illinois.

**RESPONSE:** Penn has no objection to this Definition, but for the avoidance of doubt will construe the term "Defendants" to mean all defendants named in the caption of the action.

7. "Endowment" means an aggregation of assets invested by a college or university to support its mission.

**RESPONSE:** Penn objects to this Definition to the extent it does not reflect Penn's use of the term in the ordinary course. In responding to the Requests, Penn will construe the term "Endowment" as it is used by Penn.

6

8. "Endowment Funds" means funds in or generated by the Endowment.

**RESPONSE:** Penn objects to this Definition as overbroad and unduly burdensome to the extent that it conflicts with Penn's usage in the ordinary course. In responding to the Requests, Penn will construe the term "Endowment Funds" as it is used by Penn in the ordinary course of business.

9. "Income" means a student and their family's income as used by You to calculate the EFC.

**RESPONSE:** Penn objects to this Definition as vague and ambiguous because it is unclear whether the term "Income" reflects any adjustments thereto. In responding to the Requests, Penn will construe the term "Income" as used by Penn.

10. "Low-Income Family" means the family of a student that qualifies or will qualify for a Pell Grant or is able to pay less than half the School's cost of attendance.

**RESPONSE:** Penn objects to this Definition as vague and ambiguous because it defines "Low-Income Family" by reference to the family's "ability to pay" without explaining how that ability is to be determined. In responding to the Requests, Penn will construe the term "Low-Income Family" as used by Penn.

11. "Market for Elite, Private Universities" means the market for undergraduate education at private national universities with an average ranking of 25 or higher in the U.S. News & World Report rankings from 2003 through 2021.

**RESPONSE:** Penn objects to this Definition to the extent it seeks a legal conclusion. For avoidance of doubt, Penn denies that this "market" constitutes a properly defined relevant antitrust market and it is aware of no such market.

12. "Market Power" means the ability to raise prices above those that would be charged in a competitive market.

**RESPONSE:** Penn objects to this Definition as vague and also inaccurate statement of what constitutes "market power" under relevant case law.

7

13. "Need-Based Financial Aid" means Financial Aid calculated only on the basis of a student's or applicant's financial need.

**RESPONSE:** Penn objects to this Definition as vague and ambiguous because it does not define how a student's or applicant's "financial need" is determined. In responding to the Requests, Penn will construe the term "Need-Based Financial Aid" as it is used by Penn and commonly understood.

14. "Need-Blind" means admitting all students admitted on a need-blind basis, as defined in Section 568 of the Improving Schools Act of 1994 (15 U.S.C. 1 note).

**RESPONSE:** Penn objects to this Definition to the extent that it is inconsistent with the Improving Schools Act of 1994 (15 U.S.C. § 1 note). Penn also objects to the phrase "admitting all students admitted" as vague and ambiguous. Penn further objects to this Definition to the extent it differs from the meaning of the term used by Penn and its common understanding. In responding to the Requests, Penn will construe the term "Need-Blind" as it is used by Penn and commonly understood.

15. "Net Cost of Attendance" means the actual cost a student and their family need to pay in a year to cover expenses for the student to attend a particular college or university

**RESPONSE:** Penn objects to this Definition as vague and ambiguous because it is not clear what costs are included within the terms "actual cost" and "expenses for the student to attend a particular college or university." In responding to the Requests, Penn will construe "Net Cost of Attendance" to mean the actual total amount paid by students and/or their families to Penn for tuition (including mandatory fees), room, and board, less Gift Aid and all aid from outside sources, however denominated. This is not the same as Penn's estimated net cost of attendance that Penn calculates for each student, because the estimated net cost of attendance includes both direct costs that will be billed to the student and/or their families and indirect costs that Penn budgets for, which the student may or may not pay and may or may not pay to Penn.

The actual cost paid by students and/or their families ultimately varies from student to student and it will not be the same as the estimated net cost of attendance.

