## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>Defendants. | Case No.: 1:22-cv-00125<br><br>**Hon. Matthew F. Kennelly** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS CALIFORNIA INSTITUTE OF TECHNOLOGY AND THE JOHNS HOPKINS UNIVERSITY, CONFIRMATION OF CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS, APPROVAL OF THE FOURTH TRANCHE NOTICE PLAN, APPROVAL OF THE FOURTH TRANCHE ALLOCATION PLAN, AND APPROVAL OF THE SCHEDULE FOR COMPLETING THE SETTLEMENT PROCESS**

## INTRODUCTION

Plaintiffs Andrew Corzo, Sia Henry, Alexander Leo-Guerra, Michael Maerlender, Brandon Piyevsky, Benjamin Shumate, Brittany Tatiana Weaver, and Cameron Williams, individually and on behalf of the proposed Settlement Class, submit this memorandum in support their motion seeking: (a) preliminary approval of proposed classwide settlements with Defendants California Institute of Technology ("Caltech") and the Johns Hopkins University ("Johns Hopkins") (these settling Defendants, collectively, the "Fourth Tranche Settling Universities" or "Fourth Tranche Settling Defendants," and these settlements, the "Fourth Tranche Settlements" as set forth in the "Fourth Tranche Settlement Agreements"); (b) confirmation of this Court's certification of the Settlement Class for the first three settlement tranches, ECF No. 726 ("Final Approval Order"), as applicable to the Fourth Tranche Settlements; (c) approval of the Fourth Tranche Notice Plan; (d) approval of the Fourth Tranche Allocation Plan; and, (e) approval of the schedule for completing the settlement process.

Pursuant to the Fourth Tranche Settlement Agreements, Caltech has agreed to pay $16,750,000 in cash and Johns Hopkins has agreed to pay $18,500,000 in cash. Collectively, the Fourth Tranche Settlements amount to $35,250,000.[1] These Fourth Tranche Settling Defendants had the shortest tenures in the 568 Group of all Defendants—approximately two months (Johns Hopkins) and two years (Caltech)—prior to the commencement of this litigation. Joint Decl. ¶ 7. Further, Caltech is the smallest of the seventeen Defendants in terms of student body size. *Id.* As the Court is aware, it has previously approved settlements in this case with ten other Defendants, collectively amounting to $284 million. *See* Final Approval Order, ECF No. 726. If the Fourth Tranche Settlements are approved, the twelve settlements achieved to date would have

---

[1] In addition, Johns Hopkins agreed to provide certain additional discovery that could not be obtained during the fact discovery period. Joint Decl. ¶ 13 n.2.

collectively recovered $319,250,000. The Fourth Tranche Settlements should be preliminarily approved.

The Fourth Tranche Settlements are substantively similar to the prior ten settlements this Court approved insofar as each: (i) provides cash payments for the benefit of the Settlement Class; (ii) provides benefits for the same certified Settlement Class; (iii) includes materially similar releases; (iv) proposes the same notice and claims administrator, and a similar notice plan; and (v) proposes the same Class Representatives and Settlement Class Counsel, among other similar provisions.

The principal differences for these two settlements as compared to the prior ten are that: (1) the proposed Fourth Tranche Allocation Plan has been tweaked so as to account better for the added delay in recovery for the members of the Settlement Class in the earlier portion of the Class Period; (2) the proposed Fourth Tranche Notice Plan involves a second round of notice and claims distribution process separate from the consolidated notice plan from the first three tranches of settlements; and (3) the Fourth Tranche Settlements add certain clarifying language with respect to alumni of Defendant Universities who became U.S. citizens or permanent residents after they stopped attending a Defendant University (the class definitions are otherwise identical to that of the prior tranches). Other than with respect to the above, and the different dollar amounts, the Fourth Tranche Settlements and accompanying papers are substantively the same as with the prior Tranches.

Because Plaintiffs rely upon the same arguments and facts they presented with their prior preliminary approval motions, and to avoid repetition, they hereby incorporate as if set forth herein: (a) Plaintiffs' brief in support of preliminary approval of the Third Tranche Settlements, ECF No. 629-1; (b) Plaintiffs' brief in support of preliminary approval of the Second Tranche

Settlements, ECF No. 603-1; and (c) Plaintiffs' brief for preliminary approval of the University

of Chicago Settlement, ECF No. 428-1, at 24-33.

## THE FOURTH TRANCHE SETTLEMENTS

On July 20, 2024, the Court granted final approval of the ten settlement agreements with

Brown University ("Brown"), University of Chicago ("Chicago"), the Trustees of Columbia

University in the City of New York ("Columbia"), Trustees of Dartmouth College

("Dartmouth"), Duke University ("Duke"), Emory University ("Emory"), Northwestern

University ("Northwestern"), William Marsh Rice University ("Rice"), Vanderbilt University

("Vanderbilt"), and Yale University ("Yale") for a combined total of $284 million. *See* Final

Approval Order, ECF No. 726.

