UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00125 |
| Plaintiffs, | |
| v. | Hon. Matthew F. Kennelly |
| BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, | |
| Defendants. | |

**JOINT STATUS REPORT REGARDING MINUTE ENTRY PERTAINING TO SETTLEMENT CLASS NOTICE**

**February 24, 2025**

In accordance with the Court's Order on February 13, 2025 (ECF No. 792), Settlement Class Counsel and Counsel for Yale University jointly submit this Joint Status Report concerning the Court's communication with a Settlement Class member ("Class Member Communication") (ECF No. 791). The Class Member at issue, a Yale University alumnus, asserts that he did not receive notice of the settlements with Brown University, University of Chicago, Columbia University, Dartmouth College, Duke University, Emory University, Northwestern University, Rice University, Vanderbilt University, and Yale University (the "first ten settlements") and proposes "1) reopen[ing] the claims and 2) notify[ing] all Settlement Class members via email of their rights regarding the case and how to file a claim." Class Member Communication at 1 (emphasis in original). The Class Member Communication also instructs that at Yale (and potentially elsewhere), Defendants provide alumni email addresses to graduates, which could facilitate distribution of email notice. *Id.*

Below, the Parties: (1) summarize the Court-approved notice plan as implemented in relation to the first ten settlements; (2) describe the notice provided to the Class Member at issue specifically; (3) evaluate the Class Member's proposals; (4) discuss the standard for adequate notice; and (5) propose a potential solution to maximize the claims rate for Settlement Class members while expeditiously and efficiently distributing funds to claimants.

I. IMPLEMENTATION OF THE NOTICE PLAN

Pursuant to the preliminary approval orders for the first ten settlements, all Defendants provided the email and mailing addresses for Settlement Class members directly to Angeion, the Settlement Claims Administrator. *See* ECF Nos. 439 ¶¶ 17-18; 614 ¶¶ 19-20; 638 ¶¶ 19-20.[1] In accordance with the Notice Plan (ECF No. 428-7) and Revised Notice Plan (ECF No. 603-10),

---

[1] At the insistence of Defendants, and for privacy purposes, Settlement Class Counsel had no ability to access these Settlement Class member lists, which are maintained exclusively by Angeion.

2

and as amended to include the Dartmouth, Northwestern, Rice, and Vanderbilt Settlements (ECF No. 629-8), Angeion provided initial notice and notice of the claim form in the following manner:

- For all Settlement Class members and website registrants for whom email addresses were available, summary notice was sent by email which provided a link to the long-form notice.

- For all those Settlement Class members and website registrants for whom no email address was available or the email was deemed invalid (e.g., if Angeion received a bounce back), the long-form notice was mailed via first class mail to their postal addresses.[2]

- For all those Settlement Class members and website registrants to whom notice was mailed but such notice was returned to Angeion or deemed undeliverable, Angeion performed skip-tracing, attempted to identify the current mailing address, and subsequently mailed notice to the identified address.

*See* May 28, 2024 Weisbrot Decl. ¶¶ 18-24, ECF No. 703-7.

In total, Angeion emailed summary notices informing Settlement Class members of their opt out and objection rights to 388,420 email addresses, of which 381,550 were delivered and 6,870 could not be delivered. May 28, 2024 Weisbrot Decl. ¶¶ 18-20.[3] Angeion then mailed the long-form notice to 43,482 postal addresses either because no email address was provided or the mailing address was deemed invalid. *Id.* ¶ 21. Of the 43,482 mailed notices, 3,796 were returned as undeliverable without a forwarding address. *Id.* ¶ 24. Angeion performed skip tracing on those addresses and mailed an additional 483 notices to addresses identified through the skip tracing process. *Id.*

---

[2] Prior to mailing notice, Angeion processed through the USPS National Change of Address database all of the mailing addresses provided to them by Defendants. May 28, 2024 Weisbrot Decl. ¶ 22.
[3] Settlement Class Counsel estimate there to be 224,840 Settlement Class members, *see* Singer Rpt., ECF No. 755-12, ¶ 259 & Tbl. 12, and thus many Settlement Class members were provided notice at more than one email address.

