**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,

*Plaintiffs,*

v.

BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,

*Defendants.*

**Civil Action No. 1:22-cv-00125**

**Hon. Matthew F. Kennelly**

## JOINT STATUS REPORT REGARDING THE NATURE AND SCOPE OF THE *DAUBERT* HEARING RELATING TO PROFESSOR SINGER

Pursuant to this Court's Order (Dkt. 824), the Parties submit this Joint Status Report regarding the nature and scope of the hearing relating to Defendants' motion to exclude Dr. Singer. Among the dates provided by the Court, Dr. Singer is available only on April 14, 2025 at 1:30 PM and the parties have agreed to proceed at that date and time. The Parties conferred on multiple occasions, including over the weekend, but were unable to come to an agreement on the procedures the Court should use to take testimony concerning Defendants' *Daubert* challenge to

Dr. Singer. Accordingly, each side has described its position and possible approaches for the Court's consideration below.

**<u>Defendants' Position:</u>**

Defendants believe that given the technical nature of many of the issues in dispute in Defendants' *Daubert* motion, this hearing will be of optimal utility to the Court if it is structured in a way that allows the Court to hear not only from Dr. Singer, but also from one of Defendants' rebuttal experts. To accomplish that, Defendants propose either (a) a traditional hearing involving lawyer-driven examinations of Singer and one of Defendants' experts, or (b) a "Hot Tub" style hearing driven by the experts and the Court.[1] Either of these two options would allow each side sufficient time to present its views and give the Court the opportunity to gather the information it seeks.

<u>Option A:</u>

1. Cross examination of Singer – 40 minutes
2. Re-direct examination of Singer – 30 minutes
3. Direct examination of Defendants' rebuttal expert witness – 30 minutes
4. Cross examination of Defendants' rebuttal expert witness – 40 minutes
5. Closing statements – 20 minutes each

[1] *See, e.g.*, https://news.bloomberglaw.com/antitrust/courtroom-hot-tub-puts-google-trial-experts-to-stress-test (attached as Ex. A); *In re Google Play Story Antitrust Litig.*, No. 21-md-02981-JD, 2022 WL 17252587, at *3 (N.D. Cal. Nov. 28, 2022) ("The Court has used the hot tub procedure in other cases, and has found it to be an invaluable tool for vetting Daubert issues and determining questions of class certification, among other uses."); *In re Capacitors Antitrust Litig.*, No. 17-md-02801-JD, 2021 WL 5407452 (N.D. Cal. Nov. 18, 2021); *Cole's Wexford Hotel, Inc. v. Highmark Inc.*, No. 10-1609, 2019 WL 988655, at *1 & n.2 (W.D. Pa. Mar. 1, 2019); *In re Domestic Drywall Antitrust Litig.*, Civ. Action No. 15-1712, 2018 WL 2184391, at *2 (E.D. Pa. May 10, 2018) ("The Court had extensive hearings, including the testimony of the competing experts, and a so-called 'hot tub' where both experts sat in the jury box and were examined by counsel and the Court.").

Option B

1. Expert "Hot Tub" – 2 hours with both Singer and one of Defendants' experts including:
   (a) 15-minute overview by each expert of their arguments;
   (b) Questions from the Court for both experts, and expert responses; and
   (c) 15 minutes of cross-examination per side.
2. Closing statements – 20 minutes each

**Option A:** For Option A, Defendants propose beginning with cross-examination of Singer. Defendants believe this is appropriate because Dr. Singer has already offered his affirmative opinions and explicated his methodologies and conclusions in his nearly 1,000 pages of expert reports, including the new opinions he offered in a declaration attached to Plaintiffs' *Daubert* opposition brief, and because this is Defendants' motion. Having laid out their case for why Dr. Singer's opinions fail *Daubert*, Defendants should be permitted to cross Dr. Singer to demonstrate the failings in his analysis. Plaintiffs can then redirect in an effort to rebut those assertions.[2]

Should the Court wish to hear from Dr. Singer on direct examination before cross-examination, the Court alternatively could modify Option A to reallocate some of the time proposed for cross-examination and redirect examination to a brief direct examination focused on the issues the Court wishes to hear about, while leaving ample time for cross-examination of Singer, Defendants' rebuttal expert's direct and cross examinations, and for closing arguments.

**Option B:** Under this "Hot Tub" proposal, the experts would begin the proceeding with brief overviews of their arguments, and then the Court could ask questions of both experts simultaneously and hear them respond to one another in real time. This format would allow the

[2] Plaintiffs' reliance on the format of the *Simon & Simon, PC v. Align Tech., Inc.*, No. 3:20-cv-03754 (N.D. Cal.) hearing is inapposite: in that case, the court was ordering an evidentiary hearing on plaintiffs' motion for class certification. Here, Defendants are the movants, and the hearing relates to a *Daubert* challenge.

experts to explain complex economic concepts in a conversation with one another moderated by the Court, while still leaving time for cross-examinations and closings that permit the attorneys on each side to crystallize the relevant issues for the Court.

Plaintiffs' lead proposal—that only Dr. Singer testify, that he begin by doing so with a lengthy, 95-minute direct examination, and that none of Defendants' experts be allowed to respond to what he says in Court—would not, in Defendants' view, sufficiently assist the Court. It would permit Dr. Singer to speak at length without challenge, just as he has done in his numerous expert reports, without providing Defendants the opportunity to focus on, examine, and elucidate the many flaws in his opinions. It would also unfairly grant Plaintiffs the right to have an economist explain why their theories and methodologies are valid while denying Defendants the right to have an economist explain why they are not. It would also create an anomaly where the movant's side can say very little during a hearing on their own motion.

Plaintiffs' alternative proposal, in which Dr. Singer would begin with a 90-minute direct examination and then go up on the stand a second time for a 15-minute rebuttal of Defendants' expert, is not meaningfully better. Just like their primary proposal, it allocates a disproportionate and unnecessary amount of time to allowing Dr. Singer to continue offering affirmative opinions without challenge or response. To preserve this lopsided allocation, Plaintiffs suggest abbreviating Defendants' rebuttal experts' testimony and allotting so little time to other examinations as to render them pointless. It is difficult to imagine, for example, how the Court would possibly benefit from 2.5-minute examinations on complex economic theories and statistical methodologies. Additionally, by compressing closings to 10 minutes each, this

alternative proposal threatens to undermine the Court's ability to hear from and engage with counsel after the experts' testimony has been submitted.

Plaintiffs' second alternative proposal of starting with an 80-minute direct examination before a "hot tub" suffers from the same fundamental flaw: Dr. Singer has had ample opportunity to speak uninterrupted on his methodologies in his four reports (two more than contemplated by the scheduling order), one of which (the late "declaration") was submitted after any of Defendants' experts had an opportunity to rebut them and after Defendants deposed him. A proposal that allows him to do so yet again will be neither productive nor efficient. Defendants therefore respectfully request that the Court order the lawyer-driven traditional examination approach in Option A or the expert- and Court-driven "Hot Tub" approach in Option B.

**Plaintiffs' Position:**

The Court has asked the parties to propose a structure for an in-person hearing regarding Defendants' motion to exclude Plaintiffs' primary economic expert, Dr. Hal Singer, ECF 755 ("Motion"), that would comprise 2.5 to 3 hours. In light of (a) Class Counsel's extensive experience with such hearings, (b) the time constraints set by the Court, and (c) that Plaintiffs have the burden of proof to demonstrate reliability, Plaintiffs believe that it would be most fair and helpful to the Court to have the hearing focus on Dr. Singer, offering him the time to explain his analyses and opinions; to respond to the critiques set forth in Defendants' Motion; to undergo cross examination; and to answer any questions the Court may have.

Plaintiffs do not believe it is necessary or practicable to hear from either of the two defense expert economists who critique different aspects of Dr. Singer's analyses. Defendants

have moved to exclude every word of Dr. Singer's 499 pages of reports and declarations in this case. Dr. Singer offers opinions relevant to: proof of Defendants' market power, including the relevant market in which Defendants exercise that power; whether Defendants' conduct is consistent with conspiracy and inconsistent with unfettered competition; whether the challenged conduct artificially inflated the net prices paid by members of the proposed Class in general, and each Class member specifically; whether the challenged conduct had anticompetitive effects; and the quantum of damages suffered by the proposed Class.

While ignoring material parts of Dr. Singer's analyses,[3] Defendants' Motion nonetheless seeks to exclude all of his opinions, including challenging: (a) his primary regression model; his decisions regarding which data to use; and what the regression model is capable of showing with respect to impact and damages; (b) his analyses of classwide impact, focusing largely on one of his three statistical "in sample" predication models; (c) his methods for demonstrating market power and defining a relevant market; and (d) his economic analyses of whether Defendants' conduct is consistent with conspiracy and inconsistent with competition.

Plaintiffs believe that it would be most efficient and fair to begin the hearing with a tight direct examination of Dr. Singer so he can explain his primary analyses in an orderly fashion and respond to critiques articulated in Defendants' Motion. Defendants' proposal to start the hearing with Dr. Singer on cross, if adopted, would create a *disjointed hearing*, skipping important elements of Dr. Singer's analyses; be unfair to Plaintiffs who have the burden of showing reliability; and be confusing to the Court, who will be confronted with Defendants' critiques

[3] Defendants' Motion, for instance, does not address substantial portions of Dr. Singer's analyses of widespread impact of the challenged conduct to members of the proposed Class, including ignoring his qualitative and quantitative analyses of the structure of pricing in the market.

before Dr. Singer has had an opportunity to explain and respond to questions regarding his analyses.

Plaintiffs expect that the direct exam would take ninety to ninety-five minutes given the breadth and complexity of the issues. Of course, Plaintiffs understand that Defendants would want to cross examine Dr. Singer, and Plaintiffs would want to do some redirect. The Court likely will also have its own questions. If short lawyer closings are included, that would be all that could be fairly accomplished in three hours.

If Defendants were to bring one of their two economic experts to criticize Dr. Singer's analyses, it would be difficult to conclude such a hearing in 3 hours or perhaps even in a single day. Plaintiffs expect that direct, cross, and redirect of a defense expert would comprise a substantial amount of time, especially if the goal is to delve deeply into the substance of econometric critiques. Moreover, following the defense expert testimony, Plaintiffs would fairly require some rebuttal time so that Dr. Singer could respond to the specific defense expert critiques that are raised at the hearing,[4] and answer any follow-up questions from the Court. Presumably the Court would want some part of this hearing to include lawyer argument. Plaintiffs do not believe it would be reasonably achievable—or productive—to hold such a hearing in 2.5-3 hours.

Finally, the Court has asked for a *Daubert* hearing—not a trial on the merits where the Court must resolve a "battle of the experts." Instead, Dr. Singer—whose analyses have been relied upon by ten federal courts in certifying classes in antitrust cases—must demonstrate that

---

[4] Plaintiffs would do their best in the direct examination to cover Dr. Singer's main analyses, and to respond to the primary defense critiques set forth in the Motion. However, given time limitations, Plaintiffs may not have the opportunity to address with Dr. Singer all of the specific issues on which Defendants choose to focus with their expert at the hearing.

he is not, as Defendants have suggested, a purveyor of "junk science." Given that it is Plaintiffs' burden, Dr. Singer should be given sufficient time to explain what he did, to spond to Defendants' attacks on his analyses, and to answer questions from the Court.

**Plaintiffs' Proposal**

In light of the above, and to comply with the Court's constraints, Plaintiffs propose a 3-hour hearing with Dr. Singer as the only witness, structured as set forth below. Plaintiffs have experience with hearings of precisely this type, including one recently held by the court in *Simon & Simon, PC v. Align Tech., Inc.*, No. 3:20-cv-03754 (N.D. Cal.) ("*Align*"), an antitrust class action where the judge held a single-day hearing with the Plaintiffs' economic expert (Dr. Singer) and no defense expert. *See* Order Scheduling Evidentiary Hearing, *Align*, No. 3:20-cv-03754, (N.D. Cal. Nov. 8, 2023), ECF No. 343 (scheduling *Daubert* hearing with only direct purchaser plaintiffs' expert (Dr. Singer) and indirect purchaser plaintiffs' expert (Dr. Vogt) but no defense experts) (attached as Ex. "A"); *Align*, 2023 WL 8261297 (N.D. Cal. Nov. 29, 2023) (granting class certification in part for direct purchaser plaintiffs, and denying motion to exclude Dr. Singer, following evidentiary hearing with Dr. Singer).[5]

In short, Plaintiffs respectfully propose the hearing proceed as follows:

1. Direct Examination of Dr. Singer: 95 minutes
2. Cross Examination of Dr. Singer: 45 minutes
3. Redirect Examination of Dr. Singer: 10 minutes
4. Closing Arguments by Counsel: Defendants 15 minutes; Plaintiffs 15 minutes.

[5] Defendants' assertion that the *Align* case is inapposite because it related only to class certification is erroneous. As here, the defendant in *Align* filed a *Daubert* motion seeking to exclude Dr. Singer's opinions in conjunction with its opposition to class certification, which the Court addressed (and denied) in its class certification decision. Moreover, while the *Daubert* is Defendants' motion, as Defendants recognize, it is Plaintiffs who have the burden of demonstrating reliability and admissibility.

Plaintiffs expect that the Court may ask questions during the hearing at any time. Plaintiffs suggest that any questioning by the Court would come out of the side's time during which the questions are posed, *i.e.*, if the Court asks questions during Dr. Singer's direct, the time taken by the Court's Q&A would be counted against his direct; if the questions come during Dr. Singer's cross, the time for that Q&A would be deducted from the time for cross, etc.

**Plaintiffs' Alternative Proposal 1**

In the alternative, should the Court find it useful to hear from one of the two defense economists, Plaintiffs suggest that the hearing would still need to begin with a direct of Dr. Singer, as his analyses are the focus of the hearing. Moreover, because the defense expert may raise issues that Dr. Singer did not address in his direct or may spur the Court to have additional questions of Dr. Singer, Dr. Singer should be given an opportunity to rebut the defense expert testimony. Accordingly, Plaintiffs alternatively propose the following:

1. Direct Examination of Dr. Singer: 90 mins
2. Cross Examination of Dr. Singer: 25 mins
3. Redirect of Dr. Singer: 2.5 mins
4. Direct of Defense Expert: 15 mins
5. Cross of Defense Expert: 5 mins
6. Redirect of Defense Expert: 2.5 mins
7. Direct Rebuttal of Dr. Singer: 15 mins
8. Cross Exam of Dr. Singer Rebuttal: 2.5 mins
9. Redirect Exam of Dr. Singer Rebuttal: 2.5 mins
10. Lawyer Closings: 10 minutes per side

Under this structure, to allow Plaintiffs to prepare, Defendants should be required to disclose the expert they intend to bring to the hearing no later than Tuesday, March 25 by 5 pm CT.

**Plaintiffs' Alternative Proposal 2**

Defendants have alternatively proposed a "hot tub" expert hearing. Such hearings typically involve an expert from each side squaring off in front of the Court without guidance or involvement of the lawyers. In Plaintiffs' experience, such hearings only work when focused on specific topics decided in advance, and when actively guided by the judge. Absent such guidance (and sometimes with it), the "debate" between the experts can produce more heat than light, be unfocused and unhelpful, and ignore critical parts of the relevant analyses. Should the Court believe a "hot tub" type of an expert hearing would be useful, Plaintiffs would propose that it begin with an 80-minute direct exam of Dr. Singer by Plaintiffs' counsel, which could set the table for the Court-guided expert "debate" to follow. After the direct, Dr. Singer could square off with one of the defense experts, who could raise his or her critiques while the Court guides Dr. Singer to respond to such critique(s) as the Court deems material. The "hot tub" could then be followed by some cross examination of the opposing expert by counsel for each side, and then short closings. Plaintiffs, therefore, propose in the alternative a 3-hour hearing organized as follows:

1. Direct exam of Dr. Singer: 80 minutes
2. "Hot Tub" guided by the Court, with Dr. Singer and a defense economist: 60 minutes
3. Cross Exam of opposing expert: 10 minutes per side
4. Closings: 10 minutes per side

Under this structure as well, to allow Plaintiffs to prepare, Defendants should be required to disclose the expert they intend to bring to the hearing no later than Tuesday, March 25 by 5 pm CT.

Dated: March 24, 2025

By: */s/ Eric L. Cramer*
Eric L. Cramer
Ellen T. Noteware
David Langer
Jeremy Gradwohl
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: 215-875-3000
ecramer@bm.net
enoteware@bm.net
dlanger@bm.net
jgradwohl@bm.net

Richard Schwartz
BERGER MONTAGUE PC
1720 W Division
Chicago, IL 60622
Tel: 773-257-0255
rschwartz@bm.net

Daniel J. Walker
Robert E. Litan
Hope Brinn
BERGER MONTAGUE PC
1001 G Street, NW, Suite 400 East
Washington, DC 20001
Tel.: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

Devin "Vel" Freedman
Edward J. Normand
Richard Cipolla

Respectfully Submitted,

By: */s/ David Gringer*
David Gringer
Alan Schoenfeld
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: 212-937-7294
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Seth Waxman
WILMER CUTLER PICKERING HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel.: 202-663-6800
seth.waxman@wilmerhale.com

Daniel Martin Feeney
Edward W. Feldman
MILLER SHAKMAN LEVINE & FELDMAN LLP
30 West Monroe Street
19th Floor
Chicago, IL 60601
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for Defendant The Trustees of the University of Pennsylvania*

Norman Armstrong

Joseph Delich
Peter Bach-y-Rita
FREEDMAN NORMAND
FRIEDLAND LLP
10 Grand Central
155 E. 44th Street, Suite 915
New York, NY 10017
Tel.: 646-350-0527
vel@fnf.law
tnormand@fnf.law
rcipolla@fnf.law
jdelich@fnf.law
pbachyrita@fnf.law

Ivy Ngo
FREEDMAN NORMAND
FRIEDLAND LLP
1 SE 3d Avenue, Suite 1240
Miami, FL 33131
Tel: 786-924-2900
ingo@fnf.law

Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
David Copeland
Natasha Zaslove
GILBERT LITIGATORS &
COUNSELORS, P.C.
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
dcopeland@ gilbertlitigators.com
nzaslove@gilberlitigators.com

*Counsel for Plaintiffs*

KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: 202-389-3180
norman.armstrong@kirkland.com

Emily T. Chen
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: 212-341-7458
emily.chen@kirkland.com

Daniel E. Laytin
KIRKLAND & ELLIS LLP
300 N La Salle Dr.
Chicago, IL 60654
Tel.: 312-862-2000
daniel.laytin@kirkland.com

*Counsel for Defendant Cornell University*

Britt M. Miller
Daniel T. Fenske
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel.: 312-783-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com

*Counsel for Defendant Georgetown University*

Eric Mahr
Jan Rybnicek
Daphne Lin
FRESHFIELDS US LLP
700 13th Street, NW
Washington, DC 20005
Tel.: 202-777-4500
eric.mahr@freshfields.com
jan.rybnicek@freshfields.com
daphne.lin@freshfields.com

*Counsel for Defendant Massachusetts Institute of Technology*

Robert A. Van Kirk
Jonathan B. Pitt
Sarah F. Kirkpatrick
Matthew D. Heins
Feyilana Lawoyin
Cole T. Wintheiser
William J. Donnelly
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, D.C. 20024
Tel.: 202-434-5000
rvankirk@wc.com
skirkpatrick@wc.com
jpitt@wc.com
mheins@wc.com
flawoyin@wc.com
cwintheiser@wc.com
wdonnelly@wc.com

James Peter Fieweger
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street
Suite 3200
Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for Defendant University of Notre Dame du Lac*