# Exhibit A

Bloomberg Law News 2025-03-24T12:46:00434098981-04:00

# Courtroom 'Hot Tub' Puts Google Trial Experts to Stress Test

By Dan Papscun 2023-10-06T05:15:55000-04:00

- Unorthodox legal hearing already affecting antitrust battle
- Concurrent expert testimony adopted from Australian courts

Antitrust lawsuits can live and die on the strength of Ph.D. economists. Courts face the crucial task of weeding out which of those expert witnesses can appear before a jury.

Enter the legal "hot tub."

Federal Judge James Donato in San Francisco this summer turned to the unorthodox hearing format in a case challenging Google's dominance of the apps sold to Android phone users.

The two-hour-long hot tub pitted competing witnesses, under oath, in a face-to-face debate. It's a type of back and forth that would never occur during a traditional pre-trial hearing, or even at trial.

Donato, who played the role of judge, debate moderator, and sometime referee, later cited the hot tub testimony in decertifying the consumer class suing Alphabet Inc.'s Google in the case, *In Re Google Play Store Antitrust Litigation*, which is scheduled for trial in November.

"The benefits are huge," Donato said of the hearing style.

"It's really helpful to hear from the economists," Donato said in a courtroom interview two days after the August hearing. "It gives me a higher sense of confidence in the decision I make about whether that person should be allowed to testify at trial, or should be excluded."

See also: Google Play Judge Cancels Class-Action Status Won by Users (1)

## Game of Telephone



The hot tub hearing format originated in Australian competition law tribunals in the early 1990s, and quickly gained popularity beyond the review body as a way for generalist judges to understand complex testimony. Originally—and still formally—called "concurrent expert testimony" or a "concurrent expert evidence proceeding," it soon took on the "hot tub" label and has been used widely in other countries including Canada and South Africa.

But it's a novelty in US federal courts, used less than two dozen times, a Bloomberg Law analysis shows. The practice has made cameo appearances in the US Tax Court, one of Donato's previous antitrust cases, and a handful of other courtrooms.

Donato's high-profile advocacy this summer could encourage further experimentation, especially after the impact of the *Google Play* hot tub.

"It's always a big deal when a court decertifies a case based on competing expert testimony," said Christine Bartholomew, a professor at the University at Buffalo School of Law who specializes in antitrust and evidence. "It's an even bigger deal when a court does so based on a fight between two economists about modeling."

Pretrial disagreements over class certification, damages, and the admissibility of expert testimony are typically dealt with by teams of lawyers filing dueling motions or facing off in oral arguments. But the Federal Rules of Evidence grant trial courts "control over the mode and order of examining witnesses and presenting evidence." Nothing prevents an alternative approach like a hot tub.

Donato likened traditional expert examination and cross-examination—which would normally not allow the experts themselves to interact—to a game of telephone. Subtle distinctions, he said, can slip through the cracks. Hot tubs aim to fix that.

All the experts in a hot tub sit before the judge together. Their lawyers can join them, at least in Donato's courtroom, but they aren't allowed to talk unless they have questions at the end of the debate.

In the August hot tub, Gregory Leonard, an expert for Google, sat at one table. At an adjoining table about a dozen feet away were Hal Singer and Marc Rysman, both experts for the states, consumers, and app developers suing Google. Donato moderated from the bench.

## No Standing in the Hot Tub

Before the hearing, Donato asked the sides to settle on their main areas of disagreement, which he drew upon to determine the hearing topics. Once in court, he pushed the witnesses to answer questions and engage in a debate.

Most economists are new to the experience, like Rysman, a Boston University professor, who stepped up to the courtroom podium when called to talk. "My counsel instructed me to always stand when I speak to you," he told Donato.

"No, no, no. You're just sitting in the hot tub," Donato interrupted, to laughter from the three dozen or so people watching the proceedings from the courtroom gallery. "This is a hot tub. You don't want standing in a hot tub."



US District Judge James Donato in his chambers in San Francisco.
Photographer: Dan Papscun/Bloomberg Law

Donato held the hearing to determine how to rule on a *Daubert* motion on the admissibility of expert testimony. Google wanted to exclude the conclusions of the consumers' economists, who argued the tech giant's behavior has resulted in higher costs to Android phone users and less innovation in the app market.

"This is not an academic conference," Donato reminded the parties. "I'm looking for your views on whether the proposed testimony the defendants challenge is sufficiently reliable and useful to jury at trial—or is it so bad it amounts to junk science."

In the hearing, Leonard and Singer sparred over their competing economic models—specifically how a model reflected the rate of Rosetta Stone app users on Android phones who would respond to a price hike by switching to language-learning competitor Duolingo, compared to the plant-identifier app PictureThis.

"That's what it says," argued Leonard of the model touted by Singer. Leonard, the Google expert, is a vice president and economist at the economic consulting firm Charles River Associates.

"That's not what it says," responded Singer, a managing director of the economic research and consulting firm Econ One and a professor of economics at the University of Utah.

"Hold on, everybody," Donato cut in from the bench during an exchange that had the court reporter throw up her hands and warn that she couldn't keep pace.

Donato later barred from the trial Singer's testimony on the merits of the alleged harms to consumers, saying the model he applied didn't fit the facts of the case. Rysman's comments, testifying that Google's pricing policies reduced the number and variety of apps available to consumers, appeared to survive Google's motion.

The Boston University professor is unlikely to ever testify, however: The consumers, developers, and states reached a tentative settlement with Google in early September.

Two remaining plaintiffs, Epic Games Inc. and Match Group Inc., the makers of Fortnite and the popular dating app Tinder, respectively, are still scheduled to go to trial over their antitrust claims.



© 2025 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

See also: Google Tentatively Settles States' Play Store Antitrust Suit (1)

# Rare but Increasing

The Bloomberg Law review of court records, based largely on keyword searches including "concurrent" and "hot tub," could find just 17 cases in the US where hot tubs have been used out of tens of thousands of trials and motions hearings in federal court.

Nearly all those cases have been within the last decade.

As Bartholomew puts it, hot tubs are "incredibly rare, but increasingly happening." *Daubert* motions are the main driver behind hearings in recent years, as expert testimony gets challenged earlier and earlier in litigation, she said.

The best of those experts can make millions of dollars in a single lawsuit. Excluding them is often a way to fight class certification, and the tactic is making hot tubs a more enticing option for judges, she said.

"An experienced expert is often able to duck hard questions by saying, 'I'm not sure I understand the question,' and rephrasing the question" to get at what they want to say, said George Hay, an economics and antitrust professor who teaches at Cornell's Law School and its College of Arts and Sciences.

"Traditional lawyers really struggle to examine an expert," he said.

# 'Way Over the Head' of Judges

The complexity of expert testimony as an issue for judges has caught the attention of Federal Trade Commission Chair Lina Khan, who spoke about it in the context of mergers on Thursday at a Brookings Institution event.

"One of the really striking things over the last few years has been actually sensing a lot of frustration from judges, including district court judges," said Khan.

A judge may think: "Here I am with this merger before me. The defendants have an economist—a very fancy economist—with all these fancy models," she said. "The plaintiff has an economist—a very fancy economist—with all these fancy models. They kind of cancel each other out for me right now. So what am I really up to?"

Economists facing off with each other catch errors and misleading answers that a lawyer might miss, said Hay, who has testified as an expert witness on economic issues in numerous court hearings, including a pair of hot tubs in Australia.

"Courts of appeals have become more strict about what constitutes admissible testimony in connection with expert analysis," said Kathleen O'Malley, a retired federal judge, now of counsel at Sullivan & Cromwell.

"Everything was allowed" in the past, "and most of the case would turn on how well you could cross-examine that expert," said O'Malley, who in a 2005 ruling spoke highly of a hot tub she held. "It was very unusual for economic testimony to not be admitted."

"That has really evolved," she said. Judges are stricter about damage calculations and economic expert testimony, she said. And appeals courts are pushing lower court judges to be "more discerning" about what they allow jurors to hear.

Laila Haider, a colleague of Leonard's at Charles River Associates, where she's a competition economist and vice president, has testified in two hot tubs before Donato. She agreed they can help cut through confusion.

Expert testimony has "become more complicated, more highfalutin, and way over the head of most judges," said Hay, the Cornell professor.

## 'Baby Steps'

Some attorneys dislike the format because it leaves them as relatively helpless spectators on arguably the biggest questions of the case, Haider said. Rather than maintaining partial control over expert questioning, their role is relegated to pre-hearing preparation and the occasional follow-up question at the end of the proceeding, if allowed by the judge.

Without the direct involvement of lawyers, experts need to be able to clearly explain their work. If they can't, there's no friendly questioner to prompt them back on the right path, said Karma Giulianelli, an attorney for the consumers in the *Google Play* case and a partner at Bartlit Beck LLP.

"They have to know their own analysis for trial, when they're being examined by their lawyer, too," Giulianelli said. But in hot tubs, "they need to know how to explain it and have judgment about whether they have actually explained the concepts in baby steps."

Some lawyers and economists raised another issue.

"I have to say, it would be good to come up with an alternative term for hot tub," said Haider, recalling awkward exchanges at a professional conference when acquaintances introduced themselves by saying: "I remember you from the hot tub," or, "I saw you in the hot tub."

But concurrent expert evidence proceeding, or concurrent expert testimony? "My gosh, that's a handful," Haider said.

## By Jet or Horse

When Donato was preparing to hold his first hot tub four years ago, he told himself that if the experiment "was a waste of time and money," he wouldn't give it another shot.

"In fact, what I plan to do now is start using it in other cases," he said in the August interview.

Three other current and former federal judges said in interviews that the format—whether for class certification, *Daubert* hearings, or other motions—was a useful exercise. Most agreed that they'd encourage federal courts to consider adopting the practice more broadly, especially in antitrust and patent cases where expert witnesses and complex evidence are central to the outcome of a trial.

Two federal judges, Maxine Chesney and William Alsup—both in the Northern District of California where Donato is based—said they hope to find opportunities to deploy hot tubs in the future. The district hears many high-tech consumer class actions because of the proximity to Silicon Valley. Chesney recently scheduled her first hot tub for December.

Donato said he doubted that motions addressed via a hot tub lead to different outcomes than those decided with more traditional testimony. But he credited the concurrent proceeding with boosting his understanding of the evidence.

"In my view, you can get there by jet, or you can get there by horse," Donato said. "You'll eventually get there, but the horse ride is a lot longer and less pleasant than the jet ride. I think the hot tub is the equivalent of the jet ride."

To contact the reporter on this story: Dan Papscun in Washington at
dpapscun@bloombergindustry.com

To contact the editors responsible for this story: Gregory Henderson at
ghenderson@bloombergindustry.com; Anna Yukhananov at ayukhananov@bloombergindustry.com