# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>Defendants. | Case No. 1:22-cv-00125<br><br>**Hon. Matthew F. Kennelly** |

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF SETTLEMENT CLASS COUNSEL'S MOTION FOR SERVICE AWARDS FOR THE CLASS REPRESENTATIVES, REIMBURSEMENT OF EXPENSES, AND ATTORNEYS' FEES FOR THE FOURTH TRANCHE SETTLEMENTS WITH DEFENDANTS THE JOHNS HOPKINS UNIVERSITY AND CALIFORNIA INSTITUTE OF TECHNOLOGY**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

I.      INTRODUCTION ................................................................................................. 1

II.     SUMMARY OF SETTLEMENT CLASS COUNSEL'S LITIGATION
        EFFORTS ............................................................................................................ 7

        A.      Case Investigation Through Fact Discovery Summary ......................... 8

        B.      Expert Discovery ................................................................................... 9

        C.      Joint Status Reports and Discovery Motion Practice............................ 9

        D.      Class Certification and *Daubert* Briefing ......................................... 10

        E.      The First Three Tranche Settlements................................................... 10

        F.      The Fourth Tranche Settlements.......................................................... 11

        G.      Total Time and Expenses..................................................................... 12

III.    SERVICE AWARDS FOR THE CLASS REPRESENTATIVES ARE
        APPROPRIATE AND REASONABLE.............................................................. 13

IV.     SETTLEMENT CLASS COUNSEL'S COSTS AND EXPENSES ARE
        REASONABLE AND NECESSARY ................................................................. 15

V.      SETTLEMENT CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES
        ARE REASONABLE AND SUPPORTED BY PRIOR FEE AWARDS...................... 16

        A.      Seventh Circuit Standard for Reasonable Attorneys' Fees.................. 16

        B.      Benchmarks Provided by Similar Cases Support Settlement Class
                Counsel's Fee Request as an Appropriate Market Rate........................ 18

        C.      One-Third of the Settlement Fund Is Fair and Reasonable Given the
                Remarkable Recovery for the Class in a Case with Extraordinary Risk,
                Complexity, and Difficulty .................................................................. 20

                1.      Risk of Nonpayment .................................................................. 21

                2.      The Quality of Performance....................................................... 22

                3.      Settlement Class Counsel Devoted Extensive Time and Work to
                        Successfully Prosecute This Action........................................... 23

4.      The Stakes in the Case ................................................................................... 25

VI.     CONCLUSION ................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Boeing v. Van Gemert*,
    444 U.S. 472 (1980) .......................................................................................... 16

*Briggs v. PNC Fin. Servs. Grp., Inc.*,
    2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) ........................................................ 15

*Chesemore v. All. Holdings, Inc.*,
    2014 WL 4415919 (W.D. Wis. Sept. 5, 2014), *aff'd sub nom. Chesemore v. Fenkell*,
    829 F.3d 803 (7th Cir. 2016) .............................................................................. 15

*Cimarron Pipeline Constr., Inc. v. Nat'l Council on Comp. Ins.*,
    1993 WL 355466 (W.D. Okla. June 8, 1993) ....................................................... 19

*City of Greenville v. Syngenta Crop Prot., Inc.*,
    904 F. Supp. 2d 902 (S.D. Ill. 2012) .................................................................... 16

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) .......................................................... 13, 14, 23, 25

*Durant v. Traditional Invs., Ltd.*,
    1992 WL 203870 (S.D.N.Y. Aug.12, 1992) ........................................................ 19

*Florin v. Nationsbank of Ga., N.A.*,
    34 F.3d 560 (7th Cir. 1994) ................................................................................ 17

*Flournoy v. Honeywell Int'l, Inc.*,
    2007 WL 1087279 (S.D. Ga. Apr. 6, 2007) ........................................................ 19

*Gaskill v. Gordon*,
    160 F.3d 361 (7th Cir. 1998) .............................................................................. 17

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991) ................................................................................ 6

*In re Advocate Aurora Health Pixel Litig.*,
    740 F. Supp. 3d 736 (E.D. Wis. 2024) ................................................................ 25

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) ........................................................ 23

*In re Blue Cross Blue Shield Antitrust Litig.*,
    2022 WL 4587618 (N.D. Ala. Aug. 9, 2022) ........................................................ 5

*In re Broiler Chicken Antitrust Litig.*,
    80 F.4th 797 (7th Cir. 2023) .................................................................. 6, 18, 20

*In re Broiler Chicken Antitrust Litig.*,
    2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) ...................................................... passim

*In re Broiler Chicken Antitrust Litig.*,
    2022 WL 6124787 (N.D. Ill. Oct. 7, 2022) ........................................................... 6

*In re Broiler Chicken Antitrust Litig.*,
    2024 WL 3292794 (N.D. Ill. July 3, 2024) .......................................................... 6

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ......................................................... 17, 18, 21

*In re Dairy Farmers of Am., Inc.*,
    80 F. Supp. 3d 838 (N.D. Ill. 2015) ................................................................ passim

*In re DDAVP Direct Purchaser Antitrust Litig.*,
    2011 WL 12627961 (S.D.N.Y. Nov. 28, 2011) ........................................................ 20

*In re Flonase Antitrust Litig.*,
    951 F. Supp. 2d 739 (E.D. Pa. 2013) ........................................................... 20, 23

*In re High-Tech Emp. Antitrust Litig.*,
    2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ........................................................ 5

*In re Linerboard Antitrust Litig.*,
    2004 WL 1221350 (E.D. Pa. June 2, 2004)
    *amended*, 2004 WL 1240775 (E.D. Pa. June 4, 2004) .......................................... 23

*In re Lithotripsy Antitrust Litig.*,
    2000 WL 765086 (N.D. Ill. June 12, 2000) ........................................................ 19

*In re Motorsports Merch. Antitrust Litig.*,
    112 F. Supp. 2d 1329 (N.D. Ga. 2000) ............................................................. 23

*In re NCAA Student-Athlete Concussion Inj. Litig.*,
    332 F.R.D. 202 (N.D. Ill. 2019), *aff'd sub nom. Walker v. NCAA*,
    2019 WL 8058082 (7th Cir. Oct. 25, 2019) ........................................................ 25

*In re Orthopedic Bone Screws Prods. Liab. Litig.*,
    2000 WL 1622741 (E.D. Pa. Oct. 23, 2000) ........................................................ 20

*In re Remeron Direct Purchaser Antitrust Litig.*,
    2005 WL 3008808 (D.N.J. Nov. 9, 2005) ...................................................... 19, 20

*In re Se. Milk Antitrust Litig.*,
    2013 WL 2155387 (E.D. Tenn. May 17, 2013) ........................................................ 20

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
    2024 WL 815503 (E.D. Pa. Feb. 27, 2024) ............................................................... 5

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ...................................................................... passim

*In re TikTok, Inc., Consumer Priv. Litig.*,
    617 F. Supp. 3d 904 (N.D. Ill. 2022), *appeal dismissed sub nom. In re TikTok Inc.,*
    *Consumer Priv. Litig.*, 2022 WL 19079999 (7th Cir. Oct. 12, 2022) ........................... 7, 19, 25

*In re Titanium Dioxide Antitrust Litig.*,
    2013 WL 6577029 (D. Md. Dec. 13, 2013) ............................................................ 20

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ............................................................................ 18

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015) ........................................................................ 19

*Macovski v. Groupon, Inc.*,
    2022 WL 17256417 (N.D. Ill. Oct. 28, 2022) ........................................................ 19

*Martin v. Lexington Health Care Ctr. of Chicago Ridge, Inc.*,
    2015 WL 14073005 (N.D. Ill. Mar. 5, 2015) ......................................................... 15

*Meijer, Inc. v. 3M*,
    2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) ......................................................... 5

*Montague v. Dixie Nat. Life Ins. Co.*,
    2011 WL 3626541 (D.S.C. Aug. 17, 2011) ........................................................... 19

*Montgomery v. Aetna Plywood, Inc.*,
    231 F.3d 399 (7th Cir. 2000) ........................................................................... 17

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
    2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ......................................................... 19

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................................. 15, 24

*Silverman v. Motorola Sols., Inc.*,
    739 F.3d 956 (7th Cir. 2013) ........................................................................... 22

*Standard Iron Works v. Arcelormittal*,
    2014 WL 11350176 (N.D. Ill. Oct. 23, 2014) ....................................................... 16

*Standard Iron Works v. ArcelorMittal*,
  2014 WL 7781572 (N.D. Ill. Oct. 22, 2014)............................................................ 25

*Sutton v. Bernard*,
  504 F.3d 688 (7th Cir. 2007) ................................................................................. 22

*Taubenfield v. AON Corp.*,
  415 F.3d 597 (7th Cir. 2005) ........................................................................... 18, 22

*Tawfilis v. Allergan*,
  2018 WL 4849716 (C.D. Cal. Aug. 27, 2018) ........................................................ 5

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*,
  2012 WL 4061537 (D.S.C. Sept. 14, 2012)........................................................... 19

*Williams v. Rohm & Haas Pension Plan*,
  658 F.3d 629 (7th Cir. 2011) .................................................................... 17, 22, 23

*Young v. Cnty. of Cook*,
  2017 WL 4164238 (N.D. Ill. Sept. 20, 2017) .................................................. 19, 24

**Rule**

Fed. R. Civ. P. 23(h) ....................................................................................... 15, 16

**Other Authorities**

Brian T. Fitzpatrick, *A Fiduciary Judge's Guide to Awarding Fees In Class Actions*,
  89 FORDHAM L. REV. 1151 (2021)........................................................................ 17

*Newberg on Class Actions* § 14.6 (4th ed. 2009)....................................................... 25

The law firms of Freedman Normand Friedland LLP, Gilbert Litigators & Counselors, P.C., and Berger Montague PC (collectively, "Settlement Class Counsel"), representing Plaintiffs (or "Class Representatives") and the Settlement Class, respectfully submit this Motion for Service Awards for the Class Representatives, Reimbursement of Expenses, and Attorneys' Fees Relating to the Fourth Tranche Settlements with Defendants The Johns Hopkins University and California Institute of Technology with the following Memorandum of Law in Support. The Joint Declaration of Edward Normand, Robert D. Gilbert, and Eric L. Cramer (the "Mar. 2025 Joint Decl.") accompanies the Memorandum.

## I.     <u>INTRODUCTION</u>

Settlement Class Counsel continue to prosecute this complex antitrust class action, which began more than three years ago against seventeen sophisticated, determined, and well-resourced Defendants.[1] Settlement Class Counsel initiated this case without the benefit of a governmental investigation or enforcement action.[2] Through their vigorous and dogged pursuit of the Plaintiffs' claims, Settlement Class Counsel have achieved tangible results for a large class of current and former students of 17 elite universities alleged to have colluded to artificially depress financial aid and artificially inflate net prices. On July 20, 2024, the Court granted final approval to settlements with ten Defendants (reached in three tranches). *See* Final Approval Order, ECF

---

[1] Defendants, referred to hereinafter in common shorthand, are Brown University ("Brown"), California Institute of Technology ("Caltech"), University of Chicago ("Chicago"), The Trustees of Columbia University in the City of New York ("Columbia"), Cornell University ("Cornell"), Trustees of Dartmouth College ("Dartmouth"), Duke University ("Duke"), Emory University ("Emory"), Georgetown University ("Georgetown"), The Johns Hopkins University ("Johns Hopkins"), Massachusetts Institute of Technology ("MIT"), Northwestern University ("Northwestern"), University of Notre Dame ("Notre Dame"), The Trustees of the University of Pennsylvania ("Penn"), William Marsh Rice University ("Rice"), Vanderbilt University ("Vanderbilt"), and Yale University ("Yale").
[2] After Defendants moved to dismiss, the U.S. Department of Justice and the State of New York sided with the Plaintiffs, with the DOJ filing a statement of interest supporting Plaintiffs on key issues and presenting oral argument on them. ECF Nos. 171, 172, 179.

No. 726 (approving "First Three Tranche Settlements").[3] Since the First Three Tranche Settlements, Settlement Class Counsel's litigation efforts have continued through the completion of fact discovery; a lengthy period of expert discovery; and briefing of class certification and *Daubert* motions.

During this period of intense litigation, Settlement Class Counsel continued to pursue settlement opportunities. Over a period of several months of extensive arm's length discussions, which involved the offices of mediator Hon. Layn Phillips (ret.), Plaintiffs reached settlements with Defendants Caltech and Johns Hopkins (these settling Defendants, collectively, the "Fourth Tranche Settling Universities" or "Fourth Tranche Settling Defendants," and these settlements, the "Fourth Tranche Settlements" as set forth in the "Fourth Tranche Settlement Agreements"). The Fourth Tranche Settlement Agreements are attached as Exhibits A & B to the Settlement Class Counsel's joint declaration filed in support of preliminary approval. ECF No. 776-2, dated January 17, 2025.

Pursuant to the Fourth Tranche Settlement Agreements, Caltech has agreed to pay $16,750,000 in cash and Johns Hopkins has agreed to pay $18,500,000 in cash. Collectively, the Fourth Tranche Settlements amount to $35,250,000.[4] When combined with the $284 million from the prior ten settlements, the twelve settlements will have collectively achieved to date $319,250,000 in aggregate cash payments. The Fourth Tranche Settlements, both in absolute terms and when considered in the aggregate with the prior settlements, are an outstanding result. These settlements look especially favorable given that litigation continues against the five

---

[3] The prior ten settling Defendants are Chicago, Brown, Columbia, Duke, Emory, Yale, Dartmouth, Northwestern, Rice, and Vanderbilt.
[4] In addition, Johns Hopkins agreed to provide certain additional discovery to assist Settlement Class Counsel in further prosecution of the case. Mar. 2025 Joint Decl. ¶ 27.

remaining non-settling Defendants,[5] each of which is jointly and severally liable for treble damages (minus the cash value of any settlements).

The Fourth Tranche Settlements resulted from Settlement Class Counsel's determined efforts at every stage of this litigation. This case has garnered significant national attention, and more than 75,000 members of the Settlement Class have submitted timely claims. If Settlement Class Counsel had not secured these settlements, the Settlement Class risked delay and loss at trial or on appeal.

As this Court has observed, antitrust litigation is complex and requires the involvement of economic and industry experts in connection with proving liability and damages and demonstrating that class certification is appropriate. *See, e.g.*, Feb. 8, 2023 Hrg. Tr., 20:19-21:2; Nov. 28, 2023 Hrg. Tr. 11:15-18, 20:11-17. And this lawsuit is especially complex, given: the number of defendants, including some asserting unique defenses; that a cadre of the best law firms in the country represent them; that the lawsuit includes a proposed Class Period of almost twenty years and a proposed Class of approximately 200,000 individuals; that discovery has involved a voluminous amount of complicated structured data; that there were multiple third parties with relevant information; and that the claims involve a careful analysis of the complexity inherent to higher education with its multiplicity of organizations, and other issues. Moreover, Settlement Class Counsel undertook the risks inherent to this complex case on contingency, knowing it could take years to prosecute and millions of dollars and tens of thousands of attorney hours to properly resource—with no guarantee of any return for those material investments. Moreover, Settlement Class Counsel continue to pour substantial resources into this matter as the case continues against the five remaining Defendants.

---

[5] The five non-settling Defendants are Cornell, Georgetown, MIT, Notre Dame, and Penn.

Over the course of over three years, from case investigation through November 30, 2024, Settlement Class Counsel has expended 127,557.6 hours of professional time, amounting to a collective lodestar of $95,540,837.50 based on historical rates,[6] and incurred over $2,441,739.12 in additional unreimbursed out-of-pocket expenses and outstanding invoices. Mar. 2025 Joint Decl. ¶¶ 48-51. Settlement Class Counsel respectfully seek (a) service awards of $2,500 for each of the eight Class Representative (totaling $20,000), as compensation for their continued efforts; (b) reimbursement of their necessary and reasonable (and as of yet unreimbursed) litigation expenses of $2,441,739.12; and (c) attorneys' fees of one-third of the Fourth Tranche Settlement amount, i.e., 1/3 of $35.25 million, or $11.75 million (plus the interest accrued on the sought fee). ECF Nos. 776-1 at 16-18 (preliminary approval brief) & 776-8 at 17 (notice).[7]

As discussed in Section V.C.3 *infra*, the requested attorneys' fees would result in a modest lodestar multiplier of just over 1.1 or lower, depending on what time period is used to analyze the lodestar. This result would be less than the 1.35 multiplier the Court previously approved (Final Approval Order ¶ 27), and it would be well below multipliers awarded in comparable antitrust and other class actions in this and other Circuits. Settlement Class Counsel respectfully submit that these requests are justified for several reasons.

*First*, the Fourth Tranche Settlements are meaningful and important additional recoveries that benefit the Settlement Class. While the Fourth Tranche Settlements are smaller than most of the prior ten settlements (which ranged in amount from $13.5 million to $55 million per Settling

---

[6] Settlement Class Counsel are conservatively using historical market rates, instead of current rates, to compute their lodestar. Historical rates reflect that rates on the books and records of each firm during the period the professional hours were billed, instead of billing all time at current market rates.
[7] The notice to the Settlement Class explained that "Settlement Class Counsel will move for an award of attorneys' fees from the Caltech and Johns Hopkins settlements not to exceed 1/3 of the Settlement Fund (*i.e.*, 1/3 of $35.25 million, or $11.75 million), plus any accrued interest, reimbursement of litigation costs and expenses not to exceed $2.75 million, and service awards of up to $2,500 for each of the eight Settlement Class Representatives to be paid out of the Settlement Fund." *Id.* ¶ 23.

Defendant, with an average settlement value of $28.4 million), they reflect distinct differences pertaining to Johns Hopkins and Caltech. *See* Mar. 2025 Joint Decl. ¶ 26. Caltech is by far the smallest of all the Defendants, and both Johns Hopkins and Caltech had the shortest tenures in the 568 Group of any of the Defendants. *See id.* These two additional Settlements total $35,250,000 and, if approved, would bring the aggregate cash settlements to date to $319,250,000 (when combined with the $284,000,000 from the prior settlements).

Plaintiffs' economic expert computed damages (before trebling) to the proposed litigation class amounting to $685 million. *See* Pls. Mot. for Class Cert., ECF No. 757, at 3. Altogether, the twelve settlements represent a recovery of approximately 47% of single damages, of which, the Fourth Tranche Settlements alone account for over 5% of damages.[8] *See id.* ¶ 5. Litigation continues against the remaining five non-settling Defendants, who remain jointly and severally for all of the damages. *See id.* Settlement Class Counsel have reasonably concluded that the proposed cash settlements for the Fourth Tranche Settlements—indeed, for all Settlements to date (both individually and collectively)—are in the best interests of the Settlement Class. If finally approved, the Settlements would assure the Settlement Class of an additional significant cash recovery without materially diminishing the joint and several liability of the five remaining non-settling Defendants.

---

[8] Indeed, courts routinely approve antitrust class action settlements resolving entire cases for a much lower recovery share. *See, e.g.*, *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2024 WL 815503, at *9 (E.D. Pa. Feb. 27, 2024) (approving antitrust settlement for 12% to 14% of estimated single damages that resolved the entire case); *In re Blue Cross Blue Shield Antitrust Litig.*, 2022 WL 4587618, at *2, *20 (N.D. Ala. Aug. 9, 2022) (approving antitrust settlement for 7.3% to 14.3% of estimated single damages that resolved entire case); *Tawfilis v. Allergan*, 2018 WL 4849716, at *4 (C.D. Cal. Aug. 27, 2018) (approving antitrust settlement for approximately 8.36% of overcharge damages that resolved entire case); *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at *2-*4 (N.D. Cal. Sept. 2, 2015) (approving antitrust class action settlement representing 14% of single damages that resolved entire case); *Meijer, Inc. v. 3M*, 2006 WL 2382718, at *16 (E.D. Pa. Aug. 14, 2006) (approving antitrust settlement for approximately 2% of single damages that resolved entire case).

*Second*, the requested attorneys' fee is a reasonable market rate for Settlement Class Counsel's services had they been negotiated *ex ante*. The benchmarks employed in the Seventh Circuit to gauge reasonable market rates are existing or prior contracts between the parties, data from similar common fund cases, and class counsel auctions—and these benchmarks all support a contingency fee of one-third. This sought fee is within the ordinary range of contingency fee arrangements actually negotiated *ex ante* between parties in complex antitrust actions. Indeed, as one court recently observed: "The fact that fee awards in antitrust cases in this circuit are almost always one-third is a strong indication that this should be considered the 'market rate.'" *In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *4 (N.D. Ill. Dec. 1, 2021) (direct purchaser plaintiffs' ("DPP") case); *see also In re Broiler Chicken Antitrust Litig.*, 2024 WL 3292794, at *1 (N.D. Ill. July 3, 2024) (noting nearly half of all awards in district court's study of antitrust class action fee opinions were for one-third) (on remand in the end purchasers plaintiffs ("EPP") case).[9] Moreover, as noted above, using a lodestar cross-check in this matter confirms the propriety of the sought fee. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) (multipliers between 1 and 4 have been approved); *see also* Section V.C.3 *infra*.

*Third*, the risks and complexities of this case, coupled with Settlement Class Counsel's caliber of performance and quality of work, warrant the requested fee. This case was (and is)

---

[9] The Seventh Circuit vacated the initial fee award granted by the District Court in the EPP case. *See Broiler Chicken*, 80 F.4th 797 (7th Cir. 2023) (vacating and remanding award issued in *Broiler Chicken*, 2022 WL 6124787 (N.D. Ill. Oct. 7, 2022)). The Seventh Circuit's decision does not warrant any downward adjustment from the requested one-third fee award here (and, in fact, supports the requested award) for the reasons discussed in detail in Settlement Class Counsel's Notice of Supplemental Authority and Supplemental Memorandum of Law Supporting Their Motion for Service Awards, Reimbursement of Expenses, and Attorneys' Fees in Light of Recent Authority, ECF No. 721 (July 9, 2024), which Settlement Class Counsel incorporate herein. For clarity, the litigation in *Broiler Chicken* involved three groups of plaintiffs: DPPs, EPPs, and indirect purchaser plaintiffs. *See* 80 F.4th at 800 & n.1. Settlements were reached in two of the cases, the DPP and EPP cases, but the Seventh Circuit only reviewed and vacated the 2022 fee award in the EPP case and not the 2021 fee award in the DPP case.

particularly complicated, even among traditionally complicated antitrust cases, because of the inability to benefit from a pre-existing investigation or litigation by the government, and the existence of a statute purportedly providing immunity to the Defendants. The case has been hard fought at every stage against very well-resourced Defendants.

*Fourth*, the reaction of the Settlement Class has been overwhelmingly in favor of the settlements to date. Of the approximately 200,000 Settlement Class members, only one lodged an objection, which focused only on an aspect of the proposed Plan of Allocation (and which the Court overruled). No class member has objected to the settlements or the requested fee award. *See*, *e.g.*, *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 937 (N.D. Ill. 2022) (finding dearth of objections in a well-publicized case shows support for settlement (and citing cases)). And, as noted above, more than 75,000 timely claims have been submitted to date, which represents an approximately 38% participation rate—nearly *four times* the typical rate.[10]

In short, the requested modest service awards for the Class Representatives, the unreimbursed expenses, and the award of attorneys' fees are appropriate.

## II.    SUMMARY OF SETTLEMENT CLASS COUNSEL'S LITIGATION EFFORTS

The Fourth Tranche Settlements are a continuation of Settlement Class Counsel's commitment to litigating Plaintiffs' claims aggressively on behalf of the Settlement Class. Because the history of the litigation and Settlement Class Counsel's work in reaching the First Three Tranche Settlements is described in detail in the Joint Declaration submitted with the prior

---

[10] The 68,311 claims represent an estimated claims rate of about 34%, which is *four times* the typical result. Including the late claims through end of December 2024 would increase the claims rate to 38%. A 2019 report by the Federal Trade Commission found that the median claims rate in consumer class actions was 9%, with no significant difference in claims rates between cases with typical recoveries of less than $10 and more than $200. FTC, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, at 11, 31 (Sept. 2019), https://www.ftc.gov/system/ files/documents/reports/ consumers-class-actions-retrospective-analysis-settlement-campaigns /class_ action_fairness_report_0.pdf.

Motion for Service Awards for the Class Representatives, Reimbursement of Expenses, and Attorneys' Fees, ECF No. 679-1 ("Apr. 2024 Joint Decl."), Plaintiffs summarize that work here for ease of reference, while adding detail concerning Settlement Class Counsel's further litigation efforts leading to the Fourth Tranche Settlements.

A.     **Case Investigation Through Fact Discovery Summary**

Beginning in earnest in early 2021, Settlement Class Counsel analyzed thousands of documents, interviewed Defendants' current and former students, and worked with a consulting economist to examine the effects of the challenged conduct, along with working with each Plaintiff to obtain key information that led to filing the initial Complaint on January 9, 2022.[11] On April 15, 2022, Defendants filed three motions to dismiss. *See* ECF Nos. 145 (by Brown, Chicago, Emory, and Johns Hopkins), 146 (by all Defendants), 148 (by Yale); Apr. 2024 Joint Decl. ¶ 10. Settlement Class Counsel filed a consolidated opposition brief on June 10, 2022 (ECF No. 164), and the Court denied the motions on August 15, 2022 (ECF No. 185).

Fact discovery ran from August 15, 2022 to January 31, 2024 (with limited additional fact discovery through April and May 2024). Over this period, Settlement Class Counsel: served extensive written discovery on each Defendant (including requests for production, interrogatories, and requests for admission); obtained and reviewed over 1.1 million documents; filed multiple motions to compel key categories of documents (*see*, *e.g.*, ECF Nos. 331, 402, 440, 443, 467, 505, 539); worked with the Class Representatives to collect, review, and produce nearly 4,000 documents, respond to multiple rounds of interrogatories, and prepare initial disclosures; prepared for and took over ninety (90) fact depositions; prepared the Class Representatives for their depositions and defended those depositions; and served approximately

---

[11] ECF No. 1, ¶¶ 1-2; Apr. 2024 Joint Decl. ¶¶ 8-9. Amended complaints were filed on February 15, 2022 and February 6, 2023. ECF Nos. 106 & 308.

11 third-party subpoenas, taken or defended two third-party depositions, and secured tens of thousands documents from numerous third parties including other universities and colleges and higher education organizations. *See generally* Apr. 2024 Joint Decl. ¶¶ 11-36.

###   B.   Expert Discovery

The period for expert discovery ran from the formal close of fact discovery on January 31, 2024 through November 12, 2024. Settlement Class Counsel retained four testifying experts who have performed extensive work in support of their analyses: Hal J. Singer, Ph.D., Prof. George Bulman, Ph.D., Elizabeth Mora, and Prof. Jesse Rothstein, Ph.D. *See* Mar. 2025 Joint Decl. ¶¶ 11-12; Apr. 2024 Joint Decl. ¶¶ 35-36. Collectively, Settlement Class Counsel spent hundreds of hours working with their experts to ensure that: they had sufficient information to understand the transactional data reflecting the prices all members of the Settlement Class paid to Defendants over more than 20 years; they had access to the discovery record and other information needed to conduct their analyses; they developed reliable methods that fit the facts and claims in the case. Mar. 2025 Joint Decl. ¶ 13. Plaintiffs' testifying experts submitted nine reports totaling over 730 pages. *Id.* ¶¶ 11-12. Settlement Class Counsel also analyzed the seven extensive reports produced by Defendants' five experts, which exceeded 1,200 pages, and deposed each of these experts. *Id.* ¶ 15. Additionally, Settlement Class Counsel worked with consulting experts to facilitate counsel's understanding of the issues, including the intersection of private funding for financial aid in elite higher education. Apr. 2024 Joint Decl. ¶ 36.

###   C.   Joint Status Reports and Discovery Motion Practice

Settlement Class Counsel prepared multiple Joint Status Reports regarding discovery issues and frequently met and conferred with Defendants regarding the same and presented oral argument to the Court on multiple issues at numerous Joint Status Conferences. Joint Decl. ¶¶ 38-39. Settlement Class Counsel engaged in extensive discovery motion practice, including

motions to compel, motions to seal, motions for protective orders, and others to resolve outstanding discovery disputes.[12] In addition, at the Court's direction, Settlement Class Counsel negotiated the terms and conditions of the Court's Order Governing Disclosure in Merits-Related Motion Practice (ECF No. 736) and litigated disputes concerning that Order.

### D.    Class Certification and *Daubert* Briefing

With the end of fact and expert discovery on November 12, 2024, *see* ECF No. 656, Settlement Class Counsel prepared a class certification motion, filed on December 16, 2024. Plaintiffs then drafted a class reply brief, filed on March 7, 2025. ECF No. 807. On the same day that Plaintiffs filed for class certification, Defendants filed motions to exclude every word of the analyses and opinions of Plaintiffs' experts Dr. Singer, Dr. Bulman, and Ms. Mora. ECF. No. 754. Plaintiffs opposed Defendants' *Daubert* motions with a brief dated January 24, 2025. ECF No. 785. Plaintiffs also filed motions to exclude the testimony two of Defendants' experts (Dr. Bridget Terry Long, ECF No. 750, and Mr. Peter Ammon, ECF No. 751), which motions are now fully briefed as well.

### E.    The First Three Tranche Settlements

Settlement Class Counsel earlier obtained settlements with ten Defendants, which settlements were accomplished over several months in three separate tranches. These ten settlements collectively recovered $284 million in aggregate cash payments for the benefit of the Settlement Class, as well as additional, limited discovery and an agreement to make witnesses available for trial. *See*, *e.g.*, ECF Nos. 428 (Chicago); ECF No. 603 (Brown, Columbia, Duke,

---

[12] *See*, *e.g.*, ECF Nos. 271, 331, 402, 440, 443, 467, 503, 505, 539, 547, 631, 645, 714, 722, 738, 741, 743, 777, 793; Apr. 2024 Joint Decl. ¶ 28; Mar. 2025 Joint Decl. ¶ 22. On March 21, 2023, for example, Settlement Class Counsel filed a motion to compel the production of documents. ECF No. 331; Apr. 2024 Joint Decl. ¶ 28. Similarly, Settlement Class Counsel filed a motion for a protective order against Defendants subpoenas on Plaintiffs' families for what Plaintiffs argued were irrelevant and duplicative documents and information. ECF No. 271.

Emory, and Yale); ECF No. 629 (Dartmouth, Northwestern, Rice, and Vanderbilt). These settlements were the result of protracted arm's length settlement negotiations, including several settlements that were mediated by one of the most respected ADR firms in the country, Phillips ADR. Apr. 2024 Joint Decl. ¶¶ 40-56. Settlement Class Counsel did not achieve these Settlements as a group or all at once, but separately and over time, often with simultaneous negotiations, and as part of a strategy of increasing the settlement amounts with each successive agreement or set of agreements to exert pressure on Defendants to reach agreement imminently or risk having to pay more. *Id.* ¶¶ 40-56. Following preliminary approval of the ten settlements, and notice to the Settlement Class, the Court granted final approval for these settlements on July 20, 2025. Final Approval Order, ECF No. 726.

Settlement Class Counsel then worked with the Court-appointed Claims Administrator, Angeion Group, LLC ("Angeion"), to issue claim forms to members of the Settlement Class. *See* Jan. 17, 2025 Weisbrot Decl. ¶ 12. The final date for submitting a timely claim was December 17, 2024, and as of December 31, 2024, Angeion has received 76,157 timely and presumptively valid claims. *See id.*; Minute Entry, ECF No. 824 (extending claims filing deadline to 4/3/25).

### F.     The Fourth Tranche Settlements

Settlement Class Counsel entered into the Fourth Tranche Settlement Agreements after more than three years of hard-fought litigation, including significant fact and expert discovery, and following several months of extensive arm's length negotiations, involving colleagues of renowned mediator, Hon. Layn Phillips (ret.). Mar. 2025 Joint Decl. ¶¶ 6, 25. The Fourth Tranche Settlements are with Caltech, for $16,750,000, and Johns Hopkins University, for $18,500,000.[13]

---

[13] Plaintiffs executed the Settlement Agreement with Caltech on November 1, 2024 and with Johns Hopkins on August 6, 2024. *See* ECF Nos. 776-3 & 776-4.

While the Fourth Tranche Settlements and accompanying papers are substantively similar to those submitted along with the prior ten settlements,[14] there are certain differences including primarily that as to the Fourth Tranche Settlements: (1) the proposed Allocation Plan has been tweaked so as to account better for the added delay in recovery for the members of the Settlement Class in the earlier portion of the Class Period; (2) the Notice Plan involves a second round of notice and claims distribution process separate from the consolidated notice plan from the first three tranches of settlements; and (3) they add certain clarifying language with respect to alumni of Defendants who became U.S. citizens or permanent residents after they stopped attending a Defendant (the class definitions are otherwise identical). *See* Fourth Tranche Preliminary Approval Brief at 3.

### G.  Total Time and Expenses

Settlement Class Counsel, from inception through November 30, 2024, have collectively devoted a total of 127,949.4 hours and $95,445,459.00 of professional time, at historical market rates, to prosecute the claims on behalf of the Settlement Class, which counsel did on contingency. *See id.* ¶ 43 & n.1. The proposed attorneys' fees of one-third (*i.e.*, 1/3 of $35.25 million, or $11.75 million), including one-third of any accrued interest, combined with the previous fee award in the case, would amount to a modest lodestar multiplier of just over 1.1 for the period from inception through November 30, 2024. *Id.* ¶ 45. If the twelve settlements to date were considered as a package, the multiplier on a fee awarded for work with respect to all twelve

---

[14] All twelve settlements to date are substantively similar in that each: (i) provides cash payments for the benefit of the Settlement Class; (ii) provides benefits for the same certified Settlement Class; (iii) includes materially similar releases; (iv) proposes the same notice and claims administrator, and a similar notice plan; and (v) proposes the same Class Representatives and Settlement Class Counsel, among other similar provisions.

would be lower than the 1.35 multiplier awarded for the prior ten settlements. *See* Notice of Supplemental Authority, ECF No. 721, at 2.

Alternatively, viewing the Fourth Tranche Settlements in isolation, and if the Court considered only the marginal additional lodestar since Settlement Class Counsel's prior fee submission (*i.e.*, for the period April 1, 2024 through November 30, 2024), the multiplier would be 0.54. *See* Mar. 2025 Joint Decl. ¶ 45. If the Court were only to consider the lodestar accruing after the final approval hearing of the prior settlements (*i.e.*, for the period July 20, 2024 through November 30, 2024), the multiplier would be just over 1. Each of these multipliers, as discussed in Section V.C.3 *infra*, is below the 1.35 multiplier the Court found appropriate when it approved the prior fee award (ECF No. 726 ¶ 27), and they are on the low side of what courts in this Circuit (and others) routinely grant in complex class action cases. Settlement Class Counsel also incurred, through February 28, 2025, $2,441,739.12 in unreimbursed litigation expenses that were reasonable and necessary to the successful prosecution of this action.

## III.  SERVICE AWARDS FOR THE CLASS REPRESENTATIVES ARE APPROPRIATE AND REASONABLE

Plaintiffs' request for modest additional service awards for each of the eight Class Representatives is reasonable.[15] The Class Representatives were previously awarded $20,000 each for their service to the Settlement Class. *See* Final Approval Order ¶ 30. Settlement Class Counsel believe that awards of $2,500 each (totaling $20,000) are appropriate in recognition of the ongoing instrumental role they played in continuing to obtain settlements for the benefit of

---

[15] "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (citation omitted). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.*; *accord Broiler Chicken*, 2021 WL 5709250, at *4.

the Settlement Class. The requested service awards should be granted for the same reasons that
supported awarding the prior service awards. *See* Final Approval Order ¶¶ 30-33.

*First*, the Class Representatives were essential as they, not a government agency, helped
initiate this action. In doing so, the Class Representatives risked being ostracized for
participating in a lawsuit against their alma maters and have had to confront the media scrutiny
that accompanies a class action against some of the most prestigious universities in the country.
*Second*, the Settlement Class benefited substantially from the Class Representatives' actions, as
this case would not exist without their help. The Settlement Class Representatives have
performed a valuable public service for the Settlement Class by obtaining monetary relief and
ensuring that Defendants' allegedly conspiratorial practices do not recur.

*Second*, the Class Representatives have spent significant time and effort in litigating this
action, including: (1) providing key information in the pre-suit investigation; (2) reviewing and
signing off on key filings; (3) searching for and collecting thousands of relevant documents
produced in discovery; (4) preparing and sitting for lengthy depositions; and (5) reviewing and
approving the settlement papers (as they did with the prior settlements). *See* Mar. 2025 Joint
Decl. ¶ 9; ECF No. 638, Ex. A, ¶ 55; Apr. 2024 Joint Decl. ¶¶ 61-62. The Class Representatives
also spent hours consulting with Settlement Class Counsel to deal with various issues and stay
apprised of the litigation (*see supra*), and they continue to pursue the litigation and are prepared
to testify at any trial in this matter.

The proposed service awards—both on their own and when combined with the prior
service awards—are consistent with other awards in this Circuit, especially considering that the
Class Representatives are individuals with limited resources. *See*, *e.g.*, *Cook*, 142 F.3d at 1016
(affirming incentive award of $25,000 to class representative); *Broiler Chicken*, 2021 WL

5709250, at *5 (awarding $15,000 to each of the five class representatives and suggesting that the awards could have been higher if the class representatives were individual people subjected to personal burdens, as opposed to businesses or corporations).[16]

## IV. SETTLEMENT CLASS COUNSEL'S COSTS AND EXPENSES ARE REASONABLE AND NECESSARY

Counsel who create a common fund are entitled to be reimbursed for expenses reasonably incurred in creating the fund. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 600 (N.D. Ill. 2011) (citing Fed. R. Civ. P. 23(h)). "If counsel submit bills with the level of detail that paying clients find satisfactory, a federal court should not require more." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001) ("*Synthroid I*"); *accord In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 853 (N.D. Ill. 2015).

Settlement Class Counsel's unreimbursed costs and expenses of $2,441,739.12 were reasonably incurred and necessary. Mar. 2025 Joint Decl. ¶¶ 50-52. The requested expenses represent the amount of unreimbursed costs and expenses through February 28, 2025 less the amount Settlement Class Counsel were reimbursed in connection with the prior settlements. *See id.* These unreimbursed expenses include costs for computerized legal research, the creation and maintenance of an electronic document database, substantial expert and consultant costs, travel and lodging expenses, copying, court reporters, transcripts, filing fees, and mediation expenses. *See id.* These are typical expenses, routinely deemed reasonable and necessary, and they are consistent with expenses in similar class actions, particularly in light of the pre-filing

---

[16] *See also Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 WL 7018566, at *3 (N.D. Ill. Nov. 29, 2016) ("[C]ourts in the Seventh Circuit routinely approve incentive awards ranging from $5,000 to $25,000." *citing Chesemore v. All. Holdings, Inc.*, 2014 WL 4415919, at *12 (W.D. Wis. Sept. 5, 2014), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016))); *Martin v. Lexington Health Care Ctr. of Chicago Ridge, Inc.*, 2015 WL 14073005, at *5 (N.D. Ill. Mar. 5, 2015) (approving an "incentive award of $20,000 for the named Plaintiff" because she "actively participated in discovery and settlement" and "regularly communicated with Class Counsel").

investigation, over three years of litigation, and the extensive discovery and motion practice that ensued.[17]

## V.    SETTLEMENT CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SUPPORTED BY PRIOR FEE AWARDS

The Fourth Tranche Settlements constitute an excellent result in absolute terms and as an increase in the aggregate cash amount obtained to date, especially given that litigation continues against five non-settling Defendants, who are each jointly and severally liable for treble damages (minus the value of all settlements to the point of the damage award). The value of these Settlements reflects Settlement Class Counsel's zealous commitment to securing relief for the Settlement Class at every stage of this litigation.

### A.    Seventh Circuit Standard for Reasonable Attorneys' Fees

Attorneys for the plaintiffs in a class action may petition the court for compensation from the settlement fund. *See Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980); Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement."). Courts in the Seventh Circuit have used both the "lodestar" method, which considers "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," and the percentage method, which "sets the fee

---

[17] *See* Final Approval Order ¶¶ 28-29; *see also Standard Iron Works v. Arcelormittal*, 2014 WL 11350176, at *4 (N.D. Ill. Oct. 23, 2014) (approving $5,064,908.97 in costs and expenses in an antitrust class action that partially settled prior to the filing of summary judgment motions); Order ¶ 15, ECF No. 1085, *In re Opana ER Antitrust Litig.*, No. 1:14-cv-10150 (N.D. Ill. Nov. 3, 2022) (awarding costs and expenses of $4,343,137.06). *See also, e.g., City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 910-911 (S.D. Ill. 2012) (awarding costs of $8,572,647.67 after two years of litigation for expert and consulting fees, deposition expenses, travel, photocopying costs, and the like); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 2:06-cv-01797, ECF No. 870 at 10 (E.D. Pa. Oct. 15, 2015) (approving $3.5 million in costs and expenses); *Tricor*, No. 05-340, ECF No. 543 at 10 (D. Del. Apr. 23, 2009) (approving $3.5 million in costs and expenses in a case that settled after 3.5 years of litigation at the commencement of trial); *In re Wellbutrin XL Antitrust Litig.*, No. 2:08-cv-2431, ECF No. 485 at 8 (E.D. Pa. Nov. 7, 2012) (approving $3.1 million in costs and expenses in a case that settled after the close of fact and expert discovery, following summary judgment rulings).

award as a percentage of the recovered settlement fund, plus expenses and interest." *Dairy Farmers*, 80 F. Supp. 3d at 844 (citations omitted).[18]

The percentage method, however, "has emerged as the favored method for calculating fees in common-fund cases in this district." *Dairy Farmers*, 80 F. Supp. 3d at 844 (applying the percentage method in a common-fund antitrust action); *see also Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis.") (collecting cases, internal citations omitted).[19]

"[W]hen deciding on appropriate fee levels in common-fund" cases, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Synthroid I*, 264 F.3d at 718 (citing *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 409 (7th Cir. 2000), and *Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998)) (additional citations omitted). This is the "*ex ante* bargain between the class and its attorneys." *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011); *Synthroid I*, 264 F.3d at 719 (directing the district court on remand to "set a fee by approximating the terms that would have been agreed to *ex ante*, had negotiations occurred").

In *Synthroid I*, the Seventh Circuit provided "benchmarks" to approximate the market rate by looking at "similar bargains," such as (1) actual fee contracts between the parties and

---

[18] *See also In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 794 (N.D. Ill. 2015) ("It has long been the law in the Seventh Circuit that in common fund cases like this one, district courts have discretion to choose either the lodestar or a percentage approach to calculating fees." (citing *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994))).

[19] *See also, e.g.*, Brian T. Fitzpatrick, *A Fiduciary Judge's Guide to Awarding Fees In Class Actions*, 89 Fordham L. Rev. 1151, 1170 (2021) (where a court can monitor against premature settlement, the percentage of recovery, not lodestar, is the best method for determining appropriate attorneys' fees).

class counsel in similar cases, (2) data from similar common fund cases, and (3) information from lead counsel auctions in similar cases. *Synthroid I*, 264 F.3d at 719-20; *accord Taubenfield v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). *Synthroid I* also advised that the "market rate" should be adjusted to account for (1) the risk of nonpayment a firm agrees to bear, (2) the quality of its performance, (3) the amount of work necessary to resolve the litigation, and (4) the stakes of the case. *Synthroid I*, 264 F.3d at 721. These benchmarks and factors have since become the standard metric in Seventh Circuit cases for evaluating the reasonableness of attorneys' fee requests involving common funds. *See, e.g., Cap. One*, 80 F. Supp. 3d at 796-97; *Dairy Farmers*, 80 F. Supp. 3d at 845-49; *Broiler Chicken*, 2021 WL 5709250, at *2-*4.[20]

## B.    Benchmarks Provided by Similar Cases Support Settlement Class Counsel's Fee Request as an Appropriate Market Rate

Attorneys' fees in similar cases provide an initial benchmark for determining a reasonable market rate. *See Cap. One*, 80 F. Supp. 3d at 796 ("[T]he Seventh Circuit explained that it is possible to learn about 'similar bargains' and set forth three 'guides' or 'benchmarks' to help district courts estimate the market fee: (1) actual fee contracts between plaintiffs and their attorneys; (2) data from similar common fund cases where fees were privately negotiated; and (3) information from class-counsel auctions.") (citing *Synthroid I*, 264 F.3d at 719); *Dairy Farmers*, 80 F. Supp. 3d at 845 ("As a barometer for assessing the reasonableness of a fee award in common-fund cases, courts look to the going market rate for legal services in similar cases.").

Awards of one-third are well within the ordinary range of *ex ante* rates in privately negotiated contingency arrangements.[21] *See, e.g., Kirchoff v. Flynn*, 786 F.2d 320, 328 (7th Cir.

---

[20] As referenced in n.10 *supra*, the Seventh Circuit recently directed a district court to consider prior instances of class counsel offering a declining fee scale as part of a bid for a leadership position in the litigation (*see Broiler Chicken*, 80 F.4th at 803-04), which factor is not present here.
[21] This Court has awarded attorneys' fees of one-third or more in class actions less complex than this case.

1986) (finding that the "40% [contingency fee] was to be a minimum, not a cap"); Order ¶ 15,

ECF No. 1085, *In re Opana ER Antitrust Litig.*, No. 14-cv-10150 (N.D. Ill. Nov. 3, 2022)

(awarding $50,528,470.66 in attorneys' fees for antitrust class action, representing 36% of

settlement fund); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill.

2022) ("A one-third flat fee also is routine for class action settlements in similarly complex

fields, such as antitrust litigation. Furthermore, a one-third fee aligns with the one-third

contingency fee routinely charged by class action lawyers across the country.").[22]

The complexity inherent in antitrust cases generally and the amount recovered here

---

*See, e.g.*, *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (Kennelly, J.) (36 percent fee in a class action involving the Telephone Consumer Protection Act); *Young v. Cnty. of Cook*, 2017 WL 4164238, at *6 (N.D. Ill. Sept. 20, 2017) (Kennelly, J.) (one-third of a $55 million settlement in case involving civil rights violations and finding that a declining marginal percentage scale is not appropriate); *Macovski v. Groupon, Inc.*, 2022 WL 17256417, at *1 (N.D. Ill. Oct. 28, 2022) (Kennelly, J.) (one-third in class action involving violations of federal securities law).

[22] *Broiler Chicken*, 2021 WL 5709250, at *4 ("The fact that fee awards in antitrust cases in this circuit are almost always one-third is a strong indication that this should be considered the 'market rate.'"); *Dairy Farmers*, 80 F. Supp. 3d at 845 (in class actions, the "usual range for contingent fees is between 33 and 50 percent"); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered."); *In re Lithotripsy Antitrust Litig.*, 2000 WL 765086, at *2 (N.D. Ill. June 12, 2000) ("33.3% of the fund plus expenses is well within the generally accepted range of attorneys['] fees in class-action antitrust lawsuits."). Similarly, courts nationwide have recognized that contingency fees of one-third (and higher) are common. *See, e.g.*, *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, 2012 WL 4061537, at *9 (D.S.C. Sept. 14, 2012) ("[T]he market rate for private contingency fees is in the range of 33 1/3 percent to 40 percent."); *Montague v. Dixie Nat. Life Ins. Co.*, 2011 WL 3626541, at *2-3 (D.S.C. Aug. 17, 2011) ("Very few class actions are ever litigated to judgment as in this case [and] [i]n non-class contingency fee litigation, a 30% to 40% contingency fee is typical."); *Flournoy v. Honeywell Int'l, Inc.*, 2007 WL 1087279, at *2 (S.D. Ga. Apr. 6, 2007) ("Forty percent fee contracts are common for complex and difficult litigation such as this."); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005) ("Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation."); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."); *In re Orthopedic Bone Screws Prods. Liab. Litig.*, 2000 WL 1622741, at *7 (E.D. Pa. Oct. 23, 2000) ("[T]he court notes that plaintiffs' counsel in private contingency fee cases regularly negotiate agreements providing for thirty to forty percent of any recovery."); *Cimarron Pipeline Constr., Inc. v. Nat'l Council on Comp. Ins.*, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *Durant v. Traditional Invs., Ltd.*, 1992 WL 203870, at *4 n.7 (S.D.N.Y. Aug.12, 1992) ("[C]ontingent fee agreements up to 40 percent have been held reasonable.").

further support Settlement Class Counsel's fee request. In antitrust class actions of similar complexity, where pre-trial recoveries exceed $100 million, courts routinely award fees of one-third. *See*, *e.g.*, *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09-cv-07666, ECF Nos. 693, 697, 697-1 and 701 (N.D. Ill. 2014) (awarding one-third of $128 million settlement after five years of litigation in the midst of discovery).[23]

While some courts have decreased the percentage as the size of the settlement fund increases, the Seventh Circuit "has rejected the application of a megafund rule." *Broiler Chicken*, 80 F.4th at 804 (citing *Synthroid I*, 264 F.3d at 717-18). This is because "[c]lients generally want to incentivize their counsel to pursue every last settlement dollar, and a declining percentage award operates to the contrary." *Broiler Chicken*, 2021 WL 5709250, at *3.

**C.**      **One-Third of the Settlement Fund Is Fair and Reasonable Given the Remarkable Recovery for the Class in a Case with Extraordinary Risk, Complexity, and Difficulty**

Using the market rate as a guide, courts adjust fee rates obtained in similar cases based on factors unique to the case at hand, such as the risk of nonpayment, the quality of lawyering, the

---

[23] *See also In re Wellbutrin XL Antitrust Litig.*, No. 08-cv-2431, ECF No. 485 (E.D. Pa. Nov. 7, 2012) (one-third of $37.5 million fund); *In re Nifedipine Antitrust Litig.*, No. 03-mc-223, ECF No. 333 (D.D.C. Jan. 31, 2011) (one-third of $35 million fund); *In re DDAVP Direct Purchaser Antitrust Litig.*, 2011 WL 12627961, at *4 (S.D.N.Y. Nov. 28, 2011) (one-third fee from $20.25 million settlement fund). *Broiler Chicken*, 2021 WL 5709250, at *5 (awarding attorneys' fees of $55 million, which was one-third of $169 million settlement fund (less expenses and incentive awards), in antitrust class action that was settled prior to class certification; *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-cv-340, ECF No. 543 (D. Del. Apr. 23, 2009) (one-third of $250 million settlement, settled after over three years of litigation at the commencement of trial); *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (one-third of $163.5 million settlement after three years of litigation, settled on the eve of trial); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *8 (E.D. Tenn. May 17, 2013) (one-third of $158.6 million settlement after five years of litigation, at the close of discovery, with class certification and summary judgment briefed); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 756 (E.D. Pa. 2013) (one-third of $150 million settlement after five years of litigation, following the close of discovery and decisions on class certification and summary judgment; *In re Relafen Antitrust Litig.*, No. 01-12239, ECF No. 297 (D. Mass. Apr. 9, 2004) (one-third of $175 million settlement after a year and a half of litigation, two weeks before trial, following rulings on class certification and summary judgment); *In re Buspirone Antitrust Litig.*, No. 01-cv-07951, ECF No. 22 (S.D.N.Y. Apr. 17, 2003) (one-third of $220 million settlement after two years of litigation, in the midst of fact discovery).

work required, and the stakes of the case. *Synthroid I*, 264 F.3d at 721. Settlement Class

Counsel's fee request of one-third is reasonable considering the risk of nonpayment, the quality

of lawyering required given the complexity of the case and sophistication of the Settling

Defendants and their counsel, the amount of work invested, and the high stakes involved. *See*,

*e.g.*, *In re Broiler Chicken Grower Antitrust Litig. (No. II)*, No. 20-md-2977, (E.D. Okla.), ECF

Nos. 284, 419, 566, 634 (antitrust class action settlements reached with five defendants in four

tranches of $35.75 million (for two defendants), $15.5 million, $17.75 million, and $100 million

(totaling $169 million) where court granted a one-third fee award for each tranche).

### 1.     Risk of Nonpayment

The substantial risk that Settlement Class Counsel assumed in prosecuting this case

further warrants a one-third fee from the Settlement Fund. *See Cap. One*, 80 F. Supp. 3d at 805

("The estimated magnitude of the risk necessarily affects the price at which Class Counsel in this

case would have been willing to offer their services in an *ex ante* negotiation, had such a

negotiation occurred." (citing *Synthroid I*, 264 F.3d at 721)). When Settlement Class Counsel

filed this case more than three years ago, as noted, no government agency had taken any action

to prosecute a similar case on behalf of this class. Settlement Class Counsel therefore did not

have the advantage of "piggy backing" on pre-existing litigation or the reassurance of liability

associated with a coinciding government indictment or guilty plea when they initiated the case

on contingency. *See Dairy Farmers*, 80 F. Supp. 3d at 848 ("One proxy for assessing risk is

whether the litigation followed on the heels of some prior criminal or civil proceeding involving

the same parties or subject matter. This inquiry provides insight into whether class counsel

benefitted from the work of others.").[24] Accordingly, Settlement Class Counsel's fee request of

---

[24] If Settlement Class Counsel had not secured the Settlements at issue (as well as the ten prior

one-third is consistent with the considerable risk assumed in the continued litigation of this action with no guarantee of further recoveries.[25]

### 2. The Quality of Performance

"Yet another litmus test for assessing reasonableness is quality of Class Counsel's performance in achieving the settlement—that is, whether this is the type of outcome that willing clients would have envisioned from the outset." *Dairy Farmers*, 80 F. Supp. 3d at 849. Settlement Class Counsel have decades of experience in antitrust litigation (as well as other complex commercial litigation) and have prosecuted numerous antitrust class actions as lead counsel or in other leadership positions, which lends the team efficiency and sophisticated litigation judgment. Apr. 2024 Joint Decl. ¶ 8. Indeed, one member of Settlement Class Counsel, while at the U.S. Department of Justice, spearheaded the successful prosecution of several universities alleged to have colluded regarding financial aid practices prior to the initiation of the 568 Presidents Group. *Id.*; *see Taubenfield*, 415 F.3d at 600 (affirming fee award based, in part, on "the quality of legal services rendered"); *Williams*, 658 F.3d at 636 (affirming award based, in part, on "the quality of representation").[26]

---

settlements), the Settlement Class would have had to wait years to receive any money from Defendants and may have received nothing at all. Moreover, "settlement in a complex antitrust case like this is far from a foregone conclusion," especially because of the many sophisticated and well-funded Defendants. *Broiler Chicken*, 2021 WL 5709250, at *3.

[25] *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citation omitted) (affirming above-average fee percentage because district court could have found that the "suit was unusually risky," and stating: "Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."); *Synthroid I*, 264 F.3d at 719 ("The greater the risk of loss, the greater the incentive compensation required."); *Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007) (holding that class counsel was undercompensated where "the district court failed to provide for the risk of loss").

[26] This case has been bitterly fought and aggressively litigated by both sides and continues to be litigated against the five non-settling Defendants. Settlement Class Counsel navigated this unusually complicated case from initial investigation through motion to dismiss briefing, through oral argument on those motions, through a herculean fact discovery effort (including over one million documents reviewed, numerous discovery motions, and over 90 fact depositions), through intensive expert discovery, through

**3.** **Settlement Class Counsel Devoted Extensive Time and Work to Successfully Prosecute This Action**

Settlement Class Counsel devoted more than three years and over 127,557.6 hours to the preparation and prosecution of this case, which involved complex and unique issues of fact and law. *See Synthroid I*, 264 F.3d at 721 ("The market rate for legal fees depends in part on . . . the amount of work necessary to resolve the litigation."). In zealously and effectively litigating from inception through the conclusion of fact and expert discovery and ultimately to the achievement of the first settlements with ten Defendants and now the two additional Fourth Tranche Settlements, from the outset, Settlement Class Counsel committed substantial time and money with no guarantee of recovery.[27]

Furthermore, the non-settling Defendants have vigorously opposed class certification and zealously challenged Plaintiffs' experts' analysis. *See* Mar. 2025 Joint Decl. ¶¶ 18-21. The time and labor involved in prosecuting this case, and the novelty and difficulty of the questions presented, further support Settlement Class Counsel's fee request.

The Seventh Circuit does not require a lodestar cross-check when using the percentage method. *See Williams*, 658 F.3d at 636 ("[C]onsideration of a lodestar check is not an issue of required methodology." (citing *Cook*, 142 F.3d at 1013 ("[W]e have never ordered the district

---

hotly contested proceedings on class certification and *Daubert* motions, and protracted settlement negotiations, with considerable skill and faithful adherence to the Settlement Class's best interests at every stage. *See generally* Apr. 2024 Joint Decl. ¶¶ 8-52; Mar. 2025 Joint Decl. ¶¶ 6, 9-24.

[27] Antitrust cases are some of the most complex, expensive, and time-consuming actions to prosecute. *See*, *e.g.*, *In re Motorsports Merch. Antitrust Litig.,* 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000) ("An antitrust class action is arguably the most complex action to prosecute."); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2015 WL 5918273, at *6 (E.D.N.Y. Oct. 9, 2015) (prosecuting an antitrust conspiracy required "complex expert analysis and review of mountains of documents"); *Flonase*, 951 F. Supp. 2d at 743 ("Antitrust class actions are particularly complex to litigate and therefore quite expensive."); *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *10 (E.D. Pa. June 2, 2004), *amended*, 2004 WL 1240775 (E.D. Pa. June 4, 2004) (explaining that "an antitrust class action is arguably the most complex action to prosecute," because the "legal and factual issues are always numerous and uncertain in outcome" (citations omitted)).

judge to ensure that the lodestar result mimics that of the percentage approach.")))[28] But if considered, the lodestar multiplier supports the appropriateness of the fee request.[29]

Settlement Class Counsel offer three separate analyses of their lodestar in connection with the requested fees. The lodestar multiplier under each is lower than the 1.35 the Court previously found acceptable as a lodestar cross-check. These analyses examine Settlement Class Counsel's lodestar over three time periods: (i) from inception of the litigation through November 30, 2024; (ii) from April 1, 2024 (*i.e.*, the day after the March 31, 2024 end date reported for the prior settlements) through November 30, 2024; and (iii) from July 20, 2024 (*i.e.*, the date of the Court's award of attorneys' fee and litigation expenses for the First Three Tranche Settlements, ECF No. 726 (July 20, 2024)), through November 30, 2024. *See* Mar. 2025 Joint Decl. ¶¶ 37-41.

For the period of inception of the litigation through November 30, 2024, Settlement Class Counsel's lodestar is $95,540,837.50. *Id.* Combining the prior fee award of $94.67 million with the sought fee here of $11.75 million would bring the total fee in the case to $106.42 million. Under this analysis, the multiplier would be just over 1.1 ($106,420,000 / $95,540,837.50 = 1.11). If the Court were to consider only the marginal additional lodestar since that which was reported to the Court in the prior fee petition, *i.e.*, for the period April 1, 2024 through November 30, 2024, Settlement Class Counsel's lodestar is $25,373,821.00, which amounts to multiplier of under 0.5 ($11.75 million / $25,373,821.00 = 0.46). *Id.* And if the Court were only to consider

---

[28] *Schulte*, 805 F. Supp. 2d at 598 (noting that "many courts in this circuit have criticized the use of a lodestar cross-check in common fund cases" when approving fee request with lodestar risk multiplier of 2.5); *Young*, 2017 WL 4164238, at *6 ("[O]ne-third of the common fund is a reasonable reflection of the hypothetical market price of Loevy's services in this case and thus an appropriate fee award. For this reason, there is no need to cross-check this percentage against the lodestar.").

[29] For the fee request for the first three settlement tranches, Plaintiffs reported $70,150,911.00 in lodestar at historical rates for the period from inception of the litigation through March 31, 2024. *See* Mem. of Law in Support of Mot. for Final Approval, ECF No. 703-1, at 12 (dated May 28, 2024); Apr. 2024 Joint Decl. ¶¶ 64-67. That lodestar represented a multiplier of 1.35, which the Court found confirmed the propriety of the request for a one-third fee award for the earlier settlement. Final Approval Order ¶ 27.

the lodestar accruing after the final approval hearing of the prior settlements, *i.e.*, for the period July 20, 2024 through November 30, 2024, Settlement Class Counsel's lodestar is $11,131,414.00, which would amount to a multiplier just above 1 ($11.75 million / $11,131,414.00 = 1.06). *Id.* All of these multipliers are well within the appropriate range approved by courts in this and other Circuits—especially in light of the excellent results for the Settlement Class here.[30]

### 4. The Stakes in the Case

The high stakes of this litigation likewise support the fee request. This case relates to a two-decade-long antitrust conspiracy in the private elite education market affecting more than 200,000 people.

## VI. CONCLUSION

Settlement Class Counsel respectfully request, for the reasons set forth above, that the Court enter an Order (1) approving service awards of $2,500 to each Class Representative, (2) awarding reimbursement of expenses in the amount of $2,441,739.12; and (3) awarding attorneys' fees of one-third of the settlement amount of $35.25 million, or $11,750,000 (and one-third of interest accrued).

---

[30] *See Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998) (holding a 1.5 lodestar multiplier is appropriate in awarding attorneys' fees in a class action settlement); *In re Advocate Aurora Health Pixel Litig.*, 740 F. Supp. 3d 736, 762 (E.D. Wis. 2024) ("Plaintiffs' lodestar calculation results in a multiplier of 1.6, which is well within the band of lodestar multipliers accepted within the Seventh Circuit."); *In re TikTok, Inc. Consumer Priv. Litig.*, 617 F.Supp.3d 904, 922 (N.D. Ill. 2022), *appeal dismissed sub nom. In re TikTok Inc., Consumer Priv. Litig.*, 2022 WL 19079999 (7th Cir. Oct. 12, 2022) ("In practice, most multipliers fall between one and four," and "for fund sizes over $44 million, the mean multiplier was 2.39.") (collecting cases); *In re NCAA Student-Athlete Concussion Inj. Litig.*, 332 F.R.D. 202, 225 (N.D. Ill. 2019), *aff'd sub nom. Walker v. NCAA*, 2019 WL 8058082 (7th Cir. Oct. 25, 2019) (approving a multiplier of 1.5 for a $70 million settlement); *Standard Iron Works v. ArcelorMittal*, 2014 WL 7781572, at *2-3 (N.D. Ill. Oct. 22, 2014) (approving a fee award of one-third of the settlement fund, equaling a total fee of $54,087,000, with a lodestar multiplier of approximately 1.97); *see also Newberg on Class Actions* § 14.6 (4th ed. 2009) ("[M]ultiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied.").

Dated: March 25, 2025

Respectfully Submitted,

/s/ Robert D. Gilbert
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
David S. Copeland
Natasha Zaslove
**GILBERT LITIGATORS &**
  **COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
dcopeland@gilbertlitigators.com
nzaslove@gilberlitigators.com

/s/ Eric L. Cramer
Eric L. Cramer
Ellen T. Noteware
David Langer
Jeremy Gradwohl
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
enoteware@bm.net
dlanger@bm.net
jgradwohl@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
110 N. Wacker Drive, Suite 2500
Chicago, IL 60606
Tel: 773-257-0255
rschwartz@bm.net

/s/ Edward J. Normand
Devin "Vel" Freedman
Edward Normand
Joseph Delich
Richard Cipolla
Peter Bach-y-Rita
**FREEDMAN NORMAND**
  **FRIEDLAND LLP**
99 Park Avenue, Suite 1910
New York, NY 10016
Tel: 646-350-0527
vel@fnf.law
tnormand@fnf.law
jdelich@fnf.law
rcipolla@fnf.law
pbachyrita@fnf.law

Ivy Ngo
**FREEDMAN NORMAND**
  **FRIEDLAND LLP**
1 SE 3d Avenue, Suite 1240
Miami, FL 33131
Tel: 786-924-2900
ingo@fnf.law

Daniel J. Walker
Robert E. Litan
Hope Brinn
**BERGER MONTAGUE PC**
1001 G Street, NW, Suite 400 East
Washington, DC 20001
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs*

26