**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated, | **Case No. 1:22-cv-00125** |
| Plaintiffs, | |
| v. | **Hon. Matthew F. Kennelly** |
| BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR FINAL APPROVAL OF SETTLEMENTS WITH DEFENDANTS CALIFORNIA INSTITUTE OF TECHNOLOGY AND THE JOHNS HOPKINS UNIVERSITY**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

I.     INTRODUCTION .................................................................................... 1

II.    BACKGROUND ...................................................................................... 5

    A.   Confidentiality and Sealing Issues........................................................ 5

    B.   Expert Discovery ................................................................................... 5

    C.   *Daubert* and Class Certification Briefing ................................................ 6

    D.   Negotiations and Settlements................................................................ 7

III.   THE PROPOSED SETTLEMENTS WARRANT FINAL APPROVAL ......................... 9

    A.   The Settlement Class Satisfies Rule 23(e)(1)(B) .................................... 9

    B.   The Settlement Class Was Given Adequate Notice ................................... 10

    C.   The Proposed Settlements Satisfy the Factors Stated in Rule 23(e)(2) ................... 12

        1.   Adequacy of Representation. ......................................................... 13

        2.   Arm's Length Negotiations............................................................. 13

        3.   Adequacy of Relief. ..................................................................... 14

    D.   The Settlements Satisfy the Seventh Circuit's Factors Under Rule 23(e)(2)............ 15

        1.   The Strength of Plaintiffs' Case Compared to the Terms of the Proposed Settlements........................................................................ 15

        2.   The Complexity, Length, and Expense of Continued Litigation. ................ 18

        3.   The Amount of Opposition to the Settlement and Reaction of ....................... Class Members to the Settlements. ................................................. 19

        4.   The Opinion of Competent Counsel. ............................................... 20

        5.   The Stage of the Proceedings and the Discovery Completed. ..................... 21

    E.   The Plan of Allocation Is Also Fair, Reasonable, and Adequate .............................. 22

IV.   DEFENDANTS HAVE PROVIDED THE REQUISITE NOTICE UNDER THE CLASS ACTION FAIRNESS ACT.................................................................... 25

V.    CONCLUSION...................................................................................... 25

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  2012 WL 651727 (N.D. Ill. Feb. 28 2012) ........................................................... 12, 19

*Armstrong v. Bd. of Sch. Dirs.*,
  616 F.2d 305 (7th Cir. 1980) ................................................................................. 21

*Cavazos v. Salas Concrete Inc.*,
  2022 WL 11198367 (E.D. Cal. Apr. 22, 2022)....................................................... 25

*Charvat v. Valente*,
  2019 WL 5576932 (N.D. Ill. Oct. 28, 2019)........................................................... 12, 19

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) ................................................................................. 15, 20

*Glaberson v. Comcast Corp.*,
  2015 WL 5582251 (E.D. Pa. Sept. 22, 2015) ....................................................... 18

*Hispanics United of DuPage Cnty. v. Village of Addison, Ill.*,
  988 F. Supp. 1130 (N.D. Ill. 1997) ....................................................................... 20

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ..................................................... 17, 19

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010)............................................................................. 21

*In re Auto. Refinishing Paint Antitrust Litig.*,
  2004 WL 1068807 (E.D. Pa. May 11, 2004).......................................................... 17

*In re Auto. Refinishing Paint Antitrust Litig.*,
  2003 WL 23316645 (E.D. Pa. Sept. 5, 2003)........................................................ 17

*In re Blue Cross Blue Shield Antitrust Litig.*,
  2022 WL 4587618 (N.D. Ala. Aug. 9, 2022) ........................................................ 3

*In re Broiler Chicken Antitrust Litig.*,
  2021 WL 5709250 (N.D. Ill. Dec. 1, 2021)............................................................ 18

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ...................................................................... 21

*In re Domestic Airline Travel Antitrust Litig.*,
  378 F. Supp. 3d 10 (D.D.C. 2019) ..................................... 18

*In re High-Tech Emp. Antitrust Litig.*,
  2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ........................... 3

*In re Lithium Ion Batteries Antitrust Litig.*,
  2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) ...................... 18, 19

*In re Remicade Antitrust Litig.*,
  2023 WL 2530418 (E.D. Pa. Mar. 15, 2023).......................... 18

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
  2024 WL 815503 (E.D. Pa. Feb. 27, 2024) ........................ 3, 17

*In re TikTok, Inc., Consumer Priv. Litig.*,
  617 F. Supp. 3d 904 (N.D. Ill. 2022) ............................... 2, 9

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) .................................... 11, 15

*Kaufman v. Am. Express Travel Related Servs. Co.*,
  877 F.3d 276 (7th Cir. 2017) ...................................... 16

*Kleen Prods. LLC v. Int'l Paper Co.*,
  2017 WL 5247928 (N.D. Ill. Oct. 17, 2017).......................... 18

*Lechuga v. Elite Eng'g, Inc.*,
  559 F. Supp. 3d 736 (N.D. Ill. 2021) ............................... 12

*Lucas v. Vee Pak, Inc.*,
  2017 WL 6733688 (N.D. Ill. Dec. 20, 2017)................... 15, 18, 20, 22

*Meijer, Inc. v. 3M*,
  2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) ....................... 3, 17

*Molinari v. Fin. Asset Mgmt. Sys., Inc.*,
  2021 WL 5832788 (N.D. Ill. Nov. 22, 2021) ......................... 12

*Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*,
  2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013)....................... 17, 19

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................... 21

*Snyder v. Ocwen Loan Servicing, LLC*,
  2019 WL 2103379 (N.D. Ill. May 14, 2019) ...................... 12, 15

*Summers v. UAL Corp. ESOP Comm.*,
    2005 WL 3159450 (N.D. Ill. Nov. 22, 2005) .......................................................... 13

*T.K. v. Bytedance Tech. Co.*,
    2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ................................................... passim

*Tawfilis v. Allergan*,
    2018 WL 4849716 (C.D. Cal. Aug. 27, 2018) .................................................. 3, 17

*TikTok, Inc. Consumer Privacy Litig.*,
    565 F. Supp. 3d 1076 (N.D. Ill. 2021) ........................................................... 16, 20

*Uhl v. Thoroughbred Tech. & Telecomm., Inc.*,
    309 F.3d 978 (7th Cir. 2002) ............................................................................. 20

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ......................................................................... 4, 15

<u>Statutes</u>

28 U.S.C. § 1715 .......................................................................................................... 25

<u>Rules</u>

Fed. R. Civ. P. 23(a) ..................................................................................................... 9
Fed. R. Civ. P. 23(b)(3) ............................................................................................... 10
Fed. R. Civ. P. 23(e) ........................................................................................... 9, 12, 20
Fed. R. Civ. P. 23(e)(1) ................................................................................................ 10
Fed. R. Civ. P. 23(e)(1)(B) ............................................................................................ 9
Fed. R. Civ. P. 23(e)(2) ................................................................................. 4, 11, 12, 15
Fed. R. Civ. P. 23(e)(2)(A) ........................................................................................... 21
Fed. R. Civ. P. 23(e)(2)(B) ........................................................................................... 13
Fed. R. Civ. P. 23(e)(2)(C) ........................................................................................... 15
Fed. R. Civ. P. 23(e)(2)(C)(ii) ...................................................................................... 22

<u>Other</u>

Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 12.35 (4th ed. 2002) .................. 14

Plaintiffs and the proposed Settlement Class, through their undersigned counsel ("Settlement Class Counsel"), respectfully submit this Memorandum of Law in Support of Their Motion for Final Approval of Settlements with Defendants California Institute of Technology ("Caltech") and the Johns Hopkins University ("Johns Hopkins").

## I.     INTRODUCTION

Settlement Class Counsel have reached and finalized settlements with Defendants Caltech and Johns Hopkins (collectively, the "Settling Defendants") under which Settling Defendants have collectively agreed to provide $32,250,000 in aggregate cash payments for the benefit of the Settlement Class (the "Settlement Fund").[1] *See* Preliminary Approval Order of Caltech and Johns Hopkins Settlements (ECF No. 782). Pursuant to these Settlements (the "Proposed Settlements," the "Fourth Tranche Settlements," or the "Settlements," as set forth in the "Fourth Tranche Settlement Agreements"),[2] Caltech has agreed to pay $16,750,000 in cash and Johns Hopkins has agreed to pay $18,500,000 in cash. These two additional settlements, together with the ten prior settlements ($284 million), would bring the total settlements in the case to date (with twelve of the seventeen Defendants) to $319,250,000 in aggregate payments.

The Fourth Tranche Settlements are an excellent result both in absolute terms and when considered in the aggregate with the prior ten settlements. There are several factors that highlight the value of the Settlements to the Settlement Class. *First*, this case has garnered significant national attention (especially following the prior settlements), yet from a potential class of approximately 200,000 students, of which more than 75,000 submitted timely claims in

---

[1] Johns Hopkins also agreed to provide certain additional discovery that could not be obtained during the fact discovery period. *See* Johns Hopkins Settlement, ECF No. 776-4 ¶ 20.

[2] The Fourth Tranche Settlement Agreements are attached as Exhibits A & B to the January 17, 2025 Joint Declaration in Support of Plaintiffs' Motion for the Preliminary Approval of the Settlements with Caltech and Johns Hopkins (ECF Nos. 776-3 & 776-4) (Jan. 17, 2025).

connection with the earlier settlements (which is an astonishing participation rate of approximately 38 percent that is nearly *four times* the typical rate),[3] there are **no** objections to the Proposed Settlements and only six opt-outs.[4] *See* April 22, 2025 Declaration of Steven Weisbrot, Esq. of Angeion Group LLC ¶¶ 44-45 ("Apr. 24, 2025 Weisbrot Decl."). These statistics demonstrate that the Settlement Class overwhelmingly favors the Settlements. *See*, *e.g.*, *In re TikTok, Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 937 (N.D. Ill. 2022) (finding dearth of objections in a well-publicized case shows support for settlement (and citing cases)).

*Second*, while the Fourth Tranche Settlements are smaller than most of the prior ten settlements (which ranged in amount from $13.5 million to $55 million per Settling Defendant, with an average settlement value of $28.4 million), they reflect distinct differences pertaining to Johns Hopkins and Caltech. *See* Mar. 25, 2025 Joint Decl. ¶ 26.[5] Caltech is by far the smallest of all seventeen Defendants, and both Johns Hopkins and Caltech had the shortest tenures, by far, in the 568 Group of any of the Defendants. *See id.*

*Third*, if approved, the Settlements would assure the Settlement Class of an additional significant cash recovery without materially diminishing the joint and several liability of the five

---

[3] *See* ECF No. 830, at 7 & n.10 (Mar. 25, 2025) (Settlement Class Counsel's Memorandum of Law in Support of the Motion for Service Awards, Litigation Expenses, and Attorneys' Fees).

[4] Earlier, one individual objected to an aspect of the proposed allocation plan (the "Plan") (the Plan is discussed in more detail at Part III.E, *infra*), which objection the Court overruled. *See* Order Granting Final Judgment and Order of Dismissal, Approving Settlements with Defendants Brown University, University of Chicago, The Trustees of Columbia University in the City of New York, Trustees of Dartmouth College, Duke University, Emory University, Northwestern University, William Marsh Rice University, Vanderbilt University, and Yale University ("Final Approval Order of First Set of Settlements"), ECF No. 726, ¶ 10.

[5] The term "Mar. 25, 2025 Joint Decl." refers to the Joint Declaration of Edward J. Normand, Robert D. Gilbert, and Eric L. Cramer in Support of Settlement Class Counsel's Motion for Service Awards for the Class Representatives, Reimbursement of Expenses, and Attorneys' Fees Relating to the Fourth Tranche Settlements with Defendants Johns Hopkins University and California Institute of Technology. ECF No. 830-1 (Mar. 25, 2025).

remaining non-settling Defendants.[6] Plaintiffs' economic expert computed damages (before trebling) to the proposed litigation class amounting to $685 million. *See* Pls. Mot. for Class Cert. (ECF No. 757) at 3. Altogether, the twelve settlements represent a recovery of approximately 47% of single damages (as computed by Plaintiffs' expert economist, Dr. Hal Singer), of which, the Fourth Tranche Settlements alone account for over 5% of damages.[7] *See* Mar. 25, 2025 Joint Decl. ¶ 26. If Settlement Class Counsel had not secured these additional Settlements in this complex matter, the Settlement Class risked further delay and potential loss (in whole or part) at trial or on appeal for the important and meaningful additional recoveries provided by the Settlements.

As the Court has observed in this case, antitrust litigation is complex and requires economic and industry experts in proving liability and damages and demonstrating that class certification for litigation purposes is appropriate. *See*, *e.g.*, Feb. 8, 2023, Hrg. Tr. 20:19-21:2; Nov. 28, 2023, Hrg. Tr. 11:15-18, 20:11-17. This lawsuit has been especially complex and hard-fought, given such factors as (a) the sheer number of Defendants, (b) that a cadre of the best law firms in the country represent them, (c) a proposed Class Period of almost twenty years and a proposed Class of approximately 200,000 individuals, (d) that discovery has involved a

---

[6] The five non-settling Defendants are Cornell University ("Cornell"), Georgetown University ("Georgetown"), Massachusetts Institute of Technology ("MIT"), University of Notre Dame du Lac ("Notre Dame"), and The Trustees of the University of Pennsylvania ("Penn").

[7] Courts routinely approve antitrust class action settlements resolving entire cases for a much lower recovery share. *See, e.g., In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2024 WL 815503, at \*9 (E.D. Pa. Feb. 27, 2024) (approving antitrust settlement for 12% to 14% of estimated single damages that resolved the entire case); *In re Blue Cross Blue Shield Antitrust Litig.*, 2022 WL 4587618, at \*2, \*20 (N.D. Ala. Aug. 9, 2022) (approving antitrust settlement for 7.3% to 14.3% of estimated single damages that resolved entire case); *Tawfilis v. Allergan*, 2018 WL 4849716, at \*4 (C.D. Cal. Aug. 27, 2018) (approving antitrust settlement for approximately 8.36% of overcharge damages that resolved entire case); *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at \*2-4 (N.D. Cal. Sept. 2, 2015) (approving antitrust class action settlement representing 14% of single damages that resolved entire case); *Meijer, Inc. v. 3M*, 2006 WL 2382718, at \*16 (E.D. Pa. Aug. 14, 2006) (approving antitrust settlement for approximately 2% of single damages that resolved entire case).

voluminous amount of complicated structured data, and (e) that multiple third parties possessed relevant information. In addition, as Settlement Class Counsel have previously explained to the Court, *see* ECF Nos. 679, 830, they have had to grapple with numerous factual and legal obstacles, including contending with Defendants who claim unique defenses; dealing with FERPA-related issues for objecting students; deconstructing the complex web of higher education and its multiple organizations; and developing a common methodology for proving both classwide injury and damages. Throughout the litigation, Defendants have presented sophisticated defenses to all of Plaintiffs' claims, and the parties have engaged in significant motion practice and exhaustive fact and expert discovery.[8]

Accordingly, for themselves and the Settlement Class, Plaintiffs respectfully request that the Court enter the accompanying proposed order: (a) granting final approval to the Johns Hopkins Settlement and the Caltech Settlement pursuant to Rule 23(e); (b) finding that the Settlement Class meets the standards of Rule 23(e)(1) and the Settlements are fair, adequate, and reasonable under both the stated factors of Federal Rule of Civil Procedure 23(e)(2) and the factors the Seventh Circuit has set forth, as in *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); (c) approving Plaintiffs' Fourth Tranche Allocation Plan (*see* ECF No. 776-5), which provides a fair and reasonable method of determining each claimant's *pro rata* share of the Net Settlement Fund; and (d) entering a Final Judgment and Order terminating the litigation between Plaintiffs and the Settling Defendants.

---

[8] Plaintiffs and the five non-settling Defendants have completed expert discovery, fully briefed class certification and *Daubert* motions, and prepared for and participated in a *Daubert* hearing relating to Dr. Singer's analyses.

## II.    BACKGROUND

Settlement Class Counsel have set out much of the following background, relevant to the instant motion, in their pending Motion for Service Awards, Reimbursement of Expenses, and Attorneys' Fees (ECF No. 830), the corresponding Mar. 25, 2025 Joint Declaration (ECF No. 830-1), and their Memorandum of Law in Support of Their Motion for Final Approval of the Settlements with Brown University, University of Chicago, The Trustees of Columbia University in the City of New York, Trustees of Dartmouth College, Duke University, Emory University, Northwestern University, Vanderbilt University, William Marsh Rice University, and Yale University (ECF No. 703-1), and incorporate these documents by reference.

Since the time of final approval of the prior settlements (*see* ECF No. 703-1 at 3-6), Settlement Class Counsel have continued vigorously litigating the case against the remaining seven Defendants (including Caltech and Johns Hopkins).

### A.    Confidentiality and Sealing Issues

During the spring and summer of 2024, there were numerous disputes concerning Defendants' excessive designation of documents and testimony as Confidential or Attorneys' Eyes Only. *See* Mar. 25, 2025 Joint Decl. ¶ 10. Settlement Class Counsel litigated disputes with Defendants over these designations, which involved numerous submissions to the court, oral arguments, and joint status conferences. *Id.* Further, at the Court's direction, Settlement Class Counsel negotiated with Defendants and ultimately resolved the dispute through the Agreed Order Governing Disclosure in Merits-Related Motion Practice of Material Designated Under the Second Amended Confidentiality Order as Confidential or AEO (ECF No. 736). *Id.*

### B.    Expert Discovery

Throughout the period of expert discovery in this case, Settlement Class Counsel oversaw extensive offensive and defensive expert discovery. Considering the complexity and

importance of expert issues in this case, including the calculation of damages, Settlement Class Counsel retained consulting and testifying experts and spent hundreds of hours working with these experts to prepare four opening reports. Mar. 25, 2025 Joint Decl. ¶¶ 11-13. Settlement Class Counsel expended significant time working with their experts and consultants to serve rebuttal reports responding to the seven expert reports, which totaled 1,213 pages including appendices. *Id*. ¶ 15. Settlement Class Counsel also expended significant time preparing and taking the depositions of six of Defendants' experts and defended the depositions of the four Plaintiffs' experts. *Id.* ¶¶ 14-17.

Throughout expert discovery, Settlement Class Counsel spent significant time facilitating the work of their experts and investigators to address the key issues, including the impact of the challenged conduct on the proposed class, aggregate class damages, and anticompetitive effects. *See id.* ¶¶ 11-13. Settlement Class Counsel and their retained experts have collectively spent hundreds of hours collecting and synthesizing relevant data; frequently met with their experts to discuss their opinions and reports; and repeatedly undertaken to ensure the experts had the necessary information to evaluate, among other issues, the alleged impact and damages of the challenged conduct, and the intersection of private funding for financial aid in elite higher education. *See id*.

### C.   *Daubert* **and Class Certification Briefing**

Following the close of expert discovery on November 12, 2024, *see* ECF No. 656, Settlement Class Counsel prepared a class certification motion, *see* ECF No. 752. Settlement Class Counsel then drafted a class reply brief. *See* ECF No. 807. On the same day that Plaintiffs filed for class certification, Defendants filed motions to exclude every word of the analyses and opinions of Plaintiffs' experts Dr. Singer, Dr. Bulman, and Ms. Mora. *See* ECF No. 754. Plaintiffs opposed Defendants' *Daubert* motions. *See* ECF No. 785. Plaintiffs also filed motions

to exclude portions of the testimony of two of Defendants' experts (Dr. Bridge Terry Long, ECF No. 750, and Mr. Peter Ammon, ECF No. 751).

The Court called the Parties to a *Daubert* hearing on the matter of Defendants' Motion to Exclude the Opinions of Dr. Singer. *See* ECF No. 839. Settlement Class Counsel prepared extensively for the hearing and provided opening arguments, direct examination of Dr. Singer, cross-examination of Defendants' expert Dr. Nicholas Hill, and closing arguments. The motion remains under consideration.

### D. <u>Negotiations and Settlements</u>

Settlement Class Counsel engaged in extensive arm's length settlement negotiations with the Settling Defendants over the course of several months—mediated by one of the most respected ADR firms in the country, Phillips ADR. *Id.* ¶ 25. The Settling Defendants have agreed to provide $32,250,000 in aggregate cash payments for the benefit of the Settlement Class. Settlement Class Counsel executed a settlement agreement with Johns Hopkins on August 6, 2024 (the "Johns Hopkins Settlement"). Ex. B to Jan. 17, 2025 Joint Decl. (ECF No. 776-4). The Johns Hopkins Settlement provides for cash payments totaling $18,500,000 to the proposed Settlement Class. Mar. 25, 2025 Joint Decl. ¶ 3. Settlement Class Counsel executed a settlement agreement with Caltech on November 1, 2024 (the "Caltech Settlement"). Ex. A to Jan. 17, 2025 Joint Decl., ECF 776-3. The Caltech Settlement provides for cash payments of $16,750,000. Mar. 25, 2025 Joint Decl. ¶ 3. The Court preliminarily approved the Johns Hopkins Settlement and the Caltech Settlement on January 24, 2025. Preliminary Approval Order (ECF No. 782).

The Johns Hopkins Settlement and the Caltech Settlement come after Settlement Class Counsel negotiated and executed separate settlement agreements with ten additional defendants, namely Brown University, University of Chicago, The Trustees of Columbia University in the City of New York, Trustees of Dartmouth College, Duke University, Emory University,

Northwestern University, William Marsh Rice University, Vanderbilt University, and Yale University. *See* ECF No. 726. Collectively, these prior ten settlements provided $284 million in cash for the benefit of the Settlement Class. Mar. 25, 2025 Joint Decl. ¶ 4. Following preliminary approval of these ten settlements, and notice to the Settlement Class, the Court granted final approval for these settlements on July 20, 2024. ECF No. 726.

The Johns Hopkins Settlement and the Caltech Settlement were the result of Settlement Class Counsel's significant and protracted work over a three-year period, which work included researching and initiating the action; prosecuting the case; negotiating the terms of the settlements with each Defendant; preparing the Settlement Agreements; developing a consolidated notice plan; finding and working with an escrow agent and settlement claims administrator; working with their experts on a plan of allocation of the net Settlement Funds to the Settlement Class; and preparing and filing motions for preliminary approval and supporting papers. *See generally* Mar. 25, 2025 Joint Decl. ¶¶ 6, 9-24. In connection with the Settlements, the parties negotiated with the able assistance of former U.S. District Court Judge Layn Phillips and, in particular, his colleagues Miles Ruthberg and Clay Cogman at Phillips ADR. Mar. 25, 2025 Joint Decl. ¶ 25.

The Fourth Tranche Settlements are substantively similar to the prior ten settlements this Court approved insofar as each: (i) provides cash payments for the benefit of the Settlement Class; (ii) provides benefits for the same certified Settlement Class; (iii) includes materially similar releases; (iv) proposes the same notice and claims administrator and a similar notice plan; and (v) proposes the same Class Representatives and Settlement Class Counsel, among other similar provisions.

8

The principal differences for these two settlements as compared to the prior ten are that: (1) the proposed Fourth Tranche Allocation Plan has been tweaked so as to account better for the added delay in recovery for the members of the Settlement Class in the earlier portion of the Class Period; (2) the proposed Fourth Tranche Notice Plan involves a second round of notice and claims distribution process separate from the consolidated notice plan from the first three tranches of settlements; and (3) the Fourth Tranche Settlements add certain clarifying language with respect to alumni of Defendant Universities who became U.S. citizens or permanent residents after they stopped attending a Defendant University (the class definitions are otherwise identical to that of the prior tranches). Other than with respect to the above, and the different dollar amounts, the Fourth Tranche Settlements and accompanying papers are substantively the same as with the prior Tranches.

## III.     THE PROPOSED SETTLEMENTS WARRANT FINAL APPROVAL

The "court may approve a class action settlement if: (1) it is able to certify the settlement class; (2) the class was provided adequate notice and a public hearing; and (3) it determines that the settlement is 'fair, reasonable, and adequate.'" *In re TikTok, Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d at 921 (quoting Fed. R. Civ. P. 23(e)).

### A.     The Settlement Class Satisfies Rule 23(e)(1)(B)

The Settlement Class satisfies Rule 23(e)(1)(B) because, as to the requirements of Rule 23(a) for settlement purposes only, consistent with the Court's analysis in granting certification of the previously certified Settlement Class, set forth in the Court's orders on July 20, 2024, ECF No. 726 ¶ 3(a)-(b), and in granting preliminary approval to the Proposed Settlements, ECF No. 782 ¶ 3(a)-(b), the following is true:

9

- The Settlement Class exceeds 200,000 individuals, and joinder of all of them would be impracticable. The discovery that Settlement Class Counsel have taken, and their work with their experts, has confirmed this fact.

- Class Representatives' claims are typical of the claims of the Settlement Class they seek to represent for purposes of settlement. The bases for the Class Representatives' claims for damages are no different than those of the absent Settlement Class members.

- Class Representatives are adequate representatives of the Settlement Class, as shown by their diligence in connection with their fact deposition and their patience with respect to Defendants' decision to depose their parents in several instances.

*See* ECF Nos. 439, 614, 638, 726, 782. With respect to Rule 23(b)(3), in turn, questions of law and fact common to the Settlement Class predominate over any questions affecting any individual Settlement Class Member; and a class action on behalf of the Settlement Class is superior to other available means of settling and disposing of this dispute. *See* ECF Nos. 439, 614, 638, 726, 782.

Further, the Settlement Class here is the same as the one the Court certified for settlement purposes in connection with final approval of the prior settlements. *See* ECF No. 726 ¶ 3.

**B.     The Settlement Class Was Given Adequate Notice**

Settlement Class Counsel, through the proposed claims administrator, Angeion Group LLC ("Angeion"), have followed the "Notice Plan" the Court set out. *See* Preliminary Approval Order (ECF No. 782) ¶ 15; *See* April 24, 2025 Weisbrot Decl. ¶¶ 4-31. The Court concluded that these means of notice were the best notice practicable; were reasonably calculated to apprise members of the Settlement Class of the pendency and status of this action and of their right to participate in, object to, or exclude themselves from the Proposed Settlements; were reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice of the

Fairness Hearing; and fully satisfies Fed. R. Civ. P. 23(e)(1), constitutes due process, and is a reasonable manner of distributing notice. *See* Preliminary Approval Order (ECF No. 782) ¶ 15

Under the Court-approved Notice Plan, on February 21, 2025, Angeion sent 416,930 email notices, with the number of undeliverable emails at 15,834, for an excellent deliverability rate of approximately 96.2%. April 24, 2025 Weisbrot Decl. ¶ 16. Angeion has sent 64,707 long-form notices by U.S. mail to those without valid or available email addresses, with 3,544 returned as undeliverable. *Id*. ¶¶ 17-18, 21. In addition, on February 21, 2025, Angeion caused the first press release to be issued via PR Newswire. *Id*. ¶ 22. The press release was picked up by a total of 627 media outlets, which have a combined potential audience size of approximately 167.4 million. *Id*. The state-of-the-art comprehensive media campaign consisting of social media advertising via Facebook and Instagram, programmatic display advertising ("internet banner ads"), and a paid search campaign via Google, was designed to deliver an approximate 75.31% reach with an average frequency of 3.22 times each—that is, the campaign was designed so 75.31% of the potential Settlement Class members would have a digital advertisement concerning the settlement displayed to them an average of 3.22 times each. This is separate and apart from the direct email and mail notice, press release, website, and toll-free hotline. *Id*. ¶¶ 23-24. The campaign exceeded expectations, by serving over 35 million impressions, resulting in an approximate 86.61% reach with an average frequency of 4.17 times each. *Id*. ¶ 32.[9]

In line with the Court's preliminary approval of the Proposed Settlements, these notices, press release, and media campaign all detailed the terms of the Settlements; the procedures and deadline for objecting to or opting out of the Settlements, which alluded to Class Counsel's

---

[9] The Federal Judicial Center states that a publication notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm." B. Rothstein & T. Willging, Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide or Judges* 27 (3d ed. 2010).

prospective fee submission; and the date and time of the Court's final fairness hearing. The deadline for Class members to send postmarked objections or opt-outs of the Settlements was April 9, 2025. As of April 24, 2025, no objections have been filed and only six (6) individuals opted out of the Settlements. Apr. 24, 2025 Weisbrot Decl. ¶ 44.

### C.    The Proposed Settlements Satisfy the Factors Stated in Rule 23(e)(2)

This has long been the backdrop to Federal Rule of Civil Procedure 23(e)(2): "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *accord Molinari v. Fin. Asset Mgmt. Sys., Inc.*, 2021 WL 5832788, at *6 (N.D. Ill. Nov. 22, 2021). Settlement "minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Lechuga v. Elite Eng'g, Inc.*, 559 F. Supp. 3d 736, 744 (N.D. Ill. 2021) (internal citations omitted). Plaintiffs first address below the settlement factors stated in Federal Rule of Civil Procedure 23(e)(2) and then address the distinct factors the Seventh Circuit has applied under Rule 23(e)(2).[10]

A class action settlement may be finally approved under Federal Rule of Civil Procedure 23(e) if it is "fair, reasonable and adequate" after analysis of the factors outlined in Rule 23(e)(2). *See, e.g.*, *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *1 (N.D. Ill. Feb. 28 2012). In applying Rule 23(e)(2), a court must consider whether and to what extent (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); *see, e.g.*, *T.K. v. Bytedance Tech. Co.*, 2022 WL 888943, at *11-16 (N.D. Ill. Mar. 25, 2022); *Snyder v. Ocwen*

---

[10] One court has concluded, in reference to the factors stated in Rule 23(e)(2), that "the factors articulated by the Seventh Circuit subsume most of these factors." *Charvat v. Valente*, 2019 WL 5576932, at *6 (N.D. Ill. Oct. 28, 2019). Considering some of these differences between the two sets of factors, however, and for completeness, Plaintiffs analyze each of the factors separately.

*Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019). The facts here satisfy all four prerequisites for fairness under Rule 23(e)(2).

### 1. Adequacy of Representation.

The principal question is "the actual performance of counsel acting on behalf of the class," which relates to whether class counsel "has extensive experience with class action litigation." *Bytedance*, 2022 WL 888943, at *11. (This factor also overlaps with certain of the Seventh Circuit factors, and to that extent, Plaintiffs address the relevant facts further below.)

Settlement Class Counsel and the Class Representatives have zealously represented the Class. Settlement Class Counsel have aggressively litigated this case—which has been hotly contested—for years. In particular, through November 30, 2024, Settlement Class Counsel had expended 127,949.4 hours of professional time, amounting to a collective lodestar of $95,445,459 based on historical market rates.[11] The Class Representatives made meaningful contributions to the litigation and assumed significant risk. *See* Mar. 25, 2025 Joint Decl. ¶ 34; Apr. 29, 2024 Joint Decl. ¶ 61. Settlement Class Counsel consistently brought to bear decades of experience in complex commercial litigation in general, and in class action and antitrust litigation in particular. *See* Mar. 25, 2025 Joint Decl. ¶ 33; Apr. 29, 2024 Joint Decl. ¶ 60.

### 2. Arm's Length Negotiations.

The Settlements were the end-product of arm's-length negotiations between the parties over which, in large part, nationally prominent and experienced mediators presided. "The best evidence of a 'truly adversarial bargaining process' is the 'presence of a neutral third-party

---

[11] For the fee request associated with the first three settlement tranches, Plaintiffs reported a total of 91,313.4 hours, for a lodestar of $70,150,911 based on historical rates, for the period from inception of the litigation through March 31, 2024. *See* Mem. of Law in Support of Mot. for Final Approval, ECF No. 703-1, at 12 (dated May 28, 2024); Apr. 29, 2024 Joint Decl. ¶ 67. Settlement Class Counsel expended 36,619.9 hours and accrued $25,277,831.50 in lodestar in the period of time since Settlement Class Counsel filed its prior fee petition, *i.e.*, from April 1, 2024 through November 30, 2024. *See* Mar. 25, 2025 Joint Decl. ¶ 43.

13

mediator.'" *Bytedance*, 2022 WL 888943, at *11; *see also* Fed. R. Civ. P. 23(e)(2)(B) advisory

committee's notes to 2018 amendment (noting that "the involvement of a neutral or court-

affiliated mediator or facilitator" is a relevant factor in protecting "class interests"). Equitable

Treatment of Class Members Relative to Each Other.

"Generally, a settlement that provides for pro rata shares to each class member will meet

this standard." *Bytedance*, 2022 WL 888943, at *15. This has long been true. *See*, *e.g.*, *Summers*

*v. UAL Corp. ESOP Comm.*, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) ("Given that the

settlement funds in the instant action will be disbursed on a pro rata basis to all class members,

we find that the allocation plan is reasonable."); *see also* Alba Conte & Herbert Newberg,

*Newberg on Class Actions* § 12.35, at 350 (4th ed. 2002) (noting that pro rata allocation of a

settlement fund "is the most common type of apportionment of lump sum settlement proceeds

for a class of purchasers" and "has been accepted and used in allocating and distributing

settlement proceeds in many antitrust class actions").

In this case, the Proposed Settlements treat Class members equitably relative to each

other, as under the proposed plan of allocation—which Plaintiffs discuss further below—each

Claimant receives her proportionate share of the recovery. Service awards to the proposed Class

Representatives, which Settlement Class Counsel have requested, will generally not "raise a red

flag" because such members "do more work and take more risks than the average class

member." *Bytedance*, 2022 WL 888943, at *15 (quotations omitted).

### 3. Adequacy of Relief.

This factor substantially overlaps with the Seventh Circuit factor, discussed further

below, concerning the strength of plaintiffs' case compared to the terms of the settlement.

*Bytedance*, 2022 WL 888943, at *11-12. This factor also concerns the effectiveness of the

proposed method of distributing the settlement funds, *id*. at *14, which Plaintiffs address below

in discussing the plan of allocation, and the proposed attorneys' fee award, *id*. at \*15, which Settlement Class Counsel have separately briefed, *see* ECF 830. In that regard, what "weighs in favor of finding the relief . . . adequate" is that "the approval of attorneys' fees remains entirely separate from approval of the Settlement." *Bytedance*, 2022 WL 888943, at \*15. That is, any order relating to the amount of any award of attorneys' fees or reimbursed expenses will not operate to modify, terminate, or cancel the Proposed Settlements. In addition, on an issue that also overlaps with the Seventh Circuit factors and that Plaintiffs thus address further below, not a single Settlement Class Member has objected to the Settlements.

### D. The Settlements Satisfy the Seventh Circuit's Factors Under Rule 23(e)(2)

The Seventh Circuit has set forth several factors—some of which overlap with the factors above—for assessing whether a class settlement is fair, reasonable, and adequate: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong*, 773 F.3d at 863; *accord Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982).[12] Settlement Class Counsel shows below that the facts satisfy each of these factors as well.

#### 1. The Strength of Plaintiffs' Case Compared to the Terms of the Proposed Settlements.

This factor is the "most important consideration" bearing on the fairness, reasonableness, and adequacy of a class settlement. *Isby*, 75 F.3d at 1199; *accord Snyder*, 2019 WL 2103379, at

---

[12] As one court has observed, for example, "the post-2018 four-prong test for the adequacy of relief, Fed. R. Civ. P. 23(e)(2)(C), captures the 'strength of the case' and the 'complexity, length, and expense of further litigation' factors already considered by the Seventh Circuit.'" *Bytedance*, 2022 WL 888943, at \*10 n.9. As noted above, however, for completeness, Plaintiffs separately address these factors further below.

*6 (citing *Wong*, 773 F.3d at 864). When there are no "suspicious circumstances" surrounding a settlement reached through arms' length negotiations by experienced counsel after the parties have sufficiently explored the merits of the case, a court may approve a settlement without quantifying the value of continued litigation. *Wong*, 773 F.3d at 864. That is, while district courts often assess "the net expected value of continued litigation" by quantifying the range of possible outcomes as part of this analysis, *Lucas v. Vee Pak, Inc.*, 2017 WL 6733688, at *8 (N.D. Ill. Dec. 20, 2017), the Seventh Circuit has held that courts need not engage in such quantification "where there are other reliable indicators that the settlement reasonably reflects the merits of the case." *TikTok, Inc. Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1087 (N.D. Ill. 2021) (quoting *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 285 (7th Cir. 2017)).

Such reliable indicators are present where, as here*,* the Proposed Settlements were reached through arms' length negotiations by highly experienced counsel based on substantial discovery for analyzing the strengths and weaknesses of the case. In *TikTok*, for example, because such factors were present, the court concluded that it "need not undertake [a] mechanical mathematic valuation," and instead recognized that the proposed settlement ensured meaningful value to the class members as compared to the risks of seeking a better outcome at trial. 565 F. Supp. 3d at 1088. In addition, given that five non-settling Defendants remain in the case—and remain jointly and severally liable for treble damages—the Proposed Settlements have reduced the value of continued litigation only by the amount of the Settlements.

The amounts of the Proposed Settlements, in turn, are excellent by any reasonable measure. While the Proposed Settlements are relatively smaller than most of the prior ten settlements (which ranged from $13.5 million to $55 million, with a median settlement value of $24 million), there were significant material differences between Johns Hopkins and Caltech, on the one hand, and the earlier settling Defendants, on the other. *See* Mar. 25, 2025 Joint Decl. ¶

16

26. While the 568 Group lasted for more than twenty years, Johns Hopkins had only been in the Group for approximately two months prior to Plaintiffs filing their initial Complaint. Caltech also had a relatively short tenure in the Group, as Caltech had only been in the Group for a little over two years at the time Plaintiffs filed their initial Complaint. In addition, Caltech is significantly smaller than the other sixteen Defendants in terms of student body size, with just 1,023 undergraduate students enrolled in 2023. *Id.*

Including the Proposed Settlements, aggregate cash payments to members of the Settlement Class amounts to *46.6%* of the single damages amount, $685 million, that Plaintiffs' expert economist, Dr. Hal Singer, computed. Mar. 25, 2025 Joint Decl. ¶ 5. This would be an extraordinary result even if this resolved the entire case. *See*, *e.g.*, *Allergan*, 2018 WL 4849716, at *4 (approving antitrust settlement for approximately 8.36% of overcharge damages); *Meijer,* , 2006 WL 2382718, at *16 (approving antitrust settlement for approximately 2% of single damages); *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (same); *In re Suboxone*, 2024 WL 815503, at *9 (approving antitrust settlement for 12% to 14% of estimated single damages).

The fact of Plaintiffs' continued prosecution of their claims further underscores the strength of the Proposed Settlements compared to Plaintiffs' continuing case. *See, e.g.*, *Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*, 2013 WL 4525323, at *8-9 (E.D.N.Y. Aug. 27, 2013) (analyzing the fact that "Plaintiffs continue to litigate against non-settling defendants" as a factor favoring approval); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *8-9 (E.D.N.Y. Sept. 25, 2009) (same); *In re Auto. Refinishing Paint Antitrust Litig.*, 2003 WL 23316645, at *4 (E.D. Pa. Sept. 5, 2003) ("At the outset, we observe that since the lawsuit will continue against the remaining defendants, and (as discussed above) since the remaining defendants are jointly and severally liable for the damages, the partial

17

settlement with one defendant will not negatively impact the class' prospect of further recovery at trial from the nonsettling Defendants.").[13] The same is true of Johns Hopkins's agreement to provide certain additional discovery that could not be produced during the fact discovery period. *Cf. Lucas*, 2017 WL 6733688, at *11 (capacity to pursue "ongoing litigation against the non-settling defendants increase[s] the value of the settlement" (collecting authority)); *see also In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 29 (D.D.C. 2019) (plaintiffs' continuing "litigation against the Non-Settling Defendants" is a factor that "weighs in favor" of approval).

### 2. The Complexity, Length, and Expense of Continued Litigation.

This factor, in this case, entails the common observations that "[a]ntitrust cases are particularly complex and risky," *Kleen Prods. LLC v. Int'l Paper Co.*, 2017 WL 5247928, at *5 (N.D. Ill. Oct. 17, 2017), such that "settlement in a complex antitrust case like this is far from a foregone conclusion." *In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *3 (N.D. Ill. Dec. 1, 2021).[14] The Proposed Settlements avoid the inherent, and inherently unpredictable, risks arising out of such central, complex issues as Plaintiffs' econometric analysis of damages and the lengthy Class Period that Plaintiffs have proposed. *Cf. In re Lithium Ion Batteries*, 2020 WL 7264559, at *15 (explaining that "[t]his case in particular was intrinsically difficult to litigate due

---

[13] The fact that the litigation continues against non-settling Defendants thus effectively moots the analysis by which courts measure the strength of a plaintiff's case by determining the "net expected value of continued litigation to the class," *Bytedance*, 2022 WL 888943, at *12 (quotations and citation omitted), and thus "the range of possible outcomes" that the Class members would not stand to recover, *id.* (quotations and citation omitted).

[14] *See also*, *e.g.*, *In re Remicade Antitrust Litig.*, 2023 WL 2530418, at *25 (E.D. Pa. Mar. 15, 2023) ("[C]ourts acknowledge that antitrust class actions are among the most complex to litigate."); *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020) ("Antitrust cases are particularly risky, challenging, and widely acknowledged to be among the most complex actions to prosecute.") (collecting authority); *Glaberson v. Comcast Corp.*, 2015 WL 5582251, at *3 (E.D. Pa. Sept. 22, 2015) (An antitrust action is "arguably the most complex action to prosecute as the legal and factual issues involved are always numerous and uncertain in outcome." (cleaned up)).

to the scope and length of the conspiracy alleged" and "the complexity associated with proving the existence of overcharges"). "The sheer scale of this litigation required extensive coordination among Class Counsel . . . in developing pleadings, engaging in motion practice, conducting discovery, and creating economic models to demonstrate damages." *Id*. Settlement Class Counsel have sought to achieve the best of both worlds by securing a substantial Settlement Fund while preserving claims for joint and several liability against the five non-settling Defendants. *See, e.g.*, *Precision Assocs.*, 2013 WL 4525323, at *8-9; *In re Air Cargo*, 2009 WL 3077396, at *8-9. The Proposed Settlements thus provide the Settlement Class with immediate, substantial, and definite relief while narrowing the number of adversaries at trial and avoid the risk of an adverse jury verdict resulting in recovery at all. Accordingly, this factor weighs in favor of final approval.

### 3. The Amount of Opposition to the Settlement and Reaction of Class Members to the Settlements.

The absence of opposition to a class action settlement "indicates that the class members consider the settlement to be in their best interest." *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *6. "Courts assess whether opposition levels are 'low' by comparing the number of objectors and opt-outs to the number of individuals reached by the notice plan. Opt-out and objection rates below 0.01% suggest that a settlement is reasonable." *Charvat*, 2019 WL 5576932, at *7 (citation omitted). The deadline for Class members to postmark their objections to or opt-outs was April 9, 2025. As of April 18, 2025, Settlement Class Counsel have received only six (6) opt-outs and **no** objections. Weisbrot Decl. ¶¶ 45-46. On the conservative assumption that the Settlement Class comprises 200,000 individuals, the opt-out and objection rate is approximately 0.003%. *See id*.[15] This is, in short, a "miniscule number" of opt-outs and objections "relative to the size of the class." *Bytedance*, 2022 WL 888943, at *16.

---

[15] This calculation is "conservative" because Angeion identified over 300,000 unique email addresses for Class members. Given the high likelihood of duplicate email addresses, the 300,000 is likely an overstatement. Settlement Class Counsel's estimate of 200,000 Class members, Aug. 4, 2023 Joint Decl.

Indeed, as this Court recently observed with respect to a proposed settlement in another case with seven opt-outs and one objection, "the fact that so few members of the Proposed Settlement Class objected to or opted out of the Proposed Settlement suggests strong support." *Bytedance*, 2022 WL 888943, at *16. In fact, courts have properly approved proposed settlements with much higher numbers of opt-outs. *See, e.g., Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978, 987-88 (7th Cir. 2002) (district court did not abuse discretion approving class settlement from which 250 of the 58,000 members opted out). This is a situation in which the "overwhelming support by class members weighs strongly in favor of the fairness, reasonableness, and adequacy of the Proposed Settlement." *Bytedance*, 2022 WL 888943, at *16.

### 4.     The Opinion of Competent Counsel.

Courts often defer to the judgment of experienced counsel, understanding that vigorous, skilled negotiation protects against collusion and advances the fairness interests of Fed R. Civ. P. 23(e). *See, e.g., TikTok*, 565 F. Supp. 3d at 1091 (plaintiffs' "well qualified" counsel attested to their belief that the settlement was fair, reasonable and adequate); *Lucas*, 2017 WL 6733688, at *12 (plaintiffs' counsel had relevant "extensive experience" and believed settlement to be in the best interest of the class). Indeed, it has long been the law that on final approval of a class settlement, the federal courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux*, 690 F.2d at 631; *accord Hispanics United of DuPage Cnty. v. Village of Addison, Ill.*, 988 F. Supp. 1130, 1170 (N.D. Ill. 1997). In short: "What matters here is that experienced counsel—particularly counsel experienced in class action litigation—have reached the settlement and are proposing it." *Bytedance*, 2022 WL 888943, at *16 (quotations omitted).

Settlement Class Counsel firmly believe, as discussed and shown in their briefs in support

---

(ECF No. 428-2) ¶ 17, is based on the undergraduate attendance at the Defendants and the percentage of those students who received institutional financial aid.

of their motions for preliminary approval, as well as their motions for service awards, reimbursement of expenses, and attorneys' fees, that the Proposed Settlements are fair and in the best interests of the Class. Settlement Class Counsel have formed this belief on the strength of, as noted above, their decades of experience in complex commercial litigation in general, and in class action and antitrust litigation in particular. Settlement Class Counsel applied that experience during their many rounds of settlement negotiations with the ten Settling Defendants. Accordingly, this factor weighs in favor of final approval.

### 5. The Stage of the Proceedings and the Discovery Completed.

This factor principally concerns the "nature and amount of discovery" taken as of the settlements, which "may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2)(A) advisory committee's notes to 2018 amendment; *accord Bytedance*, 2022 WL 888943, at *11. The factor focuses on "how additional discovery would have been in the interest of the class or would have resulted in a better settlement." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 588 (N.D. Ill. 2011) (quotations omitted). In addition, the "stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980); *accord In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 350 (N.D. Ill. 2010).

The Proposed Settlements, as shown in Plaintiffs' summary of the relevant Background, above, are based on substantial fact and expert discovery, establishing an extensive "information base." The Settlements occurred well after the close of fact discovery and in the latter half of expert discovery. The parties thus have had sufficient opportunity to assess the strengths and weaknesses and "place value on their respective positions in this case." *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 793 (N.D. Ill. 2015). In addition, Settlement Class

Counsel have continued to prosecute the case against the remaining Defendants. Since executing the Proposed Settlements, Settlement Class Counsel have taken and defended ten expert depositions, have fully briefed their pending Motion for Class Certification as well as two *Daubert* motions to exclude the opinions of Defendants' expert witnesses, have defended against Defendants' combined *Daubert* motion, and have presented their expert Dr. Hal Singer for a *Daubert* hearing. This continued work has provided a further information base that continues to bear out the excellent result that the Proposed Settlements represent. Accordingly, this factor weighs in favor of final approval.

## E. The Plan of Allocation Is Also Fair, Reasonable, and Adequate

"Federal courts have held that an allocation plan that reimburses class members based on the extent of their injuries is generally reasonable." *Lucas*, 2017 WL 6733688, at *13 (collecting cases). The Court must also consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). The methods of processing claims should not be "so complex that they discourage class members from pursuing valid claims." *Bytedance*, 2022 WL 888943, at *14. "A requirement that potential claimants fill out a form in order to collect from the settlement fund seldom raises such concerns." *Id*. (quotations omitted). The same is true with respect to "a requirement that class members attest to their eligibility for recovery." *Id*. Courts are "especially wary" of settlements "distributing only the amount actually claimed by the class members, or reversionary funds." *Id*. (quotations omitted).

Plaintiffs' proposed Plan of Allocation raises no such issues. *See generally* Plaintiffs' [Proposed] Fourth Tranche Allocation Plan (the "Revised Plan") (ECF No. 776-5). Under the Revised Plan, all members of the Settlement Class who timely submit claims ("Claimants") will receive payments from the Net Settlement Fund, *pro rata*, in proportion to an estimate of the

damages allegedly suffered. *Id.* at 2-3, 5-8. The Net Settlement Fund shall be disbursed in accordance with the Revised Plan to be approved by the Court at the Final Approval Hearing.

The Revised Plan will allocate the Net Settlement Fund in a manner similar to the earlier Allocation Plan approved by the Court for the previous settlements. Because Plaintiffs allege that the challenged conduct artificially inflated the net price Class members paid to Defendants in a consistent manner, the Revised Plan assumes that Claimants suffered injury in rough proportion to the average net price charged by each Defendant University during the years the Claimants attended. *Id.* at 2-3. Each Claimant will receive a *pro rata* distribution that is in proportion to the average net price[16] charged by the Defendant for each year or term a Claimant attended that institution. *Id.* Like the prior Allocation Plan, this method can be carried out mechanically based on the data available to the Claims Administrator and without requiring Claimants to provide any additional information or take any additional time other than simply filing out a Claim Form at the appropriate time after final approval. *Id.*

The Revised Plan is modified, however, to account for generalized inflation by calculating each Claimant's *pro rata* share using real dollars. To make this calculation, the Revised Plan converts the nominal average net price each Defendant University charged each year into constant dollars using the Consumer Price Index for All Urban Consumers before determining a Settlement Class Member's pro rata share. *Id.* at 5. The prior Allocation Plan had implicitly accounted for the time value of money in that net prices have risen over the course of the lengthy Class Period higher than the rate of inflation (*i.e.*, older Settlement Class Members

---

[16] Plaintiffs do not have sufficient data to determine the Net Price each Claimant paid for each year he or she attended, including because the per-student data Plaintiffs have is anonymized. In addition, it would not be efficient or practical to require each Claimant, many of whom attended a Defendant more than a decade ago, to have records of the Net Prices each paid. (The lone objector, for example, states that he was unable to obtain his Net Price information for one of his years.) Under the Revised Plan, Angeion will use data from the U.S. Department of Education, or structured data produced by Defendants, as part of the calculation for determining the *pro rata* shares for Claimants attending Defendants.

contributed less to the aggregate damages because they paid less in tuition). *See* Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Proposed Settlements (ECF No. 703) at 19-20. While Plaintiffs believed then, and continue to believe, that the prior method was adequate and appropriate, however, and in retrospect, the prior plan may not have fully accounted for generalized inflation (separate and apart from increases in educational costs). The above revision addresses this changed approach regarding inflation.

The claim procedure will be the same process used with the prior Allocation Plan. *See* Allocation Plan Process (ECF No. 703-3). Within 60 days after an order ("Final Approval") finally approving the Fourth Tranche Settlements and the Revised Plan, Angeion will mail (via email or else first-class mail) a notice with a link to a pre-populated Claim Form to each Settlement Class Member for whom Angeion has a valid and current address. *See id.* ¶ 2. Settlement Class Members who previously filed claims for the first three tranches of settlements will automatically be considered claimants for these Proposed Settlements (unless they have opted out) and will be instructed that they need not submit an additional Claim Form. If a Settlement Class Member does not receive a Claim Form by mail or email, the Member can complete a Claim Form from the Settlement Website or contact Angeion at (833) 585-3338 or email at info@financialaidantitrustsettlement.com for instructions on how to access the Claim Form. *See id.* ¶ 3. All Claim Forms submitted will be reviewed and processed by Angeion, with assistance from Dr. Hal Singer and his staff at EconOne and Settlement Class Counsel, as required and appropriate. Angeion will work with EconOne to determine the amount each Claimant is entitled to receive from the Net Settlement Fund following the method set forth in the Revised Plan and the Allocation Plan Process to determine payment to Claimants upon the Court's Final Approval. *See generally* Revised Plan (ECF No. 776-5) at 5-8; Allocation Plan Process (ECF No. 703-3) ¶ 5.

Finally, by agreement among Plaintiffs and the Settling Defendants, if funds are left over from the Net Settlement Fund after distribution to the Settlement Class, and it is determined that it would be inefficient to conduct an additional distribution, the Revised Plan calls for Plaintiffs to seek leave of Court to ask that such leftover funds by contributed to a charity focused on increasing access to college for lower-income students. *See* Revised Plan (ECF No. 776-5) at 8; Caltech Settlement (ECF No. 776-3) ¶ 9; Johns Hopkins Settlement (ECF No. 776-4) ¶ 9.

## IV. DEFENDANTS HAVE PROVIDED THE REQUISITE NOTICE UNDER THE CLASS ACTION FAIRNESS ACT

Under the Settlement Agreements, and the Court's order granting preliminary approval of the Proposed Settlements (*see* ECF 782), Defendants were to serve notice of the Settlement under the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"). The Settling Defendants have confirmed that as of April 24, 2025, they had each done so. *See* Normand Decl. Exs. 1-2. Accordingly, as of the date of the scheduled final Fairness Hearing, which is June 20, 2025, more than 90 days will have passed since Caltech gave notice under CAFA, while 90 days will have passed for Johns Hopkins on July 23, 2025.[17]

## V. CONCLUSION

Plaintiffs respectfully request, for the foregoing reasons, that the Court grant Plaintiffs' Motion for Final Approval of the Proposed Settlements.

---

[17] As a result of an administrative error by counsel, Johns Hopkins' CAFA notice was served on April 24, 2025. *See* Ex. B to Normand Decl. Its notice is substantively identical to Caltech's notice, which was served on January 27, 2025. Caltech's notice additionally references the Johns Hopkins Settlement Agreement, and the Johns Hopkins Settlement Agreement is included on the CAFA website linked in Caltech's notice. *See id.* The Court may proceed with the final approval hearing for Johns Hopkins but must permit the relevant government officials until July 23, 2025 to object to the Johns Hopkins Settlement Agreement. *See, e.g., Cavazos v. Salas Concrete Inc.*, 2022 WL 11198367, at *1 & n.1 (E.D. Cal. Apr. 22, 2022). Provided that no objection is raised, the Court may thereafter enter Final Approval of Johns Hopkins' Settlement Agreement.

Dated: April 24, 2025

Respectfully Submitted,

By:/s/ *Robert D. Gilbert*
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
David Copeland
Natasha Zaslove
**GILBERT LITIGATORS &**
**COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
dcopeland@gilbertlitigators.com
nzaslove@gilbertlitigators.com

/s/ *Edward J. Normand*
Devin "Vel" Freedman
Edward J. Normand
Richard Cipolla
Joseph Delich
Peter Bach-y-Rita
**FREEDMAN NORMAND**
**FRIEDLAND LLP**
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-350-0527
vel@fnf.law
tnormand@fnf.law
rcipolla@fnf.law
jdelich@fnf.law
pbachyrita@fnf.law

/s/ *Eric L. Cramer*
Eric L. Cramer
Ellen T. Noteware
David Langer
Jeremy Gradwohl
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
enoteware@bm.net
dlanger@bm.net
jgradwohl@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
110 N. Wacker Drive, Suite 2500
Chicago, IL 60606
Tel: 773-257-0255
rschwartz@bm.net

Ivy Ngo
**FREEDMAN NORMAND**
**FRIEDLAND LLP**
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
Tel.: (786) 924-2900
ingo@fnf.law

Daniel J. Walker
Robert E. Litan
Hope Brinn
**BERGER MONTAGUE PC**
1001 G Street, NW, Suite 400 East
Washington, DC 20001
Tel: 202-559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs and the Proposed Settlement Class*