**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>Defendants. | Case No. 1:22-cv-00125<br><br>Hon. Matthew F. Kennelly |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST THE UNIVERSITY OF PENNSYLVANIA**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 1

LEGAL STANDARDS ........ 5

ARGUMENT ........ 6

CONCLUSION ........ 9

# TABLE OF AUTHORITIES

**Cases**

*Carbone v. Brown Univ.*,
621 F. Supp. 3d 878 (N.D. Ill. 2022) .......... 5, 7

*Dunn v. United States*,
570 U.S. 901 (2013) .......... 7

*In re Optical Disk Drive Antitrust Litig.*,
No. 10-MD-02143-RS, 2017 WL 6503743 (N.D. Cal. Dec. 18, 2017) .......... 6

*In re Optical Disk Drive Prods. Antitrust Litig.*,
785 F. App'x 406 (9th Cir. 2019) .......... 6

*Morales v. NorthShore Univ. HealthSystem*,
No. 20 C 2175, 2022 WL 313755 (N.D. Ill. Feb. 2, 2022) .......... 6

*Nehra v. Rush Univ. Med Ctr.*,
No. 14 C 7445, 2015 WL 6164958 (N.D. Ill. Oct. 20, 2015) .......... 5, 6

United States v. Brumfield,
89 F.4th 506 (5th Cir. 2023) .......... 7

*United States v. Didion Milling, Inc.*,
No. 22-CR-55-JDP, 2023 WL 3372636 (W.D. Wis. May 11, 2023) .......... 7

*United States v. Nagelvoort*,
856 F.3d 1117 (7th Cir. 2017) .......... 5, 7

*United States v. Sax*,
39 F.3d 1380 (7th Cir. 1994) .......... 7

United States v. Tam,
Criminal No. 21-10350-LTS, 2023 WL 4304667 (D. Mass. June 30, 2023) .......... 7

*United States v. Vallone*,
698 F.3d 416 (7th Cir. 2012) .......... 7

*Wilson v. Sundstrand Corp.*,
No. 99 C 6944, 2003 WL 21961359 (N.D. Ill. Aug. 18, 2003) .......... 6

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*,
No. CV 15-6480, 2021 WL 409982 (E.D. Pa. Feb. 5, 2021) .......... 6

Plaintiffs respectfully submit this Memorandum of Law in support of their Motion for Partial Summary Judgment against the University of Pennsylvania ("Penn"), with citation to Plaintiffs' Local Rule 56.1 Statement of Undisputed Material Facts ("SOF").

## INTRODUCTION

Plaintiffs move for partial summary judgment on the University of Pennsylvania's affirmative defense concerning its purported withdrawal from the alleged conspiracy at issue (the "568 Cartel") when the university announced that it had "resigned" from the 568 Presidents Group in January 2020. Under the controlling law, including this Court's application of it in this case, ECF 185, in order to "withdraw" from an alleged conspiracy and thereby avoid liability for the damages the conspiracy continues to cause, the participant must repudiate or disavow the conspiracy and its goals. The undisputed facts in this case are that when Penn resigned from the 568 Group in early 2020, it did not repudiate or disavow the Group or its goals.

The resolution of this issue will facilitate the presentation of evidence at trial—as well as clarify the extent of Defendants' prospective liability. Accordingly, and as explained further below, Plaintiffs ask the Court to enter partial summary judgment against Penn. In addition, Plaintiffs intend to move *in limine* at trial to preclude any remaining Defendant from arguing that any of those other universities withdrew from the alleged conspiracy under the controlling law.

## BACKGROUND

Plaintiffs allege that as members of the 568 Group, the seventeen original Defendants in this case (twelve of which have settled) formed the 568 Cartel and, through it, caused the Class Members approximately $685 million dollars in damages in the form of artificially inflated net prices.

Penn was a member of the 568 Group from 2003 through 2019. *Id.* ¶ 1. In January 2020, Penn informed the 568 Group in writing that the university had decided to "resign" from the Group.

*Id.* ¶ 2. Penn has made its resignation the subject of its Fifth Affirmative Defense, entitled "Withdrawal": "Penn has withdrawn from the 568 Presidents Group completely, which defeats liability for all actions of the Group after the date of withdrawal. Since the date of its withdrawal, Penn has not participated in the Group. To the contrary, it has determined a student's need for financial aid on a unilateral basis, (as it had previously). In both word and deed, therefore, Penn has disavowed the goal of the Group for the Group's members to jointly discussed and agree upon common principles of analysis for determining the financial need of undergraduate financial aid applicants." *Id.* ¶ 3. In its relevant interrogatory response, [redacted] *Id.* ¶ 4.[1]

In explaining its resignation decision at the time, Penn did not repudiate or disavow the Group or its goals. Instead, in a letter to the Chair of the 568 Steering Committee, Penn's Executive Director for Student Registration and Financial Services, Matthew Sessa, explained that Penn "will need increased flexibility in our needs analysis." *Id.* ¶ 5. Mr. Sessa praised the 568 Group's "essential work" and "transformative impact." *Id.* ¶ 7. Mr. Sessa also stated in the letter that Penn

[1] The full text of Penn's interrogatory and request-for-admission ("RFA") responses on this issue are a master class in lawyer-written, evasive, legally incorrect gibberish. The relevant interrogatory and RFA address one of Penn's *affirmative defenses* and thus necessarily presuppose—as does the affirmative defense *itself*—that it is a defense to Plaintiffs' prima facie case. Yet, in its responses, Penn's lawyers contend that the interrogatory [redacted] Penn's lawyers also incorrectly argue in their interrogatory response that in asking Penn whether it "disavowed" the purposes of the 568 Group, Plaintiffs are both using an [redacted]—the one the courts have used for decades in addressing the sufficiency of withdrawal from a conspiracy—and [redacted]—whatever that last part means. Penn's lawyers further and incorrectly argued that the relevant RFA is [redacted] whatever they think that question was. The facts are that, as shown below, Penn's lawyers simply misapprehended or misstated relevant law.

"is proud to have been a member of the 568 President's Group for the past two decades"; that it is "with deep respect and gratitude" that Penn is resigning from the Group; that the university's "admiration for the important work that has been accomplished by the 568 President's Group made this a difficult decision"; and that "I wish the exceptional institutions that comprise the 568 President's Group every continued success." *Id.* ¶ 6. The foregoing statements and expressions are the opposite of repudiation or disavowal.

Penn made these laudatory statements while *knowing* that the 568 Group limited competition. Indeed, an internal email from Penn's Senior University Director of Financial Aid to Penn's Vice President for Finance and Treasurer concerning the withdrawal letter stated that within the 568 Group [REDACTED] *Id.* ¶ 8 (emphasis added). One of Penn's goals in resigning was [REDACTED] *Id.* ¶ 9. Mr. Sessa says he had concluded that [REDACTED] *Id.* ¶ 10. There is no evidence that Penn made any other statements regarding its views on the 568 Group or its goals. *Id.* ¶ 11. In addition, there is no evidence in the record that anyone understood Penn to have repudiated or disavowed the 568 Group or its practices or goals. *Id.* ¶ 12.

The genial, laudatory terms on which Penn thus left the 568 Group echoed the way several other Defendants had done so. *Id.* ¶ 13. In particular, Brown University (in 2012), the University of Chicago (in 2014), Emory University (in 2012), and Vanderbilt University (in 2020) all allegedly resigned from or ended their membership in the 568 Group without repudiating or

disavowing the Group or its goals. *Id*. These universities instead either communicated their general support of the 568 Group's practices and goals or said little of substance:

- Brown: Brown explained in May 2012, in a letter to 568 President John DeGioia, that it "sadly must withdraw from any further participation in the group" because, contrary to the terms of the 568 Exemption, "Brown does not admit all U.S. citizens to our undergraduate programs without regard to family financial circumstances in the cases of transfer students." *Id*. ¶ 14. Brown further stated: "Brown University supports the mission and values of the 568 Presidents' Group and has appreciated our participation over the years in what we believe are important conversations dealing with issues relating to determining a family's ability to pay for college costs and wish you and the Group continued success." *Id*. ¶ 15.
- Chicago: Chicago explained in September 2014, in a letter to Mr. DeGioia, that Chicago "is withdrawing as a member of The 568 Group." *Id*. ¶ 17. Chicago stated that we "will continue to support need-based aid for our students, and hope to do even more for our under-resourced families in the future." *Id*. ¶ 18. Chicago concluded: "We have truly appreciated the collegiality of The 568 group and wish you and our colleagues in the group all the best going forward." *Id*.
- Emory: Emory explained in April 2012, in a letter to Mr. DeGioia, that because [redacted] *Id*. ¶ 19. Emory further stated that [redacted]

[REDACTED] *Id.* ¶ 20.

- Vanderbilt: Vanderbilt stated in April 2020, in an email to Mr. DiGioia, that "we have elected to withdraw from the 568 Group. We are in the process of reviewing our various partnerships, and have decided that this is the best course of action at this point in time." *Id.* ¶ 21. Vanderbilt concluded: "Please do not hesitate to reach out to me directly should you have any questions." *Id.* ¶ 22. The backdrop to Vanderbilt's brief email was that [REDACTED] *Id.* ¶ 23.

There is no evidence in the record that Brown, Chicago, Emory, or Vanderbilt otherwise repudiated or disavowed the 568 Group or its goals and there is no evidence in the record that anyone understood any of these universities to have done so. *Id.* ¶ 25.

In 2022, Brown, Emory, and Chicago moved to dismiss Plaintiffs' claims to the extent that these universities supposedly had "withdrawn" from the 568 Cartel. *See Carbone v. Brown Univ.*, 621 F. Supp. 3d 878, 893 (N.D. Ill. 2022). The Court denied the motions, concluding that Plaintiffs "do not allege that the defendants have done what is required under Seventh Circuit law to actually withdraw." *Id.* (citing *United States v. Nagelvoort*, 856 F.3d 1117, 1128-29 (7th Cir. 2017), as "noting that a withdrawal defense requires the conspirator to both inform co-conspirators of his withdrawal and disavow the criminal objectives of the conspiracy").

## LEGAL STANDARDS

"A party may move for partial summary judgment by identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." *Nehra v. Rush Univ. Med Ctr.*, 2015 WL 6164958, at *2 (N.D. Ill. Oct. 20, 2015) (Kennelly, J.). A plaintiff therefore may seek partial summary judgment on an affirmative defense. *See, e.g.*, *Morales v. NorthShore*

*Univ. HealthSystem*, 2022 WL 313755, at *1 (N.D. Ill. Feb. 2, 2022) (Kennelly, J.); *Wilson v. Sundstrand Corp.*, 2003 WL 21961359, at *5 (N.D. Ill. Aug. 18, 2003) (Kennelly, J.). This includes the affirmative defense of "withdrawal" from a conspiracy. *See, e.g.*, *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, 2021 WL 409982, at *1 (E.D. Pa. Feb. 5, 2021); *In re Optical Disk Drive Antitrust Litig.*, 2017 WL 6503743, at *6 (N.D. Cal. Dec. 18, 2017), *aff'd* 785 F. App'x 406 (9th Cir. 2019).

The entry of partial summary judgment where warranted, as here, also advances efficiency. As the Seventh Circuit has held "[a]lthough parties 'should not pursue a needlessly piecemeal litigation strategy... partial summary judgment can serve a useful brush-clearing function.'" *Nehra*, 2015 WL 6164958, at *2 (quoting *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund,* 778 F.3d 593, 606 (7th Cir. 2015)). "A party is entitled to partial summary judgment if it 'shows that there is no genuine dispute as to any material fact' regarding the subject for which summary judgment is sought. *Id*. (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists only if there is enough evidence that a reasonable jury could return a verdict in favor of the nonmoving party." *Id*. (quoting *Cloe v. City of Indianapolis,* 712 F.3d 1171, 1176 (7th Cir. 2013)).

## ARGUMENT

Plaintiffs are entitled to summary judgment on Penn's Fifth Affirmative Defense, concerning withdrawal, because there is no evidence from which a reasonable juror could conclude that Penn repudiated or disavowed the 568 Cartel or the Cartel's purposes when it left the 568 Group. This is the controlling standard for "withdrawal" from a conspiracy that existed before

Defendants moved to dismiss Plaintiffs' claims in 2022,[2] that the Court described and applied in denying those motions,[3] and that the federal courts continue to articulate.[4]

The evidence is that, notwithstanding Penn's internal conclusions that the effect of the 568 Group was to [REDACTED] and to impose [REDACTED] on how Penn wanted to distribute financial aid going forward, Penn did not convey these concerns in communicating its decision to "resign" from the Group. SOF ¶¶ 8, 9, 11. Instead, Penn generically explained that Penn "will need increased flexibility in our needs analysis." *Id.* ¶ 5. Mr. Sessa praised the 568 Group's "essential work" and "transformative impact." *Id.* ¶ 7. Penn further stated through Mr. Sessa that it "is proud to have been a member of the 568 President's Group for the past two decades"; that it is "with deep respect and gratitude" that Penn is resigning from the Group; that the university's "admiration for the important work that has been accomplished by the 568 President's Group made this a difficult decision"; and that "I wish the exceptional institutions that

[2] *See, e.g.*, *Nagelvoort*, 856 F.3d at 1128-29 (for "withdrawal," the alleged conspirator must perform an affirmative act to defeat or disavow the unlawful goal of the conspiracy); *United States v. Sax*, 39 F.3d 1380, 1386 (7th Cir. 1994) (the defendant's mere cessation of its involvement in the alleged conspiracy, and signaling of same, is not "withdrawal"; rather, the defendant must either alert government authorities about the unlawful conduct to disavow the conspiracy and its goals or communicate its disavowal to its coconspirators), *abrogated on other grounds, United States v. Cabrales*, 524 U.S. 1 (1998); *United States v. Vallone*, 698 F.3d 416, 494 (7th Cir. 2012) (same), *vacated on other grounds*, *Dunn v. United States*, 570 U.S. 901 (2013).

[3] *See Carbone v. Brown Univ.*, 621 F. Supp. 3d 878, 893 (N.D. Ill. 2022) (citing *Nagelvoort*, 856 F.3d 1117 at 1128-29, with approval, as "noting that a withdrawal defense requires the conspirator to both inform co-conspirators of his withdrawal and disavow the criminal objectives of the conspiracy").

[4] *See, e.g.*, *United States v. Didion Milling, Inc.*, 2023 WL 3372636, at *7 (W.D. Wis. May 11, 2023) ("Even if it is true that Lenz left the company when he says, that does not mean that he withdrew from the conspiracy. *Nagelvoort*, 856 F.3d at 1128-29. Withdrawal requires an affirmative act of disavowal, not just a cessation of active participation. *Id.*"); *see also, e.g., United States v. Brumfield*, 89 F.4th 506, 523 (5th Cir. 2023) ("To constitute a withdrawal, Brumfield must have committed an affirmative act to defeat, disavow or discourage the conspiracy.") (quotations omitted); *United States v. Tam*, 2023 WL 4304667, at *4 (D. Mass. June 30, 2023) (noting that "to withdraw from a conspiracy, a conspirator must act affirmatively either to defeat or disavow the purposes of the conspiracy") (quotations omitted)).

comprise the 568 President's Group every continued success." *Id*. ¶ 6. No reasonable juror could interpret any of these statements, or any other evidence that Penn can present, as conveying that Penn had repudiated or disavowed the 568 Group or its purposes or goals.

Finally, as to the other Defendants that allegedly, permanently left the 568 Group, no reasonable juror could infer from how those universities communicated their decisions to leave that, in resigning, they had any particular reason or motivation to disavow or repudiate the Group or its goals. Brown, Chicago, Emory, and Vanderbilt, as shown, either communicated their general support of the 568 Group's practices and goals or said little of substance. *Id*. ¶¶ 13-24. Penn adopted a similar approach.

Plaintiffs do not seek partial summary judgment against those universities, because they have settled, but the evidence of their view of the 568 Group when they left may prove relevant at trial—such as to show, for example, that these schools were not predisposed immediately or fundamentally to change the approach to awarding financial aid that they had developed as members of the 568 Group.[5] In addition, Plaintiffs intend to move *in limine* at trial to preclude any remaining Defendant from arguing that any of those other universities withdrew from the alleged conspiracy under the controlling law.

---

[5] Plaintiffs are prepared to address such evidence through, for example, the parties' requisite agreement on undisputed facts for admission at trial.

**CONCLUSION**

Plaintiffs respectfully request, for the foregoing reasons, that the Court grant Plaintiff's Motion for Partial Summary Judgment Against Penn on Penn's Fifth Affirmative Defense.

Dated: May 7, 2025

Respectfully Submitted,

/s/ Robert D. Gilbert
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
David S. Copeland
Natasha Zaslove
**GILBERT LITIGATORS & COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Tel: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
dcopeland@gilbertlitigators.com
nzaslove@gilberlitigators.com

/s/ Eric L. Cramer
Eric L. Cramer
Ellen T. Noteware
David Langer
Jeremy Gradwohl
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
ecramer@bm.net
enoteware@bm.net
dlanger@bm.net
jgradwohl@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: (773) 257-0255
rschwartz@bm.net

/s/ Edward J. Normand
Devin "Vel" Freedman
Edward J. Normand
Richard Cipolla
Joseph Delich
Peter Bach-y-Rita
**FREEDMAN NORMAND FRIEDLAND LLP**
155 E. 44th Street, Suite 915
New York, NY 10017
Tel: (646) 494-2900
vel@fnf.law
tnormand@fnf.law
rcipolla@fnf.law
jdelich@fnf.law
pbachyrita@fnf.law

Ivy Ngo
**FREEDMAN NORMAND FRIEDLAND LLP**
1 SE 3d Avenue, Suite 1240
Miami, FL 33131
Tel: (786) 924-2900
ingo@fnf.law

Daniel J. Walker
Robert E. Litan
Hope Brinn
**BERGER MONTAGUE PC**
1001 G Street, NW, Suite 400 East
Washington, DC 20001
Tel: (202) 559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs*