# EXHIBIT 76

# 568 PRESIDENTS' GROUP

# PROFESSIONAL JUDGMENT GUIDELINES MANUAL

## December 2016

# *CONTENTS*

1. Divorced/Separated/Single Parent
2. Divorced/Separated/Single Parents Guidelines
3. The CM/FM Conundrum
4. Imputing the Value of Liquid Assets
5. Retirement Allowance
6. Treatment of Assets Held in the Student's Name
7. Income Losses from Business
8. Income and Assets Not Proportional (Low Income/High Assets)
9. Medical/Dental Expenses
10. One-Time Taxable Income
11. Prior Parental Educational Debt
12. Parents' Estimated Year Income
13. Parental Unemployment
14. Number in College/Parents' College Costs
15. Rental Income and Losses
16. Distribution of Retirement Funds (Rollovers)
17. Sabbatical Leaves
18. Number in College/Children's College Costs

## 1. Topic: Divorced/Separated/Single Parent

**Current IM Treatment:** There is no consistent way of evaluating the financial need of students whose natural parents are not married to each other. While some institutions attempt to secure data from both parents in order to determine what is a reasonable contribution from each, the effort is not always successful. The process is often made more complex because of the re-marriage of one or both natural parents. In addition, Federal Methodology (FM) completely excludes non-custodial data.

**568 Technical Committee Guidelines:** Analysis begins with the custodial family unit and then additional information is sought concerning the non-custodial family unit. In the case of re-marriage of either or both natural parents, the standard approach would be to request the cooperation of and information from all parents and spouses. Generally, a contribution from the income and assets of no more than two parents will be expected. Institutions could exercise judgment to use information from more than two parents.

**Rationale:**

- Having a consensus on policy and procedure for calculating parental support will reduce significant variances in measuring need among institutions.

- As with students whose parents are married to one another, **ability** to pay, not **willingness**, should be used to determine the expected parent contribution.

- Parents divorce one another, not the child.

### A. Data Collection:

Collect information for both the custodial and non-custodial parent household. This information should include documents such as the CSS PROFILE/Institutional Aid Form, the Non-Custodial Parent Statement, and the base tax year 1040 and W-2 forms for **both** custodial and non-custodial parents.

### B. Determining Which Parent(s) to Be Used in Analysis

Use both natural parents whenever possible as the basis of the need analysis unless:

a. The institution chooses to use a higher FM contribution from the custodial family rather than using the calculated lower 568 Group contribution from the natural parents. When the resulting parent contribution (from the natural parents) is lower than the federal parent contribution derived using FM, the FM result could be used in place of the resultant 568 Group contributions.
b. Information from the non-custodial parent is waived via the Non-Custodial Parent Waiver process.

**Professional Judgment Circumstances:** The Technical Committee understands that there may be problems trying to apply the **general procedures** to each individual divorced family's situation. It is, therefore, recommended that the following professional judgment guidelines be used, where appropriate.

C. The Non-Custodial Parent Waiver Process

After collecting a **Non-Custodial Waiver Petition,** information may be waived when the custodial parent is remarried for at least 5 years and there is information provided by the family to support the fact that the step-parent has acted as the "real" parent of record or other appropriate documentation from the non-custodial parent in any of the following circumstances:

- When there is documentation of physical abuse. Acceptable documentation could include a police report, restraining order, or supervised visitation in the divorce decree.
- When there is documentation that the non-custodial parent is disabled and receiving benefits.
- When the non-custodial parent is receiving public assistance.
- When the non-custodial parent is incarcerated.
- When the stepparent has legally adopted the student.
- When the divorce is over 10 years old and there is evidence of no-contact/no child support/parent is uninvolved. In most cases, a 3rd party confirmation letter should be required.
- When the divorce is less than 10 years old and the student provides additional information to support a claim of "abandonment" by the non-custodial parent.

**D. Assessing Parent Contributions/Treatment**

1. Neither parent is remarried:
   The custodial parent household size includes all household members; the non-custodial household includes the parent, the student, and any siblings with the same parents as the student. If there are siblings living with the non-custodial parent, they should be included in both households for CM purposes. Other siblings in undergraduate programs should be included in the number in college in both households if they attend schools that expect a contribution from both parents.

2. One or both parent(s) is remarried:

A full analysis is completed using the income and assets of both the parent and step-parent in the household. Any children of step-parents or half-siblings are included in the household in which they reside, but not in both the custodial and non-custodial households.

- Once the analysis is complete, the portion of the income applied to the contribution from income to determine the income contribution from Parent A.
- The contribution from assets is divided in half (between Parent A and step-parent).
- The resulting modified contributions from income and assets are added together to determine Parent A's contribution (either custodial or non-custodial)
- The custodial and non-custodial contributions are added together to determine the final PC for the household.

3. Professional Judgment Situations/Suggestions:

The Technical Committee understands that there may be problems trying to apply the above **general procedures** to each individual family's situation. The Technical Committee, therefore, recommends that the following Professional Judgment Circumstances recommendations be used when appropriate, to supplement those detailed in Section B above.

- When 9 months of child support paid on behalf of the student is more than the calculated non-custodial PC, use that amount as an "offer" (and take it out of custodial income).
- Use the non-custodial parent offer (if greater than the calculated contribution and reasonable).
- If child support is going to end, remove it as income from the custodial parent and as an offset in the non-custodial calculation in order to maintain consistency in future years.
- Allow the student/custodial parent to take on the obligation of the non-custodial parent through additional self-help or outside scholarships. If the divorce is more than 10 years old and the non-custodial parent has been remarried for a number of years, the parent contribution could be calculated with the full family household.
- When there is a second family, the step or half-siblings could be counted in the parents' household.
- In a remarriage with very young new children, a non-working spouse could be added as a dependent.
- Untaxed income may be added to a household where the stepparent supplies the bulk of the financial support (i.e., prorate IPA).

**2. Divorced/Separated/Single Parents Guidelines**

In rendering a proper decision regarding expected parental contribution, the following considerations might sometimes prove helpful:

1. The aid administrator should always be sensitive to the principle that it is the parent's ability to pay rather than their willingness to pay that is the defining

issue in need analysis. That said, professional judgment might be exercised when the non-custodial parent (NCP) is clearly acting in a hostile manner or there is clear evidence of serious problems, e.g., substance abuse, chronic unemployment, full disability, or the parent is on public assistance. In such cases the aid director might:

a. proceed with a full review and render an FM decision for non-institutional funds only; or
b. proceed to request the NCP information/cooperation directly from the NCP rather than through the applicant; or

2. Length of time since natural parents were together: if period of separation exceeds ten years, then pursuing the NCP could be waived unless the NCP:

a. has provided regular child support and/or is in regular communication with the applicant;
b. has claimed the applicant for tax purposes in any of the last three years;
c. lives in same general vicinity;
d. has provided other means of significant support to the applicant, e.g., car insurance, tuition for high school for applicant or siblings, vacation visits;
e. has obviously been involved in supporting applicant after initial waiver to pursue NCP was determined, e.g., applicant declines all self-help yet bills were paid in full.

Other reasons for being more deliberate in reviewing the role for the NCP:

a. separation is not a "legal" one recognized by court;
b. NCP clearly has resources to contribute;
c. lifestyle of custodial parent who is not remarried would suggest there might be other resources available.

3. Abandonment: There is clear evidence that the NCP has been completely out of the picture because of:

a. incarceration;
b. being out the country permanently and has not provided support;
c. receipt of AFDC by the custodial parent;
d. other extreme circumstances, e.g., recent total bankruptcy.

4. Abuse: If there is clear and documented evidence of child abuse by the NCP:

a. be cautious of simply accepting statement from school counselor, e.g., "Father’s whereabouts unknown;"
b. a written confirmation from one or more objective third-party persons (e.g. social worker) might be appropriate in some cases.

**<u>Other Observations</u>**

1. These guidelines are always subject to the aid administrator's professional judgment and would serve as a basic standard for all 568 schools. Individual institutions could employ additional expectations either on an individual basis or as policies to be applied to all such cases.
2. The exact calculation of any additional resources from more than the applicants' current parent(s) is an important standard and will be determined separately at a later time.
3. The aid administrator will always have the discretion as to how or whether to use the NCP information in the need analysis and/or packaging process.
4. Rulings by a court, while part of the big picture, do not necessarily direct institutional aid policies. If one is a parent, his/her responsibility to the child does not end with separation/divorce.
5. Differences between FM and IM will always present a challenge.

**3. Topic: The CM/FM Conundrum**

**Current IM and FM Treatment:** Institutional Methodology (IM) increases the number of cases in which the IM Family Contribution is lower than the federal EFC, creating potential federal "overaward" situations. In some cases, application of the Consensus Methodology (CM) to need analysis may increase the incidence of this problem. The 568 Group seeks to create, to the extent practicable, reasonably consistent family contributions. Application of the Consensus Methodology throughout our Group with local professional judgment employed, will help to ensure this result.

**568 Technical Committee Guidelines:**

1. Where appropriate, professional judgment should be used to modify the FM result. This could, of course, be done only when carefully documented circumstances justify this option.

2. There will be cases where lowering the federal EFC via PJ is deemed to be inconsistent with regulations, but where the aid officer believes that the Consensus Approach EFC more fairly responds to the family's financial circumstance. Should this occur, the award could be based on CM results only if need based federal funds are removed from the aid award and replaced with institutional or private funds. These cases should be carefully documented.

3. If the local aid officer believes that options 1 and 2 are inappropriate or inconsistent with institutional resources, the following should be considered. If the difference between CA and FM is less than the amount of packaged Federal Direct Stafford Loan, the CM result should be used and the award should be packaged with Federal Direct unsubsidized Stafford loan funds.

4. As a final option, the local aid officer can accept the federal EFC and set the CM Family Contribution at the federal level. This option may be appropriate when the difference between CM and FM is small and the aid officer

determines that the terms of the subsidized federal loan outweigh an institutional or federal unsubsidized loan.

**4. TOPIC: Imputing the Value of Liquid Assets**

**Current IM and FM Treatment:** FAFSA (FM) collects all asset data, except for the home, using one question. The PROFILE (IM) uses multiple questions that delineate assets into cash and bank accounts, and investments, real estate, etc.

An examination of tax return data, including interest and dividend income may suggest assets that do not appear on the CSS Profile. Prior to the establishment of CM, institutions made various assumptions concerning the value of those assets depending on the assumed rate of return they choose to use. Additional differences in treatment occurred when aid officers employed different multipliers for interest and dividend income. Interest income can, in fact, indicate a simple bank account or an investment (e.g., CD). A system that imputes bank accounts from interest paid can give the wrong result if the family has entered the corpus as an investment.

**Technical Committee Guidelines**: The Consensus Methodology calls for assets to be imputed at 4% for the current year as an attempt to use a rate that is reasonable based on the various investment vehicles that exist. It is suggested that one rate be used for all bank accounts and investments, interest and dividends, to eliminate the possibility of double counting an interest-bearing asset as described above. This multiplier is set annually based on market conditions.

The system should use the greater of the stated assets or the imputed amount. Assets can easily be greater than the multiplier would assume. Many checking accounts do not generate interest income. Stocks will often not pay dividends or pay very little. It is therefore important to use either the imputed value of the investment or the value that the family has entered if it is higher.

This treatment applies to parents' assets and to those of the student when they are either added back to parents' assets or left as a student asset.

**5. TOPIC: Retirement Allowance**

**Current IM Treatment:** In its recent revision of the standard IM treatment of assets, CSS eliminated any allowance against assets for retirement and added educational savings and family emergency savings allowances.

The 568 Group believes that it is appropriate, as a professional judgment option, to provide retirement protection to those for whom Social Security is the only significant source of retirement income.

In addition, institutions may choose to collect information about retirement plans, including the current value of the plan as a CSS Profile Q question, on an institutional application, or on a case-by-case basis.

Once it has been established that the family does not have retirement resources other than Social Security, the appropriate value from the FM Asset Protection Allowance table may be used as an offset against assets.

**Other Professional Judgment Issues:** "Retirement resources" are defined broadly as any retirement asset other than Social Security, including IRA accounts. Institutions may use professional judgment in identifying cases where these non-social security assets are insufficient to support the parent's reasonable retirement needs. In those cases, the institution may consider factors such as parent age, occupation, and family size in determining if it is appropriate to allow all or part of the FM asset protection allowance against assets.

**6. Topic: Treatment of Assets Held in the Student's Name**

**Current Treatment in IM and FM**: Student assets are treated separately from parental assets in the current institutional and federal analyses. They are assessed at 25% in Institutional Methodology (IM) and 20% in Federal Methodology (FM). In IM, sibling assets saved by the parents are added to parental assets; the assessment rates range from 3% to 5% of family assets. Assets in pre-paid tuition and savings plans are treated in Federal Methodology as untaxed income.

Assets in pre-paid tuition plans are treated in FM as a direct resource that reduces financial need dollar for dollar. In IM, pre-paid plans, student and sibling, are considered as a parental asset if the parent set them up. Information is, therefore, included in the basic PROFILE information. If other relatives, such as grandparents, or other third parties, such as godparents, are sources, a Section Q question (522) can be used to determine ownership.

**Consensus Methodology**: Most student assets should be considered parental assets in assessing the EFC. This includes assets given to the student by parents for their future college expenses and assets that the student has saved from his/her employment.

Adding student assets to parental assets has significant advantages:

- It is consistent with the treatment of sibling assets since they are already added to parental assets in IM.
- Parents who have saved in the student's name have done so in order to use the money to make their future parental contribution; using this asset as an addition to their contribution is unfair.
- Student assets that derive from the student's employment may be double-counted in the sense that a separate student income contribution is expected. For continuing students, the situation can be further complicated by the fact that their assets reflect term-time Work-study amounts.
- Considering most student assets as parent assets reduces the incentive to manipulate assets by spending or transferring student

assets prior to applying for aid because it eliminates a basic perceived inequity in the financial aid system.
- This approach is consistent with public policy initiatives that encourage parents to participate in plans offering pre-paid tuition and/or savings.

**When Student Asset Contributions are Appropriate**: Assets given to students by third parties (grandparents, godparents, or other relatives) should be considered as a student asset and assessed at 25% in CA. Those assets can be apportioned over the four-year enrollment period. They include assets, such as 529 plans being marketed to grandparents as part of their estate planning. Reasons for this approach include:

- A basic principle of financial aid is that parents contribute according to their ability to pay. Their ability to pay is a reflection of their resources. Money saved in the student's name can be considered their asset since they are the source. Third party resources are different.
- Assessing these assets at 3-5% rather than 25% would give families with extended third party resources a significant advantage over those that do not.
- The Student Asset provision in CM is one of the most generous parts of the Methodology—and rightly so. Assets from third parties can be treated as student assets without disrupting the overall generous approach of CM.

**Implementation**: Most schools will want to set the present option in INAS or their financial aid operating system to add student assets to parental assets. Student assets from parents and from after-school/vacation earnings are likely to be the most common sources of student assets.

Assets from third parties would be treated as exceptions. PROFILE, Section Q, or questions on the institutional application (if required) can be used to gather information.

- The CSS PROFILE now asks for the source of trust funds (Section D, question 23c).

- PROFILE includes pre-paid plans and 529 plans in parental assets both for the student and siblings if they are from the parent. It does not collect information for either when those plans are from third parties. The Student Asset section does not include them either. Section Q can be used—to gather information on assets in these plans from third parties. Existing questions include:

**Q 521** - Collects total value of assets held in state-sponsored [or private] college savings plans that were established for the student by someone other than the student's parent(s).

**Q 522** – Collects the total value of assets held in state-sponsored [or private] prepaid tuition plans that were established for the student by someone other than the student's parent(s).

**Q 524** - Of the amounts reported in PROFILE Help Codes SA-100 and SA-110, approximately how much of the total cash, savings, and investments was provided by your parents?

**Q 525 -** Of the amounts reported in PROFILE Help Codes SA-100 and SA-110, approximately how much of the total cash, savings, and investments was provided by relatives other than your parents?

**Q 526 -** Of the amounts reported in PROFILE Help Codes SA-100 and SA-110, approximately how much of the total cash, savings, and investments was from your (the student's) part-time or summer employment earnings?

Institutions with institutional aid applications can include questions that get at this information if they do not want to use Section Q.

**IM Vs. FM -** In many cases, treating student assets as parental assets will result in IM EFCs that are lower than federal EFCs. Delineating student assets by source and having the signed Profile and/or the institutional application may serve as documentation for moving the assets to parents in FM when the parents are the source. This will be an individual decision that each campus must make for itself.

**7. TOPIC: Income Losses from Business**

**IM Standard Treatment:** The IM standard treatment is to disallow such losses.

**Why Professional Judgment Might Be Appropriate:** Tax laws allow business losses reported on IRS Form 1040 Schedule C to be included as income losses on page one of the 1040, reducing adjusted gross income and lowering calculated parent contributions. Often, reported losses are likely not the result of a "real" income reduction to the family. For example, depreciation of business assets and property do not affect the family income. As a result, the standard IM does not allow such losses to offset other forms of income. However, there may be situations where losses are real and should be allowed to reduce family income in CA. For example, a review of a Schedule C with a high "cost of goods sold" figure might suggest that a reported business loss would be a legitimate offset to income.

A review of Schedule C may also provide details on the type of business and allow the aid administrator to determine if the business value and debt reported in the asset section appears to be reasonable. For example, significant depreciation and/or interest expenses may suggest the existence of equipment, machinery, real estate, or inventories.

**How CM Could Be Adjusted:** The aid administrator may wish to allow certain business losses on a case-by-case basis. See Appendix for examples. Allowable losses would not be added back to adjusted gross income.

**FM Standard Treatment:** Adjusted gross income is used in the FM computation. Therefore, any Schedule C business losses are allowed to offset income.

**How FM Could Be Adjusted:** Since the FM uses AGI as the measure of taxable income, an adjustment to zero-out losses should probably not be made when determining eligibility for federal aid.

**Documentation:** IRS form 1040 with Schedule C should be collected. A CSS Business/Farm Supplement also may be useful. If allowable business losses reduce adjusted gross income to a level where meeting basic family financial needs seems difficult, reviewing a monthly income and expense balance sheet from the family might be necessary. See CM Appeal/Projected Year Income Form in Appendix.

**8. Topic: Income and Assets Not Proportional (Low Income/High Assets)**

**IM Standard Treatment:** IM standard treatment uses reported base year income and current asset data.

**Why Professional Judgment Might Be Appropriate:** In many self-employment situations, a family's financial strength can be greater than indicated by Adjusted Gross Income (AGI). Examples of such professions are restaurant or storeowners, taxi drivers, and property managers. For these families, total income may not be fully reported (income from tips, etc.), or the business may support other major expenses such as housing. It may be appropriate to expect a higher parent contribution than is calculated by the need analysis methodology.

In identifying these cases, the following indicators may suggest that income is higher than reported:

- Mortgage or rent payment absorbs a disproportionately high percentage of reported income;
- Total reported income is too low to reasonably support the household size;
- Interest and dividend income is high in relation to AGI and/or reported cash and investments;
- The family is paying private school tuition in an amount that would be difficult to manage on reported income;
- Parental offer is higher than income would appear to support.

Conversely, some families are "house-poor." In other words, their income is insufficient to purchase their own house in today's housing market. This situation is not uncommon in certain areas of the country, where home values have skyrocketed (e.g., San Francisco, Boston, New York, northern Virginia). In such

cases the calculated contribution may indicate greater financial strength than is actually the case and downward adjustments may be warranted.

**How IM Could Be Adjusted:** The institution could ask the family to complete a worksheet that is designed to give a more complete understanding of total family income and expenses. (If, in response, the family reports untaxed income that was previously unreported, this income should be factored into both FM and IM calculations.) The family offer for these cases should be considered carefully, particularly if PROFILE information indicates that the family is paying tuition to a private school or another college or university. In some instances, the aid administrator may use professional judgment to decide on a PC that is unrelated to the computed result, using that number as a basis for entering into a discussion with the family.

In cases where the home equity is much higher than the family income would indicate, a downward adjustment to the home equity may be warranted. For example, the aid administrator could cap the home value at 3X the family income and recompute home equity. (Three times income is reasonable, since it indicates the maximum home value that a family could afford to purchase today.)

**FM Standard Treatment:** AGI is the basis of the FM calculation. If verification reveals errors (particularly in omitted untaxed income), corrections are required to the relevant data elements.

**How FM Could Be Adjusted:** Since the FM uses AGI as its measure of taxable income, an adjustment to increase taxable income should probably not be made when determining eligibility for federal aid. However, if omitted income sources are identified during follow up, corrections to the FM data elements are required.

**Documentation:** A worksheet such as the Appeal/Projected Year Income form (see Appendix) could be sent to the family to clarify their income and expenses.

**9. Topic: Medical/Dental Expenses**

**IM Standard Treatment:** Expenses in excess of four percent of total income are included as an allowance against income. The basic coverage for medical premiums and routine expenses are included in the Income Protection Allowance. Based on current Consumer Expenditure Survey data, median expenses represent approximately 4.6% of total family income.

**Why Professional Judgment Might Be Appropriate:** In some cases, where medical expenses for complicated surgery or prolonged rehabilitation are extremely high, families may carry forward the expense for more than one year or liquidate assets to pay medical or dental bills. In these cases, the aid administrator may make additional adjustments to allow the family time to recoup their financial strength.

**How IM Could Be Adjusted:** If the family arranged a payment plan, the annual payments should be used as an allowance against income. This will require follow up in subsequent years for similar adjustments.

**FM Standard Treatment:** No medical/dental allowance is provided in the standard FM. The Department of Education has advised colleges that the basic medical and dental expenses included in the federal IPA represent 11 percent of family income. As a result, exceptional expenses would be defined as any expenses in excess of 11% of total income.

**How FM Could Be Adjusted:** An FM adjustment could be made by calculating exceptional expenses as defined above and adding these expenses to U.S. taxes paid to reduce the family's available income.

**Documentation**:

The following types of documentation may be helpful:

- Statement from family about circumstances
- Copy of payment plans or agreements
- Copies of charges and insurance coverage statements
- IRS Schedule A

**CSS/Financial Aid PROFILE:**

- The parents' medical and dental expenses for the base year and the projected year are collected in PROFILE question 35. The independent student's expenses are collected in question 25.
- INAS and PowerFAIDS support, on an individual student basis, adjustments to the FM to account for exceptional medical and dental expenses. The actual value of the allowance should be entered in the ISIR Extension record. INAS permits institutions to redefine "exceptional" medical/dental expenses by entering a percent other than 4%. If a different percent is provided as a global parameter, the IM calculation will adjust the medical/dental allowance to consider expenses above the percent of income established by the institution.

**10. Topic: One-Time Taxable Income**

**IM Standard Treatment:** One-time taxable income is included in Adjusted Gross Income (AGI). The standard IM considers all base year income, including one-time taxable income, in computing the parental contribution. The retirement distribution is reported on the PROFILE and on the IRS Form 1040 as income, either taxed or untaxed. If reinvested in anything other than an eligible retirement plan, it is also reported as an asset. If "rolled over" to another eligible retirement plan in the same tax year, the distribution is excluded from income.

**Why Professional Judgment Might Be Appropriate:** There are times when a portion of the family's income is one-time income and is therefore, not

representative of the family's annual recurring income. Examples of one-time income include:

- Capital gains
- Bonus income (inc. sick time/vacation time buy-outs or loss of overtime)
- Gambling or prize earnings
- Early distribution of IRA or retirement plan income including Rollovers
- Conversion of traditional IRA to Roth IRA
- Employer reimbursement for moving expenses
- Insurance settlements

**How IM Could Be Adjusted:** The aid administrator may decide either to disregard the one-time income or to zero out the income and consider it as an asset instead.

- If the AGI is reduced by the amount of one-time income, the aid administrator should recompute the taxes paid based on the lower AGI.
- If the aid administrator decides to treat the one-time income as an asset, consideration should be given to any significant expenses incurred related to the one-time income. For example, if the one-time income is the result of a life insurance settlement, it may be necessary to take into account funeral and estate settlement expenses incurred by the family.
- counting as income an annual pension payout
- counting as assets the transfer of funds to savings
- counting only a portion as income when used to pay college tuition and/or consumer debt
- ignoring the income when used to pay off outstanding medical bills

If a tax liability occurred and the decision is made to reduce or eliminate the family's income based on the distribution, the federal tax paid may also need to be adjusted

**FM Standard Treatment:** The standard FM treatment is the same as standard IM.

**How FM Could Be Adjusted:** FM could be adjusted in the same way as IM.

Documentation:

- Request further explanation of the income in question
- Documentation from the source that this is really one-time income (e.g., moving expense reimbursement from the employer)
- Documentation of expenses related to the acquisition or use of the one-time income (medical expenses related to insurance reimbursement)

**11. Topic: Parents' Anticipated Year Income**

IM Standard Treatment: The standard IM uses the parents' base year income—the taxable and nontaxable income received during the base tax year. Base year income is generally considered to be a valid predictor of annual income for most families, and has the benefit of being verifiable.

Why Professional Judgment Might Be Appropriate: Parental income is the most important factor in determining the family's ability to pay. There are situations where the base year income is not indicative of the parents' continuing ability to pay because of a confirmed significant drop in income in the following tax years. Reasons for decreases in parent income include:

- Death of a parent
- Parent's temporary or permanent disability
- Parent's retirement
- Loss of parent's employment and/or benefits

How IM Could Be Adjusted: There are at least two approaches the aid administrator may wish to consider in cases where the base year income does not reflect ability to pay.

- Reduce the base year income with documentation of the income or benefit loss. Calculate a new AGI and total income. Federal taxes may need to be recalculated.

- Use recent or anticipated year taxable and untaxed income from the PROFILE or collect more detailed information using the 568 Projected Income Form worksheet. If there is taxable income, federal taxes will need to be calculated.

FM Standard Treatment: The FM standard treatment is the same as IM.

How FM Could Be Adjusted: The FM could be adjusted in the same manner as IM. Revised AGI and/or untaxed income figures, along with appropriate changes to "federal taxes paid," can result in a more equitable federal eligibility figure in cases where income is projected to drop sharply in the next tax year.

**Documentation:** A Parent's Recent Year Income Statement and documentation of the termination of income, if appropriate, could be collected.

**12. Topic: Number in College/Parents' College Costs**

**IM Standard Treatment:** The parent is not included in the number in college in the standard IM treatment. The reason is that in many cases, the parent attends a low-cost local institution on less than a full-time basis, and may not be enrolled in a degree program. Even if enrolled in a degree program, the costs incurred by the parent are usually fairly low. In addition, if the parent is pursuing a degree or certificate for reasons of professional advancement, the parent's employer often pays the costs.

**Why Professional Judgment Might Be Appropriate:** Although the parent is not included in the number in college adjustment in the standard IM, there may be instances when the financial aid administrator might want to account for those costs. In deciding whether to recognize these costs, the aid administrator may want to determine whether the parent's enrollment is discretionary, or whether the parent's educational goal is related to retraining or professional advancement.

**How IM Could Be Adjusted:** Parents' direct educational expenses (out of pocket expenses for tuition, fees, books and supplies) can be recognized in one of four ways. However, before deciding whether to make an adjustment, the aid administrator may want to consider whether the parent has other resources such as employer-reimbursed tuition benefits, or whether the parent is receiving financial aid.

.

- Make a direct allowance against income based on the actual direct educational expenses of the parent. In this case, the number in college would not be adjusted.
- Make a direct allowance against the parent contribution based on the out-of-pocket expenses incurred by the parents. This would only be appropriate if the out-of-pocket expenses were less than half of the contribution for the student.
- Allow a standard amount to be deducted from the parent contribution based on the average cost at the type of institution the parent is attending (i.e., community college, four-year private institution, etc.)
- In unusual cases, increase the number in college to include the parent. In choosing this option, the aid administrator should keep in mind that the IPA will be reduced, and may only be appropriate when the parent's educational expenses are equal to at least half of the parent contribution for the student based on one-in-college

**FM Standard Treatment:** Parents are excluded from the FM number in college adjustment.

**How FM Could Be Adjusted:** The parent could be added to the FM number in college. Alternatively, the amount of the parent's direct education expenses could be added to U.S. taxes paid, resulting in a reduction in the parent's available income.

**Documentation:** The aid administrator may wish to ask the parent for documentation of enrollment from the college or university, as well as verification of the portion of costs incurred by the parent.

**13. Topic: Rental Income and Losses**

**IM Standard Treatment:** The IM standard treatment is to disallow income losses reported on the PROFILE Application. Since categories of income and losses are grouped together, it is not possible to separate rental losses from other income and losses.

**Why Professional Judgment Might Be Appropriate:** Tax law allows losses reported on IRS Form 1040 Schedule E to reduce other family income. Many times the loss from rental property is only a "paper" loss, since owners of rental property are permitted to depreciate their property, reducing their rental income. As a result, the standard IM does not allow such losses. However, there may be unusual cases where properties remain vacant for a period of time and the owner incurs real expenses—mortgage, utilities, property taxes, etc. In such cases, the aid administrator may wish to allow the family's losses related to rental property.

**How IM Could Be Adjusted:** The aid administrator may elect to allow such losses on a case-by-case basis. By reviewing Schedule E, the aid administrator can determine which expenses relate to real costs borne by the family and which do not. For example, depreciation and/or medical/travel expenses could be disallowed, since this represents a tax benefit for the family investment without a corresponding cash expense. Schedule E may also help the aid administrator determine if the other real estate value and debt reported in the asset section appears reasonable.

**FM Standard Treatment:** Adjusted gross income from a federal tax return is used in the income computation. Therefore, any Schedule E rental losses are reflected in the AGI and allowed to offset other income.

**How FM Could Be Adjusted:** Since the FM uses AGI as its measure of taxable income, an adjustment to zero out losses should probably not be made.

**Documentation:** The complete federal tax return for the base year, including Schedules E, should be collected. If corresponding asset values appear inconsistent, a detailed description of the family's real estate holdings may be necessary, including such information as date and price of purchase, current market value, and explanation of all debts, monthly mortgage payments. If the rental losses reduce AGI to a level where meeting basic family financial needs seems difficult, reviewing a monthly income and expense balance sheet from the family might be necessary.

**CSS/Financial Aid PROFILE:**

- PROFILE captures income and losses from business, farm, rents, royalties, partnerships, estates, trusts, etc.
- Information about the value and debts associated with parents' other real estate, including rental property, as well as the year the property was purchased and the purchase price are collected in Section I.
- Institutions may select Q question 111, which asks parents to write the number of properties, other than their home, that they own, and to provide details about the value, amount owed, purchase year, and purchase price for each.

- The PROFILE Service Options Form provides institutions with an option to allow parents' losses in the IM.

**14. Topic: Sabbatical Leaves**

**IM Standard Treatment:** The standard IM uses base year income. Sabbatical leave reduces income during the year in which student is in school.

**Why Professional Judgment Might Be Appropriate:** Employees of educational institutions are sometimes allowed to take sabbatical leaves for further education or research. Leaves may vary in length, but are usually for one or two semesters. Salary usually continues to be received, but often at a reduced rate. Benefits are almost always continued. Because salary may be reduced, and additional expenses may be incurred, resources available to pay for college are reduced.

**How IM Could Be Adjusted:** IM can be adjusted by using current or estimated projected year income from PROFILE, or information from an Estimated Year Income Worksheet. Some relevant questions unique to the sabbatical leaves might be added, such as:

- What is the exact period of the sabbatical (it may be over an academic year, and therefore span two calendar years)?
- What is the exact reduction in pay (the educational institution may have a written policy that could serve as documentation)?
- Is some type of research grant being received?
- Are there additional expenses during the sabbatical for travel, temporary learning expenses, equipment, etc.?

Educators are usually eligible for sabbaticals on some regular cycle, such as every five, seven or ten years but the sabbatical can usually be delayed without losing the benefit. The financial aid administrator may choose not to make an allowance for reduced income or higher expenses because taking a sabbatical may be discretionary or may be able to be delayed until the student has graduated.

**FM Standard Treatment:** The standard FM uses base year income, as does the IM.

**How FM Could Be Adjusted:** The FM could be adjusted in the same way as the IM.

**Documentation:** The aid administrator may require documentation from the parent's college or university, verifying the length and terms of the sabbatical.