# EXHIBIT 90

AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO



107TH CONGRESS
*1st Session*

HOUSE OF REPRESENTATIVES

REPORT
107–32

# NEED-BASED EDUCATIONAL AID ACT OF 2001

APRIL 3, 2001.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. SENSENBRENNER, from the Committee on the Judiciary, submitted the following

# R E P O R T

[To accompany H.R. 768]

[Including cost estimate of the Congressional Budget Office]

The Committee on the Judiciary, to whom was referred the bill (H.R. 768) to amend the Improving America's Schools Act of 1994 to make permanent the favorable treatment of need-based educational aid under the antitrust laws, having considered the same, reports favorably thereon without amendment and recommends that the bill do pass.

TABLE OF CONTENTS

| | Page |
|---|---|
| Purpose and Summary | 1 |
| Background and Need for the Legislation | 2 |
| Hearings | 3 |
| Committee Consideration | 4 |
| Vote of the Committee | 4 |
| Committee Oversight Findings | 4 |
| Performance Goals and Objectives | 4 |
| New Budget Authority and Tax Expenditures | 4 |
| Congressional Budget Office Cost Estimate | 4 |
| Constitutional Authority Statement | 5 |
| Section-by-Section Analysis and Discussion | 5 |
| Changes in Existing Law Made by the Bill, as Reported | 5 |

## PURPOSE AND SUMMARY

H.R. 768 makes permanent an existing temporary antitrust exemption that allows colleges and universities that admit students on a need-blind basis to agree on common standards for assessing need for purposes of awarding institutional financial aid. The current temporary exemption is set to expire on September 30, 2001.

89–006

## BACKGROUND AND NEED FOR THE LEGISLATION

Beginning in the mid-1950's, a number of prestigious private colleges and universities agreed to award institutional financial aid (i.e. aid from the school's own funds) solely on the basis of demonstrated financial need. Last year, institutional grant aid at all colleges and universities amounted to about $12.2 billion as compared to Federal grant aid of about $8.9 billion. These schools also agreed to use common principles to assess each student's financial need and to give essentially the same financial aid award to students admitted to more than one member of the group. Among the schools engaging in this practice were the Ivy Overlap Group (Brown, Columbia, Cornell, Dartmouth, Harvard, Princeton, Penn, Yale, and MIT) and the Pentagonal/Sisters Overlap Group (Amherst, Williams, Wesleyan, Bowdoin, Dartmouth, Barnard, Bryn Mawr, Mount Holyoke, Radcliffe, Smith, Vassar, Wellesley, Colby, Middlebury, Trinity, and Tufts).

From the 1950's through the late 1980's, the practice continued undisturbed. In 1989, the Antitrust Division of the Department of Justice brought suit against the nine members of the Ivy Overlap Group to enjoin these practices. In 1991, the eight Ivy League schools (i.e. all of the Ivy Overlap Group except for MIT) agreed to a consent decree that for all practical purposes ended the practices of the Overlap Group. See *United States* v. *Brown University*, 1991 U.S. Dist. Lexis 21168, 1993-2 Trade Cases ¶70,391 (E.D. Pa. 1991).

In 1992, Congress passed a temporary antitrust exemption to allow the schools to agree to award financial aid on a need-blind basis and to use common principles of needs analysis. Higher Education Amendments of 1992, §1544, Pub. L. No. 102–325, 106 Stat. 448, 837 (1992). This temporary exemption specifically prohibited any agreement as to the terms of a financial aid award to any specific student. By its terms, it expired on September 30, 1994.

In the mean time, MIT continued to contest the lawsuit. After a non-jury trial, the district court ruled that the practices of the Overlap Group violated the antitrust laws, but specifically invited a legislative solution. *United States* v. *Brown University*, 805 F.Supp. 288 (E.D. Pa. 1992). On appeal, MIT won a reversal of the district court's decision. *United States* v. *Brown University*, 5 F.3d 658 (3d Cir. 1993). The appeals court held that the district court had not engaged in a sufficiently thorough antitrust analysis and remanded for further consideration. After that decision, the parties reached a final settlement.

In 1994, Congress passed another temporary exemption from the antitrust laws. Improving America's Schools Act of 1994, §568, Pub. L. No. 103–382, 108 Stat. 3518, 4060 (1994). This exemption resembled the one passed in 1992 in that it allowed agreements to provide aid on the basis of need only and to use common principles of needs analysis. It also prohibited agreements on awards to specific students. However, unlike the 1992 exemption, it also allows agreement on the use of a common aid application form and the exchange of the student's financial information through a third party. This exemption roughly mirrors the settlement reached in 1993. It was to expire on September 30, 1997.

Under that exemption, financial aid officers from some of the affected schools in 1997 proposed a set of guidelines to determine eligibility for institutional aid. These guidelines address issues like expected contributions from non-custodial parents, treatment of depreciation expenses which may reduce apparent income, valuation of rental properties, and unusually high medical expenses. However, a number of schools were reluctant to join the discussions because of fears about the expiration of the exemption.

In 1997, Congress extended the exemption again through September 30, 2001. The 1997 extension passed the Committee and the full House by voice vote. It passed the Senate by unanimous consent.

Since that extension, the affected schools have made further progress. Seventeen prestigious colleges that were not part of the original overlap groups have joined the discussions. Thus, the exemption has encouraged these schools to adhere to need-blind admissions and need-based aid. That is particularly important when the cost of elite universities is increasingly beyond the reach of the middle class. See, *e.g.*, Stuart Rojstaczer, *Colleges Where the Middle Class Need Not Apply*, *The Washington Post*, at A27, March 9, 2001. The presidents of the universities have tentatively agreed to a common set of principles affirming the primacy of need-based aid. In addition, they are discussing and testing guidelines based on the 1997 proposals of the financial aid officers. The presidents expect to announce agreement on the principles and guidelines in the next several months. In the past 2 months, Harvard, Princeton, and MIT have announced major new efforts to reduce the amount of loans that students must take out by substantially increasing their institutional grant aid. These efforts demonstrate that nothing in the exemption limits the ability of schools to respond to demonstrated need on an individual basis. As this progress shows, common treatment of these types of issues makes sense. The existing exemption has worked well so far. Progress is being made, and more schools are moving to need-blind admissions and need-based aid.

The need-based financial aid system serves social goals that the antitrust laws do not adequately address—namely, making financial aid available to the broadest number of students solely on the basis of demonstrated need. Without it, the schools would be required to compete, through financial aid awards, for the very top students. Those very top students would get all of the aid available which would be more than their demonstrated need. The rest would get less than their demonstrated need or none at all. Ultimately, such a system would serve to undermine the principles of need-based aid and need-blind admissions. No student who is otherwise qualified ought to be denied the opportunity to go to one of the nation's most prestigious schools because of the financial situation of his or her family. H.R. 768 will help protect need-based aid and need-blind admissions and preserve that opportunity.

## Hearings

Because H.R.768 only makes permanent an already existing temporary and noncontroversial antitrust exemption, the Committee held no hearings on it.

## COMMITTEE CONSIDERATION

After its referral to the Committee on the Judiciary, H.R. 768 was held at the full Committee. Thus, it received no subcommittee consideration. On March 28, 2001, the full Committee met in open session and ordered favorably reported the bill H.R. 768, by a voice vote, a quorum being present.

## VOTE OF THE COMMITTEE

During its consideration of H.R. 768, the Committee took no rollcall votes.

## COMMITTEE OVERSIGHT FINDINGS

In compliance with clause 3(c)(1) of Rule XIII of the Rules of the House of Representatives, the Committee reports that the findings and recommendations of the Committee, based on oversight activities under clause 2(b)(1) of Rule X of the Rules of the House of Representatives, are incorporated in the descriptive portions of this report.

## PERFORMANCE GOALS AND OBJECTIVES

H.R. 768 does not authorize funding. Therefore, clause 3(c) of Rule XIII of the Rules of the House is inapplicable.

## NEW BUDGET AUTHORITY AND TAX EXPENDITURES

Clause 3(c)(2) of Rule XIII of the Rules of the House of Representatives is inapplicable because this legislation does not provide new budgetary authority or increased tax expenditures.

## CONGRESSIONAL BUDGET OFFICE COST ESTIMATE

In compliance with clause 3(c)(3) of Rule XIII of the Rules of the House of Representatives, the Committee sets forth, with respect to the bill, H.R. 768, the following estimate and comparison prepared by the Director of the Congressional Budget Office under section 402 of the Congressional Budget Act of 1974:

U.S. CONGRESS,
CONGRESSIONAL BUDGET OFFICE,
*Washington, DC, March 30, 2001.*

Hon. F. JAMES SENSENBRENNER, Jr., *Chairman,*
*Committee on the Judiciary,*
*House of Representatives, Washington, DC.*

DEAR MR. CHAIRMAN: The Congressional Budget Office has prepared the enclosed cost estimate for H.R. 768, the Need-Based Educational Aid Act of 2001.

If you wish further details on this estimate, we will be pleased to provide them. The CBO staff contact is Lanette J. Walker, who can be reached at 226–2860.

Sincerely,

DAN L. CRIPPEN, *Director.*

Enclosure.

cc: Honorable John Conyers Jr.
Ranking Member

*H.R. 768—Need-Based Educational Aid Act of 2001.*

The Improving America's Schools Act of 1994 provided an exemption from antitrust laws for certain institutions of higher education. The exemption relates to the awarding of financial aid to students from each affected school's own funds and expires September 30, 2001. H.R. 768 would extend this exemption indefinitely.

CBO estimates that enacting this legislation would have no significant impact on the federal budget. H.R. 768 would not affect direct spending or receipts, therefore, pay-as-you-go procedures do not apply. This bill contains no intergovernmental or private-sector mandates as defined in the Unfunded Mandates Reform Act and would impose no costs on state, local, or tribal governments.

The CBO staff contact for this estimate is Lanette J. Walker, who can be reached at 226-2860. This estimate was approved by Peter H. Fontaine, Deputy Assistant Director for Budget Analysis.

## Constitutional Authority Statement

Pursuant to clause 3(d)(1) of Rule XIII of the Rules of the House of Representatives, the Committee finds the authority for this legislation in Article I, § 8 of the Constitution.

## Section-by-Section Analysis and Discussion

*Sec. 1. Short Title.* Section 1 of H.R. 768 provides that it may be cited as the "Need-Based Educational Aid Act of 2001."

*Sec. 2. Amendments.* Section 2 of H.R.768 strikes the provision of the existing temporary exemption that would cause it to expire on September 30, 2001 thereby making it permanent. It does not make any change to the substance of the exemption.

## Changes in Existing Law Made by the Bill, as Reported

In compliance with clause 3(e) of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets and existing law in which no change is proposed is shown in roman):

## SECTION 568 OF THE IMPROVING AMERICA'S SCHOOLS ACT OF 1994

**SEC. 568. APPLICATION OF THE ANTITRUST LAWS TO AWARD OF NEED-BASED EDUCATIONAL AID.**

(a) * * *

* * * * * * *

[(d) EXPIRATION.—Subsection (a) shall expire on September 30, 2001.]

* * * * * * *

MARKUP TRANSCRIPT

# BUSINESS MEETING

## WEDNESDAY, MARCH 28, 2001

HOUSE OF REPRESENTATIVES,
COMMITTEE ON THE JUDICIARY,
*Washington, DC.*

The committee met, pursuant to notice, at 10 a.m., in Room 2141, Rayburn House Office Building, Hon. F. James Sensenbrenner (chairman of the committee) presiding.

Chairman SENSENBRENNER. Pursuant to notice, I now call up H.R. 768, the Need-Based Educational Aid Act of 2001, for purpose of markup, and move its favorable recommendation to the House.

[H.R. 768 follows:]

Case: 1:22-cv-00125 Document #: 864-9 Filed: 05/07/25 Page 8 of 10 PageID #:34541



I

107TH CONGRESS
1ST SESSION

# H. R. 768

To amend the Improving America's Schools Act of 1994 to make permanent the favorable treatment of need-based educational aid under the antitrust laws.

---

IN THE HOUSE OF REPRESENTATIVES

FEBRUARY 28, 2001

Mr. SMITH of Texas (for himself and Mr. FRANK) introduced the following bill; which was referred to the Committee on the Judiciary

---

# A BILL

To amend the Improving America's Schools Act of 1994 to make permanent the favorable treatment of need-based educational aid under the antitrust laws.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Need-Based Educational Aid Act of 2001".

**SEC. 2. AMENDMENTS.**

Section 568(d) of the Improving America's Schools Act of 1994 (15 U.S.C. 1 note) is repealed.

Case: 1:22-cv-00125 Document #: 864-9 Filed: 05/07/25 Page 9 of 10 PageID #:34542



Chairman SENSENBRENNER. Without objection, the bill will be considered as read and open for amendment at any point. I move to strike the last word and recognize myself for 5 minutes.

Today, the committee considers H.R. 768, the Need-Based Educational Aid Acct of 2001. This bill was introduced by Representatives Lamar Smith and Barney Frank. It makes permanent an anti-trust exemption that allows universities to agree on common standards of need when awarding financial aid.

This exemption has been passed on a temporary basis several times without controversy, and the current version is set to expire at the end of September. It appears to be working well, and I am hopeful that it now can be made permanent.

With that, I yield back the balance of my time and recognize the gentleman from Michigan, Mr. Conyers, for 5 minutes for his statement.

Mr. CONYERS. Thank you, Mr. Chairman.

I support permanizing this need-based proposal of the gentlemen from Massachusetts and Texas, and I ask unanimous consent to insert my statement into the record at this time.

Chairman SENSENBRENNER. Without objection, so ordered.

[The statement of Mr. Conyers follows:]

PREPARED STATEMENT OF HON. JOHN CONYERS, JR., A REPRESENTATIVE IN CONGRESS FROM THE STATE OF MICHIGAN

I support the passage of H.R. 768, the "Need-Based Educational Aid Act of 2001." This bi-partisan bill would make permanent an exemption in the antitrust laws that permits the Ivy League schools to agree to award financial aid on a need-blind basis and to use common principles of needs analysis in making their determinations.

The exemption also allows for agreement on the use of a common aid application form and the exchange of the student's financial information through a third party.

In 1992, Congress passed a similar temporary exemption, which was extended in 1994, and again extended in 1997. The exemption passed in 1997 expires later this year. During the almost ten years of its operation, we have been able to witness and evaluate the exemption, and we have found that it has worked well.

The need-based financial aid system serves important social goals that the antitrust laws do not adequately address—such as making financial aid available to the broadest number of students solely on the basis of demonstrated need. Without it, the schools would be required to compete, through financial aid awards, for the very top students.

The result would be that the very top students would get all of the aid available, which would be more than they need. The rest of the applicant pool would get less or none at all. Ultimately, such a system would undermine the principles of need-based aid and need-blind admissions which are so important to achieving educational equality.

No student who is otherwise qualified ought to be denied the opportunity to go to one of the nation's most prestigious schools because of the financial situation of his or her family. H.R. 768 will help protect need-based aid and need-blind admissions and preserve that opportunity.

Chairman SENSENBRENNER. Does the gentleman from Texas, Mr. Smith, the author of the bill, seek time?

Mr. SMITH. Mr. Chairman, I seek brief time just to go into a little bit more detail.

Chairman SENSENBRENNER. The gentleman is recognized for 5 minutes.

Mr. SMITH. Mr. Chairman, as you pointed out, H.R. 768, the Need-Based Educational Aid Act of 2001, was introduced by me and also Mr. Frank. Beginning in the mid 1950's, a number of private colleges and universities agreed to award aid solely on the basis of demonstrated need. These schools also agreed to use common criteria to assess each student's financial need and to give the

same financial aid award to students admitted to more than one member of the group.

From the 1950's to the late 1980's, the practice continued undisturbed. In 1989, the Antitrust Division of the Department of Justice brought suit against nine of the colleges that engaged in this practice. After extensive litigation, the parties reached a settlement in 1993.

In 1994, and again in 1997, Congress passed a temporary exemption from the antitrust laws that codified that settlement. It allowed agreements to provide aid on the basis of need only, to use common criteria, to use a common financial aid application form, and to allow the exchange of the student's financial information through a third party. It also prohibited agreements on awards to specific students. This exemption expires on September 30, 2001.

Common treatment of these types of issues make sense, and in my knowledge, there are no complaints about the existing exemption. H.R. 768 would make the exemption passed in 1994 and 1997 permanent. It would not make any change to the substance of the exemption.

The need-based financial aid system serves social goals that the antitrust laws do not adequately address; namely, making financial aid available to the broadest number of students solely on the basis of demonstrated need. No student who is otherwise qualified should be denied the opportunity to go to one of these schools because of the limited financial means of his or her family.

H.R. 768 will help protect need-based aid and need-blind admissions.

Mr. Chairman, I thank you for the time and urge my colleagues to support this bill.

Chairman SENSENBRENNER. The gentleman yields back the balance of his time.

Are there any amendments to the bill?

If there are no amendments, the chair notes the presence of a reporting quorum, and the question occurs on the motion to report the bill H.R. 768 favorably.

All those in favor will say aye.

Opposed, no.

The ayes have it, and the motion to report favorably is adopted.

Without objection, the bill will be reported favorably to the House. Without objection, the chairman is authorized to move to go to conference, pursuant to House rules. Without objection, the staff is directed to make technical and conforming changes, and all members will be given 2 days, as provided by House rules, in which to submit additional dissenting, supplemental or minority views.

○