# EXHIBIT 132

**In the Matter Of:**

*HENRY v*

*BROWN UNIVERSITY*

---

*MEGAN ARLETH*

*March 08, 2024*

---

LEXITAS™

MR. GASS: Objection.

A. Can you repeat the question?

Q. Did you think while you were employed at COFHE that it would be good to expand 568 membership to include more eligible schools?

A. I'm not -- I mean, I don't think I can -- the premise of the question is a little weird for me.

So is it -- did I think it was good? It wasn't something that -- I don't think -- in my work with the group, there was a desire to make sure that the group remained strong. That meant having members.

Q. And what made a school eligible to participate in the 568 Group?

A. It was need-blind.

Q. Need-blind for whom?

A. It was need-blind for -- I'm not -- need-blind for admitting their students.

Q. Undergraduate students specifically?

A. Yes. Thank you.

MS. BRINN: I would like to introduce as Exhibit 3 Tab 15.

(Exhibit 3 marked for identification)

occur.

Q. So staying on the consensus methodology now, is it your understanding that members of the 568 Group agreed with each other to use the consensus methodology?

A. Can you repeat the question?

Q. Sure. Let's just do it, is it your understanding that members of the 568 Group were required to use the consensus methodology to participate in the 568 Group?

MS. BRINN: Object to form.

A. It was not my -- it was my understanding that they were not required -- there was no requirement.

Q. Do you recall testifying earlier today that you said, when asked a similar question by Ms. Brinn, that it was your understanding that "a lot of schools were doing their own thing"?

A. Yes, I recall that. Yes.

Q. What did you mean by "doing their own thing"?

A. I mean by utilizing different decisions in their own institutional awarding of aid that wasn't necessarily in direct line with consensus

methodology.

Q. And do you recall later in your testimony you said that it was your understanding that the consensus methodology was rarely applied as a whole by 568 Group members?

A. That was my understanding.

Q. What was your basis for that understanding?

A. Again, discussions within meetings. Again, I can't recall specific discussions. But discussions within meetings that, you know, based on different decisions and resources available to institutions, they were either more generous or less generous than consensus methodology.

Q. Were they allowed to stay in the group if they didn't follow the consensus methodology vote?

MS. BRINN: Object to form.

A. Yes, that was my understanding.

Q. And you mentioned before a certificate of compliance that people had to sign each year.

A. Yes.

Q. And I think you said you were responsible for making sure schools signed it?

A. Right.

Q. At any time you were at COFHE, did a school ever have to sign anything saying they were in compliance with anything other than the requirement to be need-blind to participate in the 568 Group?

A. Not to my knowledge. No.

Q. Let's go back to Exhibit 3 for a moment. And Exhibit 3 is an email that you wrote, a cover email that you wrote. Correct?

A. This is the one to Pat McWade?

Q. Yes.

A. Yes.

Q. It was written on March 7th, 2019?

A. Yes.

Q. And you wrote, "Hi Pat. Following up on our call today, attached you will find the MOU. The only qualifications for membership are noted in the 'Participation' section." Do you see that?

A. I do.

Q. And I promise this is not a trick question.

When you wrote that, did you mean to say that the only qualifications for membership in the 568 Group were noted in the "Participation"

Q. And what is Johns Hopkins?
A. Johns Hopkins University.
Q. And do you see in the second sentence -- did you send this email to Mr. McDermott in the course of your responsibilities at COFHE?
A. Yes.
Q. And do you see in the second sentence you wrote, "The only qualification to participate in 568 meetings is that institutions must be need-blind, so if you have been operating as such then you are eligible to participate"?
A. I see that. Yes.
Q. Why did you say that?
A. Because that was my understanding of the requirements to participate.
Q. Did you leave any requirements out?
A. No.
Q. And again, the date of your email to Mr. McDermott is August 23rd, 2017. Right?
A. Yes.
Q. And again, I promise it's not a trick question. If you wrote Exhibit -- the email in Exhibit 3 on August 3rd, 2017 and the plaintiffs filed their lawsuit in January of 2022, you sent