# EXHIBIT 145

# In the Matter Of:

*HENRY v*

*BROWN UNIVERSITY*

---

*KARAN COOPER*

*March 27, 2024*

---

LEXITAS™

K. COOPER - CONFIDENTIAL/AEO

they are capable of paying.

During your tenure as overseeing, to the extent you have financial aid, has Stanford's policy been that its undergraduate students should pay the maximum amount that they're capable of paying?

A. I don't recall us ever using those words, the maximum amount. Our policies have aimed to expect parents to pay to the extent of their ability to pay, is a phrase that we use often. We are need-based, so we're not applying our resources unless a family can't afford.

It's not that we're expecting them to pay the maximum, but we're expecting them to pay a fair and reasonable amount.

Q. Since 2000, has Stanford awarded merit aid at all?

A. With the exception of NCAA Division 1 athletic scholarships, we do not award merit aid.

Q. And do you have an understanding

K. COOPER - CONFIDENTIAL/AEO

as to why that's Stanford's policy?

A. I've always understood it to be -- you know, they're all merit worthy, all of our students who get admitted at Stanford. So it would be too hard to make those distinction. And so we prefer to put our resources toward need-based aid.

Q. Has Stanford's assessment of what is fair and reasonable for parents and students to contribute been a function, in part, of what Stanford could afford to award?

A. Absolutely, yeah, 100 percent.

Q. And has that been true since 2020 -- I mean, sorry, since 2000, to your knowledge?

A. To my knowledge, yes, yes.

Q. Was it ever Stanford's understanding that there were schools in the 568 Group that were awarding less financial aid than Stanford was?

MR. BREDAR: Objection.

A. There are lots of schools out there that award less than we do. I don't

K. COOPER - CONFIDENTIAL/AEO

Are you familiar with this document?

A. I have seen it, yes.

Q. And what is it?

A. This is our copy of the Consensus Methodology Policy document from 2015.

Q. And can we go to page 2 of the document.

Do you see kind of the bottom half of this page there are six financial aid principles?

Do you see those?

A. Yep.

Q. All right. So let's look at the first principle, which says: To the extent they are able, parents and students have the primary responsibility to contribute to educational expenses before an institution awards financial aid.

Is that a basic well-accepted financial aid principle?

MR. NORMAND: Objection to form.

A. So I have seen language very similar to that in lots of different places

K. COOPER - CONFIDENTIAL/AEO

in the financial aid community. You see statements like that from the College Board, my own office mission's statement contains a very similar statement.

Q. And then if you look at principle 2: Families should contribute to educational expenses according to their ability. Those with similar financial profiles should contribute similar amounts.

Is that a basic well-accepted financial aid principle?

MR. NORMAND: Objection to form.

A. Yes, I would say the same thing, that's language I'm very familiar with and have seen my whole career.

Q. And principle number 3: Institutions should evaluate both income and assets as part of the assessment of the parents' and applicants' ability to pay.

Is that a basic well-accepted financial aid principle?

MR. NORMAND: Same objection.

A. Yes. Again, that is a statement that I have seen in lots of different

K. COOPER - CONFIDENTIAL/AEO

places, lots of different ways.

Q. And principle number 4: Each institution should inform applicants about the policies and practices it applies when measuring a family's ability to pay, carry out its policies consistently throughout a student's eligibility, and support the awarding of need-based aid.

Same question, is that a basic well-accepted financial aid principle?

MR. NORMAND: Same objection.

A. I think it is among institutions that award need-based aid, right. So maybe not industry-wide.

Q. And then the next principle there, I think we're up to 5: Any institution that allocates any financial assistance that is not based exclusively on need should inform all prospective applicants of the standards it applies in allocating that aid.

Is that a well-accepted financial aid principle?

A. Yeah, I think similar to number

K. COOPER - CONFIDENTIAL/AEO

4, it's not something that I see in, you know, merit-based institutions, for example. It's not something that I see broadly in financial aid. But for an institution that awards need-based aid, it makes sense to have that as a goal.

Q. And then the last one, number 6: The exercise of professional judgment by financial aid officers in assessing a family's ability to pay should recognize unique or extenuating financial circumstances in individual cases; such professional judgment is not the proper mechanism for systematically treating 568 groups of students differently in order to advance institutional objectives.

Is that a well-accepted principle in financial aid?

MR. NORMAND: Same objection.

A. Well, and I think even beyond that, it's the law, right. Federal student aid allows for professional judgment and it can only be applied on an individual case-by-case basis.

K. COOPER - CONFIDENTIAL/AEO

Q. Is it fair to say that throughout your tenure, these general principles were ones that you and Stanford would agree with?

A. Yes, that is very fair.

Q. And are Stanford's financial aid practices broadly consistent with those principles?

A. Yes, they are.

Q. And do you view some or all of those principles as foundational to the concept of need-based financial aid?

A. Yes, I do.

Q. And do you view any of those principles as being unique to the 568 Group?

MR. NORMAND: Objection to form.

A. No, I don't think I do. You know, I've seen similar language in other places.

Q. So you agree these principles are widely endorsed throughout the financial aid industry?

MR. NORMAND: Objection to form.

K. COOPER - CONFIDENTIAL/AEO

A. Certainly by institutions that are awarding need-based aid.

MR. BREDAR: Okay. We can take that document down. Thanks.

BY MR. BREDAR:

Q. So we've been discussing some higher level principles related to financial aid at Stanford, but now I'd like to go a little bit deeper on how exactly Stanford calculates a student's need. Some of this is going to overlap with what you were talking about before when Mr. Normand was asking you questions. So apologies in advance for that.

To determine a student's need, Stanford subtracts the student's expected family contribution from the total cost of attendance, is that right?

A. That's correct.

Q. And the difference between the cost of attendance and the expected family contribution, which we can refer to as EFC, does that represent the particular student's need?

***Henry v. Brown University, et al.,***

**N.D. Ill. Case No. 1:22-cv-00125**

**Errata Sheet**

Deponent: Karen Cooper
Deposition Date: March 27, 2024
Court Reporter: Joan Ferrara

The following corrections should be made to the transcript of my deposition taken on March 27, 2024.

| Page: Line | Correction | Reason |
|---|---|---|
| 44:13 | "It's been" should be "It's become" | Reporter's error |
| 58:7 | "pardon" should be "part" | Reporter's error |
| 99:17 | "So the legacy expanded" should be "So the legacy vs. expanded" | Reporter's error |
| 123:21 | "ring" should be "wring" | Reporter's error |
| 124:4 | "win come" should be "income" | Reporter's error |
| 147:7 | "event years" should be "recent years" | Reporter's error |
| 148:9 | "places from" should be "places including" | Reporter's error |
| 157:22 | "kind of attorney" should be "kind of thing" | Reporter's error |
| 193:3 | "proscribed" should be "prescribed" | Reporter's error |
| 208:17 | "fairway" should be "fair way" | Reporter's error |
| 210:12 | "eligibility" should be "ability" | Reporter's error |
| 223:23 | "complicate" should be "complicated" | Reporter's error |
| 240:16 | "maybe" should be "a committee of" | Reporter's error |
| 247:10 | "loan" should be "level" | Reporter's error |
| 261:3-4 | "counsel on financing higher education" should be "Consortium on Financing Higher Education" | Reporter's error |

| | | |
|---|---|---|
| 262:4 | “conversation” should be “conversations” | Reporter’s error |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 3rd of May, 2024.

Karen Cooper