# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, <br><br> *Defendants.* | Case No. 1:22-cv-00125 <br><br> Hon. Matthew F. Kennelly |

**THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA'S RESPONSE TO
PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

**GENERAL STATEMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Northern District of Illinois Local Rule 56.1(b), Defendant Trustees of the University of Pennsylvania respectfully submits the following Response to Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts in Support of their Motion for Partial Summary Judgment Against Penn.

Penn objects to Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts in Support of their Motion for Partial Summary Judgment Against Penn ("Pls.' SOF"), Dkt. No. 853, because it contains improper legal arguments as well as conclusions and characterizations by the plaintiffs unsupported by record evidence and facts (whether disputed or undisputed) that are not material to this motion. *See* N.D. Ill. Local Rule 56.1(d)(4), 56.1(e)(2); *see also Phillips v. Quality Terminal Servs., LLC*, 855 F. Supp. 2d 764, 771 (N.D. Ill. 2012) ("'Opinion, suggested inferences, legal arguments and conclusions are not the proper subject matter of a [Local Rule 56.1] statement.'"); *Hartford Fire Ins. Co. v. Taylor*, 903 F. Supp. 2d 623, 633 (N.D. Ill. 2012) ("a party's own characterization of evidence is not permitted in a Local Rule 56.1 statement.").

Additionally, paragraphs 13-25 relate to schools other than Penn and Penn objects to these statements because they are not material to plaintiffs' motion for partial summary judgment based solely on Penn's withdrawal. L.R. 56.1(e)(2); *see also Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("the 56.1(a) statement should be limited to *material* facts, that is, facts pertinent to the outcome of the issues identified in the summary judgment motion."). As plaintiffs admit, plaintiffs are not seeking summary judgment against those universities because they have settled. Pls.' Mem. of Law in Supp. of Mot. for Partial Summ. J. Against Penn at 8, Dkt. No. 852.

As this Court has explained, "[i]t is the function of the Court, with or without a motion to strike, to review carefully statements of material facts and to eliminate from consideration any

argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in support of the statement." *Phillips*, 855 F. Supp. 2d at 771. Given this, Penn does not move to strike the inappropriate legal conclusions, immaterial facts and characterizations in plaintiffs' SOF, as is disfavored by this court. L.R. 56.1(e)(2). However, where Penn indicates that any fact by plaintiffs is undisputed, it is solely with regards to the factual assertions in the corresponding paragraph and such admissions are made solely for the purpose of responding to plaintiffs' motion for partial summary judgment and not for any other purpose in this litigation. *See, e.g.*, *Brown v. Navarro*, 2012 WL 3987427, at *3 (N.D. Ill. Sept. 11, 2012); *see also Johnson v. Edward Orton, Jr. Ceramic Found.*, 71 F.4th 601, 611 n.13 (7th Cir. 2023).

## RESPONSES TO PLAINTIFFS' SOF

1.     The University of Pennsylvania ("Penn") was a member of the 568 Presidents' Group ("568 Group") from 2003 through 2019. *See* Ex. 1 (Penn 30(b)(6)) 31:5-7, 105:16-18) (testifying that Penn joined the 568 Group in 2003 and left in January, 2020); Ex. 2 (PENN568-LIT-00000002) ("The University of Pennsylvania is proud to have been a member of the 568 President's Group for the past two decades[.]"); Ex. 3 (PENN568-LIT-00123816 at -3816_0006-09) (Penn's 2016 568 Memorandum of Understanding and Certification of Compliance).

**RESPONSE**: Penn objects based on materiality because the date when Penn joined the 568 Group is irrelevant to plaintiffs' motion, which concerns only Penn's withdrawal from the purported conspiracy. L.R. 56.1(e)(2); *See* Dkt. No. 850; *see also* Dkt. No. 852 at 1. It is disputed that Penn joined the 568 Group in 2003. *See* Gringer Decl. Ex. 16, Amended Errata for Penn 30(b)(6) Deposition Tr. on Mar. 18, 2024, at 31:7 (Aug. 23, 2024) (correcting Penn 30(b)(6)) Tr. 31:7 to say 2001 rather than 2003). It is undisputed that Penn ceased being a member of the 568 Group in January 2020.

2. In February 2019, Penn began drafting a "resignation" letter from the 568 Group, *see* Ex. 4 (PENN568-LIT-00060619-20) (February 2019 email enclosing draft withdrawal letter); Ex. 5 (PENN568-LIT-00138387-88) ("Attached is the 568 Letter drafted last February."), and in January 2020, Penn informed the 568 Group in writing that it had decided to "resign" from the Group. *See* Ex. 2 (PENN568-LIT-00000002) (Penn's January 2020 withdrawal letter to the 568 Group).

**RESPONSE**: Penn objects to the assertion that "Penn began drafting" its withdrawal letter in February 2019, as this is unsupported by record evidence. L.R. 56.1(e)(2). Penn objects based on materiality because the date when "Penn began drafting" its withdrawal letter is irrelevant to plaintiffs' motion, which focuses on when Penn effectively withdrew from the purported conspiracy. *Id.* It is undisputed that in January 2020, Penn informed the 568 Group in writing that it had decided to withdraw from the Group.

3. Penn has made its resignation the subject of its Fifth Affirmative Defense, entitled "Withdrawal": "Penn has withdrawn from the 568 Presidents Group completely, which defeats liability for all actions of the Group after the date of withdrawal. Since the date of its withdrawal, Penn has not participated in the Group. To the contrary, it has determined a student's need for financial aid on a unilateral basis, (as it had previously). In both word and deed, therefore, Penn has disavowed the goal of the Group for the Group's members to jointly discussed and agree upon common principles of analysis for determining the financial need of undergraduate financial aid applicants." Dkt. No. 291 (Penn's Answer and Affirmative Defenses to Plaintiffs' Second Amended and Supplemental Class Action Complaint), at 84.

3

**RESPONSE**: Penn disputes the characterization that Penn's "resignation" is the subject of Penn's Fifth Affirmative Defense; Penn used the term "Withdrawal" in its Fifth Affirmative Defense. *See* Dkt. No. 291 at 84. Additionally, plaintiffs incorrectly transcribe Penn's Fifth Affirmative Defense, which actually says that Penn "has disavowed the goal of the Group for the Group's members to jointly discuss…," *id.*, and not "discussed." Other than these two misrepresentations, it is undisputed that Penn's Fifth Affirmative Defense contains the quoted language.

4. In response to an interrogatory asking Penn to "State whether You contend You withdrew from the 568 Group and/or any agreement alleged in the Complaint," Penn stated both that upon its resignation, "Penn had no reason to vow or disavow any 'purposes or Core Principles of the 568 Group,'" and that, assuming there was an agreement, Penn's withdrawal letter from the 568 Group "meets the legal standard for withdrawal from that agreement." Ex. 6 (Penn's Amended R&O to Plaintiffs' Second Set of Interrogatories dated 2024.01.05) at 42-43; *see also* Ex. 7 (Penn's R&O to Plaintiffs' First Set of Requests for Admission dated 2023.11.13) at 22-23 (reframing the Request for Admission 27, which asked Penn to admit it "never publicly disavowed the purposes or principles of the 568 Group" as asking "whether Penn 'withdrew' from the alleged conspiracy at issue" and denying same).

**RESPONSE**: First, Penn objects based on materiality because there is no need to repudiate a conspiracy in the manner that plaintiffs claim in order to effectively withdraw. This paragraph is also disputed because plaintiffs never propounded an interrogatory asking Penn to "[s]tate whether You contend You withdrew from the 568 Group and/or any agreement alleged in the Complaint." *See* Gringer Decl. Ex. 17, Pls.' 1st Interrogs. (Apr. 5, 2023); Gringer Decl. Ex. 18, Pls.' 2nd Interrogs. (Sept. 30, 2023); Gringer Decl. Ex. 19, Pls.' 1st RFAs to the Original 568

4

School Defs. (Sept. 30, 2023) (none include the language: "State whether You contend You withdrew from the 568 Group and/or any agreement alleged in the Complaint"). Penn further disputes plaintiffs' characterization of Penn's response to Interrogatory 25, which as printed in Pls.' SOF ¶ 4 is incomplete. In their Second Set of Interrogatories, plaintiffs asked Penn to: "State whether and when You publicly disavowed the purposes or Core Principles of the 568 Group, and if so, in what way You did so." *See* Normand Decl. Ex. 6, Penn's Am. R&Os to Pls.' 2nd Interrogs., at 42-43 (Jan. 5, 2024) (refiled publicly as Dkt. No. 874-21). Penn objected to this interrogatory and subject to those objections, Penn responded in part that "The Interrogatory wrongly assumes that there was an illegal agreement or conspiracy in the first place. The Financial Aid Principles of the 568 Group were not rules or requirements that created any obligation on behalf of 568 Group member schools, Penn included. Penn had no reason to vow or disavow any 'purposes or Core Principles of the 568 Group.'" *Id.* Penn further responded: "Penn did leave the 568 Group in January 2020 via public letter. To the extent the finder of fact believes that until submission of that letter, Penn had counterfactually agreed with any other 568 Group member regarding the 'purposes or Core Principles of the 568 Group,' Penn states that the letter, produced to plaintiffs at PENN568-LIT-00000002, meets the legal standard for withdrawal from that agreement. Penn reserves the right to supplement this response as needed." *Id.* Penn further disputes plaintiffs' mischaracterization of Penn's response to Request for Admission No. 27 and objects to the unsupported characterization. L.R. 56.1(e)(2). In Penn's response to Plaintiffs' Request for Admission No. 27, Penn *denied* that it "never publicly disavowed" the 568 Group's purposes and principles. *See* Normand Decl. Ex. 7, Penn's R&Os to Pls.' 1st RFAs, at 22-23 (Nov. 13, 2023) (refiled publicly as Dkt. No. 874-22).

5

5.　　In explaining its resignation decision at the time, Penn did not repudiate or disavow the 568 Group or its goals. Instead, in a letter to the Chair of the 568 Steering Committee, Penn's Executive Director for Student Registration and Financial Services, Matthew Sessa, explained that Penn "require[d] a greater level of flexibility beyond the membership constraints" and thus "need[ed] increased flexibility in [its] needs analysis." Ex. 2 (PENN568-LIT-00000002) (Penn's January 2020 withdrawal letter to the 568 Group).

**RESPONSE**:  Penn objects to and disputes that Penn "did not repudiate or disavow the 568 Group or its goals" in explaining its withdrawal decision.  Penn objects to this sentence because it presents an improper legal argument stating a legal conclusion, not a fact.  L.R. 56.1(d)(4).  Penn objects based on materiality because there is no need to repudiate a conspiracy in the manner that plaintiffs claim in order to effectively withdraw.  Penn disagrees with this legal conclusion as explained in its Opposition to Plaintiffs' Partial Motion for Summary Judgment. *See* Opp. 5-12.

Penn further objects to and disputes the implication in this paragraph that the 568 Group limited Penn's flexibility.  Penn objects to this paragraph based on materiality, because whether the 568 Group actually constrained Penn's flexibility is irrelevant to the issue of whether Penn withdrew from the 568 Group.  L.R. 56.1(e)(2).  Penn also objects because plaintiffs incorrectly quote Penn's letter.  Penn's withdrawal letter does not say that Penn "require[d] a greater level of flexibility beyond the membership constraints."  *See* Normand Decl. Ex. 2, Dkt. No. 850-4, PENN568-LIT-00000002.  Finally, Penn disputes that the 568 Group constrained Penn's ability to do its own independent needs analysis:  Elaine Varas testified that Penn was "doing what we wanted to do while [Penn] w[as] in the 568 Presidents Group, as well as when [Penn] w[as] out of the 568 Presidents Group."  Gringer Decl. Ex. 4, Varas (Penn) Aug. 2, 2023 Tr. 185:21-186:6.

MaryFrances McCourt further confirmed that Penn had flexibility without constraints from external groups. Gringer Decl. Ex. 20, McCourt (Penn) Tr. 244:18-24.

6. Mr. Sessa also stated in the letter that Penn was "proud to have been a member of the 568 President's Group for the past two decades"; that it was "with deep respect and gratitude" that Penn is resigning from the Group; that the school's "admiration for the important work that has been accomplished by the 568 President's Group made this a difficult decision"; and that "I wish the exceptional institutions that comprise the 568 President's Group every continued success." *Id.*

**RESPONSE**: This paragraph is undisputed.

7. Mr. Sessa also stated in the letter that the "essential work [of the 568 Group] has had a transformative impact on students in our participating institutions because of the shared vision and strategic directions pursued by member colleges and universities." *Id*.

**RESPONSE**: This paragraph is undisputed.

8. Penn made these statements while its employees made statements reflecting an understanding that, within the 568 Group "the discussions revolve around a universal messaging and needs analysis practice that students [use to] compare [schools]," which helps "schools budget and limit competition." Ex. 8 (PENN568-LIT-00135701) (January 21, 2020 email from Penn's Senior University Director of Financial Aid Elaine Varas to Penn's Vice President for Finance and Treasurer MaryFrances McCourt concerning the withdrawal letter).

**RESPONSE**: Penn objects to and disputes plaintiffs' unsupported mischaracterization of Penn's employees' understandings. L.R. 56.1(e)(2). In this paragraph, plaintiffs purport to express

7

what Penn employees' understanding was. Ms. Varas, who wrote the email quoted in this paragraph, reviewed this email during her deposition and testified that she did not believe the 568 Group limited competition, that "every educational institution … uses their own packaging strategy[, and] … ha[s] their own individual cost," and that the institutions are "always going to be competitive with each other." Gringer Decl. Ex. 4, Varas (Penn) Aug. 2, 2023 Tr. 286:16-287:24. Ms. Varas added that professional judgment also gives schools "the ability to continue to compete with each other." *Id.* In reviewing the same language, Ms. McCourt agreed that the statements in the document were "incorrect [with respect to] limiting competition." Gringer Decl. Ex. 20, McCourt (Penn) Tr. 121:2-122:5. Matthew Sessa, who was also copied on this email, testified that he was "not sure what [Ms. Varas] meant by that" because Penn was "already not following the Consensus Methodology." Gringer Decl. Ex. 3, Sessa (Penn) Tr. 142:9-143:14.

9. One of Penn's goals in resigning was "continuing to support both our low-income student and middle-income families in new and creative ways without any potential restrictions." Ex. 9 (PENN568-LIT-00135695).

**RESPONSE**: Penn disputes this paragraph because the 568 Group did not restrict Penn in any way. *See* Gringer Decl. Ex. 4, Varas (Penn) Aug. 2, 2023 Tr. 185:21-186:6; *see also* Gringer Decl. Ex. 20, McCourt (Penn) Tr. 244:18-24. Penn further disputes this paragraph because Penn supported low and middle-income students throughout its tenure in the 568 Group without restriction. *See, e.g.*, Gringer Decl. Ex. 21, *Penn Expands Financial Aid Program to Eliminate Loans: Fact Sheet*, Penn Today (Dec. 17, 2007), https://penntoday.upenn.edu/news/penn-expands-financial-aid-program-eliminate-loans-fact-sheet; Gringer Decl. Ex. 22, Varas (Penn 30(b)(6)) Tr. 228:16-25 (stating that "Penn implemented the no-loan policy to continue to

8

support our students and reduce the debt that we were seeing our undergraduate students were incurring."); *see also* Gringer Decl. Ex. 23, PENN568-LIT-00060839, at -848 and -854 (showing that the average net cost for an aid-receiving freshman to attend Penn decreased by approximately 23.2% in real terms between fiscal years 2005 and 2020). Penn additionally disputes this paragraph because the statement plaintiffs cite does not appear in Penn's January 2020 withdrawal letter to the 568 Group. *See* Normand Decl. Ex. 2, Dkt. No. 850-4, PENN568-LIT-00000002 (Penn's withdrawal letter does not say that Penn was "continuing to support both our low-income student and middle-income families in new and creative ways without any potential restrictions.").

10. Mr. Sessa says he had concluded that "in general, I didn't see any utility of us being the group." Ex. 10 (Sessa 149:19-21).

**RESPONSE**: This paragraph is disputed because plaintiffs misquote Mr. Sessa's testimony. Mr. Sessa actually said: "in general, I didn't see any utility of us being *in* the group." *See* Gringer Decl. Ex. 3, Sessa (Penn) Tr. 149:19-21 (emphasis added). This paragraph is otherwise undisputed.

11. There is no evidence that Penn made any other statements regarding its views on the 568 Group or its goals. *See, e.g.*, Ex. 8 (PENN568-LIT-00135701) (January 21, 2020 email from Penn's Senior University Director of Financial Aid Elaine Varas to Penn's Vice President for Finance and Treasurer MaryFrances McCourt concerning the withdrawal letter).

**RESPONSE**: Penn disputes this paragraph; Penn has made statements regarding its views on the 568 Group and its goals. *See, e.g.*, Gringer Decl. Ex. 24, Furda (Penn 30(b)(6)) Tr. 130:17-131:11 ( "[O]ne of the hopes for 568 … or participation in it was to simplify a process that is

9

quite intimidating and daunting for families."); Gringer Decl. Ex. 20, McCourt (Penn) Tr. 27:3-9 (stating that the 568 Group "talk[ed] about need-blind admissions and common practices with financial aid – best practices"); *see also id.* at 32:21-34:2 (McCourt describing the 568 Group as "not hurting us, [but] not helping us," and referring to Penn's participation in the 568 Group as "meaningless"); Gringer Decl. Ex. 25, Stephanie Saul, *Suit Accuses Georgetown, Penn and M.I.T. of Admissions Based on Wealth*, N.Y. Times (Dec. 17, 2024),

https://www.nytimes.com/2024/12/17/us/lawsuit-georgetown-wealthy-students-admissions.html

("In an emailed statement, Penn said it saw 'no merit in this lawsuit[.]'").

12. There is no evidence in the record that anyone understood Penn to have repudiated or disavowed the 568 Group or its practices or goals. Ex. 11, (GTWNU_0000013115) (email exchange discussing internal perceptions of why Penn was leaving, none of which involved repudiation or disavowal of the 568 Group); Ex. 12 (PENN568-LIT-00138563 (email asking Penn if it wished to continue participating as an eligible non-member following its withdrawal, implying no disavowal of the Group or its goals).

**RESPONSE**: Penn objects based on materiality because the perceptions of others are not a factor in the appropriate legal standard governing whether Penn effectively withdrew from the purported antitrust conspiracy alleged by plaintiffs. Penn further objects based on materiality because there is no need to repudiate a conspiracy in the manner that plaintiffs claim in order to effectively withdraw. Penn also disputes this paragraph because 568 Group members understood that Penn had withdrawn from the 568 Group. *See* Normand Decl. Ex. 11, Dkt. No. 852-09, GTWNU_0000013115 (███████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████); *see also* Normand Decl. Ex. 12, PENN568-LIT-00138563 (refiled publicly as

10

Dkt. No. 874-26) (in an email from Megan Arleth (COFHE) to Elaine Varas (Penn), Ms. Arleth wrote: "I'm sorry to hear that Penn will be leaving 568."); Gringer Decl. Ex. 8, GTWNU_0000079982 (Arleth, the 568 Group's logistics coordinator, told Pat McWade (Georgetown) in an e-mail that Penn had "le[ft] the group in order to have more flexibility in the need analysis."). Penn additionally points the Court to its Statement of Additional Undisputed Material Facts in Support of Penn's Opposition to Plaintiffs' Motion for Partial Summary Judgment ¶¶ 9-10 for facts that support that others understood Penn to have repudiated or disavowed the 568 Group.

13. Like Penn, Brown University (in 2012), the University of Chicago (in 2014), Emory University (in 2012), and Vanderbilt University (in 2020) also left the group by sending withdrawal letters. All four institutions permanently resigned from or ended their membership in the 568 Group without repudiating or disavowing the Group or its goals. Ex. 13 (BROWN_0000000439) (Brown's 568 withdrawal letter); Ex. 14 (UCHICAGO_0000056541) (UChicago's 568 withdrawal letter); Ex. 15 (Emory_568Lit_0011074) (Emory's 568 withdrawal letter); Ex. 16 (VANDERBILT-00397876) (Vanderbilt's 568 withdrawal email).

**RESPONSE**: Penn objects based on materiality because this paragraph about other defendants leaving the 568 Group is irrelevant to plaintiffs' motion regarding Penn's withdrawal. L.R. 56.1(e)(2). Penn further objects based on materiality because there is no need to repudiate a conspiracy in the manner that plaintiffs claim in order to effectively withdraw. Plaintiffs further state a legal conclusion, not a fact. L.R. 56.1(d)(4). This paragraph is disputed in part, in that plaintiffs characterize Brown, Emory, Chicago and Vanderbilt's communications as "like" Penn's. L.R. 56.1(e)(2); *see* Normand Decl. Ex. 13, Dkt. No. 850-15, BROWN_0000000439; Normand Decl. Ex. 14, Dkt. No. 850-16, UCHICAGO_0000056541; Normand Decl. Ex. 15,

11

Dkt. No. 852-11, Emory_568Lit_0011074; Normand Decl. Ex. 16, Dkt. No. 850-18, VANDERBILT-00397876.  Brown and Emory, in their respective letters, ██████████ ████████████████████████████████████████████████. *See* Normand Decl. Ex. 13, Dkt. No. 850-15, BROWN_0000000439; Normand Decl. Ex. 15, Dkt. No. 852-11, Emory_568Lit_0011074 (████████████████████████████████ ██████).  Chicago did not offer any reasons for its withdrawal from the 568 Group in its letter. *See* Normand Decl. Ex. 14, Dkt. No. 850-16, UCHICAGO_0000056541.  Vanderbilt explained in its withdrawal letter that the school was "reviewing [its] various partnerships, and ha[d] decided that [withdrawal] [was] the best course of action" at the time.  *See* Normand Decl. Ex. 16, Dkt. No. 850-18, VANDERBILT-00397876.  In contrast, Penn explained in its withdrawal letter:

> Penn's commitment to need-blind admissions and all-grant financial aid is stronger than ever. Over the past 16 years, our financial aid program has expanded as our undergraduate students have become more socioeconomically diverse. Today more than one in seven Penn freshmen are the first generation in their family to attend college (up from one in twenty in 2004) and over a quarter are first generation, low-income or both. We have much more to accomplish. Our ambitious Penn First Plus program now seeks to better support our highly-aided and first-generation students based on demonstrated need. It has become clear that for Penn to continue to pursue greater access and inclusion for our students we will need increased flexibility in our needs analysis. It is therefore with deep respect and gratitude that I write to resign from the 568 President's Group.

Normand Decl. Ex. 2, Dkt. No. 850-4, PENN568-LIT-00000002.

It is undisputed that Brown University left the 568 Group in 2012, that the University of Chicago left the 568 Group in 2014, that Emory University left the 568 Group in 2012, and that Vanderbilt University left the 568 Group in 2020.  It is also undisputed that employees at all four of these universities sent withdrawal letters or emails to John DeGioia (then-President of the 568 Group).

12

14. In a May 2012 letter to 568 President John DeGioia, Brown explains that it "sadly must withdraw from any further participation in the group" because, contrary to the terms of the 568 Exemption, "Brown does not admit all U.S. citizens to our undergraduate programs without regard to family financial circumstances in the cases of transfer students." Ex. 13 (BROWN_0000000439) (Brown's 568 withdrawal letter).

**RESPONSE**: Penn objects based on materiality because this paragraph is irrelevant to plaintiffs' motion; the actions of other defendants are irrelevant to whether Penn withdrew from the 568 Group. L.R. 56.1(e)(2). It is undisputed that the quoted statements are in a May 2012 letter to John DeGioia from Jim Tilton.

15. Brown further states: "Brown University supports the mission and values of the 568 Presidents' Group and has appreciated our participation over the years in what we believe are important conversations dealing with issues relating to determining a family's ability to pay for college costs and wish you and the Group continued success." *Id*.

**RESPONSE**: Penn objects based on materiality because this paragraph is irrelevant to plaintiffs' motion; the actions of other defendants are irrelevant to whether Penn withdrew from the 568 Group. L.R. 56.1(e)(2). It is undisputed that the quoted language is in a May 2012 letter to John DeGioia from Jim Tilton.

16. Brown's withdrawal was expressly tied to its inability to satisfy the 568 Group's membership requirements, rather than any disagreement with the Group's principles or goals. *See* Ex. 17 (Tilton 82:21-83:5) ("Q And then you go on to say that it's your understanding that Brown must be in full compliance with all the requirements of membership in order to participate in the 568 Presidents' Group, and since we are not, we sadly must withdraw from any further

13

participation in the group. A Yes."); *id.* (Tilton 101:21-103:6) (confirming Brown received 568 manual updates even after formally withdrawing).

**RESPONSE**: Penn objects based on materiality because this paragraph is irrelevant to plaintiffs' motion; the actions of other defendants are irrelevant to whether Penn withdrew from the 568 Group. L.R. 56.1(e)(2). Penn disputes that Mr. Tilton "confirm[ed] Brown received 568 manual updates even after formally withdrawing" during his deposition. In the cited portion of Mr. Tilton's testimony, Mr. Tilton says only that he "think[s] [he] may have received an update to the 568 manual or something…" and that he "think[s] [he] might have gotten some sort of communication from [Kim Downs-Burns and COFHE]." Normand Decl. Ex. 17, Dkt. No. 850-19, Tilton (Brown) Tr. 101:21-103:6. It is undisputed that the quoted language appears in the transcript from Mr. Tilton's deposition at pages 82:21-83:5. It is also undisputed that the 568 Group's only membership requirement was to be need-blind.

17. In a September 2014 letter to Mr. DeGioia, the University of Chicago explains simply that it "is withdrawing as a member of The 568 Group." Ex. 14 (UCHICAGO_0000056541) (UChicago's 568 withdrawal letter).

**RESPONSE**: Penn objects based on materiality because this paragraph is irrelevant to plaintiffs' motion; the actions of other defendants are irrelevant to whether Penn withdrew from the 568 Group. L.R. 56.1(e)(2). It is undisputed that the quoted language appears in a September 2014 letter to Mr. DeGioia from James Nondorf of the University of Chicago.

18. In the same letter, Chicago states that we "will continue to support need-based aid for our students, and hope to do even more for our under-resourced families in the future" and

concluded that "[w]e have truly appreciated the collegiality of The 568 group and wish you and our colleagues in the group all the best going forward." *Id*.

**RESPONSE**: Penn objects based on materiality because this paragraph is irrelevant to plaintiffs' motion; the actions of other defendants are irrelevant to whether Penn withdrew from the 568 Group. L.R. 56.1(e)(2). It is undisputed that the quoted language appears in a September 2014 letter to Mr. DeGioia from James Nondorf.

19. In an April 2012 letter to Mr. DeGioia, Emory explains that because  ; Ex. 15 (Emory_568Lit_0011074) (Emory's 568 withdrawal letter).

**RESPONSE**: Penn objects based on materiality because this paragraph is irrelevant to plaintiffs' motion; the actions of other defendants are irrelevant to whether Penn withdrew from the 568 Group. L.R. 56.1(e)(2). It is undisputed that the quoted language appears in an April 2012 letter from ▇▇▇ to John DeGioia.

20. Emory further stated that  *Id*.

**RESPONSE**: Penn objects based on materiality because this paragraph is irrelevant to plaintiffs' motion; the actions of other defendants are irrelevant to whether Penn withdrew from the 568 Group. L.R. 56.1(e)(2). It is undisputed that the quoted language appears in an April 2012 letter from ▇▇▇ to John DeGioia.

15

21.     In an April 2020 email to Mr. DeGioia, Vanderbilt states that "we have elected to withdraw from the 568 Group. We are in the process of reviewing our various partnerships, and have decided that this is the best course of action at this point in time." Ex. 16 (VANDERBILT-00397876) (Vanderbilt's 568 withdrawal email).

**RESPONSE**:  Penn objects based on materiality because this paragraph is irrelevant to plaintiffs' motion; the actions of other defendants are irrelevant to whether Penn withdrew from the 568 Group.  L.R. 56.1(e)(2).  It is undisputed that the quoted language appears in an April 2020 email to John DeGioia from Doug Christiansen.

22.     Vanderbilt concludes by inviting further dialogue, stating, "Please do not hesitate to reach out to me directly should you have any questions." *Id*.

**RESPONSE**:  Penn objects based on materiality because this paragraph is irrelevant to plaintiffs' motion; the actions of other defendants are irrelevant to whether Penn withdrew from the 568 Group.  L.R. 56.1(e)(2).  Penn further objects to this paragraph based on materiality because Vanderbilt's letter's inclusion of the phrase "Please do not hesitate to reach out to me directly should you have any questions" has nothing to do with whether Penn effectively withdrew from the purported conspiracy alleged by plaintiffs in January 2020.  Penn disputes that a concluding sentence "Please do not hesitate to reach out to me directly should you have any questions" is actually an invitation for further dialogue as opposed to filler language akin to a salutation.  It is undisputed that the quoted language appears in an April 2020 email to John DeGioia from Doug Christiansen.

23. Vanderbilt stated that its brief email was prompted by "a question came up as it relates to our involvement in the 568 Group and being need-aware on the waitlist." Ex. 18 (Tener 124:15-24).

**RESPONSE**: Penn objects based on materiality because this paragraph is irrelevant to plaintiffs' motion; the actions of other defendants are irrelevant to whether Penn withdrew from the 568 Group. L.R. 56.1(e)(2). This paragraph is disputed in part because the quote is incomplete and thus mischaracterized by plaintiffs. L.R. 56.1(e)(2). Brent Tener (Vanderbilt) stated in his personal capacity that Vanderbilt had discussed withdrawing from the 568 Group in the context of "a question [that] came up as it relate[d] to [Vanderbilt's] involvement in the 568 Group and being need-aware on the waitlist." Gringer Decl. Ex. 26, Tener (Vanderbilt) Tr. 124:14-125:14. It is undisputed that the quoted language appears in the Tener deposition (although Normand Decl. Ex. 18 at Dkt. 852-13 is missing these pages).

24. Vanderbilt later confirmed that it did not view its withdrawal email, or any subsequent communication, as having disavowed or repudiated the 568 Group. *Id.* (Tener 126:1-15) ("Q: Did Vanderbilt ever publicly state, We disavow or reject the 568 Group? . . . I don't recall us ever making any public statements about leaving the 568 Group.").

**RESPONSE**: Penn objects because this paragraph states a legal conclusion, not a fact, which Penn disputes. L.R. 56.1(d)(4). Penn further objects based on materiality because this paragraph is irrelevant to plaintiffs' motion; the actions of other defendants are irrelevant to whether Penn withdrew from the 568 Group. L.R. 56.1(e)(2). Penn objects based on materiality because there is no need to repudiate a conspiracy in the manner that plaintiffs claim in order to effectively withdraw. Further, Penn disputes this paragraph because there is no support for this fact. The

17

only support plaintiffs offer is the testimony of Vanderbilt employee Brent Tener. Mr. Tener actually stated that he did not "recall [Vanderbilt] ever making any public statements about leaving the 568 Group," Normand Decl. Ex. 18, Dkt. No. 850-20 Tener (Vanderbilt) Tr. 126:1-15, not that Vanderbilt "did not view its withdrawal email, or any subsequent communication, as having disavowed or repudiated the 568 Group."

25. There is no evidence in the record that Brown, Chicago, Emory, or Vanderbilt otherwise repudiated or disavowed the 568 Group or its goals and there is no evidence in the record that anyone understood any of these universities to have done so.

**RESPONSE**: Penn objects based on materiality because this paragraph is irrelevant to plaintiffs' motion; the actions of other defendants are irrelevant to whether Penn withdrew from the 568 Group. L.R. 56.1(e)(2). Penn further objects to and disputes this characterization, because it is unsupported by any evidence and states a legal conclusion, not a fact. *Id*. Penn also objects based on materiality because there is no need to repudiate a conspiracy in the manner that plaintiffs claim in order to effectively withdraw.

| | |
|---|---|
| Dated: June 27, 2025 | Respectfully submitted,<br>By: */s/ David Gringer*<br>David Gringer<br>Alan Schoenfeld<br>WILMER CUTLER PICKERING HALE<br>   AND DORR LLP<br>7 World Trade Center<br>250 Greenwich Street<br>New York, NY 10007<br>Tel: 212-937-7294<br>david.gringer@wilmerhale.com<br>alan.schoenfeld@wilmerhale.com<br><br>Seth Waxman<br>WILMER CUTLER PICKERING HALE<br>   AND DORR LLP<br>2100 Pennsylvania Ave., NW<br>Washington, DC 20037<br>Tel: 202-663-6800<br>seth.waxman@wilmerhale.com<br><br>Edward W. Feldman<br>Daniel Martin Feeney<br>MILLER SHAKMAN LEVINE &<br>   FELDMAN LLP<br>30 W. Monroe Street, Suite 1900<br>Chicago, Illinois 60603Tel.: 312-263-3700<br>dfeeney@millershakman.com<br>efeldman@millershakman.com<br><br>*Counsel for The Trustees of the University of Pennsylvania* |