## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | **Case No. 1:22-cv-00125** |
| v. | **Hon. Matthew F. Kennelly** |
| BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, | |
| Defendants. | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
## FOR LIMITED DISCOVERY (ECF NO. 908)

Plaintiffs respectfully submit the following opposition to Defendants' Motion for Limited Discovery (ECF No. 908) ("Mot." or "Motion").

## INTRODUCTION

Under the rationale of ensuring the class is "fairly represented," Defendants apparently seek the extraordinary remedy of deposing Plaintiffs' counsel in order to identify vaguely alleged "misconduct" that requires "denial of class certification." Mot. at 1-2, 5. In reality, Defendants' motion is a maneuver aimed at undermining, not protecting, the class. It is hard to think of an outcome more prejudicial to the class than denial of class certification or removal of class counsel after three successful years. Defendants' pretext is laid bare by their apparent demand for sweeping discovery into clear attorney work product and otherwise privileged areas, propped up by an unsupported allegation by a disgruntled employee of one of Plaintiffs' firms—an employee who, by his own admission in open Court, is in no position even to know about the claimed ethical violations.

Further, Defendants did not even bother to meet and confer about the allegations before filing their Motion for extraordinary relief, underscoring that their goal was not to protect the class, but to weaponize the allegations for tactical leverage. Courts routinely reject these types of strategic attacks on class counsel. *See Stock v. Integrated Health Plan, Inc.*, 241 F.R.D. 618, 623 (S.D. Ill. 2007) (describing the inherent "skepticism as to the benevolence of a defendant who challenges an application for class counsel"); *see also Reliable Money Ord., Inc. v. McKnight Sales Co.*, 704 F.3d 489, 499 (7th Cir. 2013) ("[T]he ABA Model Rules, the Illinois Rules, and the Wisconsin Rules all warn that 'the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.'"); *Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130, U. A.*, 657 F.2d 890, 895 (7th Cir. 1981) ("[I]t is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house."). Against this backdrop, there are four reasons the Court should find good cause does not exist to reopen discovery.

First, the allegations are false and contradicted by multiple Class Counsel Declarations filed in support of the settlements and sought fees. Mr. Bach-y-Rita's statements, when considered in the context of his compensation dispute and other evidence that contradicts him, do not justify reopening discovery or delaying a ruling on class certification.

Second, Defendants' open-ended request is vague but appears to seek information relating to Class Counsel's internal deliberations and discussions, including possible depositions of class lawyers. Defendants have not met the high standard to obtain such invasive discovery of Class Counsel that inherently implicates work product and privilege issues.

Third, Defendants' effort to delay a ruling on class certification is transparent and unsupported. The best interest of the class is moving forward expeditiously on class certification, summary judgment, and trial.

Fourth, Defendants' Motion is at best premature. Class Counsel, who take their ethical obligations seriously, have repeatedly asked Mr. Bach-y-Rita (through his compensation-dispute counsel) both to define his assertions with more particularity, and to disclose to Class Counsel any evidence he has to support his claims. To date, Mr. Bach-y-Rita has refused either to explain his claims to Class Counsel, or to provide any evidence whatsoever in support. There is therefore no basis to grant Defendants' motion.

## ARGUMENT

### I.    There Is No Credible Basis That Any Misconduct Occurred

Both of Defendants' purported concerns stem exclusively from unsupported statements by Mr. Bach-y-Rita, a current associate at Freedman Normand Friedland LLP (FNF), one of the three Class Counsel firms. As Defendants know, Mr. Bach-y-Rita has obvious alternative motives. He is involved in an employment and compensation dispute with FNF, now in arbitration before the American Arbitration Association (AAA). He made his statements to the Court on the heels of a failed mediation of that dispute.

The timing of his letters and statements to this Court is even more incongruous. By his own admission, Mr. Bach-y-Rita—one of the Class Counsel in this case—supposedly had the same concerns he now raises as far back as 2023. 6/23/25 Hr'g Tr. at 20:3-12. Yet his name appears as counsel for the class on several applications for attorneys' fees filed in this case on April 29, 2024, May 28, 2024, March 25, 2025, and April 24, 2025, respectively. *See* ECF Nos. 679, 703, 830, 843. Those applications contain reports on all of Class Counsel's lodestar (broken down by attorney and year), and includes Mr. Bach-y-Rita's time. If the concerns are to be believed, (a) Class Counsel (including Mr. Bach-y-Rita) perpetrated a "fraud" on the Court involving submission of "inflated billings" in 2023, 2024 and 2025, (b) Mr. Bach-y-Rita has known of this supposed "fraud" from the beginning, (c) he continued as Class Counsel during this entire period; (d) he has not, to this day, asked to have his name removed from any document submitted to the Court; (e) he continued to accept advance payments from his law firm relating to his work on this case; and (f) he decided to raise his allegations with the Court only after a mediation failed in an arbitration that had begun in his compensation dispute with his law firm.

In fact, Mr. Bach-y-Rita did not raise his "inflated billings" concern with the Court or any of the Class Counsel at any point prior to the hearing on June 23, 2025. Even then, he only raised these new issues at the end of the hearing only after it became clear that his purported concerns with the fee distribution had no merit. Indeed, he did not even raise these new issues in his two letters to the Court under his supposed "ethical responsibilities." ECF No. 878. In addition, the document metadata in his letters to the Court (ECF Nos. 878, 880) reveal that his outside counsel in his compensation dispute with FNF drafted the submissions he claimed at the hearing that he had sent under his own name. 6/23/25 Hr'g Tr. at 8:21.

Further, by his own admission to this Court, Mr. Bach-y-Rita's allegations lack the information and foundation needed even to assert them. *See* 6/23/25 Hr'g Tr. at 8:3-4 ("I'm merely an associate, and I do not have all the information."); *id.* at 11:22-25 (requesting time so he could

"get information"); *id.* at 20:13-17 (same). He conceded at the hearing that he had no objection to the settlements with Caltech and JHU, which were the subject of the hearing during which he made his statements. *Id.* at 12:18-21. To this day, despite repeated requests by Class Counsel, neither he nor his employment counsel has produced a shred of evidence to Class Counsel to support his allegations of ethical violations in connection with any application for fees. Moreover, Mr. Bach-y-Rita was not involved in the creation of the declarations and exhibits submitted to support the fee petitions, and thus would have no basis to testify to supposed "fraud" committed by Class Counsel.

Not only do Mr. Bach-y-Rita's unsupported statements fail to justify discovery, but abundant other evidence contradicts those statements. The best evidence of Class Counsel's loyalty to the class, of course, is the vigorous prosecution of the case to date, leading directly to $319.25 million in settlements. On the alleged ABA Rule 1.5 violation, as Class Counsel has already explained to the Court: if the law required it (and Class Counsel believes it does not), they have obtained written consent to Class Counsel's agreement regarding division of any fees awarded by the Court from all eight of the Named Plaintiffs. ECF No. 879 at 2-3. There can be no legitimate concerns about "unscrupulous attorneys referring clients to the highest bidder" that might implicate Rule 1.5. *See* Mot. at 2.

Similarly, the supposed "evidence" before this Court does not substantiate a basis of knowledge to support an allegation that Class Counsel violated ABA Rule 8.4(c) by supposedly submitting false records. To start, Mr. Bach-y-Rita's allegations are admittedly uninformed and depend on the implausible premise that more than a dozen attorneys whose names appear on the fee applications submitted knowingly inflated fee requests to the Court. This premise would require the existence of an *ongoing* coordinated fraud across independent officers of the court, including among class counsel with decades of experience in class actions. *See* ECF No. 830-1 ¶ 33 (summarizing class counsel's experience); ECF No. 679-1 ¶ 60 (same). There have been no objections to the fee applications, total lodestars, or any individual attorney's time in connection

4

with well-publicized and sizable settlements.

Finally, there is no structural incentive in the Seventh Circuit to engage in billing fraud, as the lodestar serves only as a rough *cross-check* and is not the primary basis for determining attorneys' fees. *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *4 (N.D. Ill. Dec. 1, 2021) ("The fact that fee awards in antitrust cases in this circuit are almost always one-third is a strong indication that this should be considered the 'market rate.'"); *see also* ECF No. 830 at 6 (collecting cases); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting.").[1] Indeed, Class Counsel was not even *required* to submit lodestar information. *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 204 (N.D. Ill. 2018) ("The Court has discretion to choose either the lodestar method or the percentage-of-fund method to calculate reasonable fees. The Court is not required to check its percentage-of-fee determination against the lodestar."). In short, the allegations are not only without foundation and unsupported, they are implausible on their face.

Courts have previously rejected discovery of class counsel based on similarly vague and unsupported allegations from disgruntled employees. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 278 (3d Cir. 2001) (refusing to hold auction to determine class counsel and attorney's fees despite allegations of misconduct because "[w]ere it sufficient, then any disgruntled class member (or lawyer seeking to be appointed lead counsel) could disable the lead plaintiff from exercising its statutorily-conferred power by making unsupported allegations of impropriety"). For instance, the Seventh Circuit upheld a district court's denial of an objectors' discovery request after a complaint by a lawyer at class counsel's firm. *In re Stericycle Sec. Litig.*, 35 F.4th 555 (7th Cir. 2022). The objector sought discovery on class counsel after one of its of-counsel filed a complaint alleging

---

[1] While Class Counsel certainly understand the seriousness of any claim that false records were submitted to the Court, it bears noting that the lodestar figure submitted for the check here serve a categorically different role than the cases Defendants cite (Mot. at 3-4) regarding fraudulent billing practices in hourly billing settings.

5

that, in connection with another securities fraud class action case with the same named plaintiff, class counsel created make-work to effectively bribe the Mississippi's attorney general's office (which had sole authority to bring and settle claims for the named plaintiff). *Id.* at 567, 571-72. But despite the gravity of the allegations and obvious ramifications for the ongoing case, the Seventh Circuit was "not persuaded that the district court was required to order the requested discovery." *Id.* The court reasoned in part that such attorney "complaints frequently 'contain allegations that range from exaggerated to wholly fabricated.'" *Id.* at 568 (quoting *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016)).

And in Defendants' cited case of *Stock v. Integrated Health Plan, Inc.*, the court rejected all requests for discovery regarding the "adequacy of counsel" after a former co-counsel and partner made statements implicating class counsel's qualifications. 241 F.R.D. at 623, 624-25 (quashing discovery sought on former partner's statement that class counsel "firm lacked sufficient experienced and competent staff to prosecute the class actions it currently handles" . . . "because it is far too vague to impact the narrower query" on qualification). The court similarly denied discovery pertaining to former class counsel's named partner's (who had appeared in the case) "civil and criminal investigations" in part because the firm "has continued to vigorously prosecute class actions with marked success." *Id.* at 623.

## II. The Requested Discovery of Counsel Is Extraordinary, Unwarranted, and Runs Counter to the Presumption Against Discovery of Litigation Counsel

Although they style their motion as one for "limited" discovery, Defendants in fact offer no concrete boundaries at all. They identify no specific deponents, no targeted requests, and no delineation of discovery topics. Without that information, there is no foundation at all for "good cause." For this reason alone, Defendants' Motion should be denied.

Identifying discrete discovery requests is also necessary because depositions and similar invasive discovery of litigating counsel is an extraordinary request, obviously implicating the work

product and attorney-client privileges, and Defendants bear the "heavy burden of proving the necessity of such a deposition." *Will ex rel Gen. Dynamics Corp. Sav. & Stock Inv. Plan v. Gen. Dynamics Corp.*, 2007 WL 3145058, at *3 (S.D. Ill. Oct. 25, 2007) (collecting cases). Indeed, just last year, a district court reversed a magistrate judge's ruling ordering depositions of class counsel as clearly erroneous, quoting counsel's representation that "[c]ounsel finds no precedent from any jurisdiction ever having permitted the deposition of putative class counsel predicate to certification." *Gamboa v. Kiss Nutraceuticals*, 2024 WL 4277909, at *4 (D. Colo. Sept. 23, 2024) (denying deposition of class counsel despite defendants' arguments that plaintiffs had inconsistent allegations regarding a pro bono legal services clinic that class counsel not only attended, but spoke directly to the defendant without his lawyer present). Indeed, the advisory committee notes to the Federal Rules of Civil Procedure expressly warn against providing defendants in class actions this type of discovery. Fed. R. Civ. P. 23(g) (2003 advisory committee notes) ("Some information relevant to class counsel appointment may involve matters that include adversary preparation in a way that should be shielded from disclosure to other parties. An appropriate protective order may be necessary to preserve confidentiality.").[2]

These concerns of undue intrusion into the work product of class counsel are even greater in the context of a class action setting when defendants are purporting to be the defenders of the class. *See, e.g.*, *Reliable Money Ord.*, 704 F.3d at 499 ("[T]he ABA Model Rules, the Illinois Rules, and the Wisconsin Rules all warn that 'the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.'"); *Eggleston*, 657 F.2d at 895 ("[I]t is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house.").

---

[2] Defendants cite (at Mot 2 n.2) the heavily redacted opinion in *In re Santa Fe Nat'l Tobacco Co. Mktg. & Sales Practices & Products Liab. Litig.*, 2018 WL 4200315, at *18 (D.N.M. Aug. 31, 2018), for the proposition that the Court can order the production of material to an "adverse party" without explaining that, in that case, the "adverse party" in question was another plaintiff's counsel after a co-lead plaintiff counsel agreement disintegrated.

Tellingly, *none* of the cases Defendants cite in support of their argument that discovery into class counsel is appropriate permitted the kind of far-reaching discovery Defendants apparently seek here. For instance, as explained above, *Stock v. Integrated Health Plan* quashed the request entirely. Other courts, even in the face of supposed ethical violations, granted only narrow discovery of the type Defendants could have sought long ago. *See Bouissey v. Swift Trans. Co.*, 2022 WL 3013070, at *8 (C.D. Cal. June 21, 2022) (quashing document requests and narrowing interrogatories seeking class counsel's prior class certification experience); *Chapman v. First Index, Inc.*, 2012 WL 13207962, at *4 (N.D. Ill. Feb. 14, 2012) (permitting only narrow discovery on class counsel recently disqualified by the Seventh Circuit in another similar case while noting "we have not found – and defendant has not pointed us to – any decision endorsing the wide-ranging temporal and substantive scope of information currently sought"); *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, 2007 WL 1521117, at *9 (S.D.N.Y. May 24, 2007) (quashing document requests and permitting just two interrogatories seeking the identification of prior class and employment cases counsel handled); *Brown v. Tax Ease Lien Servicing, LLC*, 2017 WL 6939338, at *15-16 & n.48, *18 (W.D. Ky. Feb. 16, 2017) (permitting discovery only as to plaintiffs' counsel prior class experience and solicitations to potential class members while also noting that the magistrate quashed defendants' request to depose counsel); *E. Maine Baptist Church v. Regions Bank*, 2007 WL 1445257, at *2 (E.D. Mo. May 10, 2007) (not addressing depositions and denying broad discovery seeking "All documents of any communications . . . regarding your representation of the plaintiffs in the Lawsuit" despite law firm's connection to defendants who had financed prior class counsel who were removed by the Missouri Supreme Court).[3]

In sum, Rule 23(g) does not create a gaping exception that permits depositions, document requests, and interrogatories of litigation counsel on the loosest allegations of misconduct. To hold

---

[3] The discovery requests the court granted in *Eastern Maine Baptist Church* and Defendants (at Mot. n.1) highlight in their explanatory parenthetical relate to plaintiff counsel's clearly

otherwise would run counter to courts' repeated admonishments to beware defendants' claims of guardianship, *see Eggleston*, 657 F.2d at 895, and invite abusive and burdensome fishing expeditions that only serve to cause undue delay.

### III. The Issues Raised Have No Bearing on, and Thus Should Not Delay, Resolving Class Certification

The Seventh Circuit directs that it is the rare ethical breach, typically resulting in "direct conflict between counsel and the class," that "justifies the grave option of denying class certification." *Reliable Money Ord.*, 704 F.3d at 498. And contrary to Defendants' misleading quotation of *Physicians Healthsource, Inc. v. Allscripts Health Solutions, Inc.*, Mot. at 3, "misconduct not prejudicing the class" requires denial of class certification *not in all instances* but only when it "jeopardized the integrity of the judicial process," such as through misrepresentations of the merits. 254 F. Supp. 3d 1007, 1032 (N.D. Ill. 2017); *see also Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323–24 (11th Cir. 2008) ("[E]ven had it found that Busby's counsel's conduct violated [a state ethics rule], the district court was not then required to find [class counsel] inadequate to represent the class. In the event that class counsel does act improperly, '[t]he ordinary remedy is disciplinary action against the lawyer and remedial notice to class members, not denial of class certification.'" (*quoting Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927, 932 (7th Cir. 1972))); *Endo v. Albertine*, 147 F.R.D. 164, 170–71 (N.D. Ill. 1993) ("In any case, while we do not in any way condone [the class attorney's] conduct, there are other procedures in place to thwart such conduct other than denying class status to claimants who have alleged actionable claims."); *Church v. Van Buren Cnty.*, 2023 WL 9064859, at *3 (W.D. Mich. Oct. 26, 2023) (refusing to decertify class counsel or disqualify class counsel on allegations of breaching ethical rules such as directly soliciting clients and communicating with unrepresented persons); *Decastro*

---

unprivileged communications with the defendant who financed the lawsuit. *See* 2007 WL 1445257, at *3 (describing requests No. 2 through 6).

*v. City of New York*, 2019 WL 4509027, at *11 n.12 (S.D. N.Y. 2019) (observing that "most courts … have directed the defendants to bring any ethical complaints they have in the proper legal disciplinary forums and have not barred class certifications grounded on any determination of the merits of such ethical complaints") (citing 1 NEWBERG ON CLASS ACTIONS § 3:78 (5th ed. 2018)). Because none of the alleged misrepresentations here implicates the "integrity of the judicial process" regarding the merits or creates the type of direct conflict that would cause counsel to litigate the case contrary to the class's interests, they are irrelevant for class certification.

At bottom, Defendants' purported concerns have nothing to do with the actual requirements of Rule 23, and they offer no reason to believe the class itself has been harmed, misled, or inadequately represented. Especially because the Court retains the authority to decertify the class or replace class counsel should that become necessary, there is no basis to delay or derail class certification due to unsubstantiated accusations. The best interests of the class favor moving forward expeditiously.

## CONCLUSION

Plaintiffs respectfully submit, for the foregoing reasons, that the Court should deny Defendants' Motion for Limited Discovery.

Dated: July 9, 2025                    Respectfully Submitted,

*/s/ Robert D. Gilbert*                 */s/ Edward J. Normand*
Robert D. Gilbert                       Devin "Vel" Freedman
Elpidio Villarreal                      Edward J. Normand
Robert S. Raymar                        Richard Cipolla
David S. Copeland                       Joseph Delich
Natasha Zaslove                         **FREEDMAN NORMAND**
**GILBERT LITIGATORS &**                 **FRIEDLAND LLP**
 **COUNSELORS, PC**                     155 E. 44th Street, Suite 915
11 Broadway, Suite 615                  New York, NY 10017
New York, NY 10004                      Tel: (646) 494-2900
Tel: (646) 448-5269                     vel@fnf.law
rgilbert@gilbertlitigators.com          tnormand@fnf.law
pdvillarreal@gilbertlitigators.com      rcipolla@fnf.law

10

rraymar@gilbertlitigators.com
dcopeland@gilbertlitigators.com
nzaslove@gilbertlitigators.com

/s/ Eric L. Cramer
Eric L. Cramer
David Langer
Jeremy Gradwohl
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
ecramer@bm.net
dlanger@bm.net
jgradwohl@bm.net

Richard Schwartz
**BERGER MONTAGUE PC**
1720 W Division
Chicago, IL 60622
Tel: (773) 257-0255
rschwartz@bm.net

jdelich@fnf.law

Ivy Ngo
**FREEDMAN NORMAND
 FRIEDLAND LLP**
1 SE 3d Avenue, Suite 1240
Miami, FL 33131
Tel: (786) 924-2900
ingo@fnf.law

Daniel J. Walker
Robert E. Litan
Hope Brinn
**BERGER MONTAGUE PC**
1001 G Street, NW, Suite 400 East
Washington, DC 20001
Tel: (202) 559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

*Counsel for Plaintiffs*