# EXHIBIT 200

**Subject:** [Fwd: Re: [Fwd: Parental contribution]]
**From:** Thomas Keane <tok2@cornell.edu>
**Date:** Wed, 23 Jan 2008 09:49:45 -0500
**To:** Susan Hitchcock <sh54@cornell.edu>

fyi

-------- Original Message --------
**Subject:** Re: [Fwd: Parental contribution]
**Date:** Wed, 23 Jan 2008 08:47:26 -0500
**From:** Thomas Keane <tck2@cornell.edu>
**Organization:** Office of Financial Aid and Student Employment
**To:** Doris Davis <dd72@cornell.edu>, David Harris <deputyprovost@cornell.edu>, Carolyn Ainslie <cna1@cornell.edu>, Biddy Martin <cam18@cornell.edu>
**References:** <47972B49.4040800@cornell.edu>

Hi all—the Consensus Approach to Need Analysis, developed by the 568 Group of schools, originally chaired by Hunter Rawlings, grew from the formula described by the attached flowchart. Since the end of the Ivy Compare days, a greater amount of variation grew around the definition of many of the variables in the formula, and how to verify/confirm certain variables. For example, the definition of home equity has evolved over that time, as well as the treatment of student assets. Reported home value minus debt is the simple definition of home equity, but most of us believed that families underreported the value, so we employed a "home value multiplier" index that we received from the federal government. The index evaluated average home value growth over the years, such that we could take a home purchased in 1985 and calculate today's value to compare with the family reported value. We would use the greater of the two values in our formula. Over time, many of us believed that this evaluation was overtaxing families who stayed in their homes a long time, or lived in explosive home value areas, so we looked for a way to moderate that effect. Independently, schools were using a variety of methods, under the Consensus Approach, we met and agreed that home equity should be moderated in a specific, consistent way. Today, we limit home equity to 1.2 times family income. If you'd like an explanation of how we arrived at that number, I will have to do some research. I think it's suffices to say that there is a limit that we all agree upon.

With the student asset example, the old treatment was that any asset reported by students were taxed at 35%. Since the tax system gives a benefit to savings in a student's name, many parents were saving and putting that money into the child's name. The formula taxes parent assets at about 5%. Over the years, we heard over and over and over from families that our formula actually created a disincentive to save. To overcome that, as part of the Consensus Approach, we decided to treat student assets, if they were created by parent "gifts" or student earnings as family assets, and folded them into the parent "investment equity" variable, which significantly reduced the impact of those dollars on the family contribution.

While we have many students whose parent contribution is zero, we arrived at that conclusion by putting the family's data through the same analysis and evaluation as any other family, so no, we don't simply forgive a parent contribution.

I hope this helps.

Tom


Doris Davis wrote:

> Hi Tom and Sue,
>
> Can one of you weigh in on this question from Biddy ASAP. You can respond to me or directly to Biddy, Carolyn and David Harris.
>
> Thanks—
>
> Doris

CONFIDENTIAL

CORNELL_LIT0000116174

**Subject:** [Fwd: Re: [Fwd: Parental contribution]]
**From:** Thomas Keane <tck2@cornell.edu>
**Date:** Wed, 23 Jan 2008 09:49:45 -0500
**To:** Susan Hitchcock <sh54@cornell.edu>

fyi

-------- Original Message --------
**Subject:** Re: [Fwd: Parental contribution]
**Date:** Wed, 23 Jan 2008 08:47:26 -0500
**From:** Thomas Keane <tck2@cornell.edu>
**Organization:** Office of Financial Aid and Student Employment
**To:** Doris Davis <dd72@cornell.edu>, David Harris <deputyprovost@cornell.edu>, Carolyn Ainslie <cna1@cornell.edu>, Biddy Martin <cam18@cornell.edu>
**References:** <47972B49.4040800@cornell.edu>

Hi all—the Consensus Approach to Need Analysis, developed by the 568 Group of schools, originally chaired by Hunter Rawlings, grew from the formula described by the attached flowchart. Since the end of the Ivy Compare days, a greater amount of variation grew around the definition of many of the variables in the formula, and how to verify/confirm certain variables. For example, the definition of home equity has evolved over that time, as well as the treatment of student assets. Reported home value minus debt is the simple definition of home equity, but most of us believed that families underreported the value, so we employed a "home value multiplier" index that we received from the federal government. The index evaluated average home value growth over the years, such that we could take a home purchased in 1985 and calculate today's value to compare with the family reported value. We would use the greater of the two values in our formula. Over time, many of us believed that this evaluation was overtaxing families who stayed in their homes a long time, or lived in explosive home value areas, so we looked for a way to moderate that effect. Independently, schools were using a variety of methods, under the Consensus Approach, we met and agreed that home equity should be moderated in a specific, consistent way. Today, we limit home equity to 1.2 times family income. If you'd like an explanation of how we arrived at that number, I will have to do some research. I think it's suffices to say that there is a limit that we all agree upon.

With the student asset example, the old treatment was that any asset reported by students were taxed at 35%. Since the tax system gives a benefit to savings in a student's name, many parents were saving and putting that money into the child's name. The formula taxes parent assets at about 5%. Over the years, we heard over and over and over from families that our formula actually created a disincentive to save. To overcome that, as part of the Consensus Approach, we decided to treat student assets, if they were created by parent "gifts" or student earnings as family assets, and folded them into the parent "investment equity" variable, which significantly reduced the impact of those dollars on the family contribution.

While we have many students whose parent contribution is zero, we arrived at that conclusion by putting the family's data through the same analysis and evaluation as any other family, so no, we don't simply forgive a parent contribution.

I hope this helps.

Tom


Doris Davis wrote:

> Hi Tom and Sue,
>
> Can one of you weigh in on this question from Biddy ASAP. You can respond to me or directly to Biddy, Carolyn and David Harris.
>
> Thanks--
>
> Doris

CONFIDENTIAL

CORNELL_LIT0000116175

-------- Original Message --------
Subject: Parental contribution
Date: Wed, 23 Jan 2008 00:57:29 -0500
From: Biddy Martin <cam18@cornell.edu>
To: David Harris <deputyprovost@cornell.edu>, Carolyn Ainslie <cna1@cornell.edu>, "Davis, Doris" <dd72@cornell.edu>

Hi, I need to understand what underlying assumptions determined the consensus about how universities would calculate the parental contribution. For example, is it based on an assumption that families should be able to pay a certain percent of income, given a particular mix of income, assets, children in college, etc. Or that they should shoulder a certain percent of total cost, given certain income and asset levels?

Do we ever simply forgive or eliminate parental contribution?

Biddy

Carolyn Martin
Provost
Cornell University
300 Day Hall
(607)255-2364


--
Doris Davis
Associate Provost
Admissions & Enrollment
Cornell University


--
Thomas C. Keane, Director for Scholarships and Policy Analysis
Office of Financial Aid and Student Employment
203 Day Hall
Ithaca, NY 14853
607-255-5147


--
Thomas C. Keane, Director for Scholarships and Policy Analysis
Office of Financial Aid and Student Employment
203 Day Hall
Ithaca, NY 14853
607-255-5147

CONFIDENTIAL

CORNELL_LIT0000116176