# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, <br><br> Defendants. | Case No. 1:22-cv-00125 <br><br> Hon. Matthew F. Kennelly |

# PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................................................... ii

LEGAL STANDARD ............................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

CONCLUSION .......................................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**

*Bromfield v. Bronx Lebanon Special Care Ctr., Inc.*,
   2023 WL 2706989 (S.D.N.Y. Mar. 30, 2023) ................................................................... 4

*Fox v. Riverview Realty Partners*,
   2014 WL 1613022 (N.D. Ill. Apr. 22, 2014) (Kennelly, J.) ...................................................... 2

*In re Auto. Parts Antitrust Litig.*,
   2019 WL 7877812 (E.D. Mich. Dec. 29, 2019)....................................................................... 8

*In re Stericycle Sec. Litig.*,
   35 F.4th 555 (7th Cir. 2022).................................................................................................... 3

*People Who Care vs. Rockford Bd. of Educ.*,
   90 F.3d 1307 (7th Cir. 1996)................................................................................................... 7

*Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*,
   254 F. Supp. 3d 1007 (N.D. Ill. 2017). .................................................................................. 1

*Reliable Money Ord., Inc. v. McKnight Sales Co.*,
   704 F.3d 489 (7th Cir. 2013)............................................................................................ 1, 2

*Skelton v. Gen. Motors Corp.*,
   860 F.2d 250 (7th Cir. 1988) .................................................................................................. 6

*Stock v. Integrated Health Plan, Inc.*,
   241 F.R.D. 618 (S.D. Ill. 2007)............................................................................................... 2

**Other Authorities**

REUTERS, *More lawyers join the $3,000-an-hour club, as other firms close in*
   (Feb. 27, 2025)....................................................................................................................... 7

The fundamental issue as to the adequacy of Class Counsel is: What is in the best interests of the Class? Defendants make the unfounded procedural argument that *they* seek to protect the Class when their ethical duties are to represent their clients *against the Class*. Defendants advance the baseless substantive argument that the Court should either deny class certification, and effectively end the case, or remove the counsel who know it best and who have produced nearly $320 million in settlements. Without *attempting* to meet the relevant standards, Defendants ask this Court to make unreasonable and improper inferences from cherry-picked, biased, or misconstrued evidence, while ignoring the evidence compelling contrary conclusions.

Given their specialized knowledge of the facts and the record in this case, Class Counsel are best suited to prosecute this case through trial and appeal. Their removal would serve the interests of only five entities: the non-settling Defendants. Indeed, the removal Defendants seek would, at minimum, set the class back by many months and interject the very inefficiency (as new counsel try to learn the voluminous record and all manner of institutional knowledge) that defense counsel claim to decry. Defendants have not come close to documenting fraud, wrongdoing, or any other conduct warranting a finding that Class Counsel are anything other than "adequate" under Federal Rules of Civil Procedure 23(a) and (g).

## **LEGAL STANDARD**

In considering whether alleged unethical conduct renders class counsel inadequate, courts must first determine whether such misconduct took place. And even if it occurred, it would bear upon adequacy only if the conduct: (1) prejudices the class; (2) results in a direct conflict between counsel and the class; or (3) jeopardizes the court's ability to reach a just and proper outcome.[1] Courts are skeptical of defendants who claim, like Defendants here, to be acting in the interests of

---

[1] *See, e.g.*, *Reliable Money Ord., Inc. v. McKnight Sales Co.*, 704 F.3d 489, 499 (7th Cir. 2013); *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007, 1032 (N.D. Ill. 2017).

the class by challenging the ethics of class counsel. *See, e.g.*, *Stock v. Integrated Health Plan, Inc.*, 241 F.R.D. 618, 623 (S.D. Ill. 2007). The court should be skeptical of defendants using ethics as a "procedural weapon," *Reliable Money*, 704 F.3d at 499, because defense counsel are ethically bound to represent *their own* clients "zealously," and it is in their clients' interests to avoid class certification or disqualify opposing counsel. Defendants here do not raise, let alone prove, any issues creating the requisite "serious doubt that counsel will represent the class loyally." *Fox v. Riverview Realty Partners*, 2014 WL 1613022, at *10 (N.D. Ill. Apr. 22, 2014) (Kennelly, J.).[2]

## ARGUMENT

Defendants do not meet (or even try to meet) the standards for proving that Class Counsel committed fraud or are in any way inadequate. *Cf. Fox*, 2014 WL 1613022, at *10 (where "Defendants do not offer any authority by which to judge their allegations" of inadequacy). They also fail to show that Class Counsel engaged in any misconduct *at all*.

*First*, there is no evidence that Class Counsel billed for tasks they did not do or for time they did not expend. ███████████████████████████████████████████

████████████████████████████████ And Mr. Bach-y-Rita later twice endorsed Class Counsel's fee applications. Defendants improperly cherry pick from his speculative and biased testimony about what he understood *six months* before the first fee declaration at issue. They claim (at 1), for example, that ███████████████████████████████████████████████████

███████████████████████████████████████████ But Mr. Bach-y-Rita admitted ███████████████████████████████████████████████████████████████

████████████████████████████████████ He was an associate working remotely and not part

---

[2] The typical examples include (1) "attempts to bribe potential witnesses" and (2) a failure "to correct a witness's false deposition testimony despite knowing its falsity." *Reliable Money*, 704 F.3d at 499. Defendants' own cited cases present similarly grave examples of conduct not even allegedly at issue here.

of the senior leadership team. It is also unreasonable to take at face value the speculation of a disgruntled and biased witness who made good on his threats to raise purported "concerns" with the Court only after a failed mediation relating to his own pay. ECF No. 879 at 1.[3]

The Seventh Circuit sensibly cautions against crediting concerns raised by disgruntled co-counsel and employees. *See* ECF No. 910 at 5-6 (collecting cases); *see also In re Stericycle Sec. Litig.*, 35 F.4th 555, 559 (7th Cir. 2022) (noting risk that "complaints" from disgruntled co-counsel "frequently contain allegations that range from exaggerated to wholly fabricated" (internal quotation marks omitted)). Indeed, given the opportunity to bring to court all supporting documentation, Mr. Bach-y-Rita brought *no* documents post-dating October 2023. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ but presented no written proof of it. Put differently: a well-trained and educated litigator apparently took no steps to document alleged concerns of fraud.

*Second*, the inference-upon-inference that Defendants seek to draw does not support their alternative theory, *which Mr. Bach-y-Rita did not even advance*, that Class Counsel agreed to reallocate workload from GLC to FNF and BMPC as a quid pro quo for not disclosing GLC's supposed overbilling. After their co-counsel addressed GLC's lodestar in October 2023, Class Counsel resolved the issue ethically and professionally in the best interests of the Class. GLC's vigorous rebuttal, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, exemplifies Class Counsel's salutary internal debate. Defendants ignore ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in their entirety.[4] Given

---

[3] On June 16, 2025, mediation between FNF and Mr. Bach-y-Rita failed. The next day his counsel contacted Class Counsel threatening to allege ethical violations *unless* the upcoming hearing regarding class settlements were postponed. This was an improper attempt to leverage accusations of misconduct for the benefit of Mr. Bach-y-Rita in his private arbitration. ECF No. 879 at 1.

[4] Defendants falsely represent (at 12) that "all the evidence points in one direction." This misconduct compounds the Defendants' prior "concealment"—the Court's words—of the obviously relevant facts that, post-complaint, the U.S. Department of Justice not only had noticed the depositions of several of the Defendants regarding their conduct under the 568 Exemption, but also had *taken* several of those depositions. The Court described this misconduct as "dirty pool." 7/24/23 Hr'g Tr. 48:12-13. It was, in fact, the intentional concealment of facts designed to prevent Plaintiffs from uncovering evidence that would

3

that ▮▮▮▮▮▮▮▮ is followed by the lead lawyers from FNF and BMPC submitting the lodestar of all three firms in the fee petitions, as part of the lodestar cross-check, Class Counsel clearly concluded that GLC's lodestar and work rate were commensurate with the breadth, importance, and urgency of their tasks in the context of the case's overall needs.

Defendants assume that Class Counsel withheld information from the Court (about, *inter alia*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) in submitting the fee petitions. This ignores that the declarations Class Counsel submitted with the fee applications in this case in fact disclosed an enormous amount of timekeeper information—including the rates (as they changed over time) for each timekeeper, the total number of hours worked by each timekeeper by year, and significant detail about the roles each firm played and the tasks each firm performed. Indeed, a fair reading of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. But Class Counsel decided that (a) GLC's time was legitimate and necessary, and in any event (b) the appropriate path involved *transparency and disclosure*.[5]

In that regard, Defendants misleadingly claim that "FNF and BMPC found ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮.'" Opp. at 2 (quoting Ex. 2 at 1)). This misrepresents the email at issue, from October 1, 2023, which did not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 2 at 1. What Defendants deceptively omit is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

allow the Court to "perform in the usual manner its impartial task of adjudging cases." *Bromfield v. Bronx Lebanon Special Care Ctr., Inc.*, 2023 WL 2706989, at *2 (S.D.N.Y. Mar. 30, 2023).

[5] Defendants cite, for example, the 2,935 hours Mr. Gilbert billed in 2023 as purported evidence of inefficiency. But the reason they have that information is that Class Counsel *disclosed* it in their fee petitions. That disclosure reflects the commitment of Class Counsel to hard work on the behalf of the Class *and* transparency about that work.

4

███████. Ex. 2 at 1. Instead, the potential ████████████████████ *id.*, which is why *none* of the subsequent correspondence ██████████████████████████████████████████████████████████████████████████████. The reasonable conclusion from this evidence, including the sworn declarations from the fee applications filed months later, is that no one concluded GLC's hours were improper and that the appropriate course of action was *to disclose GLC's hours and rates to the Court*.

*Third*, Defendants make the equally spurious claim (at 2 n.1) that counsel misrepresented the undefined ████████████ referenced in ███████████████. Defendants here ascribe meaning to the phrase with *no evidence* of what Class Counsel understood it to mean, and they afford no weight to ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Confirming Class Counsel's point, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. That would come later.

*Fourth*, despite ████████████████████████████████ (which Defendants ignore) and Class Counsel's sworn fee declarations (which Defendants decline to take at face value), Defendants assume that any inconsistencies between ███████████████ ████ and the sworn declarations must be evidence of fraud. This conclusion is logically deficient and wildly insulting. It depends on these implausible premises: (1) over a dozen attorneys submitted knowingly inflated hours to the Court in the fee applications; (2) these attorneys did so despite understanding that lodestar is used merely as a cross-check and that "fee awards in antitrust

5

cases in this Circuit are almost always one-third," ECF No. 679; (3) these attorneys continued to participate in an *ongoing* fraud even during the period when their actions were being challenged; (4) these same attorneys, who supposedly inflated lodestar, nevertheless presented conservative historical hourly rates in the application, rather than the current rates they were entitled to submit, *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 255 (7th Cir. 1988); and (5) *none* of the rebuttals in ███████████████████, could reasonably be credited at all.

The *reasonable* inferences contradict Defendants' "logic." ███████████████████████████████████████████████████████████████████████████████████████████████████████.[6] ███████, and other undisputed facts in the record, compel the following conclusions:

- ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

- ███████████████████████████████████████████████████████████████████████████████████████████████████████

- GLC took the lead in 2022-23 on researching and drafting briefs pertaining to the impact of wealth favoritism on the viability of the 568 Exemption, on documentary and other discovery of Defendants on that topic, and on numerous motions and frequent arguments about confidentiality and issues related to the Family Educational Rights and Privacy Act (FERPA). *See* ECF No. 679-3 ¶ 3; ECF No. 830-4 ¶ 3; ███████████████

- GLC attorneys first-chaired 23 fact depositions, including of key witnesses such as 568 Group Chairpersons, and second-chaired an additional 7 depositions. *See* ECF No. 679-3 at 5-8 (summarizing depositions taken and work performed).

---

[6] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

- ███████████████████████████████████
  ███████████████████████████████████
  ███████████████████████████████████
  ███████████████████████████████████

Defendants' quibble (at 3-4) with the billing rates of two GLC timekeepers, who were also litigation partners at Hellring Lindeman Goldstein & Siegal, LLP and for whom only 1,405.8 hours were submitted, does not support "inadequacy." Their rates were "usual and customary" for lawyers of their seniority in complex class action antitrust matters.[7] Their rates were approximately *$1,000 lower per hour* than the publicly reported rates of defense counsel.[8] GLC's description of their work compels the conclusion that these lawyers did work *in this case* justifying their rates.[9]

The rates GLC set for Mr. Moloshok (and Mr. Etterman) are in no way unusual, and the bankruptcy cases Defendants flag, with lower rates, were of a very different magnitude than this case (for example, the $140,000 collected in *Hollender*). Moloshok Decl. ¶ 10.[10] Lawyers

---

[7] Defendants misapprehend counsel's use of the word "customary." Its primary meaning is "things that people usually do in a particular society or in particular circumstances." COLLINS DICTIONARY. It refers here to what is common in the national antitrust class action field, as well as to what GLC determined to be the firm's rates for such matters—GLC thus further referred in the fee petition to rates "used by my firm in similar contingent complex litigation or other matters," such as ████████████████████████████
████████████████████████
Declaration of Matthew E. Moloshok ¶ 9. Defendants' argument that GLC has no "usual and customary" rates because it had no other cases (which is not correct) also takes Defendants nowhere. In such case, the Court is to look to "the rate charged by lawyers in the community of reasonably comparable skill, experience, and reputation." *People Who Care vs. Rockford Bd. of Educ.*, 90 F.3d 1307,1310 (7th Cir. 1996) (quotation omitted).
[8] *See, e.g.*, REUTERS, *More lawyers join the $3,000-an-hour club, as other firms close in* (Feb. 27, 2025) ("Some partners at Kirkland & Ellis, ranked the highest-grossing U.S. law firm by The American Lawyer, said in December they would bill at $2,675 an hour this year, up from $2,445 in 2024.").
[9] *See* ECF No. 679-3, Ex. A; ECF No. 830-4, Ex. A; Moloshok Decl. ¶ 7. ████████████████
████████████████████████████████████████████████████████████████████████

[10] Mindful of the Court's guidelines, Class Counsel asked Mr. Moloshok to limit his declaration to a very few subjects. The Court may reasonably infer from ███████████████████████████ and material in the record (including the fee declarations and supporting materials) that Messrs. Moloshok and Etterman were handling complex, senior level work; the work they were doing was necessary and valuable; Mr. Gilbert trusted them to do this work and had worked with them for decades; and they were among the GLC lawyers working long hours to benefit the Class.

7

"routinely" charge much more for conducting complex antitrust litigation. *See, e.g.*, *In re Auto. Parts Antitrust Litig.*, 2019 WL 7877812, at *233-34 (E.D. Mich. Dec. 29, 2019).

Finally, Defendants' focus on GLC's "contingency" and "risk" is also meritless. GLC incurred extraordinary risk and "with no guarantee of recovery," ▬▬▬▬ Instead, as this Court recognized, ▬▬▬▬ ; and "fee awards in antitrust cases in this circuit are almost always one-third." ECF No. 679 at 5. The Court did not even rely here on billing records. 7/11/25 Hr'g Tr. at 18:21-18:24.

## CONCLUSION

Class Counsel have achieved extraordinary results over strenuous opposition. Defendants have fallen far short of the standards for showing they are inadequate. The Court should grant Plaintiffs' Motion for Class Certification and appoint Class Counsel as requested.

---

[11] The fee declarations show GLC devoted over 915 hours to the case *before* January 1, 2022. ECF No. 679-3, Ex. A. The Complaint was filed on January 9, 2022, ECF No. 1. ▬▬▬▬

[12] The descriptions of the firms working on a "contingent" basis referred, accurately, to the agreements *with the clients* and ▬▬▬▬

Dated: September 18, 2025                      Respectfully Submitted,

| | |
|---|---|
| /s/ Robert D. Gilbert | /s/ Edward J. Normand |
| Robert D. Gilbert | Devin "Vel" Freedman |
| Elpidio Villarreal | Edward J. Normand |
| Robert S. Raymar | Richard Cipolla |
| David S. Copeland | Joseph Delich |
| Natasha Zaslove | **FREEDMAN NORMAND** |
| **GILBERT LITIGATORS &** | **FRIEDLAND LLP** |
| **COUNSELORS, P.C.** | 155 E. 44th Street, Suite 915 |
| 11 Broadway, Suite 615 | New York, NY 10017 |
| New York, NY 10004 | Tel: (646) 494-2900 |
| Tel: (646) 448-5269 | vel@fnf.law |
| rgilbert@gilbertlitigators.com | tnormand@fnf.law |
| pdvillarreal@gilbertlitigators.com | rcipolla@fnf.law |
| rraymar@gilbertlitigators.com | jdelich@fnf.law |
| dcopeland@gilbertlitigators.com | |
| nzaslove@gilbertlitigators.com | Ivy Ngo |
| | **FREEDMAN NORMAND** |
| /s/ Eric L. Cramer | **FRIEDLAND LLP** |
| Eric L. Cramer | 1 SE 3d Avenue, Suite 1240 |
| David Langer | Miami, FL 33131 |
| Jeremy Gradwohl | Tel: (786) 924-2900 |
| **BERGER MONTAGUE PC** | ingo@fnf.law |
| 1818 Market Street, Suite 3600 | |
| Philadelphia, PA 19103 | Daniel J. Walker |
| Tel: (215) 875-3000 | Robert E. Litan |
| ecramer@bergermontague.com | Hope Brinn |
| dlanger@bergermontague.com | **BERGER MONTAGUE PC** |
| jgradwohl@bergermontague.com | 1001 G Street, NW, Suite 400 East |
| | Washington, DC 20001 |
| Richard Schwartz | Tel: (202) 559-9745 |
| **BERGER MONTAGUE PC** | rlitan@bergermontague.com |
| 110 N. Wacker Drive | dwalker@bergermontague.com |
| Chicago, IL 60606 | hbrinn@bergermontague.com |
| Tel: (773) 257-0255 | |
| rschwartz@bergermontague.com | |

*Counsel for Plaintiffs and the Proposed Class*

9