**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>Defendants. | Case No. 1:22-cv-00125<br><br>Hon. Matthew F. Kennelly |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING <u>LITIGATION FUNDING AND RISK</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 1

I. CLASS COUNSEL HAVE BEEN WORKING ON A "CONTINGENT" BASIS ........ 1

II. IN PURSUING A CASE ON CONTINGENCY WITH THIRD-PARTY FUNDING, THE LAW FIRM AND FUNDER JOINTLY SHARE THE "RISK" ........ 2

III. CLASS COUNSEL TOOK ON "SUBSTANTIAL RISK" IN THIS CASE ........ 3

CONCLUSION ........ 5

# TABLE OF AUTHORITIES

**Cases**

*Chicago Mercantile Exch., Inc. v. Tech. Research Grp., LLC*,
721 F. Supp. 2d 785 (N.D. Ill. 2012) .......... 4

*Loop LLC v. CDK Global, LLC*,
2025 WL 1233205 (W.D. Wis. Apr. 29, 2025) .......... 5

*Sky Harbor Atlanta Northeast, LLC v. Affiliated FM Ins. Co.*,
2024 WL 4370723711th Cir. Oct. 2, 2024) .......... 4

*United States v. Wells*,
38 F.4th 1246 (10th Cir. 2022) .......... 4

**Other Authorities**

N.D. Ill. Local Rule 83.50.2(3) .......... 2

5 NEWBERG & RUBINSTEIN ON CLASS ACTIONS § 15:73 (6th ed. 2022) .......... 1

*Cause of Action by Attorney for Recovery of Fee Under Contingent Fee Contract*,
74 Causes of Action 2d 1 (Sept. 2025 update) .......... 1

*Client Alignment and Litigation Funding: Some Musings of a Former Firm Chairman*,
37 No. 13 Civ. RICO Rep. 5 (Mar. 2022) .......... 2, 3

*How to Succeed in Litigation Every Time: Best Practices from Both a Plaintiff & Defense Perspective*, AHLA SEMINAR PAPERS, 20220626 ALHLA-SEM 14 (June 26, 2022) .......... 3

J. Kalajdzic *et al.*, *The (Un)intended Consequences of Legal Transplants: A Comparative Study of Standing in Collective Litigation in Five Jurisdictions*,
17 J. Tort L. 149 (2024) .......... 2

M. Blum, *Financial Management in a Contingent Fee Practice*, PLAINTIFF (Aug. 2007) .......... 3

R. Goral, *The Law of Interest Versus the Interest of Law, or on Lending to Law Firms*,
29 Georgetown J. Legal Ethics 253 (2016) .......... 2, 4

Stephanie Ben-Ishai & Emily Uza, *A Canadian Lens on Third Party Litigation Funding in the American Bankruptcy Context*, 93 Chi.-Kent L. Rev. 631 (2018) .......... 2

## INTRODUCTION

In seeking approval of settlements and fees, Class Counsel accurately represented that they were working on a "contingent" basis and incurred "substantial risk." Defendants cite no case (and Plaintiffs are aware of none) in which a court found proposed class counsel inadequate because they relied on funding (or did not disclose it) in stating they faced risk. Under the funding arrangements at issue here, the firm and the funder are jointly incurring the risk of loss and delay. Moreover, and contrary to Defendants' central argument (at 1-3), this funding did not "free[] GLC of *any* risk of nonrecovery." In fact, the fee funding mitigated risk *only* for GLC and *only* to a limited extent. Indeed, fewer than *40%* of GLC's fees were funded, and fewer than *16%* of the fees for Class Counsel were funded. It thus is undisputed that almost *85%* of Class Counsel's fees were at risk. Defendants' arguments to the contrary misrepresent these facts and misapprehend the risks Class Counsel took on behalf of the Class. Defendants have contrived these arguments—as the law warns they would—to promote their own clients' interests by attempting to (a) deprive the Class of any further recovery and (b) disqualify successful and experienced opposing counsel.

## ARGUMENT

### I. CLASS COUNSEL HAVE BEEN WORKING ON A "CONTINGENT" BASIS

Class Counsel are working on a "contingent" basis, *see, e.g.*, ECF No. 679 at 17, because no client or class member is obligated to pay any fees unless there is a recovery. This fact reflects the conventional usage of "contingent fees that clients pay lawyers." 5 NEWBERG & RUBINSTEIN ON CLASS ACTIONS § 15:73 (6th ed. 2022).[1] The GLC funding agreements refer to GLC's obligation "to pursue the Funded Litigation to its completion on a 100% contingency basis," ECF

[1] *See also, e.g.*, *Cause of Action by Attorney for Recovery of Fee Under Contingent Fee Contract*, 74 Causes of Action 2d 1 (Sept. 2025 update) ("In a contingent fee arrangement between an attorney and his or her client, a client pays a contingent fee to the attorney only if the attorney successfully handles the case.").

No. 1146-1 ¶ 2.7, and state that GLC's "compensation in this matter is contingent." ECF No. 1146-2 ¶ 5.2.2. GLC's retention agreement with its client states that [REDACTED] [REDACTED] *Id.*, Ex. F. Given that the funding [REDACTED] documents themselves say the representation is "contingent," it is consistent, accurate, and proper for GLC (and Class Counsel) to say the same thing.[2] GLC's funding does not change its or other Class Counsel's contingent relationships with their clients.[3] In addition, a contingent representation includes lawyer-client agreements "under which the amount of the lawyer's compensation is contingent *in whole or in part* upon the successful completion of the subject matter of the agreement." N.D. Ill. Local Rule 83.50.2(3) (emphasis added). On this further basis, given that only partial funding is at issue, the GLC representation is "contingent" from any well-established perspective.

## II. IN PURSUING A CASE ON CONTINGENCY WITH THIRD-PARTY FUNDING, THE LAW FIRM AND FUNDER JOINTLY SHARE THE "RISK"

Given the risk of non-recovery, a firm working on a contingent basis often seeks to have a third-party litigation funder "share" that contingent risk on a case-specific basis.[4] In that scenario, the funder pays a portion of the firm's fees and expenses, in exchange for a payment (typically

---

[2] Consistent with these documents, in one instance, Mr. Gilbert described GLC as working on a "wholly contingent" basis. ECF No. 830-4 ¶ 5. In three other declarations, he described GLC as working on a "contingent" basis. *See* ECF Nos. 679-1 ¶ 6, 679-3 ¶ 4, 830-1 ¶ 7 n.1. There was no intent to mislead.

[3] Indeed, litigation funding "enables firms to expand the scope of contingency fee arrangements to allow firms to assume more risk." Stephanie Ben-Ishai & Emily Uza, *A Canadian Lens on Third Party Litigation Funding in the American Bankruptcy Context*, 93 Chi.-Kent L. Rev. 631, 640 (2018); *see also id*. (as a result of the "risking sharing" between law firm and the funder, "a greater portion of the population benefits by ensuring their case gets its day in court").

[4] *See, e.g.*, J. Kalajdzic *et al.*, *The (Un)intended Consequences of Legal Transplants: A Comparative Study of Standing in Collective Litigation in Five Jurisdictions*, 17 J. Tort L. 149, 201 (2024) (observing that "third party funders are now standing behind law firms and sharing risk with them"); *Client Alignment and Litigation Funding: Some Musings of a Former Firm Chairman*, 37 No. 13 Civ. RICO Rep. 5 (Mar. 2022) (a third-party litigation funder "shares the law firm's risk"); R. Goral, *The Law of Interest Versus the Interest of Law, or on Lending to Law Firms*, 29 Georgetown J. Legal Ethics 253, 262-63 (2016) ("Third-party litigation funding directed at law firms . . . focuses on those attorneys who, because of the business model of their practice, regularly require large amounts of working capital. They are primarily plaintiff attorneys representing clients on contingency . . . .").

based on a multiple of the fees and costs advanced) out of any recovery. With counsel taking the case on contingency, the funder is fronting cash at significant risk of not being paid back, or being paid back only in part, and only after years of delay, and counsel shoulders the risk of losing a substantial portion of its investment.[5] The funder and counsel are thus in a joint venture that is assuming the risk of non-recovery. Absent counsel's ability to recover a risk premium for the joint venture, the funder would not make the investment, and the premise of litigation funding would collapse.[6] In refusing to regard the funder and counsel as jointly shouldering risk, Defendants are attacking the well-settled propriety of third-party funding. If such funding meant that the counsel/funder venture was not incurring substantial risk, and thus constituted a basis for reducing firm recoveries (even below their lodestars), it would undermine such funding arrangements, and thereby prevent many law firms from taking on meritorious contingency matters.[7]

## III. CLASS COUNSEL TOOK ON "SUBSTANTIAL RISK" IN THIS CASE

Whether or not GLC and its funder are considered jointly, Class Counsel incurred substantial risk. "Risk" is defined as: "'The uncertainty of a result, happening, or loss; the chance

---

[5] *See, e.g.*, *How to Succeed in Litigation Every Time: Best Practices from Both a Plaintiff & Defense Perspective*, AHLA SEMINAR PAPERS, 20220626 ALHLA-SEM 14 (June 26, 2022) ("Litigation funding arrangements have many varieties, including participation between the law firm and the funding source, where the law firm shares some of the risk and potential recovery.").

[6] Such case-specific funding, moreover, is merely one example of how a law firm may rely on funding while bearing "risk." *See, e.g.*, M. Blum, *Financial Management in a Contingent Fee Practice*, PLAINTIFF (Aug. 2007). In addition to funding from law firm partners, firms may obtain general portfolio funding (in which a funder advances money for the firm's general use and receives a multiple if *any* of the firm's designated cases results in a recovery); or may obtain general loans (in which, for example, a bank loans money for a specific period of time, with interest). In the case of general portfolio funding, a risk is that the funder's multiple may reduce the firm's recovery below its full fees on any of a number of cases. In the case of general lending, a risk is that the firm lacks the money to pay back the loan when due and therefore faces a penalty (if the bank is willing to extend the loan) or even bankruptcy.

[7] *See, e.g.*, *Client Alignment*, *supra* ("In sum, litigation funding offers firms a potential upside that can exceed what they could earn from work handled solely on an hourly basis. . . . And, they can handle a broader array of matters than would come to them solely on their hourly fee basis.").

of injury, damage, or loss.'"[8] Under the finance definition, "risk" is the "'measurable possibility of losing or not gaining value.'"[9] [REDACTED] funded only 38.9% of GLC's billings (even though the agreement says 50%). ECF Nos. 1076 & 1090-1 at 8 n.11; ECF No. 1146-1 ¶ 2.2. GLC thus risked losing *more than 60%* of its invested time. On this basis, and in rejecting other possible cases to pursue this matter in which it was funded for less than 40% of its billings, GLC acted reasonably in concluding and representing that it faced substantial risk.[10]

Defendants are therefore wrong in asserting that Class Counsel misrepresented that they and GLC incurred substantial risk. It is true that as of October 2023, GLC's co-counsel *mistakenly believed* that *all* of GLC's fees were funded.[11] It was on the basis of these mistaken views that counsel initially and erroneously argued that GLC had taken minimal risk. In addition, FNF and BMPC took no such funding, and the 2023 emails did not address Class Counsel's risk profile as a whole.[12] Accordingly, as of November 30, 2024 (the time frame for the April 2025 request for fees), the GLC funding covered only *15.6%* of Class Counsel's total lodestar. *See* ECF No. 830-1

---

[8] *Sky Harbor Atlanta Northeast, LLC v. Affiliated FM Ins. Co.*, 2024 WL 43707237, at *8 (11th Cir. Oct. 2, 2024) (quoting BLACK'S LAW DICTIONARY (12th ed. 2024)); *accord United States v. Wells*, 38 F.4th 1246, 1265 (10th Cir. 2022).

[9] *Chicago Mercantile Exch., Inc. v. Tech. Research Grp., LLC*, 721 F. Supp. 2d 785, 803 (N.D. Ill. 2012) (quoting BARRON'S DICTIONARY OF FINANCE AND INVESTMENT TERMS 491 (4th ed. 1995)).

[10] The fee declarations show that GLC devoted over 915 hours to the case *before* January 1, 2022. ECF No. 679-3, Ex. A. The Complaint was filed on January 9, 2022, ECF No. 1, before GLC's first funder had provided any funding under its agreement, which it signed on January 12, 2022. *See* ECF 1146-1 at 13. GLC thereby also took on pre-lawsuit risk given the uncertainty as to whether the case would lose or gain value.

[11] In the email dated October 1, 2023, ECF No. 1021-2, [REDACTED] In the email dated October 18, 2023, ECF No. 1021-1, [REDACTED]

[12] To be clear, these firms did and do "fund" some firm costs through such mechanisms as partner loans to the firm, general portfolio funding, and bank loans/credit lines. Such "funding" does not remotely eliminate "risk," is irrelevant to a fee petition, and is a prerequisite for pursuing any significant contingency work. *See, e.g.*, *Goral*, *supra*, at 262-63 ("Lawyers whose net worth is stranded in lawsuits go about their cash flow volatility and demand for capital in the same way that any other business would: they look for financial backup. Unlike most other business, however, a lawyer's menu of capital sources is restricted.").

¶ 43. In short, the three firms collectively risked not recovering *84.4%* of their billings. That is substantial risk by any reasonable measure.

Finally, if plaintiffs' lawyers prosecuting class actions could recover fees only by disclosing funding for the court to parse risk (in assessing whether to award *any* lodestar multiplier), it would mean they would *always* need to disclose such funding.[13] But there is no such rule or guidance in this District. It follows that such funding does not alter the relevant risk profile and need not be disclosed.[14] Defendants also incorrectly imply that Class Counsel had an incentive to misrepresent the *extent* of their risk. It is true that higher risk can justify a high multiplier, *see, e.g.*, *Loop LLC v. CDK Global, LLC*, 2025 WL 1233205, at *3-4 (W.D. Wis. Apr. 29, 2025) (reviewing law on class counsel's argument, for a 5x multiplier, "that a high lodestar multiplier is appropriate for the risk they incurred in taking this case"), but Class Counsel here sought virtually *no* risk premium. That is, they sought no multiplier appreciably above their lodestars. *See id*. (distinguishing the fee award in this case because, far from a *high* multiplier, "the lodestar multiplier . . . was 1.35"); *see also* ECF No. 679 at 24. Class Counsel thus had no incentive to, and in fact did not, exaggerate their risk.

**<u>CONCLUSION</u>**

Plaintiffs respectfully submit that the Court should grant Plaintiffs' Motion for Class Certification and appoint Class Counsel as requested.

---

[13] If a firm with funding (whether direct or indirect) for "costs" could not properly seek recovery of those costs as "unreimbursed" under its fee agreement, as here, it would mean such costs could not be recovered—a proposition that finds no support in precedent and that reduces (again) to an argument against funding.

[14] Instead, this Court recognized, "the proposition that a plaintiffs' law firm in this kind of case would get litigation funding is old hat," 8/8/25 Hr'g Tr. at 36:19-20; and "fee awards in antitrust cases in this circuit are almost always one-third," ECF No. 679 at 5. The Court did not even rely here on billing records. 7/11/25 Hr'g Tr. at 18:21-18:24. Defendants also ignore the Court's approval of the settlements with Johns Hopkins and Caltech. With the prior ten settlements and approval of fees in place, the Court approved, with no objections, an award of one-third of the recovery. *See* ECF Nos. 884 & 924.

Dated: September 30, 2025

Respectfully Submitted,

/s/ Robert D. Gilbert
Robert D. Gilbert
Elpidio Villarreal
Robert S. Raymar
David S. Copeland
Natasha Zaslove
**GILBERT LITIGATORS & COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Tel: (646) 448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com
rraymar@gilbertlitigators.com
dcopeland@gilbertlitigators.com
nzaslove@gilbertlitigators.com

/s/ Eric L. Cramer
Eric L. Cramer
David Langer
Jeremy Gradwohl
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
ecramer@bergermontague.com
dlanger@bergermontague.com
jgradwohl@bergermontague.com

Richard Schwartz
**BERGER MONTAGUE PC**
110 N. Wacker Drive
Chicago, IL 60606
Tel: (773) 257-0255
rschwartz@bergermontague.com

/s/ Edward J. Normand
Devin "Vel" Freedman
Edward J. Normand
Richard Cipolla
Joseph Delich
**FREEDMAN NORMAND FRIEDLAND LLP**
155 E. 44th Street, Suite 915
New York, NY 10017
Tel: (646) 494-2900
vel@fnf.law
tnormand@fnf.law
rcipolla@fnf.law
jdelich@fnf.law

Ivy Ngo
**FREEDMAN NORMAND FRIEDLAND LLP**
1 SE 3d Avenue, Suite 1240
Miami, FL 33131
Tel: (786) 924-2900
ingo@fnf.law

Daniel J. Walker
Robert E. Litan
Hope Brinn
**BERGER MONTAGUE PC**
1001 G Street, NW, Suite 400 East
Washington, DC 20001
Tel: (202) 559-9745
rlitan@bergermontague.com
dwalker@bergermontague.com
hbrinn@bergermontague.com

*Counsel for Plaintiffs and the Proposed Class*