**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, <br><br> *Defendants*. | Case No. 1:22-cv-00125 <br><br><br> Hon. Matthew F. Kennelly |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO CERTIFY THE COURT'S SUMMARY JUDGMENT ORDER**
**<u>FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)</u>**

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................... 1

QUESTIONS FOR WHICH CERTIFICATION IS SOUGHT ...................................... 2

ARGUMENT .............................................................................................................. 2

I.     THE COURT SHOULD CERTIFY WHETHER THE STATUTE OF LIMITATIONS BARS PLAINTIFFS' PRE-2018 CLAIMS PURSUANT TO A "DISCOVERY RULE"................................................................................... 2

       A.     Whether The Statute Of Limitations Bars Pre-2018 Claims Is A "Controlling" Question ...................................................................... 2

       B.     Whether The Clayton Act's Statute Of Limitations Bars Pre-2018 Claims Is A Pure Question Of Law................................................................... 3

       C.     There Are Substantial Grounds For A Difference Of Opinion Regarding The Application Of The Statute Of Limitations ...................................... 5

       D.     Immediate Resolution Of The Statute Of Limitations Question Will Materially Advance The Ultimate Termination Of This Litigation........................ 8

II.     THE COURT SHOULD CERTIFY WHETHER A PLAINTIFF CAN ESTABLISH ANTITRUST INJURY BASED ON AN ALLEGED OVERCHARGE PAID BY A THIRD PARTY .......................................... 8

       A.     The Antitrust Injury Question Is Controlling............................................ 8

       B.     The Antitrust Injury Question Is A Pure Question Of Law .................................. 10

       C.     The Antitrust Injury Question Presents Substantial Grounds For A Difference Of Opinion ...................................................................... 11

       D.     Immediate Resolution Of The Antitrust Injury Question Will Materially Advance Termination Of The Litigation ................................................ 14

CONCLUSION............................................................................................................ 15

**INTRODUCTION**

Interlocutory review is appropriate for consequential, unsettled questions of law that can meaningfully advance the termination of litigation. 28 U.S.C. § 1292(b). The Court's summary judgment decision (Dkt. 1210, "MSJ Order") raises two such questions. *First*, the Court should certify whether the discovery rule applies to the Clayton Act's four-year statute of limitations, and if so, whether it applies differently in "complex" antitrust cases where injury is notionally harder to detect. *Second*, the Court should certify whether a plaintiff can establish that they have suffered an antitrust injury based on an alleged overcharge paid on their behalf by a third party.

The Court's decision on the statute of limitations is subject to significant disagreement and requires the Seventh Circuit's authoritative resolution. To start, the Court read a "discovery rule" into the Clayton Act. But the imputation of a discovery rule into the antitrust laws is the subject of a circuit split and is arguably foreclosed by the Supreme Court's decision in *Rotkiske v. Klemm*, 589 U.S. 8 (2019), the effects of which the Seventh Circuit has not yet addressed. Additionally, even if applying a discovery rule to the Clayton Act were proper, the Court adopted a novel application of the discovery rule that treats "complex" antitrust cases differently than cases where a plaintiff would naturally suspect injury and effectively eliminates repose for such actions. A ruling for defendants on either statute of limitations ground would dramatically streamline the litigation because all alleged overcharges before January 9, 2018 would be barred—thereby eliminating claims from 80% of the class period.

The Court's holding that plaintiffs whose tuition was paid for by third parties nonetheless suffered antitrust injury is likewise subject to significant disagreement. Other courts have held that a plaintiff must have personally paid a supracompetitive price to establish injury. Because it is undisputed that six of the eight named plaintiffs did not actually pay their tuition, resolution of

-1-

this issue in defendants' favor would resolve almost all the named plaintiffs' claims. Favorable resolution of this issue would also likely defeat class certification and facilitate settlement of the few remaining claims, thereby eliminating the need for a costly trial.[1]

**QUESTIONS FOR WHICH CERTIFICATION IS SOUGHT**

1. Whether a judicially created discovery rule can be read into the Clayton Act's four-year statute of limitations, and if so, whether it applies differently in "complex" antitrust cases where the fact of injury is notionally hard to detect.

2. Whether a plaintiff can establish antitrust injury based on an alleged overcharge paid on their behalf by a third party.

**ARGUMENT**

A district court can certify an issue for Section 1292(b) interlocutory appeal if the movant shows that "(1) there is a question of law; (2) the question is controlling; (3) the question is 'contestable,' that is, there is substantial grounds for differences of opinion; and (4) immediate appeal would speed up the ultimate termination of the litigation." *In re Lion Air JT 610 Crash*, 2023 WL 3653217, at *2 (N.D. Ill. May 25, 2023). Each question here satisfies all four elements.

**I.   The Court Should Certify Whether The Statute Of Limitations Bars Plaintiffs' Pre-2018 Claims Pursuant To A "Discovery Rule"**

    **A.   Whether The Statute Of Limitations Bars Pre-2018 Claims Is A "Controlling" Question**

A statute of limitations ruling that has the potential to significantly curtail the scope of litigation is by definition "controlling." *See, e.g.*, *Lewis v. Am. Express Co.*, 2025 WL 3089002, at *4 (D. Ariz. Nov. 5, 2025); *Mosteiro v. Simmons*, 2022 WL 4483987, at *6 (E.D. Cal. Sep. 27, 2022) ("[T]he Court's ruling on the statute of limitations issue involves a controlling question of

---

[1] Defendants also plan to file a notice of appeal under the collateral order doctrine on the issue of whether the 568 Exemption immunizes certain defendants from this lawsuit. *See Abelesz v. OTP Bank*, 692 F.3d 638, 649 (7th Cir. 2012). Defendants reserve the right to seek Section 1292(b) certification on the question if it becomes necessary to do so.

-2-

law."); *see also Brewton v. City of Harvey*, 319 F. Supp. 2d 890, 893 (N.D. Ill. 2004) (finding statute of limitations question controlling because its answer could terminate claims). That is precisely what defendants seek to certify here. The Clayton Act provides that "[a]ny action to enforce any [antitrust] cause of action … shall be forever barred unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b. But the named plaintiffs, who filed their lawsuit on January 9, 2022, purport to represent a class of financial aid recipients over a 20-year period. As the Court observed, "all claims in this case based on tuition payments before January 9, 2018—four years before this suit was filed—would be barred" by applying the Clayton Act's four-year statute of limitations. MSJ Order at 42. Consequently, a ruling on appeal finding pre-2018 claims untimely—either because no discovery rule may be "read into" the Clayton Act, *id.* at 43, or because the discovery rule does not apply differently in "complex" antitrust cases—would terminate every claim arising from an injury allegedly sustained during the first 16 years of plaintiffs' 20-year class period (*i.e.*, 80% of the class period).

### B. Whether The Clayton Act's Statute Of Limitations Bars Pre-2018 Claims Is A Pure Question Of Law

Whether the statute of limitations bars plaintiffs' pre-2018 claims "is a question of law within the meaning of § 1292 because it is 'an abstract legal issue' that 'the court of appeals could decide quickly and cleanly without having to study the record.'" *Brewton*, 319 F. Supp. 2d at 893 (quoting *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000)). Indeed, questions concerning the applicability of the statute of limitations are routinely certified under Section 1292(b). *See, e.g.*, *id.*; *Groves v. United States*, 941 F.3d 315, 318 (7th Cir. 2019).

No factual dispute would impede the Seventh Circuit's consideration of whether the Clayton Act's four-year statute of limitations applies. *First*, it is undisputed that plaintiffs filed suit on January 9, 2022; if no discovery rule applies to claims under the Clayton Act, then all

alleged overcharges before January 9, 2018 are time-barred. *Second*, even if the Seventh Circuit were to hold that a discovery rule applies to Clayton Act claims generally, the appeals court would not need to wade into the record to answer the remainder of the question presented. The discovery rule delays accrual only until a reasonably diligent plaintiff knows or has reason to know of the injury that is the basis for his or her action. *See Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). The Court did not find—and indeed, plaintiffs did not argue— that there was a particular point in time on or after January 9, 2018 when plaintiffs' claims became discoverable. Instead, the Court held that in a notionally complex antitrust case where injury is "hard to detect without complex analysis or, more realistically, knowledge of other circumstances that might heighten a reasonable person's suspicions," the discovery rule analysis never begins— the reasonably diligent plaintiff is not expected to have investigated, and the court does not impute knowledge of widely available public information about the alleged antitrust conduct and its potential anticompetitive effects. MSJ Order at 45.

This abstract legal question does not require any engagement with the record to resolve. It is undisputed that every member of the proposed class who attended college before January 9, 2018 received their financial aid awards contemporaneously with their enrollment, and that each member of the proposed class understood that the price of attendance related directly to their financial aid award. Nor is there any reasonable basis to dispute that the public record was replete with information—often published or provided by members of the 568 Group themselves— explaining that the 568 Group endorsed common principles of need analysis and developed best practices for assessing financial need aimed at improving the consistency of need assessment in financial aid. Plaintiffs' own complaint alleges that publicly available sources detailed defendants' activities and voiced commentators' questions and concerns about potential anticompetitive effects

of the 568 Group for decades. *See generally* 2d Am. Compl.; Defs.' Mot. Summ. J. Exs. 245, 425.

### C. There Are Substantial Grounds For A Difference Of Opinion Regarding The Application Of The Statute Of Limitations

The Court denied summary judgment on plaintiffs' pre-2018 claims on the basis that under Seventh Circuit precedent, a discovery rule must be read into the Clayton Act. MSJ Order at 43. In so doing, the Court rejected defendants' argument that the Seventh Circuit's approach has been overruled by the Supreme Court in *Rotkiske*, which held that a discovery rule "cannot be supplied by the courts" where Congress has not expressly supplied one, because it is "Congress's decision to include a … discovery provision." 589 U.S. at 14. The Court distinguished *Rotkiske* because that case addressed the statutory text of the Fair Debt Collection Practices Act, which provides for a one-year limitations period following "the date on which the violation *occurs*." MSJ Order at 43 (quoting *Rotkiske*, 589 U.S. at 13). Observing that the Supreme Court "did not address the separate question of whether the discovery rule applies to an accrual-based statute, like the one in the Clayton Act," the Court found that *Rotkiske* "did not overrule Seventh Circuit precedent requiring the discovery rule in antitrust cases." *Id.*

There are substantial grounds for difference of opinion as to whether the discovery rule should apply to antitrust cases after *Rotkiske*. *See, e.g.*, *FTC v. Credit Bureau Ctr.*, 937 F.3d 764, 776 (7th Cir. 2019) (Seventh Circuit can depart from precedent because of an "intervening Supreme Court decision that displaces the rationale of [the] precedent."). For starters, the Seventh Circuit stands alone among federal courts of appeal in holding that a discovery rule should be read into the Clayton Act's statute of limitations. Other courts that have considered the question have rejected applying the discovery rule to civil antitrust cases. *See, e.g.*, *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012); *In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1209 (N.D. Cal. 2015); *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 246

n.8 (3d Cir. 2001); *see also Connnors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 342 n.10 (D.C. Cir. 1991) ("the discovery rule is the general accrual rule in federal courts," but "[a]n exception is in the area of antitrust, where … a cause of action accrues at the time of injury"); *Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1276 (10th Cir. 2014) (the Clayton Act "employs the injury-occurrence rule," not the "injury-discovery rule").[2]  A circuit split alone is reason to find substantial ground for difference of opinion under Section 1292(b).  *See, e.g.*, *Hall v. Trivest Partners, LP*, 2024 WL 660172, at *4 (E.D. Mich. Feb. 16, 2024); *United States v. Kmart Corp.*, 2015 WL 11181734, at *3 (S.D. Ill. Jan. 12, 2015); *Resol. Tr. Corp. v. Gravee*, 1995 WL 678518, at *1 (N.D. Ill. Nov. 7, 1995).[3]

What is more, the Supreme Court has repeatedly rejected the distinction the Court drew. In *Gabelli v. Securities Exchange Comission*, the Supreme Court observed that "the most natural reading" of the term "accrued" is when a claim "comes into existence," not when it is discovered. 568 U.S. 442, 448 (2013); *see also Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971).  The Court reiterated this point in *Corner Post, Inc. v. Board of Governors of the Federal Reserve System*, explaining:  "'Accrue' had a well-settled meaning in 1948, as it does now:  A 'right accrues when it comes into existence,' i.e., 'when the plaintiff has a complete and present cause of action.'" 603 U.S. 799, 800 (2024) (first quoting *United States v. Lindsay*, 346 U.S. 568, 569 (1954); then quoting *Gabelli*, 568 U.S. at 448).  Thus, similar to the Supreme Court's interpretation of the word "occur" in the FDCPA's statute of limitation provisions, the term

---

[2] Appeals courts have had few opportunities to address the question of whether and how a discovery rule applies to Clayton Act claims, likely because the in terrorem effect of the threat of treble damages on decades-long class periods forces early settlement of even the most dubious claims.  This is yet another reason interlocutory review of this question is sensible.

[3] Although the Seventh Circuit has spoken to the question of whether the Clayton Act's statute of limitations is subject to a discovery rule, *see In re Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006), it has not addressed the question of whether *Rotkiske* impliedly overrules this case law.

"accrue" in the Clayton Act's provision suggests that the "limitations period begins to run on the date the alleged [antitrust] violation actually happened," not when it was discovered. *Rotkiske*, 589 U.S. at 13. In light of this case law, there are substantial grounds to conclude that the Clayton Act's statute of limitations bars claims filed more than four years after a plaintiff "has a complete and present cause of action," regardless of when plaintiff "discover[s]" the cause of action.

There are also substantial grounds for difference of opinion as to whether the discovery rule, if applicable to antitrust claims, should apply differently where "the fact of injury is hard to detect" in "complex" antitrust cases. MSJ Order at 45. The Court's reasoning that knowledge of abundant publicly available information is not imputable to a reasonably diligent plaintiff when considering whether they would have cause to investigate a supposedly difficult-to-identify injury has not been articulated or recognized by any other court. It is also at odds with the Supreme Court's directive that factual complexity does not warrant special treatment under the discovery rule—once a plaintiff is "in possession of the critical facts" underlying his injury, "discovery" is complete. *Rotella v. Wood*, 528 U.S. 549, 556 (2000) (quoting *United States v. Kubrick*, 444 U.S. 111, 122 (1979)). Whether a pricing model's "complexity" suspends ordinary application of the discovery rule and its expectation that a reasonably diligent plaintiff would investigate—and thus can be imputed knowledge of widely available public information—plainly is "contestable" under Section 1292(b). *See, e.g.*, *Kmart Corp.*, 2015 WL 11181734, at *3 (issue contestable because it "has yet to be presented to the Seventh Circuit for resolution").

The Court's application of the discovery rule has the effect of indefinitely tolling the statute of limitations in this case. Under the Court's approach, where pricing activity does not lead a person to suspect that they "should" be paying less because pricing supposedly involves "opaque and nebulous factors," the "reasonably diligent plaintiff" standard never comes into play. MSJ

-7-

Order at 44. Plaintiffs are not imputed knowledge of publicly available information suggesting potential antitrust conduct and harm, no matter how ubiquitous or damning it might be. As a consequence, the limitations period does not commence until a plaintiff is specifically told that the price they paid was inflated due to antitrust activity, because until then, "even a reasonably diligent plaintiff would be unlikely to detect that they had been injured at all." *Id.* This all but eliminates the Clayton Act's statute of limitations for complex antitrust cases. Given the "basic objective—repose—that underlies limitations periods" and its particular weight in the context of the Clayton Act where "treble damages accumulate," *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187 (1997), there are substantial grounds for a difference of opinion on this question.

### D. Immediate Resolution Of The Statute Of Limitations Question Will Materially Advance The Ultimate Termination Of This Litigation

Finally, certification of the statute of limitations question will materially advance this litigation. As discussed, plaintiffs' proposed class period spans academic years 2003-2004 to 2022-2023. Sixteen of the twenty academic years comprising the proposed class period fall outside the Clayton Act's four-year statute of limitations period. Claims arising from this 16-year period would thus be barred if the Seventh Circuit were to reverse this Court's application of the discovery rule. As a result, approximately 80% of the proposed class's claims would be terminated upon a ruling in defendants' favor, dramatically narrowing the scope of the case and preserving judicial resources. Certification could therefore mean "fewer disputed issues" at trial and an increased likelihood of resolution through settlement—exactly what certification is designed to achieve. *Canela v. Costco Wholesale Corp.*, 2018 WL 3008532, at *2 (N.D. Cal. June 15, 2018).

### II. The Court Should Certify Whether A Plaintiff Can Establish Antitrust Injury Based On An Alleged Overcharge Paid By A Third Party

#### A. The Antitrust Injury Question Is Controlling

The question of whether a plaintiff can establish antitrust injury based on an alleged

overcharge paid by a third party controls here. A question of law is "controlling" where "interlocutory reversal might save time for the district court, and time and expense for the litigants," *Dale v. Deutsche Telekom AG*, 2024 WL 1302783, at *1 (N.D. Ill. Mar. 27, 2024) (quoting *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991)), or where it is "serious to the conduct of the litigation, either practically or legally," *In re Brand Name Prescription Drugs Antitrust Litig.*, 1996 WL 267752, at *2 (N.D. Ill. May 17, 1996), *rev'd on other grounds*, 123 F.3d 599 (7th Cir. 1997) (citations omitted). The antitrust injury question presented here easily meets this standard, as resolution in defendants' favor would require dismissal of most of the named plaintiffs' antitrust claims—and would likely defeat class certification and eliminate the need for a trial altogether.

The question of antitrust injury is claim-dispositive. An antitrust plaintiff must suffer "an anticompetitive injury that flows from defendant's actions." *Chi. Studio Rental, Inc. v. Ill. Dep't of Com.*, 940 F.3d 971, 978 (7th Cir. 2019). In a price-fixing case, that means showing that *the plaintiff* "had to pay supracompetitive prices" as the result of a conspiracy. *Blades v. Monsanto Co.*, 400 F.3d 562, 569 (8th Cir. 2005) (citation omitted). Without such injury, the plaintiff's claim fails. *See, e.g.*, *Kochert v. Greater Lafayette Health Servs., Inc.*, 463 F.3d 710, 719 (7th Cir. 2006). Courts thus regularly deem questions of antitrust standing "controlling" and worthy of review. *See, e.g.*, *Deutsche Telekom*, 2024 WL 1302783, at *1; *PharmacyChecker.com LLC v. LegitScript LLC*, 2024 WL 982784, at *1 (D. Or. Mar. 7, 2024); *Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816, 817, 820-21 (7th Cir. 2015); *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 307-08 (4th Cir. 2007); *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 905 (6th Cir. 2003).

Six of the eight named plaintiffs in this case concededly did not make *any* payments to the school they attended and thus could not have paid "supracompetitive prices." *See* Defs.' Statement

-9-

of Undisputed Material Facts ¶ 43, Dkt. 896; *see, e.g.*, Defs' Mot. Summ. J. Ex. 190, Shumate Tr. 268:13-20 (named plaintiff "didn't personally pay any of the costs of tuition, room and board" because his "parents and [his] aunt and uncle … made those payments"). Reversal of the Court's decision on this issue would thus require dismissal of a majority of the named plaintiffs in the case. Though the claims of two named plaintiffs may survive, "a question is not *un* controlling merely because it does not dispose of a case," particularly where the question has a "profound impact upon the scope of the plaintiffs' Sherman Act claims." *In re Brand Name Prescription Drugs*, 1996 WL 267752, at *2; *see also, e.g.*, *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) ("[T]he resolution of an issue need not necessarily terminate an action in order to be 'controlling.'").

Resolution in defendants' favor would also defeat plaintiffs' pending efforts to certify a class. Plaintiffs' proposed class of more than 200,000 undergraduate students includes an untold number of people who—like most named plaintiffs—personally paid nothing to attend their chosen university. A ruling from the Seventh Circuit that such students suffered no injury would require their exclusion from the class, yet plaintiffs can offer no way to manageably identify and remove those students. *See* Defs.' Opp. to Class Cert. at 53-55, Dkt. 788. Such a ruling would also necessitate extensive "individualized fact-finding" regarding "who paid or reimbursed a portion of the purchase price," which is "inconsistent with class treatment." *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 572 (E.D. Tenn. 2014); *see also Canela*, 2018 WL 3008532, at *1 (questions control where "a reversal on appeal would mean that [Plaintiff] could pursue only her individual PAGA" claim and could not "pursue her representative PAGA claim").

## B. The Antitrust Injury Question Is A Pure Question Of Law

Whether plaintiffs who had their tuition paid on their behalf have suffered antitrust injury is "a pure question of law" that "the court of appeals could decide quickly and cleanly without

having to study the record." *Ahrenholz*, 219 F.3d at 677. Again, most named plaintiffs did not personally pay to attend a defendant university, but instead relied on third parties (*e.g.*, parents, relatives, family friends) to pay their tuition. In response to defendants' motion for summary judgment, plaintiffs objected solely on a legal basis, arguing that the question of whether students paid for their tuition personally is "[i]rrelevant," because the students were "responsible for all bills incurred." Pls.' Opp. to Defs.' Mot. Summ. J. at 39-40, Dkt. 891. And the Court's decision took as given that "the plaintiffs in this case [] did not pay tuition themselves." MSJ Order at 36. The Seventh Circuit therefore need not address any factual disputes or otherwise engage with the record of this case to resolve this controlling question of law. *See In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625 (7th Cir. 2010).

C. **The Antitrust Injury Question Presents Substantial Grounds For A Difference Of Opinion**

There are substantial grounds for a difference of opinion regarding whether a plaintiff can establish antitrust injury based on an alleged overcharge paid by a third party. A question of law presents "substantial grounds for a difference of opinion," and is thus "contestable," "if there are substantial conflicting decisions regarding the claimed controlling issue of law, or the question is not settled by controlling authority and there is a substantial likelihood that the district court ruling will be reversed on appeal." *United States v. Moglia*, 2004 WL 1254128, at *3 (N.D. Ill. June 7, 2004). Although the Court concluded that it did not matter if "the parents [rather than the students] mailed cash or provided their card information directly" to universities, there is substantial authority suggesting that this distinction is in fact critical. MSJ Order at 38.

The Court acknowledged this split of authority, distinguishing *In re Apple iPhone Antitrust Litigation*, 2025 WL 3124160 (N.D. Cal. Oct. 27, 2025), as a "decision by another district court outside of this circuit [that] is not binding on this Court," not as a case that involved different law

or different facts. MSJ Order at 37. In *Apple iPhone*, plaintiffs brought Sherman Act claims alleging that Apple charges app developers a supracompetitive commission, which developers then pass on to consumers who download their apps or make in-app purchases. *In re Apple iPhone Antitrust Litig.*, 2025 WL 3124160, at *2. Plaintiffs brought claims on behalf of a putative class consisting of persons who either purchased iOS applications or made in-app purchases. *Id.* The district court excluded expert testimony and decertified the class in part because the expert "sought to match 'names' rather than 'payors'" when determining the direct purchaser. *Id.* at *12. The court explained:

> Children often use their parent's credit card to purchase apps or make in-app purchases in Apple's App store through their own Apple ID. Here, although the parent paid Apple for the transaction, and was therefore the direct purchaser, [the expert's] analysis viewed the child—who did not directly pay Apple—as a payor.

*Id.* The court explicitly rejected plaintiffs' argument that "the indirect-purchaser rule is not concerned with 'analyzing *whose* money the direct purchaser spent.'" *Id.* at *13 (citation omitted). In doing so, the court explained that "[t]o the extent consumer plaintiffs argue that children were 'purchasers' because they directed the payment, those children likely would not have Article III or antitrust standing to advance their claim because they do not have a concrete economic injury." *Id.* The fact that the payments were made through the children's "own Apple ID" did not matter. *Id.* at *12. The same logic applies here.

Other antitrust cases agree that a plaintiff who has not actually purchased the at-issue product from a defendant cannot establish injury. *See, e.g.*, *RPS Corp. v. Owens-Corning Fiberglas Corp.*, 40 Fed. R. Serv. 2d 606 (N.D. Ill. 1984), *aff'd*, 787 F.2d 595 (7th Cir. 1986) (dismissing plaintiff's antitrust claim where "[t]he record shows that plaintiff has made no purchases of fiberglass from either of the named defendants" within the relevant time period); *Dvorak v. St. Clair Cnty.*, 2018 WL 514326, at *1, 3 (S.D. Ill. Jan. 23, 2018) ("[I]t is not possible"

for plaintiffs who did not redeem their properties and thus did not pay the "artificially high interest penalties" associated with redemption "to have sustained the damages alleged in the Complaint" because they "did not actually pay the inflated [interest penalty] rate."). Together, these cases demonstrate that a student who does not pay for their own education cannot establish injury.

A similar conclusion is required under the general principles of *Illinois Brick*'s direct purchaser rule, which instructs that "only the immediate purchaser of goods may sue under the antitrust laws." *Int'l Bhd. of Teamsters, Loc. 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818, 823 (7th Cir. 1999). The "direct" or "immediate" purchaser is "the consumer who [allegedly] paid too much for the product"—here, the parents and family members who allegedly paid too much for the student's college education. *Id.* Permitting the named plaintiffs—whose "injury arises only indirectly" by virtue of their relatives' alleged over-payment—to recover also "creates a risk of multiple recovery" because then both the student and the third party who actually paid tuition could sue defendants for the same alleged conduct and both recover. *Id.*; *see also Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 346 (7th Cir. 2022) (holding that "the Providers cannot sue Cardinal under *Illinois Brick* because the SAC makes clear that they do not purchase BD products from Cardinal" and noting that plaintiffs "cannot 'piggy-back on the injuries of the unnamed class members' who may have purchased BD products").

To be sure, there is also case law, cited by plaintiffs and relied upon by the Court, that suggests a different conclusion. In particular, the Court invoked cases finding that a parent of an adult student "lacks [constitutional] standing to sue [the university] for alleged injuries," notwithstanding the fact that the parent paid for the student's college tuition. *Rynasko v. N.Y. Univ.*, 63 F.4th 186, 193 (2d Cir. 2023); *see also Gociman v. Loyola Univ. of Chi.*, 515 F. Supp. 3d 861, 866 (N.D. Ill. 2021), *aff'd in part, vacated in part*, 41 F.4th 873 (7th Cir. 2022). As the

Court itself observed, "the parents' lack of standing does not necessarily imply that the students have standing" under Article III, let alone that they can demonstrate antitrust injury. MSJ Order at 37. But these cases could understandably be read to imply that students have standing to sue the university because their parents do not.

The Court also drew upon cases that have rejected the argument "that obtaining financing renders a purchaser an indirect purchaser for the purposes of *Illinois Brick*," reasoning that "[t]he source from which one obtains funds for a purchase does not attenuate the seller-to-buyer relationship." *In re Mercedes-Benz Anti-Trust Litig.*, 157 F. Supp. 2d 355, 366 (D.N.J. 2001); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2024 WL 1014159, at *12 (E.D.N.Y. Mar. 8, 2024). Defendants note that these cases are inapposite because plaintiffs here did not incur any legal obligation to pay their family members back, as they would have if they borrowed the money from a lender. But the mere fact that both plaintiffs and the Court find this body of case law instructive underscores that there is a "difficult central question of law which is not settled by controlling authority." *Praxair, Inc. v. Hinshaw & Culbertson*, 1997 WL 662530, at *2 (N.D. Ill. Oct. 15, 1997) (citation omitted).

### D. Immediate Resolution Of The Antitrust Injury Question Will Materially Advance Termination Of The Litigation

The Court should also grant certification because interlocutory review of the antitrust injury question will help "*speed up*" this long-running litigation and help bring it to a swift conclusion. *Deutsche Telekom*, 2024 WL 1302783, at *1 (citation omitted). Resolution in defendants' favor would immediately resolve most of the named plaintiffs' claims, leaving only the two named plaintiffs who personally contributed to the cost of their education. And such a resolution would almost certainly require this Court to deny plaintiffs' pending motion for class certification. Altogether, reversal on the issue of antitrust injury would materially advance this

litigation because "[i]t would terminate nearly all of [plaintiffs'] claims, any possibility of class certification, and diminish any possible recovery" for students who did not pay for their education. *Bilello v. JPMorgan Chase Ret. Plan*, 603 F. Supp. 2d 590, 593 (S.D.N.Y. 2009).

Finally, the Seventh Circuit's interlocutory resolution of the "threshold inquiry" of antitrust injury could help avoid a costly and protracted trial. *Gatt Commc'ns, Inc. v. PMC Assocs., LLC*, 711 F.3d 68, 75 (2d Cir. 2013). As things stand, this litigation is poised for a multi-week trial. On appeal after a final judgment, the Seventh Circuit may decide that students who did not pay for their own education lack antitrust injury, a decision which would ultimately defeat class certification and render the results of the trial largely meaningless. *See In re Brand Name Prescription Drugs*, 1996 WL 267752, at *4 ("The Seventh Circuit has expressly recognized the desirability of avoiding a trial that 'could prove to be a useless exercise.'" (citation omitted)). But if the Seventh Circuit reached that same decision now, the litigants would be highly incentivized to settle any remaining individual claims, likely avoiding a trial altogether and preserving judicial resources. *See Canela*, 2018 WL 3008532, at *2 (reasoning that a successful interlocutory appeal would limit plaintiff to pursuing only her individual claim and thus "it would be more likely that the parties would reach a settlement"). Of course, the Seventh Circuit could also affirm. Either way, the case would proceed only if the trial carried consequence. Indeed, Congress passed Section 1292(b) with circumstances like these in mind, recognizing that "[d]isposition of antitrust cases may take considerable time, yet upon appeal following final disposition of such cases, the court of appeals may well determine that ... the district court did not have jurisdiction." S. Rep. No. 85-2434, at 2 (1958).

## CONCLUSION

For the foregoing reasons, the Court should grant certification under 28 U.S.C. § 1292(b) for interlocutory review of the two questions presented.

Dated: January 27, 2026

By: */s/ David Gringer*
David Gringer
Alan Schoenfeld
Wilmer Cutler Pickering Hale
and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: 212-937-7294
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Seth Waxman
Wilmer Cutler Pickering Hale
and Dorr LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel: 202-663-6800
seth.waxman@wilmerhale.com

Edward W. Feldman
Daniel Martin Feeney
Miller Shakman Levine &
    Feldman LLP
30 W. Monroe St.
Suite 1900
Chicago, IL 60603
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for The Trustees of the University of Pennsylvania*

Respectfully submitted,

By: */s/ Norman Armstrong*
Norman Armstrong
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: 202-389-5000
norman.armstrong@kirkland.com

Daniel E. Laytin
Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Tel.: 312-862-2000
daniel.laytin@kirkland.com

*Counsel for Defendant Cornell University*

By: */s/ Britt M. Miller*
Britt M. Miller
Daniel T. Fenske
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312-782-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com

*Counsel for Defendant Georgetown University*

-16-

By: */s/ Eric Mahr*
Eric Mahr
Jan Rybnicek
Andrew Henderson
Freshfields US LLP
700 13th Street, NW
Washington, DC 20005
Tel: 202-777-4500
eric.mahr@freshfields.com
jan.rybnicek@freshfields.com
andrew.henderson@freshfields.com

Rami Fakhouri
Jennifer L. Greenblatt
Goldman Ismail Tomaselli Brennan &
Baum LLP
191 North Wacker Drive, Suite 3000
Chicago, IL 60604
Tel: (312) 681-6000
rfakhouri@goldmanismail.com
jgreenblatt@goldmanismail.com

*Counsel for Massachusetts Institute of Technology*

By: */s/ Robert A. Van Kirk*
Robert A. Van Kirk
Jonathan Pitt
Sarah F. Kirkpatrick
Matthew D. Heins
Feyilana Lawoyin
Cole T. Wintheiser
William J. Donnelly
Williams & Connolly LLP
680 Maine Ave. SW
Washington, D.C. 20024
Tel: 202-434-5000
rvankirk@wc.com
jpitt@wc.com
skirkpatrick@wc.com
mheins@wc.com
flawoyin@wc.com
cwintheiser@wc.com
wdonnelly@wc.com

James Peter Fieweger
Michael Best & Friedrich LLP
444 West Lake Street
Suite 3200
Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for University of Notre Dame*

-17-

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2026, I caused a true and correct copy of the foregoing document to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

/s/ David Gringer

David Gringer

*Counsel for The Trustees of the University of Pennsylvania*

-18-