**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, <br><br> *Defendants*. | Case No. 1:22-cv-00125 <br><br> Hon. Matthew F. Kennelly |

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO CERTIFY THE COURT'S SUMMARY JUDGMENT ORDER
FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

I.      The Court Should Certify Whether The Statute Of Limitations Bars Plaintiffs' Pre-2018 Claims Pursuant To A Discovery Rule ................................................................1

        A.      Whether There Is A Discovery Rule And What Test Applies Are Questions Of Law ................................................................................................1

        B.      There Is Substantial Ground For A Difference Of Opinion ..................................2

        C.      Resolution Will Materially Advance The Termination Of This Litigation .............5

II.     The Court Should Certify Whether A Plaintiff Can Establish Antitrust Injury Based On An Alleged Overcharge Paid By A Third Party ...................................................7

        A.      Resolution Will Materially Advance The Termination Of This Litigation .............8

        B.      The Antitrust Injury Question Is A Question Of Law .............................................9

        C.      There Is Substantial Ground For A Difference Of Opinion ................................10

CONCLUSION................................................................................................................10

**INTRODUCTION**

To oppose certification on the statute of limitations, plaintiffs mischaracterize the questions presented and downplay Supreme Court precedent. Plaintiffs also argue that resolution will not materially advance this litigation, yet admit that a ruling for defendants would end 80% of the proposed class's claims, eliminate defendants' need to present evidence on timeliness at trial, and reduce the alleged damages to less than half what plaintiffs have already recovered through settlement. All of these facts show that certification would hasten resolution of this case of major significance for the remaining defendants and their current and future students and make more efficient use of the Court's resources.

As for antitrust standing, plaintiffs' arguments against certification only demonstrate why certification is appropriate. Plaintiffs argue that certification is improper because a Rule 23(f) appeal *may* lie on a similar issue. This is irrelevant and plaintiffs misrepresent the import of several cases in arguing otherwise. Likewise, plaintiffs are wrong that "applications of a legal standard to facts" cannot be the subject of a § 1292(b) appeal; the cases they cite in fact hold the opposite.[1] It is telling that plaintiffs must invent nonexistent "rules," miscite legal authority, and disavow their previous arguments to oppose certification. Defendants' motion should be granted.

**I. The Court Should Certify Whether The Statute Of Limitations Bars Plaintiffs' Pre-2018 Claims Pursuant To A Discovery Rule**

   **A. Whether There Is A Discovery Rule And What Test Applies Are Questions Of Law**

Plaintiffs do not contest that the statute of limitations questions defendants raise are "controlling." Instead, they contend that the "Court's application of the discovery rule to the facts does not present a 'question of law'" within the meaning of § 1292(b). Opp. 7-11. But defendants

---

[1] Plaintiffs contend as a threshold matter that summary judgment decisions are not proper for interlocutory review, but ample case law demonstrates otherwise. *See, e.g.*, *Shell v. Burlington N. Santa Fe Ry. Co.*, 941 F.3d 331 (7th Cir. 2019) (reversing order denying summary judgment on § 1292(b) appeal).

are not seeking certification on how the discovery rule applies to the facts. The first question posed is whether the Supreme Court's recent jurisprudence bars reading a discovery rule into the Clayton Act's statute of limitations, which plaintiffs do not dispute is a pure question of law. The second question is, if the Clayton Act includes a discovery rule, whether the rule's reasonably-diligent plaintiff standard does not apply if the court determines as a threshold matter that the antitrust claim is sufficiently "complex" to relieve plaintiffs of any responsibility to investigate. MSJ Order at 44-45. Thus, the second question posed here is not whether plaintiffs' alleged injuries were discoverable upon reasonable investigation, but whether in antitrust cases where a purchaser would not inherently suspect their price is inflated absent "complex analysis" or "circumstances" that "heighten suspicion," the plaintiff is not held to a reasonable-investigation standard *at all* so the statute never begins. This is a question about the discovery rule's legal test, not how it applies to the facts;[2] it is "'an abstract legal issue' that 'the court of appeals could decide quickly and cleanly without having to study the record.'" *Brewton v. City of Harvey*, 319 F. Supp. 2d 890, 893 (N.D. Ill. 2004) (quoting *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000)).[3]

### B. There Is Substantial Ground For A Difference Of Opinion

Plaintiffs do not contest that there are substantial grounds for difference of opinion as to whether the discovery rule applies differently, at the threshold, to "complex" cases—an unresolved question that even plaintiffs seem to recognize no other court has answered the way this Court did.

---

[2] Indeed, the Court's legal test would seem to eliminate the reasonable-inquiry standard for purchasers of all manner of product in virtually every antitrust case. A consumer who purchases chicken at the grocery store would have no more insight into whether its price is inflated than a student has into whether her cost of attendance is inflated. Under this approach, the statute can never start before the complaint is filed.

[3] Plaintiffs cite *Ahrenholz* for the proposition that "the fact that an issue [is] 'free from a factual contest' does not thereby become a 'question of law.'" Opp. 8. That is a *non-sequitur*. The statute of limitations questions are not factual ones "free from a factual contest" in this case; they ask what the legal test is, not how it applies to the specific facts of this case. "Decisions holding that the application of a legal standard is a controlling question of law within the meaning of section 1292(b) are numerous." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010).

Plaintiffs argue only that there is no substantial ground for a difference of opinion as to whether a discovery rule may be read into the Clayton Act. Each of plaintiffs' arguments is unavailing.

*First*, the mere fact that the Seventh Circuit read a discovery rule into the Clayton Act in *In re Copper Antitrust Litigation*, 436 F.3d 782, 784 (7th Cir. 2006), and has since applied it does not establish that the question presented is fully and finally "settled," Opp. 4. The question presented is whether the Supreme Court's holding in *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019), prohibits inferring an unwritten discovery rule in the Clayton Act. Plaintiffs contend that the Court of Appeals has already answered that question, but it has not. In *Vasquez v. Indiana University Health, Inc.*, the only circuit-level authority plaintiffs cite, the Court of Appeals was never presented with, and never considered, the question. 40 F.4th 582, 588 (7th Cir. 2022) (never discussing *Rotkiske*). The district court authority plaintiffs cite—other than this Court's own decision in this very case—is no different. *See TCS John Huxley Am., Inc. v. Sci. Games Corp.*, 2021 WL 4264403 (N.D. Ill. Sept. 20, 2021) (never discussing *Rotkiske*). And in any event, the fact that trial courts have continued to follow the circuit law by which they are bound only illustrates the need for certification. *See, e.g.*, *Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 515 (N.D. Ill. 2018) ("This Court must follow Seventh Circuit decisions even if it believes those decisions are wrong or mistaken."). Only the Seventh Circuit can determine whether the Supreme Court's recent jurisprudence "displaces the rationale" of *Copper* and its progeny. *FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 776 (7th Cir. 2019).

*Second*, plaintiffs claim this matter is "settled" because *Rotkiske* and other intervening Supreme Court cases are irrelevant. Plaintiffs emphasize that *Rotkiske* arose in the context of the FDCPA's "occurrence" statute of limitations rather than the Clayton Act's "accrual" statute of limitations, and argue that because courts have noted this distinction in other contexts, there is not

3

substantial ground for a difference of opinion here. Opp. 5-7. Plaintiffs are wrong. The Supreme Court has clarified on multiple occasions that there is little if any daylight between "occurrence" and "accrual," because a claim "accrues" when it "comes into existence." *Corner Post, Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 603 U.S. 799, 800 (2024) (quoting *Gabelli v. SEC*, 568 U.S. 442, 448 (2013)). And contrary to plaintiffs' contention, the Court has not held that the definition of "accrue" depends on whether the potentially time-barred party is a private party or a government enforcement agency. The logic of *Gabelli* and *Corner Post* applies just as powerfully here.

What is more, none of the caselaw plaintiffs cite demonstrates that *Rotkiske* has been distinguished when evaluating the statute of limitations for the *Clayton* Act—instead, plaintiffs lean on decisions drawing this distinction in cases involving the *Copyright* Act. Opp. 5 n.6. But there are profound differences between the Clayton Act and the Copyright Act that explain why this distinction would make more sense there than it does here. First, the Circuit Courts have consistently and uniformly applied a discovery rule to the Copyright Act; the opposite is true with the Clayton Act. *Compare Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014) ("[W]e join every Circuit to have considered the issue of claim accrual in the context of [Copyright] infringement claims [and adopt a discovery rule].") *with Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 342 n.10 (D.C. Cir. 1991) ("[T]he discovery rule is the general accrual rule in federal courts," but "[a]n exception is in the area of antitrust, where … a cause of action accrues at the time of injury."). Second, the Copyright Act does not contemplate treble damages, which when available counsels in favor of a more definite limitations period. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187 (1997) (observing that repose is especially important where "treble damages accumulate"). Third, at least one court has observed that the two dueling statutes of limitations provided in the Copyright Act suggest Congress considered an injury rule for one but

4

a discovery rule for the other, *see William A. Graham Co. v. Haughey*, 568 F.3d 425, 434-35 (3d Cir. 2009); similar evidence of congressional intent does not exist in the Clayton Act. That courts have been unmoved to change their stance on the Copyright Act after *Rotkiske* does not show a lack of substantial ground for a difference of opinion as to the case's relevance to the Clayton Act.[4]

*Third*, plaintiffs contend that absent a split among the district courts of this Circuit, the split between the Seventh Circuit and its fellow Circuit Courts of Appeal is irrelevant.[5] Opp. 3-4. But an intra-circuit split is not necessary to establish substantial ground for a difference of opinion where the circuits are divided. *See, e.g.*, *Limuel v. Donrey Corp.*, 795 F. Supp. 902, 903-04 (E.D. Ark. 1992). Whether the Seventh Circuit would recommit to being the only Court of Appeals to read a discovery rule into the Clayton Act despite *Rotkiske*'s directive is far from certain. After all, "[s]tare decisis alone cannot overcome [a jurisprudential doctrine's] clear incompatibilities with the [statutory] text and structure … and the Supreme Court's broader refinement of its … jurisprudence." *Credit Bureau Ctr.*, 937 F.3d at 786.

## C. Resolution Will Materially Advance The Termination Of This Litigation

Plaintiffs do not deny that resolving this issue in defendants' favor would fundamentally change the complexion of this litigation by eliminating the claims of 80% of the proposed class and reducing damages by hundreds of millions of dollars. Instead, plaintiffs contend that certifying

---

[4] Nor do cases involving statutes without a statute of limitations. *See Snyder-Hill v. Ohio St. Univ.*, 48 F.4th 686, 700 (6th Cir. 2022). Cases that simply confirm *Rotkiske*'s application to laws with the same language as the FDCPA, Opp. 5 n.6, are likewise irrelevant. Plaintiffs' citation to *Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.* is inapposite and, if anything, undermines plaintiffs' argument. 972 F.3d 83, 108-09 (D.C. Cir. 2020) (agreeing "that courts should not rewrite statutory limitations periods to include an across-the-board discovery-rule limitation that Congress did not enact," but observing that "this case is about the provision of *statutorily required agency notice*" not plaintiffs' discovery of their injury).

[5] Plaintiffs also claim it is "inaccurate and misleading" to call the Seventh Circuit an outlier because other circuits' cases arose under RICO, which borrows the Clayton Act's statute of limitations. But the Supreme Court has repeatedly treated the statute of limitations the same in both contexts. *See, e.g.*, *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997). What matters is that several circuits have considered whether the Clayton Act's statute of limitations should be read to include a discovery rule, and none but the Seventh has held that it should. Plaintiffs identify no contrary authority. That is because none exists.

5

the statute of limitations question will not materially advance this litigation because (1) many plaintiffs' claims will remain, (2) plaintiffs will put on their entire case no matter the outcome of this issue, and (3) trial may be delayed if certification is granted. Each argument fails.

*First*, it does not matter that this issue "pertains to only a portion of the Class claims." Opp. 11. "[N]either the statutory language nor the case law requires that if the interlocutory appeal should be decided in favor of the appellant the litigation will end then and there, with no further proceedings in the district court." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012). An issue need not affect all claims or all claimants to materially advance the litigation—especially in a class action suit where "uncertainty about the status" of an issue "may delay settlement," given that "almost all class actions are settled rather than tried." *Id.* This case is a prime example: plaintiffs seek damages worth roughly 1% of total aid awarded over a 20-year period, claiming an accumulated damages figure of more than $685 million; if limited to the 4-year period before this suit was filed, plaintiffs' alleged damages would fall precipitously to $156.4 million, Opp. 11 n.10—less than half the amount plaintiffs have already recovered through settlement ($320 million). Certification is appropriate because resolution of this issue in defendants' favor would "negate the bulk" of plaintiffs' alleged damages, improving the prospects of settlement and likelihood of avoiding a long and costly trial. *San Joaquin Valley Ins. Auth. v. Gallagher Benefit Servs., Inc.*, 2020 WL 3642561, at *5 (E.D. Cal. July 6, 2020).[6]

*Second*, plaintiffs are incorrect that resolving this question will have no effect on the scope of trial. For one thing, plaintiffs' argument fails to account for how resolution of this issue would

---

[6] *See also, e.g.*, *Clay v. Union Pac. R.R. Co.*, 2025 WL 1651529, at *1, *2 (N.D. Ill. June 10, 2025) (issue materially advances litigation "by, for example, encouraging settlement"); *In re Blue Cross Blue Shield Antitrust Litig.*, 2018 WL 3326850, at *6 (N.D. Ala. June 12, 2018) ("[A] decision on this issue may help to advance settlement, a factor that courts have found significant in permitting interlocutory appeals to proceed."); *Canela v. Costco Wholesale Corp.*, 2018 WL 3008532, at *2 (N.D. Cal. June 15, 2018) (issue materially advances litigation because "it would be more likely that the parties would reach a settlement").

6

impact *defendants'* presentation of evidence. If plaintiffs' pre-2018 claims are time-barred, defendants will have no need to present evidence concerning when, how, and under what circumstances putative class members reasonably should have discovered their alleged injury. This alone shows resolving this issue will materially advance the ultimate resolution of this litigation. *See, e.g.*, *Willis v. Universal Intermodal Servs., Inc.*, 2025 WL 2549234, at *2 (N.D. Ill. July 14, 2025) (certification is appropriate if Seventh Circuit's potential holding would narrow scope of litigation); *Rogers v. Baxter Int'l Inc.*, 2006 WL 8461448, at *2 (N.D. Ill. June 28, 2006) ("advancement of the litigation" requirement is met if ruling would shorten the time required for trial). For another thing, truncating the class period by sixteen years eliminates the need for plaintiffs to present evidence of the purported impact and harm of the alleged antitrust conduct during those years. Plaintiffs claim they "will present all such evidence whether or not they are proving damages to the Class prior to 2018," Opp. 12, but the probative value of such cumulative and tangentially relevant evidence would almost certainly be outweighed by the prejudicial effect of offering it, rendering it inadmissible. *See, e.g.*, *Garner v. Wolfinbarger*, 430 F.2d 1093, 1097 (5th Cir. 1970) ("Review under § 1292(b) is available where decision on an issue would affect the scope of the evidence in a complex case, even short of requiring complete dismissal.").

*Finally*, plaintiffs cite *NeuroGrafix v. Brainlab, Inc.*, 2020 WL 1663105 (N.D. Ill. Jan. 21, 2021), for the proposition that certification is inappropriate where it might delay trial. Opp. 12. But in *NeuroGrafix*, this Court confronted a § 1292(b) petition seeking to *expand*, rather than *reduce*, the matters that would be in dispute at trial, and did so two months before the scheduled trial date. *Id.* at *1. This case is entirely different: trial is nine months away, and resolution of the question presented would shorten the trial, not lengthen it. The Court should grant certification.

## II. The Court Should Certify Whether A Plaintiff Can Establish Antitrust Injury Based On An Alleged Overcharge Paid By A Third Party

7

### A. Resolution Will Materially Advance The Termination Of This Litigation

Resolution of the claim-dispositive legal question of whether a plaintiff can establish antitrust injury based on an alleged overcharge paid by a third party will materially advance the termination of this litigation. Six of the eight named plaintiffs in this case concededly did not make *any* payments to the school they attended and thus resolution of the question in defendants' favor would require dismissal of their claims—and likely defeat class certification and eliminate the need for a trial. *See Kochert v. Greater Lafayette Health Servs., Inc.*, 463 F.3d 710, 716 (7th Cir. 2006) (plaintiff must meet "the requirements of both antitrust injury and antitrust standing").

Plaintiffs have never contested that almost none of them personally paid for their education. Instead, they make the extraordinary claim that the potential future "availability" of Rule 23(f) appeal precludes § 1292(b) certification now, simply because the same reason why almost all of their claims would fail is the reason why class certification would also be inappropriate. Opp. 13. No authority establishes or even suggests such a rule. Rather, this Court has explained that "when *a class-certification order* is an arguable candidate for a Rule 23(f) appeal," the appellants may not instead resort to § 1292(b) certification. *Richardson Elecs., Ltd. v. Panache Broad. of Pa., Inc.*, 202 F.3d 957, 959 (7th Cir. 2000) (emphasis added). That was precisely the case in *Richardson*, where appellants sought § 1292(b) certification of "whether the legal and factual questions common to the certified class … predominate over the individual questions," solely because the deadline for a Rule 23(f) petition had passed two months prior. *Id.* at 958. So too in *Barner v. City of Harvey*, where Appellants sought appellate review of a district court's decertification of a class for lack of numerosity. 2004 WL 2092009, at *4, *6 (N.D. Ill. Sept. 15, 2004). And in *Mussat v. IQVIA*, the Seventh Circuit had in fact already granted Rule 23(f) review over the very same issue presented in the pending § 1292(b) motion. 2019 WL 3423661, at *2 (N.D. Ill. Feb. 20, 2019). In contrast, defendants are not seeking to appeal a class certification order and *none exists*. Plaintiffs'

8

suggestion that these authorities somehow *preclude* defendants' request for certification is wrong.

Six named plaintiffs' claims have survived summary judgment in a ruling that would remain in place even if a class were never certified. The mere fact that the Seventh Circuit's immediate resolution of this issue will have the added benefit of informing whether class certification is subsequently appropriate counsels *in favor* of interlocutory review, not against it. *See, e.g.*, *Bilello v. JPMorgan Chase Ret. Plan*, 603 F. Supp. 2d 590, 593 (S.D.N.Y. 2009) (finding § 1292(b) certification proper on antitrust standing issue because "[i]t would terminate nearly all of [plaintiffs'] claims, any possibility of class certification, and diminish any possible recovery").

### B. The Antitrust Injury Question Is A Question Of Law

Whether plaintiffs who had their tuition paid by a third party have suffered antitrust injury is a question of law that "the court of appeals could decide quickly and cleanly without having to study the record." *Ahrenholz*, 219 F.3d at 677. Even after being squarely presented with the issue, plaintiffs are still unable to muster any material factual dispute that would impede appellate review, yet they still insist that "the Seventh Circuit *would* have to 'engage with the record of this case' to assess the Court's holding." Opp. 14. Plaintiffs never explain why that is true, because it is not. In opposing summary judgment, plaintiffs objected solely on a legal basis, claiming that the fact of whether students paid for their tuition personally is "[i]rrelevant" to their standing. Dkt. 891 at 39-40. This Court agreed with plaintiffs, holding as a categorical matter that it did not matter if a third party paid for a good or service so long as the plaintiff "alone incurred the legal obligation to pay." Dkt. 1210 at 36. This motion seeks certification over the purely legal question of "[w]hether a plaintiff can establish antitrust injury based on an alleged overcharge paid on their behalf by a third party." Mot. 2. The legal nature of this dispute has been demonstrated many times over.

Whether there is a "mixed question" that involves "the application of law to fact" is entirely beside the point. Opp. 13-14. "[T]hese are not helpful labels" for determining whether § 1292(b)

9

certification is appropriate. *Text Messaging*, 630 F.3d at 625. The relevant consideration is whether the question requires resolution of factual disputes. *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 518 F.3d 459, 463 (7th Cir. 2008). This question does not.

### C. There Is Substantial Ground For A Difference Of Opinion

Finally, plaintiffs claim that "Defendants do not cite any decision holding that a plaintiff who has the legal obligation to pay the defendant, but who had the payment made by a third party, lacks *antitrust* standing." Opp. 14. Contrary to plaintiffs' claim (and as this Court acknowledged), *In re Apple iPhone Antitrust Litigation* expressly held that a plaintiff who had the legal obligation to pay (the children who made in-app purchases "through their own Apple ID") did not have antitrust standing to sue because they used "their parent's credit card" to make the purchase. 2025 WL 3124160 (N.D. Cal. Oct. 27, 2025), at *12. The district court in *Apple iPhone* explicitly rejected the position that "the indirect-purchaser rule is not concerned with 'analyzing *whose* money the direct purchaser spent.'" *Id.* at *13. On the other side of the ledger, this Court's summary judgment decision and the decisions in *In re Mercedes-Benz Anti-Trust Litigation*, 157 F. Supp. 2d 355, 366 (D.N.J. 2001), and *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, 2024 WL 1014159, at *12 (E.D.N.Y. Mar. 8, 2024), explicitly embraced the position that *Apple iPhone* rejects. This well-defined conflict cannot simply be wished away as limited to the "particular facts of those cases." Opp. 14.[7]

## CONCLUSION

For the foregoing reasons, the Court should grant certification under 28 U.S.C. § 1292(b).

---

[7] Plaintiffs also brush aside the college tuition cases analyzing parents' Article III standing to sue their child's university by arguing that they "do not involve antitrust standing at all." Opp. 15. But plaintiffs sang a different tune at summary judgment, when they relied upon these cases for support. Dkt. 891 at 40 & n.29. And the Court itself found these cases to be even "more analogous" authority than *Apple iPhone*. Dkt. 1210 at 37. Plaintiffs' conflicting positions highlight the need for the Seventh Circuit's guidance.

10

Dated: February 17, 2026

By: */s/ David Gringer*
David Gringer
Alan Schoenfeld
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: 212-937-7294
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Seth Waxman
WILMER CUTLER PICKERING HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel: 202-663-6800
seth.waxman@wilmerhale.com

Edward W. Feldman
Daniel Martin Feeney
MILLER SHAKMAN LEVINE & FELDMAN LLP
30 W. Monroe St.
Suite 1900
Chicago, IL 60603
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for The Trustees of the University of Pennsylvania*

Respectfully submitted,

By: */s/ Norman Armstrong*
Norman Armstrong
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: 202-389-5000
norman.armstrong@kirkland.com

Daniel E. Laytin
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Tel.: 312-862-2000
daniel.laytin@kirkland.com

*Counsel for Defendant Cornell University*

By: */s/ Britt M. Miller*
Britt M. Miller
Daniel T. Fenske
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312-782-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com

*Counsel for Defendant Georgetown University*

By: */s/ Eric Mahr*
Eric Mahr
Jan Rybnicek
Andrew Henderson
FRESHFIELDS US LLP
700 13th Street, NW
Washington, DC 20005
Tel: 202-777-4500
eric.mahr@freshfields.com
jan.rybnicek@freshfields.com
andrew.henderson@freshfields.com

Rami Fakhouri
Jennifer L. Greenblatt
GOLDMAN ISMAIL TOMASELLI BRENNAN &
BAUM LLP
191 North Wacker Drive, Suite 3000
Chicago, IL 60604
Tel: (312) 681-6000
rfakhouri@goldmanismail.com
jgreenblatt@goldmanismail.com

*Counsel for Massachusetts Institute of Technology*

By: */s/ Robert A. Van Kirk*
Robert A. Van Kirk
Jonathan Pitt
Sarah F. Kirkpatrick
Matthew D. Heins
Feyilana Lawoyin
Cole T. Wintheiser
William J. Donnelly
WILLIAMS & CONNOLLY LLP
680 Maine Ave. SW
Washington, D.C. 20024
Tel: 202-434-5000
rvankirk@wc.com
jpitt@wc.com
skirkpatrick@wc.com
mheins@wc.com
flawoyin@wc.com
cwintheiser@wc.com
wdonnelly@wc.com

James Peter Fieweger
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street
Suite 3200
Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for University of Notre Dame*

## CERTIFICATE OF SERVICE

    I hereby certify that on February 17, 2026, I caused a true and correct copy of the foregoing document to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

                /s/ *Matthew D. Heins*
                Matthew D. Heins

                *Counsel for the University of Notre Dame*