**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00125 |
| Plaintiffs, | |
| v. | |
| BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, | Hon. Matthew F. Kennelly |
| Defendants. | |

**PLAINTIFFS' MOTION TO APPROVE THE FIRST DISTRIBUTION**
**OF THE NET SETTLEMENT FUND FOR THE FIRST TEN SETTLEMENTS,**
**APPROVE SIX LATE CLAIMS AS TIMELY, AND APPROVE PAYMENT**
**OF CLAIMS ADMINISTRATION COSTS**

Plaintiffs Andrew Corzo, Sia Henry, Alexander Leo-Guerra, Michael Maerlender, Brandon Piyevsky, Benjamin Shumate, Brittany Tatiana Weaver, and Cameron Williams ("Plaintiffs") respectfully submit this memorandum in support of their motion to distribute the Net Settlement Fund[1] from the first ten settlements (the "First Ten Settlements") the Settlement Class[2] reached with Defendants Brown University ("Brown"), University of Chicago ("Chicago"), the Trustees of Columbia University in the City of New York ("Columbia"), Trustees of Dartmouth College ("Dartmouth"), Duke University ("Duke"), Emory University ("Emory"), Northwestern University ("Northwestern"), William Marsh Rice University ("Rice"), Vanderbilt University ("Vanderbilt"), and Yale University ("Yale") (collectively, the "Settling Defendants"). The Court finally approved these Settlements by an Order dated July 20, 2024. ECF No. 726 ("Final Approval Order"). The claims process began on September 15, 2024, when Angeion began sending notices to more than 600,000 potential Settlement Class Members informing them that about the process to file Claim Forms to participate in the Settlements. *See* Declaration of Taylor Adessa of Angeion Group LLC Final Report and Plan of Distribution ("Adessa Decl."), ¶3.

From the time Claimants[3] first submitted Claim Forms (also referred to as "Claims") through March 3, 2026, the Court-appointed Settlement Administrator, Angeion Group, LLC ("Angeion"),[4] has reviewed and audited over 78,000 Claim Forms. *See generally id.* ¶¶4-26. Following the Court's January 26, 2026 Order resolving appeals by 199 Claimants regarding

---

[1] The "Net Settlement Fund" refers to the value of the combined settlement fund from the Settlements after subtracting attorneys' fees and expenses (plus a proportionate share of interest thereon), service awards to the Class Representatives, taxes, administration expenses, and any amounts withheld for a reserve. *See* Revised Plan of Allocation, at 1 (ECF No. 603-9); Allocation Plan Process, at 1 (ECF No. 703-3).

[2] *See* ECF No. 726, ¶3 (defining the Settlement Class).

[3] A "Claimant" is a person who submitted a Claim Form.

[4] *See* Final Approval Order ¶18 (confirming Angeion as the Settlement Administrator).

their respective Claims (Minute Entry, ECF No. 1215), Angeion, in consultation with Plaintiffs'

economic experts, EconOne Research, Inc. ("EconOne") and Settlement Class Counsel,[5]

prepared the proposed *pro rata* allocation of the Net Settlement Fund to eligible Claimants. As

part of this analysis, Angeion determined that 74,721 out of 78,197 Claimants (just over 95%)

are eligible to receive their *pro rata* share of the Net Settlement Fund pursuant to the Revised

Plan of Allocation (ECF No. 603-9) and Allocation Plan Process (ECF No. 703-3), as described

in more detail in Section IV below. Under the proposed distribution, the average distribution

payment from the Net Settlement Fund is expected to be $2,560.68 per Settlement Class Member

and the median payment will be $2,710.83. *See* Adessa Decl. ¶33(c).

In support of this motion, Settlement Class Counsel set forth in the following: (i) a brief

background of the First Ten Settlements; (ii) a summary review of the claim submission and

audit process Angeion conducted; (iii) Settlement Class Counsel's request to accept six late

claims as valid claims to be included in the distribution; (iv) the proposed distribution, including

the calculation of the Net Settlement Fund and the application of the *pro rata* allocation

methodology set forth in the Revised Plan of Allocation approved by the Court (*see* Final

Approval Order ¶¶21-22); and (v) a summary of the specific relief requested by this motion.

## I.    Background on the Settlements

Plaintiffs achieved the First Ten Settlements in this Action in multiple tranches over the

period from August 7, 2023 through February 23, 2024. Plaintiffs entered the first settlement for

$13.5 million with Defendant Chicago on August 7, 2023, which the Court preliminarily

approved on September 9, 2023. ECF No. 439.

Following preliminary approval of the Chicago settlement, Settlement Class Counsel

---

[5] The Court appointed Freedman Normand Friedland LLP, Gilbert Litigators & Counselors, and Berger Montague PC as "Settlement Class Counsel." *See* ECF No. 726, ¶5.

continued to pursue separate settlements with additional Defendants. On November 22, 2023, Plaintiffs notified the Court they had reached agreements in principle with five additional Defendants. *See* ECF No. 525. On January 23, 2024, Plaintiffs moved for preliminary approval of a second tranche of settlements with Defendants Emory ($18.5 million), Yale ($18.5 million), Brown ($19.5 million), Columbia ($24 million), and Duke ($24 million). *See* ECF No. 603-1. The second tranche settlements totaled $104.5 million and with the Chicago settlement, the total of all settlements at that point was $118 million. The Court granted preliminary approval of second tranche of settlements on February 14, 2024. ECF No. 614.

While Plaintiffs and the Defendants who settled as part of the second tranche of settlements were finalizing the respective settlement agreements and moving for preliminary approval, Settlement Class Counsel continued to negotiate settlements with additional Defendants. On February 23, 2024, Plaintiffs moved for preliminary approval of a third tranche of settlements reached with Defendants Dartmouth ($33.75 million), Rice ($33.75 million), Northwestern ($43.5 million), and Vanderbilt ($55 million). *See* ECF No. 629-1. The Court granted preliminary approval of the third tranche settlements on February 28, 2024. ECF No. 638. The third tranche settlements totaled $166 million and the combined total of the three tranches of settlements (with ten Settling Defendants) at issue in this motion is $284 million.

On July 20, 2024, the Court granted final approval of the First Ten Settlements, resolving all claims against ten Settling Defendants. ECF No. 726 ("Final Approval Order"). As a part of the Final Approval Order, the Court also approved the Revised Plan of Allocation (ECF No. 603-9) and the Allocation Plan Process (ECF No. 703-3).

While not a part of the proposed distribution for the First Ten Settlements, but for completeness, Plaintiffs also reached settlements with two additional Defendants: California

Institute of Technology ("Caltech") on November 1, 2024 ($16.75 million) and Johns Hopkins

University ("Johns Hopkins") on August 6, 2024 ($18.5 million). *See* ECF No. 776-1. Plaintiffs

moved for preliminary approval of these two fourth tranche settlements on January 17, 2025. *See*

*id.* The Court granted preliminary approval of the Caltech and Johns Hopkins settlements on

January 24, 2025. ECF No. 782. The Court granted final approval of the Caltech settlement on

June 27, 2025 (ECF No. 884) and the Johns Hopkins settlement on July 30, 2025 (ECF No. 924).

The claim submission and distribution process for the Caltech and Johns Hopkins settlements is

proceeding on a separate track, and a distribution for the two fourth tranche settlements will be

the subject of a separate motion when the Settlement Administrator has completed its review and

audit of the claims submitted for those two settlements.

## II.     Summary of the Claim Submission and Audit Process

The Settlement Administrator (Angeion) is managing the notice and claim process for

The First Ten Settlements together as a single administrative process. Following the Court's July

20, 2024, entry of the Final Approval Order, Settlement Class Counsel worked with Angeion and

Plaintiffs' economic experts (EconOne) to create online Claim Forms pre-populated with data for

Class Members to submit claims, and to distribute notice of the availability those online forms.

As shown below, the Settlement Class responded robustly to the claims process. A total of

78,197 individuals submitted Claims. *See* Adessa Decl. ¶7. This response amounts to a claim

submission rate of nearly 30 percent (78,197 Claims from an estimated 262,000 Settlement Class

Members). Indeed, Settlement Class Counsel, with assistance from Angeion, has achieved an

unusually high claims submissions rate as an analysis by the Federal Trade Commission of

consumer class actions found the median claim submission rate to be about 9% and a (weighted)

mean of around 4%—the submission rate here is more than triple the median rate.[6] After implementing the review and audit process described below, Angeion approved 74,721 of the 78,197 submitted Claims, or 95.55%. *Id.* ¶23.

From September 15-18, 2024, Angeion emailed links to prepopulated Claim Forms to more than 600,000 valid email addresses used by Settlement Class Members. *See id.* ¶3. Angeion also mailed postcards with information about how to access the prepopulated Claim Forms to 51,038 potential Settlement Class Members. *Id.* Individuals who did not receive a link to a prepopulated Claim Form were still eligible to submit a Claim using a generic (or blank) Claim Form. *Id.* The Claim Form required all Claimants to provide current contact information, attest to their membership in the Settlement Class, identify the Defendant University(ies) they attended, the terms in which they attended, and attach one or more forms of proof that they attended a Defendant University during the Class Period. *See id.* ¶4.

Through March 3, 2026, Angeion received 78,197 Claim Forms for the Settlements via U.S. mail, email, or through the Claim filing portal on the Settlement Website. *Id.* ¶7. Angeion assigned each submitted Claim Form a unique identification number and then compiled the submitted information plus any supplied supporting documentation into Angeion's Claims database. *Id.* ¶6. Angeion thoroughly reviewed and analyzed the Claims to verify information, identify duplicate Claim Forms, check for fraud, and otherwise assess whether any of the Claims were deficient. *See id.*

For Claims that lacked sufficient supporting documentation or information (*e.g.*, the submitted information indicated the individual was not a Settlement Class Member, the

---

[6] *See Consumers and Class Actions, A Retrospective and Analysis of Settlement Campaigns*, FTC Staff Report, at 11 (September 2019), available at https://www.ftc.gov/system/files/documents/reports/ consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf.

documentation needed to support attendance at a Defendant University was absent or insufficient, the information indicated the individual is not a United States citizen, etc.), Angeion sent a Deficiency Notice to the Claimant to allow that person to attempt to cure the deficiencies and/or appeal Angeion's determination. *Id.* ¶¶8-9. Through the deficiency process, Angeion approved a total of 844 Claims after the Claimants cured the identified deficiencies. *Id.* ¶23(b). Angeion rejected a total of 3,470 Claim Forms because the Claims were untimely (13), withdrawn (61), duplicates (2,349), invalid (*e.g.*, the Claimant attended a Defendant outside the Class Period) (149), or failed to provide sufficient support for the Claim (898). *Id.* ¶26.

Angeion issued Rejection Notices to Claimants who either failed to cure deficiencies with their Claims, did not respond to the Deficiency Notices, or whose Claim Forms presented incurable deficiencies (*e.g.*, asserting attendance at a Defendant University outside the Class Period). *Id.* ¶11. After Angeion issued the Rejection Notices, 199 Claimants filed appeals before the Court challenging Angeion's determinations of their respective Claims. *Id.* ¶14. After further review of these Claims, Angeion recommended that 158 of the appealed Claims should be approved with the remaining 41 appeals denied. *Id.* On January 26, 2026, the Court resolved these appeals and upheld Angeion's approval of 158 Claims and its rejection of 41 Claims. *See* Minute Entry, ECF No. 1215.

Additionally, as part of the overall review and audit procedure, Angeion independently re-reviewed certain Claims initially denied for insufficient documentation after identifying a systemic error relating to the processing of Latin diplomas as proof of attendance at a Defendant University and reinstated 2,109 Claims. *See* Adessa Decl. ¶¶12-13.

In addition, on October 9, 2025, Angeion learned that a processing error had occurred for a small number of mailed notices (3,400) that were returned as undeliverable by the United

States Postal Service. *See id.* ¶15. When a mailed notice is returned as undeliverable, Angeion

has a standard practice of researching updated address information (*e.g.*, conducting skip-trace

research) to re-mail the notice. *Id.* For this subgroup of potential Claimants, a processing error

occurred where updated address information for the notices was not correctly matched to the

Claimant that caused the re-mailed notice to be sent to the wrong address. *Id.* However, and

importantly, Angeion did send notice of the fourth tranche settlements to the correct addresses of

these same Claimants as part of the subsequent notice program for the Caltech and Johns

Hopkins settlements. *Id.* ¶16. These two fourth tranche settlements, which (as noted above)

Angeion is administering on a separate track from the First Ten Settlements, had a claim

submission deadline of December 27, 2025. *Id.* ¶16. Angeion reviewed the Claims submitted for

the Caltech and Johns Hopkins settlements and found that from the group of potential Claimants

affected by the mail processing error, 163 had submitted valid Claims as to the fourth tranche

settlements. *See id.* ¶¶16-19. Because of the mailing error, and so as not to disadvantage the

affected Claimants, Angeion included these 163 Claims for the distribution as to the First Ten

Settlements (*i.e.*, the settlements from the first three settlement tranches). *See id.*[7]

Throughout the notice and claim submission process, including Angeion's review and

audit of the Claims, Settlement Class Counsel also submitted status reports and other filings

apprising the Court on the administration process and addressing issues raised by Settlement

Class Members who had reached out to the Court. *See, e.g.*, the following ECF Numbers: 768

(December 30, 2024 notice about assisting a Settlement Class Member with their Claim); 793

---

[7] Under the plan of allocation for the Caltech and Johns Hopkins settlements, Claimants who submit timely and valid Claims for the First Ten Settlements are included for the distribution of the Caltech and Johns Hopkins settlements. *See* ECF Nos. 884, ¶23 (Caltech settlement final approval order); 924, ¶23 (Johns Hopkins settlement final approval order). But, except for this small group affected by Angeion's remailing error, Claimants who only submitted timely claims as to the Caltech and Johns Hopkins settlements are not included in the distribution at issue in this motion.

(February 24, 2025 joint status report on the notice and Claims process and requesting an extension of the Claim submission deadline); 820 (March 18, 2025 joint status report addressing a Settlement Class Member's concerns about whether he received notice, which he did, and requesting an extension of the Claim submission deadline); 840 (April 17, 2025 Settlement Class Counsel's status report addressing issues raised by a Settlement Class Member concerning her Claim); 1032 (September 15, 2025 response by Settlement Class Counsel to two Claimants' appeals regarding their Claims, providing an update on the Claims process, and recommending that certain other Claimant appeals be denied); & 1191 (October 10, 2025 motion by Settlement Class Counsel to uphold Angeion's determination to deny certain Claims).

With the extensive and laborious Claim review process completed and the Claims appeals now resolved by the Court's January 26, 2026 Order (ECF No. 1215), Angeion has determined that 74,721 out of 78,197 Claims (just over 95%), *see* Adessa Decl. ¶¶22-23, are eligible to receive their *pro rata* share of the Net Settlement Fund pursuant to the Revised Plan of Allocation and the Plan of Distribution, as described in more detail in Section IV below.

### III. Settlement Class Counsel Recommend Six Late Filed Claims Be Deemed Valid Claims and Included in the Proposed Distribution

Settlement Class Counsel, in consultation with Angeion, recommend that six late filed Claims be included as Claimants for this proposed distribution. As shown below, there are extenuating circumstances that demonstrate that these Settlement Class Members missed the Claim submission deadline for reasons beyond their control.

Briefly, as background, the initial Claims deadline was December 17, 2024. However, Settlement Class Counsel requested that this deadline be extended to April 3, 2025. *See* Joint Status Report, at 3, ECF No. 820 (Mar. 18, 2025). Settlement Class Counsel explained that while the notice program for the Settlements was robust and far exceeded the standards of Rule 23 and

due process, numerous Settlement Class Members had requested an extension of time to submit their Claim. Additionally, both the litigation and the Settlements were garnering considerable media attention as notices were issued to alert Settlement Class Members of the fourth tranche settlements with Defendants Caltech and Johns Hopkins. *See id.* at 1-2. In light of the overall robust notice program, Settlement Class Counsel explained (in a prior status report) that an extension of the Claims deadline could be achieved with *de minimis* additional cost (*i.e.*, just the cost to notify those Settlement Class Members who had contacted either Angeion or Settlement Class Counsel about filing a late Claim that the deadline had been extended). *See* Joint Status Report, at 9, ECF No. 793 (Feb. 23. 2025). On March 23, 2025, the Court granted the request and extended the deadline to submit a Claim Form in connection with the first three settlement tranches to April 3, 2025. ECF No. 825.[8]

Of the Claims received after the extended submission period, there are six that Settlement Class Counsel now recommend be included as part of the proposed distribution here. There are two Claimants who contacted either (or both of) Angeion or Settlement Class Counsel to request permission to submit a late Claim: a Cornell alumnus (Claimant No. GRPP1595) and a Notre Dame alumnus (Claimant No. GRPP1611). *See* Adessa Decl. ¶24(a), (d). Angeion inadvertently omitted these two Claimants from the list of Claimants who were sent a notification that the Court had extended the Claims deadline to April 3, 2025. *Id.* Both submitted valid Claim Forms. *Id.* Angeion mistakenly informed two Claimants that the Settlement Administrator had received their respective Claim Forms when it had not. *Id.* ¶24(b) & (e). Both Claimants, a University of Pennsylvania alumnus (Claimant No. GRPP1606) and a Rice alumnus (Claimant No. GRPP1612), later submitted valid Claim Forms. *See id.* Angeion inadvertently issued a Rice

---

[8] The Court also granted Settlement Class Counsel's request to deem 7,846 Claims submitted between December 18, 2024 and December 31, 2024 as timely. ECF No. 825 ¶2.

alumnus (Claimant No. GRPP1596) a prepopulated Claim Form that did not have his name on it (*i.e.*, it was unclear that the Claim Form contained the correct prepopulated information for this Claimant). *Id.* ¶24(c). He submitted a valid Claim on April 23, 2025. *Id.* Finally, a Georgetown University alumnus (Claimant No. GRPP1614) attempted to file a Claim through a third-party filer that ultimately failed to submit the Claim Form on his behalf. *Id.* ¶24(f). He submitted a valid Claim on November 4, 2025. *Id.*

Given the unique circumstances for these particular Claimants, Settlement Class Counsel respectfully submit that, in the interest of fairness, these six Claims be included in the proposed distribution. Should the Court grant this request to include these six Claims, then the total number of Claimants to participate in the distribution described in Section IV is 74,727 (74,721 timely Claims + 6 accepted late filed Claims with valid excuses).

## IV. Determining the Claimants' Settlement Distribution Amounts

There is a two-step procedure to determine the *pro rata* amount to be sent to each Claimant: (i) calculate the Net Settlement Fund; and (ii) apply the *pro rata* allocation methodology set forth in the Revised Plan of Allocation. *See* Revised Plan of Allocation (ECF No. 603-9); Allocation Plan Process (ECF No. 703-3). This proposed distribution would be made for 74,727 valid Claimants (*see* Sections II & III *supra*).

The amount of the Net Settlement Fund available for distribution to eligible claimants is $191,352,199.10. Adessa Decl. ¶27. This amount is calculated as follows. First, take the gross $284 million Settlement Fund and add the interest accrued through February 28, 2026 ($14,462,582.87), less Court-approved fees, expenses, and service awards to the Class Representatives. *Id.* ¶31 n.17. With these adjustments, the total comes to $198,900,547.31. *Id.*

¶31. From this amount, subtract amounts for taxes (paid and anticipated),[9] administrative costs, professional fees to Plaintiffs' economic experts (EconOne) for assistance with the distribution calculations, and a reserve to address any unanticipated costs or other issues relating to the distribution of the Net Settlement Fund, as shown in the following table:

| Initial Net Settlement Amount | $198,900,547.31 |
|---|---|
| Total Tax Payments | ($5,299,089.90) |
| Estimated Future Tax Payments | ($944,000.00) |
| Notice & Administration Expenses Through December 31, 2025 | ($972,365.81) |
| Future Estimated Notice & Administration Expenses | ($250,000.00) |
| EconOne Professional Fees | ($7,892.50) |
| Reserve | ($75,000.00) |
| **Net Settlement Fund** | **$191,352,199.10** |

*See* Adessa Decl. ¶¶27-31.

By way of further explanation, the total tax payments reflect the amount of tax paid since the first fund was created in October 2023 and the set-aside amount of $944,000.00 covers any future taxes. *Id.* ¶32. The future estimated notice and administration expenses of $250,000.00 represents Angeion's anticipated fees and costs from January 1, 2026 through the completion of the distribution process for mailing distribution checks and issuing electronic payments for the distribution amounts (including to Claimants residing in foreign countries), as well as responding to the Claimant inquiries, maintaining the Settlement website and 1-833 toll-free line, and all other duties or tasks reasonably associated with the Claim review and distribution process. *Id.* ¶29. The $7,892.50 for EconOne's professional fees line entry includes (a) the amount of $6,352.50 for fees incurred to date for assisting with applying the allocation methodology in the Revised Plan of Allocation and the Allocation Plan Process to the Net Settlement Fund, and addressing issues relating to contested claims, and (b) a modest reserve in the amount of

---

[9] The Settlement Fund must pay federal income tax on the interest earned. Because the case was settled in Illinois, that state also imposes an income tax on interest earned in addition to the required federal income tax.

$1,540.00 to address any future Claim calculation issues that may arise during the distribution to Claimants. *Id.* ¶32.

Should there be any funds remaining after completing this proposed distribution, Settlement Class Counsel will seek (a) Court approval for a second *pro rata* distribution, (b) roll-over the remaining funds for subsequent distributions involving additional settlements, or (c) make an application to the Court for a *cy pres* distribution to an appropriate charitable organization consistent with Paragraph 9 of the Settlement Agreements. *See* Allocation Plan Process ¶15 (ECF No. 703-3).

Under the Revised Plan of Allocation, each Claimant's *pro rata* share of the distribution from the Net Settlement Fund is based on the value of all valid Claims submitted by Settlement Class Members and calculated using the formula described in the Revised Plan of Allocation. ECF No. 603-9, at 4-6. The following steps described how each Claimant's distribution amount is determined: (1) confirm for each Claimant for each year or portion thereof that the Claimant paid a Defendant during the Class Period; (2) assign each Claimant the average annual Net Price charged by the applicable Defendant for each academic year, or appropriate fractions of year thereof; (3) sum the average Net Prices per year attended over all the years each Claimant attended and paid a Defendant, up to a maximum of four full academic years, to arrive at a Total Net Price for each Claimant; (4) sum all the numerators for all Claimants to calculate the denominator; (5) divide the Total Net Price for each Claimant by the denominator to calculate each Claimant's *pro rata* share; and (6) multiply the fractional *pro rata* share for each Claimant by the amount to be distributed from the Net Settlement Fund to arrive at each Claimant's payment amount from the Settlements. *See id.*

As an illustrative example (which is not intended to reflect an actual distribution

calculation for any Claimant), for a Claimant who received partial need-based financial aid at Brown University from Fall Term 2017 to Spring Term 2021, the relevant calculation would be determined as follows:

- Net Prices at Brown University for the relevant years:

  o Academic Year 2017-2018: $27,238

  o Academic Year 2018-2019: $27,218

  o Academic Year 2019-2020: $27,659

  o Academic Year 2020-2021: $25,028

- Total Net Price for Claimant (*i.e.*, numerator): $107,143

  $$\$27,238 + \$27,218 + \$27,659 + \$25,028 = \$107,143$$

- Total Net Price for all Claimants (*i.e.*, denominator): $5,843,783,133.83

- *Pro Rata* Share Determination:

  $$\frac{Total\ Net\ Price\ for\ This\ Claimant}{Total\ Net\ Price\ for\ All\ Claimants} = \frac{\$107,143}{\$5,843,783,133.83} = .00001833$$

- Hypothetical Claimant's Distribution Amount:

  $$Pro\ Rata\ Share\ (Net\ Settlement\ Fund) =$$

  $$.00001833(191,352,199.10) = \$3,507.49$$

Applying the above calculations to the 74,727 valid Claims (including the six Claims discussed at Section III *supra*), the average distribution payment from the Net Settlement Fund is expected to be $2,560.68 per Settlement Class Member; the median payment will be $2,710.83; the highest payment will be $4,729.83; and the lowest payment $50.80. Adessa Decl. ¶33(c).

The distribution payments to Claimants will be made in accordance with the method selected by the Claimant on his or her claim form, which consists of PayPal, Venmo, Zelle, virtual prepaid card, direct deposit via ACH, or paper check (with a 90-day void period).

13

## V.     The Relief Requested by This Motion to Distribute the Net Settlement Fund

To implement the proposed distribution described herein, Settlement Class Counsel respectfully request that the Court approve the following:

- allocation of the Net Settlement Fund as determined by Angeion, with assistance from EconOne and Settlement Class Counsel, using the methodology set forth in the Revised Plan of Allocation and Allocation Plan Process, and direct Angeion to distribute to each Claimant their *pro rata* share of the Net Settlement Fund;

- Settlement Class Counsel's request to consider as timely and approve the six late filed Claims by the Settlement Class Members identified in Section III *supra*;

- withholding $7,892.50 for EconOne's professional fees;

- withholding $75,000.00 from the Net Settlement Fund to cover any unanticipated costs and other issues relating to the distribution of the Net Settlement Fund;

- withholding from the Net Settlement Fund $944,000.00 for the payment of future estimated taxes;

- withholding $250,000.00 from the Net Settlement Fund for additional anticipated administration costs for this distribution;

- payment of $346,531.06 in unreimbursed, outstanding administration expenses incurred by Angeion through December 31, 2025; and

- an Order releasing and discharging Settlement Class Counsel, Angeion, EconOne, and all persons who are involved in the review, verification, tabulation or any other aspect of the process of the claims filed in this Action, or who are involved in such activities and barring all members of the Settlement Class, whether or not they are to receive payment from the Net Settlement Fund, from making any further claims

against the Net Settlement Fund beyond the amount allocated to them by the First Ten Settlements as approved by the Court.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to distribute the Net Settlement Fund for the First Ten Settlements. A proposed Order is submitted with this motion.

Dated: March 9, 2026                                   Respectfully Submitted,

/s/ *Robert D. Gilbert*                                    /s/ *Edward J. Normand*
Robert D. Gilbert                                          Devin "Vel" Freedman
Elpidio Villarreal                                         Edward J. Normand
Robert S. Raymar                                           Richard Cipolla
David S. Copeland                                          Joseph Delich
**GILBERT LITIGATORS &**                                   **FREEDMAN NORMAND**
  **COUNSELORS, P.C.**                                       **FRIEDLAND LLP**
11 Broadway, Suite 615                                     155 E. 44th Street, Suite 915
New York, NY 10004                                         New York, NY 10017
Tel: (646) 448-5269                                        Tel: (646) 494-2900
rgilbert@gilbertlitigators.com                             vel@fnf.law
pdvillarreal@gilbertlitigators.com                         tnormand@fnf.law
rraymar@gilbertlitigators.com                              rcipolla@fnf.law
dcopeland@gilbertlitigators.com                            jdelich@fnf.law


/s/ *Eric L. Cramer*                                       Ivy Ngo
Eric L. Cramer                                             **FREEDMAN NORMAND**
David A. Langer                                              **FRIEDLAND LLP**
Jeremy Gradwohl                                            1 SE 3d Avenue, Suite 1240
**BERGER MONTAGUE PC**                                     Miami, FL 33131
1818 Market Street, Suite 3600                             Tel: (786) 924-2900
Philadelphia, PA 19103                                     ingo@fnf.law
Tel: (215) 875-3000
ecramer@bergermontague.com
dlanger@bergermontague.com                                 Daniel J. Walker
jgradwohl@bergermontague.com                               Robert E. Litan
                                                           **BERGER MONTAGUE PC**
                                                           1001 G Street, NW, Suite 400 East
Richard Schwartz                                           Washington, DC 20001
**BERGER MONTAGUE PC**                                     Tel: (202) 559-9745
110 N. Wacker Drive                                        rlitan@bergermontague.com
Chicago, IL 60606                                          dwalker@bergermontague.com
Tel: (773) 257-0255
rschwartz@bergermontague.com                               *Settlement Class Counsel*

15