**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>Defendants. | Case No. 1:22-cv-00125<br><br><br>Hon. Matthew F. Kennelly |

**DECLARATION OF EDWARD J. NORMAND IN SUPPORT OF**
**PLAINTIFFS' MOTION TO AMEND MOTION FOR CLASS CERTIFICATION**

I, Edward J. Normand, duly sworn, do hereby depose and say as follows:

1.      I am a partner of the law firm of Freedman Normand Friedland LLP ("FNF"). I joined the firm after practicing at Boies Schiller Flexner LLP, where I became a partner, for twenty-two years. I have been practicing in complex litigation, including antitrust matters, since 1998.

2.      I have never been reprimanded or disciplined by any court or professional association. I have maintained integrity, professionalism, and candor to the courts, to my colleagues, and

to opposing counsel, throughout my career. My participation in filings that the Court reasonably regards as misleading leaves me deeply sorry to the Court and for the concern I have caused for my colleagues at FNF.

3. In the filings at issue, I did not intend to mislead. The Court effectively highlighted, however, that from a reasonable reader's perspective, several statements in briefs and submissions I approved represented the facts inaccurately. They imply a circumstance that I did not consider, but should have foreseen. I am particularly dismayed because if I had given the phrasing more thought, I would not have hesitated to provide the relevant details. Instead, I have contributed to creating more work for the Court and risked undermining the hard work that my colleagues and I have put into the case and the results we have achieved for the Class to date. On behalf of myself, and my firm, I sincerely apologize to the Court. These faults were mine and mine alone.

4. The language at issue, as addressed during the hearing on March 11, 2026, was contained in a declaration that I signed, a brief that I co-signed, and a proposed order that Plaintiffs' counsel jointly submitted. The language concerned representations that Class Counsel, and individual counsel, made about the risks of nonpayment they had undertaken. The phrasing was true vis-à-vis my firm (and, as I understand it, Berger Montague), but it did not take accurately take account of the facts concerning co-counsel Gilbert Litigators and Counselors ("GLC"). I understood GLC had a funding arrangement that, as of April 2024, I believed was sufficient to cover their lodestar at less than half of their standard rates and at least most of their case-related expenses.

5. Speaking for myself and my other co-counsel, Mr. Cramer, we should have been more careful regarding representations relating to risk that implied all three firms were similarly situated. A key personal takeaway, as Mr. Cramer also indicated during the March 11 hearing, is for me to be more careful in using templates from prior cases as a starting point for filings relating

2

to recovery of class fees and costs that otherwise seem efficient to use. There was also no discussion among counsel, that I recall, about the implications of GLC's funding arrangements on our joint representations about risk and contingency. I am kicking myself for my serious oversight in not discussing such matters.

6. Considering these errors, I have now extensively spoken with my partners at FNF about the need to carefully consider co-counsel's litigation funding arrangements when making representations about the contingent nature of the representation and about creating placeholders for such information in our models. We have begun work to implement and promulgate a firm-wide policy governing the disclosure of co-counsel litigation funding to ensure that this error will never happen again at FNF.

7. At the March 11 hearing, the Court commented on taking into account the Class's interests in deciding on the adequacy of counsel for class certification. With that in mind, I provide the following facts.

8. Over the course of the case to date, FNF has had 34 professionals work on it (that includes partners, counsel, associates, staff attorneys, and paralegals). In leading the case for my firm, I have worked over 6,000 hours, and FNF has contributed over 38,500 hours in total professional time. I have worked on every facet of the case, including taking the most fact depositions, handling the oral argument on the motion to dismiss and several other significant matters, taking and defending expert depositions, taking the lead role in drafting and overseeing the editing of most of the briefs (including Plaintiffs' motion to dismiss Defendants' appeal, which the Seventh Circuit granted on March 16), and working primarily with Berger Montague on matters relating to class certification, *Daubert*, and expert analyses. I have also played a leading role in negotiating the approximately $320 million in settlements to date. Along with my FNF colleagues on the case,

3

I know the factual record and legal landscape in this case. We possess critical institutional knowledge of a case that is particularly complex and that involves a particularly unwieldy factual record. And there is no conflict between FNF and the Class.

9. Considering these facts, I firmly believe that the Court would best serve the Class's interests by appointing my firm as one of the Class Counsel. We are fully prepared, based on both our work in this case and our substantial trial experience since FNF was founded (and before then), to take this case to trial and to defend any verdict on appeal. I believe it would prejudice the Class to remove FNF from the case. I believe our continued participation would most effectively advance the Class's well-founded claims and help to maximize the prospect of future recoveries for the Class, whether it be through settlement or a jury verdict.

10. In addition, my foregoing mistakes in connection with the filings at issue have nothing to do with my colleagues, who have invested over 32,500 hours in creating the institutional knowledge of the case the firm possesses. They have been zealous and effective in their advocacy. FNF has been appointed lead counsel in many cases and has successfully led many such cases to successful resolution. In sum, I firmly believe that the Class would be substantially prejudiced from losing FNF's continued leadership in this case. I would ask the Court to consider that, where the Class members have done nothing wrong, separating them from the counsel who knows their case best, because of these errors, would cause them a harm they do not deserve.

11. Accordingly, and understanding that Mr. Cramer is proposing a similar approach vis-à-vis Berger Montague, I respectfully propose the following:.

    A. I respectfully propose that the Court appoint FNF and Berger Montague as Class Counsel. This would preserve the requisite institutional knowledge and relevant expertise, best preserve the existing schedule, and best avoid a scenario in which

the Class members suffer (and the Defendants potentially benefit) from a change of guard. The case could move forward without undue delay or prejudice to the Class. I assure the Court that, when filing for any fee petitions that may arise, FNF will consider the funding arrangements of co-counsel and explain them to the Court.

B. In the alternative, if the Court decides that my firm cannot represent the Class, I would respectfully withdraw my firm's application to be one of the Class Counsel. The Court might then give my firm's clients (and the other Plaintiffs) some weeks to select another firm to apply as class counsel. (To my reading of the precedent, the existing Plaintiffs have to remain to preserve the tolling of the Class's claims; new plaintiffs with new counsel could be time-barred.) If it would please the Court, I would help to find the new counsel for our clients to retain should they wish to proceed in that fashion.

Dated: March 19, 2026

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

*/s/ Edward J. Normand*
Edward J. Normand
**FREEDMAN NORMAND
 FRIEDLAND LLP**
155 E. 44th Street, Suite 915
New York, NY 10017
Tel: (646) 494-2900
tnormand@fnf.law