# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>Defendants. | Case No. 1:22-cv-00125<br><br>Hon. Matthew F. Kennelly |

## DECLARATION OF ROBERT D. GILBERT
## IN SUPPORT OF MOTION BY GILBERT LITIGATORS & COUNSELORS
## TO AMEND MOTION FOR CLASS CERTIFICATION

I, Robert D. Gilbert, pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

1.      I am a partner in Gilbert Litigators & Counselors, PC ("GLC") and to date GLC has on three occasions been certified as Settlement Class Counsel in this case.[1] I am a 1982 graduate of Yale Law School and a former partner at Mayer Brown. I have never been disciplined

---

[1] *See* ECF 726 ¶ 5; ECF 884 ¶ 5; ECF 924 ¶ 5.

or reprimanded by any court or professional association. My commitment to integrity, candor to the courts and the best interests of clients is paramount. I am fully familiar with these proceedings, and have personal knowledge of the matters set forth herein.

2. Since 2021 I have been involved in developing, prosecuting, overseeing, and resolving all aspects of this case. Prior to filing this case in 2022, I and my colleagues at GLC worked on developing this case for several months and invested hundreds of hours. I specifically recruited Messrs. Cramer and Normand and their firms Berger Montague PC ("BMPC") and Freedman Normand Friedland LLP ("FNF") to serve as GLC's co-counsel because of their excellence and experience. I believe that together the three firms have provided exceptional representation to the Class and have achieved exceptional results.

3. I apologize without qualification to the Court for the use of the word "contingent" in prior Declarations and submissions.[2] I did not intend to mislead the Court, but now understand that language misled the Court. I was in error and apologize.[3]

**A. Protecting the Best Interests of the Class**

4. I respectfully submit it would be in the best interests of the Class for Messrs. Cramer and Normand, and their law firms, to continue to represent the Class as Co-Lead Class Counsel.

5. For the past five years, I have been relentlessly devoted to pursuing justice for the alumni and students of Defendants who are members of the Class. GLC's and my focus has always been to serve and further the best interests of the Class.

---

[2] *See* ECF 679 at 17; ECF 830 at 21-22; ECF 679-1 ¶ 6; ECF 679-3 ¶ 4; ECF 830-1 ¶ 7 n.1; ECF 830-4 ¶ 5.

[3] This apology also applies to references to "unreimbursed" costs and expenses by GLC. *See* ECF 679-1 ¶ 65; ECF 830-1 ¶ 42; ECF 830-4 ¶ 6.

6. I would like nothing more than to see this case to its successful conclusion. I have, however, taken to heart the concerns expressed by the Court at the March 11, 2026 hearing. As my further involvement in this case may jeopardize the interests of the Class, I offer to be ethically screened from the case personally, and to have the role of GLC be diminished from one of three Co-Lead Class Counsel to the role of supporting class counsel in support of BMPC and FNF as Co-Lead Class Counsel, in light of GLC's years of work and mastery of numerous subtle issues in this case.[4] This would mean that Robert S. Raymar, a 1972 graduate of Yale Law School and a very experienced litigator who has been immersed in the case since before the complaint was filed, would lead the GLC efforts going forward in support of BMPC and FNF.

7. A more drastic remedy would be for the Court to bar GLC from continuing to work under the leadership of Co-Lead Class Counsel. It would clearly be adverse to the interests of the Class if GLC lawyers with depth of knowledge acquired over years were barred from responding to questions about the case from FNF and BMPC. That would mean, for example, that—even though GLC has more in-depth knowledge as to certain Defendants and other aspects of the case than the other two firms—BMPC and FNF would be unable to avail themselves of that knowledge through trial (even if the Court permitted some reasonable period of transition). The primary beneficiary of such a remedy would be the five remaining Defendants. Their Defense Counsel would retain the detailed knowledge that Co-Lead Class Counsel would lose going forward, which would prejudice the Class greatly. I respectfully submit that the Class would be prejudiced by removing GLC entirely from the case at this critical juncture.

---

[4] I have administrative responsibilities at GLC that I can and will discharge without any involvement in the legal, litigation, appellate or settlement aspects of this case.

**B. The Reasons I Unintentionally Erred**

8.      Once again, I apologize without reservation for my prior statements.  Still I feel I owe it to the Court to state the reasons why I did not believe at the time my prior use of language was misleading, and why my errors were not intentional:

- Before this case was filed, before there was any funding, and largely before the other two firms became involved, GLC devoted over 790 hours developing the matter, which would never have been recovered if there had been no funding or recovery.[5]

- The retainer agreement with named plaintiff Brittany Tatiana-Weaver used the phrase "fully contingent," followed by an express reference to GLC obtaining funding.[6]

- The funding agreements contained express language regarding "contingency."[7]

- No federal or local rule required that funding be disclosed, including LR 54.3 regarding the contents of fee applications.

- I relied on model language used in many prior fee declarations without controversy in which one or more counsel were at least partially funded.

- Less than 40% of GLC's legal fees were funded.[8]

- The funding agreements required GLC to continue to pursue this litigation even if the firm exceeded funding limits (as seemed likely in light of the aggressiveness of defense counsel and their vast resources) or if funding were discontinued.[9]

---

[5] *See* ECF 679-3, Ex. A at 2.
[6] *See* ECF 1146-2, Ex. F.
[7] *See, e.g.,* ECF 1146-1 ¶ 2.7.
[8] *See*  ECF 1076 & 1090-1 at 8 n. 11; ECF 1146-2 ¶ 5.2.2
[9] *See* ECF 1146-1 (Nivalion) ¶ 2.7 ("Once [Nivalion] has made payments in the total amount of the Commitment, [GLC] will thereafter continue to pursue the Funded Litigation to its completion on a 100% contingency basis"). ECF 1146-2 (TRGP 2023) states in ¶ 3.1.1(a) that GLC "will . . . diligently pursue the Litigation in good faith." In the event that TRPG terminates the Agreement, that requirement survives,

4

- The context of the Declarations was that the recoveries had already occurred and therefore GLC was obligated to repay its funders at a substantial multiple.[10] I was not at all considering the scenario of there being no recovery.

9. I now realize I was wrong about all of that, and should never have made the statements about which the Court has justifiably expressed concern.

**C. Our Three Firms Have Represented the Class with Excellence**

10. Our three firms have worked well together for over four years; we have litigated zealously against a multitude of excellent, aggressive defense counsel; we have researched hundreds of precedents, filed thousands of pages of briefs and supporting materials; this Court has read our work product and heard from each of us in dozens of hearings and decisions, and has its own views about our knowledge and presentation of the case, the facts and the law. GLC could certainly work well under the leadership of BMPC and FNF.

11. GLC has enormous, detailed knowledge of and lived experience with the case as a whole, which includes millions of pages of documents and approximately 100 fact and expert depositions of witnesses we have taken, defended, or closely observed.

12. The three firms as a team have obtained results to date for the Class that speak for themselves, including, after the fee declarations were submitted, the Court's denial of Defendants' *Daubert* motions and motions for summary judgment. Indeed, the U.S. Court of Appeals for the Seventh Circuit just granted Plaintiffs' Counsel's motion to dismiss as improvident the appeal Defendants took from this Court's summary judgment decisions. *See* Order, *Corzo et al. v. Cornell University et al.,* No. 26-1275 (7th Cir. Mar. 16, 2026), Doc. 28. The firms' efforts thereby kept

---

because ¶ 12.6 provides: "Section 3.1.1 . . . shall survive any termination of this Agreement and shall remain in full force and effect." *See also* ECF 1146-3 (TRGP 2024) ¶¶ 3.1.1, ¶ 12.6 (same).

[10] *See* ECF 1146-1 ¶¶ 4.1-4.5 & App'x 3; ECF 1146-2 ¶ 6.2.

the case on this Court's schedule and avoided any delay that would have arisen from an appeal of

the summary judgment decisions.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed on March 19, 2026 in Angra Dos Reis, Brazil.

/s/ Robert D. Gilbert
**GILBERT LITIGATORS &**
  **COUNSELORS, P.C.**
11 Broadway, Suite 615
New York, NY 10004
Tel: (646) 448-5269
rgilbert@gilbertlitigators.com

6