**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>*Defendants*. | Case No. 1:22-cv-00125<br><br>Hon. Matthew F. Kennelly |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO CERTIFY THE COURT'S SUMMARY JUDGMENT ORDER**
**FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

QUESTIONS FOR WHICH CERTIFICATION IS SOUGHT ...................................................... 2

BACKGROUND ................................................................................................................. 2

ARGUMENT ..................................................................................................................... 3

I.     THE COURT SHOULD CERTIFY BOTH SECTION 568 STATUTORY INTERPRETATION QUESTIONS ....................................................................... 3

    A.     The Questions Presented Are Pure Questions of Law ............................................ 3

    B.     The Appropriate Interpretation of the 568 Exemption Is a "Controlling" Question That Would "Materially Advance the Ultimate Termination" of this Litigation ..................................................................................................... 5

    C.     There Are Substantial Grounds for a Difference of Opinion Regarding the Appropriate Interpretation of Section 568 ............................................................. 8

CONCLUSION ................................................................................................................... 12

**INTRODUCTION**

The question of whether the 568 Exemption shields Defendants from antitrust liability in this case turns upon two consequential and contested questions of statutory interpretation. Together, those pure questions of law carry the potential to terminate this litigation, making them prime candidates for interlocutory certification.

The first question is whether *all* participating institutions must be need-blind for any need-blind institution to benefit from Section 568's protection. Although the text requires only that "2 or more" need-blind institutions enter into specified agreements, the Court held that *all* participating institutions must be need-blind for *any* need-blind institution to invoke the Exemption. Under that interpretation, the mere fact that universities who are no longer parties to this lawsuit considered financial circumstances in limited instances (or said that they did in order to obtain more favorable settlement terms), such as waitlist and transfer decisions, erroneously deprives all Defendants of Section 568's protection.

The second question pertains to what it means for a university to be "need-blind" in the first place. The Court held that certain schools were not "need-blind" because they considered an applicant's family's capacity to donate to the school. But the more natural interpretation of "need-blind" is to require a university to be blind to the fact that an applicant *needs* financial aid when making admission decisions and not penalize an applicant for deciding to apply for financial aid. And, at summary judgment, Plaintiffs did not contest that the current Defendants would be "need-blind" under this definition.

These questions are purely legal in nature and entirely novel; no other court has interpreted the meaning of the 568 Exemption. The answers to the questions are far from obvious. And, together, they determine whether Defendants can be held liable under the Sherman Act in this

litigation—and thus whether a costly and involved multi-week trial is necessary. All of this makes the two questions presented here ideal candidates for Section 1292(b) certification, in addition to the issues presented to the Court on January 27, 2026. *See* Dkt. 1216-1.

**QUESTIONS FOR WHICH CERTIFICATION IS SOUGHT**

1. Whether all participating institutions must be need-blind for any institution to be exempt from the antitrust laws under Section 568.
2. Whether an institution that does not consider a student's decision to seek financial aid when making admissions decisions is considered "need-blind" under Section 568.

**BACKGROUND**

On January 12, 2026, the Court's summary judgment order conclusively decided that "none of the universities may benefit from the 568 Exemption's protections in this case." Dkt. 1210 ("MSJ Order") 40. Thereafter, Defendants initiated an appeal of the Court's denial of immunity under Section 568 pursuant to the collateral order doctrine. Dkt. 1217. Defendants also moved to certify an interlocutory appeal under 28 U.S.C. § 1292(b) of the Court's determination that Plaintiffs had demonstrated antitrust injury and that their claims were not barred by the statute of limitations. Dkt. 1216.

On March 16, 2026, the Seventh Circuit granted Plaintiffs' motion to dismiss Defendants' collateral order appeal for lack of appellate jurisdiction. *Corzo v. Cornell Univ.*, No. 26-1275 (7th Cir.), Dkt. 28. The Seventh Circuit held that Section 568 is a "defense to liability," rather than an immunity from suit. *Id.* at 2. The Seventh Circuit addressed only the issue of its jurisdiction under the collateral order doctrine, not the merits issues presented here. Although Defendants believed that the Court's denial of immunity under Section 568 was subject to the collateral order doctrine, the Seventh Circuit held otherwise.

Accordingly, Defendants now seek certification for a discretionary interlocutory appeal of this Court's holding that the Section 568 Exemption does not apply because (1) not all participating

institutions were need-blind; and (2) certain institutions were not need-blind because they allegedly considered an applicant's family's capacity to donate to the institution. Defendants reserved the right to seek certification under Section 1292(b) in their first Section 1292(b) certification motion. *See* Dkt. 1216-1 n.1. And Plaintiffs themselves have stated that Section 1292(b) certification is the "proper procedural mechanism" for seeking appellate review of this question. *Corzo v. Cornell Univ.*, No. 26-1275 (7th Cir.), Dkt. 19 at 7 n.6 (Plaintiffs' motion to dismiss collateral order appeal for lack of appellate jurisdiction).

## ARGUMENT

A district court can certify an issue for Section 1292(b) interlocutory appeal if the movant shows that "(1) there is a question of law; (2) the question is controlling; (3) the question is 'contestable,' that is, there is substantial grounds for differences of opinion; and (4) immediate appeal would speed up the ultimate termination of the litigation." *In re Lion Air Flight JT 610 Crash*, 2023 WL 3653217, at *2 (N.D. Ill. May 25, 2023). The two statutory interpretation questions presented here satisfy all four elements.

### I. The Court Should Certify Both Section 568 Statutory Interpretation Questions

#### A. The Questions Presented Are Pure Questions of Law

The Seventh Circuit has "interpreted 'question of law' to refer to a question regarding the meaning of a statutory or constitutional provision, regulation or common law doctrine." *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1007 (7th Cir. 2002). Whether Plaintiffs have a viable Sherman Act claim in this lawsuit turns on two questions of statutory interpretation regarding the Section 568 Exemption, which authorizes "2 or more institutions of higher education at which all students admitted are admitted on a need-blind basis, to agree or attempt to agree" to four types of

agreements regarding the establishment of need-based financial aid principles. Improving America's Schools Act of 1994, Pub. L. No. 103-382, § 568, 108 Stat. 3518 (1994).

First, a court must determine whether Section 568 requires *all* participating institutions to be need-blind in order for *any* institution to claim immunity. Second, a court must determine whether engaging in so-called "wealth favoritism" by considering whether a student's family has the capacity to donate to an institution means that the institution is not "need-blind" under Section 568.

Questions of statutory interpretation, like the ones presented here, are quintessential pure questions of law because they are "abstract legal issue[s]" that "the court of appeals could decide quickly and cleanly without having to study the record." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000); *see, e.g.*, *Stapleton v. Advoc. Health Care Network & Subsidiaries*, 2015 WL 14076157, at *1 (N.D. Ill. Jan. 21, 2015) ("[I]t is appropriate to certify this question of statutory interpretation for an interlocutory appeal."); *Padilla v. DISH Network L.L.C.*, 2014 WL 539746, at *6 (N.D. Ill. Feb. 11, 2014) ("As an issue of statutory interpretation, Question One does qualify as a pure question of law within the meaning of *Ahrenholz*."); *Gamboa v. City of Chicago*, 2004 WL 2877339, at *4 (N.D. Ill. Dec. 13, 2004) ("Because the question concerns an interpretation of a statutory provision …, we find that Defendants have raised a question of law suitable for interlocutory review.").

For the first question, the Seventh Circuit would only need to consider Section 568's text, structure, and purpose to determine whether Congress intended for a need-blind institution to forfeit Section 568's protection merely by entering into an agreement that included an institution that turned out not to be need-blind. As this Court's opinion shows, this analysis does not require any in-depth factual analysis or the resolution of any factual disputes. MSJ Order 39-40 & n.5

(noting "[t]he only other possible reading is that Congress wanted to protect agreements where at least two participants were need-blind institutions, regardless of the other members' admissions practices"). It merely requires using "traditional tools of statutory interpretation," *Yates v. United States*, 574 U.S. 528, 546 (2015), to "'carefully consider[]' the text, structure, history, and purpose" of Section 568, *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019), to determine what Congress meant when it exempted "2 or more" universities that enter into financial aid agreements from antitrust liability. Doing so would resolve the ambiguity of whether the Exemption operates so long as two or more participating institutions are need-blind or so long as *all* participating institutions are need-blind.

Likewise, the second question involves scrutinizing what it means for a school to admit students "on a need-blind basis." Pub. L. No. 103-382, § 568(a). To answer this question, the Seventh Circuit would need to analyze the term "need-blind," *id.*, and its statutory definition: "without regard to the financial circumstances of the student involved or the student's family," *id.* § 568(c)(3). It would also need to consider the other references to "need" in Section 568, including the term "need-based financial aid" in Section 568(a)(6), to ensure that the term "need" bears the same meaning throughout the statute. *See Powerex Corp. v. Reliant Energy Servs. Inc.*, 551 U.S. 224, 232 (2007) ("[I]dentical words and phrases within the same statute should normally be given the same meaning."). Both questions presented are pure questions of law regarding the meaning of Section 568's statutory language.

### B. The Appropriate Interpretation of the 568 Exemption Is a "Controlling" Question That Would "Materially Advance the Ultimate Termination" of this Litigation

A question of law is controlling "if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *United States v. Moglia*, 2004 WL 1254128, at *3 (N.D. Ill. June 7, 2004) (quoting *Sokaogon Gaming Enter. Corp. v. Tushie–Montgomery Assocs.,*

*Inc.*, 86 F.3d 656, 659 (7th Cir. 1996)). Relatedly, the resolution of such a question "may materially advance the ultimate termination of the litigation," *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012), if it has the potential to "*speed up* the litigation," *Dale v. Deutsche Telekom AG*, 2024 WL 1302783, at *1 (N.D. Ill. Mar. 27, 2024). The question of whether the 568 Exemption applies in this case satisfies both criteria.

*First*, the applicability of the 568 Exemption is controlling because the Exemption is a total defense to Plaintiffs' Sherman Act claim. *See Corzo v. Cornell Univ.*, No. 26-1275 (7th Cir.), Dkt. 19 (Plaintiffs arguing that the 568 Exemption is an affirmative defense, not an immunity). As such, an interlocutory appeal that definitively determines whether the 568 Exemption applies would remove "uncertainty about the status of [Plaintiffs' only] claim" against at least the four remaining Defendants who are asserting the Exemption.[1] *Sterk*, 672 F.3d at 536. Resolution of this question would affect "a significant change in the substantive rights at issue between the parties bearing directly on the case's ultimate resolution," *Andrews v. Nw. Hosp.*, 2026 WL 183756, at *2 (N.D. Ill. Jan. 23, 2026), and it would mean that the Defendants would be spared from further "protracted, costly litigation," *Zikis v. Pfizer, Inc.*, 2005 WL 3274107, at *2 (N.D. Ill. Aug. 8, 2005).

Plaintiffs have not preserved any argument that Defendants are not entitled to summary judgment under the Exemption as understood by Defendants. At summary judgment, while Plaintiffs disagreed with Defendants' interpretation of Section 568, they never argued that any Defendants claiming the Exemption would not be entitled to it under Defendants' interpretation— *i.e.*, Plaintiffs never contended that any Defendant disadvantaged applicants because of their need

---

[1] It would do the same for Plaintiffs' claim against Notre Dame, which has not asserted the Exemption for purposes of this litigation but which logically cannot be liable for "conspiring" with exempt coconspirators or for damages incurred by Plaintiffs who were "harmed" by exempt action.

for aid. *See* Dkt. 893 at 49-50. Instead, Plaintiffs argued that certain Defendants were not need-blind because they "admit[ed] students with regard to the applicant's family donation history and capacity for future donations." *Id.* at 49. Plaintiffs also argued that other schools who are no longer parties to this lawsuit considered financial circumstances in limited instances. *Id.* at 50. And while Plaintiffs made a vague allusion that some "Defendants also considered the financial circumstances of low-income applicants," *id.*, Plaintiffs never contended or put forward any evidence that any of the current Defendants *penalized* applicants for seeking financial aid, as required by Section 568. Thus, if the Seventh Circuit resolves this issue in Defendants' favor, Plaintiffs' Sherman Act claim necessarily fails.

*Second*, the question of whether the 568 Exemption applies would materially advance the ultimate termination of this litigation because it has the potential to terminate the litigation for at least four of the five remaining Defendants. Every Defendant but Notre Dame asserts the 568 Exemption. As such, reversal on the 568 Exemption issue would materially advance this litigation because "[i]t would terminate nearly all of [plaintiffs'] claims" and "diminish any possible recovery" to zero.[2] *Bilello v. JPMorgan Chase Ret. Plan*, 603 F. Supp. 2d 590, 593 (S.D.N.Y. 2009); *see also F.D.I.C. v. Mahajan*, 2013 WL 3771419, at *3 (N.D. Ill. July 16, 2013) ("The promise to speed up the litigation does not require that the interlocutory appeal resolve the matter in its entirety[.]").

*Finally*, by terminating most if not all claims in the litigation, reversal may also save this Court from undergoing a costly and involved multi-week trial that could very well "prove to be a useless exercise." *See In re Brand Name Prescription Drugs Antitrust Litig.*, 1996 WL 267752,

---

[2] Plaintiffs' claim against Notre Dame would be untenable if its alleged coconspirators are deemed exempt.

at \*4 (N.D. Ill. May 17, 1996), *rev'd on other grounds*, 123 F.3d 599 (7th Cir. 1997). Because "interlocutory reversal might save time for the district court, and time and expense for the litigants," an immediate appeal would materially advance the ultimate termination of this litigation. *Dale*, 2024 WL 1302783, at \*1 (quoting *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991)).

### C. There Are Substantial Grounds for a Difference of Opinion Regarding the Appropriate Interpretation of Section 568

A question of law presents "substantial grounds for a difference of opinion," and is thus "contestable," if "the question is not settled by controlling authority and there is a substantial likelihood that the district court ruling will be reversed on appeal." *Moglia*, 2004 WL 1254128, at \*3.

The Court's rulings on the meaning of the 568 Exemption are highly contestable. *First*, the Court's holding that the 568 Exemption protects need-blind schools only if *all* participating schools are need-blind contradicts the statutory text. The 568 Exemption applies to "2 or more institutions of higher education at which all students admitted are admitted on a need-blind basis." Pub. L. No. 103-382, § 568(a). The use of the phrase "2 or more" means that the Exemption applies as long as *two* need-blind schools agree to use common principles to determine financial need. Section 568 could have stated that "all institutions" participating in an agreement must be "need-blind" for any of those institutions to benefit from Section 568's protection. But it did not. Instead, Congress took a more flexible approach, requiring that only "2 or more institutions" be need-blind for the Exemption to apply.

Section 568's history and purpose confirm Defendants' interpretation. Section 568 arose from litigation between MIT and the DOJ concerning the "Overlap Group," *see United States v. Brown Univ.*, 5 F.3d 658 (3d Cir. 1993); and Congress modeled Section 568 on MIT's 1993

-8-

settlement agreement disposing of that case, *see* H.R. Rep. No. 105-144 (1997). That agreement provided that a school could participate in certain "cooperative financial aid agreements" if admission decisions for "*its* undergraduate programs" were made "without regard to family financial circumstances." Dkt. 855, Ex. 122 at 28 (emphasis added). Just as that settlement provided that need-blind status be evaluated on a school-by-school basis, Congress took a similar approach to Section 568 by not requiring that need-blind status be evaluated on a group-wide basis.

The Court's contrary holding is also practically untenable. Under the Court's interpretation, operating under the Exemption would require a rigorous monitoring and enforcement scheme among participating schools to ensure that all schools are need-blind at all times. This would necessitate sharing highly confidential, applicant-level admissions data—something that Congress sharply restricted under Section 568(a)(4). Congress did not intend to create such an onerous compliance regime that would raise its own antitrust issues, and it should not be read into the statute when there is a much simpler reading. *See Zbaraz v. Madigan*, 572 F.3d 370, 387 (7th Cir. 2009) ("It is an elementary rule of construction that 'the act cannot be held to destroy itself.'").

*Second*, the Court's holding that a school is not need-blind if it "favored wealthier applicants" by considering an applicant's family's capacity to donate is belied by the text, structure, history, and purpose of Section 568. MSJ Order 40. A school admits students on a "need-blind basis" when it does not use a student's decision to seek financial aid against that student in the admissions process. That is, a school is "*need*-blind" when it is blind to a student's financial *need* in admission decisions. A school's consideration of a student's family wealth has nothing to do with financial need and is consistent with a school conducting "*need*-blind" admission. Respectfully, the Court's holding reads the word "need" out of the statute.

The Court's interpretation of "need-blind" is also contradicted by the use of "need" in another part of the statute. Section 568 refers to "need" in two contexts: "need-based" financial aid, Pub. L. No. 103-382, § 568(a)(3), and "need-blind" admissions, *id.*, § 568(a), (c)(6). The word "need" should bear the same meaning in both contexts. *See Powerex Corp.*, 551 U.S. at 232 ("[I]dentical words and phrases within the same statute should normally be given the same meaning."). Financial aid is "need-based" if it is awarded because of a "demonstrated financial need for such aid" as reflected by an applicant's financial aid application form. Pub. L. No. 103-382, § 568(a)(1). Because aid awards based on the financial circumstances disclosed in an applicant's financial aid application are "need-based," it follows that admissions made without regard to those same financial circumstances in an applicant's financial aid application are "need-blind." *See Mellouli v. Lynch*, 575 U.S. 798, 809 (2015) ("Statutes should be interpreted 'as a symmetrical and coherent regulatory scheme.'"). This interpretation of need-blind also matches how institutions of higher education have understood the term for years. *See, e.g.*, Dkt. 849, MSJ SOF ¶¶ 10-11 (Harvard website explaining that "[n]eed-blind admissions" means that "[y]our financial need and your aid application will never affect your chance of being admitted to Harvard"). "Congress … presumably kn[ew] and adopt[ed]" this meaning in choosing to "employ[] a term of art" like "need-blind." *Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 248 (2014).

The legislative history confirms that Congress adopted this widely-held, common understanding of "need-blind." *See* H.R. Rep. No. 103-761, at 912 (1994) (Conf. Rep.) (to qualify for the 568 Exemption, a school's admissions personnel should avoid "considering information relating to a student's financial circumstances *that is derived from such student's financial aid application form*" (emphasis added)).

*Finally*, the Court's holding contradicts the purpose underlying Congress's enactment of Section 568. Congress enacted the 568 Exemption so that colleges could share information and common principles regarding calculating financial aid packages, so long as that calculation had no bearing on whether the applicants were admitted. Disqualifying universities that use financial aid information to penalize low-income students is consistent with Congress's intent. But it makes no sense to disqualify universities because of considerations that have nothing at all to do with the financial aid process, including whether their admissions policies tend to *benefit* low-income students. In short, only Defendants' interpretation maintains a nexus between the conduct Congress chose to protect and the institutions Congress identified for that protection.

At a minimum, these issues are highly contested because both sides "offer[ed] reasonable interpretations of the statutory language at issue." *Payton v. Union Pac. R.R. Co.*, 2025 WL 3012662, at *2 (N.D. Ill. Oct. 28, 2025); *In re Lion Air Flight JT 610 Crash*, 2023 WL 3653217, at *5 (even when a court "believes its reading [of a statute] is the most reasonable," it has found there is "certainly enough room for a difference of opinion" to conclude that there is a "contestable question" for interlocutory review). Thus, this Court may reasonably "believe[] its opinion was rightly decided" and yet still recognize "[t]he issue is … contestable," and grant certification. *Payton*, 2025 WL 3012662, at *2. Defendants request that the Court do so here.

The Court's rulings on these issues are also contestable because both underlying statutory questions are novel. Courts have repeatedly "found an issue contestable based on its novelty." *Whitman v. Bumble Trading LLC*, 2024 WL 6862251, at *5 (C.D. Ill. Feb. 23, 2024). This includes the Seventh Circuit, which found this factor satisfied where the interpretation of two statutory provisions involved "questions of first impression" that were "certainly contestable." *Boim v. Quranic Literacy Inst.*, 291 F.3d at 1007–08; *see, e.g.*, *Whitman*, 2024 WL 6862251, at *5 (holding

-11-

question is contestable "because of the absence of authority"); *Nat. Res. Def. Couns. v. Illinois Power Res., LLC*, 2016 WL 9650981, at *4 (C.D. Ill. Nov. 2, 2016) (same); *City of Joliet v. Mid-City Nat. Bank*, 2008 WL 4889038, at *2 (N.D. Ill. June 13, 2008) (certifying the interlocutory appeal because neither the Seventh Circuit nor any other Court of Appeals had addressed the specific issues), *aff'd sub nom.*, *City of Joliet v. New West, L.P.*, 562 F.3d 830 (7th Cir. 2009). So too here. This is the first case to analyze the 568 Exemption and the statutory interpretation questions raised have not been previously addressed.

## CONCLUSION

For the foregoing reasons, the Court should grant certification under 28 U.S.C. § 1292(b) for interlocutory review of the questions presented.

-12-

Dated: April 1, 2026

Respectfully submitted,

By: */s/ David Gringer*
David Gringer
Alan Schoenfeld
Wilmer Cutler Pickering Hale
and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: 212-937-7294
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Seth Waxman
Wilmer Cutler Pickering Hale
and Dorr LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel: 202-663-6800
seth.waxman@wilmerhale.com

Edward W. Feldman
Daniel Martin Feeney
Miller Shakman Levine &
    Feldman LLP
30 W. Monroe St.
Suite 1900
Chicago, IL 60603
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for The Trustees of the University
of Pennsylvania*

By: */s/ Norman Armstrong*
Norman Armstrong
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: 202-389-5000
norman.armstrong@kirkland.com

Daniel E. Laytin
Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Tel.: 312-862-2000
daniel.laytin@kirkland.com

*Counsel for Defendant Cornell University*

By: */s/ Britt M. Miller*
Britt M. Miller
Daniel T. Fenske
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312-782-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com

*Counsel for Defendant Georgetown
University*

-13-

By: */s/ Eric Mahr*
Eric Mahr
Jan Rybnicek
Andrew Henderson
Freshfields US LLP
700 13th Street, NW
Washington, DC 20005
Tel: 202-777-4500
eric.mahr@freshfields.com
jan.rybnicek@freshfields.com
andrew.henderson@freshfields.com

Rami Fakhouri
Jennifer L. Greenblatt
Goldman Ismail Tomaselli Brennan &
Baum LLP
191 North Wacker Drive, Suite 3000
Chicago, IL 60604
Tel: (312) 681-6000
rfakhouri@goldmanismail.com
jgreenblatt@goldmanismail.com

*Counsel for Massachusetts Institute of Technology*

By: */s/ Robert A. Van Kirk*
Robert A. Van Kirk
Jonathan Pitt
Sarah F. Kirkpatrick
Matthew D. Heins
Feyilana Lawoyin
Cole T. Wintheiser
William J. Donnelly
Williams & Connolly LLP
680 Maine Ave. SW
Washington, D.C. 20024
Tel: 202-434-5000
rvankirk@wc.com
jpitt@wc.com
skirkpatrick@wc.com
mheins@wc.com
flawoyin@wc.com
cwintheiser@wc.com
wdonnelly@wc.com

James Peter Fieweger
Michael Best & Friedrich LLP
444 West Lake Street
Suite 3200
Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for University of Notre Dame*

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2026, I caused a true and correct copy of the foregoing document to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

/s/ David Gringer

David Gringer

*Counsel for The Trustees of the University of Pennsylvania*

-15-