**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00125 |
| Plaintiffs, | Hon. Matthew F. Kennelly |
| v. | |
| BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**SECOND MOTION TO CERTIFY THE COURT'S SUMMARY JUDGMENT ORDER**
**(AS TO § 568) FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

LEGAL STANDARDS .................................................................................................... 1

ARGUMENT..................................................................................................................... 1

I.    THE PROPOSED QUESTIONS ARE NOT "CONTROLLING"................................... 2

    A.    Under Their Incorrect Argument That an Appeal Would Resolve Plaintiffs' Claims, Defendants Would Have to Prevail on Both Questions, Which Means That Neither Question Is "Controlling".................................................................. 2

    B.    The Resolution of Both Questions in Defendants' Favor Would Not Necessarily Resolve Plaintiffs' Claims or Further the Litigation.......................... 3

    C.    In Asserting That the Proposed Appeal Could Resolve Plaintiffs' Claims, Defendants Have to Make Arguments That Are Improper Under § 1292(b)......... 6

    D.    The Resolution of the Questions on Appeal Would Not Contribute to the Determination of a Wide Spectrum of Cases........................................................... 8

II.    THERE IS NO "SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION" AS TO THE RESOLUTION OF THE PROPOSED QUESTIONS................................... 9

    A.    Defendants' Position as to the First Proposed Question Is Contrary to the Plain Language of the Statute and Would Produce Absurd Results...................... 9

    B.    Defendants' Position as to the Second Proposed Question Is Contrary to the Plain Language of the Statute and Would Produce Absurd Results..................... 12

III.    THE RESOLUTION OF THE PROPOSED QUESTIONS WOULD NOT "MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION"................................................................................................................... 14

CONCLUSION................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*ABKCO Music, Inc. v. Sagan*,
  2019 WL 11795494 (S.D.N.Y. Oct. 11, 2019) .......................................................................... 13

*Ahrenholz v. Bd. of Trustees of the Univ. of Ill.*,
  219 F.3d 674 (7th Cir. 2000) ..................................................................................................... 1, 7

*Allen v. AT&T Mobility Servs., LLC*,
  2025 WL 3251213 (11th Cir. Nov. 21, 2025).......................................................................... 10

*Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*,
  246 F.R.D. 39 (D.D.C. 2007)................................................................................................... 13

*Andrews v. Northwestern Hosp.*,
  2026 WL 183756 (N.D. Ill. Jan. 23, 2026)......................................................................... 1, 7, 9

*Arandell Corp. v. Xcel Energy Inc.*,
  149 F.4th 883 (7th Cir. 2025) ................................................................................................. 4, 10

*Artisan & Truckers Cas. Co. v. Throgmorton*,
  2025 WL 748191 (S.D. Ill. Mar. 7, 2025) ................................................................................ 14

*Awuah v. Coverall N. Am., Inc.*,
  703 F.3d 36 (1st Cir. 2012)....................................................................................................... 10

*Brownlee v. Catholic Charities of the Archdiocese of Chicago*,
  2020 WL 977968 (N.D. Ill. Feb. 28, 2020) ............................................................................. 10

*C.T. v. Red Roof Inns, Inc.*,
  2022 WL 18003292 (S.D. Ohio Dec. 30, 2022) ...................................................................... 13

*Carbone v. Brown Univ.*,
  621 F. Supp. 3d 878 (N.D. Ill. 2022) ................................................................... 9, 10, 12, 14

*Colon v. Metro-N. Commuter R.R. Co.*,
  2017 WL 1375166 (D. Conn. Apr. 10, 2017).............................................................................. 7

*Corzo v. Brown Univ.*,
  2026 WL 91424 (N.D. Ill. Jan. 12, 2026) ........................................................................ passim

*Daniel v. Am. Bd. of Emergency Med.*,
  988 F. Supp. 127 (W.D.N.Y. 1997)......................................................................................... 11

*Difelice v. U.S. Airways, Inc.*,
  404 F. Supp. 2d 907 (E.D. Va. Dec. 12, 2005)......................................................................... 3

*Digital Realty Tr., Inc. v. Somers*,
583 U.S. 149 (2018)..................................................................................... 12

*Dolls Kill, Inc. v. MengEryt*,
2025 WL 3033729 (7th Cir. Oct. 30, 2025)................................................. 13

*E.E.O.C. v. Dial Corp.*,
2001 WL 1945088 (N.D. Ill. Dec. 27, 2001)............................................... 14

*Feit Elec. Co. v. CFL Techs., LLC*,
2021 WL 4061741 (N.D. Ill. Sept. 7, 2021) ............................................. 1, 7

*Fenton v. Farmers Ins. Exch.*,
2010 WL 1006523 (D. Minn. Mar. 16, 2010) ............................................... 8

*Galbreath v. Help at Home, LLC*,
2025 WL 919574 (N.D. Ill. Mar. 26, 2025).................................................. 10

*Goodpaster v. NFLC, Inc.*,
2013 WL 1149568 (N.D. Ind. Mar. 18, 2013)................................................ 6

*Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*,
998 F.2d 391 (7th Cir. 1993) ................................................................... 9, 11

*Grp. Life & Health Ins. Co. v. Royal Drug Co.*,
440 U.S. 205 (1979)................................................................................. 9, 10

*Haas v. Verizon N.Y., Inc.*,
2016 WL 11953027 (S.D.N.Y. Apr. 15, 2016)............................................... 7

*Halliburton, Inc. v. Admin. Review Bd.*,
771 F.3d 254 (5th Cir. 2014) ...................................................................... 10

*Hart v. Rick's Cabaret Int'l, Inc.*,
73 F. Supp. 3d 382 (S.D.N.Y. 2014) ............................................................. 3

*Holwill v. AbbVie Inc.*,
2021 WL 1540998 (N.D. Ill. Apr. 19, 2021) ................................................. 3

*In re Argon Credit, LLC*,
2017 WL 3478812 (N.D. Ill. Aug. 14, 2017) ................................................ 1

*In re Auto. Profs., Inc.*,
379 B.R. 746 (N.D. Ill. 2007) ..................................................................... 14

*In re Grand Jury Subpoena*,
912 F.3d 623 (D.C. Cir. 2019)..................................................................... 10

iii

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
2024 WL 168298 (C.D. Cal. Jan. 11, 2024) ................................................................... 11

*In re Oxford Health Plans, Inc.*,
182 F.R.D. 51 (S.D.N.Y. 1998) ........................................................................................ 13

*In re Snap Inc. Secs. Litig.*,
2018 WL 3816764 (C.D. Cal. Aug. 8, 2018)...................................................................... 3

*In re Sparks*,
1994 WL 163946 (N.D. Ill. Apr. 25, 1994) ........................................................................ 8

*In re Terrorist Attacks on Sept. 11, 2001*,
2025 WL 2105869 (S.D.N.Y. July 28, 2025) ..................................................................... 7

*In re Turkey Antitrust Litig.*,
2024 WL 5440057 (N.D. Ill. Oct. 16, 2024)....................................................................... 3

*Irvin v. Exeter Fin. LLC*,
2025 WL 325269 (7th Cir. Jan. 29, 2025) ....................................................................... 13

*Kisting v. Gregg Appliances, Inc.*,
2017 WL 44832 (E.D. Wis. Jan. 4, 2017)........................................................................... 8

*Kurowski v. Rush System for Health*,
2024 WL 3455020 (N.D. Ill. July 18, 2024)....................................................................... 8

*LAJIM, LLC v. Gen. Elec. Co.*,
2016 WL 626801 (N.D. Ill. Feb. 17, 2016) ........................................................... 1, 6, 7, 9

*Lake Shore Healthcare & Rehab. Centre, LLC v. Moore*,
2026 WL 412745 (N.D. Ill. Feb. 13, 2026) ........................................................................ 3

*Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*,
2012 WL 1481510 (S.D.N.Y. Apr. 27, 2012)...................................................................... 8

*Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*,
518 F.3d 459 (7th Cir. 2008) ............................................................................................. 7

*Moultrie v. Penn Aluminum Int'l, LLC*,
2012 WL 6004159 (S.D. Ill. Nov. 30, 2012) ...................................................................... 6

*Nat'l Broiler Mktg. Ass'n v. United States*,
436 U.S. 816 (1978)......................................................................................................... 10

*NeuroGrafix v. Brainlab, Inc.*,
2020 WL 1663105 (N.D. Ill. Apr. 4, 2020) ................................................................. 1, 15

*NeuroGrafix v. Brainlab, Inc.*,
  2021 WL 12103013 (N.D. Ill. Jan. 31, 2021) ....................................................... 1, 8

*Owners Ins. Co. v. Step Seven LLC*,
  2025 WL 3443438 (N.D. Ill. Dec. 1, 2025) ........................................................... 5, 8

*Papazoglou v. Holder*,
  725 F.3d 790 (7th Cir. 2013) .................................................................................. 13

*Patterson v. Dallas/Fort Worth Int'l Airport Bd.*,
  2021 WL 4240479 (N.D. Tex. Jan. 6, 2021) ............................................................. 7

*Peck v. Mercy Health*,
  2023 WL 1795421 (E.D. Mo. Feb. 7, 2023).............................................................. 8

*Petr Tr. for BWGS, LLC v. BMO Harris Bank N.A.*,
  95 F.4th 1090 (7th Cir. 2024) ................................................................................. 13

*QBE Ins. Corp. v. Burckhard*,
  2017 WL 4685255 (D.N.D. Oct. 18, 2017) ................................................................ 8

*Richard v. Eli Lilly & Co.*,
  2024 WL 2126103 (S.D. Ind. May 10, 2024)........................................................... 14

*Rieve v. Coventry Health Care, Inc.*,
  870 F. Supp. 2d 856 (C.D. Cal. 2012) ....................................................................... 7

*Rivera v. Google Inc.*,
  2017 WL 11895720 (N.D. Ill. June 27, 2017)......................................................... 15

*Rizack as Tr. of Grandparents.com, Inc. v. Starr Indemn. & Liab. Co.*,
  2020 WL 3619076 (S.D. Fla. July 2, 2020)............................................................... 8

*Shenzhen Buxiang Network Tech., LTD v. Bodum USA, Inc.*,
  2021 WL 243574 (N.D. Ill. Jan. 25, 2021)............................................................... 15

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
  600 U.S. 181 (2023)................................................................................................... 5

*Talignani v. United States*,
  26 F.4th 379 (7th Cir. 2022) ................................................................................... 12

*Tavistock Rest. Grp., LLC v. Zurich Am. Ins. Co.*,
  2021 WL 1614519 (N.D. Ill. Apr. 26, 2021) ..................................................... 11, 14

*Total E & P USA, Inc. v. Marubeni Oil & Gas USA, Inc.*,
  2018 WL 11469624 (S.D. Tex. Nov. 6, 2018) ........................................................... 8

*United States ex rel. Chilcott v. KBR, Inc.*,
2013 WL 6797391 (N.D. Ill. Dec. 23, 2013)...................................................................... 6

*United States ex rel. Howard v. KBR, Inc.*,
2016 WL 9776138 (C.D. Ill. Feb. 29, 2016)...................................................................... 3

*United States ex rel. Williams v. S. Co.*,
2025 WL 2816748 (N.D. Ga. Feb. 25, 2025) ..................................................................... 7

*United States v. 1-44 Truck Ctr. & Wrecker Serv., LLC*,
2023 WL 7002633 (E.D. Mo. Oct. 24, 2023) ................................................................... 13

*United States v. Atlas Lederer Co.*,
174 F. Supp. 2d 666 (S.D. Ohio 2001) ............................................................................. 13

*United States v. Hernandez-Orellana*,
539 F.3d 994 (9th Cir. 2008) ............................................................................................ 11

*United States v. Koeckeritz*,
2025 WL 3138905 (7th Cir. Nov. 10, 2025)..................................................................... 13

*United States v. Revis*,
2023 WL 2182334 (6th Cir. Feb. 23, 2023) ..................................................................... 10

*United States v. Sandoval-Curiel*,
50 F.3d 1389 (7th Cir. 1995) ............................................................................................ 10

*United States v. Zhong*,
95 F.4th 1296 (10th Cir. 2024) ......................................................................................... 10

*Vadnais v. Fed. Nat'l Mortg.*,
754 F.3d 524 (8th Cir. 2014) ............................................................................................ 10

*Valero Energy Corp. v. United States*,
569 F.3d 626 (7th Cir. 2009) ............................................................................................ 12

*Warnell v. Ford Motor Co.*,
205 F. Supp. 2d 956 (N.D. Ill. 2022) ............................................................................... 10

*Xoom, Inc. v. Imageline, Inc.*,
1999 WL 1611444 (E.D. Va. Sept. 3, 1999)..................................................................... 13

## Other Authorities

15 U.S.C. § 1............................................................................................................... 1, 2

28 U.S.C. § 1292(b) ........................................................................................................ 14

H.R. Rep. No. 103-761 (1994)........................................................................................ 12

**LEGAL STANDARDS**

Defendants have now filed a second motion for § 1292(b) certification arising out of the Court's summary judgment opinion. *See Corzo v. Brown Univ.*, 2026 WL 91424 (N.D. Ill. Jan. 12, 2026). Their prior motion addressed the issues of the timeliness of Plaintiffs' claims and antitrust standing. *See* ECF 1218 (Plaintiffs' opposition brief). Their new motion, ECF 1242, relates to the interpretation of 15 U.S.C. § 1 note 1 ("§ 568"). Defendants, who appear desperate to avoid a trial in this case, have again failed to satisfy the standards for such an interlocutory appeal, which are: "The court must be of the opinion that: (1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) certification will materially advance the ultimate termination of the litigation." *NeuroGrafix v. Brainlab, Inc.*, 2021 WL 12103013, at *1 (N.D. Ill. Jan. 31, 2021) (quotations omitted); *accord Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000). "The criteria are conjunctive, not disjunctive," and "the denial of summary judgment is a paradigmatic example of an interlocutory order that normally is not appealable." *Ahrenholz*, 219 F.3d at 676.[1] The movant must show a "substantial likelihood" of reversal. *Andrews v. Northwestern Hosp.*, 2026 WL 183756, at *3 (N.D. Ill. Jan. 23, 2026).[2]

**ARGUMENT**

Section 568 provided that "[i]t shall not be unlawful under the antitrust laws for 2 or more institutions of higher education at which all students admitted are admitted on a need-blind basis,

---

[1] *Accord Feit Elec. Co. v. CFL Techs., LLC*, 2021 WL 4061741, at *2 (N.D. Ill. Sept. 7, 2021); *LAJIM, LLC v. Gen. Elec. Co.*, 2016 WL 626801, at *1 (N.D. Ill. Feb. 17, 2016).

[2] The federal courts' policy is to "discourage piece-meal appeals because most often such appeals result in additional burdens on both the court and the litigants, and thus permissions for interlocutory appeals should be granted sparingly and with discrimination." *NeuroGrafix*, 2021 WL 12103013, at *1 (cleaned up). This policy exists because "interlocutory appeals violate the normal judicial goals of finality and efficiency that come with the final judgment rule." *In re Argon Credit, LLC*, 2017 WL 3478812, at *2 (N.D. Ill. Aug. 14, 2017) (quotations omitted). "[A]n interlocutory appeal is supposed to be a rare event, reserved for unusual situations." *NeuroGrafix v. Brainlab, Inc.*, 2021 WL 12103013, at *3 (N.D. Ill. Jan. 31, 2021).

to agree or attempt to agree . . . to use common principles of analysis for determining the need of such students." 15 U.S.C. § 1 note 1. The statute defined "need-blind basis" to mean "without regard to the financial circumstances of the student involved or the student's family." *Id*. Defendants argued on summary judgment, in relevant part, that (1) the alleged conspirators met § 568 as long as 2 or more of them were need-blind, and (2) "need-blind" means without regard to whether an applicant had applied for financial aid and without regard to information included in their financial aid application. *See* ECF 847. The Court denied their motion in its entirety, including by rejecting those two arguments. *See Corzo*, 2026 WL 91424, at *18-19.

## I.    THE PROPOSED QUESTIONS ARE NOT "CONTROLLING"

The proposed questions of (1) "whether all participating institutions must be need-blind for any institution to be exempt from the antitrust laws under Section 568" (the "2 or more" question), and (2) "whether an institution that does not consider a student's decision to seek financial aid when making admissions decisions is considered 'need-blind' under Section 568 (the "definition of need-blind" question), are not "controlling" under § 1292(b).

### A.    Under Their Incorrect Argument That an Appeal Would Resolve Plaintiffs' Claims, Defendants Would Have to Prevail on Both Questions, Which Means That Neither Question Is "Controlling"

The proposed appeal would not necessarily further this litigation in any event, *see infra* Part I.B, but even under Defendants' argument otherwise, they would need to prevail on *both* questions. If Defendants prevailed on just the "2 or more" question, they would not satisfy § 568, because they could not show that during the Class Period, two or more schools were always "need-blind" under the Court's plain-language interpretation. *Corzo*, 2026 WL 91424, at *19. If Defendants prevailed on just the "definition of need-blind" question, they would not satisfy § 568, because they could not show that during the Class Period, they "all" were need-blind under that revised definition. In particular, Notre Dame has not asserted the § 568 defense; some Defendants

2

considered whether waitlisted students had applied for financial aid; and a jury could reasonably conclude that through their wealth favoritism, all of the Defendants made admissions decisions with regard to whether applicants were seeking financial aid. *See infra* Part I.B. As a result, *neither* of the proposed questions is "controlling."[3] If the courts did not apply this element of § 1292(b) this way, a movant could simply stack up a series of questions whose favorable resolution on appeal would sufficiently advantage its case and say that, taken together, they are "controlling."

**B. The Resolution of Both Questions in Defendants' Favor Would Not Necessarily Resolve Plaintiffs' Claims or Further the Litigation**

Defendants' argument for appeal further fails because the proposed appeal "would not necessarily be dispositive of" Plaintiffs' claims. *In re Turkey Antitrust Litig.*, 2024 WL 5440057, at *1 (N.D. Ill. Oct. 16, 2024). In fact, Plaintiffs' claims would survive even under Defendants' interpretation of both contested issues.[4] As a result, resolution of the question "is not completely determinative." *Holwill v. AbbVie Inc.*, 2021 WL 1540998, at *1 (N.D. Ill. Apr. 19, 2021).

*First*, a decision on appeal would not affect Plaintiffs' claims against defendant Notre Dame—which, as Defendants concede (at 7), does not assert the § 568 exemption at all. Defendants are wrong in summarily contending (at 7 n.2) that "Plaintiffs' claim against Notre Dame would be untenable if its alleged coconspirators are deemed exempt." A full trial would proceed on the quite tenable issues of whether Defendants in fact conspired, and caused antitrust injury, as Plaintiffs have marshaled evidence to show. Notre Dame would stand to be jointly and severally liable

---

[3] *See, e.g.*, *Hart v. Rick's Cabaret Int'l, Inc.*, 73 F. Supp. 3d 382, 394-96 (S.D.N.Y. 2014) (denying § 1292(b) motion where neither proposed question, taken individually, would expedite the termination of the litigation); *Difelice v. U.S. Airways, Inc.*, 404 F. Supp. 2d 907, 908-09 (E.D. Va. Dec. 12, 2005) (same).

[4] *See In re Snap Inc. Secs. Litig.*, 2018 WL 3816764, at *2 (C.D. Cal. Aug. 8, 2018) (deciding the issue would not resolve plaintiffs' claims because claims could survive under "either interpretation"); *see, e.g.*, *Lake Shore Healthcare & Rehab. Centre, LLC v. Moore*, 2026 WL 412745, at *2 (N.D. Ill. Feb. 13, 2026) (movant would not satisfy the statute even under its interpretation of the law); *United States ex rel. Howard v. KBR, Inc.*, 2016 WL 9776138, at *4 (C.D. Ill. Feb. 29, 2016) (plaintiffs' allegations state a "viable" case even under movant's interpretation of the statute).

"for all damages caused by the conspiracy's entire output." *Arandell Corp. v. Xcel Energy Inc.*, 149 F.4th 883, 899 (7th Cir. 2025) (cleaned up).

*Second*, Plaintiffs can prevail at trial even if, in theory, Defendants were correct that they could satisfy § 568 by showing that during the Class Period, two or more of them were always need-blind under their interpretation. Under Defendants' interpretation, "'need-blind' merely means that the school does not disadvantage applicants 'because of their decision to seek financial aid or information in their financial aid application.'" *Corzo*, 2026 WL 91424, at *19. The Court has agreed with Plaintiffs that the "universities' argument is contrary to the statutory text," and that "[a] school that provides preferential treatment to an applicant with a wealthy background is plainly not admitting all students 'without regard to the financial circumstances of the student involved or the student's family.'" *Corzo*, 2026 WL 91424, at *19. Plaintiffs could win at trial even under Defendants' interpretation of both questions, by showing that all the Defendants *did* make admissions decisions with regard to whether students had applied for financial aid and with regard to information in their financial aid application.

Georgetown, Penn, and Vanderbilt, for example, denied admissions to waitlisted students because they had applied for financial aid. *See* ECF 756 at 35 n.22. Northwestern and Notre Dame each stipulated that for each year from 2003 through 2022, the school "in some instances admitted students based on factors which included the applicant's family's donation history and/or capacity for future donations," and Vanderbilt stipulated that for each of those years, in some instances it admitted students based on the "financial circumstances" of the student or the student's family as the Court has interpreted that term. ECF 756 at 29-30. Underscoring that such wealth favoritism was commonplace among the Defendants, at Cornell, Georgetown, MIT, Penn, and Notre Dame, applicants placed on a priority or special-interest list, including as a result of substantial donations

4

to the school from family members, were admitted at a *much* higher rate than regular applications, as quantified below, and at all of these schools the priority-designated students on average had lower (or similar) standardized-test scores than non-priority applicants. *See id*. at 9-10; *see also id*. at 29-35 (summarizing qualitative evidence of other Defendants' wealth favoritism in admissions).

A natural and logical inference from all of this evidence is that, in admissions, all of the Defendants discriminated against applicants based on whether they needed financial aid and had applied for it, and based on information included in their financial aid application. Given the Supreme Court's observation regarding "the zero-sum nature of college admissions" and the corollary impact of discrimination in favor of a category of students, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 273 (2023), the notion that favoring wealthy students does not disfavor low-income students is nonsensical: every student admitted with regard to wealth represents one less spot for a student in need of and thus applying for financial aid, and one less spot for an applicant whose low-income status is included in their financial aid application. A reasonable jury could conclude from the evidence at trial (and from their common sense) that low-income applicants apply for financial aid and that Defendants know that. Defendants' argument thus fails under their own interpretation.[5] The Court found "sufficient evidence for a jury reasonably to find" that Defendants had engaged in wealth favoritism and thus failed to comply with § 568. *Corzo*, 2026 WL 91424, at *19. At trial, Plaintiffs will be entitled to

---

[5] Contrary to Defendants' assertion (at 6-7), Plaintiffs made this argument on summary judgment. *See* ECF 893 at 47 ("Defendants' argument thus fails under their own misinterpretation of the statute."). If Defendants mean to argue that Plaintiffs did not state the truism that low-income students apply for financial aid and Defendants know that, there is no requirement on summary judgment that a plaintiff spell out every respect in which it would argue its case to the jury. The relevant fact on the instant motion, moreover, is that the parties are "[d]isputing whether the Plaintiff raised a genuine dispute of material fact," which "is not a proper basis for interlocutory appeal." *Owners Ins. Co. v. Step Seven LLC*, 2025 WL 3443438, at *9 (N.D. Ill. Dec. 1, 2025) (cleaned up) (emphasis added). *See infra* Part I.C.

put on such evidence as to all of the Defendants. On this record, Defendants have not met their burden of showing that Plaintiffs would lose under Defendants' interpretation of the law.

Accordingly, and contrary to Defendants' argument (at 7) about avoiding "a costly and involved multi-week trial," the proposed appeal would not change Plaintiffs' ensuing case at trial in any significant way and thus (under the less frequently applied standard) would not even "further the litigation." *LAJIM*, 2016 WL 626801, at *2. Under Defendants' interpretation of § 568, as to both proposed questions, "this litigation would still proceed on the factual issue" of whether Defendants met the conditions of the statute. *United States ex rel. Chilcott v. KBR, Inc.*, 2013 WL 6797391, at *3 (N.D. Ill. Dec. 23, 2013); *see, e.g.*, *Goodpaster v. NFLC, Inc.*, 2013 WL 1149568, at *6-8 (N.D. Ind. Mar. 18, 2013) (there were "alternative sufficient grounds" for defendants to have defeated summary judgment and to prevail at trial). The "same facts are at issue in this case" even under Defendants' interpretation of § 568. *Moultrie v. Penn Aluminum Int'l, LLC*, 2012 WL 6004159, at *2 (S.D. Ill. Nov. 30, 2012).

In addition, Plaintiffs would put on the same facts at trial even on Plaintiffs' *prima facie* case. That is primarily because the evidence of Defendants' wealth favoritism is part and parcel of the very evidence of the alleged conspiracy to control net prices—Defendants employed both means to generate substantial revenues, increase the size of their endowments, and maintain the prestige necessary to continue to generate such revenues. *See, e.g.*, ECF 756 at 10, 30-35 (citing and summarizing, for example, Plaintiffs' expert evidence analyzing how, as functional conglomerates that operate in many respects like for-profit entities, the Defendants employed such means).

**C.** **In Asserting That the Proposed Appeal Could Resolve Plaintiffs' Claims, Defendants Have to Make Arguments That Are Improper Under § 1292(b)**

To deny this motion, this Court need not decide whether Plaintiffs would likely *prevail* at trial under Defendants' interpretation of § 568 as to both proposed questions. For one thing, such

6

a requirement would flip *Defendants'* burden to show a "substantial likelihood" of reversal. *Andrews*, 2026 WL 183756, at *3. In addition, it is enough to defeat Defendants' motion that the parties would *dispute* on appeal the fact-intensive questions of whether Plaintiffs' claims could survive even if the legal questions are resolved in Defendants' favor. This is true even under the less demanding (and, it appears, less frequently applied) standard of whether the questions are controlling because their resolution would "further the litigation." *LAJIM*, 2016 WL 626801, at *2. That is because, to further the litigation, the Seventh Circuit would have to address whether the Plaintiffs could prevail under § 568 even under Defendants' interpretation; this "would require the kind of focus on the record that takes the issue beyond the scope of an appropriate interlocutory appeal" under § 1292(b). *LAJIM*, 2016 WL 626801, at *2.

Any such analysis is improper for a § 1292(b) appeal. "'Question of law,' as used in section 1292(b), has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Ahrenholz*, 219 F.3d at 676. The application of law to facts does not present a "question of law." *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 518 F.3d 459, 463 (7th Cir. 2008). Indeed, this Court and other federal district courts have routinely denied § 1292(b) motions because whether a party qualifies for a legal exemption or exception, under the evidence or factual allegations at issue, is not a "question of law."[6]

---

[6] *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 2025 WL 2105869, at *4-5 (S.D.N.Y. July 28, 2025) (whether allegations "are sufficient to satisfy the exceptions to sovereign immunity"); *United States ex rel. Williams v. S. Co.*, 2025 WL 2816748, at *1 (N.D. Ga. Feb. 25, 2025) (whether allegations "satisfy the 'original source' exception" of the False Claims Act); *Feit*, 2021 WL 4061741, at *2 (whether evidence satisfied "egregious misconduct exception" regarding filing with Patent and Trademark Office); *Patterson v. Dallas/Fort Worth Int'l Airport Bd.*, 2021 WL 4240479, at *1 (N.D. Tex. Jan. 6, 2021) (whether evidence was sufficient to "satisfy the fire protection activities exemption" of the Fair Labor Standards Act); *Colon v. Metro-N. Commuter R.R. Co.*, 2017 WL 1375166, at *2 (D. Conn. Apr. 10, 2017) (the "highly evidence-based and fact-bound" question of whether evidence was sufficient to satisfy the "'constant intrusion' exception" under the *Restatement (Second) of Torts*); *Haas v. Verizon N.Y., Inc.*, 2016 WL 11953027, at *1 (S.D.N.Y. Apr. 15, 2016) (whether evidence was sufficient for plaintiffs to "qualify for the highly compensated employee exemption" to the FLSA's overtime requirements); *Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 879 (C.D. Cal. 2012) (applying *Ahrenholz* as to "whether Plaintiff's job duties could

The application of § 568 as Defendants interpret it—a matter that, again, the Seventh Circuit would have to analyze if its decision were to "further the litigation"—would not be "a pure question of law that the court of appeals could decide quickly and cleanly without having to study the record." *Kurowski v. Rush System for Health*, 2024 WL 3455020, at *6 (N.D. Ill. July 18, 2024) (quotations omitted). Instead, the issue is "highly fact-based." *NeuroGrafix*, 2021 WL 12103013, at *1. On the evidentiary record, Defendants would be left "[d]isputing whether the Plaintiff raised a genuine dispute of material fact," which "is not a proper basis for interlocutory appeal." *Owners Ins.*, 2025 WL 3443438, at *9 (cleaned up).

### D. The Resolution of the Questions on Appeal Would Not Contribute to the Determination of a Wide Spectrum of Cases

This Court has not addressed this factor in recent years, *cf. In re Sparks*, 1994 WL 163946, at *4 (N.D. Ill. Apr. 25, 1994), but district courts in this Circuit and across jurisdictions continue to hold that under § 1292(b), "a question is controlling only if it may contribute to the determination, at an early stage, of a wide spectrum of cases." *Rizack as Tr. of Grandparents.com, Inc. v. Starr Indemn. & Liab. Co.*, 2020 WL 3619076, at *2 (S.D. Fla. July 2, 2020) (cleaned up).[7] At minimum, where the question does not concern such a range of cases, the "limited applicability of this question to a wider range of cases weighs against certification." *Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*, 2012 WL 1481510, at *2 (S.D.N.Y. Apr. 27, 2012). The proposed questions here do not meet either of these standards. There are no other cases interpreting § 568, and Congress let the statute elapse in the fall of 2022. The questions thus concern only this case.

---

independently qualify for the professional exemption" under the FLSA); *Fenton v. Farmers Ins. Exch.*, 2010 WL 1006523, at *2 (D. Minn. Mar. 16, 2010) (the "fact-intensive determination of eligibility for the administrative exemption" of the FLSA).

[7] *See, e.g.*, *Kisting v. Gregg Appliances, Inc.*, 2017 WL 44832, at *2 (E.D. Wis. Jan. 4, 2017); *see also Peck v. Mercy Health*, 2023 WL 1795421, at *2 (E.D. Mo. Feb. 7, 2023); *Total E & P USA, Inc. v. Marubeni Oil & Gas USA, Inc.*, 2018 WL 11469624, at *2 (S.D. Tex. Nov. 6, 2018); *QBE Ins. Corp. v. Burckhard*, 2017 WL 4685255, at *2 (D.N.D. Oct. 18, 2017).

## II. THERE IS NO "SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION" AS TO THE RESOLUTION OF THE PROPOSED QUESTIONS

A statute's plain language, including its statutory definitions, presumptively determine the statute's meaning. Where the Court's interpretation of § 568 "followed the rules of statutory construction that focus on a statute's plain meaning," there is no substantial ground for difference of opinion. *LAJIM*, 2016 WL 626801, at *2. Defendants contend (at 1) that the Court's interpretation is "far from obvious." Plaintiffs show below that Defendants are wrong, but equally to the point, they misapprehend the standard under § 1292(b): they must show a "substantial likelihood" of *reversal* on the proposed questions. *Andrews*, 2026 WL 183756, at *3.

This Court rejected Defendants' propositions that a school would satisfy § 568 if it was "individually need blind" or so long as 2 or more them were need-blind, because the statute "requires all of the '2 or more institutions' to admit all students on a need-blind basis." *Corzo*, 2026 WL 91424, at *19 & n.5. In disagreeing with these interpretations, the Court correctly observed that Defendants continue to ignore the word "all," and the unambiguous *definition* of "need-blind," in § 568. *Carbone v. Brown Univ.*, 621 F. Supp. 3d 878, 884-85, 888 (N.D. Ill. 2022). Defendants' departure from the plain meaning of the statute is unlikely to succeed here especially given that the courts are to strictly construe antitrust exemptions. *Id.*; *see Grp. Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 231 (1979). "Any exemptions from the antitrust laws are to be construed narrowly, with beady eyes and green eyeshades." *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 399 (7th Cir. 1993) (cleaned up).

### A. Defendants' Position as to the First Proposed Question Is Contrary to the Plain Language of the Statute and Would Produce Absurd Results

Defendants are wrong in arguing that, regardless of how many Defendants were conspiring, they satisfied § 568 so long as 2 or more them were need-blind. Instead, the statute "requires all of the '2 or more institutions' to admit all students on a need-blind basis." *Corzo*, 2026 WL 91424,

at *18. The statute's reference to "2 or more" identifies a conspiracy, which the subsequent text provides will not be unlawful only if certain conditions are met as to "all" of the students at the conspiring schools. The statute's text is thus consistent with other, similar federal statutes. *See, e.g.*, *Nat'l Broiler Mktg. Ass'n v. United States*, 436 U.S. 816, 828-29 (1978) (applying the Capper-Volstead Act). And the term "all students" is unambiguous. *Carbone*, 621 F. Supp. 3d at 887-88. As the federal courts have held in interpreting statutes and constitutional provisions, in too many cases to cite here, "'all' means all."[8] More specifically: "'All means 'all,' not 'some' or 'part.'" *Warnell v. Ford Motor Co.*, 205 F. Supp. 2d 956, 959 (N.D. Ill. 2022).

The Court's interpretation does not result in any "absurd" result; the participation of even one non-need-blind university in a conspiracy is conduct "Congress clearly did not intend to protect." *Nat'l Broiler*, 436 U.S. at 828. There is no basis in the statute's language to suggest that Congress meant to exempt conspirators from liability if only *some* of them were satisfying an exemption's conditions.[9] Defendants' self-serving and conspiracy-friendly argument to the contrary is exactly the type of interpretation that, in requiring a *narrow* construction of statutory antitrust exemptions, the controlling law prohibits. *See Grp. Life & Health*, 440 U.S. at 231; *Greater*

---

[8] *See, e.g.*, *Allen v. AT&T Mobility Servs., LLC*, 2025 WL 3251213, at *3 (11th Cir. Nov. 21, 2025); *United States v. Zhong*, 95 F.4th 1296, 1300 (10th Cir. 2024); *United States v. Revis*, 2023 WL 2182334, at *2 (6th Cir. Feb. 23, 2023); *In re Grand Jury Subpoena*, 912 F.3d 623, 628 (D.C. Cir. 2019); *Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 266 (5th Cir. 2014); *Vadnais v. Fed. Nat'l Mortg.*, 754 F.3d 524, 526 (8th Cir. 2014); *Awuah v. Coverall N. Am., Inc.*, 703 F.3d 36, 43 (1st Cir. 2012); *Galbreath v. Help at Home, LLC*, 2025 WL 919574, at *4 (N.D. Ill. Mar. 26, 2025); *Brownlee v. Catholic Charities of the Archdiocese of Chicago*, 2020 WL 977968, at *3 (N.D. Ill. Feb. 28, 2020).

[9] *See, e.g.*, *Arandell*, 149 F.4th at 899 (all of the participants in a conspiracy, regardless of when they joined, are jointly and severally liable "for all damages caused by the conspiracy's entire output") (cleaned up); *United States v. Sandoval-Curiel*, 50 F.3d 1389, 1392 (7th Cir. 1995) (no knowledge of co-conspirator misconduct required).

*Rockford Energy*, 998 F.2d at 399. Ignoring that principle, Defendants improperly "infer a broader antitrust exemption than" § 568 provides.[10]

Defendants' interpretation, moreover, *would* create absurd results. There is no reasonable basis for imagining that Congress decided that if 17 schools were conspiring on pricing, and *15* of them were *not* admitting students on a "need-blind" basis, then *all* of the schools were acting lawfully. The Court correctly observed that "[t]here is no reason to think Congress intended such an arbitrary result," *Corzo*, 2026 WL 91424, at *18 n.5, and in fact the result would be absurd. There is no basis in the text of the statute (or any other source) for concluding that Congress had made *any* such calculation or would tolerate *any* such odd compromise. In still other words, there is no reasonable basis for imagining that, in enacting § 568, Congress was indifferent to whether 2 or 10 or 15 of the 17 conspiring schools were admitting all of their students on a need-blind basis. These are results that "no reasonable person could intend." *Tavistock Rest. Grp., LLC v. Zurich Am. Ins. Co.*, 2021 WL 1614519, at *3 (N.D. Ill. Apr. 26, 2021) (quotations omitted).

Indeed, if "2 or more institutions" has the meaning Defendants give it, then on the facts here, a court would have to examine *every* combination of agreement between 2 schools—and every combination between and among 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17 schools.[11] That is, the statute does not specifically say that only the agreement among *all* of the institutions is relevant to the analysis of legality. Within an agreement between and among 17 schools, there are 136 different combinations of agreement between 2 schools. Under Defendants' interpretation, if Brown and Chicago were need-blind, then it was lawful for them to have agreed

---

[10] *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2024 WL 168298, at *11 (C.D. Cal. Jan. 11, 2024); *see, e.g.*, *Daniel v. Am. Bd. of Emergency Med.*, 988 F. Supp. 127, 195 (W.D.N.Y. 1997) (applying this principle in denying § 1292(b) motion).

[11] It is fundamental that, although there is no such requirement under the law, parties in fact may conspire such that "all co-conspirators agreed with each other" to achieve the conspiracy's goals. *United States v. Hernandez-Orellana*, 539 F.3d 994, 1010 (9th Cir. 2008).

on common principles; but if Chicago was not need-blind, then it was not necessarily lawful. For agreements among 3 schools, there are 680 different combinations. Under Defendants' interpretation, if Brown, Chicago, and Dartmouth were need-blind, then it was lawful for them to have agreed on common principles; and if only Chicago was not need-blind, then it was lawful. Chicago was thus a party to an agreement between or among "2 or more institutions" that, through the school's same conduct, was both lawful and not necessarily lawful.[12] Such results are absurd.

### B. Defendants' Position as to the Second Proposed Question Is Contrary to the Plain Language of the Statute and Would Produce Absurd Results

"When a statute includes an explicit definition, we must follow that definition, even if it varies from a term's ordinary meaning." *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) (internal quotation marks omitted); *accord Talignani v. United States*, 26 F.4th 379, 381 (7th Cir. 2022). In rearguing (at 9-11) the point, Defendants ignore the statute's *express definition* of "need-blind"—namely, "without regard to the financial circumstances of the student involved or the student's family." As the Seventh Circuit has explained, "it is not our place to tinker with the unambiguous definition provided by Congress." *Valero Energy Corp. v. United States*, 569 F.3d 626, 632 (7th Cir. 2009); *accord Carbone*, 621 F. Supp. 3d at 887-88.[13]

---

[12] A school would thus exist in a quantum superposition-like state of being both "not liable" and "potentially liable" for the same conduct (and for the other schools' same conduct) depending on which permutation of agreement among 2 or more schools a court observed. For the mathematically inclined, there are 131,054 combinations of agreements between and among 2 or more schools within an agreement between and among 17 of them.

[13] If it were even relevant, given the statute's plain language, the legislative record supports Plaintiffs' interpretation. The cited conference report, for example, "decided *against* elaborating on" the statutory definition of need-blind and saw that it would not be met if an admissions office considered, apart from an application for aid, "any *other document or record* obtained for the purpose of ascertaining such financial circumstances." H.R. Rep. No. 103-761, at 912 (1994) (Conf. Rep) (emphasis added). The history also shows that § 568 generally tracked the language in the "standards of conduct" adopted as part of a prior settlement, which defined "need-blind" to mean admissions "without regard to family financial circumstances." *Id*. at 911-12. In short, on *three separate occasions*—in the drafting of the foundational Standards of Conduct, in enacting § 568, and in assessing whether to elaborate on the statute's existing text—Defendants and Congress did *not* define "need-blind" with reference only to whether a student had applied for financial aid and to whether the school held that fact against the student in admissions.

12

Defendants simply *change* the term "financial circumstances" to "application for financial aid." Congress did not say that. Nor could Congress have sensibly meant to refer to whether the student "or" her family had applied for financial aid, because the student and her family do not separately apply for such aid; they file a joint application. Defendants' reading cannot stand under the rules of interpretation. "We will not interpret a statute in a manner that renders part of it irrelevant, particularly where, as here, the statute has an unambiguous meaning if we simply apply the definition provided in the statute itself." *Papazoglou v. Holder*, 725 F.3d 790, 794 (7th Cir. 2013).

Section 568's statutory definition of "need-blind" thus controls.[14] The Seventh Circuit continues to emphasize the primacy of both a statute's plain language[15] and its express statutory definitions.[16] The federal courts have routinely denied § 1292(b) motions because there is no substantial ground for difference of opinion given a statute's plain language.[17] And contrary to

---

[14] The statute has a separate, distinct definition of "need-based," and contrary to the premise of Defendants' argument (at 10), neither the definition of "need-blind" nor "need-based" defines the word "need." Defendants are also wrong about industry usage, as schools and commentators have regularly used "need-blind" to mean just what § 568 says it means. *See, e.g.*, ECF 164 at 16 n.7 (citing such material).

[15] *See, e.g.*, *United States v. Koeckeritz*, 2025 WL 3138905, at *3 (7th Cir. Nov. 10, 2025) (the argument "conflicts with the plain language of the statute"); *Dolls Kill, Inc. v. MengEryt*, 2025 WL 3033729, at *2 (7th Cir. Oct. 30, 2025) ("The district court erred in awarding statutory damages because the plain language of the Copyright Act leaves the choice of damages to the plaintiff.").

[16] *See, e.g.*, *Irvin v. Exeter Fin. LLC*, 2025 WL 325269, at *2 (7th Cir. Jan. 29, 2025) ("The statute expressly excludes from the definition of 'debt collector' an entity attempting to collect a debt if its efforts concern a debt 'which was originated by' that entity or 'which was not in default at the time it was obtained by' that entity."); *Petr Tr. for BWGS, LLC v. BMO Harris Bank N.A.*, 95 F.4th 1090, 1098 (7th Cir. 2024) ("We read the statute as a whole and give words their ordinary and natural meaning *in the absence of a specific statutory definition*.") (cleaned up) (emphasis added).

[17] *See, e.g.*, *United States v. 1-44 Truck Ctr. & Wrecker Serv., LLC*, 2023 WL 7002633, at *3 (E.D. Mo. Oct. 24, 2023) (citing "the plain language of the statute"); *C.T. v. Red Roof Inns, Inc.*, 2022 WL 18003292, at *5-6 (S.D. Ohio Dec. 30, 2022) (where the argument requires interpretation of "plain, unambiguous language"); *ABKCO Music, Inc. v. Sagan*, 2019 WL 11795494, at *3 (S.D.N.Y. Oct. 11, 2019) (citing "the plain language of the statute"); *Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 246 F.R.D. 39, 41 (D.D.C. 2007) (where the argument is "contrary to the plain language of the statute itself"); *United States v. Atlas Lederer Co.*, 174 F. Supp. 2d 666, 669-70 (S.D. Ohio 2001) (where the "argument is contradicted by the plain language" of the statute, obviating any assessment of legislative history); *Xoom, Inc. v. Imageline, Inc.*, 1999 WL 1611444, at *2 (E.D. Va. Sept. 3, 1999) (citing "the plain language of the statute" resolves the argument); *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 55-56 (S.D.N.Y. 1998) (where "the Court's ruling is within the plain language of the statute").

Defendants' suggestion (at 11-12), whether the interpretation of the statute at issue is a matter of "first impression" does not establish any substantial ground for difference of opinion.[18]

This statute's express definition of "need-blind," moreover, does not create any "absurd" result. *Carbone*, 621 F. Supp. 3d at 887-88. It would make sense for Congress, in exchange for allowing universities to fix prices, to require "all" of them to make "all" admissions on *merit*. This is by no means a "preposterous" result or "one that no reasonable person could intend." *Tavistock*, 2021 WL 1614519, at *3 (quotations omitted).[19] In contrast, Defendants' misinterpretation would allow them to collude on aid even if each of them *exclusively* admitted wealthy applicants. They would be flipping § 568's protection of "all students" on its head without providing financial aid to those with lesser financial circumstances. This is, again, the type of absurd result that the Court's plain-language interpretation of § 568 does *not* create. *See Carbone*, 621 F. Supp. 3d at 888.

## III. THE RESOLUTION OF THE PROPOSED QUESTIONS WOULD NOT "MATE-RIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION"

Defendants have not shown that the resolution of the proposed questions would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). This analysis is "similar" to whether the questions are controlling. *E.E.O.C. v. Dial Corp.*, 2001 WL 1945088, at *4 n.5 (N.D. Ill. Dec. 27, 2001). The reasons the questions are *not* controlling, *see supra* Part I, thus apply here. The proposed appeal would "merely delay the resolution" of Plaintiffs' claims, *Shenzhen*

---

[18] *See Artisan & Truckers Cas. Co. v. Throgmorton*, 2025 WL 748191, at *3 (S.D. Ill. Mar. 7, 2025) ("The mere presence of a disputed issue that is a question of first impression for the Seventh Circuit, by itself, is insufficient to demonstrate a substantial ground for difference of opinion."); *accord Richard v. Eli Lilly & Co.*, 2024 WL 2126103, at *4 (S.D. Ind. May 10, 2024); *In re Auto. Profs., Inc.*, 379 B.R. 746, 754 (N.D. Ill. 2007). Defendants cite cases in which the courts found that, independent of the "novelty" of the question, its resolution was "contestable." That is not true here.

[19] Nor would it be absurd, contrary to Defendants' suggestion (at 9), for institutions that have chosen to rely on § 568—and thus otherwise conspire in violation of the federal antitrust laws—to employ a "rigorous monitoring and enforcement scheme among participating schools." Such efforts would not have to involve the exchange of any pricing-related information at all.

*Buxiang Network Tech., LTD v. Bodum USA, Inc.*, 2021 WL 243574, at *3 (N.D. Ill. Jan. 25, 2021), and "would unquestionably force cancellation of the trial date and likely would delay the completion of the case before this Court by nine to twelve months." *NeuroGrafix*, 2020 WL 1663105, at *3. And at trial, Plaintiffs would present the same evidence and make essentially the same case under Defendants' interpretation of § 568. *See supra* Part I.

There have been cases under § 1292(b) in which the resolution of the proposed appeal would encourage settlement, or at least avoid delaying it. This is not such a case. Instead, there is every indication that aside from the proposed questions, Defendants regard themselves as having "substantial arguments, so an affirmance would not likely put the case in a settlement posture, whereas in other § 1292(b) instances, it is pretty obvious that an affirmance would produce a settlement as the very next step." *Rivera v. Google Inc.*, 2017 WL 11895720, at *1 (N.D. Ill. June 27, 2017). The "very next step" in this case will presumably be Defendants' motion under Fed. R. Civ. P. 23(f), which the proposed appeal here would not resolve, and the Court recently concluded that "[t]he prospect of settlement with the five remaining defendants appears to be remote," ECF 1241 at 60, where "defendants have made it clear that they are unwilling to pay anything close to what earlier settling defendants did," so that settlement "appears relatively unlikely at this point." *Id*.

## CONCLUSION

Plaintiffs respectfully submit, for the foregoing reasons, that the Court should deny Defendants' Second Motion to Certify the Court's Summary Judgment Order (as to § 568) for Interlocutory Appeal Under 28 U.S.C. § 1292(b).

Dated: April 10, 2026                                         Respectfully Submitted,

*/s/ Eric L. Cramer*                                          */s/ Edward J. Normand*
Eric L. Cramer                                               Devin "Vel" Freedman
David Langer                                                 Edward J. Normand

15

Jeremy Gradwohl
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
ecramer@bergermontague.com
dlanger@bergermontague.com
jgradwohl@bergermontague.com

Richard Schwartz
**BERGER MONTAGUE PC**
110 N. Wacker Drive
Chicago, IL 60606
Tel: (773) 257-0255
rschwartz@bergermontague.com

Robert E. Litan
**BERGER MONTAGUE PC**
1001 G Street, NW, Suite 400 East
Washington, DC 20001
Tel: (202) 559-9745
rlitan@bergermontague.com

Richard Cipolla
Joseph Delich
**FREEDMAN NORMAND
 FRIEDLAND LLP**
155 E. 44th Street, Suite 915
New York, NY 10017
Tel: (646) 494-2900
vel@fnf.law
tnormand@fnf.law
rcipolla@fnf.law
jdelich@fnf.law

Ivy Ngo
**FREEDMAN NORMAND
 FRIEDLAND LLP**
1 SE 3d Avenue, Suite 1240
Miami, FL 33131
Tel: (786) 924-2900
ingo@fnf.law

*Counsel for Plaintiffs and the Proposed Class*

16