**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,

*Defendants*.

Case No. 1:22-cv-00125

Hon. Matthew F. Kennelly

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO CERTIFY THE COURT'S SUMMARY JUDGMENT ORDER
FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 1

    I.      The Questions Presented Are "Controlling." ........................................................ 1

    II.     The Appeal Would Materially Advance the Litigation. ...................................... 3

    III.    Plaintiffs' Arguments Demonstrate that Interpretation of the 568 Exemption
           Is Contestable. ..................................................................................................... 6

    IV.    Plaintiffs Do Not Substantively Address Defendants' Contention that the
           Questions Presented Are Purely Legal. ............................................................... 7

CONCLUSION .................................................................................................................. 8

**TABLE OF AUTHORITIES**

**Pages(s)**

**Cases**

*A.D. ex rel. Serrano v. Credit One Bank, N.A.*,
  No. 14 C 10106, 2016 WL 10612609 (N.D. Ill. Dec. 11, 2016)............................................. 6, 7

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
  219 F.3d 674 (7th Cir. 2000) ................................................................................................ 8

*Boim v. Quranic Literacy Inst.*,
  291 F.3d 1000 (7th Cir. 2002) .............................................................................................. 7

*Difelice v. U.S. Airways, Inc.*,
  404 F. Supp. 2d 907 (E.D. Va. 2005) .................................................................................... 3

*Everett v. Paul Davis Restoration, Inc.*,
  771 F.3d 380 (7th Cir. 2014) ................................................................................................ 6

*F.T.C. v. Bay Area Bus. Council*,
  423 F.3d 627 (7th Cir. 2005) ................................................................................................ 5

*Gupta v. Morgan Stanley Smith Barney*,
  No. 17 C 8375, 2018 WL 8787623 (N.D. Ill. Oct. 17, 2018) ............................................... 6, 7

*Hart v. Rick's Cabaret Int'l, Inc.*,
  73 F. Supp. 3d 382 (S.D.N.Y. 2014) ..................................................................................... 3

*In re Brand Name Prescription Drugs Antitrust Litig.*,
  878 F. Supp. 1078 (N.D. Ill. 1995) ....................................................................................... 7

*In re Text Messaging Antitrust Litig.*,
  630 F.3d 622 (7th Cir. 2010) ................................................................................................ 7

*Johnson v. Burken*,
  930 F.2d 1202 (7th Cir. 1991) .............................................................................................. 2, 3

*LAJIM, LLC v. Gen. Elec. Co.*,
  No. 13 CV 50348, 2016 WL 626801 (N.D. Ill. Feb. 17, 2016) ............................................. 8

*Midwest Imps., Ltd. v. Coval*,
  71 F.3d 1311 (7th Cir. 1995) ................................................................................................ 5

*Payton v. Union Pac. R.R. Co.*,
  No. 24 C 153, 2025 WL 3012662 (N.D. Ill. Oct. 28, 2025) .................................................. 7

*Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*,
  86 F.3d 656 (7th Cir. 1996) ................................................................................ 2, 3

*Sterk v. Redbox Automated Retail, LLC*,
  672 F.3d 535 (7th Cir. 2012) .................................................................................... 6

*Taylor v. Samsung Elecs. Am., Inc.*,
  No. 19 C 4526, 2020 WL 1248655 (N.D. Ill. Mar. 16, 2020) ..................................... 7

*Yamaha Motor Corp. v. Calhoun*,
  516 U.S. 199 (1996) ................................................................................................ 2

**Statute**

28 U.S.C. § 1292(b) ............................................................................................. *passim*

**Other Authority**

1958 U.S.C.C.A.N. 5260–61 ....................................................................................... 1

**INTRODUCTION**

Plaintiffs' opposition (Dkt. 1249, "Opp.") to Defendants' motion to certify the Court's interpretation of the 568 Exemption to the Seventh Circuit under 28 U.S.C. § 1292(b) (Dkt. 1242) unpersuasively contests that Defendants meet the requirements to seek an interlocutory appeal. Much of their opposition merely rehashes Plaintiffs' argument that Defendants' interpretation of the Exemption is wrong on the merits. But the question here is not whether Defendants *will* prevail on appeal. Instead, the relevant question is whether Defendants can show that the legal issues presented are controlling, contestable, and apt to drive the resolution of the litigation. Defendants have satisfied these criteria, and the questions should be certified. Plaintiffs' interpretation of the Exemption—and the Court's endorsement thereof—would render the statutory exemption a nullity. An appellate court should have the opportunity to decide now, before trial, whether that was what Congress truly intended in enacting Section 568. Indeed, it is precisely this scenario, where important issues in "antitrust and similar protracted cases" are raised, where interlocutory appeal should be granted because doing so "may avoid protracted and expensive litigation." Report, 1958 U.S.C.C.A.N. 5260–61.

**ARGUMENT**

**I.      The Questions Presented Are "Controlling."**

Defendants identify a two-part question that, when taken together, determines the controlling issue of whether the Exemption applies in this case: (1) "[w]hether all participating institutions must be need-blind for any institution to be exempt from the antitrust laws under Section 568" and (2) "[w]hether an institution that does not consider a student's decision to seek

-1-

financial aid when making admissions decisions is considered 'need-blind' under Section 568." Memorandum of Law in Support of Defendants' Motion ("Mem."), Dkt. 1242-1, at 2.[1]

Plaintiffs incorrectly argue that the individual questions are not "controlling" because neither standing in isolation conclusively resolves the case in Defendants' favor. *See* Opp. 2–3. But that is not what Section 1292(b) requires. To show that the questions presented are controlling, Defendants need only show that their resolution is "quite likely to affect the further course of the litigation," *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996), by "sav[ing] time for the district court, and time and expense for the litigants," *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991). Defendants easily satisfy that threshold showing. As a complete defense to liability, applying the Exemption would terminate the litigation outright for almost all Defendants, sparing them and the Court from expending resources on the litigation, and streamlining trial for the jury. *See* Mem. 6.

Moreover, what the Court is certifying is an order, not an individual question. *See* 28 U.S.C. § 1292(b). And, as the Supreme Court has held, the courts of appeals can "exercise jurisdiction over any question that is included within the order that contains the controlling question of law identified by the district court." *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 204 (1996). Plaintiffs' attempt to artificially limit the scope of Defendants' petition disregards appellate procedure and contradicts the purposes served by Section 1292(b).

Neither of the cases that Plaintiffs cite (Opp. 2–3 & n.4) suggest that certification is improper in circumstances like this. The two cases do not address requests to certify a two-part question that, taken together, drives the interpretation of a single statutory provision—as well as

---

[1] Defendants had previously moved to certify two other questions for interlocutory appeal, concerning the Court's summary judgment rulings on the statute of limitations and antitrust injury. *See* Dkt. 1219-1.

the case's outcome. *See Hart v. Rick's Cabaret Int'l, Inc.*, 73 F. Supp. 3d 382, 394–96 (S.D.N.Y. 2014) (addressing three unrelated questions for certification that each failed for independent reasons); *Difelice v. U.S. Airways, Inc.*, 404 F. Supp. 2d 907, 908–09 (E.D. Va. 2005) (addressing two unrelated questions for certification that each failed to drive the resolution of the litigation).

Plaintiffs fare no better in arguing that interpretation will not affect *other* cases because the Exemption has expired. *See* Opp. 8–9. Seventh Circuit law is clear that the relevant inquiry is whether resolution of the questions presented is "quite likely to affect the further course of *the litigation*," *Sokaogon*, 86 F.3d at 659 (emphasis added), that "save[s] time for *the district court*, and time and expense for *the litigants*," *Johnson*, 930 F.2d at 1206 (emphasis added). Defendants need not show more.

## II.        The Appeal Would Materially Advance the Litigation.

Plaintiffs wrongly argue that even if the Seventh Circuit were to rule in Defendants' favor, genuine factual disputes would still require a trial. *See* Opp. 4–6. This argument fails for three reasons.

*First*, Plaintiffs wrongly contend that even under Defendants' interpretation of the Exemption, the alleged use of priority or special lists to *favor* certain applicants creates a factual dispute about whether Defendants are "need-blind." *See* Opp. 4–5. But it is *Defendants'* role to define their own interpretation of the Exemption, not Plaintiffs'. Whether so-called "wealth favoritism" is relevant to the statutory definition of "need-blind" is precisely the contested legal question that Defendants seek to certify for appeal. Under Defendants' interpretation of the statute, a school is "need-blind" so long as it does not make admissions decisions based on (1) whether an applicant applied for financial aid or (2) the content of a financial aid application. *See, e.g.*, Dkt. 847 at 41–44; Dkt. 936 at 24. Favoritism toward applicants whose families have donated (or may

donate) to a university—a fact which Defendants continue to dispute—is not the same thing as penalizing an applicant for seeking financial aid.

Plaintiffs also argue that the incidental effect of favoring wealthy applicants is necessarily to disadvantage low-income applicants because there are only so many seats in a given class. *See* Opp. 5. That argument, too, depends entirely on the contested legal premise that alleged "wealth favoritism" is relevant to Section 568's definition of "need-blind" admissions. And setting that legal dispute aside, Plaintiffs' zero-sum framing fails on its own terms: even if a wealthy applicant were favored in some circumstance (which Defendants contest), that applicant could have been favored over another applicant who never applied for financial aid. Plaintiffs have conceded this possibility, arguing in their summary judgment filings that Defendants' practices "discriminated against . . . wealthy applicants with no history or prospect of donations." Dkt. 893 at 50. They have identified no evidence that a wealthy applicant was ever favored to the disadvantage of an applicant who had applied for financial aid. *See* Dkt. 936 at 25 ("Plaintiffs have not shown that defendants advantaged or disadvantaged any applicant based on their decision to apply for financial aid or information 'derived from [his or her] financial aid application form.'"). Indeed, Plaintiffs themselves are all students who were accepted to a Defendant school while seeking and obtaining financial aid—in many cases receiving hundreds of thousands of dollars in financial aid. They obviously were not "disadvantaged" to the benefit of a wealthy student.

*Second*, Plaintiffs' summary judgment filings provide no credible reason to find that a genuine dispute of material fact remains as to whether Georgetown and Penn "denied admissions to waitlisted students because they had applied for financial aid." Opp. 4. Nowhere in their summary judgment record did Plaintiffs make such an assertion, much less support it with

-4-

reference to materials in the record. If they had, their arguments still would not have created a triable issue of fact.[2]

Tellingly, Plaintiffs cite only their *Motion for Class Certification* for the proposition that a dispute exists, rather than their papers for summary judgment. *See* Opp. 4 (citing Dkt. 757 at 35 n.22). But Plaintiffs cannot rely on materials outside the summary judgment record. It is axiomatic that "rules like [Local Rule] 56.1 'provide[] the only acceptable means of disputing the other party's facts and of presenting additional facts to the district court.'" *F.T.C. v. Bay Area Bus. Council*, 423 F.3d 627, 634 (7th Cir. 2005) (alteration in original) (quoting *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995)). The litigating Defendants argued that they were need-blind throughout the class period—as "need-blind" is understood under Defendants' interpretation of the Exemption. Plaintiffs failed to dispute that fact in their summary judgment papers, which served as the basis for the order from which Defendants seek certification. Plaintiffs cannot now raise the argument for the first time in a Section 1292(b) opposition and certainly not by invoking

---

[2] With respect to Penn, Plaintiffs argued only (1) that Penn would include an indicator for "socioeconomic" status that was "visible to admissions"; and (2) that Penn applicants with "special-interest tags" were "admitted at a much higher rate than waitlisted applications without such tags." Dkt. 893 at 18. Neither (baseless) allegation would disqualify Penn under the correct interpretation of Section 568, because neither suggests that Penn used the fact that a student applied for financial aid to penalize them in the admissions process. Plaintiffs' summary judgment papers likewise never contended that Georgetown was need-aware as to any waitlist candidates. Had Plaintiffs raised this issue, Georgetown would have responded with its Dean of Admissions' unrebutted testimony, when discussing the very email Plaintiffs' class certification motion cited and on which they rely here, that the financial circumstances of waitlist candidates are irrelevant to their admission decision. *See* Ex. 1, Deacon (Georgetown) Tr. 182:2-182:15. Plaintiffs also purported to dispute whether Cornell was need-blind for waitlist applicants. *See* Dkt. 895 at 10. However, as Defendants have previously explained, Plaintiffs' evidence did not support that argument. *See* Dkt. 936 at 24 n.3.

an unrelated filing altogether. Plaintiffs had their opportunity to raise a genuine dispute. They missed it. They should not get another bite at the apple here.[3]

*Finally*, Plaintiffs are wrong that if a trial is required as to Notre Dame, it defeats certification. *See* Opp. 3–4. Even if Plaintiffs' claims could proceed against Notre Dame—and they could not[4]—this case would be materially advanced by resolution in Defendants' favor on interlocutory appeal because the claims against other Defendants would be resolved. *See Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (holding that a lawsuit is materially advanced even where some claims survived interlocutory appeal).[5]

## III.    Plaintiffs' Arguments Demonstrate that Interpretation of the 568 Exemption Is Contestable.

The questions Defendants seek to certify are contestable, including "because of the absence of authority" addressing the meaning of the Exemption. *Gupta v. Morgan Stanley Smith Barney*, No. 17 C 8375, 2018 WL 8787623, at *1 (N.D. Ill. Oct. 17, 2018). Indeed, Plaintiffs concede that "[t]here are no other cases interpreting § 568," Opp. 9, and this "relative dearth" of case law shows contestability, *A.D. ex rel. Serrano v. Credit One Bank, N.A.*, No. 14 C 10106, 2016 WL 10612609, at *1 (N.D. Ill. Dec. 11, 2016) (Kennelly, J.) (quoting *Everett v. Paul Davis Restoration, Inc.*, 771 F.3d 380, 384 (7th Cir. 2014)); *see also In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626–

---

[3] Plaintiffs' invocation of Vanderbilt and Northwestern's purportedly need-aware practices (Opp. 4) cannot save them, either. Under Defendants' interpretation of the Exemption, what matters is whether two or more 568 Group members were need-blind.

[4] The antitrust laws do not authorize suits for a conspiracy of one, and even if they did, Notre Dame could not be held liable for purported damages to a class of students who attended schools whose conduct was exempt from the antitrust laws. *See* Mem. 6 n.1.

[5] Similarly, the Court should certify the Exemption issue for interlocutory appeal even if it concludes that fact disputes bar resolution of the litigation against one or two of the litigating Defendants.

27 (7th Cir. 2010) (accepting case from this Court for interlocutory appeal because the issue involved was "unsettled" and the case involved "novelty").[6]

Plaintiffs' response disputes none of this. Instead, Plaintiffs take the opportunity to relitigate the merits of their view of the Exemption. But Plaintiffs' contest of the merits confirms and highlights that the questions presented here are contestable. *See* Mem. 8–12. Where both sides "offer reasonable interpretations of the statutory language at issue," the issues are contestable. *Payton v. Union Pac. R.R. Co.*, No. 24 C 153, 2025 WL 3012662, at *2 (N.D. Ill. Oct. 28, 2025). And where the issues are ones of "first impression," as here, the case for interlocutory review is even greater. *See Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1007–08 (7th Cir. 2002); *see also In re Brand Name Prescription Drugs Antitrust Litig.*, 878 F. Supp. 1078, 1081 (N.D. Ill. 1995) (recognizing that the existence of a "difficult central question of law which is not settled by controlling authority" is contestable).

**IV.     Plaintiffs Do Not Substantively Address Defendants' Contention that the Questions Presented Are Purely Legal.**

Plaintiffs contend that the proposed questions are not legal in nature because, they assert, "the parties would dispute on appeal" several "fact-intensive questions" concerning how a ruling in Defendants' favor will impact Plaintiffs' case. Opp. 7 (emphasis omitted). But it is not enough for Plaintiffs to simply threaten raising fact-intensive issues for the first time on appeal. If it were, defeating certification under Section 1292(b) would be nothing more than an exercise in semantics. At a minimum, Plaintiffs must demonstrate that their fact disputes have some basis in the record

---

[6] Plaintiffs' arguments to the contrary (at 13–14) are without merit. This Court has indicated that the lack of a controlling opinion satisfies the contestability requirement. *See, e.g.*, *A.D.*, 2016 WL 10612609, at *1; *Gupta*, 2018 WL 8787623, at *1 ("And there is a substantial ground for difference of opinion because of the absence of authority . . . ."); *Taylor v. Samsung Elecs. Am., Inc.*, No. 19 C 4526, 2020 WL 1248655, at *7 (N.D. Ill. Mar. 16, 2020) (noting "absence of guidance from the Seventh Circuit" and Court's willingness to certify order under Section 1292(b)).

and are adequately preserved in the proceedings below. For the reasons explained above (at 3–6), neither is true here. The questions of statutory interpretation that Defendants present are purely legal, and the Seventh Circuit would not need to "study the record" to determine the correct interpretation of the Exemption. *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000).

Plaintiffs rely (Opp. 7) on a dissimilar case in which the district court denied a Section 1292(b) motion because the legal question could not be resolved without first addressing a disputed issue of fact. *See LAJIM, LLC v. Gen. Elec. Co.*, No. 13 CV 50348, 2016 WL 626801, at *2 (N.D. Ill. Feb. 17, 2016). While the district court agreed that the question presented was a question of law, the court observed that its resolution would require a "focus on the record that takes the issue beyond the scope of an appropriate interlocutory appeal." *Id.*

The questions presented here ask the Seventh Circuit to assess whether the text, structure, and history of the Exemption support Defendants' statutory interpretation. *See* Mem. 4–5. And there is no need for the Seventh Circuit to resolve any predicate factual dispute in order to reach that purely legal question.

## **CONCLUSION**

For the foregoing reasons, the Court should grant certification under 28 U.S.C. § 1292(b) for interlocutory review of the questions presented.

Dated: April 21, 2026

By: */s/ David Gringer*
David Gringer
Alan Schoenfeld
WILMER CUTLER PICKERING HALE
    AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: 212-937-7294
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Seth Waxman
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: 202-663-6800
seth.waxman@wilmerhale.com

Edward W. Feldman
Daniel Martin Feeney
MILLER SHAKMAN LEVINE &
    FELDMAN LLP
180 North LaSalle Street
Suite 3600
Chicago, IL 60601
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for The Trustees of the University
of Pennsylvania*

Respectfully submitted,

By: */s/ Norman Armstrong*
Norman Armstrong
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: 202-389-5000
norman.armstrong@kirkland.com

Daniel E. Laytin
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Tel.: 312-862-2000
daniel.laytin@kirkland.com

*Counsel for Cornell University*

By: */s/ Britt M. Miller*
Britt M. Miller
Daniel T. Fenske
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312-782-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com

*Counsel for Georgetown University*

-9-

By: */s/ Jan Rybnicek*
Eric Mahr
Jan Rybnicek
Andrew Henderson
FRESHFIELDS US LLP
700 13th Street, NW
Washington, DC 20005
Tel: 202-777-4500
eric.mahr@freshfields.com
jan.rybnicek@freshfields.com
andrew.henderson@freshfields.com

Rami Fakhouri
Jennifer L. Greenblatt
GOLDMAN ISMAIL TOMASELLI BRENNAN &
BAUM LLP
200 South Wacker Drive, Floor 22
Chicago, IL 60604
Tel: (312) 681-6000
rfakhouri@goldmanismail.com
jgreenblatt@goldmanismail.com

*Counsel for Massachusetts Institute of
Technology*

By: */s/ Robert A. Van Kirk*
Robert A. Van Kirk
Jonathan Pitt
Sarah F. Kirkpatrick
Matthew D. Heins
Feyilana Lawoyin
Cole T. Wintheiser
William J. Donnelly
WILLIAMS & CONNOLLY LLP
680 Maine Ave. SW
Washington, D.C. 20024
Tel: 202-434-5000
rvankirk@wc.com
jpitt@wc.com
skirkpatrick@wc.com
mheins@wc.com
flawoyin@wc.com
cwintheiser@wc.com
wdonnelly@wc.com

James Peter Fieweger
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street
Suite 3200
Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for University of Notre Dame*