**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>*Defendants*. | Case No. 1:22-cv-00125<br><br>Hon. Matthew F. Kennelly |

**DEFENDANTS' BRIEF IN RESPONSE TO
PLAINTIFFS' SUBMISSION REGARDING NEW LEAD COUNSEL**

**INTRODUCTION**

Plaintiffs failed to satisfy Rule 23(a)(4), and the proposed addition of lawyers from MoloLamken LLP does not solve their problem. Despite being given two weeks to come up with a different "configuration" of proposed class counsel *before* the Court issued its opinion on class certification, *see* Ex. 1 (Mar. 11, 2026 Hr'g Tr.) at 37:6-38:14, and despite being given three more weeks to identify new "lead" counsel and to demonstrate their adequacy *after* the Court issued its opinion on class certification, *see* ECF 1241 at 62, plaintiffs' "Submission Regarding New Lead Counsel" (ECF 1252) misses the mark.

First, as a threshold matter, plaintiffs offer no authority for substituting new "lead" counsel after a court has concluded it cannot certify the proposed class with plaintiffs' existing counsel leading the representation. Courts in similar circumstances have (appropriately) denied class certification outright, without providing an opportunity to "fix" the failings of the original motion. Second, even if plaintiffs could justify (repeated) second chances, they fail to provide authority for permitting counsel the Court already has found to have a "candor problem" to select their own new "lead" class counsel and continue representing the class despite their conflicts. Third, even if plaintiffs were somehow entitled to multiple opportunities to cure the shortcomings of their class certification motion, and even if it were appropriate for conflicted counsel to serve as the gatekeeper for selection of the new "lead" class counsel, the process FNF and BMPC used was fatally flawed because they undertook it without the contemporaneous knowledge or participation of any of the class representatives.

Plaintiffs have had several opportunities to propose representation that will fairly and adequately represent the putative class. They have failed. Class certification should be denied.

## ARGUMENT

### I.     Class Certification Should Be Denied Because FNF and BMPC Are Inadequate

The Court should disregard plaintiffs' proposal to bring in new counsel because the inadequacy of FNF and BMPC—the attorneys who brought the motion for class certification and who are proposed to remain as class counsel—necessitates the denial of the class certification motion.  "All of [Rule 23's] elements are prerequisites to certification; failure to meet any one of them precludes certification." *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993); *see also Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 493 (7th Cir. 2012).  That includes Rule 23(a)(4), which requires that class counsel be adequate to "protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Consequently, the Seventh Circuit has made explicit that if a lawyer "demonstrates that he is not an adequate representative of the interests of the class as a whole," then noncertification is *mandatory*—"realism *requires* that certification be denied." *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002) (emphasis added).

Plaintiffs' submission offers no authority for the idea that inadequacy can be cured by adding new counsel after a court has found that misconduct by counsel precludes certification. This is unsurprising, because "misconduct that prejudices the class or *creates a direct conflict* between counsel and the class *requires* [] denial" of class certification. *Reliable Money Ord., Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 (7th Cir. 2013) (emphasis added).  That is what happened here.  Among other things, litigation funders provided GLC with millions of dollars in fees and expense reimbursements and BMPC and FNF knew it, yet all three certified to the Court that GLC's work was fully contingent and that its expenses were entirely unreimbursed.  ECF 1241 at 52-55.  As the Court found, FNF and BMPC "did not simply choose to remain silent," but rather "helped pull the wool over the Court's eyes" when they "*affirmatively adopted*" the false statements of their co-counsel, submitting sworn misstatements for the purpose of persuading the

Court that counsel should receive more of plaintiffs' recoveries to date—and that the class should receive less. *Id.* at 55, 57. The Court agreed that counsel's false representations were "all part of an effort to get more for counsel at the expense of the class." *Id.* at 58. Thus, the Court was right when it determined that it could not conclude that plaintiffs satisfied the adequacy requirement of Rule 23(a)(4), *id.* at 2.[1] The motion for class certification should have been denied at that point, as the law of this circuit requires. *See Reliable Money Ord.*, 704 F.3d at 498.

Class certification is routinely denied in cases like this one where proposed class counsel fails to satisfy the adequacy requirement. For instance, in *Kingsepp v. Wesleyan University*, the Court dealt with a nearly identical issue. There, a former university student brought an antitrust class action against a group of prestigious colleges and universities accusing them of conspiring to inflate tuition and suppress financial aid. 1992 WL 230136 (S.D.N.Y. Sept. 3, 1992). Following three years of litigation, the plaintiffs' motion for class certification was denied on the basis that the plaintiffs failed to satisfy the adequacy-of-counsel requirement, irrespective of the merits of the case. *Id.* at *3. The court's decision meant the named plaintiffs could proceed on an individualized basis with their retained counsel and could obtain relief on their own behalf. But having failed to demonstrate that absent members of the putative class would be adequately represented, the named plaintiffs could not proceed with prosecuting the case on those absent individuals' behalf. *See id.* No second bite at the apple was permitted, just as courts do not routinely allow second chances to meet the other class certification requirements; when, for

---

[1] During a recent hearing, the Court pushed back on the idea that this was a finding of inadequacy. Defendants' position was (and is) premised on the fact that the Court found that each element of Rule 23(a) was satisfied aside from adequacy of counsel, ECF 1241 at 2; it declined to certify the class, and stated expressly that it would deny certification if the class continued to be represented solely by the counsel that brought the class certification motion, *id.* at 62, leading to the conclusion that existing counsel were not themselves adequate.

example, a motion for class certification does not demonstrate sufficient commonality in the first instance, that motion is denied.[2] *Cf. Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007, 1029-30 (N.D. Ill. 2017) (denying certification upon finding of inadequacy of proposed class counsel and proposed class representatives).

Even if plaintiffs had made the argument and established that the Court has discretionary authority to permit a "redo," the facts of this case do not justify it. Plaintiffs and their counsel had every chance to prioritize the best interests of the class and try to cure their adequacy-of-counsel problem, even before the Court took up their long-pending motion for class certification. They could have addressed and even prevented the issue from arising in October 2023, when BMPC and FNF privately called GLC to the carpet for, among other things, attempting to falsely claim it was working "at risk" when the firm was in fact well-funded, and when BMPC and FNF said they would not stand behind GLC's claimed hours or hourly rates. They could have cured the issue by not making the representations they did in their fee petitions. Having made those statements, plaintiffs could have substituted counsel in June 2025, when an associate at FNF told the Court that he believed his colleagues at FNF, BMPC, and GLC were perpetrating a "fraud on the Court" through their billing-related filings in support of their fee petitions. Plaintiffs could have substituted counsel in October 2025, after Court-ordered discovery confirmed that FNF, BMPC, and GLC had made misrepresentations in connection with their fee petitions. Plaintiffs could have substituted counsel after the hearing in early March 2026, when the Court pressed counsel on the

---

[2] *Kingsepp* is not an anomaly—courts throughout the country regularly take the same approach. *See, e.g.*, *Physicians Healthsource, Inc. v. Masimo Corp.*, 2019 WL 8138043, at *13 (C.D. Cal. Nov. 21, 2019) (denying class certification because plaintiffs were "unable to satisfy adequacy of counsel"); *Kulig v. Midland Funding, LLC*, 2014 WL 5017817, at *6 (S.D.N.Y. Sept. 26, 2014) (same); *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 160-61 (S.D.N.Y. 2010) (same); *Walter v. Palisades Collection, LLC*, 2010 WL 308978, at *9-11 (E.D. Pa. Jan. 26, 2010) (same); *Bodner v. Oreck Direct, LLC*, 2007 WL 1223777, at *2-3 (N.D. Cal. April 25, 2007) (same).

accuracy of their statements and encouraged plaintiffs to propose a new "configuration" before the class certification motion would be decided. Even with the advance notice provided by the Court at that hearing, plaintiffs did not propose a satisfactory solution. At every juncture, plaintiffs and their counsel chose to stay the course. They should be held to the consequences of their choice.

Contrary to the Court's suggestion, denying class certification on these grounds does not provide a "windfall" to defendants, ECF 1241 at 58-59, any more than would denying class certification under any other Rule 23(a) requirement.[3] The fact that the Court previously certified a class for settlement purposes has no impact on whether plaintiffs meet the standard here.[4] Concluding that plaintiffs have had the opportunity to make their case and failed results in no injustice.

## II.    Existing Counsel's Selection of New Counsel and Continuing Participation In This Case Compromises All Counsel's Adequacy

Even if adequacy could be established after the fact by bringing in new "lead" counsel, it cannot be established here because of FNF and BMPC's role in selecting their own proposed supervisors and their continued participation in the representation of the putative class.

*First*, FNF and BMPC's role in searching for, selecting, and proposing their own supervisors dooms any prospect that they can establish adequacy of counsel under Rule 23(a)(4). The Court's March 31, 2026 opinion directed plaintiffs to "file a motion proposing new lead

---

[3] That is doubly true here. No corporate entity or shareholder is "pocketing" funds that would otherwise be paid by defendants to satisfy a judgment or settlement. Any award to plaintiffs and their counsel simply comes out of funds that would otherwise be available to use for the benefit of current and future students. Plus, the putative class already has received hundreds of millions of dollars. The only windfall in this case is the money obtained by plaintiffs' counsel who misled the Court.

[4] *See McCue v. MB Fin., Inc.*, 2015 WL 1020348, at *1 (N.D. Ill. Mar. 6, 2015) ("At preliminary approval, the court's role is not 'resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" (*citing E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985))).

counsel" and demonstrate that counsel is "adequate," ECF 1241 at 62, but leaving this to FNF and BMPC entrusted the henhouse to the foxes. FNF and BMPC's conduct in this case is what led the Court to order new counsel to join the fray; they could not reasonably be trusted to find and select counsel that will succeed in representing the class where they themselves have failed.

What is more, the "submission" FNF and BMPC have filed does nothing to allay concerns about whether new counsel will be able to check existing counsel going forward. Plaintiffs' six-and-a-half page submission merely (1) lauds the accomplishments of Steven F. Molo, his firm, and his colleagues, ECF 1252 at 1-6; (2) notes that these lawyers have "no scheduling conflicts" that would prevent them from participating in the trial, *id.* at 7; and (3) offers *ipse dixit* that MoloLamken "will ensure that the proposed Class has excellent representation that more than satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure," *id.* at 1. The submission proposes MoloLamken as "lead" counsel—a term that has no grounding or meaning in Rule 23—but FNF and BMPC do not specify what they think that means, and they do not say how strategic decisions will be made if the three firms serving as co-class counsel ever disagree. There are no details on how the relationship between counsel will be structured to ensure that MoloLamken will have final decision-making authority and will not be beholden to the attorneys who selected them. This is not sufficient to demonstrate that the combination of firms will "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), and will "act with unwavering and complete loyalty to the class," *Nat'l Air Traffic Controllers Ass'n v. Dental Plans, Inc.*, 2006 WL 584760, at *4 (N.D. Ga. Mar. 10, 2006) (citation omitted).

*Second*, FNF and BMPC's continued participation in the wake of the Court's March 31, 2026 opinion inherently undermines the adequacy of the putative class's representation. The Court's conclusion that FNF and BMPC had a "candor problem" and could not be certified as class

counsel creates considerations that are likely to influence FNF and BMPC in their decision-making as class counsel. Will counsel be concerned with protecting their reputation, in view of the Court's opinion, such that they will feel forced to pursue the case aggressively when a settlement would be more advantageous to the putative class? Or might counsel feel compelled to litigate in a way that fortifies the positions most useful to them in a fight over the share of any future recovery that Mr. Gilbert feels he is entitled to? *See* Ex. 2 (Apr. 24, 2026 Hr'g Tr.) at 32:14-33:11 (acknowledging that defendants should assume Mr. Gilbert would "have some claim of entitlement to some percentage of whatever fees are generated by the remainder of the litigation"). These kinds of considerations have nothing to do with the interests of the putative class and present a real risk that FNF and BMPC will not act exclusively in the proposed class's interests. Plaintiffs' insistence on proceeding with FNF and BMPC representing the putative class means adequacy cannot be established.

### III. The Process Counsel Employed to Select MoloLamken Renders the Putative Class's Proposed Representation Inadequate

Even if plaintiffs could cure their inadequacy problem by identifying new counsel to join FNF and BMPC's representation, their effort to do so here does not suffice. One would think that given the Court's findings concerning FNF and BMPC, plaintiffs and their current counsel would have taken great pains to describe their process and the steps taken to ensure that those firms were not the sole arbiters of who would be selected to lead the putative class's representation. The obvious solution would have been to give the proposed class representatives a significant role in selecting their own counsel and proposed new lead counsel for the class.

Instead, the discovery this Court permitted has revealed that FNF and BMPC apparently did not loop their clients into the selection process. Asked when they came to learn that their counsel at FNF and BMPC had been accused of perpetrating a "fraud on the Court" by one of their

own colleagues, one named plaintiff revealed that, before the Court issued its March 31 opinion, he had essentially no contemporaneous knowledge that his lawyers had accused one another of deceiving the Court and were mired in litigation over their misstatements to the Court while nevertheless forging ahead as proposed class counsel.[5] The only class representative to testify that they thought they had heard about Mr. Bach-y-Rita's allegations of fraud was instructed not to answer *when* she learned about them. Ex. 4 (Weaver Dep. Tr.) at 9:2-10:2. In other depositions, FNF and BMPC similarly resorted to improperly instructing the named plaintiffs not to answer these and similar questions on "scope" grounds.[6] No named plaintiff, including one who is a Harvard Law graduate, participated in any interview of "their" potential new counsel or was consulted about their views on any of the candidates.[7] None had heard of MoloLamken or met

---

[5] *See, e.g.*, Ex. 3 (Piyevsky Dep. Tr.) at 9:10-18 (Q: "Before learning that the Court had found that your previous counsel had made statements that were affirmatively misleading, were you aware that issues had been raised with the Court about your previous counsel's candor to the Court?" A: "No."); *id.* at 12:13-19 (Q: "Are you aware that what set off the series of issues leading to the appointment of new counsel in this case has to do with Mr. Bach-y-Rita, who is your own attorney in this case, accusing one of your other attorneys of committing a fraud on the Court?" A: "No.").

[6] *See, e.g.*, Ex. 5 (Henry Dep. Tr.) at 12:18-13:17 (instructing plaintiff not to answer whether she knew her counsel had accused one another of defrauding the Court); *id.* at 20:2-10 (instructing plaintiff not to answer whether she has "taken any steps to this point to monitor, supervise, investigate, any of the counsel – current, prior, or future – in terms of their ability to resolve the candor problem addressed by the Court in its March 2026 ruling"); Ex. 4 (Weaver Dep. Tr.) at 10:13-18 (instructing plaintiff not to answer whether she knew that despite claiming they were fully contingent, one group of her counsel had outside funding); *see also, e.g.*, Ex. 6 (Leo-Guerra Dep. Tr.) at 18:6-24 (instructing plaintiff not to answer whether he intends to do anything to ensure his attorneys do not make further misrepresentations to the Court in the future).

[7] *See, e.g.*, Ex. 5 (Henry Dep. Tr.) at 16:3-5 (Q: "Did you have any personal involvement in the vetting process?" A: "No."); *id.* at 16:14-17 (Q: "Did you meet or speak with any potential candidates to serve as lead counsel for plaintiffs in the course of that process?" A: "No."); Ex. 6 (Leo-Guerra Dep. Tr.) at 12:3-5 (Q: "Did you play any role in who – in selecting who the new lead counsel would be?" A: "I did not."); *id.* at 13:14-21 (Q: "Were you one of the individuals who decided that MoloLamken would serve as lead counsel in the case?" A: "I was not." Q: "Before today, had you ever spoken with anyone who was a member of the law firm MoloLamken?" A: "I have not."); Ex. 7 (Williams Dep. Tr.) at 20:23-21:19 (Q: "Is it fair to say that you were informed by your current counsel, Mr. Cipolla and his – Cipolla and his colleagues, that Mr. Molo was being nominated and you were asked to approve that selection?" A: "Yes." … Q: "Is it accurate that you did not otherwise participate in the process or provide feedback or input into the process?" A: "Yes."); Ex. 8 (Maerlender Dep. Tr.) at 20:10-16 (Q: "Your lawyers told the Court that they interviewed 12 different law firms to serve as lead counsel for the class in this case. How

8

any of its attorneys until FNF and BMPC relayed that they had selected MoloLamken to join the team.[8] No plaintiff asked any questions of FNF or BMPC about the process.[9] Instead they testified carefully that they "trusted my counsel"—even though they had been kept in the dark about the allegations and evidence that led the Court to find their lawyers had a "candor problem."[10] And

---

many of those interviews did you participate in?" A: "I did not participate in any of the interviews."); Ex. 3 (Piyevsky Dep. Tr.) at 14:11-14 (Q: "Did you play any role in selecting the Molo law firm to serve as counsel in this case?" A: "No."); Ex. 9 (Corzo Dep. Tr.) at 19:13-19 (Q: "Did you personally interview any candidates for the role of lead counsel to represent you in this matter?" A: "No. I personally did not interview any counsel candidates or firms for this matter, in particular."); Ex. 4 (Weaver Dep. Tr.) at 14:13-16 (Q: "Did you play any role in selecting who those lawyers would be?" A: "I trusted my counsel on making these decisions."). Several plaintiffs appeared to not even know whether it would be Molo, Lamken, both, or neither who would be involved in the case. Ex. 6 (Leo-Guerra Dep. Tr.) at 16:10-17:2; Ex. 8 (Maerlender Dep. Tr.) at 18:19-24; id. at 19:16-22; Ex. 3 (Piyevsky Dep. Tr.) at 18:3-20.

[8] See, e.g., Ex. 5 (Henry Dep. Tr.) at 9:11-20 (Q: "When you learned about Molo's potential role in this case, had you heard of either Mr. Molo or the Molo Law Firm?" … A: "No."); Ex. 4 (Weaver Dep. Tr.) at 16:5-7 (Q: "Had you heard of MoloLamken before they were proposed as new counsel?" A: "No."); id. at 16:18-21 (Q: "Before you met with the lawyers at MoloLamken in the last week, had you ever spoken with anyone who was a member of MoloLamken?" A: "No."); Ex. 6 (Leo-Guerra Dep. Tr.) at 13:18-21 (Q: "Before today, had you ever spoken with anyone who was a member of the law firm MoloLamken?" A: "I have not."); Ex. 8 (Maerlender Dep. Tr.) at 18:13-18 (Q: "And before yesterday's deposition prep session with Mr. Cipolla and someone who is not your lawyer, had you ever spoken to anyone from MoloLamken before?" A: "I believe I already answered that, but I had not."); Ex. 3 (Piyevsky Dep. Tr.) at 13:24-14:3 (Q: "Before the 15- or 20-minute session today, had you ever spoken with anyone from the Molo firm before?" A: "No.").

[9] See, e.g., Ex. 6 (Leo-Guerra Dep. Tr.) at 14:16-18 (Q: "Did you ask any questions about MoloLamken serving as lead counsel?" A: "I did not."); Ex. 7 (Williams Dep. Tr.) at 21:16-19 (Q: "Is it the accurate that you did not otherwise participate in the process or provide feedback or input into the process?" A: "Yes."); Ex. 5 (Henry Dep. Tr.) at 17:7-10 (Q: "Did you request either information or materials from the other counsel about Mr. Molo and his firm?" A: "I did not request them, no."); Ex. 3 (Piyevsky Dep. Tr.) at 15:21-24 (Q: "Did you ask whether – for the names of any of the other firms being considered to serve as new counsel?" A: "No.").

[10] See, e.g., Ex. 4 (Weaver Dep. Tr.) at 17:7-21 (Q: "Did you ever ask any question about MoloLamken serving as lead counsel?" A: "No, I trusted my counsel." Q: "And did you decide you were comfortable with MoloLamken serving as counsel?" A: "I do believe if they were – if I was told that they were going to be the best fit that I trusted my counsel to make that decision." Q: "How did you decide that you were comfortable with MoloLamken serving as counsel in this case?" A: "Advice from my counsel." Q: "Did you talk to anyone other than your counsel about MoloLamken?" A: "No."); Ex. 3 (Piyevsky Dep. Tr.) at 15:7-8 ("I fully and completely trust existing counsel"); Ex. 6 (Leo-Guerra Dep. Tr.) at 19:10-11 ("I trust that the team has made the right decision."). MoloLamken attorneys attended the prep sessions for the named plaintiffs, even though many of the plaintiffs testified that lawyers from MoloLamken were not their lawyer "yet." Ex. 6 (Leo-Guera Dep. Tr.) at 8:12-25; 10:2-7; Ex. 8 (Maerlender Dep. Tr.) at 17:4-14; Ex. 9 (Corzo Dep. Tr.) at 9:3-21; Ex. 4 (Weaver Dep. Tr.) at 7:11-8:10; Ex. 7 (Williams Dep. Tr.) at 16:6-15.

none professed any intention or plan to supervise counsel going forward, because they trusted that FNF and BMPC would do that for them.[11]

The named plaintiffs' noninvolvement in this process and disinterest in the serious issues that the parties have been litigating over the last nine months raises significant questions about the named plaintiffs' adequacy to serve as class representatives. "Figurehead plaintiffs are not permitted," and the class representatives cannot "leav[e] it to the lawyers, with little regard for the truth and accuracy of what they do—or of what they say under oath." *Physicians Healthsource*, 254 F. Supp. 3d at 1023.[12] It also demonstrates that FNF and BMPC's process for identifying new counsel was set up to protect FNF and BMPC's control over the representation of the class—so

---

In each case, the prep session was the first time that the named plaintiff had spoken with anyone from MoloLamken. *See supra* n.9.

[11] *See, e.g.*, Ex. 6 (Leo-Guerra Dep. Tr.) at 17:12-19 (Q: "And what do you intend to do to supervise MoloLamken in this case?" A: "I don't intend there to be much supervision at all outside of working in concert with Richard and the FNF team."); Ex. 3 (Piyevsky Dep. Tr.) at 10:13-11:4 (Q: "Are you concerned – well, let me ask, have you taken any steps to ensure that potential new counsel will be truthful to the Court?" A: "No." Q: "Do you intend to do any work between now and the trial in this case to make sure that your attorneys are being truthful with the Court?" A: "I intend to let my counsel make those decisions."); Ex. 7 (Williams Dep. Tr.) at 18:3-11 (Q: "In light of those findings by the Court, what steps have you taken to investigate or understand whether Mr. Molo and his law firm will be able to prevent those problems from recurring in the future?" A: "I spoke with my counsel."); Ex. 9 (Corzo Dep. Tr.) at 20:4-14 (Q: "Have you done anything to ensure that the counsel representing you as the new lead counsel conforms with the ethical obligations of the Court?" A: "Have I personally done anything?" Q: "Yes." A. "Let's see. I don't know if I personally have done anything in the way you describe it."); Ex. 4 (Weaver Dep. Tr.) at 18:25-19:9 (Q: "Do you expect that anyone will supervise MoloLamken in this case?" A: "I believe all of the law firms have to work together. I am not sure who would be in a supervisor role." Q: "Have you done anything to make sure that MoloLamken will be truthful to the court going forward?" A: "I don't know if that's my role. Not particularly.").

[12] *See also Eubank v. Pella Corp.*, 753 F.3d 718, 719 (7th Cir. 2014) ("The named plaintiffs are the representatives of the class—fiduciaries of its members—and therefore charged with monitoring the lawyers who prosecute the case on behalf of the class (class counsel)."); *Olden v. Gardner*, 294 F. App'x 210, 220 (6th Cir. 2008) ("Class representatives are expected to protect the interests of the class. This requires that the class representatives exercise some oversight of the class counsel so as to avoid simply turning the conduct of the case over to the class counsel." (citation omitted)); *Wexler v. AT&T Corp.*, 323 F.R.D. 128, 130 (E.D.N.Y. 2018) ("A vigilant class representative will—at least in theory—act as a foil to self-dealing by class counsel.").

that new counsel will work "in concert" with FNF and BMPC and allow them to continue with the same structure and approach that permitted inadequate representation of the interests of the proposed class in the first place.

## CONCLUSION

When class counsel is not deemed adequate to represent the class, class certification must be denied. Even if it were appropriate to allow new counsel to be added, the process by which MoloLamken has been nominated to serve as new "lead" class counsel in this case was defective. The decision was made entirely by class counsel that the Court found engaged in conduct detrimental to the proposed class and who the Court could not certify. The named plaintiffs' lack of knowledge about, much less involvement in, that rare and important process underscores the persistent shortcomings of the putative class's legal representation. Class counsel remains inadequate, and plaintiffs' proposal to add MoloLamken LLP as "lead" class counsel does not suffice to solve the problem. Class certification should be denied.

11

Dated: May 15, 2026

By: */s/ David Gringer*
David Gringer
Alan Schoenfeld
WILMER CUTLER PICKERING HALE
    AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: 212-937-7294
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Seth Waxman
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: 202-663-6800
seth.waxman@wilmerhale.com

Edward W. Feldman
Daniel Martin Feeney
MILLER SHAKMAN LEVINE &
    FELDMAN LLP
180 North LaSalle Street
Suite 3600
Chicago, IL 60601
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for The Trustees of the University
of Pennsylvania*

Respectfully submitted,

By: */s/ Norman Armstrong*
Norman Armstrong[13]
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Tel: 202-842-7800
narmstrong@cooley.com

*Counsel for Cornell University*

By: */s/ Britt M. Miller*
Britt M. Miller
Daniel T. Fenske
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312-782-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com

*Counsel for Georgetown University*

---

[13] Counsel's address recently changed.  Counsel's new address is provided here, and a formal change of address notice is forthcoming.

By: */s/ Eric Mahr*
Eric Mahr
Jan Rybnicek
Andrew Henderson
FRESHFIELDS US LLP
700 13th Street, NW
Washington, DC 20005
Tel: 202-777-4500
eric.mahr@freshfields.com
jan.rybnicek@freshfields.com
andrew.henderson@freshfields.com

Rami Fakhouri
Jennifer L. Greenblatt
GOLDMAN ISMAIL TOMASELLI BRENNAN &
BAUM LLP
200 South Wacker Drive, Floor 22
Chicago, IL 60604
Tel: (312) 681-6000
rfakhouri@goldmanismail.com
jgreenblatt@goldmanismail.com

*Counsel for the Massachusetts Institute of Technology*

By: */s/ Robert A. Van Kirk*
Robert A. Van Kirk
Jonathan Pitt
Sarah F. Kirkpatrick
Matthew D. Heins
Feyilana Lawoyin
Cole T. Wintheiser
William J. Donnelly
WILLIAMS & CONNOLLY LLP
680 Maine Ave. SW
Washington, D.C. 20024
Tel: 202-434-5000
rvankirk@wc.com
jpitt@wc.com
skirkpatrick@wc.com
mheins@wc.com
flawoyin@wc.com
cwintheiser@wc.com
wdonnelly@wc.com

James Peter Fieweger
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street
Suite 3200
Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for the University of Notre Dame*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2026, I caused a true and correct copy of the foregoing document to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

/s/ Matthew D. Heins
Matthew D. Heins

*Counsel for University of Notre Dame*