# EXHIBIT 4

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANDREW CORZO, et al.,

    Plaintiffs,        Case No.

vs.               1:22-cv-00125

BROWN UNIVERSITY, et al.,

    Defendants.

VIDEOTAPE DEPOSITION OF

BRITTANY TATIANA WEAVER

APPEARING VIA ZOOM

MAY 11, 2026

1:45 P.M.

Reported Remotely By:

Judith L. Leitz Moran

RPR, CSR-1479

REMOTE APPEARANCES OF COUNSEL


On behalf of the Plaintiffs:

ERIC L. CRAMER, ESQUIRE

ROBERT LITAN, ESQUIRE

BERGER MONTAGUE

1818 Market Street

Suite 3600

Philadelphia, Pennsylvania  19103

 (215)875-3009

 ecramer@bergermontague.com

 rlitan@bergermontague.com


RICHARD CIPOLLA, ESQUIRE

FREEDMAN NORMAND FRIEDLAND LLP

99 Park Avenue

Suite 1910

New York, New York  10016

(646)350-0527

rcipolla@fnf.com

REMOTE APPEARANCES OF COUNSEL  (CONT.)

On behalf of the Defendant Notre Dame:

MATTHEW D. HEINS, ESQUIRE

WILLIAM DONNELLY, ESQUIRE

WILLIAMS & CONNOLLY LLP

680 Maine Avenue, SW

Washington, D.C.  20024

(202)434.5000

mheins@wc.com

wdonnelly@wc.com

ALSO PRESENT:

*  GEORGE ELLIS, VIRTUAL VIDEO TECHNICIAN

I N D E X

EXAMINATION                              PAGE

BY MR. HEINS .........................    6

E X H I B I T S

(No exhibits marked.)

VIDEO TECHNICIAN:  We are now on the record.  The time is 1:45 p.m. Eastern time on May 11th, 2026.

This begins the video conference deposition of Brittany Tatiana Weaver taken in matter of Andrew Corzo, et al., versus Brown University, et al.

The case number is 1:22-cv-00125 and is filed in the United States District Court for the Northern District of Illinois, Eastern Division.

My name is George Ellis.  I am the remote videographer.  Our court reporter today is Judi Leitz.  And we are representing Esquire Deposition Solutions.

Counsel, go ahead and state your name and who you represent, after which the court reporter will swear in the witness.

MR. CRAMER:  My name is Eric Cramer, I'm from Berger Montague.  I represent the Plaintiffs and the witness.

MR. HEINS:  My name is Matthew Heins from Williams & Connolly on behalf of the University of Notre Dame.  With me today is my colleague Will Donnelly.

BRITTANY TATIANA WEAVER,

being first duly sworn, was examined as follows:

MS. WEAVER:  I do.

THE COURT REPORTER:  Thank you.

EXAMINATION

BY MR. HEINS:

Q   Good afternoon, Ms. Weaver.  My name is Matthew Heins, I represent the University of Notre Dame in this case.

You took an oath just now.  Did you understand it?

A   Yes.

Q   Is there any reason you can't give truthful testimony today?

A   No.

Q   Is it important to you that you testify truthfully?

A   Yes.

Q   Is it important to you that your lawyers are always truthful to the court?

A   Yes.

Q   Do you have an understanding of whether your lawyers have always been truthful to the court in this case?

MR. CRAMER:  Objection, beyond the scope.

I'll allow her to answer.

A   Can you ask again, I'm sorry.

BY MR. HEINS:

Q   Do you have an understanding of whether your lawyers have always been truthful to the court in this case?

MR. CRAMER:  Objection, beyond the scope.

You may answer.

A   I believe so.

BY MR. HEINS:

Q   Are you familiar with the law firm Freedman Normand Friedland or FNF?

A   Yes, sir.

Q   Do you mind if I call them FNF?

A   Sounds good.

Q   Okay.  Do they represent you in this case?

A   Yes.

Q   Are familiar with the law firm Berger Montague?

A   Yes, I am.

Q   And do they represent you in this case?

A   Yes, sir.

Q   Are you familiar with the firm Gilbert Litigators & Counselors?

A   Yes.

Q   Do they represent you in this case?

A   I believe so.

Q   And do they represent other Plaintiffs in this case?

A   I'm not 100 percent sure, but I do believe so.

Q   Are there any other lawyers that you believe represent you in this case?

A   Not currently.

Q   Okay.  Is it understanding that on every occasion your lawyers have been truthful to the court?

MR. CRAMER:  Objection to form, beyond the scope.

You may answer.

A   I believe my lawyers have been truthful, yes.

BY MR. HEINS:

Q   Have you done anything to make sure your lawyers were being truthful to the court?

MR. CRAMER:  Objection, beyond the scope.

You may answer.

A   Not particularly besides read what they send me, so...

BY MR. HEINS:

Q   Okay.  Are you aware that in June of 2025 a lawyer at FNF submitted a letter to the judge in this case accusing FNF and Berger Montague and Gilbert Litigators of perpetrating what he called a fraud on the court?

MR. CRAMER:  Objection, beyond the scope.

You may answer yes or no.

A   I believe so.

BY MR. HEINS:

Q   When did you become aware of that?

MR. CRAMER:  Objection, beyond the scope.

I'm going to direct not to answer.

MR. HEINS:  As to when?

MR. CRAMER:  Yeah.  This is all beyond the scope.  What does this have to do with the selection of Molo --

MR. HEINS:  This deposition --

MR. CRAMER:  -- which is the subject matter of this deposition.

MR. HEINS:  This deposition is about how new counsel were identified and what role the Plaintiffs had in their selection.

I would think we're entitled to know how that compares to their role leading up to this

point.

MR. CRAMER: I disagree.

BY MR. HEINS:

Q   Okay. Were you aware that your counsel submitted declarations to the court stating that all counsel were performing work on a fully contingent basis in this case?

MR. CRAMER: Objection to form, beyond the scope.

You may answer yes or no.

A   Yes.

BY MR. HEINS:

Q   Were you aware that Gilbert Litigators had in fact received millions of dollars in outside financing?

MR. CRAMER: Objection to form, beyond the scope.

Direct not to answer.

BY MR. HEINS:

Q   Did you review the briefs that were filed in this case between June of 2025 and March of 2026 concerning your lawyers funding arrangements, billing practices, and representations to the court?

MR. CRAMER: Objection to form, beyond

the scope.

You may answer yes or no.

A   Can you ask one more time?  Apologies.

BY MR. HEINS:

Q   Yes.

Did you review the briefs that were filed in this case between June of 2025 and March of 2026 concerning your lawyers funding arrangements, billing practices, and representations to the court?

MR. CRAMER:  Objection to form, beyond the scope.

You may answer yes or no, if you know.

A   I'm not sure.

BY MR. HEINS:

Q   Okay.  Are you aware that on March 31st, 2026, the judge in this case issued a decision finding that your lawyers at FNF and Berger Montague had a quote "candor problem"?

MR. CRAMER:  Objection to form, beyond the scope.

You may answer yes or no.

A   Yes.

BY MR. HEINS:

Q   Did you do anything to prepare for

today's deposition?                                    01:50:16

A   Yes.                                               01:50:20

Q   What did you do to prepare for today's             01:50:22
deposition?                                            01:50:26

A   I met with counsel.                                01:50:26

Q   When?                                              01:50:28

A   I met with them this past week.                    01:50:33

Q   How many times?                                    01:50:37

A   Twice.                                             01:50:40

Q   For about how long each time?                      01:50:41

A   About an hour and a half and maybe 10              01:50:45
minutes.                                               01:50:50

Q   And when you said you met with counsel,            01:50:51
can you tell me who you met with?                      01:50:53

A   I met with Eric Cramer, Bob Litan,                 01:50:56
Richard Cipolla and some members of the MoloLamken     01:51:02
group.                                                 01:51:08

Q   Do you recall the names of the members of          01:51:09
the MoloLamken group that you met with?                01:51:10

A   Not 1,000 percent sure, Lauren.                    01:51:16

Q   Okay.                                              01:51:18

A   I don't know if I have the right.  Okay.           01:51:18

Q   And you don't recall any other names of            01:51:20
the folks at MoloLamken who you met with?              01:51:22

A   There were a lot of names just recently.           01:51:28

Not particularly, but I do know there was at least one other.

Q   Okay.  So to your recollection, in the two sessions that you had with your lawyers preparing for this deposition, there were two members of MoloLamken who were present?

MR. CRAMER:  Objection to form, misstates the testimony.

BY MR. HEINS:

Q   I don't mean to misstate your testimony. I'm just trying to understand how many people from MoloLamken were present?

MR. CRAMER:  You can rephrase.

BY MR. HEINS:

Q   How many people from MoloLamken were present?

A   One for certain, but there was possibly a second person on the line as well.

Q   Do you have an understanding of why there were attorneys from MoloLamken present?

A   Yes, because they're considering them for representing our class -- or representing us in -- yeah.

Q   Do you have an understanding of why new counsel are being brought in to this case?

A   I do.

Q   What is understanding?

A   Is that they are having to replace the Gilbert group.

Q   And when you say replace the Gilbert group, what do you mean by that?

A   I believe a judge has ordered a possible replacement of Gilbert & Associates.

Q   When did you become aware that your lawyers would be proposing new lawyers for this case?

A   I believe in early April.

Q   Okay.  Did you play any role in selecting who those lawyers would be?

A   I trusted my counsel on making these decisions.

Q   I understand.

But did you play any role in selecting who the lawyers would be?

MR. CRAMER:  Objection to form, what do you mean by role?

BY MR. HEINS:

Q   Did you participate in the process of selecting new lead -- new counsel?

A   I approved new counsel.

BRITTANY WEAVER                                    May 11, 2026
ANDREW CORZO vs BROWN UNIVERSITY                        15

Q   Did you interview new counsel?                01:53:43

A   No.                                           01:53:47

Q   And when you say you approved new             01:53:49
counsel, what do you mean by that?                01:53:52

A   I was given information on them and I was     01:53:55
guided by my counsel that this may be a new group 01:53:59
that will be representing us.                     01:54:04

Q   Are you aware that your lawyers               01:54:07
represented to the court that they interviewed 12 01:54:09
law firms to potentially serve as new lead counsel? 01:54:11

A   Yes.                                          01:54:16

Q   Did you participate in any interviews of      01:54:17
those firms?                                      01:54:19

A   No, sir.                                      01:54:20

Q   Do you know the names of any of those         01:54:21
firms?                                           01:54:24

A   I do not recall the names.                    01:54:25

Q   But you believe that you were told the        01:54:27
name at some point in time?                       01:54:29

A   I don't know about every 12, but a few of     01:54:32
them.                                            01:54:36

Q   Do you know what questions were asked of      01:54:40
the firms that interviewed to serve as counsel?   01:54:41

A   Not particularly.                             01:54:47

Q   Do you know generally?                        01:54:49

BRITTANY WEAVER                                    May 11, 2026
ANDREW CORZO vs BROWN UNIVERSITY                              16

A    Nope.

Q    When did you learn that MoloLamken was being proposed as lead counsel?

A    In the last few weeks.

Q    Had you heard of MoloLamken before they were proposed as new counsel?

A    No.

Q    Who decided that MoloLamken would be proposed as new counsel?

MR. CRAMER:  Objection to form, foundation.

BY MR. HEINS:

Q    Do you know who decided -- strike my prior question.

Do you know who decided that MoloLamken would be proposed as new counsel?

A    My counsel.

Q    Before you met with the lawyers at MoloLamken in the last week, had you ever spoken with anyone who was a member of MoloLamken?

A    No.

Q    Were you asked whether you agreed with MoloLamken serving as counsel in this case?

A    I was asked if I approve of them.

Q    When were you asked whether you approve

BRITTANY WEAVER
ANDREW CORZO vs BROWN UNIVERSITY

May 11, 2026
17

of them?

A   I am not 100 percent on the dates, but sometime in April.

Q   Would you say early April or late April or the middle, can ball park it for me?

A   Mid to late.

Q   Okay.  Did you ever ask any questions about MoloLamken serving as lead counsel?

A   No, I trusted my counsel.

Q   And did you decide you were comfortable with MoloLamken serving as counsel?

A   I do believe if they were -- if I was told that they were going to be the best fit that I trusted my counsel to make that decision.

Q   How did you decide that you were comfortable with MoloLamken serving as counsel in this case?

A   Advice from my counsel.

Q   Did you talk to anyone other than your counsel about MoloLamken?

A   No.

Q   Did you perform any research on MoloLamken on your own?

MR. CRAMER:  Objection to form as to research.

You may answer.

A   No.

BY MR. HEINS:

Q   Is MoloLamken going to be working for you in this case?

A   I believe so.

MR. CRAMER:  Object --

THE WITNESS:  Sorry.

MR. CRAMER:  That's fine.

BY MR. HEINS:

Q   What do you intend to do to supervise MoloLamken in this case?

A   I am not sure I'm a supervisor.

Q   Do you expect to supervise MoloLamken in this case?

A   I'm not sure of the role of supervisor.

Q   Do you expect that anyone will supervise MoloLamken in this case?

MR. CRAMER:  Objection to form to the extent it calls for a legal conclusion.

You may answer, if you understand the question?

A   Can you ask one more time?

BY MR. HEINS:

Q   Do you expect that anyone will supervise

MoloLamken in this case?

A  I believe all of the law firms have to work together.  I am not sure who would be in a supervisor role.

Q  Have you done anything to make sure that MoloLamken will be truthful to the court going forward?

A  I don't know if that's my role.  Not particularly.

Q  Do you recall being deposed on May 2nd, 2024?

A  Yes.

Q  Since that date have you spoken with Elizabeth Gilbert about this case?

A  I have not.

MR. HEINS:  Okay.  Those are all of my questions.

MR. CRAMER:  Thank you very much.

VIDEO TECHNICIAN:  All right.  No one else?

MR. CRAMER:  No one else.

VIDEO TECHNICIAN:  Okay.  This now concludes the video conference deposition of Brittany Tatiana Weaver.

And at this time we do ask all counsel to

stay connected briefly to provide the court reporter with your transcript and video orders.

Mr. Heins, do you need a copy of today's transcript and/or video?

MR. HEINS:  Yes, please, thank you.

VIDEO TECHNICIAN:  All right.  Mr. Cramer?

MR. HEINS:  And thank you, Ms. Weaver, for your time.

THE WITNESS:  Thank you.

MR. CRAMER:  Whatever we've ordered for the prior depositions we'll do again today.

So, yes, I think is the answer.

VIDEO TECHNICIAN:  Okay.

THE COURT REPORTER:  Okay.

VIDEO TECHNICIAN:  And Mr. Litan?

MR. CRAMER:  Mr. Litan's with -- we're all -- all the Plaintiffs serve together.

VIDEO TECHNICIAN:  Okay, gotcha.

All right.  This now -- I'm sorry.  With that we are going off the record on May 11th, 2026, at 2:01 Eastern time.

(Deposition concluded at 2:01 p.m.)

(Signature waived.)

STATE OF MICHIGAN    )

COUNTY OF BERRIEN    )


        Certificate of Notary Public

    I do hereby certify the witness, whose attached testimony was taken in the above matter via Zoom, was first duly sworn to tell the truth; the testimony contained herein was reduced to writing in the presence of the witness, by means of stenography; afterwards transcribed; and is a true and complete transcript of the testimony given.  I further certify that I am not connected by blood or marriage with any of the parties, their attorneys or agents, and that I am not interested directly, indirectly or financially in the matter of controversy.

    In witness whereof, I have hereunto set my hand this day at Berrien County, State of Michigan.

    I hereby set my hand this day, May 11th, 2026.




        _____

        Judith L. Leitz Moran, CSR 1479
        Michigan Certified Shorthand Reporter
        Notary Public, Berrien County, MI
        My Commission Expires: 9/19/2028