# EXHIBIT 5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,

     Plaintiffs,

     vs.

CIVIL ACTION FILE
NO. 22-cv-00125

BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,

     Defendants.

VIDEOTAPED ZOOM DEPOSITION OF
SIA HENRY

April 29, 2026
4:45 P.M. Eastern

Lee Ann Barnes, CCR-1852B, RPR, CRR, CRC

APPEARANCES OF COUNSEL

(All appearances via Zoom)

On behalf of Plaintiffs:

EDWARD NORMAND, ESQ.
FREEDMAN NORMAND FRIEDLAND
155 E 44th Street
Suite 915
New York, New York 10017
646-970-7513
tnormand@fnf.law

On behalf of Defendant University of Notre Dame du Lac:

SARAH F. KIRKPATRICK, ESQ.
WILLIAM DONNELLY, ESQ.
WILLIAMS & CONNOLLY LLP
680 Maine Ave. S.W.
Washington, DC 20024
202-434-5958
skirkpatrick@wc.com
wdonnelly@wc.com

On behalf of Defendant Georgetown University:

KATHERINE F. ARAGON, ESQ.
MAYER BROWN
1999 K Street, NW
Washington, DC  20006-1101
202-263-3000
karagon@mayerbrown.com

APPEARANCES OF COUNSEL

On behalf of Defendant The Trustees of the University of Pennsylvania:

BECKY MAZ, ESQ.
WILMER HALE
2100 Pennsylvania Avenue NW
Washington, DC  20037
202-663-6000
becky.maz@wilmerhale.com

Also Present:

Angela Lyons, Videographer

SIA HENRY
ANDREW CORZO vs BROWN UNIVERSITY

April 29, 2026
4

INDEX OF EXAMINATION

WITNESS:  SIA HENRY

EXAMINATION                     PAGE

By Ms. Kirkpatrick                6

       (No exhibits were introduced.)

SIA HENRY
ANDREW CORZO vs BROWN UNIVERSITY

Deposition of SIA HENRY
April 29, 2026

(Reporter disclosure made pursuant to Article 8.B of the Rules and Regulations of the Board of Court Reporting of the Judicial Council of Georgia.)

VIDEOGRAPHER:  Good afternoon.  We are now on the record.  The time is 4:45 p.m. Eastern on April 29, 2026.

This begins the videoconference deposition of Sia Henry taken in the matter of Frank Carbone, et al., versus Brown University, et al., filed in the United States District Court, Northern District of Illinois, Eastern Division.  Case Number 1:22-CV-00125.

My name's Angela Lyons.  I'll be your videographer today.

The court reporter is Lee Ann Barnes.

Will all counsel please introduce yourselves and state whom they represent after which the reporter will swear in our witness.

MR. NORMAND:  Ted Normand for the witness.

MS. KIRKPATRICK:  Sorry, Ted.

Sarah Kirkpatrick, Williams and Connolly, on behalf of the University of Notre Dame.

SIA HENRY, having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY-MS. KIRKPATRICK:

Q.  Good afternoon, Ms. Henry.

Could you start by telling me what you did to prepare for today's deposition?

A.  Sure.  I had a brief prep call with our counsel.

Q.  And who was that?

A.  Richard Cipolla and Edward Normand, and then the -- the new folks from MoloLamken.

Q.  Okay.  Who from MoloLamken was on that call?

A.  Matt Gold and Lindsay, I can't remember her last name.

Q.  Okay.  When did that take place?

A.  About maybe an hour ago.

Q.  And that was the extent of your preparation for today's deposition?

A.  Yes, for this dep- -- for this deposition, yes.

Q.  When did you first learn about -- that this deposition would be taking place?

A.  I believe maybe a week or two ago.

Q. Okay. To the best of your understanding, what attorneys are currently representing you personally as your counsel in this litigation?

A. There's three different law firms: Burger, FNF, and then MoloLamken is being proposed as the new lead counsel.

Q. And do you have signed engagement letters with each of those firms?

A. I --

MR. NORMAND: Let me object to saying that this is already beyond the scope, but the witness may answer.

THE WITNESS: I believe I have signed engagement letters with two of them.

BY MS. KIRKPATRICK:

Q. And which two are those?

A. Berger and FNF.

Q. Have you received updates over the course of this litigation from your counsel about the status and ongoing events in the litigation?

A. Yes.

Q. Okay. You mentioned at your first deposition that you were having somewhat regular calls with Mr. Bach-y-Rita and Mr. Cipolla from the FNF law firm; is that right?

A.  Yes.

MR. NORMAND:  Let me object as this is beyond the scope.

The witness can answer.

THE WITNESS:  Yes, that is correct.

BY MS. KIRKPATRICK:

Q.  Have you continued to receive those types of updates since your September 2023 deposition?

A.  Yes.

Q.  You mentioned that one of the law firms that you understand to be representing you is the MoloLamken law firm; is that right?

MR. NORMAND:  Objection.  Mischaracterizes her testimony.  Beyond the scope.

The witness can answer.

THE WITNESS:  I said MoloLamken is being proposed as the new lead counsel.

BY MS. KIRKPATRICK:

Q.  So your understanding is that they don't currently represent you but they may in the future?

A.  Correct.

Q.  Okay.  Can you tell me what you know about Mr. Molo and the MoloLamken law firm?

A.  Sure.  So they are a boutique litigation firm.  They have, I believe, about 50 or so

attorneys on staff.  They have extensive experience doing antitrust litigation and -- and other trial experience.

Q.   When did you first learn about Mr. Molo and his law firm?

A.   I can't recall a specific date.  At least a couple weeks ago.

Q.   Was it more than a couple weeks ago or was it within the last, roughly, month?

A.   I honestly don't know.  I just moved.

Q.   Okay.  When you learned about Molo's potential role in this case, had you heard of either Mr. Molo or the Molo Law Firm?

A.   Prior to being informed of their potential involvement in this case?

Q.   Yes.

A.   No.

Q.   Okay.  So that was the first time you learned about that law firm and those lawyers?

A.   Yes.

Q.   Okay.  When did you learn that there would be new lawyers potentially brought in to represent you and/or the potential class in this case?

A.   Again, I can't recall a specific date.

Q.   Okay.  Putting aside a specific date,

SIA HENRY                                          April 29, 2026
ANDREW CORZO vs BROWN UNIVERSITY                               10

generally, ballpark, when did you learn about that?

A.   Probably at least a month or so ago.
Maybe longer.

Q.   Do you have an understanding as to why new
counsel are being brought in to serve as lead
counsel for plaintiffs in this case?

A.   Yes.

MR. NORMAND:  Objection.  Beyond the
scope.

The witness can answer.

BY MS. KIRKPATRICK:

Q.   What's your understanding?

A.   Yeah.  So there was a discrepancy between
the payment that different law firms would be
receiving, specifically Gilbert's law firm.  And so
the attorney -- not the attorney.  The -- the judge
presiding over this case decided that they would
like to see Gilbert's firm no longer be involved in
the representation and -- and for there to be a new
lead law firm.

Q.   When I asked you earlier about the law
firms representing you, you did not mention
Mr. Gilbert's law firm.

Is it your understanding that Mr. Gilbert
previously represented you but no longer does?

MR. NORMAND:  Objection.  Beyond the scope.

The witness can answer.

THE WITNESS:  Yes.

BY MS. KIRKPATRICK:

Q.  Okay.  And what is the basis for your -- what's your understanding as to why Mr. Gilbert and his firm no longer represent you?

A.  I believe I just answered that.

Q.  So it's the same -- the same discrepancy that you referred to?

A.  Correct.

Q.  Okay.  Have you read a copy of the Court's March 31, 2026, decision in which he -- he, the Court in this case -- raised the prospect of bringing in new lead counsel for plaintiffs?

MR. NORMAND:  Objection.  Beyond the scope.

The witness can answer.

THE WITNESS:  I believe I skimmed part of it.  Yeah, I believe I skimmed part of it.

BY MS. KIRKPATRICK:

Q.  Okay.  Did you select which parts you were skimming or did someone assist you and point you to particular parts of it?

A.   No.  I --

MR. NORMAND:  Objection.  That does raise attorney-client privilege and attorney work product.

The witness can answer yes or no.

THE WITNESS:  I selected which parts I skimmed.

BY MS. KIRKPATRICK:

Q.   When did you receive a copy of that decision?

A.   I can't recall the exact date.

Q.   Was it before you learned about this deposition?

A.   Yes.

Q.   Okay.  Was it before you learned about Mr. Molo being proposed as new counsel?

A.   I can't recall.

Q.   Okay.  As you sit here today, are you aware that in October of 2023, the FNF and Berger law firms accused the Gilbert law firm of certain inflation of hours and inflation of fees?

MR. NORMAND:  Objection.  Beyond the scope.

I'm going to instruct the witness not to answer that question given that we're now a

dozen times past the scope of the deposition.

BY MS. KIRKPATRICK:

Q. Okay. Are you aware as you sit here today that in June 2025, Mr. Bach-y-Rita submitted a letter to the Court in this case accusing all of the counsel in the case of perpetrating a fraud on the Court?

MR. NORMAND: Same objection. Same instruction.

BY MS. KIRKPATRICK:

Q. Ms. Henry, are you going to answer the question?

A. No.

Q. It's a factual question as to whether or not you're aware of that.

MR. NORMAND: Same objection. Same instruction. Beyond the scope. Harassment.

BY MS. KIRKPATRICK:

Q. Okay. Having read at least some portions of the March 31, 2026, decision, are you aware that the Court in this case made a finding that Mr. Gilbert had submitted various affidavits to the Court relating to fee arrangements that were affirmatively misleading?

MR. NORMAND: Same objection.

You can answer that one.

THE WITNESS:  I believe I -- that has been my understanding.

BY MS. KIRKPATRICK:

Q.   Had you reviewed any of those filings that were at issue in the Court's decision prior to the time that they were filed?

A.   No.

Q.   Okay.  Have you reviewed them subsequent to their having been initially filed?

A.   No, I don't believe I have.

Q.   Are you aware that that same decision by the Court described other counsel in this case as having a -- a candor problem?

MR. NORMAND:  Same objection.

You can answer.

THE WITNESS:  No, I'm not aware of that.

BY MS. KIRKPATRICK:

Q.   Are you aware that the Court in that same decision said that it would not certify a class in this case absent the appointment of new lead counsel for plaintiffs?

MR. NORMAND:  Same objection.

You can answer that.

THE WITNESS:  I don't recall the exact

wording of the parts that I read.

BY MS. KIRKPATRICK:

Q.   Okay.  Can you describe for me your involvement in the selection of Mr. Molo and his law firm as potential new lead counsel for plaintiffs?

A.   Sure.  So one of the attorneys -- so Richard Cipolla had reached out to me, like I said, several weeks ago both -- you know, with -- in terms of giving regular updates, he reached out both before and after Gilbert's -- Gilbert's firm stepped down.

MR. NORMAND:  And let me just caution the witness to not speak to the substance of the communications.  The witness can speak to her understanding of facts following those communications.

THE WITNESS:  Sure.  Thanks, Ed.

So, yeah, so I understood the -- the vetting process.  I was given information, and I approved MoloLamken as a new lead counsel.

BY MS. KIRKPATRICK:

Q.   Were you informed about the vetting process before it took place or at the same time that you were given the proposal of who the new lead counsel would be?

A.  I believe it was both before, during, and after.

Q.  Okay.  Did you have any personal involvement in the vetting process?

A.  Not the actual vetting process, no.

Q.  Okay.  So am I understanding correctly that you received some form of an update from Mr. Cipolla before that vetting process began, and then your next involvement was an update also from him at the conclusion of that process; is that correct?

A.  I believe I received updates, like I said, both before, during, and after the vetting process.

Q.  Did you meet or speak with any potential candidates to serve as lead counsel for plaintiffs in the course of that process?

A.  No.

Q.  Did you speak with anyone from the MoloLamken law firm before your preparation for this deposition today?

A.  No.

Q.  Did you request any information or materials related to Mr. Molo and his law firm in the course of your approval of him and his firm as new potential lead counsel?

MR. NORMAND:  It does implicate attorney-client privilege.

You can answer yes or no.

THE WITNESS:  Did I request that information of --

BY MS. KIRKPATRICK:

Q.  Did you request either information or materials from the other counsel about Mr. Molo and his firm?

A.  I did not request them, no.

Q.  Okay.  Were you presented with any other candidates to serve as potential lead counsel other than Mr. Molo?

MR. NORMAND:  It implicates attorney-client privilege.

You can answer yes or no.

THE WITNESS:  I do not believe so.

BY MS. KIRKPATRICK:

Q.  So the -- you were told there has been a vetting process, and Mr. Molo is the nominee or the candidate that we're moving forward with; is that correct?

MR. NORMAND:  Objection.  That implicates attorney-client privilege.

You can speak to your understanding.

THE WITNESS:  I don't recall the exact wording.

BY MS. KIRKPATRICK:

Q.  Did you provide input or feedback or any response, and I'm not asking for the substance of it, but did you provide any substantive input on the selection of Mr. Molo before he was actually selected?

A.  I --

MR. NORMAND:  Objection to form.

I'm not sure what that question meant.

THE WITNESS:  I'm not sure either.

BY MS. KIRKPATRICK:

Q.  Were you -- were you asked your opinion or preference from a menu of candidates?

MR. NORMAND:  Objection.  Implicates attorney-client privilege.

BY MS. KIRKPATRICK:

Q.  I'm not asking for the substance of what it was, but did you -- were you given a slate of candidates and asked for your views?

A.  No.

MR. NORMAND:  You can answer yes or no.

BY MS. KIRKPATRICK:

Q.  Okay.  At what point in time did you --

were you asked for your approval of Mr. Molo to serve as new lead counsel?

A. Again, I can't recall specific dates. I believe it was several weeks ago.

Q. Okay. What's the nature of the information that you were -- the factual information you were provided about Mr. Molo and his firm in order for you to approve them?

MR. NORMAND: Implicates attorney-client privilege.

You can speak to your understanding of the background of the Molo firm following the communication at issue.

THE WITNESS: I don't understand the question, if you're not asking for the substance of the communication.

BY MS. KIRKPATRICK:

Q. I'm -- I'm asking for what factual information you viewed as the basis for your approval.

What -- what did you know that satisfied you that they would be good and appropriate new lead counsel?

A. To me it was mainly their -- their track record and their experience especially in this area

SIA HENRY
ANDREW CORZO vs BROWN UNIVERSITY

April 29, 2026
20

of law.

Q.   And have you taken any steps to this point to monitor, supervise, investigate, any of the counsel -- current, prior, or future -- in terms of their ability to resolve the candor problem addressed by the Court in its March 2026 ruling?

MR. NORMAND:  Objection.  Beyond the scope.

I'm going to instruct the witness not to answer, and I think we're out of time.

MS. KIRKPATRICK:  All right.  Well, I will maintain my disagreement with your objection, but that's fine.

MR. NORMAND:  Thanks, folks.

VIDEOGRAPHER:  All right.  Going off video record at 4:02 p.m. [sic] Eastern time.

(Deposition concluded at 5:02 p.m. Eastern.)

(Pursuant to Rule 30(e) of the Federal Rules of Civil Procedure and/or O.C.G.A. 9-11-30(e), signature of the witness has been reserved.)

C E R T I F I C A T E

STATE OF GEORGIA:

COUNTY OF FULTON:

I hereby certify that the foregoing transcript was taken down, as stated in the caption, and the questions and answers thereto were reduced to typewriting under my direction; that the foregoing pages represent a true, complete, and correct transcript of the evidence given upon said hearing, and I further certify that I am not of kin or counsel to the parties in the case; am not in the regular employ of counsel for any of said parties; nor am I in anywise interested in the result of said case.

LEE ANN BARNES, CCR B-1852, RPR, CRR, CRC



COURT REPORTER DISCLOSURE

Pursuant to Article 10.B. of the Rules and Regulations of the Board of Court Reporting of the Judicial Council of Georgia which states: "Each court reporter shall tender a disclosure form at the time of the taking of the deposition stating the arrangements made for the reporting services of the certified court reporter, by the certified court reporter, the court reporter's employer, or the referral source for the deposition, with any party to the litigation, counsel to the parties or other entity. Such form shall be attached to the deposition transcript," I make the following disclosure:

I am a Georgia Certified Court Reporter. I am here as a representative of Esquire Deposition Solutions. Esquire Deposition Solutions was contacted to provide court reporting services for the deposition. Esquire Deposition Solutions will not be taking this deposition under any contract that is prohibited by O.C.G.A. 9-11-28 (c).

Esquire Deposition Solutions has no contract/agreement to provide reporting services with any party to the case, any counsel in the case, or any reporter or reporting agency from whom a referral might have been made to cover this deposition. Esquire Deposition Solutions will charge its usual and customary rates to all parties in the case, and a financial discount will not be given to any party to this litigation.

LEE ANN BARNES, CCR B-1852B, RPR, CRR, CRC

### DEPOSITION ERRATA SHEET

WITNESS NAME:  Sia Henry

I, the undersigned, do hereby certify that I have read the transcript of my testimony, and that

_____ There are no changes noted.

_____ The following changes are noted:

Pursuant to Rule 30(7)(e) of the Federal Rules of Civil Procedure and/or OCGA 9-11-30(e), any changes in form or substance which you desire to make to your testimony shall be entered upon the deposition with a statement of the reasons given for making them.  To assist you in making any such corrections, please use the form below.  If additional pages are necessary, please furnish same and attach.

Page _____Line _____Change to:_____
_____
Reason for change:_____

Page _____Line _____Change to:_____
_____
Reason for change:_____

Page _____Line _____Change to:_____
_____
Reason for change:_____

Page _____Line _____Change to:_____
_____
Reason for change:_____

Page _____Line _____Change to:_____
_____
Reason for change:_____

Page _____Line _____Change to:_____
_____
Reason for change:_____

SIA HENRY                                                          April 29, 2026
ANDREW CORZO vs BROWN UNIVERSITY                                          24

Page _____Line _____Change to:_____

_____

Reason for change:_____

Page _____Line _____Change to:_____

_____

Reason for change:_____

Page _____Line _____Change to:_____

_____

Reason for change:_____

Page _____Line _____Change to:_____

_____

Reason for change:_____

Page _____Line _____Change to:_____

_____

Reason for change:_____

Page _____Line _____Change to:_____

_____

Reason for change:_____

Page _____Line _____Change to:_____

_____

Reason for change:_____

Page _____Line _____Change to:_____

_____

Reason for change:_____

Page _____Line _____Change to:_____

_____

Reason for change:_____


        _____

        DEPONENT'S SIGNATURE

Sworn to and subscribed before me this _____ day

of _____, 20__.


_____

Notary Public

My commission expires_____