# EXHIBIT 6

Case: 1:22-cv-00125 Document #: 1269-6 Filed: 05/15/26 Page 1 of 23 PageID #:59872

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANDREW CORZO, SIA HENRY,      )
ALEXANDER LEO-GUERRA, MICHAEL  )
MAERLENDER, BRANDON PIYEVSKY,  )
BENJAMIN SHUMATE, BRITTANY     )
TATIANA WEAVER, and CAMERON    )
WILLIAMS, individually and on  )
behalf of all others similarly )
situated,                      )
                               )
           Plaintiffs, )
                               )
v.                     )  Case No. 1:22-cv-00125
                               )
BROWN UNIVERSITY, CALIFORNIA   )
INSTITUTE OF TECHNOLOGY,       )
UNIVERSITY OF CHICAGO, THE     )
TRUSTEES OF COLUMBIA           )
UNIVERSITY IN THE CITY OF NEW  )
YORK, CORNELL UNIVERSITY,      )
TRUSTEES OF DARTMOUTH COLLEGE, )
DUKE UNIVERSITY, EMORY         )
UNIVERSITY, GEORGETOWN         )
UNIVERSITY, THE JOHNS HOPKINS  )
UNIVERSITY, MASSACHUSETTS      )   ** CONFIDENTIAL **
INSTITUTE OF TECHNOLOGY,       )
NORTHWESTERN UNIVERSITY,       )
UNIVERSITY OF NOTRE DAME DU    )
LAC, THE TRUSTEES OF THE       )
UNIVERSITY OF PENNSYLVANIA,    )
WILLIAM MARSH RICE UNIVERSITY, )
VANDERBILT UNIVERSITY, and     )
YALE UNIVERSITY,               )
                               )
           Defendants. )
_____ )


VIDEOCONFERENCE VIDEOTAPED DEPOSITION
OF
ALEXANDER LEO-GUERRA
Thursday, April 30, 2026
(Taken virtually by Defendants)

Reported by:  Christine A. Taylor, RPR
Job No.:  J14744971

REMOTE APPEARANCES:


Representing the Plaintiffs:

     FREEDMAN NORMAND FRIEDLAND LLP
     BY:  RICHARD CIPOLLA, ESQ.
       225 Franklin Street, 26th Floor
     Boston, Massachusetts  02110
       617.374.3700
       rcipolla@fnf.law


Representing the Defendant The Trustees of the
University of Pennsylvania:

     WILMER CUTLER PICKERING HALE and DORR LLP
     BY:  DAVID GRINGER, ESQ.
          BECKY MAZ, ESQ. (Washington, DC)
     7 World Trade Center
       250 Greenwich Street
     New York, New York  10007
       212.937.7294
       david.gringer@wilmerhale.com
       becky.maz@wilmerhale.com

Representing the Defendant University of Notre
Dame Du Lac:

     WILLIAMS CONNOLLY LLP
     BY:  SARAH KIRKPATRICK, ESQ.
          WILLIAM DONNELLY, ESQ.
     680 Maine Avenue SW
       Washington, DC  20024
     202.434.5000
       skirkpatrick@wc.com
       wdonnelly@wc.com



          (continued)

Representing the Defendant Georgetown University:

   MAYER BROWN LLP
  BY:  KATHERINE F. ARAGON, ESQ.
    1999 K Street, NW
    Washington, DC 20006
     202.263.3000
    karagon@mayerbrown.com


Also Present:

  Juliana Ardila, Videographer

      On April 30, 2026, commencing at 5:01 p.m., the videconference videotaped deposition of ALEXANDER LEO-GUERRA was taken remotely via Zoom pursuant to notice and pursuant to the Federal Rules of Civil Procedure, on behalf of the Defendants.

ALEXANDER LEO-GUERRA  Confidential                    April 30, 2026
ANDREW CORZO vs BROWN UNIVERSITY                              4

C O N T E N T S

PAGE

EXAMINATION BY MR. GRINGER                    6

* * *

E X H I B I T S

(No exhibits were marked.)

P R O C E E D I N G S

* * *

THE VIDEOGRAPHER:  Good afternoon.

We are now on the record.

The time is now 5:01 p.m. on April 30th, 2026.

This begins the video-recorded deposition of Alexander Leo-Guerra, taken in the matter of Andrew Corzo, et al., versus Brown University, et al., filed in the United States District Court, Northern Division.  Case Number of which is 1:22-cv-00125.

The videographer today is Juliana Ardila.  The court reporter today is Christine Taylor.  We are both representing Esquire Deposition Solutions.

All counsel will be recorded on the stenographic record.

Will the court reporter please swear in the witness.

* * *

ALEXANDER LEO-GUERRA, having first been duly sworn, was examined and testified as follows:

* * *

EXAMINATION

BY MR. GRINGER:

Q.   Good afternoon, Mr. Leo-Guerra.  My name is David Gringer, I represent the University of Pennsylvania in this case.  I did not take your initial deposition, but I was there for some of it.  Good to see you again.

You just took an oath to tell the truth in this deposition.  Did you understand that oath?

A.   I did.

Q.   And I -- is it important to you that you testify truthfully in this case?

A.   Yes.

Q.   And is it important to you that your lawyers are always truthful to the court as well?

A.   Yes.

Q.   Do you have an understanding as to whether your lawyers have always been truthful to the court in this case?

MR. CIPOLLA:  Objection.  Outside the scope.

You may answer.

BY MR. GRINGER:

Q.  You can answer.

A.  Oh.  Yes.

Q.  And it's your understanding that on every occasion, your lawyers have been truthful to the court?

A.  To the best of my knowledge, yes.

Q.  Have you done anything in this case to make sure that your lawyers are being truthful to the court?

A.  I have not.  I always assume that they have been.

Q.  But you haven't personally done anything to make sure that they're being truthful; is that correct?

A.  No.

Q.  Did you do anything to prepare for your deposition today?

A.  Yes.

Q.  What did you do to prepare for your deposition today?

A.  I had a conversation with Richard to understand what to expect.

Q.  Did you do anything else to prepare for your deposition today?

A.  I did not.

Q.  When you say you had a conversation with Richard, is that Mr. Cipolla, who's defending your deposition today?

A.  That's correct.

Q.  When did you have that conversation with Mr. Cipolla?

A.  Earlier today.

Q.  Do you recall what time?

A.  It was around, I believe, 2:00 p.m.

Q.  Was it over Zoom?

A.  It was.

Q.  Did anyone else besides Mr. Cipolla attend the session you and he had to prepare for your deposition today?

A.  Yes.

Q.  Who besides Mr. Cipolla attended?

A.  I believe it was an individual named Matt Gold.

Q.  Matt Gold.  Who is Matt Gold?

A.  Matt Gold represents Molo -- MoloLamken.

Q.  Before today, had you met Mr. Gold?

A.  I did not.

Q.  Is Mr. Gold your lawyer?

A.  He is not.

ALEXANDER LEO-GUERRA  Confidential                    April 30, 2026
ANDREW CORZO vs BROWN UNIVERSITY                          9

Q.  So then can you tell me what Mr. Cipolla told you in your depo prep session this morning -- this afternoon?

MR. CIPOLLA:  Objection.  Calls for privileged information.

I direct the witness not to answer.

MR. GRINGER:  On what grounds?

MR. CIPOLLA:  It's privileged.  It was work product.  You know that.  It was a prep session with counsel, David.

MR. GRINGER:  Yeah.  And you had someone who wasn't his counsel present.  So it's not privileged.

BY MR. GRINGER:

Q.  Answer my question, Mr. Leo-Guerra.

MR. CIPOLLA:  I'm directing the witness not to answer the question.

MR. GRINGER:  Okay.  All right.  Well, we'll have to raise that issue to the court, since you had privilege rule --

BY MR. GRINGER:

Q.  So it's your understanding that Mr. Gold is not your lawyer; is that correct?

MR. CIPOLLA:  Objection.  Calls for legal conclusion.

BY MR. GRINGER:

Q.  Have you hired Mr. Gold or the MoloLamken firm to represent you in this case?

MR. CIPOLLA:  Objection.  Calls for legal conclusion.

You may answer.

THE WITNESS:  I have not.

BY MR. GRINGER:

Q.  Are you familiar with a lawyer named Bob Gilbert?

A.  I believe so.

Q.  And are you familiar with the law firm that Mr. Gilbert is the head of?

A.  Yes.

Q.  At any point, was -- had you hired Mr. Gilbert and his law firm to represent you in this case?

A.  I had not.

Q.  Do you have an understanding of whether Mr. Gilbert still represents any of the plaintiffs in this case?

A.  I understand that he no longer does.

Q.  And do you have an understanding of why Mr. Gilbert no longer represents any of the plaintiffs in this case?

A.  I do.

Q.  What is that understanding?

A.  I believe that the court found that Gilbert misrepresented how funding was being applied to the case.

Q.  How did you learn that Mr. Gilbert no longer represents any of the plaintiffs in this case?

A.  Through messaging with Richard and the team.

Q.  When you say "the team," what do you mean?

A.  And those that were a part of Freedman Normand Friedland.

Q.  Did you know -- when did you learn that Mr. Gilbert was no longer part of the case?

A.  It was a few weeks ago.

Q.  Did you have any discussions -- well, strike that.

Did you have an understanding that new lead counsel was going to be proposed to the court?

A.  I did.

Q.  When did you get that understanding?

A.  It was also a few weeks ago.

Q.   And same way, from Mr. Cipolla?

A.   Yes.

Q.   Did you play any role in who -- in selecting who the new lead counsel would be?

A.   I did not.

Q.   Your lawyers represented to the court that -- that they interviewed 12 different law firms to serve as lead counsel for the class in this case.

How many of those interviews did you participate in?

A.   I did not participate in any.

Q.   Do you know the names of any of the law firms that were interviewed to serve as lead counsel?

A.   Not off the top of my head.

Q.   Have you ever been -- has that ever been shared with you, the names of the other law firms that were interviewed to serve as lead counsel?

A.   I can't recall --

MR. CIPOLLA:  I object.  Objection to the extent that it calls for privileged communications.

BY MR. GRINGER:

Q.  Do you know what questions were asked of the firms that -- that ostensibly interviewed to serve as lead counsel?

MR. CIPOLLA:  I'm going to caution the witness to answer the question to the best of his ability without revealing any contents of privileged conversations.

THE WITNESS:  I cannot recall.

BY MR. GRINGER:

Q.  Who decided that the firm MoloLamken would be proposed as lead counsel in the case?

A.  I'm not certain who the deciding individual or party was.

Q.  Were you one of the individuals who decided that MoloLamken would serve as lead counsel in the case?

A.  I was not.

Q.  Before today, had you ever spoken with anyone who was a member of the law firm MoloLamken?

A.  I have not.

Q.  Were you asked whether you agreed with MoloLamken serving as lead counsel before they were proposed to be lead counsel with the court?

A.  I was.

Q.  When were you asked?

A.  I believe it was within the past few weeks.

Q.  Who asked you that?

A.  Richard.

Q.  Did you ask any questions about MoloLamken?

MR. CIPOLLA:  Object.  Privileged. Calls for privileged communications.

Just answer yes or no, to the best of your ability.

THE WITNESS:  Could you repeat the question?

BY MR. GRINGER:

Q.  Sure.  Did you ask any questions about MoloLamken serving as lead counsel?

A.  I did not.

Q.  How did you decide to say that you were -- well, let me ask.

Did you say you were comfortable with MoloLamken serving as lead counsel?

A.  I did.

Q.  How did you decide you were comfortable with MoloLamken serving as lead

counsel?

A.  I understood -- I did research on their history, and believed that they were a good fit to represent the class.

Q.  Tell me about the research you did about -- into MoloLamken.

A.  It was basic Google searches and understanding their history and past performance.

Q.  So about how long did you spend Google searching MoloLamken?

A.  Not very long.  A few minutes.

Q.  A few minutes.

Can you tell me the search you ran?

A.  I can't recall the exact search.  I know that --

Q.  Approximately.

A.  -- I Googled MoloLamken and looked at their website and understood a little bit more about their history.

Q.  Did you seek out any independent information about MoloLamken?

A.  Not -- what do you mean by "independent"?

Q.  Anything.  Did you seek out -- did you review any information about MoloLamken that

didn't come from MoloLamken itself?

A.  I did not.

Q.  Do you know who Elon Musk is?

MR. CIPOLLA:  Objection.  Scope.

MR. GRINGER:  Scope will become apparent.

BY MR. GRINGER:

Q.  Do you know who Elon Musk is?

A.  Yes.

Q.  Do you know who Steven Molo is?

A.  I don't believe so.  Not -- well, not beyond just his name attached to this case.

Q.  Do you understand whether Mr. Lamken is going to be playing any role in this case?

A.  I have not done any research to understand what his exact role will be.

Q.  But you expect Mr. Lamken will be involved in the case too?

MR. CIPOLLA:  Objection. Misrepresents testimony.

BY MR. GRINGER:

Q.  I'm asking.  Do you believe Mr. Lamken will be involved in this case?

A.  I'm not sure.

Q.  Do you believe Mr. Molo will be

involved in this case?

A.  I'm not sure.

Q.  Is MoloLamken going to be working for you in this case?

A.  I believe they'll be working in concert with Richard and the FNF team.

Q.  Okay.  My question, though -- I appreciate that.

My question is whether you understand that MoloLamken will work for you in this case?

A.  I believe they will.

Q.  And what do you intend to do to supervise MoloLamken in this case?

MR. CIPOLLA:  Objection.  Scope.

You may answer.

THE WITNESS:  I don't intend there to be much supervision at all outside of working in concert with Richard and the FNF team.

BY MR. GRINGER:

Q.  So you're going to be counting on Richard, Mr. Cipolla, and the FNF team, to work in concert with MoloLamken and supervise their work; is that right?

MR. CIPOLLA:  Objection.  Same

objections.

You may answer.

THE WITNESS:  If they decided that's the best way forward, yes.

BY MR. GRINGER:

Q.  Now, you mentioned to me that you found out that Mr. Gilbert -- that the court found Mr. Gilbert had made some misrepresentations about his billing.  Do you -- to the court.

Do you intend to do anything to make sure that your lawyers don't make further misrepresentations to the court for the duration of this case?

MR. CIPOLLA:  Objection.  Outside the scope.

I'm going to direct Alec -- you not to answer that question.  It's outside the scope.

MR. GRINGER:  Why is it outside the scope?

MR. CIPOLLA:  Because it has nothing to do with his role in selecting MoloLamken as a firm.

BY MR. GRINGER:

Q.  Did you do anything to make sure that MoloLamken would be truthful to the court on a going-forward basis in this case?

A.  I trust that they will.

Q.  And what's the reason you trust that they will?

A.  I believe they were selected through a proper vetting process.

Q.  Any other reasons?

A.  I trust that the team has made the right decision.

Q.  Do you have a view -- and even though that's the same team that the court also found could have stopped Mr. Gilbert's misrepresentations but did not?

A.  I have no perspective or opinion on the matter.

MR. CIPOLLA:  I believe you're out of time, David.

MR. GRINGER:  I have a minute.  But thank you.

BY MR. GRINGER:

Q.  Are you aware -- do you know who Eric Kramer is?

A.  I don't believe so.

ALEXANDER LEO-GUERRA  Confidential
ANDREW CORZO vs BROWN UNIVERSITY

April 30, 2026
20

Q.   Do you know who Peter Bach-y-Rita is?

A.   I do.

MR. CIPOLLA:  All right.  You're definitely out of time now, David.  This deposition is over.

MR. GRINGER:  No, I have 45 seconds.

MR. CIPOLLA:  No.  My stopwatch says 15 minutes.

MR. GRINGER:  No.  My stopwatch has 14 minutes and 20 seconds.  You're wasting my time.

MR. CIPOLLA:  All right.  I'll give you 20 more seconds.

MR. GRINGER:  40 more seconds.

BY MR. GRINGER:

Q.   Do you believe that the class would be impacted in this case if Mr. Kramer and his law firm could no longer work on it?

A.   I'm not sure what the impact would be.

MR. GRINGER:  Thank you, Mr. Leo-Guerra, for your time.  I appreciate it.

THE VIDEOGRAPHER:  Would you like us to go off the record, Counsel?

MR. CIPOLLA:  I have no questions.

Yes, we're done.  Thank you, Mr. Leo-Guerra.

THE VIDEOGRAPHER:  The time is 5:17 p.m. and this concludes today's deposition.

(Read and sign not reserved.)

- - -

(Deposition concluded at 5:17 p.m.)

- - -

CERTIFICATE OF REPORTER

I, Christine A. Taylor, Certified Court Reporter within and for the State of Georgia, do hereby certify:

That the foregoing deposition was taken before me on the date and at the time and location stated on Page 1 of this transcript; that the deponent was duly sworn to testify to the truth, the whole truth and nothing but the truth; that the testimony of the deponent and all objections made at the time of the examination were recorded stenographically by me and were thereafter transcribed; that the foregoing deposition as typed is a true, accurate and complete record of the testimony of the deponent and of all objections made at the time of the examination to the best of my ability.

I further certify that I am neither related to nor counsel for any party to the cause pending or interested in the events thereof. Witness my hand, this 30th of April, 2026.

_____

Christine A. Taylor, RPR
Georgia CCR-4736