# EXHIBIT 7

CAMERON WILLIAMS  Confidential
ANDREW CORZO vs BROWN UNIVERSITY

April 30, 2026

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANDREW CORZO, SIA HENRY,      )
ALEXANDER LEO-GUERRA, MICHAEL  )
MAERLENDER, BRANDON PIYEVSKY,  )
BENJAMIN SHUMATE, BRITTANY     )
TATIANA WEAVER, and CAMERON    )
WILLIAMS, individually and on  )
behalf of all others similarly )
situated,                )
                   )
            Plaintiffs, )
                   )
v.                  )  Case No. 1:22-cv-00125
                   )
BROWN UNIVERSITY, CALIFORNIA   )
INSTITUTE OF TECHNOLOGY,       )
UNIVERSITY OF CHICAGO, THE     )
TRUSTEES OF COLUMBIA           )
UNIVERSITY IN THE CITY OF NEW  )
YORK, CORNELL UNIVERSITY,      )
TRUSTEES OF DARTMOUTH COLLEGE, )
DUKE UNIVERSITY, EMORY         )
UNIVERSITY, GEORGETOWN         )
UNIVERSITY, THE JOHNS HOPKINS  )
UNIVERSITY, MASSACHUSETTS      )   ** CONFIDENTIAL **
INSTITUTE OF TECHNOLOGY,       )
NORTHWESTERN UNIVERSITY,       )
UNIVERSITY OF NOTRE DAME DU    )
LAC, THE TRUSTEES OF THE       )
UNIVERSITY OF PENNSYLVANIA,    )
WILLIAM MARSH RICE UNIVERSITY, )
VANDERBILT UNIVERSITY, and     )
YALE UNIVERSITY,               )
                   )
            Defendants. )
_____ )


VIDEOCONFERENCE VIDEOTAPED DEPOSITION
OF
CAMERON WILLIAMS
Thursday, April 30, 2026
(Taken virtually by Defendants)

Reported by:  Christine A. Taylor, RPR
Job No.:  J14744971

REMOTE APPEARANCES:


Representing the Plaintiffs:

   FREEDMAN NORMAND FRIEDLAND LLP
   BY:  RICHARD CIPOLLA, ESQ.
      225 Franklin Street, 26th Floor
      Boston, Massachusetts  02110
      617.374.3700
      rcipolla@fnf.law


Representing the Defendant The Trustees of the
University of Pennsylvania:

   WILMER CUTLER PICKERING HALE and DORR LLP
   BY:  DAVID GRINGER, ESQ.
        BECKY MAZ, ESQ. (Washington, DC)
      7 World Trade Center
       250 Greenwich Street
      New York, New York  10007
       212.937.7294
      david.gringer@wilmerhale.com
       becky.maz@wilmerhale.com

Representing the Defendant University of Notre
Dame Du Lac:

   WILLIAMS CONNOLLY LLP
   BY:  SARAH KIRKPATRICK, ESQ.
        WILLIAM DONNELLY, ESQ.
      680 Maine Avenue SW
       Washington, DC  20024
      202.434.5000
       skirkpatrick@wc.com
      wdonnelly@wc.com




            (continued)

Representing the Defendant Georgetown University:

   MAYER BROWN LLP
  BY:  KATHERINE F. ARAGON, ESQ.
    1999 K Street, NW
   Washington, DC 20006
    202.263.3000
   karagon@mayerbrown.com

Also Present:

   Juliana Ardila, Videographer

     On April 30, 2026, commencing at 5:31 p.m., the videoconference videotaped deposition of CAMERON WILLIAMS was taken remotely via Zoom pursuant to notice and pursuant to the Federal Rules of Civil Procedure, on behalf of the Defendants.

CAMERON WILLIAMS  Confidential
ANDREW CORZO vs BROWN UNIVERSITY

April 30, 2026
4

C O N T E N T S

PAGE

EXAMINATION BY MS. KIRKPATRICK            6

* * *

E X H I B I T S

(No exhibits were marked.)

P R O C E E D I N G S

* * *

THE VIDEOGRAPHER:  Good afternoon. We are now on the record.

The time is now 5:31 p.m. on April 30th, 2026.

This begins the video-recorded deposition of Cameron Williams taken in the matter of Andrew Corzo, et al., versus Brown University, et al., filed in the United States District Court for the Northern District of Illinois, Eastern Division.  Case number of which is 1:22-cv-00125.

The videographer today is Juliana Ardila.  The court reporter today is Christine Taylor.  We are both representing Esquire Deposition Solutions.

All counsel have been recorded on the stenographic record.

Will the court reporter please swear in the witness.

* * *

CAMERON WILLIAMS, having first been duly sworn, was examined

CAMERON WILLIAMS  Confidential
ANDREW CORZO vs BROWN UNIVERSITY

April 30, 2026
6

and testified as follows:

* * *

EXAMINATION

BY MS. KIRKPATRICK:

Q.  Good afternoon, Mr. Williams.  My name is Sarah Kirkpatrick.  I represent the University of Notre Dame.

Can you tell me what you did to prepare for today's deposition?

A.  I had a brief call with my counsel.

Q.  Okay.  And who was that?

A.  Richard.

Q.  Was anybody else on the call?

A.  Yes.

Q.  Who was that?

A.  Matt from MoloLamken.

Q.  Okay.  Is Mr. -- do you know Matt's last name?

A.  Matt -- I do not, no.

Q.  Is it Matt Gold, by any chance?

A.  Yes.  Yes, it is.

Q.  Okay.  Had you met Mr. Gold before you spoke to him on this preparation call?

A.  I had not, no.

Q.  When was the call that you're

referring to, the preparation call?

A.   It was about an hour ago.

Q.   Okay.  And what did you discuss on the call?

A.   Just --

MR. CIPOLLA:  Objection.  Direct the witness -- caution the witness not to reveal the contents of privileged communications.

Just describe it at a high level.

BY MS. KIRKPATRICK:

Q.   Can you describe it at a high level, Mr. Williams?

A.   Just expectations for the call.

Q.   Okay.  Is Mr. Gold or his law firm currently representing you in this case?

MR. CIPOLLA:  Objection.  Form.

You may answer.

THE WITNESS:  Oh, yes.

BY MS. KIRKPATRICK:

Q.   He is representing you?

A.   Yes.

Q.   Do you have an engagement letter signed with Mr. Gold or his law firm?

A.   I'm not sure.

Q.  When did Mr. Gold or his law firm begin representing you?

A.  I'm not sure.

Q.  Okay.  How did it come to be that you hired Mr. Gold or his law firm to represent you in this case?

A.  I consulted with my counsel.

Q.  And what do you mean when you say your counsel?

A.  Richard.

Q.  Okay.  Mr. Cipolla?

A.  Yes.

Q.  And how did talking to Mr. Cipolla result in you being represented by Mr. Gold?

A.  I was informed --

MR. CIPOLLA:  I want to caution the witness not to reveal the contents of privileged communications.

But answer to the best of your ability of what you did.

THE WITNESS:  I'm sorry, could you repeat the question?

BY MS. KIRKPATRICK:

Q.  How did your conversation with Mr. Cipolla result in you being represented by

Mr. Gold?

A.  I was informed of the developments of the case and we spoke from there.

Q.  -- representing you going forward?

A.  I'm sorry.  You cut out a little bit.

Q.  Sorry about that.

Were you told by Mr. Cipolla that Mr. Gold was going to be representing you?

MR. CIPOLLA:  Objection to form.

You may answer.

THE WITNESS:  Yes.

BY MS. KIRKPATRICK:

Q.  Okay.  To the best of your knowledge, who else, if anybody, currently represents you in this case?

A.  FNF law firm and Berger.

Q.  When you say "Berger," to whom are you referring?

A.  A law firm.

Q.  Is that the law firm Berger Montague?

A.  Yes.

Q.  Do you know the names of any lawyers at Berger Montague who represent you?

A.  Sitting here today, I -- I don't remember.

Q.  Okay.  Are you familiar with a lawyer named Bob Gilbert?

A.  Yes.

Q.  Does he represent you in this case?

A.  No.

Q.  Did he previously represent you in this case?

A.  Yes.

Q.  Okay.  What happened to his representation?

A.  I believe he was asked -- or he was dismissed from this case.

Q.  Do you know -- have an understanding as to why he was dismissed from this case?

A.  Yes.

Q.  What's your understanding?

A.  My understanding is that he misrepresented litigation funding and was then asked to be removed or -- from the case.

Q.  Okay.  Did you receive a termination letter from Mr. Gilbert or any other documentation reflecting that he no longer represents you in this case?

A.  Yes.

Q.  You did receive a termination letter?

A.  I received some form of communication.

Q.  Okay.  Is it that you're not sure what exactly that communication was?

A.  I don't remember exactly what the communication was.

Q.  Okay.  When did you receive that?

A.  Last month.

Q.  Okay.  You mentioned a few minutes ago in response to my questions about Mr. Gold, that you had spoken with Mr. Cipolla and the result of that conversation was an understanding that Mr. Gold would be representing you.

Do you remember that discussion we had a few minutes ago?

A.  Yes.

Q.  When did that happen?

A.  I'm sorry, can you repeat the question.

Q.  When did that happen?

A.  The discussion with --

Q.  The discussion with Mr. Cipolla, after which you had an understanding that Mr. Gold was representing you, when was that conversation?

A.  That conversation -- I'm sorry, do you -- can you clarify if -- I'm sorry, can you repeat the question?

Q.  Did you learn that Mr. Gold was representing you from Mr. Cipolla?

A.  Yes.

Q.  Okay.  When did you learn that from Mr. Cipolla?

A.  Within the last few weeks.

Q.  Are you able to narrow it down any more than that?  Was it three weeks ago?  Two weeks ago?  One week ago?

A.  Within the last couple of weeks.

Q.  Okay.  You don't know anything more about when that happened?

A.  Sitting here today, I do not recall the exact date.

Q.  Okay.  Are you familiar with a law firm called MoloLamken?

A.  Yes.

Q.  What do you know about that law firm?

A.  I know that they are the -- the new counsel on this case.

Q.  Okay.  Do you know anything else about them?

A.  I know that they are a trial litigation boutique who specializes in cases before going to trial -- or as they're going to trial.

Q.  How do you know that MoloLamken is a litigation boutique that specializes in trials?

MR. CIPOLLA:  Caution the witness not to reveal the contents of privileged communications, but to answer to the best of his ability otherwise.

THE WITNESS:  I spoke with my counsel.

BY MS. KIRKPATRICK:

Q.  Okay.  Do you have any other sources of information about the MoloLamken law firm, other than your conversations with your counsel?

A.  No, I do not.

Q.  Have you done anything to investigate or learn about the MoloLamken law firm, other than speaking with your counsel?

A.  I have not, no.

Q.  Okay.  And when did you learn about MoloLamken and its existence as a boutique litigation firm from your counsel?

A.  Sitting here today, I believe within

the last month.

Q.   Is that the same conversation you referred to earlier in which you and Mr. Cipolla talked and you came away with an understanding that Matt Gold would be -- would be representing you?

A.   I'm sorry.  Can you repeat the question?

Q.   I'm just trying to understand, is that the same conversation that we were discussing a few moments ago, in which you talked to Mr. Cipolla and at the end of that conversation, you understood Mr. Gold would be representing you?

A.   No.

Q.   Okay.  So there were multiple conversations with your current counsel about Mr. Gold and/or the MoloLamken law firm?

A.   Yes.

Q.   Okay.  When was the first of those conversations?

A.   I believe it was within the last -- sitting here today, I believe it was within the last few weeks.

Q.   Okay.  What lawyers from the

MoloLamken law firm are you familiar with?

A.  I am only familiar with Matt.

Q.  Okay.  Mr. Gold, who you met for the first time today?

A.  Yes.

Q.  You don't know of any other specific lawyers at that firm who may or may not be representing you; is that correct?

A.  I'm -- I'm sorry.  Can you clarify?

Q.  Do you know of any other individual lawyers at the MoloLamken law firm who may or may not be representing you?

A.  As far as Matt and Molo and Lamken.

Q.  So you understand Mr. Molo, Mr. Lamken, and Mr. Gold to be the three lawyers who are representing you; is that right?

A.  Yes.

MR. CIPOLLA:  Objection.

Mischaracterizes testimony.

BY MS. KIRKPATRICK:

Q.  Okay.  What's your understanding as to the role of Mr. Molo, Mr. Lamken, and Mr. Gold in this case?

MR. CIPOLLA:  Objection.  Scope.

You may answer.

THE WITNESS:  My understanding is that they are taking the place of one of the previous counsel on the -- on the case.

BY MS. KIRKPATRICK:

Q.  Okay.  Have you signed an engagement letter with Mr. Molo, Mr. Lamken, or Mr. Gold?

A.  Yes.

Q.  You did -- you signed an engagement letter?

A.  I -- I'm sorry, what --

Q.  Do you have a signed letter indicating that they have started representing you?

A.  I -- I do not recall.  I'm not sure.

Q.  Have you read the Court's March 31st, 2026 decision in this case, in which the judge indicated that Mr. Gilbert and his firm should leave the case and that he would certify the class only if new lead counsel was appointed for plaintiffs or was selected?

A.  Yes.

Q.  You did read that decision?

A.  Yes.

Q.  Okay.  Did you read the whole thing?

A.  Yes.

Q.  Are you aware, having read that decision, that the court found that Mr. Gilbert had filed affidavits relating to his fee arrangements that were affirmatively misleading?

A.  Yes.

Q.  Had you read, either before or after that, any of the affidavits to which the Court referred to as being affirmatively misleading?

MR. CIPOLLA:  Objection.  Scope.

You may answer.

THE WITNESS:  I do not recall.  I'm not sure.

BY MS. KIRKPATRICK:

Q.  Okay.  Have you reviewed any draft filings in this case; in other words, papers being filed with the court, but before they were filed?

MR. CIPOLLA:  Objection.  Scope.

You may answer.

THE WITNESS:  I believe so.

BY MS. KIRKPATRICK:

Q.  Okay.  Having read the Court's March 31st decision, are you aware that the Court concluded that the Berger Montague and the FNF

law firms had a candor problem?

A.  Yes.

Q.  In light of those findings by the Court, what steps have you taken to investigate or understand whether Mr. Molo and his law firm will be able to prevent those problems from recurring in the future?

MR. CIPOLLA:  Objection.  Scope.

You may answer.

THE WITNESS:  I spoke with my counsel.

BY MS. KIRKPATRICK:

Q.  Okay.  Have you done -- when you say you spoke with your counsel, with whom did you speak about that?

A.  I spoke with Richard.

Q.  Okay.  Have you done anything other than speaking with Mr. Cipolla in order to ensure that the new lawyers coming in will be able to prevent future candor problems?

A.  I'm sorry, could you clarify?

Q.  Other than speaking with Mr. Cipolla, have you done anything else to assure yourself that the new lawyers coming in will not encounter any candor problems with the Court?

A.   I've only spoken with my counsel.

Q.   Okay.  What's your understanding as to how Mr. Molo and his law firm were selected to be the new proposed lead counsel for plaintiffs?

A.   After speaking with my counsel, I came to understand the process for which they were selecting a new counsel for this case, and I was asked to approve the new counsel.

Q.   Okay.  What was your personal involvement in the process of selecting new counsel?

A.   Speaking with my counsel.

Q.   Did you interview any of the candidates to serve as new lead counsel?

A.   I did not.

Q.   Do you know who any of the candidates were who were considered or interviewed for that role?

A.   Sitting here today, I do not recall.

Q.   Do you know anything about the criteria by which candidates for that role were evaluated?

A.   I do not recall.

Q.   Did you have -- did you provide input to your current counsel about who should be

selected or the criteria by which they would be selected before Mr. Molo and his firm were selected?

MR. CIPOLLA:  I'm going to caution the witness to only answer yes or no and to not implicate privilege question -- privilege concerns about what you told us.

THE WITNESS:  Can you repeat the question?

BY MS. KIRKPATRICK:

Q.  Sure.  I'm trying to understand whether you provided input -- opinions, preferences, feedback -- did you provide any of your own views to your counsel about who should be selected or the basis on which they should be selected?

A.  No, I did not.

Q.  Is it fair to say that you were informed by your counsel that the proposal was to nominate Mr. Molo and you approved that proposal?

A.  I'm sorry, can you repeat the question?

Q.  Is it fair to say that you were informed by your current counsel, Mr. Cipolla and his -- Cipolla and his colleagues, that Mr. Molo

was being nominated and you were asked to approve that selection?

A.  Yes.

Q.  You didn't otherwise participate in the process or provide feedback or input into the process; is that fair?

A.  I'm sorry, can you repeat the question?

Q.  You didn't otherwise participate in the process or provide feedback or input into the process; is that fair?

A.  Is that fair?

Q.  Is that accurate?

A.  And, sorry, can you repeat the question?

Q.  Is it the accurate that you did not otherwise participate in the process or provide feedback or input into the process?

A.  Yes.

MS. KIRKPATRICK:  No further questions.

MR. CIPOLLA:  Nothing from me.  Thank you, Cameron.

MS. KIRKPATRICK:  Can we go off the record.

THE VIDEOGRAPHER:  The time is 5:48 p.m. and this concludes today's deposition.  We are going off the record.

- - -

(Read and sign not reserved.)

- - -

(Deposition concluded at 5:48 p.m.)

- - -

CERTIFICATE OF REPORTER

I, Christine A. Taylor, Certified Court Reporter within and for the State of Georgia, do hereby certify:

That the foregoing deposition was taken before me on the date and at the time and location stated on Page 1 of this transcript; that the deponent was duly sworn to testify to the truth, the whole truth and nothing but the truth; that the testimony of the deponent and all objections made at the time of the examination were recorded stenographically by me and were thereafter transcribed; that the foregoing deposition as typed is a true, accurate and complete record of the testimony of the deponent and of all objections made at the time of the examination to the best of my ability.

I further certify that I am neither related to nor counsel for any party to the cause pending or interested in the events thereof. Witness my hand, this 30th of April, 2026.

_____

Christine A. Taylor, RPR
Georgia CCR-4736