# EXHIBIT 9



A. Corzo

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

-------------------------------------------------------x

ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLANDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,     Civil Action No.
1:22-cv-00125

vs.

BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,

Defendants.

-------------------------------------------------------x

REMOTE VIDEOTAPED DEPOSITION OF

ANDREW CORZO

New York, New York

May 1, 2026

Reported by:

THOMAS A. FERNICOLA, RPR

JOB NO. J14746581

A. Corzo

May 1, 2026

11:01 a.m.

REMOTE VIDEOTAPED DEPOSITION of ANDREW CORZO, before Thomas A. Fernicola, a Registered Professional Reporter and Notary Public of the State of New York.

A. Corzo

A P P E A R A N C E S:


    FREEDMAN NORMAND FRIEDLAND

    Attorneys for the Plaintiffs

        225 Franklin Street, Floor 26

        Boston, Massachusetts 02110

    BY:  RICHARD CIPOLLA, ESQ.



    MAYER BROWN

    Attorneys for Defendant Georgetown University

        1999 K Street, NW

        Washington, DC 20006-1101

    BY:  KATHERINE F. ARAGON, ESQ.

        MEGAN E. STRIDE, ESQ.

A. Corzo

A P P E A R A N C E S (Cont'd):


WILMERHALE

Attorneys for Defendant

The Trustees of the University of Pennsylvania

    250 Greenwich Street

    New York, New York 10007

BY:  IO JONES, ESQ.

ALSO PRESENT:

    AUSTIN KING, Videographer.

A. Corzo

STENOGRAPHER'S NOTE:

All quotations from exhibits are reflected in the manner in which they were read into the record and do not necessarily indicate an exact quote from a document.

A. Corzo

THE VIDEOGRAPHER:  Good morning.

We're now on the record.

The time is now 11:01 a.m. on May 1, 2026.

This begins the video-recorded deposition of Andrew Corzo taken in the matter of Andrew Corzo, et al., v. Brown University, et al., filed in the United States District Court of the Northern District of Illinois, Eastern Division, the case number of which is 1:22-cv-00125.

The videographer today is Austin King.

The court reporter is Tom Fernicola.

We are both representing Esquire Deposition Solutions.

Counsel, will you please announce your name and whom you represent, starting with the noticing attorney.

After which, the court reporter

A. Corzo will swear in the witness.

MS. ARAGON: Yes, good morning. My name is Katie Aragon. I'm with Mayer Brown LLP, and I represent defendant Georgetown University.

MS. STRIDE: My name is Megan Stride, also with Mayer Brown LLP, also represent defendant Georgetown University.

MR. CIPOLLA: Good morning. Richard Cipolla from Freedman Normand Friedland, representing plaintiffs and defending witness, Mr. Corzo, today.

A. Corzo

ANDREW CORZO, called as a witness, having been duly sworn by a Notary Public, was examined and testified as follows:

BY THE REPORTER:

Q   Please state your full name and address for the record.

A.   Andrew Corzo, 1634 Church Avenue, Brooklyn, New York 11226.

BY MS. ARAGON:

Q.   Good morning, Mr. Corzo. How are you doing today?

A.   Good.  How are you?

Q.   I'm well. Did you do anything to prepare for today's deposition?

A.   Yes.  Yes.

Q.   What did you do to prepare?

A.   I spoke with counsel.

Q.   Who is your counsel?

A.   We have...well, Richard. These aren't the law firms, but I spoke with Richard earlier.

Q.   By "Richard," do you mean Richard Cipolla?

A. Corzo

A.    Right.

Q.    Was there anyone else that you spoke to to prepare for this deposition?

A.    I spoke with, let's see, Lauren from Molo.

Q.    Do you remember Lauren's last name?

A.    Taylor.

Q.    Thank you.

Does MoloLamken...

Or does Lauren currently represent you in this matter?

A.    Currently, at the moment, no.

Q.    So your understanding is that Lauren Taylor is not your counsel as of today?

MR. CIPOLLA:  Objection.  Form. It calls for a legal conclusion.

You may answer.

A.    As of now, no.

Q.    Can you describe at a high level what you discussed in your conversation with Ms. Taylor and Mr. Cipolla?

A. Corzo

MR. CIPOLLA:  I'm going to direct the witness not to answer that question as privileged as the content of communications with counsel.

BY MS. ARAGON:

Q.   Had you ever met Ms. Taylor before?

A.   No.

Q.   Do you know the names of any firms or other individuals who are representing you?

A.   Yes.

Q.   Can you provide those names?

A.   Yes.  There are, FNF, Freedman Normand Friedland.  And then we have Berger; and then Gilbert.

Q.   Are you familiar with the name Eric Cramer?

A.   Yes.

Q.   Is it your understanding that Mr. Cramer represents you in this matter?

A.   I don't recall.

Q.   You mentioned Gilbert Litigators.

A. Corzo

Are you familiar with someone named Bob Gilbert?

A.   Right.

Q.   You are familiar with Mr. Gilbert?

A.   Yes.

Q.   Who is Mr. Gilbert?

A.   He is part of Gilbert law firm.

Q.   You mentioned that Mr. Gilbert represents you in this matter.

Is that correct?

A.   Yes.

Q.   Are you aware that on March 31, the Court ordered that Mr. Gilbert no longer be counsel in this matter?

A.   I don't recall a specific date.

Q.   Well, you just said that your understanding is that he represents you in this matter.

Is that correct?

A.   Let's see.  I'm referring to the Gilbert law firm.

Q.   Are you aware that the Gilbert law firm was described by the Court as

A. Corzo presenting misleading statements to the Court in its March 31 order?

A.   I am aware.

Q.   When did you become aware of that opinion from the Court?

MR. CIPOLLA:  Objection. Scope.

You may answer.

A.   When?  Let's see.  I can't recall a specific date.

Q.   Was it in the last week?

A.   Let's see.  Wait, sorry, can you repeat the original question?

Q.   Yes.

When did you become aware of the Court's March 31 order where the Court raised the prospect of bringing in new lead counsel?

A.   Oh, yes.

MR. CIPOLLA:  Objection.

A.   I can't recall the date, but...

Q.   Do you have an approximate sense?

A.   It was within the last few

A. Corzo

weeks.

Q. Was it two weeks ago, to your recollection?

MR. CIPOLLA: Objection. Scope.

You may answer.

A. I couldn't really nail it down.

Q. When did you first become aware of the issues the Court pointed to as to the misleading statements of Mr. Gilbert?

MR. CIPOLLA: Objection. Scope.

You may answer.

A. Let's see. I don't really recall.

Q. Was it when you reviewed the Court's March 31 order?

MR. CIPOLLA: Objection. Scope.

You may answer.

A. I just don't remember the exact date.

Q. Can you recall around when you become aware of these issues raised by

A. Corzo

the Court?

MR. CIPOLLA:  Objection.

Scope.

You may answer.

A.   Let's see.  Definitely within the last six months.

Q.   So is it fair to say that before a few weeks ago, you were not aware of the issues regarding Mr. Gilbert's candor with the Court?

MR. CIPOLLA:  Objection.

Mischaracterizes his testimony.

A.   I believe I referred to a longer period of time in a prior answer.

Q.   Can you clarify what that period of time was?

A.   Weeks to months, that range.

Q.   Are you aware that the Court concluded that there is at least significant doubt that the current class counsel are adequate?

MR. CIPOLLA:  Objection.

Scope.

You may answer.

ANDREW CORZO                                       May 01, 2026
ANDREW CORZO vs BROWN UNIVERSITY                              15

A. Corzo

A.   Let's see.  Adequate.

Yes, I'm aware of that specifically.

Q.   And did your awareness occur before the March 31 order from the Court describing this?

MR. CIPOLLA:  Objection. Scope.

You may answer.

A.   I couldn't really nail down a specific date on that.

Q.   So you do not recall if it was before or after the March 31 order?

A.   Sorry, can you repeat, again, the original question?

Q.   Sure.

You do not recall if your awareness of the misrepresentations to the Court described in the March 31 order arose before or after that order?

MR. CIPOLLA:  Objection. Scope.

You may answer.

A.   I just don't know.

A. Corzo

Q.    Are you familiar with a law firm called MoloLamken?

A.    Yes.

Q.    When did you first hear the name MoloLamken?

A.    The first ever in my life, I'm not sure I could tell you.

Q.    When did you first recall it in your recent memory?

A.    Let's see.  Probably in the weeks to months range.

Q.    Would you say it was close to two weeks?

A.    I don't know if I could nail it down any further.

Q.    How did you become familiar with MoloLamken?

A.    Let's see.  I would say I became familiar with MoloLamken primarily based off of communications I had, multiple mediums with my present counsel.

And yes, I'll just leave it at that.

Q.    When was the first time, to

ANDREW CORZO
ANDREW CORZO vs BROWN UNIVERSITY

May 01, 2026
17

A. Corzo

your recollection, that your counsel provided you with that information?

A. Let's see, the first time. That's a good question. Let's see.

I would say it would be in the weeks to months range.

Q. That's a fairly broad range.

Do you recall if it was within the last month?

A. The last month. I would say I probably couldn't nail it down any further.

Q. Have you done any research about MoloLamken, Mr. Corzo?

A. What do you describe as "research"?

Q. What would you consider generally to be research?

A. Well, we can talk about academics, and we can talk colloquially.

Q. Did you do either type of research regarding MoloLamken?

A. I think there are definitely other types of research available, but I

A. Corzo

don't know if I could say that the level of familiarity I got comes to the level of research that I would find myself.

Q.    Did you decide to propose MoloLamken as lead counsel in this matter?

MR. CIPOLLA:  Objection to form.

THE WITNESS:  Sorry?

MR. CIPOLLA:  Objection to form.

You may answer.

A.    Did I personally decide?  Is that what you're asking?

Q.    Yes.

A.    Let's see.  It depends what you mean by that.

Q.    Was it your decision to pursue MoloLamken as your representation in this case?

A.    To pursue it?  Let's see.  I would say I approved of it.

Q.    Did your counsel present you with any other names of candidates for

A. Corzo

lead counsel role?

A.    Names of candidates of the counsel role, like an individual?

Q.    Individuals or law firms.

A.    Let's see.  No, no.

Q.    Did you interview any other firms or individual candidates for that role?

A.    Did I personally interview candidates or other firms for the role, me, personally?

Q.    Yes.  Did you personally interview any candidates for the role of lead counsel to represent you in this matter?

A.    No.  I personally did not interview any counsel candidates or firms for this matter, in particular.

Q.    Given the candor problem that the Court stated your current counsel has in its March 31 order, can you describe any actions you've taken to ensure that the new lead counsel acts ethically?

MR. CIPOLLA:  Objection.  Form.

A. Corzo

A. What do you mean by "actions" in this case?

Q. Have you done anything to ensure that the counsel representing you as the new lead counsel conforms with the ethical obligations of the Court?

MR. CIPOLLA: Objection.

A. Have I personally done anything?

Q. Yes.

A. Let's see. I don't know if I personally have done anything in the way you describe it.

Q. Did you discuss new lead counsel with any of the other named plaintiffs?

A. Let's see.

Q. So what is your understanding of the basis on which plaintiffs in this matter decided to proceed with the MoloLamken firm as new lead counsel?

MR. CIPOLLA: Objection to form.

You may answer.

A. Corzo

A.    So the way I understand this...

And, you know, this might not get every detail, but the way I understand it would be that the law firms did what you'd call a national search with a lot of criteria, a number of criteria that I could go into, for example, expertise and plaintiff's side litigation, antitrust experience.

They have to -- you know, the special bench, obviously other factors...

And through that very rigorous process, from what I understand, there were a number of other candidates that are, you know, possible in the mix here.

But the one that really stood out and the one that was ultimately decided would be the best fit for the facts of this case that we're talking about right now, I think they landed on Molo specifically because of all the checking the boxes for the criteria that I described earlier.

And, yes, I mean, I think it

A. Corzo was that sort of process, and it wasn't just a one-and-done deal.

There was an interview process that was pursued and that went through.

And out of all those ones, the expertise factor was important especially, I think. Molo was the one that was picked out of the whole group.

Q. But, Mr. Corzo, did you not just say that you personally were not presented with any of these options or any other potential candidates?

MR. CIPOLLA: Objection. We're out of time.

I'll let you answer this last question, Mr. Corzo.

A. I don't think...

I don't really...

I don't know if it has to do with what I said.

Q. Well, you said that there was a long process involving many different candidates that they took on your counsel.

A. Corzo

But you previously testified that you, yourself, did not actually review any of these candidates other than the MoloLamken firm.

Is that correct?

A.   No.

MR. CIPOLLA:  Objection.

We're out of time.

I'll direct him not to answer because we are at 17 minutes now after being sworn in.

MS. ARAGON:  I object to the previous response as nonresponsive.

THE VIDEOGRAPHER:  And, Counsel, I know we spoke off the record.  You need the video expedited.

Do you need that video synced?

MS. STRIDE:  Can we go...

THE VIDEOGRAPHER:  I was instructed to take it on the record.

MS. STRIDE:  Oh, okay.  Yes, synced is fine.

THE VIDEOGRAPHER:  Is the

A. Corzo

transcript the same, expedited?

MS. STRIDE:  Yes.

THE VIDEOGRAPHER:  And, Plaintiffs' counsel, do you need the same?

MR. CIPOLLA:  No.

THE VIDEOGRAPHER:  You don't need a transcript at all?

MR. CIPOLLA:  Not yet, no.

MS. STRIDE:  That concludes today's deposition.

We're off the record at 11:21 a.m.

(The Deposition Concluded at 11:21 a.m.)

oOo

_____

ANDREW CORZO

Subscribed and sworn to before me this     day of        2026.

_____

A. Corzo

CERTIFICATE

STATE OF NEW YORK )
               : ss
COUNTY OF NEW YORK )

I, THOMAS A. FERNICOLA, a Registered Professional Reporter and Notary Public within and for the State of New York, do hereby certify:

That ANDREW CORZO, the witness whose deposition is herein before set forth, was duly sworn by me, and that such deposition is a true record of the testimony given by such witness on May 1, 2026.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 1st day of May 2026.

_____

THOMAS A. FERNICOLA, RPR

A. Corzo

INDEX OF EXAMINATION

WITNESS: ANDREW CORZO                  PAGE

By Ms. Aragon                            8

A. Corzo

ERRATA SHEET

Case Name:

Deposition Date:

Deponent:

Page Line  Now Reads    Should Read    Reason

____ ____  _____  _____  _____

____ ____  _____  _____  _____

____ ____  _____  _____  _____

____ ____  _____  _____  _____

____ ____  _____  _____  _____

____ ____  _____  _____  _____

____ ____  _____  _____  _____

____ ____  _____  _____  _____

____ ____  _____  _____  _____

____ ____  _____  _____  _____

____ ____  _____  _____  _____

____ ____  _____  _____  _____

____ ____  _____  _____  _____

_____

Signature of Deponent

SUBSCRIBED AND SWORN TO BEFORE ME

THIS _____ DAY OF _____, 2026.

(Notary Public) MY COMMISSION EXPIRES:_____