**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| ANDREW CORZO et al.,<br><br>              Plaintiffs,<br><br>    v.<br><br>BROWN UNIVERSITY et al.,<br><br>              Defendants. | Case No.: 1:22-cv-00125<br><br>**Hon. Matthew F. Kennelly** |

**PLAINTIFFS' REPLY IN SUPPORT OF SUBMISSION OF
<u>NEW LEAD COUNSEL FOR THE CLASS</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................................ii

INTRODUCTION ..............................................................................................................................1

ARGUMENT .....................................................................................................................................2

I.      MOLOLAMKEN IS EMINENTLY QUALIFIED TO SERVE AS NEW LEAD
COUNSEL FOR THE CLASS .................................................................................................2

          A.     MoloLamken's Credentials Are Undisputed and Stellar ........................................2

          B.     MoloLamken's Interests Are Perfectly Aligned with Those of the Class ...............4

II.     THE NAMED PLAINTIFFS PLAYED AN APPROPRIATE ROLE IN APPROVING
THE PROPOSAL OF MOLOLAMKEN AS NEW LEAD COUNSEL ...........................6

III.    DEFENDANTS' ATTACKS ON THE ADEQUACY OF FNF AND BMPC DO NOT
WARRANT RECONSIDERATION OF THE ORDER AND CONTINUE TO FAIL
ON THE MERITS ..................................................................................................................10

IV.    DEFENDANTS' RECENT DEPOSITIONS OF THE PLAINTIFFS WERE PART
OF THEIR DESPERATE EFFORT TO DELAY THE TRIAL .......................................14

CONCLUSION..................................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Acosta v. Bd. of Trs. of Unite Here Health*,
779 F. Supp. 3d 974 (N.D. Ill. 2025) ................................................................... 10

*Anderson v. United Airlines, Inc.*,
2024 WL 1555496 (N.D. Ill. Apr. 10, 2024), *aff'd*, 140 F.4th 385 (7th Cir. 2025) .................. 11

*Baines v. BP Prods. N. Am., Inc.*,
2026 WL 942225 (N.D. Ind. Apr. 8, 2026) ............................................................. 13

*Bodner v. Oreck Direct, LLC*,
2007 WL 1223777 (N.D. Cal. April 25, 2007) ......................................................... 12

*Bullar v. Archway Skydiving Ctr., Inc.*,
2013 WL 12642118 (S.D. Ill. Dec. 20, 2013) .......................................................... 13

*City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*,
296 F.R.D. 299 (D.N.J. 2013) ............................................................................. 13

*Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130, U. A.*,
657 F.2d 890 (7th Cir. 1981) .............................................................................. 13

*Eubank v. Pella Corp.*,
753 F.3d 718 (7th Cir. 2014) ............................................................................. 10

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.*,
270 F.R.D. 150 (S.D.N.Y. 2010) ......................................................................... 12

*Hossfeld v. Allstate Ins. Co.*,
2024 WL 325337 (N.D. Ill. Jan. 29, 2024) ............................................................. 13

*Hughes v. Baird & Warner, Inc.*,
30 Fed. R. Serv. 2d 704 (N.D. Ill. 1980) ............................................................... 13

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
2013 WL 6050431 (N.D. Ill. Nov. 15, 2013) ............................................................ 5

*In re FICO Antitrust Litig. Related Cases*,
No. 1:20-cv-02114, 2021 WL 4478042 (N.D. Ill. Sept. 30, 2021) .......................... 3, 4

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) .............................................................................. 6

*In re Thorpe*,
755 F. App'x 177 (3d Cir. 2018) ......................................................................... 13

ii

*In re Under Armour Sec. Litig.*,
   631 F. Supp. 3d 285 (D. Md. 2022) ................................................................ 13

*Kingsepp v. Wesleyan Univ.*,
   1992 WL 230136 (S.D.N.Y. Sept. 3, 1992) ................................................... 12

*Kulig v. Midland Funding, LLC*,
   2014 WL 5017817 (S.D.N.Y. Sept. 26, 2014) ............................................... 13

*Lucero v. Credit Union Ret. Plan Ass'n*,
   2025 WL 3163833 (W.D. Wis. Mar. 18, 2025) .............................................. 13

*Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*,
   254 F. Supp. 3d 1007 (N.D. Ill. 2017) ............................................................ 10

*Physicians Healthsource, Inc. v. Allscripts Health Solutions, Inc.*,
   254 F. Supp. 3d 1007 (N.D. Ill. 2017) ............................................................ 12

*Physicians Healthsource, Inc. v. Masimo Corp.*,
   2019 WL 8138043 (C.D. Cal. Nov. 21, 2019) ............................................... 12

*Reliable Money Ord., Inc. v. McKnight Sales Co.*,
   704 F.3d 489 (7th Cir. 2013) .......................................................................... 12

*Rodolico v. Unisys Corp.*,
   189 F.R.D. 245 (E.D.N.Y. 1999) .................................................................... 13

*Walter v. Palisades Collection, LLC*,
   2010 WL 308978 (E.D. Pa. Jan. 26, 2010) .................................................... 12

**Rules**

Fed. R. Civ. P. 23(g)(1)(A) .................................................................................. 3

**Other Authorities**

Federal Judicial Center, *Manual for Complex Litigation* § 10.221 (4th ed. 2004) ......................... 5

**INTRODUCTION**

In its Order on class certification dated March 31, 2026, ECF No. 1241 (the "Order"), the Court held that Plaintiffs had satisfied all but one of the relevant provisions of Fed. R. Civ. P. 23(a) and (b)(3). The sole remaining issue is the adequacy of class counsel pursuant to Rule 23(a)(4). The Order set forth a method and timeline for proposing new lead counsel, and provided that if appropriate "Lead Counsel" were identified then the Court would certify the Class with the new firm as lead counsel and Freedman Normand Friedland LLP ("FNF") and Berger Montague PC ("BMPC") as co-counsel. FNF and BMPC therefore undertook a rigorous selection process, interviewing approximately a dozen highly qualified firms. Plaintiffs proposed MoloLamken because it has the skills, resources, and experience to lead this Class through trial.

Accordingly, the *only question* now before the Court is whether MoloLamken is adequate to serve as lead counsel. If it is, pursuant to the Order, then the Class should be certified with MoloLamken as lead counsel and BMPC and FNF as co-counsel. In their eleven-page brief, however, Defendants are *silent on the only relevant question*. They do not dispute MoloLamken's adequacy to serve as lead counsel. They do not mention—let alone contest—MoloLamken's credentials, relevant experience, trial expertise, resources, or leadership ability. At the hearing on April 24, 2026, Defendants speculated about MoloLamken's (a) purported conflicts from prior government work of two of their lawyers, (b) supposed biases due to prior collaborations with FNF or BMPC, and (c) alleged inadequate incentives to prosecute the case vigorously. With the opportunity to provide evidence or even cogent arguments in support of these speculative claims, Defendants are silent. Given that Plaintiffs have demonstrated that MoloLamken satisfies Rule 23(a)(4), and that Defendants do not contest that showing, Plaintiffs have thus satisfied the Order.

Instead of addressing these points, Defendants in effect ask the Court to reconsider the Order. They argue that FNF and BMPC are inadequate; that the Court should decline to certify the

Class even if Plaintiffs have complied with the Order; and, despite having waived the argument, that the named Plaintiffs are inadequate. The Court has already rejected each of these arguments; Defendants do not meet the standards for reconsideration (which Defendants do not even cite); and the arguments are all without merit, waived, or both. Defendants' brief underscores the Court's acknowledgement that the defendants in a class action—bound to oppose class certification—are not reliable analysts of the adequacy of plaintiffs' counsel to serve the interests of the Class. Order at 59-60. In their continued desperate efforts to defer, delay, and avoid trial, defense counsel have resorted to mischaracterizing the record (as the Court pointed out at the hearing); to disputing the Court's explanation of its own orders; and to ignoring the Court-imposed scope of the recent depositions. Their continued ad hominem attacks on FNF and BMPC are thus not only irrelevant given Plaintiffs' satisfaction of the Order by proposing indisputably adequate lead counsel, but increasingly hysterical and hypocritical.

## <u>ARGUMENT</u>

### I.   MOLOLAMKEN IS EMINENTLY QUALIFIED TO SERVE AS NEW LEAD COUNSEL FOR THE CLASS

Under the Order, if the proposed "new lead counsel outside the current group" is "shown to be adequate, the Court will grant the motion for class certification." Order at 61. Defendants do not dispute that Plaintiffs have made this showing. MoloLamken is one of the best regarded trial and complex litigation firms in the country. Mr. Molo and his colleagues satisfy every criterion relevant to the adequacy-of-counsel inquiry under Rule 23.

#### A.   MoloLamken's Credentials Are Undisputed and Stellar

Under Rule 23(g)(1)(A), the Court should consider: (i) the work counsel has done identifying or investigating potential claims; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted; (iii) counsel's knowledge of the applicable

law; and (iv) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). MoloLamken easily satisfies these criteria.

Mr. Molo is consistently regarded as among the top trial lawyers in America. ECF No. 1252 at 1-2. Chambers and Partners calls him "fantastic in the courtroom." *Id.* The breadth and consistency of these recognitions are not generic accolades but reflect a honed expertise—a quality that will be put to use as this case heads toward trial. And Mr. Molo is intimately familiar with this jurisdiction. He has been a prosecutor and then a litigator in Chicago for decades, and a past president of both the Seventh Circuit Bar Association and the Chicago Inn of Court. *Id.* He taught trial advocacy at Northwestern University Pritzker School of Law for a decade and advanced evidence at Loyola University School of Law for five years. *Id.* He has been appointed class liaison counsel in an antitrust matter in this very district. *See In re FICO Antitrust Litig. Related Cases*, No. 1:20-cv-02114, 2021 WL 4478042 (N.D. Ill. Sept. 30, 2021). In appointing MoloLamken in that matter, Judge Chang singled out the firm's "sterling reputation and local presence." *Id.* at \*6. In addition to its robust local presence, MoloLamken has a terrific nationwide reputation that led the court presiding in over the *In re: Apple Inc. Smartphone Antitrust Litigation*, No. 24-md-03113 (D.N.J.) MDL—one of the most significant ongoing antitrust matters—to appoint MoloLamken co-lead counsel for a putative class of direct Apple Watch purchasers.

MoloLamken also has a demonstrated track record of entering complex litigation at an advanced stage to serve as lead trial counsel—precisely the role the Court contemplates in the Order. In *Gruber v. Gilbertson*, No. 16-cv-9727 (S.D.N.Y.), a Rule 10b-5 securities fraud class action before Judge Jed Rakoff, MoloLamken appeared as lead trial counsel fewer than three months before the case was then set for trial and obtained a jury verdict for the class. *Id.* at 4. In *Sitzer v. National Association of Realtors*, No. 4:19-cv-00332 (W.D. Mo.), MoloLamken was

retained by a key defendant eight months before trial and worked seamlessly alongside existing class counsel who had litigated the case for more than three years beforehand. *Id.* at 5-6. The case settled on favorable terms three weeks before trial.

MoloLamken will also commit the resources necessary to bring this case to trial in November 2026, just as it quickly prepared for trial in *Gruber* and *Sitzer*. Defendants do not, because they cannot, dispute that MoloLamken has "the financial and human resources necessary to litigate the case through trial and any appeals." *Id.* at 5. And as to this specific case, the firm confirmed that it "has no scheduling conflicts that would prevent its dedicated preparation and participation." The MoloLamken team, led by Mr. Molo, has credibly represented to the Court that it is ready and able to commit the resources necessary to successfully represent the class. *See id.* at 5-7.

**B.      MoloLamken's Interests Are Perfectly Aligned with Those of the Class**

MoloLamken is working on full contingency. As Mr. Molo put it, "the more money that the class recovers, the more money we get paid. And our intention is to get the largest possible recovery for the class." ECF No. 1269-2, Ex. 2, 4/24/26 Hr'g Tr. at 25:15-22. And MoloLamken's compensation is independent of any claim of entitlement to any future fees by Gilbert Litigators & Counselors ("GLC"). *Id.* at 27:10-17. This arrangement creates every motivation to zealously represent the Class, and Defendants have presented no evidence or persuasive argument suggesting otherwise. Certainly Mr. Molo is in a better position to evaluate his own interests and incentives in agreeing to serve in the Lead Counsel role here than Defendants ever could be.

Defendants offer no evidence or logical arguments—because there are none—that MoloLamken would fail to maximize the best interests of the Class at trial, appeal, or in settlement. Defendants nevertheless baselessly assert (at 5-7) that MoloLamken will be "beholden" to FNF and BMPC, leaving those two firms to control issues such as whether to settle and how to litigate the case. These arguments follow from Defendants' feigned confusion over the Order. Defendants

4

argue (at 6), with no sensible basis, that this Court's reference to "lead counsel . . . has no grounding or meaning in Rule 23" and "FNF and BMPC do not specify what they think that means." The term has a plain meaning and is routinely used to distinguish among various counsel appointed to represent classes under Rule 23.[1] There will be new lead class counsel, and FNF and BMPC will remain as co-counsel. Order at 61-62. This leaves *no* room for FNF and BMPC to control anything on their own. Defendants cite no grounds for micromanaging the collective decisionmaking among these firms, who after all, are litigating *against* Defendants.[2]

Defendants have abandoned, moreover, the only prospective lines of attack they raised at the April 24 hearing. First, the declarations of MoloLamken lawyers Eric Posner and Matthew Gold demonstrate that they had no ethical conflicts in this matter arising from their prior employment at the Antitrust Division of the Department of Justice, and thus there is no basis for disqualification. *See* ECF Nos. 1255-1, 1255-2. Second, Defendants do not, because they cannot, contend that there is any improper personal or financial relationship between MoloLamken on the one hand, and FNF or BMPC on the other. Mr. Cramer had never, to his knowledge, met Mr. Molo or anyone currently associated with the MoloLamken firm until the selection process began in this case in April. And to the knowledge of the lawyers involved here, MoloLamken's relationship with FNF and BMPC has been: serving as co-counsel in the single matter that defendants identified, *BBSR*

---

[1] *See, e.g.*, *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 6050431, at *6 (N.D. Ill. Nov. 15, 2013) ("In this case, the decision to proceed with a single lead counsel makes sense for several reasons. . . . With that said, the Court concludes that Wolf Haldenstein is best situated to remain significantly involved in the case as local counsel should it be willing to serve in that capacity."); *see also* Federal Judicial Center, *Manual for Complex Litigation* § 10.221 (4th ed. 2004) (defining "lead counsel" as "charged with formulating. . . positions on substantive and procedural issues" among other responsibilities and distinguishing it from the "other counsel" with which it works).

[2] Defendants speculate further (at 7-8) that FNF and BMPC may feel pressure to litigate differently due to reputational concerns or future fee disputes. These unfounded theories ignore not only class counsel's zealous and successful advocacy to date, but also that counsel working on contingency has every financial incentive to obtain the best recovery for the Class taking into account the value of the claims and the risks and delays inherent in complex litigation.

5

*v. Anheuser-Busch*, which has since concluded, working together as co-lead class counsel in pending antitrust class action litigation, and co-litigating an appellate matter for a shared client that concluded roughly eight years ago. These are interactions that no reasonable neutral observer would view MoloLamken's independence or adequacy as lead counsel.[3]

## II.    THE NAMED PLAINTIFFS PLAYED AN APPROPRIATE ROLE IN APPROVING THE PROPOSAL OF MOLOLAMKEN AS NEW LEAD COUNSEL

Unable to contest MoloLamken's qualifications or suitability, Defendants pivot (at 7) to an untimely, previously waived (Order at 8), and baseless "figurehead" attack on the named Plaintiffs' adequacy. Each of the named Plaintiffs approved the proposal of new lead counsel after being informed about the rigorous selection process. More to the point, Defendants' argument is not grounded in law: Rule 23 directs courts—not class representatives—to evaluate class counsel's qualifications, and a named plaintiff's degree of involvement in the selection process has no bearing on whether proposed counsel is adequate.

Defendants cite no rule or precedent requiring named plaintiffs in a class action to personally undertake the selection of class counsel or search for new class counsel. Nor would such a rule make sense, as courts routinely appoint class counsel without the input of plaintiffs. *See, e.g.*, *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 720 (7th Cir. 2001) (describing how courts have "evaluated firms' resumes" when picking class counsel). The lawyers best positioned to identify appropriate antitrust trial lawyers for this case are FNF and BMPC, who (a) know this case intimately, (b) are aware of the particular skills and experience required to take this case to trial, and (c) are

---

[3] Plaintiffs note that both BMPC and MoloLamken are also each counsel in *In re: Apple Inc. Smartphone Antitrust Litigation*, No. 24-md-03113 (D.N.J.), but they represent different putative classes.  It is possible that the firms have represented different clients in the same case in the past, but no reasonable neutral observer would conclude that two law firms appearing in the same case for different clients creates a relationship that would compromise one firm's independence from the other in a future co-counsel relationship.

6

deeply knowledgeable about the plaintiffs' antitrust trial bar. Each of the named Plaintiffs appropriately relied upon their counsel's recommendations for that selection.

The Plaintiffs testified that they had been regularly kept apprised of case developments. Mr. Maerlender, for instance, has been "following the case fairly closely." ECF No. 1269-8, Ex. 8, Maerlender Tr. at 6:20-5:3. Ms. Henry continued to have regular calls with counsel. ECF No. 1269-5, Ex. 5, Henry Tr. at 7:22-8:9. Indeed, no Plaintiff testified that he or she had not received regular updates. Plaintiffs thus timely learned of the events that led to proposing MoloLamken. Class Counsel's efforts to keep the named Plaintiffs informed included, *inter alia*, communications in June 2025, when undersigned counsel immediately "obtained written consent" regarding the splitting of fees to address Mr. Bach-y-Rita's initial concerns. ECF No. 879. Those efforts extended to obtaining the approval for the withdrawal of GLC from class-counsel consideration and proposing MoloLamken as lead counsel. *See* ECF No. 1236 at 2; ECF No. 1252. The named Plaintiffs understood Defendants' arguments and the Court's findings that resulted in the proposal of MoloLamken. The named Plaintiffs timely received the Order and understood that, as a result of it, new lead counsel would need to be proposed.[4]

Similarly, each named Plaintiff was informed about the context requiring the proposal of new lead counsel; the process undertaken to propose such counsel; and MoloLamken itself before unanimously approving its proposal as new lead counsel for the Class. Mr. Maerlender, for example, confirmed that counsel "spent a lot of time doing rigorous research into the right kind of

---

[4] Defendants did not ask all the Plaintiffs when they received the Order or learned of its holding, but the testimony of those who were asked is illuminating. *See* ECF No. 1269-3, Ex. 3, Piyevsky Tr. at 9:20–10:3 (confirming he read the Order "maybe several weeks" before the deposition); ECF No. 1269-5, Ex. 5, Henry Tr. at 11:13–12:14 (confirming she received the Order weeks before and skimmed parts of it); ECF No. 1269-7, Ex. 7, Williams Tr. at 16:16-17:1 (confirming he read the entire Order); *see also* ECF No. 1269-5, Ex. 5, Henry Tr. at 15:22–16:13 (confirming she understood there would be a vetting process before learning of the selection of MoloLamken).

partner and relayed their findings to me and other lead plaintiffs." ECF No. 1269-8, Ex. 8, Maerlender Tr. at 8:20–9:1. The research "was presented to me in a way that showed thought and care on the part of my counsel," including "materials" and "advice" that reflected "the depth of research that they had committed." Mr. Maerlender then made the "ultimate decision" to proceed with MoloLamken. *Id.* at 14:6-17. (Mr. Maerlender also proceeded to do research on the firm. *Id.* at 9:16–10:19.) The other Plaintiffs offered similar bottom-line testimony:

- Ms. Henry approved MoloLamken based on its "track record and experience especially" in antitrust law. ECF No. 1269-5, Ex. 5, Henry Tr. at 19:21-20:1.

- Mr. Williams spoke to counsel to "understand the process for which they were selecting new counsel" and approved the proposal. ECF No. 1269-7, Ex. 7, Williams Tr. at 19:5-12, 20:23-21:3.

- Ms. Weaver was "given information" on MoloLamken and learned it "may" be new counsel representing the class going forward. ECF No. 1269-4, Ex. 4, Weaver Tr. at 15:3-11.

- Mr. Leo-Guerra understood counsel undertook a "proper vetting process" before proposing MoloLamken. ECF No. 1269-6, Ex. 6, Leo-Guerra Tr. at 19:7-11.

- Mr. Piyevsky understood that FNF and BMPC had conducted a "series of interviews" before recommending MoloLamken. ECF No. 1269-3, Ex. 3, Piyevsky Tr. at 15:9-16.

- Mr. Corzo understood counsel's "national search" of firms with certain expertise, resulting in an interview process from which MoloLamken "really stood out"—an understanding stemming from conversations with counsel through "multiple mediums." ECF No. 1269-9, Ex. 9, Corzo Tr. at 21:2-22:9, 16:17-24.

There was no testimony that any Plaintiff felt uninformed by their counsel or took *any* negative view of their counsel.

Unable to dispute these facts, Defendants offer the empty complaint that the Plaintiffs—none of whom is an antitrust or class-action litigator—were not *personally* involved in interviewing MoloLamken or the other firm candidates.[5] As a threshold matter, the *Court* is the ultimate

---

[5] All of the Plaintiffs have since virtually met with at least one MoloLamken attorney.

arbiter on adequacy. In addition to utilizing their experience as plaintiffs' litigation firms that know the leading players in the antitrust, trial, and class action spaces, FNF and BMPC were best positioned to oversee the search. And they conducted it rigorously: they interviewed approximately a dozen firms and held second-round interviews with several finalists, such as trial experience generally, experience in the Northern District of Illinois in particular, and record of success. ECF No. 1269-2, Ex. 2, 4/24/26 Hr'g Tr. at 6-7. In all, the firms collectively spent many dozens of hours on the selection process. MoloLamken emerged from this process as the clear best choice.

Defendants' remaining arguments about Plaintiffs' testimony have even less to do with MoloLamken's adequacy. Using cherry-picked testimony from one Plaintiff, for example, Defendants suggest (at 7-8) that Plaintiffs had "no contemporaneous knowledge" of the issues raised over this past year. This is false. And the record shows it. Mr. Corzo, for example, testified not only to receiving regular updates, but to learning of the relevant issues "within the last six months," not "a few weeks ago." ECF No. 1269-9, Ex. 9, Corzo Tr. at 13:24–14:18. Similarly, in a series of questions about her understanding of the Order, Ms. Henry testified that counsel had been providing her "regular updates . . . both *before* and after" GLC "stepped down." ECF No. 1269-5, Ex. 5, Henry Tr. at 15:3-11 (emphasis added).

In addition, even if Defendants had not waived arguments pertaining to named Plaintiffs' adequacy—which they did (Order at 8)—Defendants' new arguments do not demonstrate that any of the named Plaintiffs, let alone all of them, are inadequate under Rule 23(a)(4). The standard for adequacy does not require hawk-like supervision of every filing. Plaintiffs' thoughtful approval of MoloLamken here stands in sharp contrast to the cases Defendants cite (at 4 & 10), in which plaintiffs had personal relationships with counsel or were uninvolved *with their own discovery*

*responses* and "indifferent to the truth" of such responses.[6] In reality, "it is important not to over-state the burden placed on the class representative." *Acosta v. Bd. of Trs. of Unite Here Health*, 779 F. Supp. 3d 974, 997 (N.D. Ill. 2025) (finding plaintiffs adequate even though (1) plaintiffs could not recall reviewing discovery and (2) did not understand the term "class representative"). Both prior and current testimony confirm that the Plaintiffs have the requisite "understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to par-ticipate in discovery." *Id.* (internal quotation marks omitted); *see also* ECF No. 752-1 at 38-39.

### III. DEFENDANTS' ATTACKS ON THE ADEQUACY OF FNF AND BMPC DO NOT WARRANT RECONSIDERATION OF THE ORDER AND CONTINUE TO FAIL ON THE MERITS

The Court has already decided that if adequate lead counsel is proposed, then the Court would certify the Class and that FNF and BMPC would remain as co-counsel alongside the new lead counsel. Order at 61-62. The Court explained that "it is *not* the rule that misconduct by class counsel defeats class certification, period." *Id*. at 59. In its balancing of considerations, moreover, the Court explained the value to the Class in having FNF and BMPC serve in the co-counsel role:

> But nothing about this case leads the Court to believe that counsel have sold the class short thus far in connection with either litigation or settlement. Counsel have ably prosecuted the case to date. The class's claims have survived summary judg-ment, and the case is set for trial. And counsel have achieved from twelve of the seventeen settlements very large settlements that have gained $220 million in com-pensation for the class, net of fees.

Order at 60. The Court said "the breach here was a significant one," but:

> On the other side of the ledger, however, removal of all the current attorneys poses a very high risk of impairing the prosecution of the case going forward. The current lawyers have spent years preparing and developing the case; they are familiar with its strengths and weaknesses; and they have developed a strategy that has enabled them to achieve significant settlements and ready the case for trial. The putative class risks being seriously harmed if current counsel are removed completely.

---

[6] *See Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007, 1022 (N.D. Ill. 2017); *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (it is "improper for the lead class counsel to be the son-in-law of the lead class representative").

*Id*. at 61. The Court thus made clear that removing FNF and BMPC as counsel for the Class would *harm* the Class, not help it. *Id*. at 61-62.

Defendants' arguments are premised on their rejection of the Order, and their implicit request for reconsideration without attempting to meet the relevant, demanding standard. This intransigence started during the April 24 hearing, when Mr. Van Kirk claimed that the Court had found FNF and BMPC "inadequate," when it did not so find, prompting the Court to observe that Mr. Van Kirk had thus "basically [made] something up" and that his mischaracterization of the Order was out of "whole cloth." ECF No. 1269-2, Ex. 2, 4/24/26 Hr'g Tr. at 10:5-16. The Court confirmed "that's actually not what it says." *Id*. at 9:24-25. Yet Defendants' lead argument now (at 2) is that FNF and BMPC are inadequate and that this supposed issue "necessitates the denial of the class certification motion." They repeat this argument later (at 6-7), contending that FNF and BMPC's continued participation after the Order "inherently undermines the adequacy of the putative class's representation." Indeed, Defendants double-down, arguing that the *Court* misunderstands its own Order and that, contrary to what the Court in fact held and stated, that it had *actually* found that "existing counsel were not themselves adequate." ECF No. 1269 at 3 n.1.

Defendants decline to cite the relevant law on reconsideration, which sets a high bar. *Anderson v. United Airlines, Inc.*, 2024 WL 1555496, at *2 (N.D. Ill. Apr. 10, 2024) (Kennelly, J.), *aff'd*, 140 F.4th 385 (7th Cir. 2025). Such a motion is not an occasion for "rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Id*. (internal quotation marks omitted). Defendants do not even attempt to identify new facts about counsel's adequacy or controlling law to surmount this hurdle. Defendants repeatedly demand that the Court revisit the Order, invoking invented burdens on Plaintiffs about the selection of new lead counsel. These arguments all lack merit.

11

*First*, Defendants regurgitate the same, incorrect, inadequacy standard under Rule 23(a)(4) that they have previously proposed. At bottom, Defendants assert that any "misconduct" requires denial of class certification. *See, e.g.*, ECF Nos. 908, 948. That is not the standard. As this Court ruled, Order at 31, only when misconduct "jeopardizes the court's ability to reach a just and proper outcome in the case" does it warrant denial of class certification. *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 (7th Cir. 2013); *see also Physicians Healthsource, Inc. v. Allscripts Health Solutions, Inc.*, 254 F. Supp. 3d 1007, 1032 (N.D. Ill. 2017). This is not a case where, for instance, "counsel failed to obey a judge's orders, failed to heed a judge's instructions, failed to honor a settlement agreement, failed to comply with discovery orders, failed to adhere to filing requirements, and filed frivolous motions." *Kingsepp v. Wesleyan Univ.*, 1992 WL 230136, at *2 (S.D.N.Y. Sept. 3, 1992) (cited at Opp. 3-4).[7]

*Second*, Defendants (at 2) attack Plaintiffs for "offer[ing] no authority for the idea that adequacy can be cured by adding new counsel." This is an unmeritorious attack on the Court's decision to grant class certification if adequate new lead counsel is identified. Weighing the harsh result of a denial against what is best for the class, courts routinely deny class certification without

---

[7] The other cases Defendants cite (at 4 & n.2) have similar significant misconduct and circumstances not remotely present here. *See Physicians Healthsource, Inc. v. Masimo Corp.*, 2019 WL 8138043, at *12 (C.D. Cal. Nov. 21, 2019) (class representative "conceded during his deposition that he provided several untrue discovery responses" and "deleted emails daily" and "did not implement a litigation hold"); *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 160-61 (S.D.N.Y. 2010) ("Plaintiff failed to disclose at least seven prior or pending lawsuits, failed to disclose two other instances in which she received a credit card receipt that violated the Fair and Accurate Credit Transactions Act, and seriously misrepresented her relationship with both of the proposed class counsels," and counsel "allowed—or even encouraged—the false testimony" on these topics); *Walter v. Palisades Collection, LLC*, 2010 WL 308978, at *9-11 (E.D. Pa. Jan. 26, 2010) (one proposed class counsel was "disbarred upon consent" for eight years, during which time, the other counsel—his daughter—engaged in the "unlicensed practice of law" for him); *Bodner v. Oreck Direct, LLC*, 2007 WL 1223777, at *2-3 (N.D. Cal. Apr. 25, 2007) (noting that other courts had repeatedly found counsel had improper connections to plaintiffs and that the proposed plaintiff here had never met his attorney before deposition and never read the complaint).

12

prejudice pending the curing of identified defects,[8] including substituting or supplementing coun-

sel.[9] Defendants in fact cite a case that makes this very point. Contrary to Defendants' argument

(at 3-4) that courts do not permit a "second bite at the apple," in *Kulig v. Midland Funding, LLC*,

the court invited the plaintiff to "request leave to renew the motion for class certification" *with a*

*new lead counsel*. 2014 WL 5017817, at *6 (S.D.N.Y. Sept. 26, 2014).

Defendants' tired and failed arguments—which they present no basis for relitigating—con-

firm the well-settled law that defense arguments about the failure or inability of class counsel to

serve the interests of the class are to be taken with large grains of salt.[10] The Court should be

particularly skeptical of the "pious countenance" of defense counsel. They have not shown them-

selves to be credible or reliable voices on what is in the best interests of the Class that they have

spent years, and that their clients have spent tens of millions of dollars, attempting to defeat.

---

[8] *Hossfeld v. Allstate Ins. Co.*, 2024 WL 325337, at *5 (N.D. Ill. Jan. 29, 2024) ("[T]he discretion conferred by Rule 23(c)(1)(C) extends to denying a motion for class certification without prejudice, which sometimes occurs after the plaintiff's first attempt at a class certification motion."); *see also Baines v. BP Prods. N. Am., Inc.*, 2026 WL 942225, at *2 (N.D. Ind. Apr. 8, 2026) (denying class certification without prejudice); *Lucero v. Credit Union Ret. Plan Ass'n*, 2025 WL 3163833, at *2 (W.D. Wis. Mar. 18, 2025) (same).

[9] *See, e.g.*, *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 296 F.R.D. 299, 320 (D.N.J. 2013) (granting class certification over adequacy concerns after one firm was removed from consideration at oral argument and thus "not candidates for class counsel"); *Rodolico v. Unisys Corp.*, 189 F.R.D. 245, 255 (E.D.N.Y. 1999) ("As the Court has disqualified the putative plaintiffs counsel, the Court deems the motion for class certification withdrawn, without prejudice, and with leave to renew when new counsel is obtained."); *Hughes v. Baird & Warner, Inc.*, 30 Fed. R. Serv. 2d 704 (N.D. Ill. 1980) (granting a successive class certification motion after establishing the "new counsel has no such relationship with the plaintiff").

[10] *See* Order at 59-60; *Reliable Money Order*, 704 F.3d at 499 ("[T]he ABA Model Rules, the Illinois Rules, and the Wisconsin Rules all warn that 'the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.'"); *Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130, U. A.*, 657 F.2d 890, 895 (7th Cir. 1981) ("[I]t is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house."); *see also In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 309 (D. Md. 2022) ("As several courts have noted, a defendant's efforts to challenge the adequacy of class counsel should be viewed with skepticism."); *accord In re Thorpe*, 755 F. App'x 177, 182-83 (3d Cir. 2018); *Bullar v. Archway Skydiving Ctr., Inc.*, 2013 WL 12642118, at *3 (S.D. Ill. Dec. 20, 2013).

IV. **DEFENDANTS' RECENT DEPOSITIONS OF THE PLAINTIFFS WERE PART OF THEIR DESPERATE EFFORT TO DELAY THE TRIAL**

In seeking to justify the new depositions of the named Plaintiffs, defense counsel misrepresented their purpose. Alluding to MoloLamken, defense counsel represented that they wanted to ask Plaintiffs "about their involvement in the selection of counsel," ECF No. 1269-2, Ex. 2, 4/24/26 Hr'g Tr. at 10:23-11:3, to which scope the Court agreed, *see id*. at 11:19-23. Defense counsel then proceeded to ask *all manner* of questions beyond the scope of what they had proposed and what the Court had ordered. Defendants focused little on the selection of MoloLamken and instead engaged in unsanctioned fishing expeditions for soundbites. The examinations far exceeded the Court-imposed scope, as Defendants asked questions on topics such as:

- Their personal opinions on MoloLamken's representation of Elon Musk;

- How frequently they receive updates from counsel;

- Their understanding of Defendants' allegations of misconduct over the last year;

- Their understanding of the Order;

- Their review of the fee applications addressed in the Order;

- Their understanding of the status of GLC's representation; and

- If they will make sure that MoloLamken can resolve the "candor problem."

Given Defendants' approach, it is no wonder that all but one of the depositions lasted the full fifteen minutes (one went thirteen minutes), despite the Court's following admonishment: "If it takes you more than seven, then you're doing something wrong." ECF No. 1269-2, Ex. 2, 4/24/26 Hr'g Tr. at 11:14-18. Defense counsel ignored the Court here, as well.

## CONCLUSION

Plaintiffs respectfully submit, for all of the foregoing reasons, that the Court should approve the appointment of MoloLamken LLP as new lead class counsel with FNF and BMPC as

14

co-counsel, and thus grant the motion for class certification on the terms set forth in the Order dated March 31, 2026.

Dated: May 22, 2026                                              Respectfully submitted,

/s/ Edward J. Normand                                           /s/ Eric L. Cramer
Devin "Vel" Freedman                                           Eric L. Cramer
Edward J. Normand                                              David Langer
Richard Cipolla                                                Jeremy Gradwohl
Joseph Delich                                                  **BERGER MONTAGUE PC**
**FREEDMAN NORMAND**                                           1818 Market Street, Suite 3600
  **FRIEDLAND LLP**                                            Philadelphia, PA 19103
155 E. 44th Street, Suite 915                                  Tel: (215) 875-3000
New York, NY 10017                                             ecramer@bergermontague.com
Tel: (646) 494-2900                                            dlanger@bergermontague.com
vel@fnf.law                                                    jgradwohl@bergermontague.com
tnormand@fnf.law
rcipolla@fnf.law                                               Richard Schwartz
jdelich@fnf.law                                                **BERGER MONTAGUE PC**
                                                               110 N. Wacker Drive
                                                               Chicago, IL 60606
                                                               Tel: (773) 257-0255
                                                               rschwartz@bergermontague.com

                                                               Robert E. Litan
                                                               **BERGER MONTAGUE PC**
                                                               1001 G Street, NW, Suite 400 East
                                                               Washington, DC 20001
                                                               Tel: (202) 559-9745
                                                               rlitan@bergermontague.com

15