**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANDREW CORZO, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 22 C 125** |
| | ) | |
| **BROWN UNIVERSITY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER ON MOTION FOR CLASS CERTIFICATION**

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this antitrust suit have moved for class certification. In a decision issued a little over two months ago, the Court found "that plaintiffs have satisfied all of the requirements for class certification, save one: adequacy of counsel." *See Corzo v. Brown Univ.*, No. 22 C 125, 2026 WL 881598, at *1 (N.D. Ill. Mar. 31, 2026).

On that point, the Court found that the proposed class counsel—three law firms—had made or participated, at least tacitly, in misrepresentations to the Court regarding the fee arrangements of one of the three firms with a litigation funder. The firm whose fee arrangements had been misrepresented—Gilbert Litigators and Counselors (GLC)—withdrew from consideration as class counsel. The Court "deferred final ruling on the motion for class certification while affording plaintiffs an opportunity to bring in new, and adequate, proposed lead class counsel." *Id.*

Plaintiffs have now proposed appointment of Steven Molo and MoloLamken LLP as lead class counsel, with two of the original three law firms representing plaintiffs, Freedman Normand Friedland LLP (FNF) and Berger Montague PC (Berger), remaining

in the case as co-counsel for the class, but not in a lead role.  The remaining defendants who have not settled—the University of Notre Dame, the University of Pennsylvania, Cornell University, and Georgetown University—oppose this and contend that class certification should be denied.

Familiarity with the Court's March 31 decision—which ran to sixty-two pages—is assumed.  The Court will, however, directly quote here the section of the decision most relevant to the matter now before the Court:

> It is a separate question . . . whether [counsels'] misstatements *actually* influenced the Court.  The Court acknowledges that it is assessing this with hindsight.  But the Court concludes that counsels' misstatements regarding the purportedly contingent nature of GLC's work and its purportedly unreimbursed expense outlays did not actually impact the award of fees and expenses in connection with the settlements.  GLC was not the only firm prosecuting the case. The work of FNF and Berger *was* fully contingent; they have represented that they do not have litigation financing arrangements that compensate them for attorney and other professional time.  As for GLC, though it had been paid a very large sum for its time on the case, at the time of the settlements its work was still *partially* contingent: the hourly fee reimbursement was for 40 percent of its lodestar, and it was capped at $14 million.  This meant that the overall percentage for which GLC had been paid started to drop once it had put more than $35 million in time into the case.  Considered globally, class counsel's fees still were overwhelmingly contingent.  In addition, the Court has no basis to believe that awareness of Gilbert's arrangement would have affected the percentage of the award.  This is the one place where the fact that Gilbert was in a "joint venture" with the funder *was* relevant: the funder would recover its advances off the top of the fee award to GLC.  Thus knowledge that GLC had been paid (as Gilbert put it, advanced) $14 million would not have impacted the Court's decision to award a one-third fee.
>
> The same is true regarding the false representations concerning reimbursement for GLC's expense outlays.  There is no scenario where this, by itself or together with the fact that Gilbert's work was not actually performed on a fully contingent basis, would have altered the Court's decision to approve the one-third fee award and the award of expenses proposed by counsel.  To put a finer point on it, the fact that Gilbert bore only a limited risk would not have impacted the Court's decision to approve payment in full for class counsel's litigation expenses, or the one-third fee.

2

This does not mean that counsels' misrepresentations regarding Gilbert's arrangements do not matter.  They do.  The issue here boils down to candor.  Gilbert's affidavits were affirmatively misleading.  And at a minimum, the other two lead counsel, Cramer and Normand, helped pull the wool over the Court's eyes.  Gilbert made affirmative misstatements; Cramer and Normand could have corrected or tried to correct them but did not.  Further, they did not disavow Gilbert's misstatements and, worse, affirmatively adopted them as part of the joint filings.  And even though, as the Court has discussed, these representations had no *actual* effect on its decision, Gilbert, Cramer, and Normand all plainly understood that it *could* affect the fee awards.

That much is clear.  What is less clear is what the Court should do about it.  For defendants, it's simple: do not certify the class.  But it is not that simple.  For one thing, although the Court has not yet certified a class as to the litigating defendants, it's not as if a class doesn't exist.  One does: a settlement class has been certified, and over 74,000 class members have submitted claims to the $220 million fund (net of fees) created on their behalf.  In other words, *there is an existing class*, certified for settlement purposes, that effectively mirrors the class that plaintiffs have moved to certify with regard to the claims against the litigating defendants.  This is not the typical situation where, when class certification is considered, the putative class is an anonymous group of arguably uninterested persons who are not actually before the Court. Rather, the class is already here.  This may not matter in terms of the specific requirements for class certification.  But it does matter from a practical, commonsense standpoint.

The defendants express concern about prejudice to the class as well.  They point out that the false statements about the purportedly contingent nature of GLC's work are linked to the excess-billing issues noted by Bach-y-Rita and the hourly-rate issues involving GLC.  Specifically, defendants argue, this was all part of an effort to get more for counsel at the expense of the class.  The Court cannot disagree with that.  But the solution proposed by defendants gives *them* a windfall and penalizes the alleged victims.  Denial of certification is, of course, the usual result if class counsel are inadequate.  But again, the overwhelming majority of those situations involve still-anonymous groups of people who have not actually chosen to bring claims to court.  That is not the situation here: over 74,000 class members have actually asserted claims.  Denial of class certification would reward the defendants at the expense of those the defendants contend were harmed by counsels' improper actions.

The Court turns to the law regarding attorney misconduct and Rule 23(a).  The Seventh Circuit has stated that "[w]hen class counsel have demonstrated a lack of integrity, a court can have no confidence that they will act as conscientious fiduciaries of the class." *Creative Montessori Learning Centers v. Ashford Gear LLC,* 662 F.3d 913, 918 (7th Cir. 2011); *see also, e.g., Eubank v. Pella Corp.*, 753 F.3d 718, 724 (7th Cir. 2014) (quoting *Ashford Gear*).  The Seventh Circuit has explained this concern as follows:

3

> [U]nethical conduct by class counsel implicates class certification because class counsel serves as a fiduciary for the unnamed plaintiffs.  Class actions present strong incentives for counsel to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers.  Thus, when class counsel have demonstrated a lack of integrity through misconduct and unethical action, a court can have no confidence that they will act as conscientious fiduciaries of the class.

*Reliable Money Ord., Inc. v. McKnight Sales Co.*, 704 F.3d 489, 495 (7th Cir. 2013) (cleaned up).

Given this concern, it is *not* the rule that misconduct by class counsel defeats class certification, period.  As the court stated in *Reliable Money Order*,

> Not any ethical breach justifies the grave option of denying class certification.  [M]isconduct that prejudices the class or creates a direct conflict between counsel and the class requires such denial . . . .  [And] even "serious" or "major" ethical violations—not prejudicial to the class— can require denial of class certification. . . .  That does not mean, however, that an ethical violation always requires denial of certification . . . .  A "slight" or "harmless" breach of ethics will not impugn the adequacy of class counsel. . . .  This conclusion makes sense: the ABA Model Rules, the Illinois Rules, and the Wisconsin Rules all warn that "the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons."  Thus, unless the violation prejudices one of the parties or undermines the court's ability to resolve the case justly, state bar authorities—not a court—should enforce the rules and sanction the attorney.

*Id.* (citations omitted).  The court stated the governing rule as follows: "[U]nethical conduct, not necessarily prejudicial to the class, nevertheless raises a 'serious doubt' about the adequacy of class counsel when the misconduct jeopardizes the court's ability to reach a just and proper outcome in the case."  *Id.*

Conflicts between counsel and an actual or putative class are more or less inherent in the relationship.  The class—to the extent it is engaged in the matter, which generally is not the case—wants fair compensation for the wrongs it suffered.  Counsel have an interest in being paid for their time.  Thus, as the Seventh Circuit recognized, counsel have an incentive to sell the class short in return for getting paid.

But nothing about this case leads the Court to believe that counsel have sold the class short thus far in connection with either litigation or settlement.

Counsel have ably prosecuted the case to date.  The class's claims have survived summary judgment, and the case is set for trial.  And counsel have achieved from twelve of the seventeen defendants very large settlements that have gained $220 million in compensation for the class, net of fees.

Going forward, it is unlikely that counsels' lack of candor with the Court would impact their zealous prosecution of the case from a litigation standpoint.  And regarding settlement, any opportunities for the class to be sold short from here on in are likely quite limited.  The prospect of settlement with the five remaining defendants appears to be remote.  Based on discussions the Court has had with the parties, including a settlement conference involving plaintiffs' counsel and the remaining defendants, plaintiffs' counsel have insisted on settlement payments higher than those from the defendants who settled earlier on, and defendants have made it clear that they are unwilling to pay anything close to what earlier settling defendants did.  This posture may, of course, change on one side or both. But settlement—and thus the opportunity for an attempted "sellout" by counsel—appears relatively unlikely at this point.

That said, the breach here was a significant one.   The ability of a court to trust counsel matters, particularly when counsel represents a class. Here counsel have impaired that trust in a significant way.  And there is no way to predict with certainty that this will not matter going forward.  If nothing else, there is a risk that current class counsel may pull their punches to avoid a perceived risk of antagonizing the Court.

On the other side of the ledger, however, removal of all the current attorneys poses a very high risk of impairing the prosecution of the case going forward.  The current lawyers have spent years preparing and developing the case; they are familiar with its strengths and weaknesses; and they have developed a strategy that has enabled them to achieve significant settlements and ready the case for trial.  The putative class risks being seriously harmed if current counsel are removed completely.

Weighing these competing concerns is not easy.  Given counsels' candor problem, the Court concludes that there is at least significant doubt that current class counsel, even with GLC out of the mix, are adequate within the meaning of Rule 23(a).  But the level of doubt is insufficient to require their removal entirely. Instead the Court concludes that the appropriate measure—both to protect the class and avoid unfairly prejudicing it—is to require bringing in new lead counsel outside the current group.  If this is done, and the new counsel is shown to be adequate, then the Court will grant the motion for class certification and appoint the new counsel as the lead, with FNF and Berger as co-counsel.  If new and adequate lead counsel is not brought in, then the balance will tip the other way, and the Court will deny the motion for class certification.

The Court therefore defers entry of a ruling on the motion for class certification. Plaintiffs are given 21 days, to file a submission proposing new lead class counsel.

*Corzo*, 2026 WL 881598, at \*26-28.

To summarize certain salient points, the Court:

- emphasized that counsel had demonstrated a lack of candor vis-à-vis the Court;

- found that counsels' misstatements had no actual impact on the Court's decisions regarding attorney's fee and expense awards;

- expressed concern about penalizing the putative class for counsel's conduct by denying class certification outright;

- concluded that there was no basis to find that counsels' conduct had prejudiced the class in the litigation thus far;

- found it "unlikely that counsels' lack of candor with the Court would impact their zealous prosecution of the case from a litigation standpoint" and that it was unlikely that counsels' actions would lead them to "sell out" the class in settlement;

- found there was "a risk that current class counsel may pull their punches to avoid a perceived risk of antagonizing the Court" but that this had to be balanced with the proposition that "removal of all the current attorneys poses a very high risk of impairing the prosecution of the case going forward" and thus unfairly prejudicing the class; and

- found there was "at least significant doubt" that current class counsel were adequate but that "the level of doubt is insufficient to require their removal entirely," counseling instead, to avoid unfairly prejudicing the class, in favor of

6

attempting to "bring[ ] in new lead counsel outside the current group" and then determine if the proposed new lead counsel were shown to be adequate.

To put a bit of a finer point on it, the Court found that the then-proposed class counsel, including FNF and Berger, had committed misconduct, but importantly, that this misconduct *had not* prejudiced the class. And the Court did not find that the misconduct created an actual conflict between FNF and Berger on the one hand and the class on the other. For these reasons, defendants' reference to the principle—also discussed by the Court in its earlier opinion—that "misconduct *that prejudices the class or creates a direct conflict between counsel and the class* requires [ ] denial" of class certification, *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704, F.3d 489, 498 (7th Cir. 2015) (emphasis added), simply does not carry the day here. *See* Defs.' Brief in Resp. to Pls.' Submission Regarding New Lead Counsel (dkt. 1269) at 2.

Instead, the Court found only a potential for a conflict between the remaining counsel and the class, and a hypothetical one at that: a concern that counsel might be overly cautious to avoid antagonizing the Court going forward. On this, the Court's conclusion, not said expressly but implicit in its order, was that if new lead class counsel were brought in, this would sufficiently address the potential for a conflict involving the existing counsel "pulling [their] punches," and the even more hypothetical possibility of counsel pushing for a less-than-adequate settlement with the remaining defendants.

The proposed new lead class counsel, Steven Molo and the law firm MoloLamken LLP, are unquestionably adequate as class counsel within the meaning of Rule 23(a). Indeed, the defendants do not argue otherwise. Nor could they do so viably. Mr. Molo and the MoloLamken firm are highly experienced and skilled in

7

complex litigation, including class representation; they have a stellar reputation of long standing; and they will be operating purely on a contingent fee basis, meaning that the firm's financial incentive is to maximize recovery for the class.

Instead, the defendants' arguments involve the fact that the Court gave plaintiffs and the remaining counsel an opportunity to correct the potential flaws the Court saw in the previous class counsel configuration; the fact that FNF and Berger were involved in selecting the new lead counsel; and the lack of involvement up front by the named plaintiffs in the selection process. *See* Defs.' Brief at 1 (listing these three points). The Court addresses each of these points in turn.

First, there is no logical reason why a proposal for appointment of class counsel should be "one and done," as defendants effectively contend. That is not the case for class *representatives*: when the designated representative is dismissed for reasons specific to him, another representative may be substituted; the case is not automatically dismissed. *See Matz v. Household Int'l Tax Reduction Inv. Plan*, 774 F.3d 1141, 1145 (7th Cir. 2014) ("Ordinarily when a class representative is dismissed on grounds applicable to him but not to all other members of the class, the suit is not dismissed but rather another member of the class is substituted as class representative."). The Court sees no good reason why the same should not be true for counsel, at least in the circumstances present here. *See E. Maine Baptist Church v. Regions Bank*, No. 4:05-CV-962, 2007 WL 3022220, at *8 (E.D. Mo. Oct. 12, 2007). *See generally* Manual for Complex Litig., Fourth, § 21.272 (Fed. Jud. Ctr. 2004) ("If no application would provide adequate representation, the judge may refuse to certify the class. *If the class appears otherwise certifiable, however, refusal to certify solely on a finding of inadequate*

*representation is very problematic.*" (emphasis added)); 1 Newberg & Rubenstein on Class Actions § 3.87 at 721-22 & nn. 6, 7 (6th ed. 2022).  This is particularly so given the basis upon which the Court acted in this case:  largely the *potential* for a concern about problems that could arise in the future, as opposed to a current inadequacy that actually impacted FNF and Berger's vigorous representation of the class.

On the second and third points raised by defendants, the Court is not persuaded that Berger and FNF's involvement in identifying, screening, and selecting additional counsel has tainted the new proposed lead counsel or that the process was flawed because the named plaintiffs were not directly involved.[1]  Realism has to play a role here:  one cannot rationally expect the named plaintiffs, even if they may be considerably more sophisticated than the usual class representative, to be able to identify, solicit, and screen proposed lead counsel for a putative antitrust class action of the magnitude of this case, particularly given the stage of the litigation.  And nothing about the process suggests that FNF and/or Berger sought lead counsel would bend to their will or otherwise act in a subordinate manner.

If the concern involves the independence of Mr. Molo and MoloLamken, the Court is satisfied that they understand that their duty runs to the class, not to the other attorneys representing the class.  Along the same lines, the Court does not see a problem in the fact that existing counsel necessarily will be involved in the process of getting MoloLamken up to speed on a case that has been litigated vigorously for four

---

[1] On a related note, defendants complain that certain plaintiffs were instructed not to answer certain questions during their recent supplemental depositions.  *See* Defs.' Brief at 8.  But defendants chose not to seek relief from the Court or even to bring this to the Court's attention at the time.  They have forfeited any issue that might arise from this point.

9

years.  Specifically, the Court is not persuaded that the preparation process will result in MoloLamken being subordinate to or dependent upon the other firms going forward.  In this regard, the Court itself, during its time in practice, was involved in a number of engagements where the law firm with which it practiced was brought in just before trial to take the case to its conclusion, typically with the ongoing involvement (albeit in a subordinate role) of the attorneys who had been handling the case up to that point. When a new attorney or law firm comes in as, effectively, lead trial counsel in a lawsuit that is at an advanced stage, that doesn't make the new attorneys subordinate to or dependent on those who have been in the case since the outset.  In this situation, the lawyers involved understand that the trial attorneys are being brought in to take over the trial of the case and that this requires serving in a lead and independent role even though other attorneys have been involved from the outset.  Skilled trial attorneys are able to serve in this capacity without being beholden to or unduly influenced by the attorneys who brought the case to the ten yard line.  It appears from plaintiffs' submission that MoloLamken has had this sort of experience as well.  This makes the firm well suited to take over as lead counsel, act independently, and have final decision-making authority, which is what the Court intends by designating MoloLamken as lead class counsel.

The Court also notes, in this regard, defendants' apparent contention that designating Molo Lamken as "lead" counsel for the case is a term with no actual meaning.  The Court disagrees.  *See, e.g.*, Manual for Complex Litigation, *supra*, § 10.221; *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09 C 3690, 2013 WL 6050431, at *6 (N.D. Ill. Nov. 15, 2013) (Dow, J.).  And though not in the text of Rule

10

23, this role is also well known, in a different but similar context, in multidistrict litigation and in litigation under the Private Securities Litigation Reform Act.

### Conclusion

For the reasons stated in the Court's March 31, 2026 Memorandum Opinion and Order and in the present Order, the Court grants plaintiffs' motion for class certification. The Court certifies a class consisting of all persons who have during the "class period" (a) enrolled in one or more of defendants' full-time undergraduate programs, (b) received at least some need-based financial aid from one or more defendants, and (c) whose tuition, fees, room, or board to attend one or more of defendants' full-time undergraduate programs was not fully covered by the combination of any types of grant or merit aid in any undergraduate year. (The term "class period" is defined with particularity in various submissions, *see, e.g.*, dkt. 755-12 ¶ 9 (Hal Singer amended report), and should of course be included in the class notice.) The remaining named plaintiffs are appointed as class representatives and should be identified in the class notice. Steven Molo and MoloLamken LLC are appointed as lead counsel for the class, and Freedman Norman Friedland LLP and Berger Montague PC are appointed as co-counsel for the class. The parties are directed to confer regarding an appropriate form of notice and are to submit an agreed notice, or competing proposals if they cannot agree in good faith, by June 10, 2026. A telephonic status hearing is set for June 12, 2026 at 9:15 a.m., using call-in number 650-479-3207, access code 2305-915-8729.

Date:  June 1, 2026

_____
MATTHEW F. KENNELLY
United States District Judge

11