**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREW CORZO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 22 C 125 |
| | ) | |
| BROWN UNIVERSITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**ORDER ON MOTIONS FOR CERTIFICATION UNDER 28 U.S.C. § 1292(b)**</u>

On January 12, 2026, the Court denied the defendants' motion for summary judgment in this case. The defendants have filed two motions asking the Court to certify four questions for interlocutory appeal under 28 U.S.C. § 1292(b). The first motion, filed on January 27, asks to certify two questions from the Court's January 12 ruling: the applicability of the "discovery rule" to the statute of limitations governing plaintiffs antitrust claim, and the Court's ruling on defendants' contention that the plaintiffs had not shown antitrust injury. The second motion, filed on April 1, asks to certify two more questions from the same January 12 summary judgment ruling, both involving what is referred to in prior rulings as the "section 568 exemption" under the antitrust laws. On the latter points, the defendants attempted to take an interlocutory appeal without a section 1292(b) certification, but the court of appeals rebuffed this attempt.

The Court tabled consideration of the section 1292(b) motions while addressing plaintiffs' motion for class certification, on which the Court held a continued hearing on March 11, received a motion to amend filed by plaintiffs on March 19 and a response

filed by defendants thereafter, issued a partial ruling on March 31, considered further submissions filed in mid-April, allowed further discovery by defendants conducted in late April and early May, considered further briefing filed in mid-May, and issued a final ruling on June 1.  The Court now addresses both of defendants' section 1292(b) motions. Familiarity with the case is assumed.

### Discussion

Before certifying an order for interlocutory appeal, a court must find that "[its] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  The Seventh Circuit has described the criteria for granting a section 1292(b) motion as follows:

> There are four statutory criteria for the grant of a section 1292(b) petition to guide the district court: there must be a question of law, it must be controlling, it must be contestable, and its resolution must promise to speed up the litigation.  There is also a nonstatutory requirement: the petition must be filed in the district court within a reasonable time after the order sought to be appealed.

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (citation omitted).

Assessment of whether a party has satisfied section 1292(b)'s express requirement of a "substantial ground for different of opinion" appropriately takes into account the general rule against interlocutory appeals.  Specifically, a party seeking an interlocutory appeal must show that "'exceptional circumstances justify the departure from the basic policy of postponing appellate  review until after the entry of final judgment.'"  *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (quoting *Fisons Ltd. v. United States*, 458 F.2d 1241, 1248 (7th Cir. 1972)).  Section 1292(b) is "'not

2

intended merely to provide review of difficult rulings in hard cases."' *Union County v. Piper Jaffray & Co.*, 525 F.3d 643, 646 (8th Cir. 2008) (quoting *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (per curiam)).

## 1.    Defendants' first motion

### a.    Discovery rule

In their motion for summary judgment, defendants contended, among other things, that plaintiffs had not filed suit within the four-year limitations period governing federal antitrust claims. *See* 15 U.S.C. § 15b; *Corzo v. Brown Univ.*, No. 22 C 125, 2026 WL 91424, at *19-20 (N.D. Ill. Jan. 12, 2026). In its decision denying defendants' motion for summary judgment, the Court concluded—based on controlling Seventh Circuit authority—that the "discovery rule" applies to the antitrust statute of limitations. That rule "postpones accrual [of the plaintiffs' cause of action] until the plaintiff discovers or should have discovered the injury and its cause through the exercise of reasonable diligence." *Corzo*, 2026 WL 91424, at *20. The Court further concluded that "what exactly a reasonable [plaintiff] knew or should have known . . . involves questions of fact that, on this record, the Court cannot resolve." *Id.* at *21. Defendants seek review of the applicability of the discovery rule in antitrust cases and, it appears, the manner in which the Court applied it here.

The Court declines to certify the summary judgment order for interlocutory review regarding the statute of limitations issues. Starting with the first point referenced by defendants, the use of the discovery rule is not a question "as to which there is a substantial ground for difference of opinion" within the meaning of section 1292(b). The applicability of the discovery rule in antitrust cases is settled law in this circuit: in the

3

summary judgment ruling, the Court relied on a series of Seventh Circuit cases, including *In re Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990); and *Stoleson v. United States*, 629 F.2d 1265, 1269 (7th Cir. 1980). All of these cases confirm that the discovery rule applies in antitrust cases. *See Corzo*, 2026 WL 91424, at *20.

The defendants argue that this Seventh Circuit precedent is called into question by two Supreme Court decisions, *Rotkiske v. Klemm,* 589 U.S. 8, 14 (2019), and *Gabelli v. SEC*, 568 U.S. 442 (2013). But neither of these cases involved the antitrust statute of limitations. *Rotkiske*—as discussed in the Court's summary judgment ruling—involved the Fair Debt Collection Practices Act. That law's limitations provision is worded in a way that is materially different from the Clayton Act. The FDCPA says the limitations period runs "from the date on which the violation occurs." *Rotkiske*, 589 U.S. at 14. By contrast, the Clayton Act says a lawsuit is time-barred "unless commenced within four years *after the cause of action accrued*." 15 U.S.C. § 15b (emphasis added).

*Gabelli v. SEC*, which likewise was not an antitrust case, involved a materially different question from the one presented here: whether *the government* can invoke the discovery rule in enforcement actions by the Securities and Exchange Commission. The Supreme Court's ruling emphasized that context: "we have never applied the discovery rule in this context, where the plaintiff is not a defrauded victim seeking recompense, but is instead the Government bringing an enforcement action for civil penalties." *Gabelli*, 568 U.S. at 449. That is an entirely different question from the one presented here. It is significant that even after *Rotkiske* and *Gabelli*, the Seventh Circuit has applied the discovery rule in a civil antitrust case. *See Vazquez v. Ind. Univ. Health*,

4

40 F.4th 582, 588 (7th Cir. 2022).

Under the circumstances, the possibility that the Seventh Circuit would jettison its established precedent does not give rise to a "substantial ground for difference of opinion" on the applicability of the discovery rule to the antitrust statute of limitations.[1]

The defendants also argue that the question of *how* the Court applied the discovery rule ought to be certified for interlocutory appeal. They contend that the Court created a special application of the discovery rule for complex antitrust cases. *See* dkt. 1216 at 7. That's false. The Court certainly considered the complexity of the situation that a reasonable plaintiff would have to assess in determining that she had been injured and the injury's cause, *see Corzo*, 2026 WL 91424, at *20-21, but that doesn't amount to creating a special rule for complex cases. That aside, the manner in which the Court assessed the application of the discovery rule to the facts presented on summary judgment was a highly fact-bound ruling that does not qualify as a "question of law" subject to certification under section 1292(b). *See Ahrenholz*, 219 F.3d at 676 ("question of law" in section 1292(b) does not "ha[ve] reference . . . to whether the party opposing summary judgment had raised a genuine issue of material fact"); *see also Marseilles Hydro Power, LLC v. Marseilles Land and Water Co.*, 518 F.3d 459, 463 (7th

---

[1] Perhaps—though they do not make the point—the defendants' contention is that even if the Seventh Circuit stays its previous course, the Supreme Court might be persuaded, given a conflict in the circuits, to grant *certiorari* and resolve the conflict. But in that scenario, we would be talking about staying the case for a very extended period. This would undercut the requirement under section 1292(b) that an interlocutory appeal would materially *advance* the ultimate termination of the litigation. As the Court will discuss below, that's an issue even without factoring in time for Supreme Court review, but on this particular contention the delay factor would defeat section 1292(b) certification even if it were otherwise warranted.

Cir. 2008) (decision that "deal[s] with issues of fact as well as issues of law" does not fit section 1292(b)'s standard). This question likewise does not meet the standard for certification.

The Court also notes that for a significant part of the class, resort to the discovery rule is not needed to avoid the statute of limitations, as those class members filed suit were injured within four years of the date the suit was filed. Thus a ruling in defendants' favor regarding the discovery rule and its application would not prevent a trial. Because a trial would be required one way or the other, allowing an interlocutory appeal on the limitations issues would not materially advancing the *termination* of the litigation, as § 1292(b) requires by its terms.

### b. Antitrust injury

A plaintiff in an antitrust case must suffer an anticompetitive injury that flows from the defendant's actions. *See, e.g., Chi. Studio Rental, Inc. v. Ill. Dep't of Commerce*, 940 F.3d 971, 978 (7th Cir. 2019). Generally speaking, this means that the plaintiff must show that it had to pay a price that exceeded the competitive price due to the price-fixing conspiracy.

The present case involves the alleged inflation of the effective cost of college tuition due to the claimed antitrust conspiracy. The defendants contended on summary judgment that the plaintiffs could not show an antitrust injury because they—or at least most of them—did not pay tuition with their own money; their bills were paid with money from their parents. The Court overruled this contention, concluding as follows:

> The students are the ones paying because they are the only ones with a legal obligation to the universities. The fact that the parents are the effective source of the money does not change that fact. *See In re Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*, 05MD-1720 (MKB), 2024 WL 1014159, at *12

6

(E.D.N.Y. Mar. 8, 2024) ("Defendants' 'who pays' rule 'would require [the Court] to rewrite the rationale of Illinois Brick and to gut the longstanding bright-line rule.'" (quoting *Apple*, 587 U.S. at 282)).  Nor does it matter that the parents mailed cash or provided their card information directly, rather than giving it to the students first.  Thus the students have standing to sue the universities, not the parents.  Otherwise, antitrust standing would turn on factual differences that have no relation to any legitimate purpose of the doctrine.

*Corzo*, 2026 WL 91424, at *19.

To elaborate just a bit:  College tuition costs are often paid by a student's parents or family, but there is no serious dispute that the obligor is the student herself.  The Court concluded that the fact that the students got the money from another source did not defeat their claim of antitrust injury.  Whether the payment by the parents is considered a gift to the student or a loan, the obligation to pay lies not with the parents, but with the student.

Defendants cite no caselaw that actually goes the other way.  As plaintiffs aptly put it:  "Defendants do not cite any decision holding that a plaintiff who has the legal obligation to pay the defendant, but who had the payment made by a third party, lacks antitrust standing . . . ."  Dkt. 1218 at 14.  That's the question that was presented.  Defendants certainly believe that the Court made an incorrect ruling, but disagreement with a ruling does not translate to grounds for interlocutory appeal under section 1292(b).  The Court concludes that defendants have not shown "a substantial ground for difference of opinion" on this question.

**2.      Defendants' second motion**

Both questions on which defendants seek section 1292(b) certification in their second motion involve the no-longer-in-effect "568 exemption" to the antitrust laws.  This temporary exemption was enacted in 1994.  It provides:

7

> (a) TEMPORARY EXEMPTION.—It shall not be unlawful under the antitrust laws for 2 or more institutions of higher education at which all students admitted are admitted on a need-blind basis, to agree or attempt to agree—
>
> (1) to award such students financial aid only on the basis of demonstrated financial need for such aid;
>
> (2) to use common principles of analysis for determining the need of such students for financial aid [subject to independent professional judgment];
>
> (3) to use a common aid application form for need-based financial aid for such students if the agreement to use such form does not restrict such institutions in their requesting from such students, or in their using, data in addition to the data requested on such form; or
>
> (4) to exchange through an independent third party, before awarding need-based financial aid . . ., [information about students' financial need].

Improving America's Schools Act of 1994, Pub. L. No. 103-382, § 568(a), 108 Stat. 3518, 4060 (1994).

In their second motion, defendants seek certification of two questions on which they take issue with the Court's summary judgment ruling. The first involves whether all participating institutions must be need-blind in order for any participating institution to benefit from the 568 exemption. The second involves the definition of need-blind for purposes of the exemption.

On summary judgment, the Court answered the first of these questions yes. On this point, the Court adopted the exact same ruling it made more than three years earlier in denying defendants' motion to dismiss. *See Corzo*, 2026 WL 91424, at *18 (citing *Carbone v. Brown Univ.*, 621 F. Supp. 878, 887-89 (N.D. Ill. 2022)). This particular question involves statutory interpretation, and there was nothing different about it on summary judgment as compared to the motion to dismiss. Defendants did not seek section 1292(b) certification back in 2022. In the Court's view, their request to

certify the exact same question now, only months before trial, rather than when they had the opportunity three-plus years earlier, makes the request untimely.

Timeliness aside, the Court read section 568 in accordance with its plain language: the exemption protects only agreement between "2 or more institutions . . . at which all students admitted on a need-blind basis." That finding—as the Court ruled over three years ago and again in January—plainly requires all of the "2 or more institutions" to admit all students on a need-blind basis. Reading it the way defendants propose, that an institution is protected if *it* admits all students on a need-blind basis without regard to whether the agreement's other participants do, effectively requires rewriting the exemption. But antitrust exemptions are strictly construed, *see Fed. Mar. Comm'n v. Seatrain Lanes, Inc.*, 411 U.S. 726, 733 (1973), and defendants' proposed interpretation runs afoul of that principle. The Court concludes that this question does not qualify as one on which there is "a substantial ground for difference of opinion" as required under section 1292(b).

The other question on which the defendants seek certification involves the definition of the statutory term "need-blind." Here is how the defendants put it: "a court must determine whether engaging in so-called 'wealth favoritism' by considering whether a student's family has the capacity to donate to an institution means that the institution is not 'need-blind' under Section 568." Dkt. 1242 at 4.

In arguing for summary judgment, the defendants contended that "need-blind" merely means that the school does not disadvantage applicants 'because of their decision to seek financial aid or information in their financial aid application.'" *Corzo*, 2026 WL 91424, at *19 (quoting Defs.' Reply in Supp. of Mot. for Summ. J. at 23). The

9

Court concluded that this argument "is contrary to the statutory text." *Id.* The 568 exemption contains an express definition of "need-blind": "the term 'on a need-blind basis' means without regard to the financial circumstances of the student involved *or the student's family*." § 568(c)(1) (emphasis added). The Court concluded that "[a] school that provides preferential treatment to an applicant with a wealthy background is plainly not admitting all students 'without regard to the financial circumstances of the student involved or the student's family.'" *Corzo*, 2026 WL 91424, at *19. Defendants relied on the exemption's legislative history, but that same history expressly stated that it is not "'elaborating on the need-blind admissions standard in the statutory text.'" *Id.* (quoting H.R. Conf. Rep. 104-761 (1994)).

In their motion for certification, defendants repeat (and elaborate upon) the arguments they made in seeking summary judgment. But they cite no contrary authority. It is true that the interpretation of the 568 exemption—which, again, is now no longer in effect—may involve a question of first impression, but as the Court has expressed elsewhere:

> The fact that a question is unsettled or that a district judge's decision may involve a matter of first impression may make the issue more difficult and debatable, but it does not, in the Court's view, make section 1292(b) certification appropriate without more. If the contrary were true, an interlocutory appeal would be authorized (for example) any time a relatively new statute is applied for the first time, or even the second or third time, in a particular context. This would lead to an expansion of the number of interlocutory appeals beyond what section 1292(b) contemplates.

*United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, No. 11 C 4175, 2012 WL 13209677, at *1 (N.D. Ill. Dec. 10, 2012).

Defendants' disagreement with the Court's reading of the 568 exemption—which effectively requires rewriting, or adding words to, that provision—does not give rise to a

"substantial ground for difference of opinion" warranting certification of the Court's ruling on the section 568 exemption.

### 3. Both motions

Even if the Court had come out differently on the points discussed above, defendants' motions would fail for a separate reason: certifying an interlocutory appeal is unlikely to "materially advance the ultimate termination of the litigation." On some of the points asserted, the case as a whole would not be disposed of even were defendants to prevail on an interlocutory appeal. In other words, a trial still would have to take place.

The more significant point, however, is that certification of any of the questions, or all of them, would effectively upend the trial schedule in this case and would require putting off trial preparation, and the trial itself, by many months, or perhaps even more. This was true in late January, when defendants filed their first motion, and it was true in early April, when they filed their second motion.[2] The trial date of November 2, 2026 was set close to a year ago, in late July 2025. Preparation by counsel for a trial of this sort—including assessing and preparing evidentiary motions, fine-tuning trial strategy, identifying and preparing likely witnesses, and so on—can take months, and may well have begun already. Briefing an interlocutory appeal, even if it had started in (say) March, also takes a matter of months, and the time needed for the court of appeals to set it for argument, hear argument, and then issue a decision, occupies even more time.

In short, there is no question that an interlocutory appeal on the questions

---

[2] In other words, the Court is addressing this point based on the dates the defendants filed the motions, not the date on which the Court is ruling on them, which as earlier noted has been delayed by other events.

11

presented here would require vacating the trial date. That's a significant factor worthy of serious consideration in a case that has already been pending five and one-half years. The Court also notes that at least some of the issues presented in the defendants' motions may be resolved via the trial, or may be narrowed, and all of them will be presented in a more complete factual context at and after a trial. Finally, given the November 2 trial date, the merits-related litigation before this Court is likely to be over and done with by the end of 2026, and any appeals from the final judgment will follow shortly after that. The Court is unpersuaded that granting either or both of the defendants' motions would "materially advance the ultimate termination of the litigation."

### Conclusion

For the reasons stated above, the Court denies the defendants' motions to certify [1216] [1242].

Date: June 25, 2026

_____
MATTHEW F. KENNELLY
United States District Judge