**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>*Defendants*. | Case No. 1:22-cv-00125<br><br>Hon. Matthew F. Kennelly |

**DEFENDANTS' MOTION FOR CLARIFICATION**
**OR IN THE ALTERNATIVE FOR BIFURCATION**

**INTRODUCTION**

In its decision on summary judgment, the Court found based on the "undisputed" facts that "none of the universities may benefit from the 568 Exemption's protections in this case," Dkt. 1210 ("MSJ Opinion") at 40. Despite the clarity of this ruling, plaintiffs have taken the position that the Court did not resolve the Exemption issue and that the parties should present evidence concerning its application at trial. *See Corzo v. Cornell Univ.*, No. 26-1275 (7th Cir.), Dkt. 19 (Pls.' Mot. to Dismiss Appeal) at 10 (arguing that the Court's "order does not preclude Defendants from prevailing at trial under the Exemption"). Accordingly, defendants seek clarification that the Court's ruling on summary judgment obviates any need for the parties to present witnesses or exhibits on the Exemption, submit jury instructions about it, or argue about its applicability at trial. If, notwithstanding its summary judgment decision, the Court concludes it did leave the question open for the jury to decide, defendants request that the Court bifurcate the trial so that evidence relevant only to the Exemption can be heard by the jury separately and only after it hears and resolves the merits of plaintiffs' antitrust claim.

Evidence concerning the applicability or inapplicability of the Exemption is irrelevant to the antitrust issues. Plaintiffs' antitrust claim asserts that defendants conspired and reduced competition on financial aid. Evidence concerning the Exemption deals with whether schools' admissions policies and practices were "need blind" under the definition set forth in the statute, which has no bearing on the merits of plaintiffs' antitrust claim. As the Court itself long ago noted, plaintiffs "wouldn't need" such evidence if the 568 Exemption were not a live issue. *See* Hr'g Tr. (Feb. 8, 2023) at 28:20-22. The Court has already determined that undisputed evidence that certain schools' policies, which took into account waitlist and transfer students' ability to pay as part of their admissions decisions, as well as certain schools giving some consideration during the admissions process to the benefaction of an applicant's relatives, means those schools were not

"need blind" under the statutory definition. The Court has also already ruled that such conduct at any single school renders all defendants ineligible for the Exemption. A presentation of evidence on this topic is thus pointless.

If, despite the Court's prior rulings, the Court concludes the issue is somehow not foreclosed such that the jury will hear a presentation of evidence and argument on the Exemption, trial should be bifurcated so that Exemption-related evidence is not before the jury when it assesses liability and damages. Plaintiffs' case in chief and defendants' non-Exemption defenses can be presented to the jury without ever implicating Exemption-related testimony and evidence, which comes from a different set of witnesses and sources and addresses questions that have no bearing on the merits of the antitrust claim. When deciding whether defendants' financial aid policies and practices violated the antitrust laws, the jury should not be presented with evidence concerning supposed "wealth favoritism" in admissions that is inflammatory and irrelevant to the merits.[1] If defendants prevail on the merits, there will be no need for that evidence to be presented at all, sparing the parties, the Court, and the jury the time and expense of extended proceedings. If plaintiffs prevail on the merits, a separate presentation on the Exemption can occur immediately after liability and damages are determined. In other words, bifurcation would increase efficiency if defendants prevail on the merits, and would avoid undue prejudice to defendants if plaintiffs prevail on the merits.

### BACKGROUND

Plaintiffs allege that defendants violated the antitrust laws by conspiring on principles and methods for determining financial aid recipients' financial need. Under Section 568 of the

---

[1] This is especially true for Notre Dame, which elected not to rely on the Exemption as a basis for its defense.

2

Improving America's Schools Act of 1994, Congress established a statutory exemption to the antitrust laws providing that "[i]t shall not be unlawful … for 2 or more institutions of higher education at which all students admitted are admitted on a need-blind basis, to agree or attempt to agree … to use common principles of analysis for determining the need of such students for financial aid."  Plaintiffs contend that although defendants convened the 568 Group under the auspices of the Exemption, they were not eligible for its protections because they "failed to conduct their admissions practices on a need-blind basis," by "taking into account the financial circumstances" of waitlist and transfer students and "through admissions preferences given to the children of wealthy past or potential donors, such that their chances of admission increase significantly."  Dkt. 106 (Am. Compl.) ¶¶ 8, 134-135, 137-144, 163.  No aspect of the alleged antitrust conspiracy concerns admissions policies or practices.

Six of the seventeen original defendants in this case elected not to assert the Exemption as a defense, including Notre Dame, concluding that the core antitrust claim was meritless and the Exemption was unnecessary to their defense of this action.  Notre Dame believed and continues to believe that it is "need blind," both as the unequivocal record in this case shows the term has been understood by all associated with higher education and as defined in the statute.  But given the Court's conclusion on the Motion to Dismiss that any consideration given to actual or potential benefactor support during the admissions process renders the process not "need blind," Notre Dame stipulated that each year during the relevant time period, one or more applicants received some consideration in admissions due to their relationship with actual or potential university benefactors and agreed not to invoke the Exemption as a defense in these proceedings.  *See* Dkt. 898-30.  Certain other schools did the same.  *See, e.g.*, Dkt. 898-28 (Northwestern); Dkt. 898-35

3

(Vanderbilt).  Meanwhile, plaintiffs took substantial discovery of defendants concerning what plaintiffs have called "wealth favoritism" in admissions.

On May 7, 2025, the five remaining defendants moved for summary judgment.  The four defendants still asserting that their admissions practices qualified them for the protection of the Exemption argued that they were entitled to summary judgment because they "in fact did practice 'need-blind' admissions within the meaning of § 568."  Dkt. 860 at 41.  And they maintained that if any two or more of them were need blind, those schools qualified for the Exemption, even if other members of the 568 Group did not.  *Id.* at 44-47.  Plaintiffs opposed, arguing that the record showed that certain schools considered ability to pay for waitlist or transfer students, Dkt. 893 at 18, that the evidence demonstrated that all schools considered donor status in admissions, *id.*, and that defendants' interpretation of the Exemption was inconsistent with the statutory definition of "need blind," *id.* at 47-49.

The Court denied defendants' motion for summary judgment, including on the "[a]ffirmative defense" of the "568 exemption."  MSJ Opinion at 38.  It held that, "for the 568 Exemption to apply, every institution in the agreement must admit all students on a need-blind basis."  *Id.* at 40.  It further held that "[b]ecause it is undisputed that some of the 568 Group members did not do so, none of the universities may benefit from the 568 Exemption's protections in this case."  *Id.*  The Court went on to conclude, as a matter of law and contrary to defendants' arguments, that the statutory definition of "need blind" precluded consideration of benefaction in admissions.  *Id.* at 40-41.  The Court granted plaintiffs' class certification motion on June 1, 2026, and scheduled the case for trial on November 2, 2026.  Dkts. 923, 1275.

4

**ARGUMENT**

**I.      The Court Should Clarify Whether the Exemption Is a Live Issue Given Its Summary Judgment Ruling Based on the "Undisputed" Evidence**

Defendants respectfully request that the Court clarify whether the Exemption is a live issue to be presented to the jury at trial. At summary judgment, the Court determined unequivocally that "none of the universities may benefit from the 568 Exemption's protections in this case," MSJ Opinion at 40. Despite the Court's definitive ruling on this question, plaintiffs have maintained that the Court's "order does not preclude Defendants from prevailing at trial under the Exemption." *See Corzo v. Cornell Univ.*, No. 26-1275 (7th Cir.), Dkt. 19 (Pls.' Mot. to Dismiss Appeal) at 10. Clarification is necessary because whether the trial will include a presentation of evidence on the Exemption profoundly impacts pretrial motion practice and the scope, length, and structure of the trial, including jury instructions, the number and identity of witnesses and documentary submissions.

There is scant overlap between the evidence and witnesses relevant to the Exemption and the evidence and witnesses relevant to the merits. Plaintiffs allege an antitrust conspiracy on *financial aid*, but accuse defendants of failing to qualify for the Exemption based on their *admissions* policies and practices. No component of the alleged antitrust conspiracy concerns admissions policies. *See* Dkt. 755-12 (Singer Report) at 7; Dkt. 1241 (Class Cert. Opinion) at 11. Admissions and financial aid are distinct functions with largely distinct personnel, policies, procedures, and practices. Consequently, a trial at which the jury considers the Exemption's applicability would necessarily involve the presentation of evidence and testimony that would have no place in a trial focused on the merits.

Defendants respectfully disagree with the Court's rulings on the Exemption (and reserve their right to appeal), but those rulings decided every legal question pertinent to whether the

5

Exemption applies. The Court has held as a matter of law that if *any* school in the 568 Group failed "to admit all students on a need-blind basis," then *all* schools in the Group were ineligible for the Exemption. MSJ Opinion at 39-40; *see* Dkt. 1286 at 9. The Court has also held as a matter of law that a school is not "need blind" under the statutory definition of that term if it considered ability to pay when making admissions decisions for waitlisted and transfer students or if it considered any student's relationship with an actual or potential benefactor when making admissions decisions. *See* Dkt. 185 (MTD Opinion) at 8-10 (concluding that consideration of ability to pay in admissions decisions for transfer or waitlist students or consideration of an applicant's relationship to benefactors is not "need blind"); MSJ Opinion at 40-41; Dkt. 1286 at 10. And the Court found that the "undisputed" record showed certain schools were not "need blind" under the statutory definition, *see* MSJ Opinion at 40-41—as plaintiffs argued, certain schools considered ability to pay when making admissions decisions for waitlist and transfer applicants, and Notre Dame and several other schools stipulated to consideration of certain students' relationships with actual or potential benefactors when evaluating those students' admissions applications, *see* Dkt. 898-30. Consequently, there is no factual showing defendants can make at trial that can overcome the Court's definitive rulings, so there is no reason why any presentation of evidence on the Exemption should occur.

That plaintiffs tactically chose not to cross-move for summary judgment on the issue is of no moment. A presentation of Exemption-related evidence would be a pointless waste of time given the Court's prior rulings. There is no non-duplicative evidence that would be relevant under the Court's interpretation of the statute. Presenting this issue at trial would serve only to allow

6

plaintiffs to attempt to inflame the jury,[2] increase the number of testifying witnesses and exhibits, and lengthen the trial unnecessarily. Plaintiffs themselves have agreed with the Court that they "would not need" evidence concerning defendants' benefaction-related admissions practices and policies for a case strictly focused on the merits of the alleged antitrust conspiracy. *See* Hr'g Tr. (Feb. 8, 2023) at 28:20-29:1. Accordingly, there is no need or warrant for the parties to present evidence regarding defendants' admissions practices with respect to benefactor-related candidates, which has nothing to do with the alleged antitrust conspiracy. The Court should clarify that trial will not involve this sideshow.

## II.     If the Exemption Is To Be Addressed at Trial, the Court Should Grant Bifurcation

If, despite the Court's summary judgment ruling, Exemption-related evidence will be presented at trial, the Court should bifurcate the proceedings and allow the jury to hear that evidence only after trial on the merits of the antitrust claim has concluded. Federal Rule of Civil Procedure 42(b) empowers courts to "order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims," "for convenience, to avoid prejudice, or to expedite and economize." If the jury considers only the merits and concludes that defendants are not liable under the antitrust laws, there will be no need for further proceedings concerning the Exemption. If the jury concludes that defendants are liable, the jury can subsequently consider whether the Exemption applies. This approach improves efficiency in the former scenario and avoids undue prejudice in the latter.

---

[2] It is unsurprising that plaintiffs have argued that the applicability of the Exemption remains an open question. Defendants expect that plaintiffs will try to devote a significant amount of trial time to presenting evidence about purported "wealth favoritism," a topic relevant only to the Exemption, purely to prejudice the jury against defendants on matters unrelated to the merits.

Bifurcating trial here is efficient, as it affords a meaningful opportunity to resolve the case without a presentation of evidence wholly unrelated to the antitrust merits. As noted, there is essentially no overlap between the evidence and testimony relevant to the merits (which concerns financial aid), and the evidence and testimony relevant to the Exemption (which concerns admissions). A presentation of evidence on the Exemption is sui generis, covering, for instance, how admissions departments made decisions on applications submitted by waitlisted students or transfer students, how admissions departments decided admissions applications for students who had relationships with actual or potential benefactors, and whether and how admissions departments interfaced with advancement and development offices at their respective schools. Bifurcation would "serve judicial economy" because trying the merits first might eliminate the need for any trial presentation at all on the Exemption, resulting in significant "savings in time, fees, and costs [that] inure to the benefit of all parties who otherwise would have to go to trial" on all the issues. *Greening v. B.F. Goodrich Co.*, 1993 WL 134781, at *3 (N.D. Ill. Apr. 23, 1993). If the jury finds in favor of defendants on the merits, the case ends, saving the parties, the Court, and the jury the time and expense of a wholly unrelated presentation of evidence on the Exemption.

Bifurcating also avoids undue prejudice. "[W]hen deciding a Rule 42(b) motion," efficiency matters, but "prejudice is the Court's most important consideration." *Chatman v. City of Chicago*, 2018 WL 11426157, at *3 (N.D. Ill. Oct. 10, 2018); *see also Awalt v. Marketti*, 75 F. Supp. 3d 777, 779 (N.D. Ill. 2014) (the "salient issue" is "whether the unfair prejudice to [defendants] posed by this evidence outweighs the efficiency of a consolidated trial"); *Nelson v. Chertoff*, 2008 WL 4211577, at *6 (N.D. Ill. Sept. 10, 2008) ("Extreme prejudice to a defendant resulting from [a] joint trial" must "outweigh concerns of judicial economy."). Plaintiffs seemingly intend to show defendants are ineligible for the Exemption by, among other things,

8

putting on evidence that schools "engaged in wealth favoritism" by "admitting students with regard to the applicant's family's donation history and capacity for future donations, even if they had below average academic credentials." Dkt. 893 at 49. Donor preferences in university admissions are a "hot topic" of public discourse, and recent high-profile investigations into college admissions, like *Varsity Blues*, and prominent court cases, like *Students for Fair Admissions v. Harvard*, 600 U.S. 181 (2023), have only further stirred public sentiment. Delaying a presentation of evidence on the Exemption until after the jury has assessed liability and damages prevents plaintiffs from weaponizing that public sentiment by introducing inflammatory evidence that has no bearing on the merits of the antitrust claim. Exemption-related evidence should therefore be confined to a separate phase of trial "so as not to cloud the issues or prejudice the defendant[s]" on the merits. *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700-01 (7th Cir. 2007); *see also Wis. Alumni Rsch. Found. v. Apple, Inc.*, 135 F. Supp. 3d 865, 882 (W.D. Wis. 2015) ("[A] third phase (if necessary) on willful infringement is appropriate to ameliorate any prejudice to Apple based on the evidence that need come in only to prove Apple's subjective intent to infringe.").[3]

## CONCLUSION

The Court should clarify that its summary judgment decision resolved the application of the Exemption as a matter of law and that trial will not include a presentation of evidence on the issue. If the Court instead clarifies that it does expect the issue to be presented at trial, then trial

---

[3] Should the Court determine that the Exemption issue remains live and that the jury can safely hear evidence on the Exemption while considering liability and damages, Notre Dame intends to move for severance. *See In re High Fructose Corn Syrup Antitrust Litig.*, 361 F.3d 439 (7th Cir. 2004) (empaneling separate juries to decide one antitrust defendant's liability and another to decide the others' to avoid prejudice to defendants against whom certain "damaging evidence" was not admissible).

should be bifurcated, with the merits tried first and then, only if necessary, the Exemption tried second after liability and damages have been decided.

Dated: July 22, 2026

By: /s/ David Gringer
David Gringer
Alan Schoenfeld
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: 212-937-7294
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Seth Waxman
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: 202-663-6800
seth.waxman@wilmerhale.com

Edward W. Feldman
Daniel Martin Feeney
MILLER SHAKMAN LEVINE &
     FELDMAN LLP
180 North LaSalle Street
Suite 3600
Chicago, IL 60601
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for The Trustees of the University of Pennsylvania*

Respectfully submitted,

By: /s/ Norman Armstrong
Norman Armstrong
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, D.C. 20004
Tel.: 202-389-5000
norman.armstrong@cooley.com

*Counsel for Cornell University*

By: /s/ Britt M. Miller
Britt M. Miller
Daniel T. Fenske
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312-782-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com

*Counsel for Georgetown University*

10

By: */s/ Eric Mahr*

Eric Mahr
Jan Rybnicek
Andrew Henderson
FRESHFIELDS US LLP
700 13th Street, NW
Washington, DC 20005
Tel: 202-777-4500
eric.mahr@freshfields.com
jan.rybnicek@freshfields.com
andrew.henderson@freshfields.com

Rami Fakhouri
Jennifer L. Greenblatt
GOLDMAN ISMAIL TOMASELLI BRENNAN &
BAUM LLP
200 South Wacker Drive, Floor 22
Chicago, IL 60604
Tel: (312) 681-6000
rfakhouri@goldmanismail.com
jgreenblatt@goldmanismail.com

*Counsel for Massachusetts Institute of
Technology*

By: */s/ Robert A. Van Kirk*

Robert A. Van Kirk
Jonathan Pitt
Sarah F. Kirkpatrick
Matthew D. Heins
Feyilana Lawoyin
Cole T. Wintheiser
William J. Donnelly
WILLIAMS & CONNOLLY LLP
680 Maine Ave. SW
Washington, D.C. 20024
Tel: 202-434-5000
rvankirk@wc.com
jpitt@wc.com
skirkpatrick@wc.com
mheins@wc.com
flawoyin@wc.com
cwintheiser@wc.com
wdonnelly@wc.com

James Peter Fieweger
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street
Suite 3200
Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for University of Notre Dame*

11

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 22, 2026, I caused a true and correct copy of the foregoing document to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ William J. Donnelly*
William J. Donnelly

*Counsel for University of Notre Dame*