**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,

*Defendants*.

Case No. 1:22-cv-00125

Hon. Matthew F. Kennelly

**DEFENDANTS' CONDITIONAL CONSENT TO ENTRY OF JUDGMENT ON AFFIRMATIVE DEFENSE PURSUANT TO THE COURT'S RULINGS AND RESERVATION OF APPELLATE RIGHTS**

COME NOW defendants Cornell University, Georgetown University, the Massachusetts Institute of Technology, and the Trustees of the University of Pennsylvania, by and through undersigned counsel, and submit this Conditional Consent to Entry of Judgment on Affirmative Defense Pursuant to the Court's Rulings and Reservation of Appellate Rights, and state as follows:

1. On January 9, 2022, plaintiffs filed suit against seventeen universities alleging that through their participation in the "568 Group," the university defendants engaged in an anticompetitive conspiracy to increase prices by purportedly agreeing on financial aid principles and formulas for determining students' financial need. Dkt. 1.

2. Defendants moved to dismiss on April 15, 2022, including on the basis that they were shielded from liability by Section 568 of the Improving America's Schools Act of 1994 (the "Exemption"), which provided that "[i]t shall not be unlawful under the antitrust laws for 2 or more institutions of higher education at which all students admitted are admitted on a need-blind basis, to agree or attempt to agree … to use common principles of analysis for determining the need of such students for financial aid if the agreement to use such principles does not restrict financial aid officers at such institutions in their exercising independent professional judgment with respect to individual applicants for such financial aid." *See* Dkt. 147 at 8-22.

3. On August 15, 2022, the Court denied defendants' motion. *See* Dkt. 185. In so doing, the Court ruled that consideration of the financial need of transfer students or waitlisted students during the admissions process, as well as consideration of actual or potential benefactor support during the admissions process, as alleged by plaintiffs, would render a school's admissions process not "need blind" under the Exemption. *Id.* at 8-10. When subsequently answering the amended complaint, six of the seventeen original defendants, including Notre Dame, elected not to assert the Exemption as an affirmative defense, concluding that the core antitrust claim was meritless and the Exemption was unnecessary to their defense of this action.

4. On May 7, 2025, the five remaining defendants moved for summary judgment. The four defendants still asserting that their admissions practices qualified them for the protection of the Exemption argued that they were entitled to summary judgment because they "in fact did

practice 'need-blind' admissions within the meaning of § 568." Dkt. 860 at 41. And they maintained that if any two or more of them were need-blind, those schools qualified for the Exemption, even if other members of the 568 Group did not. *Id.* at 44-47. Plaintiffs opposed, arguing that the record showed that certain schools considered ability to pay for waitlisted or transfer students, Dkt. 893 at 18, that the evidence demonstrated that all schools considered donor status in admissions, *id.*, and that defendants' interpretation of the Exemption was inconsistent with the statutory definition of "need blind," *id.* at 47-49.

5. On January 12, 2026, the Court denied defendants' motion for summary judgment, including on the "[a]ffirmative defense" of the "568 exemption." Dkt. 1210 at 38. It held that, "for the 568 Exemption to apply, every institution in the agreement must admit all students on a need-blind basis." *Id.* at 40. It further held that "[b]ecause it is undisputed that some of the 568 Group members did not do so, none of the universities may benefit from the 568 Exemption's protections in this case." *Id.* The Court went on to conclude, as a matter of law and contrary to defendants' arguments, that the statutory definition of "need blind" precluded consideration of benefaction in admissions. *Id.* at 40-41.

6. Defendants respectfully disagree with the Court's legal rulings on the Exemption, but those rulings foreclose any opportunity for defendants to prevail on the Exemption. The Court has held as a matter of law that if *any* school in the 568 Group failed "to admit all students on a need-blind basis," then *all* schools in the Group were ineligible for the 568 Exemption. Dkt. 1210 at 39-40; *see* Dkt. 1286 at 9. The Court has also held as a matter of law that a school is not "need blind" under the statutory definition of that term if it considered ability to pay when making admissions decisions for waitlisted and transfer students or if it considered any student's relationship with an actual or potential benefactor when making admissions decisions. *See* Dkt.

185 at 8-10; Dkt. 1210 at 40-41; Dkt. 1286 at 10. And the Court has found that the "undisputed" record showed certain schools were not "need blind" under the Court's interpretation of the term's statutory definition, *see* Dkt. 1210 at 40-41—as plaintiffs argued, because certain schools considered ability to pay when making admissions decisions for waitlisted and transfer students, and Notre Dame and several other schools stipulated that they considered certain students' relationships with actual or potential benefactors when evaluating those students' admissions applications, *see* Dkt. 898-30. Consequently, there is no factual showing defendants could make at trial that would overcome the Court's definitive legal rulings.

7. Solely as a consequence of and in obedience to the Court's legal rulings, defendants hereby consent to the immediate entry of final judgment in favor of plaintiffs on defendants' affirmative defense that they are eligible for the protection of the Exemption. It would be a waste of the Court's and the parties' time and resources, as well as unduly prejudicial to defendants, to try a defense that would be futile under the law of the case and the undisputed facts. Given how the Court will instruct the jury regarding the law applicable to the Exemption, there is no set of facts defendants can show under which they can prevail.

8. This consent is strictly conditional and is executed for the sole purpose of clarifying that plaintiffs need not prove defendants' alleged ineligibility for the Exemption with any presentation of evidence at trial. Defendants do not concede the correctness of the Court's legal rulings, do not waive any errors, and state their intent to appeal those rulings. Specifically, defendants expressly reserve the right to appeal the judgment entered pursuant to this consent, as well as the underlying interlocutory orders at Dkt. 185 and Dkt. 1210, to the United States Court of Appeals for the Seventh Circuit and the United States Supreme Court as part of any appeal of any final order or judgment entered in this case after trial or other final adjudication of all claims.

Dated: August 18, 2026

Respectfully submitted,

By: /s/ David Gringer
David Gringer
Alan Schoenfeld
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: 212-937-7294
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Seth Waxman
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, D.C. 20006
Tel.: 202-663-6800
seth.waxman@wilmerhale.com

Edward W. Feldman
Daniel Martin Feeney
MILLER SHAKMAN LEVINE & FELDMAN LLP
180 North LaSalle Street
Suite 3600
Chicago, IL 60601
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for The Trustees of the University of Pennsylvania*

By: /s/ Norman Armstrong
Norman Armstrong
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, D.C. 20004
Tel.: 202-389-5000
norman.armstrong@cooley.com

*Counsel for Cornell University*

By: /s/ Britt M. Miller
Britt M. Miller
Daniel T. Fenske
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312-782-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com

*Counsel for Georgetown University*

By: */s/ Eric Mahr*
Eric Mahr
Jan Rybnicek
Andrew Henderson
FRESHFIELDS US LLP
700 13th Street, NW
Washington, DC 20005
Tel.: 202-777-4500
eric.mahr@freshfields.com
jan.rybnicek@freshfields.com
andrew.henderson@freshfields.com

Rami Fakhouri
Jennifer L. Greenblatt
GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP
200 South Wacker Drive, Floor 22
Chicago, IL 60604
Tel.: (312) 681-6000
rfakhouri@goldmanismail.com
jgreenblatt@goldmanismail.com

*Counsel for Massachusetts Institute of Technology*

# CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2026, I caused a true and correct copy of the foregoing document to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ David Gringer*
David Gringer

*Counsel for The Trustees of the University of Pennsylvania*