**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANDREW CORZO, SIA HENRY, ALEXANDER LEO-GUERRA, MICHAEL MAERLENDER, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,<br><br>Defendants. | Case No. 1:22-cv-00125<br><br>Hon. Matthew F. Kennelly |

**PLAINTIFFS' RESPONSE TO ALUMS NOTICE GROUP LETTER MOTION**

In accordance with the Court's October 28, 2026 Minute Order (ECF No. 1355), Plaintiffs[1] hereby respond to the letter motion ("Motion") submitted by the Alums Notice Group ("Alums"), a group comprised of thirty-one Yale alumni. *See* ECF No. 1352. Alums request that the Court "direct the [Claims] Administrator[[2]] to accept and process our claims" and issue "payments in the range of $2000 to $4000" for valid claims. Motion at 14-15.[3] They argue they should be granted an opportunity to submit late claims because: (i) due process required that Alums receive individual notice of the Settlements that they claim did not occur (*id.* at 4-5); and (ii) that Yale provided Angeion with an email address for these Alums—the @aya.yale.edu address, which they assert either did not function properly or they did not use (*id.* at 5-8)—that became "the *de facto* sole and exclusive, mandatory route for notice on this settlement" with the result that Alums did not receive individual notice prior to the April 3, 2025 deadline to submit a claim for the First Ten Settlements. *See id.* at 8-9.

Alums are mistaken about both the law and the facts. First, due process does not require that a class member receive direct notice of a class action settlement. *See, e.g.*, *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 968 (N.D. Ill. 2011) ("Due

[1] The Plaintiffs are Andrew Corzo, Sia Henry, Alexander Leo-Guerra, Michael Maerlender, Brandon Piyevsky, Brittany Tatiana Weaver, and Cameron William.
[2] The Court appointed Angeion Group LLC ("Angeion") as the Claims Administrator. *See* ECF No. 726 ¶18.
[3] Alums also request that (a) Yale be directed to provide certain data exports relating to the Alums' email accounts and (b) that Angeion be directed to reissue individual notice to the Alums. Motion, at 14. Alums further request additional discovery relating to the contact information provided by Yale to Angeion or other information relating to emails sent to the Alums. *See id.* at 9-13. Alums assert this discovery is necessary because they claim to be subject to an "ongoing notice blackout." *Id.* at 10. However, Alums obviously now have notice of the Settlements as evidenced by their Motion (and prior correspondence) and they have access to the dedicated website: www.financialaidantitrust settlement.com. No purpose would be served by this burdensome discovery and these requests should be denied. The main relief sought by Alums is permission to submit a late claim, which should be denied for the reasons discussed in this response. No additional discovery is necessary to reach that decision.

process does not require that every class member receive notice.") (collecting cases). Second, the notice plan used for the First Ten Settlements provided a variety of methods by which Settlement Class Members could learn about the Settlements, which included a mix of direct notice (both mail and email), a multifaceted media campaign (which included social media (Facebook, Instagram), programmatic display advertising (*i.e.*, internet banner ads), and search engine marketing via Google), press releases, a settlement website, and toll-free telephone support.[4] Alums were not, as they claim, subject to a "notice blackout" where email notice was the sole method by which information about the Settlements was disseminated to them (or to the Settlement Class). *See* Motion, at 14 ("Given the combination of factors which had resulted in a notice blackout for our group ….").

Because Alums do not identify any special circumstances for missing the claim submission deadline, their request to submit a late claim must be denied.

## I. Summary of the Notice Plan for the First Ten Settlements

The results of the notice and claim process managed by Angeion for the First Ten Settlements are described in detail in the Notice Declaration. *See* ECF No. 703-7. The below briefly summarizes that information.

Starting on March 21, 2024, Angeion commenced the direct notice element of the notice plan. It sent 388,420 email notices, with the number of undeliverable emails at 6,870, for an excellent deliverability rate of approximately 98.23%. Notice Decl. ¶¶ 18-20. Angeion also issued 43,482 long-form notices via U.S. mail to those Settlement Class Members without valid or available email addresses, with 3,796 return as undeliverable. *Id.* ¶¶ 21-24.

---

[4] *See* Declaration of Steven Weisbrot, Esq. of Angeion Group LLC re Implementation of the Notice Plan ("Notice Decl."), ¶¶18-43, ECF No. 703-7 (May 28, 2024).

Starting on March 29, 2024, Angeion initiated the media campaign element of the notice plan when it caused the first press release to be issued via PR Newswire. *Id.* ¶ 25. The press release was picked up by a total of 266 media outlets, which have a combined potential audience size of approximately 147.2 million. *Id.* In fact, the Settlements (including the later settlements with California Institute of Technology ("Caltech") and Johns Hopkins University ("Johns Hopkins")) attracted so much media attention that Class Counsel requested an extension of the claims submission deadline for the First Ten Settlements from December 17, 2024 to April 3, 2025, which the Court granted.[5]

At the same time, Angeion initiated the three media campaign components. *See id.* ¶¶26-34. As mentioned above, these components included: (1) advertising on Facebook and Instagram to direct Settlement Class Members to the settlement website (*id.* ¶¶28-30); (2) an internet banner notice campaign that targeted and delivered internet ads about the Settlements to potential Settlement Class Members (*id.* ¶¶31-33); and (3) a paid search campaign via Google to help potential Settlement Class Members find information about the Settlements (*id.* ¶34). Even limited to just the two-month period covered by the Notice Declaration (from March 29 through May 28, 2024), the media campaign exceeded expectations by serving over 40 million impressions, resulting in an approximate 78.24% reach with an average frequency of 4.32 times each. *Id.* ¶¶ 35-36.

The notice plan was immensely successful. A total of 78,197 individuals out of an estimated 262,000 Settlement Class Members submitted timely claims. *See* Distribution Motion,

---

[5] *See* Plaintiffs' Motion To Approve the First Distribution of the Net Settlement Fund for the First Ten Settlements, Approve Six Late Claims as Timely, and Approve Payment of Claims Administration Costs ("Distribution Motion"), at 8-9, ECF No. 1233 (Mar. 9, 2026) (discussing extension of claim submission deadline for the First Ten Settlements).

at 4. This represents a claim submission rate of nearly 30 percent, which is substantially higher than the claim submission rate reported by a Federal Trade Commission study of consumer class actions that found the median claim submission rate to be about 9% and a (weighted) mean of around 4%—the submission rate here is more than triple the median rate.[6] After implementing its review and audit process, Angeion approved more than 74,700 claims, representing an approval rate over 95%, while rejecting 3,470 claims. *Id.* at 5-6.

**II. Alums' Request to Submit Late Claims Should Be Denied**

Alums' request to submit late claims rests on two primary contentions: (i) they assert that individual notice of the Settlements is required by due process; and (ii) they did not receive individual notice because they were subject to a "notice blackout" when Yale provided Angeion with an alumni email address (the @aya.yale.edu address) that Alums assert either did not work or they did not use. Motion, at 4-9. Neither contention supports Alums' demand to submit a late claim for the First Ten Settlements.[7]

First, there is no due process requirement that every class member receive notice. *See AT&T*, 789 F. Supp. 2d at 968 (citing cases); *see also Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 144 (N.D. Ill. 2010) ("Direct notice is indeed ideal, but the requirement of 'personal notice' does not mean that each individual who is potentially a member of the class must receive actual notice of the class action."); *Mullane v. Cent. Hanover Bank &*

---

[6] *See Consumers and Class Actions, A Retrospective and Analysis of Settlement Campaigns*, FTC Staff Report, at 11 (September 2019), available at https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf.

[7] For completeness, should the Court permit Alums to submit late claims for the First Ten Settlements, any such valid claims would also be included for the distribution of the Caltech and Johns Hopkins settlements. *See* ECF Nos. 884, ¶23 (Caltech settlement final approval order); 924, ¶23 (Johns Hopkins settlement final approval order).

*Tr. Co.*, 339 U.S. 306, 319 (1950) ("reasonable risks that notice might not actually reach every beneficiary are justifiable").

Rule 23 "requires the best notice practicable under the circumstances be directed to the members of the class, including individual notice to all members who can be identified through reasonable effort," which "standard can be satisfied even though a particular class member never receives actual notice—a difficult reality for many plaintiffs to accept." *Medina v. Mfr.'s & Traders Tr. Co.*, No. 04-cv-2175, 2004 WL 3119019, at *3 (N.D. Ill. Dec. 14, 2004) (citations and internal quotations omitted). As the Supreme Court explains: "if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied." *Mullane*, 339 U.S. at 314-15. "This rule ensures that when parties to a settlement provide class plaintiffs with the best notice practicable under the circumstances, those plaintiffs who fail to receive actual notice—for any number of legitimate reasons—cannot later disrupt the settlement." *Medina*, 2004 WL 3119019, at *3.

Second, Alums did not experience a "notice blackout" because the notice plan for the First Ten Settlements used a robust media campaign (social media ads, internet banner ads, and Google searches)—along with press releases (plus additional media coverage of the Settlements), a settlement website, and toll-free telephone support—to compliment the direct notice element. *See* Notice Decl. ¶¶18-36.

Courts regularly approve this type of well-rounded notice program as the best notice practicable under Rule 23 requirements. *See, e.g.*, *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 920-21 (N.D. Ill. 2022) (notice plan used direct email, programmatic display advertising, social media ads, settlement website, and toll-free phone number, plus benefitted from "considerable media coverage"); *In re Sears, Roebuck & Co. Front-Loading Washer Prods.*

*Liab. Litig.*, No. 06-cv-7023, 2016 WL 772785, at *7 (N.D. Ill. Feb. 29, 2016) (notice plan used direct notice, social media (Facebook ads), press releases, and settlement website); *In re Broiler Chicken Grower Antitrust Litig. (No II)*, No. 17-cv-33, 2023 WL 6520539, at *6 (E.D. Okla. July 28, 2023) (notice plan used "direct mailing to known members of the Settlement Class, publication notice in targeted print media, a social media campaign, a press release, and an interactive and informative website").

Because Alums had ample opportunities to obtain information about the Settlements through a variety of means—in addition to direct notice (the receipt of which is not required for due process or compliance with Rule 23)—their asserted lack of receipt of the notice Angeion sent to them using the email address provided by Yale does not excuse Alums' failure to meet the claim submission deadline. As Class Counsel have explained in prior responses to Settlement Class Member requests to submit late claims,[8] excusing Alums' failure absent a showing of special circumstances would invite a flood of similar motions (beyond those already submitted). Moreover, it would be unfair to the 74,700-plus Settlement Class Members who submitted timely claims, as well as rejected late claimants and the numerous other Settlement Class Members who have made similar requests, to allow Alums to submit claims and (potentially) recover when others were not permitted to.

There is no basis to treat Alums differently than the many other late claimants. The Court should enforce the claim submission deadline.

Finally, Class Counsel note that Alums may still have an opportunity to submit a claim in the event of a future settlement or judgment involving the remaining non-settled Defendants.

---

[8] *See, e.g.*, Plaintiffs' Response To Motion of Kristina Stallings, Settlement Class Member, for Leave to Submit a Late Claim, at 3-4, ECF No. 1326 (Sept. 4, 2026).

## III. Conclusion

For the foregoing reasons, Class Counsel respectfully submit that Alums' Motion should be denied.

Dated: November 12, 2026

Respectfully submitted,

/s/ *Steven F. Molo*
Steven F. Molo
Eugene A. Sokoloff
Lauren Dayton
Matthew E. Gold
MOLOLAMKEN LLP
300 N. LaSalle Street
Chicago, IL 60654
Tel: (312) 450-6707
smolo@mololamken.com
esokoloff@mololamken.com
ldayton@mololamken.com
mgold@mololamken.com

*Lead Class Counsel*

*/s/ Eric L. Cramer*
Eric L. Cramer
David A. Langer
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
ecramer@bergermontague.com
dlanger@bergermontague.com

*/s/ Edward J. Normand*
Devin "Vel" Freedman
Edward J. Normand
Richard Cipolla
Joseph Delich
FREEDMAN NORMAND FRIEDLAND LLP
10 Grand Central
155 E. 44th Street, Suite 915
New York, NY 10017
Tel: (646) 494-2900
vel@fnf.law
tnormand@fnf.law
rcipolla@fnf.law
*jdelich@fnf.law*

Ivy Ngo
FREEDMAN NORMAND FRIEDLAND LLP
1 SE 3d Avenue, Suite 1240
Miami, FL 33131
Tel: (786) 924-2900
ingo@fnf.law

*Additional Class Co-Counsel*

Richard Schwartz
BERGER MONTAGUE PC
110 N. Wacker Drive
Chicago, IL 60606
Tel: (773) 257-0255
rschwartz@bergermontague.com

Robert E. Litan
BERGER MONTAGUE PC
1001 G Street, NW, Suite 400 East
Washington, DC 20001
Tel: (202) 559-9745
rlitan@bergermontague.com

*Additional Class Co-Counsel*