16. "Original 568 Schools" means the 28 schools that were "signatory institutions" to the press release issued on or about July 6, 2001, entitled "28 University Presidents Affirms [sic] Commitment to Financial Aid,"[1] including Defendants University of Chicago, Columbia University, Cornell University, Dartmouth College, Duke University, Emory University, Georgetown University, Massachusetts Institute of Technology, Northwestern University, University of Penn, University of Pennsylvania, Rice University, Vanderbilt University, and Yale University

**RESPONSE:** Penn objects to this Definition as overbroad because Dartmouth College was not mentioned as a signatory institution in the press release cited in the footnote to the Definition.

17. "Unrestricted Endowment Funds" means Endowment Funds that may be used for any purpose.

**RESPONSE:** Penn objects to this Definition to the extent it is inconsistent with Penn's usage of the term in the ordinary course of business. In responding to the Interrogatories, Penn will construe this term to mean endowment funds that either do not have any provision as to spending, or have only limited restrictions as to the purpose for which the funds must be used.

## RESPONSES AND OBJECTIONS TO SPECIFIC REQUESTS

**REQUEST FOR ADMISSION NO. 1:**

Admit that, from 2003 until 2022, Your general practice in awarding Financial Aid was to award primarily Need-Based Financial Aid.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Penn incorporates by reference the responses and objections set forth in the Preliminary Statement and in response to the Definitions and Instructions. Penn objects that the phrases "general practice" and "primarily" are vague and ambiguous. Penn interprets this request to ask

---

[1] https://news.cornell.edu/stories/2001/07/28-university-presidents-affirms-commitment-financial-aid

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Penn incorporates by reference the responses and objections set forth in the Preliminary Statement and in response to the Definitions and Instructions. Penn objects to this Request because the terms "goals" and "in consideration of the fact" are vague and ambiguous. Penn objects to this Request as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it requires Penn to ascertain the specific reasons for each admissions decision in each Academic Year since 2003. Penn objects to this Request as overbroad, unduly burdensome, and disproportionate to the needs of the case because it is not feasible to respond regarding goals of everyone who worked at Penn and its various departments. Penn objects to this Request as not relevant to any party's claims or defenses. Subject to and without waiving the foregoing General and Specific Objections, DENY.

**REQUEST FOR ADMISSION NO. 19:**

Admit that, since 2003, there have been Academic Years in which You used Unrestricted Endowment Funds for Annual Expenditures.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Penn incorporates by reference the responses and objections set forth in the Preliminary Statement and in response to the Definitions and Instructions. Penn objects to this Request because it is not relevant to any party's claims or defenses. On the basis it is not relevant to any party's claims or defenses whether there have been Academic Years in which Penn has used Unrestricted Endowment Funds for Annual Expenditures, Penn will not respond to this Request.

**REQUEST FOR ADMISSION NO. 20:**

Admit that, since 2003, there has been no law or contractual obligations precluding You from using Unrestricted Endowment Funds to fund Your Need-Based Financial Aid.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Penn incorporates by reference the responses and objections set forth in the Preliminary Statement and in response to the Definitions and Instructions. Penn objects to the phrase "law or contractual obligations" as vague and ambiguous. Penn objects to this request because it calls for a legal conclusion. Penn objects to this request to the extent it calls for the disclosure of information protected by the attorney-client privilege. Penn interprets this request to ask whether, since 2003, Penn has understood itself to be free from any legal restriction on its ability to use Unrestricted Endowment Funds to fund Need-Based Aid. Subject to and without waiving the foregoing General and Specific Objections, and based on the interpretation set forth above, ADMIT.

**REQUEST FOR ADMISSION NO. 21:**

Admit that, since 2003, the amount You annually spend on Financial Aid has comprised an increasingly smaller percentage of Your Endowment.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

Penn incorporates by reference the responses and objections set forth in the Preliminary Statement and in response to the Definitions and Instructions. Penn objects to the terms "since 2003" and "increasingly smaller percentage" as vague and ambiguous. Penn objects to this request as not relevant to any party's claims or defenses. Penn interprets this request to ask whether the percentage of Penn's Endowment spent on Financial Aid today is lower than the percentage of Penn's then-current Endowment Penn spent on Financial Aid in 2003. Subject to and without waiving the foregoing General Objections, and based on the interpretation set forth above, DENY.