Plaintiffs have already provided notice to members of the Settlement Class for those ten

settlements. The process for submission of claim forms is complete. *See* Jan. 17, 2025 Decl. of

Steven Weisbrot ("Jan. 17, 2025 Weisbrot Decl.") ¶ 12. The final date for submission of claims

was December 17, 2024. *See id.* To date, Angeion (the "Claims Administrator") has received

68,311 presumptively valid claims, for an estimated claims rate of approximately 34 percent,

which is nearly *four times* the typical result.[2] *Id.* Furthermore, 7,846 late claims have been

submitted between December 18 and December 31, 2024. *Id*. Settlement Class Counsel are

inclined to extend the deadline to permit consideration of these additional claims given the flurry

of media attention regarding the motion for class certification, which occurred the night before

---

[2] A 2019 report by the Federal Trade Commission found that the median claims rate in consumer class action cases was 9%, with no significant difference in claims rates between cases with typical recoveries of less than $10 and more than $200. FTC, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, at 11, 31 (Sept. 2019), https://www.ftc.gov/system/files/documents/reports/. consumers- class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_ 0.pdf.

the December 17, 2024 claims filing deadline. If accepted, the claims rate would rise to approximately 38%.[3]

Plaintiffs now move for preliminary approval of the Fourth Tranche Settlements with Caltech for $16,750,000 and Johns Hopkins University for $18,500,000.[4] Plaintiffs executed the Settlement Agreement with Caltech on November 1, 2024 and with Johns Hopkins on August 6, 2024. *See* Exs. A & B to Joint Decl. Together, if the Fourth Tranche Settlements are approved, the twelve Settlements achieved to date (i.e., all four settlement tranches combined) would provide $319,250,000 in aggregate cash payments for the benefit of the Settlement Class.[5] This is a remarkable result. For context, Plaintiffs' economic expert computed damages (before trebling) to the proposed litigation class amounting to $685 million. *See* Pls. Mot. for Class Cert., ECF No. 757, at 3. The twelve settlements to date would provide recovery of approximately 47 percent of single damages—with this Fourth Tranche alone providing for just over 5 percent of damages. *See* Joint Decl. ¶ 6. Further, the litigation continues against the remaining five non-settling Defendants,[6] each of which is jointly and severally liable for—and likely capable of paying—all of the damages. *See id.* ¶ 9.

Moreover, the five non-settling Defendants had some of the longest tenures in the 568 Group and are alleged to be among the most centrally and consistently involved. The non-settling group includes the two largest 568 Group members (Cornell and Penn); three of the four

---

[3] The Claims Administrator has begun reviewing each claim form to confirm Settlement Class Membership and request additional documentation from claimants where appropriate. *See* Jan. 17, 2025 Weisbrot Decl. ¶ 11. Distributions will begin after all claim forms have been fully processed, which the Claims Administrator anticipates will occur in approximately mid-May 2025.
[4] The Fourth Tranche Settlement Agreements are attached at Exhibits A & B to the Joint Declaration of Settlement Class Counsel, dated January 17, 2025, filed in support of this Motion.
[5] Johns Hopkins has also agreed to provide certain additional discovery.
[6] The five non-settling Defendants are Cornell University ("Cornell"), Georgetown University ("Georgetown"), Massachusetts Institute of Technology ("MIT"), University of Notre Dame du Lac ("Notre Dame"), and The Trustees of the University of Pennsylvania ("Penn").

5

568 Group universities with the largest endowments (MIT, Penn, and Notre Dame); and the
alleged ringleader of the 568 Group (Georgetown, whose President served as the Chairman of
the 568 Group from 2009 until the Group's dissolution following commencement of this
litigation). Four of the five non-settling Defendants were members of the 568 Group from the
inception of the Group's Consensus Methodology (CM) in 2003 to the dissolution of the Group
in 2022; and Penn was a 568 Group member from the CM's inception until at least 2020, when
they claim to have withdrawn.[7]

In contrast, Johns Hopkins and Caltech had the shortest alleged tenures in the 568 Group
(approximately two months and two years prior to commencement of the litigation, respectively).
Joint Decl. ¶ 7. Moreover, Caltech is by far the smallest of the Defendants, with just 1,023
undergraduates in 2023 in contrast with, for example, Settling Defendant Columbia's
undergraduate enrollment of 9,111 in 2023. *Id.* Even the next smallest of the seventeen
Defendants, Dartmouth, had an undergraduate enrollment of 4,447 in 2023. *Id.*

Plaintiffs entered into the Fourth Tranche Settlement Agreements after over two years of
hard-fought litigation, including significant fact discovery, and after several months of extensive
arm's length negotiations involving the offices of the renowned mediator, Hon. Layn Phillips
(ret.), with each of the Fourth Tranche Setting Defendants. *Id.* ¶ 14. Fourth Tranche Settling
Defendants have denied and continue to deny each and all claims of wrongdoing made by
Plaintiffs in this action, but have nevertheless agreed to enter the Settlement Agreement to avoid

---

[7] In January 2020, Penn's Executive Director of Student Registration and Financial Services
Matthew Sessa wrote a letter to Georgetown President DeGioia, Chair of the 568 Steering
Committee, stating that: "It has become clear that for Penn to continue to pursue greater access
and inclusion for our students we will need increased flexibility in our needs analysis. It is
therefore with deep respect and gratitude that [Penn] write[s] to resign from the 568 President's
Group." PENN568-LIT-00000002 (cited in Plaintiffs' Memorandum in Support of Class
Certification, ECF 760 at 20 as Ex. 123) (emphasis added).

6

the further expense, risk, and inconvenience and distraction of burdensome and protracted litigation. These Settlements are an excellent result and should be preliminarily approved.

## I.      Legal Standard for Preliminary Approval

As the Seventh Circuit has recognized, "[f]ederal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Settlement "minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Lechuga v. Elite Eng'g, Inc.*, 559 F. Supp. 3d 736, 744 (N.D. Ill. 2021) (internal citations omitted). Under Fed. R. Civ. P. 23(e)(1)(B), the Court should preliminarily approve a settlement in a proposed class action if the parties show "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2) and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(2) states that the court may approve a proposed settlement "after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; . . . and (D) the proposal treats class members equitably relative to each other."

In other words, the Court must first "determine whether it 'will likely be able' to certify the putative class for purposes of judgment on the proposed settlement" and second "determine whether the proposed settlement is 'within the range of possible approval' with regard to the criteria set forth in Rule 23(e)(2).'" *In re TikTok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021) (quoting Rule 23(e)(1)(B)); *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)). In making this assessment, courts perform "a more summary version of the final fairness inquiry" at the preliminary approval stage. *Id.* at 1084 (quoting *Am. Int'l Grp.*,

2011 WL 3290302, at \*6 (N.D. Ill. July 26, 2011)); *see also Sheffler v. Activate Healthcare, LLC*, 2024 WL 4008289, at \*4 (S.D. Ind. Aug. 30, 2024) (same).

At preliminary approval, courts consider the following five factors: "the strength of plaintiff's case compared to the settlement amount, the complexity, length, and expense of the litigation, any opposition to settlement, the opinion of competent counsel, and the stage of the proceedings (including the amount of discovery completed) at the time of the settlement." *Guzman v. Nat'l Packaging Servs. Corp.*, 2022 WL 2657261, at \*4-5 (E.D. Wis. July 8, 2022) (quoting *Wong v. Accretive Health, Inc.*, 733 F.3d 859, 863 (7th Cir. 2022)); *see also In re TikTok*, 565 F. Supp. 3d at 1084 (listing same factors). "The most important factor . . . is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Id.*; *see also Lucas v. Vee Pak, Inc.*, 2017 WL 6733688, at \*8 (N.D. Ill. Dec. 20, 2017). Consideration of the relevant factors, as shown below, supports preliminarily approving the Fourth Tranche Settlement Agreements and authorizing notice to the Settlement Class.

## II.    The Fourth Tranche Settlements, Together with the Prior Ten Settlements and Standing Alone, Are an Excellent Result for the Settlement Class

As with the prior ten settlements in this case, consideration of the relevant factors supports preliminarily approving the Fourth Tranche Settlement Agreements and authorizing notice to the Settlement Class. *See* Final Approval Order, ECF 726 ¶ 25 ("Balanced against the many significant risks and uncertainties of litigation and without the benefit of a prior government case or investigation and considering that litigation continues against seven non-settling Defendants, the Settlements here provide an exceptional result for the Settlement Class.").

Counsel for the parties involved in these Fourth Tranche Settlement Agreements are highly experienced in antitrust litigation and well-positioned to assess the risks and merits of the

case. And these Fourth Tranche Settlements were reached at arm's length with the assistance of renowned mediator Hon. Layn Phillips (ret.) and his associates, Clay Cogman and Miles Ruthberg. *See* Joint Decl. ¶ 14. Plaintiffs have reasonably concluded that the proposed cash settlements for the Fourth Tranche Settlements—indeed, for all Settlements to date (both individually and collectively)—are in the best interests of the Settlement Class given that, if finally approved, the Settlements would assure the Settlement Class of a significant cash recovery without materially diminishing the joint and several liability of the five remaining non-settling Defendants.

While the Fourth Tranche Settlements are relatively smaller than most of the prior ten settlements (which ranged in amount from $13.5 million to $55 million per Settling Defendant, with a median settlement value $24 million), they reflect distinct differences between Johns Hopkins and Caltech as compared to other Settling Defendants. *See* Joint Decl. ¶ 7. Caltech is by far the smallest of all the Defendants, and both Johns Hopkins and Caltech had the shortest tenures in the 568 Group of any of the seventeen Defendants. *See id.*

When combined with the ten settlements to which the Court previously granted final approval, the aggregate settlement amount of all of the settlements collectively ($319,250,000) provides the Settlement Class a recovery of 47 percent of the estimated single damages. *Id.* ¶ 6. Such magnitude of relief, particularly prior to certification of the class and where each of the remaining five defendants continue to be joint and severally liable for the entire damages amount, is virtually unprecedented. Indeed, courts routinely approve antitrust class action settlements resolving entire cases for a much lower recovery share. *See, e.g.*, *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2024 WL 815503, at *9 (E.D. Pa. Feb. 27, 2024) (approving antitrust settlement for 12% to 14% of estimated single damages that resolved the entire case); *In re Blue Cross Blue Shield Antitrust Litig.*, 2022 WL 4587618, at *2,

*20 (N.D. Ala. Aug. 9, 2022) (approving antitrust settlement for 7.3% to 14.3% of estimated

single damages that resolved entire case); *Tawfilis v. Allergan*, 2018 WL 4849716, at *4 (C.D.

Cal. Aug. 27, 2018) (approving antitrust settlement for approximately 8.36% of overcharge

damages that resolved entire case); *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at

*2-*4 (N.D. Cal. Sept. 2, 2015) (approving antitrust class action settlement where the settlement

represented 14% of single damages that resolved entire case); *Meijer, Inc. v. 3M*, 2006 WL

2382718, at *16 (E.D. Pa. Aug. 14, 2006) (approving antitrust settlement for approximately 2%

of single damages that resolved entire case).

In addition to providing substantial cash relief to the Settlement Class, the Fourth

Tranche Settlements avoid the inherent risks of summary judgment, trial, and potential appeal,

while preserving the ability to recover all the damages allegedly suffered by the Settlement Class

from the remaining non-settling Defendants. *See* Joint Decl. ¶ 10. For the reasons discussed

herein, and those incorporated from Plaintiffs' briefs for the prior preliminary approval motions,

the Fourth Tranche Settlements satisfy the requirements for preliminary approval.

## III. The Court Should Confirm Certification of the Previously Certified Settlement Class

Plaintiffs propose certification under Fed. R. Civ. P. 23(b)(3) for settlement purposes

only of the following Settlement Class (with a Settlement Class definition common to both the

Johns Hopkins and Caltech settlements):

    a. All persons who have during the Class Period (a) enrolled in one or more of
Defendants' full-time undergraduate programs, (b) received at least some need-based
financial aid from one or more Defendants, and (c) whose tuition, fees, room, or
board to attend one or more of Defendants' full-time undergraduate programs was not
fully covered by the combination of any types of financial aid or merit aid (not

10

including loans) in any undergraduate year.[8] The Class Period is defined as follows:

    i. For Chicago, Columbia, Cornell, Duke, Georgetown, MIT, Northwestern, Notre Dame, Penn, Rice, Vanderbilt, Yale—from Fall Term 2003 through February 28, 2024.

    ii. For Brown, Dartmouth, Emory—from Fall Term 2004 through February 28, 2024.

    iii. For Caltech—from Fall Term 2019 through February 28, 2024.

    iv. For Johns Hopkins—from Fall Term 2021 through February 28, 2024.

b. Excluded from the Class are:

    i. Any Officers[9] and/or Trustees of Defendants, or any current or former employees holding any of the following positions: Assistant or Associate Vice Presidents or Vice Provosts, Executive Directors, or Directors of Defendants' Financial Aid and Admissions offices, or any Deans or Vice Deans, or any employees in Defendants' in-house legal offices;

    ii. any person who was not a U.S. citizen or permanent resident at the time such person attended a full-time undergraduate program and received at least some financial aid from one or more Defendants; and

    iii. the Judge presiding over this action, his or her law clerks, spouse, and

---

[8] For avoidance of doubt, the Class does not include those for whom the total cost of attendance, including tuition, fees, room, and board for each undergraduate academic year, was covered by any form of financial aid or merit aid (not including loans) from one or more Defendants.

[9] For the avoidance of doubt, the Columbia University "officers" excluded from the Class are members of the Senior Administration of Columbia University, and do not include exempt employees of Columbia University who are referred to as officers.

> any person within the third degree of relationship living in the Judge's household and the spouse of such a person.

As Plaintiffs explained above, the only difference between this Settlement Class definition and that used in the prior ten settlements the Court finally approved is Paragraph (1)(b)(ii), which clarifies that individuals who were not citizens or permanent residents at the time they attended a Defendant University while receiving partial need-based financial aid are not members of the Settlement Class.[10] *See* Exs. A & B to Joint Decl. ¶ 1(b)(ii).

Plaintiffs incorporate all of the arguments in support of certification of the Settlement Class for the prior Settlements. *See* Final Approval Order, ECF No. 726; Plaintiffs' Mem. of Law in Support of Preliminary Approval of the Third Tranche Settlements, ECF No. 629-1; Plaintiffs' Mem. of Law in Support of Preliminary Approval of the Second Tranche Settlements, ECF No. 603-1; Plaintiffs' Mem. of Law in Support of Preliminary Approval of the University of Chicago Settlement, ECF No. 428-1, at 24-33. For those reasons, the Court should certify the above-defined Settlement Class for the purpose of effectuating the Caltech and Johns Hopkins class settlements.

---

[10] Plaintiffs were contacted by a potential Settlement Class member inquiring as to whether the fact that she obtained permanent resident status many years after her attendance at a Defendant University made her a member of the Settlement Class. *See* Joint Decl. ¶ 8. Non-citizens or permanent residents are excluded from the Settlement Class because key outputs of the 568 Group, including the Consensus Methodology, were not intended to apply to international students. *Id.* Indeed, the landscape for need-based financial aid is fundamentally different for international students. *Id.* Thus, individuals who received need-based financial aid while attending a Defendant University, even if they subsequently became citizens or permanent residents, were not targets of the conduct Plaintiffs challenge. *Id.* Therefore, the class definition has been modified to clarify the original intent, which is that that such students are excluded.

IV.     **The Fourth Tranche Allocation Plan Is Fair and Equitable**

Plaintiffs propose to employ the same Allocation Plan that the Court approved for the prior ten settlements with a single, minor modification (the "Fourth Tranche Allocation Plan"). *See* Fourth Tranche Allocation Plan, Ex. C to Jan. 17, 2025 Joint Decl., at 1; Final Approval Order ¶ 21 (adopting the Revised Plan of Allocation and Allocation Plan Process).

The Fourth Tranche Allocation Plan, like the prior Allocation Plan, allocates the net settlement fund (i.e., the total settlement fund produced by the Johns Hopkins and Caltech settlements, less attorneys' fees, expenses, and incentive awards) to each Claimant for each year during the Class Period that such Claimant attended a Defendant institution. *See* Fourth Tranche Allocation Plan at 1. Because Plaintiffs allege that the challenged conduct artificially inflated the net price Class members paid to Defendants in a consistent manner, the Fourth Tranche Allocation Plan assumes that Claimants suffered injury in rough proportion to the average net price charged by each Defendant University during the years the Claimants attended. *Id.* at 2-3.

The Fourth Tranche Allocation Plan therefore allocates the net settlement fund in proportion to the average net price charged by the Defendant for each year or term a Clamant attended that institution. *Id.* The method is carried out mechanically based on the data available to the Claims Administrator and without requiring Claimants to provide any additional information or take any additional time other than simply filing out a Claim Form at the appropriate time after final approval. *Id.* If funds are left over after distribution to the Settlement Class, and it is determined that it would be inefficient to conduct an additional distribution, the Fourth Tranche Allocation Plan calls for Plaintiffs to seek leave of Court to ask that such leftover funds be contributed to a charity focused on increasing access to college for lower-income students. *Id.* at 3.

Plaintiffs noted to the Court previously that the prior Allocation Plan had implicitly accounted for the time value of money in that net prices have risen over the course of the lengthy Class Period higher than the rate of inflation, and thus older Settlement Class Members contributed less to the aggregate damages because they paid less in tuition than their younger counterparts. *See* Pls.' Mem. of Law in Support of Final Approval, at 19-20. Moreover, Plaintiffs further observed that older Claimants' claims faced additional risks such as a statute of limitations defense that Defendants have stated that they intend to assert. *Id.* Plaintiffs believed then, and continue to believe, that the prior method was adequate and appropriate. *See id.* However, and in retrospect, while the prior Plan had accounted for inflation due to the increases in costs of higher education, it may not have fully accounted for generalized inflation (separate and apart from increases in educational costs).

The proposed Fourth Tranche Allocation Plan modifies the prior Allocation Plan in a single respect: it accounts for generalized inflation by calculating each Claimant's *pro rata* share using real dollars. *See* Fourth Tranche Allocation Plan at 2-3. Accordingly, the Fourth Tranche Allocation Plan converts the nominal average net price each Defendant University charged each year into constant dollars using the Consumer Price Index for All Urban Consumers before determining a Settlement Class Member's pro rata share. *Id.* at 5.

## V. The Fourth Tranche Notice Plan Constitutes the Best Notice Practical Under the Circumstances

Under Fed. R. Civ. P. 23(e), class members are entitled to reasonable notice of a proposed settlement before it is finally approved by the Court, and to notice of the final Fairness Hearing. *See* MANUAL FOR COMPLEX LITIGATION, §§ 21.312, 21.633 (4th ed. 2005). For Fed. R. Civ. P. 23(b)(3) classes such as the one sought here, the court must "direct to class members the

best notice that is the practical under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Plaintiffs propose a separate notice program for the Fourth Tranche Settlements. *See* Jan. 17, 2025 Weisbrot Decl. The Fourth Tranche Notice Plan is substantially similar to the Notice Plan this Court approved for the prior ten settlements with only the substance of the summary and long-form notices changing to reflect the relevant details of Fourth Tranche Settlements. *See* Jan. 17, 2025 Weisbrot Decl. ¶ 9; Final Approval Order ¶¶ 7-8. For instance, the long-form notice explains that the Fourth Tranche Settlements are new settlements; Settlement Class Members who have submitted claim forms for the prior ten settlements will have the opportunity to submit an additional claim form for the Fourth Tranche Settlements; individuals who opted out of the previous ten settlements will need to opt out again if they wish to do so; and individuals who did not opt out of the prior ten settlements are able to opt out of the Fourth Tranche settlements. *See id.*; Proposed Long-Form Notice, Ex. A to Jan. 17, 2025 Weisbrot Declaration.

As with the prior ten settlements, the Fourth Tranche Notice Plan will include both direct notice and a targeted media campaign. Jan. 17, 2025 Weisbrot Decl. ¶ 10. Using the data provided by Defendants and from claims from the prior ten settlements, Angeion will email a summary notice to Settlement Class Members for whom Angeion has a valid email address. *Id.* For those Settlement Class Members for whom Angeion either does not have an email address or receives a "bounce back" in response to emailed summary notice, Angeion will direct a mailed long-form notice via first class mail. *Id.* Angeion will also engage in a state-of-the-art media campaign designed to provide notice to Settlement Class Members via internet notice, social media notice, a paid search campaign, and two press releases. *Id.*

Notice for the prior ten settlements has been highly effective. *Id.* ¶ 12. Angeion received 68,468 presumptively valid, timely claims, and 7,875 claims submitted between the December 17, 2024 deadline and December 31, 2024. *Id.* This has resulted in a claims rate of between 34% and 38% (depending on whether late submissions are considered). *Id.* Given the high claims rate for the prior three tranches of settlements, Settlement Class Counsel maintain that the very similar Fourth Tranche Notice Plan provides the best notice practical given the circumstances.

## VI. Attorneys' Fees and Costs for Settlement Class Counsel and Service Awards for Class Representatives

Settlement Class Counsel intend to make an application to the Court for a reasonable attorneys' fee award in an amount not to exceed one-third of the Fourth Tranche Settlement amount (i.e., 1/3 of $35.25 million, or $11.75 million), plus one-third of any accrued interest on the gross Settlement Fund, plus reimbursement of all reasonably incurred expenses during the investigation and litigation of this case to date, including reimbursement of the costs of notice and claims administration.

At this stage, the Court need not decide whether to approve or disapprove the fee or expense requests. *See* Fed. R. Civ. P. 23(h). Instead, the Court should determine whether the maximum fees counsel could seek are "within the generally acceptable range." *See Kaufman v. Am. Exp. Travel Related Servs. Co., Inc.*, 264 F.R.D. 438, 448-49 (N.D. Ill. 2009) (finding a requested 41.67% fee award was "within the range of possible approval"); *Noye v. Yale Assoc's, Inc.*, 2019 WL 3837507, at *7 (M.D. Pa. Aug. 15, 2019) (finding that a maximum fee request of one-third to fall "within the range of possible approval"); *Arrellano v. XPO Port Service Inc.*, 2021 WL 6882163, at *4 (C.D. Cal. Oct 8, 2021) (same).

Plaintiffs' fee request satisfies this test. For the fee request associated with the first three settlement tranches, Plaintiffs reported $70,150,911.00 in lodestar at historical rates spanning the

period from inception of the litigation through March 31, 2024.[11] *See* Mem. of Law in Support of Mot. for Final Approval, ECF No. 703-1, at 12 (dated May 28, 2024); Joint Decl. ¶ 18. The multiplier sought in the initial fee petition was 1.35. *See* Notice of Supplemental Authority, ECF No. 721, at 2; Joint Decl. ¶ 18. Plaintiffs' counsel observed at the final approval hearing on July 19, 2024, that Settlement Class Counsel had continued to accrue lodestar through that date, and thus the sought multiplier on the requested fee was even lower than that reported in the fee petition. *See* Final Approval Hearing Tr. 7:14-23. Settlement Class Counsel's lodestar accruing after the lodestar reported to the Court in the prior fee petition, i.e., from April 1, 2024 through November 30, 2024 is approximately $25.5 million at historical rates. *See* Joint Decl. ¶ 19. And Settlement Class Counsel's lodestar from July 20, 2024 through November 30, 2024 is approximately $11.1 million. *See id.*

Combining the prior fee award of $94.67 million with the sought fee here of $11.75 million would bring the total fee in the case to $106.42 million. The total lodestar from inception through November 30, 2024 is just over $95.5 million. *Id.* ¶ 21. Accordingly, if the Court were to grant Class Counsel's fee request, it would bring the total sought multiplier for the case to just over 1.1, which is quite modest in a case of this type. *Id.*

Furthermore, even if the Court were to consider only the marginal additional lodestar since that which was reported to the Court in the prior fee petition, i.e., only lodestar accruing after April 1, 2024 (approximately $25.5 million), the multiplier would be under 0.5. *Id.* And if the Court were only to consider the lodestar accruing after the final approval hearing of the prior

---

[11] "Historical rates" are the rates in effect during the period the attorneys and other professional billed the time. Using historical rates is considered conservative given that all work performed was on contingency. The alternative approach would be to use "current rates," which are the rates counsel charge for all time billed in the case from initiation to present at the date the fee petition is submitted.

settlements (i.e., only professional time from July 20, 2024 and after), which is over $11.1 million, the multiplier on the requested fee would be just over 1. *Id.*

All of these multipliers are well within the appropriate range approved by courts in this and other Circuits—especially in light of the excellent results for the Settlement Class here. *See Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998) (holding a 1.5 lodestar multiplier is appropriate in awarding attorneys' fees in a class action settlement); *In re Advocate Aurora Health Pixel Litig.*, --- F. Supp. 3d ---, 2024 WL 3357730, at *19 (E.D. Wis. July 10, 2024) ("Plaintiffs' lodestar calculation results in a multiplier of 1.6, which is well within the band of lodestar multipliers accepted within the Seventh Circuit."); *In re TikTok, Inc. Consumer Priv. Litig.*, 617 F.Supp.3d 904, 922 (N.D. Ill. 2022), *appeal dismissed sub nom. In re TikTok Inc., Consumer Priv. Litig.*, 2022 WL 19079999 (7th Cir. Oct. 12, 2022) ("In practice, most multipliers fall between one and four," and "for fund sizes over $44 million, the mean multiplier was 2.39.") (collecting cases). Moreover, the expense reimbursement request not to exceed $2.75 million is also reasonable.[12] The vast majority of the expenses were to compensate Plaintiffs' four experts, who submitted in total eight reports and submitted to four depositions. Joint Decl. ¶ 22. Plaintiffs also incurred costs for electronic document storage and retrieval, travel expenses, computer research, copying, and other necessary costs. *Id.*

Settlement Class Counsel also intend to seek service awards for Settlement Class Representatives to be paid from the Settlement Fund, in an amount up to $2,500 for each of the eight Class Representatives ($20,000 total).[13] Each class representative has devoted and

---

[12] Settlement Class Counsel may also seek reimbursement of notice and claims administration expenses for the Fourth Tranche Settlements, which are estimated to be approximately $350,000, after such costs are incurred. *See* Jan. 17, 2025 Weisbrot Decl. ¶ 11; Exs. A & B, Fourth Tranche Settlements ¶ 9.

[13] The Class Representatives were previously awarded $20,000 each, for a total of $160,000 for their service to the Settlement Class. *See* Final Approval Order ¶ 30.

continues to devote substantial time and energy to the matter, including monitoring the litigation and approving the settlements. *See id.*; *see also* April 29, 2024 Joint Declaration ¶ 61 (detailing the contributions of Settlement Class Representatives). But for the service of the Settlement Class Representatives, members of the Settlement Class would have gone uncompensated for the alleged damages that they suffered due to the challenged conduct in this case. *See Cook v. Niedert*, 142 F.3d 1004, 1006 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."); *Chambers v. Together Credit Union*, 2021 WL 1948452, at *3 (S.D. Ill. May 14, 2021) (collecting cases showing service awards in the Seventh Circuit of up to $100,000).

## VII. Proposed Schedule

Plaintiffs propose the following schedule for the remainder of the settlement approval process for the Fourth Tranche Settlements, which mirrors the schedule the Court approved for the first three tranches of settlements. *See* Third Tranche Preliminary Approval Order, ECF No. 638 ¶ 21:

- No later than 30 days after the date of this Order, Angeion Group shall begin the process of providing notice to the Settlement Class, in accordance with the Fourth Tranche Notice Plan.

- No later than 60 days after the date of this Order, Settlement Class Counsel shall file a motion for attorneys' fees, unreimbursed litigation costs and expenses, and/or service awards for the Class Representatives, pursuant to the terms of the Settlement Agreements.

- By no later than 75 days after the date of this Order, Settlement Class Members may request exclusion from the Settlement Class or submit any objection to the proposed

Settlements or to the Fourth Tranche Plan of Allocation, or to Settlement Class Counsel's request for attorneys' fees, unreimbursed litigation costs and expenses, and/or service awards to the Class Representatives. All objections must be in writing and filed with the Court, with copies sent to the Claims Administrator, and include the following information: (1) the name of the case (*Henry, et al. v. Brown University, et al.*, Case No. 1:22-cv-00125); (2) the individual's name and address and, if represented by counsel, the name, address, and telephone number of counsel; (3) proof of membership (such as, for instance, evidence of an accepted financial aid award from a Defendant University), indicating that the individual is a member of the Settlement Class; (4) a statement detailing all objections to the Settlements; and (5) a statement of whether the individual will appear at the Fairness Hearing, either with or without counsel. All requests for exclusion from the Settlement Class must be in writing, mailed to the Claims Administrator, and include the following information: (1) the name of the case (*Henry, et al. v. Brown University, et al.*, Case No. 1:22-cv-00125); (2) the individual's name and address and, if represented by counsel, the name address, and telephone number of counsel; (3) proof of membership (such as, for instance, evidence of an accepted financial aid award from a Defendant University), indicating that the individual is a member of the Settlement Class; (4) a statement indicating that the individual is a member of the proposed Settlement Class and wishes to be excluded from the Settlement Class; and (5) an individual signature by the Settlement Class member.

- No later than 90 days after the date the Court preliminarily approves these Settlements, Settlement Class Counsel shall file all briefs and materials in support of final approval of the Fourth Tranche Settlements.

- The Fairness Hearing on the Fourth Tranche Settlements shall take place at least 120 days after the Court preliminarily approves these Settlements.

Plaintiffs respectfully request that the Court enter the proposed order, which has been submitted to the Court, providing as follows:

1.  Confirmation of the certification of the previously certified Settlement Class with the slight modification as set forth herein;

2.  Confirmation of the appointment of Plaintiffs as Class Representatives;

3.  Confirmation of the appointment of Plaintiffs' counsel as Settlement Class Counsel for the proposed Settlement Class;

4.  Preliminary approval of the proposed Fourth Tranche Settlement Agreements;

5.  Directing that notice to the Settlement Class be conducted pursuant to the Fourth Tranche Notice Plan;

6.  Confirmation of the Court's prior finding that, pursuant to 34 C.F.R. § 99.37(a), mailing addresses and email addresses in education records of current students of a Defendant constitute "directory information" and may be disclosed, without consent, to the Settlement Claims Administrator for purposes of providing class notice in this litigation if (a) the Defendant has previously provided public notice that the mailing addresses and email addresses are considered "directory information" that may be disclosed to third parties including public notice of how students may restrict the disclosure of such information, and (b) the student has not exercised a right to block disclosure of current mailing addresses or email addresses ("FERPA Block"). Defendants shall not disclose from education records mailing addresses or email addresses subject to a FERPA Block;

7.  Confirmation of the Court's prior finding that, pursuant to 34 C.F.R. § 99.37(b), mailing addresses and email addresses in education records of former students of a Defendant constitute "directory information" and may be disclosed, without consent, to the Settlement Claims Administrator for purposes of providing class notice in this litigation, provided that each Defendant continues to honor any valid and un-rescinded FERPA Block created while a student was in attendance;

8.  Preliminary approval of the Fourth Tranche Plan of Allocation;

9.  Appointment of Angeion Group as Settlement Claims Administrator;

10. Appointment of The Huntington National Bank ("Huntington") as Escrow Agent for the funds from all the Settlements achieved to date and approval of the Custodian/Escrow Agreement for Fourth Tranche Settlements, dated November 11, 2024, attached at Exhibit D to Jan. 17, 2025 Joint Decl.);

11. Approval and establishment of the Settlement Fund under the Settlement Agreement as a qualified settlement fund ("QSF") pursuant to Internal Revenue Code Section 468B and the Treasury Regulations promulgated thereunder;

12.    Staying of all litigation activity against the Settling Universities on behalf of the Settlement Class pending final approval or termination of the Settlements; and

13.    Approval of a proposed schedule for the Settlements, including the scheduling of a Fairness Hearing during which the Court will consider: (a) Plaintiffs' request for final approval of all Settlements and entry of a proposed order and final judgment; (b) Plaintiffs' counsel's application for attorneys' fees, reimbursement of expenses, service awards, and payment of administrative costs; and (c) Plaintiffs' request for dismissal of this action only against the Settling Universities with prejudice.

## CONCLUSION

Plaintiffs respectfully request, for the foregoing reasons, that the Court grant Plaintiffs'

Motion and enter the proposed Order (in the form attached to the Motion).


Dated: January 17, 2025                          Respectfully Submitted,

By:/s/Robert D. Gilbert                          /s/ Edward J. Normand
Robert D. Gilbert                                Devin "Vel" Freedman
Elpidio Villarreal                               Edward J. Normand
Robert S. Raymar                                 Peter Bach-y-Rita
David S. Copeland                                Richard Cipolla
Natasha Zaslove                                  **FREEDMAN NORMAND**
**GILBERT LITIGATORS &**                          **FRIEDLAND LLP**
 **COUNSELORS, P.C.**                            99 Park Avenue
11 Broadway, Suite 615                           Suite 1910
New York, NY 10004                               New York, NY 10016
Phone: (646) 448-5269                            Tel: 646-970-7513
rgilbert@gilbertlitigators.com                   vel@fnf.law
pdvillarreal@gilbertlitigators.com               tnormand@fnf.law
rraymar@gilbertlitigators.com                    pbachyrita@fnf.law
dcopeland@gilbertlitigators.com                  rcipolla@fnf.law
nzaslove@gilbertlitigators.com


/s/ Eric L. Cramer
Eric L. Cramer                                   Daniel J. Walker
Ellen Noteware                                   Robert E. Litan
David A. Langer                                  Hope Brinn
**BERGER MONTAGUE PC**                           **BERGER MONTAGUE PC**
1818 Market Street, Suite 3600                   2001 Pennsylvania Avenue, NW
Philadelphia, PA 19103                           Suite 300
Tel: 215-875-3000                                Washington, DC 20006
ecramer@bm.net                                   Tel: 202-559-9745

enoteware@bm.net
dlanger@bm.net

rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

*Counsel for Plaintiffs and the Proposed Settlement Class*