Because the Settlement Class period spans over twenty years, the Settlement Class includes over 200,000 members, and many Settlement Class members may not have provided up-to-date contact information to Defendants, direct email notice would likely not extend to all Class members. To address this concern, Angeion engaged in a robust media campaign. *See* May 28, 2024 Weisbrot Decl. ¶¶ 26-34. The media campaign exceeded expectations, reaching an estimated 78.24 percent of the Settlement Class with an average frequency of 4.32 impressions per Settlement Class member. *Id.* ¶ 35.

Following the Court's granting of final approval of the Settlements, Angeion executed the process for distributing claim forms. Final Approval Order, ECF No. 726 ¶ 23; Allocation Plan Process, ECF No. 703-3. This process involved sending emailed notices to each Class Member who previously received summary notice with a link to access their pre-populated claim form, or if no valid email was available, a mailed postcard with a URL directing them to their pre-populated claim form and providing instructions for requesting a paper claim form, if preferred. Feb. 24, 2025 Weisbrot Decl. ¶ 5. In addition, anyone who registered for updates on the Settlement Website, www.FinancialAidAntitrustSettlement.org, also received claim form notice. *See id.* Angeion posted a banner on the Settlement Website informing readers that the claim form was now available. *Id.* Claim form notice was provided to Settlement Class members on or before September 19, 2024. *Id.* ¶ 6. The claim form notice, paper and digital claim forms, and the settlement website all explained that the deadline for submitting claim forms was December 17, 2024. *Id.* ¶ 2. Settlement Class members thus had 90 days to complete a claim form.

As a result of this process, as of the deadline December 17, 2024, Angeion received 68,311 presumptively valid, timely claims. Moreover, Angeion received an additional 7,846

4

claims submitted after the December 17, 2024 deadline but before January 1, 2025. [4] *See* Jan. 17, 2025 Weisbrot Decl. ¶ 12. Given the estimated class size of 224,840, implementation of the Notice Plan thus led to a claims rate of over 30 percent (considering only the timely claims), which is more than three times the expected rate for settlements with recoveries of this size.[5] When considering the late claims, the claims rate rises to approximately 34 percent, nearly four times the expected rate.

II. NOTICE TO SETTLEMENT CLASS MEMBER AT ISSUE

Upon receipt of the Class Member Communication, Settlement Class Counsel, in consultation with Angeion, determined that Defendant Yale University provided an email address and mailing address for this person. Feb. 24, 2025 Weisbrot Decl. ¶¶ 12-13. Angeion attempted to email him his initial notice at the email address Yale had provided, but received a bounce back indicating that the email was not valid. *Id.* ¶¶ 14-15. As a result, on March 29, 2024, Angeion mailed the initial notice to the postal address Yale provided for him. *Id.* ¶ 15. That notice was not returned to Angeion as undeliverable. *Id.* Angeion subsequently provided postcard notice with a URL for his pre-populated claim form and instructions about how to request a paper claim form, if preferred, to the Settlement Class member at issue on September 18, 2024 to the same mailing address. *Id.* ¶ 18. Again, the postcard notice was not returned to Angeion as undeliverable. *Id.*

---

[4] Settlement Class Counsel raised in their Motion for Preliminary Approval of the Fourth Tranche Settlements that they intend to request permission from the Court to consider these additional late-filed claims. *See* Pls.' Mem. in Supp. of Preliminary Approval for Fourth Tranche Settlements, ECF No. 776-1, at 4.

[5] FTC, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, at 11, 31 (Sept. 2019), https://www.ftc.gov/system/files/documents/reports/. consumers- class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_ 0.pdf (2019 report by the Federal Trade Commission finding a median claims rate in consumer class action cases of 9%, with no significant difference in claims rates between cases with expected recoveries of less than $10 and more than $200).

### III. CONSIDERATION OF THE SETTLEMENT CLASS MEMBER AT ISSUE'S CONCERNS

The Settlement Class member indicates his belief that the notice plan should have included gathering and use of alumni email addresses Yale (and presumably other Defendants) provides to graduates. Upon meeting and conferring with Yale's counsel, Settlement Class Counsel confirmed that Yale provides these alumni email addresses only if an alumnus requests one—meaning that an alumni email address is not automatically created for a graduate—and only about fifteen to twenty percent of Yale alumni have such email addresses.[6] Settlement Class Counsel also learned that Yale is unable to determine if these alumni email addresses are actively being used and how often. Given that not all Yale students receive need-based financial aid, it is probable that an even smaller number of alumni with alumni email addresses are also members of the Settlement Class.[7]

While Yale and Settlement Class Counsel appreciate the frustration of this Settlement Class member, they do not believe that providing an additional round of e-mail notice to the relatively small percentage of alumni who created Yale alumni email addresses (a group that necessarily includes alumni who are not part of the Settlement Class) is likely to provide superior notice in a cost-effective manner to a meaningful portion of the Settlement Class. Conducting an additional round of notice would also delay distribution of funds to all claimants by approximately ten weeks[8] and cost the Settlement Class an estimated additional $50,000. Feb. 24, 2025 Weisbrot Decl. ¶ 19.

---

[6] It is also worth noting that the Class Member specifically opted out of receiving communications from Yale, including through his alumni email address, thus making it less likely that Yale would have the Class Member's most current contact information.

[7] *See* YALE NEWS, *Yale Announces 2024-25 Term Bill, Reaffirms Financial Aid Commitments* (Jan. 31, 2024), https://news.yale.edu/2024/01/31/yale-announces-2024-25-term-bill-reaffirms-financial-aid-commitments.

[8] In order to prepare new notice to new email addresses, Defendants would first have to collect these email addresses and transmit them to Angeion. Previously, this process took approximately four weeks.

6

## IV. THE NOTICE PROGRAM EXCEEDED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS.

Federal Rule of Civil Procedure 23(c)(2)(B) requires that notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Notice may be directed through "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). "Rule 23 does not require parties to exhaust *every conceivable* method of identifying the individual class members." *Carlough v. Amchem Prods, Inc.*, 158 F.R.D. 314, 325 (E.D. Pa. 1993) (citing *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985)) (emphasis added). Rather, "[f]or those whose names and addresses cannot be determined by reasonable efforts, notice by publication will suffice under Rule 23(c)(2) and under the due process clause." *Id.* (citing *Mullane v. Ctrl. Hanover Bank*, 339 U.S. 306, 317-18 (1950)).

Under the Court-approved notice plan, Angeion used a combination of direct and publication notice. Over 380,000 notices were provided directly via email, and an additional 43,965 direct notices were provided via mail using contact information for all or nearly all Settlement Class members provided by Defendants to Angeion. *See* May 28, 2024 Weisbrot Decl. ¶¶ 18-24. Angeion cross-checked all addresses in the National Change of Address database to ensure mailing addresses were up to date. *Id.* ¶ 22. And where mail was returned as undeliverable, Angeion performed skip tracing to attempt to find a current mailing address. *Id.* ¶ 24. In addition, Angeion engaged in publication notice through a combination of social media ad campaigns, paid search advertisements, and press releases that were estimated to reach nearly 80

---

Angeion estimates that an additional round of notice could be prepared and distributed in approximately 18 days. Feb. 24, 2025 Weisbrot Decl. ¶ 19. Assuming that following distribution of the notice, the Court directed Settlement Class Counsel and Angeion to accept claims for thirty days, the entire process would take approximately ten weeks.

percent of the Settlement Class. *Id.* ¶ 35; *Cf. In re TikTok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1092 (N.D. Ill. Sept. 30, 2021) (finding notice adequate where approximately one-third of the class received direct notice and approximately 95 percent would receive social media notice). This notice campaign was highly successful and resulted in a claims rate more than three times what is expected for a settlement of its size. *See supra* pp. 4-5.

While notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity present their objections," *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), direct notice need not be actually received by every class member to satisfy the requirements of Rule 23 or the due process clause, *see In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 968 (N.D. Ill. 2011) (collecting cases). "[T]he proper inquiry is not whether [a particular class member] received the notices but instead whether the method of providing notices was reasonably calculated, under all the circumstances, to inform him of the pendency of the class action and his right to be excluded from it." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483 (D.C. Cir. 1992) (finding notice adequate even where a class member's notice was mailed to an address that did not include his apartment number and used the wrong zip code).[9] So while Settlement Class Counsel made every reasonable effort to ensure that Settlement Class members, including the Class Member at issue, received notice, that some Class members may not have received mail notice is inevitable and not indicative of a deficient notice program.

---

[9] *See also In re VMS Ltd. Partnership Secs. Litig.*, 1995 WL 355722, at *2 (N.D. Ill. June 12, 1995) (finding notice adequate even where the defendant provided an old address for notice despite the class member having updated his address with the defendant prior to notice being sent out); *Sanders v. LVNV Funding, LLC*, 2007 WL 854007, at *4 (S.D. Ind. Feb. 26, 2007) ("Mr. Sanders was sent notice through U.S. mail, and [t]he fact that he may not have received the notice does not relieve him of the terms of the release."); *In re Southeastern Milk Antitrust Litig.*, 2012 WL 2050865, at *2-3 (E.D. Tenn. June 6, 2012) (finding notice adequate where notice was mailed to the class member's most recent address and was not returned as undeliverable, although the class member denied receiving the notice).

V. **SETTLEMENT CLASS COUNSEL PROPOSE EXTENDING THE CLAIMS FILING DEADLINE.**

While Settlement Class Counsel maintain that the notice program was more than adequate, Counsel are nevertheless invested in ensuring that as many Settlement Class members can recover from the first ten settlements as possible. At the same time, Counsel are also mindful of (a) keeping the costs of notice down, and (b) allowing claimants access to their recoveries in a timely manner. Settlement Class Counsel have received many inquiries from Settlement Class members asking when they will be able to receive payment from the settlements and why money cannot be distributed sooner. [10] Thus, Settlement Class Counsel hesitate to propose any actions that could significantly delay distribution of funds to claimants, such as engaging in a likely lengthy and expensive additional round of notice.

Should the Court deem it appropriate, Settlement Class Counsel would propose to extend the claims filing deadline from December 17, 2024 to March 14, 2025 or March 28, 2025 to allow individuals who deny receiving direct notice but then learned of the settlements after the claims filing deadline elapsed, to recover from the first ten settlements, including the Settlement Class Member at issue. This process, which would not include a new formal round of notice, but would involve reaching out to individuals who have inquired about the ability to file a late claim, would delay distribution of settlement funds modestly (by approximately, three to five weeks), and impose only *de minimis* additional costs on the class (the cost of notifying those who have contacted Angeion and Settlement Class Counsel about late filing that the claims deadline has been extended).

---

[10] Because the allocation plan for the first ten settlements determines each claimant's *pro rata* share of the net settlement fund based on the total number of claimants, Angeion is unable to distribute settlement payments to claimants until all claim forms have been processed. *See* Allocation Plan Process, ECF No. 703-3, ¶ 8.

Dated: February 24, 2025

By:/s/ *Edward J. Normand*
Devin "Vel" Freedman
Edward J. Normand
Richard Cipolla
Joseph Delich
Peter Bach-y-Rita
FREEDMAN NORMAND
FRIEDLAND LLP
10 Grand Central
155 E. 44th Street, Suite 915
New York, NY 10017
Tel.: 646-350-0527
vel@fnf.law
tnormand@fnf.law
rcipolla@fnf.law
jdelich@fnf.law
pbachyrita@fnf.law

Ivy Ngo
FREEDMAN NORMAND
FRIEDLAND LLP
1 SE 3d Avenue, Suite 1240
Miami, FL 33131
Tel: 786-924-2900
ingo@fnf.law

/s/ *Robert D. Gilbert*
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
David Copeland
Natasha Zaslove
GILBERT LITIGATORS &
COUNSELORS, P.C.
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
dcopeland@ gilbertlitigators.com
nzaslove@gilberlitigators.com

Respectfully Submitted,

/s/ *Charles A. Loughlin*
Charles A. Loughlin (Bar No: 448219)
Benjamin F. Holt (Bar No: 483122)
Jamie Lee (Bar No: 1643135)
HOGAN LOVELLS US LLP
555 13th Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
chuck.loughlin@hoganlovells.com
benjamin.holt@hoganlovells.com
jamie.lee@hoganlovells.com

*Counsel for Yale University*

*/s/ Eric L. Cramer*
Eric L. Cramer
Ellen T. Noteware
David Langer
Jeremy Gradwohl
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: 215-875-3000
ecramer@bm.net
enoteware@bm.net
dlanger@bm.net
jgradwohl@bm.net

Richard Schwartz
BERGER MONTAGUE PC
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

Daniel J. Walker
Robert E. Litan
Hope Brinn
BERGER MONTAGUE PC
1001 G Street, NW, Suite 400 East
Washington, DC 20001
Tel.: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs*